Case 2:06-cv-00072-DF-CMC   Document 167   Filed 06/14/2006   Page 1 of 6

Datatreasury Corporation v. Wells Fargo & Company et al                                            Doc. 167 Att.

LEXSEE 2004 US DIST LEXIS 1324

**DIGIGAN, INC., Plaintiff, - against - IV ALIDATE, INC. d/b/a PLENAR, MDM GROUP, INC., and TIE TECHNOLOGIES, INC. f/k/a GLOBAL WIDE WEB, INC., Defendants.**

02 Civ. 420 (RCC)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2004 U.S. Dist. LEXIS 1324; 71 U.S.P.Q.2D (BNA) 1455; 52 U.C.C. Rep. Serv. 2d (Callaghan) 1022

**February 3, 2004, Decided
February 3, 2004, Filed**

**SUBSEQUENT HISTORY:** Magistrate's recommendation at *Digigan, Inc. v. Ivalidate, Inc.*, 2004 U.S. Dist. LEXIS 8705 (S.D.N.Y., Apr. 28, 2004)

**PRIOR HISTORY:** *digiGAN, Inc. v. iVALIDATE, Inc.*, 2002 U.S. Dist. LEXIS 19696 (S.D.N.Y., Oct. 4, 2002)

**DISPOSITION:** [*1] Defendants' motions to dismiss for failure to state claim GRANTED IN PART AND DENIED IN PART. MDM's motion to dismiss for lack of personal jurisdiction DENIED WITHOUT PREJUDICE.

**COUNSEL:** For Digigan, Inc, PLAINTIFF: David A Einhorn, James M Andriola, Anderson, Kill, Olick & Oshinsky PC, New York, NY USA.

For Ivalidate, Inc DBA Plenar, DEFENDANT: Anthony Motta, Law Offices of Joel Z Robinson & Co, New York, NY USA.

**JUDGES:** RICHARD CONWAY CASEY, United States District Court Judge.

**OPINIONBY:** RICHARD CONWAY CASEY

**OPINION:**

  **MEMORANDUM & ORDER**

**RICHARD CONWAY CASEY, United States District Court Judge:**

Plaintiff digiGAN, Inc. ("Plaintiff") brought this action against i Validate, Inc. ("iValidate"), MDM Group, Inc. ("MDM"), and TIE Technologies, Inc. ("TIE") (collectively referred to as "Defendants") for a declaratory judgment that Plaintiff is the owner of certain property, including a number of patents, and for damages based on violations of federal patent law and state unfair competition law. The three Defendants filed separate motions to dismiss the action. The Court addresses all three motions in this opinion. For the reasons that follow, Defendants' motions pursuant to *Federal Rule of Civil Procedure 12(b)(6)* [*2] are **GRANTED IN PART AND DENIED IN PART.** The Court **DENIES WITHOUT PREJUDICE** MDM's motion to dismiss for lack of personal jurisdiction.

**I. BACKGROUND**

The following facts are derived from the Amended Complaint in this case, the truth of which the Court assumes for purposes of these motions. On February 26, 2001, Plaintiff entered into an agreement with iValidate, titled "Advance Letter," under which Plaintiff lent sums of money to iValidate. (Compl. P 7.) The Advance Letter stated that if a separate agreement, called an "Asset Purchase Agreement," did not close by April 15, 2001, the advances made by Plaintiff to iValidate were to convert into a loan payable by April 30, 2001. (Id. P 8.) That deadline was extended by consent of the parties until October 1, 2001. (Id. P 10.) The Asset Purchase Agreement did not close, but iValidate failed to pay back $ 107,500 plus interest. (Id. PP 8, 11.) Under a security agreement executed on March 13, 2001, iValidate assigned certain collateral to Plaintiff to secure its obligations under the Advance Letter. (Id. P 12.) On October 23, 2001, Plaintiff notified iValidate that it would strictly foreclose on the [*3] collateral, and received no objection. (Id. PP 13, 14.) Plaintiff therefore contends that it is the legal owner of the collateral.

2004 U.S. Dist. LEXIS 1324, *; 71 U.S.P.Q.2D (BNA) 1455;
52 U.C.C. Rep. Serv. 2d (Callaghan) 1022

On October 21, 2001, MDM issued a press release in which it claimed ownership of the collateral--which appears to include a number of patents--despite Plaintiff's perfected security interest which it recorded in the states of New York and Georgia, and with the United States Patent and Trademark Office. (Id. PP 16, 17.) MDM then licensed rights in the patents to TIE (Id. P 19.) Defendants are alleged to be alter egos of one another. (Id. P 23.)

First, Plaintiff contends that it is entitled to a declaratory judgment that it is the rightful owner of the collateral and to an injunction against Defendants' infringement of its rights in the collateral. (Id. P 27.) Second, Plaintiff alleges that Defendants have violated the Lanham Act, *15 U.S.C. § 1125(a)*, by making false and misleading statements that they possess certain rights in the patents. (Id. P 36.) These statements allegedly caused confusion among the public and damage to Plaintiff. (Id. P 38.) The Amended Complaint also alleges that these misleading **[*4]** statements violated New York unfair competition law and *sections 349 and 350* of the New York General Business Law. (Id. PP 42, 44.)

Defendants argue that the Amended Complaint fails to state a claim on which relief can be granted, and have brought motions pursuant to *Federal Rule of Civil Procedure 12(b)(6)*. In addition, MDM moves to dismiss the Amended Complaint for lack of personal jurisdiction under *Federal Rule of Civil Procedure 12(b)(2)*. n1

> n1 In its original moving papers, MDM moved for a more definite statement of the claims under *Federal Rule of Civil Procedure 12(e)*. However, in its supplemental moving papers filed after Plaintiff amended its complaint, that motion was not reasserted. The motion has therefore been abandoned.

## II. DISCUSSION

### A. Defendants' 12(b)(6) Motions

Defendants argue that the Amended Complaint should be dismissed in its entirety. Under *Rule 12(b)(6)*, **[*5]** the Court must presume that all of the complaint's allegations are true and read the Amended Complaint in the light most favorable to Plaintiff. See *Connolly v. McCall, 254 F.3d 36 (2d Cir. 2001)*. The Court can only grant the motion if it appears beyond doubt that Plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995)*. The Court will discuss each cause of action separately.

### 1. First Claim: Declaratory Relief Under Article 9 of the New York Uniform Commercial Code

iValidate argues that the Amended Complaint does not state a claim for declaratory relief that Plaintiff is the rightful owner of the collateral for three reasons: (1) Plaintiff breached the Advance Letter and therefore the security agreement is void; (2) Plaintiff failed to comply with the notice requirements of *section 9-620* of the New York Uniform Commercial Code ("N.Y.U.C.C."); and (3) the monies advanced by Plaintiff to iValidate were not loans but were deposits to be applied toward consideration that Plaintiff owed iValidate. (Memorandum of Law of Defendant iValidate **[*6]** in Support of Motion to Dismiss, at 16-19.)

All of these arguments must fail because they mistake the Court's role in deciding a *Rule 12(b)(6)* motion. The Court cannot make findings of fact, but must confine its analysis to whether the "facts stated on the face of the complaint, in documents appended to the complaint, or incorporated in the complaint by reference" would entitle Plaintiff to the requested relief. *Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991)*.

The argument that Plaintiff breached the Advance Letter may be a defense that iValidate might eventually assert, but it is not a ground for dismissal under *Rule 12(b)(6)*. It is only a proper basis for a motion to dismiss "if the defense appears on the face of the complaint." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 158 (2d Cir. 2003)* (quoting *Pani Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998))*. There is nothing in the Amended Complaint, the Advance Letter, or the security agreement, that allows the Court to determine that Plaintiff breached the Advance Letter without making factual **[*7]** findings, something the Court cannot do on a motion to dismiss. Thus, this argument is unavailing.

Second, the Amended Complaint alleges that Plaintiff notified iValidate that it intended to strictly foreclose upon the collateral in satisfaction of iValidate's obligations under the Advance Letter. (Compl. P 13.) The Amended Complaint further alleges that iValidate did not object to the foreclosure. (Id. P 14.) N.Y.U.C.C. section 9-620 permits a secured party to retain collateral in satisfaction of an obligation if it sends a proposal to the debtor and receives no objection within twenty days after sending the proposal. *N.Y.U.C.C. Law § § 9-620 to -621*. iValidate argues that such notice did not satisfy the N.Y.U.C.C. requirements because iValidate had already sold the collateral to MDM and the Amended Complaint does not claim that MDM was notified of Plaintiff's proposal to strictly foreclose. However, the N.Y.U.C.C. only requires notification to parties from which the secured party received a claim of interest, or which held a per-

Page 3

2004 U.S. Dist. LEXIS 1324, *; 71 U.S.P.Q.2D (BNA) 1455;
52 U.C.C. Rep. Serv. 2d (Callaghan) 1022

fected security interest or lien within ten days before the debtor consented to the foreclosure. See id. § 9-621(a). It is doubtful that Plaintiff **[*8]** must plead the absence of any such claims of interest and secured interest-holders, but a reasonable inference from the allegation in the Amended Complaint that Plaintiff complied with the N.Y.U.C.C. requirements is that MDM had neither claimed an interest in the collateral nor held a perfected security interest. Thus, the Amended Complaint adequately alleges the necessary facts under the N.Y.U.C.C.

Finally, iValidate argues that the sum Plaintiff claims is owed was not a loan but a deposit toward monies that Plaintiff owed to iValidate. iValidate asserts that the Court must construe the Advance Letter and the security agreement in conjunction with the Asset Purchase Agreement and something called the Term Sheet, which iValidate maintains was executed on January 18, 2001, and specifies that Plaintiff would make cash payments of $ 1.1 million to iValidate; assume certain of iValidate's liabilities, and deliver stock in Plaintiff to iValidate shareholders. The Term Sheet purportedly also states that the patents would not be officially assigned to Plaintiff until it made payments to iValidate of $ 650,000. iValidate argues that this Term Sheet was incorporated into the Asset Purchase **[*9]** Agreement, which the Court must consider because the Amended Complaint references the Asset Purchase Agreement.

The Amended Complaint does refer to the Asset Purchase Agreement, and in part, relies on the agreement to state its claim for declaratory relief, thus, it may be considered by the Court in ruling on the motion to dismiss. See *Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)* (holding that documents relied on by plaintiff in drafting complaint may be considered on 12(b)(6) motion). iValidate contends that the declaratory judgment claim should be dismissed because Plaintiff failed to tender agreed-upon consideration and because the transaction contemplated by the Asset Purchase Agreement never closed. These arguments ask the Court to make factual findings and then a conclusion of law that Plaintiff has no rights to the patent. Such actions are impermissible on a motion to dismiss.

Plaintiff has also sufficiently stated a claim for declaratory relief. A district court "must entertain a declaratory judgment action: (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate **[*10]** and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Cont'l Cas. Co. v. Coastal Sav. Bank, 977 F.2d 734, 737 (2d Cir. 1992)* (quoting *Broadview Chemical Corp. v. Loctite Corp., 417 F.2d 998, 1001 (2d Cir. 1969)*). Plaintiff has plead facts suggesting that it is the rightful owner of the patents and that all three Defendants have asserted ownership of the patents. (Compl. PP 25, 26.) iValidate argues in defense that Plaintiff has no such rights. Thus, there is a controversy involving ownership of the patents that will be resolved by the declaratory relief that Plaintiff requests. iValidate's motion to dismiss is therefore denied.

**2. Second Claim: Patent Infringement**

MDM and TIE contend that Plaintiff has failed to state a cause of action for patent infringement. n2 The Amended Complaint alleges that Defendants have violated *35 U.S.C. § 271(a)* by "making, using, offering to sell, and/or selling the invention claimed" in two patents. (Compl. P 31.) *35 U.S.C. § 271(a)* states in relevant part: "Whoever without authority makes, uses, offers to sell, or sells **[*11]** any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

> n2 iValidate bases its motion on the argument that Plaintiff cannot recover on any of its legal theories because it has no ownership interest in the patents. For the reasons already stated, this argument must be rejected.

According to both MDM and TIE, the Amended Complaint fails to state a cause of action against them because it does not claim that they actually produced or sold any patented inventions. "[A] patentee need only plead facts sufficient to place the alleged infringer on notice. This requirement ensures that the accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself." *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc., 203 F.3d 790, 794 (Fed. Cir. 2000)*. In Phonometrics, the Federal Circuit held that a complaint states a claim for patent infringement **[*12]** when it "alleges ownership of the asserted patent, names each individual defendant, cites the patent that is allegedly infringed, describes the means by which the defendants allegedly infringe, and points to the specific sections of the patent law invoked." Id.

Here, Plaintiff has met the standard articulated in *Phonometrics* for stating a claim under § 271. It has alleged ownership of the patents, named Defendants as the alleged infringers, cited the patents by number, and describes the means by which they were infringed, that is, through making, using, selling, offering to sell or actually selling the patented inventions. Complaints that merely track the statutory language may be sufficient to withstand a motion to dismiss. See *Glazer Steel Corp. v. Yawata Iron & Steel Co., 56 F.R.D. 75, 81 n.1 (S.D.N.Y. 1972)*. In addition, the Amended Complaint specifically

Case 2:06-cv-00072-DF-CMC    Document 167    Filed 06/14/2006    Page 4 of 6

Page 4
2004 U.S. Dist. LEXIS 1324, *; 71 U.S.P.Q.2D (BNA) 1455;
52 U.C.C. Rep. Serv. 2d (Callaghan) 1022

cites *§ 271* as the applicable patent-law provision. The information provided is adequate to allow Defendants to defend themselves. Therefore, the motions to dismiss the patent infringement claim are denied.

### 3. Third Claim: Lanham Act Violations

MDM and TIE next challenge Plaintiff's claim for **[*13]** violations of section 43(a) of the Lanham Act, *15 U.S.C. § 1125(a)*. Specifically, MDM and TIE contend that Plaintiff only alleges misrepresentations regarding a patent, which is not a good or service. *The Lanham Act* subjects to civil suit:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities ...

*15 U.S.C. § 1125(a)* (emphasis added). This provision of the *Lanham Act* is meant "to prevent customer **[*14]** confusion regarding a product's source or sponsorship." *Chambers, 282 F.3d at 156. The Lanham Act* is not, however, a panacea for all unfair trade practices. See *Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 156 L. Ed. 2d 18, 123 S. Ct. 2041, 2045 (2003).*

The Amended Complaint alleges that Defendants violated *section 43(a) of the Lanham Act* by making false and misleading representations concerning Defendants' rights in one of the patents (Compl. P 36.) These misrepresentations allegedly were made in the course of Defendants' website advertising of products protected by the patent. (Id.) The gravamen of Plaintiff's claim is that Defendants, in marketing their products, falsely stated that they owned the patent that Plaintiff received from iValidate under the security agreement. Thus, the alleged misrepresentations concerned the patent, not any products or services. A patent is not a "good or service" as those terms are used in the *Lanham Act*. See *Hans-Jurgen Laube & Oxidwerk HJL AG v. KM Europa Metal AG, 1998 U.S. Dist. LEXIS 3921, No. 96 Civ. 8147(PKL), 1998 WL 148427, at *2 (S.D.N.Y. Mar. 27, 1998)* (citing *Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc., 75 F.3d 1568, 1574-75 (Fed. Cir. 1996))*. **[*15]**

In Hans-Jurgen, the plaintiffs alleged that the defendant violated *section 43(a)* when it falsely claimed ownership of a patent. Id. Judge Leisure concluded that the cause of action arose out of misrepresentations regarding ownership of the patent, and noted that the Federal Circuit has held that a patent is not a "good or service" under *section 43(a) of the Lanham Act*. See *id.*

Plaintiff responds that its *Lanham Act* claim is valid because Defendants advertised "products embodying technology protected by the Patent." (Compl. P 36.) However, drawing all reasonable inferences in Plaintiff's favor, the Amended Complaint does not allege any "false or misleading representation of fact" "in connection with any goods or services." See *15 U.S.C. § 1125*. The patent, and not any product or service, is at the center of the controversy between the parties.

First, the only misrepresentations alleged occurred when Defendants claimed to own the patent or to be licensees of the patent. (See Compl. P 35.) Second, the reason that Plaintiff claims the statements were false was that it, and not Defendants, actually own the patent. (See id. P 37.) Finally, **[*16]** Plaintiff's vague reference to Defendants' "products embodying technology" does not allege the necessary connection between the misrepresentations of fact and goods or services. Even paragraph 36 of the Amended Complaint, in which Plaintiff mentions Defendants' products, only alleges misrepresentations in connection with Defendants' rights to the patent, not with the products themselves. Thus, the Court concludes that Plaintiff has alleged misrepresentations of fact in connection with a patent, not goods or services. *Therefore, the Lanham Act* claim is dismissed.

### 4. Fourth Claim: Unfair Competition

Plaintiff states that Defendants' false representation that they are the owners or licensees of the patent constitutes unfair competition under New York State law. (Id. P 42.) "The primary concern in unfair competition is the protection of a business from another's misappropriation of the business' organization or its expenditures of labor, skill, and money." *Gucci America, Inc. v. Duty Free Apparel Ltd., 277 F. Supp. 2d 269, 275 (S.D.N.Y. 2003)* (quoting *Ruder & Finn, Inc. v. Seabord Sur. Co., 52 N.Y.2d 663, 422 N.E.2d 518, 522, 439 N.Y.S.2d 858 (N.Y. 1981))* (internal **[*17]** quotation marks omitted).

Page 5

2004 U.S. Dist. LEXIS 1324, *; 71 U.S.P.Q.2D (BNA) 1455;
52 U.C.C. Rep. Serv. 2d (Callaghan) 1022

Defendants TIE and MDM argue that a cause of action for unfair competition cannot lie on the facts stated in the Amended Complaint because there are no allegations that they infringed on Plaintiff's patent rights or misappropriated Plaintiff's business name, reputation, or good will. In addition, they argue that because the *Lanham Act* claim fails, so too must the claim for unfair competition.

If Defendants are to succeed in dismissing the unfair competition claim, they must not rest on their *Lanham Act* arguments. As the Second Circuit has explained, "the elements of an unfair competition and *Lanham Act* claim are different." *Morex S.p.A v. Design Institute America, Inc 779 F.2d 799, 801 (2d Cir. 1985)*. In New York, unfair competition is a broad tort encompassing an "incalculable variety of illegal practices." *Norbrook Labs. Ltd v. G.C. Hanford Mfg. Co., 297 F. Supp. 2d 463, 2003 U.S. Dist. LEXIS 23201, 2003 WL 23023866, at \*24 (N.D.N.Y. Dec. 3, 2003)* (quoting *Electrolux Corp. v. Val-Worth, Inc., 6 N.Y.2d 556, 161 N.E.2d 197, 204, 190 N.Y.S.2d 977 (N.Y. 1959))*. Plaintiff must allege, however, "unfairness and an unjustifiable attempt to profit from another's expenditure of [\*18] time, labor, and talent." *Greenblatt v. Prescription Plan Servs. Corp., 783 F. Supp. 814, 825 (S.D.N.Y. 1992)*.

Here, Plaintiff's labor was not expended, nor talent tapped, in producing the patented technology. Plaintiff's only argument is that it expended money through its agreements with iValidate, and has, in effect, purchased the patent. However, it is the money spent in developing a product or process that the tort of unfair competition protects. See *Norbrook Labs., 2003 U.S. Dist. LEXIS 23201, 2003 WL 23023866, at \*25* (finding unfair competition when defendant misappropriated technology for which plaintiff expended substantial time and money in producing). Plaintiff seeks to restate its patent infringement claim as an unfair competition claim, without alleging any expenditure of time, labor, or talent. See *id*. For this reason, the Amended Complaint does not adequately state a claim for unfair competition, and this cause of action is dismissed.

### 5. Fifth Claim: Violation of New York General Business Law

The Amended Complaint alleges that Defendants violated *sections 349 and 350* of the *N.Y. General Business Law. Sections 349 and 350* protect consumers against [\*19] deceptive trade practices and false advertising. See N.Y. Gen. Bus. L. § § *349, 350*. The Court determines that Plaintiff has failed to state a claim under these statutes.

To establish a claim for deceptive trade practices under *section 349*, Plaintiff must allege that: "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000)* (per curiam). Competitors have standing to bring a claim under this statute; however, "the gravamen of the complaint must be consumer injury or harm to the public interest." *Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995)* (quoting *Azby Brokerage, Inc. v. Allstate Ins. Co., 681 F. Supp. 1084, 1089 n.6 (S.D.N.Y. 1988))*.

The only harm to the public found anywhere in the Amended Complaint is the potential confusion that might arise due to Defendants' claims that they own, or are licensees of, the patent (See Compl. P 38.) Consumer confusion regarding the patent, the use or nature of which is not even stated in the Amended [\*20] Complaint, does not rise to the level of consumer injury necessary to sustain a claim under *section 349*. See *New York Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 662 N.E.2d 763, 770, 639 N.Y.S.2d 283 (N.Y. 1995)*. "The conduct [alleged] need not be repetitive or recurring, but defendant's acts or practices must have broad impact on consumers at large ...." *Id.* There are no factual allegations in the Amended Complaint that suggest a broad impact on consumers; in fact, Plaintiff never alleges what the invention is for which it claims to own the patent.

The Amended Complaint is replete, however, with allegations of harm to Plaintiff's business. "Where the gravamen of the complaint is harm to a business as opposed to the public at large, the business does not have a cognizable cause of action under § 349." *Gucci America, 277 F. Supp. 2d at 274*. Because this is merely a private dispute "without direct impact on the body of consumers," the claim under *section 349* is dismissed. See *Maurizio, 230 F.3d at 522*.

Plaintiff's claim under *section 350* must suffer a similar fate. To state a claim for false advertising under *section 350*, Plaintiff again must allege conduct that [\*21] has a broad impact on consumers. See id. (citing with approval *Galerie Furstenberg v. Coffaro, 697 F. Supp. 1282, 1291-92 (S.D.N.Y. 1988))*. Therefore, the *section 350* claim is also dismissed.

### B. MDM's 12(b)(2) Motion

MDM also maintains that it is not subject to personal jurisdiction in this Court because it has no contacts with the state of New York. MDM claims that it is incorporated in Georgia and has its principal place of business in Texas. It further asserts that it has no offices, employees, or agents in New York, and derives no income from, nor has caused any injuries in, New York. The Amended Complaint, in contrast, alleges that MDM's principal place of business is in New York. (Id. P 3.) Plaintiff argues that this allegation is itself sufficient to withstand a motion to dismiss on the issue of personal jurisdiction. In

2004 U.S. Dist. LEXIS 1324, *; 71 U.S.P.Q.2D (BNA) 1455;
52 U.C.C. Rep. Serv. 2d (Callaghan) 1022

the alternative, Plaintiff claims that MDM has sufficient contacts through to its own activities and those of TIE.

In demonstrating personal jurisdiction, "the nature of the plaintiff's obligation varies depending on the procedural posture of the litigation." *Ball v. Metallurgie Hoboken-Overpelt S.A., 902 F.2d 194, 197 (2d Cir. 1990).* **[*22]** As this motion was filed prior to discovery, Plaintiff must make a Prima facie showing of jurisdiction by allegations in the complaint. *Id.*; see also *Metropolitan Life Ins. Co. v. Robertson Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996)* ("Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction.").

MDM cites *Palmieri v. Estefan, 793 F. Supp. 1182 (S.D.N.Y. 1992)*, for the proposition that an evidentiary hearing is required when a defendant challenges the plaintiff's factual allegations relating to personal jurisdiction. See *id. at 1186.* This argument is only partially correct. MDM certainly may challenge both Plaintiff's theory of jurisdiction and the veracity of the facts that purportedly support that theory, *Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 153 (2d Cir. 1999)*, but the Court need not decide both challenges at the same time. See *Ball, 902 F.2d at 197.*

"In ruling on the theory of jurisdictional allegations, the court may provisionally accept disputed factual allegations as true ... The court need only **[*23]** determine whether the facts alleged by the plaintiff, if true, are sufficient to establish jurisdiction; no evidentiary hearing or factual determination is necessary for that purpose." *Id. at 153* (emphasis added). MDM is correct that Plaintiff must prove facts establishing personal jurisdiction by a preponderance of the evidence, but Plaintiff need not do so on a prediscovery motion pursuant to *Rule 12(b)(2)*. See *Ball, 902 F.2d at 196*.

The Court will accept as true the allegation of jurisdiction at this time. The parties shall have an opportunity to conduct discovery on the issue of jurisdiction, if they have not yet done so; the Court will schedule further proceedings after such discovery. Plaintiff will bear the burden of proving, by a preponderance of the evidence, both its theory of jurisdiction and the facts on which that theory is based. Therefore, MDM's motion is denied with leave to renew after discovery has been completed.

### III. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss for failure to state a claim are **GRANTED IN PART AND DENIED IN PART.** Specifically, the Court concludes that Plaintiff has failed to state a **[*24]** cause of action under the *Lanham Act and New York General Business Law sections 349 and 350*, and for unfair competition. Plaintiff has, however, stated claims for declaratory relief and patent infringement. The Court **DENIES WITHOUT PREJUDICE** MDM's motion to dismiss for lack of personal jurisdiction.

**So Ordered:** February 3, 2004

**Richard Conway Casey, U.S.D.J.**