IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DATATREASURY CORPORATION | § | |
| *PLAINTIFF* | § | |
| vs. | § | No. 2:06cv72 |
| | § | |
| WELLS FARGO & COMPANY, *et al* | § | JURY TRIAL DEMANDED |
| *DEFENDANTS* | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT UNIONBANCAL CORPORATION'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2)**

Plaintiff DataTreasury Corporation files this its Response to the UnionBanCal Corporation's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2), and would respectfully show this Honorable Court as follows:

## I.   INTRODUCTION

DataTreasury Corporation ("DataTreasury") is the owner of all rights and interest in and under United States Patent Nos. 5,910,988; 6,032,137; 5,265,007; 5,583,759; 5,717,868; and 5,930,778. These patents were issued for a variety of inventions comprising systems and methods for various banking functions, include image capture, image transmission, image storage, a central check clearing system, and submission of checks into the payment system. This Court is intimately familiar with the DataTreasury litigation; the Court has presided over multiple *Markman* hearings on the DataTreasury patents, and most importantly, has entered Consent Judgments where institutions such as banking colossus J.P. Morgan Chase ("JPMC") have admitted that at least two of the DataTreasury patents are valid, enforceable, and infringed.

In its long-running quest to have other financial institutions recognize the intellectual property that DataTreasury owns in the same way that JPMC has, DataTreasury filed the instant action against a number of large financial institutions and related infringing institutions. In response to that Complaint, only four of these fifty-plus new Defendants allege that this Court cannot exercise personal jurisdiction over them. This Response focuses on one of those four defendants, UnionBanCal Corporation ("UnionBanCal").

## II.     ARGUMENT

**A.     DATATREASURY HAS ESTABLISHED SPECIFIC PERSONAL JURISDICTION OVER UNIONBANCAL**

Defendant UnionBanCal contends that this Court has no personal jurisdiction over it, and thus DataTreasury's Complaint against it should be dismissed. *See Defendant's Motion to Dismiss, previously filed*. In support of these contentions, UnionBanCal relies entirely on one self-serving declaration of a company executive. *See Defendant's Affidavit, previously filed*. This Affidavit fails to establish that this Court lacks personal jurisdiction over this Defendant, and fails to controvert the facts set forth in Plaintiff's First Amended Complaint. Thus Defendant's Motion should be denied, as this Court's exercise of jurisdiction over this Defendant is entirely proper.

### 1.     Plaintiff's Pleadings and the Defendant's Activities Confer Personal Jurisdiction to this Court

This Court has specific jurisdiction over UnionBanCal in this case if Plaintiff's alleged facts in its First Amended Complaint regarding jurisdiction and venue are true. *See Burger King v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). Specific personal jurisdiction in Fifth Circuit patent cases has been held to exist when the defendant purposely directs his activities at the forum, and the ensuing litigation arises out of or relates to those activities.

*See Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 595 (5th Cir. 1999). Since the Texas long-arm statute extends to the limits of due process, a non-resident defendant is subject to personal jurisdiction in Texas if due process is satisfied. *See Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 427 (Fed. Cir. 1996). Plaintiff's pleadings and the Defendant's activities are both sufficient to confer personal jurisdiction to this Court, as Defendant has purposefully availed itself of the benefits of Texas by establishing minimum contacts in Texas and within this District; as such, exercising jurisdiction over this Defendant does not offend traditional notions of fair play and substantial justice. *See Int'l Shoe v. Wash.*, 326 U.S. 310, 316 (1945); *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 474 (1985).

  Plaintiff has pled in its First Amended Complaint that UnionBanCal has engaged or currently engages in the following activities within the Eastern District of Texas: (1) making, using, selling, offering to sell, and/or importing, directly, contributorily, and/or by inducement, infringing products and services within the State of Texas and within this District; (2) providing services and selling products in this District separately and with or for other infringing companies which are or were Defendants in related pending litigation in this District; (3) engaging in infringing activities with respect to the products and services of Small Value Payments Co., LLC and The Clearing House Payments Company, LLC, defendants that operate a nationwide check image archive and exchange service that operates in and through this District; and (4) authorizing, participating in, or facilitating transactions through this archive/exchange that in whole or in part infringe the patents within this District. These facts, if true, are more than sufficient to establish specific jurisdiction over the Defendant.

### 2. Defendant's Self Serving Affidavit Directly Contradicts Prior Statements of Defendant Relating to its own Activities

Furthermore, these facts are simply not controverted by the self-serving affidavit provided by the Defendant. UnionBanCal's representations to the Court, and the public at large, should cause this Court grave concern. Attached as Exhibit 1 are selected pages from UnionBanCal's most recent public 10-K filing with the Securities and Exchange Commission. Under the Sarbanes-Oxley Act, this document's accuracy is sworn and attested by the Chief Executive Officer of UnionBanCal, Takashi Morimura. *See id.* Subsequently, Defendant's Controller David Anderson has sworn and attested to certain facts in an Affidavit UnionBanCal filed in support of its Motion to Dismiss. In this Court, Mr. Anderson states as follows: "UnionBanCal has never had a mailing address, telephone line, or bank account in Texas, has never owned, rented, or leased property in Texas…[and] UnionBanCal does not have any employees, officers, agents, directors, or offices in Texas." *See Affidavit of David Anderson, previously filed, paragraphs 8-9.* In direct opposition to that, UnionBanCal's SEC filing, in the discussion of Properties held by the company, states as follows: "We own [seven administrative facilities in California]. Other administrative offices in Arizona, California,…**Texas,** and Washington operate under leases expiring in one to twenty-six years. *See id., page16 (emphasis added).* Both of these sworn statements simply cannot be true; either UnionBanCal's Chief Executive is in violation of the Sarbanes-Oxley Act and has misled the public at large, or Mr. Anderson has misled this Court on this most important issue for a personal jurisdiction analysis. Either way, Plaintiff suggests that the Court should look very suspiciously at the arguments Defendant makes to attempt to avoid litigating in this District.

Aside from this glaring inconsistency in sworn statements, there are other indications that the arguments advanced by Defendant in its Motion and affidavit are distortions of the truth. Two examples of these questionable statements follow.

First, UnionBanCal relies upon the following statement in Mr. Anderson's sworn affidavit: "UnionBanCal has no employees,…". *See paragraph 4*. However, in UnionBanCal's 2005 10-K, filed of public record and sworn to be accurate by its Chief Executive, UnionBanCal states "At January 31, 2006 we had 10,410 full-time equivalent employees." *See Exhibit 1, page 6.* Likewise, on its publicly available website, UnionBanCal recently advertised that "San Francisco-based UnionBanCal Corporation is a bank holding company…At March 31, 2006 we had approximately 10,118 full-time equivalent employees…" *See* website printout of [www.snl.com/irweblinkx/corporateprofile.aspx?IID=1022285](www.snl.com/irweblinkx/corporateprofile.aspx?IID=1022285), attached as Exhibit 2. DataTreasury submits that there is quite a drastic difference between having zero employees and over 10,000.

Secondly, Defendant relies on Mr. Anderson's affidavit to argue that "UnionBanCal is a bank holding company,…and does not participate in any way in the imaging, exchange, or settlement of checks or in any other retail banking operations." *See paragraph 5*. However, in its 2005 10-K, UnionBanCal makes the following statements: "We compete actively for loan, deposit, and other financial services business…nationally and internationally", and "UnionBanCal Corporation and its subsidiaries (the Company) provide a wide range of financial services to consumers, small businesses, middle-market companies and major corporations…nationally." *See Exhibit 1, page 6 and Note 1*. Furthermore, UnionBanCal recently held out to the public on its website that "We provide a

comprehensive array of personal and commercial financial products and services to individuals, businesses,…". *See* Exhibit 2.  Again, UnionBanCal is being quite inconsistent in its pre-litigation and post-litigation representations.

DataTreasury suggests that the evidence shows that UnionBanCal has made public representations quite inconsistent with its sworn proof offered to this Court.  Now that UnionBanCal is seeking to have this Court declared powerless to assert jurisdiction over it, it is apparently not reluctant to submit affidavit proof that directly conflicts with Sarbanes-Oxley punishable statements made by Defendant's chief executives.  Furthermore, the evidence discussed in the preceding paragraph, standing alone, is sufficient to support a finding of specific personal jurisdiction over UnionBanCal.  As described, UnionBanCal has stated to the SEC and the public at large that it provides financial services "nationally."  This type of representation is almost precisely the same type of representation that this Court relied on in holding that Small Value Payments Co. ("SVPCo") is subject to personal jurisdiction in the Eastern District of Texas in its separate case with DataTreasury.  *See* Order dated November 16, 2004, attached as Exhibit 3.  As the Court will recall, in the SVPCo matter, an instrumental fact was that an SVPCo employee had made a public presentation that SVPCo was a nationwide check image exchange.  This Court's ruling accounted for the fact that, because SVPCo did not exclude the Eastern District of Texas in its public presentation of "nationwide" activity, it was fair to assume that SVPCo did engage in potentially-infringing business in this District.  The same rationale applies in this case, where

UnionBanCal has made statements of "national" business activities in its sworn statements to the SEC.[1]  Thus, the same result should follow.

### 3. The True Nature of the Relationship Between UnionBanCal and Union Bank Supports the Finding of Personal Jurisdiction by this Court

Finally, DataTreasury will address another questionable claim of UnionBanCal's Affidavit filed in support of its Motion.  In that document, Mr. Anderson states: "UnionBanCal is not involved in the day-to-day management of any of its subsidiaries, including Union Bank of California, N.A."  *See* paragraph 6.  Like the other statements discussed above, this statement is also an attempt to distort a fact, namely the actual nature of the relationship between UnionBanCal and Union Bank of California, N.A. ("Union Bank").  UnionBanCal is a bank holding company, and Union Bank of California, N.A. is a wholly-owned banking subsidiary of UnionBanCal.  Bank holding companies are heavily regulated by Federal law, and the very definition of a bank holding company is "any company which has control over any bank."  *See* 12 U.S.C. §1841(a)(1).  Thus, by admitting that (1) it is a bank holding company and (2) its primary banking subsidiary is Union Bank of California, N.A., UnionBanCal has admitted that it does in fact control Union Bank.  Its attempts to persuade the Court otherwise are simply incorrect.  Another fact makes UnionBanCal's claim that it does not control the daily activities of Union Bank even more difficult to believe: every single executive of UnionBanCal is likewise and contemporaneously an executive of Union Bank. For example, UnionBanCal's Chairman; President/CEO; Vice Chairman/COO;

---

[1] In addition, it is worth noting that this Defendant and its related entities (and co-Defendants) Union Bank of California, N.A. and The Bank of Tokyo-Mitsubishi UFJ, Ltd. have a business relationship with SVPCo/The Clearing House Payments Company, as described in Plaintiff's First Amended Complaint.  For many of the same reasons that SVPCo was found guilty by this Court of "purposefully direct[ing] its infringing activities at the Eastern District of Texas through its affiliation with…[a bank and the Federal Reserve]," the Court should consider UnionBanCal's (and its related entities') business relationship with SVPCo when determining that this Defendant has purposefully directed potentially infringing activities at this District.

Vice Chairman/CFO; Vice Chairman, Administration & Support; Chief Credit Officer; General Counsel; Chief Information Officer; and multiple Executive Vice Presidents all serve in <u>identical</u> positions for Union Bank.  *See* UnionBanCal 2005 10-K, page 19, attached as Exhibit 1.  Thus, UnionBanCal's claim to this Court that it "is not involved in the day-to-day management of" Union Bank stretches credulity – every single one of its top executives shares their identical job responsibility between UnionBanCal and Union Bank.

### 4. The Court Should Exercise Personal Jurisdiction Under the "Source of Strength" Doctrine

Finally the "source of strength" doctrine has recognized that bank holding companies owe a duty to accept obligations of their subsidiary banks.  UnionBanCal recognizes this in its recent 10-K, stating that it "is required to serve as a source of financial and managerial strength to its subsidiary banks…".  *See id.*, page 7.  This doctrine forms another basis for denying UnionBanCal's Motion to Dismiss; namely, because UnionBanCal should be held liable for the infringing activities of Union Bank in addition to its own activities.  No other related entity of UnionBanCal has contested this Court's ability to assert jurisdiction.  *See Branch o/b/o Maine National Bank v. U.S.*, 69 F.3d 1571 (Fed. Cir. 1995) ("Through the source of strength doctrine, the [Federal Reserve] Board pierce[d] the corporate veil between a bank holding company and its affiliated banks…").  Thus, it is obvious that UnionBanCal manages, controls, and directs the operations of Union Bank – and Union Bank has not challenged this Court's ability to exercise personal jurisdiction over it.  Thus, the source of strength doctrine is an additional basis for the Court to deny UnionBanCal's Motion.

### 5. Defendant's Contacts with the Forum Arise From and are Directly Related to this Cause of Action

Defendant performs electronic banking transactions in this District that include image capture, transmission and storage, and submission into and interaction with the payments system. It is these exact transactions that infringe Plaintiff's patents, right here in the Eastern District of Texas. Plaintiff's claims in this case arise from this very conduct, and from these contacts between the Defendant and this District. "Specific jurisdiction arises when the defendant's contacts with the forum arise from, or are directly related to, the cause of action." *See Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002) (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Furthermore, specific jurisdiction in patent cases exists when "the defendant [has] purposely directed his activities at the … forum, and the litigation [results] from the alleged injuries that 'arise out of or relate to' the defendant's activities directed at the forum." *See Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 595 (5th Cir. 1999). If Defendant did not wish to be haled into Court in the Eastern District of Texas, it should not have performed or continue to perform infringing activities within this District. As can be seen by looking at the Viewpointe and SVPCO (The Clearing House Payments Company) Owners & Customers List attached as Exhibit 4. Based on the above, specific jurisdiction over UnionBanCal within the Eastern District of Texas is appropriate.

### B. IF QUESTIONS REMAIN, DATA TREASURY SHOULD BE ALLOWED TO CONDUCT DISCOVERY ON THE JURISDICTIONAL ISSUES RAISED

As described above, there are numerous conflicts between the Affidavit that UnionBanCal has filed and the representations it continues to make today on its website and in its public filings with the SEC. The mere fact that UnionBanCal makes these conflicting

representations is grave cause for concern about the veracity of the Affidavit that the Defendant has filed. On that basis alone, Plaintiff prays that the Court disregard the Affidavit filed by Defendant and deny Defendant's Motion to Dismiss. However, in the event that the Court is still unsure of the precise contacts of UnionBanCal with the Eastern District of Texas, Plaintiff prays that the Court grant Plaintiff the opportunity to conduct discovery on the venue and jurisdictional issues raised by Defendant before proceeding further with this litigation. Plaintiff incorporates by reference a Motion titled "Plaintiff's Motion to Authorize Jurisdictional Discovery Against UnionBanCal Corporation," which is being filed simultaneously with this Response, and prays that the Court grant that Motion and the relief requested therein should questions remain about the jurisdictional decisions based on this Response.

### III.   CONCLUSION AND PRAYER

Based on the foregoing, Plaintiff DataTreasury Corporation respectfully requests that the Court DENY UnionBanCal's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2). In the alternative, DataTreasury prays that the Court reserve ruling on Defendant's Motion, and allow Plaintiff time to conduct discovery targeted solely at the jurisdictional issues raised by UnionBanCal, as requested in DataTreasury's separate Motion to Authorize Jurisdictional Discovery. After completion of that discovery, Plaintiff would request the Court hear an Amended Response to Defendants' Motion and DENY said Motion. Plaintiff prays for any further relief to which it is entitled.

Respectfully Submitted,

/s/ Edward L. Hohn

EDWARD L. HOHN
Texas Bar No. 09813240
edhohn@nixlawfirm.com
D. NEIL SMITH
Texas Bar No. 00797450
dnsmith@nixlawfirm.com
**NIX, PATTERSON & ROACH, LLP**
205 Linda Drive
Daingerfield, Texas 75638
Telephone: 903.645.7333
Facsimile: 903.645.4415

C. CARY PATTERSON
Texas Bar No. 15587000
ANTHONY K. BRUSTER
Texas Bar No. 24036280
akbruster@nixlawfirm.com
BRADY PADDOCK
Texas Bar No. 00791394
bpaddock@nixlawfirm.com
R. BENJAMIN KING
Texas Bar No. 24048592
benking@nixlawfirm.com
**NIX, PATTERSON & ROACH, LLP**
2900 St. Michael Drive, Suite 500
Texarkana, Texas 75503
Telephone: 903.223.3999
Facsimile: 903.223.8520

JOE KENDALL
Texas Bar No. 11260700
jkendall@provostumphrey.com
KARL RUPP
Texas Bar No. 24035243
krupp@provostumphrey.com
**PROVOST UMPHREY, LLP**
3232 McKinney Avenue, Suite 700
Dallas, Texas 75204
Telephone: 214.774.3000
Facsimile: 214.744.3015

ROD COOPER
Texas Bar No. 90001628
rcooper@cooperiplaw.com
**THE COOPER LAW FIRM**
545 E. John Carpenter Fwy., Suite 1460
Irving, Texas 75062
Telephone:  972.831.1188
Facsimile:  972.692.5445

ERIC M. ALBRITTON
Texas Bar No. 00790215
ema@emafirm.com
**ALBRITTON LAW FIRM**
P. O. Box 2649
Longview, Texas 75606
Telephone: 903.757.8449
Facsimile:  903.758.7397

T. JOHN WARD, JR.
Texas Bar No. 00794818
jw@jwfirm.com
**LAW OFFICES OF T. JOHN WARD, JR. PC**
P. O. Box 1231
Longview, Texas 75606
Telephone: 903.757.6400
Facsimile:  903.757-2323

**ATTORNEYS FOR PLAINTIFF
DATATREASURY CORPORATION**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on all counsel of record through the Court's electronic mail this 23rd day of June, 2006.

_____
**ANTHONY K. BRUSTER**