# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

|  |  |
|---|---|
| DATATREASURY CORPORATION, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 2-06CV-72 |
| ) | |
| v. ) | |
| ) | |
| WELLS FARGO & COMPANY, et al., ) | |
| ) | |
| Defendants. ) | |

### DEFENDANT UNIONBANCAL CORPORATION'S REPLY
### TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS
### PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2)

Defendant UnionBanCal Corporation ("UnionBanCal") is a bank holding company that does not engage in any business in Texas, nor does it have any contacts with Texas. Those facts have been established by sworn Affidavit. Accordingly, UnionBanCal filed a Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) ("Motion to Dismiss") requesting dismissal of this case against it for lack of personal jurisdiction.[1]

## I. INTRODUCTION

Plaintiff DataTreasury Corporation's ("DataTreasury") Response to Defendant UnionBanCal's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) ("Opposition")[2] merely restates the same vague and conclusory allegations that it recited in its First Amended Complaint in support of this Court's exercise of specific personal jurisdiction over UnionBanCal. None of

---

[1] UnionBanCal's operating subsidiary, Union Bank of California, N.A. is also named as a defendant in this matter and it does not contest this Court's jurisdiction over its person.

[2] To respond to DataTreasury's Motion To Authorize Jurisdictional Discovery Against UnionBanCal, which was filed concurrently with DataTreasury's Opposition, UnionBanCal will file a separate Opposition.

700485138v7

those arguments are further supported by any specific facts, sworn affidavits or declarations under oath. DataTreasury simply mischaracterizes the nature of UnionBanCal's business by quoting statements out of context from UnionBanCal's Annual Report. As explained below, a review of these statements in their proper contexts clearly shows UnionBanCal's lack of contacts with Texas. Accordingly, this Court should dismiss this case against UnionBanCal.

**II.   ARGUMENT**

UnionBanCal's Annual Report explicitly identifies it as "a California-based, commercial bank holding company." UnionBanCal, Annual Report (Form 10-K), at F-2 (Mar. 1, 2006) ("Form 10-K") (attached hereto as Exhibit A). Bank holding companies are authorized by federal statute, 12 U.S.C.A. §§ 1841-1850 (West 2006), and are highly regulated, *Bd. of Governors v. Dimension Fin. Corp.*, 474 U.S. 361, 365 (1986). They are clearly defined as companies that own stock in banking institutions but that are not themselves banks or depository institutions. UnionBanCal therefore, is by definition, a creature of statute that does not actively engage in banking operations; thus, its limited activities as a holding company in California do not result in *any* contact with Texas. To describe further the nature of UnionBanCal's business as a holding company and to demonstrate specifically its lack of ties to Texas, UnionBanCal filed the affidavit of David A. Anderson, Executive Vice President and Controller at UnionBanCal ("Anderson Affidavit"), with its Motion to Dismiss. No statement in the Anderson Affidavit contradicts the Form 10-K, and more importantly, no statement in either document supports this Court's exercise of either general or specific personal jurisdiction over UnionBanCal.

DataTreasury's attempt to confuse UnionBanCal's operations with those of its subsidiary, Union Bank of California, N.A., likewise provide no basis for this Court to assert jurisdiction.

2

Although many of the factors relevant to an analysis of whether a parent corporation should be liable for the actions of its subsidiary, the determination whether two corporate entities are one and the same for jurisdictional purposes is distinct. *See Jones v. Beech Aircraft,* 995 S.W.2d 767, 771 (Tex. App. 1999); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir.1983); *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 425 (9th Cir.1977). The operative question here is whether Union Bank of California, N.A., is in fact a mere "division" or "branch" of a larger whole, such that its contacts with Texas should be attributed to UnionBanCal. *See Wells Fargo & Co.*, 556 F.2d at 425. UnionBanCal has asserted by sworn Affidavit that there is no basis for this Court to disregard the separate corporate entities and, therefore, there is no reason for this Court to treat the holding company and the operating subsidiary bank as a single entity.[3] In short, there is no colorable basis for this Court's exercise of jurisdiction over UnionBanCal.

    **A.**    **There is No Inconsistency Between the Anderson Affidavit and UnionBanCal's Form 10-K**

            **1.**    **The Form 10-K Does Not Support this Court's Exercise of Personal Jurisdiction Over UnionBanCal.**

The complete context of the Form 10-K excerpts selected by DataTreasury for quotation in its Opposition, establish that UnionBanCal is a "California-based, commercial bank holding company," Form 10-K at F-2, and accordingly is not engaged in any activities in Texas. The Form 10-K explains that UnionBanCal is a holding company that "through its banking subsidiary, Union Bank of California, N.A., provides a wide range of financial services." *Id.* at 5. Moreover, UnionBanCal explained that, "[a]s a holding company, the principal source of [its]

---

[3] DataTreasury has not alleged any fraud, undercapitalization, or other wrongdoing that would justify piercing the corporate veil. Moreover, bank holding company regulations require UnionBanCal to ensure adequate capitalization of its subsidiary banks. *See* Part II.D (explaining responsibilities of bank holding companies for obligations of its subsidiaries).

3

cash has been dividends and interest received from Union Bank of California, N.A." *Id.* at 7-8, 15 ("As a holding company, a substantial portion of our cash flow typically comes from dividends our bank and nonbank subsidiaries pay to us. Various statutory provisions restrict the amount of dividends our subsidiaries can pay to us without regulatory approval."). UnionBanCal's business is collecting dividends from its subsidiary, Union Bank of California, N.A., while the provision of financial services and bank operations is the province of the operating subsidiary.

DataTreasury's Opposition ignores these clear statements and lifts partial quotes out of context in an attempt to paint limited Form 10-K descriptions of activities clearly conducted through Union Bank of California, N.A., as contradictory to statements in the Anderson Affidavit, which concerned only UnionBanCal. Reading the Form 10-K as a whole, however, resolves the supposed contradictions because the distinctions between descriptions of UnionBanCal and Union Bank of California, N.A., activities are clear.

### 2. The Anderson Affidavit Does Not Contradict the Form 10-K

The Anderson Affidavit says nothing to contradict the Form 10-K; nevertheless, by juxtaposing portions of the Form 10-K that concern Union Bank of California, N.A., with statements from the Anderson Affidavit that concern only UnionBanCal, the Opposition attempts to create apparent inconsistencies. For instance, DataTreasury quotes the Form 10-K list of UnionBanCal's property, which includes an administrative office in Texas. Form 10-K at 16. DataTreasury does not, however, quote the preceding paragraph, which contains the following disclosure: "we operated 315 full service branches in California, 4 full services branches in Oregon and Washington, and 20 international offices . . . ." *Id.* The Form 10-K is explicit, however, that UnionBanCal does not itself operate any branches. The Texas office is clearly a

subsidiary operation. It is entirely inappropriate and factually and legally incorrect to suggest as DataTreasury does that Union Bank of California's subsidiary operations can be attributed to the parent UnionBanCal. The Form 10-K statements do not contradict the Anderson Affidavit statement that UnionBanCal never owned property in Texas.

Other alleged contradictions cited by DataTreasury result from similar failures to read the Form 10-K as a whole. For instance, "we compete actively for loan, deposit, and other financial services business," *id.* at 6, is clearly shorthand for "our subsidiaries compete . . . ." Also clear from the context of the Form 10-K as a whole is that the "10,410 full-time equivalent employees," *id.*, are staffing the "315 full service branches," *id.* at 16, operated by UnionBanCal subsidiaries, not the holding company itself. Similarly, while UnionBanCal "controls" Union Bank of California, N.A., in the sense that it owns its shares, it does not "control" its subsidiaries' operations; thus, there is nothing contradictory in the Anderson Affidavit more specific factual assertion that UnionBanCal is not involved in the day-to-day management of its subsidiaries.

All of the supposed contradictions identified by DataTreasury's Opposition result from narrowly reading excerpts of the Form 10-K out of context. By reading each of the quoted statements in its original context, it is clear that both the Form 10-K and the Anderson Affidavit support treating UnionBanCal and Union Bank of California, N.A., as distinct entities.

**B.    UnionBanCal Does Not Engage In Any Activities In Texas**

Neither "Plaintiff's Pleadings" nor UnionBanCal's activities are sufficient to confer personal jurisdiction over UnionBanCal. The proposition that a plaintiff could *confer* jurisdiction by properly pleading jurisdiction is simply not true. To the contrary, "[t]he party seeking to invoke the court's jurisdiction has the burden of establishing jurisdiction, by making a

5

prima facie showing of the facts upon which it may be based." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983); *see also Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 343 (5th Cir. 2002). In this case, DataTreasury has totally failed to make a prima facie showing of the facts upon which jurisdiction may be based.

Only the defendant's deliberate actions may subject it to the jurisdiction of a particular court. The touchstone for a court's exercise of specific personal jurisdiction over an out-of-state defendant is whether the defendant purposefully directed its activities at residents of the forum state and whether the litigation results from injuries that arose from or relate to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). DataTreasury's attempt to satisfy the elements of the *Burger King* test in its Opposition by alleging that UnionBanCal engaged in the same activities that it alleged in its First Amended Complaint does not overcome this basic deficiency: UnionBanCal does not engage in *any* activities in Texas. It owns shares in its subsidiary companies but it does not provide services or sell products. Moreover, UnionBanCal does not engage in any activities with Small Value Payments Co., LLC, or The Clearing House Payments Company, LLC. Thus, UnionBanCal engaged in none of the activities that DataTreasury alleges support this Court's exercise of specific personal jurisdiction. It has offered a sworn affidavit to that effect. Data Treasury cannot supply evidentiary proof for any of its general allegations and cannot fall back on its unsupported and unsupportable pleadings.

### C. UnionBanCal And Union Bank of California, N.A., Are Separate Entities

Bank holding companies, such as UnionBanCal, are required by regulation to file consolidated reports with their operating subsidiaries. *See, e.g.*, *CBC, Inc. v. Bd. of Governors*, 855 F.2d 688 (10th Cir. 1988). UnionBanCal's statutory and regulatory relationship with its operating banking subsidiary, Union Bank of California, N.A., fails to justify this Court's

6

exercise of personal jurisdiction over UnionBanCal.  As expected in a parent-subsidiary relationship, and as required by banking regulations, UnionBanCal and Union Bank of California, N.A., share resources, including capital and directors.  Nevertheless, they are distinct and separate legal entities.

A complete review of the Form 10-K clearly shows that, consistent with the law, UnionBanCal earns dividends from its subsidiaries but does not engage in any banking activities.  The Anderson Affidavit's characterization of UnionBanCal's activities is entirely consistent with these Form 10-K representations and the regulatory requirements.  Because of the highly regulated nature of the banking industry, however, UnionBanCal has a continuing responsibility to adequately capitalize its banking subsidiaries and to answer for their obligations in case of default.  That, however, does not justify piercing the corporate veil or support an *alter ego* theory; for a bank holding company, such a relationship with its subsidiary is required by law.  Thus, UnionBanCal and Union Bank of California, N.A., are legally separate entities to the extent permitted by banking regulations and should be treated as such by this Court.

      **D**.    **The "Source of Strength" Doctrine Is Not Relevant To The Exercise Of Personal Jurisdiction**

DataTreasury's unsupported contention that "UnionBanCal should be held liable for the infringing activities of Union Bank" pursuant to the "source of strength" doctrine misapplies a Federal Reserve Board policy designed to distribute the burden of bank failures across the failed bank and affiliates to a jurisdictional inquiry on which it has no bearing.  The "source of strength" doctrine is a policy choice, consistent with historical regulation of banks, to suspend the principle of limited corporate liability in exchange for safer banks.  12 C.F.R. § 225.4 (2006).  The Federal Reserve Board explained that "'in seeking the advantages flowing from the ownership of a commercial bank, bank holding companies have an obligation to serve as sources

7

of strength and support to their subsidiary banks,' and that a bank holding company's failure to assist a troubled or failing subsidiary bank 'would generally be viewed as an unsafe and unsound banking practice' and as a violation of the Board's banking regulations." *Branch v. U.S.*, 69 F.3d 1571, 1581 (Fed. Cir. 1995) (quoting Responsibility of Bank Holding Companies to Act as Sources of Strength to Their Subsidiary Banks, 52 Fed. Reg. 15,707 (Apr. 30, 1987)).

UnionBanCal's responsibilities as a bank holding company to stand behind the obligations of its subsidiary banks are consistent with the "source of strength" doctrine. Form 10-K at 7 ("Under Federal Reserve Board regulations, a bank holding company is required to serve as a source of financial and managerial strength to its subsidiary banks . . . . Under this policy, the Federal Reserve Board may require a holding company to contribute additional capital to an undercapitalized subsidiary bank."). These responsibilities, however, have no bearing on the jurisdictional inquiry. An administrative regulation promulgated to prevent catastrophic bank failures does not replace the due process requirement that a nonresident defendant establish "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In this case, the requirement that UnionBanCal "serve as a source of financial and managerial strength," Form 10-K at 7, to its subsidiaries fails to satisfy the due process requirement of minimum contacts with the forum state of Texas. Not only do UnionBanCal's responsibilities as a holding company fail to result in contact with Texas, but also because these responsibilities are mandated by federal regulation, if there were any resulting contact with Texas, it would certainly not be voluntary.

700485138v7

### III.  CONCLUSION

For these reasons and the reasons set forth in UnionBanCal's Motion to Dismiss, this Court should dismiss this action against UnionBanCal for lack of personal jurisdiction.

Respectfully submitted,

June 30, 2006

*/s/ Jennifer Parker Ainsworth*_____
Jennifer Parker Ainsworth
Texas Bar No. 00784720
WILSON, SHEEHY, KNOWLES, ROBERTSON &
CORNELIUS, P.C.
909 ESE Loop 323
Suite 400
Tyler, Texas 75701
T: (903) 509-5000
F: (903) 509-5092
jainsworth@wilsonlawfirm.com

Richard Hogan
Texas Bar No. 09802010
PILLSBURY WINTHROP SHAW PITTMAN LLP
2 Houston Center
909 Fannin Street 22nd Floor
Houston TX 77010
T: (713) 425-7327
F: (713) 425-7373
richard.hogan@pillsburylaw.com

Raymond L. Sweigart (pro hac vice submitted)
Scott J. Pivnick (pro hac vice submitted)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1650 Tysons Blvd.
McLean, VA 22102-4859
T: (703) 770-7900
F: (703) 905-2500
raymond.sweigart@pillsburylaw.com
scott.pivnick@pillsburylaw.com

*Attorneys for Defendant,*
*UnionBanCal Corporation*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on June 30, 2006. Any other counsel of record will be served by facsimile transmission and first class mail.

*/s/ Jennifer Parker Ainsworth*
Jennifer Parker Ainsworth
