# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| DATATREASURY CORPORATION | § | Civil Action No. 2:06-CV-72 |
| *PLAINTIFF* | § | |
| *vs.* | § | Judge David Folsom |
| | § | |
| WELLS FARGO & COMPANY, *ET AL.* | § | |
| *DEFENDANTS* | § | |
| _____ | § | |

## MOTION OF DEFENDANTS EDS, HARRIS, KEY, PNC, AND SUNTRUST TO SEVER AND STAY THE CLAIMS RELATING TO THE BALLARD PATENTS <u>PENDING REEXAMINATION OF THE BALLARD PATENTS</u>

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ASCII Corp. v. STD Entertainment USA, Inc.*,
844 F. Supp. 1378 (N.D. Cal. 1994) ...........................................................................7, 11

*Acevedo-Garcia v. Monroig*,
351 F.3d 547 (1st Cir. 2003) .........................................................................................13

*Agar Corp. Inc. v. Multi-Fluid, Inc.*,
983 F. Supp. 1126 (S.D. Tex. 1997) ..............................................................................12

*Alloc, Inc. v. Unilin Dcor N.V., No. CIV.A.03-253-GMS*,
2003 U.S. Dist. LEXIS 11917 (D. Del. July 11, 2003) ..................................................10

*Allway Tools, Inc. v. American Safety Razor Co.*,
206 U.S.P.Q. 475 (S.D. Tex. 1979) ...............................................................................14

*Baxa Corp. v. ForHealth Techs., Inc.*,
No. 6:06-CV-0353-ORL-19JGG, 2006 U.S. Dist. LEXIS 28583 (M.D. Fla. May
5, 2006) .......................................................................................................................7, 11

*Broadcast Innovation, L.L.C. v. Charter Commc'ns, Inc.*,
No. 03-CV-2223-ABJ-BNB, 2006 U.S. Dist. LEXIS 46623 (D. Colo. July 11,
2006) .................................................................................................................................7

*Brunet v. United Gas Pipeline Co.*,
15 F.3d 500 (5th Cir. 1994) ...........................................................................................13

*CNS, Inc. v. Silver Eagle Labs, Inc., No. CIV.A.04-968-MJD-JGL*,
2004 U.S. Dist. LEXIS 28960 (D. Minn. Nov. 29, 2004) .........................................11, 12

*Canady v. Erbe Elektronedizin GmbH*,
271 F. Supp. 2d 64 (D.D.C. 2002) ..................................................................................5

*In re Cygnus Telecomm. Tech.*,
385 F. Supp. 2d 1022 (N.D. Cal. 2005) .........................................................................11

*David v. M&E Food Mart, Inc.*,
No. 1:93-CV-163, 1995 U.S. Dist. LEXIS 1159 (E.D. Tex. Jan. 31, 1995).....................14

*Delce v. Nat'l Passenger R.R. Corp.*,
180 F.R.D. 316 (E.D. Tex. 1998)................................................................................14, 15

*Echostar Technologies Corp. v. TiVo, Inc.*,
    No. 5:05-CV-81-DF, 2006 U.S. Dist. LEXIS 48431
    (E.D. Tex. July 14, 2006)....................................................................................6, 7, 10, 11

*Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd.*,
    3 U.S.P.Q. 2d 1889 (N.D. Ill. 1987) .............................................................................12

*In re Etter*,
    756 F.2d 852 (Fed. Cir. 1985)........................................................................................6

*GPAC, Inc. v. D.W.W. Enter., Inc.*,
    144 F.R.D. 60 (D.N.J. 1992)..........................................................................................12

*Gaffney v. Riverboat Servs. of Indiana, Inc.*,
    451 F.3d 424 (7th Cir. 2006) .........................................................................................14

*General Tire & Rubber Co. v. Jefferson Chem. Co.*,
    50 F.R.D. 112 (S.D.N.Y. 1970) ...............................................................................14, 15

*Gould v. Control Laser Corp.*,
    705 F.2d 1340, 1342 (Fed. Cir. 1983)...........................................................................11

*Gunthy-Renker Fitness, LLC v. Icon Health and Fitness, Inc.*,
    48 U.S.P.Q. 2d 1058 (C.D. Cal. 1998)......................................................................7, 10

*Henderson v. AT&T Corp.*,
    918 F. Supp. 1059 (S.D. Tex. 1996) .............................................................................13

*Hewlett-Packard Co. v. Acuson Corp.*,
    No. C-93-0808-MHP, 1993 U.S. Dist. LEXIS 6449 (N.D. Cal. May 6, 1993)..................6

*IMAX Corp. v. In-Three, Inc.*,
    385 F. Supp. 2d 1030 (C.D. Cal. 2005) ..........................................................................8

*KLA-Tencor Corp. v. Nanometrics, Inc.*,
    No. C-05-03116-JSW, 2006 U.S. Dist. LEXIS 15754
    (N.D. Cal. Mar. 16, 2006)..........................................................................7, 10, 12, 13

*In re Laughlin Prods., Inc.*,
    265 F. Supp. 2d 525 (E.D. Pa. 2003) .............................................................................7

*Lentek Int'l, Inc. v. Sharper Image Corp.*,
    169 F. Supp. 2d 1360 (M.D. Fla. 2001)..........................................................................7

*Methode Elecs. v. Infineon Techs. Corp.*,
    No. C-99-21142-JW, 2000 U.S. Dist. LEXIS 20689 (N.D. Cal. Aug. 7, 2000)...............13

*Middleton, Inc. v. Minnesota Mining and Mfg. Co.*,
    No. 4:03-CV-40493, 2004 U.S. Dist. LEXIS 16812 (S.D. Iowa Aug. 24, 2004) .....7, 8, 10

*Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*,
    754 F.2d 738 (7th Cir. 1985) ...........................................................................15

*Pegasus Dev. Corp. v. DirecTV, Inc., No. CIV.A.00-1020-GMS*,
    2003 U.S. Dist. LEXIS 8052 (D. Del. May 14, 2003)......................................13

*Rohm and Haas Co. v. Brotech Corp., No. CIV.A.90-109-SLR*,
    1992 U.S. Dist. LEXIS 3252 (D. Del. Mar. 11, 1992) ....................................13

*Soverain Software LLC v. Amazon.com*,
    356 F. Supp. 2d 660 (E.D. Tex. 2002) .......................................................8, 12

*TAP Pharm. Prods., Inc. v. Takeda Chem. Indus., Ltd.*,
    No. 03-C-7822, 2004 U.S. Dist. LEXIS 3228 (N.D. Ill. Mar. 3, 2004).............9

*Techs., Inc. v. Microsoft Corp.*,
    434 F. Supp. 2d 437 (E.D. Tex. 2006) .............................................................8

*Teradyne v. Hewlett-Packard Co.*,
    No. C-91-0344-MHP, 1993 U.S. Dist. LEXIS 14601 (N.D. Cal. Jan. 7, 1993)...............12

*Texas Instruments, Inc. v. Linear Technologies Corp.*,
    No. 2:01-CV-004-DF, 2002 U.S. Dist. LEXIS 5669 (E.D. Tex. Jan. 15, 2002) .........13, 15

*Toshiba Corp.  v. Hynix Semiconductor, Inc.*,
    No. 3:04-CV-2391-L, 2005 U.S. Dist. LEXIS 22047 (N.D. Tex. Sept. 30, 2005)......13, 14

*United States v. O'Neil*,
    709 F.2d 361 (5th Cir. 1983) ...........................................................................13

*Watlow Elec. Mfg. Co. v. Ogden Mfg. Co.*,
    No. 4:05-CV-2094-CDP, 2006 U.S. Dist. LEXIS 46431 (E.D. Mo. July 10, 2006).....7, 11

*Whatley v. Nike*,
    54 U.S.P.Q. 2d 1124 (D. Or. 2000)...................................................................7

Austin 31079v1

## DOCKETED CASES

*DTC v. Bank of America*,
  No. 2:05-CV-292-DF ................................................................................................... 3

*DTC v. Citigroup*,
  No. 2:05-CV-294-DF ................................................................................................... 3

*DTC v. First Data Corp.*,
  No. 5:03-CV-39-DF ................................................................................................ 3, 12

*DTC v. Magtek, Inc.*,
  No. 2:03-CV-459-DF ................................................................................................... 3

*DTC v. Remitco, LLC*,
  No. 5:05-CV-173-DF ................................................................................................... 3

*DTC v. Small Value Payments Co.*,
  No. 2:04-CV-85-DF ..................................................................................................... 3

*DTC v. Viewpointe Archive Servs., LLC*,
  No. 2:05-CV-290-DF ................................................................................................... 3

*DTC v. Wachovia Corp.*,
  No. 2:05-CV-293-DF ................................................................................................... 3

*DTC v. Wells Fargo & Co.*,
  No. 2:05-CV-291-DF ................................................................................................... 3

## FEDERAL STATUTES

Fed. R. Civ. P. 5(d) .................................................................................................... 17

Fed. R. Civ. P. 21 ...................................................................................................... 13

## MISCELLANEOUS

*Bank of America*, No. 2:05-CV-292-DF (Doc. 33) .................................................. 4

*First Data*, No. 5:03-CV-39-DF (Doc. 165) ........................................................... 4

*Magtek*, No. 2:03-CV-459-DF (Doc. 38) ................................................................ 4

*Remitco, LLC*, No. 5:05-CV-173-DF (Doc. 25) ..................................................... 4

*Small Value Payments Co.*, No. 2:04-CV-85-DF (Doc. 36) ................................... 4

Austin 31079v1

*Viewpointe, LLC*, No. 2:05-CV-290-DF (Doc. 31) ........................................................................4

*Wachovia*, No. 2:05-CV-293-DF (Doc. 33)........................................................................................4

*Wells Fargo*, No. 2:05-CV-291-DF (Doc. 29)..................................................................................4

Austin 31079v1

**TABLE OF CONTENTS**

I.    INTRODUCTION ...............................................................................................1

II.   BACKGROUND ...............................................................................................3

III.  ARGUMENT ...................................................................................................5

      A.    The Court Should Sever and Stay Litigation of the Claims Related to the Ballard
           Patents to Prevent DTC From Circumventing the PTO's Reexamination Procedure ...5

          1.    The reexamination procedure was desinged to provide and efficient and
               inexpensive means of reviewing "doubtful" patents .............................................5

          2.    To give effect to reexamination's congressional purposes, courts follow a
               liberal policy of staying concurrent patent litigation ..........................................6

          3.    The relevant factors weigh in favor of staying the claims related to the
               Ballard patents .....................................................................................................7

      B.    The Court Need Not Stay the Entire Litigation; It Can and Should Sever and Stay
           the Claims Related to the Ballard Patents Pending the PTO's Reexamination ..........12

IV.   CONCLUSION ...............................................................................................14

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| DATATREASURY CORPORATION | § | Civil Action No. 2:06-CV-72 |
| *PLAINTIFF* | § | |
| *vs.* | § | Judge David Folsom |
| | § | |
| WELLS FARGO & COMPANY, *ET AL.* | § | |
| *DEFENDANTS* | § | |
| _____ | § | |

## MOTION OF DEFENDANTS EDS, HARRIS, KEY, PNC, AND SUNTRUST TO SEVER AND STAY THE CLAIMS RELATING TO THE BALLARD PATENTS PENDING REEXAMINATION OF THE BALLARD PATENTS

Defendants Harris Bankcorp, Inc. and Harris N.A. (collectively, "Harris"), KeyBank National Association and KeyCorp (collectively, "KeyBank"), PNC Bank and The PNC Financial Services Group, Inc. (collectively, "PNC"), SunTrust Bank and SunTrust Banks, Inc. (collectively, "SunTrust"), and Electronic Data Systems Corp. ("EDS"), (the foregoing defendants are sometimes hereinafter collectively referred to as "Moving Defendants") respectfully move for a severance and stay of the claims related to U.S. Patent Nos. 5,910,988 ("the '988 patent") and 6,032,137 ("the '137 patent") until the reexamination of those two patents is complete. A stay of these two patents would remove 16 of the 58 defendants and eliminate 93 of the 224 total potential patent claims from this case and, thus, go a long way toward bringing order to this currently unwieldy case.

## I.      INTRODUCTION

In January of this year, the United States Patent and Trademark Office ("PTO") granted a request to reexamine the '988 and '137 patents (collectively, "Ballard patents"). Plaintiff

DataTreasury Corporation ("DTC") then quickly acquired a new set of four patents[1] ("Huntington patents") and instituted this massive suit in February 2006. In its complaint, DTC alleges in Counts 1 and 2 that all 58 of the defendants infringe the Ballard patents and in Counts 3 through 6 allege that only 42 of the 58 defendants infringe one or more of the Huntington patents. A chart summarizing the DTC patents asserted against each defendant is attached hereto as Exhibit 1.

The Moving Defendants are now faced with the prospect of engaging in costly discovery and preparation for a trial that, with respect to the Ballard patents, could prove entirely unnecessary. Moving Defendants Harris, SunTrust and EDS are only accused of infringing the Ballard Patents, thus *any* time and expense incurred in litigating this lawsuit could prove entirely unnecessary for them if the PTO cancels or amends the asserted claims of the Ballard patents. Moreover, a stay would allow Moving Defendants KeyBank and PNC to avoid substantial time and expense in defending DTC's claims of patent infringement related to the Ballard patents and instead allow KeyBank and PNC to focus on the claims arising under the Huntington patents. Accordingly, the Moving Defendants are only requesting a severance and stay of the claims asserted under the Ballard patents and are not requesting a stay of any claims related to the Huntington patents.

To give effect to the congressional purposes for the reexamination procedure, and to take advantage of the benefits that procedure provides to this Court and to the parties, the Court should sever the two claims related to the Ballard patents and stay those claims until the PTO completes its reexamination. By doing so, Defendants Harris, SunTrust and EDS will be removed from this lawsuit and the claims against them potentially resolved pending the completion of the reexamination of the Ballard patents. The claims against Defendants KeyBank and PNC going

---

[1] The Huntington patents include U.S. Patent Nos. 5,717,868 ("the '868 patent"), 5,265,007 ("the '007 patent"), 5,583,759 ("the '759 patent"), and 5,930,778 ("the '778 patent").

forward will be limited to those relating to the Huntington patents, thus narrowing the scope of claims to be tried in the lawsuit. This litigation is in its earliest stages. Severing and staying Counts 1 and 2 relating to the Ballard patents while waiting for the completion of the reexamination process will simplify the issues before the Court, and DTC will not suffer any undue prejudice. Furthermore, severing the Ballard-patent claims from the Huntington-patent claims will help streamline this litigation and make preparation for trial on each of these distinct sets of patents more manageable for both the parties and the Court.

## II. BACKGROUND

Approximately six years ago, the PTO issued two patents to Claudio Ballard related to "Remote Image Capture With Central Processing and Storage"—the '988 and '137 patents. The patents were assigned to DTC, which subsequently initiated a series of lawsuits alleging that various banks, financial processors, hardware and software vendors, and other service providers operating in the check-processing industry were infringing the Ballard patents.[2] In November of 2005—with none of these cases having advanced to trial—a defendant in one of DTC's suits filed requests with the PTO for reexamination of the Ballard patents. The PTO's initial examination relied heavily on Ballard's written submission allegedly identifying and distinguishing the most relevant prior art. The requests for reexamination, however, cited highly relevant and material

---

[2] DTC's suits filed in this Court included *DTC v. Bank of America*, No. 2:05-CV-292-DF; *DTC v. Citigroup*, No. 2:05-CV-294-DF; *DTC v. First Data Corp.*, No. 5:03-CV-39-DF; *DTC v. Magtek, Inc.*, No. 2:03-CV-459-DF; *DTC v. Remitco, LLC*, No. 5:05-CV-173-DF; *DTC v. Small Value Payments Co.*, No. 2:04-CV-85-DF; *DTC v. Viewpointe Archive Servs., LLC*, No. 2:05-CV-290-DF; *DTC v. Wachovia Corp.*, No. 2:05-CV-293-DF; *DTC v. Wells Fargo & Co.*, No. 2:05-CV-291-DF.

prior art that had not been considered by the PTO in its initial examination.[3]

In January of 2006, the PTO granted the requests for reexamination of the Ballard patents, finding that the newly-cited prior art raised "a substantial new question of patentability" affecting all fifty claims of the '988 patent and all forty-three claims of the '137 patent.[4]  In light of the serious questions raised about the validity of the Ballard patents, defendants in eight of DTC's lawsuits filed motions to stay pending the PTO's reexamination.[5]  The Court subsequently denied three of these motions, one on the ground that the litigation was too far advanced, and two without prejudice on the ground that the motions did not account for the underlying cases' subsequent consolidation, none of which are present here.  *See infra* n. 17.

DTC, meanwhile, quickly acquired the four Huntington patents and instituted the present, massive lawsuit against 58 defendants.[6]  This suit alleges, in Counts 1 and 2, that all of the defendants infringe the Ballard patents currently being reexamined by the PTO.  It additionally alleges, in Counts 3 through 6, that 42 of the 58 defendants also infringe one or more of DTC's newly-acquired Huntington patents.  Accordingly, there are 16 defendants that are only accused of infringing the Ballard patents, including Moving Defendants Harris, SunTrust and EDS, that can be removed from this lawsuit by severing and staying the claims related to the Ballard patents.

---

[3]  This prior art includes U.S. Patent Nos. 5,373,550 ("the '550 patent") and 5,930,778 ("the '778 patent"), a textbook, and two financial services standards published by the American National Standards Institute.  The November 2005 requests for *ex parte* reexamination appear to have been motivated, at least in part, by a decision a month earlier by the European Patent Office ("EPO") rejecting claims in Ballard's corresponding foreign patent application.  The EPO concluded that the "subject matter of [the] claims does not involve an inventive step," in light of the subject matter of the '550 patent.  A copy of the EPO's decision is attached as Exhibit 2.

[4] The PTO's orders granting *ex parte* reexamination of the Ballard patents are attached as Exhibits 3 and 4.

[5]  *See Bank of America*, No. 2:05-CV-292-DF (Doc. 33); *First Data*, No. 5:03-CV-39-DF (Doc. 165); *Magtek*, No. 2:03-CV-459-DF (Doc. 38); *Remitco, LLC*, No. 5:05-CV-173-DF (Doc. 25); *Small Value Payments Co.*, No. 2:04-CV-85-DF (Doc. 36); *Viewpointe, LLC*, No. 2:05-CV-290-DF (Doc. 31); *Wachovia*, No. 2:05-CV-293-DF (Doc. 33); *Wells Fargo*, No. 2:05-CV-291-DF (Doc. 29).

[6] The First Amended Complaint filed on March 28, 2006 included fifty-seven defendants.  Viewpointe has since been added by virtue of being consolidated in the present case.  Viewpointe is only accused of onfringing the Ballard patents.

With respect to the remaining 42 defendants going forward with the lawsuit, including Moving Defendants KeyBank and PNC, a severance and stay of the claims under the Ballard patents would substantially limit the discovery to be conducted and the claims to be resolved at trial.

This lawsuit is in its very earliest stages—there has been no Rule 26(f) conference; no exchange of initial disclosures; no disclosure of preliminary infringement contentions; no formal discovery; and no trial date has been set. While the PTO's reexamination of the Ballard patents began over eight months ago, this massive litigation has yet to begin. As a result, significant efficiencies can be gained by severing out and staying the claims relating to the Ballard patents until those reexaminations are complete.

## III. ARGUMENT

### A. The Court Should Sever and Stay Litigation of the Claims Related to the Ballard Patents to Prevent DTC From Circumventing the PTO's Reexamination Procedure.

#### 1. The reexamination procedure was designed to provide an efficient and inexpensive means of reviewing "doubtful" patents.

The authority to issue U.S. patents is vested exclusively in the PTO. The initial patent application examination proceeds *ex parte*, with the PTO examiner relying to a large degree upon the applicant's duty of candor to identify and distinguish the most relevant prior art. When important prior art is missed during the PTO's initial examination process, the resulting patent can contain claims that were in fact already known and practiced. Prior to the reexamination process, such a mistakenly issued patent could only be invalidated through litigation in the courts.

Congress created the reexamination procedure "to allow the reexamination of patent validity in an impartial forum at almost 100 times less cost to the parties by people trained to understand the technologies described in the patents." *Canady v. Erbe Elektronedizin GmbH*, 271

F. Supp. 2d 64, 68 (D.D.C. 2002). The prospective benefits of PTO reexamination are multiplied when the patent undergoing reexamination "is concurrently involved in litigation." *See In re Etter*, 756 F.2d 852, 857 (Fed. Cir. 1985). In that circumstance, "an auxiliary function" of the reexamination procedure "is to free the court from any need to consider prior art without the benefit of the PTO's initial consideration." *Id.* Of course, the procedure can only fulfill this function, and a court can only receive this intended benefit, if the concurrent litigation is stayed during the reexamination proceedings.

As this Court has previously acknowledged, the advantages of staying litigation pending completion of reexamination are many. *See Echostar Technologies Corp. v. TiVo, Inc.*, No. 5:05-CV-81-DF, 2006 U.S. Dist. LEXIS 48431, at *4-*5 (E.D. Tex. July 14, 2006) (citation omitted). In fact, staying litigation pending reexamination has the potential to reduce the litigation costs virtually to zero. *Id.* at *5 ("…reexamination may result in the elimination of most, if not all, of the issues remaining in the pending litigation.") And, even if the remaining issues are not eliminated in their entirety, "the reexamination will at least likely result in a narrowing and simplifying of the issues before the Court [and] the technical expertise provided by the reexamination proceeding will be helpful to the Court on any issues that remain." *Id.* at *6 (citations omitted).

2. **To give effect to reexamination's congressional purposes, courts follow a liberal policy of staying concurrent patent litigation.**

In order to give effect to the "clear congressional intent to maximize efficiency and reduce cost in this regard," *Hewlett-Packard Co. v. Acuson Corp.*, No. C-93-0808-MHP, 1993 U.S. Dist. LEXIS 6449, at *4 (N.D. Cal. May 6, 1993), and to take advantage of the numerous benefits that shifting invalidity determinations to the PTO promises, district courts have widely recognized that "there is a liberal policy in favor of granting motions to stay proceedings pending

the outcome of [PTO] reexamination." *ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).[7] While stays pending PTO reexamination "are generally favored," courts have sometimes "denied a stay where it would cause undue prejudice, present a clear tactical disadvantage to the non-moving party, or when the case is in a late stage of litigation and has already been marked for trial." *Lentek Int'l, Inc. v. Sharper Image Corp.*, 169 F. Supp. 2d 1360, 1360 (M.D. Fla. 2001). None of these factors exist in this case.

Reflecting this well-established caselaw, this Court has similarly encouraged a balanced consideration of three factors when determining whether a stay pending reexamination is appropriate: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Echostar*, 2006 U.S. Dist. LEXIS 48431, at *4 (citation omitted). In this case, each of these factors weighs in favor of staying litigation related to the Ballard patents while they are undergoing reexamination: granting a stay will cause no undue prejudice to DTC; the reexamination process will likely narrow or eliminate many of the issues related to the Ballard patents; and no discovery has been taken and no trial date has been set.

> **3.** **The relevant factors weigh in favor of staying the claims related to the Ballard patents.**

---

[7] *See also In re Laughlin Prods., Inc.*, 265 F. Supp. 2d 525, 530 (E.D. Pa. 2003); *Lentek Int'l, Inc. v. Sharper Image Corp.*, 169 F. Supp. 2d 1360, 1362 (M.D. Fla. 2001); *Whatley v. Nike*, 54 U.S.P.Q.2d 1124, 1125 (D. Or. 2000); *Gunthy-Renker Fitness, LLC v. Icon Health and Fitness, Inc.*, 48 U.S.P.Q.2d 1058 (C.D. Cal. 1998); *Broadcast Innovation, L.L.C. v. Charter Commc'ns, Inc.*, No. 03-CV-2223-ABJ-BNB, 2006 U.S. Dist. LEXIS 46623, at *12 (D. Colo. July 11, 2006); *Watlow Elec. Mfg. Co. v. Ogden Mfg. Co.*, No. 4:05-CV-2094-CDP, 2006 U.S. Dist. LEXIS 46431, at *3 (E.D. Mo. July 10, 2006); *Baxa Corp. v. ForHealth Techs., Inc.*, No. 6:06-CV-0353-ORL-19JGG, 2006 U.S. Dist. LEXIS 28583, at *5 (M.D. Fla. May 5, 2006); *KLA-Tencor Corp. v. Nanometrics, Inc.*, No. C-05-03116-JSW, 2006 U.S. Dist. LEXIS 15754, at *5 (N.D. Cal. Mar. 16, 2006); *Middleton, Inc. v. Minnesota Mining and Mfg. Co.*, No. 4:03-CV-40493, 2004 U.S. Dist. LEXIS 16812, at *10 (S.D. Iowa Aug. 24, 2004).

### a)  A stay will not unduly prejudice DTC.

In considering whether a stay will unduly prejudice a nonmoving party, courts have typically focused on one of two questions.  The first is whether the nonmoving party is in danger of suffering irreparable damage absent immediate action from the court.  *See IMAX Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1030, 1033 (C.D. Cal. 2005).  The second is whether the moving party intentionally waited until the late stages of the litigation to request the stay.  *See Soverain Software LLC v. Amazon.com*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2002).  The answer to both questions here is no.

With respect to the first question, DTC is in no danger of suffering irreparable damage.  Like the plaintiff in *Middleton, Inc. v. Minnesota Mining and Mfg. Co.*, No. 4:03-CV-40493, 2004 U.S. Dist. LEXIS 16812, at *31 (S.D. Iowa Aug. 24, 2004), DTC is not "selling or marketing products under its patent" and "thus has no market to protect."[8]  Further, DTC "would be entitled to…money damages if infringement is ultimately found."  *Id.* at *32.  The promise of money damages in such a situation "is sufficient to protect [the plaintiff] from suffering any undue prejudice or a clear tactical disadvantage."  *Id.* at *32; *cf. z4 Techs., Inc. v. Microsoft Corp.,* 434 F. Supp. 2d 437, 441 (E.D. Tex. 2006) (monetary damages in lieu of an injunction is an adequate remedy for patent infringement).

With respect to the second question, the Moving Defendants have not waited until the late stages of this litigation to request a stay.  This litigation is in its earliest stage, and the party engaging in tactical maneuvering at this Court's expense is DTC, which filed this massive lawsuit *after* it learned that the PTO had granted *ex parte* reexamination of the Ballard patents.

---

[8] While DTC's website suggests they are attempting to commercialize their patented technology, DTC is believed to have abandoned their data center long ago.  Based on information and belief, DTC had only previous customer at a point several years ago.

Other courts have considered the fact that a plaintiff filed its patent-infringement lawsuit *after* learning the PTO had granted reexamination of the patent at issue as dispositive on the stay issue. *See TAP Pharm. Prods., Inc. v. Takeda Chem. Indus., Ltd.*, No. 03-C-7822, 2004 U.S. Dist. LEXIS 3228, at *3-*4 (N.D. Ill. Mar. 3, 2004), As the *Takeda* court observed, granting a stay would not unduly prejudice a plaintiff who had "known from the start of th[e] case . . . that the pending reexaminations could create grounds for a stay." *Id.* at *4. The same is obviously true for DTC in this case.

### b)      A stay will simplify the issues facing the Court.

Severing out and staying the claims based on the Ballard patents would greatly simplify this currently unweidly case. Staying the Ballard patents will have the effect of substantially reducing the number of defendants in this case. Of the 58 defendants who are accused of infringing the DTC patents, 16 are accused of infringing <u>only</u> the Ballard patents, including Moving Defendants Harris, SunTrust and EDS.[9] Severing out the two Ballard patents would therefore eliminate almost one third of the defendants in this case. Such a dramatic reduction in the number of defendants will go a long way toward simplying the case: one third fewer pleadings to be filed, one third fewer accused instrumentalities to be considered, and one third fewer voices to be heard. The benefits to the Court and the parties are many.

Staying the Ballard patents will also substantially reduce the number of patent claims in this case. The six patents-in-suit contain a total of 224 patent claims.[10] Almost half of those claims—93—are in the two Ballard patents. Eliminating these claims from the present suit will produce significant judicial savings by reducing the number of claim construction disputes, the

---

[9] *See* Exhibit 1.

[10] The breakdown of patent claims is as follows: '988 patent—50 claims; '137 patent—43 claims; '007 patent—6 claims; '759 patent—16 claims; '868 patent—91 claims; and '778 patent—18 claims.

number of dispositive motions, and the number of discovery disputes, as well as narrowing the scope of third-party discovery, among others. Removing these 93 claims from the case will also go a long way toward achieving the Court's stated goal of reducing the number of asserted claims to 10.

Even assuming for the moment that some of the claims in the Ballard patents survive reexam, the issues before the Court would be simplified, again weighing in favor of a stay. *See Echostar*, 2006 U.S. Dist. LEXIS 48431, at *11. Historically, there is a 71% chance that the claims of a patent undergoing *ex parte* reexamination will be at least narrowed in scope, if not eliminated all together.[11] Thus, it is highly likely that there will be at least a significant narrowing of the claims of the Ballard patents. Such an outcome would necessarily "result in a narrowing and simplifying of the issues before the Court." *Middleton*, 2004 U.S. Dist. LEXIS 16812, at *13.[12] Absent a severance and stay, the parties may end up conducting a significantly wider scope of discovery than necessary, and the Court may waste time examining the validity of claims which are modified or eliminated altogether by the reexamination process. *Gunthy-Renker Fitness*, 48 U.S.P.Q.2d at 1058. In particular, absent a stay, the Court may waste precious resources deciding *Markman* issues that may be obviated or require reconsideration should the PTO narrow or otherwise modify some of the claim terms at issue. For this reason, courts have found that "in a typical case there is a substantial probability a reexamination will have a major impact on the issues to be resolved in the litigation." *KLA-Tencor*, 2006 U.S. Dist.

---

[11] See paragraph 10 of the March 31, 2005 *Ex Parte* Reexamination Filing Data report from the PTO attached hereto as Exhibit 5.

[12] *See also Echostar*, 2006 U.S. Dist. LEXIS 48431, at *11 ("If the reexamination proceeding invalidates or narrows a claim or claims, the issues at trial will be simplified."); *Alloc, Inc. v. Unilin Décor N.V.*, No. CIV.A.03-253-GMS, 2003 U.S. Dist. LEXIS 11917, at *7 (D. Del. July 11, 2003) ("[I]t is beyond dispute that the court would benefit from a narrowing of the numerous complex issues relating to claims, which, if clearly defined, would streamline discovery and subsequent litigation.").

LEXIS 15754, at *10 (citation omitted); *see also Watlow*, 2006 U.S. Dist. LEXIS 46431, at *5.[13]

Even in the off-chance that the validity of the Ballard patents is confirmed as written, staying the litigation pending the completion of the reexamination process would simplify the issues facing this Court. This is so because the reexamination procedure is designed to facilitate any subseqent trial "by providing the district court with the expert view of the PTO . . . when a claim survives the reexamination proceeding." *Gould*, 705 F.2d at 1342. The PTO "has decided to investigate the significance of [many of] the same prior art documents that [are] likely to [be used] to challenge the validity of the patents-in-suit at trial." *See Baxa*, 2006 U.S. Dist. LEXIS 28583, at *11. Thus, as this Court recently observed, "to the extent the reexamination proceeding reaffirms the claims at issue, the Court will then have the benefit of the PTO's expert analysis of the prior art that allegedly invalidates or limits the claims." *Echostar*, 2006 U.S. Dist. LEXIS 48431, at *11.[14] Additionally, the fact that the PTO is currently considering the significance of some highly material and relevant prior art means that "there is a significant probability that a good portion of the proceedings before this Court and the [PTO] will overlap. Therefore, a stay pending the reexamination of the patents-in-suit will conserve judicial resources by reducing parallel proceedings before the Court and the [PTO]." *Baxa*, 2006 U.S. Dist. LEXIS 28583, at *11.

### c)     This case has not progressed beyond the initial stages.

The third factor—whether discovery is complete and whether a trial date has been set—is most frequently in play when a court declines to apply the "liberal policy in favor of granting motions to stay proceedings pending the outcome of [PTO] reexamination." *See ASCII*, 844 F.

---

[13] The prospective efficiencies provided by a stay are multiplied in litigation such as this, where dozens of defendants are accused of infringing dozens of claims under reexamination. *See In re Cygnus Telecomm. Tech.*, 385 F. Supp. 2d 1022, 1024 (N.D. Cal. 2005).

[14] *See also CNS, Inc. v. Silver Eagle Labs, Inc.*, No. CIV.A.04-968-MJD-JGL, 2004 U.S. Dist. LEXIS 28960, at *5 (D. Minn. Nov. 29, 2004).

Supp. at 1381. Indeed, courts that have denied stays have ususally done so "due to the late stage of litigation, the fact that discovery was or would be almost completed, or the matter had been marked for trial." *GPAC, Inc. v. D.W.W. Enter., Inc.*, 144 F.R.D. 60, 64 (D.N.J. 1992); *see also*, *e.g.*, *Soverain Software*, 356 F. Supp. 2d at 663 (finding that this third factor weighed most heavily against granting a stay).[15]

When "discovery has not progressed past the early stages," however, "[a] stay pending reexamination is routinely ordered." *CNS*, 2004 U.S. Dist. LEXIS 28960, at *3. Both courts and commentators recognize the rule that, "[i]n cases which have not progressed beyond … initial litigation stages, the reexamination procedure should be utilized." P. Rosenberg, PATENT LAW FUNDAMENTALS §15.09[3] at 15-167 (2d ed. 1986); *see also Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987); *KLA-Tencor*, 2006 U.S. Dist. LEXIS 15754, at *5; *Teradyne v. Hewlett-Packard Co.*, No. C-91-0344-MHP, 1993 U.S. Dist. LEXIS 14601, at *27 (N.D. Cal. Jan. 7, 1993). As one district court in Texas has explained, "[i]n considering the stage of the litigation at which the motion to stay is requested, the earlier the motion is filed, the more the court will be inclined to suspend its proceedings and await the results of the reexamination proceeding." *Agar Corp. Inc. v. Multi-Fluid, Inc.*, 983 F. Supp. 1126, 1128 (S.D. Tex. 1997). This litigation is in its very earliest stage with no discovery exchanged to date and no trial date; thus, the third factor weighs heavily in favor in granting a stay pending the PTO's reexamination of the Ballard patents.

### B. The Court Need Not Stay the Entire Litigation; It Can and Should Sever and Stay the Claims Related to the Ballard Patents Pending the PTO's Reexamination.

All three relevant factors indicate that the claims in this case related to the Ballard patents

---

[15] This Court likewise singled out the third factor as weighing most heavily against granting a stay in *DTC v. First Data Corp.*, No. 5:03-CV-39-DF (Doc. 211), where trial was only months away, the "parties ha[d] conducted discovery, and the Court ha[d] completed its order construing the claims at issue" in the case. *Id.*

should be stayed pending the completion of the reexamination process. Staying the entire litigation is within this Court's discretionary power, as district courts have frequently stayed litigation involving multiple patents when only a subset of the patents-in-suit was in reexamination. *See*, *e.g.*, *Pegasus Dev. Corp. v. DirecTV, Inc.*, No. CIV.A.00-1020-GMS, 2003 U.S. Dist. LEXIS 8052, at *10 (D. Del. May 14, 2003) (staying litigation with one of six patents in reexamination).[16] But while the Court *could* stay this entire litigation pending reexamination of the Ballard patents, there is no need to do so. The Court can and should sever and stay just those claims related to the Ballard patents—Counts One and Two of the First Amended Complaint—pending completion of the reexamination process.[17]

This Court has wide discretion to manage and mold this massive litigation under Federal Rule of Civil Procedure 21. *See Acevedo-Garcia v. Monroig*, 351 F.3d 547, 559 (1st Cir. 2003). Rule 21 "explicitly provides that '*any* claim against a party may be severed and proceeded with separately.'" *United States v. O'Neil*, 709 F.2d 361, 369 (5th Cir. 1983); *see also Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994) ("The trial court has broad discretion to sever issues to be tried before it."); *Henderson v. AT&T Corp.*, 918 F.Supp. 1059, 1062 (S.D. Tex. 1996). District courts regularly exercise their discretion to sever discrete and separate patent infringement claims. *See*, *e.g.*, *Texas Instruments, Inc. v. Linear Technologies Corp.*, No. 2:01-CV-004-DF, 2002 U.S. Dist. LEXIS 5669, at *5 (E.D. Tex. Jan. 15, 2002); *Toshiba Corp.*

---

[16] *See also*, *e.g.*, *Rohm and Haas Co. v. Brotech Corp.*, No. CIV.A.90-109-SLR, 1992 U.S. Dist. LEXIS 3252, at *14 (D. Del. Mar. 11, 1992) (staying litigation with one of four patents in reexamination); *Methode Elecs. v. Infineon Techs. Corp.*, No. C-99-21142-JW, 2000 U.S. Dist. LEXIS 20689, at *8-*9 (N.D. Cal. Aug. 7, 2000) (staying litigation with one of two patents in reexamination); *KLA-Tencor*, 2006 U.S. Dist. LEXIS 15754, at *10-*11 (staying litigation with two of three patents in reexamination).

[17] This Court recently consolidated two cases with this one—Nos. 2:04cv85 and 2:05cv290—and subsequently denied without prejudice the motions to stay pending in those cases, as the motions did not take this larger case into account. *See* No. 2:04cv85 (Doc. 79); No. 2:05cv290 (Doc. 68). The Moving Defendants believe that the interests of justice and judicial economy will best be served in this larger case by severing and staying those claims related to the Ballard patents while proceeding separately with the claims related to the Huntington patents.

*v. Hynix Semiconductor, Inc.*, No. 3:04-CV-2391-L, 2005 U.S. Dist. LEXIS 22047, at *27 (N.D. Tex. Sept. 30, 2005); *Allway Tools, Inc. v. American Safety Razor Co.*, 206 U.S.P.Q. 475 (S.D. Tex. 1979); *General Tire & Rubber Co. v. Jefferson Chem. Co.*, 50 F.R.D. 112, 114 (S.D.N.Y. 1970). Severance is particularly appropriate where the disposition of proceedings in another forum is expected to have a substantial impact on some subset of the claims at issue. *See Toshiba*, 2005 U.S. Dist. LEXIS 22047, at *27-*28; *see also, e.g.*, *Delce v. Nat'l Passenger R.R. Corp.*, 180 F.R.D. 316, 319 (E.D. Tex. 1998).

Severance is appropriate in this case, as the claims related to the Ballard patents are discrete and separate from the claims relating to the Huntington patents. While both sets of patents are generally directed to the broad field of check processing, "the inventions, the dates of invention, the inventors, [and] places of invention" are different. *See General Tire*, 50 F.R.D. at 114. There is no overlap in inventorship or ownership between the Huntington patents and the Ballard patents. Similarly, resolution of the infringement issues concerning the Huntington patents will not control the resolution of the infringement issues concerning the Ballard patents. *See Gaffney v. Riverboat Servs. of Indiana, Inc.*, 451 F.3d 424 (7th Cir. 2006) (holding claims "discrete and separate" whenever one claim is "capable of resolution despite the outcome of the other claim."); *David v. M&E Food Mart, Inc.*, No. 1:93-CV-163, 1995 U.S Dist. LEXIS 1159, *4 (E.D. Tex. Jan. 31, 1995) (holding severance appropriate where recovery on some claims "would not necessarily lead to automatic recovery" on the others).

## IV.     CONCLUSION

As currently pleaded, this litigation is unwieldy: two distinct patent sets encompassing six patents containing a total of 224 claims variously asserted against 58 Defendants. Dividing this suit into two separate and distinct actions—one for each discrete set of patents and

defendants who are charged with infringing only the Ballard patents and not the Huntington patents—promises to promote judicial economy, reduce confusion, and further the prompt and efficient disposition of the litigation. These are all grounds justifying severance under Rule 21. *See Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir. 1985); *Delce*, 180 F.R.D. at 319; *General Tire*, 50 F.R.D. at 114; *Texas Instruments*, 2002 U.S. Dist. LEXIS 5669, at *5. By severing the claims related to the Ballard patents and staying said claims, the Court will: (i) eliminate 16 of the 58 defendants from this lawsuit in their entirety; and (ii) reduce the patent claims asserted against the remaining 42 defendants by approximately one half. In the interests of justice and of judicial economy, this Court should sever and stay the claims related to the Ballard patents pending the completion of their reexamination.

DATED: September 19, 2006

Respectfully submitted,

**McKOOL SMITH, P.C**.

/s/ Sam Baxter
SAM BAXTER
Lead Attorney
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
505 East Travis Street, Suite 105
Marshall, Texas 75670
Telephone: (903) 927-2111
Telecopy: (903) 927-2622

THEODORE STEVENSON, III
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
L. DAVID ANDERSON
Texas State Bar No. 00796126
danderson@mckoolsmith.com
300 Crescent Court
Suite 1500
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

PETER J. AYERS
Texas State Bar No. 24009882
payers@mckoolsmith.com
GEOFFREY L. SMITH
Texas State Bar No. 24041939
gsmith@mckoolsmith.com
300 W. 6th Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Telecopy: (512) 692-8744

**ATTORNEYS FOR DEFENDANTS
SUNTRUST BANKS, INC., SUNTRUST
BANK, THE PNC FINANCIAL
SERVICES GROUP, INC., PNC BANK,
KEYCORP, AND KEYBANK NA**

**McKOOL SMITH, P.C.**

/s/ Theodore Stevenson, III
THEODORE STEVENSON, III
Lead Attorney
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
GARRET W. CHAMBERS
Texas State Bar No. 00792160
gchambers@mckoolsmith.com
L. DAVID ANDERSON
Texas State Bar No. 00796126
danderson@mckoolsmith.com
300 Crescent Court
Suite 1500
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Peter J. Ayers
Texas State Bar No. 24009882
payers@mckoolsmith.com
Geoffrey L. Smith
Texas State Bar No. 24041939
gsmith@mckoolsmith.com
300 W. 6th Street, Suite 1700
Austin, Texas 78701
Telephone:  (512) 692-8700
Telecopy:   (512) 692-8744

**ATTORNEYS FOR DEFENDANT
ELECTRONIC DATA SYSTEMS
CORP.**

**McKOOL SMITH, P.C.**

/s/ Robert M. Manley
Robert M. Manley
Lead Attorney
Texas State Bar No. 00787955
rmanley@mckoolsmith.com
Sam Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
L. David Anderson
Texas State Bar No. 00796126
danderson@mckoolsmith.com
300 Crescent Court
Suite 1500
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Peter J. Ayers
Texas State Bar No. 24009882
payers@mckoolsmith.com
Geoffrey L. Smith
Texas State Bar No. 24041939
gsmith@mckoolsmith.com
300 W. 6th Street, Suite 1700
Austin, Texas 78701
Telephone:  (512) 692-8700
Telecopy:   (512) 692-8744

**ATTORNEYS FOR DEFENDANTS
HARRIS BANKCORP, INC. AND
HARRIS N.A.**

## CERTIFICATE OF CONFERENCE

This is to certify that on September 19, 2006, I conferred with Plaintiff DataTreasury Corporation's counsel, Anthony Bruster, in a good faith attempt to resolve this matter without court intervention.  Mr. Bruster stated that Plaintiff opposes this Motion.

/s/ L. David Anderson
L. David Anderson

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who have consented to electronic service.  Local Rule CV-5(a)(3)(A).

/s/ L. David Anderson
L. David Anderson