UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

|  |  |  |
|---|---|---|
| DATATREASURY CORPORATION,<br><br>    Plaintiff<br><br>    v.<br><br>WELLS FARGO & COMPANY; WELLS FARGO & COMPANY; WELLS FARGO BANK, NATIONAL ASSOCIATION; BANK OF AMERICA CORPORATION; BANK OF AMERICA, NATIONAL ASSOCIATION; U.S. BANCORP; U.S. BANK, NATIONAL ASSOCIATION; WACHOVIA CORPORATION; WACHOVIA BANK, NATIONAL ASSOCIATION; SUNTRUST BANKS, INC.; SUNTRUST BANK; BB&T CORPORATION; BRANCH BANKING AND TRUST COMPANY; BANCORPSOUTH, INC.; BANCORPSOUTH BANK; COMPASS BANCSHARES, INC.; COMPASS BANK; CULLEN/FROST BANKERS, INC.; THE FROST NATIONAL BANK; FIRST HORIZON NATIONAL CORPORATION; FIRST TENNESSEE BANK, NATIONAL ASSOCIATION; HSBC NORTH AMERICA HOLDINGS INC.; HSBC BANK USA, N.A.; HARRIS BANKCORP, INC.; HARRIS N.A.; NATIONAL CITY CORPORATION; NATIONAL CITY BANK; ZIONS BANCORPORATION; ZIONS FIRST NATIONAL BANK; BANK OF NEW YORK CO., INC.; THE BANK OF NEW YORK; UNIONBANCAL CORPORATION; UNION BANK OF CALIFORNIA, NATIONAL ASSOCIATION; BANK OF TOKYO-MITSUBISHI UFJ, LTD.; CITIZENS FINANCIAL GROUP, INC. | | 2:06-CV-72 DF |

CITY NATIONAL CORPORATION;
CITY NATIONAL BANK; COMERICA
INCORPORATED; COMERICA BANK &
TRUST, NATIONAL ASSOCIATION;
DEUTSCHE BANK TRUST COMPANY
AMERICAS; FIRST CITIZENS
BANCSHARES, INC.; FIRST CITIZENS
BANK & TRUST COMPANY;
KEYCORP; KEYBANK NATIONAL
ASSOCIATION; LASALLE BANK
CORPORATION; LASALLE BANK NA;
M&T BANK CORPORATION; M&T
BANK; THE PNC FINANCIAL
SERVICES GROUP, INC.; PNC BANK,
NATIONAL ASSOCIATION
UBS AMERICAS, INC.; SMALL VALUE
PAYMENTS COMPANY, LLC; THE
CLEARING HOUSE PAYMENTS
COMPANY, LLC; MAGTEK, INC; FIRST
DATA CORPORATION; TELECHECK
SERVICES, INC., REMITCO, LLC; and
ELECTRONIC DATA SYSTEMS CORP.

Defendants.

## DEFENDANTS' MOTION TO SEVER AND STAY CLAIMS RELATED TO BALLARD PATENTS PENDING REEXAMINATION

Defendants, BB&T Corporation, Branch Banking and Trust Company, Comerica Inc.,

Comerica Bank & Trust National Association, M&T Bank Corporation, M&T Bank,

(collectively, "Reexam Defendants") respectfully move this Court to sever and to stay all

proceedings regarding U.S. Patent Nos. 5,910,988 (the "'988 Patent") and 6,032,137 (the "'137

Patent") (collectively, the "Reexam Patents"), that are both at issue in this case, until the United

States Patent and Trademark Office (the "U.S. Patent Office") concludes its reexamination of

those patents.

2

# I.    NATURE OF THE MATTER BEFORE THE COURT

On January 6, 2006, the U.S. Patent Office granted *ex parte* requests for reexamination of the '988 Patent and the '137 Patent, which are two of the six patents at issue in this case.[1]  In granting these requests, the U.S. Patent Office acknowledged that "[t]here are substantial new questions of patentability"[2] that were not considered during the original prosecution of the Reexam Patents, thereby calling into question the validity of the Reexam Patents.  Having granted the reexamination, the U.S. Patent Office is now engaged in a reevaluation of all ninety-three claims of the Reexam Patents to determine their continued viability.

The U.S. Patent Office's reevaluation involves the same analysis in which most of the parties to this action are only beginning to engage.  The U.S. Patent Office's decisions on reexamination will impact many aspects of this case because each of the Reexam Defendants has been accused of infringing the Reexam Patents.  As a result of the U.S. Patent Office's reexamination, there is a strong likelihood that the claims in the Reexam Patents will be modified or cancelled.  Staying the proceedings related to the Reexam Patents while the reexamination is proceeding will obviate the Court's and the parties' expense of time, money and resources on patents that are undergoing scrutiny and that may be significantly changed as a result of the reexamination process.  A stay will also conserve limited judicial resources and will eliminate the potential inconsistency and confusion that could result if the Reexam Patents are construed

---

[1] The other four patents-in -suit, U.S. Patent Nos. 5,265,007 (the " '007 Patent"), 5,717,868 (the "'868 Patent"), 5,583,759 (the "'759 Patent"), and 5,930,778 (the "'778 Patent").

[2] "For a 'substantial new question of patentability' to be present, it is only necessary that: (A) the prior art patents and/or printed publications raise a substantial question of patentability regarding at least one claim, i.e., the teaching of the (prior art) patents and printed publications is such that a reasonable examiner would consider the teaching to be important in deciding whether or not the claim is patentable; and (B) the same question of patentability as to the claim has not been decided by the Office in a previous examination or pending reexamination of the patent or in a final holding of invalidity by the Federal Courts in a decision on the merits involving the claim." MPEP § 2242.

by the Court and the U.S. Patent Office differently.[3]   As a result, Reexam Defendants respectfully request this Court to sever and to stay all proceedings involving the Reexam Patents until the U.S. Patent Office concludes its reexamination of the Reexam Patents.

## II.    FACTUAL BACKGROUND

DataTreasury's case against the Reexam Defendants is the fourth generation of patent infringement actions brought by DataTreasury.   Since 2002, DataTreasury has sued multiple defendants in the banking and financial services industries for infringement of the Reexam Patents.   Currently, DataTreasury has identical lawsuits involving the '988 and '137 Patents pending in this District against some of the country's major banking and financial institutions.[4] DataTreasury has now asserted, in this action, the same infringement allegations as in the other suits regarding the '988 and '137 Patents against other major banking and financial institutions not previously sued.

DataTreasury filed its Complaint in this matter on February 24, 2006 for the alleged infringement by fifty-six different defendants of various combinations of the six patents-in-suit. *See* Compl. for Patent Infringement, Feb. 24, 2006 ("Original Complaint").   DataTreasury subsequently filed an Amended Complaint on March 28, 2006.   *See* Am. Compl. for Patent Infringement, Mar. 28, 2006 ("Amended Complaint").   The Amended Complaint served only to

---

[3] *See e.g., Union Pac. Res. Co. v. Chesapeake Energy Corp.*, No. CIV. A. 4:96-CV-726-Y, 1999 WL 33268422, at *7 (N.D. Tex. Sept. 21, 1999) (concluding that defendant "is entitled to a finding that it did not infringe" where the patent was invalid); *Emhart Indus. Inc. v. Sanyo Man. Co., Ltd*., 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987) (rejecting patentee's argument that a court would not be bound by a PTO determination of invalidity in reexamination proceeding stating that "[a] reexamination proceeding may result in the final cancellation of claims from the patent").

[4] *See generally DataTreasury Corp. v. Bank of America Corp*., Civil Action No. 2-05CV-292, filed June 28, 2005; *DataTreasury Corp. v. Wells Fargo & Co*., Civil Action No. 2-05CV-291, filed June 28, 2005; *DataTreasury Corp. v. Citigroup, Inc*., Civil Action No. 2-05CV-294, filed June 28, 2005; *DataTreasury Corp. v. Wachovia Corp*., Civil Action No. 2-05CV-293, filed June 28, 2005.

add one additional defendant.  Amended Complaint ¶ 58.  Since the filing and service of the Amended Complaint, most of the defendants filed a Motion to Dismiss for failure to state a claim, or in the alternative, for More Definite Statement.  *See* Joint Mot. of Defs. to Dismiss, or in the alternative, for More Definite Statement, June 1, 2006. DataTreasury has also filed a Motion for Consolidation, seeking to consolidate various actions involving defendants currently parties to this action but previously sued for infringing the Reexam Patents.  *See* DataTreasury Corp.'s Mot. for Consolidation, June 7, 2006.  To date, no trial date has been set, a scheduling conference has yet to take place, and discovery has not begun.  Therefore, this case is still in the initial pleadings stage.

Prior to DataTreasury's filing this action, First Data Corporation ("First Data"), a defendant in an identical patent infringement action as to the other infringement actions regarding the Reexam Patents brought by DataTreasury and pending before the Court, submitted its *ex parte* request to the U.S. Patent Office for reexamination of the Reexam Patents based on certain prior art references that had not been cited, included in the record, or considered during the original prosecution of the Reexam Patents on November 25, 2005.[5]  The U.S. Patent Office granted First Data's reexamination request on January 6, 2006, finding the existence of "substantial new questions of patentability" of all 93 claims of the Reexam Patents.[6]  The granting of the reexams of the '988 and '137 Patents, under both obviousness and anticipation

---

[5] First Data filed its request for reexamination shortly after the European Patent Office reviewed a companion patent application submitted by DataTreasury containing claims similar to the independent claims 1 and 26 of the Reexam Patents.  The European Patent Office rejected all the pending claims, finding that the "subject matter of [the] claims does not involve an inventive step," in other words, finding that the claims were obvious and thus unpatentable over the prior art.  A true and correct copy of the European Patent Office's decision is attached hereto as Exhibit A.

[6] The Orders of the U.S. Patent Office granting First Data's requests for reexamination of the '988 and '137 Patents are attached hereto as Exhibits B and C respectively.

grounds, was based on substantial new questions of patentability ("SNQP") in light of the Campbell Patent, the ANSI X9.46 image interchange standard, the Geer '778 Patent, and the Minoli textbook.

## III.   ARGUMENT

"[T]here is no question that a district court in which an infringement action has been filed has the discretion to stay the infringement action pending the outcome of the reexamination proceeding." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988); *see also Soverain Software LLC v. Amazon.com*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005) (Davis, J.). Furthermore, "there is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexaminations or reissuance proceedings." *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).   Additionally, this Court has discretion to stay proceedings involving the Reexam Patents and could even stay all proceedings involving all the patents-in-suit.  *See Pegasus Dev. Corp. v. DirectTV, Inc*., 2003 WL 21105073, at *1 (D. Del. May 14, 2003) (staying the a patent infringement lawsuit despite the fact that there were six patents-in-suit and only one was under reexamination at the time); *KLA-Tencor Corp. v. Nanometrics, Inc*., No. C 05-03116 JSW, 2006 WL 708661 (N.D. Cal. Mar. 16, 2006) (granting motion to stay and staying all proceedings even though only two out of three patents-in-suit were under reexamination at the time).

The reexamination process allows the public to raise questions regarding the validity of a patent by presenting prior art to the U.S. Patent Office that the U.S. Patent Office can evaluate to obtain a complete view of the claimed invention in light of the technology existing at the time of

the invention.[7]  Thus, the reexamination procedures established by Congress provide a method for a more "speedy and less costly review of the validity of patents . . ." than that provided through litigation of the same issues.  *Hamilton Indus., Inc. v. Midwest Folding Prods. Mfg. Corp.*, No. 89 C 8696, 1990 WL 37642, at *1 (N.D. Ill. 1990).  In fact, "[t]he [reexamination] procedure was intended 'to provide an inexpensive, expedient means of determining patent validity.'"  *Softview*, 56 U.S.P.Q.2d at 1635.  The U.S. Patent Office's expertise in deciding patentability issues warrants delaying litigation of such issues simultaneously pending before the U.S. Patent Office.  *See Bausch & Lomb, Inc. v. Alcon Labs., Inc*., 914 F. Supp. 951, 953 (W.D.N.Y. 1996).  Indeed, the U.S. Patent Office either cancels or amends the patent claims subject to reexamination pursuant to an *ex parte* request 71% of the time.  *See Ex Parte* Reexamination Filing Data, dated September 30, 2005 ("*Ex Parte* Reexamination Data"), attached hereto as Exhibit D.  Thus, the likelihood that the way the claims currently read will be different than the way the claims read after the reexamination process is completed is high.

When deciding whether to stay a case pending reexamination, courts have considered several factors, including:

(1)    whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party,

---

[7] A reexamination proceeding is an administrative proceeding before the U.S. Patent Office for the purpose of determining the validity of an existing patent.  *See* 35 U.S.C. § 301 *et seq*.  It can be requested by anyone upon demonstrating the existence of prior art "consisting of patents or printed publications which that person believes to have a bearing on the patentability of any claim of a particular patent."  *Id.* at §§ 301, 302.  The reexamination process was developed to "eliminate trial of the issue of patent claim validity (when the claim is canceled by the PTO), or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)" and "was intended 'to provide an inexpensive, expedient means of determining patent validity.  Which, if available and practical, should be deferred to by the courts . . .,' especially where the infringement litigation is in the early stages."  *Softview Computer Prods. Corp. v. Haworth, Inc.*, 56 U.S.P.Q.2d 1633, 1635 (2000) (quoting *Digital Magnetic Sys., Inc. v. Ansley*, 213 U.S.P.Q. 290 (W.D. Okla. 1982)).

(2)     whether a stay will simplify the issues in question and trial of the case, and

(3)     whether discovery is complete and whether a trial date has been set.

*Soverain Software*, 356 F. Supp. 2d at 662 (citation omitted).  In analyzing these distinct factors, courts have created a remarkably consistent body of case law.  Courts applying these three factors have stayed patent infringement matters to allow the U.S. Patent Office to utilize its expertise to evaluate the patent in light of prior art when parties seek a stay early in a case.  *See, e.g., Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983); *ASCII Corp.*, 844 F. Supp. at 1381.  Reexam Defendants seek a stay of all proceedings regarding the Reexam Patents during this case's initial stages in order to afford the U.S. Patent Office the opportunity to utilize its expertise in evaluating the Patents and to prevent the parties from unnecessarily incurring significant expense in litigating the scope of the claims of the Reexam Patents when such patents will likely be either rewritten or invalidated by the U.S. Patent Office as a result of the reexamination process.[8]

A.     A Stay Will Simplify the Issues Before the Court.

The U.S. Patent Office's reexamination of the Reexam Patents will eliminate, clarify or limit the claims at issue in this case.  *See Canady v. Erbe Elektromedizin GMBH*, 271 F. Supp. 2d 64, 68 (D.D.C. 2002); *Softview*, 56 U.S.P.Q.2d at 1636 ("If the reexamination proceeding invalidates or narrows a claim or claims, the issues at trial will be simplified.  Similarly, if the reexamination proceeding reaffirms all the claims as issued, the Court will then have the benefit of the PTO's expert analysis of the prior art that allegedly invalidates or limits the claims.").  *Ex parte* reexamination requests, like the one initiated by First Data, often end either in the

---

[8] *Echostar Techs. Corp. v. TiVo, Inc*., Civil Action No. 5:05-CV-81 (DF), at 3 (E.D. Tex. July 14, 2006) (Craven, Mag.) ("[T]he technical expertise provided by the reexamination proceeding will be helpful to the Court on any issues that remain [after the reexamination].").

cancellation of all claims (12% of reexaminations) or in an amendment to some claims (59% of reexaminations). *See Ex Parte* Reexamination Data, Ex. D. Thus, it is highly likely that the claims for the Reexam Patents will be canceled or amended, thereby impacting the issues in this case. Courts in this District have recognized this and realize that reexaminations can result in such a simplification of issues. *Echostar Techs. Corp. v. TiVo, Inc*., Civil Action No. 5:05-CV-81 (DF), at 3 (E.D. Tex. July 14, 2006) (Craven, Mag.) ("If [the reexamined patent is] not found invalid, the reexamination will at least likely result in a narrowing and simplifying of the issues before the court.") (citations omitted).

If the case proceeds, the parties and the Court will incur significant time and expense litigating issues that may eventually be rendered moot. *See Softview,* 56 U.S.P.Q.2d at 1636 (proceeding with the *Markman* and summary judgment proceedings would be a "serious waste" of resources if the reexamination rendered the claims invalid or amended); *see also Tap Pharm. Prods., Inc. v. Atrix Labs., Inc.*, 70 U.S.P.Q.2d 1319, 1320 (N.D. Ill. 2004) (failure to stay litigation pending reexamination would pose "a substantial risk of expending substantial resources on trying the validity of patent claims that may ultimately be cancelled or amended by the PTO"); *Vitronics Corp. v. Conceptronics Inc*., 44 U.S.P.Q.2d 1536, 1538 (D.N.H. 1997) ("[I]t would be inefficient for the court to expend time and resources engaging in claim interpretation while the scope of the claim is still under review at the PTO"). Courts in this District have recognized the possible waste of time and resources that failing to stay an action during a pending reexamination would have on the parties and this Court. *See Echostar*, Civil Action No. 5:05-CV-81 (DF), at 6 ("It would be an *egregious waste* of both the parties' and the Court's resources if the *Markman* and summary judgment proceedings went forward and the

claims were subsequently declared invalid or were amended as a result of the reexamination proceeding.") (emphasis added).

      B.    <u>A Stay Will Not Prejudice Any Parties Because the Case is in its Very Early Stages.</u>

Less than eight months ago, DataTreasury filed its Complaint in this case. *See* Original Compl. for Patent Infringement, Feb. 24, 2006. Shortly thereafter, DataTreasury filed an Amended Complaint adding one additional defendant. *See* Am. Compl. for Patent Infringement, Mar. 28, 2006. Only one Defendant, out of fifty-six, has answered the Complaint, while almost all of the remaining defendants filed motions to dismiss. *See* Def. Magtek, Inc.'s Answer to Compl. for Patent Infringement, Apr. 17, 2006; Joint Mot. of Defs. to Dismiss, or in the Alternative, for More Definite Statement, June 1, 2006. Because of the early stage of this litigation, the parties have not engaged in any discovery or invested significant time or money in preparing their respective cases. In fact, the parties have not even engaged in the initial scheduling conference. As such, the motion to stay should be granted. *Photoflex Prods., Inc. v. Circa 3 LLC*, No. C 04-03715 JSW, 2006 WL 1440363, at *1 (N.D. Cal. May 24, 2006) ("[T]he fact that this case is still in the early stages and the parties have not yet conducted 'significant discovery' or invested 'substantial expense' into the litigation weighs in favor of granting a stay.") (citation omitted).

Given the magnitude of this case and the significant work that lies before the parties as the case proceeds to an as-yet-undetermined trial date, it is apparent that this case is in its very early stages and warrants the granting of the stay. This case is procedurally similar to the case of *Watlow Elec. Mfg. Co. v. Ogden Mfg. Co.*, No. 4:05CV2094 CDP, 2006 WL 1892546, at *1

(E.D. Mo. July 10, 2006).[9]  In that case, the court granted a stay because, among other reasons, (1) discovery had not yet begun; (2) a trial date had not yet been set; and (3) the Rule 16 conference had been postponed pending the resolution of the motion to stay.  *Id*.  The court stated "[i]n sum, the bare minimum amount of resources have been expended in this case thus far."  *Id*.  *See Tap Pharm*., 70 U.S.P.Q.2d at 1320 (granting a motion to stay where, among other reasons, the case was in its initial pleadings stage);  *see also Werre v. Battenfield Techs., Inc*., 2004 WL 2554568, at *1 (D. Or. Nov. 9, 2004) (finding no undue prejudice where only one set of discovery requests had been served, no depositions had been taken, no expert reports had been exchanged, no *Markman* hearing had been held or scheduled, and no summary judgment motions had been filed); *Guthy-Renker Fitness L.L.C. v. Icon Health & Fitness Inc*., 48 U.S.P.Q.2d 1058, 1060 (C.D. Cal. 1998).  In light of the very early stages of this case, this Court should grant Reexam Defendants' motion.

      C.      <u>A Stay Will Not Unduly Prejudice DataTreasury.</u>

      A stay will not unduly prejudice DataTreasury since this action is in its initial stages and DataTreasury was aware of the continuing reexamination prior to filing suit, and of the possibility that the Reexam Defendants would file a motion to stay pending the reexamination. *See Tap Pharm*., 70 U.S.P.Q.2d at 1319 ("Since the litigation is at such an early stage and since Plaintiffs had notice of the pending reexaminations, I find they will not be unduly prejudiced by a stay.").  Prior to filing its initial Complaint in this action, DataTreasury knew about the reexaminations, as well as at least five motions to stay pending the same reexaminations at issue

---

[9] Actually, this action is at an even earlier stage of litigation than *Watlow* was when the motion was granted.  In *Watlow*, the defendant had already filed an answer and counterclaim and the plaintiff had filed an answer to the counterclaim.  Here, only one of the fifty-six defendants has answered DataTreasury's Complaint.

here already on file.[10]  In fact, DataTreasury filed its response to those motions only three days

after filing its complaint in this action.[11]  DataTreasury cannot now argue that it would be unduly

prejudiced by something DataTreasury has known since inception of the case.

    In addition, this lawsuit against the Reexam Defendants is one of at least seventeen

lawsuits DataTreasury has brought against financial services related corporations since 2002

seeking damages for the alleged infringement of the Reexam Patents.  Given DataTreasury's

business, a stay of this case will not impede DataTreasury's business goals.  Instead, any

resulting delay is necessary to avoid the potential for inconsistent results that would likely occur

if this case proceeds simultaneously with the reexamination.  In addition to not disrupting

DataTreasury's business, a stay also will not impact DataTreasury's ability to recover damages

from the Reexam Defendants.  A prevailing party may recover damages against an infringer for

infringement that occurred up to six years prior to the date the complaint was filed.  35 U.S.C. §

---

[10] *See* Defs.' Mot. to Stay, *DataTreasury Corp. v. First Data Corp.*, Civil Action No. 5:03-CV-39-DF (E.D. Tex. Jan. 30, 2006); Def. Magtek, Inc.'s Mot. to Stay, *DataTreasury Corp. v. Magtek, Inc.*, Case No. 2:03-CV-459-DF (E.D. Tex. Feb. 10, 2006); ViewPointe Archive Services, LLC's Mot. to Stay Litig. Pending Completion of Reexamination, *DataTreasury Corp. v. ViewPointe Archive Servs., LLC*, Civil Action No. 2:05-cv-290-DF (E.D. Tex. Feb. 9, 2006); Def. Small Value Payments Co.'s Mot. to Stay, *DataTreasury Corp. v. Small Value Payments Co.*, No. 2-04-CV-85-DF (E.D. Tex. Jan. 27, 2006); Defs.' Mot. to Stay Case Pending Outcome of Patent Reexamination Proceedings, *DataTreasury Corp. v. Remitco, LLC*, Civil Action No. 5:05-CV-173-DF (E.D. Tex. Feb. 3, 2006).

[11] *See* Pl. DataTreasury Corp. Resp. & Opp'n to Def. Small Value Payments Co.'s Mot. to Stay, *DataTreasury Corp. v. Small Value Payments Co.*, No. 2:04-CV-85-DF, (E.D. Tex. Feb. 27, 2006); Pl. DataTreasury Corp.'s Resp. & Opp'n to Def. Magtek, Inc.'s Mot. to Stay, *DataTreasury Corp. v. Magtek, Inc.*, Case No. 2:03-CV-459-DF (E.D. Tex. Feb. 27, 2006); Pl. DataTreasury Corp.'s Resp. & Opp'n to Defs.' Mot. to Stay, *DataTreasury Corp. v. Remitco, LLC*, Civil Action No. 5:05-CV-173-DF (E.D. Tex. Feb. 27, 2006); Pl. DataTreasury Corp.'s Resp. & Opp'n to Def. First Data Corp.'s Mot. to Stay, *DataTreasury Corp. v. First Data Corp.*, Civil Action No. 5:03-CV-39-DF (E.D. Tex. Feb. 27, 2006); Pl. DataTreasury Corp.'s Resp. & Opp'n to Def. ViewPointe Archive Servs., LLC's Mot. to Stay, *DataTreasury Corp. v. ViewPointe Archive Servs., LLC*, Civil Action No. 2:05-cv-290-DF (E.D. Tex. Feb. 27, 2006).

286 (2000).  DataTreasury's opportunity for damages is unaffected by the length of the litigation or whether a stay is granted.

Moreover, the U.S. Patent Office is required to conduct reexaminations "with special dispatch."  35 U.S.C. §305.  As a result, it is anticipated that the reexamination would be completed, at the latest, less than two years after First Data sought reexamination of the Patents on November 25, 2005.  *See Ex Parte* Reexamination Data, Ex. D.  Given that the majority of reexaminations result in the cancellation or modification of at least some claims of a patent, the parties would save significant time and expense if this case were stayed pending the outcome of the reexamination.  *See id.*  Thus, DataTreasury will not suffer prejudice by this Court's granting Reexam Defendants' Motion to Stay.

## IV.  CONCLUSION

A stay will conserve resources for all involved and will prevent the potential inconsistency that would result if the Reexam Patents are construed differently by the U.S. Patent Office and the Court.  The work that lies ahead for all parties is substantial and costly, and should not be undertaken if it may be rendered meaningless when the U.S. Patent Office issues its decision on the reexamination.  Furthermore, DataTreasury will not suffer undue prejudice as a result of the stay, and actually may benefit from the stay.  Reexam Defendants therefore respectfully request that all proceedings in this case be stayed pending the outcome of the reexamination, as well as any additional and further relief this Court deems just and proper.  A proposed Order is attached hereto as Exhibit E.

Respectfully submitted this 11th day of October, 2006.

/s/ E. Danielle Thompson Williams____
William H. Boice
Steven Gardner

13

E. Danielle Thompson Williams
Audra A. Dial

KILPATRICK STOCKTON LLP
Suite 2800
1100 Peachtree Street
Atlanta, GA 30309-4530
Telephone: (404) 815-6500
Fax: (404) 815-6555

1001 West 4th Street
Winston-Salem, NC 27104
Telephone: (336) 607-7300
Fax: (336) 607-7500

Lance Lee
YOUNG, PICKETT & LEE
4122 Texas Boulevard
P. O. Box 1897
Texarkana, TX 75504

Attorneys for Defendants BB&T Corporation,
Branch Banking and Trust Company, Comerica
Inc., Comerica Bank & Trust National
Association, M&T Bank Corporation and M&T
Bank

## CERTIFICATE OF SERVICE

I hereby certify that on this date I caused to be served the foregoing DEFENDANTS' MOTION TO SEVER AND STAY CLAIMS RELATED TO BALLARD PATENTS PENDING REEXAMINATION on Plaintiff's counsel of record by electronic mail via the Court's CM/ECF system, pursuant to Local Court Rule 5, addressed as follows:

Edward L. Hohn                                    edhohn@nixlawfirm.com
Harold Wayne Nix                                 haroldnix@nixlawfirm.com
Nix Patterson & Roach, L.L.P.
205 Linda Drive
Daingerfield, TX 75638


Louis Brady Paddock, Esq.                        bpaddock@nixlawfirm.com
Anthony Bruster, Esq.                            akbruster@nixlawfirm.com
Richard B. King, Esq.                            benking@nixlawfirm.com
Nix Patterson & Roach, L.L.P.
2900 St. Michael Dr., 5th Floor
Texarkana, TX 75503


Rod A. Cooper, JD, MA                            rcooper@cooperiplaw.com
The Cooper Law Firm
5215 N. O'Connor Blvd.
Suite 1900
Irving, TX 75039


Eric M. Albritton                                ema@emafirm.com
Albritton Law Firm
109 W. Tyler
Longview, TX 75601


Joe Kendall                                      jkendall@provostumphrey.com
Karl Rupp                                        krupp@provostumphrey.com
Provost Umphrey Law Firm, L.L.P.
3232 McKinney Avenue, Suite 700
Dallas, TX 75204


T. John Ward Jr.                                 jw@jwfirm.com
Law Office of T. John Ward, Jr. P.C.
109 W. Tyler
Longview, TX 75601


Edward K. Chin, Esq.                             edchin@nixlawfirm.com
Nix Patterson & Roach, L.L.P.
5215 N. O'Connor Blvd.

Suite 1900
Irving, TX 75039

     This 11th day of October, 2006.

<u>s/ E. Danielle Thompson Williams</u>
E. Danielle Thompson Williams

Attorney for Defendants BB&T Corporation,
Branch Banking and Trust Company, Comerica
Inc., Comerica Bank & Trust National Association,
M&T Bank Corporation and M&T Bank

2