Datatreasury Corporation v. Wells Fargo & Company et al

Doc. 293 Att.

# EXHIBIT 1

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| DATATREASURY CORPORATION<br>*PLAINTIFF* | § <br> § <br> § | |
| vs. | § <br> § <br> § | |
| WELLS FARGO & COMPANY; WELLS<br>FARGO BANK, NATIONAL<br>ASSOCIATION; BANK OF AMERICA<br>CORPORATION; BANK OF AMERICA,<br>NATIONAL ASSOCIATION; U.S.<br>BANCORP; U.S. BANK, NATIONAL<br>ASSOCIATION; WACHOVIA<br>CORPORATION; WACHOVIA BANK,<br>NATIONAL ASSOCIATION; SUNTRUST<br>BANKS, INC.; SUNTRUST BANK; BB&T<br>CORPORATION; BRANCH BANKING<br>AND TRUST COMPANY;<br>BANCORPSOUTH, INC.;<br>BANCORPSOUTH BANK; COMPASS<br>BANCSHARES, INC.; COMPASS BANK;<br>CULLEN/FROST BANKERS, INC.; THE<br>FROST NATIONAL BANK; FIRST<br>HORIZON NATIONAL CORPORATION;<br>FIRST TENNESSEE BANK, NATIONAL<br>ASSOCIATION; HSBC NORTH<br>AMERICA HOLDINGS INC.; HSBC<br>BANK USA, N.A.; HARRIS BANKCORP,<br>INC.; HARRIS N.A.; NATIONAL CITY<br>CORPORATION; NATIONAL CITY<br>BANK; ZIONS BANCORPORATION;<br>ZIONS FIRST NATIONAL BANK;<br>BANK OF NEW YORK CO., INC.;<br>THE BANK OF NEW YORK;<br>UNIONBANCAL CORPORATION;<br>UNION BANK OF CALIFORNIA,<br>NATIONAL ASSOCIATION; BANK OF<br>TOKYO-MITSUBISHI UFJ, LTD.;<br>CITIZENS FINANCIAL GROUP, INC.<br>CITY NATIONAL CORPORATION;<br>CITY NATIONAL BANK; COMERICA | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Civil Action No. 2:06cv72<br><br><br><br>JURY TRIAL DEMANDED |

---

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims
Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

INCORPORATED; COMERICA BANK §
& TRUST, NATIONAL ASSOCIATION; §
DEUTSCHE BANK TRUST COMPANY §
AMERICAS; FIRST CITIZENS §
BANCSHARES, INC.; FIRST CITIZENS §
BANK & TRUST COMPANY; KEYCORP;§
KEYBANK NATIONAL ASSOCIATION; §
LASALLE BANK CORPORATION; §
LASALLE BANK NA; M&T BANK §
CORPORATION; M&T BANK; THE PNC §
FINANCIAL SERVICES GROUP, INC.; §
PNC BANK,NATIONAL ASSOCIATION §
UBS AMERICAS, INC.; SMALL VALUE §
PAYMENTS COMPANY, LLC; THE §
CLEARING HOUSE PAYMENTS §
COMPANY, LLC; MAGTEK, INC; FIRST §
DATA CORPORATION; TELECHECK §
SERVICES, INC., REMITCO, LLC and §
ELECTRONIC DATA SYSTEMS CORP. §
                                 §       JURY TRIAL DEMANDED
                                 §
           *DEFENDANTS*           §

---

**DATATREASURY CORPORATION'S CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTION TO SEVER AND STAY THE CLAIMS
RELATING TO THE BALLARD PATENTS
PENDING REEXAMINATION OF THE BALLARD PATENTS**

---

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims
Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

- ii -

# TABLE OF AUTHORITIES

**CASES**                                                       **Page(s)**

*Accent Designs, Inc. v. Jan Jewelry Designs, Inc.*, 1994 U.S. Dist.
LEXIS 4130 (S.D. N.Y. Apr. 6, 1994)........................................ 11, 16

*Agar Corp. v. Multi-Fluid, Inc.*, 983 F.Supp.1126 (S.D. Tex. 1997).............. 11

*Allied Elevator, Inc. v. East. Tex. State Bank*, 965 F.2d 34 (5th Cir. 1992)......... 7

*Amphenol T & M Antennas, Inc. v. Centurion Intn'l, Inc.*, 2001 U.S.
Dist. LEXIS 13795 (N.D. Ill. Sep. 5, 2001)........................... 11-12, 15

*Antor Media Corp. v. Nokia, Inc., et al.*, No. 2:05-CV-186
(E.D. Tex. 2006)........................................................... 9, 19-20

*Ariad Pharm., Inc. v. Mass. Inst. Of Tech.*, 2005 U.S. Dist.
LEXIS 10941 (D. Mass. Jun. 6, 2005)............................................ 11

*Arthrocare Corp. v. Smith & Nephew, Inc.*, 315 F. Supp. 2d 615
(D. Del. 2004) ................................................................... 16

*Castanho v. Jackson Marine, Inc.*, 484 F. Supp. 201 (E.D. Tex. 1980)............. 10

*CF NexMed Holdings, Inc. v. Block Investment, Inc.*, 2006 U.S.
Dist. LEXIS 3150 (D. Ut. Jan. 19, 2006) ..................................... 11

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509
(10th Cir. 1991)................................................................. 7

*Cognex Corp. v. Nat'l Instruments Corp.*, 2001 U.S. Dist. LEXIS 25555
(D. Del. Jun. 29, 2001).......................................................... 11

*Dow Chem. Co. v. Astro-Valcour, Inc.*, 110 F. Supp. 2d 104
(N.D. N.Y. 2000)............................................................... 16

*Emhart Industries, Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, 1987 U.S. Dist.
LEXIS 15033 (N.D. Ill. Feb. 2, 1987)............................................ 19

*Enprotech Corp. v. Autotech Corp.*, 1990 U.S. Dist. LEXIS
(N.D. Ill. 1990)................................................................. 18

---

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims
Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

- iii -

*Ethicon, Inc. v. Quigg*, 849 F.2d 1422 (Fed. Cir. 1988)………..………………. 16

*Gladish v. Tyco Toys, Inc.*, 1993 U.S. Dist. LEXIS 20211
(E.D. Cal. Sep. 16, 1993)……………………………………….……... 11, 18, 21-22

*Hoechst Celanese Corp v. BP Chemicals, Ltd.*, 78 F. 3d 1575
(Fed. Cir.), *cert. denied*, 519 U.S. 911 (1996)……………………………. 13

*IMAX Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1030
(C.D. Cal. 2005)……………………..……………………….... 10, 11, 18

*In Re: Columbia Univ. Patent Litigation*, 330 F. Supp. 2d 12
(D. Mass. 2004)……………………………………………………. 10, 16, 18

*Jain v. Trimas Corp.*, 2005 U.S. Dist. LEXIS 28950 (E.D. Cal.
Sep. 27, 2005)……………………………………………………………. 10

*Landis v. N. Amer. Co.*, 299 U.S. 248 (1936)…………………………….……. 3

*Little v. Bellsouth Telecommunication*, 1995 U.S. Dist. LEXIS
11208 (E.D. La. Aug. 7, 2005)……………………………………….... 3

*Motorola Inc. v. STMicroelectronics*, No. 1:03-CV-0407 (E.D.
Tex.)……..……………………………………………………….....….. 20

*NexMed Holdings, Inc. v. Block Investment, Inc.*, 2006 U.S. Dist.
LEXIS 3150 (D. Ut. Jan. 19, 2006)…………………………….… 11-12

*NTP, Inc. v. Research In Motion, Ltd.*, 397 F.Supp.2d 785
(E.D. Va. 2005)………………………………………………………. 3, 10-12

*Output Technology Corp. v. Dataproducts Corp.*, 1991 U.S. Dist.
LEXIS 20168 (W.D. Wa. Nov. 25, 1991) ………………………...…. 13, 16

*San Giacomo N.A., Ltd. v. Pilliod Furniture, Inc.*, 1996 U.S. Dist
LEXIS 14440 (M.D. N.C. Aug. 13, 1996)……………………………. 11, 18

*Soverain Software LLC v. Amazon.Com*, 356 F.Supp.2d 660
(E.D. Tex. 2005)……………………………………………….. 2, 3, 11, 14, 15

*Stryker Corp. v. Intermedics Orthopedics, Inc.*, 891 F. Supp. 751
(E.D. N.Y. 1995)……………………………………………………..…… 16

*Translogic Tech., Inc. v. Hitachi, Ltd.*, 2005 U.S. Dist. LEXIS 38853

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims
Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

- iv -

(D. Or. Dec. 13, 2005)...................................................... 11, 12, 16

*Viskase Corp. v. Amer. Nat'l Can Co.*, 261 F.3d 1316
    (Fed. Cir. 2001)........................................................... 3

*Xerox Corp. v. 3Com Corp.*, 69 F.Supp.2d 404
    (W.D. N.Y. 1999)....................................................... 11-12, 16-17

## FEDERAL STATUTES
Fed. R. Civ. P. 21.......................................................................... 3

## OTHER AUTHORITIES
*Manual of Patent Examining Procedure*, Sec. 1901.06 (8th ed. 2d rev.)................... 17

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims
Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

- v -

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................. 1

II.   BACKGROUND ................................................................. 2

III.  ARGUMENT ..................................................................... 3

      A.    CLAIMS RELATING TO THE BALLARD PATENTS
            SHOULD NOT BE SEVERED ........................................ 3

            1.    A Logical Relationship Exists Between the
                  Patent Infringement Claims ............................... 4

            2.    There is Overlapping Proof ............................... 5

            3.    The Alleged Efficiencies and Conservation of
                  Resources Which Defendants Hypothesize May
                  Follow From a Stay and Severance Will Not
                  Materialize in This Case ................................. 7

      B.    CLAIMS RELATING TO THE BALLARD PATENTS SHOULD
            NOT BE STAYED .......................................................... 10

            1.    The Stay Requested By Defendants Would Unduly
                  Prejudice DataTreasury .................................. 11

                  a.    A stay would likely place this lawsuit in
                        hiatus for several years and unduly
                        prejudice DataTreasury ......................... 11

                  b.    The USPTO's decision to proceed with
                        reexamination has far less import than
                        Defendants suggest ............................... 12

                  c.    The prospects for cancellation of all claims
                        in '988 and '137 as a result of reexamination
                        are dim ............................................. 13

                  d.    The theoretical possibility that some claims in
                        '988 and '137 might be amended or cancelled
                        as a result of reexamination does not warrant
                        a stay ............................................... 15

---

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims
Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

2.    The Reexamination Proceedings Will not Simplify
       or Eliminate Trial Issues – Various Issues,
       Including Inequitable Conduct and Invalidity,
       Will Remain Disputed ....................................................... 17

       a.    Inequitable conduct .......................................... 17

       b.    Invalidity ...................................................... 18

       c.    The scope of the litigation is now broader
              than the two patents in reexamination,
              and litigation between the majority of these
              parties will continue even if a stay were
              granted as to the '988 and '137 patents ................... 20

3.    Under the Circumstances Present Here, an
       Indefinite Delay of This Lawsuit Would be
       Inappropriate ................................................................. 22

IV.    CONCLUSION ................................................................. 23

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims
Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

- vii -

Plaintiff, DataTreasury Corporation ("DataTreasury"), files this response to Defendants Harris Bankcorp, Inc., Harris N.A., KeyBank National Association, KeyCorp, PNC Bank, The PNC Financial Services Group, Inc., SunTrust Bank, SunTrust Banks, Inc., and Electronic Data Systems Corp. ("Moving Defendants")[1] Motion to Sever and Stay the Claims Relating to the Ballard Patents Pending Reexamination of the Ballard Patents ("Motion"). DataTreasury respectfully submits that Defendants' Motion should be denied for the reasons set forth more fully herein. In support thereof, DataTreasury would show the Court as follows:

## I.    INTRODUCTION

On February 24, 2006, DataTreasury filed the instant suit alleging patent infringement by the defendants to this action.[2] Since 2002, DataTreasury has sought redress in the courts of the Eastern District of Texas for widespread and ongoing infringement of its patents. During this time period, multiple companies within and outside the financial industry have conceded the validity, enforceability, and infringement

---

[1] DataTreasury also incorporates the arguments made herein in Response to Defendants City National Bank, City National Corporation (Dkt. No. 262); The Bank of New York, The Bank of New York Co., Inc., UnionBanCal Corp., Union Bank of California, National Association (Dkt. No. 263); The Clearing House Payments Co., LLC (Dkt. No. 267); Natoinal City Corporation, National City Bank, U.S. Bancorp, U.S. Bank, National Association (Dkt. No. 271); Zions First National Bank, Zions Bancorporation (Dkt. No. 272); Compass Bancshares, Inc., First Horizon National Corp., First Tennessee Bank, National Association (Dkt. No. 273); Cullen/Frost Bankers, Inc., The Frost National Bank (Dkt. No. 278); Bank of Tokyo-Mitsubishi UFJ, LTD (Dkt. No.281); Deutsche Bank Trust Company Americas (Dkt. No. 282); LaSalle Bank Corporation, LaSalle Bank National Association (Dkt. No. 284); Citizens Financial Group, Inc. (Dkt. No. 285); First Citizens Bank & Trust Company (Dkt. No. 289); UBS Americas, Inc. (Dkt. No.290); Branch Banking and Trust Co., Comerica, Inc., Comerica Bank & Trust, National Association, M&T Bank Corp., M&T Bank, BB&T Corp. (Dkt. No. 292) ("Joining Defendants") motions joining in Moving Defendants' Motion to Sever and Stay. The Moving Defendants and Joining Defendants are collectively referred to as "Defendants" unless the context indicates otherwise.

[2] The lawsuit alleges infringement of United States Patent Nos. 5,910,988 ("the '988 patent"); 6,032,137 ("the '137 patent"); 5,265,007 ("the '007 patent"); 5,583,759 ("the '759 patent"); 5,717,868 ("the '868 patent"); and 5,930,778 ("the '778 patent") issued by the United States Patent and Trademark Office ("USPTO") and held by DataTreasury.

---

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

of patents held by DataTreasury, particularly those relating to the '988 and '137 Patents. Those concessions have come through the settlement of lawsuits as well as through licensing agreements negotiated outside the litigation arena.

## II.    BACKGROUND

Despite the recognition of DataTreasury's valid and enforceable patent rights, efforts by defendants to avoid the repercussions of infringing DataTreasury's patents in DataTreasury's chosen forum continue.  Just as many others have unsuccessfully argued in the past, Defendants in this matter argue that the Court should postpone the litigation relating to the '988 and '137 Patents because First Data Corporation filed for reexamination of these Patents with the USPTO.  Moving Defendants filed their Motion to Sever and Stay the Claims Relating to the Ballard Patents Pending Reexamination of the Ballard Patents on September 19, 2006.  Since that time, many Joining Defendants have followed suit.  These Motions largely replicate the arguments earlier raised – unsuccessfully – by defendants in the related actions filed by DataTreasury and pending before this Court.   Herein, DataTreasury demonstrates that the Defendants' request for severance and stay should be rejected, that their efficiency and cost arguments are unpersuasive, and that no preemption of the litigation is appropriate at this time. Ultimately, "staying the case, based solely on speculation of what might possibly happen during reexamination, would be inefficient and inappropriate." *Soverain Software LLC v. Amazon.Com*, 356 F.Supp.2d 660, 663 (E.D. Tex. 2005).

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

- 2 -

### III.    ARGUMENT

"The district court has the inherent power to control its docket...." *Soverain Software*, 356 F.Supp.2d at 662. A district court is vested with concomitant plenary license to deny a litigant's request for stay of suit and severance of claims. *See Viskase Corp. v. Amer. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001) ("the court is not required to stay judicial resolution in view of the reexaminations"); *Soverain Software*, 356 F.Supp.2d at 662; *Landis v. N. Amer. Co.*, 299 U.S. 248, 254 (1936); *NTP, Inc. v. Research In Motion, Ltd.*, 397 F.Supp.2d 785, 787 (E.D. Va. 2005) ("a court is under no obligation to delay its own proceedings by yielding to ongoing PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze"); *see also, e.g. Little v. Bellsouth Telecommunication*, 1995 U.S. Dist. LEXIS 11208 , at *2-3 (E.D. La. Aug. 7, 1995) (denying movant's motion for severance).

### A.    CLAIMS RELATING TO THE BALLARD PATENTS SHOULD NOT BE SEVERED

When assessing a motion to sever under Federal Rule of Civil Procedure 21, courts should consider whether there is a logical relationship between the claims, and whether there is any overlapping proof or legal question. *Bellsouth Telecommunication*, 1995 U.S. Dist. LEXIS 11208 , at *2 (citations omitted). In this case, there is a logical relationship between the patent infringement claims against the Defendants arising from the six patents-in-suit, and the Defendants, as they must, recognize the similarity among these patents in their Motion. *See* Motion at 14 ("both sets of patents are generally directed to the broad field of check processing..."). This fact and admission alone counters Defendants' arguments for severance.    Additionally, given the logical

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

- 3 -

relationship between the patent infringement claims and the processes in the banking and payments industries, there will be significant overlapping proof and legal questions. Indeed, much of the discovery – and in particular witness testimony – will be shared between the six patents-in-suit.

## 1.    A Logical Relationship Exists Between the Patent Infringement Claims

DataTreasury's patent infringement claims arise out of six patents-in-suit, which address various related aspects of financial instrument and payment processing in the banking and payments industries.[3]  The Ballard patents ('988 and '137 Patents) address remote image capture with centralized processing and storage of checks, documents, and receipts.  The '007 Patent addresses the use of a central check clearing system in the banking and payments industries.  The '868 Patent addresses the use of an electronic payment interchange concentrator for the reception, transmission, translation, and storage of data relating to financial instruments shared among and between multiple institutions in the banking and payments industries. The '778 Patent addresses a system for the use of an item capture facility for expediting the processing of checks and other financial instruments into the payment system.  The '759 Patent addresses a system for expediting the deposit, transport, and submission of checks into the payment system.

The logical relationship between the patent infringement claims is clear. DataTreasury's claims of infringement across the six patents-in-suit implicate the

---

[3] '988 Patent: Remote Image Capture with Centralized Processing and Storage; '137 Patent: Remote Image Capture with Centralized Processing and Storage; '007 Patent: Central Check Clearing System; '868 Patent: Electronic Payment Interchange Concentrator; '778 Patent: System for Expediting the Clearing of Financial Instruments and Coordinating the Same with Invoice Processing at the Point of Receipt; and '759 Patent: Mechanism for Expediting the Deposit, Transport and Submission of Checks into the Payment System.

---

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

- 4 -

processing of checks, financial instruments, and the data relating to the payment systems utilized by the banking and payment industries. As distinct patents, there are differences among them in that they are patentable over each other under United States Patent Law and as determined by the USPTO. However, the patentable differences between the Ballard patents and the other patents do not diminish the fact that every patent-in-suit applies to the processing of financial instruments in the banking and payments industries.

The Ballard patents are not so distinct from the other patents-in-suit in their relationship to the processing of financial instruments in the banking and payments industries such that severance would be appropriate. Indeed, other Defendants in previous and pending DataTreasury patent litigations involving the '988 and '137 Patents have asserted the '778 Patent as invalidating prior art. It is anticipated that the Defendants in this case will also assert that the '778 Patent is invalidating prior art for the '988 and '137 Patents. Although DataTreasury will show that the '778 Patent is not invalidating prior art, it is undisputed that the patents are similar in subject matter, which further suggests that severance is inappropriate.

### 2.    There is Overlapping Proof

There is overlapping proof among the patents-in-suit. At a minimum, fact discovery for the patents-in-suit will address how the Defendants process (i.e., receive, image capture, transmit, handle, and store) checks and financial instruments. Given that all the patents-in-suit center around the Defendants' processing of checks and financial instruments, the Ballard patents and the other patents-in-suit share common questions of fact such as: How does each Defendant receive, transmit and store check images, checks,

---

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

- 5 -

and financial instruments?  What check processing hardware and software does each Defendant use?  How did each Defendant's payment processing system develop over time and when were certain relevant features developed?  What third party hardware and software vendors are used by each Defendant for check processing and how are such hardware and software implemented in each Defendant's system?  What has each Defendant disclosed to third parties about its check processing systems and methods? What are each Defendant's corporate philosophies and actions concerning respecting the patents of others?  Duplicative production and review of documents and the taking of depositions and other discovery as to these common issues advise against severance.

Retreading the same ground on these issues for separate cases is wasteful and needlessly duplicative. For example, a substantial number of the Defendants are co-owners or users of Small Value Payment Company ("SVPCo")[4], whose services include paper check clearing, electronic check presentment, and check image exchange, and Viewpointe[5], whose services include check image storage and exchange services for financial institutions. The ownership and use of SVPCo and Viewpointe by the Defendants for check processing and check image storage presents common questions of fact that should be discovered in a single case, not in multiple cases.  Common evidence about how SVPCo and Viewpointe operate and how the Defendants use those services as part of their allegedly infringing check and payments processing systems and methods

---

[4]  Defendants which are co-owners or users of SVPCo include Bank of America, BB&T, Comerica, HSBC, KeyBank, LaSalle, M&T Bank, National City Bank, PNC Bank, Union Bank of California, Wachovia, and Wells Fargo.

[5]  Defendants which are co-owners or users of Viewpointe include BancorpSouth, Bank of America, BB&T, Compass Bank, Frost National Bank, First Horizon, Harris Bankcorp, HSBC, National City, Suntrust, US Bancorp, Wells Fargo, and Zions First National Bank.

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

- 6 -

will likely be offered against the Defendants for the patents-in-suit, not just for the Ballard patents.

      **3.**      **The Alleged Efficiencies and Conservation of Resources Which Defendants Hypothesize May Follow From a Stay and Severance Will Not Materialize in This Case**

Defendants ornament their claims of increased efficiencies by arguing that a stay and severance of the '988 and '137 patent claims "would remove 16 of the 58 defendants and eliminate 93 of the 224 total potential patent claims form this case and thus go a long way toward bringing order to this currently unwieldy case." Motion, p. 1. As a result, Defendants suggest there would be "one third fewer pleadings to be filed, one third fewer accused instrumentalities to be considered, and one third fewer voices to be heard." Id. at 9. Defendants further claim that severing and staying the '988 and '137 Patent claims would reduce the number of claim construction disputes, the number of dispositive motions and the number of discovery disputes, as well as narrowing the scope of third-party discovery. Id. at 9-10.

What Defendants' analysis does not take into account is that a severance would result in <u>two</u> separate lawsuits. *Allied Elevator, Inc. v. East Tex. State Bank*, 965 F.2d 34, 36 (5th Cir. 1992); *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1519 n.8 (10th Cir. 1991). Once a claim is severed from a suit, it proceeds as a discrete, independent action, with its own set of pleadings, discovery, trial, judgment, and appeal. *Allied Elevator*, 965 F.2d at 36; *Chrysler Credit Corp.*, 928 F.2d at 1519 n.8. Therefore, instead of one suit with 58 related defendants entailing interrelated and overlapping discovery, related entities, common issues of law and fact, and a plethora of other

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

- 7 -

similarities, a severance of the '988 and '137 Patent claims would result in two entirely separate, yet duplicative suits – one with 58 defendants (those alleged to infringe the '988 and '137 Patents) and one with 42 defendants (those alleged to infringe the "Huntington" Patents). Both lawsuits would come with all the trappings of a complex case – each with its own voluminous set of pleadings, discovery, and a multiplicity of hearings. Looking at the practical consequences, Defendants' suggestion that a stay and severance will result in "one third fewer pleadings to be filed, one third fewer accused instrumentalities to be considered, and one third fewer voices to be heard" among other alleged "efficiencies" is way off base. Instead of there being a reduced burden on the Court, the Court and the parties will be faced with two lawsuits involving essentially twice the number of defendants, twice the number of pleadings, twice the amount of discovery, twice the number of hearings, and twice the voices to be heard. Many of the efficiencies Defendants suggest will be gained through severance can just as easily be gained through cooperation amongst and between the parties by filing consolidated motions and responses when possible and having an efficient discovery plan.

The Defendants also maintain that the relief they request will "produce significant judicial savings by reducing the number of claim construction disputes." Motion, p. 9. Not so. The Court's claim construction work is substantially complete on the '988 and '137 Patents. Not only has the Court already entered a thorough *Markman* ruling, but since that time multiple defendants have tested the Court's ruling and several have taken

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

- 8 -

another crack at the patent terms and claims.[6]   While new defendants are certainly entitled to their own tilt at this particular windmill, the idea that claim construction on '988 and '137 in this lawsuit will significantly drain the resources of the Court or the litigants makes no sense in the factual and procedural context of this particular case.[7] Thus, the defendants' argument that, "absent a stay, the Court may waste precious resources deciding *Markman* issues" (Motion, p. 10) lacks any merit.

Additionally, the parties have, for the most part, reached an agreement on a proposed docket control order in this case.   Under the proposed schedule, a claim construction hearing in this case would go forward in late September 2007.   Until that time the parties to this litigation will naturally focus their primary efforts on claim construction issues and discovery, and the bulk of fact discovery would begin in the fall of 2007.  Because the Court's work – and that of the litigants – as to claim construction on '988 and '137 is largely complete, and because the parties are proposing to engage in the claim construction stage of the case through late 2007, the "massive undertaking" posited by defendants is a distant threat.[8]  Since a thorough *Markman* order has already

---

[6] Defendants in the related actions –  specifically Cause Nos. 5:03-CV-039, 2:03-CV-459, and 5:02-CV-095 – have proceeded beyond the claim construction phase as to the '988 and '137 Patents in their respective litigation.

[7] As this Court noted recently in *Antor Media*, "each motion to stay pending reexamination filed in this Court is considered on a case by case basis with each cause of action presenting distinct circumstance...." *Antor Media Corp. v. Nokia, Inc., et al.*, No. 2:05-CV-186 (Docket No. 410) (E.D. Tex. 2006) (Order entered by Judge Folsom on Sept. 27, 2006).

[8] At best, Defendants' Motion for Severance and Stay is premature.  Since the parties will not be faced with and substantial new ground to cover on '988 and '137 until after the claim construction phase of this litigation (i.e. late 2007), the Defendants' Motion should either be denied outright, as DataTreasury requests, or, alternatively, denied without prejudice to re-filing once claim construction is complete, or carried until that time.  The '988 and '137 Patents have gone through claim construction by this Court in multiple cases already.   There would be no harm to Defendants in delaying the consideration of their Motion until after the claim construction phase in this matter since the parties will logically be

---

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

been entered for the '988 and '137 Patents, this scenario also would not prejudice the parties since there would still be ample time to frame fact discovery around any changes to the '988 and '137 Patents which might theoretically result from reexamination.

The relief sought by Defendants does not serve the interests of justice and does not further a prompt and efficient resolution of this litigation. Instead, a severance of the claims only increases the overall burden on the parties and the Court and would needlessly increase delays, inconvenience, and expense in bringing this litigation to a close.

### B.    CLAIMS RELATING TO THE BALLARD PATENTS SHOULD NOT BE STAYED

The rule in this district and elsewhere is that the burden of proof and persuasion to establish the need for and propriety of the stay rests squarely with the defendants, as the parties seeking delay. "The supplicant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Castanho v. Jackson Marine, Inc.*, 484 F. Supp. 201, 209 (E.D. Tex. 1980); *accord IMAX Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1030 (C.D. Cal. 2005) (internal citations omitted).

While some courts have referenced perceived potential advantages in staying a pending lawsuit where reexamination proceedings are undertaken by the USPTO, a

---

concentrating their resources for the next year on claim construction discovery and pleadings as to the Huntington patents, which, unlike '988 and '137 Patents, have not yet been construed by this Court. This would allow the case to proceed as is without needlessly severing and staying the '988 and '137 Patent claims from the case, at a time when minimal judicial and litigant resources would have been directed toward those patents anyway.

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

significant number of judicial opinions from across the nation have denied such stays, citing a wide range of disadvantages and inequities.[9]

Various factors have been cited as relevant to a determination whether or not to stay a lawsuit when the USPTO agrees to reexamine a patent-in-suit. These include: (1) whether a stay would unduly prejudice or present a clear tactical advantage to the non-movant; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *Soverain Software LLC v. Amazon.Com*, 356 F.Supp.2d 660, 662 (E.D. Tex. 2005).

1. **The Stay Requested By Defendants Would Unduly Prejudice DataTreasury**

   a. **A stay would likely place this lawsuit in hiatus for several years and unduly prejudice DataTreasury**

Key to the reasoning underpinning many of the judicial opinions denying a stay is the inordinate delay endemic to such a measure. These Defendants, unlike those who earlier brought identical motions, have not claimed that the stay would be limited to just a few months, and wisely so, since the duration of reexamination proceedings is not realistically measured in months but in multiple years. *NexMed Holdings, Inc. v. Block*

---

[9]*CF NexMed Holdings, Inc. v. Block Investment, Inc.*, 2006 U.S. Dist. LEXIS 3150 (D. Ut. Jan. 19, 2006); *Translogic Tech., Inc. v. Hitachi, Ltd.*, 2005 U.S. Dist. LEXIS 38853 (D. Or. Dec. 13, 2005); *NTP, Inc. v. Research In Motion, Ltd.*, 397 F.Supp.2d 785, 788-89 (E.D. Va. 2005); *Jain v. Trimas Corp.*, 2005 U.S. Dist. LEXIS 28950 (E.D. Cal. Sep. 27, 2005); *IMAX Corp. v. In-Three, Inc.*, 385 F.Supp. 2d 1030 (C.D. Cal. 2005); *Ariad Pharm., Inc. v. Mass. Inst. Of Tech.*, 2005 U.S. Dist. LEXIS 10941 (D. Mass. Jun. 6, 2005); *In Re: Columbia Univ. Patent Litigation*, 330 F. Supp. 2d 12, 15-16 (D. Mass. 2004); *Amphenol T & M Antennas, Inc. v. Centurion Intn'l, Inc.*, 2001 U.S. Dist. LEXIS 13795 (N.D. Ill. Sep. 5, 2001); *Cognex Corp. v. Nat'l Instruments Corp.*, 2001 U.S. Dist. LEXIS 25555 (D. Del. Jun. 29, 2001); *Xerox Corp. v. 3Com Corp.*, 69 F.Supp.2d 404, 407-408 (W.D. N.Y. 1999); *Agar Corp. v. Multi-Fluid, Inc.*, 983 F.Supp. 1126, 1127 (S.D. Tex. 1997); *San Giacomo N.A., Ltd. v. Pilliod Furniture, Inc.*, 1996 U.S. Dist. LEXIS 14440 (M.D. N.C. Aug. 13, 1996); *Accent Designs, Inc. v. Jan Jewelry Designs, Inc.*, 1994 U.S. Dist. LEXIS 4130 (S.D. N.Y. Apr. 6, 1994); *Gladish v. Tyco Toys, Inc.*, 1993 U.S. Dist. LEXIS 20211 (E.D. Cal. Sep. 16, 1993).

---

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

- 11 -

*Investment, Inc.*, 2006 U.S. Dist. LEXIS 3150 (D. Ut. Jan. 19, 2006) (observing that granting a stay of suit to await reexamination outcome could forestall lawsuit for up to five years); *Translogic Tech., Inc. v. Hitachi, Ltd.*, 2005 U.S. Dist. LEXIS 38853 (D. Or. Dec. 13, 2005) (district court lifted a stay after three and a half years, "because the reexamination proceedings appeared likely to continue for years" – reexamination proceedings then continued for at least *another* two years thereafter); *NTP, Inc. v. Research In Motion, Ltd.*, 397 F.Supp.2d 785, 788 (E.D. Va. 2005) ("[r]eality and past experience dictate that several years might very well pass from the time when a final office action is issued by the PTO to when the claims are finally and officially 'confirmed' after appeal"); *Amphenol T & M Antennas, Inc. v. Centurion Intn'l, Inc.*, 2001 U.S. Dist. LEXIS 13795, *7 (N.D. Ill. Sep. 5, 2001) ("[w]hat is clear is that there would be a long delay between the time that a stay is granted and the time that the PTO finishes its reexamination proceeding ..."); *Xerox Corp. v. 3Com Corp.*, 69 F.Supp.2d 404, 407 (W.D. N.Y. 1999) ("[w]hile the PTO is directed by statute to conduct reexamination proceedings with "special dispatch" ... the procedure would nonetheless involve a lengthy delay"). Thus, the Defendants' request, if granted, would very likely place DataTreasury's lawsuit – and its patent rights under '988 and '137 – in hiatus for years, to DataTreasury's sole detriment.

        **b.**      **<u>The USPTO's decision to proceed with reexamination has far less import than Defendants suggest</u>**

      Defendants intimate that the Court should view the '988 and '137 Patents as vulnerable merely because the USPTO has agreed to a reexamination. Motion, p. 9-10. A grant of reexamination is such a mundane occurrence that no inference can be drawn

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

- 12 -

that a patent as a whole, or any of the patent's component claims, might be invalidated or meaningfully amended by the USPTO. *See, e.g., Hoechst Celanese Corp v. BP Chemicals, Ltd.*, 78 F. 3d 1575, 1584 (Fed. Cir.), *cert. denied*, 519 U.S. 911 (1996) ("grant of a request for reexamination, although surely evidence that the criterion for reexamination has been met … does not establish a likelihood of patent invalidity").[10]

Despite the high number and percentage of USPTO determinations that "[t]here are substantial new questions of patentability," of all the patents reexamined since 1981 at the request of a third party, *the USPTO has confirmed all patent claims in almost 1 out of every 3 instances (29%)*, and changed some claims and left others unchanged in about 6 of every 10 instances (59%). In contrast, the USPTO has canceled all claims in an overwhelming minority of instances – less than 1 in 8 (12%). Tempering the exuberant optimism of the Defendants and their fellow infringers, then, are the historical odds, which plainly do not favor the elimination of DataTreasury's claims as a result of reexamination. This reality renders suspect the Defendants' supposition that without a severance and stay, the parties and Court will waste time and resources litigating patent "claims which are modified or eliminated altogether by the reexamination process." Motion, p. 10.

  c.  <u>The prospects for cancellation of all claims in '988 and '137 as a result of reexamination are dim</u>

Many of the Defendants' efficiency and simplification arguments ring hollow. In fact, most of these positions have been rejected by other courts. The defendants maintain that the 93 separate claims which comprise the '988 and '137 patents could be canceled

---

[10]*Accord Output Technology Corp. v. Dataproducts Corp.*, 1991 U.S. Dist. LEXIS 20168, *6 (W.D. Wa. Nov. 25, 1991).

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

- 13 -

altogether.  Motion, p. 10. This is a statistically unrealistic proposition, as shown in

section II.A.1.b, *supra*.  *See also Soverain Software LLC v. Amazon.Com*, 356 F.Supp.2d

660, 662 (E.D. Tex. 2005) ("[w]hile reexamination would substantially simplify this case

if the PTO finds that all allegedly infringed claims of any of the patents are cancelled,

this historically happens in only 12% of reexaminations requested by a third party").

Moreover, First Data's arguments on reexam are best founded on grounds of

obviousness.  However, DataTreasury has amassed strong secondary considerations

through the many non-litigation licenses as well as consent judgments entered and agreed

to regarding the validity of the '988 and '137 patents.

Additionally, the scenario the Defendants suggest is highly implausible in light of

the wider historical backdrop of this litigation.  First Data was not the first infringer to

unearth the alleged "prior art" it has advanced to the USPTO.  JP Morgan Chase and

Ingenico have advanced similar arguments, only to ultimately recognize the validity of

the '988 and '137 Patents.[11]  These Defendants (and all the others who have filed copycat

motions of their own) will doubtless reply "that was them not us."  But it defies reason to

believe that JP Morgan Chase and Skadden Arps, or Ingenico and Nixon & Vanderhye,

---

[11] JP Morgan Chase, one of the five largest banks in the United States and an earlier defendant in the DataTreasury litigation, was represented by Skadden, Arps, Slate, Meagher & Flom, LLP, the largest law firm in the United States employing some 1,750 lawyers.  JPMC expended untold millions of dollars in legal fees and expense to pursue "prior art" evidence through dozens of third-party depositions all over the country.  The "new" alleged prior art championed by First Data is largely a regurgitation of Skadden's earlier work.  That work did not result in a judicial finding of invalidity in favor of JP Morgan Chase. Instead, Skadden – armed with the same alleged prior art now wielded by First Data - ultimately **did not even file a summary judgment motion alleging invalidity of '988 and '137 against DataTreasury.** Rather, JP Morgan Chase wisely settled with DataTreasury, entering a consent judgment **admitting** the validity of '988 and '137 **even in the face of this same alleged prior art**.  The same can be said for Ingenico, a defendant which actually filed invalidity summary judgment pleadings, then abandoned this tact in favor of a settlement with DataTreasury and the entry of a consent judgment agreeing that '988 and '137 are valid and enforceable.  Invalidity, then, hardly represents an untrodden path in this litigation, and the "prior art" cited by First Data is old news.

---

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims
Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

- 14 -

would have charted the course they did if this alleged "prior art" remotely resembled a "kill shot." Thus, to the extent that the Court is inclined to handicap the outcome of the USPTO reexamination proceedings in determining whether these will truly "streamline" or obviate the pending litigation, that calculation does not favor a stay.

        **d.**    **The theoretical possibility that some claims in '988 and '137 might be amended or cancelled as a result of reexamination does not warrant a stay**

     The Defendants are not aided by the argument that even if all the claims of '988 and '137 are not invalidated, some claims will likely be so dramatically altered as to dictate that the Court stay this lawsuit in the interim.[12] Motion 9-11. On the contrary, a bevy of opinions addressing this very issue recognize that it is entirely appropriate and indeed advisable to proceed with litigation while reexamination proceedings are pending, rather than place a "live" ongoing lawsuit into hiatus by granting a stay. One such recent case, from this very District, is *Soverain Software.* 356 F.Supp.2d at 662 ("the Court is unwilling to adopt a *per* se rule that patent cases should be stayed during reexamination because some of the relevant claims may be affected. To do so would not promote the efficient and timely resolution of patent cases, but would invite parties to unilaterally derail timely patent case resolution by seeking reexamination. *Some of the claims may*

---

[12] Contrary to the Defendants' allegation that the reexamination must significantly impact this litigation, "it is unclear whether the PTO's reexamination of the ... patent would affect litigation in the present suit. On the one hand, the PTO may not modify the ... patent, in which case the parties would be in the same position at the end of the reexamination process as they are now. On the other hand, some of the ... patent's claims could be altered in a way favorable to [the alleged infringer], but this result might have only a minimal effect on the pending litigation. For example, the court could eventually grant [defendant's] motion for partial summary judgment as to invalidity of precisely the same claims that the PTO altered in [defendant's] favor. In that case, the PTO's actions would be immaterial in their impact to this litigation." *Amphenol T & M Antennas, Inc. v. Centurion Intn'l, Inc.*, 2001 U.S. Dist. LEXIS 13795, *6 (N.D. Ill. Sep. 5, 2001).

---

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

- 15 -

*change in this case, but the Court is of the opinion that the interests of justice will be*

*better served by dealing with that contingency when and if it occurs, rather than putting*

*this case indefinitely on hold.* Firm trial settings resolve cases and reduce litigation

costs") (emphasis added).

Other courts have been similarly recalcitrant to stay litigation merely because

reexamination could potentially narrow or change some claims, and have acknowledged

that reexamination and litigation can effectively and appropriately proceed

simultaneously. As the Federal Circuit has noted, "the awkwardness presumed to result

if the PTO and court reach different conclusions is more apparent than real. The two

forums take different approaches in determining invalidity and on the same evidence

could quite properly come to different conclusions." *Ethicon, Inc. v. Quigg*, 849 F.2d

1422, 1428 (Fed. Cir. 1988). This precept has been widely accepted.[13]

The propriety of a dual track patent invalidity review was laid out cogently in *In*

*Re: Columbia Univ. Patent Litigation*: "The courts and the PTO take different approaches

to examining the validity of a patent. Consequently, the courts and PTO may properly

reach different conclusions on the same evidence. The court may also consider different

---

[13] *See Translogic Tech., Inc. v. Hitachi, Ltd.*, 2005 U.S. Dist. LEXIS 38853, *9 (D. Or. Dec. 13, 2005) ("[d]istrict courts are not … bound by the Board's [reexamination] rulings, and district courts are not required to stay litigation under these circumstances"); *Accent Designs, Inc. v. Jan Jewelry Designs, Inc.*, 1994 U.S. Dist. LEXIS 4130 (S.D. N.Y. Apr. 6, 1994) ("the functions of the courts and the Patent Office are very different and are concepts not in conflict") (internal citations omitted); *Output Technology Corp. v. Dataproducts Corp.*, 1991 U.S. Dist. LEXIS 20168, *5-6 (W.D. Wa. Nov. 25, 1991) (same holding); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 891 F. Supp. 751, 812 (E.D. N.Y. 1995) (ruling that district court was "not bound by the findings of the … patent reexamination proceeding, because the proceeding entails a dissimilar record with different standards of proof than th[e] judicial proceeding"); *Dow Chem. Co. v. Astro-Valcour, Inc.*, 110 F. Supp. 2d 104, 109 (N.D. N.Y. 2000) ("[r]eexamination before the Patent and Trademark Office and litigation in the courts are distinct proceedings. *** The burden of proving invalidity by clear and convincing evidence remains unchanged, despite any decision of the Patent and Trademark Office"); *Arthrocare Corp. v. Smith & Nephew, Inc.*, 315 F. Supp. 2d 615, 619-20 (D. Del. 2004) (same holding).

---

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims
Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

or additional evidence. Perhaps most importantly, the court can consider additional issues … that the PTO either will not or cannot consider. *** Judicial proceedings are also far more adversarial than re-examination … proceedings before the PTO. *** *Therefore, judicial proceedings have a significant advantage in reaching a correct result* 330 F.Supp.2d 12, 15-16 (D. Mass. 2004) (internal citations omitted) (emphasis added); *see also, Xerox Corp. v. 3Com Corp.*, 69 F.Supp.2d 404, 407-408 (W.D. N.Y. 1999) ("the inquiries of the PTO on reexamination and the issues before the district court in an infringement action are quite distinct. *** If the district court determines that a patent is not invalid, the PTO will continue its reexamination because the two forums have different standards of proof for determining invalidity, such that the doctrine of collateral estoppel would not bar the PTO's reexamination. On the other hand, if the district court determines that the patent is invalid, and that decision is either upheld on appeal or not appealed, the PTO may discontinue the reexamination, since the district court's order could have res judicata effect …") (internal citations omitted). These cases show that parallel proceedings before the Court and the USPTO are commonplace, and that the defendants' efficiency and trial simplification arguments fall wide of the mark.

    2.    **The Reexamination Proceedings Will not Simplify or Eliminate Trial Issues – Various Issues, Including Inequitable Conduct and Invalidity, Will Remain Disputed**

        a.    <u>**Inequitable conduct**</u>

In the suit at bar, the Defendants are expected to raise defenses which cannot be considered by the USPTO during the course of reexamination proceedings as to '988 and '137, such as the allegation of inequitable conduct during prosecution of the patents. The

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

- 17 -

reexamination proceeding would not finally pretermit all issues in this case under such circumstances because the USPTO will not resolve claims of inequitable conduct.  In fact, in reexamination proceedings "the examiner will not, under any circumstances, treat or discuss … arguments or points directed to … 'inequitable conduct.'"  *Manual of Patent Examining Procedure*, Sec. 1901.06 (8th ed. 2d rev.).

Many courts have highlighted this fact when denying stays. *See, e.g., In Re: Columbia Univ. Patent Litigation*, 330 F. Supp. 2d 12, 15-16 (D. Mass. 2004) (denying stay in part because "most importantly, the [district] court can consider additional issues such as prosecution laches and inequitable conduct that the PTO either will not or cannot consider"); *IMAX Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1030 (C.D. Cal. 2005) (same holding); *Enprotech Corp. v. Autotech Corp.*, 1990 U.S. Dist. LEXIS *2-3 (N.D. Ill. 1990) (denying stay in part because PTO would not resolve claims of inequitable conduct); *San Giacomo N.A., Ltd. v. Pilliod Furniture, Inc.*, 1996 U.S. Dist LEXIS 14440, *6-7 (M.D. N.C. Aug. 13, 1996) (denying stay where defendant had "asserted the unenforceability of the … patent for inequitable conduct in failing to disclose prior art to the PTO," and thus "the reexamination proceedings, whatever the result, will not resolve all of the issues involved in th[e] case").

### b. <u>Invalidity</u>

The USPTO's invalidity analysis is significantly narrower than that which is conducted in a federal district court.  *See, e.g., IMAX Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1030 (C.D. Cal. 2005); *Gladish v. Tyco Toys, Inc.*, 1993 U.S. Dist. LEXIS 20211 (E.D. Cal. Sep. 16, 1993) (court concluded it was "the only forum for complete

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

- 18 -

consideration of evidence ... of invalidity" because invalidity was asserted on more grounds than prior publications and patents, the only grounds that the USPTO will consider during reexamination. Because the standards for assessing invalidity are different before this Court and the USPTO, the defendants are not bound by a decision of the USPTO that the prior art references advanced by First Data in the reexamination requests do not invalidate '988 and '137. This consideration also militates against any stay.

Indeed, even though the defendants now seek to wield the reexamination proceedings as a sword – indefinitely forestalling the litigation which will prove their liability for infringement – they have, to date, not offered to commit to this Court that they will accept or abide by the results of the USPTO reexamination once the litigation finally emerges from the hibernation which they seek. Parties seeking stays premised upon reexamination proceedings sometimes offer to be bound by the USPTO's validity determination. *See, e.g., Emhart Industries, Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, 1987 U.S. Dist. LEXIS 15033, *11 (N.D. Ill. Feb. 2, 1987) ("... if the patent does survive the reexamination proceedings, the defendant has assured the Court that it will not contest the issues decided by the PTO ..."); *see also, Antor Media Corp. v. Mokia, Inc., et al.*, No. 2:05-CV-186 (Docket No. 410) (E.D. Tex. 2006) (Order entered by Judge Folsom on Sept. 27, 2006). The defendants here have not tendered any such assurance.[14] As the

---

[14] Thus, even as the Defendants tout the reexamination as the "end all/be all" of invalidity analysis, referring to the USPTO's "particular expertise" in evaluating prior art, they are simultaneously reserving for themselves yet another bite at the invalidity apple in two, five or ten years when the reexamination process is eventually finalized. Presumably, if the PTO's "particular expertise" in evaluating patents and prior art chances to result in a determination adverse to these defendants' interests, and more along the lines of the determination JP Morgan Chase reached after it pursued and reviewed all the alleged "prior art" and

---

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

- 19 -

Court noted in *Antor*, "each motion to stay pending reexamination filed in this Court is considered on a case by case basis with each cause of action presenting distinct circumstances...." *Antor*, Order at 9. Plaintiff submits that the particular facts and circumstances in the instant matter do not present the same "ideal situation" as in *Antor*. Even if the Court were inclined to offer a similar stipulation in this matter as was offered in *Antor*, such a stipulation – applied to this case – has the potential to create three separate lawsuits, all relating to patents that have a logical relationship.[15] Such a dynamic would greatly increase the burden on the Court and the parties by resulting in *three* sets of pleadings, *three* sets of discovery, *three* sets of motions, and *three* sets of hearings, as opposed to the one set which would result from keeping this case intact.

> **c.** **The scope of the litigation is now broader than the two patents in reexamination, and litigation between the majority of these parties will continue even if a stay were granted as to the '988 and '137 patents.**

Notwithstanding the Defendants' reliance on the reexamination proceedings requested by First Data to avoid the day of reckoning for their own infringement, the parties at bar will continue to square off as opposing litigants in the Eastern District of Texas, even as the '988 and '137 reexamination inches forward. In circumstances like

---

decided not to move for invalidity summary judgment, the Defendants' admiration for and advocacy on behalf of the PTO's expertise in these matters will plummet. This fence straddling is telling, and it cuts deeply against the grain of the Defendants' efficiency arguments. Moreover, even if the Defendants had volunteered to be bound by the outcome of the USPTO reexamination of '988 and '137, or did so now, this would only address one of several reasons the stay motion should be rejected.

[15] The three separate and distinct suits that would likely result would consist of: (1) a case for those Defendants who chose not to be bound by the stipulation and would therefore proceed through the litigation as to the Ballard and Huntington Patents simultaneously; (2) a case for those Defendants accused of infringing only '988 and '137 who chose to accept the stipulation and therefore received stay as to only '988 and '137; and (3) a case for those Defendants accused of infringing both the Ballard and Huntington patents who chose to accept the stipulation and have the case against them split in two, with a stay resulting as to '988 and '137, but an ongoing suit as to the Huntington patents only. Plainly, such a tangled web of litigation would be anything but efficient.

---

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

- 20 -

these, where certain patents in litigation are in reexamination and others are not, a stay is inappropriate. In *Motorola Inc. v. STMicroelectronics*, No. 1:03-cv-0407 (E.D. Tex) (Order denying Motion to Stay & Order Overruling Objections to Magistrate's Order), Judge Crone denied a motion for stay very similar to that made by the defendants, citing, *inter alia*, the fact that the litigation entailed additional patents which were not subject to reexamination. "If the Court stayed this case pending the outcome of the Candelaria Patent, Motorola's other claims would fall to the wayside, pending the outcome of the reexamination by the PTO, which could take several months at minimum." *Id.* at 4. Thus, Defendants' gambit to continue with their infringing business activities free and clear of DataTreasury's litigation, as the '988 and '137 patents gradually wend their way through the reexamination process, should fail. Even if the Court were inclined to grant Defendants' Motion and sever the '988 and '137 Patent claims, staying litigation on those patents, the case would be anything but simplified. Instead of being able to resolve all matters regarding the related patents between all parties in one suit, this case would be decided in two separate and distinct lawsuits, each with a sizable group of litigants and counsel. While the number of patents claims to be tried in each lawsuit would admittedly be reduced, the burden on the Court and parties would at least double because instead of one suit involving 58 defendants, the Court would be faced with the burden of two lawsuits - with 58 defendants in one case and 42 defendants in the other case. *See supra* Sec. III.A.3. These lawsuits would certainly not simplify the issues for the Court, because at the end of the day, there would essentially be twice the defendants, twice the pleadings, twice the motions, twice the discovery, and so forth.

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

- 21 -

**3.    Under the Circumstances Present Here, an Indefinite Delay of This Lawsuit Would be Inappropriate**

The '988 and '137 patents are only part of the infringement case between DataTreasury and these Defendants.  Moreover, the USPTO reexamination proceedings, whatever their result and whenever they finally culminate, will not resolve all of the issues involved in this lawsuit.  *Compare Gladish v. Tyco Toys, Inc.*, 1993 U.S. Dist. LEXIS 20211, *6-7 (E.D. Cal. Sep. 16, 1993) ("[t]he reexamination proceeding will not finally resolve all issues in the litigation. *** Two additional issues would remain [unless all patent claims were cancelled]: (1) infringement, and (2) whether the case is exceptional such that defendants are entitled to fees and costs.  Accordingly, issuance of a stay pending reexamination would not serve Congress' intent of simplifying the issues and reducing the complexity of the trial.  After the reexamination, the parties would be right back in this court").

Unless DataTreasury prevails completely in the initial USPTO reexamination process (a prospect we do not discount, since all claims emerge unscathed in 29% of reexaminations initiated by third parties), the full process will drag on for many years. Even if all 93 claims are promptly confirmed following reexamination, the average time just to reach that point is almost two years (21.9 months).  Moreover, the delay attendant to reexamination can also be exponentially expanded by further reexamination requests. Even if the Court stays this action pending the current reexamination proceedings there is nothing to prevent First Data, another defendant, or some other third party from filing further reexamination requests, and further dragging out the stay.  Patent litigation, as much or more so than other forms of lawsuit, is heavily reliant on inertia.  A sudden

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

- 22 -

stoppage of this lawsuit will not be automatically reversed by the lifting of a stay in a few months or several years. The time needed for the litigants, experts, witnesses and Court to re-engage and to come back up to speed on the facts and issues of the case – including those which are wholly unaffected by the reexamination – will be significant. This reality of a stay will inevitably add significant expense to the litigation.

During the extended time period of the stay the defendants request, memories will surely fade, key witnesses will move and change employment, documents will be lost or destroyed, and the Defendants will continue and even expand their infringing business activities – all to the detriment of DataTreasury.

## IV.    CONCLUSION

DataTreasury recognizes that this litigation is in its early stages, as the case management conference, while only a few days away, has not yet occurred. However, this litigation has been pending for approximately eight months, and only now are Defendants seeking to stay the claims relating to the '988 and '137 Patents. While this factor may weigh in favor of a stay, the other two factors – prejudice to the non-moving party and whether a stay will simplify the issues – do not weigh in favor of granting a stay. An indefinite stay of the claims relating to the '988 and '137 Patents would prejudice DataTreasury and the issues in the case would not be simplified. Furthermore, severance of the claims relating to the '988 and '137 Patents will not lessen the burden on the Court and the parties, but in reality will substantially increase the burdens on the Court and the parties. This increased burden and the interrelationship between all the patents claims at issue in this matter weigh in favor of denying Defendants' Motion. For these reasons and those set forth

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

- 23 -

more fully herein, DataTreasury respectfully requests that the Court deny Defendants'

Motions to Sever and Stay the claims relating to the '988 and '137 Patents.

Respectfully submitted,


_____/s/ R. Benjamin King_____

EDWARD L. VON HOHN, Attorney in
Charge
State Bar No. 09813240
NIX PATTERSON & ROACH, L.L.P.
205 Linda Drive
Daingerfield, Texas 75638
903.645.7333 (telephone)
903.645.4415 (facsimile)
edhohn@nixlawfirm.com


C. CARY PATTERSON
State Bar No. 15587000
BRADY PADDOCK
State Bar No. 00791394
ANTHONY BRUSTER
State Bar No. 24036280
R. BENJAMIN KING
State Bar No. 24048592
NIX PATTERSON & ROACH L.L.P.
2900 St. Michael Drive, Suite 500
Texarkana, Texas 75503
903.223.3999 (telephone)
903.223.8520 (facsimile)
akbruster@nixlawfirm.com
bpaddock@nixlawfirm.com
benking@nixlawfirm.com


JOE KENDALL
State Bar No. 11260700
KARL RUPP
State Bar No. 24035243
PROVOST * UMPHREY, L.L.P.
3232 McKinney Avenue, Ste. 700
Dallas, Texas 75204
214.744.3000 (telephone)
214.744.3015 (facsimile)

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims
Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

- 24 -

jkendall@provostumphrey.com
krupp@provostumphrey.com

ROD COOPER
State Bar No. 90001628
EDWARD CHIN
STATE BAR NO. 50511688
NIX PATTERSON & ROACH LLP
5215 N. O'Connor Blvd. Ste. 1900
Irving, Texas 75039
972.831.1188 (telephone)
972.692.5445 (facsimile)
rcooper@cooperiplaw.com
edchin@nixlawfirm.com

ERIC M. ALBRITTON
State Bar ;No. 00790215
ALBRITTON LAW FIRM
P.O. Box 2649
Longview, Texas 75606
903.757.8449 (telephone)
903.758.7397 (facsimile)
ema@emafirm.com

T. JOHN WARD, JR.
State Bar No. 00794818
LAW OFFICE OF T. JOHN WARD, JR.
P.O. Box 1231
Longview, Texas 75601
903.757.6400 (telephone)
903.757.2323 (facsimile)
jw@jwfirm.com

**ATTORNEYS FOR PLAINTIFF
DATATREASURY CORPORATION**

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and served via the Court's electronic filing system on all counsel who have consented to electronic service on this the 11th day of October, 2006.

_____/s/ R. Benjamin King_____
Nix, Patterson & Roach LLP

DataTreasury Corporation's Consolidated Response to Defendants' Motion to Sever and Stay the Claims
Relating to the Ballard Patents Pending Reexamination of the Ballard Patents

- 25 -