IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DATATREASURY CORPORATION | § | Civil Action No. 2:06-CV-72 |
| *PLAINTIFF* | § | |
| *vs*. | § | Judge David Folsom |
| | § | |
| WELLS FARGO & COMPANY, *ET AL.* | § | |
| *DEFENDANTS* | § | |
| | § | |

**REPLY OF DEFENDANTS EDS, HARRIS, KEY, PNC, AND SUNTRUST TO PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION TO SEVER AND STAY THE CLAIMS RELATING TO THE BALLARD PATENTS <u>PENDING REEXAMINATION OF THE BALLARD PATENTS</u>**

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Amphenol T&M Antennas, Inc. v. Centurion Int'l, Inc.*,
    No. 00-CV-4298, 2001 U.S. Dist. LEXIS 13795 (N.D. Ill. Sept. 5, 2001) ........................6

*Brunet v. United gas Pipeline Co.*,
    15 F.3d 500 (5th Cir. 1994) ..............................................................................................2

*CNS, Inc. v. Silver Eagle Labs, Inc., No. CIV.A.04-968-MJD-JGL*,
    2004 U.S. Dist. LEXIS 28960 (D. Minn. Nov. 29, 2004) ................................................5

*Castanho v. Jackson Marine, Inc.*,
    484 F. Supp. 201 (E.D. Tex. 1980) ..................................................................................4

*In re. Columbia Univ. Patent Litigation*,
    330 F. Supp. 2d 12 (D. Mass. 2004) ................................................................................9

*David v. M&E Food Mart, Inc.*,
    No. 1:93-CV-163, 1995 U.S. Dist. LEXIS 1159 (E.D. Tex. Jan. 31, 1995) ....................2

*Echostar Technologies Corp. v. TiVo, Inc.*,
    No. 5:05-CV-81-DF, 2006 U.S. Dist. LEXIS 48431, at *4 (E.D. Tex. July 14,
    2006) ........................................................................................................................4, 9, 10

*GPAC, Inc. v. D.W.W. Enterprises, Inc.*,
    144 F.R.D. 60 (D.N.J. 1992) ............................................................................................5

*Gaffney v. Riverboat Servs. of Indiana, Inc.*,
    451 F.3d 424 (7th Cir. 2006) ............................................................................................2

*General Tire & Rubber Co. v. Jefferson Chem. Co.*,
    50 F.R.D. 112 (S.D.N.Y. 1970) .......................................................................................4

*Gould v. Control Laser Corp.*,
    705 F.2d 1340 (Fed. Cir. 1983) ........................................................................................6

*IMAX Corp. v. In-Three, Inc.*,
    385 F. Supp. 2d 1030 (C.D. Cal. 2005) ...........................................................................6

*KLA-Tencor Corp. v. Nanometrics, Inc.*,
    No. C-05-03116-JSW, 2006 U.S. Dist. LEXIS 15754 (N.D. Cal. Mar. 16, 2006) ..........1, 6

*Lentek Int'l, Inc. v. Sharper Image Corp.*,
    169 F. Supp. 2d 1360, 1362 (M.D. Fla. 2001) .................................................................4

*Little v. BellSouth Telecomm.*,
  No. 95-CV-1646, 1995 U.S. Dist. LEXIS 11208 (E.D. La. Aug. 7, 1995) .........................2

*NTP, Inc. v. Research In Motion, Ltd.*,
  297 F. Supp. 2d 785 (E.D. Va. 2005) ...........................................................................6

*NexMed Holdings, Inc. v. Block Investment, Inc.*,
  No. 2:04-CV-288-TS, 2006 U.S. Dist. LEXIS 3150 (D. Ut. Jan. 19, 2006) ......................6

*Soverain Software LLC v. Amazon.com*,
  365 F. Supp. 2d 660 (E.D. Tex. 2002) ........................................................................5, 6

*Texas Instruments, Inc. v. Linear Technologies Corp.*,
  No. 2:01-CV-004-DF, 2002 U.S. Dist. LEXIS 5669 (E.D. Tex. Jan. 15, 2002) .................2

*Translogic Tech., Inc. v. Hitachi, Ltd.*,
  404 F. Supp. 2d 1250 (D. Or. 2005) .............................................................................6

*Xerox Corp. v. 3Com Corp.*,
  69 F. Supp. 2d 404 (W.D.N.Y. 1999) ...........................................................................6

## DOCKETED CASES

*Antor Media Corp. v. Nokia, Inc.*,
  No. 2:05-CV-186-DF (E.D. Tex. 2006) (Doc. 410) .......................................................10

*DTC v. First Data Corp.*,
  No. 5:03-CV-39-DF (Doc. 211) ....................................................................................5

## FEDERAL STATUTES

35 U.S.C. §315 ................................................................................................................11

Pub. L. 106-113, §4608, 113 Stat. 1501, 1501A572 (Nov. 29, 1999) ..........................11

## OTHER AUTHORITIES

P. Rosenberg, PATENT LAW FUNDAMENTALS §15.09[3] at 15-167 (2d ed. 1986) ..........................5

**TABLE OF CONTENTS**

I. ARGUMENT ..................................................................................................................2

    A. The Ballard Patents are Unrelated to the Huntington Bank Patents. .........................2

    B. The Claims Related to the Ballard Patents Should Be Stayed. ..................................4

        1. DTC concedes that the early stage of this litigation weighs in favor of a stay ........................................................................................5

        2. A stay would not unduly prejudice DTC. .................................................. 5

            a) The anticipated timing of the reexamination procedure does not constitute undue prejudice to DTC. ........................................................................6

            b) The possibility that the claims will be confirmed does not constitute undue prejudice to DTC. ........................................................................7

        3. A stay will simplify the issues for trial. ...................................................... 8

            a) The HB-patent claims do not weigh against a stay. ........................................................................................8

            b) The possibility that DTC may have engaged in inequitable conduct does not weigh against a stay. ........................................................................8

            c) The fact that confirmation by the PTO will not conclusively establish the patents' validity does not weigh against a stay ............................................9

            d) The Court should not require an *Antor*-like stipulation in this case. ...............................................................10

II. CONCLUSION ............................................................................................................12

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DATATREASURY CORPORATION | § | Civil Action No. 2:06-CV-72 |
| *PLAINTIFF* | § | |
| *vs.* | § | Judge David Folsom |
| | § | |
| WELLS FARGO & COMPANY, *ET AL.* | § | |
| *DEFENDANTS* | § | |
| | § | |

**REPLY OF DEFENDANTS EDS, HARRIS, KEY, PNC, AND SUNTRUST TO PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION TO SEVER AND STAY THE CLAIMS RELATING TO THE BALLARD PATENTS PENDING REEXAMINATION OF THE BALLARD PATENTS**

DataTreasury Corporation's ("DTC") opposition rests on two false premises. The first is that the Ballard patents are somehow inextricably linked to the Huntington Bank patents. That premise is demonstrably false. The patents were filed by different entities, at different times, with different inventors, and relate to different aspects of the broad field of check processing. The second is that the delay caused by a stay, in and of itself, will prejudice DTC. The case law makes clear that "the delay inherent to the reexamination process does not constitute, by itself, undue prejudice." *KLA-Tencor Corp. v. Nanometrics, Inc.*, No. C-05-03116-JSW, 2006 U.S. Dist. LEXIS 15754, at *7 (N.D. Cal. Mar. 16, 2006). Because severing and staying the Ballard patents will streamline this unwieldy case, without creating any undue prejudice to DTC, the Court should grant Defendants' motion.

I.   ARGUMENT

A.   **The Ballard Patents are Unrelated to the Huntington Bank Patents.**

DTC argues that the Ballard patents should not be severed from the Huntington Bank patents because of a purported "logical relationship" between the patents-in-suit and "overlapping proof" of alleged infringement. Response at 3-6.[1] While DTC poses a number of hypothetical questions that it contends needs to be answered in discovery, Response at 5-6, those questions find no support in the actual claims of the patents. Even a cursory review of the objective facts in this case reveals that there is little overlap between these disparate groups of patents.

The Ballard patents were filed at different times, by different inventors, and claim different subject matter than the Huntington Bank patents. The first Ballard patent was filed in August 1997, naming Claudio Ballard as the sole inventor. The second Ballard patent was filed nine months later. Both patents were originally assigned to a small New York holding company, CSP Holdings, LLC. Both patents expressly require capturing images of documents, encrypting those images, and transmitting the encrypted images to a central data processing subsystem. One of the purported advantages of the DataTreasury system is that it eliminated "expensive, time consuming physical transportation of paper receipts and magnetic tapes from the customer site to the central facility." '988 patent, col. 2, ll. 5-7.

---

[1] DTC cites ones Louisiana case for the proposition that, in deciding whether to sever claims, "courts should consider whether there is a logical relationship between the claims, and whether there is any overlapping proof or legal question." Response at 3; *see Little v. BellSouth Telecomm.*, No. 95-CV-1646, 1995 U.S. Dist. LEXIS 11208, at *2 (E.D. La. Aug. 7, 1995). That case, which involved a motion to sever the two defendants in one unlawful termination action, *see id.*, is entirely distinguishable from this case, involving dozens of defendants and potentially hundreds of claims contained in distinct sets of patents. The relevant authority, as cited in the Moving Defendants' motion, holds that claims are severable when recovery on one claim "would not necessarily lead to automatic recovery" on another. *David v. M&E Food Mart, Inc.*, No. 1:93-CV-163, 1995 U.S. Dist. LEXIS 1159, at *4 (E.D. Tex. Jan. 31, 1995); *see also Texas Instruments, Inc. v. Linear Technologies Corp.*, No. 2:01-CV-004-DF, 2002 U.S. Dist. LEXIS 5669, at *5 (E.D. Tex. Jan. 15, 2002); *Brunet v. United gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994); *Gaffney v. Riverboat Servs. of Indiana, Inc.*, 451 F.3d 424 (7th Cir. 2006). DTC makes no attempt to show— and cannot show—that the Ballard-patent claims are not severable under the relevant authority.

The Huntington Bank ("HB") '007 patent, on the other hand, was filed almost 10 years earlier, was originally assigned to Huntington Bankshares in Columbus, Ohio, and names four Huntington Bank employees as inventors. In contrast to the Ballard patents, each and every one of the claims of the HB '007 patent expressly requires "physically transporting the instruments from an institution at one site to each other of the institutions at the other sites." '007 patent, col. 7, ll. 50-52; *see also* id. at col. 8, ll. 66-67 ("means … for sending and receiving financial instruments"). Such "[p]hysical delivery of items would be accomplished through air and ground transportation." *Id*. at col. 1, ll. 66-67. The '007 Patent makes no mention of capturing an image of the item. As a result, there will be little, if any, overlap between the HB '007 patent and the Ballard patents when it comes to proof of infringement, invalidity, invention, ownership, damages, DTC's parade of horribles notwithstanding.

There is likewise no logical connection between the Ballard patents and the HB '868 patent. That patent was filed in 1995 by yet another Ohio inventor, who at the time was apparently an HB employee. The '868 patent describes a so-called "Electronic Payment Interchange Concentrator," which purportedly translates a file containing data representing financial instruments from one format to another. Like the HB '007 patent, the '868 patent makes no mention of capturing or transmitting an image of a check, which is DTC's litmus test for infringement under the Ballard patents. Once again, it is not apparent why discovery will overlap between this patent and the Ballard patents.

DTC's argument that there is substantial overlap between the Ballard patents and the two HB Geer patents is belied by its own infringement allegations. None of the Moving Defendants are even accused of infringing the two Geer patents. The fact that only a handful of the other Defendants have been strongly suggests that the infringement issues in the Geer patents are not

Page 3

inextricably linked to the Ballard patents. To the contrary, the fact that the Geer patents were filed several years before the Ballard patents, name different inventors, were assigned to different companies operating in different parts of the country, suggests that there is no overlap between these two groups of patents. *See General Tire & Rubber Co. v. Jefferson Chem. Co.*, 50 F.R.D. 112, 114 (S.D.N.Y. 1970). Accordingly, there is no reason why the Ballard patents should not be severed from the HB patents.

      **B.**     **The Claims Related to the Ballard Patents Should Be Stayed.**

DTC's arguments as to why the Ballard patents should not be stayed likewise fail. DTC cites to *Castanho v. Jackson Marine, Inc.*, 484 F. Supp. 201, 209 (E.D. Tex. 1980) for its formulation of the relevant stay rule. Response at 10. But *Castanho* was not a patent case, and did not involve the propriety of a stay pending reexamination.[2] Many courts have considered the propriety of staying litigation in just this circumstance, and have concluded—given the congressional purposes for reexamination and its anticipated benefits to the parties and the court—that a stay should be liberally granted so long as it would not: 1) interrupt a case set for a fast-approaching trial; 2) create an unusual tactical disadvantage or undue prejudice for the plaintiff; or 3) fail to provide any simplification of the issues or trial of the case. *See Lentek Int'l, Inc. v. Sharper Image Corp.*, 169 F. Supp. 2d 1360, 1362 (M.D. Fla. 2001); *see also Echostar Technologies Corp. v. TiVo, Inc.*, No. 5:05-CV-81-DF, 2006 U.S. Dist. LEXIS 48431, at *4 (E.D. Tex. July 14, 2006). DTC's Response does not show that any of these factors weigh against granting the requested stay; and in fact, they each weigh in favor of a stay.

---

[2] And in any event, the *Castanho* formulation is not triggered in this case. It applies only when the requested stay might be expected to "work damage" to the non-requesting party, 484 F. Supp. at 209, and as discussed below, *see* Section I.B.2., *infra*, the requested stay would not damage DTC.

### 1. DTC concedes that the early stage of this litigation weighs in favor of a stay.

When stays pending reexamination have been denied—including such denials by this Court—the stage of the litigation has usually been singled out as the most important factor. *See GPAC, Inc. v. D.W.W. Enterprises, Inc.*, 144 F.R.D. 60, 64 (D.N.J. 1992) ("Most often, cases have been denied a stay due to the late stage of litigation."); *Soverain Software LLC v. Amazon.com*, 365 F. Supp. 2d 660, 663 (E.D. Tex. 2002) (singling out the late stage of the litigation as weighing most heavily against granting a stay); *DTC v. First Data Corp.*, No. 5:03-CV-39-DF (Doc. 211) (same). Courts and commentators both recognize, on the other hand, that "[i]n cases which have not progressed beyond . . . initial litigation stages, the reexamination procedure should be utilized." P. Rosenberg, PATENT LAW FUNDAMENTALS §15.09[3] at 15-167 (2d ed. 1986). DTC does not take issue with this authority, and its concession that this litigation is in its early stages, *see* Response at 23, should therefore make the decision to grant the requested stay pending reexamination "routine." *See CNS, Inc. v. Silver Eagle Labs, Inc.*, No. CIV.A.04-968-MJD-JGL, 2004 U.S. Dist. LEXIS 28960, at *3 (D. Minn. Nov. 29, 2004).

### 2. A stay would not unduly prejudice DTC.

DTC spends almost seven pages of its Response addressing the "undue prejudice" factor of the stay analysis, but not once does it concretely explain how it might be unduly prejudiced by a stay. *See* Response at 11-17. DTC makes two observations the centerpiece of its "undue prejudice" argument: first, that the reexamination procedure could take two years or more; and second, that the reexamination might not result in the cancellation or significant amendment of the Ballard-patent claims. *See id.* Neither observation shows that a stay would unduly prejudice DTC.

### a) The anticipated timing of the reexamination procedure does not constitute undue prejudice to DTC.

DTC's suggestion that the "delay endemic" to the reexamination procedure could constitute undue prejudice, Response at 11, is wrong for at least two reasons. First, there is no support for the proposition that the anticipated timing of the reexamination procedure *in itself* can be considered unduly prejudicial. *See Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983); *KLA-Tencor*, 2006 U.S. Dist. LEXIS 15754, at *7. DTC cites five cases relating to the delay associated with reexamination, *see* Reponse at 11-12, but none supports its suggestion that the anticipated timing of the procedure itself constitutes undue prejudice: in three of those cases the stay was denied principally because the litigation was in its late stages;[3] in one the plaintiff alleged an imminent risk of irreparable damage;[4] and in one the stay was initially granted.[5] The "undue prejudice" factor does not ask whether there will be a delay—to use DTC's phrase, there is a "delay endemic" to every stay—it asks instead whether the delay will place the plaintiff in a particularly unfair position.[6] There is nothing unfair in asking DTC, at the very beginning of this lawsuit, to hold off pursuing its Ballard-patent claims while the PTO decides whether there was a problem with the initial decision to issue those claims.

Second, even if the anticipated timing of the reexamination procedure, in itself, could unduly prejudice a plaintiff, it would not unduly prejudice DTC in this case. DTC asserts that

---

[3] *See NTP, Inc. v. Research In Motion, Ltd.*, 297 F. Supp. 2d 785, 788 (E.D. Va. 2005); *NexMed Holdings, Inc. v. Block Investment, Inc.*, No. 2:04-CV-288-TS, 2006 U.S. Dist. LEXIS 3150, at *6 (D. Ut. Jan. 19, 2006); *see also Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 407 (W.D.N.Y. 1999) (finding late litigation stage and evidence of dilatory tactics by defendant).

[4] *See Amphenol T&M Antennas, Inc. v. Centurion Int'l, Inc.*, No. 00-CV-4298, 2001 U.S. Dist. LEXIS 13795, at *7 (N.D. Ill. Sept. 5, 2001).

[5] *See Translogic Tech., Inc. v. Hitachi, Ltd.*, 404 F. Supp. 2d 1250, 1253 (D. Or. 2005). The district court in *Translogic* lifted its stay after 3.5 years. *Id.* Although no party to this case expects the PTO's reexamination of the Ballard patents to take that long, the *Translogic* case provides an answer to DTC's worst-case scenario: should the procedure take much longer than the parties anticipate, the Court retains the power to lift its stay if necessary.

[6] As explained in the Moving Defendants' Motion, such undue prejudice is typically found either when money damages will not suffice to protect the plaintiff's interests, *see IMAX Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1030, 1033 (C.D. Cal. 2005), or when the defendants have engaged in bad-faith dilatory tactics, *see Soverain Software*, 356 F. Supp. 2d at 662. DTC does not contend that either of those concerns are implicated in this case.

the reexamination process might be expected to take 21.9 months. Response at 22. In part because of recent changes in the PTO's reexamination process, there is good reason to think that the timeframe will be substantially shorter in this case.[7] But even if the reexamination takes between 21 and 22 months, a decision would be issued in October or November of 2007.[8] In its Response, DTC asserts that it anticipates that the "bulk" of discovery will "begin in the fall of 2007," with the claim construction stage coming in "late 2007." Response at 9. Given that DTC does not expect to turn its full attention to this case until the fall of 2007, it can hardly argue that the possibility that the case will be stayed until the fall of 2007 threatens to cause it undue prejudice.[9]

### b) The possibility that the claims will be confirmed does not constitute undue prejudice to DTC.

DTC's suggestion that the fact that the PTO might not cancel or substantially narrow the Ballard-patent claims constitutes undue prejudice, *see* Response at 12-17, is similarly unavailing. The fact that the historical odds show a 12% chance that the claims will be completely cancelled on reexamination, and a 59% chance that the claims will be amended there, *see* Response at 13, is completely unrelated to any threat of unfair prejudice to DTC. Those odds are related instead to a very real threat of unfair prejudice *to the Moving Defendants*—they show that, if litigation of these claims is not stayed pending reexamination, there is a 71% chance that the Defendants will be required to engage in costly discovery and preparation for a trial on patent claims that will either be eliminated or narrowed in scope. Spin the numbers as it might, DTC cannot show that

---

[7] *See* Press Release, United States Patent and Trademark Office, USPTO Improves Process for Reviewing Patents (July 29, 2005), http://www.uspto.gov/web/offices/com/speeches/05-38.htm (noting that, in July 2005, the PTO "implemented new processes for handling reexamination proceedings to improve timeliness and quality").
[8] The reexamination was ordered on January 6, 2006.
[9] DTC's suggestion that the real work in this case will begin in the fall of 2007 undoubtedly reflects its expectation that *DTC* will begin to work in earnest on this case in late 2007. Under the proposed schedule in this case, however, the Defendants will incur significant costs over the next twelve months complying with this Court's mandatory discovery obligations.

Page 7

a 29% chance that its claims will survive reexamination intact is greater than a 71% chance that they will not.

### 3. A stay will simplify the issues for trial.

Turning to the third factor, DTC argues that a stay "will not simplify or eliminate trial issues" because certain issues related to DTC's inequitable conduct and the Ballard patents' invalidity "will remain disputed." Response at 17. DTC also suggests that a stay will not simplify the case because the litigation as currently situated also involves the four additional HB patents. Response at 20. These arguments are without merit.

#### a) The HB-patent claims do not weigh against a stay.

The fact that DTC has alleged that 42 of the 58 Defendants in this case violate one or more of the HB patents does not mean that staying the claims related to the Ballard patents will have no simplifying effect on the trial of those Ballard-patent claims. The existence of additional claims under the HB patents simply has no bearing on the reexamination's anticipated effect on any trial of the Ballard patents. And to the extent that the ever-broadening "scope of the litigation" presents an unnecessary complication, *see* Response at 20, the Moving Defendants have proposed a simple solution: sever out the claims related to the Ballard patents. Such severance would reduce the number of Defendants by almost one-third, reduce the number of potential claims at issue by almost one-half, and undoubtedly simplify the resulting trial on the HB patents.

#### b) The possibility that DTC may have engaged in inequitable conduct does not weigh against a stay.

DTC argues that the stay should be denied because the PTO will not resolve any allegation that DTC engaged in inequitable conduct. Response at 17-18. It is true that the PTO will not determine whether DTC engaged in inequitable conduct in the original prosecution of

Page 8

the Ballard-patent claims, but that is no reason to plow into discovery and preparation for trial on those claims when the PTO *is* likely to cancel or amend them in its reexamination. *See* Section I.B.2.b., *supra*. Whether or not the question of DTC's inequitable conduct in prosecuting the Ballard patents will ultimately need to be tried in this Court, the reexamination procedure promises to simplify—if not eliminate altogether—the trial on those patents. *See* Moving Defendants' Motion at 9-12.

        c)    **The fact that confirmation by the PTO will not conclusively establish the patents' validity does not weigh against a stay.**

DTC's final argument respecting the "simplify issues for trial" factor is that certain issues relating to the validity of the Ballard patents will not be conclusively established by the PTO on reexamination. Response at 18-20. DTC notes that the PTO's "invalidity analysis is significantly narrower than that which is conducted in a federal district court," *id.* at 18, and that the "standards for assessing invalidity are different before this Court" and the PTO, *id.* at 19. The Moving Defendants do not disagree with DTC's observations as to the different standards applicable in each forum. Because of these differences, it has long been understood that a patent issued by the PTO—whether in its original form or after amendment on reexamination—may be subject to attack on the grounds of invalidity in a federal district court. To borrow a quote from DTC's Response, in part because judicial proceedings are "far more adversarial than [reexamination] proceedings before the PTO . . . judicial proceedings have a significant advantage in reaching a correct result." *In re. Columbia Univ. Patent Litigation*, 330 F. Supp. 2d 12, 15-16 (D. Mass. 2004); Response at 16-17.

But again, the fact that this Court may be called upon to decide a question of invalidity after reexamination does not show that a stay pending reexamination will fail to simplify the subsequent trial. In *Echostar* this Court listed seven simplifying benefits of staying litigation

Page 9

pending reexamination; only the first related to the PTO's determination of the impact of the presented prior art on the validity of the reexamined claims. *See* 2006 U.S. Dist. LEXIS 48431, at *4-*5.[10] Whether or not some questions of validity remain, "the reexamination will at least likely result in a narrowing and simplifying of the issues before the Court." *Id.* at *5.

### d) The Court should not require an *Antor*-like stipulation in this case.

While the differences between proceedings in the PTO and in this Court do not counsel against a stay, they do counsel against conditioning a stay on the Moving Defendants' stipulation that they will not subsequently challenge the Ballard patents based on any prior art printed publications that were considered in the reexamination process. *See Antor Media Corp. v. Nokia, Inc.*, No. 2:05-CV-186-DF (E.D. Tex. 2006) (Doc. 410). The Moving Defendants agree with DTC that such an order would be inadvisable in this case. *See* Response at 20. Requiring such a stipulation here would unfairly prejudice the Moving Defendants for at least three related reasons.

First, unlike the defendants in *Antor*, the Moving Defendants did not request the current *ex parte* reexamination—it began before this lawsuit was filed. This means that the Moving Defendants will have no voice at any stage of the reexamination, and to require the Moving Defendants to bind themselves to the outcome of a legal proceeding in which they have no voice would contravene the most basic principles of due process. The "two bites at the apple" theory discussed in *Antor, see* No. 2:05-CV-186-DF (Doc. 410), has no application to the Moving

---

[10] The listed benefits included: "1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise[;] 2. Many discovery problems relating to prior art can be alleviated by the PTO examination[;] 3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed[;] 4. The outcome of the reexamination may encourage a settlement without the further use of the Court[;] 5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation[;] 6. Issues, defenses, and evidence will be more easily limited in pretrial conferences after a reexamination[; and] 7. The cost will likely be reduced both for the parties and the Court." *Id.*

Defendants: the Moving Defendants have not yet had their first bite at the invalidity apple.[11]

Second, the Ballard patents were not eligible for reexamination under the newer *inter partes* procedure. In an *inter partes* reexamination, the requesting party is subject to an estoppel operating much like the stipulation ordered of the defendants in *Antor*. *See* 35 U.S.C. §315(c).[12] But the *inter partes* reexamination procedure was created on November 29, 1999, and only those patents issuing from applications filed after that date are eligible under the statute. *See* Pub. L. 106-113, §4608, 113 Stat. 1501, 1501A572 (Nov. 29, 1999). Because the Ballard-patent applications were filed in 1997 and 1998, those patents were never eligible for *inter partes* reexamination. Therefore, any argument that the Defendants should be subject to an *inter partes* estoppel to punish them for strategically avoiding an *inter partes* reexamination—as the plaintiff in *Antor* asserted—has no application to this case.

Third, requiring the Moving Defendants to enter an *Antor*-like stipulation would deprive them of an essential due-process right that Congress provided to those requesting an *inter partes* reexamination: the right to appeal the PTO's decision to a federal court. *See* 35 U.S.C. §315(b). The Moving Defendants agree with the substantial caselaw acknowledging the PTO's expertise with respect to analyzing prior art—indeed, that is one of the many reasons justifying the liberal policy of granting litigation stays pending reexamination. But even the experts sometimes make mistakes, and the right to appeal is an established feature of our due-process landscape. For that reason, Congress ensured that before any requesting party would be subject to an *inter partes* estoppel, it would have the right to have the PTO's decision reviewed by a federal court. *See id.* Forcing the Moving Defendants to abide by the results of the *ex parte* reexamination currently

---

[11] DTC implicitly acknowledges this point in its Response when it references "First Data's arguments on reexam . . . ." Response at 14. The only arguments before the PTO are "First Data's"—not those of the Moving Defendants.

[12] The requesting party in an *inter partes* reexamination, however, is also afforded corresponding due process rights: the right to be heard at each pivotal stage in the reexamination, *id.* §314(b), and the right to appeal the PTO's decision to the Federal Circuit if necessary, *id.* §315(b).

underway would not only deprive them of their right to be heard in the PTO; it would deprive them of their right to have a federal court review the PTO's decision. The Moving Defendants therefore urge the Court not to require an *Antor*-like stipulation in this case.

## II. CONCLUSION

In meetings prior to the upcoming conference in this Court, DTC has made clear that it plans to seek virtually unbounded discovery on each of the Moving Defendants. For Moving Defendants Harris, SunTrust, and EDS—among the many other Defendants accused only under the Ballard patents—the substantial time and expense associated with that discovery will prove entirely unnecessary should the PTO invalidate the patents. And in the absence of a stay, *all* the Defendants—as well as DTC and the Court—will face the prospect of wasting valuable resources litigating claims that are likely to be canceled or narrowed in some fashion by the PTO. In the interests of justice and judicial economy, the Court should sever and stay the Ballard-patent claims pending their reexamination.

DATED: October 17 , 2006                                          Respectfully submitted,

**McKOOL SMITH, P.C**.

/s/ Sam Baxter
SAM BAXTER
Lead Attorney
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
505 East Travis Street, Suite 105
Marshall, Texas  75670
Telephone:  (903) 927-2111
Telecopy:  (903) 927-2622

THEODORE STEVENSON, III
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
L. DAVID ANDERSON
Texas State Bar No. 00796126
danderson@mckoolsmith.com
300 Crescent Court
Suite 1500
Telephone: (214) 978-4000
Telecopier: (214) 978-4044


PETER J. AYERS
Texas State Bar No. 24009882
payers@mckoolsmith.com
GEOFFREY L. SMITH
Texas State Bar No. 24041939
gsmith@mckoolsmith.com
300 W. 6th Street, Suite 1700
Austin, Texas 78701
Telephone:  (512) 692-8700
Telecopy:    (512) 692-8744

**ATTORNEYS FOR DEFENDANTS SUNTRUST BANKS, INC., SUNTRUST BANK, THE PNC FINANCIAL SERVICES GROUP, INC., PNC BANK, KEYCORP, AND KEYBANK NA**

**McKOOL SMITH, P.C.**


/s/ Theodore Stevenson, III
THEODORE STEVENSON, III
Lead Attorney
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
GARRET W. CHAMBERS
Texas State Bar No. 00792160
gchambers@mckoolsmith.com
L. DAVID ANDERSON
Texas State Bar No. 00796126
danderson@mckoolsmith.com
300 Crescent Court
Suite 1500
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Page 13

Austin 31397v3

PETER J. AYERS
Texas State Bar No. 24009882
payers@mckoolsmith.com
GEOFFREY L. SMITH
Texas State Bar No. 24041939
gsmith@mckoolsmith.com
300 W. 6th Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Telecopy: (512) 692-8744

**ATTORNEYS FOR DEFENDANT ELECTRONIC DATA SYSTEMS CORP.**

**McKOOL SMITH, P.C.**

/s/ Robert M. Manley
ROBERT M. MANLEY
Lead Attorney
Texas State Bar No. 00787955
rmanley@mckoolsmith.com
SAM BAXTER
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
L. DAVID ANDERSON
Texas State Bar No. 00796126
danderson@mckoolsmith.com
300 Crescent Court
Suite 1500
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

PETER J. AYERS
Texas State Bar No. 24009882
payers@mckoolsmith.com
GEOFFREY L. SMITH
Texas State Bar No. 24041939
gsmith@mckoolsmith.com
300 W. 6th Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Telecopy: (512) 692-8744

Austin 31397v3

>ROBERT MASTERS
>Paul, Hastings, Janofsky & Walker, LLP
>875 15th Street, N.W.
>Washington, DC 20005
>Tel: (202) 551-1763
>Fax: (202) 551-1705
>robertmasters@paulhastings.com
>
>PAUL WILSON
>Paul, Hastings, Janofsky & Walker, LLP
>875 15th Street, N.W.
>Washington, DC 20005
>Tel: (202) 551-1748
>Fax: (202) 551-0148
>paulwilson@paulhastings.com
>
>BRANDON WHITE
>Paul, Hastings, Janofsky & Walker, LLP
>875 15th Street, N.W.
>Washington, DC 20005
>Tel: (202) 551-1754
>Fax: (202) 551-0154
>brandonwhite@paulhastings.com
>
>**ATTORNEYS FOR DEFENDANTS HARRIS BANKCORP, INC. AND HARRIS N.A.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A).

>/s/ L. David Anderson
>L. David Anderson

Page 15

Austin 31397v3