IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| DATATREASURY CORPORATION § | |
| *PLAINTIFF* § | |
| vs. § | No. 2:06cv72 |
| § | |
| WELLS FARGO & COMPANY, *et al* § | JURY TRIAL DEMANDED |
| *DEFENDANTS* § | |

**PLAINTIFF'S AMENDED RESPONSE TO DEFENDANT HSBC
NORTH AMERICA HOLDINGS INC.'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION UNDER RULE 12(b)(2)**

Plaintiff DataTreasury Corporation files this its Amended Response to HSBC North America Holdings Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction Under Rule 12(b)(2), and would respectfully show this Honorable Court as follows:

### I. INTRODUCTION

By Order dated December 8, 2006, this Court authorized DataTreasury Corporation ("DataTreasury") to file this Amended Response after conducting jurisdictional discovery against Defendant HSBC North America Holdings Inc. ("HSBC NA"). *See* Docket No. 394.[1] DataTreasury has deposed a 30(b)(6) representative of HSBC NA on jurisdictional topics, and has conducted some written discovery. However, HSBC NA has refused to produce a number of documents that are relevant and germane to the inquiry of whether HSBC NA is subject to jurisdiction in this Court; DataTreasury has filed a Motion to Compel

---

[1] The Court's Order requires DataTreasury to file an Amended, rather than a Supplemental, Response. So as not to waive the arguments made in its original Response, and to provide the Court a more comprehensive discussion in one document as opposed to two, DataTreasury has retained the majority of its original Response in this Amended Response, while working in the newly discovered information that DataTreasury obtained as a result of conducting the Jurisdictional Discovery authorized by the Court.

those documents, which is currently pending. As discussed below, the testimony from HSBC NA's 30(b)(6) representative, along with HSBC NA's refusal to produce relevant documents, all lead to the conclusion that this Court can properly assert jurisdiction over HSBC NA.

## II.     ARGUMENT

### A.     HSBC NA's Conflicting Representations Compel the Conclusion that Personal Jurisdiction in this Court is Proper

Defendant HSBC NA contends that this Court has no personal jurisdiction over it, and thus DataTreasury's Complaint against it should be dismissed. *See Defendant's Motion to Dismiss, previously filed*. In support of these contentions, HSBC NA relies entirely on the self-serving declaration of a company executive. *See Defendant's Affidavit, previously filed*. This Affidavit fails to establish that this Court lacks personal jurisdiction over this Defendant, and fails to controvert the facts set forth in Plaintiff's First Amended Complaint. Furthermore, Plaintiff has now had the opportunity to take the deposition of this company executive, which has exposed numerous other reasons that HSBC NA is subject to this Court's jurisdiction. Thus Defendant's Motion should be denied, as this Court's exercise of jurisdiction over this Defendant is entirely proper.

This Court has specific jurisdiction over HSBC NA in this case if Plaintiff's alleged facts in its First Amended Complaint regarding jurisdiction and venue are true. *See Burger King v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). Specific personal jurisdiction in Fifth Circuit patent cases has been held to exist when the defendant purposely directs his activities at the forum, and the ensuing litigation arises out of or relates to those activities. *See Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 595 (5th Cir. 1999). Since the Texas long-arm statute extends to the limits of due process, a non-resident defendant is subject to personal

jurisdiction in Texas if due process is satisfied. *See Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 427 (Fed. Cir. 1996). Plaintiff's pleadings and the Defendant's activities are both sufficient to confer personal jurisdiction to this Court, as Defendant has purposefully availed itself of the benefits of Texas by establishing minimum contacts in Texas and within this District; as such, exercising jurisdiction over this Defendant does not offend traditional notions of fair play and substantial justice. *See Int'l Shoe v. Wash.*, 326 U.S. 310, 316 (1945); *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 474 (1985).

Plaintiff has pled in its First Amended Complaint that HSBC NA has engaged or currently engages in the following activities within the Eastern District of Texas: (1) making, using, selling, offering to sell, and/or importing, directly, contributorily, and/or by inducement, infringing products and services within the State of Texas and within this District; (2) providing services and selling products in this District separately and with or for other infringing companies which are or were Defendants in related pending litigation in this District; (3) engaging in infringing activities with respect to the products and services of Small Value Payments Co., LLC and The Clearing House Payments Company, LLC, defendants that operate a nationwide check image archive and exchange service that operates in and through this District; and (4) authorizing, participating in, or facilitating transactions through this archive/exchange that in whole or in part infringe the patents within this District. These facts, if true, are more than sufficient to establish specific jurisdiction over the Defendant.

Furthermore, these facts are simply not controverted by the self-serving affidavit provided by the Defendant. HSBC NA's representations to the Court, and the public at large, should cause this Court grave concern. Attached as Exhibit 1 are selected pages from the

most recent public 20-F filing with the Securities and Exchange Commission made by HSBC NA's parent company, based out of the United Kingdom.[2] This document's accuracy is sworn and attested by the executives of HSBC NA. *See id.* Subsequently, Defendant's Senior Vice President-Insurance, Ms. Margo Hickman, has sworn and attested to certain facts in an Affidavit HSBC NA filed in support of its Motion to Dismiss. In this Affidavit, Ms. Hickman makes the following statements:

- HSBC NA "does not engage in or conduct business within the State of Texas."
- HSBC NA "has not made, used, sold, offered to sell, and/or imported, directly, contributorily, and/or by inducement, any infringing products or services within the state of Texas."
- HSBC NA "is not an owner or current user of Small Value Payments Company, LLC and/or The Clearing House Payments Company, LLC…"
- HSBC NA "has not authorized, participated in, or facilitated any transactions occurring in whole or in part within the State of Texas that infringe, in whole or in part, [Plaintiff's patents]."

*See* Affidavit of Margo Hickman, previously filed by Defendant.

To begin with, DataTreasury would show the outright falsity of HSBC NA's first representation cited above; namely, that it "does not engage in or conduct business within the State of Texas." Attached as Exhibit 2 is a press release from HSBC NA, announcing its $80,000 funding of literacy sessions for persons in Dallas, Texas. The article notes that this is the second such funding effort that HSBC NA has undertaken in Dallas. *See id.* As this release was made public less than two months ago, it is difficult to imagine that HSBC NA could declare now that it does not do any business in Texas.

Several weeks ago, DataTreasury was able to take Ms. Hickman's deposition, and in that deposition it was proven that Ms. Hickman's Affidavit was in fact completely wrong on

---

[2] As a foreign headquartered corporation, HSBC NA's parent company files a form 20-F with the Securities & Exchange Commission instead of the 10-K customarily filed by U.S. companies.

this topic. *See* Deposition of Margo Hickman, as 30(b)(6) Representative of HSBC North America Holdings Inc., attached as Exhibit 9, at page 148, line 25 – 149, 11. Not only did Ms. Hickman admit in her deposition that her sworn Affidavit contained a false statement, she also admitted that she didn't write the Affidavit and that she has no idea who did. *See id*. at pg. 152, lines 13-19. And if this testimony alone is not enough to totally discredit Ms. Hickman's Affidavit in its entirety, the following exchange shows the incredulous lengths that HSBC NA has gone to simply try and controvert Plaintiff's allegations without having any justifiable basis in fact to do so:

> Q. Have you ever read any of the patents that are involved in this litigation?
> A. No.
> Q. Never read them?
> A. No.
> Q. Have you ever skimmed over them?
> A. No.
> Q. Have you ever seen any of the patents that are involved in this litigation?
> A. No.
> Q. Do you know what it takes to infringe any of the patents involved in this litigation?
> A. No.
> (Exhibit Number 14 marked.)
> Q. (BY MR. BRUSTER) I'm going to show you what we've marked as Exhibit 14 to your deposition, which I'm sure you'll recognize as an affidavit that you signed in support of HSBC North America Holdings, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction. Is that correct?
> A. Yes.
> Q. Okay. And I'll show you that's a three-page document. Is that your signature there on the last page?
> A. It is.

Q. And that's sworn and signed under oath by a Notary, correct?

A. Yes.

Q. Okay. Let me ask you about, for example, topic 17 here. HSBC North America Holdings, Inc. has not authorized, participated in, or facilitated any transactions occurring in whole or in part within the state of Texas that infringe in whole or in part upon the '988, '137, '007 or '868 patents. Did I read that correctly?

A. Yes.

Q. About a minute ago you told the jury that you have never read any of those patents and you don't know what it takes to infringe those, right?

A. That's correct.

Q. Do you really feel comfortable giving sworn testimony that HSBC North America Holdings, Inc. doesn't do anything to infringe those patents if you don't even know what it takes to infringe them?

A. Yes.

Q. You -- for example, we know that HSBC North America Holdings, Inc. engages in activity, right?

A. Yes.

Q. I mean, you work for that company, correct?

A. Yes.

Q. And you're swearing and affirming that your company doesn't engage in any infringing activities without knowing what it takes to infringe the patent. Does that make sense to you?

A. Yes.

*See id.*, at 145:18 – 147:22. Clearly, Ms. Hickman's Affidavit should be treated as nothing more than "lawyer argument" – it is obviously not based on her personal knowledge, and it should be disregarded by the Court in its entirety. Furthermore, in its absence,

Defendant cannot rebut the allegations of DataTreasury's Complaint, and thus personal jurisdiction over HSBC NA is proper.

In further contradiction to its Affidavit filed in this Court, HSBC NA's parent company makes the following statement in its most recent 20-F SEC filing: "On 1 January 2004, HSBC formed a new company to hold all of its North American operations, including these two banks [including HSBC Bank USA, another Defendant in this case]. This company, called HSBC North America Holdings Inc. ('HNAH') is also a 'bank holding company under the BHCA, by virtue of its <u>ownership and control of HSBC Bank USA</u>. *See* Exhibit 1, page 22 (emphasis added). In her recent deposition, the corporate representative of HSBC NA tried to, but could not, dispute the accuracy of this language:

> Q.   On the right-hand column, in the top paragraph, the last sentence, do you see where it reads, This company, called HSBC North America Holdings, Inc., is also a bank holding company under the BHCA by virtue of its ownership and control of HSBC Bank USA. Do you see that?
> A.   I do.
> Q.   Okay. Do you believe that's an accurate statement?
> A.   Yes.

*See* Exhibit 9 at 63:2-11. Since HSBC NA exerts ownership and control of HSBC Bank USA, which has not moved to dismiss itself on the grounds that jurisdiction is lacking, Defendant's position that it is immune from personal jurisdiction in this Court is nonsensical and should be rejected.

Now that HSBC NA is seeking to have this Court declared powerless to assert jurisdiction over it, it is apparently not reluctant to submit affidavit proof that directly conflicts with its prior public statements that it owns and controls HSBC Bank USA, an

entity that is subject to this Court's jurisdiction.  First, HSBC Bank USA is clearly subject to jurisdiction in this District – it has tacitly admitted as much by failing to join in its parent company's Motion to Dismiss.[3]  HSBC Bank USA will likely stipulate that it performs and facilitates transactions in this District and engages in activity here that Plaintiff alleges infringes its patents.[4]  Thus, it follows logically that a company that manages and controls the operations and activities of HSBC Bank USA – namely, HSBC NA – likewise engages in activity in this District.

As further evidence of HSBC NA's control over HSBC Bank USA, Plaintiff would refer the court to the "Lines of Business" description from www.hsbcusa.com/ourcompany/linesofbusiness.html.  *See* Exhibit 5.  This document describes the lines of business that operate "under the banner of HSBC-North America." *See id*.  This website offers the public numerous types of HSBC services, including retail banking, loan, and deposit services that may in fact infringe in part the patents in suit.  Thus, to allege in an Affidavit that HSBC NA does not "offer to sell" any potentially infringing products or services in Texas is simply untrue.

Also, attached as Exhibit 6 is a July 16, 2004 letter from HSBC NA to the SEC, the Federal Reserve System, and other government agencies.  In that letter, HSBC NA plainly states that HSBC North America <u>operates</u> various subsidiaries in the United States.  *See id.*,

---

[3] Also, HSBC Bank USA has a branch located in the Eastern District of Texas, at 5800 Granite Parkway, Suite 790, Plano, TX 75024.  It cannot dispute that it is subject to personal jurisdiction here.

[4] For example, on February 6, 2006, SVPCo announced that HSBC Bank USA, is now exchanging and settling check images through the SVPCo Image Payments Network.  See <u>HSBC Bank USA, N.A. Now Using SVPCo Image Payments Network</u>, PR Newswire US dated 02/02/06, attached as Exhibit 3.  HSBC Bank USA, under HSBC NA's control, has been capturing and transmitting check images in violation of DataTreasury's patents for several years now.  *See* <u>Checks Not in the Mail; New Technology Will Eliminate Return of Canceled Checks</u>, Buffalo News dated 08/16/03, attached as Exhibit 4.

page 2. Importantly, HSBC NA is not holding itself out as merely a stock holding company; instead, in all these public documents it clearly states that it is "operating" and "controlling" subsidiaries including HSBC Bank USA. *See id.* These statements, combined with HSBC Bank USA's operating presence in this District, simply foreclose any argument by HSBC NA that it is not subject to personal jurisdiction in this District.

This letter attached as Exhibit 6 was the subject of much discussion in the recent deposition of HSBC NA. This discussion can be summed up as follows: (1) the letter was written by an in-house attorney of HSBC NA, who also serves on the Board of Directors of both HSBC NA and HSBC Bank USA, *see* Exhibit 9, 30:3-18, 69:18 – 70:14; (2) the letter states that the HSBC NA is operating subsidiaries, which is totally inconsistent with the corporate representative's testimony, *see id.*, page 69:18 – 72:24; and (3) the corporate representative could have contacted the letter's author to determine the truth, but "just didn't," *see id.*, page 77:18-22. Also, the letter goes on to state that HSBC NA is providing financial services to clients – again in total contradiction with the corporate representative's testimony. *See id.,* page 78:16 – 80:10. Finally, there is no dispute that the letter to the Federal Government agencies was truthful. *See id.*, page 85:5-10. HSBC NA's positions in the litigation that are totally contrary to this letter are merely that – positions taken for litigation, and not the truth.

As HSBC NA's parent admits in its 20-F filing, HSBC NA is a bank holding company, and HSBC Bank USA is a wholly-owned banking subsidiary of HSBC NA. Bank holding companies are heavily regulated by Federal law, and the very definition of a bank holding company is "any company which has control over any bank." *See* 12 U.S.C. §1841(a)(1). Thus, by admitting that (1) it is a bank holding company and (2) its primary

banking subsidiary is HSBC Bank USA, HSBC NA has admitted that it does in fact control HSBC Bank USA. Its attempts to persuade the Court that HSBC NA does not do business in Texas are simply incorrect; it exerts direct control over transactions here every day through HSBC Bank USA. These transactions form the basis of DataTreasury's infringement claims against these Defendants.

### B.    HSBC NA's Control of HSBC Bank USA Subjects it to Jurisdiction Here

The Fifth Circuit has also looked closely at the issue of when a parent company such as HSBC NA can be deemed to engage in control of a subsidiary (in this case, HSBC Bank USA) such that it subjects itself to personal jurisdiction as the subsidiary is its alter ego. *See Gundle Lining Construction Corp. v. Adams County Asphalt, Inc.*, 85 F. 3d 201, 208-209 (5th Cir. 1996). The Court has developed the list of relevant factors to consider as follows:

(1) the parent and the subsidiary have common stock ownership;

(2) the parent and the subsidiary have common directors or officers;

(3) the parent and the subsidiary have common business departments;

(4) the parent and the subsidiary file consolidated financial statements and tax returns;

(5) the parent finances the subsidiary;

(6) the parent caused the incorporation of the subsidiary;

(7) the subsidiary operates with grossly inadequate capital;

(8) the parent pays the salaries and other expenses of the subsidiary;

(9) the subsidiary receives no business except that given to it by the parent;

(10) the parent uses the subsidiaries property as its own;

(11) the daily operations of the two corporations are not kept separate; and

(12) the subsidiary does not observe the basic corporate formalities, such as keeping separate books and records and holding shareholder and board meetings.

*See id*. Applying these factors to the present case, it is clear that HSBC NA has subjected itself to the jurisdiction of this Court.

For example, as to common stock ownership, it is undisputed that HSBC Bank USA is a wholly owned subsidiary of HSBC NA, and HSBC NA votes the stock that it owns in the subsidiary. *See* Exhibit 9, 32:16-21. As to the second factor (common officers and directors), the overlapping officers and directors of HSBC NA and HSBC Bank USA are numerous, and include the CEO of both companies. *See* Exhibit 9, 26:12-22, 28:1-20, 119:4-11, and 121:13 – 122:6. Despite all of these overlapping officers and directors, HSBC NA has refused to produce the communications among and between these individuals that would show whether or not the banking subsidiary is truly being operated by the parent. Because of that refusal, DataTreasury has filed a Motion to Compel; the mere fact of that refusal lends credence to the position that the overlapping executives lead to the parent's control of the subsidiary.

As to factor three concerning common business departments, the testifying corporate representative of HSBC NA was one such executive; she leads the insurance department and is in charge of procuring insurance for all of HSBC NA's subsidiaries. Interestingly, this includes properties in Texas. In other words, HSBC NA negotiates for and enters contracts for insurance to protect real property owned by HSBC Bank USA in Texas, and protect HSBC Bank USA from liability for accidents that happen in Texas. *See id.,* 15:14 – 19:17. Yet HSBC NA, despite contracting for insurance coverage in Texas, claims that it does no business here. Furthermore, analysis of factor four (consolidated accounting and financial reporting) also shows contacts with Texas that HSBC NA has wholly failed to disclose. It is undisputed that HSBC NA consolidates the finances of its subsidiaries, including HSBC

Bank USA, and those subsidiaries report through the parent company. *See id.*, 22:21 – 23:21. HSBC NA also does tax work for its subsidiaries. *See id.*, page 23:22 – 24:8. What has HSBC failed to disclose? That its revenue, which comes from dividends paid by subsidiaries including HSBC Bank USA, is derived at least in part from money earned from business conducted in the state of Texas. *See id.*, 39:1-5, 94:11 – 95:5, and 96:18 – 97:7. In fact, when pressed on whether HSBC NA was earning money generated by business activities in Texas, the corporate representative admitted that she couldn't answer those questions – despite the fact that she was presented for a deposition as the 30(b)(6) representative of HSBC NA. *See id.*, 130:21 – 134:2. Such testimony comes as no surprise; HSBC NA does not want to reveal that it is in fact making money from Texas residents while claiming it is not subject to jurisdiction here.

   As to factors eleven and twelve of the *Gundle* Court's analysis, namely whether a distinction between the corporations is observed in operations and corporate formalities, much of the evidence discussed in the previous section shows that HSBC NA has represented that it operates its subsidiaries, including HSBC Bank USA. Furthermore, the corporate representative testified that HSBC NA exercises "management control" over its banking subsidiary, which includes setting strategy, reviewing results and comparing those to the strategies, and handling finances. *See id.*, 58:13 – 59:10. Importantly, the representative testified that the overlapping directors from the parent and subsidiary "have influence over the direction" of HSBC Bank. *See id.*, 33:25 – 34:8. Ms. Hickman also testified that the subsidiary's executives are required to come before HSBC NA's CEO every year and make

presentations concerning their operations.[5]  *See id.*, 34:22 – 35:6.  Additionally, the company's operations are so intertwined that half of the people that directly report to Ms. Hickman work for the subsidiary companies.  *See id.*, 11:11 – 12:17.  The witness herself was even confused at times as to how many employees HSBC NA actually has – to the tune of either 50, or over 50,000.  *See id.*, 128:10 – 129:20.

Overall, the exertion of control by the parent company is clear, as the representative testified that all HSBC subsidiaries worldwide identify themselves with a common brand.  *See id.*, 159:12-17.  Much like with the financial documents referenced above, when the corporate representative was pressed on her personal knowledge to gird her broad assertion that the parent company did not provide operational support to the subsidiary, she had no basis to rely upon:

> Q. You testified earlier that HSBC North America Holdings, Inc. and HSBC Bank, the banking subsidiary, share some directors and officers, correct?
> MR. LEONARD:  Objection to form; objection, sidebar.
> Q. (BY MR. BRUSTER)  You may answer.
> A. I believe that they do, yes.
> Q. Including the CEO of HSBC North America Holdings, Inc., correct?
> A. Yes, I believe so.
> Q. Including the CEO of the HSBC banking subsidiary, correct?
> A. Yes, I believe so.

---

[5] It is important to note that DataTreasury has requested copies of these presentations, along with the financial documents showing revenue generated in Texas, the insurance policies procured by HSBC NA affording coverage for property and claims in Texas, the communications between officers and directors of these companies showing their overlapping control, and the like.  HSBC NA has steadfastly refused to produce these documents, which prompted DataTreasury to file a Motion to Compel, still currently pending.  At the least, an inference can be drawn by the mere refusal to produce these documents that their contents would harm HSBC NA's position in this dispute.

> Q. Okay. Despite the sharing of those two high-level executives between these two companies, is it still your testimony that the parent company doesn't provide operational support to the bank?
>
> A. Yes.
>
> Q. Have you ever asked those two respective CEOs whether they provide operational support to HSBC Bank?
>
> A. No.
>
> Q. Wouldn't that be important to know before you come testify that there is no operational support provided?
>
> A. I'm comfortable with my answers.

*See* Exhibit 9, 101:5 – 102:4. Such broad assertions without supporting facts are simply not competent evidence to overcome DataTreasury's pleadings, which show that HSBC NA is subject to this Court's jurisdiction.

Throughout this pleading, DataTreasury has shown numerous instances where HSBC NA has made representations concerning their operations and control of HSBC Bank USA, as well as representations concerning specific business they do that pertains to Texas or derives money from Texas. Though HSBC NA contests these points, any factual ambiguities at this stage of the proceeding are to be drawn in favor of DataTreasury. *See Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). Since this Response, and its cites to the deposition of the HSBC NA corporate representative, are full of such inconsistencies, these facts are to be resolved in DataTreasury's favor. As such, Defendant's Motion to Dismiss should be denied.

Finally, the "source of strength" doctrine has recognized that bank holding companies owe a duty to accept obligations of their subsidiary banks. This doctrine forms another basis for denying HSBC NA's Motion to Dismiss due to HSBC NA's liability for the infringing

activities of HSBC Bank USA[6] in addition to its own activities. *See Branch o/b/o Maine National Bank v. U.S.*, 69 F.3d 1571 (Fed. Cir. 1995) ("Through the source of strength doctrine, the [Federal Reserve] Board pierce[d] the corporate veil between a bank holding company and its affiliated banks…"). Thus, it is obvious that HSBC NA manages, controls, and directs the operations of HSBC Bank USA – and HSBC Bank USA has not challenged this Court's ability to exercise personal jurisdiction over it. Thus, the source of strength doctrine is an additional basis for the Court to deny HSBC NA's Motion.

In addition, it is worth noting that this Defendant and its related entity (and co-Defendant) HSBC Bank USA have a business relationship with SVPCo/The Clearing House Payments Company, as described in Plaintiff's First Amended Complaint. For many of the same reasons that SVPCo was found guilty by this Court of "purposefully direct[ing] its infringing activities at the Eastern District of Texas through its affiliation with…[a bank and the Federal Reserve]," (*see* Exhibit 7, Order dated November 16, 2004 denying SVPCo Motion to Dismiss), the Court should consider HSBC NA's (and HSBC Bank USA's) business relationship with SVPCo when determining that this Defendant has purposefully directed potentially infringing activities at this District. As discussed throughout, HSBC NA manages and controls the operations of a member bank of SVPCo that engages in transactions and is subject to personal jurisdiction in this District. By its exercise of such control, HSBC NA has itself engaged in transactions with SVPCo/The Clearing House, and

---

[6] As noted earlier, HSBC Bank USA has not contested this Court's ability to assert jurisdiction over it.

thus purposefully availed itself of this forum. It does not offend traditional notions of fair play and substantial justice for HSBC NA to be haled into this forum.[7]

Defendant HSBC NA performs, oversees, and controls electronic banking transactions in this District that include image capture, transmission and storage, and submission into and interaction with the payments system. It is these exact transactions that infringe Plaintiff's patents, right here in the Eastern District of Texas. Plaintiff's claims in this case arise from this very conduct, and from these contacts between the Defendant and this District. "Specific jurisdiction arises when the defendant's contacts with the forum arise from, or are directly related to, the cause of action." *See Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002) (*quoting Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Furthermore, specific jurisdiction in patent cases exists when "the defendant [has] purposely directed his activities at the … forum, and the litigation [results] from the alleged injuries that 'arise out of or relate to' the defendant's activities directed at the forum." *See Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 595 (5th Cir. 1999). If Defendant did not wish to be haled into Court in the Eastern District of Texas, it should not have performed or continue to perform infringing activities within this District, or controlled and managed the operations of HSBC Bank USA in a manner that infringes Plaintiff's patents in this District. Based on the above, specific jurisdiction over HSBC NA within the Eastern District of Texas is appropriate.

---

[7] In addition to its infringing activities performed through SVPCo/The Clearing House, this Defendant alone and through its control of HSBC Bank USA also infringes Plaintiff's patents through a business relationship with Viewpointe Archive Services, LLC. *See, e.g.,* <u>HSBC Selects Viewpointe's National Image Archive For its Enterprise Imaging Strategy</u>, PR Newswire dated 12/13/01, attached as Exhibit 8. As this Court is aware, Viewpointe has recently stipulated that it too is subject to personal jurisdiction within this District. Thus, by availing itself of Viewpointe's services in this District through its management and control of HSBC Bank USA, Defendant has committed further acts of purposefully availing itself to suit in this District.

Plaintiff's Amended Response to HSBC NA Corporation's Motion to
Dismiss For Lack of Personal Jurisdiction under Rule 12(b)(2)                                    Page 16

### C. Regardless of the Court's Determination of the Prior Arguments, HSBC NA has Waived its Personal Jurisdiction Challenge

Further conduct by HSBC NA in this case since the time it filed the Motion to Dismiss results in HSBC NA having waived its challenge to this Court's ability to exercise jurisdiction over HSBC NA. As the Court will recall, throughout several months in 2006, many of the Defendants in Cause No. 2:06-cv-72 sought a severance and stay of the Ballard patents (the '988 and '137 patents). Eventually, the Court offered a stay of proceedings related to the '988 and '137 patents to all Defendants. *See* Docket No. 411, dated January 12, 2007. Like nearly all other Defendants, HSBC NA accepted that offered stay on January 23, 2007. *See* Docket No. 432. Thus, HSBC NA has been offered affirmative relief from this Court, and accepted that relief.

It is well-settled law that a party challenging venue or personal jurisdiction waives his right to those challenges by seeking or accepting affirmative relief from the Court before having those challenges heard. *See Bel-Ray Co. v. Chemrite Ltd.*, 181 F.3d 435, 443 (3rd Cir. 1999) (noting that "in particular, where a party seeks affirmative relief from a court, it normally submits itself to the jurisdiction of the court with respect to the adjudication of claims arising from the same subject matter"), quoting *Adam v. Saenger*, 303 U.S. 59, 82 L. Ed. 649, 58 S. Ct. 454 (1938); *see also Wyrough & Loser, Inc. v. Pelmor Lab., Inc.*, 376 F.2d 543, 547 (3rd Cir. 1967) (holding that even if a defendant challenges personal jurisdiction at the outset of the case, participation in seeking relief from the court before having that challenge heard by the court waived his jurisdiction challenge). That is exactly what has happened in this case – HSBC NA has waived its jurisdictional challenge by seeking and

obtaining relief from the Court before having its challenge heard. For these reasons, HSBC NA's Motion should be denied in its entirety.

### III. CONCLUSION AND PRAYER

Based on the foregoing, Plaintiff DataTreasury Corporation respectfully requests that the Court DENY HSBC NA's Motion to Dismiss For Lack of Personal Jurisdiction Under Fed. R. Civ. P. 12(b)(2). Plaintiff prays for any further relief to which it is entitled.

Respectfully submitted,

_____
**ANTHONY BRUSTER**
State Bar No. 24036280
**R. BENJAMIN KING**
State Bar No. 24048592
**C. CARY PATTERSON**
State Bar No. 15587000
**BRADY PADDOCK**
State Bar No. 00791394
**NIX PATTERSON & ROACH L.L.P.**
2900 St. Michael Drive, Suite 500
Texarkana, Texas 75503
903.223.3999 (telephone)
903.223.8520 (facsimile)
akbruster@nixlawfirm.com
bpaddock@nixlawfirm.com
benking@nixlawfirm.com

**EDWARD CHIN**
State Bar No. 50511688
**ROD COOPER**
State Bar No. 90001628
**EDWARD L. VON HOHN**
Attorney in Charge
State Bar No. 09813240
**NIX PATTERSON & ROACH, L.L.P.**
Williams Square

5215 North O'Connor Blvd., Suite 1900
Irving, Texas 75039
972.831.1188 (telephone)
972.444.0716 (facsimile)
edchin@nixlawfirm.com
rcooper@cooperiplaw.com
edhohn@nixlawfirm.com

**JOE KENDALL**
State Bar No. 11260700
**KARL RUPP**
State Bar No. 24035243
**PROVOST * UMPHREY, L.L.P.**
3232 McKinney Avenue, Ste. 700
Dallas, Texas 75204
214.744.3000 (telephone)
214.744.3015 (facsimile)
jkendall@provostumphrey.com
krupp@provostumphrey.com

**ERIC M. ALBRITTON**
State Bar No. 00790215
**ALBRITTON LAW FIRM**
P.O. Box 2649
Longview, Texas 75606
903.757.8449 (telephone)
903.758.7397 (facsimile)
ema@emafirm.com

**T. JOHN WARD, JR.**
State Bar No. 00794818
**LAW OFFICE OF T. JOHN WARD, JR.**
P.O. Box 1231
Longview, Texas 75601
903.757.6400 (telephone)
903.757.2323 (facsimile)
jw@jwfirm.com

*ATTORNEYS FOR PLAINTIFF
DATATREASURY CORPORATION*

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and correct copy of the foregoing document was served on the 16th day of February, 2007 via electronic transmission.

Bank of America - Listserve (BankofAmericaF&R@fr.com)
BB&T ListServe (BB&T_DataTreasury@kilpatrickstockton.com)
Citizens Financial (citizensfinancial@standleyLLP.com)
City National Bank - Listserve (citynationalbank@dmtechlaw.com)
Comerica Bank 007 Listserve (Comerica_DataTreasury@kilpatrickstockton.com)
Compass/First Horizon/TN Bank - Listserve (comfhft@andrewskurth.com)
Cullen/Frost Bank - Listserve (frostbank@dmtechlaw.com)
EDS - Listserve (EDS_DataTreasury@mckoolsmith.com)
UBS – Listserve (ubsamericas@velaw.com)
HSBC North America Holdings, Inc./HSBC Bank USA  Listserve  (hsbccounsel@blhc-law.com)
BancorpSouth Listserve (bxs@hughesluce.com)
Bank of Tokyo Listserve (BankofTokyo_DataTreasury@sidley.com)
BofNY Listserve (BofNYLitTeam@pillsburylaw.com)
The Clearing House/SVPCo Listserve (TCH_DT@sullcrom.com)
Deutsche Bank Listserve (DeutscheBank_DataTreasury@sidley.com)
First Citizens Listserve (firstcitizens@bakerbotts.com)
First Data Listserve (FirstData_DataTreasury@sidley.com)
Key Bank Listserve (KeyCorp_DataTreasury@mckoolsmith.com)
LaSalle Bank Listserve (LaSalleBank_DataTreasury@sidley.com)
National City Bank Listserve (foley-dtc@foley.com)
Remitco Listserve (Remitco_DataTreasury@sidley.com)
Telecheck Listserve (Telecheck_DataTreasury@sidley.com)
Union BofCA Listserve (ubofclitteam@pillsburylaw.com)
Viewpointe Listserve (Viewpointe_dtc@skadden.com)
Zion First National Bank Listserve (foley-dtc@foley.com)
Harris Bancorp. - Listserve (Harris_DataTreasury@mckoolsmith.com)
M&T 007 Listserve (M&T_DataTreasury@kilpatrickstockton.com)
PNC Bank - Listserve (PNC_DataTreasury@mckoolsmith.com)
Suntrust - Listserve (SunTrust_DataTreasury@mckoolsmith.com)
U.S. Bancorp – Listserve (foley-dtc@foley.com)
Wachovia 007 Listserve (Wachovia_DataTreasury@kilpatrickstockton.com)
Wells Fargo - Listserve (*DalWellsFargo_DTC@BakerNet.com)

 

_____
**ANTHONY BRUSTER**