July 16, 2004

Office of the Comptroller of the
  Currency
250 E Street, SW
Attn: Public Reference Room
Mail Stop 1-5
Washington, DC 20219

Regulation Comments
Chief Counsel's Office
Office of Thrift Supervision
1700 G Street, NW
Washington, DC 20552
Attention: No. 2004-27

Robert E. Feldman
Executive Secretary
Attention: Comments/OES
Federal Deposit Insurance Corporation
550 17th Street, NW
Washington, DC 20429

Jonathan G. Katz
Secretary
Securities and Exchange Commission
450 Fifth Street, NW
Washington, DC 20549-0609

Jennifer J. Johnson
Secretary
Board of Governors of the
  Federal Reserve System
20th Street and Constitution Av., NW
Washington, DC 20551

Re:   Proposed Interagency Statement on Sound Practices Regarding Complex Structured Finance Transactions (Office of the Comptroller of the Currency Docket No. 04-12; Office of Thrift Supervision No. 2004-27; Federal Reserve Board Docket No. OP-1189; Securities and Exchange Commission File No. S7-22-04)

Ladies and Gentlemen:

    HSBC North America Holdings Inc. ("HSBC North America") appreciates the opportunity to comment on the proposed Interagency Statement on Sound Practices Concerning Complex Structured Finance Transactions (the "Statement") issued by the Office of the Comptroller of the Currency, the Office of Thrift Supervision, the Board of Governors of the Federal Reserve System, and the Securities and Exchange Commission (collectively, the "Agencies"). HSBC North America is a wholly-owned subsidiary of HSBC Holdings plc ("HSBC Holdings"), and is the holding company through which HSBC Holdings conducts its operations in the United States. HSBC Holdings is the largest banking organization headquartered in the United Kingdom and is the second largest banking organization in the world by market capitalization.

Comment Letter
July 16, 2004
Page 2 of 8

  As a bank holding company, HSBC North America operates various subsidiaries in the United States. Its principal banking subsidiary, HSBC Bank USA, N.A., has more than 400 branches in New York, Florida, Pennsylvania, California, Washington, and Oregon. Its consumer finance subsidiary, Household International, Inc., is one of the country's largest credit card issuers and offers consumer and mortgage loans to 50 million customers through offices throughout in the United States. Other subsidiaries of HSBC North America, including HSBC Securities (USA) Inc., an investment bank registered with the Securities and Exchange Commission, engage in a broad range of permissible nonbanking activities in the United States. As financial institutions supervised by the Agencies, HSBC North America and its subsidiaries would be directly affected by the guidance provided by the Statement.

  HSBC North America strongly supports the Agencies' effort to provide guidance on strengthening safeguards for the legal, reputational and other risks that may be associated with some complex structured finance transactions ("CSFTs"). As a leader in providing a wide array of financial services to clients, HSBC North America believes that financial institutions have a vital role to play in the responsible use of CSFTs and related financial products and applauds the Agencies' recognition of the important role played by CSFTs and the institutions structuring or participating in them in serving "the legitimate business purposes of customers." Moreover, HSBC North America appreciates the Agencies' observation that "many financial institutions have already taken meaningful steps to improve their control infrastructures relating to [CSFTs] in light of control weaknesses evidenced by recent events." Both HSBC North America and HSBC Holdings have long-standing, sophisticated risk-management policies and procedures in place that account for all components of risk, including legal and reputational risk and we are consistently seeking to improve the safeguards in those policies and procedures.

  While it may be true that some financial institutions may need to adopt legal and reputational risk-mitigation systems that have not been taken seriously in the past, we respectfully urge the Agencies not to impose unnecessary additional burdens on us and on other financial institutions that for a long time have incorporated a thorough evaluation of legal and reputational risk into our financial structuring and advisory capabilities. In particular, the Agencies should avoid imposing a "one-size-fits-all" approach as a solution for financial institutions. The degree of exposure of these institutions to the risks posed by CSFTs depends significantly on numerous variables, such as the type of role played by the institution, the type of transaction contemplated by the customer, and the jurisdictions in which both operate. Of more importance is that such an approach threatens to expose these institutions to the very liability from which the Agencies seek to protect them. We therefore respectfully urge the Agencies to issue a final version of the Statement that allows financial institutions considerable flexibility in determining which transactions require heightened scrutiny and how best to apply that scrutiny. The Statement should allow a financial institutions to set its own standards with respect to each of the areas for which policies and controls are suggested so that it can

*Comment Letter*
July 16, 2004
Page 3 of 8

account for the different roles and responsibilities that it assumes and the types of CSFTs in which it is involved.

Set forth below are our two principal comments on the Statement. Following these comments we briefly list several other points of concern to HSBC North America that we understand will be covered at greater length in the comments of various financial trade associations of which we are a member.

1. The Statement should not impose a new framework that imposes liability on financial institutions for the failures of customers or other participants in CSFTs.

The Statement as drafted threatens to increase the risk to the safety and soundness of the banking industry by providing grounds for the imposition of liability on financial institutions beyond those that exist under current law. In some cases, language in the Statement could serve as a basis on which to impose liability on financial institutions for fraudulent activities independently conducted by customers or other parties to a CSFT. This language includes the repeated call for financial institutions to "ensure" that certain steps are taken and results are obtained and the detailed and extensive review that the Statement contemplates for what the Statement considers to be high-risk CSFTs regardless of a financial institution's own assessment of that risk. We respectfully request that the Agencies reconsider the use of terms in the Statement that may inadvertently convert its supervisory guidance into a mandate or requirement for purposes of compliance. We suggest that the Agencies replace the phrase "should ensure" with a less prescriptive term such as "should consider," "should strive" or "should evaluate the need for."

To avoid the unintended consequence of expanding rather than reducing the exposure of the U.S. banking industry to legal risk, HSBC North America asks that the Statement clarify that its guidance creates no duty or any other ground on which to impose liability on a financial institution or its directors and officers either for a failure to follow the Statement's guidance or for the actions of any customer or other party to a CSFT, beyond those that exist under current law. The Statement should also make clear that it does not shift the customer's obligation to comply with securities disclosure requirements to the financial institution. We are concerned that unless these points are clarified, the Statement will discourage financial institutions from participating in legitimate, economically sound CSFTs and, at worst, expose them to significant liability for the acts of others over which they have no control and for which they should have no responsibility.

Two more ways in which the Statement implies additional grounds for liability are of particular concern to us. First, the Statement places on a financial institution's board of directors the burden for the implementation of the controls and policies recommended by the Statement. The Statement states, among other things, that the

DC1:#8105546v7

Comment Letter
July 16, 2004
Page 4 of 8

directors are "ultimately responsible for the financial well being of the institutions they oversee" and "should establish the financial institution's threshold for the risks associated with [CSFTs]." We agree that a financial institution's board should oversee its risk-control framework and regularly make efforts to strengthen it; however, to impose responsibility on the board for any shortcoming in that framework would be a mistake. To do so would discourage qualified individuals from serving as a director of a financial institution and, at a minimum, would threaten their active participation and frank discussion in board meetings.

Second, the Statement asks financial institutions to obtain information and assurances from other parties, implying that the failure to do so is a failure to comply with the guidelines. The Statement says that, in the case of CSFTs that "pose higher levels of legal and reputational risk," a financial institution "should ensure that staff approving the transactions obtain and document complete and accurate information about the customer's proposed accounting treatment of the transaction, financial disclosures related to the transaction as well as the customer's objectives for entering into the transaction." The Statement calls for financial institutions to "consider seeking representations and warranties from the customer stating the purpose of the transaction, how the customer will account for the transaction, and that the customer will account for the transaction in accordance with applicable accounting standards, consistently applied." Finally, the Statement contemplates not only that third-party accountants be retained to review transactions but that those accountants discuss the CSFT transaction with the customer's independent auditor.

The realities of the financial marketplace make compliance with these guidelines impractical. A financial institution may find that its customer simply refuses to comply with requests for these types of information and assurances and that it has defensible reasons for doing so. A customer's outside auditor would typically have every reason not to provide its client's counterparty with information on which that counterparty could later claim to have relied. A financial institution may responsibly choose not to pursue certain of the approaches suggested in the Statement for entirely legitimate business reasons, particularly in circumstances in which it has relied on outside counsel and other traditional resources for fully sufficient protection on these points.

2. The Statement needs to allow a financial institution that operates in a multi-jurisdictional environment the flexibility to adopt policies and procedures that reflect foreign regulations and global risk-management practices.

The Statement should make clear that it does not apply to non-U.S. bank holding companies such as HSBC Holdings with respect to the CSFT activities of their non-U.S. subsidiaries. In the case of a non-U.S. bank, the Statement limits its application to that bank's U.S. agencies, branches or subsidiaries, clearly deferring to the non-U.S. bank's home-country regulator on the question of how CSFTs entered into by its non-U.S.

Comment Letter
July 16, 2004
Page 5 of 8

offices and subsidiaries should be regulated. The same should be true for non-U.S. holding companies. In the case of the HSBC Group, the Statement should apply to HSBC North America and its subsidiaries, including HSBC Bank USA, N.A. and HSBC Securities (USA) Inc., but the Agencies should defer to the Financial Services Authority and other non-U.S. regulators on how CSFTs entered into to HSBC Holdings' non-U.S. subsidiaries should be supervised.

HSBC North America's status as a subsidiary of a non-U.S. holding company and member of a global organization that does business in 79 countries and territories prompts two related points. First, the Statement needs to recognize that a financial institution such as HSBC North America will be more likely to be involved in CSFTs to which a non-U.S. affiliate or other non-U.S. entity *will be a party simply by virtue of its membership in a global organization.* The Statement should provide these institutions with the flexibility to tailor their internal policies and procedures with respect to CSFTs in a way that reflects the fact that these non-U.S. parties will be subject to non-U.S. regulatory regimes. HSBC Holdings has decades of experience managing operations in numerous jurisdictions, which requires it to integrate and reconcile different regulatory regimes on a continuous and highly sophisticated basis. HSBC North America and similarly situated financial institutions should be allowed to rely on this unusual expertise and experience in evaluating and monitoring its participation in CSFTs.

Second, the statement lists "[t]ransactions that cross multiple geographic or regulatory jurisdictions" as an example of a characteristic "that should be considered in determining whether or not a transaction or several transactions might need additional scrutiny." Either this characteristic should be removed from the list or the Statement should make clear that it is a characteristic that needs to be considered only for institutions without significant direct or affiliated foreign operations. HSBC North America is a financial institution a principal strategic advantage of which is its ability to structure cross-border transactions and serve customers and counterparties in more than one geographic region. This admonition thus applies to a substantial portion of its business. We *respectfully dispute the implication that such a transaction is per se* likely to need additional scrutiny on the ground that "processing and oversight" is made more difficult. HSBC North America and its non-U.S. affiliates distinguish themselves from their competitors on the basis that "processing and oversight" is not more difficult for them, i.e. on the basis that their expertise in these transactions enable them to evaluate these transactions without the difficulties encountered by financial institutions that do not enjoy the benefits HSBC Group's global risk-management infrastructure.

    3.    <u>Additional Comments</u>

We have summarized below three additional concerns that we have about the Statement and that we share with a broader range of financial institutions. We understand that they will be discussed in more detail by other interested parties who plan to comment on the Statement.

DC1:#8105546v7

Comment Letter
July 16, 2004
Page 6 of 8

    a.    The Statement should allow a financial institution to tailor its CSFT policies not only to the type of transaction but to the scope of the institution's involvement in any CSFT. The Statement should make clear (i) that different roles played by financial institutions in the development or structure of CSFTs present different types and degrees of risk, (ii) that heightened scrutiny may not be necessary in circumstances *in which* financial institutions play a limited role in a CSFT transation, and (iii) that financial institutions should exercise the discretion and flexibility to apply the Statement's guidance differently when roles or responsibilities vary.

    b.    The requirement that a financial institution establish a special SPE-approval process and monitor the use of SPEs is redundant and unnecessary. The continuous review and monitoring of an institution's use of an SPE will be unnecessary in many instances in which an SPE is formed and should properly be folded in to the heightened scrutiny imposed on CSFTs that the institution has identified as requiring this treatment. For example, an SPE created by a customer may well call for a different level of scrutiny than an SPE structured by the financial institution. Whether the use of a particular SPE needs to be continuously monitored should be left to the discretion of the financial institution, based on the type of transaction in question and the scope of the institution's role and responsibilities in that transaction.

    c.    Terminology throughout the Statement should be revised to avoid the perception of vagueness. For example, the Statement urges financial institutions to implement recommended policies and controls for evaluating "the appropriateness of the transaction(s)" and "preventing the financial institution from participating in inappropriate transactions." The terms "appropriateness" or "inappropriate" are not defined by the Statement. We suggest that references to "appropriateness" or "inappropriate transactions" be replaced with "transactions that, in the determination of the financial institution, pose an unacceptably high level of legal or reputational risk." Also, the statement that "[t]he more complex variations of selected structured finance transactions have . . . *placed pressure on the interpretations* of the accounting and tax rules" unnecessarily risks discouraging innovation, and should be removed from the final Statement.

            \*      \*      \*

    We hope that this letter is helpful to the Agencies as they begin to finalize the Statement. We would be more than happy to discuss any of the matters raised in this

DC1:#8105546v7

Comment Letter
July 16, 2004
Page 7 of 8


letter at greater length. Please do not hesitate to call or e-mail me at (212) 525-6533 or janet.l.burak@us.hsbc.com, if you have any questions about our comments.

                    Sincerely,


                    Janet L. Burak

DC1:#8105546v7

Comment Letter
July 16, 2004
Page 8 of 8

DC1:#8105546v7