## Page 1

1          UNITED STATES DISTRICT COURT

           EASTERN DISTRICT OF TEXAS

2          MARSHALL DIVISION

3    DATATREASURY CORPORATION,  )(

                               )(

4        Plaintiff,            )(

                               )(

5    VS              )(    CIVIL ACTION NO.

                     )(    2:06-CV-72 (DF)

6    WELLS FARGO & COMPANY,    )(

     et al.,                  )(

7                             )(

         Defendants.          )(

8

9

10

11   VIDEOTAPED ORAL DEPOSITION OF MARGO HICKMAN

12        FEBRUARY 2, 2007

13

14

15

16        VIDEOTAPED ORAL DEPOSITION OF MARGO HICKMAN,

17   produced as a witness at the instance of the Plaintiff,

18   and duly sworn, was taken in the above-styled and

19   above-numbered cause on the 2nd day of February, 2007,

20   from 9:06 a.m. to 3:09 p.m., before Lisa J. Gretarsson,

21   CSR in and for the state of Texas, reported by machine

22   shorthand, at the offices of Katten Muchin, 525 West

23   Monroe Street, located in the city of Chicago, state of

24   Illinois, pursuant to the Federal Rules of Civil

25   Procedure and the provisions stated on the record.

## Page 2

1         A P P E A R A N C E S

2

3    FOR THE PLAINTIFF:

4        Anthony Bruster, Esq.

         R. Benjamin King, Esq.

5        NIX PATTERSON & ROACH, L.L.P.

         2900 St. Michael Drive, Suite 500

6        Texarkana, Texas  75503

            Telephone:  903-223-3999

7        Facsimile:  902-223-8520

         E-mail:    akbruster@nixlawfirm.com

8                   benking@nixlawfirm.com

9

     FOR THE DEFENDANT, HSBC NORTH AMERICA HOLDINGS, INC./

10   HSBC BANK USA:

11       Tim S. Leonard, Esq.

         Edward J. "Nick" Nicholas, Esq.

12       BOUDREAUX, LEONARD, HAMMOND & CURCIO, P.C.

         Two Houston Center

13       909 Fannin, Suite 2350

         Houston, Texas  77010

14          Telephone:  713-757-0000

            Facsimile:  713-757-0178

15       E-mail:    tleonard@blhc-law.com

                    nnicholas@blhc-law.com

16

17   FOR THE DEFENDANT, UNION BANCAL CORP.

18       Ross R. Barton, Esq.

         PILLSBURY, WINTHROP, SHAW, PITTMAN, LLP

19       1650 Tysons Boulevard

         McLean, Virginia  22102

20          Telephone:  703-770-7900

            Facsimile:  703-770-7901

21       E-mail:    ross.barton@pillsburylaw.com

22   ALSO PRESENT:

23       Allison Shank, HSBC in-house counsel

         Lauren Ragin, Video Technician

24       Brooke Berry, Document Technician

25          (continued on following page)

## Page 3

1         A P P E A R A N C E S

2         (continued from previous page)

3

     LIVENOTE CONNECTIONS VIA THE INTERNET:

4

5        Amr Aly

         Irah Donner

         Meera Marti

6        David Curcio

         Anthony Bruster

7        Ben King

         Shephard Lane

8        Dalton Young

         Sunja Smith

9        Ed Hohn

         Kelli Hearne

10       CiCi Williams

         John Hiles

11       George Shipley

         Rod Cooper

12       Chris Sampson

         Kellie Goolsby

13       Ed Chin

         Amy Wise

14       Alison Ross

         Karl Rupp

15       Jacala Hoffman

16   WEBCAST CONNECTIONS VIA THE INTERNET:

17       Dalton Young

         David Curcio

18       Sunja Smith

         Amr Aly

19       Irah Donner

         Meera Marti

20       Chris Sampson

         Amy Wise

21

22

23

24

25

## Page 4

1         I N D E X

2                              PAGE

3    Appearances........................................ 2-3

4    WITNESS:  MARGO HICKMAN

5        Examination by Mr. Bruster.................... 7

         Examination by Mr. Leonard................... 160

6        Examination by Mr. Bruster................... 162

7    Corrigendum Page.................................. 164

     Reporter's Certificate............................ 166

Page 5

E X H I B I T S

NO. DESCRIPTION                                      MARKED
3    3    HSBC website printout.......................  47
4    4    Form 20-F....................................  61
5    5    Letter to government agencies, from Janet
          Burak, dated July 16, 2004...................  69

6    6    HSBC North America Holdings, Inc.,'s
7         Objections, Assertions of Privilege and
          Responses to DataTreasury Corporation's
8         First Set of Requests for Admission
          Regarding Jurisdictional Discovery...........  85

9    7    HSBC North America Holdings, Inc.'s
10        Objections, Assertions of Privilege and
          Responses to DataTreasury Corporation's
11        First Set of Requests for Production
          Regarding Jurisdictional Discovery...........  103

12   8    Defendant HSBC North America Holdings, Inc.'s
13        Objections, Assertions of Privilege and
          Responses to Plaintiff DataTreasury
14        Corporation's First Set of Interrogatories
          Regarding Jurisdictional Discovery...........  108

15   9    Defendant HSBC North America Holdings, Inc.'s
16        Supplemental Objections, Assertions of
          Privilege and Answers to Plaintiff
17        DataTreasury Corporation's First Set of
          Interrogatories Regarding Jurisdictional
18        Discovery....................................  118
19  10    Document entitled Consolidated Financial
          Statements for Bank Holding Companies -
20        FR Y-9C
          (Bates stamped HNAH-JURIS-0012)..............  125
21
          11    Document entitled Report of Income for
22        Bank Holding Companies Schedule HI -
          Consolidated Income Statement
23        (Bates stamped HNAH-JURIS-0013)..............  126
24        (exhibit index continued on following page)
25

Page 6

E X H I B I T S

(exhibit index continued from previous page)

NO. DESCRIPTION                                      MARKED
12   Schedule HI Continued
     (Bates stamped HNAH-JURIS-0014)...............  128

13   Notice of Intention to Take Oral and Video
     Deposition of a 30(b)(6) Representative
     of HSBC North America Holdings, Inc..........  132

14   Affidavit of Margo Hickman....................  146

15   North America - Bank Holding Company
     Structure.....................................  160

     (exhibit index concluded)

Page 7

| 08:20 | 1 | P R O C E E D I N G S |
| 09:06 | 2 | THE VIDEOGRAPHER: We're on the record. |
| 09:06 | 3 | MARGO HICKMAN, |
| 09:06 | 4 | having been first duly sworn, testified as follows, to |
| 09:06 | 5 | wit: |
| 09:06 | 6 | EXAMINATION |
| 09:06 | 7 | BY MR. BRUSTER: |
| 09:07 | 8 | Q.  Good morning. |
| 09:07 | 9 | A.  Good morning. |
| 09:07 | 10 | Q.  Tell us your name, please. |
| 09:07 | 11 | A.  Margo Hickman. |
| 09:07 | 12 | Q.  Ms. Hickman, will you tell us your address, |
| 09:07 | 13 | both business and personal, please. |
| 09:07 | 14 | A.  My home address is 1444 Prairie Trail in |
| 09:07 | 15 | YSLake, Illinois, which is YSLake, one word.  My |
| 09:07 | 16 | business address is 2700 Sanders Road, Prospect Heights, |
| 09:07 | 17 | Illinois. |
| 09:07 | 18 | Q.  And what do you do for a living? |
| 09:07 | 19 | A.  I am the senior vice president of insurance |
| 09:07 | 20 | for HSBC North America Holdings. |
| 09:07 | 21 | Q.  Senior vice president of insurance for HSBC |
| 09:07 | 22 | North America Holdings.  How long have you served in |
| 09:07 | 23 | that position? |
| 09:07 | 24 | A.  I was appointed to that position, I think, in |
| 09:07 | 25 | 2004 sometime. |

Page 8

| 09:07 | 1 | Q.  Have you ever given a deposition before? |
| 09:07 | 2 | A.  Yes. |
| 09:07 | 3 | Q.  How many times? |
| 09:07 | 4 | A.  Many.  I don't know how many, but more than |
| 09:07 | 5 | ten, I would say. |
| 09:08 | 6 | Q.  More than ten.  Okay.  When was the last time |
| 09:08 | 7 | you gave a deposition? |
| 09:08 | 8 | A.  I don't believe I gave any in 2006 so probably |
| 09:08 | 9 | 2005. |
| 09:08 | 10 | Q.  So 2006 falls into the category of one of the |
| 09:08 | 11 | better years in your life? |
| 09:08 | 12 | A.  Yes. |
| 09:08 | 13 | Q.  Okay.  Well, I'm sure you're very familiar |
| 09:08 | 14 | with this routine.  Just so you know, if you need a |
| 09:08 | 15 | break for any reason, let us know, we're happy to |
| 09:08 | 16 | accommodate you. |
| 09:08 | 17 | You'll hear the lawyers, and me, |
| 09:08 | 18 | probably, talking, but if you can try and answer my |
| 09:08 | 19 | questions directly, I'll try and ask proper questions, |
| 09:08 | 20 | and if you don't understand one, let me know, okay? |
| 09:08 | 21 | A.  Yes. |
| 09:08 | 22 | Q.  You understand the testimony you're giving |
| 09:08 | 23 | here today is the same as if you were sitting in a |
| 09:08 | 24 | courtroom in Marshall, Texas. |
| 09:08 | 25 | A.  Yes. |

## Page 9

09:08 1    Q.  That you're sworn to tell the truth here under
09:08 2    penalties of perjury.
09:08 3    A.  Yes.
09:08 4    Q.  Okay.  You said that you first became the
09:08 5    senior vice president of insurance for HSBC North
09:08 6    America Holdings, Inc. in 2004, and that you were
09:08 7    appointed to that position; is that correct?
09:08 8    A.  Yes.
09:08 9    Q.  Okay.  Who appointed you to that position?
09:08 10   A.  I believe it was the board, or they affirmed
09:09 11   the appointment.
09:09 12   Q.  The board of directors?
09:09 13   A.  Yes.
09:09 14   Q.  And is that the board of directors of HSBC
09:09 15   North America Holdings?
09:09 16   A.  I believe so, yes.
09:09 17   Q.  Prior to your appointment to the position of
09:09 18   senior vice president of insurance for that entity, what
09:09 19   did you do?
09:09 20   A.  I was the vice president of insurance for HSBC
09:09 21   Finance Company, Inc.
09:09 22   Q.  HSBC Finance Company, Inc.?
09:09 23   A.  I think that's what we -- I think that's what
09:09 24   it's called.  It's HBIO, the acronym.
09:09 25   Q.  Okay.  And how long had you been serving as

## Page 10

09:09 1    the vice president of insurance for that entity?
09:09 2    A.  For HSBC, as of the date of the acquisition in
09:09 3    March of 2003, I believe.
09:09 4    Q.  And when you say the date of the acquisition,
09:09 5    tell me what you're referring to.
09:09 6    A.  The date that HSBC, PLC acquired Household
09:10 7    International.
09:10 8    Q.  You said the date that HSBC, PLC acquired
09:10 9    Household International?
09:10 10   A.  Yes.
09:10 11   Q.  Okay.  And prior to that acquisition, had you
09:10 12   been working with the Household International entities,
09:10 13   as opposed to the HSBC entities?
09:10 14   A.  Yes.
09:10 15   Q.  Okay.  What position did you hold with
09:10 16   Household International prior to that acquisition?
09:10 17   A.  Vice president of insurance.
09:10 18   Q.  Are there any difference -- differences in job
09:10 19   duties that you have between when you served as the vice
09:10 20   president of insurance for HSBC Finance Company, Inc.
09:10 21   and your current role as senior vice president of
09:10 22   insurance for HSBC North America Holdings, Inc.?
09:10 23   A.  Yes.
09:10 24   Q.  Okay.  What are the differences?
09:10 25   A.  I have responsibility for the insurance

## Page 11

09:10 1    procurement and administrative duties for all of North
09:10 2    America.  And I also am responsible for oversight of the
09:11 3    insurance for Central and South America.
09:11 4    Q.  Any other differences?
09:11 5    A.  I have a few more people reporting to me than
09:11 6    I did before.
09:11 7    Q.  Anything else?
09:11 8    A.  Not material.
09:11 9    Q.  How many people report directly to you?
09:11 10   A.  Ten.
09:11 11   Q.  Do all of the people that report to you work
09:11 12   for HSBC North America Holdings, Inc.?
09:11 13   A.  No.
09:11 14   Q.  If you could, walk through with me who the
09:11 15   people are that report to you and who they work for.
09:11 16   A.  I have -- would you like all ten names?
09:11 17   Q.  Sure, and who they work for.
09:11 18   A.  For HBIO, which is the finance company portion
09:11 19   of the company, I have Karen Lemanski, Bill Silva, Randy
09:12 20   Goodman, Cathy Ellingen and Kristin Kinder.
09:12 21        For HBUS, which is the bank business in
09:12 22   Buffalo, I have Tim O'Connor, Shirley Galioto, Mike
09:12 23   Benzino, Jill Peterson and Barbara Glaspy.
09:12 24   Q.  And those five people that you just listed,
09:12 25   you use an acronym, HBUS?  What was that?

## Page 12

09:12 1    A.  Yes, HBUS.
09:12 2    Q.  HBUS?  Tell me -- tell me what that stands
09:12 3    for.
09:12 4    A.  HSBC -- we just call it HBUS.  I guess it's
09:13 5    the -- bank subsidiary, HSBC Bank something.  Sorry,
09:13 6    but I don't know exactly.
09:13 7    Q.  So those people work for the banking
09:13 8    subsidiary of HSBC.
09:13 9    A.  That's -- that's where they're headquartered,
09:13 10   yes.
09:13 11   Q.  The banking subsidiary here in North America.
09:13 12   A.  Yes.
09:13 13   Q.  Okay.  And those five people report directly
09:13 14   to you?
09:13 15   A.  Shirley and Tim report directly to me, and
09:13 16   then Barbara reports to Tim, Mike reports to Shirley,
09:13 17   and Joe reports to me.
09:13 18   Q.  Do you know what Tim's title is?
09:13 19   A.  Director of insurance.
09:13 20   Q.  And do you know what specific legal entity
09:13 21   he's director of insurance for?
09:13 22   A.  Well, the way we handle it is we work as a
09:14 23   team, the 11 people.  And we divide the duties for the
09:14 24   insurance procurement and administrative duties for
09:14 25   North America between the 10 people.  So he does -- his

## Page 13

09:14  1   duties are not defined by where he's located.

09:14  2       Q.  Okay.  And I guess that same kind of teamwork

09:14  3   mentality, insofar as procurement of insurance, would go

09:14  4   for all the 10 people you mentioned, plus yourself --

09:14  5       A.  Yes.

09:14  6       Q.  -- across all those entities?

09:14  7       A.  Yes.

09:14  8       Q.  Okay.  How many senior vice presidents are

09:14  9   there that work for HSBC North America Holdings, Inc.,

09:14  10  same company that you work for?

09:14  11      A.  I don't know.  I'm sure we can provide that

09:14  12  information to you, but I don't know.

09:14  13      Q.  Are there more than five?

09:14  14      A.  I really can't tell you.  I haven't paid

09:14  15  attention to that.

09:14  16      Q.  Can you name any others, as you sit here this

09:14  17  morning, any other people that are senior vice

09:15  18  presidents of some category, like yours is insurance,

09:15  19  that work for HSBC North America Holdings, Inc.?

09:15  20      A.  The only one that I -- that I'm fairly certain

09:15  21  of is Cliff Mizialko in the accounting -- in an

09:15  22  accounting role, but I'm not sure his exact title.

09:15  23      Q.  Other than Mr. Mizialko -- is that how you say

09:15  24  that?

09:15  25      A.  Yes.

## Page 14

09:15  1       Q.  Okay.  Are there any other people that -- do

09:15  2   you know how many people there are that work in

09:15  3   accounting for HSBC North America Holdings, Inc.?

09:15  4       A.  No.

09:15  5       Q.  Are there more than ten?

09:15  6       A.  I don't know, but I -- I wouldn't think so,

09:15  7   but I'm not positive.

09:15  8       Q.  Do you know how many total employees there are

09:15  9   for HSBC North America Holdings, Inc.?

09:16  10      A.  I'm not positive, but I think it's less

09:16  11  than 50.

09:16  12      Q.  Less than 50 total employees?

09:16  13      A.  I think so.

09:16  14      Q.  We have you, who is in charge of insurance,

09:16  15  and you've mentioned Mr. Mizialko, who deals with

09:16  16  accounting.  What other kind of broad business

09:16  17  categories like that are there departments of at HSBC

09:16  18  North America Holdings, Inc.?

09:16  19      A.  My understanding is that the categories are

09:16  20  what we would call staff functions, which are support

09:16  21  functions for the corporation, accounting, tax,

09:16  22  insurance, those types of functions.

09:16  23      Q.  Are there any others that you can think of as

09:16  24  you sit here today?

09:16  25      A.  Probably legal.

## Page 15

09:16  1       Q.  Legal?

09:17  2       A.  But beyond that I wouldn't be able to say.

09:17  3       Q.  Would risk management fall in the category of

09:17  4   legal, or is that a separate department?

09:17  5       A.  That's a separate department.

09:17  6       Q.  Does -- does HSBC North America Holdings, Inc.

09:17  7   have a risk management department?

09:17  8       A.  I guess I'm not positive where -- you know,

09:17  9   where that is housed exactly in the company.  I'm sure

09:17  10  we can provide that to you if we haven't already.

09:17  11      Q.  If we can just kind of focus in on -- on your

09:17  12  line of business, the insurance line of business, since

09:17  13  that's what you probably know the most about.

09:17  14          You mentioned earlier that your

09:17  15  responsibility is for insurance procurement and

09:17  16  administrative duties for all of North America --

09:17  17      A.  Yes.

09:17  18      Q.  -- as one of your job responsibilities.

09:17  19      A.  (Nods head affirmatively.)

09:17  20      Q.  Tell us -- tell the jury what you mean by

09:17  21  insurance procurement and administrative duties for all

09:17  22  of North America.  What does that mean?

09:17  23      A.  Well, the corporation purchases insurance to

09:17  24  protect itself against certain types of risk, including

09:18  25  workers' compensation, insurance coverage on property,

## Page 16

09:18  1   automobiles, general liability, things like slips and

09:18  2   falls and accidents that customers might have in our

09:18  3   various premises.  We buy, you know, coverage on -- to

09:18  4   protect the assets of the corporation.  Those are some

09:18  5   of the categories.

09:18  6       Q.  How many premises does HSBC North America

09:18  7   Holdings, Inc. own?

09:18  8       A.  Well, I don't know exactly.  It changes,

09:18  9   actually, day to day, but as -- probably 2,000 or a

09:19  10  little more.

09:19  11      Q.  Okay.  Are those premises owned by any other

09:19  12  HSBC entities in joint ownership with HSBC Holdings

09:19  13  North America, Inc.?

09:19  14      A.  Well, they're not owned at all by HSBC North

09:19  15  America Holdings, Inc.  They're owned or leased by the

09:19  16  subsidiary companies.

09:19  17      Q.  Maybe I asked an unclear question, but a

09:19  18  moment age I asked you how many premises North -- HSBC

09:19  19  North America Holdings, Inc. owns, you said

09:19  20  approximately 2,000, so was that an incorrect statement?

09:19  21      A.  Yes, it is, and I apologize for mis --

09:19  22  misrepresenting that.

09:19  23      Q.  How many premises does HSBC North America

09:19  24  Holdings, Inc. own?

09:19  25      A.  None, to my knowledge.

4 (Pages 13 to 16)

## Page 17

09:19 1    Q.  Who owns the headquarter building that HSBC
09:19 2  North America Holdings, Inc. operates out of in Prospect
09:19 3  Heights, Illinois?
09:19 4    A.  I don't know.  I know it's a lease facility
09:19 5  and it's been sold a couple of times.  I'm not sure who
09:20 6  the current owner is.
09:20 7    Q.  Who's the lease -- the lessee on that
09:20 8  facility?
09:20 9    A.  I don't know for sure.
09:20 10   Q.  So your testimony to the jury now is that HSBC
09:20 11 North America Holdings, Inc. doesn't own any premises
09:20 12 whatsoever in North America?
09:20 13   A.  That is my testimony.
09:20 14   Q.  Okay.  If HSBC North America Holdings, Inc.
09:20 15 doesn't own any property anywhere in North America, why
09:20 16 does it go get insurance for properties all across this
09:20 17 country?
09:20 18       (Allison Shank enters the deposition
09:20 19       room.)
09:20 20   A.  The reason that we include HSBC North America
09:20 21 Holdings, Inc. as an insured on our insurance policies
09:20 22 is so that in the event they are named in a lawsuit they
09:20 23 are provided coverage under the policy.
09:20 24       The insurance policies are designed to
09:20 25 protect all of the operating subsidiaries, as well as

## Page 18

09:21 1  any holding companies that we have in North America.  We
09:21 2  buy the coverage in a broad way to protect the entire
09:21 3  North American operation.
09:21 4    Q.  (BY MR. BRUSTER)  Does HSBC Bank operate in
09:21 5  Texas?
09:21 6    A.  I -- when you said -- I -- I think so.
09:21 7    Q.  Do the insurance policies, that you purchase
09:21 8  on behalf of HSBC North America Holdings, Inc., provide
09:21 9  insurance for accidents that might happen in Texas?
09:21 10   A.  They provide insurance for accidents that
09:21 11 could happen anywhere in North America.
09:21 12   Q.  Is there any reason that these insurance
09:21 13 policies weren't produced as part of the document
09:21 14 production in this case, to your knowledge?
09:21 15   A.  I can't answer that question.
09:21 16   Q.  Just so we're clear, all of these insurance
09:21 17 policies that provide coverage even for accidents in
09:22 18 Texas for HSBC Bank customers, all of those policies are
09:22 19 purchased by HSBC North America Holdings, Inc., correct?
09:22 20   A.  They are procured by us, yes, and then --
09:22 21 well, go ahead.
09:22 22   Q.  Are they purchased by that company?
09:22 23   A.  It's a difficult question.  The way the --
09:22 24 way the system works is that they are purchased, and
09:22 25 then the cost for the insurance is allocated to each

## Page 19

09:22 1  operating subsidiary according to its own risk in that
09:22 2  category.  So if HSBC Bank has a bank branch and they
09:22 3  paid the cost of the insurance for that bank branch, the
09:22 4  cost is not held at HSBC North America Holdings.
09:22 5    Q.  HSBC North America Holdings negotiates for
09:22 6  that insurance, correct?
09:22 7    A.  Yes.
09:22 8    Q.  I mean, that's what you do, right?
09:22 9    A.  That's what I do.
09:23 10   Q.  Okay.  And HSBC North America Holdings enters
09:23 11 into the contract for insurance, correct?
09:23 12   A.  Yes.
09:23 13   Q.  And those contracts for insurance, that HSBC
09:23 14 North America Holdings, Inc. enters into, provide
09:23 15 coverage for accidents that might happen in Texas,
09:23 16 correct?
09:23 17   A.  Yes.
09:23 18   Q.  Okay.  You mentioned earlier the bank
09:23 19 subsidiaries, the people that report to you are officed
09:23 20 in Buffalo; is that correct?
09:23 21   A.  Yes.
09:23 22   Q.  Is that the headquarters of HSBC Bank?
09:23 23   A.  I think the headquarters is officially
09:23 24 New York City, but it might -- I'm not sure.  I guess it
09:23 25 depends on the subsidiary.

## Page 20

09:23 1    Q.  Do they just -- okay.  Sorry.  I didn't mean
09:23 2  to cut you off.
09:23 3       Does HSBC Bank own the building in
09:23 4  Buffalo?
09:23 5    A.  No.
09:23 6    Q.  They lease that building?
09:23 7    A.  Yes.
09:23 8    Q.  Okay.  What about in New York City?  Do they
09:23 9  own that building?
09:23 10   A.  I believe we do own that building.
09:24 11   Q.  You've been responsible for HSBC North America
09:24 12 Holdings, Inc. for procuring insurance on that building,
09:24 13 correct?
09:24 14   A.  Yes.
09:24 15   Q.  Now, earlier you were talking about -- let me
09:24 16 back up real quick.
09:24 17       Separate and apart from procurement,
09:24 18 negotiation, entering into contracts for insurance, all
09:24 19 of which you do on behalf of HSBC North America
09:24 20 Holdings, Inc., who actually pays the insurance company
09:24 21 for the policy that they issue?
09:24 22   A.  The premiums are paid by either HSBC Bank or
09:24 23 HSBC Finance Corporation.
09:24 24   Q.  Not by HSBC North America Holdings, Inc.?
09:24 25   A.  No.

Page 21

09:24  1    Q.  Does HSBC North America Holdings, Inc. have a
09:24  2  bank account?
09:24  3    A.  I don't know.
09:24  4    Q.  Do you get a paycheck?
09:24  5    A.  I do.
09:24  6    Q.  Who is listed as the check writer on your
09:25  7  paycheck?
09:25  8    A.  Well, I actually never see it because it's
09:25  9  direct deposit.  But the way payroll is handled for the
09:25  10  United States is through an affiliated company that
09:25  11  handles -- it's HSBC Payroll Services, I believe, and it
09:25  12  handles all of the payroll and tax -- employee payroll
09:25  13  and tax filings.
09:25  14    Q.  When you say handles payroll and tax filings,
09:25  15  you're talking -- are you talking about preparation?
09:25  16    A.  And --
09:25  17    Q.  Administration?
09:25  18    A.  Yes.  I mean, you know, making sure everybody
09:25  19  gets paid.
09:25  20    Q.  Is HSBC Payroll Services the payor on your
09:25  21  paycheck?
09:25  22    A.  Well, it used to be.  And I guess I haven't
09:25  23  seen one for a long time so I apologize, I'd have to go
09:25  24  look at it again, but the last time I looked, yes.
09:26  25    Q.  We've talked about one half of what you

Page 22

09:26  1  mentioned earlier as your duties, insurance procurement
09:26  2  for all of North America.  Tell me about that other
09:26  3  broad little topic you mentioned, administrative duties.
09:26  4  What does that entail?
09:26  5    A.  Well, when you -- there would be claims
09:26  6  associated with the insurance policies, and it's our job
09:26  7  to make sure that the claims are reported correctly, and
09:26  8  that we follow through as they are settled or adjusted
09:26  9  with the person who filed the claim against us.
09:26  10      We have responsibility for reporting some
09:26  11  of the various parts of our insurance program to the
09:26  12  parent company.  We have to make sure that the premiums
09:26  13  get paid.  I mean, those are the administrative-type
09:26  14  duties.  Certificates of insurance have to be issued.
09:26  15    Q.  All those things that you just mentioned you
09:27  16  do as part of your job as the senior vice president for
09:27  17  insurance of HSBC North America Holdings, Inc., correct?
09:27  18    A.  Those are done by my staff, yes --
09:27  19    Q.  By your staff.
09:27  20    A.  -- in our department.
09:27  21    Q.  Okay.  Who do you report to?
09:27  22    A.  I report to Jack McGinnis.
09:27  23    Q.  McGinnis?
09:27  24    A.  Yes.
09:27  25    Q.  Do you know his title?

Page 23

09:27  1    A.  I think it's executive vice
09:27  2  president/controller for HSBC North America Holdings.
09:27  3    Q.  And if you were to describe to someone what
09:28  4  Mr. McGinnis does, what his job duties are, what would
09:28  5  they be?
09:28  6    A.  I have only a very general understanding of
09:28  7  that.  And it's my understanding that he helps
09:28  8  facilitate the consolidation of the accounting material
09:28  9  for HBIO and HBUS on all North American entities.
09:28  10    Q.  Helps facilitate the consolidation of the
09:28  11  accounting --
09:28  12    A.  Uh-huh (affirmative).
09:28  13    Q.  -- for those entities?
09:28  14    A.  That's my understanding.
09:28  15    Q.  And the acronyms you use, that's the finance
09:28  16  company arm of HSBC and the banking, correct?
09:28  17    A.  Correct, yes.
09:28  18    Q.  Okay.  And so we're clear, HSBC Bank has its
09:28  19  accounting consolidated and reports up through HSBC
09:28  20  North America Holdings, Inc., correct?
09:29  21    A.  Yes, I believe so.
09:29  22    Q.  Is that -- you mentioned earlier that -- that
09:29  23  tax was another job function performed by HSBC North
09:29  24  America Holdings, Inc. on behalf of the subsidiary
09:29  25  companies; is that correct?

Page 24

09:29  1    A.  I did say that I believe that's true.
09:29  2    Q.  And what do you mean by that?
09:29  3    A.  Well, again, it's the type of operation that
09:29  4  consolidates information from operating subsidiaries for
09:29  5  reporting purposes.
09:29  6    Q.  How many people are in the tax department at
09:29  7  HSBC North America Holdings, Inc.?
09:29  8    A.  I have no idea.
09:29  9    Q.  Approximately.
09:29  10    A.  I really don't know.
09:29  11    Q.  Well, we have less than 50 total employees,
09:29  12  correct?
09:29  13    A.  Yeah, so -- but I don't know how many of them
09:29  14  are tax and legal and -- I don't know.
09:29  15    Q.  What does the legal -- legal department do at
09:29  16  HSBC North America Holdings, Inc.?
09:30  17    A.  Well, I honestly don't know.
09:30  18    Q.  Who's the general counsel?
09:30  19    A.  Ken Robin.
09:30  20    Q.  Okay.  Do you know how many assistant general
09:30  21  counsel there are?
09:30  22    A.  I know the -- I don't know at HSBC North
09:30  23  America Holdings, Inc.  If you get down to the
09:30  24  subsidiary level, there are many different titles and I
09:30  25  don't know what they are, but there are, throughout the

## Page 25

09:30  1  organization, quite a few lawyers.

09:30  2    Q.  Of the 50 employees of HSBC North America

09:30  3  Holdings, Inc., do you know how many of those folks are

09:30  4  lawyers?

09:30  5    A.  No, I really don't.  And I don't honestly know

09:30  6  that there are 50.  I said I think 50 or less.

09:30  7    Q.  I understand.  I'm not trying -- I'm not

09:30  8  trying to pin you down on that.

09:31  9      Do you serve on the board of directors of

09:31  10  HSBC North America Holdings, Inc.?

09:31  11    A.  No.

09:31  12    Q.  Do you know how many members there are of the

09:31  13  board of directors?

09:31  14    A.  No, I don't know exactly.  I'm sure we must

09:31  15  have told you that.

09:31  16    Q.  How many members of the board of directors can

09:31  17  you name, as you sit here today?

09:31  18    A.  I don't know.  Three or four probably.

09:31  19    Q.  Name those for me, if you would.

09:31  20    A.  Michael Geoghegan, Stephen Green, Bobby Mehta,

09:31  21  I think Salvatore or -- I can't -- I'm not sure I'm

09:31  22  pronouncing that correctly -- I believe is on the board

09:31  23  for HNAH Holdings, Inc.  I don't remember who the other

09:31  24  outside directors are.

09:32  25    Q.  Do you know how many members of the board of

## Page 26

09:32  1  directors of HSBC North America Holdings, Inc. also

09:32  2  serve on the board of directors of any of the HSBC

09:32  3  banking subsidiaries?

09:32  4    A.  No.  I'd have to look at it.  I mean, did we

09:32  5  not provide that to you?

09:32  6    Q.  I'm just curious, where would you look to find

09:32  7  that out?

09:32  8    A.  The company has lists of people serving on the

09:32  9  boards of the various operating subsidiaries, so I would

09:32  10  go to the secretary, the corporate secretary's office

09:32  11  and ask for that information.

09:32  12    Q.  Are there any executives from the operating

09:32  13  subsidiaries of HSBC, in the banking subsidiaries, that

09:32  14  serve on the board of directors of HSBC North America

09:32  15  Holdings, Inc.?

09:33  16    A.  The only one that I -- that might -- and

09:33  17  again, I'm sure we've told you this, but if -- the only

09:33  18  one I can think of that might would be Sandra Derickson.

09:33  19    Q.  And what position does Sandra Derickson hold

09:33  20  in the banking subsidiary?

09:33  21    A.  She was recently appointed, I think, as CEO of

09:33  22  HSBC Bank.

09:33  23    Q.  Do you know when she was appointed CEO of HSBC

09:33  24  Bank?

09:33  25    A.  Not exactly, but it was in -- sometime in

## Page 27

09:33  1  either the late third quarter or early forth quarter of

09:33  2  2006, I believe.

09:33  3    Q.  And it's your testimony that you believe she

09:33  4  might be on the HSBC North America Holdings, Inc. board

09:33  5  of directors?

09:33  6    A.  I could certainly ask counsel.  I'm sure they

09:33  7  could make sure that I, you know, am telling you if

09:34  8  that's true or not, but I don't have anything with me

09:34  9  and I don't remember.

09:34  10    Q.  Okay.  Anybody else that's an executive, an

09:34  11  officer of a banking subsidiary that serves on the board

09:34  12  of directors of HSBC North America Holdings, Inc.?

09:34  13    A.  Not that I know of.

09:34  14    Q.  Are there officers of HSBC North America

09:34  15  Holdings, Inc. that are --

09:34  16    A.  Yes.

09:34  17    Q.  -- that are not on the board of directors?

09:34  18    A.  Yes.

09:34  19    Q.  Okay.  Who are the officers of HSBC North

09:34  20  America Holdings, Inc.?

09:34  21    A.  Well, for instance, I'm an officer --

09:34  22    Q.  Okay.

09:34  23    A.  -- and I'm not on the board.  I don't -- I

09:34  24  don't know how many there are, who they are, but anyone

09:35  25  in my level presumably is not on the board.

## Page 28

09:35  1    Q.  Who's the CEO of HSBC North America Holdings,

09:35  2  Inc.?

09:35  3    A.  Bobby Mehta.

09:35  4    Q.  Bobby Mehta?

09:35  5    A.  Uh-huh (affirmative).

09:35  6    Q.  And can you spell that last name for the court

09:35  7  reporter?

09:35  8    A.  M-e-h-t-a.

09:35  9    Q.  And Mr. Mehta is one of the individuals you

09:35  10  mentioned who's also on the board of directors, correct?

09:35  11    A.  Yes.

09:35  12    Q.  Do you know whether or not Mr. Mehta holds a

09:35  13  board seat on any of the banking subsidiaries?

09:35  14    A.  I believe that he does.

09:35  15    Q.  Do you know how many banking subsidiaries

09:35  16  Mr. Mehta holds a board seat on?

09:35  17    A.  No.

09:35  18    Q.  Is HSBC Bank USA one of the entities that he

09:35  19  holds a board seat on?

09:35  20    A.  I believe so.

09:35  21    Q.  Who's the CFO of HSBC North America Holdings,

09:35  22  Inc.?

09:35  23    A.  Just -- someone new just came into that job.

09:36  24  His name is Chris -- I can't remember his last name.  He

09:36  25  came in at the end of the year.  He's an interim CFO.

Page 29

```
09:36   1    Q.  To your knowledge, does he hold any --
09:36   2    A.  I think his last name is Spooner.  I'm sorry.
09:36   3    Q.  Chris Spooner?
09:36   4    A.  I believe so, yes.
09:36   5    Q.  Does Mr. Spooner, to your knowledge, hold any
09:36   6    board positions or executive positions in the banking
09:36   7    subsidiaries?
09:36   8    A.  I don't know.
09:36   9    Q.  Are there any other chairman level or chief
09:36  10    level officer positions for HSBC North America Holdings,
09:36  11    Inc.?
09:36  12    A.  Well, not chairman, I don't believe.  I think
09:36  13    the subsidiaries -- I believe Sandy Derickson, for
09:36  14    instance, is the chief executive officer for HSBC Bank,
09:37  15    and I'm not sure what the other senior executive titles
09:37  16    are.
09:37  17    Q.  Maybe I asked an unclear question.
09:37  18        Are there any other chief positions, such
09:37  19    as a COO a CTO a CIO --
09:37  20    A.  Oh, I'm sorry.
09:37  21    Q.  -- for HSBC North America Holdings, Inc.?
09:37  22    A.  I'm not sure what the titles are.  I'd have to
09:37  23    go back and look.  If you want me to do that, I'd be
09:37  24    glad to --
09:37  25    Q.  Okay.
```

Page 30

```
09:37   1    A.  -- respond later.
09:37   2    Q.  Sure.  That would be great.
09:37   3        Are there any other folks, other than
09:37   4    Sandy Derickson and Mr. -- how do you --
09:37   5    A.  Mehta.
09:37   6    Q.  -- Mehta -- that, to your knowledge, serve on
09:37   7    both -- in both either board or executive level
09:37   8    positions with HSBC North America Holdings, Inc. and
09:38   9    with HSBC Bank subsidiaries?
09:38  10    A.  I believe Janet Burak is on both boards, but I
09:38  11    don't think that her title includes the word chief.
09:38  12    Q.  Okay.  Anyone else that would serve in both
09:38  13    levels but you're not sure their position?
09:38  14    A.  No.  I just -- I'm not sure.  I don't know.
09:38  15    Q.  And tell me Ms. Burak's title at HSBC North
09:38  16    America Holdings, Inc.
09:38  17    A.  I don't know her exact title.  She's an
09:38  18    attorney, but I'm not positive of her title.
09:38  19    Q.  Is she an attorney in the legal department, or
09:38  20    serving in some other executive capacity?
09:38  21    A.  She's in the legal department.
09:39  22    Q.  Does HSBC North America Holdings, Inc. have
09:39  23    the --
09:39  24        MR. BRUSTER:  Strike that.
09:39  25    Q.  (BY MR. BRUSTER)  HSBC North America Holdings,
```

Page 31

```
09:39   1    Inc. owns stock in the banking subsidiaries of HSBC
09:39   2    Bank, correct?
09:39   3    A.  Not directly, no.
09:39   4    Q.  Okay.  It has indirect stock ownership in the
09:39   5    subsidiaries, HSBC Bank, correct?
09:39   6    A.  Well, it's the holding company.  It owns the
09:39   7    stock of, you know, HSBC North America, Inc., I think is
09:39   8    the official name, which then owns the stock of the
09:39   9    subsidiaries that it's the parent of.
09:39  10    Q.  I hate to interject utter confusion into
09:39  11    things, but I'm going to try to walk through that
09:39  12    ownership structure you just defined.
09:39  13        The parent company of the entire HSBC
09:40  14    operation is HSBC Group, PLC, correct?
09:40  15    A.  Yes.
09:40  16    Q.  Which is a London-based organization, correct?
09:40  17    A.  Yes.
09:40  18    Q.  Okay.  And its subsidiary that you work for is
09:40  19    HSBC North America Holdings, Inc., which is a direct
09:40  20    wholly owned subsidiary of that London-based PLC,
09:40  21    correct?
09:40  22    A.  Yes.
09:40  23    Q.  And then your company owns 100 percent of the
09:40  24    stock of a company called HSBC North America, Inc.,
09:40  25    correct?
```

Page 32

```
09:40   1    A.  Yes.
09:40   2    Q.  Which, as you've defined it, is another
09:40   3    holding company here in the US, correct?
09:40   4    A.  Yes.
09:40   5    Q.  And your testimony is that that company then
09:40   6    owns 100 percent of the stock out of HSBC Bank USA, the
09:40   7    banking subsidiary.
09:40   8    A.  I'm not sure if -- I don't think that it does,
09:40   9    no.  Whatever the company below HSBC North America, Inc.
09:40  10    is, which I can't remember the exact structure, but I
09:40  11    think HSBC Bank is three or four tiers down.
09:41  12    Q.  So there might be another wholly owned
09:41  13    subsidiary sandwiched in between them before you get to
09:41  14    the bank.  Right.
09:41  15    A.  Right.
09:41  16    Q.  Okay.  Does HSBC North America Holdings, Inc.
09:41  17    have the authority to vote the shares of stock that it
09:41  18    owns in HSBC North America, Inc.?
09:41  19        MR. LEONARD:  Objection:  Form.
09:41  20    A.  (BY MR. BRUSTER)  You may answer.
09:41  21    A.  Yes, I believe so.
09:41  22    Q.  Does HSBC North America, Inc. have the
09:41  23    authority to vote the shares of stock that it owns in
09:41  24    the wholly owned subsidiary below it that is related to
09:41  25    the banking operations?
```

Page 33

09:41  1         MR. LEONARD: Objection: Form.
09:41  2      Q. (BY MR. BRUSTER) You may answer.
09:41  3      A. Well, I think that as long as it gets to vote
09:41  4  those shares of its own wholly owned subsidiary, which
09:41  5  owns the shares of the wholly owned subsidiary below it,
09:41  6  and so on, that it just flows that direction and so it
09:41  7  votes the shares.
09:42  8      Q. Do you know who determines the membership of
09:42  9  the board of directors of HSBC Bank?
09:42  10     A. No.
09:42  11     Q. Do you know what influence the parent company
09:42  12  HSBC North America Holdings, Inc. has on that selection?
09:42  13        MR. LEONARD: Objection: Form.
09:42  14     Q. (BY MR. BRUSTER) You may answer.
09:42  15     A. I'm really not familiar with the selection
09:42  16  process.
09:42  17     Q. Do you know how -- you're going to have to
09:42  18  tell me Bobby's last name once again. I'm going to
09:42  19  write it out phonetically so I don't keep asking you.
09:42  20     A. Mehta.
09:42  21     Q. Mehta.
09:42  22        Do you know how Mr. Mehta was selected or
09:42  23  elected to serve on the board of HSBC Bank?
09:42  24     A. No.
09:43  25     Q. Do you know the amount of influence that --

Page 34

09:43  1  that board members, like Ms. Derickson and Mr. Mehta,
09:43  2  that are board members of both HSBC North America
09:43  3  Holdings, Inc. and HSBC Bank, do you know how much
09:43  4  influence they have on the direction of HSBC Bank?
09:43  5      A. Well, in their roles as, you know, the leaders
09:43  6  of the corporation and its -- and its subsidiaries, they
09:43  7  have -- you know, certainly they have influence over the
09:43  8  direction of the corporation in general.
09:43  9      Q. Okay. Is there any kind of non-board
09:44  10  committee, that's within HSBC North America Holdings,
09:44  11  Inc., that is comprised of executives from the
09:44  12  subsidiary company; for example, a management committee,
09:44  13  or something like that, where the executives or officers
09:44  14  of the subsidiary corporations meet within HSBC North
09:44  15  America Holdings, Inc.?
09:44  16     A. I'm not familiar with that sort of committee.
09:44  17     Q. Are you familiar with any time within which
09:44  18  officers or executives of HSBC North America Holdings,
09:44  19  Inc. --
09:44  20        MR. BRUSTER: Strike that. Back up.
09:44  21  Erase that. I was getting off to a bad start.
09:44  22     Q. (BY MR. BRUSTER) Are you familiar with
09:44  23  anytime where officers or executives of the banking
09:44  24  subsidiaries of HSBC meet with the board or the
09:44  25  executives of HSBC North America Holdings, Inc.?

Page 35

09:45  1         MR. LEONARD: Objection: Form.
09:45  2      Q. (BY MR. BRUSTER) You may answer.
09:45  3      A. I know that once a year there's like, you
09:45  4  know, a strategy and planning meeting that -- where
09:45  5  presentations are made by the operating subsidiaries to
09:45  6  Mr. Mehta and whoever he chooses to have there.
09:45  7      Q. Does that occur approximately the same time
09:45  8  every year?
09:45  9      A. I'm not involved in it and so I'm not sure
09:45  10  what the schedule is.
09:45  11     Q. Have you ever attended the strategy and
09:45  12  planning meetings?
09:45  13     A. No, I have not.
09:45  14     Q. Where do those take place?
09:45  15     A. The ones that I'm aware of have taken place in
09:45  16  Prospect Heights.
09:45  17     Q. At the corporate headquarters of HSBC North
09:45  18  America Holdings, Inc.?
09:45  19     A. Yes.
09:45  20     Q. Okay. Do any of the other HSBC companies
09:45  21  share the Prospect Heights location as a corporate
09:46  22  headquarters?
09:46  23     A. We do have staff members from other operating
09:46  24  subsidiaries housed in that facility. I don't know for
09:46  25  sure if they're considered the headquarters for those

Page 36

09:46  1  operations. They might be for -- it might be the
09:46  2  headquarters for consumer lending, but I'm not positive
09:46  3  of that.
09:46  4      Q. Are any of the staff members from any of the
09:46  5  HSBC Bank subsidiaries officed at the Prospect Heights
09:46  6  location?
09:46  7      A. Not to my knowledge.
09:46  8      Q. And you've never sat in on one of these
09:46  9  strategy and planning meetings where folks come up and
09:46  10  make presentations -- folks from the subsidiaries come
09:46  11  up and make presentations to Mr. Mehta?
09:47  12     A. No, I haven't.
09:47  13     Q. Those meetings occur outside the presence of
09:47  14  the board of directors, though?
09:47  15     A. I believe so, yes.
09:47  16     Q. Do you know how many people from the HSBC Bank
09:47  17  subsidiaries come and make those presentations to
09:47  18  Mr. Mehta?
09:47  19     A. No.
09:47  20     Q. Did I already ask you what time of year that
09:47  21  goes on?
09:47  22     A. Yes, you asked me.
09:47  23     Q. Okay.
09:47  24     A. I still don't know.
09:47  25     Q. That's what I thought. I thought that

## Page 37

09:47  1  intervening two minutes may have just jogged your

09:47  2  memory.

09:48  3       How does HSBC North America Holdings,

09:48  4  Inc. earn money?

09:48  5  A.  Earn money?

09:48  6  Q.  Yes, ma'am.

09:48  7  A.  We don't have any operations, so any money,

09:48  8  which I don't know that there is any, but any money in

09:48  9  the corporation would be dividended from, you know, the

09:48  10  direct -- you know, a direct subsidiary.

09:48  11  Q.  You're talking about HSBC North America, Inc.?

09:48  12  A.  Yes.

09:48  13  Q.  Okay.  In other words, to pay your salary, is

09:49  14  it your understanding that's a result of dividends

09:49  15  from the wholly owned subsidiary of HSBC North America

09:49  16  Holdings, Inc.?

09:49  17  A.  Well, it's my understanding that, because HSBC

09:49  18  North America Holdings, Inc. doesn't -- you know, it

09:49  19  doesn't perform any revenue-generating activities, that

09:49  20  the money to pay my salary does come from its operating

09:49  21  subsidiary.

09:49  22  Q.  So the subsidiary below your company, which is

09:49  23  a wholly owned subsidiary, correct --

09:49  24  A.  Yes.

09:49  25  Q.  -- and which, down its chain of ownership,

## Page 38

09:49  1  holds the stock of HSBC Bank, correct --

09:49  2  A.  Well, somewhere down there, yes.

09:49  3  Q.  -- it pays dividends to HSBC North America

09:49  4  Holdings, Inc., correct?

09:49  5  A.  That's my understanding, yes.

09:49  6  Q.  What does -- how does HSBC North America,

09:49  7  Inc., your direct wholly owned subsidiary, earn a

09:49  8  revenue?

09:50  9  A.  I don't believe it has any operations or

09:50  10  revenue-generating operations either, so it would also

09:50  11  have whatever money it has as a result of dividends from

09:50  12  the operating subsidiaries.

09:50  13  Q.  Isn't it -- isn't it true that the operating

09:50  14  subsidiaries generate the revenue that is then

09:50  15  dividended -- if that's a word -- up the chain all the

09:50  16  way to HSBC North America Holdings, Inc.?

09:50  17  A.  Yes, that's my understanding.

09:50  18  Q.  In other words, the operating subsidiary, HSBC

09:50  19  Bank, generates the revenue that pays your salary --

09:50  20       MR. LEONARD:  Objection.

09:50  21  Q.  (BY MR. BRUSTER)  -- isn't that true?

09:50  22       MR. LEONARD:  Objection: Form.

09:50  23  A.  I -- I could not tell you which one of the

09:50  24  operating subsidiaries pays my salary or how that's all

09:50  25  consolidated.

## Page 39

09:50  1  Q.  (BY MR. BRUSTER)  As a general principle, the

09:50  2  profits of the operating subsidiaries flow upwards

09:50  3  through dividends to HSBC North America Holdings, Inc.,

09:51  4  correct?

09:51  5  A.  Yes.

09:51  6  Q.  Does HSBC North America Holdings, Inc. arrange

09:51  7  for financing with regard to its -- to the HSBC Bank

09:51  8  subsidiary?

09:51  9       MR. LEONARD:  Objection to form.

09:51  10  A.  I don't think I understand your question.

09:51  11  Q.  (BY MR. BRUSTER)  For example, does HSBC North

09:51  12  America Holdings, Inc. enter into any credit

09:51  13  arrangements for the benefit of the HSBC Bank

09:51  14  subsidiary?

09:51  15  A.  I have no idea.  I don't know.

09:51  16  Q.  Who would know the answer to that?

09:51  17  A.  I would expect one of the, you know, CFO or

09:51  18  treasury people could answer that question for you.

09:51  19  Q.  To your knowledge, you don't know whether or

09:51  20  not HSBC North America Holdings, Inc. has ever entered

09:51  21  into any kind of revolving credit facility or any other

09:52  22  provision of credit to HSBC Bank.

09:52  23  A.  I don't think it would because it's -- HSBC

09:52  24  Bank is too far down the chain.  I just -- I can't see

09:52  25  that that would be a logical way for the company to

## Page 40

09:52  1  operate so, no, I don't think so.

09:52  2  Q.  Well, you procure insurance for HSBC Bank,

09:52  3  correct?

09:52  4  A.  Yes.

09:52  5  Q.  Okay.  And HSBC Bank is pretty far down the

09:52  6  chain from you, correct --

09:52  7  A.  Yes.

09:52  8  Q.  -- according to your testimony.

09:52  9  A.  Yes.

09:52  10  Q.  But you don't think it would be logical for

09:52  11  your company to enter into credit arrangements for HSBC

09:52  12  Bank?

09:52  13  A.  I would think that -- I -- I really am not the

09:52  14  right person to answer that question.

09:52  15  Q.  I understand.

09:52  16       Earlier, when you were talking about your

09:52  17  insurance procurement and how that was expensed, you

09:52  18  mentioned that the expense of obtaining the insurance

09:52  19  was allocated to the operating subsidiaries on the

09:53  20  financial statements, that were then consolidated up

09:53  21  through and to your company, HSBC North America

09:53  22  Holdings, Inc., correct?

09:53  23  A.  Yes.

09:53  24  Q.  Okay.  Does HSBC North America Holdings, Inc.

09:53  25  allocate general and administrative expenses to its

## Page 41

09:53   1  subsidiaries across the board on its financial
09:53   2  statement?
09:53   3      A.  I don't know.
09:53   4          MR. LEONARD:  Objection to form.
09:53   5      Q.  (BY MR. BRUSTER)  You may answer.
09:53   6      A.  I don't know.
09:53   7      Q.  Who would know the answer to that?
09:53   8      A.  Again, someone in the CFO position, I would
09:53   9  say.
09:53  10      Q.  Other than accounting, tax, legal, and
09:53  11  insurance, can you tell the jury any other ways that
09:53  12  HSBC North America Holdings, Inc. assists the HSBC Bank
09:53  13  subsidiaries?
09:53  14      A.  As I testified earlier, I really don't
09:53  15  remember any other areas.  I don't know.
09:54  16      Q.  Does HSBC North America Holdings, Inc. have a
09:54  17  technology department?
09:54  18      A.  There is a technology subsidiary, but I don't
09:54  19  believe that it's -- it's not -- HNAH Holdings, Inc. is
09:54  20  not the company that provides the technology services in
09:54  21  North America.
09:54  22      Q.  What's the name of that company, that
09:54  23  subsidiary?
09:54  24      A.  I think it's HSBC Technology Services,
09:54  25  something like -- something like that.  I'm not positive

## Page 42

09:54   1  of the exact name.
09:54   2      Q.  Do you know whether or not contracts for
09:54   3  things such as telecommunications, that touch a lot of
09:55   4  different states within the HSBC Bank operations, do you
09:55   5  know whether contracts for telecommunications are
09:55   6  negotiated on an enterprise-wide level?
09:55   7      A.  It's my understanding that a group of people,
09:55   8  which are internally called vendor management, negotiate
09:55   9  that type of contract.
09:55  10      Q.  And when you say internally called vendor
09:55  11  management, is that a group that's internal to HSBC
09:55  12  North America Holdings, Inc.?
09:55  13      A.  No.
09:55  14      Q.  Internal to who?
09:55  15      A.  I am not sure who's -- where that company
09:55  16  resides, but I know it's not HSBC North America
09:55  17  Holdings, Inc.
09:55  18      Q.  How do you know it's not HSBC North America
09:55  19  Holdings, Inc.?
09:55  20      A.  Well, there's a lot of people involved and
09:55  21  there aren't very many people at Household -- HSBC North
09:55  22  America Holdings, Inc., so just by virtue of the
09:55  23  personnel counts it wouldn't be possible.  And I just
09:56  24  don't know.  I can't tell you which -- which -- where
09:56  25  they report to.

## Page 43

09:56   1      Q.  Can you tell the jury whether or not there's a
09:56   2  person like yourself at HSBC North America Holdings,
09:56   3  Inc. that has oversight of things like that?
09:56   4      A.  No, I can't tell you.  I don't know.
09:56   5      Q.  Do you know of any loans, as opposed to
09:56   6  securing credit, do you know of any loans that HSBC
09:56   7  North America Holdings, Inc. has made to the HSBC Bank
09:56   8  subsidiaries?
09:56   9      A.  No.  I have no idea if there are any or not.
09:56  10  I wouldn't think so.
09:57  11      Q.  Is there a marketing department at HSBC North
09:57  12  America Holdings, Inc.?
09:57  13      A.  Not that I'm aware of, no.
09:57  14      Q.  Where is the -- where are the marketing
09:57  15  decisions for HSBC's North American operations made?
09:57  16          MR. LEONARD:  Objection:  Form.
09:57  17      Q.  (BY MR. BRUSTER)  You may answer.
09:57  18      A.  Well, it's my understanding that each of the
09:57  19  operating subsidiaries has its own marketing strategy
09:57  20  and staff, and so those decisions are made at the
09:57  21  operating subsidiary level, to the best of my knowledge.
09:57  22      Q.  Do you consider HSBC North America, Inc. an
09:58  23  operating subsidiary?
09:58  24      A.  America, Inc., I don't believe so.  I believe
09:58  25  it's a holding company.

## Page 44

09:58   1      Q.  So based on that understanding and your answer
09:58   2  previously given, you wouldn't think that HSBC North
09:58   3  America, Inc. would be engaged in any marketing.
09:58   4      A.  I wouldn't think so, no.
09:58   5          MR. BRUSTER:  We've been going about an
09:58   6  hour.  Why don't we take a short break and then we'll --
09:58   7          MR. LEONARD:  Great.
09:58   8          MR. BRUSTER:  -- restart.
09:58   9          THE VIDEOGRAPHER:  We're off the record.
09:58  10          (Recess taken 9:58 to 10:16)
10:13  11          THE VIDEOGRAPHER:  Back on the record.
10:16  12      Q.  (BY MR. BRUSTER)  All right.  We're back after
10:16  13  a short break.  Are you ready to continue?  Oh, sorry,
10:16  14  I'll let you quick BlackBerrying.
10:16  15          MR. LEONARD:  Yes.
10:16  16      Q.  (BY MR. BRUSTER)  I get caught in that dilemma
10:16  17  all the time.
10:16  18      A.  Okay.
10:16  19      Q.  Ready?
10:16  20      A.  Uh-huh (affirmative).
10:16  21      Q.  Before we left off, we were talking about HSBC
10:16  22  North America, Inc., which is the wholly owned -- direct
10:16  23  wholly owned subsidiary right under HSBC North America
10:16  24  Holdings, Inc., correct?
10:17  25      A.  That's my recollection, yes.

11 (Pages 41 to 44)

## Page 45

10:17  1    Q. And you described that company as another
10:17  2  holding company? Is that your testimony?
10:17  3    A. Yes.
10:17  4    Q. Okay. And I think I asked you whether or not
10:17  5  that company had any operations and you said that you
10:17  6  didn't believe they did; is that right?
10:17  7    A. Well, holding companies are intended not to be
10:17  8  operating companies, so that would be my understanding.
10:17  9    Q. Does HSBC North America Holdings, Inc. run a
10:17  10  website?
10:17  11    A. I don't know, actually.
10:17  12    Q. What about HSBC North America, Inc., do they
10:17  13  have a website?
10:17  14    A. The website that I'm familiar with is
10:17  15  HSBC.com.
10:17  16    Q. Who's responsible for the content of that
10:18  17  website?
10:18  18    A. I don't know.
10:18  19    Q. You don't know whether it's HSBC North America
10:18  20  Holdings, Inc. or not?
10:18  21    A. Well, what do you mean by responsible for
10:18  22  content?
10:18  23    Q. How would you understand that question?
10:18  24    A. Well, I would think that the technology group
10:18  25  would have -- the group that runs the websites for the

## Page 46

10:18  1  company would be the primary place, you know, that would
10:18  2  be responsible for it.
10:18  3    Q. Does HSBC North America Holdings, Inc. have
10:18  4  any input into the content that's displayed on the
10:18  5  HSBC.com website?
10:18  6    A. I have no idea how that all happens in the
10:18  7  company. I don't know how that works.
10:18  8    Q. Do you know whether or not HSBC North America,
10:18  9  Inc. has any locations in Texas where it does business?
10:18  10    A. Again, as a holding company, I don't believe
10:19  11  it does business.
10:19  12    MR. BRUSTER: Hey, Brooke, let's pull up
10:19  13  and mark as Exhibit 3 ...
10:19  14    (Off-the-record discussion between
10:19  15  Mr. Bruster and Miss Berry.)
10:22  16    Q. (BY MR. BRUSTER) Is the screen in front of
10:22  17  you working?
10:22  18    A. You know, it's working, but there's a terrible
10:22  19  glare and I can't see it.
10:22  20    Q. It should be able to adjust anyway you want
10:22  21  it.
10:22  22    A. Okay. Pull this up, or how does it --
10:22  23    (Interruption in the proceedings.)
10:23  24    THE VIDEOGRAPHER: We're off the record.
10:24  25    (Recess taken 10:22 to 10:25.)

## Page 47

10:24  1    (Exhibit Number 3 marked.)
10:25  2    THE VIDEOGRAPHER: We're on the record.
10:25  3    Q. (BY MR. BRUSTER) Ma'am, we've handed you
10:25  4  what's been marked as Exhibit 3 to your deposition. And
10:25  5  if you see that mouse, that's sitting there in front of
10:25  6  you, you've got the ability to control this document as
10:25  7  well, if you wish to. I can show you that it's a --
10:25  8  yeah, there you go. You can scroll through it and look.
10:25  9  It's a two-page document.
10:25  10    A. Oh, okay.
10:25  11    MR. BRUSTER: Do you have it?
10:26  12    MR. LEONARD: We're not getting it over
10:26  13  here.
10:26  14    MISS BERRY: I'm getting it. I'm sorry.
10:26  15  It'll be just a few seconds.
10:26  16    Q. (BY MR. BRUSTER) We'll wait until their up.
10:26  17  I didn't realize they weren't up. Go ahead and look
10:26  18  through it.
10:27  19    A. (Reviewing document.) It's actually a
10:27  20  one-page document. It says two, I know, but I'm only
10:27  21  getting one.
10:27  22    Q. Weird. Don't worry about it. We're only
10:27  23  using page 1 anyway.
10:27  24    A. Okay.
10:27  25    Q. Do you recognize this as a printout from the

## Page 48

10:27  1  HSBC website?
10:27  2    A. I've never seen it before, but it certainly
10:27  3  appears to be that, yes.
10:27  4    Q. You've spent time on the HSBC website, right?
10:27  5    A. Not looking for jobs.
10:27  6    Q. Sure, since you have a job.
10:27  7    A. Yes.
10:27  8    Q. Let me ask you about -- if you could, pause it
10:27  9  right there, and do you see where the location for this
10:27  10  job is?
10:27  11    A. Lewisville, Texas.
10:27  12    Q. Do you know where Lewisville, Texas is?
10:28  13    A. I think I've been there once. Is it a
10:28  14  subsidiary of Dallas?
10:28  15    Q. Suburb.
10:28  16    A. I mean a suburb? I'm sorry.
10:28  17    Q. Close enough but, yes, it is.
10:28  18    A. They both start with s-u-b.
10:28  19    Q. Do you see the description of the job there?
10:28  20    A. Yes, I do.
10:28  21    Q. And do you see where it says, Make the right
10:28  22  move and join a winning team. Build your career with
10:28  23  us. HSBC North America is part of HSBC Group, one of
10:28  24  the largest banking and financial services organizations
10:28  25  in the world. Do you see that?

12 (Pages 45 to 48)

## Page 49

| | | |
|---|---|---|
| 10:28 | 1 | A. Yes. |
| 10:28 | 2 | Q. If HSBC North America is a holding company |
| 10:28 | 3 | with no operations, as you've just testified to, do you |
| 10:28 | 4 | know why it is that they're advertising for a job in |
| 10:28 | 5 | Lewisville, Texas here? |
| 10:28 | 6 | A. Well, the company that's the holding company |
| 10:28 | 7 | is HSBC North America Holdings, Inc., so I would not |
| 10:28 | 8 | assume that that's the company advertising for this job. |
| 10:28 | 9 | Q. You wouldn't assume that that's the company |
| 10:28 | 10 | advertising for the job even though it says, To build |
| 10:28 | 11 | your career with us, HSBC North America? |
| 10:29 | 12 | A. Correct. |
| 10:29 | 13 | Q. Why wouldn't you make that assumption? |
| 10:29 | 14 | A. Because I think there's a company named HSBC |
| 10:29 | 15 | North America that's not the same as HSBC North America |
| 10:29 | 16 | Holdings, Inc. |
| 10:29 | 17 | Q. HSBC North America, Inc. is a wholly owned |
| 10:29 | 18 | direct subsidiary of HSBC North America Holdings, Inc., |
| 10:29 | 19 | correct? |
| 10:29 | 20 | A. That's my understanding. |
| 10:29 | 21 | Q. Okay. And you testified a few minutes ago |
| 10:29 | 22 | that HSBC North America, Inc. was just a holding company |
| 10:29 | 23 | with no operations, right? |
| 10:29 | 24 | A. I did. |
| 10:29 | 25 | Q. And here we're looking at a web page where |

## Page 50

| | | |
|---|---|---|
| 10:29 | 1 | HSBC North America is advertising for a job in |
| 10:29 | 2 | Lewisville, Texas, aren't we? |
| 10:29 | 3 | A. We are. |
| 10:29 | 4 | Q. If they're a holding company with no |
| 10:29 | 5 | operations, why would they be offering employment to |
| 10:29 | 6 | people in Lewisville, Texas? |
| 10:29 | 7 | A. I can't answer that question. |
| 10:29 | 8 | Q. And for further clarification, I'll scroll |
| 10:29 | 9 | down here to the bottom of page 1. Oh, never mind. |
| 10:30 | 10 | We'll leave it at that. |
| 10:30 | 11 | Do you think that a person in the general |
| 10:30 | 12 | public, if they were on this website, looking at this, |
| 10:30 | 13 | would come the conclusion that HSBC North America was |
| 10:30 | 14 | offering jobs in Lewisville, Texas? |
| 10:30 | 15 | MR. LEONARD: Objection: Form. |
| 10:30 | 16 | Q. (BY MR. BRUSTER) You may answer. |
| 10:30 | 17 | A. Yes. |
| 10:30 | 18 | Q. Doesn't that seem entirely inconsistent with |
| 10:30 | 19 | your testimony a few minutes ago, that it's a holding |
| 10:30 | 20 | company with no operations? |
| 10:30 | 21 | A. Yes. |
| 10:30 | 22 | MR. LEONARD: Objection: Form. |
| 10:30 | 23 | THE WITNESS: Sorry. |
| 10:30 | 24 | A. Yes. |
| 10:30 | 25 | Q. (BY MR. BRUSTER) It does, doesn't it? |

## Page 51

| | | |
|---|---|---|
| 10:30 | 1 | A. Yes. |
| 10:30 | 2 | Q. And you can't explain that, can you? |
| 10:30 | 3 | A. No. |
| 10:30 | 4 | Q. Now, you also testified that -- |
| 10:30 | 5 | MR. BRUSTER: Hold on just a minute. |
| 10:31 | 6 | MR. NICHOLAS: Counsel, we can't access |
| 10:31 | 7 | the Exhibit right now. |
| 10:31 | 8 | MISS BERRY: Can y'all not see it at all? |
| 10:31 | 9 | MR. BRUSTER: Well, it's down on the |
| 10:31 | 10 | white part, where you didn't have anything and |
| 10:31 | 11 | couldn't move it back up. |
| 10:31 | 12 | MISS BERRY: I can scroll down for you, |
| 10:31 | 13 | if you'd like to. |
| 10:31 | 14 | MR. NICHOLAS: Can you just release |
| 10:31 | 15 | control of the document? |
| 10:31 | 16 | MISS BERRY: You have complete control |
| 10:31 | 17 | over there. I'm not doing anything with it. |
| 10:31 | 18 | MR. BRUSTER: Let's go off the record for |
| 10:31 | 19 | just a minute. |
| 10:31 | 20 | THE VIDEOGRAPHER: Off the record. |
| 10:31 | 21 | (Recess taken 10:31 to 10:36) |
| 10:36 | 22 | THE VIDEOGRAPHER: Back on the record. |
| 10:36 | 23 | Q. (BY MR. BRUSTER) All right. Your screen |
| 10:36 | 24 | should be about as light as midnight and the -- we're |
| 10:36 | 25 | going to convert some documents over here. |

## Page 52

| | | |
|---|---|---|
| 10:36 | 1 | MR. BRUSTER: Counsel, what I'd to do, if |
| 10:36 | 2 | it's all right with you guys, is use some paper copies |
| 10:36 | 3 | for a minute or two to keep going, and we can pencil |
| 10:36 | 4 | those in as the same Exhibit Number that we can then go |
| 10:36 | 5 | back and stamp the electronic copies just to say |
| 10:36 | 6 | consistent. |
| 10:36 | 7 | MR. LEONARD: Sure. |
| 10:36 | 8 | MR. BRUSTER: In other words, we use |
| 10:36 | 9 | paper 3, 4, 5, we'll go back and electronically stamp 3, |
| 10:36 | 10 | 4 and 5 so that it's all together. Is that all right |
| 10:36 | 11 | with you guys? |
| 10:36 | 12 | MR. LEONARD: Will you go ahead and mark |
| 10:36 | 13 | the paper copies? |
| 10:36 | 14 | MR. BRUSTER: You bet, yeah. I mean, |
| 10:36 | 15 | we'll just kind of write it in there and circle it since |
| 10:36 | 16 | we're stamping the electronic -- |
| 10:36 | 17 | MR. LEONARD: Just so we can later make |
| 10:36 | 18 | sure we have the same one. |
| 10:36 | 19 | Q. (BY MR. BRUSTER) If you want to go ahead and |
| 10:36 | 20 | circle in a 3 on that copy right there that we're using |
| 10:36 | 21 | of this document, that would be perfect. |
| 10:36 | 22 | A. (Complies.) |
| 10:36 | 23 | Q. And while you're sitting there looking at |
| 10:36 | 24 | Exhibit 3, Ms. Hickman, on the second page of that |
| 10:36 | 25 | document, you see down at the bottom on the second page |

## Page 53

10:37 1  where it lists a copyright?

10:37 2  A. I do.

10:37 3  Q. Okay. And who is the copyright holder for

10:37 4  this particular web page?

10:37 5  A. HSBC North America, Inc.

10:37 6  Q. Okay. And HSBC North America, Inc. is who you

10:37 7  testified a few minutes ago you didn't believe to have

10:37 8  any operations, correct?

10:37 9  A. Yes.

10:37 10  Q. Okay. Do you know why this purported holding

10:37 11  company, with no operations, has a copyright on the

10:37 12  Internet and is advertising jobs?

10:37 13  A. I do not.

10:37 14  Q. Okay. Does HSBC North America Holdings, Inc.

10:37 15  own any copyrights?

10:37 16  A. Not that I'm aware of, no, I don't believe so.

10:37 17  Q. Did you know that HSBC North America, Inc.

10:37 18  held any copyrights before I just showed you the one

10:37 19  here in Exhibit 3?

10:37 20  A. No.

10:37 21  Q. So what you're telling the judge and jury is

10:37 22  that HSBC North America Holdings, Inc. might have

10:37 23  copyrights, might not, you just don't know. That's

10:37 24  true, isn't it?

10:37 25  MR. LEONARD: Objection: Form.

## Page 54

10:37 1  A. As I testified, yes, I don't know.

10:38 2  Q. (BY MR. BRUSTER) Can you think of a reason

10:38 3  why HSBC North America Holdings, Inc. would have any

10:38 4  copyrights if it purportedly doesn't have any

10:38 5  operations?

10:38 6  A. No.

10:38 7  Q. The job location that's advertised here in

10:38 8  Lewisville, Texas --

10:38 9  A. Yes.

10:38 10  Q. -- are you familiar with the address or the

10:38 11  office building where that job is being offered?

10:38 12  A. I'm not certain. I have visited the

10:38 13  Lewisville, Texas facility, but it was many years ago

10:38 14  and I'm not certain that they haven't moved, but if it's

10:38 15  the same one, I've been there.

10:38 16  Q. Have you procured insurance for the facility

10:38 17  located in Lewisville, Texas?

10:38 18  A. Yes.

10:38 19  Q. Okay. When you've done that, you've done that

10:38 20  in your job position as the senior vice president of

10:38 21  HSBC North America Holdings, Inc., correct?

10:38 22  A. Yes.

10:39 23  Q. How often do you go visit facilities that are

10:39 24  held by a member of the HSBC family of companies?

10:39 25  A. I try to visit several facilities annually.

## Page 55

10:39 1  Q. Annually. Have you been to any facilities in

10:39 2  Texas in the last two or three years?

10:39 3  A. No.

10:39 4  Q. When was the last time you visited a Texas

10:39 5  facility?

10:39 6  A. The only time I visited a Texas facility was

10:39 7  when I visited Lewisville, and that was many years ago.

10:39 8  Q. Okay. Does -- did you procure premises

10:39 9  liability insurance for that facility there in

10:39 10  Lewisville, Texas?

10:39 11  A. This facility is covered on an overall basis

10:39 12  with all facilities in the United States, yes.

10:39 13  Q. Which includes premises, general liability --

10:39 14  A. Yes.

10:39 15  Q. -- those kind of things?

10:39 16  A. Uh-huh (affirmative).

10:39 17  Q. Okay. On that front page it says that -- just

10:40 18  read it directly -- HSBC North America is part of HSBC

10:40 19  Group. Do you see that?

10:40 20  A. Yes.

10:40 21  Q. Is that a reference to HSBC Group, PLC?

10:40 22  MR. LEONARD: Objection: Form.

10:40 23  A. That's the way I would read it, but I -- I

10:40 24  don't know. It doesn't have a PLC on it.

10:40 25  Q. (BY MR. BRUSTER) But you would read that to

## Page 56

10:40 1  mean the parent company from England.

10:40 2  A. That's what I would think, yes.

10:40 3  Q. Have you ever seen this document or this web

10:40 4  page before?

10:40 5  A. I certainly have not seen the document before

10:40 6  and, no, I'm not familiar with this web page.

10:40 7  Q. Have you ever asked anybody within HSBC

10:40 8  Holdings -- or HSBC North America Holdings, Inc. whether

10:41 9  or not that entity operates a website?

10:41 10  A. No.

10:41 11  Q. Why not?

10:41 12  A. I just haven't.

10:41 13  Q. You didn't ask that question in preparation

10:41 14  for your deposition here today about potential contacts

10:41 15  with Texas?

10:41 16  A. That particular piece of information was not

10:41 17  discussed.

10:41 18  Q. Have you ever been to the -- to the London

10:41 19  headquarters of HSBC Holdings, PLC?

10:41 20  A. Yes.

10:41 21  Q. When was the last time you went to London to

10:41 22  the headquarters?

10:41 23  A. Shortly after Household was acquired, so I

10:41 24  don't know exactly the date, but it would've been in

10:41 25  2003.

14 (Pages 53 to 56)

Page 57

10:41  1    Q.  And what was your purpose for going over
10:41  2  there?
10:41  3    A.  To introduce myself to the head of insurance
10:42  4  on a worldwide basis, and to familiarize myself with the
10:42  5  way that they would want us to report to them and their
10:42  6  expectations of me.
10:42  7    Q.  Who is the head of insurance on a worldwide
10:42  8  basis?
10:42  9    A.  Peter Valentine.
10:42  10   Q.  And you report, I guess, indirectly to
10:42  11 Mr. Valentine?
10:42  12   A.  That's correct.
10:42  13   Q.  Do you correspond with Mr. Valentine on a
10:42  14 regular basis?
10:42  15   A.  Yes.
10:42  16   Q.  By e-mail?
10:42  17   A.  Typically, yes.
10:42  18   Q.  Do you correspond with employees or officers
10:42  19 or directors of the HSBC Bank subsidiary on a regular
10:42  20 basis?
10:42  21       MR. LEONARD:  Objection: Form.
10:42  22   A.  Well, certainly, to the extent that my staff
10:43  23 works there, yes, and certain other people periodically.
10:43  24   Q.  (BY MR. BRUSTER)  So that would be a yes?
10:43  25   A.  Well, regularly, periodic -- once in a while,

Page 58

10:43  1  not every day.
10:43  2    Q.  You understand one of the key issues in this
10:43  3  dispute is whether or not HSBC North America Holdings,
10:43  4  Inc. controls the operations of HSBC Bank, the
10:43  5  subsidiary?
10:43  6    A.  Well, what do you mean by control?
10:43  7    Q.  What's your definition of control?
10:43  8    A.  I asked you first.
10:43  9    Q.  Do you have a definition of control?
10:43  10   A.  No, I don't think I do have a definition, so
10:43  11 in order to answer your question I'd like for you to
10:43  12 tell me what your definition is.
10:43  13   Q.  Well, can you tell the jury whether or not
10:43  14 HSBC North America Holdings, Inc. controls HSBC Bank
10:44  15 USA, the banking subsidiary?
10:44  16       MR. LEONARD:  Objection: Form.
10:44  17   A.  The way I think about it is that as the
10:44  18 hold -- the ultimate holding company, it does exercise
10:44  19 some management control, but it does not exercise
10:44  20 day-to-day operating control.
10:44  21   Q.  (BY MR. BRUSTER)  What's the difference
10:44  22 between management control and operational control?
10:44  23   A.  Well, setting strategy would be a management
10:44  24 control, reviewing results periodically and how it
10:44  25 compares to the strategy would be a management control.

Page 59

10:44  1        And operational control, on the other
10:44  2  hand, would be how many phone calls are made or deciding
10:44  3  which customers to call or making sure the checks are
10:45  4  processed.
10:45  5    Q.  What else besides setting strategy, reviewing
10:45  6  results and comparing those to strategy would fall
10:45  7  within your definition of management control?
10:45  8    A.  Well, consolidation of financials for
10:45  9  reporting purposes, the same operation for tax within
10:45  10 the regulations we have to comply with.
10:45  11   Q.  Anything else that you can think of that would
10:45  12 fall within your definition of management control?
10:45  13   A.  No.  I mean, I think that's indicative of how
10:45  14 I view that.
10:45  15   Q.  And so just so we're clear, your testimony to
10:46  16 this judge and jury is that HSBC North America Holdings,
10:46  17 Inc. exercises management control over its banking
10:46  18 subsidiary.
10:46  19   A.  It certainly -- it -- yes.
10:46  20   Q.  And that includes setting strategy, correct?
10:46  21   A.  Yes.
10:46  22   Q.  Reviewing results, correct?
10:46  23   A.  Yes.
10:46  24   Q.  Comparing those results to the strategy that's
10:46  25 been set for the banking subsidiary, correct?

Page 60

10:46  1    A.  Yes.
10:46  2    Q.  Consolidation of financials of the banking
10:46  3  subsidiary for reporting purposes, correct?
10:46  4    A.  Not of the banking subsidiary by itself, all
10:46  5  of the subsidiaries.  A consolidation is of all the
10:46  6  subsidiaries.
10:46  7    Q.  So it necessarily includes the banking
10:46  8  subsidiary.
10:46  9    A.  It does include the banking subsidiary, but it
10:46  10 does not perform the day-to-day accounting of the
10:46  11 banking subsidiary.  The banking subsidiary has its own
10:47  12 accounting department.
10:47  13   Q.  The HSBC North America Holdings, Inc. parent
10:47  14 company provides support to that accounting department,
10:47  15 correct?
10:47  16       MR. LEONARD:  Objection: Form.
10:47  17   Q.  (BY MR. BRUSTER)  You may answer.
10:47  18   A.  They interact with each other.  Whether it's
10:47  19 support or -- I don't know exactly what their
10:47  20 interactions are.
10:47  21   Q.  HSBC North America Holdings, Inc., the parent
10:47  22 company, also provides assistance with regulatory
10:47  23 compliance to the banking subsidiary, correct?
10:47  24       MR. LEONARD:  Objection: Form.
10:47  25   Q.  (BY MR. BRUSTER)  Isn't that what you just

## Page 61

10:47  1  mentioned a moment ago?

10:47  2      A.  Well, I said, you know, consolidation of

10:47  3  financials and tax, and so to the extent that those are

10:47  4  holding-company-regulated items, yes.  As far as

10:47  5  anything that the subsidiary, all by itself, is

10:47  6  responsible for, I would think that that would not be

10:47  7  something the holding company would be involved in.

10:48  8      Q.  Does HSBC North America Holdings, Inc.

10:48  9  exercise ownership of HSBC Bank USA?

10:48 10      MR. LEONARD:  Objection:  Form.

10:48 11      A.  Not on a direct basis.  As we previously

10:48 12  discussed, it owns the stock of the company directly

10:48 13  beneath it, which owns the stock of the company beneath

10:48 14  it, which owns the stock of the company or companies

10:48 15  beneath it, and it all flows up.  So, no, it doesn't

10:48 16  have direct ownership.

10:48 17      Q.  (BY MR. BRUSTER)  I'm going to hand you what

10:48 18  we're going to mark for now on paper, and soon on

10:48 19  electronic, as Exhibit Number 4 to your deposition.

10:48 20      (Exhibit Number 4 marked.)

10:48 21      MR. LEONARD:  Counsel, do you have

10:48 22  multiple copies of that?

10:48 23      MR. BRUSTER:  Yeah, you bet.  Just take

10:48 24  this one.

10:48 25      MR. LEONARD:  Thank you very much.

## Page 62

10:48  1      MR. BRUSTER:  Sure.

10:49  2      Q.  (BY MR. BRUSTER)  Have you ever seen this

10:49  3  document that I've handed you, Exhibit 4?

10:49  4      A.  Yes.

10:49  5      Q.  Did you see it as a part of the -- as part of

10:49  6  your review in preparation for your deposition today?

10:49  7      A.  Yes.

10:49  8      Q.  Okay.  This is a Form 20-F, which is a

10:49  9  Securities & Exchange Commission or SEC filing that was

10:49 10  made on behalf of your employer's parent company, HSBC

10:49 11  Holdings, PLC, correct?

10:50 12      A.  Yes.

10:50 13      Q.  Okay.  And do you know why the SEC requires

10:50 14  HSBC Holdings, PLC to file this document?

10:50 15      A.  No.

10:50 16      Q.  Okay.  This is an excerpted document because

10:50 17  the original document is some hundred-plus pages.  Do

10:50 18  you understand that?

10:50 19      A.  It says 729 at the top.

10:50 20      Q.  Okay.

10:50 21      A.  That's huge.

10:50 22      Q.  Let's go with big, all right?

10:50 23      If you'll flip to the third page --

10:50 24      A.  Okay.

10:50 25      Q.  -- of Exhibit 4.

## Page 63

10:50  1      A.  (Complies.)

10:50  2      Q.  On the right-hand column, in the top

10:50  3  paragraph, the last sentence, do you see where it reads,

10:50  4  This company, called HSBC North America Holdings, Inc.,

10:50  5  is also a bank holding company under the BHCA by virtue

10:50  6  of its ownership and control of HSBC Bank USA.  Do you

10:51  7  see that?

10:51  8      A.  I do.

10:51  9      Q.  Okay.  Do you believe that's an accurate

10:51 10  statement?

10:51 11      A.  Yes.

10:51 12      Q.  Okay.  A few minutes ago you told this judge

10:51 13  and jury that you didn't believe that HSBC North America

10:51 14  Holdings, Inc. could be termed to own HSBC Bank USA.

10:51 15      MR. LEONARD:  Objection.

10:51 16      Q.  (BY MR. BRUSTER)  Do you recall that

10:51 17  testimony?

10:51 18      MR. LEONARD:  Objection to form.

10:51 19      A.  I think my testimony was that it's not the

10:51 20  direct owner, and I would stand by that.

10:51 21      Q.  (BY MR. BRUSTER)  Okay.  So is it true that

10:51 22  HSBC North America Holdings, Inc. has ownership of HSBC

10:51 23  Bank USA?  Is that a true statement?

10:51 24      MR. LEONARD:  Objection to form.

10:51 25      A.  As I stated before, it's my understanding that

## Page 64

10:51  1  the ownership is a result of the direct subsidiary

10:51  2  immediately beneath HSBC North America Holdings, Inc.

10:51  3  owning the stock of the subsidiary below that, which

10:52  4  owns the stock, I believe, at that point, of HSBC Bank.

10:52  5  So they do own HSBC Bank indirectly by virtue of all the

10:52  6  stock rolling up.

10:52  7      Q.  (BY MR. BRUSTER)  I think the answer was in

10:52  8  there, but isn't it true that HSBC North America

10:52  9  Holdings, Inc. owns HSBC Bank USA?

10:52 10      MR. LEONARD:  Objection:  Form.  Object

10:52 11  to the sidebar.

10:52 12      Q.  (BY MR. BRUSTER)  Isn't that true?

10:52 13      MR. LEONARD:  Same objection.

10:52 14      A.  Well, I'm going to -- I guess I've already

10:52 15  answered your question to the best of my ability and so

10:52 16  I'm just going to leave it at that.

10:52 17      Q.  (BY MR. BRUSTER)  You don't dispute the

10:52 18  statement here that HSBC North America Holdings, Inc.

10:52 19  exerts ownership of HSBC Bank USA, do you?

10:52 20      A.  No.

10:52 21      Q.  Okay.  Well, then, let's talk about control,

10:52 22  the second thing there, where it says HSBC North America

10:52 23  Holdings, Inc. has ownership and control of HSBC Bank

10:52 24  USA.  Do you agree with that statement?

10:52 25      A.  Well, it also says that under the Bank Holding

## Page 65

10:53 1 Company Act, that under that Act, by virtue of control

10:53 2 of HSBC Bank. So it's my understanding that that Act

10:53 3 requires the holding company to have control if there

10:53 4 are safety and soundness issues in the bank.

10:53 5    Q.  Well, let me ask the same question again.

10:53 6 Does HSBC North America Holdings, Inc. control HSBC Bank

10:53 7 USA?

10:53 8       MR. LEONARD:  Objection:  Form.

10:53 9    A.  Not on a day-to-day operating basis.

10:53 10   Q.  (BY MR. BRUSTER)  So do you disagree with the

10:53 11 statement made here in this SEC government filing that

10:53 12 was made by your parent company?

10:53 13   A.  I think that there are many ways to

10:53 14 characterize the word control.

10:53 15   Q.  So you disagree with this statement, or you

10:53 16 don't?

10:53 17   A.  I don't disagree with this statement.

10:53 18   Q.  So this is accurate, HSBC North America

10:53 19 Holdings, Inc. has ownership and control of HSBC Bank

10:53 20 USA.  Is that your testimony to this judge and jury?

10:54 21      MR. LEONARD:  Objection:  Form.

10:54 22   A.  Yes, it does, but indirectly.

10:54 23   Q.  (BY MR. BRUSTER)  Well, it doesn't say

10:54 24 indirectly here in the document, does it?

10:54 25      MR. LEONARD:  Objection:  Form.

## Page 66

10:54 1    Q.  (BY MR. BRUSTER)  You may answer.

10:54 2    A.  No, it doesn't.

10:54 3    Q.  If the average consumer were to pick this up

10:54 4 and read it, there's nothing in here that would lead him

10:54 5 to believe that there's some sort of indirect ownership

10:54 6 or indirect control exerted by HSBC North America

10:54 7 Holdings, Inc., is there?

10:54 8      MR. LEONARD:  Objection:  Form.

10:54 9      Don't speculate, Ms. Hickman.

10:54 10   Q.  (BY MR. BRUSTER)  You may answer.

10:54 11   A.  This is one sentence in a document of 729

10:54 12 pages.  I don't know what the average consumer would

10:54 13 think if they read the entire document.

10:54 14   Q.  What about if they just read that one

10:54 15 sentence?  I mean, there's nothing in here that would

10:54 16 appear to show that there is indirect control exerted by

10:55 17 HSBC North America Holdings, Inc., is there?

10:55 18      MR. LEONARD:  Objection to form.

10:55 19   Q.  (BY MR. BRUSTER)  You may answer.

10:55 20      MR. LEONARD:  Do you want -- I mean,

10:55 21 Counsel, do you want her to look at the entire document?

10:55 22 You just asked, is there anything in this document to

10:55 23 suggest that there's indirect ownership.

10:55 24      MR. BRUSTER:  No, sir.  I want her to

10:55 25 answer the question.

## Page 67

10:55 1    Q.  (BY MR. BRUSTER)  Is there anything right

10:55 2 there that would show anyone that the control exerted by

10:55 3 HSBC North America Holdings, Inc. is indirect?

10:55 4      MR. LEONARD:  Objection to form.

10:55 5      Right there, I guess he's referring to

10:55 6 that specific sentence, Ms. Hickman.

10:55 7    A.  And I understand that, and I've answered that

10:55 8 several times now, and I don't have a different answer

10:55 9 unless you want me to read the entire document.  I'm

10:55 10 sorry, but I've told you what I think and that's what

10:55 11 I'm here to do.

10:55 12   Q.  (BY MR. BRUSTER)  The answer is no, there's

10:55 13 nothing in there that indicates any kind of indirect

10:55 14 control, is there?

10:55 15      MR. LEONARD:  Objection:  Form.

10:55 16   A.  Not in that sentence.

10:55 17   Q.  (BY MR. BRUSTER)  Okay.  And, in fact, there's

10:55 18 nothing anywhere on that page that shows indirect

10:55 19 control, is there?

10:55 20   A.  I can't answer that without reading it.

10:56 21      MR. LEONARD:  Read the document.

10:56 22   Q.  (BY MR. BRUSTER)  Okay.

10:56 23   A.  (Reviewing document.)  Would you ask your

10:58 24 question again, please?

10:58 25   Q.  Excuse me?  I'm sorry?

## Page 68

10:58 1    A.  Could you ask your question again, please?

10:58 2    Q.  Sure.  Did you see anything on that page to

10:58 3 indicate that the control exerted by HSBC North America

10:58 4 Holdings, Inc. and HSBC Bank USA is indirect?

10:58 5      MR. LEONARD:  Objection:  Form.

10:58 6    Q.  (BY MR. BRUSTER)  You may answer.

10:58 7    A.  I do not see anything.

10:58 8    Q.  There's nothing there, is there?

10:58 9    A.  Not that -- no, I didn't identify anything.

10:58 10   Q.  But it's your testimony to this judge and this

10:58 11 jury that this control, that's discussed in this SEC

10:59 12 document, is, in fact, indirect.  That's your testimony.

10:59 13   A.  The control is not operational is my

10:59 14 testimony.  It's not on a day-to-day operational basis.

10:59 15   Q.  We've talked about ownership here and we've

10:59 16 talked about control and now you just mentioned

10:59 17 operations.  Let's talk about operations a little bit.

10:59 18      Is it your testimony to this judge and

10:59 19 jury that HSBC North America Holdings, Inc. does not

10:59 20 operate its subsidiaries?

10:59 21      MR. LEONARD:  Objection:  Form.

10:59 22   Q.  (BY MR. BRUSTER)  You may answer.

10:59 23   A.  It is -- a subsidiary operates its own

10:59 24 business.  They are not operated by HSBC North America

10:59 25 Holdings, Inc.

## Page 69

| | | |
|---|---|---|
| 10:59 | 1 | Q. So it's your testimony to this judge and jury |
| 10:59 | 2 | that the banking subsidiary of HSBC is not operated by |
| 10:59 | 3 | HSBC North America Holdings, Inc. |
| 10:59 | 4 | A. That's correct. |
| 10:59 | 5 | MR. LEONARD: Objection to form. |
| 10:59 | 6 | Q. (BY MR. BRUSTER) You may answer. |
| 10:59 | 7 | A. That's correct. |
| 10:59 | 8 | (Exhibit Number 5 marked.) |
| 11:00 | 9 | Q. (BY MR. BRUSTER) Okay. I've pulled up on the |
| 11:00 | 10 | screen in front of you a document that's been marked as |
| 11:00 | 11 | Exhibit 5 to your deposition. And I can actually hand |
| 11:00 | 12 | you a hard copy, too, if you'd like that. |
| 11:00 | 13 | MR. BRUSTER: The electronic should be on |
| 11:00 | 14 | y'all's screen, too. |
| 11:00 | 15 | Q. (BY MR. BRUSTER) And I think you should have |
| 11:00 | 16 | the ability to control it on your screen, too, if you |
| 11:00 | 17 | wish. |
| 11:00 | 18 | Have you seen Exhibit 5 before? |
| 11:01 | 19 | A. (Reviewing document.) I think I saw this, |
| 11:01 | 20 | yes. It looks different on the screen. |
| 11:01 | 21 | Q. You think you've seen it before? |
| 11:01 | 22 | A. Yes. |
| 11:01 | 23 | Q. Okay. And I saw that you flipped to the last |
| 11:01 | 24 | page. This is a letter that was written by Janet Borak. |
| 11:01 | 25 | Is that how you pronounce her name? |

## Page 70

| | | |
|---|---|---|
| 11:01 | 1 | A. Borak. |
| 11:01 | 2 | Q. Borak? |
| 11:01 | 3 | A. Uh-huh (affirmative). |
| 11:01 | 4 | Q. It was written July 16th of 2004, correct? |
| 11:01 | 5 | A. Yes. |
| 11:01 | 6 | Q. And this letter was addressed to some folks at |
| 11:01 | 7 | the Office of the Comptroller of the Currency, the |
| 11:02 | 8 | Secretary of the Board of Governors of the Federal |
| 11:02 | 9 | Reserve, the FDIC and the Securities & Exchange |
| 11:02 | 10 | Commission and the Office of Thrift Supervision, |
| 11:02 | 11 | correct? |
| 11:02 | 12 | A. Yes. |
| 11:02 | 13 | Q. Ms. Burak is a lawyer with HSBC, correct? |
| 11:02 | 14 | A. Yes. |
| 11:02 | 15 | Q. I'm going to flip here to page 2 of this |
| 11:02 | 16 | letter. And about two minutes ago you testified that |
| 11:02 | 17 | HSBC North America Holdings, Inc. does not operate its |
| 11:02 | 18 | subsidiaries. Do you recall that testimony? |
| 11:02 | 19 | A. Yes. |
| 11:02 | 20 | Q. First of all, here on page 1, you can see |
| 11:02 | 21 | where the letter defines HSBC North America Holdings, |
| 11:02 | 22 | Inc. to be HSBC North America throughout the letter. Do |
| 11:02 | 23 | you see that? |
| 11:02 | 24 | A. I see that, yes, she has defined it that way. |
| 11:02 | 25 | Q. And the first sentence on page two says, As a |

## Page 71

| | | |
|---|---|---|
| 11:02 | 1 | bank holding company, HSBC North America operates |
| 11:03 | 2 | various subsidiaries in the United States. Do you see |
| 11:03 | 3 | that? |
| 11:03 | 4 | A. I do. |
| 11:03 | 5 | Q. Okay. Just a few minutes ago you said HSBC |
| 11:03 | 6 | North America does not operate its subsidiaries. Do you |
| 11:03 | 7 | recall testifying to that? |
| 11:03 | 8 | A. I do. |
| 11:03 | 9 | Q. Okay. Who's right, Ms. Burak in her letter to |
| 11:03 | 10 | the United States government, or you in your testimony |
| 11:03 | 11 | here today? |
| 11:03 | 12 | MR. LEONARD: Objection: Form. |
| 11:03 | 13 | A. I am here to testify to my knowledge of the |
| 11:03 | 14 | subject matter you've asked for, and I stand by my |
| 11:03 | 15 | understanding of the word operates and the fact that |
| 11:03 | 16 | HSBC North America Holdings, Inc. does not operate the |
| 11:03 | 17 | subsidiaries. |
| 11:03 | 18 | Q. (BY MR. BRUSTER) So in your understanding, |
| 11:03 | 19 | what you're testifying to is that Ms. Burak is wrong -- |
| 11:03 | 20 | MR. LEONARD: Objection: Form. |
| 11:03 | 21 | Q. -- in her representation |
| 11:03 | 22 | here to the United States government. Is that what |
| 11:03 | 23 | you're saying? |
| 11:03 | 24 | MR. LEONARD: I'm sorry. |
| 11:03 | 25 | Same objection. |

## Page 72

| | | |
|---|---|---|
| 11:03 | 1 | A. I cannot -- I can't testify to whether or not |
| 11:03 | 2 | this is wrong or how she characterized her letter. |
| 11:04 | 3 | That's not -- I think you would have to ask her these |
| 11:04 | 4 | questions if you wanted to know. |
| 11:04 | 5 | Q. (BY MR. BRUSTER) So let me just ask you, are |
| 11:04 | 6 | you telling the judge and jury that first sentence is |
| 11:04 | 7 | wrong, that that's an incorrect statement? |
| 11:04 | 8 | MR. LEONARD: Objection: Form. |
| 11:04 | 9 | A. My testimony is that there are operating |
| 11:04 | 10 | subsidiaries of HSBC North America Holdings, Inc., that |
| 11:04 | 11 | HSBC North America Holdings, Inc. does not operate the |
| 11:04 | 12 | subsidiaries on a day-to-day basis. So, yes, I would |
| 11:04 | 13 | say my understanding is that that first sentence is |
| 11:04 | 14 | incorrect. |
| 11:04 | 15 | Q. (BY MR. BRUSTER) So your testimony to the |
| 11:04 | 16 | judge and jury is that first sentence there on page 2 is |
| 11:04 | 17 | incorrect. |
| 11:04 | 18 | MR. LEONARD: Objection: Form. |
| 11:04 | 19 | A. Yes. |
| 11:04 | 20 | Q. (BY MR. BRUSTER) Do you know why Ms. Burak |
| 11:04 | 21 | would make that misrepresentation to the United States |
| 11:04 | 22 | government? |
| 11:04 | 23 | MR. LEONARD: Objection: Form. |
| 11:04 | 24 | A. I cannot speak to that. |
| 11:04 | 25 | Q. (BY MR. BRUSTER) Did you talk to her in |

## Page 73

| | | |
|---|---|---|
| 11:04 | 1 | preparation for your deposition here today? |
| 11:05 | 2 | A. No. |
| 11:05 | 3 | Q. You actually received a copy of this letter |
| 11:05 | 4 | weeks ago, didn't you? |
| 11:05 | 5 | A. No. |
| 11:05 | 6 | Q. When did you first see this letter? |
| 11:05 | 7 | A. The day before yesterday. |
| 11:05 | 8 | Q. The day before yesterday? |
| 11:05 | 9 | A. Yes. |
| 11:05 | 10 | Q. Did your lawyers, that are here today, show it |
| 11:05 | 11 | to you? |
| 11:05 | 12 | MR. LEONARD: Objection: Form. |
| 11:05 | 13 | Q. (BY MR. BRUSTER) You may answer. |
| 11:05 | 14 | MR. LEONARD: Don't answer the questions |
| 11:05 | 15 | of what you may have discussed with your lawyers. |
| 11:05 | 16 | Q. (BY MR. BRUSTER) Yeah. I don't want to know |
| 11:05 | 17 | about anything you talked to them about, but did your |
| 11:05 | 18 | lawyers, that are here today, show you this letter? |
| 11:05 | 19 | MR. LEONARD: You're going into work |
| 11:05 | 20 | product. You can ask her what she saw, Anthony, but |
| 11:05 | 21 | don't ask her what I discussed with her. |
| 11:05 | 22 | MR. BRUSTER: I don't want to know what |
| 11:05 | 23 | you discussed with her, make that clear. |
| 11:05 | 24 | MR. LEONARD: Okay. So limit your |
| 11:05 | 25 | question to what she may have reviewed in preparation |

## Page 74

| | | |
|---|---|---|
| 11:05 | 1 | for her deposition. |
| 11:05 | 2 | Q. (BY MR. BRUSTER) How did you get this letter |
| 11:05 | 3 | the day before yesterday? |
| 11:05 | 4 | A. In preparation for my deposition. |
| 11:05 | 5 | Q. How did you get it? |
| 11:05 | 6 | A. It was delivered to my office or to my |
| 11:05 | 7 | secretary. |
| 11:05 | 8 | Q. By whom? |
| 11:05 | 9 | A. I'm not really sure, actually. I wasn't |
| 11:06 | 10 | there. |
| 11:06 | 11 | Q. Did it come from your attorneys? |
| 11:06 | 12 | MR. LEONARD: Don't answer that question. |
| 11:06 | 13 | MR. BRUSTER: You're objecting to her |
| 11:06 | 14 | telling us whether or not you gave her this document? |
| 11:06 | 15 | MR. LEONARD: I don't object to you |
| 11:06 | 16 | asking her about any documents she may have reviewed in |
| 11:06 | 17 | preparation for her deposition. I think it's privileged |
| 11:06 | 18 | what I may have shown her in preparation for the |
| 11:06 | 19 | deposition and discussed as part of my work product. |
| 11:06 | 20 | So I know I'm splitting hairs. I want |
| 11:06 | 21 | you to be able to examine her on anything she reviewed, |
| 11:06 | 22 | I just don't want to examine her on what I may have |
| 11:06 | 23 | shown her and discussed with her. That's the |
| 11:06 | 24 | distinction I'm trying to make. |
| 11:06 | 25 | MR. BRUSTER: Okay. Well, I think the |

## Page 75

| | | |
|---|---|---|
| 11:06 | 1 | work-product protection may extend to the selection from |
| 11:06 | 2 | a vast pool of documents that are to be reviewed, but |
| 11:06 | 3 | when a specific document is shown to a witness and |
| 11:06 | 4 | discussion of where she got that document from is not |
| 11:06 | 5 | privileged. |
| 11:06 | 6 | MR. LEONARD: Well, I think what's |
| 11:06 | 7 | important is did she see the document, did she review |
| 11:07 | 8 | the document, is she aware of the document, and did she |
| 11:07 | 9 | do it in conjunction with her preparation. |
| 11:07 | 10 | Whether I showed her the document myself |
| 11:07 | 11 | and whether or not I discussed the document with her is |
| 11:07 | 12 | not really something that you're entitled to know. |
| 11:07 | 13 | That's the only distinction I'm trying to make. |
| 11:07 | 14 | MR. BRUSTER: I'm not asking for |
| 11:07 | 15 | discussions. I'm not asking for what you discussed. |
| 11:07 | 16 | Q. (BY MR. BRUSTER) Was there anything else in |
| 11:07 | 17 | the packet that arrived when you got this letter? |
| 11:07 | 18 | A. Yes. |
| 11:07 | 19 | Q. What else? |
| 11:07 | 20 | A. Well, one of the things that was in there was |
| 11:07 | 21 | that Form 20-F, that we looked at earlier. I don't |
| 11:07 | 22 | know. There were just a number of documents. |
| 11:07 | 23 | Q. So a number of documents related to the |
| 11:07 | 24 | deposition were delivered to you. |
| 11:07 | 25 | A. Yes. |

## Page 76

| | | |
|---|---|---|
| 11:07 | 1 | Q. Okay. Did they come from your lawyers? |
| 11:07 | 2 | MR. LEONARD: Don't answer that question. |
| 11:07 | 3 | Q. (BY MR. BRUSTER) Did the packet, that the |
| 11:07 | 4 | documents arrived in, have a sender's address on it? |
| 11:08 | 5 | A. No. |
| 11:08 | 6 | Q. How were they -- how were they delivered to |
| 11:08 | 7 | you? By e-mail? |
| 11:08 | 8 | A. No. |
| 11:08 | 9 | Q. Hard copies? |
| 11:08 | 10 | A. Yes. |
| 11:08 | 11 | Q. Were they bound together? |
| 11:08 | 12 | A. There was a rubber band around them. |
| 11:08 | 13 | Q. Was there a conveyance letter with them? |
| 11:08 | 14 | A. No. |
| 11:08 | 15 | Q. Did you have any idea who they were from? |
| 11:08 | 16 | A. Well, I expected to receive them. |
| 11:08 | 17 | Q. Why did you expect to receive them? |
| 11:08 | 18 | A. Because I knew I was going to be giving this |
| 11:08 | 19 | deposition and that there were some things I needed to |
| 11:08 | 20 | review prior to today. |
| 11:08 | 21 | Q. How did you know there were things you needed |
| 11:08 | 22 | to review? |
| 11:08 | 23 | A. Well, that's what you do before you give a |
| 11:08 | 24 | deposition. |
| 11:08 | 25 | Q. Was there any indication at all where this |

Page 77

| | | |
|---|---|---|
| 11:08 | 1 | letter came from? |
| 11:08 | 2 | A.  It's a letter -- it's a copy of a letter |
| 11:08 | 3 | written by Janet Burak.  That's all I can tell you. |
| 11:09 | 4 | Q.  So just so we're clear, your testimony to the |
| 11:09 | 5 | jury is that Ms. Burak is wrong when she says HSBC North |
| 11:09 | 6 | America operates subsidiaries in the US. |
| 11:09 | 7 | MR. LEONARD:  Objection.  Form. |
| 11:09 | 8 | A.  I'm saying that the word operates, to me, |
| 11:09 | 9 | is -- could -- is -- indicates something different than |
| 11:09 | 10 | what that sentence says. |
| 11:09 | 11 | Q.  (BY MR. BRUSTER)  When you read this letter |
| 11:09 | 12 | two days ago, did you pick up the phone and call |
| 11:09 | 13 | Ms. Burak and say, where did you get the understanding |
| 11:09 | 14 | that HSBC North America Holdings, Inc. operates banking |
| 11:09 | 15 | subsidiaries in the United States? |
| 11:09 | 16 | A.  I already testified that I did not speak to |
| 11:09 | 17 | Ms. Burak. |
| 11:09 | 18 | Q.  Why didn't you call her if you got this letter |
| 11:09 | 19 | a couple of days ago and recognized its content to be |
| 11:09 | 20 | inconsistent with what your knowledge of HSBC North |
| 11:09 | 21 | America Holdings, Inc. operations were? |
| 11:09 | 22 | A.  I just didn't. |
| 11:09 | 23 | Q.  You just didn't?  Isn't it true that you |
| 11:09 | 24 | didn't call her because you knew that the definition of |
| 11:09 | 25 | operation she'd give you would subject HSBC North |

Page 78

| | | |
|---|---|---|
| 11:10 | 1 | America Holdings, Inc. to operating subsidiaries -- |
| 11:10 | 2 | MR. LEONARD:  Objection. |
| 11:10 | 3 | Q.  (BY MR. BRUSTER)  -- in the United States? |
| 11:10 | 4 | MR. LEONARD:  Excuse me. |
| 11:10 | 5 | Objection to form. |
| 11:10 | 6 | A.  No. |
| 11:10 | 7 | Q.  (BY MR. BRUSTER)  You were afraid of her |
| 11:10 | 8 | answer, weren't you? |
| 11:10 | 9 | A.  No. |
| 11:10 | 10 | Q.  Did you think that she was going to change her |
| 11:10 | 11 | position of what she represented to the United States |
| 11:10 | 12 | government? |
| 11:10 | 13 | MR. LEONARD:  Objection to form. |
| 11:10 | 14 | A.  I didn't give any thought to calling Janet |
| 11:10 | 15 | about this letter. |
| 11:10 | 16 | Q.  (BY MR. BRUSTER)  Does HSBC North America |
| 11:10 | 17 | Holdings, Inc. provide any financial services to its |
| 11:10 | 18 | clients, to any clients? |
| 11:10 | 19 | MR. LEONARD:  Objection.  Form. |
| 11:10 | 20 | A.  Not to my knowledge, no. |
| 11:11 | 21 | Q.  (BY MR. BRUSTER)  Do you see here, in the |
| 11:11 | 22 | second paragraph, where I've got the cursor on this |
| 11:11 | 23 | Exhibit?  Do you see this sentence right here on the |
| 11:11 | 24 | third line of the second paragraph? |
| 11:11 | 25 | A.  The one that begins with "as"? |

Page 79

| | | |
|---|---|---|
| 11:11 | 1 | Q.  Yes, ma'am. |
| 11:11 | 2 | A.  Yes. |
| 11:11 | 3 | Q.  It says, As a leader in providing a wide array |
| 11:11 | 4 | of financial services to clients, HSBC North America |
| 11:11 | 5 | believes that financial institutions have a vital role |
| 11:11 | 6 | to play in the responsible use of CSFT's and related |
| 11:11 | 7 | financial products, and it continues from there, |
| 11:11 | 8 | correct? |
| 11:11 | 9 | A.  Yes. |
| 11:11 | 10 | Q.  Okay.  Just 30 seconds ago you testified to |
| 11:11 | 11 | the judge and jury that HSBC North America does not |
| 11:11 | 12 | provide financial services to clients.  Do you recall |
| 11:11 | 13 | that? |
| 11:11 | 14 | A.  Yes. |
| 11:11 | 15 | Q.  Okay.  And right here Ms. Burak writes, As a |
| 11:11 | 16 | leader in providing a wide array of financial services |
| 11:11 | 17 | to clients, HSBC North America, it goes on and on, |
| 11:11 | 18 | correct? |
| 11:11 | 19 | A.  Correct. |
| 11:11 | 20 | Q.  Okay.  Is this a misrepresentation made by |
| 11:12 | 21 | Ms. Burak to the United States government as well? |
| 11:12 | 22 | MR. LEONARD:  Objection.  Form. |
| 11:12 | 23 | A.  You know, the letter says what it says.  That |
| 11:12 | 24 | is not my understanding of the role that HSBC North |
| 11:12 | 25 | America Holdings plays, but I can't interpret her letter |

Page 80

| | | |
|---|---|---|
| 11:12 | 1 | for you. |
| 11:12 | 2 | Q.  (BY MR. BRUSTER)  Ms. Burak is a lawyer for |
| 11:12 | 3 | HSBC North America Holdings, Inc., correct? |
| 11:12 | 4 | A.  I believe she does, yes. |
| 11:12 | 5 | Q.  The same company that you work for, right? |
| 11:12 | 6 | A.  Yes. |
| 11:12 | 7 | Q.  And she's represented to the government, as a |
| 11:12 | 8 | lawyer, that HSBC North America provides a wide array of |
| 11:12 | 9 | financial services to clients, hasn't she? |
| 11:12 | 10 | A.  Again, that's what this sentence says, yes. |
| 11:12 | 11 | Q.  And you're here today testifying to this judge |
| 11:12 | 12 | and jury that, in fact, HSBC North America Holdings, |
| 11:12 | 13 | Inc. does not provide those services. |
| 11:12 | 14 | A.  The services are provided through its |
| 11:12 | 15 | operating subsidiaries, they're not provided by the |
| 11:12 | 16 | holding company. |
| 11:12 | 17 | Q.  Well, Ms. Burak writes right here that HSBC |
| 11:13 | 18 | North America Holdings, Inc. is providing those |
| 11:13 | 19 | services, doesn't she? |
| 11:13 | 20 | MR. LEONARD:  Objection.  Form. |
| 11:13 | 21 | A.  You read the sentence, yes, it says what it |
| 11:13 | 22 | says. |
| 11:13 | 23 | Q.  (BY MR. BRUSTER)  And I guess even if they are |
| 11:13 | 24 | provided through the subsidiaries, in the previous |
| 11:13 | 25 | paragraph she wrote that HSBC North America Holdings, |

## Page 81

| | | |
|---|---|---|
| 11:13 | 1 | Inc. is operating those subsidiaries, didn't she? |
| 11:13 | 2 | MR. LEONARD: Objection: Form. |
| 11:13 | 3 | A. Again, Ms. Burak's letter speaks for itself. |
| 11:13 | 4 | My testimony is that my understanding is different from |
| 11:13 | 5 | this letter in terms of control and operations. |
| 11:13 | 6 | Q. (BY MR. BRUSTER) And did you get that |
| 11:13 | 7 | understanding from your lawyers or from somebody else? |
| 11:13 | 8 | MR. LEONARD: Objection. |
| 11:13 | 9 | Don't answer with respect to what you may |
| 11:13 | 10 | have discussed with your lawyers. |
| 11:13 | 11 | A. I have general knowledge of how corporate |
| 11:13 | 12 | structures with holding companies work, and HSBC North |
| 11:13 | 13 | America Holdings has 50 or less employees. Its role is |
| 11:14 | 14 | to provide services to consolidate various financials |
| 11:14 | 15 | and help with taxes, those things. It's not an |
| 11:14 | 16 | operating company. It does not generate revenue. |
| 11:14 | 17 | Q. (BY MR. BRUSTER) Why is it that the jury |
| 11:14 | 18 | should believe you instead of a lawyer who works for the |
| 11:14 | 19 | company that you work for on these issues? |
| 11:14 | 20 | MR. LEONARD: Objection: Form. |
| 11:14 | 21 | A. Well, I guess the jury can believe whatever it |
| 11:14 | 22 | chooses to believe, but I am testifying to my |
| 11:14 | 23 | understanding of these matters. |
| 11:14 | 24 | Q. (BY MR. BRUSTER) Does HSBC North America |
| 11:14 | 25 | Holdings, Inc. implement policies for subsidiaries? |

## Page 82

| | | |
|---|---|---|
| 11:14 | 1 | A. Could you give me some idea of what you mean |
| 11:14 | 2 | by a policy? |
| 11:14 | 3 | Q. What's your understanding of what the word |
| 11:14 | 4 | policy means? |
| 11:14 | 5 | A. Here we go again. Well, when I think of |
| 11:15 | 6 | policies, I think of -- it could be any number of |
| 11:15 | 7 | things, actually. I mean, it could be policies that -- |
| 11:15 | 8 | you know, that are specific to a business, or it could |
| 11:15 | 9 | be policies that -- such as the HSBC policy of operating |
| 11:15 | 10 | with integrity as something that is integral to the |
| 11:15 | 11 | entire organization. |
| 11:15 | 12 | Q. Is that a written policy? Is there a written |
| 11:15 | 13 | policy about operating with integrity? |
| 11:15 | 14 | A. I don't know that it's a written policy, but |
| 11:15 | 15 | it's certainly a pervasive statement and a pervasive |
| 11:15 | 16 | viewpoint of the organization. |
| 11:15 | 17 | Q. Do you have like risk management policies, for |
| 11:15 | 18 | example? |
| 11:15 | 19 | A. We have guidelines, yes. I mean ... |
| 11:16 | 20 | Q. Does HSBC North America Holdings, Inc. |
| 11:16 | 21 | implement risk management policies that its subsidiaries |
| 11:16 | 22 | follow? |
| 11:16 | 23 | MR. LEONARD: Objection. |
| 11:16 | 24 | A. Are you talking about insurance risk |
| 11:16 | 25 | management? |

## Page 83

| | | |
|---|---|---|
| 11:16 | 1 | THE WITNESS: Oh, I'm sorry. |
| 11:16 | 2 | MR. LEONARD: Objection: Form. |
| 11:16 | 3 | Q. (BY MR. BRUSTER) I'm just talking about from |
| 11:16 | 4 | a policy level does HSBC North America Holdings, Inc. |
| 11:16 | 5 | implement policies that its banking subsidiary then |
| 11:16 | 6 | follows? |
| 11:16 | 7 | A. I don't know. |
| 11:16 | 8 | MR. LEONARD: Objection: Form. |
| 11:16 | 9 | A. I don't know. |
| 11:16 | 10 | Q. (BY MR. BRUSTER) You don't know? |
| 11:16 | 11 | A. Huh-uh (negative). |
| 11:16 | 12 | Q. Does HSBC North America Holdings, Inc. serve |
| 11:16 | 13 | customers? |
| 11:16 | 14 | MR. LEONARD: Objection to form. |
| 11:16 | 15 | A. Not on a direct basis, no. Its customers are |
| 11:16 | 16 | served through operating subsidiaries. |
| 11:16 | 17 | Q. (BY MR. BRUSTER) I'll flip over to page 5 of |
| 11:16 | 18 | Ms. Burak's letter to the United States government |
| 11:17 | 19 | agencies and have you look with me here in the bottom |
| 11:17 | 20 | paragraph, right above this section, Additional |
| 11:17 | 21 | Comments. Do you see the sentence right here starting |
| 11:17 | 22 | with, HSBC North America? |
| 11:17 | 23 | A. Yes. |
| 11:17 | 24 | Q. It reads, HSBC North America -- which is |
| 11:17 | 25 | referring to North America Holdings, Inc., correct? |

## Page 84

| | | |
|---|---|---|
| 11:17 | 1 | A. Yes. |
| 11:17 | 2 | Q. -- is as a financial institution, a principle |
| 11:17 | 3 | strategic advantage of which is its ability to structure |
| 11:17 | 4 | cross-boarder transactions and serve customers and |
| 11:17 | 5 | counterparties in more than one geographic region. Do |
| 11:17 | 6 | you see that? |
| 11:17 | 7 | A. I do. |
| 11:17 | 8 | Q. Is that an accurate statement that Ms. Burak |
| 11:17 | 9 | made to the United States government there? |
| 11:17 | 10 | A. Again, it speaks for itself, and I have |
| 11:17 | 11 | testified that this would not be my understanding of |
| 11:17 | 12 | serving customers. I just moments ago -- |
| 11:18 | 13 | Q. Moments ago you testified -- you testified |
| 11:18 | 14 | that HSBC North America Holdings, Inc. does not serve |
| 11:18 | 15 | customers, correct. |
| 11:18 | 16 | A. On a direct basis, yes. |
| 11:18 | 17 | Q. And Ms. Burak here is writing to the United |
| 11:18 | 18 | States government that, in fact, the company is serving |
| 11:18 | 19 | customers, isn't she? |
| 11:18 | 20 | MR. LEONARD: Objection to form. |
| 11:18 | 21 | A. The letter speaks for itself. That's what |
| 11:18 | 22 | this sentence says. |
| 11:18 | 23 | Q. (BY MR. BRUSTER) But again, you want the |
| 11:18 | 24 | judge and jury to believe you instead of Ms. Burak's |
| 11:18 | 25 | letter, correct? |

## Page 85

| | | |
|---|---|---|
| 11:18 | 1 | MR. LEONARD: Objection: Form. |
| 11:18 | 2 | A. Well, I am telling you the truth as I know it |
| 11:18 | 3 | so, yes, I would like for the judge and jury to believe |
| 11:18 | 4 | me. |
| 11:18 | 5 | Q. (BY MR. BRUSTER) Do you know whether |
| 11:18 | 6 | Ms. Burak was telling the truth when she wrote this |
| 11:18 | 7 | letter to the United States government? |
| 11:18 | 8 | A. I am confident that she was. |
| 11:18 | 9 | Q. That she was. |
| 11:18 | 10 | A. Yes. |
| 11:18 | 11 | Q. Okay. |
| 11:19 | 12 | MR. BRUSTER: Why don't we take another |
| 11:19 | 13 | short break. We've been going an hour-and-fifteen or |
| 11:19 | 14 | so. |
| 11:19 | 15 | THE VIDEOGRAPHER: Off the record. |
| 11:19 | 16 | (Recess taken 11:19 to 11:38) |
| 11:19 | 17 | (Exhibit Number 6 marked.) |
| 11:38 | 18 | THE VIDEOGRAPHER: We're back on the |
| 11:38 | 19 | record. |
| 11:38 | 20 | Q. (BY MR. BRUSTER) All right. We're back after |
| 11:38 | 21 | a short break. Ms. Hickman, without disclosing any of |
| 11:38 | 22 | the nature of the conversations, did you have an |
| 11:39 | 23 | opportunity to visit with your counsel during the break? |
| 11:39 | 24 | A. Just now? Yes. |
| 11:39 | 25 | Q. Okay. I'm going to mark, as Exhibit 6, what |

## Page 86

| | | |
|---|---|---|
| 11:39 | 1 | was provided to us as HSBC North America Holdings, |
| 11:39 | 2 | Inc.'s Objections, Assertions of Privilege and Responses |
| 11:39 | 3 | to DataTreasury Corporation's First Set of Requests for |
| 11:39 | 4 | Admission Regarding Jurisdictional Discovery. It's a |
| 11:39 | 5 | mouthful of a title, but have you ever seen this |
| 11:39 | 6 | document before? |
| 11:39 | 7 | A. Yes. |
| 11:39 | 8 | Q. When was the last time you looked at this |
| 11:39 | 9 | document before your deposition? |
| 11:39 | 10 | A. I looked at it yesterday. I might have read |
| 11:39 | 11 | it on the train on the way in this morning. I don't |
| 11:39 | 12 | remember for sure. But I looked at my deposition topics |
| 11:39 | 13 | and a number of other things. |
| 11:39 | 14 | Q. Did you provide input in answering these |
| 11:39 | 15 | requests for admission? |
| 11:40 | 16 | A. Not much, no. |
| 11:40 | 17 | Q. Not much? |
| 11:40 | 18 | A. Huh-uh (negative). |
| 11:40 | 19 | Q. Did you provide any input? |
| 11:40 | 20 | A. I'd have to read them, sir. I can't remember. |
| 11:40 | 21 | Q. Let's walk through and look at a couple of |
| 11:40 | 22 | these. |
| 11:40 | 23 | A. Okay. |
| 11:40 | 24 | Q. Request for admission number two says, Admit |
| 11:40 | 25 | that HSBC North America Holdings, Inc. operates HSBC |

## Page 87

| | | |
|---|---|---|
| 11:40 | 1 | Bank USA. Do you see that? |
| 11:40 | 2 | A. I do. |
| 11:40 | 3 | Q. And then after some objections, there's an |
| 11:40 | 4 | answer that says, Denied that HNAH, which is HSBC North |
| 11:40 | 5 | America Holdings, Inc., operates HSBC Bank USA directly, |
| 11:40 | 6 | but it is admitted that in its role as a holding company |
| 11:40 | 7 | that HSBC Bank USA is an indirect, wholly owned |
| 11:40 | 8 | subsidiary of HNAH. Did I read that correctly? |
| 11:40 | 9 | A. You did. |
| 11:41 | 10 | Q. Okay. There is no discussion of operation in |
| 11:41 | 11 | that second clause after, It is admitted. In other |
| 11:41 | 12 | words, it says, HSBC Bank USA is an indirect wholly |
| 11:41 | 13 | owned subsidiary, but there's no discussion about |
| 11:41 | 14 | whether or not HSBC North America Holdings, Inc. |
| 11:41 | 15 | operates the bank. Do you recognize that? |
| 11:41 | 16 | MR. LEONARD: Objection: Form. |
| 11:41 | 17 | A. It says in the first line of the response |
| 11:41 | 18 | subject to denied that HNAH operates HSBC Bank USA |
| 11:41 | 19 | directly. |
| 11:41 | 20 | Q. (BY MR. BRUSTER) In other words, I guess my |
| 11:41 | 21 | question is, is the second clause, is the latter part of |
| 11:41 | 22 | this sentence meant to convey the fact that HSBC North |
| 11:41 | 23 | America Holdings, Inc. operates HSBC Bank USA |
| 11:41 | 24 | indirectly? |
| 11:41 | 25 | MR. LEONARD: Objection: Form. |

## Page 88

| | | |
|---|---|---|
| 11:41 | 1 | A. Yes. |
| 11:41 | 2 | Q. (BY MR. BRUSTER) Okay. |
| 11:41 | 3 | A. I mean -- well, that it's an indirect |
| 11:42 | 4 | subsidiary, yes. |
| 11:42 | 5 | Q. Well, separate and apart from its status as an |
| 11:42 | 6 | indirect subsidiary, does HSBC North America Holdings, |
| 11:42 | 7 | Inc. operate HSBC Bank USA, either directly or |
| 11:42 | 8 | indirectly? |
| 11:42 | 9 | A. No. I'm sorry, no. |
| 11:42 | 10 | MR. LEONARD: Objection: Form. |
| 11:42 | 11 | A. No. No, it does not. |
| 11:42 | 12 | Q. (BY MR. BRUSTER) It doesn't. |
| 11:42 | 13 | A. No. |
| 11:42 | 14 | Q. So if you were to answer that question right |
| 11:42 | 15 | there, Admit that HSBC Bank North America Holdings, Inc. |
| 11:42 | 16 | operates HSBC Bank USA, you would say deny. |
| 11:42 | 17 | MR. LEONARD: Objection to form. |
| 11:42 | 18 | A. Yes. |
| 11:42 | 19 | Q. (BY MR. BRUSTER) Okay. And that's directly |
| 11:42 | 20 | contradictory to the letter that we just looked at from |
| 11:42 | 21 | Ms. Burak to the United States government agencies, |
| 11:42 | 22 | correct? |
| 11:42 | 23 | MR. LEONARD: Objection: Form. |
| 11:42 | 24 | A. Ms. Burak's letter is her letter. It says |
| 11:42 | 25 | what it says. I think there are different ways to |

## Page 89

11:42  1  interpret words, operates, controls, and you should ask
11:42  2  her what her intent was if you're not comfortable with
11:43  3  our two answers.
11:43  4         MR. BRUSTER:  Objection:  Nonresponsive.
11:43  5     Q.  (BY MR. BRUSTER)  This testimony you just
11:43  6  gave, that you deny that, is inconsistent with the
11:43  7  letter that Ms. Burak wrote to the United States
11:43  8  government agencies, isn't it?
11:43  9         MR. LEONARD:  Objection:  Form; asked and
11:43  10  answered.
11:43  11    Q.  (BY MR. BRUSTER)  You may answer.
11:43  12    A.  Well, I have answered.
11:43  13    Q.  That's a yes-or-no question.  Is it
11:43  14  inconsistent?
11:43  15        MR. LEONARD:  Same objection.
11:43  16    A.  The reason I have a difficult time answering
11:43  17  your question is that I just think you should talk with
11:43  18  Ms. Burak about her intent in writing that letter.  I'm
11:43  19  comfortable with the way I'm answering these questions,
11:43  20  that they're correct to the best of my knowledge.
11:43  21    Q.  (BY MR. BRUSTER)  Well, Ms. Burak wasn't
11:43  22  presented here for a deposition today so that's why I'm
11:43  23  asking you about your understanding of operation since
11:43  24  she wrote and said that HSBC North America Holdings,
11:43  25  Inc. operates these subsidiaries.  And as I'm hearing

## Page 90

11:44  1  from you today, you have a different understanding.
11:44  2  Correct?
11:44  3         MR. LEONARD:  Objection to form; object
11:44  4  to sidebar.
11:44  5     A.  My -- the problem is that I think you're
11:44  6  saying that there's only one way to interpret the word
11:44  7  operates, and I think that that's not true.  And
11:44  8  consequently what she said -- well, it sounds different
11:44  9  from what I'm saying.  You know, you need to find out
11:44  10  from her if she intended it to be different.
11:44  11    Q.  (BY MR. BRUSTER)  If she intended the word
11:44  12  operates to be different?
11:44  13    A.  If she intended her letter to reflect
11:44  14  something different than my testimony, yes.
11:44  15    Q.  This next request, Admit that HSBS North
11:44  16  America Holdings, Inc. controls HSBC Bank USA, is
11:44  17  answered on the top of the following page where, after
11:44  18  some objections, HSBC North America Holdings, Inc.
11:44  19  denies that it controls the daily operations of HSBC
11:45  20  Bank USA but does admit to having a controlling interest
11:45  21  in HSBC Bank USA.  Do you see that?
11:45  22    A.  I do.
11:45  23    Q.  Okay.  By controlling interest, what does that
11:45  24  phrase mean to you?
11:45  25    A.  It means that ultimately the parent company

## Page 91

11:45  1  owns the stock of the subsidiaries.
11:45  2     Q.  So you're just talking about stock ownership
11:45  3  there.
11:45  4     A.  That's -- that would be my interpretation,
11:45  5  yes.
11:45  6     Q.  And a denial of that statement, that HSBC
11:45  7  North America Holdings, Inc. controls HSBC Bank USA, is
11:45  8  inconsistent with the Exhibit we looked at a few minutes
11:45  9  ago, the 20-F form that was filed by your parent
11:45  10  company, HSBC Group; isn't that true?
11:45  11        MR. LEONARD:  Objection:  Form.
11:45  12    A.  That was that 20-F?
11:46  13    Q.  (BY MR. BRUSTER)  I think you have, actually,
11:46  14  a paper copy there in front of you, where the page 3,
11:46  15  top paragraph, right-hand column, last sentence, talks
11:46  16  about HSBC North America Holdings, Inc. controlling HSBC
11:46  17  Bank USA.  Do you recall that?
11:46  18    A.  I recall something like that, yes.
11:46  19    Q.  So a denial of this statement here in the
11:46  20  discovery is just inconsistent with that Security &
11:46  21  Exchange Commission filing, isn't it?
11:46  22        MR. LEONARD:  Objection:  Form.
11:46  23    A.  Again, no, I don't think it is.  I think it's
11:46  24  a clarification.
11:46  25    Q.  (BY MR. BRUSTER)  Clarification on what, the

## Page 92

11:46  1  word controls?
11:46  2     A.  The fact that the operations of the
11:46  3  subsidiaries are handled at the subsidiary level.  HNAH
11:46  4  does not control the subsidiary's day-to-day operations.
11:46  5     Q.  Are you uncomfortable having to clarify and
11:46  6  define words, simple words like control or operate in
11:47  7  your deposition here today?
11:47  8     A.  I find them to be somewhat ambiguous and
11:47  9  uncomfortable that you won't define them for me as you
11:47  10  would like to discuss them.
11:47  11    Q.  Did you have any discussion with Ms. Burak or
11:47  12  anybody else at HSBC North America Holdings, Inc. about
11:47  13  what it means to control or operate subsidiary banks
11:47  14  before your deposition here today?
11:47  15        MR. LEONARD:  Don't discuss your -- don't
11:47  16  discuss your discussions with your attorneys.  If you
11:47  17  talked to Ms. Burak in conjunction with legal advice
11:47  18  that you were seeking from her, then you're not
11:47  19  permitted to talk about that.
11:47  20    A.  I didn't -- I did not have any conversations
11:47  21  with Ms. Burak at all.
11:47  22    Q.  (BY MR. BRUSTER)  Did you talk to anybody else
11:47  23  at HSBC North America Holdings, Inc. about all these
11:47  24  documents that discuss the holding company operating or
11:48  25  controlling the subsidiary bank before your deposition?

## Page 93

| 11:48 | 1 | MR. LEONARD: Objection: Form. |
| 11:48 | 2 | A. Any conversations I had are subject to |
| 11:48 | 3 | privilege, attorney-client privilege. |
| 11:48 | 4 | Q. (BY MR. BRUSTER) Outside the presence of |
| 11:48 | 5 | these lawyers or your lawyers representing HSBC in this |
| 11:48 | 6 | action, you didn't have any conversations with anybody |
| 11:48 | 7 | else that works for HSBC North America Holdings, Inc. |
| 11:48 | 8 | about those topics? |
| 11:48 | 9 | A. That's correct. |
| 11:49 | 10 | Q. Let me ask you about number 13 here on the |
| 11:49 | 11 | screen in front of you, which was admit that in the last |
| 11:49 | 12 | three years HSBC North America Holdings, Inc. has earned |
| 11:49 | 13 | revenue that is generated from business conducted in |
| 11:49 | 14 | Texas, and the answer after a number of objections is |
| 11:49 | 15 | deny. Do you see that? |
| 11:49 | 16 | A. I do. |
| 11:49 | 17 | Q. Okay. Earlier we talked about the way that |
| 11:49 | 18 | HSBC North America Holdings, Inc. makes money, and your |
| 11:49 | 19 | testimony was that it does so as a result of dividends |
| 11:49 | 20 | that are paid up from its subsidiary companies, correct? |
| 11:49 | 21 | A. That's my understanding, yes. |
| 11:49 | 22 | Q. Okay. Isn't it true, then, that a portion of |
| 11:49 | 23 | the money that is earned as dividend payments by HSBC |
| 11:49 | 24 | North America Holdings, Inc., that that money is |
| 11:49 | 25 | generated in part from business activities in Texas? |

## Page 94

| 11:50 | 1 | MR. LEONARD: Objection: Form. |
| 11:50 | 2 | Q. (BY MR. BRUSTER) You may answer. |
| 11:50 | 3 | A. I wouldn't know one way or the other if -- if |
| 11:50 | 4 | businesses in Texas made money. |
| 11:50 | 5 | Q. Is it your testimony to this judge and jury |
| 11:50 | 6 | that you don't know whether or not HSBC's operations in |
| 11:50 | 7 | Texas make any money? |
| 11:50 | 8 | A. I know that we have operations in the state of |
| 11:50 | 9 | Texas. I do not know what the -- their financial |
| 11:50 | 10 | picture is on an individual basis, no. |
| 11:50 | 11 | Q. Can you tell the judge and jury whether or not |
| 11:50 | 12 | HSBC's activities in the state of Texas generate revenue |
| 11:50 | 13 | for the company? |
| 11:50 | 14 | MR. LEONARD: Objection: Form. |
| 11:50 | 15 | A. Yes, I am certain that that -- |
| 11:50 | 16 | MR. LEONARD: Counsel, I believe you |
| 11:50 | 17 | misspoke. Do you want to further define what HSBC |
| 11:50 | 18 | you're talking about? |
| 11:51 | 19 | MR. BRUSTER: Any HSBC banking |
| 11:51 | 20 | subsidiary. |
| 11:51 | 21 | MR. LEONARD: Banking subsidiary. Okay. |
| 11:51 | 22 | A. I'm certain that the operating subsidiaries |
| 11:51 | 23 | generate revenue. |
| 11:51 | 24 | Q. (BY MR. BRUSTER) And the profit that's earned |
| 11:51 | 25 | by operating subsidiaries, including profit earned in |

## Page 95

| 11:51 | 1 | the state of Texas, is then paid up the chain to the |
| 11:51 | 2 | holding companies in the form of dividends, correct? |
| 11:51 | 3 | MR. LEONARD: Objection: Form. |
| 11:51 | 4 | Q. (BY MR. BRUSTER) You may answer. |
| 11:51 | 5 | A. That's my understanding. |
| 11:51 | 6 | Q. So isn't it true that dividend revenue earned |
| 11:51 | 7 | by HSBC North America Holdings, Inc. is earned, in part, |
| 11:51 | 8 | from business activity conducted in the state of Texas? |
| 11:51 | 9 | A. I think that I was trying to distinguish |
| 11:51 | 10 | earlier, and you did just now, that revenue and profit |
| 11:51 | 11 | are sometimes -- are different things so, yes, they |
| 11:51 | 12 | generate revenue. I have no idea if they're profitable. |
| 11:51 | 13 | Q. Your testimony to this court is that you have |
| 11:52 | 14 | no idea whether or not HSBC banking subsidiaries have |
| 11:52 | 15 | ever earned a profit in the state of Texas; is that |
| 11:52 | 16 | true? |
| 11:52 | 17 | A. Yes, that's true, I don't know personally. |
| 11:52 | 18 | Q. Who would know the answer to that? |
| 11:52 | 19 | A. Whoever reviews the financials for the banking |
| 11:52 | 20 | subsidiary in Texas. |
| 11:52 | 21 | Q. Who is that person? |
| 11:52 | 22 | A. I don't know. |
| 11:52 | 23 | Q. I'm sorry? |
| 11:52 | 24 | A. I don't know. |
| 11:52 | 25 | Q. So you can't tell the jury whether or not HSBC |

## Page 96

| 11:52 | 1 | North America Holdings, Inc. has earned revenue that's |
| 11:52 | 2 | generated in the state of Texas -- |
| 11:52 | 3 | MR. LEONARD: Objection: Form. |
| 11:53 | 4 | Q. (BY MR. BRUSTER) -- can you? |
| 11:53 | 5 | MR. LEONARD: Same objection. |
| 11:53 | 6 | A. HSBC North America Holdings, Inc. hasn't |
| 11:53 | 7 | earned revenue. I can't tell you whether or not it |
| 11:53 | 8 | received, as part of its dividend, money that was earned |
| 11:53 | 9 | in Texas. I don't know. |
| 11:53 | 10 | Q. (BY MR. BRUSTER) If HSBC North America |
| 11:53 | 11 | Holdings, Inc. receives money in the form of dividend |
| 11:53 | 12 | payments that was generated as a result of business |
| 11:53 | 13 | activity in Texas, do you think that HSBC North America |
| 11:53 | 14 | Holdings, Inc. can properly say it doesn't engage in |
| 11:53 | 15 | activities in Texas? |
| 11:53 | 16 | MR. LEONARD: Objection: Form. |
| 11:53 | 17 | A. Absolutely you can say that, yes. |
| 11:53 | 18 | Q. (BY MR. BRUSTER) So in other words, Texas |
| 11:53 | 19 | folks can pay money to HSBC North America Holdings, Inc. |
| 11:53 | 20 | subsidiaries and the parent company can reap the benefit |
| 11:53 | 21 | of those monies by dividend payments but yet can take |
| 11:53 | 22 | the position that it doesn't do any business in Texas. |
| 11:53 | 23 | That's your testimony. |
| 11:54 | 24 | MR. LEONARD: Objection: Form. |
| 11:54 | 25 | A. My testimony is that HSBC North America |

24 (Pages 93 to 96)

## Page 97

11:54  1  Holdings, Inc. is a holding company and does not operate

11:54  2  its business.  It has no revenue-generating operations.

11:54  3      Q.  (BY MR. BRUSTER)  But yet, the money that it

11:54  4  earns or is provided as dividend payment might stem from

11:54  5  Texas; isn't that true?

11:54  6          MR. LEONARD:  Objection: Form.

11:54  7      A.  It is possible.

11:54  8      Q.  (BY MR. BRUSTER)  In fact, it's likely, isn't

11:54  9  it?

11:54  10          MR. LEONARD:  Objection to form; asked

11:54  11  and answered.

11:54  12      A.  I'm sorry, I'm not the right person to answer

11:54  13  these questions, so I just don't know.

11:54  14      Q.  (BY MR. BRUSTER)  So HSBC North America

11:54  15  Holdings, Inc. procures insurance coverage for HSBC

11:54  16  properties in Texas, correct?

11:54  17          MR. LEONARD:  Objection: Form.

11:54  18      A.  It procures insurance for all of its North

11:54  19  America properties, yes.

11:54  20      Q.  (BY MR. BRUSTER)  Including properties in

11:54  21  Texas, correct?

11:54  22          MR. LEONARD:  Same objection.

11:54  23      Q.  (BY MR. BRUSTER)  And then HSBC North America

11:54  24  Holdings, Inc. might be provided dividend revenue that's

11:55  25  earned as a result of subsidiaries' business activities

## Page 98

11:55  1  in the state of Texas.

11:55  2          MR. LEONARD:  Objection: Form.

11:55  3      Q.  (BY MR. BRUSTER)  That's your testimony as

11:55  4  well, isn't it?

11:55  5          MR. LEONARD:  Same objection.

11:55  6      A.  Again, that's, you know, where the revenue

11:55  7  comes from, is from the operating subsidiaries, so if

11:55  8  they made money in Texas then, yes, it's possible.

11:55  9      Q.  (BY MR. BRUSTER)  Does the CEO of HSBC North

11:55  10  America Holdings, Inc. know that you are testifying here

11:55  11  today that there's no control exerted by HSBC North

11:55  12  America Holdings, Inc. over the banking subsidiaries?

11:55  13          MR. LEONARD:  Objection: Form.

11:55  14      A.  I'm sorry, could you ask that question again?

11:55  15  I didn't get it.

11:56  16      Q.  (BY MR. BRUSTER)  Sure.  Does the CEO of HSBC

11:56  17  North America Holdings, Inc. know that you're testifying

11:56  18  today that that company does not exert control over HSBC

11:56  19  Bank?

11:56  20          MR. LEONARD:  Objection: Form.

11:56  21      A.  I have no idea if he knows I'm testifying

11:56  22  today.

11:56  23      Q.  (BY MR. BRUSTER)  Do you know if the

11:56  24  shareholders of HSBC have been informed that HSBC,

11:56  25  according to you, HSBC North America Holdings, Inc.

## Page 99

11:56  1  doesn't exert control over the operations of HSBC Bank?

11:56  2          MR. LEONARD:  Objection: Form.

11:56  3      A.  No, I don't know.

11:56  4      Q.  (BY MR. BRUSTER)  Excuse me?

11:56  5      A.  No, I don't know.

11:57  6          MR. LEONARD:  Counsel, when you reach a

11:57  7  convenient stopping point ...

11:57  8          MR. BRUSTER:  Yeah.  Let's do about five

11:57  9  more minutes and we'll be there.

11:57  10          MR. LEONARD:  Okay.

11:57  11      Q.  (BY MR. BRUSTER)  Let me ask you about number

11:57  12  14 here on the screen in front of you.  It says, Admit

11:57  13  that in the last three years HSBC North America

11:57  14  Holdings, Inc. has provided operational support to HSBC

11:57  15  Bank USA.  Do you see that?

11:57  16      A.  I do.

11:57  17      Q.  And then unsurprisingly the answer to that was

11:57  18  denied.  Do you see that?

11:57  19      A.  I do.

11:57  20          MR. LEONARD:  Objection.

11:57  21      Q.  (BY MR. BRUSTER)  The -- first of all, a

11:57  22  denial of that statement, that HSBC North America

11:57  23  Holdings, Inc. has provided operational support to HSBC

11:57  24  Bank USA, is inconsistent with Ms. Burak's letter to the

11:58  25  government, isn't it?

## Page 100

11:58  1          MR. LEONARD:  Objection to form.

11:58  2      A.  I don't recall what she said about operational

11:58  3  support.

11:58  4      Q.  (BY MR. BRUSTER)  I'll show you.  Here on the

11:58  5  top of page 2 of that letter she says, As a bank holding

11:58  6  company, HSBC North America operates various

11:58  7  subsidiaries in the United States.  Do you see that?

11:58  8      A.  Uh-huh (affirmative).

11:58  9      Q.  And then in the document we just looked at it

11:58  10  is denied that HSBC North America Holdings, Inc. has

11:58  11  provided operational support --

11:58  12          MR. LEONARD:  I'm sorry, Counsel, but it

11:58  13  also lodges an objection to that phrase as being vague.

11:58  14      Q.  (BY MR. BRUSTER)  Do you understand what

11:58  15  operational support means?

11:58  16      A.  Would you define it for me?

11:58  17      Q.  Do you think there's a difference between

11:58  18  operates and providing operational support?

11:58  19      A.  Yes.

11:58  20      Q.  What's the difference?

11:58  21      A.  Operates is, you know, an active verb.

11:59  22  Operational support is -- you know, support, it's a

11:59  23  noun.  I mean, it's a noun, just like operational

11:59  24  support is something separate from operating.  They're

11:59  25  not the same at all.

Page 101

| | | |
|---|---|---|
| 11:59 | 1 | Q. Okay. So let's skip past the first question, |
| 11:59 | 2 | then, about whether or not that's inconsistent with |
| 11:59 | 3 | Ms. Burak's letter, I think the jury can draw that |
| 11:59 | 4 | conclusion, and let me ask you this question. |
| 11:59 | 5 | You testified earlier that HSBC North |
| 11:59 | 6 | America Holdings, Inc. and HSBC Bank, the banking |
| 11:59 | 7 | subsidiary, share some directors and officers, correct? |
| 11:59 | 8 | MR. LEONARD: Objection to form; |
| 11:59 | 9 | objection, sidebar. |
| 11:59 | 10 | Q. (BY MR. BRUSTER) You may answer. |
| 11:59 | 11 | A. I believe that they do, yes. |
| 11:59 | 12 | Q. Including the CEO of HSBC North America |
| 11:59 | 13 | Holdings, Inc., correct? |
| 11:59 | 14 | A. Yes, I believe so. |
| 11:59 | 15 | Q. Including the CEO of the HSBC banking |
| 11:59 | 16 | subsidiary, correct? |
| 12:00 | 17 | A. Yes, I believe so. |
| 12:00 | 18 | Q. Okay. Despite the sharing of those two |
| 12:00 | 19 | high-level executives between these two companies, is it |
| 12:00 | 20 | still your testimony that the parent company doesn't |
| 12:00 | 21 | provide operational support to the bank? |
| 12:00 | 22 | A. Yes. |
| 12:00 | 23 | Q. Have you ever asked those two respective CEOs |
| 12:00 | 24 | whether they provide operational support to HSBC Bank? |
| 12:00 | 25 | A. No. |

Page 102

| | | |
|---|---|---|
| 12:00 | 1 | Q. Wouldn't that be important to know before you |
| 12:00 | 2 | come testify that there is no operational support |
| 12:00 | 3 | provided? |
| 12:00 | 4 | A. I'm comfortable with my answers. |
| 12:00 | 5 | Q. Even though these two CEOs serve on the boards |
| 12:00 | 6 | of both companies. |
| 12:00 | 7 | A. Yes. |
| 12:01 | 8 | MR. BRUSTER: Let's take our lunch break. |
| 12:01 | 9 | THE VIDEOGRAPHER: We're off the record. |
| 12:01 | 10 | (Recess taken 12:01 to 1:24) |
| 01:24 | 11 | THE VIDEOGRAPHER: We're back on the |
| 01:24 | 12 | record. |
| 01:25 | 13 | Q. (BY MR. BRUSTER) All right. Let's try again. |
| 01:25 | 14 | Ms. Hickman, are you ready to proceed? |
| 01:25 | 15 | A. Yes. |
| 01:25 | 16 | Q. Great. I forgot to ask you earlier this |
| 01:25 | 17 | morning, but do you hold any other positions with any |
| 01:25 | 18 | other HSBC-related companies other than the senior vice |
| 01:25 | 19 | president of insurance for HSBC North America Holdings, |
| 01:25 | 20 | Inc.? |
| 01:25 | 21 | A. No. |
| 01:25 | 22 | Q. Do you serve on any committees or boards or |
| 01:25 | 23 | anything else related to your work at HSBC? |
| 01:25 | 24 | A. No. |
| 01:25 | 25 | Q. No other internal associations or groups of |

Page 103

| | | |
|---|---|---|
| 01:25 | 1 | employees that you serve on? |
| 01:25 | 2 | A. Internal to the company? |
| 01:25 | 3 | Q. Yes, ma'am. |
| 01:25 | 4 | A. No. |
| 01:25 | 5 | Q. Okay. Do you serve on any boards of any other |
| 01:25 | 6 | companies? |
| 01:25 | 7 | A. No. |
| 01:25 | 8 | Q. External to HSBC? |
| 01:25 | 9 | A. No. |
| 01:26 | 10 | Q. Okay. |
| 01:26 | 11 | (Exhibit Number 7 marked.) |
| 01:26 | 12 | Q. (BY MR. BRUSTER) Let me show you a document |
| 01:26 | 13 | we're going to mark as Exhibit 7, which is HSBC North |
| 01:26 | 14 | America Holding, Inc.'s Objections, Assertions of |
| 01:26 | 15 | Privilege and Responses to DataTreasury Corporation's |
| 01:26 | 16 | First Set of Request for Production Regarding |
| 01:26 | 17 | Jurisdictional Discovery. Do you see that on your |
| 01:26 | 18 | screen? |
| 01:26 | 19 | A. Yes. |
| 01:26 | 20 | Q. Were you involved in the process of collecting |
| 01:26 | 21 | documents for this litigation? |
| 01:26 | 22 | A. No. |
| 01:26 | 23 | Q. Have you done anything insofar as collecting |
| 01:26 | 24 | and producing documents to your lawyers for this |
| 01:26 | 25 | litigation? |

Page 104

| | | |
|---|---|---|
| 01:26 | 1 | A. No. |
| 01:26 | 2 | Q. Do you know who has? |
| 01:26 | 3 | A. No. |
| 01:26 | 4 | Q. Let me ask you about some of the things that |
| 01:27 | 5 | are in here, although our discussion may be somewhat |
| 01:27 | 6 | limited since you've not been involved in that process. |
| 01:27 | 7 | There's a request here for request number |
| 01:27 | 8 | nine, Produce all documents evidencing any |
| 01:27 | 9 | communications between officers, directors or employees |
| 01:27 | 10 | of HSBC North America Holdings, Inc. on the one hand and |
| 01:27 | 11 | officers, directors or employees of HSBC Bank USA. Do |
| 01:27 | 12 | you see that? |
| 01:27 | 13 | A. I do. |
| 01:27 | 14 | Q. You have documents such as those, that are |
| 01:27 | 15 | referenced in request number nine, in your |
| 01:27 | 16 | possession at your office, don't you? |
| 01:27 | 17 | A. I don't. |
| 01:27 | 18 | Q. You don't? |
| 01:27 | 19 | A. No. |
| 01:27 | 20 | Q. Earlier this morning I thought we talked about |
| 01:27 | 21 | some folks that directly reported to you that were |
| 01:27 | 22 | executives of HSBC Bank USA. Is that correct? |
| 01:28 | 23 | A. I apologize. I understand. Yes, I do have |
| 01:28 | 24 | communication between my staff, yes. I'm sorry. |
| 01:28 | 25 | Q. You have communications between you on behalf |

Page 105

01:28 1 of HSBC North America Holdings, Inc. on the one hand and
01:28 2 people that work for HSBC Bank on the other, correct?
01:28 3 A. Yes, I do. I'm sorry, yes.
01:28 4 Q. Okay. And you've not produced any of those in
01:28 5 this litigation, have you?
01:28 6 A. No.
01:28 7 Q. And I guess I understand from your testimony
01:28 8 you've never been asked to do that?
01:28 9 A. That's correct.
01:28 10 Q. What e-mail application do you use?
01:28 11 A. Lotus Notes.
01:28 12 Q. Lotus Notes. Is that how you communicate for
01:28 13 the majority of your written communication with
01:28 14 employees of HSBC Bank USA?
01:28 15 A. Yes.
01:29 16 Q. How long have you used the Lotus Notes
01:29 17 application for e-mail?
01:29 18 A. It's been several years. I don't know
01:29 19 exactly.
01:29 20 Q. When you procure insurance to cover all the
01:29 21 HSBC facilities, do you negotiate with -- tell me the
01:29 22 process that you go through to do that.
01:29 23 A. Well, there's a data-gathering effort that
01:29 24 goes on, depending on the type of insurance that is to
01:29 25 be procured, and so we gather information from the

Page 106

01:29 1 various subsidiaries relative to whatever the risk is
01:29 2 we're looking to insure.
01:29 3 Then we assemble it into a format that we
01:29 4 can provide to the insurance brokers and the insurance
01:30 5 underwriters so that they can understand what it is that
01:30 6 we're trying to purchase from them.
01:30 7 Typically, after that, there would be
01:30 8 some meetings with underwriters. And following that, we
01:30 9 would expect to receive quotations for the premiums that
01:30 10 they would propose to charge us for the risk that we're
01:30 11 trying to transfer.
01:30 12 Q. And then you select among those quotations for
01:30 13 the policies that best suit your requirements.
01:30 14 A. That's correct.
01:30 15 Q. Okay. Do you -- are you typically the person
01:30 16 from HSBC North America Holdings, Inc. that's involved
01:30 17 in those meetings with insurers?
01:30 18 A. Yes.
01:30 19 Q. And do you receive that information that's
01:30 20 gathered by your subsidiaries, including the bank
01:30 21 subsidiary, for data gathering to determine what your
01:30 22 needs are?
01:30 23 A. Not personally.
01:30 24 Q. Who is?
01:30 25 A. People on my staff would gather it and

Page 107

01:30 1 assemble it.
01:30 2 Q. Okay. And then they provide that information
01:30 3 to you?
01:30 4 A. Yes.
01:32 5 Q. Number 23 says, Please produce all documents
01:32 6 related to all business activities ever attended or
01:32 7 conducted in the state of Texas by HSBC North America
01:32 8 Holdings, Inc. officers, directors or employees. Do you
01:32 9 see that?
01:32 10 A. I do.
01:32 11 Q. And you can see down here in response that
01:32 12 there was a number of objections to that, and then
01:32 13 finally a response that says, After conducting a
01:32 14 diligent search, HSBC North America Holdings has not
01:32 15 located any documents within its possession, custody or
01:32 16 control that are responsive to this request. Do you see
01:32 17 that?
01:32 18 A. I do.
01:32 19 Q. Do you know anything about that diligent
01:32 20 search?
01:32 21 A. No.
01:32 22 Q. You weren't involved in any way with that?
01:32 23 A. No.
01:32 24 Q. Do you know who was, by any chance?
01:32 25 A. No, I don't.

Page 108

01:33 1 (Exhibit Number 8 marked.)
01:33 2 Q. (BY MR. BRUSTER) Let me show you what we
01:33 3 marked -- what's marked as Exhibit 8 to your deposition,
01:33 4 which is a document entitled HSBC North America
01:33 5 Holdings, Inc.'s Objections, Assertions of Privilege and
01:33 6 Answers to Defendant DataTreasury Corporation's First
01:33 7 Set of Interrogatories Regarding Jurisdictional
01:33 8 Discovery. Do you see that?
01:33 9 A. I do.
01:33 10 Q. Have you ever seen this document before?
01:33 11 A. Yes, but wasn't it the same one we just looked
01:33 12 at? No.
01:33 13 Q. No, it wasn't, actually.
01:33 14 A. Okay. It's very similar.
01:33 15 Q. Very similar, I agree. This is actually
01:33 16 written answers to question where the other one was a
01:33 17 request for documents.
01:33 18 A. I see. Yes, I believe I have seen this.
01:33 19 Q. You have seen this one?
01:33 20 A. Yes.
01:33 21 Q. Did you provide any assistance in answering
01:34 22 the questions that are contained in this document?
01:34 23 A. No.
01:34 24 Q. Do you know who did?
01:34 25 A. No.

27 (Pages 105 to 108)

Page 109

01:34  1          MR. BRUSTER: Counsel, was there a
01:34  2  attestation to this that was provided?
01:34  3          MR. LEONARD: Well, there's supposed to
01:34  4  be. I don't honestly know.
01:34  5          MR. BRUSTER: I didn't see one. I
01:34  6  figured it might be the witness today since she did the
01:34  7  affidavit, but per her testimony here that she didn't
01:34  8  provide any assistance, I was wondering if you guys
01:34  9  could tell us who that was.
01:34  10         MR. LEONARD: Actually, I think -- quite
01:34  11  frankly, I intended for her to be the -- so I'm a little
01:34  12  bit surprised by this myself.
01:34  13         MR. BRUSTER: Okay.
01:34  14         MR. LEONARD: But I'll check on that and
01:34  15  get back to you.
01:34  16     Q.  (BY MR. BRUSTER) Before we look at this
01:34  17  document, though, your testimony here is that you didn't
01:34  18  assist in the answering of these questions, correct?
01:34  19     A.  Well, could we look at the question?
01:34  20     Q.  Sure. Yeah. Feel free to scroll through it.
01:34  21  You've got the mouse right there.
01:34  22     A.  Oh, okay. Maybe I'm confused. I don't know.
01:35  23         MR. LEONARD: Here is a hard copy if
01:35  24  that's easier for you.
01:35  25         THE WITNESS: Oh, okay.

Page 110

01:35  1     A.  (Reviewing document.) Well, I guess I did
01:35  2  testify that I did help with the answers to this and
01:35  3  perhaps it's just been a while. I don't remember.
01:35  4     Q.  (BY MR. BRUSTER) Okay. I just want to clear
01:35  5  this up now for the jury. A few minutes ago you said
01:35  6  that you did not assist in providing the answers to
01:35  7  these questions. And now do I understand your testimony
01:35  8  to be that you did assist in providing?
01:35  9     A.  Yes, that is my testimony, and I apologize for
01:35  10  misleading the jury.
01:35  11     Q.  Did you provide assistance in answering all of
01:36  12  these questions or just some of them?
01:36  13     A.  I -- I would have to look at them, but my
01:36  14  initial indication or my initial response would be some
01:36  15  of them.
01:36  16     Q.  If you could, flip through here and tell me
01:36  17  which ones that you provided assistance in answering,
01:36  18  please.
01:36  19         MR. LEONARD: Take your time. Go through
01:36  20  one at a time.
01:36  21     A.  (Reviewing document.) With regard to
01:36  22  interrogatory number two on my affidavit, I did work
01:36  23  with legal counsel on the affidavit.
01:37  24         MR. LEONARD: What was the Exhibit Number
01:37  25  on that?

Page 111

01:37  1          MR. BRUSTER: I think we're on eight.
01:37  2          MR. LEONARD: Thank you.
01:37  3     A.  (Reviewing document.) With regard to
01:37  4  interrogatory number eight, because of -- my job is
01:37  5  procuring insurance, I would -- I know that HSBC North
01:37  6  America Holdings, Inc. does not own, lease or have
01:37  7  interest in real estate in Texas. And I believe that
01:38  8  that would be all.
01:38  9     Q.  (BY MR. BRUSTER) So number two and number
01:38  10  eight were the only ones that you assisted in answering.
01:38  11     A.  Yes.
01:38  12     Q.  Let me ask you about some of the things in
01:38  13  this document. And again, you may not be able to help
01:38  14  me out if you -- those are the only two that you helped
01:38  15  on there.
01:39  16         For example, number four, all instances
01:39  17  in which HSBC North America Holdings, Inc. has defended
01:39  18  or assumed responsibility for a liability claim against
01:39  19  HSBC Bank USA or other banking subsidiary.
01:39  20     A.  Yes.
01:39  21     Q.  You didn't provide any input on that?
01:39  22     A.  Well, I mean, I would not have any independent
01:39  23  knowledge. The knowledge I would have on those kinds of
01:39  24  questions would be through the legal department, which
01:39  25  manages the litigation for HSBC Bank.

Page 112

01:39  1     Q.  When litigation is brought against HSBC Bank
01:39  2  that triggers insurance coverage, do you get involved?
01:39  3     A.  If it triggers insurance coverage, then my
01:39  4  department gets involved, yes.
01:39  5     Q.  And your department is a department in HSBC
01:39  6  North America Holdings, Inc., correct?
01:39  7     A.  Well, the claims people actually are in
01:39  8  Buffalo and are in the HSBC Bank USA operation.
01:40  9     Q.  Do those claims people report to you?
01:40  10    A.  Yes, they do.
01:40  11    Q.  But you didn't provide any input for that
01:40  12  answer, number four?
01:40  13    A.  No.
01:40  14    Q.  When a claim is filed that triggers an
01:40  15  insurance policy that you've procured on behalf of HSBC
01:40  16  North American Holdings, Inc., do you get a report that
01:40  17  that claim has been filed?
01:40  18    A.  With our insurance company, you mean?
01:40  19    Q.  Yes, ma'am.
01:40  20    A.  Yes, I will. Not a report, but I'm copied on
01:40  21  the transmittal letter, yes.
01:40  22    Q.  And do you also get notified or receive
01:40  23  notification of such a claim from the subsidiary?
01:40  24    A.  Yes.
01:40  25    Q.  In other words, do you have conversations,

## Page 113

01:40 1 communications with folks that work for the HSBC Bank
01:40 2 subsidiary about claims that have been filed that have
01:40 3 triggered insurance policies that you've procured?
01:40 4    A. It would be unusual. It could happen, but it
01:40 5 wouldn't be the normal course.
01:41 6    Q. Has it happened in the past?
01:41 7    A. Not for the bank subsidiary, no.
01:41 8    Q. For other subsidiaries has it?
01:41 9    A. For the finance company subsidiaries in the
01:41 10 past, yes.
01:41 11    Q. So your testimony to the jury is that never,
01:41 12 since you've served as the senior vice president of
01:41 13 insurance for HSBC North America Holdings, Inc., have
01:41 14 you ever had communication with someone in the bank
01:41 15 subsidiary about a claim that's been made that's
01:41 16 triggered an insurance policy. Is that your testimony?
01:41 17    A. Yes, it is. Well, other than my claims people
01:41 18 who work there, so I apologize if that's misleading.
01:41 19 But the people who work for me, I talk to them about the
01:41 20 claims that are triggering insurance policies.
01:41 21    Q. Okay. Well, that -- that's important.
01:41 22    A. Okay. I'm sorry. I didn't mean to mislead
01:41 23 you there.
01:41 24    Q. So you've communicated with people that work
01:41 25 for the banking subsidiary --

## Page 114

01:41 1    A. Yes.
01:42 2    Q. -- about claims that have been made against
01:42 3 the banking subsidiaries.
01:42 4    A. Yes.
01:42 5    Q. Correct?
01:42 6    A. Yes. I'm sorry. I didn't mean to mislead you
01:42 7 there.
01:42 8    Q. That's okay.
01:42 9         Can you verify for us that here, in
01:42 10 response to interrogatory number ten, that that's an
01:42 11 accurate listing of all the people that serve on the
01:42 12 board of directors of HSBC North America Holdings, Inc.?
01:42 13    A. Yes, I can, although -- yes -- no, that's
01:42 14 correct.
01:43 15    Q. You didn't provide any input to this -- to
01:43 16 answering this interrogatory, did you?
01:43 17    A. No. This is very available information. I
01:43 18 wouldn't have any --
01:43 19    Q. The last sentence there that says, HSBC North
01:43 20 America Holdings, Inc. further responds that, to its
01:43 21 knowledge, none of the board members -- none of the
01:43 22 board of directors have conducted business activities on
01:43 23 behalf of HNAH while physically in Texas. Do you see
01:43 24 that?
01:43 25    A. I do.

## Page 115

01:43 1    Q. Do you know who provided that information for
01:43 2 answering these interrogatories?
01:43 3    A. Not specifically, no.
01:43 4    Q. Generally, do you know?
01:43 5    A. I know that some of the research to answer
01:43 6 some of the questions was done through the legal
01:43 7 department, but I don't know who in the legal department
01:44 8 specifically.
01:44 9    Q. Do you know whether each of these members of
01:44 10 the board of directors was contacted and asked if they'd
01:44 11 conducted business on behalf of HSBC North America
01:44 12 Holdings, Inc. while in Texas?
01:44 13    A. I don't know if they were personally contacted
01:44 14 or how that was determined.
01:44 15    Q. The reason I'm wondering is because it says --
01:44 16 further responds that, to its knowledge, which seems to
01:44 17 be a limiting -- a limiting clause, to its knowledge
01:44 18 none of the board of directors have conducted business
01:44 19 while in Texas.
01:44 20    A. That's what it says.
01:44 21    Q. Do you understand that some members of the
01:44 22 board of directors might have conducted business while
01:44 23 in Texas?
01:44 24         MR. LEONARD: Objection: Form.
01:44 25    A. I have no knowledge that any of them conducted

## Page 116

01:44 1 business on behalf of HSBC North America Holdings in
01:44 2 Texas. I -- no, I don't know.
01:44 3    Q. (BY MR. BRUSTER) Do you have any knowledge as
01:44 4 to whether any of these individuals have ever been to
01:44 5 Texas?
01:44 6    A. No.
01:44 7    Q. None at all?
01:44 8    A. I don't know.
01:45 9    Q. Have you guys ever had any corporate meetings
01:45 10 or retreats or anything like that in Texas, to your
01:45 11 knowledge?
01:45 12    A. Not to my knowledge.
01:45 13    Q. You've never been advised of?
01:45 14    A. No.
01:45 15    Q. And you don't know who provided the
01:45 16 information within the legal department to answer that
01:45 17 interrogatory?
01:45 18    A. No, I don't.
01:45 19    Q. Interrogatory number 15 asks for officers,
01:46 20 directors, employees at HSBC North America Holdings,
01:46 21 Inc. that also serve as officers, directors or employees
01:46 22 of the bank subsidiary. Do you see that?
01:46 23    A. I do.
01:46 24    Q. And after some objections there's an answer
01:46 25 here with Salvatori H. -- how do you pronounce that?

01:46  1      A. Alfiero, I believe.

01:46  2      Q. Alfiero. And this is Janet Burak, whose

01:46  3  letter we've been reading earlier this deposition,

01:46  4  Mr. John McKenna, Ms. Teresa -- how do you pronounce

01:46  5  that?

01:46  6      A. I don't know.

01:46  7      Q. -- and Mr. George T. Wendler are officers both

01:46  8  of your company, HSBC North America Holdings, Inc., and

01:46  9  the banking subsidiary. Do you see that?

01:46  10     A. I do.

01:46  11     Q. Is that a true and accurate list of officers

01:46  12  and directors of -- that the company share?

01:47  13         MR. LEONARD: Counsel, I'm advised that

01:47  14  we supplemented that to add some additional names in the

01:47  15  last day or so. I don't know if you're aware of that.

01:47  16         MR. BRUSTER: Yeah, I am. I'm about to

01:47  17  pull it up.

01:47  18         MR. LEONARD: Okay.

01:47  19     A. I would've expected to see Mr. Geoghegan's

01:47  20  name there and Mr. Mehta.

01:47  21     Q. (BY MR. BRUSTER) Okay. This list right here

01:47  22  has some names that we haven't previously discussed of

01:47  23  people that share officer/director positions between the

01:47  24  two entities, right?

01:47  25         MR. LEONARD: Objection: Form.

01:47  1      A. Yes, there are names here we haven't discussed

01:47  2  before.

01:47  3      Q. (BY MR. BRUSTER) To your understanding,

01:47  4  though, is that list right there accurate?

01:47  5      A. Well, as supplemented.

01:47  6      Q. Okay. Let me show you the supplemented

01:47  7  version, which we'll mark as Exhibit 9 to your

01:47  8  deposition.

01:47  9         (Exhibit Number 9 marked.)

01:47  10     Q. (BY MR. BRUSTER) You'll see that it's the

01:48  11  same question, interrogatory 15, and then there's a

01:48  12  different list here, Mr. Alfiero, Mr. Goeghegan,

01:48  13  Mr. Mehta. Are -- those three individuals are directors

01:48  14  of both HSBC North America Holdings, Inc. and HSBC Bank

01:48  15  USA, correct?

01:48  16     A. Was it -- was the question either directors or

01:48  17  officers, or only directors?

01:48  18     Q. I'm just reading what's listed here in the

01:48  19  answer where it says they're directors of both.

01:48  20     A. Oh, I see.

01:48  21         MR. NICHOLAS: Counsel, we don't have

01:48  22  that Exhibit up.

01:48  23     A. I'm sorry. I was looking at the bottom where

01:48  24  it listed officers but, yes, that's what it says.

01:48  25     Q. (BY MR. BRUSTER) So those three individuals

01:48  1  are directors of both HSBC North America Holdings and

01:48  2  HSBC Bank USA, correct?

01:48  3      A. Yes.

01:49  4      Q. Is it still your testimony to the jury that

01:49  5  HSBC North America Holdings, Inc. doesn't control or

01:49  6  operate HSBC Bank USA despite the fact that three

01:49  7  members of the board of directors serve on both

01:49  8  entities?

01:49  9         MR. LEONARD: Objection: Form.

01:49  10     A. Again, as I've answered before, yes, that is

01:49  11  still my testimony.

01:49  12     Q. (BY MR. BRUSTER) And then we have a list here

01:49  13  that says --

01:49  14         MR. NICHOLAS: Excuse me, Counsel, but I

01:49  15  don't think -- Exhibit 9 is objections to the notice, is

01:49  16  what you've electronically marked.

01:49  17         MR. BRUSTER: On my screen Exhibit 9 is

01:49  18  the objections to -- supplemental objections to the

01:49  19  interrogatories. That's what's showing on her screen.

01:49  20  I'm not sure why that's happening on yours.

01:49  21         MR. NICHOLAS: Actually, we don't have

01:49  22  anything on our screen now.

01:49  23         MR. BRUSTER: This is the supplement you

01:49  24  were whispering about a minute ago over there. I think

01:49  25  you know of it, right?

01:50  1         MR. NICHOLAS: I'm just saying what

01:50  2  you've got marked as Number 9 isn't the supplement.

01:50  3         MR. BRUSTER: Hers is right, isn't it?

01:50  4  That's the only one I'm worried about.

01:50  5         MR. LEONARD: Well, we need to --

01:50  6         MR. BRUSTER: The one you were looking

01:50  7  at?

01:50  8         MR. LEONARD: We need to have all of them

01:50  9  so everybody's following along.

01:50  10        MR. KING: She's taking care of it right

01:50  11  now.

01:50  12        MR. LEONARD: Okay.

01:50  13        MR. KING: She's correcting the problem.

01:50  14        MR. BRUSTER: Are we on the same page?

01:50  15        MR. NICHOLAS: We don't have it yet.

01:50  16        (Off-the-record discussion between

01:50  17  Mr. Bruster and Miss Berry.)

01:51  18        MR. LEONARD: Actually, if you just have

01:51  19  a hard copy, in the interest of time, we'll follow along

01:51  20  with that.

01:51  21        MR. BRUSTER: Yeah. I mean, I don't have

01:51  22  one in front of me. You guys actually served that on us

01:51  23  two days ago, I think. You might have that one with

01:51  24  you.

01:51  25        MR. LEONARD: Do you have one?

Page 121

01:51 1    MR. NICHOLAS: No, I don't.

01:51 2    MR. LEONARD: I can just look over

01:51 3    Ms. Hickman's shoulder.

01:51 4    MR. BRUSTER: Okay. Perfect.

01:51 5    We're still on, right?

01:51 6    THE COURT REPORTER: Yes.

01:51 7    Q. (BY MR. BRUSTER) Then after the listing of

01:51 8    the three shared directors, we have Ms. Janet Burak,

01:51 9    Mr. John J. McKenna, Ms. Teresa Pesce, and Mr. George T.

01:52 10   Wendler are officers of HSBC North America Holdings,

01:52 11   Inc. and HSBC Bank USA; is that correct?

01:52 12   A. Yes.

01:52 13   Q. And is it still your testimony, despite those

01:52 14   four shared officers, in addition to the three shared

01:52 15   board of directors members, that HSBC North America

01:52 16   Holdings, Inc. doesn't operate or control HSBC Bank USA?

01:52 17   MR. LEONARD: Objection: Form.

01:52 18   A. Yes.

01:52 19   Q. (BY MR. BRUSTER) And then we have Ms. Sandra

01:52 20   Derickson, who you mentioned earlier, senior management

01:52 21   HSBC North America Holdings and HSBC Bank USA but is

01:52 22   only a director of HSBC Bank USA; is that correct?

01:52 23   A. Yes. And I think I said earlier that she was

01:52 24   a director of HSBC North America Holdings and so I'd

01:52 25   like that to be corrected on the record.

Page 122

01:52 1    Q. So is this document correct or your earlier

01:52 2    testimony correct?

01:52 3    A. This document would be correct.

01:53 4    Q. And how do you know that?

01:53 5    A. Because I -- this -- this just reminds me that

01:53 6    I made that mistake.

01:53 7    Q. Have you been mistaken about any of your other

01:53 8    testimony here today that we haven't already talked

01:53 9    about?

01:53 10   MR. LEONARD: Objection: Form.

01:53 11   A. When I made a mistake, I think I corrected it.

01:53 12   Q. (BY MR. BRUSTER) And Ms. Derickson is listed

01:53 13   as senior management of HSBC Bank. She's actually the

01:53 14   CEO, correct?

01:53 15   A. Yes.

01:53 16   Q. Let's go back to Exhibit 8. Interrogatory 17

01:53 17   asks --

01:53 18   MR. NICHOLAS: Can we have ours turned on

01:53 19   again?

01:53 20   MR. BRUSTER: I'm sorry?

01:53 21   MISS BERRY: Yes. Did it not come back

01:53 22   on?

01:54 23   MR. NICHOLAS: No. We have a black

01:54 24   screen.

01:54 25   MR. BRUSTER: Is it there?

Page 123

01:54 1    MR. NICHOLAS: I have what was marked as

01:55 2    Exhibit 9, which is the objections, but I don't have --

01:55 3    I can't ...

01:55 4    MR. LEONARD: Exhibit 8 is the

01:55 5    interrogatory answers?

01:55 6    MR. BRUSTER: Yeah.

01:55 7    MR. LEONARD: I've got it, Nick. Let's

01:55 8    just go. Let's go.

01:55 9    MR. BRUSTER: Participating counsel's got

01:55 10   it so we'll go.

01:55 11   Q. (BY MR. BRUSTER) Interrogatory 17 says to

01:55 12   list and describe in detail all instances where HSBC

01:55 13   North America Holdings, Inc. has made a representation

01:55 14   that it operates or controls any subsidiary company that

01:55 15   does business in Texas. Do you see that?

01:55 16   A. Yes.

01:55 17   Q. And then after a number of objections it says,

01:55 18   After reasonable inquiry, HNAH is unaware of any

01:55 19   specific representation concerning subsidiaries doing

01:55 20   business in Texas but acknowledges that certain indirect

01:55 21   operating subsidiaries do business in Texas.

01:55 22   Do you know anything about that

01:55 23   reasonable inquiry that's referenced there?

01:56 24   A. I was not involved in it.

01:56 25   Q. You didn't undertake to determine any

Page 124

01:56 1    instances where HSBC North America Holdings, Inc. has

01:56 2    made a representation that it operates or controls any

01:56 3    subsidiary doing business in Texas?

01:56 4    A. No.

01:56 5    Q. We've already looked at several examples of

01:56 6    that today, including Ms. Burak's letter, correct?

01:56 7    MR. LEONARD: Objection: Form.

01:56 8    A. Again, we disagree on the -- you need to speak

01:56 9    with Ms. Burak about the intent of her letter. It's not

01:56 10   for me to represent her intent.

01:56 11   Q. (BY MR. BRUSTER) Well, separate and apart

01:56 12   from whatever intent she may have meant when she printed

01:56 13   the words, that letter, by its words, has a

01:56 14   representation that HSBC North America Holdings, Inc.

01:56 15   operates a subsidiary that does business in Texas,

01:56 16   correct?

01:56 17   MR. LEONARD: Objection: Form.

01:56 18   A. The letter speaks for itself. I mean, we read

01:56 19   it earlier and it says what it says.

01:57 20   Q. (BY MR. BRUSTER) So is that a question?

01:57 21   MR. LEONARD: Objection: Form.

01:57 22   A. Again, her letter speaks for itself.

01:57 23   Q. (BY MR. BRUSTER) Okay. So regardless of its

01:57 24   intent it speaks for itself, right?

01:57 25   A. Yes.

Page 125

```
01:57   1    Q.  Interrogatory number 19 asks for all revenues
01:57   2  that have been provided to the parent company from HSBC
01:57   3  Bank USA including all revenues originating from
01:57   4  business activity in Texas, which goes back to something
01:57   5  we discussed earlier in the morning about dividend
01:57   6  payments that may stem from money earned or profits
01:57   7  earned out of Texas operations.  Do you recall that?
01:57   8    A.  I do.
01:57   9    Q.  And after some objections, the response to
01:57  10  this interrogatory is none.  Do you see that?
01:58  11    A.  I do.
01:58  12    Q.  Did you provide any input in answering that
01:58  13  question?
01:58  14    A.  No.
01:58  15       (Exhibit Number 10 marked.)
01:58  16    Q.  (BY MR. BRUSTER)  Let me mark, as Exhibit 10,
01:58  17  a document that was produced to us entitled Consolidated
01:58  18  Financial Statement For Bank Holding Companies, and in
01:58  19  here it says HSBC North America Holdings, Inc.  Do you
01:58  20  see that?
01:58  21    A.  I do.
01:58  22       MR. BRUSTER:  And for the record,
01:58  23  Counsel, that's Bates-stamped HNAH-JURIS-0012.
01:58  24    Q.  (BY MR. BRUSTER)  And I guess, as I understand
01:58  25  from your earlier testimony, you were not involved in
```

Page 126

```
01:58   1  gathering of documents that were produced?
01:58   2    A.  I represented to you what I was involved with
01:58   3  but --
01:59   4    Q.  Have you ever seen this document before?
01:59   5    A.  Yes.
01:59   6    Q.  When did you first see it?
01:59   7    A.  A few days ago.
01:59   8    Q.  Was it in that packet of materials that
01:59   9  arrived for your deposition preparation?
01:59  10    A.  Yes.
01:59  11    Q.  This is dated September 30th, 2006, and let me
01:59  12  go to the next page, which I think I'll probably just
01:59  13  mark as a separate Exhibit, Exhibit 11 --
01:59  14       (Exhibit Number 11 marked.)
01:59  15    Q.  (BY MR. BRUSTER)  -- which is the following
01:59  16  page of this document that's Consolidated Income
01:59  17  Statement Reported Income For Bank Holding Companies.
01:59  18  Do you see that?
01:59  19    A.  Yes.
01:59  20    Q.  Did you look at this in preparation for your
01:59  21  deposition?
01:59  22    A.  Not in any real detail.
01:59  23    Q.  Why not?
01:59  24    A.  Just didn't.
01:59  25    Q.  Where is -- can you point anywhere on this
```

Page 127

```
01:59   1  page where income or dividend income earned from the
02:00   2  HSBC Bank subsidiaries would be reflected?
02:00   3    A.  Well, I don't see anything under interest
02:00   4  income.
02:00   5    Q.  Can you scroll down with the mouse you have?
02:01   6    A.  (Reviewing document.)  What was your question
02:01   7  again?  I apologize, but --
02:01   8    Q.  Sure.  Can you see where any -- earlier we
02:01   9  talked about the fact that HSBC North America Holdings,
02:01  10  Inc. makes money by receiving dividends that are paid
02:01  11  from its subsidiaries.  Do you recall that?
02:01  12    A.  I do.
02:01  13    Q.  Can you show us where that type of dividend
02:01  14  payment is reflected?
02:01  15    A.  I don't see that anything that is described
02:01  16  that way.  But is this, you know, a document that the
02:01  17  government asks us to fill out, I think, or somebody?  I
02:01  18  don't see that it says anything about dividend income.
02:01  19    Q.  If you were going to look for dividend income
02:01  20  to find the answer to that question, what document would
02:02  21  you go look at?
02:02  22    A.  I wouldn't know what document to look at.
02:02  23    Q.  You wouldn't know what document to look at?
02:02  24    A.  No.
02:02  25    Q.  Can you tell us whether or not any of the
```

Page 128

```
02:02   1  money, that's broken out here on the right-hand side as
02:02   2  different portions of income earned by HSBC North
02:02   3  America Holdings, Inc., can you tell us whether any of
02:02   4  that is attributable to business activity in Texas?
02:02   5       MR. LEONARD:  Objection:  Form.
02:02   6    A.  I can't.
02:02   7    Q.  (BY MR. BRUSTER)  You don't know the answer to
02:02   8  that?
02:02   9    A.  No, I don't.
02:02  10    Q.  Let me show you page 14 that we're going to
02:02  11  mark as Exhibit 12 to your deposition.
02:02  12       (Exhibit Number 12 marked.)
02:03  13    Q.  (BY MR. BRUSTER)  And do you see this portion
02:03  14  number five here where it says, Number of full-time
02:03  15  equivalent employees at end of current period --
02:03  16    A.  Yes.
02:03  17    Q.  -- rounded to the nearest full number?
02:03  18    A.  Uh-huh (affirmative).
02:03  19    Q.  And what number is listed there?
02:03  20    A.  53,211.
02:03  21    Q.  And earlier this morning you testified that
02:03  22  HSBC Holdings North America -- excuse me -- HSBN North
02:03  23  America Holdings, Inc. has approximately 50 or fewer
02:03  24  employees.  Do you recall that?
02:03  25    A.  Yes.
```

02:03 1    Q. And here on this document, that we looked at

02:03 2    as being filed on behalf of HSBC North America Holdings,

02:03 3    Inc., it shows 53,211 full-time equivalent employees.

02:03 4    Do you see that?

02:03 5         MR. LEONARD: Objection: Form.

02:03 6    A. I see that number, yes.

02:03 7    Q. (BY MR. BRUSTER) And do you have an

02:03 8    understanding of the reconciliation between those two

02:03 9    numbers?

02:04 10   A. Well, it's not an understanding. My

02:04 11   assumption would be that this is a document that

02:04 12   consolidates the information from the operating

02:04 13   subsidiaries.

02:04 14   Q. Is there any document that you know of that

02:04 15   HSBC North America Holdings, Inc. has filed with the

02:04 16   government, or any other agency of the government, that

02:04 17   breaks out the difference between employees of your

02:04 18   company, the parent company, and employees of a banking

02:04 19   subsidiary?

02:04 20   A. I am not aware of anything like that, no.

02:04 21        (Ms. Shank enters the deposition room.)

02:04 22   Q. (BY MR. BRUSTER) From your perspective, is it

02:04 23   really that important to break out which legal entity

02:04 24   they work for anyway?

02:04 25        MR. LEONARD: Objection to form.

02:04 1    A. Yes.

02:04 2    Q. (BY MR. BRUSTER) But you're not aware of any

02:04 3    document that would show us that.

02:04 4    A. I don't -- no, I don't know of a document that

02:05 5    would do that for you.

02:05 6    Q. Here in category six lists non-interest items

02:05 7    of income that exceed 1 percent of the net income sum

02:05 8    that's listed above, and number 6(f) we've got credit

02:05 9    and charge card fees with an income associated with

02:05 10   those of $1,935,906. Do you see that?

02:05 11   A. I do.

02:05 12   Q. Okay. Do you know how much of that revenue

02:05 13   was generated out of Texas?

02:05 14   A. No.

02:05 15   Q. Does HSBC -- one of HSBC's banking

02:05 16   subsidiaries issue credit cards to cardholders that live

02:05 17   in Texas?

02:06 18   A. I don't have personal knowledge of that.

02:06 19   Q. You don't.

02:06 20   A. No.

02:06 21   Q. So you can't tell us whether that amount of

02:06 22   money right there reflects revenue earned in Texas or

02:06 23   not.

02:06 24   A. That's correct, I can't.

02:06 25   Q. I guess by that same token you wouldn't be

02:06 1    able to tell the jury whether or not HSBC North America

02:06 2    Holdings, Inc. has realized any dividend revenue as a

02:06 3    result of loans that have been made to people that live

02:06 4    in Texas, can you?

02:06 5    A. No.

02:06 6         MR. LEONARD: Objection: Form.

02:06 7    A. No, I can't.

02:06 8    Q. (BY MR. BRUSTER) And you can't tell the jury

02:06 9    whether or not HSBC North America Holdings, Inc. has

02:06 10   realized dividend revenue based on loans pertaining to

02:06 11   real estate that's located in Texas, can you?

02:06 12        MR. LEONARD: Objection: Form.

02:06 13   A. No, I can't.

02:07 14   Q. (BY MR. BRUSTER) Can you tell the jury

02:07 15   whether or not HSBC North America Holdings, Inc. has

02:07 16   realized dividend revenue based on mutual funds that

02:07 17   have been sold to Texas residents?

02:07 18        MR. LEONARD: Objection: Form.

02:07 19   A. No, I can't.

02:07 20   Q. (BY MR. BRUSTER) If you wanted to know the

02:07 21   answer to those questions, who would you ask?

02:07 22   A. I would go to the operating subsidiaries that

02:07 23   sell those products and ask them if they collect the

02:07 24   information on a state-by-state basis.

02:07 25   Q. You're really not the person with the most

02:07 1    knowledge of the compilation and creation of financial

02:07 2    statements for HSBC Holdings North America [sic] or its

02:08 3    subsidiaries, are you?

02:08 4    A. No.

02:08 5         (Exhibit Number 13 marked.)

02:08 6    Q. (BY MR. BRUSTER) I'm going to stamp, as

02:08 7    Exhibit Number 13, the original deposition notice to

02:08 8    take a 30(b)(6) deposition of HSBC North America

02:08 9    Holdings, Inc. I'm sure you'll recognize it from its

02:08 10   topic areas that are located here.

02:08 11        MR. LEONARD: Counsel, if you're changing

02:08 12   subjects, could we take a short break? You haven't been

02:08 13   going that long, but we've actually been in this room

02:08 14   for a little over an hour now.

02:08 15        MR. BRUSTER: Yeah. I'm actually going

02:08 16   to just stick on this subject for about two more

02:08 17   minutes.

02:08 18        MR. LEONARD: Okay.

02:08 19   Q. (BY MR. BRUSTER) And you've seen these topic

02:08 20   areas before, correct?

02:08 21   A. I have.

02:08 22   Q. In fact, I think you mentioned you were

02:08 23   reading them on the train on your way in this morning,

02:08 24   right?

02:08 25   A. Yes.

## Page 133

02:08 1    Q. You understand that you're here testifying

02:08 2    today as a person presented by HSBC North America

02:09 3    Holdings, Inc. on these topics to give binding testimony

02:09 4    to the company?

02:09 5    A. I do.

02:09 6    Q. As a person with the most knowledge of these

02:09 7    topics?

02:09 8    A. I know I'm here to represent HSBC North

02:09 9    America Holdings, Inc., yes.

02:09 10    Q. Now, about a minute ago I asked you whether or

02:09 11    not you were really the person with the most knowledge

02:09 12    about the compilation or creation of the financial

02:09 13    statements for your company or the subsidiaries and you

02:09 14    said you weren't, correct?

02:09 15    A. Correct.

02:09 16    Q. And I'm sure you noticed, when you read this

02:09 17    deposition notice, that topic number 18 is the

02:09 18    compilation and creation of financial statements and tax

02:09 19    returns for Defendant and any or all subsidiaries of

02:09 20    Defendant, right?

02:09 21    A. I did see that, yes.

02:09 22    Q. Okay. You've just testified that you're not

02:09 23    that person and you don't know who that person would be,

02:09 24    you would -- you would go ask all of the heads of

02:09 25    various subsidiaries to get that information; is that

## Page 134

02:09 1    correct?

02:10 2    A. Yes.

02:10 3    Q. Are there any other topics contained in this

02:10 4    topic list that you don't feel like you're competent or

02:10 5    qualified to testify on here today?

02:10 6    MR. LEONARD: Objection: Form.

02:10 7    Q. (BY MR. BRUSTER) You may answer. And feel

02:10 8    free to use your mouse and scroll through it if you

02:10 9    could tell us any others, like Exhibit -- like topic

02:10 10    number 18.

02:10 11    MR. LEONARD: Same objection.

02:10 12    A. (Reviewing document.) Could you rephrase your

02:11 13    question to me, please?

02:11 14    Q. (BY MR. BRUSTER) Sure. My understanding of

02:11 15    your testimony was that, at least as to topic number 18,

02:11 16    you didn't feel qualify to testify on. Is that correct?

02:11 17    MR. LEONARD: Objection to form.

02:11 18    A. I stated that I would not be the person with

02:11 19    the most knowledge to testify on that topic, yes.

02:11 20    Q. (BY MR. BRUSTER) Then tell me what other

02:11 21    topics in this topic list you feel you're not the person

02:11 22    with the most knowledge able to testify to.

02:11 23    A. Topic number four, I would not have personal

02:11 24    knowledge, although it was -- this question was

02:11 25    researched and I was informed of the answer.

## Page 135

02:13 1    Question number 15, identify all

02:13 2    employees, directors and officers of Defendant. I don't

02:13 3    have that information. It would be provided to me.

02:13 4    And question number 22, I was provided

02:13 5    the answer to that question.

02:14 6    Q. That's it.

02:14 7    A. I think with respect to the other questions

02:14 8    that I am able to answer them on behalf of HSBC North

02:14 9    America Holdings, Inc.

02:14 10    Q. Okay. So every topic other than 4, 15, 18 and

02:14 11    22 you feel comfortable answering with your personal

02:14 12    knowledge as the person with the most knowledge on

02:14 13    behalf of HSBC North America Holdings, Inc.

02:14 14    MR. LEONARD: Objection to form.

02:14 15    Q. (BY MR. BRUSTER) Is that correct?

02:14 16    A. I feel comfortable answering the questions on

02:14 17    the behalf of HSBC North America Holdings, Inc., having

02:14 18    been provided information relative to the question. I

02:14 19    do not have personal knowledge about every other topic

02:14 20    on this deposition list.

02:14 21    Q. We'll explore that.

02:14 22    MR. BRUSTER: We can take our break now.

02:14 23    THE VIDEOGRAPHER: We're off the record.

02:14 24    (Recess taken 2:14 to 2:32)

02:32 25    THE VIDEOGRAPHER: We're back on the

## Page 136

02:32 1    record.

02:32 2    Q. (BY MR. BRUSTER) All right, Ms. Hickman,

02:32 3    we're back after a short break. Are you ready to go?

02:32 4    A. Yes.

02:32 5    Q. We left off talking about your knowledge of

02:32 6    the topics that are here on the 30(b)(6) notice, and I

02:32 7    specifically want to ask you about topic number six, All

02:33 8    processes by which Defendant and any of its subsidiaries

02:33 9    transmit images of checks and other documents from all

02:33 10    points of image capture to other locations that traverse

02:33 11    the state of Texas at any time. Do you see that?

02:33 12    A. I do.

02:33 13    Q. Tell me what your knowledge is on that topic.

02:33 14    A. Well, actually, my knowledge is that HSBC

02:33 15    North America Holdings, Inc. does not do any

02:33 16    transmission of images or documents to other locations

02:33 17    in the state of Texas, which I learned through inquiry

02:33 18    in the organization. I have to -- the subsidiary part I

02:33 19    have -- I am not knowledgeable about. I don't know how

02:33 20    that happens.

02:33 21    Q. So you're not the person to ask about that

02:34 22    with respect to the subsidiaries as listed there in

02:34 23    topic six?

02:34 24    MR. LEONARD: For the record, Counsel,

02:34 25    she's not being produced on the issue and I think we

## Page 137

02:34  1   objected to producing anyone on that issue.

02:34  2       MR. BRUSTER: I think you guys objected

02:34  3   to every topic, didn't you?

02:34  4       MR. LEONARD: I don't know. And the

02:34  5   answer is, no, we didn't.

02:34  6       MR. BRUSTER: You didn't lodge objections

02:34  7   to every topic?

02:34  8       MR. LEONARD: No, we didn't.

02:34  9       MR. BRUSTER: Okay. I thought there was

02:34  10  objections at the outset that were applicable to every

02:34  11  single topic.

02:34  12      MR. LEONARD: General objections, but

02:34  13  with regard to the specific inquires, we didn't lodge

02:34  14  with one with respect to each category.

02:34  15      Q.  (BY MR. BRUSTER) Am I understanding that

02:35  16  you're -- you're not the person to ask about the

02:35  17  subsidiaries as it relates to topic number six? Is that

02:35  18  your testimony?

02:35  19      A.  Yes.

02:35  20      Q.  Okay. Is the same true for topic number four?

02:35  21      A.  Yes.

02:35  22      Q.  You said you made an inquiry and determined

02:35  23  that you -- and when I say you I mean HSBC North America

02:35  24  Holdings, Inc. -- did not transmit any images of

02:35  25  documents. You made an inquiry and determined that; is

## Page 138

02:35  1   that right?

02:35  2       A.  I made an inquiry into the processes or the --

02:35  3   what HSBC North America Holdings does and this is not

02:35  4   something that, as a holding company, we do.

02:35  5       Q.  Who did you ask?

02:35  6       A.  I consulted with the legal department on this.

02:35  7       Q.  The legal department?

02:35  8       A.  Yes.

02:35  9       Q.  Was there anyone, other than people in the

02:35  10  legal department, and other than your lawyers here, that

02:35  11  you consulted with in order to prepare for your

02:35  12  deposition?

02:35  13      A.  No, there's really not.

02:36  14      Q.  Not personally. Did you have other people

02:36  15  consult others for you and report to you?

02:36  16      A.  Yes.

02:36  17      Q.  Okay. Who did you have do that?

02:36  18      A.  I went through the topics and asked the legal

02:36  19  department to obtain information for me relative to the

02:36  20  topics, which I was not prepared to discuss, and they

02:36  21  provided the answers that I needed to come here today to

02:36  22  testify on behalf of HSBC North America Holdings.

02:36  23      Q.  Who, at the legal department, did you consult

02:36  24  with?

02:36  25      A.  My primary contact is Allison Shank.

## Page 139

02:36  1       Q.  Allison Chang?

02:36  2       A.  Shank.

02:36  3       Q.  Shank. Anyone else at the legal department

02:36  4   you contacted to get these answers?

02:36  5       A.  No.

02:36  6       Q.  No?

02:36  7       A.  No.

02:36  8       Q.  You said your primary contact. Was there

02:36  9   anyone else that you spoke with?

02:37  10      A.  Her paralegal just told me that the documents

02:37  11  would be forthcoming, but I didn't ask her questions.

02:37  12      Q.  Did she give you documents?

02:37  13      A.  As I testified earlier, documents were given

02:37  14  to my secretary. I don't know who brought them down.

02:37  15      Q.  Is Ms. Shank in the legal department of HSBC

02:37  16  Holdings North America, Inc. -- or excuse me -- HSBC

02:37  17  North America Holdings, Inc.?

02:37  18      A.  I'm not sure how the legal department is

02:37  19  organized from that standpoint. I know that she works

02:37  20  on technology contracts.

02:37  21      Q.  She works where?

02:37  22      A.  On technology contracts for the company.

02:37  23      Q.  Where's her office?

02:37  24      A.  In Prospect Heights.

02:37  25      Q.  Which is the headquarter office of HSBC North

## Page 140

02:37  1   America Holdings, Inc., correct?

02:37  2       A.  It is.

02:37  3       Q.  But you don't know who she works for?

02:37  4       A.  I don't know how the legal department is

02:37  5   organized in terms of business units or how they divide

02:38  6   the work up.

02:38  7       Q.  Let's talk about number nine, all agreements

02:38  8   entered into between Defendant and its subsidiaries or

02:38  9   affiliates authorizing the subsidiaries or affiliates

02:38  10  to -- who want to conduct business under the name of the

02:38  11  defendant. You're the person with the most knowledge of

02:38  12  that topic to testify here today?

02:38  13      A.  No.

02:38  14      Q.  Oh, you're not?

02:38  15      A.  No.

02:38  16      Q.  I didn't get that from our list earlier. I

02:38  17  only had 4, 15, 18 and 22. Is this to be added to the

02:38  18  list of things that you're not the person the most

02:38  19  qualified to talk about?

02:38  20      A.  I have been and have asked the questions

02:39  21  necessary to answer the question -- to answer your

02:39  22  questions for HSBC North America Holdings, Inc., but

02:39  23  from a personal standpoint, having independent knowledge

02:39  24  of all these topics, no, I am not --

02:39  25      Q.  Tell me -- okay.

## Page 141

02:39  1    A. -- knowledgeable.

02:39  2    Q. I'm with you. Let's just do the best we can.

02:39  3    Tell me what you know about topic 9(a).

02:39  4        MR. LEONARD: Objection to form.

02:39  5    Q. (BY MR. BRUSTER) You may answer.

02:39  6    A. What I know about 9 is that HSBC North America

02:39  7    Holdings, Inc. has not entered into agreements as

02:39  8    described in A through E.

02:39  9    Q. So there's no agreements that have been

02:39  10   entered into between HSBC North America Holdings, Inc.

02:39  11   and its subsidiaries authorizing the subsidiaries to do

02:39  12   anything listed in A through E. That's your testimony.

02:40  13   A. I'm not aware of any.

02:40  14   Q. Earlier we looked at a website page that had a

02:40  15   copyright logo from HSBC North America, Inc. Do you

02:40  16   recall that?

02:40  17   A. I do.

02:40  18   Q. Which, under (b), use trademarks, patents or

02:40  19   copyrights held by the Defendant. Do you see that?

02:40  20   A. HSBC North America, Inc. is not the same as

02:40  21   HSBC North America Holdings, Inc.

02:40  22   Q. Does HSBC North America Holdings, Inc. own any

02:40  23   trademarks, patents or copyrights?

02:40  24   A. No, I don't believe they do.

02:40  25   Q. It doesn't.

## Page 142

02:40  1    A. No.

02:40  2    Q. Has it applied for any trademarks or patents

02:40  3    or copyrights?

02:40  4    A. Not to my knowledge.

02:40  5    Q. Did you ask someone about that?

02:40  6    A. Did I ask someone if we had applied for them?

02:40  7    No, I did not.

02:41  8    Q. Do you know who Scott James Hardle (phonetic)

02:41  9    is?

02:41  10   A. No.

02:41  11   Q. Do you know whether HSBC North America

02:41  12   Holdings, Inc. is the assignee of any patents?

02:41  13   A. No, I don't know.

02:41  14   Q. Is it your testimony to the jury that HSBC

02:41  15   North America Holdings, Inc. has never licensed any

02:41  16   patents, trademarks or copyrights to any of its

02:41  17   subsidiaries?

02:41  18   A. That is my understanding.

02:42  19   Q. Is there a human resources executive that

02:42  20   works for HSBC North America Holdings, Inc.?

02:42  21   A. Yes, I believe there is.

02:42  22   Q. Does that office provide any downstream

02:42  23   support in the human resources area in the same way that

02:42  24   you do in the insurance area?

02:42  25       MR. LEONARD: Objection: Form.

## Page 143

02:42  1    A. Not in the same way, no.

02:42  2    Q. (BY MR. BRUSTER) Does the human resources

02:42  3    office of HSBC North America Holdings, Inc. provide any

02:43  4    benefit or any service to any HSBC subsidiary?

02:43  5        MR. LEONARD: Objection: Form.

02:43  6    A. I am -- I am not sure that the human resources

02:43  7    areas that provide the benefits are part of HSBC North

02:43  8    America Holdings, Inc. I can't answer that. I don't

02:43  9    know.

02:43  10   Q. (BY MR. BRUSTER) So you're on topic 17 where

02:43  11   we have the structure and relationship of common

02:43  12   business departments between Defendant and any and all

02:43  13   subsidiaries including but not limited to human

02:43  14   resources. You don't have an understanding as to

02:43  15   whether or not the parent company's human resources

02:43  16   department provides benefit or service to the

02:43  17   subsidiaries?

02:43  18       MR. LEONARD: Objection: Form.

02:44  19   A. That -- that wasn't exactly the question you

02:44  20   asked earlier. You asked if they did it the same way

02:44  21   that the insurance department does it, and my answer to

02:44  22   that is no. There is an executive.

02:44  23   Q. (BY MR. BRUSTER) What is that person's name?

02:44  24   A. Steve Gonabi is the head of human resources

02:44  25   for HSBC North America Holdings, Inc., but I'm not

## Page 144

02:44  1    certain that -- in fact, I don't believe that the people

02:44  2    that report to him are officers of HSBC North America

02:44  3    Holdings, Inc.

02:44  4    Q. You don't believe that the people that report

02:44  5    to him are employees of HSBC North America Holdings,

02:44  6    Inc.?

02:44  7    A. That's correct, I don't believe that they are.

02:44  8    Q. Which would mean the people that are reporting

02:44  9    to him are people that work for the subsidiaries?

02:45  10   A. I think technically, yes.

02:45  11   Q. So does the human resources department of HSBC

02:45  12   North America Holdings, Inc. work with the subsidiaries,

02:45  13   including HSBC Bank?

02:45  14   A. Well, each subsidiary has its own human

02:45  15   resources department and so services -- so they are

02:45  16   responsible for the day-to-day human resources function

02:45  17   of their subsidiaries.

02:45  18       There are a few people in Prospect

02:45  19   Heights in the human resources area, but I'm not sure --

02:45  20   I don't believe that they are officers or employees of

02:45  21   HSBC North America Holdings, Inc.

02:45  22   Q. They work for the subsidiaries.

02:45  23   A. Well, not directly, because they're also

02:45  24   not -- for instance, there would be people that were --

02:45  25   work for HBIO, also in HSBC Finance Corporation, Inc.,

## Page 145

02:46  1  in terms of, you know, their official title or -- if
02:46  2  that's what you're asking me.
02:46  3      Q.  I guess what I'm asking is, does the human
02:46  4  resources department of HSBC North America Holdings,
02:46  5  Inc. work with the subsidiaries, including HSBC Bank?
02:46  6      A.  Well, and as I testified, there -- to my
02:46  7  knowledge, there's only one person who is technically an
02:46  8  employee of HSBC North America Holdings, Inc. and so I
02:46  9  am sure he has conversations with subsidiaries and, you
02:46  10  know, I don't know his day-to-day job duties.
02:46  11     Q.  In the same way, you're the only person in the
02:46  12  insurance department of HSBC North America Holdings,
02:46  13  Inc., correct?
02:46  14     A.  That's correct.
02:46  15     Q.  But you have people from the subsidiaries,
02:47  16  including HSBC, reporting to you, right?
02:47  17     A.  I do.
02:47  18     Q.  Have you ever read any of the patents that are
02:47  19  involved in this litigation?
02:47  20     A.  No.
02:47  21     Q.  Never read them?
02:47  22     A.  No.
02:47  23     Q.  Have you ever skimmed over them?
02:47  24     A.  No.
02:47  25     Q.  Have you ever seen any of the patents that are

## Page 146

02:47  1  involved in this litigation?
02:47  2      A.  No.
02:47  3      Q.  Do you know what it takes to infringe any of
02:47  4  the patents involved in this litigation?
02:47  5      A.  No.
02:47  6          (Exhibit Number 14 marked.)
02:47  7      Q.  (BY MR. BRUSTER)  I'm going to show you what
02:48  8  we've marked as Exhibit 14 to your deposition, which I'm
02:48  9  sure you'll recognize as an affidavit that you signed in
02:48  10  support of HSBC North America Holdings, Inc.'s Motion to
02:48  11  Dismiss for Lack of Personal Jurisdiction.  Is that
02:48  12  correct?
02:48  13     A.  Yes.
02:48  14     Q.  Okay.  And I'll show you that's a three-page
02:48  15  document.  Is that your signature there on the last
02:48  16  page?
02:48  17     A.  It is.
02:48  18     Q.  And that's sworn and signed under oath by a
02:48  19  Notary, correct?
02:48  20     A.  Yes.
02:48  21     Q.  Okay.  Let me ask you about, for example,
02:48  22  topic 17 here.  HSBC North America Holdings, Inc. has
02:48  23  not authorized, participated in, or facilitated any
02:48  24  transactions occurring in whole or in part within the
02:48  25  state of Texas that infringe in whole or in part upon

## Page 147

02:48  1  the '988, '137, '007 or '868 patents.  Did I read that
02:49  2  correctly?
02:49  3      A.  Yes.
02:49  4      Q.  About a minute ago you told the jury that you
02:49  5  have never read any of those patents and you don't know
02:49  6  what it takes to infringe those, right?
02:49  7      A.  That's correct.
02:49  8      Q.  Do you really feel comfortable giving sworn
02:49  9  testimony that HSBC North America Holdings, Inc. doesn't
02:49  10  do anything to infringe those patents if you don't even
02:49  11  know what it takes to infringe them?
02:49  12     A.  Yes.
02:49  13     Q.  You -- for example, we know that HSBC North
02:49  14  America Holdings, Inc. engages in activity, right?
02:49  15     A.  Yes.
02:49  16     Q.  I mean, you work for that company, correct?
02:49  17     A.  Yes.
02:49  18     Q.  And you're swearing and affirming that your
02:49  19  company doesn't engage in any infringing activities
02:49  20  without knowing what it takes to infringe the patent.
02:49  21  Does that make sense to you?
02:49  22     A.  Yes.
02:50  23     Q.  We know that HSBC North America Holdings, Inc.
02:50  24  has engaged in some activity in the state of Texas,
02:50  25  correct?

## Page 148

02:50  1          MR. LEONARD:  Objection to form.
02:50  2      A.  I don't think we've established that, no.
02:50  3      Q.  (BY MR. BRUSTER)  Okay.  Is that a true
02:50  4  statement, or not?  Has HSBC ever engaged -- let me ask
02:50  5  you this question.  Has HSBC ever engaged in any
02:50  6  activity -- back up.  Be precise.
02:50  7          Has HSBC North America Holdings, Inc.
02:50  8  ever engaged in any activity in the state of Texas?
02:50  9          MR. LEONARD:  Objection to form.
02:50  10     A.  The only activity I'm aware of -- and I would
02:50  11  not constitute it as a business activity -- is a
02:50  12  charitable contribution.
02:50  13     Q.  (BY MR. BRUSTER)  Within the state of Texas.
02:50  14     A.  Yes.
02:50  15     Q.  Was that transaction done purposely by HSBC
02:51  16  North America Holdings, Inc.?
02:51  17     A.  To the best of my knowledge, yes.
02:51  18     Q.  Yes?
02:51  19     A.  Yes, I assume.  I don't -- I'm not aware of
02:51  20  why it wouldn't be, yes.
02:51  21     Q.  I mean, that was a purposeful act done by HSBC
02:51  22  North America Holdings, Inc. in the state of Texas,
02:51  23  right?
02:51  24     A.  To make the charitable contribution, yes.
02:51  25     Q.  Okay.  Let me show you statement number nine

## Page 149

02:51  1    that you made in your affidavit that says, HSBC North
02:51  2    America Holdings, Inc. has not purposely done any act or
02:51  3    consummated any transaction within the state of Texas.
02:51  4    Do you read that?
02:51  5        A.  I do.
02:51  6        Q.  Okay.  This is a sworn document that you
02:51  7    signed off on last year and you've just, 30 seconds ago,
02:51  8    given sworn testimony to this judge and jury that HSBC
02:51  9    North America Holdings, Inc. has purposely done an act
02:51  10   within the state of Texas; isn't that true?
02:51  11       A.  That is true.
02:51  12       Q.  Are we to believe your previous testimony
02:52  13   under oath or this testimony under oath?
02:52  14           MR. LEONARD:  Objection to form.
02:52  15       A.  I was not aware of the charitable contribution
02:52  16   when I signed this document in May of 2006.
02:52  17       Q.  (BY MR. BRUSTER)  How did you find out about
02:52  18   it?
02:52  19       A.  I learned about it through counsel.
02:52  20       Q.  I guess with a similar vein, you're not aware
02:52  21   the broad range of any other potential activities that
02:52  22   HSBC North America Holdings, Inc. might have done within
02:52  23   the state of Texas, are you?
02:52  24           MR. LEONARD:  Objection:  Form.
02:52  25       A.  When I inquired about the activities in

## Page 150

02:52  1    preparation for the deposition, that was the only
02:52  2    activity I was informed of.
02:52  3        Q.  (BY MR. BRUSTER)  Are there any other portions
02:52  4    of your sworn testimony, either today or in your sworn
02:52  5    testimony from this affidavit last year, that you
02:52  6    believe is improper or incorrect?
02:52  7            MR. LEONARD:  Objection:  Form.
02:52  8        A.  On number 18.
02:53  9        Q.  (BY MR. BRUSTER)  So number 18 is incorrect?
02:53  10       A.  No, it's correct, except that it should be
02:53  11   singular instead of plural.  HSBC North America
02:53  12   Holdings, Inc. only has one wholly owned subsidiary.
02:53  13       Q.  How come you didn't inquire about whether HSBC
02:53  14   North America Holdings, Inc. has purposely done any act
02:53  15   in the state of Texas before you gave this sworn
02:53  16   affidavit?
02:53  17           MR. LEONARD:  Objection to form.
02:53  18       A.  That was not my testimony.  My testimony was
02:53  19   that in May I was not aware of that contribution.  I
02:53  20   became aware of it after I signed this document.
02:53  21       Q.  (BY MR. BRUSTER)  Did you inquire as to
02:53  22   anybody within the HSBC organization about whether or
02:53  23   not HSBC had done any act within the state of Texas
02:53  24   before you signed this affidavit?
02:53  25       A.  I worked with the legal department on this --

## Page 151

02:53  1    on the answers in this affidavit.
02:53  2        Q.  The same legal department whose lawyer wrote
02:54  3    the letter to the government about HSBC North America
02:54  4    Holdings, Inc. operating various subsidiaries?
02:54  5            MR. LEONARD:  Objection:  Form.
02:54  6        A.  Different lawyers.
02:54  7        Q.  (BY MR. BRUSTER)  Different lawyers in the
02:54  8    same legal department.
02:54  9            So knowing what we know, that HSBC North
02:54  10   America Holdings, Inc. has, in fact, purposely done an
02:54  11   act within the state of Texas, and knowing that you've
02:54  12   never read the patents and you don't know what it takes
02:54  13   to infringe them, do you still feel comfortable with
02:54  14   your statement here in paragraph 12, HSBC North America
02:54  15   Holdings, Inc. is not currently engaging in any
02:54  16   infringing activities within the state of Texas?
02:54  17       A.  Yes, I do.
02:54  18       Q.  Okay.  That's a statement that you made
02:54  19   without knowing what it takes to engage in infringing
02:54  20   activity; isn't that true?
02:55  21       A.  I -- my willingness to sign that was knowing
02:55  22   that HSBC North America Holdings, Inc. is not involved
02:55  23   in any operations or businesses in the state of Texas on
02:55  24   a direct basis.
02:55  25       Q.  Of course, I guess that depends on your

## Page 152

02:55  1    definition of operate, right?
02:55  2        A.  When I signed this.
02:55  3            MR. LEONARD:  Objection:  Form.
02:55  4        Q.  (BY MR. BRUSTER)  I'm sorry?
02:55  5        A.  I said that was my definition when I signed
02:55  6    it.
02:55  7        Q.  All right.  Did you ask the legal department
02:55  8    to use your definition of operation or operate, as
02:55  9    opposed to their definition of operate, when you wrote
02:55  10   this affidavit?
02:55  11           MR. LEONARD:  Objection:  Form.
02:55  12       A.  I don't believe that we had that discussion.
02:55  13       Q.  (BY MR. BRUSTER)  Did you write this
02:55  14   affidavit, by the way?
02:55  15       A.  No.
02:55  16       Q.  Who wrote it?
02:55  17       A.  I don't know.
02:55  18       Q.  You don't know who wrote it?
02:55  19       A.  No.
02:55  20       Q.  Did you write the part here on the first page
02:55  21   that says, I'm dually qualified and authorized to make
02:55  22   this affidavit in all respects from my own personal
02:55  23   knowledge, right here?
02:56  24       A.  Well, I didn't write any of it, but I have --
02:56  25   I did work on it with the legal department.

## Page 153

02:56  1    Q.  Who in the legal department did you work on it
02:56  2  with?
02:56  3    A.  Primarily with Allison Shank.
02:56  4    Q.  Anybody else?
02:56  5    A.  I don't know who she worked with or if there
02:56  6  was anyone else, but that's who I worked with.
02:56  7    Q.  And you didn't write any of this affidavit.
02:56  8  You just signed your name to it.
02:56  9    A.  I didn't just sign my name on it.  I did
02:56  10  review it and I did satisfy myself that the statements
02:56  11  being made were correct as to -- based on the
02:56  12  information I had at the time.
02:56  13    Q.  In other words, you adopted all the wording in
02:56  14  the affidavit.
02:56  15        MR. LEONARD:  Objection to form.
02:57  16    A.  Was that a question?
02:57  17    Q.  (BY MR. BRUSTER)  Is that true?
02:57  18        MR. LEONARD:  Same objection.
02:57  19    A.  Again, I didn't write it.
02:57  20    Q.  (BY MR. BRUSTER)  What else did you do to
02:57  21  prepare for your deposition today besides reading
02:57  22  through the deposition notice on the train this morning?
02:57  23    A.  I reviewed certain documents.  I had
02:57  24  discussions with counsel.
02:57  25    Q.  Don't tell me anything you talked about with

## Page 154

02:57  1  your lawyers.  When was the first time you met with your
02:57  2  counsel seated here today about this deposition?
02:57  3    A.  I don't know exactly when that was.
02:57  4    Q.  Within the last three weeks?
02:57  5    A.  Somewhere within three to six weeks, I would
02:57  6  say.
02:57  7    Q.  Where did you first meet with them?  Over the
02:57  8  telephone or here in Illinois?
02:57  9    A.  We met in person in Prospect Heights.
02:57  10    Q.  In person in Prospect Heights.
02:58  11    A.  Yes.
02:58  12    Q.  Okay.  Was that at the corporate headquarters
02:58  13  of HSBC North America Holdings, Inc., or some other
02:58  14  place in Prospect Heights?
02:58  15    A.  No.  It was at the headquarters.
02:58  16    Q.  And who all attended that meeting?
02:58  17    A.  I was there, Mr. Leonard was there, Nick was
02:58  18  there, and Ms. Shank.
02:58  19    Q.  Anyone else?
02:58  20    A.  I don't believe so.
02:58  21    Q.  How -- how long was that meeting?
02:58  22    A.  A few hours.
02:58  23    Q.  What's the next thing you did to get ready for
02:58  24  your deposition today?
02:58  25    A.  Reviewed documents.

## Page 155

02:58  1    Q.  When did you start doing that?
02:58  2    A.  I started immediately after that first
02:58  3  meeting, reviewing some of the documents, and reviewed
02:58  4  them prior to coming here today.
02:58  5    Q.  How many hours do you think total you've spent
02:58  6  reviewing documents in preparation for the deposition?
02:59  7    A.  Probably ten.
02:59  8    Q.  Did you have a meeting with counsel for HSBC
02:59  9  this week in preparation for your deposition?
02:59  10    A.  I met with -- yes.
02:59  11    Q.  I'm sorry?
02:59  12    A.  Yes, I did.
02:59  13    Q.  When was that?
02:59  14    A.  We met yesterday.
02:59  15    Q.  Where did you meet yesterday?
02:59  16    A.  We met at the career development center in
02:59  17  Prospect Heights.
02:59  18    Q.  And how long was that meeting?
02:59  19    A.  I don't recall exactly, but a few hours.
02:59  20    Q.  Have you had any other meetings with anyone
02:59  21  else in preparation for your deposition other than those
02:59  22  meetings?
02:59  23    A.  No.
02:59  24    Q.  Is the career development center something
02:59  25  inside the corporate headquarter building, or is that

## Page 156

02:59  1  somewhere else?
02:59  2    A.  No.  It's a separate building.
02:59  3    Q.  Is it an HSBC building?
02:59  4    A.  Yes.
03:00  5    Q.  What goes on at the career development center?
03:00  6  What is that for?
03:00  7    A.  It's for training and meetings.
03:00  8    Q.  Who owns that building?  Do you know?
03:00  9    A.  I really am not sure, no.
03:00  10    Q.  Is there full-time staff at that building?
03:00  11    A.  Yes.
03:00  12    Q.  Who do those members or full-time staff, who
03:00  13  do they work for?
03:00  14    A.  I don't know.
03:00  15    Q.  You don't know?  Who is trained there?
03:00  16    A.  It's a -- it's a building that's available for
03:00  17  all the subsidiaries if they want to use it as a
03:00  18  training facility.
03:00  19    Q.  Do people from HSBC Bank, that banking
03:00  20  subsidiary, come and do training at the career
03:00  21  development center?
03:00  22    A.  I know that people from the bank have been at
03:00  23  that -- at that center.  I don't know the purpose of
03:00  24  their -- of their being there.
03:00  25    Q.  Is it connected to the corporate headquarters

Page 157

| | | |
|---|---|---|
| 03:00 | 1 | of HSBC North America Holdings, Inc.? |
| 03:01 | 2 | A. No. |
| 03:01 | 3 | Q. Is it on the same campus? |
| 03:01 | 4 | A. Yes. |
| 03:01 | 5 | Q. Is there a sign on the front of it or |
| 03:01 | 6 | anything? |
| 03:01 | 7 | A. Yes, I believe there is. |
| 03:01 | 8 | Q. What does that sign say? |
| 03:01 | 9 | A. I think it says career development center. |
| 03:01 | 10 | Q. Does it have the HSBC logo on it? |
| 03:01 | 11 | A. Don't know. |
| 03:01 | 12 | Q. Does HSBC Bank USA make any effort to separate |
| 03:01 | 13 | out -- I'm talking about in the public -- to separate |
| 03:01 | 14 | out -- separate itself away from any other of its parent |
| 03:01 | 15 | companies? |
| 03:01 | 16 | MR. LEONARD: Objection: Form. |
| 03:01 | 17 | Q. (BY MR. BRUSTER) You may answer. |
| 03:01 | 18 | A. Well, would you give me an example of what you |
| 03:01 | 19 | meant? I'm not sure what you're asking really. |
| 03:01 | 20 | Q. Sure. Are you aware of any representation by |
| 03:01 | 21 | HSBC Bank where it has made a representation to the |
| 03:01 | 22 | public that it is a separate, distinct legal entity from |
| 03:01 | 23 | other HSBC organizations? |
| 03:02 | 24 | MR. LEONARD: Objection: Form. |
| 03:02 | 25 | A. Well, you mean people and that kind of stuff, |

Page 158

| | | |
|---|---|---|
| 03:02 | 1 | or are you talking about advertising? I don't know what |
| 03:02 | 2 | you're asking me. |
| 03:02 | 3 | Q. (BY MR. BRUSTER) Advertising. Let's do |
| 03:02 | 4 | advertising. |
| 03:02 | 5 | A. I believe that HSBC Bank does its own |
| 03:02 | 6 | advertising. I believe that it does. |
| 03:02 | 7 | Q. Are you aware of any distinctions drawn in |
| 03:02 | 8 | that advertising to distance itself from HSBC North |
| 03:02 | 9 | America Holdings, Inc., for example? |
| 03:02 | 10 | MR. LEONARD: Objection: Form. |
| 03:02 | 11 | A. No, but I don't know -- I don't know -- I |
| 03:02 | 12 | mean, distance itself in what way? |
| 03:02 | 13 | Q. (BY MR. BRUSTER) Call attention to itself as |
| 03:02 | 14 | some group separate from HSBC North America Holdings, |
| 03:02 | 15 | Inc. |
| 03:02 | 16 | A. Well, the advertising I've seen has been HSBC |
| 03:02 | 17 | Bank USA. |
| 03:02 | 18 | Q. Have you seen any advertising where HSBC Bank |
| 03:03 | 19 | has sought to distance itself from the HSBC Group, PLC? |
| 03:03 | 20 | MR. LEONARD: Objection: Form. |
| 03:03 | 21 | A. I guess I don't even know how it would do |
| 03:03 | 22 | that. I'm not really understanding where you're going |
| 03:03 | 23 | with this. |
| 03:03 | 24 | Q. (BY MR. BRUSTER) I mean -- I guess what I'm |
| 03:03 | 25 | saying is, you're not -- you don't -- HSBC North America |

Page 159

| | | |
|---|---|---|
| 03:03 | 1 | Holdings, Inc. doesn't strive to have a separate public |
| 03:03 | 2 | image of itself or any other HSBC banking subsidiary |
| 03:03 | 3 | for that matter, separate and apart from HSBC Group, |
| 03:03 | 4 | PLC, does it? |
| 03:03 | 5 | MR. LEONARD: Objection to form. |
| 03:03 | 6 | A. I don't think it strives to have, you know, |
| 03:03 | 7 | any image that I'm aware of at all. |
| 03:03 | 8 | Q. (BY MR. BRUSTER) I mean, HSBC Bank is proud |
| 03:03 | 9 | to be affiliated with HSBC Group, PLC, isn't it? |
| 03:03 | 10 | MR. LEONARD: Objection: Form. |
| 03:03 | 11 | A. I guess so. I can't answer that. |
| 03:03 | 12 | Q. (BY MR. BRUSTER) Do you think that HSBC Bank |
| 03:03 | 13 | relies on the HSBC Group, PLC brand? |
| 03:04 | 14 | MR. LEONARD: Objection: Form. |
| 03:04 | 15 | A. HSBC Group has been striving to reach a common |
| 03:04 | 16 | brand worldwide and so, yes, all the subsidiaries |
| 03:04 | 17 | using the same brand, for the most part. |
| 03:04 | 18 | Q. (BY MR. BRUSTER) Did you do anything else to |
| 03:04 | 19 | prepare for your deposition today other than the |
| 03:04 | 20 | documents we've talked about and the meetings with your |
| 03:04 | 21 | lawyers? |
| 03:04 | 22 | A. No. |
| 03:04 | 23 | Q. Do you like your job? |
| 03:04 | 24 | A. Yes, I do. |
| 03:04 | 25 | Q. Want to keep it? |

Page 160

| | | |
|---|---|---|
| 03:05 | 1 | A. Yes. |
| 03:05 | 2 | Q. Thanks for your time. |
| 03:05 | 3 | MR. BRUSTER: I'll pass the witness. |
| 03:05 | 4 | EXAMINATION |
| 03:05 | 5 | BY MR. LEONARD: |
| 03:05 | 6 | Q. Ms. Hickman, I have just a few questions. I |
| 03:05 | 7 | know it's late, but more of a housekeeping matter. I |
| 03:05 | 8 | want to go back to your testimony early this morning. |
| 03:05 | 9 | Did you mean to testify that Janet Burak |
| 03:05 | 10 | was on the board of directors of both HSBC North America |
| 03:05 | 11 | Holdings and HSBC Bank US? I'm focusing on board of |
| 03:05 | 12 | directors. |
| 03:05 | 13 | A. Yes. No. That's -- no. I think you're |
| 03:05 | 14 | right. I don't believe she is. |
| 03:05 | 15 | Q. Okay. |
| 03:05 | 16 | A. I apologize. |
| 03:05 | 17 | Q. You also testified that HSBC Bank Holdings had |
| 03:05 | 18 | a subsidiary that you called HINO and you identified as |
| 03:05 | 19 | HSBC North America, Inc. Do you recall that testimony? |
| 03:05 | 20 | A. Yes, I do. |
| 03:05 | 21 | MR. LEONARD: Counsel, what's the last |
| 03:06 | 22 | Exhibit Number? |
| 03:06 | 23 | MR. BRUSTER: 14. |
| 03:06 | 24 | (Exhibit Number 15 marked.) |
| 03:06 | 25 | MR. LEONARD: It's my only copy so I want |

## Page 161

03:06  1  to show it to you.

03:06  2    MR. BRUSTER: Okay.

03:06  3    Q. (BY MR. LEONARD) Ms. Hickman, I'm going to

03:06  4  hand you what's been marked as Exhibit 15 to your

03:06  5  deposition. This is a document that we previously

03:06  6  furnished to the opposition in this case. Does that

03:06  7  refresh your recollection on who HINO is?

03:06  8    A. Yes. I see that I was referring to the wrong

03:06  9  subsidiary but the right acronym.

03:06 10    Q. Okay. And refreshing your recollection, could

03:06 11  you tell the judge and the jury in this case who HINO

03:07 12  is?

03:07 13    A. HSBC Investments North America, Inc.

03:07 14    Q. Does that accurately reflect that HINO is the

03:07 15  direct subsidiary of HSBC North America Holdings?

03:07 16    A. Yes.

03:07 17    Q. And is that the other holding company that you

03:07 18  were referring to in your prior testimony rather than

03:07 19  HSBC North America, Inc.?

03:07 20    A. Yes.

03:07 21    Q. Okay. Are you here to speak today on behalf

03:07 22  of HSBC North America, Inc.?

03:07 23    A. North America Holdings, Inc.

03:07 24    Q. Okay. Your question earlier about

03:07 25  consolidated financials, are you able to confirm for the

## Page 162

03:07  1  Court that HSBC North American Holdings, Inc. does, in

03:07  2  fact, prepare consolidated financial statements and tax

03:07  3  returns?

03:07  4    MR. BRUSTER: Objection: Leading.

03:07  5    A. I can confirm that for Court.

03:07  6    Q. (BY MR. LEONARD) Let me rephrase that.

03:07  7    Do you know that -- whether or not HSBC

03:08  8  North America Holdings prepares consolidated financial

03:08  9  statements and tax returns for itself and its

03:08 10  subsidiaries?

03:08 11    A. I do know that it does, yes.

03:08 12    Q. And did you identify, as an Exhibit, one of

03:08 13  those documents for counsel?

03:08 14    A. I believe I did, yes.

03:08 15    Q. At the time you signed the affidavit that

03:08 16  you've discussed here today, and today, for that matter,

03:08 17  did you then or do you now consider a charitable

03:08 18  contribution to be a business activity?

03:08 19    A. I do not.

03:08 20    MR. LEONARD: No further questions.

03:08 21    EXAMINATION

03:08 22  BY MR. BRUSTER:

03:08 23    Q. Ma'am, on Exhibit 14, which is still in front

03:08 24  of you on the screen there, your affidavit, there's no

03:08 25  reference to the word business, in terms of activity

## Page 163

03:08  1  being conducted in the state of Texas, is there?

03:09  2    A. No.

03:09  3    Q. Okay. And you swore that that statement was

03:09  4  true at the time you signed this document. Today you've

03:09  5  told us that, in fact, that's is a false statement.

03:09  6    MR. LEONARD: Objection to form.

03:09  7    A. When I signed it, I signed it to the best of

03:09  8  my knowledge at the time.

03:09  9    Q. (BY MR. BRUSTER) And today you understand

03:09 10  it's false, right?

03:09 11    MR. LEONARD: Objection: Form.

03:09 12    A. Today I understand that there was a charitable

03:09 13  contribution made.

03:09 14    Q. (BY MR. BRUSTER) I'm sure you get asked this

03:09 15  often, but has anyone ever told you you look like Martha

03:09 16  Stewart?

03:09 17    A. Oh, my God, no. Jesus.

03:09 18    MR. BRUSTER: Pass the witness.

03:09 19    MR. LEONARD: Nothing further. Thank

03:09 20  you, Ms. Hickman.

03:09 21    THE VIDEOGRAPHER: We're off the record.

03:27 22    (Proceedings concluded 3:09 p.m.)

23

24

25

## Page 164

1    CHANGES AND CERTIFICATION

2  WITNESS NAME: MARGO HICKMAN

3  DATE OF PROCEEDING: FEBRUARY 2, 2007

4  PAGE  LINE   CORRECTION         REASON

5  _____

6  _____

7  _____

8  _____

9  _____

10 _____

11 _____

12 _____

13 _____

14 _____

15 _____

16 _____

17 _____

18 _____

19 _____

20 _____

21 _____

22 _____

23 _____

24 _____

25 _____

## Page 165

```
 1        I, MARGO HICKMAN, have read the foregoing
          deposition and hereby affix my signature that same is
 2   true and correct, except as noted above.

                     _____
 3                   MARGO HICKMAN
 4
     THE STATE OF TEXAS   )
 5   COUNTY OF _____ )
 6        Before me, _____, on this day
          personally appeared _____, known to me (or
 7   proved to be on the oath of _____ or through
     description of identity card or other document) to be
 8   the person whose name is subscribed to the foregoing
     instrument and acknowledged to me that he executed the
 9   same for the purposes and consideration therein
     expressed.
10
          Given under my hand and seal of office this
11   _____ day of _____, A.D., 2007.
12                   _____
                     Notary Public in and for the
13                   State of _____
                     County of _____
14   My Commission Expires: _____
15
16
17
18
19
20
21
22
23
24
25
```

## Page 166

```
 1             C E R T I F I C A T E
 2   STATE OF TEXAS    )
 3   COUNTY OF DALLAS  )
 4        I, Lisa J. Gretarsson, Certified Shorthand
 5   Reporter, duly qualified in and for the state of Texas,
 6   do hereby certify that, pursuant to the agreement
 7   hereinbefore set forth, there came before me, MARGO
 8   HICKMAN, who was by me duly sworn to testify the truth,
 9   the whole truth, and nothing but the truth of her
10   knowledge concerning the matters in controversy in this
11   case; and that she was thereupon carefully examined upon
12   her oath and her examination reduced to typewriting by
13   me or under my supervision; that the deposition is a
14   true record of the testimony given by the witness before
15   me pursuant to the agreement of the parties.
16        That the amount of time used by each party at the
17   deposition is as follows:
18        Anthony Bruster - (3:32)
19        Tim S. Leonard - (0:04)
20        Ross R. Barton - (0:00)
21        That pursuant to information given to the
22   deposition officer at the time said testimony was taken,
23   the following includes counsel for all parties of
24   record:
25
```

## Page 167

```
 1   FOR THE PLAINTIFF:
 2        Anthony Bruster, Esq.
          R. Benjamin King, Esq.
 3        NIX PATTERSON & ROACH, L.L.P.
          2900 St. Michael Drive, Suite 500
 4        Texarkana, Texas  75503
             Telephone:  903-223-3999
 5           Facsimile:  902-223-8520
             E-mail:   akbruster@nixlawfirm.com
 6                     benking@nixlawfirm.com
 7   FOR THE DEFENDANT, HSBC NORTH AMERICA HOLDINGS, INC./
     HSBC BANK USA:
 8
          Tim S. Leonard, Esq.
 9        Edward J. "Nick" Nicholas, Esq.
          BOUDREAUX, LEONARD, HAMMOND & CURCIO, P.C.
10        Two Houston Center
          909 Fannin, Suite 2350
11        Houston, Texas  77010
             Telephone:  713-757-0000
12           Facsimile:  713-757-0178
             E-mail:   tleonard@blhc-law.com
13                     nnicholas@blhc-law.com
14   FOR THE DEFENDANT, UNION BANCAL CORP.
15        Ross R. Barton, Esq.
          PILLSBURY, WINTHROP, SHAW, PITTMAN, LLP
16        1650 Tysons Boulevard
          McLean, Virginia  22102
17           Telephone:  703-770-7900
             Facsimile:  703-770-7901
18           E-mail:   ross.barton@pillsburylaw.com
19        I further certify that I am neither attorney nor
20   counsel for nor related to or employed by any of the
21   parties to the action in which this deposition is taken,
22   and further that I am not a relative or employee of any
23   attorney or counsel employed by the parties hereto or
24   financially interested in the action.
25
```

## Page 168

```
 1        In witness whereof, I have hereunto set my hand
 2   and affixed my seal this ___ day of _____, 2007.
 3
 4                   _____
                     LISA J. GRETARSSON, CSR No. 4486
 5                   Expiration Date:  12-31-08
                     Firm Registration No. 90
 6                   208 N. Green Street, Ste. 201
                     Longview, TX  75601
 7                   903/758-2183 (telephone)
                     903/758-4890 (fax)
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```