IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DATATREASURY CORPORATION | § | |
| *PLAINTIFF* | § | |
| | § | |
| vs. | § | No. 2:06cv72 |
| | § | |
| WELLS FARGO & COMPANY, *et al* | § | JURY TRIAL DEMANDED |
| *DEFENDANTS* | § | |

**PLAINTIFF'S AMENDED RESPONSE TO DEFENDANT UNIONBANCAL
CORPORATION'S MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION UNDER RULE 12(b)(2)**

## I.     INTRODUCTION

"UnionBanCal Corporation *and* its subsidiaries (the Company) provide a wide range
of *financial services* to consumers, small businesses, middle-market companies and major
corporations, primarily in California, Oregon, and Washington, and *also nationally*."   *See*
UnionBanCal 2005 10-K ("10-K"), p. F-53 (Ex. A). The fact that UnionBanCal provides
financial services nationally provides sufficient basis for this Court to exercise jurisdiction
over UnionBanCal.   In addition to this one statement, there exists a plethora of other
examples where UnionBanCal Corporation ("UnionBanCal") represents to its shareholders,
customers, employees, and the general public that it in fact provides financial services.

Despite numerous and repeated declarations made in its public marketing materials
and sworn-to financial documents similar to that above, UnionBanCal attempts to distance
itself from these previously beneficial and well-reasoned statements now that it is placed in
the shadow of the looming cloud of litigation.  Now that UnionBanCal is a named Defendant
in the instant litigation, it offers to the Court conflicting declarations, for example, that it
does not engage in "retail banking activities" nor does it have any employees.  The conflict

Dockets.Justia.com

between UnionBanCal's pre-suit statements to the general public and those it now attempts to foist upon the Court clearly cast a shadow of doubt and skepticism on these post-litigation assertions, and this perplexing conflict should cause this Court grave concern. As explained more fully below, UnionBanCal is subject to the jurisdiction of this Court

## II.    BACKGROUND

This is a patent infringement case. DataTreasury filed the instant action against a number of large financial institutions and related infringing institutions, including UnionBanCal and Union Bank of California, N.A. ("Union Bank") (a subsidiary of UnionBanCal). In this action, DataTreasury alleges that UnionBanCal, and multiple other defendants infringe DataTreasury's patents by making, using, selling, offering for sale, and/or importing in or into the United States directly, contributorily, and/or by inducement products and services that fall within the scope of the claims of United States Patent Nos. 5,910,988; 6,032,137; 5,265,007; and 5,717,868.[1]

UnionBanCal is one of only four of the fifty-plus defendants in the instant action seeking dismissal of this action on the grounds that they are not subject to the personal jurisdiction of this Court. To that end, UnionBanCal filed with the Court a Motion to Dismiss based on Fed. R. Civ. P. 12(b)(2). *See* Dkt. No. 83. After the issue was briefed, the Court issued an order granting DataTreasury the right to conduct jurisdictional discovery against UnionBanCal. *See* Dkt. No. 394. DataTreasury submits this Supplemental Response pursuant to the Court's order.

---

[1]    DataTreasury is the owner of all rights and interest in and under United States Patent Nos. 5,910,988; 6,032,137; 5,265,007; and 5,717,868. These patents were issued for a variety of inventions comprising systems and methods for various banking functions, including image capture, image transmission, image storage, a central check clearing system, and submission of checks into the payment system.

UnionBanCal and other defendants sought affirmative relief from the Court by seeking a severance and stay as to the claims concerning the '988 and '137 Patents. That relief was ultimately granted and multiple defendants, including UnionBanCal, accepted the affirmative relief offered by the Court. *See infra,* Sec. III.D.

### III.    ARGUMENT

#### A.    APPLICABLE LEGAL STANDARDS

As this is a suit for patent infringement, the precedent of the United States Court of Appeals for the Federal Circuit controls matters to be resolved in this dispute.  *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564-65 (Fed. Cir. 1994).  However, the Federal Circuit defers to the law of the regional circuit courts to resolve non-substantive patent issues, such as jurisdictional questions.  *See Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 856 (Fed. Cir. 1999).

#### 1.    Factual Conflicts are to be Resolved in Plaintiff's Favor

"A district court must accept as true and resolve any factual conflicts in the affidavits in the plaintiff's favor."  *Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003).

#### 2.    Exercise of Jurisdiction Must Comport With Due Process

A non-resident defendant is subject to personal jurisdiction in a federal court if the defendant is within the reach of the forum state's long-arm statute and due process is satisfied.  *See Beverly Hills*, 21 F.3d at 1569 (stating that courts must look to the forum state's long-arm statute even when the cause of action is purely federal in nature).  The Texas long-arm statute is co-extensive with the limits of due process.  *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 372 (5th Cir. 1987).  Therefore, the Court's sole inquiry is whether the exercise of personal jurisdiction over UnionBanCal comports with due process. *See Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 427 (Fed. Cir. 1996).

The exercise of personal jurisdiction over a nonresident will not violate due process principles if two requirements are met.  First, the nonresident defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum

contacts" with that forum state. *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Second, the exercise of jurisdiction over the nonresident defendant must not offend "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987) (quoting *International Shoe*, 326 U.S. at 316). Plaintiff's pleadings and the Defendant's activities are both sufficient to confer personal jurisdiction upon this Court, as Defendant has purposefully availed itself of the benefits of Texas by establishing minimum contacts in Texas and within this District; as such, exercising jurisdiction over this Defendant does not offend traditional notions of fair play and substantial justice. *See Int'l Shoe v. Wash.*, 326 U.S. 310, 316 (1945); *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 474 (1985).

### B.    UNIONBANCAL IS SUBJECT TO THE JURISDICTION OF THIS COURT BASED ON SPECIFIC JURISDICTION

Jurisdiction exists specifically over UnionBanCal because of UnionBanCal's conduct in making, using, selling, offering to sell, and/or importing directly, contributorily, and/or by inducement, infringing products and services within the State of Texas and within this District. Specific jurisdiction exists when the plaintiff satisfies a three-prong test: (1) the defendant purposefully directed its activities at the forum state; (2) the plaintiff's claims arise out of those activities; and (3) assertion of personal jurisdiction over the defendant is reasonable and fair. *Akro Corp. v. Luker*, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995); *see also Gardemal v. Westin Hotel Co*., 186 F.3d 588, 595 (5th Cir. 1999). A single act may be sufficient to trigger specific jurisdiction, but courts look to the totality of the circumstances to determine whether the act was substantial. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985); *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1028 (5th Cir. 1983).

UnionBanCal contends that this Court has no personal jurisdiction over it, and thus DataTreasury's Complaint against it should be dismissed. *See* DEFENDANT'S MOTION TO DISMISS, previously filed. To support its contention, UnionBanCal relies entirely on one self-serving declaration of a company executive. *See* Anderson Affidavit, previously filed. The Anderson Affidavit fails to establish that this Court lacks personal jurisdiction over UnionBanCal and fails to controvert the facts set forth in Plaintiff's First Amended Complaint. Thus Defendant's Motion should be denied, as this Court's exercise of jurisdiction over this Defendant is entirely proper.

1.      **Plaintiff's Pleadings and the Defendant's Activites Confer Personal Jurisdiction Upon this Court**

a.      **Plaintiff's pleadings**

Plaintiff has pled in its First Amended Complaint that UnionBanCal has engaged or currently engages in the following activities within the Eastern District of Texas: (1) making, using, selling, offering to sell, and/or importing, directly, contributorily, and/or by inducement, infringing products and services within the State of Texas and within this District; (2) providing services and selling products in this District separately and with or for other infringing companies which are or were Defendants in related pending litigation in this District; (3) engaging in infringing activities with respect to the products and services of Small Value Payments Co., LLC and The Clearing House Payments Company, LLC, defendants that operate a nationwide check image archive and exchange service that operates in and through this District; and (4) authorizing, participating in, or facilitating transactions through this archive/exchange that in whole or in part infringe the patents within this District. *See* First Amended Complaint, Dkt. No. 3. These facts, if true, are more than sufficient to establish specific jurisdiction over the Defendant.

b.    **UnionBanCal's activities**

"UnionBanCal Corporation *and* its subsidiaries (the Company) provide a wide range of *financial services* to consumers, small businesses, middle-market companies and major corporations, primarily in California, Oregon, and Washington, and *also nationally*."  *See* 10-K, p. F-53; *see also,* Annual Report p. 13 (Ex. B).    UnionBanCal confesses that this statement from UnionBanCal's 2005 10-K filing is accurate.  *See* Anderson Depo, 155:16-23 (Ex. C).  UnionBanCal also concedes that the 10-K and the Annual Report, from whence these statements are drawn, are used to inform the government, stockholders, customers, and employees about the products and services offered by UnionBanCal.  *See* Anderson Depo, 154:24-155:11, 159:9-161:6; Annual Report, p. 10.    Throughout UnionBanCal's 2005 Annual Report and its 2005 10-K, UnionBanCal makes multiple references that "the Company" refers to both UnionBanCal and its subsidiaries, it makes no attempt to exclude UnionBanCal from the term "the Company," and UnionBanCal does not therein affirmatively represent that it does not provide personal and commercial financial products and services to individuals.  Anderson Depo, 170:4-171:6.

This is extremely significant because it demonstrates that UnionBanCal represents to the general public, shareholders, and customers that UnionBanCal provides financial products and services on a national level.  UnionBanCal had the opportunity to exclude itself from these statements or represent that these products and services were only offered by its subsidiaries, but it chose not to.  Now that it is faces the prospect of litigating in this Court, however, UnionBanCal would have this Court and the general public disregard these prior written and sworn-to statements so that it can avoid the jurisdiction of this Court.  Additionally, UnionBanCal has provided services in this District separately and with other infringing entities.  This Court has previously determined that Small Value Payments Co.,

LLC ("SVPCo") is subject to the jurisdiction of this Court because of, *inter alia*, its performance of activities in this District related to its nationwide exchange and archive service. *See* Order of Nov. 17, 2004 (Ex. D). Just as SVPCo did when it contested this Court's jurisdiction, UnionBanCal offers an affidavit asserting that it has no offices or employees in the state of Texas, is not licensed to do business in Texas, and does not do business in Texas. *Compare* Anderson Affidavit, ¶¶ 8-10 *with* SVPCo Order. Also like SVPCo, UnionBanCal attempts to suggest that its operations are conducted through its subsidiary.

These arguments were rejected by the Court when presented by SVPCo, and the circumstances in this case warrant a similar result. As described above, UnionBanCal is a self proclaimed provider of financial products and services offered on a nationwide basis. *See, e.g.* 10-K, p. F-53. Notably, UnionBanCal makes no attempt to exclude the Eastern District of Texas from its representation that it operates on a nationwide basis.[2] Additionally, UnionBanCal does in fact appear to be a user of SVPCo, despite its contention through Mr. Anderson's affidavit that it is not an owner or user of SVPCo. In an official press release, SVPCo clearly indicates that UnionBanCal is a participating institution in the Image Payments Network. *See* Dec. 8, 2005 SVPCo Press Release (Ex. E). Additionally, it is undisputed that UnionBanCal's subsidiary, Union Bank, also participates in image exchange and settlement with SVPCo. Given Union Bank's participation with SVPCo and UnionBanCal's relationship with and control over Union Bank, Union Bank's contacts with SVPCo can and should be imputed to UnionBanCal.[3]

> ## 2. Defendant's Self Serving Affidavit Directly Contradicts Prior Statements of Defendant Relating to its own Activities

---

[2] *Compare with* SVPCo Order
[3] *See infra* Sec. III.C.

Furthermore, these facts are simply not controverted by the self-serving affidavit provided by UnionBanCal. UnionBanCal's representations to the Court, and the public at large, should cause this Court grave concern. Under the Sarbanes-Oxley Act, the accuracy of UnionBanCal's most recent public 10-K filing with the Securities and Exchange Commission is sworn and attested by the CEO of UnionBanCal, Takashi Morimura.

### a.     UnionBanCal represents that it has property in Texas

In his affidavit filed with this Court, David Anderson states: "UnionBanCal has never had a mailing address, telephone line, or bank account in Texas, has never owned, rented, or leased property in Texas…[and] UnionBanCal does not have any employees, officers, agents, directors, or offices in Texas." *See* Anderson Affidavit*, ¶¶* 8-9. In direct opposition to that claim, UnionBanCal's SEC filing, in the discussion of Properties held by the company, states as follows: "We own [seven administrative facilities in California]. Other administrative offices in Arizona, California,…**Texas,** and Washington operate under leases expiring in one to twenty-six years. *See* 10-K, p. 16 (emphasis added). Both of these sworn statements simply cannot be true; either UnionBanCal's CEO is in violation of the Sarbanes-Oxley Act and has misled the public at large, or Mr. Anderson has misled this Court on this most important issue for a personal jurisdiction analysis. Either way, Plaintiff suggests that the Court should look very suspiciously at the arguments Defendant makes to attempt to avoid litigating in this District.

While UnionBanCal claims that this statement has been taken out of context, there is nothing in the language explicitly used by UnionBanCal to suggest that "we" only refers to UnionBanCal's subsidiaries. Likewise, UnionBanCal does not eliminate UnionBanCal from the use of "we" in the preceding paragraph cited by UnionBanCal in its original Reply brief

where UnionBanCal states again explicitly states "we operated 315 full service branches in California, 4 full service branches in Oregon and Washington, and 20 international offices…."   UnionBanCal Reply Brief, Dkt. No. 241.   The way these statements read, UnionBanCal is an implied part of the term "we."   If these were truly offices that were exclusive to Union Bank or another of UnionBanCal's subsidiaries, UnionBanCal could have easily stated as much, but it did not.

**b.    UnionBanCal Represents that it has employees**

UnionBanCal also relies upon the following statement in Mr. Anderson's sworn affidavit: "UnionBanCal has no employees.…"   Anderson Affidavit ¶ 4.   However, there are numerous examples in UnionBanCal's documents and websites that suggest otherwise.   In UnionBanCal's 2005 10-K, UnionBanCal states "At January 31, 2006 we had 10,410 full-time equivalent employees."   *See* 10-K, p. 6.   Likewise, on its publicly available website, UnionBanCal recently advertised that "San Francisco-based UnionBanCal Corporation is a bank holding company…At March 31, 2006 we had approximately 10,118 full-time equivalent    employees…"         *See*    website    printout    of www.snl.com/irweblinkx/corporateprofile.aspx?IID=1022285, (Ex. F).   UnionBanCal's 2005 Annual Report clearly states, "This publication is intended to provide stockholders, customers, *and employees* with a general description of UnionBanCal Corporation's results for 2005."   Annual Report, p. 10 (emphasis added).   The contradictory evidence does not stop there, however.   UnionBanCal has in place "employee benefit plans" which are overseen by UnionBanCal's own Executive Compensation & Benefits Committee.   UnionBanCal 2005 Proxy, p. 29 (Ex. G).   UnionBanCal has also adopted a code of business and ethics conduct that is "applicable to all officers and employees."   Id. at 4.   Furthermore, it is UnionBanCal's philosophy "to compensate executive officers in a manner that promotes the

recruitment, motivation and retention of exceptional employees who will help UnionBanCal achieve its strategic business objectives….” Id. at 29.[4] There are multiple other examples where UnionBanCal suggests that it has employees.[5] Most significantly, UnionBanCal incontrovertibly admits that it has employees when it claims “At year-end 2005 UnionBanCal Corporation had …10,364 employees….” Annual Report, p. 13. There is absolutely no mention of its subsidiaries in this unambiguous statement. DataTreasury submits that there is quite a drastic difference between having zero employees and over 10,000. Again, these inconsistencies in UnionBanCal’s pre and post-litigation assertions should cause this Court concern about the tendered witness’ credibility.

> **b.**    **UnionBanCal represents that it is engaged in “banking operations”**

UnionBanCal also relies on Mr. Anderson’s affidavit to argue that “UnionBanCal is a bank holding company…and does not participate in any way in the imaging, exchange, or settlement of checks or in any other retail banking operations.” *See* Anderson Affidavit ¶ 5. However, in its 2005 10-K, UnionBanCal makes the following statements:  “We compete actively for loan, deposit, and other financial services business…nationally and internationally”, and “UnionBanCal Corporation and its subsidiaries (the Company) provide a wide range of financial services to consumers, small businesses, middle-market companies and major corporations…nationally.” *See* 10-K, p. 6 & note 1. Furthermore, UnionBanCal

---

[4] DataTreasury expects UnionBanCal to continue to deny that it has any employees, just as Mr. Anderson did during his deposition when questioned on these topics. However, when taken as a whole, it is incongruous to believe that UnionBanCal has no employees in light of these multiple examples. Construing these facts in favor of Plaintiff, it must be assumed that UnionBanCal does have employees. Assuming *arguendo*, however, that the employees mentioned here are those of Union Bank, this is further proof of the control that UnionBanCal exerts over Union Bank by having a voice in the recruitment and retention of Union Bank employees, administering and/or overseeing employee benefit plans for Union Bank, and implementing a code of business and ethics conduct. *See infra* Sec. III.C.

[5] *See, e.g.* Proxy, p. 5 (“The Board has designated Richard D. Farman…to receive communication from …employees, stockholders, and investors….”); Proxy, p. 9-10 (“Non-employee directors” of UnionBanCal are mentioned multiple times throughout).

recently proclaimed publicly on its website that "[w]e provide a comprehensive array of personal and commercial financial products and services to individuals, businesses…." *See* Ex. F. "The company provides a comprehensive array of personal and commercial financial products and services to individuals…and is an acknowledged leader in trust and investment management services, private banking, and consumer and business lending, with expertise in commercial, middle market, corporate, and real estate lending." Annual Report, p. 13. In reading the Form 10-K and Annual Report as a whole, as suggested by UnionBanCal in its original Reply Brief, even Mr. Anderson could not name a single instance where the term "the company" excluded UnionBancal. *See* Anderson Depo, 170:11-14. Again, UnionBanCal is being inconsistent in its pre-litigation and post-litigation representations.

Perhaps one of the more puzzling aspects of UnionBanCal's represenation that it does not engage in banking operations is the fact that several UnionBanCal officers and directors (who are also officers and directors of Union Bank) serve as Executive Vice Presidents and heads of several groups that relate to banking activities. *See generally* Anderson Depo 173:24-186:17; *see also* 10-K, p. 18-19. Specifically, Mr. Anderson has admitted that commercial financial services, commercial banking, customer service, commercial deposits, treasury management, and community banking are all banking activities. *See generally* Anderson Depo. 173:24-186:22. Despite the designation of these individuals as EVPs and heads of these banking activity groups, Mr. Anderson claims that these groups do not exist within UnionBanCal. *See id.* The fact that UnionBanCal made a point to list these officers and directors as EVPs and heads of these groups in its 10-K filing, though they supposedly

do not exist, is very perplexing and further demonstrates the nonsensicality of the positions that UnionBanCal takes now that it is a defendant in the instant litigation.[6]

DataTreasury suggests that the evidence shows that UnionBanCal has made public representations that are wholly inconsistent with its sworn proof offered to this Court. Now that UnionBanCal is seeking to have this Court declared powerless to assert jurisdiction over it, it is apparently not reluctant to submit affidavit proof that directly conflicts with Sarbanes-Oxley punishable statements made by Defendant's chief executives. As described, UnionBanCal has stated to the SEC and the public at large that it provides financial services "nationally." This type of representation is almost precisely the same type of representation that this Court relied on in holding that Small Value Payments Co. ("SVPCo") is subject to personal jurisdiction in the Eastern District of Texas in its separate case with DataTreasury. *See* Order dated November 16, 2004 (Ex. D). As the Court will recall, in the SVPCo matter, an instrumental fact was that an SVPCo employee had made a public presentation to the effect that SVPCo was a nationwide check image exchange. This Court's ruling accounted for the fact that, because SVPCo did not exclude the Eastern District of Texas in its public presentation of "nationwide" activity, it was fair to assume that SVPCo did engage in potentially-infringing business in this District. The same rationale applies in this case, where UnionBanCal has made statements of "national" business activities in its sworn statements to the SEC.[7] In fact, in this matter, the representation of "national" business activities is even

---

[6] Again, assuming *arguendo* that these groups do not exist within UnionBanCal, the fact that these individuals hold these titles with UnionBanCal is further proof of the control that UnionBanCal exerts over Union Bank. *See infra* Sec. III.C.

[7] In addition, it is worth noting that this Defendant and its related entities (and co-Defendants) Union Bank of California, N.A. and The Bank of Tokyo-Mitsubishi UFJ, Ltd. have a business relationship with SVPCo/The Clearing House Payments Company, as described in Plaintiff's First Amended Complaint. For many of the same reasons that this Court found SVPCo to have "purposefully directed its infringing activities at the Eastern District of Texas through its affiliation with…[a bank and the Federal Reserve]," the Court should consider UnionBanCal's business relationship with SVPCo (and those of its related entities) when determining whether this Defendant has purposefully directed potentially infringing activities at this District.

more significant because these statements were not limited to one employee at one conference, but rather are made to the general public, customers, employees, stockholders, and even the Securities and Exchange Commission through UnoinBanCal's own published documents. The same result as that in the SVPCo matter should follow here.

By accepting the allegations in DataTreasury's Amended Complaint as true and by resolving the factual conflicts in the affidavits and the documentation attached to those affidavits in DataTreasury's favor, as the precedent dictates, it is clear that UnionBanCal is subject to the personal jurisdiction of this Court. The evidence shows: (1) UnionBanCal has purposefully directed its infringing activities at the Eastern District of Texas; (2) DataTreasury's patent infringement claims arise out of UnionBanCal's activities; and (3) due to UnionBanCal's potentially infringing activities in this district, the assertion of personal jurisdiction over UnionBanCal is fair and reasonable. Therefore, the Court has specific jurisdiction over UnionBanCal.

### C. UNIONBANCAL IS SUBJECT TO THE JURISDICTION OF THIS COURT BASED ON ITS RELATIONSHIP WITH UNION BANK OF CALIFORNIA

If the Court is inclined to disregard these multiple inconsistent representations made by UnionBanCal, and specifically those that UnionBanCal is the provider of financial products and services on a national level, UnionBanCal is still subject to the jurisdiction of this Court by way of its relationship and control over its subsidiary, Union Bank, which is admittedly subject to this Court's jurisdiction. In his affidavit, Mr. Anderson states: "UnionBanCal is not involved in the day-to-day management of any of its subsidiaries, including Union Bank of California, N.A." *See* Anderson Affidavit ¶ 6. Like the other statements discussed above, this statement is also an attempt to distort a fact, namely the actual nature of the relationship between UnionBanCal and Union Bank of California, N.A.

("Union Bank").   UnionBanCal is a bank holding company, and Union Bank of California, N.A. is a wholly-owned banking subsidiary of UnionBanCal.  Bank holding companies are heavily regulated by Federal law, and the very definition of a bank holding company is "any company which has control over any bank."  *See* 12 U.S.C. §1841(a)(1).  Thus, by admitting that (1) it is a bank holding company and (2) its primary banking subsidiary is Union Bank of California, N.A., UnionBanCal has admitted that it does in fact control Union Bank.  Its attempts to persuade the Court otherwise are simply incorrect.

The Fifth Circuit has adopted a set of factors for use in evaluating whether or not the contacts of one entity  (i.e. Union Bank) can be attributed to another (i.e. UnionBanCal) to justify the exercise of personal jurisdiction.  *See Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 208-09 (5th Cir. 1996).  The factors that the Court is to consider are whether: (1) the parent and the subsidiary have common stock ownership; (2) the parent and the subsidiary have common  directors or officers; (3) the parent and the subsidiary have common business departments; (4) the parent and the subsidiary file consolidated financial statements and tax returns; (5) the parent finances the subsidiary; (6) the parent caused the incorporation of the subsidiary; (7) the subsidiary operates with grossly inadequate capital; (8) the parent pays the salaries and other expenses of the subsidiary; (9) the subsidiary receives no business except that given to it by the parent; (10) the parent uses the subsidiaries property as its own; (11) the daily operations of the two corporations are not kept separate; and (12) the subsidiary does not observe the basic corporate formalities, such as keeping separate books and records and holding shareholder and board meetings.  *Id.*, *citing U.S. v. Jon-T Chems., Inc.*, 768 F.2d 686, 691-92 (5th Cir. 1985).  Not all of these factors must be met, and the issue should be resolved based on the "totality of the circumstances."  *See id.* at 209.  In this case, taking these factors into account and

considering the totality of the circumstances, Union Bank's contacts with the forum are attributable to UnionBanCal such that it is subject to the jurisdiction of this Court.

### 1.    UnionBanCal has the Capacity to Influence Major Business Decisions of Union Bank

UnionBanCal has the capacity to influence major business decisions of Union Bank. It is undisputed that the first factor, common stock ownership, is met in this case. Union Bank 100% owned by UnionBanCal. Anderson Depo. 31:23-24. In regards to the second factor, there is almost a complete overlap between the officers and directors of UnionBanCal and Union Bank. *See* Director List (Ex. H); *see also* 10-K, p. 18-19. Of the 17 members of the UnionBanCal Board of Directors, 15 are also members of the Union Bank Board of Directors. Conversely, only one member of the Union Bank Board of Directors is not a member of the UnionBanCal Board of Directors. In the end, UnionBanCal selects the membership of Union Bank's Board of Directors. UnionBanCal's bylaws give the officers of UnionBanCal the authority to vote the shares of stock it holds in its subsidaries. *See* Bylaws of UnionBanCal Corporation, Section 10.6 (as of Sept. 30, 2003) (Excerpt attached as Ex. I). That the parent determines the membership of Boards of Directors of its subsidiaries is a strong indication of the parent's control. *See In re Vitamins Antitrust Litig.*, 2001 U.S. Dist. LEXIS 25073, at *28 (D.D.C. Oct. 30, 2001) (in determining parental control, noting that the executive committee of parent's board determined the membership of boards of each subsidiary).

Interlocking directorates are also a determinative factor in assessing whether the parent controls the subsidiary. *Id.* at *25. Additionally, the presence of high-level employees of the parent on the subsidiary's board may enable the parent to exercise "tremendous influence." *Id.* at *28. The almost complete overlap of directors and officers

between UnionBanCal and Union Bank should speak for itself about the potential influence that UnionBanCal has over Union Bank.[8]

Additionally, there appear to be common business departments between UnionBanCal and Union Bank. As discussed, *supra*, multiple individuals are the head of specific groups related to banking activities, and those individuals serve as heads of those groups for both UnionBanCal and Union Bank. 10-K, p. 18-19. In addition to those departments listed previously, UnionBanCal and Union Bank appear to share a human resource department, and there are multiple instances of overlap between various committees appointed by the Boards of Directors. *See, e.g.* Anderson Depo. 74:2-7; 10-K, p. 19.

> **2.     UnionBanCal is Involved in Financial and Employment Affairs of Union Bank**

UnionBanCal also has influence in the financial and employment affairs of Union Bank. UnionBanCal and Union Bank file consolidated financials, which supports the fourth *Gundle* factor. Anderson Depo. 142:4-7. The Board of Directors for UnionBanCal administers and/or oversees employee benefit plans for Union Bank and has implemented a code of business and ethics conduct which covers employees for UnionBanCal and Union Bank. *See infra* note 5. UnionBanCal also apparently plays a role in the recruitment and retention of Union Bank employees. *See id.*

One of the most significant examples of the inter-relationship and coordination between UnionBanCal and Union Bank relates to the eighth factor and stems from an employment agreement entered into between Union Bank and Philip Flynn (the COO for

---

[8] Notably, every single executive of UnionBanCal is likewise and contemporaneously an executive of Union Bank. Individuals serving as Chairman (Tetsuo Shimura), President and CEO (Takashi Morimura, Vice Chairman and COO (Philip Flynn), Vice Chairman and CFO (David Matson), Vice Chairman of Administration and Support (Masashi Oka), Chief Credit Officer (Bruce Cabral), Director of Human Resources (Paul Fearer), and General Counsel and Secretary (John McGuckin, Jr.) all serve in the exact same capacity for both UnionBanCal and Union Bank. 10-K, p. 18-19.

both UnionBanCal and Union Bank). Notably, UnionBanCal is a signatory to this agreement between Mr. Flynn and Union Bank. In this employment agreement, Union Bank appears to enter into the agreement on behalf of both Union Bank and UnionBanCal.

> Mr. Flynn shall be employed as a Vice Chair of the Bank and its Chief Operating Officer ("COO"). _Mr. Flynn also shall hold the position of Vice Chair and Chief Operating Officer of [UnionBanCal]._ Mr. Flynn hereby accepts such employment. Mr. Flynn shall devote his time, ability, attention, energy, knowledge and skill to performing all reasonable duties as a Vice Chair and COO _as assigned to him by_ the Bank's Chief Executive Officer ("CEO"), the Bank's Board of Directors (the "Board") _and/or the [UnionBanCal] Board_ (when referred to collectively with the Bank's Board, the "Boards"). In addition, Mr. Flynn shall continue to serve as a policy making officer of the Bank and of UNBC.

Amendment to Executive Employment Agreement, Exhibit 10.1 to UnionBanCal 10-Q for Quarter Ending June 30, 2005 (emphasis added) (excerpt attached as Ex. J). Obviously UnionBanCal has the authority to assign Mr. Flynn duties in his role as COO for Union Bank in addition to his role as COO of UnionBanCal. As part of his employment agreement with Union Bank, Mr. Flynn is also entitled to participate in _UnionBanCal Corporation Management Stock Plan_ and _UnionBanCal Corporation Performance Share Plan_. Executive Employment Agreement, Exhibit 10.1 to UnionBanCal 10-Q for Quarter Ending March 31, 2004 (emphasis added) (excerpt attached as Ex. K). Notably, but not surprisingly, if Mr. Flynn fails to obey the direction of UnionBanCal's Board of Directors, Union Bank may terminate Mr. Flynn for cause. Id. DataTreasury submits that this single example exemplifies the amount of control that UnionBanCal ultimately exerts over Union Bank and its employees, and that UnionBanCal undoubtedly has its hands in the day-to-day operations of Union Bank.

With regard to the fifth factor, UnionBanCal may or may not finance Union Bank. However, it is important to note that Union Bank pays a quarterly dividend to UnionBanCal,

and these dividend payments make up a substantial portion of UnionBanCal's funding. Anderson Depo. 143:18-145:15.

The seventh factor is whether the subsidiary operates with grossly inadequate capital. While DataTreasury is not currently aware of any evidence that Union Bank operates with grossly inadequate capital, the "source of strength" doctrine has recognized that bank holding companies owe a duty to accept obligations of their subsidiary banks. UnionBanCal recognizes this in its recent 10-K, stating that it "is required to serve as a source of financial and managerial strength to its subsidiary banks…". *See* 10-K, p. 7. This doctrine forms another basis for denying UnionBanCal's Motion to Dismiss; namely, because UnionBanCal should be held liable for the infringing activities of Union Bank in addition to its own activities. No other related entity of UnionBanCal has contested this Court's ability to assert jurisdiction. *See Branch o/b/o Maine National Bank v. U.S.*, 69 F.3d 1571 (Fed. Cir. 1995) ("Through the source of strength doctrine, the [Federal Reserve] Board pierce[d] the corporate veil between a bank holding company and its affiliated banks…"). Thus, it is obvious that UnionBanCal manages, controls, and directs the operations of Union Bank – and Union Bank has not challenged this Court's ability to exercise personal jurisdiction over it. Thus, the source of strength doctrine is an additional basis for the Court to deny UnionBanCal's Motion.

### 3.  There is no Real Distinction Between UnionBanCal and Union Bank

UnionBanCal's Corporate offices are located in a building owned by Union Bank at 400 California Street, San Francisco, California. Anderson Depo. 119:3-13. As to the tenth factor, UnionBanCal uses Union Bank's property free of charge as UnionBanCal leases no office space from Union Bank in that building. Id. Additionally, there are numerous officers, directors, and/or employees of UnionBanCal who are also officers, directors, and/or

employees of Union Bank who utilize the offices at 400 California Street in their capacities for both UnionBanCal and Union Bank. *See, e.g.* id., 120:20-123:5. When these individuals appear at work in their dual capacities, there is no way to distinguish the work performed by these individuals on behalf of UnionBanCal compared to Union Bank. *See* id., 135:21-136:2. Given the overlap of multiple officers, directors, and employees of both UnionBanCal and Union Bank, the fact that there is apparently no way to distinguish the work performed by these individuals on behalf of UnionBanCal or Union Bank, the control exerted by UnionBanCal over Union Bank employees, and other factors all discussed *supra*, DataTreasury submits that the eleventh factor is also met in that the daily operations of the two entities are not kept separate.

> ### 4.     The Totality of the Circumstances Justify this Court's Exercise of Jurisdiction

The Court must look at the totality of the circumstances and not consider any of the factors listed herein in isolation. *See Gundle*, 85 F.3d at 209. In addition to the numerous factors addressed *supra*,[9] UnionBanCal and Union Bank have worked together to "create a consistent culture throughout the organization" and attempted to "reduce horizontal, vertical, and geographical boundaries; improve information flow; and leverage company synergies." Annual Report, p. 6. While these are worthy initiatives, they are not emblematic of two entities working independent of each other. Rather, in addition to the significant overlap in the membership of the Boards of Directors for UnionBanCal and Union Bank, these common initiatives and other forms of commonality and control between the two entities are made all the more possible by simultaneous meetings of the two entities "separate" Boards of

---

[9] DataTreasury has requested that UnionBanCal provide it with relevant documents relating to discovery requests regarding these jurisdictional issues. To date, UnionBanCal has refused to provide these documents. UnionBanCal's refusal to produce these documents is telling of what they will likely reveal. Because of this failure, DataTreasury has filed with the Court a motion to compel these documents from UnionBanCal.

Directors.  In fact, the Boards of Directors of UnionBanCal and Union Bank usually conduct their meetings simultaneously, and during his deposition, Mr. Anderson was unable to identify a single instance where the two Boards met separately.  This uniformity of simultaneous meeting of the two Boards demonstrates the significant influence UnionBanCal has over the daily and overall operations of Union Bank.

### D.   REGARDLESS OF THE COURT'S DETERMINATION OF THE PRIOR ARGUMENTS, UNIONBANCAL HAS WAIVED ITS PERSONAL JURISDICTION CHALLENGE

Further conduct by UnionBanCal in this case since the time it filed the Motion to Dismiss results in UnionBancal having waived its challenge to this Court's ability to exercise jurisdiction over UnionBanCal.  As the Court will recall, throughout several months in 2006, many of the Defendants in Cause No. 2:06-cv-72 sought a severance and stay of the Ballard patents (the '988 and '137 patents).  Eventually, the Court offered a stay of proceedings related to the '988 and '137 patents to all Defendants.  *See* Docket No. 411, dated January 12, 2007.  Like nearly all other Defendants, UnionBanCal accepted that offered stay on January 23, 2007.  *See* Docket No. 432.  Thus, UnionBanCal has been offered affirmative relief from this Court, and accepted that relief.

It is well-settled law that a party challenging venue or personal jurisdiction waives his right to those challenges by seeking or accepting affirmative relief from the Court before having those challenges heard.  *See Bel-Ray Co. v. Chemrite Ltd*., 181 F.3d 435, 443 (3rd Cir. 1999) (noting that "in particular, where a party seeks affirmative relief from a court, it normally submits itself to the jurisdiction of the court with respect to the adjudication of claims arising from the same subject matter"), quoting *Adam v. Saenger*, 303 U.S. 59, 82 L. Ed. 649, 58 S. Ct. 454 (1938); *see also Wyrough & Loser, Inc. v. Pelmor Lab., Inc.*, 376 F.2d 543, 547 (3rd Cir. 1967) (holding that even if a defendant

challenges personal jurisdiction at the outset of the case, participation in seeking relief from the court before having that challenge heard by the court waived his jurisdiction challenge). That is exactly what has happened in this case – UnionBanCal has waived its jurisdictional challenge by seeking and obtaining relief from the Court before having its challenge heard. For these reasons, UnionBanCal's Motion should be denied in its entirety.

## IV.     CONCLUSION AND PRAYER

Based on the foregoing, Plaintiff DataTreasury Corporation respectfully requests that the Court DENY UnionBanCal's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2). Plaintiff prays for any further relief to which it is entitled.

Respectfully submitted,

**/S/ R. BENJAMIN KING**_____
**R. BENJAMIN KING**
State Bar No. 24048592
**ANTHONY BRUSTER**
State Bar No. 24036280
**C. CARY PATTERSON**
State Bar No. 15587000
**BRADY PADDOCK**
State Bar No. 00791394
**NIX PATTERSON & ROACH L.L.P.**
2900 St. Michael Drive, Suite 500
Texarkana, Texas 75503
903.223.3999 (telephone)
903.223.8520 (facsimile)
akbruster@nixlawfirm.com
bpaddock@nixlawfirm.com
benking@nixlawfirm.com

**EDWARD CHIN**
State Bar No. 50511688
**ROD COOPER**

State Bar No. 90001628
**EDWARD L. VON HOHN**
Attorney in Charge
State Bar No. 09813240
**NIX  PATTERSON & ROACH, L.L.P.**
Williams Square
5215 North O'Connor Blvd., Suite 1900
Irving, Texas  75039
972.831.1188 (telephone)
972.444.0716 (facsimile)
edchin@nixlawfirm.com
rcooper@cooperiplaw.com
edhohn@nixlawfirm.com


**JOE KENDALL**
State Bar No. 11260700
**KARL RUPP**
State Bar No. 24035243
**PROVOST * UMPHREY, L.L.P.**
3232 McKinney Avenue, Ste. 700
Dallas, Texas 75204
214.744.3000 (telephone)
214.744.3015 (facsimile)
jkendall@provostumphrey.com
krupp@provostumphrey.com


**ERIC M. ALBRITTON**
State Bar No. 00790215
**ALBRITTON LAW FIRM**
P.O. Box 2649
Longview, Texas 75606
903.757.8449 (telephone)
903.758.7397 (facsimile)
ema@emafirm.com


**T. JOHN WARD, JR.**
State Bar No. 00794818
**LAW OFFICE OF T. JOHN WARD, JR.**
P.O. Box 1231
Longview, Texas 75601
903.757.6400 (telephone)
903.757.2323 (facsimile)
jw@jwfirm.com


***ATTORNEYS FOR PLAINTIFF
DATATREASURY CORPORATION***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on the 16th day of February, 2007 via electronic transmission.

Bank of America - Listserve (BankofAmericaF&R@fr.com)
BB&T ListServe (BB&T_DataTreasury@kilpatrickstockton.com)
Citizens Financial (citizensfinancial@standleyLLP.com)
City National Bank - Listserve (citynationalbank@dmtechlaw.com)
Comerica Bank 007 Listserve (Comerica_DataTreasury@kilpatrickstockton.com)
Compass/First Horizon/TN Bank - Listserve (comfhft@andrewskurth.com)
Cullen/Frost Bank - Listserve (frostbank@dmtechlaw.com)
EDS - Listserve (EDS_DataTreasury@mckoolsmith.com)
UBS – Listserve (ubsamericas@velaw.com)
HSBC North America Holdings, Inc./HSBC Bank USA Listserve (hsbccounsel@blhc-law.com)
BancorpSouth Listserve (bxs@hughesluce.com)
Bank of Tokyo Listserve (BankofTokyo_DataTreasury@sidley.com)
BofNY Listserve (BofNYLitTeam@pillsburylaw.com)
The Clearing House/SVPCo Listserve (TCH_DT@sullcrom.com)
Deutsche Bank Listserve (DeutscheBank_DataTreasury@sidley.com)
First Citizens Listserve (firstcitizens@bakerbotts.com)
First Data Listserve (FirstData_DataTreasury@sidley.com)
Key Bank Listserve (KeyCorp_DataTreasury@mckoolsmith.com)
LaSalle Bank Listserve (LaSalleBank_DataTreasury@sidley.com)
National City Bank Listserve (foley-dtc@foley.com)
Remitco Listserve (Remitco_DataTreasury@sidley.com)
Telecheck Listserve (Telecheck_DataTreasury@sidley.com)
Union BofCA Listserve (ubofclitteam@pillsburylaw.com)
Viewpointe Listserve (Viewpointe_dtc@skadden.com)
Zion First National Bank Listserve (foley-dtc@foley.com)
Harris Bancorp. - Listserve (Harris_DataTreasury@mckoolsmith.com)
M&T 007 Listserve (M&T_DataTreasury@kilpatrickstockton.com)
PNC Bank - Listserve (PNC_DataTreasury@mckoolsmith.com)
Suntrust - Listserve (SunTrust_DataTreasury@mckoolsmith.com)
U.S. Bancorp – Listserve (foley-dtc@foley.com)
Wachovia 007 Listserve (Wachovia_DataTreasury@kilpatrickstockton.com)
Wells Fargo - Listserve (*DalWellsFargo_DTC@BakerNet.com)

**/S/ R. BENJAMIN KING**

**R. BENJAMIN KING**