# UB 10-Q 3/31/2004

**Table of Contents**

# Section 1: 10-Q (FORM 10-Q AS OF MARCH 31, 2004)

===============================================================================

```
                             UNITED STATES
                   SECURITIES AND EXCHANGE COMMISSION
                        WASHINGTON, D.C. 20549

                              FORM 10-Q

        |X| QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(D) OF
                 THE SECURITIES EXCHANGE ACT OF 1934

           FOR THE QUARTERLY PERIOD ENDED MARCH 31, 2004

                 COMMISSION FILE NUMBER 1-15081

                        UNIONBANCAL CORPORATION
           (Exact name of registrant as specified in its charter)

                                     94-1234979
         DELAWARE                    (I.R.S. Employer
   (State of Incorporation)          Identification No.)

                      400 CALIFORNIA STREET
              SAN FRANCISCO, CALIFORNIA 94104-1302
            (Address and zip code of principal executive offices)

              Registrant's telephone number: (415) 765-2969

     Indicate  by check mark  whether the  registrant  (1) has filed all reports
required to be filed by Section 13 or 15(d) of the  Securities  Exchange  Act of
1934  during  the  preceding  12 months  (or for such  shorter  period  that the
registrant was required to file such reports),  and (2) has been subject to such
filing requirements for the past 90 days. Yes X  No
                             ---   ---

     Indicate by check mark whether the registrant is an  accelerated  filer (as
defined in Rule 12b-2 of the Act). Yes X  No
                 ---   ---


     Number of shares of Common Stock outstanding at April 30, 2004: 147,576,209
```

===============================================================================

```
           UNIONBANCAL CORPORATION AND SUBSIDIARIES

                      TABLE OF CONTENTS

                                              PAGE
                                             NUMBER
                                             ------
PART I
FINANCIAL INFORMATION
```

Dockets.Justia.com

Consolidated Financial Highlights........................................ 2
Item 1. Financial Statements:
  Condensed Consolidated Statements of Income........................... 3
  Condensed Consolidated Balance Sheets................................ 4
  Condensed Consolidated Statements of Changes in Stockholders' Equity... 5
  Condensed Consolidated Statements of Cash Flows...................... 6
  Notes to Condensed Consolidated Financial Statements.................. 7
Item 2. Management's Discussion and Analysis of Financial Condition and
        Results of Operations:
  Introduction......................................................... 21
  Executive Overview................................................... 21
  Financial Performance................................................ 23
  Net Interest Income.................................................. 25
  Noninterest Income................................................... 27
  Noninterest Expense.................................................. 27
  Income Tax Expense................................................... 27
  Loans................................................................ 28
  Cross-Border Outstandings............................................ 30
  Provision for Credit Losses.......................................... 30
  Allowance for Credit Losses.......................................... 31
  Nonperforming Assets................................................. 35
  Loans 90 Days or More Past Due and Still Accruing.................... 36
  Quantitative and Qualitative Disclosures About Market Risk........... 36
  Liquidity Risk....................................................... 40
  Regulatory Capital................................................... 41
  Business Segments.................................................... 42
  Certain Business Risk Factors........................................ 49
Item 3. Quantitative and Qualitative Disclosure about Market Risk........ 52
Item 4. Controls and Procedures......................................... 53
PART II
OTHER INFORMATION
  Item 1. Legal Proceedings............................................ 54
  Item 2. Changes in Securities, Use of Proceeds and Issuer Purchases of
          Equity Securities............................................ 54
  Item 4. Submission of Matters to a Vote of Security Holders.......... 55
  Item 6. Exhibits and Reports on Form 8-K............................. 56
  Signatures........................................................... 57

**Table 1**

PART I. FINANCIAL INFORMATION
UNIONBANCAL CORPORATION AND SUBSIDIARIES
CONSOLIDATED FINANCIAL HIGHLIGHTS
(UNAUDITED)

| | AS OF AND FOR THE THREE MONTHS ENDED | | |
| (DOLLARS IN THOUSANDS, EXCEPT PER SHARE DATA) | MARCH 31, 2003 | MARCH 31, 2004 | PERCENT CHANGE |
| --- | --- | --- | --- |
| RESULTS OF OPERATIONS: | | | |
| Net interest income(1)................................ | $ 391,404 | $ 401,223 | 2.51% |
| (Reversal of) provision for credit losses............ | 30,000 | (5,000) | nm |
| Noninterest income................................... | 185,771 | 211,205 | 13.69 |
| Noninterest expense.................................. | 342,600 | 373,106 | 8.90 |
| Income before income taxes(1)........................ | 204,575 | 244,322 | 19.43 |
| Taxable-equivalent adjustment........................ | 624 | 802 | 28.53 |
| Income tax expense................................... | 68,434 | 86,033 | 25.72 |
| Net income........................................... | $ 135,517 | $ 157,487 | 16.21% |

PER COMMON SHARE:

# Section 2: EX-10 (EXHIBIT 10-1 EMPLOYMENT AGREEMENT)

EXHIBIT 10.1

EXECUTIVE AGREEMENT
-------------------

THIS AGREEMENT, effective as of April 1, 2004 , is entered into by and between Union Bank of California, N.A., a National Banking Association (the "Bank"), and Philip B. Flynn ("Mr. Flynn"), an individual.

WHEREAS, Mr. Flynn currently is employed by the Bank as an Executive Vice President and its Chief Credit Officer;

WHEREAS, Mr. Flynn has been designated a policy making officer of the Bank and UnionBanCal Corporation ("UNBC");

WHEREAS, Mr. Flynn and UNBC are parties to a Change-of-Control Agreement dated May 1, 2003 (the "Change-of-Control Agreement");

WHEREAS, the parties wish to terminate and supersede the existing terms and conditions of Mr. Flynn's employment with the Bank, including but not limited to that certain Employment Agreement between Mr. Flynn and the Bank, dated September 21, 2000 and subsequent amendments and modifications thereto (the "2000 Employment Agreement"), but excluding the Change-of-Control Agreement; and

WHEREAS, the Bank desires to continue to secure the services of Mr. Flynn and Mr. Flynn desires to perform services for the Bank on the terms and conditions set forth in this Agreement;

NOW THEREFORE, in consideration of the foregoing and of the material promises and conditions contained in this Agreement, the parties agree as follows:

1. REPRESENTATIONS AND WARRANTIES.
   ------------------------------

The Bank represents that it is fully authorized to enter into this Agreement. Mr. Flynn warrants that he is under no employment contract, bond, confidentiality agreement, or any other obligation which would violate or be in conflict with the terms and conditions of this Agreement or encumber his performance of duties assigned to him by the Bank. Mr. Flynn further warrants that he has not signed or committed to any employment or consultant duties or other obligations which would divert his attention from the duties assigned to him by the Bank under this Agreement. The parties do not intend to include within the meaning of this paragraph Mr. Flynn's service, in accordance with Bank policy, for nonprofit, charitable, or trade associations or on the boards of directors or other governing bodies of business enterprises unrelated to the Bank and not in a business competitive with a business of the Bank.

-1-

2. EMPLOYMENT AND DUTIES.
   ---------------------

Mr. Flynn shall be employed as a Vice Chair of the Bank and as Group Head of its Commercial Financial Services Group ("CFSG"). Mr. Flynn also shall hold the position of Vice Chair of UNBC. Mr. Flynn hereby accepts such employment. Mr. Flynn shall devote his time, ability, attention, energy, knowledge and skill to performing all reasonable duties as a Vice Chair and CFSG Group Head as assigned to him by the Bank's Chief Executive Officer ("CEO"), the Bank's Board of Directors (the "Board") and/or UNBC's Board of Directors (the "UNBC Board") (when referred to collectively with the Bank's Board, the "Boards"). In addition, Mr. Flynn shall continue to serve as a policy making officer of the

Bank and of UNBC.

3. NOMINATION TO UNBC BOARD OF DIRECTORS.
   ----------------------------------------

    Mr. Flynn's name shall be included on the slate of directors for election
to the UNBC Board by the UNBC shareholders at the next regular election
following the effective date of this Agreement. If so elected, Mr. Flynn's
service as a director of the UNBC Board (a "Director") shall be subject to the
UNBC Board's normal policies, including its retirement policy. Neither the Bank
nor UNBC shall be obligated to include Mr. Flynn's name on any subsequent slate
of directors for election to the UNBC Board by the UNBC shareholders, nor shall
a decision not to place Mr. Flynn's name on any such subsequent slate be deemed
a breach of any duty or obligation owed by the Bank and/or UNBC to Mr. Flynn
under this Agreement. Mr. Flynn acknowledges that his nomination for Director is
not a guarantee of election or reelection by UNBC's shareholders, nor is Mr.
Flynn's election as a Director a guarantee that he will remain a Director for
any specified period of time.

4. TERM OF AGREEMENT; RENEWAL.
   ---------------------------

    The term of this Agreement shall commence on the effective date hereof and
end thirty-six (36) months after such date (the "Term"); provided, however, that
commencing on the date one year after the date hereof and on each annual
anniversary of such date (a "Renewal Date"), unless terminated earlier in
accordance with the provisions of paragraph 7 hereof, the Term shall be
automatically extended so as to terminate thirty-six (36) months from such
Renewal Date, unless, at least sixty (60) days prior to any Renewal Date, the
Bank has provided written notice to Mr. Flynn that the Term shall not be so
extended.

5. COMPENSATION AND ADDITIONAL BENEFITS.
   -------------------------------------

    a. COMPENSATION. Mr. Flynn's compensation shall be subject to annual
       ------------
    review and adjustment based on competitive market analysis, the
    recommendation of the Bank's CEO, and approval by the Executive
    Compensation and Benefits Committee of the Bank's Board of Directors (the
    "Board") or any other committee constituted by the Board for this purpose
    (as applicable, the "Committee"). It is the parties' intention that Mr.
    Flynn's overall compensation be competitive with overall compensation for
    comparable executive positions at banks of similar size and focus, with
    year-to-year

-2-

variations based on Mr. Flynn's performance and the performance of the Bank. The
elements of Mr. Flynn's compensation shall be:

        (i) BASE SALARY. In consideration for Mr. Flynn's services to the
            -----------
        Bank, Mr. Flynn shall receive a base salary of not less than Four
        Hundred Seventy Five Thousand Dollars ($475,000.00) per annum to be
        paid in equal installments as per the Bank's salary administration
        program. Such amount, as may be increased from time to time, shall be
        referred to herein as "Base Salary."

        (ii) SENIOR MANAGEMENT BONUS PLAN. Mr. Flynn shall continue to
             -------------------------------
        participate in the Bank's Senior Management Bonus Plan or any
        successor thereto (the "Bonus Plan"), subject to the eligibility
        requirements and other terms and conditions of the Bonus Plan and the
        determinations of the administrator of such plan pursuant to the terms
        thereof. Mr. Flynn's target bonus under the Bonus Plan for 2004 shall
        be ninety percent (90%) of Base Salary.

        (iii) LONG TERM INCENTIVES. Mr. Flynn shall be eligible for long
              --------------------

term incentive awards available to policy making officers. Awards may consist of one or more types of long term incentives, including the grant of stock options and restricted stock under the UnionBanCal Corporation Management Stock Plan or any successor thereto (the "Stock Plan") and the award of performance shares under the UnionBanCal Corporation Performance Share Plan or any successor thereto (the "Performance Share Plan"), with a total target economic value for 2004 of approximately one hundred seventy five percent (175%) of Mr. Flynn's Base Salary. Any awards of long term incentives shall be subject to the terms and conditions of the Stock Plan and the Performance Share Plan, as applicable, and the determinations of the respective administrators of such plans pursuant to the terms thereof.

b. ADDITIONAL BENEFITS. During his employment under this Agreement:
   -------------------

   (i)  RETIREMENT AND 401(K) PLAN.  Mr. Flynn shall be entitled to
        ----------------------------
participate in the Bank retirement and 401(k) plans that are now or hereafter will be in effect, subject to the eligibility requirements and other terms and conditions of such plans and the determinations of the administrator of such plans pursuant to the terms thereof.

   (ii)  SUPPLEMENTAL RETIREMENT BENEFITS.  During his employment
         ----------------------------------
under this Agreement, Mr. Flynn shall be a participant under the Bank's Supplemental Executive Retirement Plan for Policy Making Officers (the "PMO SERP") and under the Union Bank Executive Supplemental Benefit Plan (the latter of which is a plan of a predecessor of the Bank), subject to the terms and conditions of such plans and the determinations of the administrators of such plans pursuant to the terms thereof.

                              -3-

   (iii)  INSURANCE AND WELFARE PLANS.  Mr. Flynn and his eligible
          ------------------------------
dependents shall be eligible to receive such other benefits or rights as may be provided under any employee benefit plan provided by the Bank that is now or hereafter will be in effect (including participation in life, medical, disability, dental and vision insurance plans), subject to eligibility requirements and other terms and conditions of such plans and the determinations of the administrators of such plans pursuant to the terms thereof.

   (iv)  DEFERRED COMPENSATION.  Mr. Flynn shall be entitled at his
         ----------------------
discretion to defer payment of any or all cash compensation due to him under this Agreement under the Bank's Senior Management Deferred Compensation Plan or any successor thereto, subject to the eligibility requirements and other terms and conditions of such plan and the determinations of the administrator of such plan pursuant to the terms thereof.

   (v)  PRIOR AWARDS OF RESTRICTED STOCK.  Awards of restricted stock
        ----------------------------------
previously granted to Mr. Flynn under the 2000 Employment Agreement shall continue to vest on the schedule and be subject to the other provisions set forth in subparagraph 4(c) of the 2000 Employment Agreement (which shall be deemed to be incorporated herein as if set out in full herein), but in all other respects, shall continue to be subject to the terms and conditions of the Stock Plan and the determinations of the administrator of such plan. For purposes of this subparagraph 5(v), references in subparagraph 4(c) of the 2000 Agreement to "subparagraphs 7(a), 7(b), 7(d) or 7(f)" shall be deemed to be references to subparagraphs 7(a), 7(b), 7(d) and 7(f), respectively, of this Agreement.

   (vi)  BENEFITS.  Generally, Mr. Flynn shall be eligible for and

participate in all of the Bank's employee benefit, incentive, equity and perquisite plans and programs, including without limitation, the Bank's Separation Pay Plan, (and any successors or additions thereto), on a basis at least as favorable as that of similarly situated executives and/or policy making officers, as the case may be, subject to the eligibility requirements and other terms and conditions of such plans and programs and the determinations of the administrators of such plans and programs pursuant to the terms thereof.

6. OUTSIDE ACTIVITIES AND NON-COMPETITION.
   ---------------------------------------

During the term of this Agreement, and subject to paragraph 1, Mr. Flynn shall devote his time, ability, attention, energy, knowledge and skill to the business of the Bank, including as a Director. During the term of this Agreement, Mr. Flynn shall not, directly or indirectly, either as an employee, employer, consultant, agent, principal, partner, shareholder, corporate officer, director, or in any other capacity, engage or assist any third party in engaging in any business competitive with the business of the Bank, UNBC, or their subsidiaries, without the written approval of the CEO. Investments in publicly traded corporations through brokerage accounts or in mutual funds, investments through private equity funds in which Mr. Flynn has less than a one

-4-

percent (1%) interest, or depositor/borrower relationships with other financial institutions are not intended to be covered by this paragraph. Following his employment with the Bank, Mr. Flynn shall not engage in unfair competition with the Bank or aid others in any unfair competition with the Bank. For purposes of this Agreement, "unfair competition" shall mean a violation by Mr. Flynn of any continuing obligation he may have pursuant to the Bank's Business Standards of Conduct regarding the use or disclosure of the Bank's confidential information, but shall not include use or disclosure by Mr. Flynn of the Bank's confidential information where such information has become generally known in the financial services industry other than through an improper act of Mr. Flynn or Mr. Flynn's legally required reporting or disclosure of such information.

7. TERMINATION OF EMPLOYMENT.
   -------------------------

This Agreement shall terminate as follows:

   a. BY DEATH. This Agreement shall be terminated upon the death of Mr.
      --------
Flynn. The Bank's total liability to Mr. Flynn in the event of termination of Mr. Flynn's employment under this subparagraph shall be limited to the payment (on his behalf) of Mr. Flynn's salary, benefits and other compensation as set forth in paragraph 5 of this Agreement through the effective date of termination and any other benefits or rights under any benefit plan or program pursuant to the terms thereof.

   b. BY DISABILITY. If Mr. Flynn fails to perform his duties hereunder
      -------------
by reason of any physical or mental incapacity, for a period of more than one hundred eighty (180) days in the aggregate in any three hundred sixty five (365) day period, then, to the extent permitted by law, the Bank may terminate Mr. Flynn's employment on written notice given while he remains so disabled. The Bank's total liability to Mr. Flynn in the event of termination of Mr. Flynn's employment under this subparagraph shall be limited to the payment of Mr. Flynn's salary, benefits and other compensation as set forth in paragraph 5 of this Agreement through the effective date of termination and any other benefits or rights under any benefit plan or program pursuant to the terms thereof. Nothing in this paragraph 7 is intended to preclude Mr. Flynn from exercising any rights he may have under the Bank's Short Term Disability Plan or Long Term Disability Plan or any respective successors thereto, in accordance with the eligibility requirements and other terms and conditions of such plans.

   c. FOR CAUSE. The Bank reserves the right to terminate this Agreement

```
    - - - - - - - - -
```
immediately, at any time, if: Mr. Flynn (i) fails to attempt in good faith
to perform the duties which he is required to perform under the terms of
this Agreement after written notice and a reasonable opportunity to cure
such failure; (ii) commits any material act of dishonesty, fraud,
misrepresentation or willful misconduct with regard to the Bank or in the
performance of his duties hereunder which would violate the Bank's Business
Standards of Conduct; (iii) is guilty of gross carelessness with regard
to a material matter in the performance of his duties; (iv) fails to obey the
written lawful direction of the Bank's CEO, the Board and/or the UNBC
Board; or (v) is convicted of, or pleads nolo

-5-

contendere to, a felony or any other crime involving fraud, dishonesty or a
breach of trust. Nothing in the preceding sentence is intended to include
legally required or other reporting or disclosure by Mr. Flynn of financial
information regarding the Bank in the ordinary course of his employment as
a Vice Chair, CFSG Group Head, or any other title or position he may hold
during the term of this Agreement. The Bank's total liability to Mr. Flynn
in the event of termination of Mr. Flynn's employment under this
subparagraph shall be limited to the payment of Mr. Flynn's salary,
benefits and other compensation as set forth in paragraph 5 of this
Agreement through the effective date of termination and any other benefits
or rights under any benefit plan or program pursuant to the terms thereof.

    d.  WITHOUT CAUSE. The Bank reserves the right to terminate this
           --------------
Agreement without cause, for any reason and at any time, by written notice
to Mr. Flynn from the CEO. In the event of termination under this
subparagraph 7(d), and subject to the conditions set forth herein, Mr.
Flynn shall be entitled to receive the payments described in (i) and (ii)
below without any obligation to mitigate and without offset for any other
amounts earned.

    (i) If Mr. Flynn has not yet attained age 65 at the time of his
termination of employment, and provided Mr. Flynn executes the
"General and Special Release" (attached hereto as Exhibit A), then in
consideration for such Release, the Bank will provide Mr. Flynn with:

    (A) The greater of (I) two years of separation pay payable
as salary continuation on a payroll by payroll basis, in an
amount equal to Mr. Flynn's Base Salary at the time of his
termination, plus a prorated bonus amount each payroll period
equal to the average of Mr. Flynn's annual bonus (excluding any
amount that represents an award of long term incentives by the
Bank) for the three (3) most recent bonus determination years
divided by the number of payroll periods in the year, or (II) the
salary continuation amount payable under the Bank's then existing
separation pay plan; and

    (B) Benefits (other than salary continuation) available
and/or payable to similarly situated executives and policy making
officers under the Bank's separation pay plan in effect at the
time of his termination of employment. A true and correct copy of
the Bank's Separation Pay Plan as in effect on the date of this
Agreement is attached hereto as Exhibit B. Grants of equity
awarded to Mr. Flynn prior to his termination of employment under
this Agreement shall be treated as provided for in the applicable
grant agreement, Board resolution, UNBC Board resolution, or Bank
policy.

    (ii) The Bank will provide Mr. Flynn with salary, benefits and
other compensation as set forth in paragraph 5 of this Agreement
through the effective

-6-

Page 65 of 75

date of termination and any other benefits or rights under any benefit
plan or program pursuant to the terms thereof.

A termination of this Agreement on account of Mr. Flynn's disability
shall be governed by subparagraph 7(b) and not this subparagraph 7(d). In
addition, in the event Mr. Flynn dies while receiving salary continuation
benefits under subparagraph 7(d)(i)(A) above, then Mr. Flynn shall have the
remaining salary continuation, if any, paid to his Designated Beneficiary
under Exhibit C attached hereto.

e. BY MR. FLYNN WITHOUT CAUSE. Mr. Flynn reserves the right to
-----------------------------
terminate this Agreement for any reason (other than the reason set forth in
subparagraph 7(f)) upon reasonable written notice to the Bank. The Bank's
total liability to Mr. Flynn in the event of termination of Mr. Flynn's
employment under this subparagraph shall be limited to the payment of Mr.
Flynn's salary, benefits and other compensation as set forth in paragraph 5
of this Agreement through the effective date of termination and any other
benefits or rights under any benefit plan or program pursuant to the terms
thereof.

f. BY MR. FLYNN FOR CAUSE. Subject to the further conditions next
----------------------
described, Mr. Flynn may terminate this Agreement by giving sixty (60)
days' written notice to the Bank of the occurrence of any of the following:
(i) a reduction in title as set forth in paragraph 2 hereof (including Mr.
Flynn no longer serving in the capacity or under the title of Vice Chair,
Group Head of CFSG, or policy making officer), (ii) a material reduction of
his duties, authority or responsibility, (iii) a material reduction in his
overall compensation package other than as a result of the competitive
market analysis and/or year-to-year variations based on performance
described in subparagraph 5(a) hereof, (iv) a reduction in Base Salary, (v)
a failure by the Bank to nominate Mr. Flynn for election as a Director
pursuant to paragraph 3 hereof, (vi) a failure by the Bank to provide
employee benefits (including equity, incentives and perquisites) to Mr.
Flynn on a basis at least as favorable as that which it provides to other
similarly situated executives and/or policy making officers, as the case
may be, as set forth in subparagraph 5(vi) hereof, or (vii) any other
material breach of the provisions hereof by the Bank. In order to elect to
terminate this Agreement pursuant to this subparagraph 7(f), Mr. Flynn must
submit the written notice to the Bank within sixty (60) days of his gaining
knowledge of the applicable act or event. Mr. Flynn shall not be entitled
to elect to terminate this Agreement pursuant to this subparagraph 7(f) if
prior to Mr. Flynn's termination date the Bank corrects the deficiency upon
which Mr. Flynn's election to terminate is based. In the event that Mr.
Flynn is entitled to and elects to terminate this Agreement pursuant to
this subparagraph 7(f), (i) he shall be entitled to receive salary,
benefits and other compensation as set forth in paragraph 5 of this
Agreement through the effective date of termination and any other benefits
or rights under any benefit plan or program pursuant to the terms thereof,
and (ii) if he has not yet attained age 65 at the time of his termination
of employment and further executes the "General and Special Release"
(attached hereto as Exhibit A), then in consideration for such Release, the
Bank will provide Mr. Flynn with the salary continuation and benefits set
forth in subparagraphs 7(d)(i)(A) and (B) without any obligation to
mitigate or offset for other amounts earned. In the event Mr. Flynn dies

-7-

while receiving salary continuation benefits described in subparagraph
7(d)(i)(A) above, then Mr. Flynn shall have the remaining salary
continuation and benefits, if any, paid to his Designated Beneficiary under
Exhibit C attached hereto.

g. RESIGNATION OF POSITIONS. Upon termination of employment for any
-------------------------
reason whatsoever, Mr. Flynn shall be deemed to have resigned from all
offices and positions with the Boards, the Bank, UNBC, and their
subsidiaries. Mr. Flynn agrees that, in connection with his termination
under this Agreement, he will tender such written resignations as required

by the Bank.

8. PROHIBITION OF ASSIGNMENT.

    This Agreement is personal to Mr. Flynn and he may not assign or delegate any of his rights or obligations hereunder without first obtaining the written consent of the Bank.

9. EFFECT ON PRIOR AGREEMENTS.
   --------------------------

    As of the effective date of this Agreement, except as otherwise specifically provided herein, the 2000 Employment Agreement shall no longer have any force or effect, and the parties hereby waive any and all rights to which either party is now or may in the future be entitled to under the 2000 Employment Agreement and any other prior written, verbal or other agreement or understanding between Mr. Flynn and the Bank or any parent, affiliate, subsidiary, predecessor, assign, officer, director, employee, shareholder or agent of the Bank, respectively), regarding the subject matter of this Agreement. Notwithstanding the foregoing, nothing in this paragraph 9 is intended to constitute a waiver by Mr. Flynn of (i) any and all salary, bonus, benefits, reimbursement and all other compensation and other amounts to which Mr. Flynn was entitled through the effective date of this Agreement; or (ii) any rights which Mr. Flynn may have pursuant to the Change-of-Control Agreement.

10. UNBC OR BANK SUCCESSOR.
    ---------------------

    For all purposes under this Agreement, the term "UNBC" shall include any successor to UNBC's business and/or assets, by purchase, merger, consolidation, reorganization, liquidation or otherwise. For all purposes under this Agreement, the term "Bank" shall include any successor to the Bank's business and/or assets, by purchase, merger, consolidation, reorganization, liquidation or otherwise, and, in such an event, for all purposes under this Agreement, the term "UNBC" also shall mean the U.S. parent company to such successor (and, if there is no such U.S. parent company, the successor itself). This Agreement shall inure to the benefit of and be binding upon any such successor to UNBC and the Bank to which Mr. Flynn's employment is transferred. Mr. Flynn's employment shall not be transferred except to a successor, as such term is defined in this paragraph 10, and then only upon such successor assuming the obligation of the Bank hereunder in a writing promptly delivered to Mr. Flynn.

                                -8-

11. ARBITRATION.
    -----------

    Any controversy between the Bank, UNBC or their parent companies, subsidiaries and affiliates and Mr. Flynn arising out of Mr. Flynn's employment or the termination thereof, involving the construction or application of any of the terms, provisions or conditions of this Agreement, or otherwise arising out of or relating to this Agreement and any controversy arising out of or relating to Exhibit A to this Agreement (the "General and Special Release") or involving a claim of race, sex, religious, age, disability, medical condition (in and as defined under California law), marital status, veteran status, sexual orientation or national origin discrimination under Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act of 1990, as amended, the Age Discrimination in Employment Act, as amended, the Family and Medical Leave Act, the California Fair Employment and Housing Act, or any other federal, state or local laws, shall be settled by arbitration in accordance with the employment dispute resolution or other applicable rules of the American Arbitration Association in effect on the effective date of this Agreement, and judgment on the award rendered by the arbitrator(s) may be entered by any court having jurisdiction thereof. Reasonable limited discovery will be permitted in the form of the right of each party to take the deposition of one individual and any expert witness designated by the other party. Each party shall also have the right to make requests for discovery of relevant documents to the other party. Additional discovery may be had only where the arbitrator so orders, upon a showing of substantial need. The Bank and Mr. Flynn each shall bear their own costs and legal fees associated with the arbitration, except that the arbitrator

                            Page 67 of 75

shall have the right in his  discretion  to award  reasonable  legal fees to the
prevailing party in the  arbitration.  Notwithstanding  the foregoing,  the Bank
shall bear the cost of the  arbitrator  (including  the costs of  establishing  a
facility for and otherwise  administering the arbitration).  The location of the
arbitration  shall be in Los Angeles,  California,  and the arbitration shall be
conducted so as to result in the rendering of the  arbitrator's  decision within
ninety (90) days after the original demand for arbitration. The arbitrator shall
be required to issue written  findings and  conclusions  underlying the basis of
such decision.

    This paragraph 11 of this Agreement  and the obligations provided for herein
shall  survive  the  termination  of this  Agreement and remain in full force and
effect following the termination of Mr. Flynn's employment with the Bank.

    12.  INDEMNIFICATION.
         ---------------

    The Bank and UNBC agree to defend,  indemnify  and hold  harmless Mr. Flynn
from all claims,  causes of action or complaints  made or filed by any party for
acts performed in the course and scope of his employment and attributable to Mr.
Flynn's  employment under this Agreement  (including as a Director) to the fullest
extent  permitted by applicable  law.  The Bank further  agrees that Mr.  Flynn's
rights  under  any  applicable  policy  of  directors  and  officers'  liability
insurance  for acts  performed  in the  course and scope of his  employment  and
attributable  to Mr. Flynn's  employment  under this  Agreement  (including as a
Director) shall not cease upon the  termination of this Agreement,  and the Bank
and UNBC  shall  continue  coverage  of Mr.  Flynn  therefore  thereafter  under
successor  policies.  This paragraph 12 and the obligations  provided for herein
shall survive the termination of this Agreement.


                                    -9-


    13.  MODIFICATION.
         ------------

    Any  modification  of this  Agreement  will be  effective  only if it is in
writing and signed by the parties to be bound thereby.

    14.  ENTIRE AGREEMENT.
         ----------------

    This Agreement  constitutes the entire  agreement  between the Bank and Mr.
Flynn  pertaining to the subject  matter  hereof,  and  supersedes  all prior or
contemporaneous  written or verbal agreements and understandings  with Mr. Flynn
in connection with the subject matter hereof.

    15.  GOVERNING LAW.
         -------------

    Except as otherwise  provided  herein,  this  Agreement  and the rights and
obligations  hereunder  shall be governed by the laws of the State of  Delaware.
The parties to this Agreement  specifically  consent to the  jurisdiction of the
courts  of  California  over  any  action  arising  out of or  related  to  this
Agreement.

    16.  SEVERABILITY.
         ------------

    If any  provision  of this  Agreement  is held by a  court of  competent
jurisdiction  to be invalid,  void or  unenforceable,  the remaining  provisions
shall,  nevertheless, continue in full force and effect without being impaired or
invalidated in any way.

    17.  WAIVER.
         ------

    The  parties  hereto  shall  not be  deemed  to have  waived  any  of their
respective  rights  under this  Agreement  unless  the waiver is in writing  and
signed by such waiving party. No delay in exercising any right shall be a waiver
nor shall a waiver on one occasion operate as a waiver of such right on a future
occasion.

18. NOTICES.
    -------

    All notices  provided for herein shall be in writing and shall be deemed to
have been given when delivered  personally,  when deposited in the United States
mail, registered or certified, postage prepaid, or when delivered to a messenger
service, addressed as follows:

               To the Bank:          Paul E. Fearer
                                      Executive Vice President
                                      Union Bank of California, N.A.
                                      400 California Street
                                      San Francisco, CA 94104


                                 -10-


or to the then current  Director of Resources of the Bank at the time the notice
is given.

               To  Mr. Flynn:        Philip B. Flynn
                                      Vice Chair
                                      Union Bank of California, N.A.
                                      445 South Figueroa Street
                                      Los Angeles, CA 90071

or to Mr. Flynn at such home  address as may be reflected in the Bank's  records
at the time the notice is given.

    19. EXECUTIVE COMPENSATION AND BENEFITS COMMITTEE.
    ---------------------------------------------

    If at the time of a  determination  under this Agreement no Committee is in
existence,  references to the Committee  under this Agreement shall be deemed to
be references to the Board.

    [THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK.]


                                 -11-


    20. WITHHOLDING TAXES.
    -----------------

    The Bank shall withhold and deduct all applicable  federal and local taxes,
as required by applicable laws, from any payments made under this Agreement.

    IN WITNESS WHEREOF,  the parties have executed this Agreement by their duly
authorized officers or agents.

```
Dated:    2/25/04                      UNION BANK OF CALIFORNIA, N.A.
          --------------


                                       By    /S/ PAUL E. FEARER
                                             ---------------------------------
                                              Paul E. Fearer
                                              Executive Vice President


AGREED AS APPLICABLE:

Dated:    2/25/04                      UNIONBANCAL CORPORATION
          ---------------


                                       By    /S/ PAUL E. FEARER
                                             ---------------------------------
                                              Paul E. Fearer
                                              Executive Vice President



Dated:    2/25/04                            /S/ PHILIP B. FLYNN
          ---------------                    ---------------------------------
                                              Philip B. Flynn
```

                                    -12-


                            EXHIBIT A

                     GENERAL AND SPECIAL RELEASE


     1. In return for the  benefits  provided  for in subparagraphs  7(d)(i) or
7(f)(ii) of the Executive  Agreement  entered into as of April 1, 2004 (the
"Agreement"),  the adequacy of which as  consideration  is hereby  acknowledged,
Philip B. Flynn (hereinafter "Mr.  Flynn") hereby fully  releases and forever
discharges  Union Bank of California,  N.A., its parent, affiliated, and
subsidiary corporations,  its and their successors and assigns, and the past and
present  officers,  directors,  employees,  shareholders,  agents  and  employee
benefit  plans of each  (hereinafter  collectively  the "Bank") from any and all
actions,  causes  of  action,  claims,  demands,  damages,  and  liabilities  of
whatsoever  kind or  character,  in law or in  equity,  now  known  or  unknown,
suspected or unsuspected, past or present, that he has ever had or currently may
have against them or any of them including,  but not limited to, claims of race,
sex,  religious,  age,  disability,  medical  condition (in and as defined under
California  law),  marital status,  veteran status, sexual orientation or national
origin  discrimination  under  Title VII of the  Civil  Rights  Act of 1964, as
amended,  the Americans with  Disabilities  Act of 1990,  as amended,  the Age
Discrimination in Employment Act, as amended,  the Family and Medical Leave Act,
the California Fair Employment and Housing Act, and any other federal,  state or
local laws,  arising out of or in any way related to Mr. Flynn's employment with
the Bank or the  termination  of that  employment.  Except as  otherwise  may be
provided  by law,  Mr.  Flynn  further  agrees not to  institute  in any state or
federal  court any action or claim of any kind  against the Bank.  Execution of
this document by Mr. Flynn  operates as a complete bar and defense  against any
and all  current  claims  of any type that may be made by Mr.  Flynn  against the
Bank,  provided,  however, that nothing in this release is intended to affect Mr.
Flynn's  right to seek a remedy in arbitration to resolve any controversy arising
out of the construction or application of the terms,  provisions or conditions of
the  Agreement.  Notwithstanding  the  foregoing,  nothing  in this  Release  is
intended to  constitute  a waiver  by Mr.  Flynn  of any  right  or  claim  to

indemnification or to directors' and officers' liability insurance coverage or any right or claim under any applicable policy of directors' and officers' liability insurance he may have now or in the future have or any rights as a shareholder of the Bank.

2. Mr. Flynn and the Bank understand and expressly agree that the release granted in Paragraph 1 extends to all claims of every nature and kind, known or unknown, suspected or unsuspected, past or present, which Mr. Flynn may have against the Bank arising from or related to his employment with the Bank or the termination of that employment and that any and all rights granted to Mr. Flynn under Section 1542 of the California Civil Code or any analogous state law, federal law, or regulation are hereby expressly waived. Section 1542 of the California Civil Code provides that:

A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

-1-

3. Mr. Flynn agrees that this General and Special Release, the terms and conditions of the Agreement, and any and all actions in accordance therewith, are strictly confidential. Therefore, the terms and conditions of the Agreement shall not be disclosed, discussed, or revealed by Mr. Flynn to any other persons, entities or organization, whether within or outside the Bank, except by Mr. Flynn to his immediate family, attorneys or personal financial advisors, or as may be required by applicable law, or to enforce the terms hereof. The foregoing limitation shall not apply to the extent that the Agreement or this General and Special Release has become part of the public record.

4. Mr. Flynn acknowledges and agrees that in the course of employment with the Bank he has acquired confidential information and trade secrets concerning the Bank, business strategies, corporate structure, regulatory issues, securities, litigation, claims, threatened claims, affiliate transactions, Board of Directors, Board Committee business, government relations, Office of the Comptroller of the Currency relations and other highly private and confidential data (collectively, the "Confidential Information"). Mr. Flynn agrees that he shall not use or disclose any Confidential Information acquired during the course of his employment with the Bank to any third party without the express written consent of the Chief Executive Officer of the Bank; provided, however, that the foregoing shall not apply to (i) information that becomes generally known in the financial services industry other than as a result of improper disclosure by Mr. Flynn and (ii) Mr. Flynn's compliance with a subpoena, court order or other proper legal process or regulatory requirements or inquiry. In the case of (ii), to the extent not otherwise prohibited by law, Mr. Flynn agrees to provide the Bank with prompt notice of the receipt thereof so that the Bank can have the opportunity to object to such disclosure or to obtain a protective order.

5. Mr. Flynn acknowledges and agrees that in the event that he materially breaches the promises set forth in this General and Special Release and/or any of the applicable provisions of the Agreement, and does not cure such breach after written notice thereof, Mr. Flynn shall have no right to the severance payments and benefits provided for under the Agreement.

6. Mr. Flynn has read this instrument, has had the opportunity of consulting with an attorney regarding it, and signs it voluntarily and with the intention of being bound by it. Mr. Flynn understands that he is waiving legal rights by signing this Release.

7. Mr. Flynn acknowledges that he has been given at least twenty-one (21) days within which to consider this Release. Mr. Flynn understands that he may revoke this Release upon written notice to the Bank within seven (7) days after execution of it and that this Release will not become effective or unenforceable until the eighth (8th) day after its execution.

Dated: _____          _____