IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

------------------------------ x
DATATREASURY CORP.,              :    Civil Action No. 2-06-CV-72(DF)
                                 :
            Plaintiff,           :
      v.                         :
                                 :
WELLS FARGO and COMPANY, et al., :
                                 :
            Defendants.          :
                                 :
------------------------------ x

### AFFIRMATION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

I, GERARD F. MILANO, hereby state as follows:

1.  I am Senior Vice President-Check Services of The Clearing House Payments Company L.L.C. ("The Clearing House") and Manager of its SVPCO-Check Services line of business. As part of my responsibilities at The Clearing House, I manage its physical check clearing services. The physical check and electronic clearing services of the Clearing House are operated in the name of its "SVPCO" line of business. There previously was an entity named The Small Value Payments Company L.L.C. (widely known as "SVPCo"), from which the current service mark "SVPCO" derived; but since July 1, 2004, neither "SVPCo" nor "SVPCO" has itself been a separate legal entity.

2. I have been involved in the banking business and in the management of bank payments for more than 40 years. I began my career in banking during high school and college as a part-time employee of a neighborhood savings and loan association in a Chicago suburb. After graduation in 1967 I was hired as a management trainee at First National Bank of Chicago and later was employed by the American Bankers Association ("ABA") in Washington, D.C. After ABA I served as President and Chief Operating Officer of the former Chicago Clearing House Association and then as Executive Director and Chief Operating Officer of the California Bankers Clearing House headquartered in San Francisco. In 2002 Bankers Clearing House merged with the Western Payments Alliance ("WesPay") to form a paper check and electronic payment clearing organization based in California. I was named President and Chief Executive Officer of WesPay at the time of the merger. I joined The Clearing House in my present position in 2004, after The Clearing House acquired the physical check clearing assets of WesPay.

The Check Clearing Process in the U. S.

3. The process of clearing physical checks often involves a group of banks agreeing to exchange checks among themselves. After the exchange is completed an agent, usually a clearinghouse, calculates and prepares the resulting settlement values for posting to the banks' accounts at a Settlement Bank, usually a Federal Reserve Bank. It is a very old procedure. The New York Clearing House Association ("NYCHA"), founded in 1853, was America's first clearing house. NYCHA and its successors, of which The Clearing House is the latest, have cleared checks for

banks every business day since then. Beginning soon after its establishment in 1913, the Federal Reserve System has also been active and central to the U.S. check clearing process. Although electronic payments and settlement processes have been altering the check collection process, substantially in recent years, enormous volumes of paper checks continue to be exchanged by banks each business day.

4. There are several ways that banks collect the value of checks for their depositors. The physical check exchange process at a clearinghouse is the simplest. I'll describe the process in the terms we use in our rules. Each bank (a "Sending Bank") sends checks deposited with it to what is usually a relatively nearby site (a "Designated Exchange Location"), with the checks typically sorted into boxes, bags or envelopes for each of the banks on which the checks are drawn and to which they will be delivered (the "Receiving Banks"). A Receiving Bank (called in such case a "Correspondent Bank") may also agree to receive checks drawn on another bank. Since most Sending Banks and Receiving Banks are located in the same geographic area, the process of check exchange and settlement is local. At designated times each day, the banks exchange checks, each bank receiving checks drawn on it, or on other banks that it has agreed to receive. There is then a process of reconciliation of financial balances by which the total number of dollars owed by each bank to each other bank is calculated and the net amounts due are paid or "settled" by entries to each bank's account with one of the

regional Federal Reserve Banks or with a Correspondent Bank that has agreed to pay for another bank's checks.

5. I have read U. S. Patent 5,265,007 (the "007 Patent") and the complaint in this action, which alleges that The Clearing House infringes unique processes for exchanging and settling checks invented by the Plaintiff. Among the claims of the 007 Patent are a "cycling means" for sequencing settlements and a "continuous monitoring" process for the "sending and receipt status" of checks in transit between banks. The Clearing House does not employ either of these processes in any of its check clearing operations. To make this clear I will describe the various processes that The Clearing House uses for its clearing operations and some variations used by the industry to complete the clearing process.

6. The Clearing House operates check exchanges in three large areas of the United States: Eastern Region, Midwest Region and Western Region (each, a Region). There are eight Designated Exchange Locations in our Eastern Region, one Designated Exchange Location in our Midwest Region and two Designated Exchange Locations in our Western Region. While The Clearing House operates in most major American cities, it is not involved in check exchanges in Texas, which are handled primarily by the National Clearing House Association ("NCHA"), another organization.

7. Banks in each Region exchange checks through The Clearing House facilities in that geographic Region. Exchanges within our Regions simply involve a

Receiving Bank identifying one or more of our Designated Exchange Locations within the Region as a place at which it will receive checks. Checks for that Receiving Bank are shipped by Sending Banks to the Designated Exchange Location, exchanged there, and then transported to the Receiving Bank's processing center by couriers for the receiving participants. The Clearing House calculates settlement for each exchange; some settlements are aggregated before transmission to the Federal Reserve for posting to participants' accounts. While there are verification points in the process, as there have been since 1853, the sending and receipt status of checks in transit is not monitored continuously.

8.  The exchange process varies in each Region to permit efficiencies suited to the operating practices of the participants. For example, in the Eastern Region the several exchange sites are connected by shared courier routes that connect by ground courier to a central hub in New Jersey. Participants in the Eastern Region send packages of checks for other participants to their local exchange site; the shared couriers take the packages for other sites to the New Jersey hub where the packages are sorted for pickup in New Jersey or redelivery by shared courier to the other exchange sites for distribution there.

9.  In the Midwest, participants use both a central distribution hub leased by The Clearing House in Chicago and two sets of shared courier routes that deliver checks directly to Receiving Banks. The first set of courier routes delivers checks to Receiving Banks outside of the Chicago city limits, and the second set of courier routes delivers checks to Receiving Banks in suburban Detroit.

10. In the West, the participants are required by the rules to accept checks drawn on both their Northern California and Southern California branches at both the San Francisco and Los Angeles exchange sites. The Receiving Banks are thus required to transport their own checks to the appropriate processing site.

11. Each Regional settlement aggregates the various exchanges into daily settlement. In the West, the exchange aggregation results in three (3) daily settlements; in the Midwest there are two (2) and a single daily settlement is calculated for the Eastern Region.

12. Sending and Receiving Banks normally make their own separate arrangements for transportation of physical checks to and from Designated Exchange Locations, although The Clearing House sometimes makes such arrangements for them. However, The Clearing House does not monitor the physical movement of checks while they are in transit, either from Sending Banks to Designated Exchange Locations, from Exchange Locations to Receiving Banks or from one Exchange Location to another. The Clearing House does maintain a computerized version of the "Amount Brought Sheet" that it began using in 1853, on which each Sending Bank enters the total dollar amount of checks delivered to each Receiving Bank for settlement that day. The Clearing House settlement system aggregates the Amount Brought Sheets of each participant into net settlement totals for each participant.

13. The Clearing House does not operate any central exchange system or national check clearing site. Instead, our physical exchanges are entirely local or intra-

regional. We are prepared to offer inter-regional check exchange and settlement to banks located in different regions, a process that we market as "National Check Exchange," but so far, no bank has seen fit to use that service for an exchange of original checks. If they did so, such use would involve a Sending Bank shipping checks directly to one of our Designated Exchange Locations in any other Region for delivery to the Receiving Bank based in that Region. Settlement for such checks would then occur through our settlement system during the National Check Exchange settlement. Settlement for the National Check Exchange (described below) is not "coordinated" with any local or Regional settlement and would not be "coordinated" even if original checks were exchanged. If and when any national settlement occurs, it is separate from the local settlement and registered as a separate settlement with the Federal Reserve and would be separate even if original checks were exchanged.

14. The only current participants in our National Check Exchange do not exchange original physical checks, but instead use "Substitute Checks" as permitted under Federal law. The participating Sending Bank makes a digital copy of the original check, transmits it to a distant location, prints a machine processable, MICR encoded Substitute Check at the distant location and sends it by courier to one of our Regional exchanges for presentment to the Receiving Bank participant in another Region. The Substitute Checks are distributed to Receiving Banks at our Designated Exchange Locations and settled in the National Check Exchange settlement separate from the Regional settlements.

15. As mentioned above, there are several ways for banks to collect checks drawn on a bank distant from the bank where the check is deposited. For example, a Sending Bank might send the physical check directly to its local Correspondent or Federal Reserve Bank, which sorts it and sends it on to another Correspondent or Federal Reserve Bank in the region where the Receiving Bank is located, for delivery to the Receiving Bank. In such cases, the Correspondent or Federal Reserve Banks settle the transactions for the banks involved using accounts at the Correspondent or Reserve Bank. Occasionally banks send checks drawn on distant locations directly to the Receiving Bank and collect the value of the checks by wire transfer from the Receiving Bank. This process is known as "Direct Presentment" and, generally, is used only when very large quantities of high value checks are involved, as the cost of delivery to individual processing locations is usually very high. The Clearing House is not involved in these processes.

16. The 12 regional Federal Reserve Banks operate a "national check clearing service" by shipping checks from the Federal Reserve Bank in one Federal Reserve District to Federal Reserve Banks in other Districts. The account maintained by each Receiving Bank at its regional Federal Reserve Bank provides the mechanism by which a settlement of check collection is carried out. (These same accounts are used by the Federal Reserve to complete net settlements for physical checks exchanged at clearinghouses, but clearinghouses are not part of the Fed's "national check clearing service.")

17. I understand that at least one other organization handles the national exchange of physical checks in a different manner. I am informed that, beginning in 1992, Huntington Bancshares Incorporated ("Huntington") of Columbus, Ohio, organized and began providing operating services to the National Clearing House Association ("NCHA"), which provides a physical check exchange service along the lines of the Federal Express Company's well known service for transportation of parcels. In NCHA's system, physical checks are collected each business day from various participating banks and transported, usually by air courier, to a central site near Columbus, Ohio. The checks are sent to Huntington's check processing center, sorted there into packages for delivery by air and ground couriers to other cities for Direct Presentment (described above), thus distributing checks from distant Sending Banks through this central sorting process to Receiving banks across the country for distribution locally. Alternately, the Sending Bank can ship mixed checks for banks in a distant city to another national participant. The receiving national participant processes the checks and collects them through its local clearinghouse, but settles for the original mixed checks through the NCHA. Receiving Banks in the distant cities record the arrival of the packages in a computer system operated by NCHA, thus confirming receipt of the package shipped. Under this process NCHA monitors the physical movement of checks through the Columbus hub operation and markets this process that either precedes or follows the "local" clearinghouse settlements as a "national check clearing" that is coordinated with other clearinghouse settlements around the country.

18. The rules of NCHA require banks participating in national check clearing to belong to a local clearinghouse and require participants in destination cities to receive checks on the other banks in their local clearing house which they subsequently collect through the separate local clearinghouse. In other words NCHA national clearing participants are required to receive checks for other banks in their local clearinghouse whether or not the other banks have deposit accounts with the NCHA participant, relying on the local clearing house and its processes to settle with the NCHA participant for checks cleared in its national clearing service. This process introduces a degree of credit and operating risk into the clearing process that differs from the risks of banks receiving their own checks or the checks of banks maintaining deposit accounts with it. No similar activity is conducted or contemplated by The Clearing House.

19. National check clearing services similar in concept to the Federal Reserve and NCHA have been offered for many years by Liberty National Bank (now JPMC Chase) and First Tennessee (now First Horizon). These systems, which involve a degree of credit risk and dependence on other organizations' settlements, are very different from the way in which The Clearing House operates its National Check Exchange.

Processes Used by The Clearing House

20. To begin, no participant in SVPCO Check Services is required to receive or settle for any checks other than its own unless it chooses to do so. If it does, the first paragraph of the SVPCO – Check Services Participant Agreement (Exhibit A to

Appendix C-1 of the Uniform Rules) provides that a Receiving Bank that "elects to receive a check [drawn on another bank] shall have the same responsibility and liability for the check under the Rules (described below) and other applicable law as the bank [on which the check is drawn] if that bank had received such check through SVPCO – Check Services." In other words, no Receiving Bank is required to receive or pay for any other participant's checks, but, if a Receiving Bank accepts settlement responsibility for checks drawn on another bank, its responsibility is the same as its responsibility for settling for a check drawn on itself and funding comes from its own accounts. There is no coordination in The Clearing House settlement system or under the Uniform Rules between our scheduled settlements and any settlement a Receiving Bank makes with another bank or clearinghouse.

21. The check exchange and settlement process is regulated by a number of sets of rules. The Monetary Control Act of 1980 required the Federal Reserve to make its settlement services available to private entities so that private firms can compete with Reserve Banks for the payments clearing business. This Congressional purpose is accomplished under Federal Reserve Bank Operating Circular No. 12 that permits each bank to designate a "Settlement Agent," such as The Clearing House, to act for it in payment clearing matters with the Federal Reserve Banks as specified in Operating Circular No. 12. To implement arrangements as a Settling Agent under Operating Circular No. 12, The Clearing House (now operating through its SVPCO line of business) has published

SVPCO-Check Services Uniform Rules for Paper Check Exchange (the "Uniform Rules"), under which banks agree to participate. A copy of the current Uniform Rules, as amended through July 1, 2006, is attached as Exhibit A. Checks are sorted by the Sending Bank for delivery to each of the Receiving Banks in packaging described in the Uniform Rules. As explained in Rule 3(a), by the applicable deadline established by The Clearing House each day, a Sending Bank delivers to a Designated Exchange Location the checks to be delivered to Receiving Banks at that location. The checks are then exchanged at that Designated Exchange Location and picked up by or delivered to Receiving Banks. Settlement in accordance with Operating Circular No. 12 among the participating banks is provided for under Rule 14, as supplemented by procedures in Appendix B-2 of the Uniform Rules.

22. The Clearing House maintains no computer system -- either an SQL Server or any other programmable computer(s) -- that ever records information on the transport status of physical checks for the use of participants themselves. No such monitoring occurs in any of our regional settlements, and there are no arrangements for monitoring of check or "Substitute Check" transportation as part of our "National Check Exchange." The Midwest Region provides a list of checks to be delivered to each Receiving Bank at the Designated Exchange Location and on the courier routes. At the request of the participants such lists were eliminated in the other Regions as unnecessary. Of course, participants are knowledgeable in the processing of and accounting for checks in collection. In

many cases, it is a simple matter for them to deduce from our regular settlement report that checks equal to the value reported presented by another bank have not yet arrived or to observe that checks from all but two banks that normally send to them have arrived and that shipments from the other two banks may, if fact, be lost in transit.

23. The Clearing House staff does assist participants in locating packages on the rare occasions when the packages are lost or misdirected in shipment. Assistance in locating lost packages of checks has been part of The Clearing House's business since 1853. Today the assistance process is accomplished from a "help desk" with broadcast e-mails to participants describing the lost package and follow-up telephone calls. A simple data base kept on an electronic spread sheet lists lost check packages as reported to The Clearing House by our participants. The purpose of the list is to assist our help desk personnel in monitoring the lost package cases that are in progress and resolved. Unresolved lost packages are subject to our adjustment rules. The lost packages spread sheet is not connected to our settlement system in any way.

24. In the case of The Clearing House's settlement process, Sending Banks typically include a "cash letter," which is a listing and total of all checks contained within a single shipment, when they send a batch of checks to an Exchange Location. Nothing provides for the monitoring of the physical movement of checks being transported from one place to another, nor is there any provision for sending

checks to a central national location or for coordinating the timing of any "national" settlement with "local" settlements.

25. The Clearing House provides a settlement system for electronic notification of the value and number of checks in cash letters to The Clearing House. Some reports from The Clearing House's settlement system allow Receiving Banks to identify the value of incoming packages of physical checks shortly prior to arrival. These reports are very similar to reports previously prepared by mechanical process and shipped with the physical checks. The computer reports enable banks to better manage the balances in their Correspondent and Federal Reserve accounts, a process required by banking regulation, and to plan work loads in advance of actual receipt of the checks. These plans are made by estimate and experience of the participants, not from a tracking system provided by The Clearing House.

26. The Clearing House also operates a national Online Adjustment System to permit participants to correct errors in exchanges and settlements. The Adjustments System does not track or monitor the delivery status of any checks exchanged. Settlement for The Clearing House's national Online Adjustment System is scheduled after the National Check Exchange and all Regional exchanges each day so that errors can be corrected on the same day they occur.

27. The Clearing House's use of cash letters and electronic cash letters does not include any computer monitoring on a real time basis of the sending and receipt status of the checks, or the status in transit of the instruments. As far as The

Clearing House is concerned, the only scheduled event relating to the physical transport of checks is when they must arrive at a Designated Exchange Location for settlement on a particular day. The Clearing House does not schedule when check shipments must leave a Sending Bank or arrive at a Receiving Bank and there is no required acknowledgement of cash letter delivery by any Receiving Bank involved in The Clearing House settlement process.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Gerard F. Milano
Executed on February 15, 2007