# SVPCO – CHECK SERVICES
# UNIFORM RULES
# FOR PAPER CHECK EXCHANGE

**EFFECTIVE DATES:  As amended through July 1, 2006**

Dockets.Justia.com

# Table of Contents

Page

RULE 1.    DEFINITION OF TERMS.................................................................. 1
RULE 2.    EXCHANGE OF CHECKS – ELIGIBILITY OF CHECKS................... 6
RULE 3.    EXCHANGE OF CHECKS - GENERAL REQUIREMENTS.............. 6
RULE 4.    EXCHANGE OF CHECKS – RETURNED CHECKS...................... 7
RULE 5.    DIRECT AND COURTESY EXCHANGES ................................... 8
RULE 6.    REQUIREMENTS FOR PHOTOCOPIES ..................................... 9
RULE 7.    EXCHANGE OF CHECKS - ADJUSTMENTS BY PARTICIPANTS.... 10
RULE 8.    PROCESS FOR CLAIMING A WARRANTY FOR A REMOTELY CREATED CHECK ........................................................................................ 10
RULE 9.    FORGED AND COUNTERFEIT CHECK WARRANTIES ............... 12
RULE 10.  BANK LIABILITY FOR CHECK ........................................................ 15
RULE 11.  RELATIONSHIP OF CLEARING HOUSE ...................................... 15
RULE 12.  LARGE DOLLAR NOTIFICATION - $100,000,000.00 .................... 15
RULE 13.  REPAIR OF CHECKS ................................................................... 15
RULE 14.  SETTLEMENT ............................................................................... 16
RULE 15.  DESIGNATION OF THIRD-PARTY SERVICE PROVIDER ............. 16
RULE 16.  COMPENSATION .......................................................................... 16
UNIFORM EXHIBITS & APPENDICES .......................................................... 18
Exhibit 1: Uniform Rules Options Designation Sheet .................................... 19
APPENDIX A. UNIFORM APPENDICES ........................................................ 20
    Appendix A-1:  Cash Letter Standards.................................................... 20
    Appendix A-2:  Return Policies ............................................................... 25
    Appendix A-3:  Uniform Adjustment Requirements.................................. 26
    Appendix A-4:  Standard Uniform Adjustment Form ................................ 29
    Appendix A-5:  Disclaimer Form Rule 8 .................................................. 30
    Appendix A-6:  Examples of Rule 8 Scenarios........................................ 31
    Appendix A-7:  Explanatory Charts for Rule 8 Processes........................ 32
    Appendix A-8:  Model Customer Written Statement for Warranty Claim under Rule 8 .. 35
    Appendix A-9:  Disclaimer Form:  Rule 9 ................................................ 38
    Appendix A-10:  Explanatory Charts for Rule 9 Processes....................... 39
    Appendix A-11:  Model Customer Affidavit for Warranty Claim Under Rule 9............... 42
    Appendix A-12:  Compensation Calculation Procedure ............................ 45
APPENDIX B. SUPPLEMENTAL APPENDICES ............................................ 49
Appendix B-1:      Designated Exchange Locations and Deadlines; Procedure for Establishing Routing Numbers; List of Current Routing Numbers by Participant; Sort Patterns    50
    Appendix B-2:  Settlement Procedures ................................................... 51

Appendix B-3:  Emergency/Disaster Processing Requirements ................................... 61
Appendix B-4:  Non-Standard Holidays ........................................................................ 62
Appendix B-5:  Procedures for Handling Dealer Drafts................................................. 63
Appendix B-6:  Third-Party Service Provider Form ...................................................... 64
Appendix B-7:  Contacts – Names and Phone Numbers .............................................. 67
APPENDIX C. ADDITIONAL SUPPLEMENTAL APPENDICES...................................... 68
Appendix C-1:  Procedures for Approval of Applicants ............................................... 69
Appendix C-2:  Description of Powers of Officers and Committees ............................. 75
Appendix C-3:  Liability of PaymentsCo........................................................................ 76
Appendix C-4:  Indemnification of PaymentsCo............................................................ 77
Appendix C-5: Indemnification of Federal Reserve Banks............................................ 79
Appendix C-6:  Merger or Consolidation of Participants ............................................. 81
Appendix C-7:  Merger or Consolidation of a Participant and a Nonparticipant ............ 82
Appendix C-8:  Withdrawal of Participation................................................................... 83
Appendix C-9:  Termination or Suspension .................................................................. 84
Appendix C-10:    Obligation of a Participant on Resignation, Suspension, or Other
Termination of Participation ............................................................................................ 85
Appendix C-11:  Nontransferability of Rights of Participation........................................ 86
Appendix C12:  Binding Agreement; Assignment ......................................................... 87
Appendix C-13:  ECP.................................................................................................... 88
Appendix C-14:  Risk Management ............................................................................... 89
Appendix C-15: Safeguarding Customer Information/Business Continuity ................... 91
Appendix C-16:  SVPCO Online Adjustments................................................................ 96
Appendix C-17:  Relationship Between These Rules and Regional Rules ................... 97
Appendix C-18:  Miscellaneous ................................................................................. 114

# SVPCO—CHECK SERVICES UNIFORM RULES FOR PAPER CHECK EXCHANGE

The purpose of the SVPCO—Check Services UNIFORM RULES FOR PAPER CHECK EXCHANGE ("Rules") is to establish clearing house rules to facilitate the exchange and settlement of checks among Participants of SVPCO—Check Services, Rules 1-16 and Appendix A have been developed with the assistance of the Electronic Check Clearing House Organization "ECCHO") in an effort to promote rules uniformity among clearing houses throughout the nation.  Participants will handle and settle for checks so exchanged in accordance with these Rules. These Rules are "clearinghouse rules" as such term is used in the Uniform Commercial Code and Regulation CC.  Participants must comply with the provisions of the Uniform Commercial Code and Regulation CC in connection with the exchange and settlement of checks through the Clearing House except where such provisions are specifically varied by these Rules.

**RULE 1.    DEFINITION OF TERMS**

    **a)**    For the purposes of these Rules, the terms listed below have the following meanings:

        1)    **Adjustment**.  A claim submitted by one Participant to another Participant to correct an under- or over-settlement relating to a check or checks exchanged under these Rules.

        2)    **Bank**. (i) An insured bank as defined in section 3 of the Federal Deposit Insurance Act (12 USC 1813) or a bank that is eligible to apply to become an insured bank under section 5 of that act (12 USC 1815); (ii) a mutual savings bank as defined in section 3 of the Federal Deposit Insurance Act (12 USC 1813); (iii) a savings bank as defined in section 3 of the Federal Deposit Insurance Act (12 USC 1813); (iv) an insured credit union as defined in section 101 of the Federal Credit Union Act (12 USC 1752) or a credit union that is eligible to make application to become an insured credit union under section 201 of that act (12 USC 1781); (v) a member as defined in section 2 of the Federal Home Loan Bank Act (12 USC 1422); (vi) a savings association as defined in section 3 of the Federal Deposit Insurance Act (12 USC 1813) that is an insured depository institution as defined in section 3 of that act (12 USC 1813(c)(2)) or that is

1

eligible to apply to become an insured depository institution under section 5 of that act (12 USC 1815); (vii) an agency or branch of a foreign bank as defined in section 1(b) of the International Banking Act (12 USC 3101); (viii) any person engaged in the business of banking; (ix) a Federal Reserve Bank; (x) a Federal Home Loan Bank; or (xi) a state or unit of general local government to the extent that the state or unit of general local government acts as a paying bank.

3) **Banking Day**. That part of any business day on which an office of a Bank is open to the public for carrying on substantially all of its banking functions.

4) **Business Day**. A calendar day other than a Saturday, a Sunday or a standard holiday recognized by the Federal Reserve System. Business day shall also not include any non-standard holiday recognized by the Clearing House, as set forth in Appendix B-4.

5) **Check**. A draft payable on demand or a traveler's check drawn on or payable through or at an office of a Bank or the United States Treasury. The term check includes a returned draft or traveler's check otherwise satisfying the requirements of this definition. A draft may be a check even though it is described on its face by another term, such as "money order." A check does not include a noncash item or an item payable in a medium other than United States money. A check includes a substitute check as defined in § 229.2 (aaa) of Regulation CC.

6) **Clearing House**. The Clearing House identified on Exhibit 1.

7) **Collecting Bank**. A Bank, including a Depositary Bank, Presenting Bank, and Returning Bank, handling a check for collection, except for the Paying Bank.

8) **Counterfeit**. A check which is prepared by a person other than the purported drawer without the authorization of the purported drawer and designed to resemble a check prepared by or authorized by the purported drawer.

2

9) **Courtesy Exchange**. An exchange of items between Participants under Rule 5.

10) **Customer**. A person having an account with a Participant or for whom a Participant has agreed to collect checks, including a Bank that maintains an account with a Participant.

11) **Day(s)**. Calendar days. Where a period of time is stated in terms of days, if such period would otherwise end on a calendar day which is not a business day, then such period shall end on the first business day thereafter.

12) **Depository Bank**. The first Bank to which a check is transferred, even though it is also the Paying Bank or the payee.

13) **Designated Authority**. Clearing House entity identified on Exhibit 1.

14) **Designated Exchange Location**. A location established by the Clearing House for the exchange of checks for forward presentment and/or return that has been designated by a Participant for the receipt of checks presented by, or returned by, another Participant in accordance with Rules 3(a) and 4(a) below.

15) **Disclaimer Form**. A claim of a Depository Bank that its obligation is reduced or avoided pursuant to Rules 8 or 9.

16) **Forged and Forgery**. Any fake or otherwise unauthorized or counterfeit signature or check.

17) **Forward Collection**. The process by which a Participant sends a check on a cash basis to the Paying Bank or to another Participant for subsequent sending to the Paying Bank for payment.

18) **Item**. A check, adjustment or warranty claim under Rule 8 or Rule 9 delivered by a Participant to another Participant through the Clearing House.

19) **Machinable Item**.  A check that conforms to the standards of the Accredited Standards Committee X9, as to size, weight of paper, magnetic ink encoding and quality of printing.

20) **Noncash Item**.  An item that would otherwise be a check, except that: (i) a passbook, certificate, or other document is attached; (ii) it is accompanied by special instructions, such as a request for special advice of payment or dishonor; (iii) it consists of more than a single thickness of paper, except a check that qualifies for handling by automated check-processing equipment; or (iv) it has not been pre-printed or post-encoded in magnetic ink with the routing number of the Paying Bank.

21) **Non-Machinable Item**.  A check that is not a Machinable Item.

22) **Participant**.  An entity that is authorized under these Rules to present and/or receive checks to or from other Participants through the Clearing House.

23) **Paying Bank**.  The Bank ordered in a check to make payment.

24) **Presenting Bank**.  A Bank that presents a check (sends a check for forward collection) to a Paying Bank.

25) **Receiving Bank**.  A Participant that receives an item from another Participant through the Clearing House.

26) **Regulation CC**.  Regulation CC of the Board of Governors of the Federal Reserve System, 12 C.F.R. Part 229, as amended from time to time.

27) **Remotely-Created Check**.  A remotely created check as defined in Section 229.2(fff) of Regulation CC.

28) **Returning Bank**.  A Participant that is not the Paying Bank or Depositary Bank handling a returned check or notice in lieu of return.

29) **Rules**.  These Rules for the Clearing House, including the Appendices to the Rules.

30) **Sending Bank**.  A Participant that sends an item to another Participant through the Clearing House.

31) **Third-Party Service Provider**. A commercial data processing service organization, a person operating a data transmission facility, or another entity or Participant providing services to a Participant as described in Rule 15.

32) **Traveler's Check**.  An instrument for the payment of money that (i) is drawn on or payable through or at a bank; (ii) is designated on its face by the term "traveler's check" or by a substantially similar term or is commonly known and marketed as a traveler's check by a corporation or bank that is an issuer of traveler's checks; (iii) provides for a specimen signature of the purchaser to be completed at the time of purchase; and (iv) provides for a countersignature of the purchaser to be completed at the time of negotiation.

33) **Uniform Commercial Code**, Code or UCC.  The Uniform Commercial Code, as adopted in the state identified on Exhibit 1.

34) **UCC Defense**.  For purposes of Rule 9, a UCC Defense is one or more of the following defenses which must be proven by the Depository Bank: (i) that the signature of the purported drawer of the Check is effective under applicable law, (ii) that such drawer is precluded under applicable law from asserting the making of a Forged or otherwise unauthorized signature against either the Paying Bank or the Depository Bank who, in good faith paid the check or took it for value or for collection, or (iii) that by clear and convincing evidence, the Paying Bank failed to use ordinary care (as that term is defined in Section 3.103(a)(7) of the UCC in dealing with the check that is the subject of the warranty in Rule 9(a).

b) Terms defined in Section 1(a) shall have the defined meaning for plural and singular usage and for both capitalized and non-capitalized forms in these Rules.  Any term used in these Rules, including any appendix to these Rules, that is not defined in these Rules shall have the same meaning as in Regulation CC.  In the event such term is not defined in Regulation CC, such

term shall have the same meaning as in the Uniform Commercial Code.

**RULE 2.    EXCHANGE OF CHECKS – ELIGIBILITY OF CHECKS**

a)     Except as also authorized in Rule 12, a check is eligible to be exchanged and settled under these Rules if it has been encoded to indicate the routing symbol of the Paying Bank and the amount of the check in conformity with the current Magnetic Ink Character Recognition specifications as developed by the Accredited Standards Committee X9, including ANS X9.13, and published by ASC X9, Inc.  From time to time, the Designated Authority may, at its discretion, declare other checks eligible for exchange and settlement under these Rules, including any check theretofore held ineligible for exchange or settlement.

From time to time the Designated Authority may, at its discretion, declare checks ineligible for exchange and settlement, including any check theretofore held eligible.

**RULE 3.    EXCHANGE OF CHECKS - GENERAL REQUIREMENTS**

a)     By the applicable deadline established by the Clearing House, a Sending Bank shall deliver to a Designated Exchange Location checks to be delivered to Receiving Banks at that location.  Delivered checks shall be sorted by Sending Bank in accordance with Receiving Bank's sort requirements set forth in Appendix B-1.  A Receiving Bank shall provide the Clearing House with a list of all routing numbers that it will accept at a Designated Exchange Location, in accordance with the procedure in Appendix B-1.  If a Participant delivers a check to a Paying Bank at a Designated Exchange Location that is not for exchange at that location under these Rules, it will be deemed to have failed to deliver the check in accordance with reasonable delivery requirements established by the Paying Bank as set forth in § 229.36(f) of Regulation CC.

b)     All checks exchanged under these Rules shall be indorsed in accordance with the requirements of Section 229.35 and Appendix D of Regulation CC. In the event any check shall not bear the indorsement of the Sending Bank, and the Receiving Bank pays the check, the liability of the Sending Bank shall be the same as though such check had been indorsed.

**c)**     Except as expressly required by these rules, Participants are encouraged, but not required, to comply with the Cash Letter Guidelines in Appendix A-1 for all checks exchanged under these Rules.  All checks exchanged under these Rules shall be enclosed in containers that designate the Receiving Bank that is to receive each such container, or in such other packaging as designated in Appendix A-1.  Each such container or other packaging may contain checks to be delivered to different branches or offices of the same Receiving Bank, as such locations are defined in Appendix B-1.

**d)**     A photocopy complying with the requirements of Rule 6 of a check that was lost, stolen, or destroyed during the collection process may be delivered at a Designated Exchange Location to the Receiving Bank.

**RULE 4.     EXCHANGE OF CHECKS – RETURNED CHECKS**

**a)**     By the applicable deadline established by the Clearing House (as set forth in Appendix B-1), a Participant shall return a check to another Participant at the Designated Exchange Location of the Participant receiving the returned check.  A Participant shall return a check to a Participant in accordance with the return rules set forth in Regulation CC, including without limitation, the rules for return of a check where the Depositary Bank is unidentifiable.

**b)**     A Presenting Bank may dispute a returned check as untimely or for other reasons in accordance with the adjustment procedures specified in Rule 7 and Appendix A-3.

**c)**     A photocopy of a check may be returned in accordance with the requirements of Section 229.30(f) of Regulation CC.

**d)**     A check which has been returned unpaid twice will be ineligible for further delivery under these Rules.  To facilitate compliance with this Rule, the first Participant returning a check shall:

**1)**     Place (or if the Participant is not the Paying Bank, arrange for the Paying Bank to place) on the face of each returned check that it returns unpaid for the first time the rubber stamp impression or its

equivalent, in the format set forth in Appendix A-2, that indicates the reason for the return.

2)    Place (or if the Participant is not the Paying Bank, arrange for the Bank sending the check to the Participant to place) on the face of each returned check that is returned unpaid for the second time a stamp impression stating the reason for the return. The stamp impression shall be placed so that it does not obliterate the payee's name. In the case of second returns, the Participant also must place (or if the Participant is not the Paying Bank, arrange for the Paying Bank to place) a rubber stamp impression or substantially similar to the one set out in Rule 4(d)(1) above. Such stamped impression also shall not obliterate the payee's name.

e)    All checks returned under these Rules shall be enclosed in containers, or in such other packaging as designated in Appendix A-1, that designate the Receiving Bank that is to receive each such container or package. Each container or package may contain checks to be returned to different branches or offices of the same Receiving Bank, consistent with the routing numbers accepted by the Receiving Bank at that Designated Exchange Location.

**RULE 5.    DIRECT AND COURTESY EXCHANGES**

a)    A Participant, in lieu of physical delivery at the Designated Exchange Location of any checks to be settled through the Clearing House, may, with the mutual agreement of another Participant, forward any such checks directly to such Participant; but such checks so forwarded shall be treated as exchanged at the Designated Exchange Location at the next applicable exchange deadline, shall be included in the next settlement through the Clearing House in which such checks are eligible to be included, and shall in all respects remain subject to these Rules.

b)    A Participant may, with the mutual agreement of another Participant, exchange checks with such Participant at any designated Courtesy Exchange. These checks shall be treated as exchanged at the Designated Exchange Location at the next applicable exchange deadline, shall be

included in the next settlement through the Clearing House in which such checks are eligible to be included, and shall in all respects remain subject to these Rules.

**RULE 6.     REQUIREMENTS FOR PHOTOCOPIES**

a)     A photocopy of a check may be exchanged in the forward collection process, in accordance with this Rule.  If exchanging a photocopy for forward collection or sending a photocopy as an adjustment, the Sending Bank shall place the Sending Bank's current indorsement and the following statement or an equivalent on the photocopy:

> "This is a photocopy of the original check which we indorsed and which was reported missing or destroyed in the regular course of bank collection. We guarantee all prior and any missing indorsements and the validity of this copy.  Upon payment of this copy, we agree to hold each collecting bank and the payor bank harmless from any loss suffered, if payment is stopped on the original check and the original check remains unpaid."

The above statement shall be signed by an authorized officer of the Sending Bank.

If a Sending Bank exchanges a photocopy for forward collection or sends a photocopy as an adjustment without the above statement or an equivalent on the photocopy, it (i) guarantees all prior and any missing indorsements and the validity of the photocopy and (ii) agrees, upon payment of the photocopy, to hold each collecting bank and the payor bank harmless from any loss suffered, if payment is stopped on the original check and the original check remains unpaid.

b)     In addition to any other right of return under these Rules or applicable law, a Participant that is a Paying Bank may return a photocopy to the Participant, in compliance with Rule 6(a) and the timeframes in Rule 7 (Adjustments) if the original check was paid and the Participant returns the photocopy and a copy of the front and back of the paid original check.

**c)** Additional requirements for use of a photocopy of an original check are provided in Appendix A-2.

## RULE 7.  EXCHANGE OF CHECKS - ADJUSTMENTS BY PARTICIPANTS

For all adjustments relating to checks exchanged under these Rules, Participants shall comply with the Adjustment Procedures in Appendix A-3   as designated by the Clearing House.

## RULE 8.     PROCESS FOR CLAIMING A WARRANTY FOR A REMOTELY CREATED CHECK

**a)** This Rule sets forth a process for a Receiving Bank that is the Paying Bank to make a claim to a Sending Bank that is the Depositary Bank for a breach of a warranty provided under Section 229.34(d) of Regulation CC (an "RCC warranty") for a remotely created check.  This Rule, or a Bank's use of the process set forth in this Rule, shall not alter, enlarge or diminish the rights of a Paying Bank or any other Bank with respect to a claim or right arising under the warranty provided under Section 229.34(d) of Regulation CC for a remotely created check.

**b)** The Paying Bank may make an RCC warranty claim for a remotely created check by delivering such check to the Clearing House or the Depositary Bank for settlement, in accordance with the Clearing House's rules for returned checks, only if all of the following exist:

1) within 60 days after the account statement which first reflects the remotely created check subject to the RCC warranty has been made available to the Paying Bank's Customer, the Customer completes, signs and delivers to the Paying Bank a written statement under penalty of perjury (the "Customer's written statement") for each such check to the effect that the check was not authorized by the Customer in the amount, and/or to the payee, stated on the check, and delivers such check to the Paying Bank (if Paying Bank does not have possession of check); and

2)    the RCC warranty claim is made for each remotely created check by the Paying Bank by delivering such check to the Clearing House or the Depositary Bank for settlement, in accordance with the Clearing House's rules for returned checks, stamped "Breach of Warranty – [Clearing House Rule 8] – Do Not Redeposit or Re-Present" or with similar language, within 15 business days after the Paying Bank has received its Customer's written statement and check referred to in Rule 8(b)(1).

**c)**    Within 15 business days of receipt of a request from the Depositary Bank for a copy of the Customer's written statement referenced in Rule 8(b)(1), the Paying Bank shall deliver to the Depositary Bank at a place specified in the request a copy of the Paying Bank Customer written statement, which copy shall be certified as a valid copy of the written statement by an officer of the Paying Bank.

**d)**    The Depositary Bank may disclaim the RCC warranty claim if:(1) the Depositary Bank has a defense to the RCC warranty claim under Regulation CC, the UCC or other applicable law, or (2) the Paying Bank has not complied with the time limitations and other requirements under Rule 8(b) or complied with a request for a Customer's written statement under Rule 8(c). To disclaim the RCC warranty claim, the Depositary Bank that received the RCC warranty claim under this Rule 8 may deliver to the Clearing House or the Paying Bank for settlement, in accordance with the Clearing House's rules for return check adjustments, a Disclaimer Form in the form set forth in Appendix A-7, signed by an officer of the Depositary Bank, attached to the RCC warranty claim (the check stamped as required in Rule 8(b)(2)), within 15 business days of receipt of the claim.  In the event the Depositary Bank requests a copy of the Paying Bank Customer's written statement pursuant to Rule 8(c) within the 15 business day period prescribed in the preceding sentence, such 15 business day period may be extended until the expiration of 3 business days after the Depositary Bank receives the requested copy, or if the requested copy is not received, until the expiration of 3 business days after the day on which the Paying Bank is required to have provided such copy under Rule 8(c).  A Depositary Bank that fails to deliver a Disclaimer Form within the time period and in accordance with the requirements prescribed in this Rule 8(d) thereafter waives any right to refuse the RCC

warranty claim under the process set forth in these Rules.  Nothing in these Rules precludes a Depository Bank from disclaiming an RCC warranty claim or otherwise raising a defense to an RCC warranty claim outside of these Rules or the Clearing House process.

e)    A Paying Bank that receives a Disclaimer Form may not return the check or otherwise resubmit the RCC warranty claim for processing through the Clearing House.  Nothing in these Rules precludes the Paying Bank from pursuing its RCC warranty claim provided for in Section 229.34(d) of Regulation CC directly with the Depository Bank outside of the process specified in Rule 8(b).

f)    A Depository Bank's authority to debit the account of its Customer in which the check subject to an RCC warranty claim processed under Rule 8 was deposited for some or all of the RCC warranty claim is governed by applicable law, including the agreement of the Depository Bank and its Customer.

**RULE 9.     FORGED AND COUNTERFEIT CHECK WARRANTIES**

a)    In addition to any other warranties that may be accorded under applicable law, a Sending Bank that is the Depository Bank warrants to a Receiving Bank that is the Paying Bank that with respect to a check that is exchanged under these Rules:

1)    the signature of the purported drawer of the check is not forged or otherwise unauthorized, and

2)    the check is not counterfeit.

b)    A Depository Bank is liable to the Paying Bank under the warranty prescribed in Rule 9(a) only if all of the following exist:

1)    within 60 days after the account statement which first reflects the check subject to the warranty prescribed in Rule 9(a) has been made available to the Paying Bank's Customer, the Customer completes, signs and delivers an affidavit for each such check, specifying in reasonable detail, either that (A) the signature of the purported drawer

of the check is forged or otherwise unauthorized or (B) the check is counterfeit, and returns such check to the Paying Bank;

2)    a warranty claim is made for each check subject to the warranty prescribed in Rule 9(a) by the Paying Bank by delivering such check to the Clearing House or the Depositary Bank for settlement, in accordance with the Clearing House's rules for returned checks, stamped "Breach of Warranty – Clearing House Rule 9 – Do Not Redeposit or Re-Present" or with similar language, within 15 days after the Paying Bank has received its Customer's affidavit and check referred to in Rule 9(b)(1); and

3)    the available amount on deposit in the account of the Customer of the Depositary Bank in which the check subject to the warranty prescribed in Rule 9(a) was deposited is equal to or greater than the amount of the warranty claim on at least one day during the period beginning on the day that the claim is delivered by the Clearing House or the Paying Bank to the Depositary Bank and ending on the day which is the earlier of (A) one day before the Depositary Bank delivers the Disclaimer Form to the Clearing House or the Paying Bank pursuant to Rule 9(d) or (B) up to 15 days following receipt of the warranty claim by the Depositary Bank.

c)    Within 10 business days of receipt of a request from the Depositary Bank for a copy of the affidavit referenced in Rule 9(b)(1), the Paying Bank shall deliver to the Depositary Bank at a place specified in the request a copy of the Paying Bank Customer affidavit referenced in Rule 9(b)(1), and such copy of affidavit shall be certified as a valid copy of the original affidavit by an officer of the Paying Bank.

d)    If the Depositary Bank receiving a warranty claim under Rule 9(a) has a defense under Rule 9(a), (b) or (c), has a defense under the other Clearing House Rules, or has a UCC Defense, the Depositary Bank may deliver to the Clearing House or Paying Bank for settlement, in accordance with the Clearing House's rules for return check adjustments, a Disclaimer Form in the form set forth in Appendix A-9, signed by an officer of the Depositary Bank, attached to the warranty claim (the check stamped as required in

Rule 9(b)(2)), within 15 days of receipt of the claim. In the event the Depositary Bank requests a copy of the Paying Bank Customer affidavit pursuant to Rule 9(c) within the 15 day period prescribed in the preceding sentence, such 15 day period may be extended until the expiration of 3 business days after it receives the requested copy, or if the requested copy is not received, until the expiration of 3 business days after the day on which the Paying Bank is required to have provided such copy under Rule 9(c). A Depositary Bank that fails to deliver a Disclaimer Form within the time period and in accordance with the requirements prescribed in this Rule 9(d) thereafter waives any right to refuse the warranty claim.

e)      A Paying Bank that receives a Disclaimer Form may not return the check or otherwise resubmit the warranty claim for processing through the Clearing House. The Paying Bank may pursue its warranty claim provided for in Rule 9(a) directly with the Depositary Bank outside of the process specified in Rule 9(b).

f)      A Depositary Bank's authority to debit the account of its Customer in which the check subject to a warranty under Rule 9 was deposited for some or all of such warranty claim is governed by applicable law, including the agreement of the Depositary Bank and its Customer.

g)      A participant may adopt Rule 9 of these Rules by subscription, i.e., it may notify the Chief Executive Officer of PaymentsCo that it shall comply with the provisions of Rule 9 with respect to checks returned to it by other Participants that have also adopted Rule 9. A participant's election to adopt Rule 9 by subscription shall become effective 30 days after the Chief Executive Officer of PaymentsCo receives participant's written notice of such election. A participant may elect to discontinue its adoption of Rule 9 by subscription. A participant's election to discontinue its adoption of Rule 9 by subscription shall become effective 90 days after the Chief Executive Officer of PaymentsCo receives participant's written notice of such discontinuance. The Chief Executive Officer shall publish a list of those Participants that have elected to adopt Rule 9. Such list shall appear in the members' only website www.svpco.com.

## RULE 10.    BANK LIABILITY FOR CHECK

A Receiving Bank becomes liable to the Sending Bank for a check pursuant to applicable law.

## RULE 11.    RELATIONSHIP OF CLEARING HOUSE

a)    No agency or subagency relationship of the Clearing House to a Participant for purposes of the exchange of checks shall arise by virtue of the exchange of a check pursuant to these Rules.

b)    Clearing a check by a Participant through the Clearing House shall not affect title to, or ownership of, such check.  Title to such a check shall pass in accordance with applicable law.

## RULE 12.    LARGE DOLLAR NOTIFICATION - $100,000,000.00

Any check for forward collection in a face amount greater than or equal to $100,000,000.00 shall be handled as an exception item.  The Sending Bank is encouraged, although not required, to notify the Receiving Bank prior to the applicable exchange deadline either at the Clearing House or with the Receiving Bank for exchanges under Rule 5.  If a Sending Bank determines to provide such notification, it should make the notification, via telephone, directly to the Receiving Bank's primary and/or secondary contacts (whoever is available) maintained by the Clearing House.  It is, also, strongly suggested that the operations contact for the appropriate shift at the Receiving Bank be notified.

## RULE 13.    REPAIR OF CHECKS

a)    A Sending Bank shall repair the routing number and amount field of a check prior to exchanging it under these Rules.  This repair shall be done on an automated basis without operator intervention or on a manual basis, and the resulting MICR encoding of the check shall comply with the current Magnetic Ink Character Recognition specifications as developed by the Accredited Standards Committee X9, including ANS X9.13, and published by ASC X9, Inc.  A Participant repairing the routing number and amount field warrants that it has correctly repaired those fields.  Damages for breach of this warranty shall not exceed the consideration received by the Sending Bank

for the repaired check, plus interest compensation and expenses related to the check, if any.

b)  A Sending Bank is permitted, but not required, to make repair other than as provided in Rule 13(a) to a machinable item prior to exchanging it under these Rules.  If undertaken, this repair shall be done on an automated basis without operator intervention, and the resulting MICR encoding of the check shall comply with the current Magnetic Ink Character Recognition specifications as developed by the Accredited Standards Committee X9, including ANS X9.13, and published by ASC X9, Inc.  A Participant making such repair shall have no liability for such repair, whether or not the check has been repaired correctly, except for the Participant's gross negligence or willful misconduct.  Liability of a Participant which has been grossly negligent or acted with willful misconduct in connection with such a repair shall not exceed the consideration received by the Participant for the repaired check, plus interest compensation and expenses related to the check, if any.

## RULE 14.    SETTLEMENT

Settlement among Participants shall be accomplished pursuant to the terms of Operation Circular No. 12, "Multilateral Settlement" of the Federal Reserve Banks, as hereafter modified or amended, or such other settlement process approved by the Clearing House.  Additional terms governing settlement among Participants are specified at Appendix B-2.

## RULE 15.    DESIGNATION OF THIRD-PARTY SERVICE PROVIDER

A Participant may designate a Third-Party Service Provider to act on its behalf as agent to exchange items through the Clearing House, or to take any other action under these Rules.  A Participant making a designation pursuant to this Rule 15:  (i) must execute and deliver to the Clearing House an authorization in a form as approved by the Designated Authority, and (ii) shall be fully responsible for all obligations arising from the acts or omissions of its Third-Party Service Provider.

## RULE 16.    COMPENSATION

A Participant shall be entitled to compensation from another Participant according to the terms of, and computed according to the formulas provided in, Appendix A-12.

**Uniform Exhibit & Appendices Follow**

## UNIFORM EXHIBITS & APPENDICES

**Exhibit 1     Rules Options Designation Sheet**

    A.    Legal Name of Clearing House

    B.    Designated Authority

    C.    Applicable Law

    D.    Rule 9 Selection

    E.    Adjust Option Selection

**Appendix A:  Uniform Appendices**

    A-1.    Cash Letter Standards

    A-2.    Return Policies

    A-3.    Uniform Adjustment Requirements

    A-4.    Standard Uniform Adjustment Form

    A-5.    Disclaimer Form:  Rule 8

    A-6.    Examples of Rule 8 Scenarios

    A-7.    Explanatory Charts For Rule 8 Processes

    A-8.    Model Customer Affidavit for Warranty Claim under Rule 8

    A-9.    Disclaimer Form:  Rule 9

    A-10.    Explanatory Charts for Rule 9 Processes

    A-11.    Model Customer Affidavit for Warranty Claim under Rule 9

    A-12.    Compensation Calculation Procedure

**Exhibit 1: Uniform Rules Options Designation Sheet**

A.   Legal Name of Clearing House:  The Clearing House Payments Company L.L.C. ("PaymentsCo"), which operates SVPCO — Check Services.

B.   Designated Authority: Chief Executive Officer of PaymentsCo

C.   Applicable State Law:  Section 4-102(b) of the Uniform Commercial Code (1990 Official Text) shall determine the applicable law that governs the liability of a bank for action or non-action with respect to an item handled by it for purposes of presentment, payment, or collection.

D.   Rule 9 Selection:

☐   Rule 9 will apply to Clearing House Participants as of the following date: __/__/ _

☒   Rule 9 will not apply to Clearing House Participants.

E.   Adjustment Option Selection

☒   Clearing House Participants will use Uniform Adjustment Requirements

☐   Clearing House Participants will use Alternate Uniform Adjustment Requirements

19

**APPENDIX A. UNIFORM APPENDICES**
**Appendix A-1:  Cash Letter Standards**

A.    **Definitions**
  1)    Container - As used in the Rules and this Appendix, a container may include any type of box, bag or other packaging that is typically used by financial institutions to exchange checks.

  2)    Box - Container that may be used as one form of packaging for items to be transported for clearing.  An acceptable check box should hold up to 4,000 checks, grouped as bundles, or up to 10 bundles in a box.

  3)    Bundle - Group of checks, organized by bank, with detail listing attached representing all items in the bundle with an aggregate total for the bundle.

  4)    Cash Letter - Outgoing cash letters are groups of bundles with an aggregate total of all the bundles that make up the cash letter.  For example:

  Cash Letter: Aggregate $ amount representing total of Bundles A through C
  Bundle A: Name, R/T, $ amount of bundle
  Bundle B: Name, R/T, $ amount of bundle
  Bundle C: Name, R/T, $ amount of bundle

  5)    Deposit - One or more cash letters with summary of all aggregate totals. May include up to 15,000 items or, if using box processing, may include up to 5 boxes of checks.  For transit work, this grouping of items should be a deposit.  For inclearings, this grouping of items may be treated as a one or more debit entries.

B.    **Structural Overview**
  1)    Deposit
  - Cash Letter
    - Box (if used)
    - Box (if used)
      - Bundle (lowest level)
      - Bundle (lowest level)
      - Bundle (lowest level)

20

**C.    Cash Letter Summary**

1)    Each delivery by a Sending Bank or a Returning Bank to a Receiving Bank shall include a duplicate Cash Letter Summary listing of all the bundles that make up each cash letter in the deposit being delivered.

2)    Cash Letter Summary shall contain the following information:

    a)    Name and routing number of the Sending Bank or Returning Bank (as applicable);

    b)    Name and routing number of the Receiving Bank; and
Total dollar amount and total item count of all bundles in this cash letter that is part of the deposit being presented to the Receiving Bank.

    c)    Total dollar amount and total item count of each separate bundle.

    e)    Any product identification name or code (if applicable).

3)    The dollar amount listed on each Cash Letter Summary must be equal to the aggregate dollar amount of all the bundles contained in the bag, box, or other packaging.

**D.    Box Packaging (If used)**

1)    Example only– May vary based on services offered

2)    Check boxes may be purchased from vendor of choice

    a)    Boxes received from other banks in daily exchanges will be acceptable

3)    Cash letters averaging over 3,500 items should be boxed

    a)    Check box should hold between 3,000 and 4,000 checks

    b)    If box is not completely filled, packaging material must be added to the rear of the box to prevent the movement and possible mix up of checks

4)    Divider tickets inserted into the item flow automatically by the reader sorter to separate batches must be left in the item mix and placed in the box

5) Detail listings of the items in a particular box are to be broken down by box rather than by bundle.

    a) Detail listings must correspond to the items inside the box and be placed inside the box.

    b) A cash letter summary report of all batches must be placed in the last box of each shipment.

6) Boxes will specify routing transit numbers specified by receiving bank

    a) Label each box with correct clearing house designation

    b) Include the sending bank's name

    c) Number boxes as "Box X of Y" on each label to permit verification of receipt of all boxes

## E.    Bundle Overview

1) Bundles may contain up to 350 items

2) Sorted checks should be:

    a) Aligned top edge up, unfolded, and facing the same direction

    b) Machinable and nonmachinable items should be bundled separately

        i. Items in amounts greater than $99,999,999.99 or nonmachinable

    c) Bundles that are nonmachinable should be labeled NONMACHINABLE and shall be delivered in a separate cash letter.

        i. Bundles must be enclosed in sealed packages – acceptable packages include

        ii. Conventional check boxes

        iii. Plastic bags

        iv. Wrapped Packages

        v. Individual packages should not exceed 50 pounds or approximately15,000 checks

        vi. Multiple cash letters must be kept separate, but may be packaged together

22

      vii.    Multiple packages may be strapped together
     viii.   Detailed Tape Listings
- Sending Bank must enclose detailed tape listings and bundle recaps in each package
- Listing must correspond to the items within the cash letter and must equal the total amount and number of items
- Detailed tape listing must clearly indicate the presenting bank's nine-digit routing number

**F.   Encoding and Processing Standards**

1) Encoding quality should be verified by sending bank to insure item machinability

2) Improperly encoded items should be properly repaired to remain machinable or must be designated "nonmachinable"

3) Eligible items shall be classified as machinable or nonmachinable items

4) Sending bank must not encode any information on the item(s) unless conforming to the repair rules outlined in these Rules

**G.   Excessive Reject Rates**

1) The Sending Bank is responsible for maintaining quality standards that are generally acceptable within the banking industry.

**H.   Escalation Procedure**

1) Participants should use an agreed upon escalation procedure to resolve issue between exchanging Participants for cash letter(s) failing to meet standards as outlined in these Rules.  For example, this escalation procedure may, but is not required to, include the following elements:

2) Receiving bank must document the situation and provide such information to the sending bank based on the following:

   a)   First (Business) Day – Receipt of Nonmachinable items (excessive reject rates)
      i.   Upon receipt and inspection of cash letters, send notification of nonmachinable condition to sending bank
     ii.   Settlement should still take place on the current day
    iii.   May defer availability on nonmachinable items

    b)    Second Consecutive Business Day (excessive reject rates continue)
        i.    Communicate situation to sending bank
        ii.    Settlement should still take place on the current day if possible

    c)    Third Consecutive Business Day (excessive reject rates continue)
        i.    Communicate situation to sending bank
        ii.    Receiving Bank has option to defer availability
        iii.    Receiving Bank is entitled to compensation

    d)    Fourth Consecutive Business Day and Beyond (excessive reject rates continue)
        i.    Receiving Bank may (with prior notification to sending bank) refuse acceptance of cash letter(s)
        ii.    Cash letters received may continue to be processed at the option of the receiving bank
        iii.    Sending Bank may otherwise be required to use clearing alternative

**I.    Missing Cash Letter Summary or Detailed Tape Listing**
    1)    Receiving bank should notify the sending bank

    2)    Sending bank will make a best effort to provide a copy of summary or detail listing.

**Uniform Appendices**
**Appendix A-2:  Return Policies**

**Part 1:        Return Policies**

### Form For Stamp on Return Check

A bank returning a check shall place on the face of each returned check that it returns unpaid for the first time the following or a similar impression:



**Part 2:        Federal Reserve Regulation CC**

**Note:**  *Please note that the current version of Regulation CC, as issued by the Federal Reserve Board, shall be the governing document for all matters under these Rules.*

**Uniform Appendices**
**Appendix A-3:  Uniform Adjustment Requirements**

### Uniform Adjustment Requirements

| Adjustment Parameters – Uniform Rules For Paper Check Exchanges | | |
|---|---|---|
| **Rule** | **Comments** | |
| The Minimum Dollar Amount for Eligible Adjustments is the same as that provided by the Federal Reserve ($25.01) except no minimum amount applies to adjustments arising from the exchange of travelers checks.<br><br>Late Return Claim and Late Return Disclaimer - An adjustment for a Late Return Claim, or a corresponding Late Return Disclaimer, will not be less than $100.00. Only one claim per late return item may be submitted for adjustment. | The minimum applies to eligible adjustments handled through the clearing house exchanges and settled "with entry" | |
| High Dollar Adjustments and Special Handling Requirements<br><br>All adjustments of $250,000.00 or more shall be paid directly by wire transfer outside the normal settlement process unless the adjustment can be made before the same day settlement cutoff.<br><br>Notification via telephone or other electronic means must be provided by the requesting bank no later than 4:00 p.m. Eastern time on the settlement dates.<br><br>Adjustment documentation must be sent by the requesting bank via facsimile transmission no later than 4:00 p.m. Eastern Time on the settlement date. | $250,000 maximum is the cutoff after which same day settlement and special handling is required | |
| Adjustment requests should be made within 365 days. | Adjustment requests are made "without entry." Any adjustment types can be requested after the relative deadline but must be made "without entry." | |

## Debit Adjustment Types:

| Adjustment Type and CODE | Description | Deadline from Settlement Date to Resolve "With Entry" |
|---|---|---|
| Listing Error, Bundle Listing Error, Cash Letter Listing Error (LST) | Dollar amount listed for the subject item, bundle, or cash letter is for an amount different than the encoded amount. | 5 business days |
| Encoding Error (ENC) | Item was encoded for an amount different than the legal amount, and was listed for the amount of the encoding, and included in the bundle and cash letter totals. | 180 calendar days |
| Entry in Error (ERR) | Account entry is incorrect due to an error in constructing adjustment data<br>May also be called "Credit Should be Debit," or "Debit Should be Credit." | 5 business days |
| Intended for Another Account (ERR) | Account entry was made to the wrong institution or the wrong account of the correct institution.  May also be called "Posted to the Wrong Account." | 180 calendar days |
| Duplicate Entries (DUP) | Account entry appears to be a duplication of a previous entry.<br>May also be called "Double Posting." | 180 calendar days |
| Extra  Bundle(s) (EBDL) | Bundle was received without being listed on the cash letter listing or included in the cash letter total. | 5 business days |

26

| Adjustment Type and CODE | Description | Deadline from Settlement Date to Resolve "With Entry" |
|---|---|---|
| Extra Cash/Return Letter (ECL) | Settlement for the subject cash letter did not occur as expected. | 5 business days |
| Missing Bundle(s) (Receiving Institution) (MBDL) | Bundle that was listed on the cash letter listing and included in the cash letter total was missing from a cash letter that was received at its intended destination. | 5 business days |
| Missing Cash/Return Letter (Receiving Institution) (MCL) | Cash letter was not received at its intended destination. | 5 business days |
| Late Return Claim (LC) | Item was not returned timely by the Paying Bank or Returning Bank. | 60 calendar days |
| Late Return Disclaimer (LR) | Item, previously labeled a late return, was returned timely by the Paying Bank or Returning Bank. | 20 business days |
| Listed Not Enclosed (LNE) | Item was listed on the bundle listing, was included in the bundle and the cash letter totals, but was not received. May also be called "Missing Item." | 5 business days |
| Enclosed Not Listed (ENL) | Item was received without being listed on the bundle listing nor included in the bundle total or cash letter total. May also be called "Extra Item." | 20 business days |
| Non-Cash Items (NCH) | Item does not meet the definition of cash item appropriate to the clearing channel, e.g., clearing house rules for private sector collection, and Federal Reserve Operating Circulars for clearing through the Federal Reserve System. May also be called "Non-negotiable Item," or "Empty Carrier," or "Mutilated Item." | 180 calendar days |
| Not Our Item (NOI) | For forward items - Item was presented and charged to an entity other than the Paying Bank or Paying Bank's agent. For return items - Item was presented and charged to an entity other than the Depositary Bank, the Depositary Bank's agent or any subsequent indorser. May also be called "Missort." | 180 calendar days |
| Free Item(s) (FREE) | An institution that was not listed on any incoming/outgoing bundle or cash letter found a check. Also included in this category are items that are received in research units for which the origination of the item cannot be determined. May also be called "Loose." | Notification should be immediate, as soon as the error is discovered |
| Cash/Return Letter(s) or bundle(s) received FREE not belonging to your institution | Cash letter or bundles received do not belong to your institution. | Notification should be immediate, as soon as the error is discovered |
| Photocopies Charged - Original Paid/Returned (PAID) | Item was presented and settled twice. May also be called "Paid Twice." | 180 calendar days |
| Photocopies Submitted "in Lieu of Original" (PIL) Photo-In-Lieu Bundle (PIL) Photo-In-Lieu Cash Letter (PIL) | Item, bundle, or cash letter has been lost or destroyed and indemnified photocopy/copies submitted in its stead. May also be called Indemnified Photo," or "Photo-in-Lieu" for items, as "Bundle Of Indemnified Photos Presented As A Cash Letter For Collection" for bundles and cash letter. | 20 business days |
| All Other Error Types | | 180 calendar days |
| Credit Adjustments | The institution involved should use its "best efforts" to expeditiously discover and correct its under settlement. No special handling required unless over the maximum dollar amount listed for special handling | N/A |

27

**Requests Types:**

| Adjustment Type and CODE | Description | Deadline from Settlement Date to Resolve "With Entry" |
|---|---|---|
| Compensation claim | The value of loss of funds from unjust enrichment of the paying bank as the result of an under encoded check | 5 business days |
| Non-Receipt of Cash/Return Letter Credit (Depositing Institution)  (MCL) | No credit Received. The subject cash letter did not reach its intended destination. | Notification should be immediate, as soon as the error is discovered |

28

**Uniform Appendices**
**Appendix A-4:  Standard Uniform Adjustment Form**

## Standard Uniform Adjustment

| Request Sent From: | | |
|---|---|---|
| ABA #_____ | | |
| Name_____ | | |
| Street/P.O. _____ | | |
| City_____ST____ZIP_____ | | |
| _____ | | |
| Request Sent To: | | |
| ABA #_____ | | |
| Name_____ | | |
| City_____ST____ZIP_____ | | |
| _____ | | |
| Preparer's: | | |
| Name_____ | | |
| Phone #_____Fax#_____ | | |

| Request Date | ___/___/___ |
|---|---|
| Sender's Reference # | |
| Amount | $ |

**Request For:**
❑ **Credit (CR)**
❑ **Debit (DR)**

**Adjustment Type: (with entry)**

| ❑ Listing error (LST) | ❑ Late return disclaimer (LR) |
|---|---|
| ❑ Encoding error (ENC) | ❑ Listed not enclosed (LNE) |
| ❑ Entry in error (ERR) | ❑ Enclosed not listed (ENL) |
| ❑ Duplicate entry (DUP) | ❑ Non-cash item / Empty Carrier (NCH) |
| ❑ Extra bundle (EBDL) | ❑ Not our item (NOI) |
| ❑ Extra cash/return letter (ECL) | ❑ Free and loose item (FREE) |
| ❑ Missing bundle (MBDL) | ❑ Photocopy and original (PAID) |
| ❑ Missing cash letter (MCL) | ❑ Photo in lieu (PIL) |
| ❑ Late return claim (LC) | ❑ All other types |

**Research Type: (without entry)**

| ❑ Under-encoding Adjustment | ❑ Non-receipt of Cash/Return Letter |
|---|---|

**Research Information:**

| C/L or Entry Date | C/L Total $ | Tape Total $ | |
|---|---|---|---|
| Sequence (SEQ) | Item Before | Item After | Listed as $ |
| Should Be $ | | Original Reference $ | |

**Check Information:**

| Drawee ABA# | Depositary ABA# | Maker | Payee |
|---|---|---|---|
| Check # | Account Number | | |

**Comments:**
_____
_____
_____

**Uniform Appendices**
**Appendix A-5:  Disclaimer Form Rule 8**

---

# UNIFORM PAPER CHECK EXCHANGE RULES

## Disclaimer Form
## Breach of Warranty – Unauthorized Remotely Created Check
### (As Adopted by the _____Clearing House Association)

I _____, an officer of _____ hereby disclaim and refuse the

    (Please print)                   (Depositary Bank)

"Breach of Warranty – Unauthorized Remotely Created Check" claim made by

_____ (ABA#) _____:

    (Claimant Paying Bank)         (Claimant Bank's R/T number)

Name of Paying Bank: _____

Name of Paying Bank's Customer: _____

Paying Bank's Customer's Account Number: _____

                       (Account Number of Above Named Account)

Amount Claimed: _____

Based on one or more of the following defenses (check as appropriate):

    1) Claim was not made timely, as follows:
        a)  Paying Bank's customer did not provide affidavit within 60 calendar days after account statement of check made available   ☐

        b)  Paying Bank did not deliver warranty claim within 15 calendar days of receipt of customer affidavit   ☐

        c)  Paying Bank failed to deliver certified copy of customer affidavit within 10 business days to Depositary Bank   ☐

    2) Sending Bank is not the first bank to which the check was transferred (BOFD)   ☐

INSTRUCTIONS TO Sending Bank:
1. This form is to be completed and signed by an officer of the Depositary Bank.  A defense MUST be specified.
2. Keep a copy of the completed form and a copy of the check, stamped "Breach of Warranty – Clearing House Rule 8 – Do not Redeposit or Re-Present" or with similar language (the claim) for your files.
3. Attach the original check stamped "Breach of Warranty – Clearing House Rule 8 – Do not Redeposit or Re-Present" or with similar language to this form and deliver to the Claimant Paying Bank through the Clearing House in full compliance with Rule 8 of the Uniform Paper Check Exchange Rules

**DO NOT SEND THIS FORM THROUGH THE FEDERAL RESERVE BANK – IT WILL BE REJECTED**

**Uniform Appendices**
**Appendix A-6:  Examples of Rule 8 Scenarios**

Rule 8 is designed to address unauthorized unsigned drafts (checks).  Following are some examples of scenarios in which unsigned drafts might be created.

a) **Pre-authorized drafts** - A customer approves payment of his/her insurance policy and the company issues an unsigned draft for the amount.  The unsigned draft is then deposited into the company's account and the depositary bank sends the draft to the paying bank for collection.

b) **ACH administrative returns** - A company receives an ACH administrative return and the company converts the returned ACH into an unsigned draft.  The unsigned draft is then deposited into the company's account and the depositary bank sends the draft to the paying bank for collection.

c) **Telephone purchases** - Telephone solicitors sell products and/or services to companies or individuals.  The solicitor requests information from the purchaser about their account number, R/T number, bank name, etc. and creates an unsigned draft.  The unsigned draft is then deposited into the company's account and the depositary bank sends the draft to the paying bank for collection.

d) **Depositary Transfer Checks (DTCs)** - Companies sometimes initiate intra-company payments between their accounts, some transfers may be between different banks.  The companies' product unsigned drafts as the transfer vehicle.  The unsigned draft is then deposited into the company's account and the depositary bank sends the draft to the paying bank for collection.

**Uniform Appendices**
**Appendix A-7: Explanatory Charts for Rule 8 Processes**

The examples and other provisions in this Appendix are for informational illustrative purposes only and are not meant to expand, limit or alter the provisions of Rule 8 in any manner.

### Overview of Events Timing



\* 60 days from availability of customer's statement

This chart shows a summary of the Rule 8 timeline considerations. Specifically it shows that the paying bank's customer has 60 days from the date their statement is available to file an affidavit with the paying bank. Assuming the affidavit is filed within the 60 days, the paying bank then has 15 days within which to file a breach of warranty claim with the depositary bank (bank of first deposit or BOFD). After 15 days the paying bank is out of options and accepts the loss. If a warranty claim is filed within the 15 days, the BOFD then has two options; 1) provide a disclaimer notice back to the paying bank within 15 days of the receipt of the breach of warranty claim; or 2) request a copy of the paying customer's affidavit within 15 days of the receipt of the breach of warranty claim. Should a copy of the affidavit be requested, the paying bank has 10 days to provide the copy or retain the loss. Should the paying bank provide the requested copy within the 10 days, the BOFD has 3 additional days to either accept the loss or provide a disclaimer back to the paying bank.

32

**Overview of Decisions**



This chart shows a summary of the decision processes associated with Rule 8. It begins with the paying customer having 60 days from the date of statement availability to provide an affidavit to the paying bank. The paying bank then has 15 days within which to provide a warranty claim to the depositary bank (bank of first deposit or BOFD). After 15 days the paying bank is out of options and accepts the loss. If a warranty claim is filed within the 15 days, BOFD then has three options; A) request a copy of the paying customer's affidavit within 15 days of the receipt of the breach of warranty claim; or B) (discussed on the next page); or C) (also discussed on the next page). After 15 days the paying bank is out of options and accepts the loss. If a copy is requested by the BOFD, then the paying bank has 10 days within which to provide the copy or the BOFD can forward a disclaimer to the paying bank who then retains the loss. If the BOFD decides to not request the copy, then it has two other options, B) or C).

## Overview of Decisions (continued)



This chart continues the summary of the decision process associated with Rule 8 and shows options B and C. Under option B, the BOFD has the option of either debiting or not debiting its customer's account. In either case, the BOFD must send the funds to the paying bank. If it determines to not debit its customer, then the BOFD retains the loss.

Under option C, the BOFD sends a disclaimer notice to the paying bank that retains the loss.

**Uniform Appendices**
**Appendix A-8:  Model Customer Written Statement for Warranty Claim under Rule 8**

**[NAME OF BANK]**
**WRITTEN STATEMENT UNDER PENALTY OF PERJURY**
**OF UNAUTHORIZED REMOTELY CREATED CHECK[1]**

Customer Name: _____

Customer Address: _____

_____

Account Number: _____  SS# or TIN: _____

Check Number(s): _____

Home Phone Number:      Area Code   (        ) _____
Work Phone Number:      Area Code   (        ) _____

     This written statement of an unauthorized remotely created check is submitted by the undersigned Customer to the Bank in support of the undersigned's claim that the above referenced check(s) of the undersigned drawn on the above referenced Account were improperly paid for the reason indicated below.  In submitting this written statement, the undersigned affirms that all representation and statements contained herein are true and agrees that the undersigned render all reasonable assistance required by Bank to locate and prosecute the persons responsible for the above referenced unauthorized check(s).).

     The undersigned hereby states and affirms the following:  (Use additional sheet and attach, if necessary.):

1)     Please indicate type/reason for this claim:

          Remotely created check (which contains no Customer signature) was not authorized by the Customer **in the amount stated on the check**.

          Remotely created check (which contains no Customer signature) was not authorized by the Customer **to the payee stated on the check**.

---

[1] Note to Bank:  This model written statement should only be used to obtain a customer's statement relating to an unauthorized remotely created check.  The written statement, once completed by customer, will be used by the Bank in connection with returning a check through the Clearing House on the basis of a breach of one of the warranties provided under Rule 8 of the Clearing House Rules.   This model written statement should not be used when a customer is making any other claim relating to check or checking account, such as an altered dollar amount, altered payee, missing endorsement, etc.

2)     Describe when and how you first became aware of the unauthorized remotely created check.  If the matter was disclosed in an account statement(s), please attach photocopies of the same.

_____
_____
_____

3)     Indicate whether the person that created the remotely created check is known to you.  If so, indicate the relationship and provide any information you may have about this person, include name, address, telephone number and Social Security Number.

_____
_____
_____

4)     Indicate whether you received part or all of the proceeds or any other benefit on account of, said check(s).  This would include reimbursement by any other bank or any other arrangement you have made to recover funds.

_____
_____
_____

5)     Please provide a detailed narrative statement of the circumstances surrounding your claim of an unauthorized remotely created check.

_____
_____
_____
_____

If additional space is needed, use a sheet of paper and attach.

     I acknowledge that, in order to complete its investigation, Bank may require further information concerning the matters set forth in the written statement, which I agree to provide

     I further acknowledge that Bank may need to disclose the contents of this written statement to third parties, including other banks in the check collection process and/or the person that created the unauthorized remotely created check, as part of its investigation.  I hereby consent to such disclosure.

36

Finally, I acknowledge that, to the extent my account is credited for the amount of the above listed checks, Bank will have the right to recover all amounts so paid from the person I have identified as the person that created the unauthorized check(s), and to bring a criminal action against such person, if it so elects. I agree to provide whatever assistance Bank may require in any such civil or criminal lawsuit.

Witness my hand and seal, under penalties of perjury, this _____ day of _____, 20____.


_____
Signature

_____
Street Address

_____
City, State and Zip Code


Subscribed and sworn to before me          _____

this day _____ of _____, 20


_____          _____
Notary Public/U.S. Consular Officer          My Commission Expires

Uniform Appendices
Appendix A-9: Disclaimer Form: Rule 9

---

## UNIFORM PAPER CHECK EXCHANGE RULES

### Disclaimer Form
### Breach of Warranty – Forged Or Unauthorized Drawer Signature Or Counterfeit Check
### (As Adopted by the _____ Clearing House Association)

---

I _____, an officer of _____ hereby disclaim and refuse the
   (Please print)                      (Depository Bank)

"Breach of Warranty – Forged or Unauthorized Drawer Signature Or Counterfeit Check" claim made by

_____ (ABA#) _____ :
     (Claimant Paying Bank)           (Claimant Bank's R/T number)

Name of Paying Bank: _____

Name of Paying Bank's Customer: _____

Paying Bank's Customer's Account Number: _____
                                 (Account Number of Above Named Account)

Amount Claimed: _____

Based on one or more of the following defenses (check as appropriate):

1) Account closed    ☐

2) Claim amount exceeds funds in account    ☐

3) Claim was not made timely, as follows:
   a) Paying Bank's customer did not provide affidavit within 60 calendar days after account statement of check made available    ☐

   b) Paying Bank did not deliver warranty claim within 15 calendar days of receipt of customer affidavit    ☐

   c) Paying Bank failed to deliver certified copy of customer affidavit within 10 business days to Depository Bank    ☐

4) Sending Bank is not the first bank to which the check was transferred (BOFD)    ☐

5) Other defenses as provided by Clearing House Rules or other applicable law
   Specify:    ☐

_____ ___/___/___ (___)_____
Signature of Officer – Depository Bank      Date          Phone

INSTRUCTIONS TO DEPOSITARY BANK:
1. This form is to be completed and signed by an officer of the Depository Bank. A defense MUST be specified.
2. Keep a copy of the completed form and a copy of the check, stamped "Breach of Warranty – Clearing House Rule 9 – Do not Redeposit or Re-Present" or with similar language (the claim) for your files.
3. Attach the original check stamped "Breach of Warranty – Clearing House Rule 9 – Do not Redeposit or Re-Present" or with similar language to this form and deliver to the Claimant Paying Bank through the Clearing House in full compliance with Rule 9 of the Uniform Paper Check Exchange Rules

**DO NOT SEND THIS FORM THROUGH THE FEDERAL RESERVE BANK – IT WILL BE REJECTED**

**Uniform Appendices**
**Appendix A-10:  Explanatory Charts for Rule 9 Processes**

The examples and other provisions in this Appendix are for informational and illustrative purposes only, and are not meant to expand, limit or alter the provisions of Rule 9 in any manner.



### Overview of Events Timing

*60 days from availability of customer's statement

This chart shows a summary of the Rule 9 timeline considerations.  Specifically it shows that the paying bank's customer has 60 days from the date their statement is available to file an affidavit with the paying bank.  Assuming the affidavit is filed within the 60 days, the paying bank then has 15 days within which to file a breach of warranty claim with the depositary bank (bank of first deposit or BOFD).  After 15 days the paying bank is out of options and accepts the loss.  If a warranty claim is filed within the 15 days, the BOFD then has three options; 1) debit the depositing customer within 15 days of receipt of the breach of warranty claim if the money is in the customer's account during any of those 15 days; or 2) provide a disclaimer notice back to the paying bank within 15 days of the receipt of the breach of warranty claim; or 3) request a copy of the paying customer's affidavit within 15 days of the receipt of the breach of warranty claim.  Should a copy of the affidavit be requested, the paying bank has 10 days to provide the copy or retain the loss.  Should the paying bank provide the requested copy within the 10 days, the BOFD has 3 additional days to either debit the depositing customer's account and pay the claim or provide a disclaimer back to the paying bank.

**Overview of Decisions**



This chart shows a summary of the decision processes associated with Rule 9. It begins with the paying customer having 60 days from the date of statement availability to provide an affidavit to the paying bank. The paying bank then has 15 days within which to provide a warranty claim to the depositary bank (bank of first deposit or BOFD). After 15 days the paying bank is out of options and accepts the loss. If a warranty claim is filed within the 15 days, the BOFD then has three options; A) request a copy of the paying customer's affidavit within 15 days of the receipt of the breach of warranty claim; or B) (discussed on the next page); or C) (also discussed on the next page). If a copy is requested, then the paying bank has 10 days within which to provide the copy or retain the loss. If the BOFD decides to not request the copy, then it has two other options, B) or C).

## Overview of Decisions (continued)



This chart continues the summary of the decision process associated with Rule 9 and shows options B and C. Under option B, if the depositing customer's account balance is at least equal to the amount of the breach of warranty claim and the depositing customer is not another depository financial institution as defined by the Federal Reserve Act, then BOFD must decide whether to debit the account for the amount of the claim. In either case, the BOFD must send the funds to the paying bank. If it determines to not debit its customer, then it retains the loss. If the depositing customer does not have sufficient balance to cover the amount of the claim, the BOFD sends a disclaimer notice to the paying bank and the paying bank retains the loss.

Under option C, the BOFD sends a disclaimer notice to the paying bank that retains the loss.

**Uniform Appendices**
**Appendix A-11:  Model Customer Affidavit for Warranty Claim Under Rule 9**

**[Name of Bank]**
**Affidavit of Unauthorized or Forged Signature[2]**

Customer Name:  _____

Customer Address:  _____

_____

Account Number:                          SS# or
                                         TIN:
_____        _____

Check Number(s):  _____

Home Phone Number:     Area Code    (          )  _____
Work Phone Number:     Area Code    (          )  _____

This affidavit of an unauthorized or forged signature is submitted by the undersigned Customer to the Bank in support of the undersigned's claim that the above referenced check(s) of the undersigned drawn on the above referenced Account were improperly paid for the reason indicated below.  In submitting this affidavit, the undersigned affirms that all representation and statements contained herein are true and agrees that the undersigned render all reasonable assistance required by Bank to locate and prosecute the persons responsible for the unauthorized or forged signature on the above referenced check(s).

The undersigned hereby states and affirms the following:  (Use additional sheet and attach, if necessary.):

1)     Please indicate type/reason for this claim:

---

[2] **Note to Bank:**  This model affidavit should only be used to obtain a customer's affidavit relating to a forged or otherwise unauthorized check or missing drawer's signature on a check or an unauthorized demand draft. The affidavit, once completed by customer, will be used by the Bank in connection with returning a check through the Clearing House on the basis of a breach of one of the warranties provided under Rule 9 of the Clearing House Rules.  This model affidavit should not be used when a customer is making any other claim relating to check or checking account, such as an altered dollar amount, altered payee, missing endorsement, etc.

Demand Draft (which contains no Customer signature) was not authorized by the Customer.

Check contains a forged or otherwise unauthorized Customer's signature in the drawer signature line.

Check is counterfeit.

2)  Describe when and how you first became aware of the forged or otherwise unauthorized signature on your check.  If the matter was disclosed in an account statement(s), please attach photocopies of the same.

_____
_____
_____

3)  Indicate whether either the unauthorized signer of the check(s) or the person that created the demand draft is known to you.  If so, indicate the relationship and provide any information you may have about this person, include name, address, telephone number and Social Security Number.

_____
_____
_____

4)  Indicate whether you received part or all of the proceeds or any other benefit on account of, said check(s).  This would include reimbursement by any other bank or any other arrangement you have made to recover funds.

_____
_____
_____

5)  Please provide a detailed narrative statement of the circumstances surrounding your claim of a forged or otherwise unauthorized signature on the checks.

_____
_____
_____
_____
_____
_____
_____

If additional space is needed, use a sheet of paper and attach.

I acknowledge that, in order to complete its investigation, Bank may require further information concerning the matters set forth in the affidavit, which I agree to provide.

I further acknowledge that Bank may need to disclose the contents of this affidavit to third parties, including other banks in the check collection process and/or the person that created/signed the unauthorized check, as part of its investigation. I hereby consent to such disclosure.

Finally, I acknowledge that, to the extent my account is credited for the amount of the above listed check(s), Bank will have the right to recover all amounts so paid from the person I have identified as the person that created/signed the unauthorized check(s), and to bring a criminal action against such person, if it so elects. I agree to provide whatever assistance Bank may require in any such civil or criminal lawsuit.

Witness my hand and seal, under penalties of perjury, this _____ day of
_____, 20___.

_____
Signature

_____
Street Address

_____
City, State and Zip Code

Subscribed and sworn to before me          _____

this day                    of                                                    ,  20

            _____              _____


_____          _____
Notary Public/U.S. Consular Officer        My Commission Expires

44

**Uniform Appendices**
**Appendix A-12:  Compensation Calculation Procedure**

### Compensation Calculation Procedure

**I.     Terminology/Definitions**

A.     Compensation shall be computed on the amount of the principal as described in the formulas provided in these rules.

B.     Fed Funds Rate is the average of the effective Federal Funds Rate for the period during which the error occurred. The daily rate is published by the Federal Reserve Bank of New York and is available daily at 212/720-6130 or by going to (www.ny.frb.org).

C.     Number of Days is the number of calendar days the bank claiming compensation has lost funds availability.

D.     Difference/Adjustment is the difference between the face amount of an item and the amount for which the item was settled.

E.     Aggregate Principal Amount is the difference or face amount of an item multiplied by the number of days lapsed between the date of occurrence and the date on which the adjustment was made.

F.     Use of Funds: Realizing investment opportunity, using funds out of the Federal Reserve account, and fault are not relevant to compensation under these procedures.  When a bank has been enriched, however innocently, the bank that has been under-funded is entitled to compensation.  Full use of funds can be realized on a same day settlement basis if proper notification is made from the point of receipt of items to the Cash Position Personnel responsible for funding the reserve account.  With proper notification, adjustments (one million dollars in value) settled directly between banks through the use of Fed Wire System will virtually eliminate the possibility of "Lost Investment Opportunity" or "Loss of Use of Funds."

**II.    General Rule**

A.     Time Limits: Any claim for compensation shall be made within ninety (90) calendar days from the date on which any adjustment relating to the claim was made.

B.     Minimum Amount: A claim for compensation should be made only if it involves an aggregate principal amount of at least one million dollars in value.

C.     Format of Claim: Claims shall be made directly to the bank that has been

"unduly enriched". The claim for compensation shall be in letter format and shall include the following information:

    1.    Details of transaction

    2.    Amount of compensation requested as well as rate used,

    3.    Method of payment (wire or check payment),

    4.    Name and telephone number of person making the claim.

D.    Actual Payment: If payment is made by check, a copy of the original claim shall accompany the check and shall always be directed to the person making the original claim. If payment is made by wire, the wire should be directed to the attention of the person signing the original claim letter unless otherwise requested.

III.    **Misencoded Checks and Listings of Wrong Amounts**

A.    Underencoded Check or Under Listing: A bank may pay a Sending Bank less than the face amount of a check transferred or presented to it because:

    1.    Such check was underencoded or

    2.    Less than the face amount of such check was listed on the delivery sheet with it.

B.    Overencoded Check or Over Listing: A bank may pay a Sending Bank more than the face amount of a check transferred or presented to it because:

    1.    Such check was overencoded, or

    2.    More than the face amount of such check was listed on the delivery sheet presented with it.

IV.    **"Free Items"**

A bank may fail to pay another bank for a check presented to it because such check was not included in the amount listed on the delivery sheet presented with such check.

V.    **"Missing Items"**

A bank may pay another bank for a check that has been transferred or presented to it because such check, although not transferred or presented, was included in the amounts on a delivery sheet delivered to such bank.

VI.    **Checks Transferred or Presented to the Incorrect Bank or Transfer or Presentment of Ineligible Checks**

A bank may pay another bank for checks that were incorrectly transferred or

presented to it or for checks that it received that are ineligible for exchange at a clearing house or another check exchange ("mis-delivered items").  The bank returning such mis-delivered items may request compensation that shall be paid from the bank that mis-delivered such items.

**VII.    Formula For Computing Payments for Undue Enrichment Claims**

In all "undue enrichment" transactions (claims), the bank paying the claim shall assume reserve implications for the transaction.  Thus, the formula for computing any type of undue enrichment claim is as follows:

**Compensation = ((Difference) x (Fed Funds Rate) x (# of days)) / 360 days**

**VIII.   Compensation for Lost Cash Letter**

A Receiving Bank that acknowledges responsibility for a lost cash letter shall reimburse the Sending Bank for its reconstruction costs, not to exceed [$1.50] per item in the cash letter.

**Supplemental Appendices Follow**

## APPENDIX B. SUPPLEMENTAL APPENDICES

B-1.   Designated Exchange Locations and Deadlines for Forward Collection, Returns and Adjustments; Procedure for Establishing Routing Numbers; List of Current Routing Numbers by Participant; Sort Patterns

B-2.   Settlement Procedures

B-3.   Emergency/Disaster Processing Requirements

B-4.   Non-Standard Holidays

B-5.   Procedures for Handling Dealer Drafts

B-6.   Third-Party Provider Form

B-7.   Contacts - Names and Phone Numbers

© The Clearing House Payments Company L.L.C. 2005

**Supplemental Appendices**
**Appendix B-1:    Designated Exchange Locations and Deadlines; Procedure for Establishing Routing Numbers; List of Current Routing Numbers by Participant; Sort Patterns**

See members only web site at www.svpco.com for list of routing numbers, Designated Exchange Locations, deadlines, and other exchange details.

If a participant agrees to accept forward collection checks bearing a certain routing number at a certain Designated Exchange Location(s), it must accept such checks from all participants, including participants sending such checks to it from other regions of SVPCO — Check Services.  If a participant agrees to accept returned checks bearing a certain routing number in the depositary bank indorsement or subsequent collecting bank indorsement at a certain Designated Exchange Location(s) or at an alternative location that is not a Designated Exchange Location as defined in Rule 1  ("Alternative Location"), it must accept such returned checks at each such Designated Return Location(s) or Alternative Location from all participants, including participants sending such returned checks to it from other regions of SVPCO — Check Services.  If a participant accepts a returned check at an Alternative Location, it shall be treated as having accepted the check at the nearest Designated Exchange Location at the next applicable exchange deadline and such check shall be included in the next SVPCO — Check Services settlement in which such check is eligible to be included, and such check shall in all respects remain subject to these Rules.  A participant may send forward collection checks and returned checks to any other participant under these Rules provided it has agreed to accept checks and returned checks from participants under these Rules.

 SVPCO — Check Services is comprised of three regions:  Eastern Region, Midwest Region, and Western Region.  If a participant sending or receiving a forward collection check, returned check or adjustment is located in a check-processing region, as such term is defined in Section 229.2(m) of Regulation CC, served by a Federal Reserve Bank in the following Federal Reserve Districts, it is deemed to be in the region indicated:  Federal Reserve Districts 1 – 6 (Eastern Region), Federal Reserve Districts 7 – 11 (Midwest Region), Federal Reserve District 12 (Western Region).

A check is deemed to be presented to the Paying Bank under these Rules when the check is available for pickup by a Receiving Bank at a Designated Exchange Location or Alternative Location.  Nothing in these Rules is intended to extend return times under Regulation CC.

**Supplemental Appendices**
**Appendix B-2:  Settlement Procedures**

(a)     **General**.  SVPCO — Check Services acts as Settlement Agent under Federal
        Reserve Bank Operating Circular 12 ("Operating Circular 12") for the following
        Settlement Arrangements, the members of which are SVPCO — Check Services
        Participants: 1. SVPCO — Check Services Eastern Regional Settlement
        Arrangement, 2. SVPCO — Check Services Midwest Regional Settlement
        Arrangement, 3. SVPCO — Check Services Midwest Regional Settlement
        Arrangement (Detroit), 4. SVPCO — Check Services Western Regional Settlement
        Arrangement (morning), 5. SVPCO — Check Services Western Regional
        Settlement Arrangement (basic/regional), 6. SVPCO — Check Services Western
        Regional Settlement Arrangement (afternoon), 7. SVPCO — Check Services
        Western Regional Settlement Arrangement (end of day),  8 . SVPCO — Check
        Services National (Interregional) Settlement Arrangement, 9. SVPCO — Check
        Services ECP Settlement Arrangement, and 10. SVPCO —  Check Services Online
        Adjustments Settlement Arrangement.  For each Settlement Arrangement of which
        it is a member, a SVPCO — Check Services participant ("participant") that is not a
        Settler must designate a Settler and provide the Business Manager of SVPCO —
        Check Services or his or her designee with a letter from the designated Settler, in
        substantially the form attached in Exhibit A to this Appendix B-2,  in which the
        Settler acknowledges that it agrees to perform the obligations of a Settler for that
        participant under these Rules.  In addition, for each Settlement Arrangement of
        which it is a member, a Settler must execute a settlement agreement in the form
        provided in Appendix A of Federal Reserve Bank Operating Circular No. 12 and
        provide the Business Manager of SVPCO — Check Services Check Services or his
        or her designee with the original executed agreement.

        By the time(s) specified in the Settlement Schedule related to each Settlement
        Arrangement of which it is a member, each Debtor Participant, directly or through a
        Settler, shall settle the balances charged against it that day in a Settlement File,
        which payment shall in accordance with Federal Reserve Bank Operating Circular
        No. 12 and the rules in this Appendix B-2.  SVPCO — Check Services shall deliver
        one or more Settlement Files per Settlement Arrangement to the Federal Reserve
        Bank of New York or another Federal Reserve Bank for settlement each Settlement
        Day at the times set forth in the Settlement Schedule.

See members only web site at  www.svpco.com  for Settlement Schedules.

**(b)**    **Definitions**.  For the purpose of this Appendix B-2 of these Rules, the terms listed below have the following meanings:

    **(1)**    **Bilateral Balance**.  On a given Settlement Day or up to a specified time listed on a Settlement Schedule on a given Settlement Day (in the event SVPCO — Check Services submits multiple Settlement Files to a Federal Reserve Bank for a Settlement Arrangement on a given Settlement Day), the total dollar amount of items, returned items, and/or adjustments delivered by a participant through SVPCO — Check Services to another participant minus the total dollar amount of items, returned items, and/or adjustments received by the participant through SVPCO — Check Services from the other participant as shown on a Group Settlement Statement as determined or adjusted under these Rules.  If the total dollar amount of items, returned items, and/or adjustments delivered by a participant to another participant exceeds the total dollar amount of items, returned items, and/or adjustments that it received from the other participant, the participant will have a credit Bilateral Balance.  Conversely, if the total dollar amount of items, returned items, and/or adjustments delivered by a participant to another participant is less than the total dollar amount of items, returned items, and/or adjustments that it received from the other participant, the participant will have a debit Bilateral Balance.

    **(2)**    **Debtor Participant**.  A participant with a debit Multilateral Balance on a Settlement File.

    **(3)**    **Defaulting Participant**.  A Settler that does not settle for its own debit Multilateral Balance or the debit Multilateral Balances of other participants on a Settlement File.

    **(4)**    **Multilateral Balance**.  On a given day, or up to a specified time listed on a Settlement Schedule for a given day, the total dollar amount of items, returned items, and/or adjustments delivered by a participant through SVPCO — Check Services to all other participants minus the total dollar amount of items, returned items, and/or adjustments received by the

participant through SVPCO — Check Services from all other participants related to that Settlement File as shown on a Group Settlement Statement as determined or adjusted by these Rules.  If the total dollar amount of items, returned items, and/or adjustments delivered by a participant to other participants exceeds the total dollar amount of items, returned items, and/or adjustments that it received from other participants, the participant will have a credit Multilateral Balance. Conversely, if the total dollar amount of items, returned items, and/or adjustments delivered by a participant to other participants is less than the total dollar amount of items, returned items, and/or adjustments that it received from other participants, the participant will have a debit Multilateral Balance.

(5)    **Processing Reserve Bank**.  The Reserve Bank responsible for accepting the Settlement File from the Settlement Agent and processing it in accordance with Federal Reserve Bank Operating Circular No. 12.

(6)    **Reserve Bank**.  The Federal Reserve Bank of New York or another Federal Reserve Bank.

(7)    **Settlement Arrangement**.  A group whose Participants have designated a Settlement Agent to deliver a Settlement File to the Processing Reserve Bank in order to settle the Multilateral Balances resulting from the clearing activities of the Participants.

(8)    **Settlement Day**.  A business day as defined in Rule 1(a) (4) of these Rules.

(9)    **Settlement File**.  An instruction from SVPCO — Check Services to the Reserve Bank containing the Multilateral Balance of each participant that is a member of a Clearing House Settlement Arrangement.

(10)   **Settlement Schedule**.  The schedule that appears at www.svpco.com, which lists the processing times/deadlines for settlement information and Settlement Files.

(11)   **TCH Settlement System**.  An automated system provided by PaymentsCo to SVPCO — Check Services, which enables participants to transmit settlement information to SVPCO — Check Services and enables SVPCO —

Check Services to transmit Settlement Files to the Processing Reserve Bank.

**(12)** **Settler**.  A participant that has established an account with a Reserve Bank and settles its own Multilateral Balance, settles Multilateral Balances for the account of another participant, or both.

Other definitions applying to this Appendix B-2 of these Rules and the place in which they appear in this Appendix B-2 are:

| | | |
|---|---|---|
| 1. | Amount Brought (Sent) Sheet: | (c) (1) |
| 2. | Group Settlement Statement: | (c) (2) (a) |
| 3. | Participant Settlement Statement | (c) (2) (b) |
| 4. | Settlement Information Transmission Deadline or "SITD" | (c) (1) |

**(c)** **Normal Settlement Schedule.**

**(1)** By the deadline(s) listed on a Settlement Schedule ("Settlement Information Transmission Deadline" or "SITD") each Settlement Day, each participant shall electronically transmit to SVPCO — Check Services, via the SVPCO Online Settlement System, an Amount Brought Sheet showing the aggregate dollar amount of items, returned items, and/or adjustments that the participant delivered (sent) to each other participant for settlement that day. A participant warrants that the dollar amounts set forth on its Amount Brought Sheet include only items, returned items, and/or adjustments that were delivered to the participant indicated through SVPCO — Check Services for settlement on that Settlement Day.

**(2)** SVPCO — Check Services shall compute each participant's Multilateral Balance and Bilateral Balances from the information transmitted by the participants and shall make electronically available the following two balance reports to each participant and its Settler, if any, by SITD + 20 minutes each Settlement Day.

**a.** Group Settlement
This report lists the Multilateral Balance of each participant.

**b.** Member Settlement Statement

One report is created for each participant.  A participant's report lists: (1)

dollar amounts of items, returned items, and adjustments brought to and received from each other participant, (2) the participant's Bilateral Balance with each other participant, and (3) the participant's Multilateral Balance.

(3)    By SITD + 30 minutes each Settlement Day, a participant that is unwilling to settle for its Bilateral Balance with another participant (because it claims that the Bilateral Balance includes items, returned items, or adjustments that were not delivered to it or for any other reason) must give SVPCO — Check Services notice, either directly or through its Settler, specifying the dollar amount included in the Bilateral Balance for which it is unwilling to settle and the reason it is unwilling to settle.  The Business Manager of SVPCO — Check Services may, but is not required to, direct that the Bilateral Balances of the two participants involved be adjusted to delete the dollar amount included in the Bilateral Balance for which the participant is unwilling to settle.  If settlement is adjusted, SVPCO — Check Services shall notify, via the SVPCO Settlement System, the pairs of participants involved and their Settlers, if any, of their adjusted Bilateral and Multilateral Balances by SITD + forty minutes.  Dollar amounts deleted from the Bilateral Balances of the two participants involved may be included in the settlement for the next Settlement Day, if appropriate, or shall be settled between the participants involved outside the SVPCO — Check Services settlement.

(4)    By SITD + two hours each settlement Day, SVPCO — Check Services will transmit, via the SVPCO Online Settlement System, a Settlement File to the Reserve Bank in accordance with the Federal Reserve Bank Operating Circular No.12.  The Reserve Bank will then debit or credit a participant's or its Settler's Master Account for its Multilateral Balance at SITD + two hours.

(5)    Set forth below is a summary of events and the times at which they would typically occur pursuant to a normal settlement schedule.

| Time | Event |
| --- | --- |
| Settlement Information Transmission Deadline ("SITD") | Each participant transmits via the SVPCO Online Settlement System to SVPCO — Check Services the dollar amount of items, returned items, and adjustments it delivered to other participants. |

55

| Time | Event |
|------|-------|
| SITD + 20 minutes | SVPCO — Check Services sends balance reports to each participant. |
| SITD + 30 minutes | Deadline for a participant to notify SVPCO — Check Services that it is unwilling to settle for any Bilateral Balance with another participant. |
| SITD + 40 minutes | If SVPCO — Check Services adjusts settlement, SVPCO — Check Services sends reports of the adjusted Bilateral and Multilateral Balances to the participants involved. |
| SITD + two hours | SVPCO — Check Services transmits, via SVPCO Settlement System, Reserve Bank Settlement Statement to the Reserve Bank.  Reserve Bank debits or credits each participant's or its Settler's Master Account for its Multilateral Balance. |

**(d)**     **Delayed Settlement Schedule.**

**(1)**     If a participant or its Settler notifies SVPCO — Check Services that its ability to settle participant's Multilateral Balance on a Settlement File is delayed by a technical problem, or if settlement cannot take place in accordance with the normal settlement schedule because of a technical problem at SVPCO — Check Services, settlement shall take place in accordance with a delayed settlement schedule as set out in this Rule 9(d).

**(2)**     A participant or its Settler having a technical problem must notify SVPCO — Check Services as soon as possible of the nature of the problem, its efforts to correct it, and an estimate of the time by which it expects the problem to be corrected.  If SVPCO — Check Services believes that the problem causing the delay can be corrected in sufficient time to allow settlement to be completed before 5:00 P.M. (ET) and would not delay beyond 5:00 P.M. (ET) the processing of other Settlement Files in the Settlement arrangement, SVPCO —Check Services shall establish a delayed settlement schedule for that day and send a notice of the delayed settlement schedule to each

participant and its Settler, if any.

(3)     If SVPCO — Check Services determines in its sole discretion that settlement under a normal or delayed settlement will not be completed because of operational difficulties of one or more participants or Settlers or for any other reason and that there is no possibility of completing the settlement prior to 6:00 P.M. (ET), SVPCO — Check Services may in its sole discretion either recast settlement and follow the procedure for settlement recast set out in Rule (e) directly below or hold the settlement over for settlement on the following Settlement Day.  If a delayed settlement is held over for settlement on the following Settlement Day, SVPCO — Check Services will not begin to process settlement for a subsequent day until settlement for the prior day is completed.

**(e)     Abnormal Settlement Schedule.**

(1)     If at any time before settlement has been completed, the Reserve Bank notifies SVPCO — Check Services that it has rejected a debit Multilateral Balance on a Settlement File, settlement shall take place in accordance with an abnormal settlement schedule as set out in this Rule (e).

(2)     SVPCO — Check Services shall recast the Settlement File containing the rejected debit Multilateral Balance by deleting all of the debits and credits of each of the Defaulting Participant(s) from the calculation of the other participants' Multilateral Balances.  This will cause the Multilateral Balance of each Defaulting Participant to equal zero.  SVPCO — Check Services shall notify each remaining participant of its Multilateral Balance on the revised Reserve Bank Settlement Statement.  Each remaining participant shall settle its revised Multilateral Balance in accordance with an abnormal settlement schedule as established by SVPCO — Check Services.

(3)     If, following the recast of a settlement, settlement is not completed in accordance with the abnormal settlement schedule established in accordance with this Rule (e), SVPCO — Check Services may, in its sole discretion: (i) extend the time for settlement to be completed, (ii) recast settlement again, or (iii) hold the settlement over to the following Settlement Day.

(4)     SVPCO — Check Services shall prepare a report showing each participant's credits vis-a-vis each Defaulting Participant, i.e., the dollar amount of the items, returned items, and adjustments that each participant delivered to each Defaulting Participant.  In accordance with the Uniform Commercial Code, each participant acting as agent or subagent of the owner of the items, shall have a claim against the Defaulting Participant or its receiver for the amount of the items delivered to the Defaulting Participant. SVPCO — Check Services shall also prepare a report showing each participant's debits vis-a-vis each Defaulting participant (i.e., the dollar amount of the items, returned items, and adjustments that the Defaulting Participant delivered to each participant.  Each participant that received an item, returned item, or adjustment from a Defaulting Participant shall either settle for the item, returned item, or adjustment outside SVPCO —Check Services or return the item, returned item, or adjustment to the Defaulting Participant.

(5)     An item delivered through SVPCO — Check Services to any participant shall be received by such participant as agent for collection of the item and no participant shall have any right to retain the item until it has finally paid for the item.  This applies to an item delivered by a nondefaulting participant to a Defaulting Participant as well as to an item delivered by a Defaulting Participant to a nondefaulting participant.  If a member becomes a Defaulting Participant and fails to pay an item delivered through SVPCO — Check Services, it shall forthwith return the item to the participant that delivered the item to it.

**Exhibit A to Appendix B-2**
**SVPCO Check Services Settler Agreement**

_____, 20_____

The Clearing House Payments Company L.L.C.
100 Broad Street
New York, NY 10004

Attn:  Gerard F. Milano, Business Manager
          SVPCO—Check Services

Re:     SVPCO—Check Services Settler Agreement

Dear: Business Manager:

The undersigned, which is a SVPCO—Check Services participant ("Participant")
designates _____, which is also a SVPCO—Check Services participant, to
perform the obligations of a Settler for it for the following SVPCO—Check Services
Settlement Arrangement(s) as provided in Appendix B-2(a) of the SVPCO—Check
Services Uniform Rules for Paper Check Exchanges (check one or more):

☐     Eastern Regional Settlement Arrangement
☐     Midwest Regional Settlement Arrangement
☐     Midwest Regional Settlement Arrangement (Detroit)
☐     Western Regional Settlement Arrangement (morning)
☐     Western Regional Settlement Arrangement (basic/regional)
☐     Western Regional Settlement Arrangement (afternoon)
☐     Western Regional Settlement Arrangement (end of day)
☐     National (Interregional Settlement) Settlement Arrangement
☐     ECP Settlement Arrangement
☐     Online Adjustments Settlement Arrangement
☐     Other:_____

Very truly yours,

Participant's Name:      _____
Authorized Signature     _____
Name & Title:               _____
Date:                           _____

59

**Acknowledgement**

The undersigned acknowledges that it has agreed to perform the obligations of a Settler for the above signed Participant, as described above and as provided under Appendix B-2(a) of the SVPCO—Check Services Uniform Rules for Paper Check Exchange.

Settler's Name:              _____

Authorized Signature         _____

Name & Title:                _____

Date:                        _____


Accepted: _____, 20 _____

The Clearing House Payment s Company L.L.C.


Authorized Signature         _____

Name & Title:                _____

Date:                        _____

**Supplemental Appendices**
**Appendix B-3:  Emergency/Disaster Processing Requirements**

If a participant is delayed in acting beyond the time limits set forth in these Rules because of interruption of computer facilities, suspension of payments by a bank, terrorist attack, war, emergency conditions, failure of equipment or other circumstances beyond its control, its time for acting is extended for the time necessary to complete the action, if it exercises such diligence as the circumstances require.

Also, see members only website at www.svpco.com for any other emergency/disaster processing requirements.

**Supplemental Appendices**
**Appendix B-4:  Non-Standard Holidays**

SVPCO — Check Services follows the standard holiday schedule recognized by the Federal Reserve System as set forth below:

| New Year's Day | January 1 |
|---|---|
| Martin Luther King, Jr. Day | Third Monday in January |
| Presidents Day | Third Monday in February |
| Memorial Day | Last Monday in May |
| Independence Day | July 4 |
| Labor Day | First Monday in September |
| Columbus Day | Second Monday in October |
| Veterans Day | November 11 |
| Thanksgiving Day | Fourth Thursday in November |
| Christmas Day | December 25 |

If a standard holiday falls on a Sunday, it is observed the following Monday.  If a standard holiday falls on a Saturday, it is observed on that Saturday and the following Monday is a regular business day.

SVPCO — Check Services has no non-standard holidays.  If a participant regularly selects as a holiday a calendar day other than a Saturday, a Sunday or a standard holiday recognized by the Federal Reserve System, that day shall be considered the day of receipt of items delivered or returned through SVPCO —Check Services and settlement for such items shall take place accordingly.

**Supplemental Appendices**
**Appendix B-5:  Procedures for Handling Dealer Drafts**

Not applicable.

**Supplemental Appendices**
**Appendix B-6:  Third-Party Service Provider Form**

## [To be typed on Participant's Letterhead]

[Date]

The Clearing House Payments Company L.L.C.
100 Broad Street
New York, N.Y. 10004

Attention:     Gerald F. Milano, Senior Vice President

Re:     [Name of SVPCO — Check Services Participant]
Designation of Third-Party
Service Provider ("Service Provider")

Dear Mr. Milano:

We hereby notify The Clearing House Payments Company L.L.C. ("PaymentsCo") that we have appointed [insert name of third-party service provider] ("Service Provider") as our agent.

The Service Provider may designate from time to time such of its officers and employees as the Service Provider deems appropriate to act as contacts with PaymentsCo .  We hereby authorize you to treat such persons as our agents to perform the following actions that require contact between us and PaymentsCo [check off and initial appropriate actions]:

☐     To deliver items (for presentment or return) and adjustments through SVPCO — Check Services, which is a payment system operated by PaymentsCo.

☐     To receive items (for presentment or return) and adjustments at our designated locations.

☐     To transmit settlement information (including, but not limited to, the Amount Brought Sheet, SVPCO — Check Services Settlement Statement, and the Participant's Settlement Statement) by means of SVPCO — Check Services Settlement Services Transmission System ("SST System") or other settlement system used by PaymentsCo (collectively "Settlement System").

☐ To transmit, by means of the Settlement System, changes to settlement information that was previously transmitted.

☐ To receive settlement information by means of the Settlement System.

☐ To give notice of our inability or unwillingness to settle for our net balance.

In connection with this authorization, we authorize PaymentsCo ("you") to perform the following actions:

☐ To receive all items delivered to you from the above Service Provider on our behalf and treat them as items being delivered directly by us.

☐ To deliver to the Service Provider all items sent to us by other SVPCO — Check Services Participants at our designated locations.

☐ To receive transmission of settlement information from the Service Provider on our behalf and to treat the settlement information sent to you by the Service Provider as having been sent directly by us.

☐ To receive transmission of changes to previously transmitted settlement information from the Service Provider on our behalf and to treat the changes sent to you by the Service Provider as having been sent directly by us.

☐ To transmit to the Service Provider settlement information sent to us by other SVPCO — Check Services Participants and to treat the settlement information that you transmitted to the Service Provider as having been sent directly to us.

☐ To receive notice of our inability or unwillingness to settle for a net balance from the Service Provider and to treat the notice as having been sent directly by us.

We agree that, notwithstanding the operational routing of items, returned items, adjustments, electronic information derived from items, and settlement information through the Service Provider, we shall remain fully responsible for all obligations arising from our participation in SVPCO — Check Services.

We agree to indemnify PaymentsCo and its respective directors, officers, employees, agents, and representatives ("covered parties") against and hold the covered parties harmless from any and all claims, liabilities, losses, damages, and expenses (including, but not limited to, attorneys' fees and expenses of litigation) arising our of or in connection with our acts or omissions or the acts or omissions of the Service Provider or of our agents or the Service Provider's agents except, however, for claims, liabilities, losses damages, and expenses to the extent that they arise directly and immediately from the gross negligence or willful misconduct of the covered parties.

This agreement shall inure to the benefit of PaymentsCo's successors and assigns.


Very truly yours,


SVPCO — Check Services Participant's Name:

Authorized Signature:  _____

Name & Title:  _____

**Supplemental Appendices**
**Appendix B-7:  Contacts – Names and Phone Numbers**


See members only website at www.svpco.com

## APPENDIX C. ADDITIONAL SUPPLEMENTAL APPENDICES

C-1    Eligibility for Participation; Procedures for Approval of Applicants; and Participant Categories

C-2    Description of Powers of Officers and Committees

C-3    Liability of PaymentsCo

C-4    Indemnification of PaymentsCo

C-5    Indemnification of Federal Reserve Banks

C-6    Merger or Consolidation of Participants

C-7    Merger or Consolidation of a Participant and a Nonparticipant

C-8    Withdrawal of Participation

C-9    Termination or Suspension

C-10   Obligation of a Participant on Resignation, Suspension, or Other Termination of Participation

C-11   Nontransferability of Rights of Participation

C-12   Binding Agreement; Assignment

C-13   ECP

C-14   Risk Management

C-15   Safeguarding Customer Information/Business Continuity

C-16   SVPCO Online Adjustments

C-17   Relationship Between These Rules and Regional Rules

C-18   Miscellaneous

© The Clearing House Payments Company L.L.C. 2005

**Additional Supplemental Appendices**
**Appendix C-1:  Procedures for Approval of Applicants**

1.     **Eligibility for Participation; Procedures for Approval of Applicants; and Participant Categories**

   (a)     Any "bank" as defined in Section 229.2(e) of Regulation CC or an institution approved to participate directly or indirectly in the check exchanges of the New York Clearing House Association L.L.C. as of March 1, 2002 (collectively "bank").

   (b)     A bank desiring to become a Participant ("prospective Participant") must have been assigned a valid routing number in accordance with procedures established by the American Bankers Association.

2.     **Procedures for Approval of Applicants**

   (a)     A prospective Participant must:

      (1)     execute and deliver to PaymentsCo a Participant Agreement and Indemnity as set forth in Exhibit A to this Appendix C-1 or such other agreement as has been approved by the Chief Executive Officer of PaymentsCo or his or her designee; and

      (2)     pay any application fee prescribed by PaymentsCo.

   (b)     A prospective Participant will be evaluated in accordance with procedures established by PaymentsCo.  A prospective Participant  becomes a Participant of SVPCO — Check Services upon notification from the Chief Executive Officer of PaymentsCo or his or her designee that its application to become a Participant has been approved by PaymentsCo.

   (c)     A prospective Participant, upon becoming a Participant of SVPCO —Check Services, agrees to pay all such fees, dues, operating charges, and assessments prescribed by PaymentsCo.

**Exhibit A to Appendix C-1**

**SVPCO — Check Services Participant Agreement and Indemnity**

_____, 20_____

Chief Executive Officer
The Clearing House Payments Company L.L.C.
100 Broad Street
New York, New York 10004

Re:    [Name of Applicant] - SVPCO — Check Services
       Participant Agreement and Indemnity

Type of organization (check one):

☐     national bank
☐     state-chartered bank
☐     foreign bank with federally licensed
        branch or agency

☐     foreign bank with state licensed     ☐ Other (specify) _____
        branch or agency                  _____
                                                  _____

Dear               :

The undersigned wishes to be or continue to be a participant in SVPCO — Check Services, a system for the exchange, clearance, and settlement and adjustment of checks and returned checks operated by The Clearing House Payments Company L.L.C. ("PaymentsCo"). As a participant, the undersigned understands that it will be able to exchange checks and returned checks with other SVPCO — Check Services participants and receive settlement for such checks in accordance with the Uniform Rules for Paper Check Exchange or other rules as adopted by PaymentsCo. The undersigned understands that PaymentsCo requires the execution and delivery by the undersigned of this agreement as a condition to permitting the undersigned to become or continue to be a participant. In that connection, the undersigned agrees as follows:

**1.    Rules/Fees and Other Charges**

The undersigned agrees to handle and settle for checks and other items delivered to it by other SVPCO — Check Services participants and to be bound by the SVPCO — Check Services Uniform Rules for Paper Check Exchange or other rules, as adopted, issued, or amended from time to time by PaymentsCo ("the "Rules"), a copy of which, effective, _____ , the undersigned has in hand.  The undersigned also agrees to pay any fees and other charges established by PaymentsCo for services provided under the Rules. If the undersigned elects to receive a check containing another bank's routing number, as such term is defined in Section 229.2 (dd) of Regulation CC, through SVPCO — Check Services, it: (a) warrants that the bank whose routing number appears on the check has authorized the undersigned to receive the check through SVPCO Check Services and (b) agrees that it shall have the same responsibility and liability for the check under the Rules and other applicable law as the bank whose routing number appears on the check would have if that bank had received such check through SVPCO — Check Services.

**2.    Termination**

The undersigned understands that it may withdraw from this agreement and from its status as a participant in SVPCO — Check Services by sending thirty (30) days written notice of withdrawal to you and that its privileges as a participant may be terminated by you if you determine, in your sole discretion, that its continued participation would not be in the best interests of PaymentsCo, SVPCO — Check Services, or the other SVPCO — Check Services participants.  No such withdrawal, termination, or suspension will relieve the undersigned of any responsibility or liability incurred prior to such withdrawal, termination, or suspension.

**3.    Indemnification of PaymentsCo**

If, under the provisions of these Rules, a Covered Person, as defined in Appendix C-3, is found liable, responsible, or accountable for any loss, liability, expense, or damage (a "loss") to a participant or any other person with respect to any act or omission of any Covered Person relating to PaymentsCo's implementation of these Rules or conduct with respect to SVPCO — Check Services, the undersigned agrees to indemnify and save harmless, on the basis set forth in the following sentence, such Covered Person from any loss or expense (including attorneys' fees and expenses of litigation) relating to the operation of SVPCO — Check Services by PaymentsCo during the period the undersigned

is a participant.  A participant's liability under this indemnity shall be equal to (a) (the loss or expense incurred by the Covered Person) multiplied by (the proportion of the "Total Dollars Delivered" for the participant to the "Total Dollars Delivered" for all participants) multiplied by (50%) plus (b) (the loss or expense incurred by the Covered Person) multiplied by (the proportion of the "Total Items Delivered" for the participant to the "Total Items Delivered" for all participants) multiplied by (50%).  For this purpose, the "Total Dollars Delivered" for a participant shall mean the total dollar amount of items delivered by the participant through SVPCO — Check Services for the thirty business days prior to the date on which the Covered Person incurred a loss or expense.  The "Total Dollars Delivered" for all participants shall mean the total dollar amount of items delivered by all participants through SVPCO — Check Services for the thirty business days prior to the date on which the Covered Person incurred a loss or expense.  The "Total Items Delivered" for a participant shall mean the total number of items delivered by the participant through SVPCO — Check Services for the thirty business days prior to the date on which a Covered Person incurred a loss or expense.  The "Total Items Delivered" for all participants shall mean the total number of items delivered by all participants through SVPCO — Check Services for the thirty business days prior to the date on which a Covered Person incurred a loss or expense.  Payment of a claim for indemnity is due on demand by the Covered Person.  If one or more participants shall fail to make a payment when due under this agreement (each, a "defaulting participant"), the liabilities of the remaining participants shall be determined after subtracting the defaulting participant's dollars and items delivered from the computation of the Total Dollars Delivered and Total Items Delivered for all participants.  A defaulting participant shall be liable to each other participant for the amount by which the other participant's liability was increased as a result of the defaulting participant's failure to make payment, together with interest thereon for each day of such failure at the rate of eighteen percent per annum, applied to a 365-day year.  If the Covered Person is unable to recover the amount of one or more participant's proportionate shares of an unrecovered loss or expense, each entity that was a participant on the date the Covered Person incurred the original loss or expense shall be jointly and severally liable for the amount of the loss or expense that the Covered Person was unable to recover.  For purposes of this paragraph, the date that a Covered Person incurs a loss or expense is the date that the Covered Person's cause of action accrued.

**4.    Indemnification of Federal Reserve Banks**

In consideration of the settlement services performed by the Federal Reserve Banks, the undersigned agrees to indemnify and hold harmless the Federal Reserve Banks from any

loss or expense (including attorneys' fees and expenses of litigation) they may incur in connection with the provision of any services under Operating Circular 12, excluding only any loss or expense resulting from a Reserve Bank's lack of good faith or failure to exercise ordinary care.  A participant's liability under this indemnity shall be equal to (a) (the loss or expense incurred by the Reserve Bank(s)) multiplied by (the proportion of the "Total Dollars Delivered" for the participant to the "Total Dollars Delivered" for all participants) multiplied by (50%) plus (b) (the loss or expense incurred by the Reserve Bank(s)) multiplied by (the proportion of the "Total Items Delivered" for the participant to the "Total Items Delivered" for all participants) multiplied by (50%).  For this purpose, the "Total Dollars Delivered" for a participant shall mean the total dollar amount of items delivered by the participant through SVPCO — Check Services for the thirty business days prior to the date on which the Federal Reserve Bank(s) incurred a loss or expense.  The "Total Dollars Delivered" for all participants shall mean the total dollar amount of items delivered by all participants through SVPCO — Check Services for the thirty business days prior to the date on which the Federal Reserve Bank(s) incurred a loss or expense.  The "Total Items Delivered" for a participant shall mean the total number of items delivered by the participant through SVPCO — Check Services for the thirty business days prior to the date on which a Reserve Bank(s) incurred a loss or expense.  The "Total Items Delivered" for all participants shall mean the total number of items delivered by all participants through SVPCO — Check Services for the thirty business days prior to the date on which a Reserve Bank(s) incurred a loss or expense.  Payment for a claim for indemnity is due within fifteen calendar days after the date notice of the claim is given to SVPCO — Check Services by a Federal Reserve Bank.  If one or more participants shall fail to make a payment where due under this agreement (each, a "defaulting participant"), the liabilities of the remaining participants shall be determined after subtracting the defaulting participant's dollars and items delivered from the computation of the Total Dollars Delivered and Total Items Delivered for all participants.  A defaulting participant shall be liable to each other participant for the amount by which the other participant's liability was increased as a result of the defaulting participant's failure to make payment, together with interest thereon for each day of such failure at the rate of eighteen percent per annum, applied to a 365-day year.  If a Federal Reserve Bank(s) is unable to recover the amount of one or more participant's proportionate share(s) of an unrecovered loss or expense, each entity that was a participant on the date the Federal Reserve Bank(s) incurred the original loss or expense shall be jointly and severally liable for the amount for the loss or expense that the Federal Reserve Bank(s) was unable to recover.  For purposes of this paragraph, the date that a Reserve Bank incurs a loss or expense is the date that the Reserve Bank's cause of action accrued.

## 5.    Miscellaneous

(a)     This agreement is governed by the laws of the state of New York.

(b)     This agreement shall be binding on the undersigned and its successors and assigns except that no participant may assign its rights or obligations hereunder without the express written consent of PaymentsCo.  PaymentsCo may assign its rights or obligations hereunder to any subsidiary or affiliate of PaymentsCo and shall provide prompt notice of an assignment to each SVPCO — Check Services participant and to the Federal Reserve Bank of New York.

Very truly yours,

Name of Bank: _____

By: _____ (Signature)

(Printed Name:) _____

Title: _____     Accepted this    day of  _____, 20_____

The Clearing House Payments Company L.L.C.

By: _____

Title: _____

**Additional Supplemental Appendices**
**Appendix C-2:  Description of Powers of Officers and Committees**

Limited Liability Company Agreement and By-Laws of The Clearing House Payments
Company L.L.C.

**Additional Supplemental Appendices**
**Appendix C-3:  Liability of PaymentsCo**

**(a)**     Except as provided in paragraph (b) below, none of (i) PaymentsCo or its affiliates
or members, or (ii) the officers, employees, agents or members of the governing
committees or boards of PaymentsCo or its affiliates or members (each person
referred to in (i) and (ii), a "Covered Person") shall be liable, responsible, or
accountable for any loss, liability, expense, or damage to a participant or any other
person with respect to any act or omission of any Covered Person relating to
PaymentsCo's implementation of these Rules or conduct with respect to SVPCO —
Check Services.

**(b)**     PaymentsCo shall maintain a standard form of financial institution bond with
aggregate and single loss limits of $25 million to cover losses discovered during the
bond period resulting from dishonest or fraudulent acts committed by an employee
of PaymentsCo or an employee of a third-party service provider hired by
PaymentsCo alone or in collusion with others.

**(c)**     If, notwithstanding the provisions in paragraph (a) above, a Covered Person is
found liable, responsible, or accountable for any loss, liability, expense, or damage
(a "loss") to a participant or any other person with respect to any act or omission of
any Covered Person relating to PaymentsCo's implementation of these Rules or
conduct with respect to SVPCO — Check Services, such loss, except to the extent
paid under the bond referred to in paragraph(b) above, shall be borne pro rata by
each participant as provided in Appendix C-4 of this Agreement.

**Additional Supplemental Appendices**
**Appendix C-4: Indemnification of PaymentsCo**

If, under the provisions of Appendix C-3 of these Rules, a Covered Person, as defined in Appendix C-3, is found liable, responsible, or accountable for any loss, liability, expense, or damage (a "loss") to a participant or any other person with respect to any act or omission of any Covered Person relating to PaymentsCo's implementation of these Rules or conduct with respect to SVPCO — Check Services, the undersigned agrees to indemnify and save harmless, on the basis set forth in the following sentence, such Covered Person from any loss or expense (including attorneys' fees and expenses of litigation) relating to the operation of SVPCO — Check Services by PaymentsCo during the period the undersigned is a participant.  A participant's liability under this indemnity shall be equal to (a) (the loss or expense incurred by the Covered Person) multiplied by (the proportion of the "Total Dollars Delivered" for the participant to the "Total Dollars Delivered" for all participants) multiplied by (50%) plus (b) (the loss or expense incurred by the Covered Person) multiplied by (the proportion of the "Total Items Delivered" for the participant to the "Total Items Delivered" for all participants) multiplied by (50%).  For this purpose, the "Total Dollars Delivered" for a participant shall mean the total dollar amount of items delivered by the participant through SVPCO — Check Services for the thirty business days prior to the date on which the Covered Person incurred a loss or expense. The "Total Dollars Delivered" for all participants shall mean the total dollar amount of items delivered by all participants through SVPCO — Check Services for the thirty business days prior to the date on which the Covered Person incurred a loss or expense.  The "Total Items Delivered" for a participant shall mean the total number of items delivered by the participant through SVPCO — Check Services for the thirty business days prior to the date on which a Covered Person incurred a loss or expense.  The "Total Items Delivered" for all participants shall mean the total number of items delivered by all participants through SVPCO — Check Services for the thirty business days prior to the date on which a Covered Person incurred a loss or expense.  Payment of a claim for indemnity is due on demand by the Covered Person.  If one or more participants shall fail to make a payment when due under this agreement (each, a "defaulting participant"), the liabilities of the remaining participants shall be determined after subtracting the defaulting participant's dollars and items delivered from the computation of the Total Dollars Delivered and Total Items Delivered for all participants.  A defaulting participant shall be liable to each other participant for the amount by which the other participant's liability was increased as a result of the defaulting participant's failure to make payment, together with interest thereon for each day of such failure at the rate of eighteen percent per annum, applied to a 365-day

year.  If the Covered Person is unable to recover the amount of one or more participant's proportionate shares of an unrecovered loss or expense, each entity that was a participant on the date the Covered Person incurred the original loss or expense shall be jointly and severally liable for the amount of the loss or expense that the Covered Person was unable to recover.  For purposes of this paragraph, the date that a Covered Person incurs a loss or expense is the date that the Covered Person' cause of action accrued.

**Additional Supplemental Appendices**
**Appendix C-5: Indemnification of Federal Reserve Banks**

In consideration of the settlement services performed by the Federal Reserve Banks for SVPCO — Check Services, each participant indemnifies and holds harmless the Federal Reserve Banks from any loss or expense (including attorneys' fees and expenses of litigation) they may incur in connection with the provision of any services under Operating Circular 12, excluding only any loss or expense resulting from a Reserve Bank's lack of good faith or failure to exercise ordinary care.  A participant's liability under this indemnity shall be equal to (a) (the loss or expense incurred by the Reserve Bank(s)) multiplied by (the proportion of the "Total Dollars Delivered" for the participant to the "Total Dollars Delivered" for all participants) multiplied by (50%) plus (b) (the loss or expense incurred by the Reserve Bank(s)) multiplied by (the proportion of the "Total Items Delivered" for the participant to the "Total Items Delivered" for all participants) multiplied by (50%).  For this purpose, the "Total Dollars Delivered" for a participant shall mean the total dollar amount of items delivered by the participant through SVPCO — Check Services for the thirty business days prior to the date on which the Federal Reserve Bank(s) incurred a loss or expense.  The "Total Dollars Delivered" for all participants shall mean the total dollar amount of items delivered by all participants through SVPCO —Check Services for the thirty business days prior to the date on which the Federal Reserve Bank(s) incurred a loss or expense.  The "Total Items Delivered" for a participant shall mean the total number of items delivered by the participant through SVPCO — Check Services for the thirty business days prior to the date on which a Reserve Bank(s) incurred a loss or expense. The "Total Items Delivered" for all participants shall mean the total number of items delivered by all participants through SVPCO — Check Services for the thirty business days prior to the date on which a Reserve Bank(s) incurred a loss or expense.  Payment for a claim for indemnity is due within fifteen calendar days after the date notice of the claim is given to SVPCO — Check Services by a Federal Reserve Bank.  If one or more participants shall fail to make a payment where due under this agreement (each, a "defaulting participant"), the liabilities of the remaining participants shall be determined after subtracting the defaulting participant's dollars and items delivered from the computation of the Total Dollars Delivered and Total Items Delivered for all participants.  A defaulting participant shall be liable to each other participant for the amount by which the other participant's liability was increased as a result of the defaulting participant's failure to make payment, together with interest thereon for each day of such failure at the rate of eighteen percent per annum, applied to a 365-day year.  If a Federal Reserve Bank(s) is unable to recover the amount of one or more participant's proportionate share(s) of an

79

unrecovered loss or expense, each entity that was a participant on the date the Federal Reserve Bank(s) incurred the original loss or expense shall be jointly and severally liable for the amount for the loss or expense that the Federal Reserve Bank(s) was unable to recover.  For purposes of this paragraph, the date that a Reserve Bank incurs a loss or expense is the date that the Reserve Bank's cause of action accrued.

**Additional Supplemental Appendices**
**Appendix C-6:  Merger or Consolidation of Participants**

In the event of the merger or consolidation of two or more participants, the surviving or resulting institution may continue to be or become a participant of SVPCO — Check Services without the payment of any additional dues or assessments occasioned by such merger or consolidation, provided that the surviving or resulting institution continues to meet the requirements of Appendix C-1.

**Additional Supplemental Appendices**
**Appendix C-7:  Merger or Consolidation of a Participant and a Nonparticipant**

**(a)**    In the event of a merger or consolidation of one or more participants and one or more nonparticipants under circumstances where a participant is to be the surviving or resulting institution, the latter may continue to be a participant of SVPCO — Check Services upon the payment of such additional dues and assessments, if any, as shall have been prescribed by PaymentsCo as applicable to such mergers and consolidations, and provided that the surviving or resulting institution continues to meet the requirements of Appendix C-1.

**(b)**    In the event the merger or consolidation involving one or more participants and one or more nonparticipants under circumstances where a nonparticipant is to be the surviving or resulting institution, the latter may, if it desires to become a participant of SVPCO — Check Services and is eligible for such participation, take whatever action is necessary in respect thereto in accordance with the provisions of Appendix C-1.  The surviving or resulting institution may continue to exchange items through SVPCO — Check Services for a reasonable period of time as determined by the Chief Executive Officer of PaymentsCo or his or her designee in his or her sole discretion while the surviving or resulting institution applies to become a participant, or, if the surviving or resulting institution determines not to become a participant, for a reasonable period of time as determined by the Chief Executive Officer of PaymentsCo or his or her designee while the surviving or resulting institution makes alternative arrangements for exchanging items and electronic information.

**Additional Supplemental Appendices**
**Appendix C-8:  Withdrawal of Participation**

Any participant may withdraw from its participation in SVPCO — Check Services upon not less than 30 days prior written notice to the Chief Executive Officer of PaymentsCo.  The notice shall designate the date the withdrawal from participation is to become effective. Shorter notice of a resignation shall be effective if accepted by PaymentsCo.  In the event of any participant's withdrawal from participation in SVPCO — Check Services, the Chief Executive Officer or his or her designee shall promptly notify each of the other participants and the appropriate Federal Reserve Banks of the withdrawal of participation and its effective date.

**Additional Supplemental Appendices**
**Appendix C-9:  Termination or Suspension**

(a)     Any participant that suspends payments (as defined in § 4-104 of the Uniform
Commercial Code) for any reason shall thereby cease to be a Participant of SVPCO
— Check Services.

(b)     The Chief Executive Officer of PaymentsCo or his or her designee may suspend a
participant's privileges under these Rules at any time if he or she determines, in his
or her sole discretion, that its continued participation would not be in the best
interests of PaymentsCo or the other participants.  Such determination, by the way
of example but not by way of limiting the discretion of the Chief Executive Officer or
his or her designee, may be based on any one of the following:

    (i)      repeated or willful violations of the provisions of these Rules, including but
not limited to Appendix C-14 (Risk Management);

    (ii)     failure to pay PaymentsCo when due any fees, dues, operating charges, or
assessments owing to PaymentsCo;

    (iii)    the occurrence of any act, event, or condition that leads the Chief Executive
Officer or his or her designee to determine that a Participant is or is about to
become insolvent or unable to meet its obligations under these Rules or is
being operated in an unsafe or unsound manner; or

    (iv)    the commencement of any proceedings by or before any regulatory body to
terminate a Participant's deposit insurance or cause it or any of its officers or
directors to desist from any alleged unsafe or unsound practice. Any
termination or suspension taken under this Appendix C-9(b) will be effective
from the time set by the Chief Executive Officer or his or her designee and
continue unless or until it is countermanded by the Board of Directors of
PaymentsCo.

(c)     In the event of the cessation, termination, or suspension of a Participant under the
provisions of this section, PaymentsCo will promptly notify the Participant and each
other Participant of the action and its effective date.

**Additional Supplemental Appendices**
**Appendix C-10:     Obligation of a Participant on Resignation, Suspension, or Other Termination of Participation**

A Participant that withdraws from participation in SVPCO — Check Services or whose participation in SVPCO — Check Services shall have otherwise been terminated or suspended for any reason shall be and remain liable to PaymentsCo and the other Participants for or on account of any obligations that have accrued or that have arisen or may arise out of any transaction that has taken place prior to the effective date of such resignation, termination, or suspension.

**Additional Supplemental Appendices**
**Appendix C-11:  Nontransferability of Rights of Participation**

A Participant's rights of participation in SVPCO — Check Services shall not be transferable
or assignable, whether by sale, merger, consolidation, or otherwise, except as expressly
provided herein.  Notwithstanding the previous sentence, if a participant is closed by order
of an appropriate state or federal financial institution regulatory authority or a court of
competent jurisdiction and some or all of its deposits are transferred to another depository
institution that is not a Participant, the transferee depository institution may continue to
exchange items through SVPCO — Check Services for a reasonable period of time as
determined by the Chief Executive Officer of PaymentsCo or his or her designee in his or
her sole discretion while the transferee depository institution applies to become a
Participant.

**Additional Supplemental Appendices**
**Appendix C12:  Binding Agreement; Assignment**

These Rules shall inure to the benefit of PaymentsCo and its successors and assigns and shall be binding on the Participants and their respective successors and assigns, except that no Participant may transfer or assign its rights or obligations thereunder except as expressly provided herein.  PaymentsCo may assign its rights or its obligations under these Rules and the Participant Agreement to any subsidiary or affiliate of PaymentsCo and shall provide prompt notice of the assignment to each Participant.

**Additional Supplemental Appendices**
**Appendix C-13:  ECP**

If a participant is sending or receiving electronic information obtained from checks ("ECP") through the Clearing House Electronic Check Clearing System ("CHECCS") switch, it may only exchange such checks through the exchange(s) listed on the members only website at www.svpco.com.

**Additional Supplemental Appendices**
**Appendix C-14: Risk Management**

(a)    **Sending Limit**.  The total dollar amount of items sent by a participant to another participant on a given Settlement Day may not exceed 30% of the sending participant's total capital as defined by regulations applicable to the participant which limit the risks that the failure of a depository institution would pose to an insured depository institution (e.g. Regulation F of the Board of Governors of the Federal Reserve System) or, if no such regulations are applicable, then as defined by generally accepted accounting principles generally applied or some other method acceptable to PaymentsCo ("Total Capital").  PaymentsCo shall monitor the compliance with these sending limits on an ex-post basis.  Each participant must furnish information to PaymentsCo at the request of the Chief Executive Officer of PaymentsCo describing the circumstances that cause any failure to comply with these limits.  Any participant that repeatedly exceeds its sending limit will be subject to suspension or termination under the provision of Appendix C-9 of these Rules.

(b)    **Ex-Post Debit Cap**.  SVPCO – Check Services may establish for each participant a debit cap, which is a limit on the debit Multilateral Balance that the participant is permitted to incur on any Settlement Day.  These caps shall be monitored by SVPCO – Check Services on an ex-post basis.  Any participant with a high-risk rating that frequently exceeds its debit cap will be subject to suspension or termination under the provisions of Appendix C-9.

(c)    **Criteria for Establishing Limits**.  The limits provided for in Appendix C-14(b) shall be set by SVPCO – Check Services as a percentage of capital based on ratings established by a nationally recognized bank rating agency selected by the Chief Executive Officer of The Clearing House or his or her designee.  The percentage used as limits and the identity of the agency whose ratings are used shall be distributed to participants from time to time.

(d)     **Confidentiality**.  Except as otherwise provided herein, SVPCO – Check Services shall exercise its best efforts to maintain Debit Caps and risk rating information on a confidential basis.  SVPCO – Check Services may provide such information to the participant to which such information relates, to the participant's Settler if requested by the Settler, to appropriate financial institution regulatory authorities, to appropriate personnel of The Clearing House, and otherwise as required by law.

SVPCO – Check Services may notify a participant's financial institution regulator any time the participant exceeds its Debit Cap if it gives the participant at least 10 days' advance notice of its intentions to notify the participant's primary federal institution regulator.

**Additional Supplemental Appendices**
**Appendix C-15: Safeguarding Customer Information/Business Continuity**

PaymentsCo shall take appropriate measures, as specified in Schedule A below, Information-Security Standards and Requirements, designed to meet the objectives of the Interagency Guidelines Establishing Information Security Standards issued by the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, the Office of Thrift Supervision, and the National Credit Union Administration, and as amended from time to time. These will include appropriate measures designed to (i) ensure the security and confidentiality of any information of a customer of a SVPCO — Check Services participant ("participant") obtained by PaymentsCo as a result of its processing any item; (ii) protect against any anticipated threats or hazards to the security or integrity of such information; and (iii) protect against unauthorized access to or use of such information that could result in substantial harm to any such customer.

PaymentsCo as operator of SVPCO – Check Services shall take appropriate measures, as specified from time to time in Schedule A, designed to meet the objectives of the Interagency Guidance on Response Programs for Unauthorized Access to Customer Information and Customer Notice issued by the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, the Office of Thrift Supervision, and the National Credit Union Administration, and as amended from time to time. These will include appropriate actions to address incidents of unauthorized access to a participant's customer information, including notification to the participant as soon as possible of any such incident, to enable the participant to expeditiously implement its response program.

**Schedule A**
**Information-Security Standards and Requirements**

PaymentsCo as operator of SVPCO — Check Services shall take the following measures designed to (i) ensure the security and confidentiality of any information of a customer of a participant obtained by PaymentsCo as a result of its processing any item ("customer information"); (ii) protect against any anticipated threats or hazards to the security or integrity of customer information, and (iii) protect against unauthorized access or use of customer information that could result in substantial harm to a participant's customer; and (iv) ensure the proper disposal of such information, and to address incidents of

unauthorized access to the participant's customer information, including notification to the participant as soon as possible of any such incident, to enable the participant to expeditiously implement its response program:

1.    **Information-Security Program**
    (a)    PaymentsCo shall adopt a written information-security program that will, at a minimum contain the following elements:
        (1)    Physical access to computer equipment, storage media (including electrical, optical, and physical media), and other aspects of the system that would permit access to customer information shall be restricted to properly authorized individuals, 24 hours per day, several days per week.
        (2)    Logical access to programs, data, or any other aspect of the system that would permit access to customer information shall be limited to authorized individuals.

    (b)    The information-security program shall be materially consistent with commercially-reasonable industry standards and shall describe the following features as applicable:
        (1)    the detail of the system architecture of all environments, including, as applicable, the logical topology of routers, switches, Internet firewalls, management or monitoring firewalls, servers (web, application, and database), intrusion detection systems, network and platform redundancy;
        (2)    the specifications of the firewalls in use;
        (3)    the intrusion-detection system environment and the security breach and event escalation process;
        (4)    the change-management process for automated systems used to provide services;
        (5)    the business and technical disaster recovery management process;
        (6)    the management and staff positions that perform administrative functions on servers, firewalls, or other devices within the application and network infrastructure;
        (7)    each logon process to be followed by participants to obtain access to services;
        (8)    policies, procedures, and controls used to protect customer information when it is in printed or other perceptible forms;

(9)    operating system security controls and configurations;

(10)    technology and usage of encryption for protecting customer information, including passwords and authentication information, during transit and in all forms and locations;

(11)    services, tools and connectivity required to manage the application and network environment;

(12)    arrangements for physical security;

(13)    privacy and security policies;

(14)    location of servers; and

(15)    security of customer information held at PaymentsCo's service providers, to the extent such service providers have access to customer information.

(c)    The information-security program will be available for inspection by a participant at a PaymentsCo facility upon appointment during normal business hours.

(d)    PaymentsCo shall provide for regular audits of the controls related to the information-security program by independent auditors (e.g., SAS 70 audits). A copy of the audit report shall be provided to each SVPCO — Check Services participant upon request.

(e)    PaymentsCo shall permit inspection by appropriate federal and state bank supervisory agencies.

(f)    PaymentsCo shall review the effectiveness of its information-security program and report its findings to its board of directors at least annually. Such review may be based upon and made in conjunction with the reports of independent auditors or bank supervisors as provided in paragraphs (d) and (e) immediately above.

2.    **Detection of Security Breaches**

(a)    PaymentsCo shall be on alert status and shall monitor its system and its procedures for security breaches, violations, and suspicious activity, including suspicious external activity (including unauthorized probes, scans, or break-in attempts) and suspicious internal activity (including unauthorized system administrator access, unauthorized changes to its system or network,

system or network misuse, or theft or mishandling of customer information).

(b)     PaymentsCo shall permit a participant to inspect its physical system equipment, operational environment, and customer information handling procedures with prior notice and at mutually agreeable times.

(c)     PaymentsCo shall notify a participant in the event of a breach of security or the detection of suspicious activity that affects the participant and shall cooperate with the participant's security investigation activities.

(d)     PaymentsCo shall monitor industry-standard information channels for newly identified system vulnerabilities regarding the technologies and services (including application software, databases, servers, firewalls, routers and switches, hubs, etc.) and fix or patch any identified security problem as soon as commercially reasonable.

3.      **Contingency Plans**

(a)     PaymentsCo shall maintain appropriate plans to assure its continued operation.  These plans shall include the following: recovery strategy, documented recovery plans covering all areas of operations necessary to delivering services as required by the SVPCO — Check Services Rules, vital records protection, and testing plans.  The plans shall provide for off-site backup of critical data files, customer information, software, documentation, forms and supplies, and alternative means of transmitting and processing entries.  The recovery strategy shall provide for recovery after both short- and long- term disruptions in facilities, environmental support, and data processing equipment.  PaymentsCo shall continue to provide service to a participant if the participant activates its contingency plan or moves to an interim site to conduct its business, including during tests of the participant's contingency operations plans.

(b)     PaymentsCo's contingency plans shall provide the ability to bring its operations up to full capacity at its back-up site within [60 minutes] of a declared disaster.

(c)     PaymentsCo shall provide to a participant upon request copies of all contingency exercise final reports.  If requested, PaymentsCo shall allow a

participant, at its own expense, to observe a contingency test.

(d)     PaymentsCo shall participate in a participant's data center's exercise to validate recovery connectivity, if requested and upon reimbursement of any expenses incurred by PaymentsCo.

4.     **Record Retention**

PaymentsCo shall maintain system records and logs for a reasonable time no shorter than that required by applicable laws.  A participant may review and inspect any record of system activity, including entries and customer information with prior notice and at a time mutually convenient.

**Additional Supplemental Appendices**
**Appendix C-16:  SVPCO Online Adjustments**

A SVPCO — Check Services participant that elects to use SVPCO Online Adjustments shall be bound by the SVPCO Online Adjustments Rules, as amended from time to time, a copy of which shall be provided to it.  The minimum dollar amount for an online adjustment is the same as that provided by the Federal Reserve ($25.01) except no minimum amount applies to adjustments arising from the exchange of travelers checks.

**Additional Supplemental Appendices**
**Appendix C-17:  Relationship Between These Rules and Regional Rules**

All matters covered by these Rules shall supersede the same matters covered by the rules of the Eastern, Midwest, and Western Regions of SVPCO — Check Services ("Regional Rules").

Attached as Exhibits A and B to this Appendix C-17 are the Midwest and Western Regional Rules, respectively, which cover special matters related to exchanges of items within those regions that are not covered by these Rules.  There are no Eastern Regional Rules.

**Exhibit A to Appendix C-17**
**MIDWEST REGION SPECIAL CHECK SERVICES RULES**

**SVPCO – Check Services**
**Midwest Region Rules**
**for Special Check Services and Exchanges**
**("Midwest Region Special Check Services Rules")**

## Table of Contents

Page

Preface ..................................................................................................................... 98
Part A – Definitions................................................................................................... 99
Part B – Rules .......................................................................................................... 99
   1.  Community Bank Exchange ............................................................................ 99
   2.  City Clearing Exchange ................................................................................ 100
   3.  Correspondent Settlement Service .............................................................. 100
   4.  Early Exchange Service................................................................................ 100
   5.  Express Dispatch Service............................................................................. 101
   6.  Check Telephone Advice Service ................................................................ 101
   7.  Community Banks Exchange Transportation Service.................................... 102
   8.  Check Operations Remote Access Service. ................................................ 102
Part C – Miscellaneous.......................................................................................... 103

## Preface

SVPCO – Check Services Midwest Region facilitates paper check exchanges among Participants of SVPCO – Check Services at locations in check – processing regions served by Federal Reserve Banks in Federal Reserve Districts 7-11, both within and between such locations.  Such paper check exchanges are governed by the SVPCO – Check Services Uniform Rules for Paper Check Exchange ("Uniform Rules") and these Midwest Region Special Check Services Rules ("Rules").

The Special Check Services provided by the SVPCO – Check Services Midwest Region are:

1. Community Bank Exchange
2. City Clearing Exchange
3. Correspondent Settlement Service
4. Check Early Exchange Service
5. Express Dispatch Service
6. Check Telephone Advice Service
7. Community Bank Exchange Transportation Service
8. Check Operations Remote Access Service

## Part A – Definitions

1.     **Participant**. An entity that is authorized under the SVPCO – Check Services Uniform Rules for Paper Check Exchange to present and/or receive checks to or from another Participant through SVPCO – Check Services.

2.     **Community Bank Exchange Participant**.  A Participant located outside the City of Chicago but within the geographical area served by the Seventh Federal Reserve District (Federal Reserve Bank of Chicago)

3.     **City Clearing Exchange Participant**.  A Participant located within the City of Chicago.

4.     **Correspondent Settlement Service Participant**.  A Participant that is a customer (respondent) of another Participant (correspondent) that has agreed to act as its Settler.

Any term used in these Rules that is not defined in these Rules shall have the same meaning as in the Uniform Rules.

## Part B – Rules

1.     **Community Bank Exchange**

a.     The Community Bank Exchange is the exchange at which items may be delivered by participants to all Community Bank participants for collection. The Community Bank Exchange is part of the SVPCO – Check Services Midwest Regional Settlement Arrangement, which is governed by Appendix B-2 of the Uniform Rules.

2. **City Clearing Exchange**

   a. The City Clearing Exchange is the exchange at which items may be delivered by participants to all City Clearing participants for collection. The City Clearing Exchange is part of the SVPCO – Check Services Midwest Regional Settlement Arrangement, which is governed by Appendix B-2 of the Uniform Rules.

3. **Correspondent Settlement Service**

   a. The Correspondent Settlement Service enables a Participant to designate another Participant, with which it has a correspondent relationship, to act as its Settler by settling its balances for it. Both Participants must execute a "Correspondent Settlement Agreement" as set forth in Appendix 1 of these Rules. The Correspondent Settlement Service is part of the SVPCO – Check Services Midwest Regional Settlement Arrangement, which is governed by Appendix B-2 of the Uniform Rules.

4. **Early Exchange Service**

   a. The Early Exchange Service provides for delivery of each day's items to Participants earlier than published schedules.

   b. Participation Criteria. Any Participant that receives a minimum daily average of 1,000 items from any one Participant may apply to participate in the Early Exchange Service by submitting an application letter as set forth in Appendix 2 to these Rules.

   c. Additional Participation Criteria. Participants shall be required to deliver early only to those Participants that have received a minimum daily average of 1,000 items from that Participant during the preceding month.

   d. Exchange Hour. The Exchange Hour for the Early Exchange Service shall be the time set forth in the Daily Operating Schedule of each Business Day located at www.svpco.com. Items must be removed in accordance with the Daily Operating Schedule.

   e. Settlement. All items delivered at the Early Exchange shall be included in the settlement of the Business Day of delivery. The Early Exchange Service is part of the SVPCO – Check Services Midwest Regional Settlement

Arrangement, which is governed by Appendix B-2 of the Uniform Rules.

5. **Express Dispatch Service.**

    a.    The Express Dispatch Service provides for delivery of each day's items to Participants earlier than published schedules.

    b.    Participation Criteria. Any Participant may apply to SVPCO – Check Services to become an Express Dispatch Service Participant by submitting an application letter as set forth in Appendix 3 to these Rules.

    c.    Exchange Hour. The Exchange Hour for the Express Dispatch Service shall be the time set forth in the Daily Operating Schedule of each Business Day located at www.svpco.com.

    d.    Settlement. All items delivered by means of the Express Dispatch Service shall be included in the settlement of the Business Day of delivery.

    e.    Rights and Responsibilities of Participants.

        (i)    Participants shall present at the Midwest Region by the Exchange Hour for the Express Dispatch Service all available items to receiving participant.

        (ii)    Receiving Participant shall pick up items according to the Daily Operating Schedule located at www.svpco.com. The Receiving Participant's messenger is required to list the package totals and sign for the packages received.

        (iii)    Receiving Participants bear the risk and cost of transporting to the correct destinations packages removed in error by their messengers.

        (iv)    SVPCO – Check Services staff shall contact a designated individual at each Participant in accordance with the Daily Operating Schedule located at www.svpco.com to verify the total.

6. **Check Telephone Advice Service**

    a.    The Check Telephone Advice Service provides for each day's debit total to Participants.

b.    Any Participant may apply to SVPCO – Check Services to become a Check Telephone Advice Services Participant by submitting an application letter as set forth in Appendix 4 of these Rules.

c.    Debit Total Available.  SVPCO – Check Services staff will contact the designated department at each Participant in accordance with the Daily Operating Schedule located at www.svpco.com.

7.    **Community Banks Exchange Transportation Service.**

a.    The Community Bank Exchange Transportation Service provides for delivery of items to Community Bank Exchange Participants.

b.    Participation Criteria.  Any participant may apply to SVPCO – Check Services to become a Community Bank Exchange Transportation participant by submitting an authorization letter as set forth in Appendix 5 of these Rules.

c.    Rights and Responsibilities of Participants.

(i)    SVPCO – Check Services staff will verify packages against furnished listings.  Items will then be inserted and sealed into bags for delivery to Community Bank participants.

(ii)    SVPCO – Check Services staff will report any errors to Participants.

(iii)    Bags will be released in accordance with the Daily Operating Schedule located at www.svpco.com.

8.    **Check Operations Remote Access Service.**

a.    The Remote Access Service provides for current day and historical settlement data to Participants.

b.    Participation Criteria.  Any Participant may apply to SVPCO – Check Services to become a Remote Access Service participant by submitting an application letter as set forth in Appendix 6 of these Rules.

c.    Third Party Agent.  A participant my appoint a third – party agent to receive

settlement information for it by submitting to SVPCO – Check Services a properly completed form set forth in Appendix B-6 of the SVPCO – Check Services Uniform Rules for Paper Check Exchange.

    d.    Settlement Data Availability.

        (i)    A participant may access available historical settlement data at any time.

        (ii)    A participant may access current day settlement data any time after which the data becomes available in accordance with the Daily Operating Schedule located at www.svpco.com.

**Part C – Miscellaneous**

**1.    Fines**

    a.    SVPCO – Check Services may levy fines against any Participant for improper conduct in exchanges conducted within Federal Reserve Districts 7-11.  The manager of SVPCO – Check Services or his or her designee shall be empowered to levy fines in accordance with schedules located at www.svpco.com and for infractions of the SVPCO – Check Services Uniform Rules for Paper Checks Exchange and these Midwest Region Special Check Service Rules.

    b.    Any fees, fines, dues or any other monies owing SVPCO – Check Services or The Clearing House Payments Company L.L.C. may be collected by SVPCO – Check Services through a charge to be collected in a Settlement File, as such term is defined in Appendix B-2 (b) (9) of the SVPCO – Check Services Uniform Rules for Paper Check Exchange.

**Appendix 1**

CORRESPONDENT SETTLEMENT AGREEMENT

The Clearing House Payments Company L.L.C.,                    a Participant of
SVPCO – Check Services, herein referred to as "Settler," and                    , a
Participant of SVPCO – Check Services whose settlement balances will be settled by
Settler, herein referred to as "Participant," hereby agree as follows:

All parties agree to be bound by the SVPCO – Check Services Uniform Rules for Paper
Check Exchange and the SVPCO – Check Services Midwest Region Rules for Special
Check Services and Exchanges (collectively "Rules") as in effect from time to time as
though such Rules were incorporated in this agreement.  This agreement in no way
abrogates or derogates from any obligations of Settler or Participant under the SVPCO –
Check Services Participant Agreement and Indemnity executed by it.

1.    Participant authorizes Settler to charge its account each business day for the total
      face amount of items presented to it and items returned to it through SVPCO –
      Check Services Midwest Region as well as adjustments, service fees and any other
      charges related to Participant authorized under the Rules.

2.    Settler agrees to accept as a charge to its account at a Federal Reserve Bank or at
      another Settler the total face amount of the items presented to Participant and
      returned to Participant through SVPCO – Check Services Midwest Region, as well
      as adjustments, service fees and the other charges related to Participant as
      authorized under the Rules.

3.    This Agreement shall become effective on its date and shall remain in effect unless
      and until any party shall have terminated it by at least one business day's written
      advance notice to each of the other parties.  Such termination shall not abrogate or
      derogate from any obligation of Settler or Participant under the SVPCO – Check
      Services Participant Agreement and Indemnity executed by it.

IN WITNESS WHEREOF, the parties have signed this Agreement, the \_\_\_\_\_ day of
_____, 20_____.


_____

_____
Name and Address of Participant


By_____
Signature and Title of
Authorized Officer



_____

_____
Name and Address of Settler


By_____
Signature and Title of
Authorized Officer

The Clearing House Payments Company L.L.C.
230 SOUTH  LASALLE ST., SUITE 700
CHICAGO, ILLINOIS 60604

By_____
Senior Vice President

**Appendix 2**

EARLY EXCHANGE SERVICE APPLICATION

We hereby apply for participation in the Early Exchange Service of the SVPCO – Check Services Midwest Region ("Early Exchange Service"). We agree to comply with the rules governing the Early Exchange Service contained in the SVPCO – Check Services Midwest Region Rules for Special Check Services and Exchanges, as amended from time to time, a current copy of which has been provided to us. Nothing herein abrogates or derogates from any of our obligations under the SVPCO – Check Services Participant Agreement and Indemnity executed by us.

Dated this _____ day of _____ 20 _____

Institution
Name _____

ABA Number

_____

By: _____

Title: _____

The Clearing House Payments Company L.L.C.

Accepted this _____day of _____20 _____

By: _____

Title: _____

**Appendix 3**

EXPRESS DISPATCH SERVICE APPLICATION

We hereby apply for participation in the Express Dispatch Service of the SVPCO – Check Services Midwest Region.  We agree to comply with the rules governing the Express Dispatch Service contained in the SVPCO – Check Services Midwest Region Rules for Special Check Services and Exchanges, as amended from time to time, a current copy of which has been provided to us.  Nothing herein abrogates or derogates from any of our obligations under the SVPCO – Check Services Participant Agreement and Indemnity executed by us.

Dated this _____ day of _____ 20 _____

Institution
Name _____

ABA Number _____

By: _____

Title: _____

The Clearing House Payments Company L.L.C.

Accepted this _____day of _____20 _____

By: _____

Title: _____

**Appendix 4**

TELEPHONE ADVICE SERVICE APPLICATION

We hereby apply for participation in the Telephone Advice Service of the SVPCO – Check Services Midwest Region.  We agree to comply with the rules governing the Telephone Advice Service contained in the SVPCO – Check Services Midwest Region Rules for Special Check Services and Exchanges, as amended from time to time, a current copy of which has been provided to us.  Nothing herein abrogates or derogates from any of our obligations under the SVPCO – Check Services Participant Agreement and Indemnity executed by us.

Dated this _____ day of _____ 20 _____

Institution
Name _____

ABA Number _____

By: _____

Title: _____

The Clearing House Payments Company L.L.C.

Accepted this _____day of _____ 20 _____

By: _____

Title: _____

**Appendix 5**

COMMUNITY BANK EXCHANGE TRANSPORTATION AUTHORIZATION

SVPCO – Check Services is hereby authorized by the undersigned Participant to deliver items for the Participant's Community Bank to the locations indicated below.

SVPCO – Check Services Midwest Region will verify packages against the furnished listings and adjust or report any errors to the Participant.

Any change to this agreement must be submitted to SVPCO – Check Services, in the form of a new Transportation authorization, at least one week prior to the effective date of such change.

Effective Date: _____

Deliver To:

_____

_____

_____


_____      _____
Exchange Participant Name                      ABA Number


_____      _____
Name                                                          Title


_____      _____
Signature                                                     Date

The Clearing House Payments Company L.L.C.

Accepted this _____ day of _____ 20 _____


By: _____


Title: _____


109

**Appendix 6**

REMOTE ACCESS SERVICE APPLICATION

We hereby apply for participation in the Remote Access Service of SVPCO – Check Services Midwest Region.  We agree to comply with the rules governing the Remote Access Service contained in the SVPCO – Check Services Midwest Region Rules for Special Check Services and Exchanges, as amended from time to time, a current copy of which has been provided to us.  Nothing herein abrogates or derogates from any of our obligations under the SVPCO – Check Services Participant Agreement and Indemnity executed by us.

Dated this _____ day of _____ 20 _____

Institution
Name _____

ABA Number _____

By: _____

Title: _____

The Clearing House Payments Company L.L.C.

Accepted this _____ day of _____ 20 _____

By: _____

Title: _____

**Exhibit B to Appendix C-17**
**WESTERN REGION SPECIAL CHECK SERVICES RULES**


**SVPCO – Check Services**
**Western Region Rules**
**for Special Check Rules & Services**
**("Western Region Special Check Services Rules")**


## Table of Contents

Page

Preface ................................................................................................................ 111
Part A – Definitions.............................................................................................. 112
Part B – Rules ..................................................................................................... 112
   Binding Arbitration ......................................................................................... 112
   Commingled Items ........................................................................................ 113
Part C – Services ................................................................................................ 113
   Regional Transportation Service.................................................................... 113

**Preface**

SVPCO – Check Services Western Region facilitates paper check exchanges among Participants of SVPCO – Check Services at locations in the check – processing region served by Federal Reserve Banks in Federal Reserve District 12, both within and between such locations.  Such paper check exchanges are governed by the SVPCO – Check Services Uniform Rules for Paper Check Exchange ("Uniform Rules") and these Western Region Special Check Services Rules ("Rules").

The Special Check Services provided by SVPCO – Check Services Western Region are:

Binding Arbitration Rule
Commingled Items Rule
Regional Transportation Service

**Part A – Definitions**

**Participant**. An entity that is authorized under the SVPCO – Check Services Uniform Rules for Paper Check Exchange to present and/or receive checks to or from another Participant through SVPCO – Check Services.

Any term used in these Rules that is not defined in these Rules shall have the same meaning as in the Uniform Rules for Paper Check Exchange.

**Part B – Rules**

**Binding Arbitration**

If there is a dispute regarding any item or entry eligible for clearing or processing under the Uniform Rules for Paper Check Exchange:

a)     Each Participant agrees to submit to binding arbitration any dispute as to (i) all items cleared or entries processed under the Uniform Rules for Paper Check Exchange in the Western Region; or (ii) all items or entries eligible for clearing or processing under the Uniform Rules for Paper Check Exchange, pursuant to the Check Services Participant Agreement and Indemnity, but which are handled by another collection process. The Binding Arbitration Rule shall not apply to disputes where the aggregate amount of the items or entries in dispute exceeds $1,000,000.

b)     Any part to such a dispute may initiate the binding arbitration procedure by a written request that identifies the parties to the dispute and provides a brief description of it. Such requests shall be addressed and delivered to the Business Manager of SVPCO – Check Services in the Western Region. The Business Manager, or a designee, shall notify all other parties to such dispute within ten (10) days by written notice, enclosing a copy of the request for binding arbitration.

c)     The binding arbitration shall be conducted pursuant to any procedure unanimously agreed to in writing by the Participants in dispute. If no such agreement is reached within thirty (30) days of notification by the Business Manager, or a designee, or the request for binding arbitration, any party to the dispute may: submit the dispute for binding arbitration to the American Arbitration Association (AAA) for resolution in accordance with its Commercial Arbitration Rules; and, as to disputes involving third parties that are in litigation, any Participant may petition the court for appropriate alternate dispute resolution in accordance with this Rule.

**Commingled Items**

Participants of SVPCO – Check Services in the Western Region that maintain Routing Numbers with initial digits of 121X or 321X or 122X or 322X may agree to receive their items in commingled packages, provided such packages are received at both the Los Angeles and San Francisco Designated Exchange Locations.

Participants that maintain such Routing Numbers, and agree to accept items in commingled packages at both Designated Exchange Locations, shall be eligible to present items in commingled packages to other Participants that have agreed to accept items in commingled packages at both Designated Presentment Locations.

Participants that have not agreed to accept items in commingled packages at both Designated Presentment Locations are not authorized to present items in commingled packages.

**Part C – Services**

**Regional Transportation Service**

    **a)** The Regional Transportation Service provides for the daily pickup and delivery of Same Day Settlement (SDS) cash letter shipments to Participating, and non-Participating financial institutions in Northern and Southern California.

    **b)** Participants that are presenting institutions in Northern and/or Southern California may arrange, through SVPCO – Check Services offices in San Francisco, for the pickup of SDS cash letter shipments at their respective operations center (@ 4:30).

    **c)** SDS cash letter shipments are delivered to destination endpoints in Northern and Southern California by the 08:00 SDS deadline.

The value of all SDS cash letter shipments sent by a Participant in the Western Region to other Participants in the Western Region will be included in the settlement on the business day of delivery. The Regional Transport Service is part of the Basic/Regional Settlement Arrangement, which is governed by Appendix B-2 of the Uniform Rules.

**Additional Supplemental Appendices**
**Appendix C-18:  Miscellaneous**

(a)    The Chief Executive Officer may, in his or her sole discretion, modify any time or time period stated herein.

(b)    The Chief Executive Officer may appoint one or more designees to act in his or her stead for any purpose under these rules.  If the Chief Executive Officer is unable to appoint one or more designees to act in lieu or stead due to an emergency/disaster conditions as listed in Appendix B-3, the Business Manager of SVPCO — Check Services or his or her designee may act in the Chief Executive Officer's stead for any purpose under these rules.

(c)    These Rules shall be binding on the participants and their respective successors and assigns, except that no participant may assign its rights or obligations hereunder without the express written consent of PaymentsCo.  PaymentsCo may assign its rights or its obligations hereunder to any subsidiary or affiliate of PaymentsCo and shall provide prompt notice of an assignment to each SVPCO — Check Services participant and to the Federal Reserve Bank of New York.

(d)    PaymentsCo may enter into an agreement with a courier/carrier for shared transportation services as third party agent for participants.

(e)    If a participant elects to receive a check containing another bank's routing number, as such term is defined in Section 229.2(dd) of Regulation CC, through SVPCO — Check Services, it agrees that it shall have the same responsibility and liability for the check as the bank whose routing number appears on the checks under the Rules or other applicable law.

(f)    No Participant may punch a hole in or otherwise mutilate the MICR line of a check exchanged or returned under these Rules.

G:\WYSOCKI\WINWORD\Gap Uniform Rules Sep 06.doc