IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **DATATREASURY CORPORATION** § | | |
| Plaintiff, § | | |
| vs. § | | Civil Action No. 2:06-CV72DF |
| § | | |
| **WELLS FARGO & COMPANY, et al.** § | | |
| Defendants. § | | |

### HNAH'S REPLY TO DATATREASURY'S AMENDED
### RESPONSE TO HNAH'S MOTION TO DISMISS

Comes now Defendant, HSBC North America Holdings Inc. ("HNAH"), subject to its Motion to Dismiss for Lack of Personal Jurisdiction under Rule 12(b)(2) (Docket No. 85) ("Motion to Dismiss"), and serves this Reply to DataTreasury Corporation's ("DataTreasury") Amended Response, showing as follows:

**I.  THERE IS NO BASIS FOR FINDING THAT JURISDICTION IS PROPER**

1.      DataTreasury alleges that HNAH's only contact in Texas is that HNAH made charitable donations to a Texas non-profit agency.[1]  However, charitable contributions are not relevant for determining jurisdiction.  *See, Steego v. Ravenal*, 830 F. Supp. 42, 51 (D. Mass 1993) (a foundation's donation practices did not constitute "continuous and systematic" activity in that forum state sufficient to confer personal jurisdiction).  This is true even in the most compelling of cases such as when the defendant is accused of sponsoring terrorism.  *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 812-814 (SDNY 2005).  Here, DataTreasury only accuses HNAH of charity.

---

[1]    DataTreasury's other jurisdictional allegations are completely refuted by the Affidavit of Ms. Margo Hickman which was attached as Exhibit A to HNAH's Motion to Dismiss, and which is attached hereto and fully incorporated herein as Exhibit 1.

2. Furthermore, jurisdiction over HNAH cannot be based on the actions of its indirect fourth-tier subsidiary, HSBC Bank USA, N.A. [HBUS] because: (a) there are three intervening companies between HNAH and HBUS; (b) *Gundle Lining Construction Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 208-209 (5th Cir. 1996) does not apply to this case, and (c) in any event, the *Gundle* factors are not satisfied in this case.

**(A)   There Are Three Intervening Companies Between HNAH and HBUS**

3. Although DataTreasury's Amended Response reads as if HBUS was HNAH's direct subsidiary, in fact HBUS is HNAH's fourth-tier subsidiary, in that:

(a)   **HNAH** is the parent of;
(b)   HSBC Investments (North America) Inc. ("**HINO**"), which is the parent of:
(c)   HSBC North America Inc. ("**HNAI**"), which is the parent of:
(d)   HSBC USA, Inc. ("**HUSI**"), which is the parent of:
(e)   **HBUS**.[2]

Oddly, even though DataTreasury already knew of HINO's, HNAI's and HUSI's existence and role, DataTreasury never mentions or refers to any of these three intervening companies in its Amended Response.

**(B)   *Gundle* Does Not Apply To This Case**

4. DataTreasury asserts that *Gundle* supports its allegation that jurisdiction is proper, but *Gundle* is a Fifth Circuit case. In patent cases, Federal Circuit law, not Fifth Circuit law, controls in deciding whether the exercise of personal jurisdiction comports with federal due process, and with deference given to the forum state's interpretations of its long-arm statute. *See*, *Marshall Packaging*

---

[2]   *Please see* the transcript from the February 2, 2007 deposition of HNAH's designated corporate representative, Ms. Margo Hickman, attached hereto and fully incorporated herein, as Exhibit 2, page 161, lines 3-20; and the corporate organizational chart introduced as Hickman Deposition Exhibit 15, attached hereto and fully incorporated herein as Exhibit 3.

*Company, LLC v. Neslte Waters North America, Inc.*, 2006 WL 871015 (E.D. Tex), *citing*, *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1376-77 (Fed. Cir. 1998).

    5.    Here, deference should be given to the Texas Supreme Court's recent decisions in *Commonwealth General Corp. v. York*, 177 S.W.3d 923, 925 (Tex. 2005) and *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 798 (Tex. 2002). In both cases, and with circumstances similar to this case, the Texas Supreme Court ruled that exercising jurisdiction over the nonresident defendant would violate due process. In *Commonwealth*, the Texas Supreme Court held that:

    (a)    "separate corporations are **presumed** to be distinct entities";

    (b)    "Stock ownership and the related right of control that stock ownership gives to stockholders are insufficient to destroy the distinctness of corporate entities for jurisdictional purposes.";

    (c)    "In order to 'fuse' the parent company and its subsidiary for jurisdictional purposes it must be proved that the parent is the alter ego of the subsidiary."; and,

    (d)    "[T]he parent must be shown to control the internal business operations and affairs of the subsidiary to the extent that the two entities effectively cease to be separate."

*Commonwealth General*, 177 S.W.3d, at 925 (emphasis added), *citing, BMC Software* and *Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d 571, 573 (Tex. 1975). Moreover, because separate corporations are presumed to be distinct entities, the Plaintiff's original petition must allege that the trial court has general jurisdiction because one defendant is another defendant's alter-ego in order to challenge on this basis. *BMC Software*, 83 S.W.3d at 798. DataTreasury's First Amended Complaint does not satisfy this requirement because it does not assert that jurisdiction is based on an alleged alter-ego relationship.

6.      Accordingly, *Gundle* does not apply to this case, and the cases which do apply (*Commonwealth General*, *BMC Software* and *Gentry*) support HNAH's claim that it is not subject to the jurisdiction of this Court.

**(C)    THE *GUNDLE* FACTORS ARE NOT SATISFIED**

7.      Contrary to DataTreasury's assertions, as demonstrated by the chart attached hereto as Exhibit 4, the only *Gundle* factors that do apply are: (No. 1) - HNAH and HBUS have some common stock ownership; (No. 2) - HNAH and HBUS have some common directors and officers; and (No. 4) HNAH and HBUS file consolidated financial statements and tax returns.  However, rather than serving as the basis to impose jurisdiction on HNAH, these are the factors which *Commonwealth General*, *BMC Software* and *Gentry* recognize as being typical of a parent-subsidiary relationships, and as insufficient to support a finding of personal jurisdiction.

**II.   THE SOURCE OF STRENGTH DOCTRINE IS IRRELEVANT TO JURISDICTION**

8.      The "source of strength" doctrine is inapplicable to the issue of personal jurisdiction.  Rather, it is a doctrine that provides, in part, that "a bank holding company shall serve as a source of financial and managerial strength to its subsidiary banks and shall not conduct its operations in an unsafe or unsound manner." 12 CFR § 225.4(a)(1) 1991.  This doctrine only provides a means for federal bank regulators to order a holding company to inject capital into an ailing bank or, alternatively, to pierce the corporate veil between the bank and the holding company.  *See*, *Branch o/b/o Maine National Bank v. U.S.*, 69 F.3d 1571, 1581 (Fed. Cir. 1995).  However, there is no authority making the "source of strength" doctrine available to a private plaintiff as a means to demonstrate personal jurisdiction.  As a result, the source of strength doctrine is irrelevant to HNAH's jurisdictional challenge.

### III. HNAH'S JURISDICTIONAL CHALLENGE HAS NOT BEEN WAIVED

9.     HNAH's stipulation regarding the Ballard stay was expressly made *subject to* its Rule 12 Motion to Dismiss.[3]  Accordingly, DataTreasury's waiver argument is without merit.

### IV. DATATREASURY MISCONSTRUES THE TESTIMONY AND DOCUMENTS

**(A)   DataTreasury Misconstrues Ms. Hickman's Testimony**

10.    Despite it's best efforts, DataTreasury is unable to discredit Ms. Hickman's testimony, or Affidavit, because DataTreasury cannot ignore Ms. Hickman's testimony that:

  (a)   As a holding company, HNAH does not do business; other than "it owns the stock of the company directly beneath it, which owns the stock of the company directly beneath it...";

  (b)   "[T]he operations of the subsidiaries are handled at the subsidiary level. HNAH does not control the subsidiary's day-to-day operations.";

  (c)   She has personal knowledge that HNAH "does not do any transmission of images or documents to other locations in the state of Texas";

  (d)   She has this knowledge because she "made an inquiry into the processes or the - what HSBC North America Holdings does and this is not something that, as a holding company, we do.";

  (e)   She was willing to sign the Affidavit without reading the patents because she knew that HNAH "is not involved in any operations or business in the state of Texas on a direct basis."; and that,

  (f)   She worked on her Affidavit " with the legal department", including in-house counsel Ms. Allison Shank, and that she "didn't just sign my name on it. I did review it and I did satisfy myself that the statements being made were correct as to -- based on the information I had at the time." [4]

---

[3]    *Please see* the Notice of Acceptance of Stipulation By HNAH and HBUS (Docket No. 432), attached hereto and fully incorporated herein as Exhibit 5, page 1.

[4]    *Please see* Exhibit 2: (a) page 46, lines 8-11; page 161, lines 14-20; page 61, lines 8-16); (b) page 91, line 25 - page 92, line 4; *see also*, page 58, lines 13-20; page 65, lines 5-9; page 68, lines 10- 25; page 72, lines 5-14; (c) page 136, lines 13-20 ; (d) page 137, line 22 - page

**(B)    DataTreasury Misconstrues HSBC Holdings plc's 2004 Form 20-4**

11.    DataTreasury's reliance on HSBC Holdings, plc's 2004 Form 20-F[5] is misplaced. Here, DataTreasury chooses to focus on one sentence in a 729 page document:

> This company, called HSBC North America Holdings Inc. ('HNAH') is also a 'bank holding company'; under the [Bank Holding Company Act] BHCA, by virtue of its ownership and control of HSBC Bank USA."[6]

According to DataTreasury, this one sentence - standing alone - proves that HNAH owns and controls HBUS. However, to articulate this argument, DataTreasury must ignore other portions of HSBC Holdings plc's 2004 Form 20-F, including:

(a)    <u>The previous sentence</u>, which states: "On 1 January 2004, HSBC formed a new company [HNAH] **to hold** all of its North American operations, including these two banks.";

(b)    <u>A description of how HUSI and HBUS operate</u>: "On 1 July 2004, HSBC Bank USA, Inc. [HUSI] consolidated its banking operations under a single national charter, following approval from the Office of Comptroller of Currency. This enabled the newly formed HSBC Bank USA [HBUS] to serve its customers more efficiently and effectively across the US and provide an expanded range of products."; and,

(c)    <u>A Corporate "Organisational Structure" chart</u> which shows that HBUS is HUSI's wholly owned subsidiary.[7]

---

138, line 4; (e) page 151, lines 18-24; and (f) page 152, line 20 - page 153, line 12.

[5]    DataTreasury misrepresents to this Court that the document is "sworn and attested by the executives of HSBC NA [HNAH]. The document is executed by HSBC Holdings plc, not HNAH. *Please see* the excerpts of HSBC Holdings, plc's 2004 Form 20-F, attached hereto and fully incorporated herein, as Exhibit 6, print page 739 of 741.

[6]    *Please see* Exhibit 2, page 62, lines 16-19 and page 66, lines 3-13 and Exhibit 6, page 22, print page 42 of 741.

[7]    *Please see* Exhibit 6, page: (a) 22 (b) 95 and (c) 365, print pages: (a) 42, (b) 171 and (c) 696, of 741. As disclosed in Footnote 1 to the Organisational Structure chart, not all intermediate holding companies are shown.

DataTreasury's attempt to ignore the entirety of the document, and the truth contained therein, should not be rewarded.

### (C)     DataTreasury Misconstrues Ms. Burak's Letter

12.     Similarly, DataTreasury misconstrues Ms. Burak's statement that "***As a bank holding company***, HSBC North America operates various subsidiaries in the United States."[8]   Here, DataTreasury only focuses on the word "operates", and ignores the beginning of the sentence:

> In that [Ms. Burak's] letter, HSBC NA plainly states that HSBC North America **operates** various subsidiaries in the United States (citation omitted). ***Importantly, HSBC NA is not holding itself out as merely a stock holding company***; instead, in all these public documents it clearly states that it is 'operating' and 'controlling' subsidiaries including HSBC Bank USA.

(Amended Response, pages 8-9) (emphasis - bold and underlined - in original) (emphasis - bold and italics - added).   DataTreasury also ignores the first paragraph of Ms. Burak's letter wherein she states:

> ***HSBC North America*** is a wholly-owned subsidiary of HSBC Holdings plc ("HSBC Holdings"), and ***is the holding company through which HSBC Holdings conducts its operations in the United States***."[9]

Once again, DataTreasury's attempt to misconstrue a document, by ignoring HNAH's role as a holding company, should not be rewarded.

---

[8]     *Please see* Ms. Burak's letter attached hereto, and fully incorporated herein, as Exhibit 7, page 2 (emphasis added).

[9]     *Please see* Exhibit 7, page 1.

## V.  HNAH's Motion to Dismiss Should Be Granted

13.     As demonstrated by HNAH's Motion to Dismiss, HNAH does not have minimum contacts with Texas sufficient to subject it to this Court's jurisdiction, and jurisdiction over HNAH would offend traditional notions of fair play and substantial justice, and would violate due process of law.  *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

14.     Since the filing of HNAH's Motion to Dismiss, HNAH has answered DataTreasury's "jurisdictional" Interrogatories, Requests for Admission and Requests for Production.  Moreover, HNAH produced Ms. Margo Hickman to testify on its behalf with regard to jurisdiction.  Despite all of this discovery, DataTreasury **ONLY** cites to HNAH's charitable contributions to a Texas non-profit agency as an act purposefully done by HNAH, in Texas.

15.     Furthermore, DataTreasury's Amended Response does not substantiate a claim that HNAH controlled HBUS for jurisdictional purposes.  Instead, it simply reveals that HNAH acted as a typical holding company, and that HBUS is simply HNAH's fourth-tier subsidiary.

16.     Accordingly, this Court should grant HNAH's Motion to Dismiss for Lack of Personal Jurisdiction Under Rule 12(b)(2).

>Respectfully submitted,
>
>BOUDREAUX, LEONARD, HAMMOND & CURCIO, P.C.
>
>By: _____/s/_____
>Glen M. Boudreaux
>State Bar No. 02696500
>**Lead Attorney for HSBC North America Holdings, Inc. and HSBC Bank USA, N.A.**
>Two Houston Center
>909 Fannin, Suite 2350
>Houston, Texas 77010
>Telephone: (713) 757-0000
>Telefax: (713) 757-0178
>E-mail: gboudreaux@blhc-law.com

**Of Counsel**:

Boudreaux, Leonard, Hammond & Curcio, P.C.
Tim S. Leonard
State Bar No. 12211200
Edward J. (Nick) Nicholas
State Bar No. 14991350
909 Fannin, Suite 2350
Houston, Texas 77010
Tel. (713) 757-0000
Fax (713) 757-0178
Email: tleonard@blhc-law.com
enicholas@blhc-law.com

WilmerHale
Irah H. Donner
Amr O. Aly
399 Park Avenue
New York, N.Y. 10022
Tel. (212) 230-8887
Fax (212) 230-8888
Email: irah.donner@wilmerhale.com
amr.aly@wilmerhale.com

Locke Liddell & Sapp LLP
Roy W. Hardin
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776
Tel. (214) 740-8556
Fax (214) 740-8800
Email: rhardin@lockeliddell.com

Law Offices of Richard Grainger
Richard Grainger
118 West Houston Street
Tyler, Texas 75710
Tel. (903) 595-3514
Fax (903) 595-5360
Email: graingerpc@aol.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing documents was served via electronic mail on the _____ day of _____, 2007.

_____
Tim S. Leonard