Margo Hickman                    CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

DATATREASURY CORPORATION,   )(
                            )(
        Plaintiff,          )(
                            )(
VS                          )(      CIVIL ACTION NO.
                            )(      2:06-CV-72 (DF)
WELLS FARGO & COMPANY,      )(
et al.,                     )(
                            )(
        Defendants.         )(



VIDEOTAPED ORAL DEPOSITION OF MARGO HICKMAN

FEBRUARY 2, 2007




        VIDEOTAPED ORAL DEPOSITION OF MARGO HICKMAN,

produced as a witness at the instance of the Plaintiff,

and duly sworn, was taken in the above-styled and

above-numbered cause on the 2nd day of February, 2007,

from 9:06 a.m. to 3:09 p.m., before Lisa J. Gretarsson,

CSR in and for the state of Texas, reported by machine

shorthand, at the offices of Katten Muchin, 525 West

Monroe Street, located in the city of Chicago, state of

Illinois, pursuant to the Federal Rules of Civil

Procedure and the provisions stated on the record.

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com

Dockets.Justia.com
fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                    CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

Page 2

```
 1        A P P E A R A N C E S
 2
 3   FOR THE PLAINTIFF:
 4     Anthony Bruster, Esq.
       R. Benjamin King, Esq.
 5   NIX PATTERSON & ROACH, L.L.P.
       2900 St. Michael Drive, Suite 500
 6   Texarkana, Texas  75503
       Telephone:  903-223-3999
 7       Facsimile:  902-223-8520
       E-mail:   akbruster@nixlawfirm.com
 8         benking@nixlawfirm.com
 9
     FOR THE DEFENDANT, HSBC NORTH AMERICA HOLDINGS, INC./
10   HSBC BANK USA:
11     Tim S. Leonard, Esq.
       Edward J. "Nick" Nicholas, Esq.
12   BOUDREAUX, LEONARD, HAMMOND & CURCIO, P.C.
       Two Houston Center
13     909 Fannin, Suite 2350
       Houston, Texas  77010
14       Telephone:  713-757-0000
         Facsimile:  713-757-0178
15     E-mail:   tleonard@blhc-law.com
               nnicholas@blhc-law.com
16
17   FOR THE DEFENDANT, UNION BANCAL CORP.
18     Ross R. Barton, Esq.
       PILLSBURY, WINTHROP, SHAW, PITTMAN, LLP
19     1650 Tysons Boulevard
       McLean, Virginia  22102
20       Telephone:  703-770-7900
         Facsimile:  703-770-7901
21     E-mail:   ross.barton@pillsburylaw.com
22   ALSO PRESENT:
23     Allison Shank, HSBC in-house counsel
       Lauren Ragin, Video Technician
24     Brooke Berry, Document Technician
25         (continued on following page)
```

Page 3

```
 1        A P P E A R A N C E S
 2       (continued from previous page)
 3
     LIVENOTE CONNECTIONS VIA THE INTERNET:
 4
       Amr Aly
 5     Irah Donner
       Meera Marti
 6     David Curcio
       Anthony Bruster
 7     Ben King
       Shephard Lane
 8     Dalton Young
       Sunja Smith
 9     Ed Hohn
       Kelli Hearne
10     CiCi Williams
       John Hiles
11     George Shipley
       Rod Cooper
12     Chris Sampson
       Kellie Goolsby
13     Ed Chin
       Amy Wise
14     Alison Ross
       Karl Rupp
15     Jacala Hoffman
16   WEBCAST CONNECTIONS VIA THE INTERNET:
17     Dalton Young
       David Curcio
18     Sunja Smith
       Amr Aly
19     Irah Donner
       Meera Marti
20     Chris Sampson
       Amy Wise
21
22
23
24
25
```

Page 4

```
 1          I N D E X
 2                         PAGE
 3   Appearances........................................ 2-3
 4   WITNESS:  MARGO HICKMAN
 5     Examination by Mr. Bruster.................. 7
       Examination by Mr. Leonard.............. 160
 6     Examination by Mr. Bruster................ 162
 7   Corrigendum Page................................. 164
     Reporter's Certificate............................ 166
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 5

```
 1          E X H I B I T S
 2   NO. DESCRIPTION                    MARKED
 3    3  HSBC website printout...................... 47
 4    4  Form 20-F...................................... 61
 5    5  Letter to government agencies, from Janet
         Burak, dated July 16, 2004................
 6
 7    6  HSBC North America Holdings, Inc.'s
         Objections, Assertions of Privilege and
         Responses to DataTreasury Corporation's
 8       First Set of Requests for Admission
         Regarding Jurisdictional Discovery............ 85
 9
10    7  HSBC North America Holdings, Inc.'s
         Objections, Assertions of Privilege and
         Responses to DataTreasury Corporation's
11       First Set of Requests for Production
         Regarding Jurisdictional Discovery........... 103
12
13    8  Defendant HSBC North America Holdings, Inc.'s
         Objections, Assertions of Privilege and
         Responses to Plaintiff DataTreasury
14       Corporation's First Set of Interrogatories
         Regarding Jurisdictional Discovery........... 108
15
16    9  Defendant HSBC North America Holdings, Inc.'s
         Supplemental Objections, Assertions of
17       Privilege and Answers to Plaintiff
         DataTreasury Corporation's First Set of
         Interrogatories Regarding Jurisdictional
18       Discovery......................... 118
19   10  Document entitled Consolidated Financial
         Statements for Bank Holding Companies -
20       FR Y-9C
         (Bates stamped HNAH-JURIS-0012)............. 125
21
22   11  Document entitled Report of Income for
         Bank Holding Companies Schedule HI -
         Consolidated Income Statement
23       (Bates stamped HNAH-JURIS-0013).............. 126
24       (exhibit index continued on following page)
25
```

2 (Pages 2 to 5)

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                    CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

---

Page 6

1        E X H I B I T S
2        (exhibit index continued from previous page)
3    NO.  DESCRIPTION                          MARKED
4    12  Schedule HI Continued
         (Bates stamped HNAH-JURIS-0014)............... 128
5
     13  Notice of Intention to Take Oral and Video
6        Deposition of a 30(b)(6) Representative
         of HSBC North America Holdings, Inc........... 132
7
     14  Affidavit of Margo Hickman.................... 146
8
     15  North America - Bank Holding Company
9        Structure.................................... 160
10             (exhibit index concluded)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

---

Page 8

09:07  1      Q.  Have you ever given a deposition before?
09:07  2      A.  Yes.
09:07  3      Q.  How many times?
09:07  4      A.  Many.  I don't know how many, but more than
09:07  5   ten, I would say.
09:08  6      Q.  More than ten.  Okay.  When was the last time
09:08  7   you gave a deposition?
09:08  8      A.  I don't believe I gave any in 2006 so probably
09:08  9   2005.
09:08  10      Q.  So 2006 falls into the category of one of the
09:08  11   better years in your life?
09:08  12      A.  Yes.
09:08  13      Q.  Okay.  Well, I'm sure you're very familiar
09:08  14   with this routine.  Just so you know, if you need a
09:08  15   break for any reason, let us know, we're happy to
09:08  16   accommodate you.
09:08  17            You'll hear the lawyers, and me,
09:08  18   probably, talking, but if you can try and answer my
09:08  19   questions directly, I'll try and ask proper questions,
09:08  20   and if you don't understand one, let me know, okay?
09:08  21      A.  Yes.
09:08  22      Q.  You understand the testimony you're giving
09:08  23   here today is the same as if you were sitting in a
09:08  24   courtroom in Marshall, Texas.
09:08  25      A.  Yes.

---

Page 7

08:20  1        P R O C E E D I N G S
09:06  2            THE VIDEOGRAPHER:  We're on the record.
09:06  3            MARGO HICKMAN,
09:06  4   having been first duly sworn, testified as follows, to
09:06  5   wit:
09:06  6            EXAMINATION
09:06  7   BY MR. BRUSTER:
09:07  8      Q.  Good morning.
09:07  9      A.  Good morning.
09:07  10      Q.  Tell us your name, please.
09:07  11      A.  Margo Hickman.
09:07  12      Q.  Ms. Hickman, will you tell us your address,
09:07  13   both business and personal, please.
09:07  14      A.  My home address is 1444 Prairie Trail in
09:07  15   YSLake, Illinois, which is YSLake, one word.  My
09:07  16   business address is 2700 Sanders Road, Prospect Heights,
09:07  17   Illinois.
09:07  18      Q.  And what do you do for a living?
09:07  19      A.  I am the senior vice president of insurance
09:07  20   for HSBC North America Holdings.
09:07  21      Q.  Senior vice president of insurance for HSBC
09:07  22   North America Holdings.  How long have you served in
09:07  23   that position?
09:07  24      A.  I was appointed to that position, I think, in
09:07  25   2004 sometime.

---

Page 9

09:08  1      Q.  That you're sworn to tell the truth here under
09:08  2   penalties of perjury.
09:08  3      A.  Yes.
09:08  4      Q.  Okay.  You said that you first became the
09:08  5   senior vice president of insurance for HSBC North
09:08  6   America Holdings, Inc. in 2004, and that you were
09:08  7   appointed to that position; is that correct?
09:08  8      A.  Yes.
09:08  9      Q.  Okay.  Who appointed you to that position?
09:08  10      A.  I believe it was the board, or they affirmed
09:09  11   the appointment.
09:09  12      Q.  The board of directors?
09:09  13      A.  Yes.
09:09  14      Q.  And is that the board of directors of HSBC
09:09  15   North America Holdings?
09:09  16      A.  I believe so, yes.
09:09  17      Q.  Prior to your appointment to the position of
09:09  18   senior vice president of insurance for that entity, what
09:09  19   did you do?
09:09  20      A.  I was the vice president of insurance for HSBC
09:09  21   Finance Company, Inc.
09:09  22      Q.  HSBC Finance Company, Inc.?
09:09  23      A.  I think that's what we -- I think that's what
09:09  24   it's called.  It's HBIO, the acronym.
09:09  25      Q.  Okay.  And how long had you been serving as

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax     E-mail: gretchenshore@gretchenshore.com

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

---

Page 10

09:09  1    the vice president of insurance for that entity?
09:09  2        A.  For HSBC, as of the date of the acquisition in
09:09  3    March of 2003, I believe.
09:09  4        Q.  And when you say the date of the acquisition,
09:09  5    tell me what you're referring to.
09:09  6        A.  The date that HSBC, PLC acquired Household
09:10  7    International.
09:10  8        Q.  You said the date that HSBC, PLC acquired
09:10  9    Household International?
09:10  10       A.  Yes.
09:10  11       Q.  Okay.  And prior to that acquisition, had you
09:10  12   been working with the Household International entities,
09:10  13   as opposed to the HSBC entities?
09:10  14       A.  Yes.
09:10  15       Q.  Okay.  What position did you hold with
09:10  16   Household International prior to that acquisition?
09:10  17       A.  Vice president of insurance.
09:10  18       Q.  Are there any difference -- differences in job
09:10  19   duties that you have between when you served as the vice
09:10  20   president of insurance for HSBC Finance Company, Inc.
09:10  21   and your current role as senior vice president of
09:10  22   insurance for HSBC North America Holdings, Inc.?
09:10  23       A.  Yes.
09:10  24       Q.  Okay.  What are the differences?
09:10  25       A.  I have responsibility for the insurance

---

Page 11

09:10  1    procurement and administrative duties for all of North
09:10  2    America.  And I also am responsible for oversight of the
09:11  3    insurance for Central and South America.
09:11  4        Q.  Any other differences?
09:11  5        A.  I have a few more people reporting to me than
09:11  6    I did before.
09:11  7        Q.  Anything else?
09:11  8        A.  Not material.
09:11  9        Q.  How many people report directly to you?
09:11  10       A.  Ten.
09:11  11       Q.  Do all of the people that report to you work
09:11  12   for HSBC North America Holdings, Inc.?
09:11  13       A.  No.
09:11  14       Q.  If you could, walk through with me who the
09:11  15   people are that report to you and who they work for.
09:11  16       A.  I have -- would you like all ten names?
09:11  17       Q.  Sure, and who they work for.
09:11  18       A.  For HBIO, which is the finance company portion
09:11  19   of the company, I have Karen Lemanski, Bill Silva, Randy
09:12  20   Goodman, Cathy Ellingen and Kristin Kinder.
09:12  21            For HBUS, which is the bank business in
09:12  22   Buffalo, I have Tim O'Connor, Shirley Galioto, Mike
09:12  23   Benzino, Jill Peterson and Barbara Glaspy.
09:12  24       Q.  And those five people that you just listed,
09:12  25   you use an acronym, HBUS?  What was that?

---

Page 12

09:12  1        A.  Yes, HBUS.
09:12  2        Q.  HBUS?  Tell me -- tell me what that stands
09:12  3    for.
09:12  4        A.  HSBC -- we just call it HBUS.  I guess it's
09:13  5    the -- the bank subsidiary, HSBC Bank something.  Sorry,
09:13  6    but I don't know exactly.
09:13  7        Q.  So those people work for the banking
09:13  8    subsidiary of HSBC.
09:13  9        A.  That's -- that's where they're headquartered,
09:13  10   yes.
09:13  11       Q.  The banking subsidiary here in North America.
09:13  12       A.  Yes.
09:13  13       Q.  Okay.  And those five people report directly
09:13  14   to you?
09:13  15       A.  Shirley and Tim report directly to me, and
09:13  16   then Barbara reports to Tim, Mike reports to Shirley,
09:13  17   and Joe reports to me.
09:13  18       Q.  Do you know what Tim's title is?
09:13  19       A.  Director of insurance.
09:13  20       Q.  And do you know what specific legal entity
09:13  21   he's director of insurance for?
09:13  22       A.  Well, the way we handle it is we work as a
09:14  23   team, the 11 people.  And we divide the duties for the
09:14  24   insurance procurement and administrative duties for
09:14  25   North America between the 10 people.  So he does -- his

---

Page 13

09:14  1    duties are not defined by where he's located.
09:14  2        Q.  Okay.  And I guess that same kind of teamwork
09:14  3    mentality, insofar as procurement of insurance, would go
09:14  4    for all the 10 people you mentioned, plus yourself --
09:14  5        A.  Yes.
09:14  6        Q.  -- across all those entities?
09:14  7        A.  Yes.
09:14  8        Q.  Okay.  How many senior vice presidents are
09:14  9    there that work for HSBC North America Holdings, Inc.,
09:14  10   same company that you work for?
09:14  11       A.  I don't know.  I'm sure we can provide that
09:14  12   information to you, but I don't know.
09:14  13       Q.  Are there more than five?
09:14  14       A.  I really can't tell you.  I haven't paid
09:14  15   attention to that.
09:14  16       Q.  Can you name any others, as you sit here this
09:14  17   morning, any other people that are senior vice
09:15  18   presidents of some category, like yours is insurance,
09:15  19   that work for HSBC North America Holdings, Inc.?
09:15  20       A.  The only one that I -- that I'm fairly certain
09:15  21   of is Cliff Mizialko in the accounting -- in an
09:15  22   accounting role, but I'm not sure his exact title.
09:15  23       Q.  Other than Mr. Mizialko -- is that how you say
09:15  24   that?
09:15  25       A.  Yes.

---

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax      E-mail: gretchenshore@gretchenshore.com

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman              CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

---

Page 14

09:15 1    Q.  Okay.  Are there any other people that -- do
09:15 2  you know how many people there are that work in
09:15 3  accounting for HSBC North America Holdings, Inc.?
09:15 4    A.  No.
09:15 5    Q.  Are there more than ten?
09:15 6    A.  I don't know, but I -- I wouldn't think so,
09:15 7  but I'm not positive.
09:15 8    Q.  Do you know how many total employees there are
09:15 9  for HSBC North America Holdings, Inc.?
09:16 10    A.  I'm not positive, but I think it's less
09:16 11  than 50.
09:16 12    Q.  Less than 50 total employees?
09:16 13    A.  I think so.
09:16 14    Q.  We have you, who is in charge of insurance,
09:16 15  and you've mentioned Mr. Mizialko, who deals with
09:16 16  accounting.  What other kind of broad business
09:16 17  categories like that are there departments of at HSBC
09:16 18  North America Holdings, Inc.?
09:16 19    A.  My understanding is that the categories are
09:16 20  what we would call staff functions, which are support
09:16 21  functions for the corporation, accounting, tax,
09:16 22  insurance, those types of functions.
09:16 23    Q.  Are there any others that you can think of as
09:16 24  you sit here today?
09:16 25    A.  Probably legal.

Page 15

09:16 1    Q.  Legal?
09:17 2    A.  But beyond that I wouldn't be able to say.
09:17 3    Q.  Would risk management fall in the category of
09:17 4  legal, or is that a separate department?
09:17 5    A.  That's a separate department.
09:17 6    Q.  Does -- does HSBC North America Holdings, Inc.
09:17 7  have a risk management department?
09:17 8    A.  I guess I'm not positive where -- you know,
09:17 9  where that is housed exactly in the company.  I'm sure
09:17 10  we can provide that to you if we haven't already.
09:17 11    Q.  If we can just kind of focus in on -- on your
09:17 12  line of business, the insurance line of business, since
09:17 13  that's what you probably know the most about.
09:17 14        You mentioned earlier that your
09:17 15  responsibility is for insurance procurement and
09:17 16  administrative duties for all of North America --
09:17 17    A.  Yes.
09:17 18    Q.  -- as one of your job responsibilities.
09:17 19    A.  (Nods head affirmatively.)
09:17 20    Q.  Tell us -- tell the jury what you mean by
09:17 21  insurance procurement and administrative duties for all
09:17 22  of North America.  What does that mean?
09:17 23    A.  Well, the corporation purchases insurance to
09:17 24  protect itself against certain types of risk, including
09:18 25  workers' compensation, insurance coverage on property,

Page 16

09:18 1  automobiles, general liability, things like slips and
09:18 2  falls and accidents that customers might have in our
09:18 3  various premises.  We buy, you know, coverage on -- to
09:18 4  protect the assets of the corporation.  Those are some
09:18 5  of the categories.
09:18 6    Q.  How many premises does HSBC North America
09:18 7  Holdings, Inc. own?
09:18 8    A.  Well, I don't know exactly.  It changes,
09:18 9  actually, day to day, but as -- probably 2,000 or a
09:19 10  little more.
09:19 11    Q.  Okay.  Are those premises owned by any other
09:19 12  HSBC entities in joint ownership with HSBC Holdings
09:19 13  North America, Inc.?
09:19 14    A.  Well, they're not owned at all by HSBC North
09:19 15  America Holdings, Inc.  They're owned or leased by the
09:19 16  subsidiary companies.
09:19 17    Q.  Maybe I asked you an unclear question, but a
09:19 18  moment ago I asked you how many premises North -- HSBC
09:19 19  North America Holdings, Inc. owns, you said
09:19 20  approximately 2,000, so was that an incorrect statement?
09:19 21    A.  Yes, it is, and I apologize for mis --
09:19 22  misrepresenting that.
09:19 23    Q.  How many premises does HSBC North America
09:19 24  Holdings, Inc. own?
09:19 25    A.  None, to my knowledge.

Page 17

09:19 1    Q.  Who owns the headquarter building that HSBC
09:19 2  North America Holdings, Inc. operates out of in Prospect
09:19 3  Heights, Illinois?
09:19 4    A.  I don't know.  I know it's a lease facility
09:19 5  and it's been sold a couple of times.  I'm not sure who
09:20 6  the current owner is.
09:20 7    Q.  Who's the lease -- the lessee on that
09:20 8  facility?
09:20 9    A.  I don't know for sure.
09:20 10    Q.  So your testimony to the jury now is that HSBC
09:20 11  North America Holdings, Inc. doesn't own any premises
09:20 12  whatsoever in North America?
09:20 13    A.  That is my testimony.
09:20 14    Q.  Okay.  If HSBC North America Holdings, Inc.
09:20 15  doesn't own any property anywhere in North America, why
09:20 16  does it go get insurance for properties all across this
09:20 17  country?
09:20 18        (Allison Shank enters the deposition
09:20 19        room.)
09:20 20    A.  The reason that we include HSBC North America
09:20 21  Holdings, Inc. as an insured on our insurance policies
09:20 22  is so that in the event they are named in a lawsuit they
09:20 23  are provided coverage under the policy.
09:20 24        The insurance policies are designed to
09:20 25  protect all of the operating subsidiaries, as well as

5 (Pages 14 to 17)

Margo Hickman                CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

---

**Page 18**

09:21 1  any holding companies that we have in North America. We
09:21 2  buy the coverage in a broad way to protect the entire
09:21 3  North American operation.
09:21 4      Q. (BY MR. BRUSTER) Does HSBC Bank operate in
09:21 5  Texas?
09:21 6      A. I -- when you said -- I -- I think so.
09:21 7      Q. Do the insurance policies, that you purchase
09:21 8  on behalf of HSBC North America Holdings, Inc., provide
09:21 9  insurance for accidents that might happen in Texas?
09:21 10     A. They provide insurance for accidents that
09:21 11 could happen anywhere in North America.
09:22 12     Q. Is there any reason that these insurance
09:22 13 policies weren't produced as part of the document
09:21 14 production in this case, to your knowledge?
09:22 15     A. I can't answer that question.
09:22 16     Q. Just so we're clear, all of these insurance
09:21 17 policies that provide coverage even for accidents in
09:22 18 Texas for HSBC Bank customers, all of those policies are
09:22 19 purchased by HSBC North America Holdings, Inc., correct?
09:22 20     A. They are procured by us, yes, and then --
09:22 21 well, go ahead.
09:22 22     Q. Are they purchased by that company?
09:22 23     A. It's a difficult question. The way the -- the
09:22 24 way the system works is that they are purchased, and
09:22 25 then the cost for the insurance is allocated to each

**Page 19**

09:22 1  operating subsidiary according to its own risk in that
09:22 2  category. So if HSBC Bank has a bank branch and they
09:22 3  paid the cost of the insurance for that bank branch, the
09:22 4  cost is not held at HSBC North America Holdings.
09:22 5      Q. HSBC North America Holdings negotiates for
09:22 6  that insurance, correct?
09:22 7      A. Yes.
09:22 8      Q. I mean, that's what you do, right?
09:22 9      A. That's what I do.
09:23 10     Q. Okay. And HSBC North America Holdings enters
09:23 11 into the contract for insurance, correct?
09:23 12     A. Yes.
09:23 13     Q. And those contracts for insurance, that HSBC
09:23 14 North America Holdings, Inc. enters into, provide
09:23 15 coverage for accidents that might happen in Texas,
09:23 16 correct?
09:23 17     A. Yes.
09:23 18     Q. Okay. You mentioned earlier the bank
09:23 19 subsidiaries, the people that report to you are officed
09:23 20 in Buffalo; is that correct?
09:23 21     A. Yes.
09:23 22     Q. Is that the headquarters of HSBC Bank?
09:23 23     A. I think the headquarters is officially
09:23 24 New York City, but it might -- I'm not sure. I guess it
09:23 25 depends on the subsidiary.

**Page 20**

09:23 1      Q. Do they just -- okay. Sorry. I didn't mean
09:23 2  to cut you off.
09:23 3          Does HSBC Bank own the building in
09:23 4  Buffalo?
09:23 5      A. No.
09:23 6      Q. They lease that building?
09:23 7      A. Yes.
09:23 8      Q. Okay. What about in New York City? Do they
09:23 9  own that building?
09:23 10     A. I believe we do own that building.
09:24 11     Q. You've been responsible for HSBC North America
09:24 12 Holdings, Inc. for procuring insurance on that building,
09:24 13 correct?
09:24 14     A. Yes.
09:24 15     Q. Now, earlier you were talking about -- let me
09:24 16 back up real quick.
09:24 17         Separate and apart from procurement,
09:24 18 negotiation, entering into contracts for insurance, all
09:24 19 of which you do on behalf of HSBC North America
09:24 20 Holdings, Inc., who actually pays the insurance company
09:24 21 for the policy that they issue?
09:24 22     A. The premiums are paid by either HSBC Bank or
09:24 23 HSBC Finance Corporation.
09:24 24     Q. Not by HSBC North America Holdings, Inc.?
09:24 25     A. No.

**Page 21**

09:24 1      Q. Does HSBC North America Holdings, Inc. have a
09:24 2  bank account?
09:24 3      A. I don't know.
09:24 4      Q. Do you get a paycheck?
09:24 5      A. I do.
09:24 6      Q. Who is listed as the check writer on your
09:24 7  paycheck?
09:25 8      A. Well, I actually never see it because it's
09:25 9  direct deposit. But the way payroll is handled for the
09:25 10 United States is through an affiliated company that
09:25 11 handles -- it's HSBC Payroll Services, I believe, and it
09:25 12 handles all of the payroll and tax -- employee payroll
09:25 13 and tax filings.
09:25 14     Q. When you say handles payroll and tax filings,
09:25 15 you're talking -- are you talking about preparation?
09:25 16     A. And --
09:25 17     Q. Administration?
09:25 18     A. Yes. I mean, you know, making sure everybody
09:25 19 gets paid.
09:25 20     Q. Is HSBC Payroll Services the payor on your
09:25 21 paycheck?
09:25 22     A. Well, it used to be. And I guess I haven't
09:25 23 seen one for a long time so I apologize, I'd have to go
09:25 24 look at it again, but the last time I looked, yes.
09:26 25     Q. We've talked about one half of what you

6 (Pages 18 to 21)

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                    CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

Page 22

09:26 1    mentioned earlier as your duties, insurance procurement
09:26 2    for all of North America. Tell me about that other
09:26 3    broad little topic you mentioned, administrative duties.
09:26 4    What does that entail?
09:26 5        A. Well, when you -- there would be claims
09:26 6    associated with the insurance policies, and it's our job
09:26 7    to make sure that the claims are reported correctly, and
09:26 8    that we follow through as they are settled or adjusted
09:26 9    with the person who filed the claim against us.
09:26 10       We have responsibility for reporting some
09:26 11   of the various parts of our insurance program to the
09:26 12   parent company. We have to make sure that the premiums
09:26 13   get paid. I mean, those are the administrative-type
09:26 14   duties. Certificates of insurance have to be issued.
09:27 15       Q. All those things that you just mentioned you
09:27 16   do as part of your job as the senior vice president for
09:27 17   insurance of HSBC North America Holdings, Inc., correct?
09:27 18       A. Those are done by my staff, yes --
09:27 19       Q. By your staff.
09:27 20       A. -- in our department.
09:27 21       Q. Okay. Who do you report to?
09:27 22       A. I report to Jack McGinnis.
09:27 23       Q. McGinnis?
09:27 24       A. Yes.
09:27 25       Q. Do you know his title?

Page 23

09:27 1        A. I think it's executive vice
09:27 2    president/controller for HSBC North America Holdings.
09:27 3        Q. And if you were to describe to someone what
09:28 4    Mr. McGinnis does, what his job duties are, what would
09:28 5    they be?
09:28 6        A. I have only a very general understanding of
09:28 7    that. And it's my understanding that he helps
09:28 8    facilitate the consolidation of the accounting material
09:28 9    for HBIO and HBUS on all North American entities.
09:28 10       Q. Helps facilitate the consolidation of the
09:28 11   accounting --
09:28 12       A. Uh-huh (affirmative).
09:28 13       Q. -- for those entities?
09:28 14       A. That's my understanding.
09:28 15       Q. And the acronyms you use, that's the finance
09:28 16   company arm of HSBC and the banking, correct?
09:28 17       A. Correct, yes.
09:28 18       Q. Okay. And so we're clear, HSBC Bank has its
09:28 19   accounting consolidated and reports up through HSBC
09:28 20   North America Holdings, Inc., correct?
09:28 21       A. Yes, I believe so.
09:29 22       Q. Is that -- you mentioned earlier that -- that
09:29 23   tax was another job function performed by HSBC North
09:29 24   America Holdings, Inc. on behalf of the subsidiary
09:29 25   companies; is that correct?

Page 24

09:29 1        A. I did say that I believe that's true.
09:29 2        Q. And what do you mean by that?
09:29 3        A. Well, again, it's the type of operation that
09:29 4    consolidates information from operating subsidiaries for
09:29 5    reporting purposes.
09:29 6        Q. How many people are in the tax department at
09:29 7    HSBC North America Holdings, Inc.?
09:29 8        A. I have no idea.
09:29 9        Q. Approximately.
09:29 10       A. I really don't know.
09:29 11       Q. Well, we have less than 50 total employees,
09:29 12   correct?
09:29 13       A. Yeah, so -- but I don't know how many of them
09:29 14   are tax and legal and -- I don't know.
09:29 15       Q. What does the legal -- legal department do at
09:29 16   HSBC North America Holdings, Inc.?
09:30 17       A. Well, I honestly don't know.
09:30 18       Q. Who's the general counsel?
09:30 19       A. Ken Robin.
09:30 20       Q. Okay. Do you know how many assistant general
09:30 21   counsel there are?
09:30 22       A. I know the -- I don't know at HSBC North
09:30 23   America Holdings, Inc. If you get down to the
09:30 24   subsidiary level, there are many different titles and I
09:30 25   don't know what they are, but there are, throughout the

Page 25

09:30 1    organization, quite a few lawyers.
09:30 2        Q. Of the 50 employees of HSBC North America
09:30 3    Holdings, Inc., do you know how many of those folks are
09:30 4    lawyers?
09:30 5        A. No, I really don't. And I don't honestly know
09:30 6    that there are 50. I said I think 50 or less.
09:30 7        Q. I understand. I'm not trying -- I'm not
09:30 8    trying to pin you down on that.
09:31 9        Do you serve on the board of directors of
09:31 10   HSBC North America Holdings, Inc.?
09:31 11       A. No.
09:31 12       Q. Do you know how many members there are of the
09:31 13   board of directors?
09:31 14       A. No, I don't know exactly. I'm sure we must
09:31 15   have told you that.
09:31 16       Q. How many members of the board of directors can
09:31 17   you name, as you sit here today?
09:31 18       A. I don't know. Three or four probably.
09:31 19       Q. Name those for me, if you would.
09:31 20       A. Michael Geoghegan, Stephen Green, Bobby Mehta,
09:31 21   I think Salvatore or -- I can't -- I'm not sure I'm
09:31 22   pronouncing that correctly -- I believe is on the board
09:31 23   for HNAH Holdings, Inc. I don't remember who the other
09:31 24   outside directors are.
09:32 25       Q. Do you know how many members of the board of

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                    CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

## Page 26

09:32 1  directors of HSBC North America Holdings, Inc. also
09:32 2  serve on the board of directors of any of the HSBC
09:32 3  banking subsidiaries?
09:32 4      A.  No.  I'd have to look at it.  I mean, did we
09:32 5  not provide that to you?
09:32 6      Q.  I'm just curious, where would you look to find
09:32 7  that out?
09:32 8      A.  The company has lists of people serving on the
09:32 9  boards of the various operating subsidiaries, so I would
09:32 10 go to the secretary, the corporate secretary's office
09:32 11 and ask for that information.
09:32 12     Q.  Are there any executives from the operating
09:32 13 subsidiaries of HSBC, in the banking subsidiaries, that
09:32 14 serve on the board of directors of HSBC North America
09:32 15 Holdings, Inc.?
09:33 16     A.  The only one that I -- that might -- and
09:33 17 again, I have we've told you this, but if -- the only
09:33 18 one I can think of that might would be Sandra Derickson.
09:33 19     Q.  And what position does Sandra Derickson hold
09:33 20 in the banking subsidiary?
09:33 21     A.  She was recently appointed, I think, as CEO of
09:33 22 HSBC Bank.
09:33 23     Q.  Do you know when she was appointed CEO of HSBC
09:33 24 Bank?
09:33 25     A.  Not exactly, but it was in -- sometime in

## Page 27

09:33 1  either the late third quarter or early forth quarter of
09:33 2  2006, I believe.
09:33 3      Q.  And it's your testimony that you believe she
09:33 4  might be on the HSBC North America Holdings, Inc. board
09:33 5  of directors?
09:33 6      A.  I could certainly ask counsel.  I'm sure they
09:33 7  could make sure that I, you know, am telling you if
09:34 8  that's true or not, but I don't have anything with me
09:34 9  and I don't remember.
09:34 10     Q.  Okay.  Anybody else that's an executive, an
09:34 11 officer of a banking subsidiary that serves on the board
09:34 12 of directors of HSBC North America Holdings, Inc.?
09:34 13     A.  Not that I know of.
09:34 14     Q.  Are there officers of HSBC North America
09:34 15 Holdings, Inc. that are --
09:34 16     A.  Yes.
09:34 17     Q.  -- that are not on the board of directors?
09:34 18     A.  Yes.
09:34 19     Q.  Okay.  Who are the officers of HSBC North
09:34 20 America Holdings, Inc.?
09:34 21     A.  Well, for instance, I'm an officer --
09:34 22     Q.  Okay.
09:34 23     A.  -- and I'm not on the board.  I don't -- I
09:34 24 don't know how many there are, who they are, but anyone
09:35 25 in my level presumably is not on the board.

## Page 28

09:35 1      Q.  Who's the CEO of HSBC North America Holdings,
09:35 2  Inc.?
09:35 3      A.  Bobby Mehta.
09:35 4      Q.  Bobby Mehta?
09:35 5      A.  Uh-huh (affirmative).
09:35 6      Q.  And can you spell that last name for the court
09:35 7  reporter?
09:35 8      A.  M-e-h-t-a.
09:35 9      Q.  And Mr. Mehta is one of the individuals you
09:35 10 mentioned who's also on the board of directors, correct?
09:35 11     A.  Yes.
09:35 12     Q.  Do you know whether or not Mr. Mehta holds a
09:35 13 board seat on any of the banking subsidiaries?
09:35 14     A.  I believe that he does.
09:35 15     Q.  Do you know how many banking subsidiaries
09:35 16 Mr. Mehta holds a board seat on?
09:35 17     A.  No.
09:35 18     Q.  Is HSBC Bank USA one of the entities that he
09:35 19 holds a board seat on?
09:35 20     A.  I believe so.
09:35 21     Q.  Who's the CFO of HSBC North America Holdings,
09:35 22 Inc.?
09:35 23     A.  Just -- someone new just came into that job.
09:36 24 His name is Chris -- I can't remember his last name.  He
09:36 25 came in at the end of the year.  He's an interim CFO.

## Page 29

09:36 1      Q.  To your knowledge, does he hold any --
09:36 2      A.  I think his last name is Spooner.  I'm sorry.
09:36 3      Q.  Chris Spooner?
09:36 4      A.  I believe so, yes.
09:36 5      Q.  Does Mr. Spooner, to your knowledge, hold any
09:36 6  board positions or executive positions in the banking
09:36 7  subsidiaries?
09:36 8      A.  I don't know.
09:36 9      Q.  Are there any other chairman level or chief
09:36 10 level officer positions for HSBC North America Holdings,
09:36 11 Inc.?
09:36 12     A.  Well, not chairman, I don't believe.  I think
09:36 13 the subsidiaries -- I believe Sandy Derickson, for
09:36 14 instance, is the chief executive officer for HSBC Bank,
09:36 15 and I'm not sure what the other senior executive titles
09:37 16 are.
09:37 17     Q.  Maybe I asked an unclear question.
09:37 18         Are there any other chief positions, such
09:37 19 as a COO a CTO a CIO --
09:37 20     A.  Oh, I'm sorry.
09:37 21     Q.  -- for HSBC North America Holdings, Inc.?
09:37 22     A.  I'm not sure what the titles are.  I'd have to
09:37 23 go back and look.  If you want me to do that, I'd be
09:37 24 glad to --
09:37 25     Q.  Okay.

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax     E-mail: gretchenshore@gretchenshore.com

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                  CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

Page 30

09:37 1    A. -- respond later.
09:37 2    Q. Sure. That would be great.
09:37 3        Are there any other folks, other than
09:37 4    Sandy Derickson and Mr. -- how do you --
09:37 5    A. Mehta.
09:37 6    Q. -- Mehta -- that, to your knowledge, serve on
09:37 7    both -- in both either board or executive level
09:37 8    positions with HSBC North America Holdings, Inc. and
09:38 9    with HSBC Bank subsidiaries?
09:38 10   A. I believe Janet Burak is on both boards, but I
09:38 11   don't think that her title includes the word chief.
09:38 12   Q. Okay. Anyone else that would serve in both
09:38 13   levels but you're not sure their position?
09:38 14   A. No. I just -- I'm not sure. I don't know.
09:38 15   Q. And tell me Ms. Burak's title at HSBC North
09:38 16   America Holdings, Inc.
09:38 17   A. I don't know her exact title. She's an
09:38 18   attorney, but I'm not positive of her title.
09:38 19   Q. Is she an attorney in the legal department, or
09:38 20   serving in some other executive capacity?
09:38 21   A. She's in the legal department.
09:39 22   Q. Does HSBC North America Holdings, Inc. have
09:39 23   the --
09:39 24        MR. BRUSTER: Strike that.
09:39 25   Q. (BY MR. BRUSTER) HSBC North America Holdings

Page 31

09:39 1    Inc. owns stock in the banking subsidiaries of HSBC
09:39 2    Bank, correct?
09:39 3    A. Not directly, no.
09:39 4    Q. Okay. It has indirect stock ownership in the
09:39 5    subsidiaries, HSBC Bank, correct?
09:39 6    A. Well, it's the holding company. It owns the
09:39 7    stock of, you know, HSBC North America, Inc., I think is
09:39 8    the official name, which then owns the stock of the
09:39 9    subsidiaries that it's the parent of.
09:39 10   Q. I hate to interject utter confusion into
09:39 11   things, but I'm going to try to walk through that
09:39 12   ownership structure you just defined.
09:39 13        The parent company of the entire HSBC
09:40 14   operation is HSBC Group, PLC, correct?
09:40 15   A. Yes.
09:40 16   Q. Which is a London-based organization, correct?
09:40 17   A. Yes.
09:40 18   Q. Okay. And its subsidiary that you work for is
09:40 19   HSBC North America Holdings, Inc., which is a direct
09:40 20   wholly owned subsidiary of that London-based PLC,
09:40 21   correct?
09:40 22   A. Yes.
09:40 23   Q. And then your company owns 100 percent of the
09:40 24   stock of a company called HSBC North America, Inc.,
09:40 25   correct?

Page 32

09:40 1    A. Yes.
09:40 2    Q. Which, as you've defined it, is another
09:40 3    holding company here in the US, correct?
09:40 4    A. Yes.
09:40 5    Q. And your testimony is that that company then
09:40 6    owns 100 percent of the stock out of HSBC Bank USA, the
09:40 7    banking subsidiary.
09:40 8    A. I'm not sure if -- I don't think that it does,
09:40 9    no. Whatever the company below HSBC North America, Inc
09:40 10   is, which I can't remember the exact structure, but I
09:40 11   think HSBC Bank is three or four tiers down.
09:41 12   Q. So there might be another wholly owned
09:41 13   subsidiary sandwiched in between them before you get to
09:41 14   the bank.
09:41 15   A. Right.
09:41 16   Q. Okay. Does HSBC North America Holdings, Inc.
09:41 17   have the authority to vote the shares of stock that it
09:41 18   owns in HSBC North America, Inc.?
09:41 19        MR. LEONARD: Objection: Form.
09:41 20   Q. (BY MR. BRUSTER) You may answer.
09:41 21   A. Yes, I believe so.
09:41 22   Q. Does HSBC North America, Inc. have the
09:41 23   authority to vote the shares of stock that it owns in
09:41 24   the wholly owned subsidiary below it that is related to
09:41 25   the banking operations?

Page 33

09:41 1        MR. LEONARD: Objection: Form.
09:41 2    Q. (BY MR. BRUSTER) You may answer.
09:41 3    A. Well, I think that as long as it gets to vote
09:41 4    those shares of its own wholly owned subsidiary, which
09:41 5    owns the shares of the wholly owned subsidiary below it,
09:41 6    and so on, that it just flows that direction and so it
09:41 7    votes the shares.
09:42 8    Q. Do you know who determines the membership of
09:42 9    the board of directors of HSBC Bank?
09:42 10   A. No.
09:42 11   Q. Do you know what influence the parent company
09:42 12   HSBC North America Holdings, Inc. has on that selection?
09:42 13        MR. LEONARD: Objection: Form.
09:42 14   Q. (BY MR. BRUSTER) You may answer.
09:42 15   A. I'm really not familiar with the selection
09:42 16   process.
09:42 17   Q. Do you know how -- you're going to have to
09:42 18   tell me Bobby's last name once again. I'm going to
09:42 19   write it out phonetically so I don't keep asking you.
09:42 20   A. Mehta.
09:42 21   Q. Mehta.
09:42 22        Do you know how Mr. Mehta was selected or
09:42 23   elected to serve on the board of HSBC Bank?
09:42 24   A. No.
09:43 25   Q. Do you know the amount of influence that --

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

---

Page 34

09:43 1   that board members, like Ms. Derickson and Mr. Mehta,
09:43 2   that are board members of both HSBC North America
09:43 3   Holdings, Inc. and HSBC Bank, do you know how much
09:43 4   influence they have on the direction of HSBC Bank?
09:43 5       A.  Well, in their roles as, you know, the leaders
09:43 6   of the corporation and its -- and its subsidiaries, they
09:43 7   have -- you know, certainly they have influence over the
09:43 8   direction of the corporation in general.
09:43 9       Q.  Okay.  Is there any kind of non-board
09:44 10  committee, that's within HSBC North America Holdings,
09:44 11  Inc., that is comprised of executives from the
09:44 12  subsidiary company; for example, a management committee,
09:44 13  or something like that, where the executives or officers
09:44 14  of the subsidiary corporations meet within HSBC North
09:44 15  America Holdings, Inc.?
09:44 16      A.  I'm not familiar with that sort of committee.
09:44 17      Q.  Are you familiar with any time within which
09:44 18  officers or executives of HSBC North America Holdings,
09:44 19  Inc. --
09:44 20          MR. BRUSTER: Strike that.  Back up.
09:44 21  Erase that.  I was getting off to a bad start.
09:44 22      Q.  (BY MR. BRUSTER)  Are you familiar with
09:44 23  anytime where officers or executives of the banking
09:44 24  subsidiaries of HSBC meet with the board or the
09:44 25  executives of HSBC North America Holdings, Inc.?

---

Page 35

09:45 1           MR. LEONARD: Objection: Form.
09:45 2       Q.  (BY MR. BRUSTER)  You may answer.
09:45 3       A.  I know that once a year there's like, you
09:45 4   know, a strategy and planning meeting that -- where
09:45 5   presentations are made by the operating subsidiaries to
09:45 6   Mr. Mehta and whoever he chooses to have there.
09:45 7       Q.  Does that occur approximately the same time
09:45 8   every year?
09:45 9       A.  I'm not involved in it and so I'm not sure
09:45 10  what the schedule is.
09:45 11      Q.  Have you ever attended the strategy and
09:45 12  planning meetings?
09:45 13      A.  No, I have not.
09:45 14      Q.  Where do those take place?
09:45 15      A.  The ones that I'm aware of have taken place in
09:45 16  Prospect Heights.
09:45 17      Q.  At the corporate headquarters of HSBC North
09:45 18  America Holdings, Inc.?
09:45 19      A.  Yes.
09:45 20      Q.  Okay.  Do any of the other HSBC companies
09:45 21  share the Prospect Heights location as a corporate
09:46 22  headquarters?
09:46 23      A.  We do have staff members from other operating
09:46 24  subsidiaries housed in that facility.  I don't know for
09:46 25  sure if they're considered the headquarters for those

---

Page 36

09:46 1   operations.  They might be for -- it might be the
09:46 2   headquarters for consumer lending, but I'm not positive
09:46 3   of that.
09:46 4       Q.  Are any of the staff members from any of the
09:46 5   HSBC Bank subsidiaries officed at the Prospect Heights
09:46 6   location?
09:46 7       A.  Not to my knowledge.
09:46 8       Q.  And you've never sat in on one of these
09:46 9   strategy and planning meetings where folks come up and
09:46 10  make presentations -- folks from the subsidiaries come
09:46 11  up and make presentations to Mr. Mehta?
09:47 12      A.  No, I haven't.
09:47 13      Q.  Those meetings occur outside the presence of
09:47 14  the board of directors, though?
09:47 15      A.  I believe so, yes.
09:47 16      Q.  Do you know how many people from the HSBC Bank
09:47 17  subsidiaries come and make those presentations to
09:47 18  Mr. Mehta?
09:47 19      A.  No.
09:47 20      Q.  Did I already ask you what time of year that
09:47 21  goes on?
09:47 22      A.  Yes, you asked me.
09:47 23      Q.  Okay.
09:47 24      A.  I still don't know.
09:47 25      Q.  That's what I thought.  I thought that

---

Page 37

09:47 1   intervening two minutes may have just jogged your
09:47 2   memory.
09:48 3           How does HSBC North America Holdings,
09:48 4   Inc. earn money?
09:48 5       A.  Earn money?
09:48 6       Q.  Yes, ma'am.
09:48 7       A.  We don't have any operations, so any money,
09:48 8   which I don't know that there is any, but any money in
09:48 9   the corporation would be dividended from, you know, the
09:48 10  direct -- you know, a direct subsidiary.
09:48 11      Q.  You're talking about HSBC North America, Inc.?
09:48 12      A.  Yes.
09:48 13      Q.  Okay.  In other words, to pay your salary, is
09:49 14  it your understanding that that's a result of dividends
09:49 15  from the wholly owned subsidiary of HSBC North America
09:49 16  Holdings, Inc.?
09:49 17      A.  Well, it's my understanding that, because HSBC
09:49 18  North America Holdings, Inc. doesn't -- you know, it
09:49 19  doesn't perform any revenue-generating activities, that
09:49 20  the money to pay my salary does come from its operating
09:49 21  subsidiary.
09:49 22      Q.  So the subsidiary below your company, which is
09:49 23  a wholly owned subsidiary, correct --
09:49 24      A.  Yes.
09:49 25      Q.  -- and which, down its chain of ownership,

---

10 (Pages 34 to 37)

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

Page 38

09:49  1    holds the stock of HSBC Bank, correct --
09:49  2        A.  Well, somewhere down there, yes.
09:49  3        Q.  -- it pays dividends to HSBC North America
09:49  4    Holdings, Inc., correct?
09:49  5        A.  That's my understanding, yes.
09:49  6        Q.  What does -- how does HSBC North America,
09:49  7    Inc., your direct wholly owned subsidiary, earn a
09:49  8    revenue?
09:50  9        A.  I don't believe it has any operations or
09:50  10   revenue-generating operations either, so it would also
09:50  11   have whatever revenue it has as a result of dividends from
09:50  12   the operating subsidiaries.
09:50  13       Q.  Isn't it -- isn't it true that the operating
09:50  14   subsidiaries generate the revenue that is then
09:50  15   dividended -- if that's a word -- up the chain all the
09:50  16   way to HSBC North America Holdings, Inc.?
09:50  17       A.  Yes, that's my understanding.
09:50  18       Q.  In other words, the operating subsidiary, HSBC
09:50  19   Bank, generates the revenue that pays your salary --
09:50  20           MR. LEONARD:  Objection.
09:50  21       Q.  (BY MR. BRUSTER)  -- isn't that true?
09:50  22           MR. LEONARD:  Objection:  Form.
09:50  23       A.  I -- I could not tell you which one of the
09:50  24   operating subsidiaries pays my salary or how that's all
09:50  25   consolidated.

Page 39

09:50  1        Q.  (BY MR. BRUSTER)  As a general principle, the
09:50  2    profits of the operating subsidiaries flow upwards
09:50  3    through dividends to HSBC North America Holdings, Inc.,
09:51  4    correct?
09:51  5        A.  Yes.
09:51  6        Q.  Does HSBC North America Holdings, Inc. arrange
09:51  7    for financing with regard to its -- to the HSBC Bank
09:51  8    subsidiary?
09:51  9           MR. LEONARD:  Objection to form.
09:51  10       A.  I don't think I understand your question.
09:51  11       Q.  (BY MR. BRUSTER)  For example, does HSBC North
09:51  12   America Holdings, Inc. enter into any credit
09:51  13   arrangements for the benefit of the HSBC Bank
09:51  14   subsidiary?
09:51  15       A.  I have no idea.  I don't know.
09:51  16       Q.  Who would know the answer to that?
09:51  17       A.  I would expect one of the, you know, CFO or
09:51  18   treasury people could answer that question for you.
09:51  19       Q.  To your knowledge, you don't know whether or
09:51  20   not HSBC North America Holdings, Inc. has ever entered
09:52  21   into any kind of revolving credit facility or any other
09:52  22   provision of credit to HSBC Bank.
09:52  23       A.  I don't think it would because it's -- HSBC
09:52  24   Bank is too far down the chain.  I just -- I can't see
09:52  25   that that would be a logical way for the company to

Page 40

09:52  1    operate so, no, I don't think so.
09:52  2        Q.  Well, you procure insurance for HSBC Bank,
09:52  3    correct?
09:52  4        A.  Yes.
09:52  5        Q.  Okay.  And HSBC Bank is pretty far down the
09:52  6    chain from you, correct --
09:52  7        A.  Yes.
09:52  8        Q.  -- according to your testimony.
09:52  9        A.  Yes.
09:52  10       Q.  But you don't think it would be logical for
09:52  11   your company to enter into credit arrangements for HSBC
09:52  12   Bank?
09:52  13       A.  I would think that -- I -- I really am not the
09:52  14   right person to answer that question.
09:52  15       Q.  I understand.
09:52  16           Earlier, when you were talking about your
09:52  17   insurance procurement and how that was expensed, you
09:52  18   mentioned that the expense of obtaining the insurance
09:52  19   was allocated to the operating subsidiaries on the
09:53  20   financial statements, that were then consolidated up
09:53  21   through and to your company, HSBC North America
09:53  22   Holdings, Inc., correct?
09:53  23       A.  Yes.
09:53  24       Q.  Okay.  Does HSBC North America Holdings, Inc.
09:53  25   allocate general and administrative expenses to its

Page 41

09:53  1    subsidiaries across the board on its financial
09:53  2    statement?
09:53  3        A.  I don't know.
09:53  4           MR. LEONARD:  Objection to form.
09:53  5        Q.  (BY MR. BRUSTER)  You may answer.
09:53  6        A.  I don't know.
09:53  7        Q.  Who would know the answer to that?
09:53  8        A.  Again, someone in the CFO position, I would
09:53  9    say.
09:53  10       Q.  Other than accounting, tax, legal, and
09:53  11   insurance, can you tell the jury any other ways that
09:53  12   HSBC North America Holdings, Inc. assists the HSBC Bank
09:53  13   subsidiaries?
09:53  14       A.  As I testified earlier, I really don't
09:53  15   remember any other areas.  I don't know.
09:54  16       Q.  Does HSBC North America Holdings, Inc. have a
09:54  17   technology department?
09:54  18       A.  There is a technology subsidiary, but I don't
09:54  19   believe that it's -- it's not -- HNAH Holdings, Inc. is
09:54  20   not the company that provides the technology services in
09:54  21   North America.
09:54  22       Q.  What's the name of that company, that
09:54  23   subsidiary?
09:54  24       A.  I think it's HSBC Technology Services,
09:54  25   something like -- something like that.  I'm not positive

11 (Pages 38 to 41)

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                    CONFIDENTIAL
February 2, 2007FOR ATTORNEYS' EYES ONLY

Page 42

09:54 1  of the exact name.
09:54 2      Q.  Do you know whether or not contracts for
09:54 3  things such as telecommunications, that touch a lot of
09:55 4  different states within the HSBC Bank operations, do you
09:55 5  know whether contracts for telecommunications are
09:55 6  negotiated on an enterprise-wide level?
09:55 7      A.  It's my understanding that a group of people,
09:55 8  which are internally called vendor management, negotiate
09:55 9  that type of contract.
09:55 10     Q.  And when you say internally called vendor
09:55 11 management, is that a group that's internal to HSBC
09:55 12 North America Holdings, Inc.?
09:55 13     A.  No.
09:55 14     Q.  Internal to who?
09:55 15     A.  I am not sure who's -- where that company
09:55 16 resides, but I know it's not HSBC North America
09:55 17 Holdings, Inc.
09:55 18     Q.  How do you know it's not HSBC North America
09:55 19 Holdings, Inc.?
09:55 20     A.  Well, there's a lot of people involved and
09:55 21 there aren't very many people at Household -- HSBC North
09:55 22 America Holdings, Inc., so just by virtue of the
09:55 23 personnel counts it wouldn't be possible.  And I just
09:56 24 don't know.  I can't tell you which -- which -- where
09:56 25 they report to.

Page 43

09:56 1      Q.  Can you tell the jury whether or not there's a
09:56 2  person like yourself at HSBC North America Holdings,
09:56 3  Inc. that has oversight of things like that?
09:56 4      A.  No, I can't tell you.  I don't know.
09:56 5      Q.  Do you know of any loans, as opposed to
09:56 6  securing credit, do you know of any loans that HSBC
09:56 7  North America Holdings, Inc. has made to the HSBC Bank
09:56 8  subsidiaries?
09:56 9      A.  No.  I have no idea if there are any or not.
09:56 10 I wouldn't think so.
09:57 11     Q.  Is there a marketing department at HSBC North
09:57 12 America Holdings, Inc.?
09:57 13     A.  Not that I'm aware of, no.
09:57 14     Q.  Where is the -- where are the marketing
09:57 15 decisions for HSBC's North American operations made?
09:57 16         MR. LEONARD:  Objection:  Form.
09:57 17     Q.  (BY MR. BRUSTER)  You may answer.
09:57 18     A.  Well, it's my understanding that each of the
09:57 19 operating subsidiaries has its own marketing strategy
09:57 20 and staff, and so those decisions are made at the
09:57 21 operating subsidiary level, to the best of my knowledge.
09:57 22     Q.  Do you consider HSBC North America, Inc. an
09:57 23 operating subsidiary?
09:58 24     A.  America, Inc., I don't believe so.  I believe
09:58 25 it's a holding company.

Page 44

09:58 1      Q.  So based on that understanding and your answer
09:58 2  previously given, you wouldn't think that HSBC North
09:58 3  America, Inc. would be engaged in any marketing.
09:58 4      A.  I wouldn't think so, no.
09:58 5          MR. BRUSTER:  We've been going about an
09:58 6  hour.  Why don't we take a short break and then we'll --
09:58 7          MR. LEONARD:  Great.
09:58 8          MR. BRUSTER:  -- restart.
09:58 9          THE VIDEOGRAPHER:  We're off the record.
09:58 10 (Recess taken 9:58 to 10:16)
10:13 11         THE VIDEOGRAPHER:  Back on the record.
10:16 12     Q.  (BY MR. BRUSTER)  All right.  We're back after
10:16 13 a short break.  Are you ready to continue?  Oh, sorry,
10:16 14 I'll let you quick BlackBerrying.
10:16 15         MR. LEONARD:  Yes.
10:16 16     Q.  (BY MR. BRUSTER)  I get caught in that dilemma
10:16 17 all the time.
10:16 18     A.  Okay.
10:16 19     Q.  Ready?
10:16 20     A.  Uh-huh (affirmative).
10:16 21     Q.  Before we left off, we were talking about HSBC
10:16 22 North America, Inc., which is the wholly owned -- direct
10:16 23 wholly owned subsidiary right under HSBC North America
10:16 24 Holdings, Inc., correct?
10:17 25     A.  That's my recollection, yes.

Page 45

10:17 1      Q.  And you described that company as another
10:17 2  holding company?  Is that your testimony?
10:17 3      A.  Yes.
10:17 4      Q.  Okay.  And I think I asked you whether or not
10:17 5  that company had any operations and you said that you
10:17 6  didn't believe they did; is that right?
10:17 7      A.  Well, holding companies are intended not to be
10:17 8  operating companies, so that would be my understanding.
10:17 9      Q.  Does HSBC North America Holdings, Inc. run a
10:17 10 website?
10:17 11     A.  I don't know, actually.
10:17 12     Q.  What about HSBC North America, Inc., do they
10:17 13 have a website?
10:17 14     A.  The website that I'm familiar with is
10:17 15 HSBC.com.
10:17 16     Q.  Who's responsible for the content of that
10:18 17 website?
10:18 18     A.  I don't know.
10:18 19     Q.  You don't know whether it's HSBC North America
10:18 20 Holdings, Inc. or not?
10:18 21     A.  Well, what do you mean by responsible for
10:18 22 content?
10:18 23     Q.  How would you understand that question?
10:18 24     A.  Well, I would think that the technology group
10:18 25 would have -- the group that runs the websites for the

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax     E-mail: gretchenshore@gretchenshore.com

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

Page 46

10:18  1    company would be the primary place, you know, that would
10:18  2    be responsible for it.
10:18  3        Q.  Does HSBC North America Holdings, Inc. have
10:18  4    any input into the content that's displayed on the
10:18  5    HSBC.com website?
10:18  6        A.  I have no idea how that all happens in the
10:18  7    company.  I don't know how that works.
10:18  8        Q.  Do you know whether or not HSBC North America,
10:18  9    Inc. has any locations in Texas where its does business?
10:18  10       A.  Again, as a holding company, I don't believe
10:19  11   it does business.
10:19  12           MR. BRUSTER:  Hey, Brooke, let's pull up
10:19  13   and mark as Exhibit 3 ...
10:19  14           (Off-the-record discussion between
10:19  15       Mr. Bruster and Miss Berry.)
10:22  16       Q.  (BY MR. BRUSTER)  Is the screen in front of
10:22  17   you working?
10:22  18       A.  You know, it's working, but there's a terrible
10:22  19   glare and I can't see it.
10:22  20       Q.  It should be able to adjust anyway you want
10:22  21   it.
10:22  22       A.  Okay.  Pull this up, or how does it --
10:22  23           (Interruption in the proceedings.)
10:23  24           THE VIDEOGRAPHER:  We're off the record.
10:24  25           (Recess taken 10:22 to 10:25.)

Page 47

10:24  1            (Exhibit Number 3 marked.)
10:25  2            THE VIDEOGRAPHER:  We're on the record.
10:25  3        Q.  (BY MR. BRUSTER)  Ma'am, we've handed you
10:25  4    what's been marked as Exhibit 3 to your deposition.  And
10:25  5    if you see that mouse, that's sitting there in front of
10:25  6    you, you've got the ability to control this document as
10:25  7    well, if you wish to.  I can show you that it's a --
10:25  8    yeah, there you go.  You can scroll through it and look.
10:25  9    It's a two-page document.
10:25  10       A.  Oh, okay.
10:25  11           MR. BRUSTER:  Do you have it?
10:26  12           MR. LEONARD:  We're not getting it over
10:26  13   here.
10:26  14           MISS BERRY:  I'm getting it.  I'm sorry.
10:26  15   It'll be just a few seconds.
10:26  16       Q.  (BY MR. BRUSTER)  We'll wait until their up.
10:26  17   I didn't realize they weren't up.  Go ahead and look
10:26  18   through it.
10:27  19       A.  (Reviewing document.)  It's actually a
10:27  20   one-page document.  It says two, I know, but I'm only
10:27  21   getting one.
10:27  22       Q.  Weird.  Don't worry about it.  We're only
10:27  23   using page 1 anyway.
10:27  24       A.  Okay.
10:27  25       Q.  Do you recognize this as a printout from the

Page 48

10:27  1    HSBC website?
10:27  2        A.  I've never seen it before, but it certainly
10:27  3    appears to be that, yes.
10:27  4        Q.  You've spent time on the HSBC website, right?
10:27  5        A.  Not looking for jobs.
10:27  6        Q.  Sure, since you have a job.
10:27  7        A.  Yes.
10:27  8        Q.  Let me ask you about -- if you could, pause it
10:27  9    right there, and do you see where the location for this
10:27  10   job is?
10:27  11       A.  Lewisville, Texas.
10:27  12       Q.  Do you know where Lewisville, Texas is?
10:28  13       A.  I think I've been there once.  Is it a
10:28  14   subsidiary of Dallas?
10:28  15       Q.  Suburb.
10:28  16       A.  I mean a suburb?  I'm sorry.
10:28  17       Q.  Close enough but, yes, it is.
10:28  18       A.  They both start with s-u-b.
10:28  19       Q.  Do you see the description of the job there?
10:28  20       A.  Yes, I do.
10:28  21       Q.  And do you see where it says, Make the right
10:28  22   move and join a winning team.  Build your career with
10:28  23   us.  HSBC North America is part of HSBC Group, one of
10:28  24   the largest banking and financial services organizations
10:28  25   in the world.  Do you see that?

Page 49

10:28  1        A.  Yes.
10:28  2        Q.  If HSBC North America is a holding company
10:28  3    with no operations, as you've just testified to, do you
10:28  4    know why it is that they're advertising for a job in
10:28  5    Lewisville, Texas here?
10:28  6        A.  Well, the company that's the holding company
10:28  7    is HSBC North America Holdings, Inc., so I would not
10:28  8    assume that that's the company advertising for this job.
10:28  9        Q.  You wouldn't assume that that's the company
10:28  10   advertising for the job even though it says, To build
10:28  11   your career with us, HSBC North America?
10:29  12       A.  Correct.
10:29  13       Q.  Why wouldn't you make that assumption?
10:29  14       A.  Because I think there's a company named HSBC
10:29  15   North America that's not the same as HSBC North America
10:29  16   Holdings, Inc.
10:29  17       Q.  HSBC North America, Inc. is a wholly owned
10:29  18   direct subsidiary of HSBC North America Holdings, Inc.,
10:29  19   correct?
10:29  20       A.  That's my understanding.
10:29  21       Q.  Okay.  And you testified a few minutes ago
10:29  22   that HSBC North America, Inc. was just a holding company
10:29  23   with no operations, right?
10:29  24       A.  I did.
10:29  25       Q.  And here we're looking at a web page where

13  (Pages 46 to 49)

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                    CONFIDENTIAL
February 2, 2007FOR ATTORNEYS' EYES ONLY

---

Page 50

10:29 1  HSBC North America is advertising for a job in
10:29 2  Lewisville, Texas, aren't we?
10:29 3      A.  We are.
10:29 4      Q.  If they're a holding company with no
10:29 5  operations, why would they be offering employment to
10:29 6  people in Lewisville, Texas?
10:29 7      A.  I can't answer that question.
10:29 8      Q.  And for further clarification, I'll scroll
10:29 9  down here to the bottom of page 1.  Oh, never mind.
10:30 10  We'll leave it at that.
10:30 11      Do you think that a person in the general
10:30 12  public, if they were on this website, looking at this,
10:30 13  would come the conclusion that HSBC North America was
10:30 14  offering jobs in Lewisville, Texas?
10:30 15      MR. LEONARD:  Objection:  Form.
10:30 16      Q.  (BY MR. BRUSTER)  You may answer.
10:30 17      A.  Yes.
10:30 18      Q.  Doesn't that seem entirely inconsistent with
10:30 19  your testimony a few minutes ago, that it's a holding
10:30 20  company with no operations?
10:30 21      A.  Yes.
10:30 22      MR. LEONARD:  Objection:  Form.
10:30 23      THE WITNESS:  Sorry.
10:30 24      A.  Yes.
10:30 25      Q.  (BY MR. BRUSTER)  It does, doesn't it?

---

Page 51

10:30 1      A.  Yes.
10:30 2      Q.  And you can't explain that, can you?
10:30 3      A.  No.
10:30 4      Q.  Now, you also testified that --
10:30 5      MR. BRUSTER:  Hold on just a minute.
10:31 6      MR. NICHOLAS:  Counsel, we can't access
10:31 7  the Exhibit right now.
10:31 8      MISS BERRY:  Can y'all not see it at all?
10:31 9      MR. NICHOLAS:  Well, it's down on the
10:31 10  white part, where you didn't have anything and
10:31 11  couldn't move it back up.
10:31 12      MISS BERRY:  I can scroll down for you,
10:31 13  if you'd like to.
10:31 14      MR. NICHOLAS:  Can you just release
10:31 15  control of the document?
10:31 16      MISS BERRY:  You have complete control
10:31 17  over there.  I'm not doing anything with it.
10:31 18      MR. BRUSTER:  Let's go off the record for
10:31 19  just a minute.
10:31 20      THE VIDEOGRAPHER:  Off the record.
10:31 21      (Recess taken 10:31 to 10:36)
10:36 22      THE VIDEOGRAPHER:  Back on the record.
10:36 23      Q.  (BY MR. BRUSTER)  All right.  Your screen
10:36 24  should be about as light as midnight and the -- we're
10:36 25  going to convert some documents over here.

---

Page 52

10:36 1      MR. BRUSTER:  Counsel, what I'd to do, if
10:36 2  it's all right with you guys, is use some paper copies
10:36 3  for a minute or two to keep going, and we can pencil
10:36 4  those in as the same Exhibit Number that we can then go
10:36 5  back and stamp the electronic copies just to say
10:36 6  consistent.
10:36 7      MR. LEONARD:  Sure.
10:36 8      MR. BRUSTER:  In other words, we use
10:36 9  paper 3, 4, 5, we'll go back and electronically stamp 3,
10:36 10  4 and 5 so that it's all together.  Is that all right
10:36 11  with you guys?
10:36 12      MR. LEONARD:  Will you go ahead and mark
10:36 13  the paper copies?
10:36 14      MR. BRUSTER:  You bet, yeah.  I mean,
10:36 15  we'll just kind of write it in there and circle it since
10:36 16  we're stamping the electronic --
10:36 17      MR. LEONARD:  Just so we can later make
10:36 18  sure we have the same one.
10:36 19      Q.  (BY MR. BRUSTER)  If you want to go ahead and
10:36 20  circle a 3 on that copy right there that we're using
10:36 21  of this document, that would be perfect.
10:36 22      A.  (Complies.)
10:36 23      Q.  And while you're sitting there looking at
10:36 24  Exhibit 3, Ms. Hickman, on the second page of that
10:36 25  document, you see down at the bottom on the second page

---

Page 53

10:37 1  where it lists a copyright?
10:37 2      A.  I do.
10:37 3      Q.  Okay.  And who is the copyright holder for
10:37 4  this particular web page?
10:37 5      A.  HSBC North America, Inc.
10:37 6      Q.  And HSBC North America, Inc. is who you
10:37 7  testified a few minutes ago you didn't believe to have
10:37 8  any operations, correct?
10:37 9      A.  Yes.
10:37 10      Q.  Okay.  Do you know why this purported holding
10:37 11  company, with no operations, has a copyright on the
10:37 12  Internet and is advertising jobs?
10:37 13      A.  I do not.
10:37 14      Q.  Okay.  Does HSBC North America Holdings, Inc.
10:37 15  own any copyrights?
10:37 16      A.  Not that I'm aware of, no, I don't believe so.
10:37 17      Q.  Did you know that HSBC North America, Inc.
10:37 18  held any copyrights before I just showed you the one
10:37 19  here in Exhibit 3?
10:37 20      A.  No.
10:37 21      Q.  So what you're telling the judge and jury is
10:37 22  that HSBC North America Holdings, Inc. might have
10:37 23  copyrights, might not, you just don't know.  That's
10:37 24  true, isn't it?
10:37 25      MR. LEONARD:  Objection:  Form.

14 (Pages 50 to 53)

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                CONFIDENTIAL
February 2, 2007FOR ATTORNEYS' EYES ONLY

---

Page 54

10:37  1     A.  As I testified, yes, I don't know.
10:38  2     Q.  (BY MR. BRUSTER)  Can you think of a reason
10:38  3   why HSBC North America Holdings, Inc. would have any
10:38  4   copyrights if it purportedly doesn't have any
10:38  5   operations?
10:38  6     A.  No.
10:38  7     Q.  The job location that's advertised here in
10:38  8   Lewisville, Texas --
10:38  9     A.  Yes.
10:38  10    Q.  -- are you familiar with the address or the
10:38  11  office building where that job is being offered?
10:38  12    A.  I'm not certain.  I have visited the
10:38  13  Lewisville, Texas facility, but it was many years ago
10:38  14  and I'm not certain that they haven't moved, but if it's
10:38  15  the same one, I've been there.
10:38  16    Q.  Have you procured insurance for the facility
10:38  17  located in Lewisville, Texas?
10:38  18    A.  Yes.
10:38  19    Q.  Okay.  When you've done that, you've done that
10:38  20  in your job position as the senior vice president of
10:38  21  HSBC North America Holdings, Inc., correct?
10:38  22    A.  Yes.
10:39  23    Q.  How often do you go visit facilities that are
10:39  24  held by a member of the HSBC family of companies?
10:39  25    A.  I try to visit several facilities annually.

---

Page 55

10:39  1     Q.  Annually.  Have you been to any facilities in
10:39  2   Texas in the last two or three years?
10:39  3     A.  No.
10:39  4     Q.  When was the last time you visited a Texas
10:39  5   facility?
10:39  6     A.  The only time I visited a Texas facility was
10:39  7   when I visited Lewisville, and that was many years ago.
10:39  8     Q.  Okay.  Does -- did you procure premises
10:39  9   liability insurance for that facility there in
10:39  10  Lewisville, Texas?
10:39  11    A.  This facility is covered on an overall basis
10:39  12  with all facilities in the United States, yes.
10:39  13    Q.  Which includes premises, general liability --
10:39  14    A.  Yes.
10:39  15    Q.  -- those kind of things?
10:39  16    A.  Uh-huh (affirmative).
10:39  17    Q.  Okay.  On that front page it says that -- just
10:40  18  read it directly -- HSBC North America is part of HSBC
10:40  19  Group.  Do you see that?
10:40  20    A.  Yes.
10:40  21    Q.  Is that a reference to HSBC Group, PLC?
10:40  22       MR. LEONARD:  Objection:  Form.
10:40  23    A.  That's the way I would read it, but I -- I
10:40  24  don't know.  It doesn't have a PLC on it.
10:40  25    Q.  (BY MR. BRUSTER)  But you would read that to

---

Page 56

10:40  1   mean the parent company from England.
10:40  2     A.  That's what I would think, yes.
10:40  3     Q.  Have you ever seen this document or this web
10:40  4   page before?
10:40  5     A.  I certainly have not seen the document before
10:40  6   and, no, I'm not familiar with this web page.
10:40  7     Q.  Have you ever asked anybody within HSBC
10:40  8   Holdings -- or HSBC North America Holdings, Inc. whether
10:41  9   or not that entity operates a website?
10:41  10    A.  No.
10:41  11    Q.  Why not?
10:41  12    A.  I just haven't.
10:41  13    Q.  You didn't ask that question in preparation
10:41  14  for your deposition here today about potential contacts
10:41  15  with Texas?
10:41  16    A.  That particular piece of information was not
10:41  17  discussed.
10:41  18    Q.  Have you ever been to the -- to the London
10:41  19  headquarters of HSBC Holdings, PLC?
10:41  20    A.  Yes.
10:41  21    Q.  When was the last time you went to London to
10:41  22  the headquarters?
10:41  23    A.  Shortly after Household was acquired, so I
10:41  24  don't know exactly the date, but it would've been in
10:41  25  2003.

---

Page 57

10:41  1     Q.  And what was your purpose for going over
10:41  2   there?
10:41  3     A.  To introduce myself to the head of insurance
10:42  4   on a worldwide basis, and to familiarize myself with the
10:42  5   way that they would want us to report to them and their
10:42  6   expectations of me.
10:42  7     Q.  Who is the head of insurance on a worldwide
10:42  8   basis?
10:42  9     A.  Peter Valentine.
10:42  10    Q.  And you report, I guess, indirectly to
10:42  11  Mr. Valentine.
10:42  12    A.  That's correct.
10:42  13    Q.  Do you correspond with Mr. Valentine on a
10:42  14  regular basis?
10:42  15    A.  Yes.
10:42  16    Q.  By e-mail?
10:42  17    A.  Typically, yes.
10:42  18    Q.  Do you correspond with employees or officers
10:42  19  or directors of the HSBC Bank subsidiary on a regular
10:42  20  basis?
10:42  21       MR. LEONARD:  Objection:  Form.
10:42  22    A.  Well, certainly, to the extent that my staff
10:43  23  works there, yes, and certain other people periodically.
10:43  24    Q.  (BY MR. BRUSTER)  So that would be a yes?
10:43  25    A.  Well, regularly, periodic -- once in a while,

---

15 (Pages 54 to 57)

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax      E-mail: gretchenshore@gretchenshore.com

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                    CONFIDENTIAL
February 2, 2007FOR ATTORNEYS' EYES ONLY

---

**Page 58**

10:43  1    not every day.
10:43  2        Q.  You understand one of the key issues in this
10:43  3    dispute is whether or not HSBC North America Holdings,
10:43  4    Inc. controls the operations of HSBC Bank, the
10:43  5    subsidiary?
10:43  6        A.  Well, what do you mean by control?
10:43  7        Q.  What's your definition of control?
10:43  8        A.  I asked you first.
10:43  9        Q.  Do you have a definition of control?
10:43 10        A.  No, I don't think I do have a definition, so
10:43 11    in order to answer your question I'd like for you to
10:43 12    tell me what your definition is.
10:43 13        Q.  Well, can you tell the jury whether or not
10:43 14    HSBC North America Holdings, Inc. controls HSBC Bank
10:44 15    USA, the banking subsidiary?
10:44 16            MR. LEONARD:  Objection:  Form.
10:44 17        A.  The way I think about it is that as the
10:44 18    hold -- the ultimate holding company, it does exercise
10:44 19    some management control, but it does not exercise
10:44 20    day-to-day operating control.
10:44 21        Q.  (BY MR. BRUSTER)  What's the difference
10:44 22    between management control and operational control?
10:44 23        A.  Well, setting strategy would be a management
10:44 24    control, reviewing results periodically and how it
10:44 25    compares to the strategy would be a management control.

**Page 59**

10:44  1            And operational control, on the other
10:44  2    hand, would be how many phone calls are made or deciding
10:44  3    which customers to call or making sure the checks are
10:45  4    processed.
10:45  5        Q.  What else besides setting strategy, reviewing
10:45  6    results and comparing those to strategy would fall
10:45  7    within your definition of management control?
10:45  8        A.  Well, consolidation of financials for
10:45  9    reporting purposes, the same operation for tax within
10:45 10    the regulations we have to comply with.
10:45 11        Q.  Anything else that you can think of that would
10:45 12    fall within your definition of management control?
10:45 13        A.  No.  I mean, I think that's indicative of how
10:45 14    I view that.
10:45 15        Q.  And so just so we're clear, your testimony to
10:46 16    this judge and jury is that HSBC North America Holdings,
10:46 17    Inc. exercises management control over its banking
10:46 18    subsidiary.
10:46 19        A.  It certainly -- it -- yes.
10:46 20        Q.  And that includes setting strategy, correct?
10:46 21        A.  Yes.
10:46 22        Q.  Reviewing results, correct?
10:46 23        A.  Yes.
10:46 24        Q.  Comparing those results to the strategy that's
10:46 25    been set for the banking subsidiary, correct?

**Page 60**

10:46  1        A.  Yes.
10:46  2        Q.  Consolidation of financials of the banking
10:46  3    subsidiary for reporting purposes, correct?
10:46  4        A.  Not of the banking subsidiary by itself, all
10:46  5    of the subsidiaries.  A consolidation is of all the
10:46  6    subsidiaries.
10:46  7        Q.  So it necessarily includes the banking
10:46  8    subsidiary.
10:46  9        A.  It does include the banking subsidiary, but it
10:46 10    does not perform the day-to-day accounting of the
10:46 11    banking subsidiary.  The banking subsidiary has its own
10:47 12    accounting department.
10:47 13        Q.  The HSBC North America Holdings, Inc. parent
10:47 14    company provides support to that accounting department,
10:47 15    correct?
10:47 16            MR. LEONARD:  Objection:  Form.
10:47 17        Q.  (BY MR. BRUSTER)  You may answer.
10:47 18        A.  They interact with each other.  Whether it's
10:47 19    support or -- I don't know exactly what their
10:47 20    interactions are.
10:47 21        Q.  HSBC North America Holdings, Inc., the parent
10:47 22    company, also provides assistance with regulatory
10:47 23    compliance to the banking subsidiary, correct?
10:47 24            MR. LEONARD:  Objection:  Form.
10:47 25        Q.  (BY MR. BRUSTER)  Isn't that what you just

**Page 61**

10:47  1    mentioned a moment ago?
10:47  2        A.  Well, I said, you know, consolidation of
10:47  3    financials and tax, and so to the extent that those are
10:47  4    holding-company-regulated items, yes.  As far as
10:47  5    anything that the subsidiary, all by itself, is
10:47  6    responsible for, I would think that that would not be
10:47  7    something the holding company would be involved in.
10:48  8        Q.  Does HSBC North America Holdings, Inc.
10:48  9    exercise ownership of HSBC Bank USA?
10:48 10            MR. LEONARD:  Objection:  Form.
10:48 11        A.  Not on a direct basis.  As we previously
10:48 12    discussed, it owns the stock of the company directly
10:48 13    beneath it, which owns the stock of the company beneath
10:48 14    it, which owns the stock of the company or companies
10:48 15    beneath it, and it all flows up.  So, no, it doesn't
10:48 16    have direct ownership.
10:48 17        Q.  (BY MR. BRUSTER)  I'm going to hand you what
10:48 18    we're going to mark for now on paper, and soon on
10:48 19    electronic, as Exhibit Number 4 to your deposition.
10:48 20            (Exhibit Number 4 marked.)
10:48 21            MR. LEONARD:  Counsel, do you have
10:48 22    multiple copies of that?
10:48 23            MR. BRUSTER:  Yeah, you bet.  Just take
10:48 24    this one.
10:48 25            MR. LEONARD:  Thank you very much.

16 (Pages 58 to 61)

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                    CONFIDENTIAL
February 2, 2007FOR ATTORNEYS' EYES ONLY

Page 62

10:48  1        MR. BRUSTER: Sure.
10:49  2     Q.  (BY MR. BRUSTER)  Have you ever seen this
10:49  3  document that I've handed you, Exhibit 4?
10:49  4     A.  Yes.
10:49  5     Q.  Did you see it as a part of the -- as part of
10:49  6  your review in preparation for your deposition today?
10:49  7     A.  Yes.
10:49  8     Q.  Okay.  This is a Form 20-F, which is a
10:49  9  Securities & Exchange Commission or SEC filing that was
10:49 10  made on behalf of your employer's parent company, HSBC
10:49 11  Holdings, PLC, correct?
10:50 12     A.  Yes.
10:50 13     Q.  Okay.  And do you know why the SEC requires
10:50 14  HSBC Holdings, PLC to file this document?
10:50 15     A.  No.
10:50 16     Q.  Okay.  This is an excerpted document because
10:50 17  the original document is some hundred-plus pages.  Do
10:50 18  you understand that?
10:50 19     A.  It says 729 at the top.
10:50 20     Q.  Okay.
10:50 21     A.  That's huge.
10:50 22     Q.  Let's go with big, all right?
10:50 23        If you'll flip to the third page --
10:50 24     A.  Okay.
10:50 25     Q.  -- of Exhibit 4.

Page 63

10:50  1     A.  (Complies.)
10:50  2     Q.  On the right-hand column, in the top
10:50  3  paragraph, the last sentence, do you see where it reads,
10:50  4  This company, called HSBC North America Holdings, Inc.,
10:50  5  is also a bank holding company under the BHCA by virtue
10:50  6  of its ownership and control of HSBC Bank USA.  Do you
10:51  7  see that?
10:51  8     A.  I do.
10:51  9     Q.  Okay.  Do you believe that's an accurate
10:51 10  statement?
10:51 11     A.  Yes.
10:51 12     Q.  Okay.  A few minutes ago you told this judge
10:51 13  and jury that you didn't believe that HSBC North America
10:51 14  Holdings, Inc. could be termed to own HSBC Bank USA.
10:51 15        MR. LEONARD: Objection.
10:51 16     Q.  (BY MR. BRUSTER)  Do you recall that
10:51 17  testimony?
10:51 18        MR. LEONARD: Objection to form.
10:51 19     A.  I think my testimony was that it's not the
10:51 20  direct owner, and I would stand by that.
10:51 21     Q.  (BY MR. BRUSTER)  Okay.  So is it true that
10:51 22  HSBC North America Holdings, Inc. has ownership of HSBC
10:51 23  Bank USA?  Is that a true statement?
10:51 24        MR. LEONARD: Objection to form.
10:51 25     A.  As I stated before, it's my understanding that

Page 64

10:51  1  the ownership is a result of the direct subsidiary
10:51  2  immediately beneath HSBC North America Holdings, Inc.
10:51  3  owning the stock of the subsidiary below that, which
10:51  4  owns the stock, I believe, at that point, of HSBC Bank.
10:52  5  So they do own HSBC Bank indirectly by virtue of all the
10:52  6  stock rolling up.
10:52  7     Q.  (BY MR. BRUSTER)  I think the answer was in
10:52  8  there, but isn't it true that HSBC North America
10:52  9  Holdings, Inc. owns HSBC Bank USA?
10:52 10        MR. LEONARD: Objection.  Form.  Object
10:52 11  to the sidebar.
10:52 12     Q.  (BY MR. BRUSTER)  Isn't that true?
10:52 13        MR. LEONARD: Same objection.
10:52 14     A.  Well, I'm going to -- I guess I've already
10:52 15  answered your question to the best of my ability and so
10:52 16  I'm just going to leave it at that.
10:52 17     Q.  (BY MR. BRUSTER)  You don't dispute the
10:52 18  statement here that HSBC North America Holdings, Inc.
10:52 19  exerts ownership of HSBC Bank USA, do you?
10:52 20     A.  No.
10:52 21     Q.  Okay.  Well, then, let's talk about control,
10:52 22  the second thing there, where it says HSBC North America
10:52 23  Holdings, Inc. has ownership and control of HSBC Bank
10:52 24  USA.  Do you agree with that statement?
10:52 25     A.  Well, it also says that under the Bank Holding

Page 65

10:53  1  Company Act, that under that Act, by virtue of control
10:53  2  of HSBC Bank.  So it's my understanding that that Act
10:53  3  requires the holding company to have control if there
10:53  4  are safety and soundness issues in the bank.
10:53  5     Q.  Well, let me ask the same question again.
10:53  6  Does HSBC North America Holdings, Inc. control HSBC Bank
10:53  7  USA?
10:53  8        MR. LEONARD: Objection.  Form.
10:53  9     A.  Not on a day-to-day operating basis.
10:53 10     Q.  (BY MR. BRUSTER)  So do you disagree with the
10:53 11  statement made here in this SEC government filing that
10:53 12  was made by your parent company?
10:53 13     A.  I think that there are many ways to
10:53 14  characterize the word control.
10:53 15     Q.  So you disagree with this statement, or you
10:53 16  don't?
10:53 17     A.  I don't disagree with this statement.
10:53 18     Q.  So this is accurate, HSBC North America
10:53 19  Holdings, Inc. has ownership and control of HSBC Bank
10:54 20  USA.  Is that your testimony to this judge and jury?
10:54 21        MR. LEONARD: Objection.  Form.
10:54 22     A.  Yes, it does, but indirectly.
10:54 23     Q.  (BY MR. BRUSTER)  Well, it doesn't say
10:54 24  indirectly here in the document, does it?
10:54 25        MR. LEONARD: Objection.  Form.

17 (Pages 62 to 65)

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                    CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

| Page 66 |
|---|

10:54  1    Q.  (BY MR. BRUSTER) You may answer.
10:54  2    A.  No, it doesn't.
10:54  3    Q.  If the average consumer were to pick this up
10:54  4  and read it, there's nothing in here that would lead him
10:54  5  to believe that there's some sort of indirect ownership
10:54  6  or indirect control exerted by HSBC North America
10:54  7  Holdings, Inc., is there?
10:54  8         MR. LEONARD: Objection. Form.
10:54  9         Don't speculate, Ms. Hickman.
10:54 10    Q.  (BY MR. BRUSTER) You may answer.
10:54 11    A.  This is one sentence in a document of 729
10:54 12  pages. I don't know what the average consumer would
10:54 13  think if they read the entire document.
10:54 14    Q.  What about if they just read that one
10:54 15  sentence? I mean, there's nothing in here that would
10:54 16  appear to show that there is indirect control exerted by
10:55 17  HSBC North America Holdings, Inc., is there?
10:55 18         MR. LEONARD: Objection to form.
10:55 19    Q.  (BY MR. BRUSTER) You may answer.
10:55 20         MR. LEONARD: Do you want -- I mean,
10:55 21  Counsel, do you want her to look at the entire document?
10:55 22  You just asked, is there anything in this document to
10:55 23  suggest that there's indirect ownership.
10:55 24         MR. BRUSTER: No, sir. I want her to
10:55 25  answer the question.

| Page 67 |
|---|

10:55  1    Q.  (BY MR. BRUSTER) Is there anything right
10:55  2  there that would show anyone that the control exerted by
10:55  3  HSBC North America Holdings, Inc. is indirect?
10:55  4         MR. LEONARD: Objection to form.
10:55  5         Right there, I guess he's referring to
10:55  6  that specific sentence, Ms. Hickman.
10:55  7    A.  And I understand that, and I've answered that
10:55  8  several times now, and I don't have a different answer
10:55  9  unless you want me to read the entire document. I'm
10:55 10  sorry, but I've told you what I think and that's what
10:55 11  I'm here to do.
10:55 12    Q.  (BY MR. BRUSTER) The answer is no, there's
10:55 13  nothing in there that indicates any kind of indirect
10:55 14  control, is there?
10:55 15         MR. LEONARD: Objection. Form.
10:55 16    A.  Not in that sentence.
10:55 17    Q.  (BY MR. BRUSTER) Okay. And, in fact, there's
10:55 18  nothing anywhere on that page that shows indirect
10:55 19  control, is there?
10:55 20    A.  I can't answer that without reading it.
10:56 21         MR. LEONARD: Read the document.
10:56 22    Q.  (BY MR. BRUSTER) Okay.
10:56 23    A.  (Reviewing document.) Would you ask your
10:58 24  question again, please?
10:58 25    Q.  Excuse me? I'm sorry?

| Page 68 |
|---|

10:58  1    A.  Could you ask your question again, please?
10:58  2    Q.  Sure. Did you see anything on that page to
10:58  3  indicate that the control exerted by HSBC North America
10:58  4  Holdings, Inc. and HSBC Bank USA is indirect?
10:58  5         MR. LEONARD: Objection. Form.
10:58  6    Q.  (BY MR. BRUSTER) You may answer.
10:58  7    A.  I do not see anything.
10:58  8    Q.  There's nothing there, is there?
10:58  9    A.  Not that -- no, I didn't identify anything.
10:58 10    Q.  But it's your testimony to this judge and this
10:58 11  jury that this control, that's discussed in this SEC
10:59 12  document, is, in fact, indirect. That's your testimony.
10:59 13    A.  The control is not operational is my
10:59 14  testimony. It's not on a day-to-day operational basis.
10:59 15    Q.  We've talked about ownership here and we've
10:59 16  talked about control and now you just mentioned
10:59 17  operations. Let's talk about operations a little bit.
10:59 18         Is it your testimony to this judge and
10:59 19  jury that HSBC North America Holdings, Inc. does not
10:59 20  operate its subsidiaries?
10:59 21         MR. LEONARD: Objection. Form.
10:59 22    Q.  (BY MR. BRUSTER) You may answer.
10:59 23    A.  It is -- a subsidiary operates its own
10:59 24  business. They are not operated by HSBC North America
10:59 25  Holdings, Inc.

| Page 69 |
|---|

10:59  1    Q.  So it's your testimony to this judge and jury
10:59  2  that the banking subsidiary of HSBC is not operated by
10:59  3  HSBC North America Holdings, Inc.
10:59  4    A.  That's correct.
10:59  5         MR. LEONARD: Objection to form.
10:59  6    Q.  (BY MR. BRUSTER) You may answer.
10:59  7    A.  That's correct.
10:59  8         (Exhibit Number 5 marked.)
11:00  9    Q.  (BY MR. BRUSTER) Okay. I've pulled up on the
11:00 10  screen in front of you a document that's been marked as
11:00 11  Exhibit 5 to your deposition. And I can actually hand
11:00 12  you a hard copy, too, if you'd like that.
11:00 13         MR. BRUSTER: The electronic should be on
11:00 14  y'all's screen, too.
11:00 15    Q.  (BY MR. BRUSTER) And I think you should have
11:00 16  the ability to control it on your screen, too, if you
11:00 17  wish.
11:00 18         Have you seen Exhibit 5 before?
11:01 19    A.  (Reviewing document.) I think I saw this,
11:01 20  yes. It looks different on the screen.
11:01 21    Q.  You think you've seen it before?
11:01 22    A.  Yes.
11:01 23    Q.  Okay. And I saw that you flipped to the last
11:01 24  page. This is a letter that was written by Janet Borak.
11:01 25  Is that how you pronounce her name?

18 (Pages 66 to 69)

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman              CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

---

Page 70

11:01  1    A.  Borak.
11:01  2    Q.  Borak?
11:01  3    A.  Uh-huh (affirmative).
11:01  4    Q.  It was written July 16th of 2004, correct?
11:01  5    A.  Yes.
11:01  6    Q.  And this letter was addressed to some folks at
11:01  7  the Office of the Comptroller of the Currency, the
11:02  8  Secretary of the Board of Governors of the Federal
11:02  9  Reserve, the FDIC and the Securities & Exchange
11:02 10  Commission and the Office of Thrift Supervision,
11:02 11  correct?
11:02 12    A.  Yes.
11:02 13    Q.  Ms. Burak is a lawyer with HSBC, correct?
11:02 14    A.  Yes.
11:02 15    Q.  I'm going to flip here to page 2 of this
11:02 16  letter.  And about two minutes ago you testified that
11:02 17  HSBC North America Holdings, Inc. does not operate its
11:02 18  subsidiaries.  Do you recall that testimony?
11:02 19    A.  Yes.
11:02 20    Q.  First of all, here on page 1, you can see
11:02 21  where the letter defines HSBC North America Holdings,
11:02 22  Inc. to be HSBC North America throughout the letter.  Do
11:02 23  you see that?
11:02 24    A.  I see that, yes, she has defined it that way.
11:02 25    Q.  And the first sentence on page two says, As a

Page 71

11:02  1  bank holding company, HSBC North America operates
11:03  2  various subsidiaries in the United States.  Do you see
11:03  3  that?
11:03  4    A.  I do.
11:03  5    Q.  Okay.  Just a few minutes ago you said HSBC
11:03  6  North America does not operate its subsidiaries.  Do you
11:03  7  recall testifying to that?
11:03  8    A.  I do.
11:03  9    Q.  Okay.  Who's right, Ms. Burak in her letter to
11:03 10  the United States government, or you in your testimony
11:03 11  here today?
11:03 12        MR. LEONARD:  Objection:  Form.
11:03 13    A.  I am here to testify to my knowledge of the
11:03 14  subject matter you've asked for, and I stand by my
11:03 15  understanding of the word operates and the fact that
11:03 16  HSBC North America Holdings, Inc. does not operate the
11:03 17  subsidiaries.
11:03 18    Q.  (BY MR. BRUSTER) So in your understanding,
11:03 19  what you're testifying to is that Ms. Burak is wrong --
11:03 20        MR. LEONARD:  Objection:  Form.
11:03 21    Q.  (BY MR. BRUSTER)  -- in her representation
11:03 22  here to the United States government.  Is that what
11:03 23  you're saying?
11:03 24        MR. LEONARD:  I'm sorry.
11:03 25        Same objection.

Page 72

11:03  1    A.  I cannot -- I can't testify to whether or not
11:03  2  this is wrong or how she characterized her letter.
11:04  3  That's not -- I think you would have to ask her these
11:04  4  questions if you wanted to know.
11:04  5    Q.  (BY MR. BRUSTER) So let me just ask you, are
11:04  6  you telling the judge and jury that first sentence is
11:04  7  wrong, that that's an incorrect statement?
11:04  8        MR. LEONARD:  Objection:  Form.
11:04  9    A.  My testimony is that there are operating
11:04 10  subsidiaries of HSBC North America Holdings, Inc., that
11:04 11  HSBC North America Holdings, Inc. does not operate the
11:04 12  subsidiaries on a day-to-day basis.  So, yes, I would
11:04 13  say my understanding is that that first sentence is
11:04 14  incorrect.
11:04 15    Q.  (BY MR. BRUSTER) So your testimony to the
11:04 16  judge and jury is that first sentence there on page 2 is
11:04 17  incorrect.
11:04 18        MR. LEONARD:  Objection:  Form.
11:04 19    A.  Yes.
11:04 20    Q.  (BY MR. BRUSTER) Do you know why Ms. Burak
11:04 21  would make that misrepresentation to the United States
11:04 22  government?
11:04 23        MR. LEONARD:  Objection:  Form.
11:04 24    A.  I cannot speak to that.
11:04 25    Q.  (BY MR. BRUSTER) Did you talk to her in

Page 73

11:04  1  preparation for your deposition here today?
11:05  2    A.  No.
11:05  3    Q.  You actually received a copy of this letter
11:05  4  weeks ago, didn't you?
11:05  5    A.  No.
11:05  6    Q.  When did you first see this letter?
11:05  7    A.  The day before yesterday.
11:05  8    Q.  The day before yesterday?
11:05  9    A.  Yes.
11:05 10    Q.  Did your lawyers, that are here today, show it
11:05 11  to you?
11:05 12        MR. LEONARD:  Objection:  Form.
11:05 13    Q.  (BY MR. BRUSTER) You may answer.
11:05 14        MR. LEONARD:  Don't answer the questions
11:05 15  of what you may have discussed with your lawyers.
11:05 16    Q.  (BY MR. BRUSTER) Yeah.  I don't want to know
11:05 17  about anything you talked to them about, but did your
11:05 18  lawyers, that are here today, show you this letter?
11:05 19        MR. LEONARD:  You're going into work
11:05 20  product.  You can ask her what she saw, Anthony, but
11:05 21  don't ask her what I discussed with her.
11:05 22        MR. BRUSTER:  I don't want to know what
11:05 23  you discussed with her, make that clear.
11:05 24        MR. LEONARD:  Okay.  So limit your
11:05 25  question to what she may have reviewed in preparation

19 (Pages 70 to 73)

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                    CONFIDENTIAL
February 2, 2007FOR ATTORNEYS' EYES ONLY

---

Page 74

11:05  1  for her deposition.
11:05  2      Q.  (BY MR. BRUSTER)  How did you get this letter
11:05  3  the day before yesterday?
11:05  4      A.  In preparation for my deposition.
11:05  5      Q.  How did you get it?
11:05  6      A.  It was delivered to my office or to my
11:05  7  secretary.
11:05  8      Q.  By whom?
11:05  9      A.  I'm not really sure, actually.  I wasn't
11:06 10  there.
11:06 11      Q.  Did it come from your attorneys?
11:06 12          MR. LEONARD:  Don't answer that question.
11:06 13          MR. BRUSTER:  You're objecting to her
11:06 14  telling us whether or not you gave her this document?
11:06 15          MR. LEONARD:  I don't object to you
11:06 16  asking her about any documents she may have reviewed in
11:06 17  preparation for her deposition.  I think it's privileged
11:06 18  what I may have shown her in preparation for the
11:06 19  deposition and discussed as part of my work product.
11:06 20          So I know I'm splitting hairs.  I want
11:06 21  you to be able to examine her on anything she reviewed,
11:06 22  I just don't want you to examine her on what I may have
11:06 23  shown her and discussed with her.  That's the
11:06 24  distinction I'm trying to make.
11:06 25          MR. BRUSTER:  Okay.  Well, I think the

---

Page 75

11:06  1  work-product protection may extend to the selection from
11:06  2  a vast pool of documents that are to be reviewed, but
11:06  3  when a specific document is shown to a witness and
11:06  4  discussion of where she got that document from is not
11:06  5  privileged.
11:06  6          MR. LEONARD:  Well, I think what's
11:06  7  important is did she see the document, did she review
11:07  8  the document, is she aware of the document, and did she
11:07  9  do it in conjunction with her preparation.
11:07 10          Whether I showed her the document myself
11:07 11  and whether or not I discussed the document with her is
11:07 12  not really something that you're entitled to know.
11:07 13  That's the only distinction I'm trying to make.
11:07 14          MR. BRUSTER:  I'm not asking for
11:07 15  discussions.  I'm not asking for what you discussed.
11:07 16      Q.  (BY MR. BRUSTER)  Was there anything else in
11:07 17  the packet that arrived when you got this letter?
11:07 18      A.  Yes.
11:07 19      Q.  What else?
11:07 20      A.  Well, one of the things that was in there was
11:07 21  that Form 20-F, that we looked at earlier.  I don't
11:07 22  know.  There were just a number of documents.
11:07 23      Q.  So a number of documents related to the
11:07 24  deposition were delivered to you.
11:07 25      A.  Yes.

---

Page 76

11:07  1      Q.  Okay.  Did they come from your lawyers?
11:07  2          MR. LEONARD:  Don't answer that question.
11:07  3      Q.  (BY MR. BRUSTER)  Did the packet, that the
11:07  4  documents arrived in, have a sender's address on it?
11:08  5      A.  No.
11:08  6      Q.  How were they -- how were they delivered to
11:08  7  you?  By e-mail?
11:08  8      A.  No.
11:08  9      Q.  Hard copies?
11:08 10      A.  Yes.
11:08 11      Q.  Were they bound together?
11:08 12      A.  There was a rubber band around them.
11:08 13      Q.  Was there a conveyance letter with them?
11:08 14      A.  No.
11:08 15      Q.  Did you have any idea who they were from?
11:08 16      A.  Well, I expected to receive them.
11:08 17      Q.  Why did you expect to receive them?
11:08 18      A.  Because I knew I was going to be giving this
11:08 19  deposition and that there were some things I needed to
11:08 20  review prior to today.
11:08 21      Q.  How did you know there were things you needed
11:08 22  to review?
11:08 23      A.  Well, that's what you do before you give a
11:08 24  deposition.
11:08 25      Q.  Was there any indication at all where this

---

Page 77

11:08  1  letter came from?
11:08  2      A.  It's a letter -- it's a copy of a letter
11:08  3  written by Janet Burak.  That's all I can tell you.
11:09  4      Q.  So just so we're clear, your testimony to the
11:09  5  jury is that Ms. Burak is wrong when she says HSBC North
11:09  6  America operates subsidiaries in the US.
11:09  7          MR. LEONARD:  Objection:  Form.
11:09  8      A.  I'm saying that the word operates, to me,
11:09  9  is -- could -- is -- indicates something different than
11:09 10  what that sentence says.
11:09 11      Q.  (BY MR. BRUSTER)  When you read this letter
11:09 12  two days ago, did you pick up the phone and call
11:09 13  Ms. Burak and say, where did you get the understanding
11:09 14  that HSBC North America Holdings, Inc. operates banking
11:09 15  subsidiaries in the United States?
11:09 16      A.  I already testified that I did not speak to
11:09 17  Ms. Burak.
11:09 18      Q.  Why didn't you call her if you got this letter
11:09 19  a couple of days ago and recognized its content to be
11:09 20  inconsistent with what your knowledge of HSBC North
11:09 21  America Holdings, Inc. operations were?
11:09 22      A.  I just didn't.
11:09 23      Q.  You just didn't?  Isn't it true that you
11:09 24  didn't call her because you knew that the definition of
11:09 25  operation she'd give you would subject HSBC North

---

20  (Pages 74 to 77)

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                    CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

---

Page 78

11:10  1    America Holdings, Inc. to operating subsidiaries --
11:10  2            MR. LEONARD: Objection.
11:10  3    Q. (BY MR. BRUSTER) -- in the United States?
11:10  4            MR. LEONARD: Excuse me.
11:10  5            Objection to form.
11:10  6    A. No.
11:10  7    Q. (BY MR. BRUSTER) You were afraid of her
11:10  8    answer, weren't you?
11:10  9    A. No.
11:10  10   Q. Did you think that she was going to change her
11:10  11   position of what she represented to the United States
11:10  12   government?
11:10  13           MR. LEONARD: Objection to form.
11:10  14   A. I didn't give any thought to calling Janet
11:10  15   about this letter.
11:10  16   Q. (BY MR. BRUSTER) Does HSBC North America
11:10  17   Holdings, Inc. provide any financial services to its
11:10  18   clients, to any clients?
11:10  19           MR. LEONARD: Objection: Form.
11:10  20   A. Not to my knowledge, no.
11:11  21   Q. (BY MR. BRUSTER) Do you see here, in the
11:11  22   second paragraph, where I've got the cursor on this
11:11  23   Exhibit? Do you see this sentence right here on the
11:11  24   third line of the second paragraph?
11:11  25   A. The one that begins with "as"?

Page 79

11:11  1    Q. Yes, ma'am.
11:11  2    A. Yes.
11:11  3    Q. It says, As a leader in providing a wide array
11:11  4    of financial services to clients, HSBC North America
11:11  5    believes that financial institutions have a vital role
11:11  6    to play in the responsible use of CSFT's and related
11:11  7    financial products, and it continues from there,
11:11  8    correct?
11:11  9    A. Yes.
11:11  10   Q. Okay. Just 30 seconds ago you testified to
11:11  11   the judge and jury that HSBC North America does not
11:11  12   provide financial services to clients. Do you recall
11:11  13   that?
11:11  14   A. Yes.
11:11  15   Q. Okay. And right here Ms. Burak writes, As a
11:11  16   leader in providing a wide array of financial services
11:11  17   to clients, HSBC North America, it goes on and on,
11:11  18   correct?
11:11  19   A. Correct.
11:11  20   Q. Okay. Is this a misrepresentation made by
11:11  21   Ms. Burak to the United States government as well?
11:12  22           MR. LEONARD: Objection: Form.
11:12  23   A. You know, the letter says what it says. That
11:12  24   is not my understanding of the role that HSBC North
11:12  25   America Holdings plays, but I can't interpret her letter

Page 80

11:12  1    for you.
11:12  2    Q. (BY MR. BRUSTER) Ms. Burak is a lawyer for
11:12  3    HSBC North America Holdings, Inc., correct?
11:12  4    A. I believe she does, yes.
11:12  5    Q. The same company that you work for, right?
11:12  6    A. Yes.
11:12  7    Q. And she's represented to the government, as a
11:12  8    lawyer, that HSBC North America provides a wide array of
11:12  9    financial services to clients, hasn't she?
11:12  10   A. Again, that's what this sentence says, yes.
11:12  11   Q. And you're here today testifying to this judge
11:12  12   and jury that, in fact, HSBC North America Holdings,
11:12  13   Inc. does not provide those services.
11:12  14   A. The services are provided through its
11:12  15   operating subsidiaries, they're not provided by the
11:12  16   holding company.
11:12  17   Q. Well, Ms. Burak writes right here that HSBC
11:13  18   North America Holdings, Inc. is providing those
11:13  19   services, doesn't she?
11:13  20           MR. LEONARD: Objection: Form.
11:13  21   A. You read the sentence, yes, it says what it
11:13  22   says.
11:13  23   Q. (BY MR. BRUSTER) And I guess even if they are
11:13  24   provided through the subsidiaries, in the previous
11:13  25   paragraph she wrote that HSBC North America Holdings,

Page 81

11:13  1    Inc. is operating those subsidiaries, didn't she?
11:13  2            MR. LEONARD: Objection: Form.
11:13  3    A. Again, Ms. Burak's letter speaks for itself.
11:13  4    My testimony is that my understanding is different from
11:13  5    this letter in terms of control and operations.
11:13  6    Q. (BY MR. BRUSTER) And did you get that
11:13  7    understanding from your lawyers or from somebody else?
11:13  8            MR. LEONARD: Objection.
11:13  9            Don't answer with respect to what you may
11:13  10   have discussed with your lawyers.
11:13  11   A. I have general knowledge of how corporate
11:13  12   structures with holding companies work, and HSBC North
11:13  13   America Holdings has 50 or less employees. Its role is
11:14  14   to provide services to consolidate various financials
11:14  15   and help with taxes, those things. It's not an
11:14  16   operating company. It does not generate revenue.
11:14  17   Q. (BY MR. BRUSTER) Why is it that the jury
11:14  18   should believe you instead of a lawyer who works for the
11:14  19   company that you work for on these issues?
11:14  20           MR. LEONARD: Objection: Form.
11:14  21   A. Well, I guess the jury can believe whatever it
11:14  22   chooses to believe, but I am testifying to my
11:14  23   understanding of these matters.
11:14  24   Q. (BY MR. BRUSTER) Does HSBC North America
11:14  25   Holdings, Inc. implement policies for subsidiaries?

21 (Pages 78 to 81)

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

---

Page 82

11:14  1    A.  Could you give me some idea of what you mean
11:14  2  by a policy?
11:14  3    Q.  What's your understanding of what the word
11:14  4  policy means?
11:14  5    A.  Here we go again.  Well, when I think of
11:15  6  policies, I think of -- it could be any number of
11:15  7  things, actually.  I mean, it could be policies that --
11:15  8  you know, that are specific to a business, or it could
11:15  9  be policies that -- such as the HSBC policy of operating
11:15  10  with integrity as something that is integral to the
11:15  11  entire organization.
11:15  12    Q.  Is that a written policy?  Is there a written
11:15  13  policy about operating with integrity?
11:15  14    A.  I don't know that it's a written policy, but
11:15  15  it's certainly a pervasive statement and a pervasive
11:15  16  viewpoint of the organization.
11:15  17    Q.  Do you have like risk management policies, for
11:15  18  example?
11:15  19    A.  We have guidelines, yes.  I mean ...
11:16  20    Q.  Does HSBC North America Holdings, Inc.
11:16  21  implement risk management policies that its subsidiaries
11:16  22  follow?
11:16  23        MR. LEONARD:  Objection.
11:16  24    A.  Are you talking about insurance risk
11:16  25  management?

---

Page 83

11:16  1        THE WITNESS:  Oh, I'm sorry.
11:16  2        MR. LEONARD:  Objection:  Form.
11:16  3    Q.  (BY MR. BRUSTER)  I'm just talking about from
11:16  4  a policy level does HSBC North America Holdings, Inc.
11:16  5  implement policies that its banking subsidiary then
11:16  6  follows?
11:16  7    A.  I don't know.
11:16  8        MR. LEONARD:  Objection:  Form.
11:16  9    A.  I don't know.
11:16  10    Q.  (BY MR. BRUSTER)  You don't know?
11:16  11    A.  Huh-uh (negative).
11:16  12    Q.  Does HSBC North America Holdings, Inc. serve
11:16  13  customers?
11:16  14        MR. LEONARD:  Objection to form.
11:16  15    A.  Not on a direct basis, no.  Its customers are
11:16  16  served through operating subsidiaries.
11:16  17    Q.  (BY MR. BRUSTER)  I'll flip over to page 5 of
11:16  18  Ms. Burak's letter to the United States government
11:17  19  agencies and have you look with me here in the bottom
11:17  20  paragraph, right above this section, Additional
11:17  21  Comments.  Do you see the sentence right here starting
11:17  22  with, HSBC North America?
11:17  23    A.  Yes.
11:17  24    Q.  It reads, HSBC North America -- which is
11:17  25  referring to North America Holdings, Inc., correct?

---

Page 84

11:17  1    A.  Yes.
11:17  2    Q.  -- is as a financial institution, a principle
11:17  3  strategic advantage of which is its ability to structure
11:17  4  cross-boarder transactions and serve customers and
11:17  5  counterparties in more than one geographic region.  Do
11:17  6  you see that?
11:17  7    A.  I do.
11:17  8    Q.  Is that an accurate statement that Ms. Burak
11:17  9  made to the United States government there?
11:17  10    A.  Again, it speaks for itself, and I have
11:17  11  testified that this would not be my understanding of
11:17  12  serving customers.  I just moments ago --
11:18  13    Q.  Moments ago you testified -- you testified
11:18  14  that HSBC North America Holdings, Inc. does not serve
11:18  15  customers, correct.
11:18  16    A.  On a direct basis, yes.
11:18  17    Q.  And Ms. Burak here is writing to the United
11:18  18  States government that, in fact, the company is serving
11:18  19  customers, isn't she?
11:18  20        MR. LEONARD:  Objection to form.
11:18  21    A.  The letter speaks for itself.  That's what
11:18  22  this sentence says.
11:18  23    Q.  (BY MR. BRUSTER)  But again, you want the
11:18  24  judge and jury to believe you instead of Ms. Burak's
11:18  25  letter, correct?

---

Page 85

11:18  1        MR. LEONARD:  Objection:  Form.
11:18  2    A.  Well, I am telling you the truth as I know it
11:18  3  so, yes, I would like for the judge and jury to believe
11:18  4  me.
11:18  5    Q.  (BY MR. BRUSTER)  Do you know whether
11:18  6  Ms. Burak was telling the truth when she wrote this
11:18  7  letter to the United States government?
11:18  8    A.  I am confident that she was.
11:18  9    Q.  That she was.
11:18  10    A.  Yes.
11:18  11    Q.  Okay.
11:19  12        MR. BRUSTER:  Why don't we take another
11:19  13  short break.  We've been going an hour-and-fifteen or
11:19  14  so.
11:19  15        THE VIDEOGRAPHER:  Off the record.
11:19  16        (Recess taken 11:19 to 11:38.)
11:19  17        (Exhibit Number 6 marked.)
11:38  18        THE VIDEOGRAPHER:  We're back on the
11:38  19  record.
11:38  20    Q.  (BY MR. BRUSTER)  All right.  We're back after
11:38  21  a short break.  Ms. Hickman, without disclosing any of
11:38  22  the nature of the conversations, did you have an
11:39  23  opportunity to visit with your counsel during the break?
11:39  24    A.  Just now?  Yes.
11:39  25    Q.  Okay.  I'm going to mark, as Exhibit 6, what

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com

Margo Hickman              CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

---

Page 86

11:39  1   was provided to us as HSBC North America Holdings,
11:39  2   Inc.'s Objections, Assertions of Privilege and Responses
11:39  3   to DataTreasury Corporation's First Set of Requests for
11:39  4   Admission Regarding Jurisdictional Discovery. It's a
11:39  5   mouthful of a title, but have you ever seen this
11:39  6   document before?
11:39  7      A.  Yes.
11:39  8      Q.  When was the last time you looked at this
11:39  9   document before your deposition?
11:39 10      A.  I looked at it yesterday. I might have read
11:39 11   it on the train on the way in this morning. I can't
11:39 12   remember for sure. But I looked at my deposition topics
11:39 13   and a number of other things.
11:39 14      Q.  Did you provide input in answering these
11:39 15   requests for admission?
11:40 16      A.  Not much, no.
11:40 17      Q.  Not much?
11:40 18      A.  Huh-uh (negative).
11:40 19      Q.  Did you provide any input?
11:40 20      A.  I'd have to read them, sir. I can't remember.
11:40 21      Q.  Let's walk through and look at a couple of
11:40 22   these.
11:40 23      A.  Okay.
11:40 24      Q.  Request for admission number two says, Admit
11:40 25   that HSBC North America Holdings, Inc. operates HSBC

---

Page 87

11:40  1   Bank USA. Do you see that?
11:40  2      A.  I do.
11:40  3      Q.  And then after some objections, there's an
11:40  4   answer that says, Denied that HNAH, which is HSBC North
11:40  5   America Holdings, Inc., operates HSBC Bank USA directly,
11:40  6   but it is admitted that in its role as a holding company
11:40  7   that HSBC Bank USA is an indirect, wholly owned
11:40  8   subsidiary of HNAH. Did I read that correctly?
11:40  9      A.  You did.
11:41 10      Q.  Okay. There is no discussion of operation in
11:41 11   that second clause after, It is admitted. In other
11:41 12   words, it says, HSBC Bank USA is an indirect wholly
11:41 13   owned subsidiary, but there's no discussion about
11:41 14   whether or not HSBC North America Holdings, Inc.
11:41 15   operates the bank. Do you recognize that?
11:41 16         MR. LEONARD: Objection: Form.
11:41 17      A.  It says in the first line of the response
11:41 18   subject to denied that HNAH operates HSBC Bank USA
11:41 19   directly.
11:41 20      Q.  (BY MR. BRUSTER) In other words, I guess my
11:41 21   question is, is the second clause, is the latter part of
11:41 22   this sentence meant to convey the fact that HSBC North
11:41 23   America Holdings, Inc. operates HSBC Bank USA
11:41 24   indirectly?
11:41 25         MR. LEONARD: Objection: Form.

---

Page 88

11:41  1      A.  Yes.
11:41  2      Q.  (BY MR. BRUSTER) Okay.
11:41  3      A.  I mean -- well, that it's an indirect
11:42  4   subsidiary, yes.
11:42  5      Q.  Well, separate and apart from its status as an
11:42  6   indirect subsidiary, does HSBC North America Holdings,
11:42  7   Inc. operate HSBC Bank USA, either directly or
11:42  8   indirectly?
11:42  9      A.  No. I'm sorry, no.
11:42 10         MR. LEONARD: Objection: Form.
11:42 11      A.  No. No, it does not.
11:42 12      Q.  (BY MR. BRUSTER) It doesn't.
11:42 13      A.  No.
11:42 14      Q.  So if you were to answer that question right
11:42 15   there, Admit that HSBC Bank North America Holdings, Inc.
11:42 16   operates HSBC Bank USA, you would say deny.
11:42 17         MR. LEONARD: Objection to form.
11:42 18      A.  Yes.
11:42 19      Q.  (BY MR. BRUSTER) Okay. And that's directly
11:42 20   contradictory to the letter that we just looked at from
11:42 21   Ms. Burak to the United States government agencies,
11:42 22   correct?
11:42 23         MR. LEONARD: Objection: Form.
11:42 24      A.  Ms. Burak's letter is her letter. It says
11:42 25   what it says. I think there are different ways to

---

Page 89

11:42  1   interpret words, operates, controls, and you should ask
11:42  2   her what her intent was if you're not comfortable with
11:42  3   our two answers.
11:43  4         MR. BRUSTER: Objection: Nonresponsive.
11:43  5      Q.  (BY MR. BRUSTER) This testimony you just
11:43  6   gave, that you deny that, is inconsistent with the
11:43  7   letter that Ms. Burak wrote to the United States
11:43  8   government agencies, isn't it?
11:43  9         MR. LEONARD: Objection: Form; asked and
11:43 10   answered.
11:43 11      Q.  (BY MR. BRUSTER) You may answer.
11:43 12      A.  Well, I have answered.
11:43 13      Q.  That's a yes-or-no question. Is it
11:43 14   inconsistent?
11:43 15         MR. LEONARD: Same objection.
11:43 16      A.  The reason I have a difficult time answering
11:43 17   your question is that I just think you should talk with
11:43 18   Ms. Burak about her intent in writing that letter. I'm
11:43 19   comfortable with the way I'm answering these questions,
11:43 20   that they're correct to the best of my knowledge.
11:43 21      Q.  (BY MR. BRUSTER) Well, Ms. Burak wasn't
11:43 22   presented here for a deposition today so that's why I'm
11:43 23   asking you about your understanding of operation since
11:43 24   she wrote and said that HSBC North America Holdings,
11:43 25   Inc. operates these subsidiaries. And as I'm hearing

---

23 (Pages 86 to 89)

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                    CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

Page 90

11:44  1   from you today, you have a different understanding.
11:44  2   Correct?
11:44  3          MR. LEONARD:  Objection to form; object
11:44  4   to sidebar.
11:44  5      A.  My -- the problem is that I think you're
11:44  6   saying that there's only one way to interpret the word
11:44  7   operates, and I think that that's not true.  And
11:44  8   consequently what she said -- well, it sounds different
11:44  9   from what I'm saying.  You know, you need to find out
11:44 10   from her if she intended it to be different.
11:44 11      Q.  (BY MR. BRUSTER)  If she intended the word
11:44 12   operates to be different?
11:44 13      A.  If she intended her letter to reflect
11:44 14   something different than my testimony, yes.
11:44 15      Q.  This next request, Admit that HSBS North
11:44 16   America Holdings, Inc. controls HSBC Bank USA, is
11:44 17   answered on the top of the following page where, after
11:44 18   some objections, HSBC North America Holdings, Inc.
11:44 19   denies that it controls the daily operations of HSBC
11:45 20   Bank USA but does admit to having a controlling interest
11:45 21   in HSBC Bank USA.  Do you see that?
11:45 22      A.  I do.
11:45 23      Q.  Okay.  By controlling interest, what does that
11:45 24   phrase mean to you?
11:45 25      A.  It means that ultimately the parent company

Page 91

11:45  1   owns the stock of the subsidiaries.
11:45  2      Q.  So you're just talking about stock ownership
11:45  3   there.
11:45  4      A.  That's -- that would be my interpretation,
11:45  5   yes.
11:45  6      Q.  And a denial of that statement, that HSBC
11:45  7   North America Holdings, Inc. controls HSBC Bank USA, is
11:45  8   inconsistent with the Exhibit we looked at a few minutes
11:45  9   ago, the 20-F form that was filed by your parent
11:45 10   company, HSBC Group; isn't that true?
11:45 11          MR. LEONARD:  Objection:  Form.
11:45 12      Q.  That was that 20-F?
11:46 13      Q.  (BY MR. BRUSTER)  I think you have, actually,
11:46 14   a paper copy here in front of you, where the page 3,
11:46 15   top paragraph, right-hand column, last sentence, talks
11:46 16   about HSBC North America Holdings, Inc. controlling HSBC
11:46 17   Bank USA.  Do you recall that?
11:46 18      A.  I recall something like that, yes.
11:46 19      Q.  So a denial of this statement here in the
11:46 20   discovery is just inconsistent with that Security &
11:46 21   Exchange Commission filing, isn't it?
11:46 22          MR. LEONARD:  Objection:  Form.
11:46 23      A.  Again, no, I don't think it is.  I think it's
11:46 24   a clarification.
11:46 25      Q.  (BY MR. BRUSTER)  Clarification on what, the

Page 92

11:46  1   word controls?
11:46  2      A.  The fact that the operations of the
11:46  3   subsidiaries are handled at the subsidiary level.  HNAH
11:46  4   does not control the subsidiary's day-to-day operations.
11:46  5      Q.  Are you uncomfortable having to clarify and
11:46  6   define words, simple words like control or operate in
11:47  7   your deposition here today?
11:47  8      A.  I find them to be somewhat ambiguous and
11:47  9   uncomfortable that you won't define them for me as you
11:47 10   would like to discuss them.
11:47 11      Q.  Did you have any discussion with Ms. Burak or
11:47 12   anybody else at HSBC North America Holdings, Inc. about
11:47 13   what it means to control or operate subsidiary banks
11:47 14   before your deposition here today?
11:47 15          MR. LEONARD:  Don't discuss your -- don't
11:47 16   discuss your discussions with your attorneys.  If you
11:47 17   talked to Ms. Burak in conjunction with legal advice
11:47 18   that you were seeking from her, then you're not
11:47 19   permitted to talk about that.
11:47 20      A.  I didn't -- I did not have any conversations
11:47 21   with Ms. Burak at all.
11:47 22      Q.  (BY MR. BRUSTER)  Did you talk to anybody else
11:47 23   at HSBC North America Holdings, Inc. about all these
11:47 24   documents that discuss the holding company operating or
11:48 25   controlling the subsidiary bank before your deposition?

Page 93

11:48  1          MR. LEONARD:  Objection:  Form.
11:48  2      A.  Any conversations I had are subject to
11:48  3   privilege, attorney-client privilege.
11:48  4      Q.  (BY MR. BRUSTER)  Outside the presence of
11:48  5   these lawyers or your lawyers representing HSBC in this
11:48  6   action, you didn't have any conversations with anybody
11:48  7   else that works for HSBC North America Holdings, Inc.
11:48  8   about those topics?
11:48  9      A.  That's correct.
11:49 10      Q.  Let me ask you about number 13 here on the
11:49 11   screen in front of you, which was admit that in the last
11:49 12   three years HSBC North America Holdings, Inc. has earned
11:49 13   revenue that is generated from business conducted in
11:49 14   Texas, and the answer after a number of objections is
11:49 15   deny.  Do you see that?
11:49 16      A.  I do.
11:49 17      Q.  Okay.  Earlier we talked about the way that
11:49 18   HSBC North America Holdings, Inc. makes money, and your
11:49 19   testimony was that it does so as a result of dividends
11:49 20   that are paid up from its subsidiary companies, correct?
11:49 21      A.  That's my understanding, yes.
11:49 22      Q.  Okay.  Isn't it true, then, that a portion of
11:49 23   the money that is earned as dividend payments by HSBC
11:49 24   North America Holdings, Inc., that that money is
11:49 25   generated in part from business activities in Texas?

24 (Pages 90 to 93)

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

---

Page 94

11:50 1          MR. LEONARD: Objection. Form.
11:50 2     Q.  (BY MR. BRUSTER) You may answer.
11:50 3     A.  I wouldn't know one way or the other if -- if
11:50 4  businesses in Texas made money.
11:50 5     Q.  Is it your testimony to this judge and jury
11:50 6  that you don't know whether or not HSBC's operations in
11:50 7  Texas make any money?
11:50 8     A.  I know that we have operations in the state of
11:50 9  Texas. I do not know what the -- their financial
11:50 10  picture is on an individual basis, no.
11:50 11     Q.  Can you tell the judge and jury whether or not
11:50 12  HSBC's activities in the state of Texas generate revenue
11:50 13  for the company?
11:50 14          MR. LEONARD: Objection. Form.
11:50 15     A.  Yes, I am certain that that --
11:50 16          MR. LEONARD: Counsel, I believe you
11:50 17  misspoke. Do you want to further define what HSBC
11:50 18  you're talking about?
11:51 19          MR. BRUSTER: Any HSBC banking
11:51 20  subsidiary.
11:51 21          MR. LEONARD: Banking subsidiary. Okay.
11:51 22     A.  I'm certain that the operating subsidiaries
11:51 23  generate revenue.
11:51 24     Q.  (BY MR. BRUSTER) And the profit that's earned
11:51 25  by operating subsidiaries, including profit earned in

---

Page 95

11:51 1  the state of Texas, is then paid up the chain to the
11:51 2  holding companies in the form of dividends, correct?
11:51 3          MR. LEONARD: Objection. Form.
11:51 4     Q.  (BY MR. BRUSTER) You may answer.
11:51 5     A.  That's my understanding.
11:51 6     Q.  So isn't it true that dividend revenue earned
11:51 7  by HSBC North America Holdings, Inc. is earned, in part,
11:51 8  from business activity conducted in the state of Texas?
11:51 9     A.  I think that I was trying to distinguish
11:51 10  earlier, and you did just now, that revenue and profit
11:51 11  are sometimes -- are different things so, yes, they
11:51 12  generate revenue. I have no idea if they're profitable.
11:51 13     Q.  Your testimony to this court is that you have
11:52 14  no idea whether or not HSBC banking subsidiaries have
11:52 15  ever earned a profit in the state of Texas; is that
11:52 16  true?
11:52 17     A.  Yes, that's true, I don't know personally.
11:52 18     Q.  Who would know the answer to that?
11:52 19     A.  Whoever reviews the financials for the banking
11:52 20  subsidiary in Texas.
11:52 21     Q.  Who is that person?
11:52 22     A.  I don't know.
11:52 23     Q.  I'm sorry?
11:52 24     A.  I don't know.
11:52 25     Q.  So you can't tell the jury whether or not HSBC

---

Page 96

11:52 1  North America Holdings, Inc. has earned revenue that's
11:52 2  generated in the state of Texas --
11:52 3          MR. LEONARD: Objection. Form.
11:53 4     Q.  (BY MR. BRUSTER) -- can you?
11:53 5          MR. LEONARD: Same objection.
11:53 6     A.  HSBC North America Holdings, Inc. hasn't
11:53 7  earned revenue. I can't tell you whether or not it
11:53 8  received, as part of its dividend, money that was earned
11:53 9  in Texas. I don't know.
11:53 10     Q.  (BY MR. BRUSTER) If HSBC North America
11:53 11  Holdings, Inc. receives money in the form of dividend
11:53 12  payments that was generated as a result of business
11:53 13  activity in Texas, do you think that HSBC North America
11:53 14  Holdings, Inc. can properly say it doesn't engage in
11:53 15  activities in Texas?
11:53 16          MR. LEONARD: Objection. Form.
11:53 17     A.  Absolutely you can say that, yes.
11:53 18     Q.  (BY MR. BRUSTER) So in other words, Texas
11:53 19  folks can pay money to HSBC North America Holdings, Inc.
11:53 20  subsidiaries and the parent company can reap the benefit
11:53 21  of those monies by dividend payments but yet can take
11:53 22  the position that it doesn't do any business in Texas.
11:53 23  That's your testimony.
11:54 24          MR. LEONARD: Objection. Form.
11:54 25     A.  My testimony is that HSBC North America

---

Page 97

11:54 1  Holdings, Inc. is a holding company and does not operate
11:54 2  its business. It has no revenue-generating operations.
11:54 3     Q.  (BY MR. BRUSTER) But yet, the money that it
11:54 4  earns or is provided as dividend payment might stem from
11:54 5  Texas; isn't that true?
11:54 6          MR. LEONARD: Objection. Form.
11:54 7     A.  It is possible.
11:54 8     Q.  (BY MR. BRUSTER) In fact, it's likely, isn't
11:54 9  it?
11:54 10          MR. LEONARD: Objection to form; asked
11:54 11  and answered.
11:54 12     A.  I'm sorry, I'm not the right person to answer
11:54 13  these questions, so I just don't know.
11:54 14     Q.  (BY MR. BRUSTER) So HSBC North America
11:54 15  Holdings, Inc. procures insurance coverage for HSBC
11:54 16  properties in Texas, correct?
11:54 17          MR. LEONARD: Objection. Form.
11:54 18     A.  It procures insurance for all of its North
11:54 19  America properties, yes.
11:54 20     Q.  (BY MR. BRUSTER) Including properties in
11:54 21  Texas, correct?
11:54 22          MR. LEONARD: Same objection.
11:54 23     Q.  (BY MR. BRUSTER) And then HSBC North America
11:54 24  Holdings, Inc. might be provided dividend revenue that's
11:55 25  earned as a result of subsidiaries' business activities

---

25 (Pages 94 to 97)

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

---

Page 98

11:55  1  in the state of Texas.
11:55  2        MR. LEONARD: Objection: Form.
11:55  3    Q.  (BY MR. BRUSTER)  That's your testimony as
11:55  4  well, isn't it?
11:55  5        MR. LEONARD: Same objection.
11:55  6    A.  Again, that's, you know, where the revenue
11:55  7  comes from, is from the operating subsidiaries, so if
11:55  8  they made money in Texas then, yes, it's possible.
11:55  9    Q.  (BY MR. BRUSTER)  Does the CEO of HSBC North
11:55  10  America Holdings, Inc. know that you are testifying here
11:55  11  today that there's no control exerted by HSBC North
11:55  12  America Holdings, Inc. over the banking subsidiaries?
11:55  13        MR. LEONARD: Objection: Form.
11:55  14    A.  I'm sorry, could you ask that question again?
11:55  15  I didn't get it.
11:56  16    Q.  (BY MR. BRUSTER)  Sure.  Does the CEO of HSBC
11:56  17  North America Holdings, Inc. know that you're testifying
11:56  18  today that that company does not exert control over HSBC
11:56  19  Bank?
11:56  20        MR. LEONARD: Objection: Form.
11:56  21    A.  I have no idea if he knows I'm testifying
11:56  22  today.
11:56  23    Q.  (BY MR. BRUSTER)  Do you know if the
11:56  24  shareholders of HSBC have been informed that HSBC,
11:56  25  according to you, HSBC North America Holdings, Inc.

---

Page 99

11:56  1  doesn't exert control over the operations of HSBC Bank?
11:56  2        MR. LEONARD: Objection: Form.
11:56  3    A.  No, I don't know.
11:56  4    Q.  (BY MR. BRUSTER)  Excuse me?
11:56  5    A.  No, I don't know.
11:57  6        MR. LEONARD: Counsel, when you reach a
11:57  7  convenient stopping point ...
11:57  8        MR. BRUSTER: Yeah.  Let's do about five
11:57  9  more minutes and we'll be there.
11:57  10        MR. LEONARD: Okay.
11:57  11    Q.  (BY MR. BRUSTER)  Let me ask you about number
11:57  12  14 here on the screen in front of you.  It says, Admit
11:57  13  that in the last three years HSBC North America
11:57  14  Holdings, Inc. has provided operational support to HSBC
11:57  15  Bank USA.  Do you see that?
11:57  16    A.  I do.
11:57  17    Q.  And then unsurprisingly the answer to that was
11:57  18  denied.  Do you see that?
11:57  19    A.  I do.
11:57  20        MR. LEONARD: Objection.
11:57  21    Q.  (BY MR. BRUSTER)  The -- first of all, a
11:57  22  denial of that statement, that HSBC North America
11:57  23  Holdings, Inc. has provided operational support to HSBC
11:57  24  Bank USA, is inconsistent with Ms. Burak's letter to the
11:58  25  government, isn't it?

---

Page 100

11:58  1        MR. LEONARD: Objection to form.
11:58  2    A.  I don't recall what she said about operational
11:58  3  support.
11:58  4    Q.  (BY MR. BRUSTER)  I'll show you.  Here on the
11:58  5  top of page 2 of that letter she says, As a bank holding
11:58  6  company, HSBC North America operates various
11:58  7  subsidiaries in the United States.  Do you see that?
11:58  8    A.  Uh-huh (affirmative).
11:58  9    Q.  And then in the document we just looked at it
11:58  10  is denied that HSBC North America Holdings, Inc. has
11:58  11  provided operational support --
11:58  12        MR. LEONARD: I'm sorry, Counsel, but it
11:58  13  also lodges an objection to that phrase as being vague.
11:58  14    Q.  (BY MR. BRUSTER)  Do you understand what
11:58  15  operational support means?
11:58  16    A.  Would you define it for me?
11:58  17    Q.  Do you think there's a difference between
11:58  18  operates and providing operational support?
11:58  19    A.  Yes.
11:58  20    Q.  What's the difference?
11:58  21    A.  Operates is, you know, an active verb.
11:59  22  Operational support is -- you know, support, it's a
11:59  23  noun.  I mean, it's a noun, just like operational
11:59  24  support is something separate from operating.  They're
11:59  25  not the same at all.

---

Page 101

11:59  1    Q.  Okay.  So let's skip past the first question,
11:59  2  then, about whether or not that's inconsistent with
11:59  3  Ms. Burak's letter, I think the jury can draw that
11:59  4  conclusion, and let me ask you this question.
11:59  5        You testified earlier that HSBC North
11:59  6  America Holdings, Inc. and HSBC Bank, the banking
11:59  7  subsidiary, share some directors and officers, correct?
11:59  8        MR. LEONARD: Objection to form;
11:59  9  objection, sidebar.
11:59  10    Q.  (BY MR. BRUSTER)  You may answer.
11:59  11    A.  I believe that they do, yes.
11:59  12    Q.  Including the CEO of HSBC North America
11:59  13  Holdings, Inc., correct?
11:59  14    A.  Yes, I believe so.
11:59  15    Q.  Including the CEO of the HSBC banking
11:59  16  subsidiary, correct?
12:00  17    A.  Yes, I believe so.
12:00  18    Q.  Okay.  Despite the sharing of those two
12:00  19  high-level executives between these two companies, is it
12:00  20  still your testimony that the parent company doesn't
12:00  21  provide operational support to the bank?
12:00  22    A.  Yes.
12:00  23    Q.  Have you ever asked those two respective CEOs
12:00  24  whether they provide operational support to HSBC Bank?
12:00  25    A.  No.

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax      E-mail: gretchenshore@gretchenshore.com

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                    CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

---

Page 102

12:00  1    Q.  Wouldn't that be important to know before you
12:00  2  come testify that there is no operational support
12:00  3  provided?
12:00  4    A.  I'm comfortable with my answers.
12:00  5    Q.  Even though these two CEOs serve on the boards
12:00  6  of both companies.
12:00  7    A.  Yes.
12:01  8        MR. BRUSTER:  Let's take our lunch break.
12:01  9        THE VIDEOGRAPHER:  We're off the record.
12:01  10       (Recess taken 12:01 to 1:24)
01:24  11       THE VIDEOGRAPHER:  We're back on the
01:24  12  record.
01:25  13    Q.  (BY MR. BRUSTER)  All right.  Let's try again.
01:25  14  Ms. Hickman, are you ready to proceed?
01:25  15    A.  Yes.
01:25  16    Q.  Great.  I forgot to ask you earlier this
01:25  17  morning, but do you hold any other positions with any
01:25  18  other HSBC-related companies other than the senior vice
01:25  19  president of insurance for HSBC North America Holdings,
01:25  20  Inc.?
01:25  21    A.  No.
01:25  22    Q.  Do you serve on any committees or boards or
01:25  23  anything else related to your work at HSBC?
01:25  24    A.  No.
01:25  25    Q.  No other internal associations or groups of

---

Page 103

01:25  1  employees that you serve on?
01:25  2    A.  Internal to the company?
01:25  3    Q.  Yes, ma'am.
01:25  4    A.  No.
01:25  5    Q.  Okay.  Do you serve on any boards of any other
01:25  6  companies?
01:25  7    A.  No.
01:25  8    Q.  External to HSBC?
01:25  9    A.  No.
01:26  10   Q.  Okay.
01:26  11       (Exhibit Number 7 marked.)
01:26  12   Q.  (BY MR. BRUSTER)  Let me show you a document
01:26  13  we're going to mark as Exhibit 7, which is HSBC North
01:26  14  America Holding, Inc.'s Objections, Assertions of
01:26  15  Privilege and Responses to DataTreasury Corporation's
01:26  16  First Set of Request for Production Regarding
01:26  17  Jurisdictional Discovery.  Do you see that on your
01:26  18  screen?
01:26  19   A.  Yes.
01:26  20   Q.  Were you involved in the process of collecting
01:26  21  documents for this litigation?
01:26  22   A.  No.
01:26  23   Q.  Have you done anything insofar as collecting
01:26  24  and producing documents to your lawyers for this
01:26  25  litigation?

---

Page 104

01:26  1    A.  No.
01:26  2    Q.  Do you know who has?
01:26  3    A.  No.
01:26  4    Q.  Let me ask you about some of the things that
01:27  5  are in here, although our discussion may be somewhat
01:27  6  limited since you've not been involved in that process.
01:27  7        There's a request here for request number
01:27  8  nine, Produce all documents evidencing any
01:27  9  communications between officers, directors or employees
01:27  10  of HSBC North America Holdings, Inc. on the one hand and
01:27  11  officers, directors or employees of HSBC Bank USA.  Do
01:27  12  you see that?
01:27  13   A.  I do.
01:27  14   Q.  You have documents such as those, that are
01:27  15  referenced there in request number nine, in your
01:27  16  possession at your office, don't you?
01:27  17   A.  I don't.
01:27  18   Q.  You don't?
01:27  19   A.  No.
01:27  20   Q.  Earlier this morning I thought we talked about
01:27  21  some folks that directly reported to you that were
01:28  22  executives of HSBC Bank USA.  Is that correct?
01:28  23   A.  I apologize.  I understand.  Yes, I do have
01:28  24  communication between my staff, yes.  I'm sorry.
01:28  25   Q.  You have communications between you on behalf

---

Page 105

01:28  1  of HSBC North America Holdings, Inc. on the one hand and
01:28  2  people that work for HSBC Bank on the other, correct?
01:28  3    A.  Yes, I do.  I'm sorry, yes.
01:28  4    Q.  Okay.  And you've not produced any of those in
01:28  5  this litigation, have you?
01:28  6    A.  No.
01:28  7    Q.  And I guess I understand from your testimony
01:28  8  you've never been asked to do that?
01:28  9    A.  That's correct.
01:28  10   Q.  What e-mail application do you use?
01:28  11   A.  Lotus Notes.
01:28  12   Q.  Lotus Notes.  Is that how you communicate for
01:28  13  the majority of your written communication with
01:28  14  employees of HSBC Bank USA?
01:28  15   A.  Yes.
01:29  16   Q.  How long have you used the Lotus Notes
01:29  17  application for e-mail?
01:29  18   A.  It's been several years.  I don't know
01:29  19  exactly.
01:29  20   Q.  When you procure insurance to cover all the
01:29  21  HSBC facilities, do you negotiate with -- tell me the
01:29  22  process that you go through to do that.
01:29  23   A.  Well, there's a data-gathering effort that
01:29  24  goes on, depending on the type of insurance that is to
01:29  25  be procured, and so we gather information from the

---

27 (Pages 102 to 105)

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                    CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

Page 106

01:29 1    various subsidiaries relative to whatever the risk is
01:29 2    we're looking to insure.
01:29 3        Then we assemble it into a format that we
01:29 4    can provide to the insurance brokers and the insurance
01:29 5    underwriters so that they can understand what it is that
01:30 6    we're trying to purchase from them.
01:30 7        Typically, after that, there would be
01:30 8    some meetings with underwriters. And following that, we
01:30 9    would expect to receive quotations for the premiums that
01:30 10   they would propose to charge us for the risk that we're
01:30 11   trying to transfer.
01:30 12       Q. And then you select among those quotations for
01:30 13   the policies that best suit your requirements.
01:30 14       A. That's correct.
01:30 15       Q. Okay. Do you -- are you typically the person
01:30 16   from HSBC North America Holdings, Inc. that's involved
01:30 17   in those meetings with insurers?
01:30 18       A. Yes.
01:30 19       Q. And do you receive that information that's
01:30 20   gathered by your subsidiaries, including the bank
01:30 21   subsidiary, for data gathering to determine what your
01:30 22   needs are?
01:30 23       A. Not personally.
01:30 24       Q. Who is?
01:30 25       A. People on my staff would gather it and

Page 107

01:30 1    assemble it.
01:30 2        Q. Okay. And then they provide that information
01:30 3    to you?
01:30 4        A. Yes.
01:32 5        Q. Number 23 says, Please produce all documents
01:32 6    related to all business activities ever attended or
01:32 7    conducted in the state of Texas by HSBC North America
01:32 8    Holdings, Inc. officers, directors or employees. Do you
01:32 9    see that?
01:32 10       A. I do.
01:32 11       Q. And you can see down here in response that
01:32 12   there was a number of objections to that, and then
01:32 13   finally a response that says, After conducting a
01:32 14   diligent search, HSBC North America Holdings has not
01:32 15   located any documents within its possession, custody or
01:32 16   control that are responsive to this request. Do you see
01:32 17   that?
01:32 18       A. I do.
01:32 19       Q. Do you know anything about that diligent
01:32 20   search?
01:32 21       A. No.
01:32 22       Q. You weren't involved in any way with that?
01:32 23       A. No.
01:32 24       Q. Do you know who was, by any chance?
01:32 25       A. No, I don't.

Page 108

01:33 1        (Exhibit Number 8 marked.)
01:33 2        Q. (BY MR. BRUSTER) Let me show you what we
01:33 3    marked -- what's marked as Exhibit 8 to your deposition,
01:33 4    which is a document entitled HSBC North America
01:33 5    Holdings, Inc.'s Objections, Assertions of Privilege and
01:33 6    Answers to Defendant DataTreasury Corporation's First
01:33 7    Set of Interrogatories Regarding Jurisdictional
01:33 8    Discovery. Do you see that?
01:33 9        A. I do.
01:33 10       Q. Have you ever seen this document before?
01:33 11       A. Yes, but wasn't it the same one we just looked
01:33 12   at? No.
01:33 13       Q. No, it wasn't, actually.
01:33 14       A. Okay. It's very similar.
01:33 15       Q. Very similar, I agree. This is actually
01:33 16   written answers to question where the other one was a
01:33 17   request for documents.
01:33 18       A. I see. Yes, I believe I have seen this.
01:33 19       Q. You have seen this one?
01:33 20       A. Yes.
01:33 21       Q. Did you provide any assistance in answering
01:34 22   the questions that are contained in this document?
01:34 23       A. No.
01:34 24       Q. Do you know who did?
01:34 25       A. No.

Page 109

01:34 1        MR. BRUSTER: Counsel, was there a
01:34 2    attestation to this that was provided?
01:34 3        MR. LEONARD: Well, there's supposed to
01:34 4    be. I don't honestly know.
01:34 5        MR. BRUSTER: I didn't see one. I
01:34 6    figured it might be the witness today since she did the
01:34 7    affidavit, but per her testimony here that she didn't
01:34 8    provide any assistance, I was wondering if you guys
01:34 9    could tell us who that was.
01:34 10       MR. LEONARD: Actually, I think -- quite
01:34 11   frankly, I intended for her to be the -- so I'm a little
01:34 12   bit surprised by this myself.
01:34 13       MR. BRUSTER: Okay.
01:34 14       MR. LEONARD: But I'll check on that and
01:34 15   get back to you.
01:34 16       Q. (BY MR. BRUSTER) Before we look at this
01:34 17   document, though, your testimony here is that you didn't
01:34 18   assist in the answering of these questions, correct?
01:34 19       A. Well, could we look at the question?
01:34 20       Q. Sure. Yeah. Feel free to scroll through it.
01:34 21   You've got the mouse right there.
01:34 22       A. Oh, okay. Maybe I'm confused. I don't know.
01:35 23       MR. LEONARD: Here is a hard copy if
01:35 24   that's easier for you.
01:35 25       THE WITNESS: Oh, okay.

28 (Pages 106 to 109)

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                    CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

---

Page 110

01:35 1    A.  (Reviewing document.)  Well, I guess I did
01:35 2  testify that I did help with the answers to this and
01:35 3  perhaps it's just been a while.  I don't remember.
01:35 4    Q.  (BY MR. BRUSTER)  Okay.  I just want to clear
01:35 5  this up now for the jury.  A few minutes ago you said
01:35 6  that you did not assist in providing the answers to
01:35 7  these questions.  And now do I understand your testimony
01:35 8  to be that you did assist in providing?
01:35 9    A.  Yes, that is my testimony, and I apologize for
01:35 10 misleading the jury.
01:36 11   Q.  Did you provide assistance in answering all of
01:36 12 these questions or just some of them?
01:36 13   A.  I -- I would have to look at them, but my
01:36 14 initial indication or my initial response would be some
01:36 15 of them.
01:36 16   Q.  If you could, flip through here and tell me
01:36 17 which ones that you provided assistance in answering,
01:36 18 please.
01:36 19       MR. LEONARD:  Take your time.  Go through
01:36 20 one at a time.
01:36 21   A.  (Reviewing document.)  With regard to
01:36 22 interrogatory number two on my affidavit, I did work
01:36 23 with legal counsel on the affidavit.
01:37 24       MR. LEONARD:  What was the Exhibit Number
01:37 25 on that?

---

Page 111

01:37 1        MR. BRUSTER:  I think we're on eight.
01:37 2        MR. LEONARD:  Thank you.
01:37 3    A.  (Reviewing document.)  With regard to
01:37 4  interrogatory number eight, because of -- my job is
01:37 5  procuring insurance, I would -- I know that HSBC North
01:37 6  America Holdings, Inc. does not own, lease or have
01:37 7  interest in real estate in Texas.  And I believe that
01:37 8  that would be all.
01:38 9    Q.  (BY MR. BRUSTER)  So number two and number
01:38 10 eight were the only ones that you assisted in answering.
01:38 11   A.  Yes.
01:38 12   Q.  Let me ask you about some of the things in
01:38 13 this document.  And again, you may not be able to help
01:38 14 me out if you -- those are the only two that you helped
01:38 15 on there.
01:39 16      For example, number four, all instances
01:39 17 in which HSBC North America Holdings, Inc. has defended
01:39 18 or assumed responsibility for a liability claim against
01:39 19 HSBC Bank USA or other banking subsidiary.
01:39 20   A.  Yes.
01:39 21   Q.  You didn't provide any input on that?
01:39 22   A.  Well, I mean, I would not have any independent
01:39 23 knowledge.  The knowledge I would have on those kinds of
01:39 24 questions would be through the legal department, which
01:39 25 manages the litigation for HSBC Bank.

---

Page 112

01:39 1    Q.  When litigation is brought against HSBC Bank
01:39 2  that triggers insurance coverage, do you get involved?
01:39 3    A.  If it triggers insurance coverage, then my
01:39 4  department gets involved, yes.
01:39 5    Q.  And your department is a department in HSBC
01:39 6  North America Holdings, Inc., correct?
01:39 7    A.  Well, the claims people actually are in
01:39 8  Buffalo and in the HSBC Bank USA operation.
01:40 9    Q.  Do those claims people report to you?
01:40 10   A.  Yes, they do.
01:40 11   Q.  But you didn't provide any input for that
01:40 12 answer, number four?
01:40 13   A.  No.
01:40 14   Q.  When a claim is filed that triggers an
01:40 15 insurance policy that you've procured on behalf of HSBC
01:40 16 North American Holdings, Inc., do you get a report that
01:40 17 that claim has been filed?
01:40 18   A.  With our insurance company, you mean?
01:40 19   Q.  Yes, ma'am.
01:40 20   A.  Yes, I will.  Not a report, but I'm copied on
01:40 21 the transmittal letter, yes.
01:40 22   Q.  And do you also get notified or receive
01:40 23 notification of such a claim from the subsidiary?
01:40 24   A.  Yes.
01:40 25   Q.  In other words, do you have conversations,

---

Page 113

01:40 1  communications with folks that work for the HSBC Bank
01:40 2  subsidiary about claims that have been filed that have
01:40 3  triggered insurance policies that you've procured?
01:40 4    A.  It would be unusual.  It could happen, but it
01:40 5  wouldn't be the normal course.
01:41 6    Q.  Has it happened in the past?
01:41 7    A.  Not for the bank subsidiary, no.
01:41 8    Q.  For other subsidiaries has it?
01:41 9    A.  For the finance company subsidiaries in the
01:41 10 past, yes.
01:41 11   Q.  So your testimony to the jury is that it never,
01:41 12 since you've served as the senior vice president of
01:41 13 insurance for HSBC North America Holdings, Inc., have
01:41 14 you ever had communication with someone in the bank
01:41 15 subsidiary about a claim that's been made that's
01:41 16 triggered an insurance policy.  Is that your testimony?
01:41 17   A.  Yes, it is.  Well, other than my claims people
01:41 18 who work there, so I apologize if that's misleading.
01:41 19 But the people who work for me, I talk to them about the
01:41 20 claims that are triggering insurance policies.
01:41 21   Q.  Okay.  Well, that -- that's important.
01:41 22   A.  Okay.  I'm sorry.  I didn't mean to mislead
01:41 23 you there.
01:41 24   Q.  So you've communicated with people that work
01:41 25 for the banking subsidiary --

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax     E-mail: gretchenshore@gretchenshore.com

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman              CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

---

Page 114

01:41  1    A.  Yes.
01:41  2    Q.  -- about claims that have been made against
01:42  3  the banking subsidiaries.
01:42  4    A.  Yes.
01:42  5    Q.  Correct?
01:42  6    A.  Yes.  I'm sorry.  I didn't mean to mislead you
01:42  7  there.
01:42  8    Q.  That's okay.
01:42  9        Can you verify for us that here, in
01:42  10 response to interrogatory number ten, that that's an
01:42  11 accurate listing of all the people that serve on the
01:42  12 board of directors of HSBC North America Holdings, Inc.?
01:42  13   A.  Yes, I can, although -- yes -- no, that's
01:42  14 correct.
01:43  15   Q.  You didn't provide any input to this -- to
01:43  16 answering this interrogatory, did you?
01:43  17   A.  No.  This is very available information.  I
01:43  18 wouldn't have any --
01:43  19   Q.  The last sentence there that says, HSBC North
01:43  20 America Holdings, Inc. further responds that, to its
01:43  21 knowledge, none of the board members -- none of the
01:43  22 board of directors have conducted business activities on
01:43  23 behalf of HNAH while physically in Texas.  Do you see
01:43  24 that?
01:43  25   A.  I do.

---

Page 115

01:43  1    Q.  Do you know who provided that information for
01:43  2  answering these interrogatories?
01:43  3    A.  Not specifically, no.
01:43  4    Q.  Generally, do you know?
01:43  5    A.  I know that some of the research to answer
01:43  6  some of the questions was done through the legal
01:43  7  department, but I don't know who in the legal department
01:44  8  specifically.
01:44  9    Q.  Do you know whether each of these members of
01:44  10 the board of directors was contacted and asked if they'd
01:44  11 conducted business on behalf of HSBC North America
01:44  12 Holdings, Inc. while in Texas?
01:44  13   A.  I don't know if they were personally contacted
01:44  14 or how that was determined.
01:44  15   Q.  The reason I'm wondering is because it says --
01:44  16 further responds that, to its knowledge, which seems to
01:44  17 be a limiting -- a limiting clause, to its knowledge
01:44  18 none of the board of directors have conducted business
01:44  19 while in Texas.
01:44  20   A.  That's what it says.
01:44  21   Q.  Do you understand that some members of the
01:44  22 board of directors might have conducted business while
01:44  23 in Texas?
01:44  24       MR. LEONARD:  Objection:  Form.
01:44  25   A.  I have no knowledge that any of them conducted

---

Page 116

01:44  1  business on behalf of HSBC North America Holdings in
01:44  2  Texas.  I -- no, I don't know.
01:44  3    Q.  (BY MR. BRUSTER)  Do you have any knowledge as
01:44  4  to whether any of these individuals have ever been to
01:44  5  Texas?
01:44  6    A.  No.
01:44  7    Q.  None at all?
01:44  8    A.  I don't know.
01:45  9    Q.  Have you guys ever had any corporate meetings
01:45  10 or retreats or anything like that in Texas, to your
01:45  11 knowledge?
01:45  12   A.  Not to my knowledge.
01:45  13   Q.  You've never been advised of?
01:45  14   A.  No.
01:45  15   Q.  And you don't know who provided the
01:45  16 information within the legal department to answer that
01:45  17 interrogatory?
01:45  18   A.  No, I don't.
01:45  19   Q.  Interrogatory number 15 asks for officers,
01:45  20 directors, employees at HSBC North America Holdings,
01:46  21 Inc. that also serve as officers, directors or employees
01:46  22 of the bank subsidiary.  Do you see that?
01:46  23   A.  I do.
01:46  24   Q.  And after some objections there's an answer
01:46  25 here with Salvatori H. -- how do you pronounce that?

---

Page 117

01:46  1    A.  Alfiero, I believe.
01:46  2    Q.  Alfiero.  And this is Janet Burak, whose
01:46  3  letter we've been reading earlier this deposition,
01:46  4  Mr. John McKenna, Ms. Teresa -- how do you pronounce
01:46  5  that?
01:46  6    A.  I don't know.
01:46  7    Q.  -- and Mr. George T. Wendler are officers both
01:46  8  of your company, HSBC North America Holdings, Inc., and
01:46  9  the banking subsidiary.  Do you see that?
01:46  10   A.  I do.
01:46  11   Q.  Is that a true and accurate list of officers
01:46  12 and directors of -- that the company share?
01:47  13       MR. LEONARD:  Counsel, I'm advised that
01:47  14 we supplemented that to add some additional names in the
01:47  15 last day or so.  I don't know if you're aware of that.
01:47  16       MR. BRUSTER:  Yeah, I am.  I'm about to
01:47  17 pull it up.
01:47  18       MR. LEONARD:  Okay.
01:47  19   A.  I would've expected to see Mr. Geoghegan's
01:47  20 name there and Mr. Mehta.
01:47  21   Q.  (BY MR. BRUSTER)  Okay.  This list right here
01:47  22 has some names that we haven't previously discussed of
01:47  23 people that share officer/director positions between the
01:47  24 two entities, right?
01:47  25       MR. LEONARD:  Objection:  Form.

30 (Pages 114 to 117)

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

## Page 118

01:47  1       A.  Yes, there are names here we haven't discussed
01:47  2   before.
01:47  3       Q.  (BY MR. BRUSTER)  To your understanding,
01:47  4   though, is that list right there accurate?
01:47  5       A.  Well, as supplemented.
01:47  6       Q.  Okay.  Let me show you the supplemented
01:47  7   version, which we'll mark as Exhibit 9 to your
01:47  8   deposition.
01:47  9           (Exhibit Number 9 marked.)
01:47  10      Q.  (BY MR. BRUSTER)  You'll see that it's the
01:48  11  same question, interrogatory 15, and then there's a
01:48  12  different list here, Mr. Alfiero, Mr. Goeghegan,
01:48  13  Mr. Mehta.  Are -- those three individuals are directors
01:48  14  of both HSBC North America Holdings, Inc. and HSBC Bank
01:48  15  USA, correct?
01:48  16      A.  Was it -- was the question either directors or
01:48  17  officers, or only directors?
01:48  18      Q.  I'm just reading what's listed here in the
01:48  19  answer where it says they're directors of both.
01:48  20      A.  Oh, I see.
01:48  21          MR. NICHOLAS:  Counsel, we don't have
01:48  22  that Exhibit up.
01:48  23      A.  I'm sorry.  I was looking at the bottom where
01:48  24  it listed officers but, yes, that's what it says.
01:48  25      Q.  (BY MR. BRUSTER)  So those three individuals

## Page 119

01:48  1   are directors of both HSBC North America Holdings and
01:48  2   HSBC Bank USA, correct?
01:48  3       A.  Yes.
01:49  4       Q.  Is it still your testimony to the jury that
01:49  5   HSBC North America Holdings, Inc. doesn't control or
01:49  6   operate HSBC Bank USA despite the fact that three
01:49  7   members of the board of directors serve on both
01:49  8   entities?
01:49  9           MR. LEONARD:  Objection.  Form.
01:49  10      A.  Again, as I've answered before, yes, that is
01:49  11  still my testimony.
01:49  12      Q.  (BY MR. BRUSTER)  And then we have a list here
01:49  13  that says --
01:49  14          MR. NICHOLAS:  Excuse me, Counsel, but I
01:49  15  don't think -- Exhibit 9 is objections to the notice, is
01:49  16  what you've electronically marked.
01:49  17          MR. BRUSTER:  On my screen Exhibit 9 is
01:49  18  the objections to -- supplemental objections to the
01:49  19  interrogatories.  That's what's showing on her screen.
01:49  20  I'm not sure why that's happening on yours.
01:49  21          MR. LEONARD:  Actually, we don't have
01:49  22  anything on our screen now.
01:49  23          MR. BRUSTER:  This is the supplement you
01:49  24  were whispering about a minute ago over there.  I think
01:49  25  you know of it, right?

## Page 120

01:50  1           MR. NICHOLAS:  I'm just saying what
01:50  2   you've got marked as Number 9 isn't the supplement.
01:50  3           MR. BRUSTER:  Hers is right, isn't it?
01:50  4   That's the only one I'm worried about.
01:50  5           MR. LEONARD:  Well, we need to --
01:50  6           MR. BRUSTER:  The one you were looking
01:50  7   at?
01:50  8           MR. LEONARD:  We need to have all of them
01:50  9   so everybody is following along.
01:50  10          MR. KING:  She's taking care of it right
01:50  11  now.
01:50  12          MR. LEONARD:  Okay.
01:50  13          MR. KING:  She's correcting the problem.
01:50  14          MR. BRUSTER:  Are we on the same page?
01:50  15          MR. NICHOLAS:  We don't have it yet.
01:50  16          (Off-the-record discussion between
01:50  17  Mr. Bruster and Miss Berry.)
01:51  18          MR. LEONARD:  Actually, if you just have
01:51  19  a hard copy, in the interest of time, we'll follow along
01:51  20  with that.
01:51  21          MR. BRUSTER:  Yeah.  I mean, I don't have
01:51  22  one in front of me.  You guys actually served that on us
01:51  23  two days ago, I think.  You might have that one with
01:51  24  you.
01:51  25          MR. LEONARD:  Do you have one?

## Page 121

01:51  1           MR. NICHOLAS:  No, I don't.
01:51  2           MR. LEONARD:  I can just look over
01:51  3   Ms. Hickman's shoulder.
01:51  4           MR. BRUSTER:  Okay.  Perfect.
01:51  5       We're still on, right?
01:51  6           THE COURT REPORTER:  Yes.
01:51  7       Q.  (BY MR. BRUSTER)  Then after the listing of
01:51  8   the three shared directors, we have Ms. Janet Burak,
01:51  9   Mr. John J. McKenna, Ms. Teresa Pesce, and Mr. George T.
01:52  10  Wendler are officers of HSBC North America Holdings,
01:52  11  Inc. and HSBC Bank USA; is that correct?
01:52  12      A.  Yes.
01:52  13      Q.  And is it still your testimony, despite those
01:52  14  four shared officers, in addition to the three shared
01:52  15  board of directors members, that HSBC North America
01:52  16  Holdings, Inc. doesn't operate or control HSBC Bank USA?
01:52  17          MR. LEONARD:  Objection.  Form.
01:52  18      A.  Yes.
01:52  19      Q.  (BY MR. BRUSTER)  And then we have Ms. Sandra
01:52  20  Derickson, who you mentioned earlier, senior management
01:52  21  HSBC North America Holdings and HSBC Bank USA but is
01:52  22  only a director of HSBC Bank USA; is that correct?
01:52  23      A.  Yes.  And I think I said earlier that she was
01:52  24  a director of HSBC North America Holdings and so I'd
01:52  25  like that to be corrected on the record.

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax      E-mail: gretchenshore@gretchenshore.com

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                CONFIDENTIAL
February 2, 2007FOR ATTORNEYS' EYES ONLY

---

Page 122

01:52  1      Q. So is this document correct or your earlier
01:52  2   testimony correct?
01:52  3      A. This document would be correct.
01:53  4      Q. And how do you know that?
01:53  5      A. Because I -- this -- this just reminds me that
01:53  6   I made that mistake.
01:53  7      Q. Have you been mistaken about any of your other
01:53  8   testimony here today that we haven't already talked
01:53  9   about?
01:53 10         MR. LEONARD: Objection: Form.
01:53 11      A. When I made a mistake, I think I corrected it.
01:53 12      Q. (BY MR. BRUSTER) And Ms. Derickson is listed
01:53 13   as senior management of HSBC Bank. She's actually the
01:53 14   CEO, correct?
01:53 15      A. Yes.
01:53 16      Q. Let's go back to Exhibit 8. Interrogatory 17
01:53 17   asks --
01:53 18         MR. NICHOLAS: Can we have ours turned on
01:53 19   again?
01:53 20         MR. BRUSTER: I'm sorry?
01:53 21         MISS BERRY: Yes. Did it not come back
01:53 22   on?
01:54 23         MR. NICHOLAS: No. We have a black
01:54 24   screen.
01:54 25         MR. BRUSTER: Is it there?

---

Page 123

01:54  1         MR. NICHOLAS: I have what was marked as
01:55  2   Exhibit 9, which is the objections, but I don't have --
01:55  3   I can't ...
01:55  4         MR. LEONARD: Exhibit 8 is the
01:55  5   interrogatory answers?
01:55  6         MR. BRUSTER: Yeah.
01:55  7         MR. LEONARD: I've got it, Nick. Let's
01:55  8   just go. Let's go.
01:55  9         MR. BRUSTER: Participating counsel's got
01:55 10   it so we'll go.
01:55 11      Q. (BY MR. BRUSTER) Interrogatory 17 says to
01:55 12   list and describe in detail all instances where HSBC
01:55 13   North America Holdings, Inc. has made a representation
01:55 14   that it operates or controls any subsidiary company that
01:55 15   does business in Texas. Do you see that?
01:55 16      A. Yes.
01:55 17      Q. And then after a number of objections it says,
01:55 18   After reasonable inquiry, HNAH is unaware of any
01:55 19   specific representation concerning subsidiaries doing
01:55 20   business in Texas but acknowledges that certain indirect
01:55 21   operating subsidiaries do business in Texas.
01:55 22         Do you know anything about that
01:55 23   reasonable inquiry that's referenced there?
01:56 24      A. I was not involved in it.
01:56 25      Q. You didn't undertake to determine any

---

Page 124

01:56  1   instances where HSBC North America Holdings, Inc. has
01:56  2   made a representation that it operates or controls any
01:56  3   subsidiary doing business in Texas?
01:56  4      A. No.
01:56  5      Q. We've already looked at several examples of
01:56  6   that today, including Ms. Burak's letter, correct?
01:56  7         MR. LEONARD: Objection: Form.
01:56  8      A. Again, we disagree on the -- you need to speak
01:56  9   with Ms. Burak about the intent of her letter. It's not
01:56 10   for me to represent her intent.
01:56 11      Q. (BY MR. BRUSTER) Well, separate and apart
01:56 12   from whatever intent she may have meant when she printed
01:56 13   the words, that letter, by its words, has a
01:56 14   representation that HSBC North America Holdings, Inc.
01:56 15   operates a subsidiary that does business in Texas,
01:56 16   correct?
01:56 17         MR. LEONARD: Objection: Form.
01:56 18      A. The letter speaks for itself. I mean, we read
01:56 19   it earlier and it says what it says.
01:57 20      Q. (BY MR. BRUSTER) So is that a question?
01:57 21         MR. LEONARD: Objection: Form.
01:57 22      A. Again, her letter speaks for itself.
01:57 23      Q. (BY MR. BRUSTER) Okay. So regardless of its
01:57 24   intent it speaks for itself, right?
01:57 25      A. Yes.

---

Page 125

01:57  1      Q. Interrogatory number 19 asks for all revenues
01:57  2   that have been provided to the parent company from HSBC
01:57  3   Bank USA including all revenues originating from
01:57  4   business activity in Texas, which goes back to something
01:57  5   we discussed earlier in the morning about dividend
01:57  6   payments that may stem from money earned or profits
01:57  7   earned out of Texas operations. Do you recall that?
01:57  8      A. I do.
01:57  9      Q. And after some objections, the response to
01:57 10   this interrogatory is none. Do you see that?
01:58 11      A. I do.
01:58 12      Q. Did you provide any input in answering that
01:58 13   question?
01:58 14      A. No.
01:58 15         (Exhibit Number 10 marked.)
01:58 16      Q. (BY MR. BRUSTER) Let me mark, as Exhibit 10,
01:58 17   a document that was produced to us entitled Consolidated
01:58 18   Financial Statement For Bank Holding Companies, and in
01:58 19   here it says HSBC North America Holdings, Inc. Do you
01:58 20   see that?
01:58 21      A. I do.
01:58 22         MR. BRUSTER: And for the record,
01:58 23   Counsel, that's Bates-stamped HNAH-JURIS-0012.
01:58 24      Q. (BY MR. BRUSTER) And I guess, as I understand
01:58 25   from your earlier testimony, you were not involved in

32 (Pages 122 to 125)

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                  CONFIDENTIAL
February 2, 2007FOR ATTORNEYS' EYES ONLY

Page 126

01:58  1  gathering of documents that were produced?
01:58  2     A. I represented to you what I was involved with
01:58  3  but --
01:59  4     Q. Have you ever seen this document before?
01:59  5     A. Yes.
01:59  6     Q. When did you first see it?
01:59  7     A. A few days ago.
01:59  8     Q. Was it in that packet of materials that
01:59  9  arrived for your deposition preparation?
01:59 10     A. Yes.
01:59 11     Q. This is dated September 30th, 2006, and let me
01:59 12  go to the next page, which I think I'll probably just
01:59 13  mark as a separate Exhibit, Exhibit 11 --
01:59 14        (Exhibit Number 11 marked.)
01:59 15     Q. (BY MR. BRUSTER)  -- which is the following
01:59 16  page of this document that's Consolidated Income
01:59 17  Statement Reported Income For Bank Holding Companies
01:59 18  Do you see that?
01:59 19     A. Yes.
01:59 20     Q. Did you look at this in preparation for your
01:59 21  deposition?
01:59 22     A. Not in any real detail.
01:59 23     Q. Why not?
01:59 24     A. Just didn't.
01:59 25     Q. Where is -- can you point anywhere on this

Page 127

01:59  1  page where income or dividend income earned from the
02:00  2  HSBC Bank subsidiaries would be reflected?
02:00  3     A. Well, I don't see anything under interest
02:00  4  income.
02:00  5     Q. Can you scroll down with the mouse you have?
02:01  6     A. (Reviewing document.)  What was your question
02:01  7  again?  I apologize, but --
02:01  8     Q. Sure.  Can you see where any -- earlier we
02:01  9  talked about the fact that HSBC North America Holdings,
02:01 10  Inc. makes money by receiving dividends that are paid
02:01 11  from its subsidiaries.  Do you recall that?
02:01 12     A. I do.
02:01 13     Q. Can you show us where that type of dividend
02:01 14  payment is reflected?
02:01 15     A. I don't see that anything that is described
02:01 16  that way.  But is this, you know, a document that the
02:01 17  government asks us to fill out, I think, or somebody?  I
02:01 18  don't see that it says anything about dividend income.
02:01 19     Q. If you were going to look for dividend income
02:01 20  to find the answer to that question, what document would
02:02 21  you go look at?
02:02 22     A. I wouldn't know what document to look at.
02:02 23     Q. You wouldn't know what document to look at?
02:02 24     A. No.
02:02 25     Q. Can you tell us whether or not any of the

Page 128

02:02  1  money, that's broken out here on the right-hand side as
02:02  2  different portions of income earned by HSBC North
02:02  3  America Holdings, Inc., can you tell us whether any of
02:02  4  that is attributable to business activity in Texas?
02:02  5        MR. LEONARD:  Objection:  Form.
02:02  6     A. I can't.
02:02  7     Q. (BY MR. BRUSTER)  You don't know the answer to
02:02  8  that?
02:02  9     A. No, I don't.
02:02 10     Q. Let me show you page 14 that we're going to
02:02 11  mark as Exhibit 12 to your deposition.
02:02 12        (Exhibit Number 12 marked.)
02:03 13     Q. (BY MR. BRUSTER)  And do you see this portion
02:03 14  number five here where it says, Number of full-time
02:03 15  equivalent employees at end of current period --
02:03 16     A. Yes.
02:03 17     Q. -- rounded to the nearest full number?
02:03 18     A. Uh-huh (affirmative).
02:03 19     Q. And what number is listed there?
02:03 20     A. 53,211.
02:03 21     Q. And earlier this morning you testified that
02:03 22  HSBC Holdings North America -- excuse me -- HSBN North
02:03 23  America Holdings, Inc. has approximately 50 or fewer
02:03 24  employees.  Do you recall that?
02:03 25     A. Yes.

Page 129

02:03  1     Q. And here on this document, that we looked at
02:03  2  as being filed on behalf of HSBC North America Holdings
02:03  3  Inc., it shows 53,211 full-time equivalent employees.
02:03  4  Do you see that?
02:03  5        MR. LEONARD:  Objection:  Form.
02:03  6     A. I see that number, yes.
02:03  7     Q. (BY MR. BRUSTER)  And do you have an
02:03  8  understanding of the reconciliation between those two
02:03  9  numbers?
02:04 10     A. Well, it's not an understanding.  My
02:04 11  assumption would be that this is a document that
02:04 12  consolidates the information from the operating
02:04 13  subsidiaries.
02:04 14     Q. Is there any document that you know of that
02:04 15  HSBC North America Holdings, Inc. has filed with the
02:04 16  government, or any other agency of the government, that
02:04 17  breaks out the difference between employees of your
02:04 18  company, the parent company, and employees of a banking
02:04 19  subsidiary?
02:04 20     A. I am not aware of anything like that, no.
02:04 21        (Ms. Shank enters the deposition room.)
02:04 22     Q. (BY MR. BRUSTER) From your perspective, is it
02:04 23  really that important to break out which legal entity
02:04 24  they work for anyway?
02:04 25        MR. LEONARD:  Objection to form.

33 (Pages 126 to 129)

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                    CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

## Page 130

02:04  1    A.  Yes.
02:04  2    Q.  (BY MR. BRUSTER)  But you're not aware of any
02:04  3  document that would show us that.
02:04  4    A.  I don't -- no, I don't know of a document that
02:05  5  would do that for you.
02:05  6    Q.  Here in category six lists non-interest items
02:05  7  of income that exceed 1 percent of the net income sum
02:05  8  that's listed above, and number 6(f) we've got credit
02:05  9  and charge card fees with an income associated with
02:05 10  those of $1,935,906.  Do you see that?
02:05 11    A.  I do.
02:05 12    Q.  Okay.  Do you know how much of that revenue
02:05 13  was generated out of Texas?
02:05 14    A.  No.
02:05 15    Q.  Does HSBC -- one of HSBC's banking
02:05 16  subsidiaries issue credit cards to cardholders that live
02:05 17  in Texas?
02:06 18    A.  I don't have personal knowledge of that.
02:06 19    Q.  You don't.
02:06 20    A.  No.
02:06 21    Q.  So you can't tell us whether that amount of
02:06 22  money right there reflects revenue earned in Texas or
02:06 23  not.
02:06 24    A.  That's correct, I can't.
02:06 25    Q.  I guess by that same token you wouldn't be

## Page 131

02:06  1  able to tell the jury whether or not HSBC North America
02:06  2  Holdings, Inc. has realized any dividend revenue as a
02:06  3  result of loans that have been made to people that live
02:06  4  in Texas, can you?
02:06  5    A.  No.
02:06  6        MR. LEONARD: Objection: Form.
02:06  7    A.  No, I can't.
02:06  8    Q.  (BY MR. BRUSTER)  And you can't tell the jury
02:06  9  whether or not HSBC North America Holdings, Inc. has
02:06 10  realized dividend revenue based on loans pertaining to
02:06 11  real estate that's located in Texas, can you?
02:06 12        MR. LEONARD: Objection: Form.
02:06 13    A.  No, I can't.
02:07 14    Q.  (BY MR. BRUSTER)  Can you tell the jury
02:07 15  whether or not HSBC North America Holdings, Inc. has
02:07 16  realized dividend revenue based on mutual funds that
02:07 17  have been sold to Texas residents?
02:07 18        MR. LEONARD: Objection: Form.
02:07 19    A.  No, I can't.
02:07 20    Q.  (BY MR. BRUSTER)  If you wanted to know the
02:07 21  answer to those questions, who would you ask?
02:07 22    A.  I would go to the operating subsidiaries that
02:07 23  sell those products and ask them if they collect the
02:07 24  information on a state-by-state basis.
02:07 25    Q.  You're really not the person with the most

## Page 132

02:07  1  knowledge of the compilation and creation of financial
02:07  2  statements for HSBC Holdings North America [sic] or its
02:08  3  subsidiaries, are you?
02:08  4    A.  No.
02:08  5        (Exhibit Number 13 marked.)
02:08  6    Q.  (BY MR. BRUSTER)  I'm going to stamp, as
02:08  7  Exhibit Number 13, the original deposition notice to
02:08  8  take a 30(b)(6) deposition of HSBC North America
02:08  9  Holdings, Inc.  I'm sure you'll recognize it from its
02:08 10  topic areas that are located here.
02:08 11        MR. LEONARD:  Counsel, if you're changing
02:08 12  subjects, could we take a short break?  You haven't been
02:08 13  going that long, but we've actually been in this room
02:08 14  for a little over an hour now.
02:08 15        MR. BRUSTER:  Yeah.  I'm actually going
02:08 16  to just stick on this subject for about two more
02:08 17  minutes.
02:08 18        MR. LEONARD:  Okay.
02:08 19    Q.  (BY MR. BRUSTER)  And you've seen these topic
02:08 20  areas before, correct?
02:08 21    A.  I have.
02:08 22    Q.  In fact, I think you mentioned you were
02:08 23  reading them on the train on your way in this morning,
02:08 24  right?
02:08 25    A.  Yes.

## Page 133

02:08  1    Q.  You understand that you're here testifying
02:08  2  today as a person presented by HSBC North America
02:09  3  Holdings, Inc. on these topics to give binding testimony
02:09  4  to the company?
02:09  5    A.  I do.
02:09  6    Q.  As a person with the most knowledge of these
02:09  7  topics?
02:09  8    A.  I know I'm here to represent HSBC North
02:09  9  America Holdings, Inc., yes.
02:09 10    Q.  Now, about a minute ago I asked you whether or
02:09 11  not you were really the person with the most knowledge
02:09 12  about the compilation or creation of the financial
02:09 13  statements for your company or the subsidiaries and you
02:09 14  said you weren't, correct?
02:09 15    A.  Correct.
02:09 16    Q.  And I'm sure you noticed, when you read this
02:09 17  deposition notice, that topic number 18 is the
02:09 18  compilation and creation of financial statements and tax
02:09 19  returns for Defendant and any or all subsidiaries of
02:09 20  Defendant, right?
02:09 21    A.  I did see that, yes.
02:09 22    Q.  Okay.  You've just testified that you're not
02:09 23  that person and you don't know who that person would be,
02:09 24  you would -- you would go ask all of the heads of
02:09 25  various subsidiaries to get that information; is that

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax     E-mail: gretchenshore@gretchenshore.com

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman              CONFIDENTIAL
February 2, 2007FOR ATTORNEYS' EYES ONLY

---

Page 134

02:09  1    correct?
02:10  2       A.  Yes.
02:10  3       Q.  Are there any other topics contained in this
02:10  4    topic list that you don't feel like you're competent or
02:10  5    qualified to testify on here today?
02:10  6          MR. LEONARD:  Objection: Form.
02:10  7       Q.  (BY MR. BRUSTER)  You may answer.  And feel
02:10  8    free to use your mouse and scroll through it if you
02:10  9    could tell us any others, like Exhibit -- like topic
02:10 10    number 18.
02:10 11          MR. LEONARD:  Same objection.
02:10 12       A.  (Reviewing document.)  Could you rephrase your
02:11 13    question to me, please?
02:11 14       Q.  (BY MR. BRUSTER)  Sure.  My understanding of
02:11 15    your testimony was that, at least as to topic number 18,
02:11 16    you didn't feel qualify to testify on.  Is that correct?
02:11 17          MR. LEONARD:  Objection to form.
02:11 18       A.  I stated that I would not be the person with
02:11 19    the most knowledge to testify on that topic, yes.
02:11 20       Q.  (BY MR. BRUSTER)  Then tell me what other
02:11 21    topics in this topic list you feel you're not the person
02:11 22    with the most knowledge able to testify to.
02:11 23       A.  Topic number four, I would not have personal
02:11 24    knowledge, although it was -- this question was
02:11 25    researched and I was informed of the answer.

Page 135

02:13  1          Question number 15, identify all
02:13  2    employees, directors and officers of Defendant.  I don't
02:13  3    have that information.  It would be provided to me.
02:13  4          And question number 22, I was provided
02:13  5    the answer to that question.
02:14  6       Q.  That's it.
02:14  7       A.  I think with respect to the other questions
02:14  8    that I am able to answer them on behalf of HSBC North
02:14  9    America Holdings, Inc.
02:14 10       Q.  Okay.  So every topic other than 4, 15, 18 and
02:14 11    22 you feel comfortable answering with your personal
02:14 12    knowledge as the person with the most knowledge on
02:14 13    behalf of HSBC North America Holdings, Inc.
02:14 14          MR. LEONARD:  Objection to form.
02:14 15       Q.  (BY MR. BRUSTER)  Is that correct?
02:14 16       A.  I feel comfortable answering the questions on
02:14 17    the behalf of HSBC North America Holdings, Inc., having
02:14 18    been provided information relative to the question.  I
02:14 19    do not have personal knowledge about every other topic
02:14 20    on this deposition list.
02:14 21       Q.  We'll explore that.
02:14 22          MR. BRUSTER:  We can take our break now.
02:14 23          THE VIDEOGRAPHER:  We're off the record.
02:14 24          (Recess taken 2:14 to 2:32)
02:32 25          THE VIDEOGRAPHER:  We're back on the

Page 136

02:32  1    record.
02:32  2       Q.  (BY MR. BRUSTER)  All right, Ms. Hickman,
02:32  3    we're back after a short break.  Are you ready to go?
02:32  4       A.  Yes.
02:32  5       Q.  We left off talking about your knowledge of
02:32  6    the topics that are here on the 30(b)(6) notice, and I
02:32  7    specifically want to ask you about topic number six, All
02:33  8    processes by which Defendant or any of its subsidiaries
02:33  9    transmit images of checks and other documents from all
02:33 10    points of image capture to other locations that traverse
02:33 11    the state of Texas at any time.  Do you see that?
02:33 12       A.  I do.
02:33 13       Q.  Tell me what your knowledge is on that topic.
02:33 14       A.  Well, actually, my knowledge is that HSBC
02:33 15    North America Holdings, Inc. does not do any
02:33 16    transmission of images or documents to other locations
02:33 17    in the state of Texas, which I learned through inquiry
02:33 18    in the organization.  I have to -- the subsidiary part I
02:33 19    have -- I am not knowledgeable about.  I don't know how
02:33 20    that happens.
02:33 21       Q.  So you're not the person to ask about that
02:34 22    with respect to the subsidiaries as listed there in
02:34 23    topic six?
02:34 24          MR. LEONARD:  For the record, Counsel,
02:34 25    she's not being produced on the issue and I think we

Page 137

02:34  1    objected to producing anyone on that issue.
02:34  2          MR. BRUSTER:  I think you guys objected
02:34  3    to every topic, didn't you?
02:34  4          MR. LEONARD:  I don't know.  And the
02:34  5    answer is, no, we didn't.
02:34  6          MR. BRUSTER:  You didn't lodge objections
02:34  7    to every topic?
02:34  8          MR. LEONARD:  No, we didn't.
02:34  9          MR. BRUSTER:  Okay.  I thought there was
02:34 10    objections at the outset that were applicable to every
02:34 11    single topic.
02:34 12          MR. LEONARD:  General objections, but
02:34 13    with regard to the specific inquires, we didn't lodge
02:34 14    with one with respect to each category.
02:34 15       Q.  (BY MR. BRUSTER)  Am I understanding that
02:35 16    you're -- you're not the person to ask about the
02:35 17    subsidiaries as it relates to topic number six?  Is that
02:35 18    your testimony?
02:35 19       A.  Yes.
02:35 20       Q.  Okay.  Is the same true for topic number four?
02:35 21       A.  Yes.
02:35 22       Q.  You said you made an inquiry and determined
02:35 23    that you -- and when I say you I mean HSBC North America
02:35 24    Holdings, Inc. -- did not transmit any images of
02:35 25    documents.  You made an inquiry and determined that; is

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

---

Page 138

02:35  1    that right?
02:35  2        A.  I made an inquiry into the processes or the --
02:35  3    what HSBC North America Holdings does and this is not
02:35  4    something that, as a holding company, we do.
02:35  5        Q.  Who did you ask?
02:35  6        A.  I consulted with the legal department on this.
02:35  7        Q.  The legal department?
02:35  8        A.  Yes.
02:35  9        Q.  Was there anyone, other than people in the
02:35 10    legal department, and other than your lawyers here, that
02:35 11    you consulted with in order to prepare for your
02:35 12    deposition?
02:35 13        A.  No, there's really not.
02:36 14        Q.  Not personally.  Did you have other people
02:36 15    consult others for you and report to you?
02:36 16        A.  Yes.
02:36 17        Q.  Okay.  Who did you have do that?
02:36 18        A.  I went through the topics and asked the legal
02:36 19    department to obtain information for me relative to the
02:36 20    topics, which I was not prepared to discuss, and they
02:36 21    provided the answers that I needed to come here today to
02:36 22    testify on behalf of HSBC North America Holdings.
02:36 23        Q.  Who, at the legal department, did you consult
02:36 24    with?
02:36 25        A.  My primary contact is Allison Shank.

---

Page 139

02:36  1        Q.  Allison Chang?
02:36  2        A.  Shank.
02:36  3        Q.  Shank.  Anyone else at the legal department
02:36  4    you contacted to get these answers?
02:36  5        A.  No.
02:36  6        Q.  No?
02:36  7        A.  No.
02:36  8        Q.  You said your primary contact.  Was there
02:36  9    anyone else that you spoke with?
02:37 10        A.  Her paralegal just told me that the documents
02:37 11    would be forthcoming, but I didn't ask her questions.
02:37 12        Q.  Did she give you documents?
02:37 13        A.  As I testified earlier, documents were given
02:37 14    to my secretary.  I don't know who brought them down.
02:37 15        Q.  Is Ms. Shank in the legal department of HSBC
02:37 16    Holdings North America, Inc. -- or excuse me -- HSBC
02:37 17    North America Holdings, Inc.?
02:37 18        A.  I'm not sure how the legal department is
02:37 19    organized from that standpoint.  I know that she works
02:37 20    on technology contracts.
02:37 21        Q.  She works where?
02:37 22        A.  On technology contracts for the company.
02:37 23        Q.  Where's her office?
02:37 24        A.  In Prospect Heights.
02:37 25        Q.  Which is the headquarter office of HSBC North

---

Page 140

02:37  1    America Holdings, Inc., correct?
02:37  2        A.  It is.
02:37  3        Q.  But you don't know who she works for?
02:37  4        A.  I don't know how the legal department is
02:37  5    organized in terms of business units or how they divide
02:38  6    the work up.
02:38  7        Q.  Let's talk about number nine, all agreements
02:38  8    entered into between Defendant and its subsidiaries or
02:38  9    affiliates authorizing the subsidiaries or affiliates
02:38 10    to -- who want to conduct business under the name of the
02:38 11    defendant.  You're the person with the most knowledge of
02:38 12    that topic to testify here today?
02:38 13        A.  No.
02:38 14        Q.  Oh, you're not?
02:38 15        A.  No.
02:38 16        Q.  I didn't get that from our list earlier.  I
02:38 17    only had 4, 15, 18 and 22.  Is this to be added to the
02:38 18    list of things that you're not the person the most
02:38 19    qualified to talk about?
02:38 20        A.  I have been and have asked the questions
02:39 21    necessary to answer the question -- to answer your
02:39 22    questions for HSBC North America Holdings, Inc., but
02:39 23    from a personal standpoint, having independent knowledge
02:39 24    of all these topics, no, I am not --
02:39 25        Q.  Tell me -- okay.

---

Page 141

02:39  1        A.  -- knowledgeable.
02:39  2        Q.  I'm with you.  Let's just do the best we can.
02:39  3    Tell me what you know about topic 9(a).
02:39  4            MR. LEONARD:  Objection to form.
02:39  5        Q.  (BY MR. BRUSTER)  You may answer.
02:39  6        A.  What I know about 9 is that HSBC North America
02:39  7    Holdings, Inc. has not entered into agreements as
02:39  8    described in A through E.
02:39  9        Q.  So there's no agreements that have been
02:39 10    entered into between HSBC North America Holdings, Inc.
02:39 11    and its subsidiaries authorizing the subsidiaries to do
02:39 12    anything listed in A through E.  That's your testimony.
02:40 13        A.  I'm not aware of any.
02:40 14        Q.  Earlier we looked at a website page that had a
02:40 15    copyright logo from HSBC North America, Inc.  Do you
02:40 16    recall that?
02:40 17        A.  I do.
02:40 18        Q.  Which, under (b), use trademarks, patents or
02:40 19    copyrights held by the Defendant.  Do you see that?
02:40 20        A.  HSBC North America, Inc. is not the same as
02:40 21    HSBC North America Holdings, Inc.
02:40 22        Q.  Does HSBC North America Holdings, Inc. own any
02:40 23    trademarks, patents or copyrights?
02:40 24        A.  No, I don't believe they do.
02:40 25        Q.  It doesn't.

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                CONFIDENTIAL
February 2, 2007FOR ATTORNEYS' EYES ONLY

---

Page 142

02:40  1      A. No.
02:40  2      Q. Has it applied for any trademarks or patents
02:40  3  or copyrights?
02:40  4      A. Not to my knowledge.
02:40  5      Q. Did you ask someone about that?
02:40  6      A. Did I ask someone if we had applied for them?
02:40  7  No, I did not.
02:41  8      Q. Do you know who Scott James Hardle (phonetic)
02:41  9  is?
02:41 10      A. No.
02:41 11      Q. Do you know whether HSBC North America
02:41 12  Holdings, Inc. is the assignee of any patents?
02:41 13      A. No, I don't know.
02:41 14      Q. Is it your testimony to the jury that HSBC
02:41 15  North America Holdings, Inc. has never licensed any
02:41 16  patents, trademarks or copyrights to any of its
02:41 17  subsidiaries?
02:41 18      A. That is my understanding.
02:42 19      Q. Is there a human resources executive that
02:42 20  works for HSBC North America Holdings, Inc.?
02:42 21      A. Yes, I believe there is.
02:42 22      Q. Does that office provide any downstream
02:42 23  support in the human resources area in the same way that
02:42 24  you do in the insurance area?
02:42 25              MR. LEONARD: Objection. Form.

---

Page 143

02:42  1      A. Not in the same way, no.
02:42  2      Q. (BY MR. BRUSTER) Does the human resources
02:42  3  office of HSBC North America Holdings, Inc. provide any
02:43  4  benefit or any service to any HSBC subsidiary?
02:43  5              MR. LEONARD: Objection. Form.
02:43  6      A. I am -- I am not sure that the human resources
02:43  7  areas that provide the benefits are part of HSBC North
02:43  8  America Holdings, Inc. I can't answer that. I don't
02:43  9  know.
02:43 10      Q. (BY MR. BRUSTER) So you're on topic 17 where
02:43 11  we have the structure and relationship of common
02:43 12  business departments between Defendant and any and all
02:43 13  subsidiaries including but not limited to human
02:43 14  resources. You don't have an understanding as to
02:43 15  whether or not the parent company's human resources
02:43 16  department provides benefit or service to the
02:43 17  subsidiaries?
02:43 18              MR. LEONARD: Objection. Form.
02:44 19      A. That -- that wasn't exactly the question you
02:44 20  asked earlier. You asked if they did it the same way
02:44 21  that the insurance department does it, and my answer to
02:44 22  that is no. There is an executive.
02:44 23      Q. (BY MR. BRUSTER) What is that person's name?
02:44 24      A. Steve Gonabi is the head of human resources
02:44 25  for HSBC North America Holdings, Inc., but I'm not

---

Page 144

02:44  1  certain that -- in fact, I don't believe that the people
02:44  2  that report to him are officers of HSBC North America
02:44  3  Holdings, Inc.
02:44  4      Q. You don't believe that the people that report
02:44  5  to him are employees of HSBC North America Holdings,
02:44  6  Inc.?
02:44  7      A. That's correct, I don't believe that they are.
02:44  8      Q. Which would mean the people that are reporting
02:44  9  to him are people that work for the subsidiaries?
02:45 10      A. I think technically, yes.
02:45 11      Q. So does the human resources department of HSBC
02:45 12  North America Holdings, Inc. work with the subsidiaries,
02:45 13  including HSBC Bank?
02:45 14      A. Well, each subsidiary has its own human
02:45 15  resources department and so services -- so they are
02:45 16  responsible for the day-to-day human resources function
02:45 17  of their subsidiaries.
02:45 18              There are a few people in Prospect
02:45 19  Heights in the human resources area, but I'm not sure --
02:45 20  I don't believe that they are officers or employees of
02:45 21  HSBC North America Holdings, Inc.
02:45 22      Q. They work for the subsidiaries.
02:45 23      A. Well, not directly, because they're also
02:45 24  not -- for instance, there would be people that were --
02:45 25  work for HBIO, also in HSBC Finance Corporation, Inc.,

---

Page 145

02:46  1  in terms of, you know, their official title or -- if
02:46  2  that's what you're asking me.
02:46  3      Q. I guess what I'm asking is, does the human
02:46  4  resources department of HSBC North America Holdings,
02:46  5  Inc. work with the subsidiaries, including HSBC Bank?
02:46  6      A. Well, and as I testified, there -- to my
02:46  7  knowledge, there's only one person who is technically an
02:46  8  employee of HSBC North America Holdings, Inc. and so I
02:46  9  am sure he has conversations with subsidiaries and, you
02:46 10  know, I don't know his day-to-day job duties.
02:46 11      Q. In the same way, you're the only person in the
02:46 12  insurance department of HSBC North America Holdings,
02:46 13  Inc., correct?
02:46 14      A. That's correct.
02:46 15      Q. But you have people from the subsidiaries,
02:47 16  including HSBC, reporting to you, right?
02:47 17      A. I do.
02:47 18      Q. Have you ever read any of the patents that are
02:47 19  involved in this litigation?
02:47 20      A. No.
02:47 21      Q. Never read them?
02:47 22      A. No.
02:47 23      Q. Have you ever skimmed over them?
02:47 24      A. No.
02:47 25      Q. Have you ever seen any of the patents that are

---

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax        E-mail: gretchenshore@gretchenshore.com

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

---

Page 146

02:47 1  involved in this litigation?
02:47 2      A.  No.
02:47 3      Q.  Do you know what it takes to infringe any of
02:47 4  the patents involved in this litigation?
02:47 5      A.  No.
02:47 6          (Exhibit Number 14 marked.)
02:47 7      Q.  (BY MR. BRUSTER) I'm going to show you what
02:48 8  we've marked as Exhibit 14 to your deposition, which I'm
02:48 9  sure you'll recognize as an affidavit that you signed in
02:48 10  support of HSBC North America Holdings, Inc.'s Motion to
02:48 11  Dismiss for Lack of Personal Jurisdiction.  Is that
02:48 12  correct?
02:48 13      A.  Yes.
02:48 14      Q.  Okay.  And I'll show you that's a three-page
02:48 15  document.  Is that your signature there on the last
02:48 16  page?
02:48 17      A.  It is.
02:48 18      Q.  And that's sworn and signed under oath by a
02:48 19  Notary, correct?
02:48 20      A.  Yes.
02:48 21      Q.  Okay.  Let me ask you about, for example,
02:48 22  topic 17 here.  HSBC North America Holdings, Inc. has
02:48 23  not authorized, participated in or, facilitated any
02:48 24  transactions occurring in whole or in part within the
02:48 25  state of Texas that infringe in whole or in part upon

---

Page 147

02:48 1  the '988, '137, '007 or '868 patents.  Did I read that
02:49 2  correctly?
02:49 3      A.  Yes.
02:49 4      Q.  About a minute ago you told the jury that you
02:49 5  have never read any of those patents and you don't know
02:49 6  what it takes to infringe those, right?
02:49 7      A.  That's correct.
02:49 8      Q.  Do you really feel comfortable giving sworn
02:49 9  testimony that HSBC North America Holdings, Inc. doesn't
02:49 10  do anything to infringe those patents if you don't even
02:49 11  know what it takes to infringe them?
02:49 12      A.  Yes.
02:49 13      Q.  You -- for example, we know that HSBC North
02:49 14  America Holdings, Inc. engages in activity, right?
02:49 15      A.  Yes.
02:49 16      Q.  I mean, you work for that company, correct?
02:49 17      A.  Yes.
02:49 18      Q.  And you're swearing and affirming that your
02:49 19  company doesn't engage in any infringing activities
02:49 20  without knowing what it takes to infringe the patent.
02:49 21  Does that make sense to you?
02:49 22      A.  Yes.
02:50 23      Q.  We know that HSBC North America Holdings, Inc.
02:50 24  has engaged in some activity in the state of Texas,
02:50 25  correct?

---

Page 148

02:50 1          MR. LEONARD:  Objection to form.
02:50 2      A.  I don't think we've established that, no.
02:50 3      Q.  (BY MR. BRUSTER) Okay.  Is that a true
02:50 4  statement, or not?  Has HSBC ever engaged -- let me ask
02:50 5  you this question.  Has HSBC ever engaged in any
02:50 6  activity -- back up.  Be precise.
02:50 7          Has HSBC North America Holdings, Inc.
02:50 8  ever engaged in any activity in the state of Texas?
02:50 9          MR. LEONARD:  Objection to form.
02:50 10      A.  The only activity I'm aware of -- and I would
02:50 11  not constitute it as a business activity -- is a
02:50 12  charitable contribution.
02:50 13      Q.  (BY MR. BRUSTER) Within the state of Texas.
02:50 14      A.  Yes.
02:51 15      Q.  Was that transaction done purposely by HSBC
02:51 16  North America Holdings, Inc.?
02:51 17      A.  To the best of my knowledge, yes.
02:51 18      Q.  Yes?
02:51 19      A.  Yes, I assume.  I don't -- I'm not aware of
02:51 20  why it wouldn't be, yes.
02:51 21      Q.  I mean, that was a purposeful act done by HSBC
02:51 22  North America Holdings, Inc. in the state of Texas,
02:51 23  right?
02:51 24      A.  To make the charitable contribution, yes.
02:51 25      Q.  Okay.  Let me show you statement number nine

---

Page 149

02:51 1  that you made in your affidavit that says, HSBC North
02:51 2  America Holdings, Inc. has not purposely done any act or
02:51 3  consummated any transaction within the state of Texas.
02:51 4  Do you read that?
02:51 5      A.  I do.
02:51 6      Q.  Okay.  This is a sworn document that you
02:51 7  signed off on last year and you've just, 30 seconds ago,
02:51 8  given sworn testimony to this judge and jury that HSBC
02:51 9  North America Holdings, Inc. has purposely done an act
02:51 10  within the state of Texas; isn't that true?
02:51 11      A.  That is true.
02:51 12      Q.  Are we to believe your previous testimony
02:52 13  under oath or this testimony under oath?
02:52 14          MR. LEONARD:  Objection to form.
02:52 15      A.  I was not aware of the charitable contribution
02:52 16  when I signed this document in May of 2006.
02:52 17      Q.  (BY MR. BRUSTER) How did you find out about
02:52 18  it?
02:52 19      A.  I learned about it through counsel.
02:52 20      Q.  I guess with a similar vein, you're not aware
02:52 21  the broad range of any other potential activities that
02:52 22  HSBC North America Holdings, Inc. might have done within
02:52 23  the state of Texas, are you?
02:52 24          MR. LEONARD:  Objection:  Form.
02:52 25      A.  When I inquired about the activities in

---

38 (Pages 146 to 149)

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                CONFIDENTIAL
February 2, 2007FOR ATTORNEYS' EYES ONLY

| | Page 150 |
|---|---|

02:52  1    preparation for the deposition, that was the only
02:52  2    activity I was informed of.
02:52  3        Q.  (BY MR. BRUSTER)  Are there any other portions
02:52  4    of your sworn testimony, either today or your sworn
02:52  5    testimony from this affidavit last year, that you
02:52  6    believe is improper or incorrect?
02:52  7            MR. LEONARD:  Objection:  Form.
02:52  8        A.  On number 18.
02:53  9        Q.  (BY MR. BRUSTER)  So number 18 is incorrect?
02:53  10       A.  No, it's correct, except that it should be
02:53  11   singular instead of plural.  HSBC North America
02:53  12   Holdings, Inc. only has one wholly owned subsidiary.
02:53  13       Q.  How come you didn't inquire about whether HSBC
02:53  14   North America Holdings, Inc. has purposely done any act
02:53  15   in the state of Texas before you gave this sworn
02:53  16   affidavit?
02:53  17           MR. LEONARD:  Objection to form.
02:53  18       A.  That was not my testimony.  My testimony was
02:53  19   that in May I was not aware of that contribution.  I
02:53  20   became aware of it after I signed this document.
02:53  21       Q.  (BY MR. BRUSTER)  Did you inquire as to
02:53  22   anybody within the HSBC organization about whether or
02:53  23   not HSBC had done any act within the state of Texas
02:53  24   before you signed this affidavit?
02:53  25       A.  I worked with the legal department on this --

| | Page 151 |
|---|---|

02:53  1    on the answers in this affidavit.
02:53  2        Q.  The same legal department whose lawyer wrote
02:54  3    the letter to the government about HSBC North America
02:54  4    Holdings, Inc. operating various subsidiaries?
02:54  5            MR. LEONARD:  Objection:  Form.
02:54  6        A.  Different lawyers.
02:54  7        Q.  (BY MR. BRUSTER)  Different lawyers in the
02:54  8    same legal department.
02:54  9            So knowing what we know, that HSBC North
02:54  10   America Holdings, Inc. has, in fact, purposely done an
02:54  11   act within the state of Texas, and knowing that you've
02:54  12   never read the patents and you don't know what it takes
02:54  13   to infringe them, do you still feel comfortable with
02:54  14   your statement here in paragraph 12, HSBC North America
02:54  15   Holdings, Inc. is not currently engaging in any
02:54  16   infringing activities within the state of Texas?
02:54  17       A.  Yes, I do.
02:54  18       Q.  Okay.  That's a statement that you made
02:54  19   without knowing what it takes to engage in infringing
02:54  20   activity; isn't that true?
02:55  21       A.  I -- my willingness to sign that was knowing
02:55  22   that HSBC North America Holdings, Inc. is not involved
02:55  23   in any operations or businesses in the state of Texas on
02:55  24   a direct basis.
02:55  25       Q.  Of course, I guess that depends on your

| | Page 152 |
|---|---|

02:55  1    definition of operate, right?
02:55  2        A.  When I signed this.
02:55  3            MR. LEONARD:  Objection:  Form.
02:55  4        Q.  (BY MR. BRUSTER)  I'm sorry?
02:55  5        A.  I said that was my definition when I signed
02:55  6    it.
02:55  7        Q.  All right.  Did you ask the legal department
02:55  8    to use your definition of operation or operate, as
02:55  9    opposed to their definition of operate, when you wrote
02:55  10   this affidavit?
02:55  11           MR. LEONARD:  Objection:  Form.
02:55  12       A.  I don't believe that we had that discussion.
02:55  13       Q.  (BY MR. BRUSTER)  Did you write this
02:55  14   affidavit, by the way?
02:55  15       A.  No.
02:55  16       Q.  Who wrote it?
02:55  17       A.  I don't know.
02:55  18       Q.  You don't know who wrote it?
02:55  19       A.  No.
02:55  20       Q.  Did you write the part here on the first page
02:55  21   that says, I'm dually qualified and authorized to make
02:55  22   this affidavit in all respects from my own personal
02:55  23   knowledge, right here?
02:56  24       A.  Well, I didn't write any of it, but I have --
02:56  25   I did work on it with the legal department.

| | Page 153 |
|---|---|

02:56  1        Q.  Who in the legal department did you work on it
02:56  2    with?
02:56  3        A.  Primarily with Allison Shank.
02:56  4        Q.  Anybody else?
02:56  5        A.  I don't know who she worked with or if there
02:56  6    was anyone else, but that's who I worked with.
02:56  7        Q.  And you didn't write any of this affidavit.
02:56  8    You just signed your name to it.
02:56  9        A.  I didn't just sign my name on it.  I did
02:56  10   review it and I did satisfy myself that the statements
02:56  11   being made were correct as to -- based on the
02:56  12   information I had at the time.
02:56  13       Q.  In other words, you adopted all the wording in
02:56  14   the affidavit.
02:56  15           MR. LEONARD:  Objection to form.
02:56  16       A.  Was that a question?
02:57  17       Q.  (BY MR. BRUSTER)  Is that true?
02:57  18           MR. LEONARD:  Same objection.
02:57  19       A.  Again, I didn't write it.
02:57  20       Q.  (BY MR. BRUSTER)  What else did you do to
02:57  21   prepare for your deposition today besides reading
02:57  22   through the deposition notice on the train this morning?
02:57  23       A.  I reviewed certain documents.  I had
02:57  24   discussions with counsel.
02:57  25       Q.  Don't tell me anything you talked about with

39 (Pages 150 to 153)

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman               CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

---

Page 154

02:57 1  your lawyers. When was the first time you met with your
02:57 2  counsel seated here today about this deposition?
02:57 3      A. I don't know exactly when that was.
02:57 4      Q. Within the last three weeks?
02:57 5      A. Somewhere within three to six weeks, I would
02:57 6  say.
02:57 7      Q. Where did you first meet with them? Over the
02:57 8  telephone or here in Illinois?
02:57 9      A. We met in person in Prospect Heights.
02:57 10     Q. In person in Prospect Heights.
02:58 11     A. Yes.
02:58 12     Q. Okay. Was that at the corporate headquarters
02:58 13 of HSBC North America Holdings, Inc., or some other
02:58 14 place in Prospect Heights?
02:58 15     A. No. It was at the headquarters.
02:58 16     Q. And who all attended that meeting?
02:58 17     A. I was there, Mr. Leonard was there, Nick was
02:58 18 there, and Ms. Shank.
02:58 19     Q. Anyone else?
02:58 20     A. I don't believe so.
02:58 21     Q. How -- how long was that meeting?
02:58 22     A. A few hours.
02:58 23     Q. What's the next thing you did to get ready for
02:58 24 your deposition today?
02:58 25     A. Reviewed documents.

Page 155

02:58 1      Q. When did you start doing that?
02:58 2      A. I started immediately after that first
02:58 3  meeting, reviewing some of the documents, and reviewed
02:58 4  them prior to coming here today.
02:58 5      Q. How many hours do you think total you've spent
02:58 6  reviewing documents in preparation for the deposition?
02:59 7      A. Probably ten.
02:59 8      Q. Did you have a meeting with counsel for HSBC
02:59 9  this week in preparation for your deposition?
02:59 10     A. I met with -- yes.
02:59 11     Q. I'm sorry?
02:59 12     A. Yes, I did.
02:59 13     Q. When was that?
02:59 14     A. We met yesterday.
02:59 15     Q. Where did you meet yesterday?
02:59 16     A. We met at the career development center in
02:59 17 Prospect Heights.
02:59 18     Q. And how long was that meeting?
02:59 19     A. I don't recall exactly, but a few hours.
02:59 20     Q. Have you had any other meetings with anyone
02:59 21 else in preparation for your deposition other than those
02:59 22 meetings?
02:59 23     A. No.
02:59 24     Q. Is the career development center something
02:59 25 inside the corporate headquarter building, or is that

Page 156

02:59 1  somewhere else?
02:59 2      A. No. It's a separate building.
02:59 3      Q. Is it an HSBC building?
02:59 4      A. Yes.
03:00 5      Q. What goes on at the career development center?
03:00 6  What is that for?
03:00 7      A. It's for training and meetings.
03:00 8      Q. Who owns that building? Do you know?
03:00 9      A. I really am not sure, no.
03:00 10     Q. Is there full-time staff at that building?
03:00 11     A. Yes.
03:00 12     Q. Who do those members or full-time staff, who
03:00 13 do they work for?
03:00 14     A. I don't know.
03:00 15     Q. You don't know? Who is trained there?
03:00 16     A. It's a -- it's a building that's available for
03:00 17 all the subsidiaries if they want to use it as a
03:00 18 training facility.
03:00 19     Q. Do people from HSBC Bank, that banking
03:00 20 subsidiary, come and do training at the career
03:00 21 development center?
03:00 22     A. I know that people from the bank have been at
03:00 23 that -- at that center. I don't know the purpose of
03:00 24 their -- of their being there.
03:00 25     Q. Is it connected to the corporate headquarters

Page 157

03:00 1  of HSBC North America Holdings, Inc.?
03:01 2      A. No.
03:01 3      Q. Is it on the same campus?
03:01 4      A. Yes.
03:01 5      Q. Is there a sign on the front of it or
03:01 6  anything?
03:01 7      A. Yes, I believe there is.
03:01 8      Q. What does that sign say?
03:01 9      A. I think it says career development center.
03:01 10     Q. Does it have the HSBC logo on it?
03:01 11     A. Don't know.
03:01 12     Q. Does HSBC Bank USA make any effort to separate
03:01 13 out -- I'm talking about in the public -- to separate
03:01 14 out -- separate itself away from any other of its parent
03:01 15 companies?
03:01 16         MR. LEONARD: Objection: Form.
03:01 17     Q. (BY MR. BRUSTER) You may answer.
03:01 18     A. Well, would you give me an example of what you
03:01 19 meant? I'm not sure what you're asking really.
03:01 20     Q. Sure. Are you aware of any representation by
03:01 21 HSBC Bank where it has made a representation to the
03:01 22 public that it is a separate, distinct legal entity from
03:02 23 other HSBC organizations?
03:02 24         MR. LEONARD: Objection: Form.
03:02 25     A. Well, you mean people and that kind of stuff,

40 (Pages 154 to 157)

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman            CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

Page 158

03:02  1   or are you talking about advertising? I don't know what
03:02  2   you're asking me.
03:02  3        Q.  (BY MR. BRUSTER)  Advertising.  Let's do
03:02  4   advertising.
03:02  5        A.  I believe that HSBC Bank does its own
03:02  6   advertising.  I believe that it does.
03:02  7        Q.  Are you aware of any distinctions drawn in
03:02  8   that advertising to distance itself from HSBC North
03:02  9   America Holdings, Inc., for example?
03:02  10          MR. LEONARD:  Objection:  Form.
03:02  11       A.  No, but I don't know -- I don't know -- I
03:02  12  mean, distance itself in what way?
03:02  13       Q.  (BY MR. BRUSTER)  Call attention to itself as
03:02  14  some group separate from HSBC North America Holdings,
03:02  15  Inc.
03:02  16       A.  Well, the advertising I've seen has been HSBC
03:02  17  Bank USA.
03:02  18       Q.  Have you seen any advertising where HSBC Bank
03:03  19  has sought to distance itself from the HSBC Group, PLC?
03:03  20          MR. LEONARD:  Objection:  Form.
03:03  21       A.  I guess I don't even know how it would do
03:03  22  that.  I'm not really understanding where you're going
03:03  23  with this.
03:03  24       Q.  (BY MR. BRUSTER)  I mean -- I guess what I'm
03:03  25  saying is, you're not -- you don't -- HSBC North America

Page 159

03:03  1   Holdings, Inc. doesn't strive to have a separate public
03:03  2   image of itself or any other HSBC banking subsidiary,
03:03  3   for that matter, separate and apart from HSBC Group,
03:03  4   PLC, does it?
03:03  5          MR. LEONARD:  Objection to form.
03:03  6       A.  I don't think it strives to have, you know,
03:03  7   any image that I'm aware of at all.
03:03  8       Q.  (BY MR. BRUSTER)  I mean, HSBC Bank is proud
03:03  9   to be affiliated with HSBC Group, PLC, isn't it?
03:03  10          MR. LEONARD:  Objection:  Form.
03:03  11      A.  I guess so.  I can't answer that.
03:03  12      Q.  (BY MR. BRUSTER)  Do you think that HSBC Bank
03:03  13  relies on the HSBC Group, PLC brand?
03:04  14          MR. LEONARD:  Objection:  Form.
03:04  15      A.  HSBC Group has been striving to reach a common
03:04  16  brand worldwide and so, yes, all the subsidiaries are
03:04  17  using the same brand, for the most part.
03:04  18      Q.  (BY MR. BRUSTER)  Did you do anything else to
03:04  19  prepare for your deposition today other than the
03:04  20  documents we've talked about and the meetings with your
03:04  21  lawyers?
03:04  22      A.  No.
03:04  23      Q.  Do you like your job?
03:04  24      A.  Yes, I do.
03:04  25      Q.  Want to keep it?

Page 160

03:05  1       A.  Yes.
03:05  2       Q.  Thanks for your time.
03:05  3          MR. BRUSTER:  I'll pass the witness.
03:05  4              EXAMINATION
03:05  5   BY MR. LEONARD:
03:05  6       Q.  Ms. Hickman, I have just a few questions.  I
03:05  7   know it's late, but more of a housekeeping matter.  I
03:05  8   want to go back to your testimony early this morning.
03:05  9          Did you mean to testify that Janet Burak
03:05  10  was on the board of directors of both HSBC North America
03:05  11  Holdings and HSBC Bank US?  I'm focusing on board of
03:05  12  directors.
03:05  13      A.  Yes.  No.  That's -- no.  I think you're
03:05  14  right.  I don't believe she is.
03:05  15      Q.  Okay.
03:05  16      A.  I apologize.
03:05  17      Q.  You also testified that HSBC Bank Holdings had
03:05  18  a subsidiary that you called HINO and you identified as
03:05  19  HSBC North America, Inc.  Do you recall that testimony?
03:05  20      A.  Yes, I do.
03:05  21          MR. LEONARD:  Counsel, what's the last
03:05  22  Exhibit Number?
03:06  23          MR. BRUSTER:  14.
03:06  24          (Exhibit Number 15 marked.)
03:06  25          MR. LEONARD:  It's my only copy so I want

Page 161

03:06  1   to show it to you.
03:06  2          MR. BRUSTER:  Okay.
03:06  3       Q.  (BY MR. LEONARD)  Ms. Hickman, I'm going to
03:06  4   hand you what's been marked as Exhibit 15 to your
03:06  5   deposition.  This is a document that we previously
03:06  6   furnished to the opposition in this case.  Does that
03:06  7   refresh your recollection on who HINO is?
03:06  8       A.  Yes.  I see that I was referring to the wrong
03:06  9   subsidiary but the right acronym.
03:06  10      Q.  Okay.  And refreshing your recollection, could
03:06  11  you tell the judge and the jury in this case who HINO
03:07  12  is?
03:07  13      A.  HSBC Investments North America, Inc.
03:07  14      Q.  Does that accurately reflect that HINO is the
03:07  15  direct subsidiary of HSBC North America Holdings?
03:07  16      A.  Yes.
03:07  17      Q.  And is that the other holding company that you
03:07  18  were referring to in your prior testimony rather than
03:07  19  HSBC North America, Inc.?
03:07  20      A.  Yes.
03:07  21      Q.  Okay.  Are you here to speak today on behalf
03:07  22  of HSBC North America, Inc.?
03:07  23      A.  North America Holdings, Inc.
03:07  24      Q.  Okay.  Your question earlier about
03:07  25  consolidated financials, are you able to confirm for the

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax     E-mail: gretchenshore@gretchenshore.com

fee6c41c-b962-439e-8599-e362d5a91e8a

Margo Hickman                    CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

---

Page 162

03:07 1   Court that HSBC North American Holdings, Inc. does, in
03:07 2   fact, prepare consolidated financial statements and tax
03:07 3   returns?
03:07 4        MR. BRUSTER: Objection: Leading.
03:07 5        A. I can confirm that for Court.
03:07 6        Q. (BY MR. LEONARD) Let me rephrase that.
03:07 7        Do you know that -- whether or not HSBC
03:08 8   North America Holdings prepares consolidated financial
03:08 9   statements and tax returns for itself and its
03:08 10  subsidiaries?
03:08 11       A. I do know that it does, yes.
03:08 12       Q. And did you identify, as an Exhibit, one of
03:08 13  those documents for counsel?
03:08 14       A. I believe I did, yes.
03:08 15       Q. At the time you signed the affidavit that
03:08 16  you've discussed here today, and today, for that matter,
03:08 17  did you then or do you now consider a charitable
03:08 18  contribution to be a business activity?
03:08 19       A. I do not.
03:08 20       MR. LEONARD: No further questions.
03:08 21       EXAMINATION
03:08 22  BY MR. BRUSTER:
03:08 23       Q. Ma'am, on Exhibit 14, which is still in front
03:08 24  of you on the screen there, your affidavit, there's no
03:08 25  reference to the word business, in terms of activity

---

Page 163

03:08 1   being conducted in the state of Texas, is there?
03:09 2        A. No.
03:09 3        Q. Okay. And you swore that that statement was
03:09 4   true at the time you signed this document. Today you've
03:09 5   told us that, in fact, that's is a false statement.
03:09 6        MR. LEONARD: Objection to form.
03:09 7        A. When I signed it, I signed it to the best of
03:09 8   my knowledge at the time.
03:09 9        Q. (BY MR. BRUSTER) And today you understand
03:09 10  it's false, right?
03:09 11       MR. LEONARD: Objection: Form.
03:09 12       A. Today I understand that there was a charitable
03:09 13  contribution made.
03:09 14       Q. (BY MR. BRUSTER) I'm sure you get asked this
03:09 15  often, but has anyone ever told you you look like Martha
03:09 16  Stewart?
03:09 17       A. Oh, my God, no. Jesus.
03:09 18       MR. BRUSTER: Pass the witness.
03:09 19       MR. LEONARD: Nothing further. Thank
03:09 20  you, Ms. Hickman.
03:09 21       THE VIDEOGRAPHER: We're off the record.
03:27 22       (Proceedings concluded 3:09 p.m.)
      23
      24
      25

---

Page 164

1         CHANGES AND CERTIFICATION
2    WITNESS NAME: MARGO HICKMAN
3    DATE OF PROCEEDING: FEBRUARY 2, 2007
4    PAGE  LINE  CORRECTION          REASON
5    _____
6    _____
7    _____
8    _____
9    _____
10   _____
11   _____
12   _____
13   _____
14   _____
15   _____
16   _____
17   _____
18   _____
19   _____
20   _____
21   _____
22   _____
23   _____
24   _____
25   _____

---

Page 165

1         I, MARGO HICKMAN, have read the foregoing
     deposition and hereby affix my signature that same is
2    true and correct, except as noted above.
                    _____
3                   MARGO HICKMAN
4
     THE STATE OF TEXAS   )
5    COUNTY OF _____)
6         Before me, _____, on this day
     personally appeared _____, known to me (or
7    proved to be on the oath of _____ or through
     description of identity card or other document) to be
8    the person whose name is subscribed to the foregoing
     instrument and acknowledged to me that he executed the
9    same for the purposes and consideration therein
     expressed.
10
          Given under my hand and seal of office this
11   _____ day of _____, A.D., 2007.
12                  _____
                    Notary Public in and for the
13                  State of _____
                    County of _____
14   My Commission Expires: _____
15
16
17
18
19
20
21
22
23
24
25

42 (Pages 162 to 165)

Margo Hickman                CONFIDENTIAL
February 2, 2007 FOR ATTORNEYS' EYES ONLY

Page 166

```
 1              C E R T I F I C A T E
 2   STATE OF TEXAS   )
 3   COUNTY OF DALLAS  )
 4        I, Lisa J. Gretarsson, Certified Shorthand
 5   Reporter, duly qualified in and for the state of Texas,
 6   do hereby certify that, pursuant to the agreement
 7   hereinbefore set forth, there came before me, MARGO
 8   HICKMAN, who was by me duly sworn to testify the truth
 9   the whole truth, and nothing but the truth of her
10   knowledge concerning the matters in controversy in this
11   case; and that she was thereupon carefully examined upon
12   her oath and her examination reduced to typewriting by
13   me or under my supervision; that the deposition is a
14   true record of the testimony given by the witness before
15   me pursuant to the agreement of the parties.
16        That the amount of time used by each party at the
17   deposition is as follows:
18        Anthony Bruster - (3:32)
19        Tim S. Leonard - (0:04)
20        Ross R. Barton - (0:00)
21        That pursuant to information given to the
22   deposition officer at the time said testimony was taken,
23   the following includes counsel for all parties of
24   record:
25
```

Page 167

```
 1   FOR THE PLAINTIFF:
 2     Anthony Bruster, Esq.
       R. Benjamin King, Esq.
 3   NIX PATTERSON & ROACH, L.L.P.
       2900 St. Michael Drive, Suite 500
 4     Texarkana, Texas 75503
         Telephone:  903-223-3999
 5       Facsimile:  902-223-8520
         E-mail:   akbruster@nixlawfirm.com
 6         benking@nixlawfirm.com
 7   FOR THE DEFENDANT, HSBC NORTH AMERICA HOLDINGS, INC./
     HSBC BANK USA:
 8
       Tim S. Leonard, Esq.
 9     Edward J. "Nick" Nicholas, Esq.
       BOUDREAUX, LEONARD, HAMMOND & CURCIO, P.C.
10     Two Houston Center
       909 Fannin, Suite 2350
11     Houston, Texas 77010
         Telephone:  713-757-0000
12       Facsimile:  713-757-0178
         E-mail:   tleonard@blhc-law.com
13         nnicholas@blhc-law.com
14   FOR THE DEFENDANT, UNION BANCAL CORP.
15     Ross R. Barton, Esq.
       PILLSBURY, WINTHROP, SHAW, PITTMAN, LLP
16     1650 Tysons Boulevard
       McLean, Virginia 22102
17       Telephone:  703-770-7900
         Facsimile:  703-770-7901
18       E-mail:   ross.barton@pillsburylaw.com
19        I further certify that I am neither attorney nor
20   counsel for nor related to or employed by any of the
21   parties to the action in which this deposition is taken,
22   and further that I am not a relative or employee of any
23   attorney or counsel employed by the parties hereto or
24   financially interested in the action.
25
```

Page 168

```
 1        In witness whereof, I have hereunto set my hand
 2   and affixed my seal this ___ day of _____, 2007.
 3
 4     LISA J. GRETARSSON, CSR No. 4486
       Expiration Date:  12-31-08
 5     Firm Registration No. 90
       208 N. Green Street, Ste. 201
 6     Longview, TX 75601
       903/758-2183 (telephone)
 7     903/758-4890 (fax)
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

43 (Pages 166 to 168)

fee6c41c-b962-439e-8599-e362d5a91e8a