IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **DATATREASURY CORPORATION** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | Civil Action No. 2:06-CV72DF |
| | § | |
| | § | |
| **WELLS FARGO & COMPANY, et al.** | § | |
| | § | |
| **Defendants.** | § | |

### HNAH'S REPLY TO DATATREASURY'S MOTION TO COMPEL

Comes now Defendant, HSBC North America Holdings Inc. ("HNAH"), subject to its Motion to Dismiss for Lack of Personal Jurisdiction under Rule 12(b)(2) ("Motion to Dismiss"), and serves this Reply to DataTreasury Corporation's ("DataTreasury") Motion to Compel Certain Documents Relating to HNAH's Jurisdictional Challenge (Docket No. 524) ("Motion to Compel"), showing as follows:

### I. DATATREASURY'S MOTION TO COMPEL SHOULD BE DENIED

1. DataTreasury's Motion to Compel should be denied because: (A) extensive jurisdictional discovery has already been completed, (B) the discovery conducted to date reveals that additional jurisdictional discovery is unnecessary and would prove futile, and (C) the documents that DataTreasury seek to compel are not related to the jurisdictional issue.

**(A)   Extensive Jurisdictional Discovery Has Already Been Completed**

2. HNAH has already responded to DataTreasury's Interrogatories, Requests for Admission, Requests for Production, and has produced a designated corporate representative for deposition, all of which related solely to the jurisdictional issues raised by HNAH's Motion to

Dismiss. Even after all of this discovery, DataTreasury's sole allegation of a contact, by HNAH, in Texas, is that HNAH made a charitable donation to a Texas non-profit agency.[1] Furthermore, the discovery conducted to date reveals that additional jurisdictional discovery is unnecessary and would prove futile.

**(B)   The Discovery Conduced to Date Reveals That Additional Jurisdictional Discovery Is Unnecessary and Would Prove Futile**

3.   The results of the discovery conducted to date reveal: (1) there are three intervening companies between the two HSBC related named defendants - HNAH and HSBC Bank USA, Inc. ("**HBUS**"); (2) HNAH does not engage in activities that would make it subject to this Court's jurisdiction; and (3) HANH and HBUS share a typical parent/subsidiary relationship which will not support a finding that HNAH is subject to this Court's jurisdiction.

(1)   There are Three Intervening Companies Between HNAH and HBUS

4.   Although not revealed in DataTreasury's Motion to Compel, HBUS is HNAH's fourth-tier subsidiary, in that:

(a)   **HNAH** is the parent of;
(b)   HSBC Investments (North America) Inc. ("**HINO**"), which is the parent of:
(c)   HSBC North America Inc. ("**HNAI**"), which is the parent of:
(d)   HSBC USA, Inc. ("**HUSI**"), which is the parent of:
(e)   **HBUS**.[2]

---

[1]   However, charitable contributions are not relevant for determining jurisdiction. *See, Steego v. Ravenal*, 830 F. Supp. 42, 51 (D. Mass 1993) and *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 812-814 (SDNY 2005).

[2]   *Please see* the transcript from the February 2, 2007 deposition of HNAH's designated corporate representative, Ms. Margo Hickman, attached hereto and fully incorporated herein as Exhibit 1, page 161, lines 3-20; and the corporate organizational chart introduced as Hickman Deposition Exhibit 15, attached hereto and fully incorporated herein as Exhibit 2.

> (2) **HNAH Does Not Engage in Activities That Would Make it Subject to this Court's Jurisdiction**

5. HNAH's Motion to Dismiss was originally supported by the Affidavit of Ms. Margo Hickman.[3] Subsequently, Ms. Hickman testified as HNAH's designated corporate representative in regard to the jurisdictional issues. At that deposition, Ms. Hickman reaffirmed the statements in her Affidavit when she testified:

> (a) As a holding company, HNAH does not do business; other than "it owns the stock of the company directly beneath it, which owns the stock of the company directly beneath it...";
>
> (b) "[T]he operations of the subsidiaries are handled at the subsidiary level. HNAH does not control the subsidiary's day-to-day operations.";
>
> (c) She has personal knowledge that HNAH "does not do any transmission of images or documents to other locations in the state of Texas";
>
> (d) She has this knowledge because she "made an inquiry into the processes or the - what HSBC North America Holdings does and this is not something that, as a holding company, we do.";
>
> (e) She was willing to sign the Affidavit without reading the patents because she knew that HNAH "is not involved in any operations or business in the state of Texas on a direct basis."; and that,
>
> (f) She worked on her Affidavit " with the legal department", including in-house counsel Ms. Allison Shank, and that she "didn't just sign my name on it. I did review it and I did satisfy myself that the statements being made were correct as to -- based on the information I had at the time." [4]

---

[3]    *Please see* the Affidavit introduced as Hickman Deposition Exhibit 14, and attached hereto and fully incorporated herein as Exhibit 3; and Exhibit 1, page 146, lines 7-20.

[4]    *Please see* Exhibit 1: (a) page 46, lines 8-11; page 161, lines 14-20; page 61, lines 8-16); (b) page 91, line 25 - page 92, line 4; *see also*, page 58, lines 13-20; page 65, lines 5-9; page 68, lines 10- 25; page 72, lines 5-14; (c) page 136, lines 13-20 ; (d) page 137, line 22 - page 138, line 4; (e) page 151, lines 18-24; and (f) page 152, line 20 - page 153, line 12.

6. In addition to Ms. Hickman's testimony, HNAH's responses to DataTreasury's Interrogatories, Requests for Admission and Request for Production confirm, among other things, that:

(a) HNAH is not a resident of the State of Texas, but instead is a Delaware corporation whose principal place of business is located in Prospect Heights, Illinois;

(b) HNAH is a holding company whose business consists of owning stock in HINO, and that HBUS is HNAH's fourth-tier indirect wholly owned subsidiary;

(c) The subsidiary's operations are handled at the subsidiary level and HNAH does not control the subsidiary's day-to-day operations;

(d) HNAH does not engage in, or conduct, any business within the State of Texas, and has no property, business records, bank accounts, telephone numbers, or officers or directors residing or meeting, within the State of Texas;

(e) HNAH has not made, used, sold, offered to sell, and/or imported, directly, contributorily, and/or by inducement, any infringing products or services within the State of Texas; and,

(f) HNAH is not currently engaging in any infringing activities within the State of Texas.[5]

(3) HANH and HBUS Share a Typical Parent/Subsidiary Relationship

7. The Texas Supreme Court's recent decisions in *Commonwealth General Corp. v. York*, 177 S.W.3d 923, 925 (Tex. 2005) and *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d

---

[5] *Please see* HNAH's response to DataTreasury's: (a) Requests for Production No. 1, 2 and 8; (b) Interrogatory No. 5 and 12-13, Request for Admission No. 1-4 and 6-11, and Request for Production No. 2 and 8; (c) Interrogatory No. 5, 12-13 and 16-17, Request for Admission No. 1-4 and 14-15 and Request for Production No. 3, 8 and 17 and 21; (d) Interrogatory No. 8-10 and 18-19, Request for Admission No. 12-13 and Request for Production No. 5, 9-11, 14-16, 18-20 and 22-24; (e) Interrogatory No. 6 and 7 and Request for Production No. 6 and 7; and (f) Interrogatory No. 6 and 7 and Request for Production No. 6 and 7.

789, 798 (Tex. 2002) make it clear that a typical parent/subsidiary relationship will not support the exercise of personal jurisdiction over a nonresident defendant because: (a) "separate corporations are *presumed* to be distinct entities", (b) "[s]tock ownership and the related right of control that stock ownership gives to stockholders are insufficient to destroy the distinctness of corporate entities for jurisdictional purposes", and (c) "the parent must be shown to control the internal business operations and affairs of the subsidiary to the extent that the two entities effectively cease to be separate." *Commonwealth General*, 177 S.W.3d, at 925 (emphasis added), *citing, BMC Software* and *Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d 571, 573 (Tex. 1975).

       8.     Here, the discovery to date reveals that HNAH and HBUS only share a typical parent/subsidiary relationship in that, besides having some common stock ownership, some common officers and directors, and consolidated tax returns:

       (a)     HNAH and HBUS do not have common business departments. *For example*, HBUS has its own Marketing, Accounting and Human Resources Departments;

       (b)     HNAH does not provide financial support to HBUS;

       (c)     HNAH did not cause HBUS to be incorporated.;

       (d)     HBUS operates with adequate capital;

       (e)     HNAH does not pay HBUS' salaries and other expenses;

       (f)     HBUS has extensive business from persons other than HNAH;

       (g)     HNAH leases its own property and HBUS owns or leases its own property;

       (h)     HNAH is not involved in, and does not control, HBUS' daily operations; and,

    (i)    HNAH, HINO, HNAI, HUSI and HBUS observe the basic corporate formalities.[6]

9.    Accordingly, the discovery to date reveals that further discovery is unnecessary and would prove futile because HNAH does not engage in activities that would make it subject to this Court's jurisdiction, and because HNAH and HBUS share a typical parent/subsidiary relationship which will not support a finding that HNAH is subject to this Court's jurisdiction.

**(C)    The Documents That DataTreasury Seek To Compel Are Not Related to the Jurisdictional Issue**

10.    DataTreasury's Motion to Compel seeks documents that are not related to the jurisdictional issue. Jurisdiction cannot be imposed on a parent simply because its subsidiary resides in the forum state. *See, Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159-60 (5th cir. 1983) and *Colida v. LLG Electronics, Inc.*, 77 Fed.Appx. 523, 526 (Fed. Cir. 2003). Moreover, jurisdiction cannot be imposed simply because HNAH received a shareholder's dividend. Accordingly, the only documents that are relevant to the issue in dispute relate to HNAH's, and only HNAH's, presence or activity in Texas.

---

[6]    *Please see*: (a) Exhibit 1, page 43, lines 14-25, page 60, lines 7-12; page 144, lines 11-17 and page 158, lines 3-6); (b) the FFIEC's Uniform Bank Performance Report, attached hereto and fully incorporated herein as Exhibit 4, page 3; (c) HUSI's March 23, 2004 8-K attached hereto and fully incorporated herein as Exhibit 5, page 3; (d) Exhibit 4, pages 2-3; (e) Exhibit 1, page 21, lines 4-24 and page 18, line 22 - page 19, line 4; (f) Exhibit 4 generally. Moreover, Even prior to HNAH's incorporation, HSBC Bank USA - a New York state chartered bank (n/k/a HBUS), had more than 400 branches in New York state alone. Exhibit 5, pages 3-4; (g) Exhibit 1, page 17, lines 1-6 and page 20, lines 3-10; (h) Exhibit 1, page 58, lines 13-20; page 65, lines 5-9; and page 68, lines 10- 25; page 72, lines 5-14; and page 91, line 25 - page 92, line 4; and (i) the Corporate Profiles attached hereto and fully incorporated herein as Exhibits 6-9.

11.     To the extent that HNAH has documents responsive to DataTreasury's relevant jurisdictional Requests for Production, those documents have already been produced.[7] Despite HNAH's full production, DataTreasury's Motion to Compel, paragraphs II.(1)-(6), now seeks to compel production of documents that are not relevant to the question of whether HNAH is subject to this Court's jurisdiction:

(a)    <u>In regards to paragraph II(1)</u>, the insurance policies are not relevant because: (a) HNAH's participation in the negotiation and purchase of the policies did not occur in Texas, (b) HNAH does not own real property in Texas, and (c) HNAH does not conduct any business activity in Texas.  However, Ms. Hickman testified, and we so stipulate, that the policies afford coverage to HNAH equally throughout the United States, including Texas.[8]

(b)    <u>In regards to paragraph II.(2)</u>, the presentations and related documents are not relevant because no presentation was made to HNAH's officers and directors in Texas.  Instead, any and all presentations occurred in California, Florida, Illinois or New York.[9]

(c)    <u>In regards to paragraph II.(3)</u>, the documents are not relevant because all dividends received by HNAH were received in Prospect Heights, Illinois from HNAH's direct subsidiary HINO.  HINO is a Delaware corporation that also has its principal place of business in

---

[7] *Please see* the February 14, 2007 letter from HNAH's counsel, Mr. Tim S. Leonard, to DataTreasury's counsel, Mr. Anthony K. Bruster, attached hereto and fully incorporated herein as Exhibit 10, page 3.

[8] *Please see* Exhibit 1, page 10, line 21 - page 11, line 3; page 15, lines 14-17; page 17, line 14 - page 18, line 3; page 18, lines 7-11; page 20, lines 15-25; page 55, lines 8-14; and page 97, lines 14-19.

[9] *Please see* the Board meeting records previously produced as HNAH-JURIS-0068 through 0070 and attached hereto and fully incorporated herein as Exhibit 11.

Prospect Heights, Illinois, and HINO does not own any real property in, or conduct any business activity in, Texas. Furthermore, because HBUS is a fourth-tier subsidiary, among approximately 300 other holding or operating subsidiaries, it would be impossible to trace any portion of a dividend received by HNAH from HINO to any business activity in Texas, even if that would be relevant to jurisdiction, which it is not. *Commonwealth General*, 177 S.W.3d, at 925, *citing, BMC Software* and *Gentry*.

(d)     <u>In regards to paragraph II.(4)</u>, the documents are not relevant because there are no communications within or toward Texas between the officers and directors of HNAH and the officers and directors of HBUS. To the extent that such communications do exist, those communications would be between Prospect Heights, Illinois and Buffalo or New York, New York. Moreover, if this category includes documents presented at board of directors meetings, then it is possible that such communications would also be within or toward California or Florida, but there are none within or toward Texas.[10]

(e)     <u>In regards to paragraph II.(5)</u>, the documents are not relevant because there are no communications within or directed toward Texas between the officers, directors and employees of HNAH and the officers, directors or employees of HBUS. To the extent that such communications do exist, those communications would be between Prospect Heights, Illinois and Buffalo or New York, New York. Similarly, the documents related to any meetings between officers, directors or employees of HNAH and officers, directors or employees of HBUS are not relevant

---

[10]     *Id.*

because there were no meetings inside Texas. All such meetings took place in California, Florida, Illinois or New York.[11]

(f) <u>In regards to paragraph II.(6)</u>, the minutes and other documents are not relevant because no meeting was held in Texas. Instead, all such meetings occurred in California, Florida, Illinois or New York.[12]

12. Accordingly, none of the additional documents which DataTreasury seeks to compel are relevant to the question of whether HNAH is subject to this Court's jurisdiction.

## II. DataTreasury's Motion to Compel Should Be Denied

13. DataTreasury's Motion to Compel should be denied in its entirety because: (A) extensive jurisdictional discovery has already been completed, (B) the discovery conducted to date reveals that additional jurisdictional discovery is unnecessary and would prove futile, and (C) the documents that DataTreasury seek are not related to the jurisdictional issue.

Respectfully submitted,

BOUDREAUX, LEONARD, HAMMOND & CURCIO, P.C.

By: /s/
Glen M. Boudreaux
State Bar No. 02696500
**Lead Attorney for HSBC North America Holdings, Inc. and HSBC Bank USA, N.A.**
Two Houston Center
909 Fannin, Suite 2350
Houston, Texas 77010
Telephone: (713) 757-0000
Telefax: (713) 757-0178
E-mail: gboudreaux@blhc-law.com

---

[11] *Id.*

[12] *Id.*

**Of Counsel**:

Boudreaux, Leonard, Hammond & Curcio, P.C.
Tim S. Leonard
State Bar No. 12211200
Edward J. (Nick) Nicholas
State Bar No. 14991350
909 Fannin, Suite 2350
Houston, Texas 77010
Tel. (713) 757-0000
Fax (713) 757-0178
Email: tleonard@blhc-law.com
 enicholas@blhc-law.com

WilmerHale
Irah H. Donner
Amr O. Aly
399 Park Avenue
New York, N.Y. 10022
Tel. (212) 230-8887
Fax (212) 230-8888
Email: irah.donner@wilmerhale.com
 amr.aly@wilmerhale.com

Locke Liddell & Sapp LLP
Roy W. Hardin
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776
Tel. (214) 740-8556
Fax (214) 740-8800
Email: rhardin@lockeliddell.com

Law Offices of Richard Grainger
Richard Grainger
118 West Houston Street
Tyler, Texas 75710
Tel. (903) 595-3514
Fax (903) 595-5360
Email: graingerpc@aol.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing documents was served via electronic mail on the 23rd day of February, 2007.

By: ⎯⎯⎯⎯⎯⎯/s/⎯⎯⎯⎯⎯⎯
Glen M. Boudreaux