UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| DATATREASURY CORPORATION, § | |
| § | |
| Plaintiff, § | |
| § | CIVIL ACTION NO. 2:06-CV-72-DF |
| v. § | |
| § | JURY TRIAL DEMANDED |
| WELLS FARGO & COMPANY, et al. § | |
| § | |
| Defendants. § | |

**FIRST CITIZENS BANCSHARES, INC.'S REPLY TO PLAINTIFF'S AMENDED RESPONSE TO DEFENDANT FIRST CITIZENS BANCSHARES, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

First Citizens BancShares, Inc. ("BancShares") submits its reply to DataTreasury Corporation's Amended Response to Defendant First Citizens BancShares, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction ("Amended Response").

In its Amended Response, DataTreasury fails to establish any facts or legal theories that warrant asserting jurisdiction over BancShares. Relying solely on specific jurisdiction, DataTreasury presents no evidence that BancShares engaged in any activity in Texas from which DataTreasury's claims arise. This failure is fatal to DataTreasury's jurisdictional argument. DataTreasury also relies on the doctrine of alter ego in an attempt to attribute the conduct of BancShares' subsidiaries to BancShares. But it falls woefully short of overcoming the heavy presumption towards upholding the corporate form. DataTreasury is left arguing that BancShares waived its jurisdictional defense by signing a Stipulation that led this Court to stay the lawsuit as to the Ballard Patents. This waiver argument, however, is factually and legally baseless. In the end, DataTreasury's effort to hale BancShares into this Court fails.

1

Dockets.Justia.com

I.   **BancShares is not subject to specific jurisdiction in Texas.**[1]

A.   **BancShares has negated all jurisdictional grounds.**

Contrary to DataTreasury's assertion, BancShares has negated the four general grounds on which DataTreasury bases its jurisdictional argument. DataTreasury generally contends that specific jurisdiction exists because Bancshares has provided or sold accused services directly or indirectly in Texas. *See* Amended Response at 3 (summarizing the four alleged grounds for jurisdiction). The declaration that BancShares filed with its Motion to Dismiss unambiguously states that BancShares "has not and does not, on behalf of itself, its subsidiaries, or any other persons or entities, offer for sale, sell, advertise or provide any document, receipt, or check imaging or processing services to any customers in the state of Texas or elsewhere." *See* Motion to Dismiss at Ex. A, ¶ 3. Given that BancShares offers no services or products in Texas, BancShares cannot be engaging in any allegedly-infringing activity within the State, which necessarily defeats a claim of specific jurisdiction. *See 3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1380 (Fed. Cir. 1998) (noting that the jurisdictional inquiry ends in a case where the defendant directs no allegedly infringing activity toward the forum jurisdiction).

DataTreasury in its original Response wrongfully argued that BancShares' Motion to Dismiss is "devoid of discussion about [BancShares'] relationship with SVPCo/The Clearing House," *Response* at 4, which is one of DataTreasury's jurisdictional grounds. But Mr. Gray's declaration filed with the Motion to Dismiss negated any possible allegation of infringing activities in Texas that relate to the check imaging or processing products and services of *any* third party, which would include SVPCo or CHPCo. In any event, BancShares' supplemental declaration filed with its original Reply (Docket No. 167 (July 7, 2006)), and resubmitted with

---

[1] DataTreasury in its Amended Response asserts only specific jurisdiction over BancShares. *See* Amended Response at 2. By omission, DataTreasury concedes that this Court lacks general jurisdiction over BancShares.

2

this brief, reinforces Mr. Gray's first declaration by specifically noting that BancShares has engaged in no activity involving SVPCo or CHPCo. *See* Ex. A, Supplemental Declaration of John Gray in Support of Defendant First Citizens BancShares, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction ("Supp. Dec.") at ¶¶ 4, 5.

DataTreasury's attempt to challenge Mr. Gray's declarations do not controvert his sworn statements. DataTreasury argues that the Court should disregard Mr. Gray's first declaration because he did not type the document, Amended Response at 4-5, and his second declaration because it was filed with BancShares' Reply. Amended Response at 4. Not surprisingly, DataTreasury provides no authority for these novel propositions. No authority holds that a declaration warrants less weight because the declarant did not type the document. And DataTreasury ignores the fact that Mr. Gray testified in his deposition that he reviewed the first declaration before signing it and participated in its editing. *See* Amended Response at Ex. 4 (Gray Dep.) at 57:3-7, 112:22-113:1. Similarly, no court has suggested that a Court should ignore declarations filed with reply briefs. In fact, this Court's local rules expressly allow parties to submit supporting evidence with reply briefs. *See* L.R. 7(a)(2) (noting that the page limit for a reply brief does not include the length of any attached exhibits). DataTreasury also had the opportunity, but chose not to question Mr. Gray about his second declaration in his deposition.

DataTreasury also unsuccessfully challenges Mr. Gray's first declaration as inconsistent with BancShares' public filings. *See* Amended Response at 5-9. In making this argument, DataTreasury mischaracterizes those public filings and presents statements out of context to indicate erroneously that they present information solely about BancShares. In actuality, the public filings expressly state that they present consolidated information, which "is a common business practice, which the [IRS], the SEC, and generally accepted accounting principles

recommend." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 799-800 (Tex. 2002). For example, DataTreasury cites to deposition testimony regarding a BancShares 10-Q that states BancShares and its subsidiaries invest in furniture and equipment. Amended Response at 6 (citing Ex. 4 (Gray Dep.) at 179:1 - 184:23). DataTreasury incorrectly characterizes the statement as evidencing conduct by BancShares in Texas, even though the statement states that it refers to "BancShares and its subsidiaries." Amended Response at Ex. 4 (Gray Dep.) at 181:1-12 (quoting 10-Q in the question). The sentence in no manner contradicts Mr. Gray's statement that BancShares engages in no activity in Texas. In fact, Mr. Gray's deposition testimony is wholly consistent with his two declarations. DataTreasury has failed to demonstrate any inaccuracy in those declarations or any inconsistency between them and Mr. Gray's testimony.[2]

**B.    DataTreasury relies on irrelevant alleged contacts with Texas.**

By relying solely on the doctrine of specific jurisdiction, DataTreasury must show that its claims "result[] from alleged injuries that arise out of or relate to" BancShares' alleged contacts with Texas. *See Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995) (citation omitted). This principle is critical because the alleged contacts with Texas on which DataTreasury relies have nothing to do with the banking services that DataTreasury alleges infringe its patents. These alleged contacts include:

- BancShares sending a check to a Texas address for KPMG services provided solely in North Carolina. Amended Response at 5; *see also id.* at Ex. 4 (Gray Dep.) at 201:18-202:12 (explaining that no contact with KPMG occurred in Texas).

- BancShares paying a photograph company in Texas for photography services. Amended Response at 5.

- BancShares "investing in branches and furniture" on a consolidated basis with its subsidiaries. Amended Response at 6.

---

[2] While DataTreasury also states that Mr. Gray was "confused" about his first declaration, Amended Response at 5, the testimony cited for this argument affords no such construction. *Id.* at Ex. 4 (Gray Dep.) at 56:11-57:23.

4

- BancShares signing an insurance policy that covers "First Citizens BancShares, Inc. and its direct and indirect subsidiaries." Amended Response at 6; *see also* Amended Response at Ex. 4 (Gray Dep.) at 32:14-24) (noting that the named insured is "First Citizens BancShares, Inc. and its direct and indirect subsidiaries").

- First Citizens Bank & Trust Company offering its clients an investment that involves a note held by BancShares. Amended Response at 5; *see also* Amended Response at Ex. 4 (Gray Dep.) at 152:11-153:2 (explaining the Master Note program).

Whether or not these activities constitute contacts with Texas, it is undisputed that DataTreasury alleges no cause of action that arises from or relates to these alleged contacts. As a result, these activities are irrelevant as to whether specific jurisdiction exists.[3]

### C. DataTreasury's reliance on the alter ego doctrine fails.

DataTreasury in its Amended Response also asks this Court to cast aside the corporate form and attribute to BancShares the activity of its subsidiaries in Texas. But DataTreasury in its Amended Complaint pleads absolutely no allegations of alter ego. Plaintiffs must plead all alleged bases for personal jurisdiction. *See VBFSB Holding Corp. v. Fidelity & Deposit Co.*, No. CA3:95-CV-00693-BC, 1997 WL 527308, *10 (N.D. Tex. Aug. 19, 1997) (the plaintiff failed to satisfy the pleading requirements of FRCP 8(a); "Texas law requires that a plaintiff suing under an alter ego theory must separately plead each basis for disregarding the corporate fiction").

Even if DataTreasury had pled alter ego, it has failed to present any evidence supporting this theory.[4] The Federal Circuit, Fifth Circuit, and the Supreme Court of Texas have advised courts to recognize and uphold the corporate form, and to cast it aside only in unusual

---

[3] DataTreasury's assertions also are factually unsupported. For example, Mr. Gray confirmed that BancShares did not invest in branches or furniture, Amended Response at Ex. 4 (Gray Dep.) at 180:1-4, and has never offered or sold to any customer in Texas an interest in the Master Notes. *Id.* at 157:10-24, 159:17-24.

[4] DataTreasury has filed a Motion to Compel claiming that it requires still more discovery in its futile effort to find evidence supporting its jurisdictional claim. BancShares has presented a corporate representative for deposition, produced documents, and responded to DataTreasury's interrogatories and requests for admissions. BancShares strongly disagrees that any additional discovery is required, and will file its response to the Motion to Compel within the time allotted by this Court's local rules.

5

circumstances:[5]

> **Federal Circuit:** *3D Systems, Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1380-81 (Fed. Cir. 1998) (citations omitted).
>
>> We have stated that the corporate form is not to be lightly cast aside. . . . "The court . . . must 'start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception' ... [or] unless there is at least 'specific intent to escape liability for a specific tort ....'"
>
> **Fifth Circuit:** *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 593-594 (5th Cir. 1999) (quoting *Roy E. Thomas Construction Co. v. Arbs*, 692 S.W.2d 926, 938 (Tex. App. -- Fort Worth 1985, writ ref'd n.r.e.)).
>
>> It is not possible to more emphatically express the necessity for a plaintiff to prove that he will suffer some type of harm or injustice by adhering to the corporate fiction before the corporate veil will be pierced.
>
> **Supreme Court of Texas:** *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 798-799 (Tex. 2002).
>
>> Texas law presumes that two separate corporations are indeed distinct entities. . . . To "fuse" the parent company and its subsidiary for jurisdictional purposes, the plaintiffs must prove the parent controls the internal business operations and affairs of the subsidiary. [citation omitted] But the degree of control the parent exercises must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice.

DataTreasury fails to identify any unusual circumstances that justify disregarding the corporate form of BancShares and its subsidiaries. DataTreasury relies on the fact that BancShares and its subsidiaries have overlapping boards and officers, that BancShares owns its direct subsidiaries, that BancShares files consolidated information in its public filings, that BancShares has provided capital infusions to one of its subsidiaries, and that some individuals perform services for BancShares and its subsidiaries. *See* Amended Response at 9-11. But case law, including one

---

[5] Federal Circuit law governs personal jurisdiction in patent cases. *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt*, 148 F.3d 1355, 1358 (Fed. Cir. 1998). But when the plaintiff relies on the theory of alter ego, the law of the regional circuit applies. *Insituform Technologies, Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1380-1381 (Fed. Cir. 2004). In cases arising out of Texas, the Fifth Circuit applies Texas law. *See Gardemal*, 186 F.3d at 593.

6

on which DataTreasury relies, demonstrates that these facts, "reveal[] nothing more than a typical corporate relationship between a parent and subsidiary" that cannot justify piercing the corporate veil. *Gardemal*, 186 F.3d at 594 (cited by DataTreasury, Amended Response at 13); *see also Commonwealth General Corp. v. York*, 177 S.W.3d 923, 925 (Tex. 2005) (finding that a parent company's complete ownership of its subsidiary did not warrant piercing the corporate veil); *BMC Software Belgium, N.V.*, 83 S.W.3d at 789 (concluding that a finding of alter ego was unwarranted, despite evidence that the parent used consolidated statements, offered a stock option plan to its subsidiaries' employees, and had its employees at times in its subsidiaries' offices). DataTreasury also fails to contest the statements in BancShares' first declaration demonstrating that BancShares and its subsidiaries maintain books and bank accounts separate from one another, and that all of BancShares' operating subsidiaries operate with sufficient capital to conduct day-to-day operations. *See* Motion to Dismiss at Ex. A, ¶ 3.

One document on which DataTreasury heavily relies actually confirms that BancShares properly maintains corporate formalities. DataTreasury argues that BancShares' 10-K for 2005 shows that BancShares operates branches in Texas. But the very sentence which DataTreasury quotes expressly notes that "*[t]through its subsidiary financial institutions*, BancShares operated branch offices at 392 locations" in various states, including Texas. Amended Response at Ex. 1, p. 6 (emphasis added). This statement confirms that BancShares' subsidiaries - and not BancShares - operate branch offices. In addition, the same 10-K warns that investing in BancShares' stock will involve some level of risk because *its banking subsidiaries, not BancShares, engage in banking activities*: "To the extent we are dependent on our banking subsidiaries' lending and deposit gathering functions to generate income, shareholders are also exposed to [risks]." Amended Response at Ex. 1, p. 6.

7

DataTreasury also makes no attempt to show that BancShares has used the corporate form to escape liability for a specific tort. This omission alone defeats DataTreasury's reliance on the alter ego theory. *Gardemal*, 186 F.3d at 593-594 ("It is not possible to more emphatically express the necessity for a plaintiff to prove that he will suffer some type of harm or injustice by adhering to the corporate fiction before the corporate veil will be pierced." (quotation omitted)).

### D. This Court's exertion of personal jurisdiction over SVPCo does not render BancShares subject to personal jurisdiction.

DataTreasury argues, incorrectly, that the Court's exertion of personal jurisdiction over SVPCo creates jurisdiction over BancShares. But the Court's decision regarding SVPCo is inapposite. The Court determined that "SVPCo potentially performs infringing activities with J.P. Morgan Chase Bank, who is a defendant currently subject to personal jurisdiction and venue in this district . . . ." *Opinion* at 11. The Court also stated that "SVPCo may have a commercial relationship with the Federal Reserve Bank that includes potentially infringing activities . . . ." *Id.* at 12. Based on these findings, the Court found sufficient evidence that SVPCo purposefully directed its activities at Texas and, thus, that the Court had specific jurisdiction over SVPCo.

In stark contrast, BancShares does not perform any allegedly infringing activities with any third party, be it an operating bank, SVPCo itself, or the Federal Reserve Bank. Motion to Dismiss at Ex. A, ¶ 4. Unlike SVPCo, BancShares is a holding company that simply holds stock in other companies. *Id.* ¶ 3. And unlike SVPCo, it does not own or operate a check image exchange program. Ex. A (Supp. Dec.) at ¶ 4. The fact that SVPCo is subject to this Court's jurisdiction does not support asserting jurisdiction over BancShares.

### E. The "source of strength" doctrine and 12 U.S.C. § 1841(a)(1) have no bearing on the question of personal jurisdiction.

DataTreasury in its Amended Response continues to cite 12 U.S.C. § 1841(a)(1) and the

8

"source of strength" doctrine as creating jurisdiction over BancShares. Amended Response at 8, 12. But neither citation is relevant to the jurisdictional analysis. Section 1841(a)(1), which defines a "bank holding company" for purposes of federal statutory and regulatory oversight, is part of Congress's statutory scheme governing the country's banking industry. *See* Gordon M. Bava, *Regulation and Structure of Traditional Bank Holding Company Activities*, 469 PLI/Comm 261, 269 (1988). The statute defines a "bank holding company" as "any company which has control over any bank," with "control" meaning simple ownership of "25 per centum or more of any class of voting securities of the bank." 12 U.S.C. § 1841(a)(2)(A). But this simple ownership is not the "control" that allows a Court to cast aside the corporate form to create jurisdiction. *See 3D Systems*, 160 F.3d at 1380-81; *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983) ("The degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship.").

DataTreasury's source-of-strength argument relies on a single, demonstrably distinguishable case. Amended Response at 12 (citing *Branch o/b/o Maine National Bank v. U.S.*, 69 F.3d 1571 (Fed. Cir. 1995)). The *Branch* decision does not discuss the source of strength doctrine in the context of personal jurisdictional. DataTreasury quotes *Branch*, but uses ellipses to omit a crucial portion of the sentence: "Through the 'source of strength' policy, the [Federal Reserve] Board asserted its authority to pierce the corporate veil between a bank holding company and its affiliated banks, *so that a bank holding company could be required to inject capital into a troubled subsidiary bank.*" *Id.* at 1581 (italicized portions left out by DataTreasury). The text that DataTreasury omits reveals that the doctrine applies to prevent underfunding of operating bank subsidiaries, not to establish personal jurisdiction.

9

## II. BancShares has not waived its jurisdictional defense.

Unable to show contacts by BancShares that subject it to jurisdiction in Texas, DataTreasury argues falsely that BancShares has waived its jurisdictional defense by signing the Stipulation that resulted in the Court staying this lawsuit as to the Ballard Patents. For this proposition, DataTreasury relies solely on two Third Circuit decisions that turned on procedural events that are non-existent in this case. *See* Amended Response at 13 (citing *Bel-Ray Co. v. Chemrite Ltd.*, 181 F.3d 435 (3rd Cir. 1999); *Wyrough & Loser, Inc. v. Pelmor Lab., Inc.*, 376 F.2d 543 (3rd Cir. 1967)). In *Bel-Ray Co.*, the defendant filed a summary judgment motion and suffered an adverse ruling before filing its jurisdictional defense. In *Wyrough*, the non-resident party defended itself in a preliminary injunction hearing and raised its jurisdictional defense only after the Court orally stated its intention to enter a preliminary injunction. In stark contrast to these cases, not only did BancShares file it Motion to Dismiss long before any party sought a stay in this lawsuit, BancShares also has sought no affirmative relief from this Court, and its acceptance of the stay in no manner can be interpreted as affirmative relief. Under these circumstances, no waiver occurred. *See Rates Tech. Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1309 (Fed. Cir. 2005) (waiver of personal jurisdiction occurs "by extensively participating in the litigation without timely seeking dismissal"). DataTreasury's argument also is contrary to the purpose and effect of the stay, which is to conserve judicial resources by precluding the parties from prosecuting their claims and defenses during the re-examination. DataTreasury's analysis leads to the unreasonable result that a party disputing jurisdiction must continue litigating to avoid waiving its jurisdictional defense, while a party that did not contest jurisdiction may wait for the stay to lift.

Dated: February 23, 2007.                    Respectfully submitted,


    /s/ Larry D. Carlson
Larry D. Carlson, Attorney-in-Charge
   Texas State Bar No. 03814500
   E-Mail: larry.carlson@bakerbotts.com
Fernando Rodriguez, Jr.
   Texas State Bar No. 24005048
   E-Mail: fernando.rodriguez@bakerbotts.com
David O. Taylor
   Texas State Bar No. 24042010
   E-Mail: david.taylor@bakerbotts.com
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 600
Dallas, Texas 75201
Telephone: (214) 953-6500
Facsimile: (214) 953-6503

Donalt J. Eglinton
   E-Mail: dje@wardandsmith.com
WARD AND SMITH, P.A.
Post Office Box 867
New Bern, North Carolina 28563
Telephone: (252) 672-5456
Facsimile: (252) 672-5477

ATTORNEYS FOR DEFENDANTS FIRST-CITIZENS BANK & TRUST COMPANY AND FIRST CITIZENS BANCSHARES, INC.


## CERTIFICATE OF SERVICE

I certify that on February 23, 2007, all counsel who are deemed to have consented to electronic service are being served with a copy of this document via electronic transmission.


    /s/ Larry D. Carlson
Larry D. Carlson