# Exhibit 1

# UnionBanCal Corporation's Reply to Plaintiff's Amended Response to Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(2)

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| DATATREASURY CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO & COMPANY, et al.,<br><br>Defendants. | Civil Action No. 2-06CV-72 |

## UNIONBANCAL CORPORATION'S REPLY TO PLAINTIFF'S AMENDED RESPONSE TO MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(2)

After conducting jurisdictional discovery to support its conclusory jurisdictional allegations against Defendant UnionBanCal Corporation ("UnionBanCal"), Plaintiff DataTreasury Corporation ("DataTreasury") still relies on the same disingenuous arguments in its Amended Response that it made in its pre-discovery Response. Once again DataTreasury twists, mischaracterizes and misconstrues isolated, out-of-context statements in UnionBanCal's 2005 SEC 10-K report; inviting the Court to make such fanciful factual conclusions as (1) that UnionBanCal, a bank holding company, employs over 10,000 people, and (2) UnionBanCal, a bank holding company, personally provides financial products and services – nationally – to individual and commercial customers.[1] In the end, Plaintiff itself cannot steadfastly support these wild allegations and argues "in the alternative" that if the Court should not agree on the state of Plaintiff's evidence, the Court should then conclude that jurisdiction exists because

---

[1] Both the evidence and common-sense supports the proper conclusion that UnionBanCal's subsidiary, Union Bank of California, the operational entity, has over 10,000 employees and nationally offers financial products and services.

600260619v1

UnionBanCal is the alter ego of its wholly owned subsidiary, Union Bank of California. This argument is as equally fanciful and vacant of evidentiary support as its predecessor. In essence, DataTreasury would have this Court find that every bank holding company is *de facto* an alter ego of its operating subsidiaries, regardless of the facts. Plaintiff tries to justify this untenable legal position by arguing that "the very definition of a bank holding company is 'any company which has control over any bank.'" More problematic to this alter ego premise of jurisdiction is the fact that Plaintiff failed to make any such veil piercing allegations against UnionBanCal in its First Amended Complaint. All told, DataTreasury has failed to support its alleged theory of specific jurisdiction, and this case should be dismissed against UnionBanCal with prejudice.

I.   **APPLICABLE LEGAL STANDARDS**

   A.   **DataTreasury Applies the Wrong Law**

DataTreasury's reliance on United States Court of Appeals for the Fifth Circuit precedent is misplaced. DataTreasury wrongly cites to *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 856 (Fed. Cir. 1999), for the proposition that the United States Court of Appeals for the Federal Circuit defers to the law of the regional circuit to resolve jurisdictional questions. When it comes to patent infringement claims, nothing could be further from the truth. Personal jurisdiction in patent infringement litigation and compliance with federal due process standards is a matter of Federal Circuit law, rather than regional circuit law. *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003)("Our prior decisions make clear that where the personal jurisdictional inquiry is 'intimately involved with the substance of the patent laws,' we apply Federal Circuit law.")(citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995)); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564-65, 30 U.S.P.Q.2D (BNA)

1001, 1006 (Fed. Cir. 1994)(holding that although the due process jurisdictional issue is procedural, "application of an assumed Fourth Circuit law, or for that matter, the law of any particular circuit, would thus not promote our mandate of achieving national uniformity in the field of patent law."); *3 D Systems, Inc. v. Aarotech Lab., Inc.*, 160 F.3d 1373, 1377-78, 48 U.S.P.Q.2d (BNA) 1773, 1776 (Fed. Cir. 1998)(applying Federal Circuit law in determining that the district court had personal jurisdiction over an out-of-state corporation defending an action involving a patent infringement claim and state law claims of trade libel and unfair competition).

### B. DataTreasury Applies the Wrong Burden of Proof

Next DataTreasury misquotes another Federal Circuit decision and claims the wrong, lesser (prima facie) burden of proof required to prove jurisdiction.[2]  Given the fact that DataTreasury requested and conducted jurisdictional discovery, the burden of proof necessary to prove jurisdiction is by a preponderance of the evidence standard.[3] See *Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1334 (Fed. Cir. 2001)(citing *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990); *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1282-1283 (Fed. Cir. 2005)("Because there has not been discovery on the jurisdictional issue, Trintec is required 'only to make a prima facie showing' of jurisdiction to defeat the motion to dismiss.").

---

[2] The proper, unredacted quote is as follows, wherein the underlined section representing the words omitted by Plaintiff: "[A] district court must accept <u>the uncontroverted allegations in the plaintiff's complaint</u> as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003).

[3] The heightened standard is a result of the granted jurisdictional discovery. As such, more jurisdictional discovery is not warranted due to the heightened burden. As detailed in UnionBanCal's Response to Plaintiff's Motion to Compel, filed contemporaneously with this brief, the limited scope of jurisdictional discovery granted in the December 8, 2006, Order was appropriate in this case.

3

600260619v1

II.     **DATATREASURY FAILS TO CARRY ITS BURDEN, REGARDLESS OF THE STANDARD**

DataTreasury has failed to make even a *prima facie* showing of the facts upon which specific personal jurisdiction is based.

A.     **DataTreasury Cannot Establish Specific Personal Jurisdiction**

In support of its specific jurisdiction theory, DataTreasury cites to *Akro Corp. v. Luker*, 45 F.3d 1541 (Fed. Cir. 1999) for the proposition that specific jurisdiction requires that: (1) the defendant purposefully directed its activities at the forum state; (2) the plaintiff's claims arise out of those activities; and (3) assertion of personal jurisdiction over the defendant is reasonable and fair. *Id*. at 1545-46. DataTreasury's analysis stops there, however, as it fails to show that UnionBanCal either purposefully directed its activities at the forum state and does not even attempt to show that its claims arise out of UnionBanCal's alleged contacts with Texas. DataTreasury states that the allegations contained in its First Amended Complaint, "if true, are more than sufficient to establish specific jurisdiction over the Defendant." Plaintiff's Amended Response to Defendant UnionBanCal Corporation's Motion to Dismiss for Lack of Personal Jurisdiction Under Rule 12(b)(2) at 5. Unfortunately for DataTreasury, however, its allegations are neither sufficient nor true.

DataTreasury's only argument that UnionBanCal has any activities in Texas is based upon its misrepresentation of a statement in UnionBanCal's consolidated 10-K filing, which includes a statement on behalf of Union Bank of California, N.A., that "Other administrative offices in ... Texas ... operate under leases." As made clear to both the Court and DataTreasury, UnionBanCal has never owned, rented or leased any property in Texas and it has no administrative offices in Texas. Affidavit of David A. Anderson In Support of Defendant

UnionBanCal Corporation's Motion to Dismiss at ¶ 8 ("Anderson Affidavit") (attached as Exhibit A to Defendant UnionBanCal Corporation's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and Brief in Support Thereof).[4] The statement in the 10-K about the operations of the subsidiary Union Bank of California is not inconsistent with Mr. Anderson's affidavit, and DataTreasury offers nothing to suggest otherwise beyond suggestion and innuendo.

DataTreasury next argues that UnionBanCal has employees, once again based upon a confused interpretation of an isolated statement in a 10-K filing. Plaintiff's Amended Response at 9. As explained repeatedly and under oath to DataTreasury, UnionBanCal has no employees. *See generally*, Transcript of the Testimony of David Anderson February 7, 2007 ("Anderson Dep.") at 15:19; 56:12-14; 75:23; 80:20-21; 83:21-89:4; 95:21-97:24 (attached hereto as Exhibit A). This fact is uncontroverted. It appears that DataTreasury is feigning confusion merely as a way to improperly question the credibility of UnionBanCal's witness.

There can be no truly disputed facts here. As repeatedly and consistently stated, UnionBanCal is a bank holding company, and **does not engage in any banking operations or activities.** *See* 12 U.S.C.A. §§ 1841-1850 (West 2006); Anderson Dep. at 174:19-175:12 (attached hereto as Exhibit B); Anderson Affidavit at ¶ 5. Once again, DataTreasury ignores this fact, and insists that a few select statements in a consolidated 10-K filing that deals with the parent and all its subsidiaries, when taken out of context, nullify reality. They do not. The statements in UnionBanCal's 10-K that DataTreasury selects are simplifications of a complex

---

[4] As further detailed in UnionBanCal's Response to DataTreasury's Motion to Compel filed contemporaneously with this brief, Mr. Anderson's jurisdictional deposition testimony also explained that UnionBanCal does not have any employees and offers no products or services -- anywhere.

5

600260619v1

reality, and are not misrepresentations or admissions of jurisdiction, as DataTreasury would have this Court believe. This simple fact explains everything that apparently stupefies DataTreasury.

Furthermore, DataTreasury studiously ignores the very clear testimony by Mr. Anderson proving that the 10-K and Annual Statements irrefutably support UnionBanCal's position that it does not conduct banking operations. Anderson Dep. at 170:22-171:13 and 172:1-15 (attached hereto as Exhibit C). This half-hearted attempt to prove specific personal jurisdiction is indicative of how weak DataTreasury's arguments are. In the end, DataTreasury cannot justify its misguided version of reality that UnionBanCal is subject to specific jurisdiction in Texas.

**B.     DataTreasury's Alter Ego Theory Is Insufficient to Establish Jurisdiction**

1.     <u>DataTreasury failed to plead its alter ego theory</u>

Cognizant that it cannot establish specific personal jurisdiction, DataTreasury next attempts to establish that UnionBanCal is the alter ego of Union Bank of California, N.A as a means of satisfying jurisdiction. However, DataTreasury did not plead its alter ego theory in its First Amended Complaint. See *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1579 (Fed. Cir. 1986)("To determine whether corporate officers are personally liable for the direct infringement of the corporation under § 271(a) requires invocation of those general principles relating to piercing the corporate veil."); *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003) ("To state a 'veil-piercing claim,' the plaintiff must plead facts supporting an inference tha the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors. [Plaintiff] has failed to allege any facts to support such an inference.") Failing to adequately allege veil piercing as a basis for jurisdiction, DataTreasury cannot now seek to prove jurisdiction under this new, yet unpled, theory.

### 2. The facts do not support a finding of an alter ego relationship

Even if the Court considers the merits of DataTreasury's alter ego theory, DataTreasury's arguments still fail. DataTreasury improperly relies upon *Gundle Lining Construction Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201 (5th Cir. 1996), for its arguments that this Court may properly exercise jurisdiction over UnionBanCal. As the Federal Circuit has made clear, it is the law of the state of incorporation, Delaware, that applies. *Institut Pasteur v. Cambridge Biotech Corp. (In re Cambridge Biotech Corp.)*, 186 F.3d 1356, 1376 n. 11 (Fed. Cir. 1999)("When a court considers disregarding the corporate entity, i.e., 'piercing the corporate veil,' the court applies the law of the state of incorporation.")(citing *Stromberg Metal Works, Inc. v. Press Mechanical, Inc.*, 77 F.3d 928, 933 (7th Cir. 1996)).

Under Delaware law, numerous factors are pertinent to an alter ego analysis, but "no single factor [can] justify a decision to disregard the corporate entity." *Harco Nat'l. Ins. Co. v. Green Farms, Inc.*, No. 1131, 1989 WL 110537, at * 5 (Del.Ch. Sept. 19, 1989) (quoting *United States v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1104 (D.Del.1988), *aff'd*, 879 F.2d 860 (3d Cir.1989)). "These factors include whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder." *Id.* (quoting *Golden Acres*, 702 F. Supp. at 1104).

Delaware law makes clear that to pierce the corporate veil on an alter ego theory, a plaintiff must demonstrate a "misuse" of the corporate form "an overall element of injustice or

unfairness.'" See *Alberto v. Diversified Group*, 55 F.3d 201, 206 (5th Cir. 1995)(internal citations omitted). "This is because Delaware courts of chancery will not disregard the corporate form of a subsidiary unless equity so demands." *Id.* Although this equitable power is "broad" and can be invoked whenever justice demands, Delaware courts "require[] a strong case to induce a court of equity to consider two corporations as one." *Id.*; See *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 989 (Del.Ch.1987) ("The cases inevitably tend to evaluate the specific facts with a standard of 'fraud' or 'misuse' or some other general term of reproach in mind.").

However, even examining the *Gundle* factors relied upon by DataTreasury, the result is the same. DataTreasury **fails** to establish the following: that the parent and subsidiary have common business departments; that the parent finances the subsidiary; that the parent caused the incorporation of the subsidiary; that the subsidiary operates with grossly inadequate capital; that the parent pays the salaries and other expenses of the subsidiary; that the subsidiary receives no business except that given to it by the parent; that the daily operations of the two corporations are not kept separate; that the subsidiary does not observe the basic corporate formalities. DataTreasury can only prove that Union Bank of California, N.A., is a wholly owned subsidiary of UnionBanCal, and that certain directors and officers are common between the two companies. Even under Fifth Circuit law, this is insufficient to establish an alter ego relationship. See *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 594 (5th Cir. 1999).

C.    **The "source of strength" doctrine is irrelevant**

DataTreasury admits that Union Bank of California, N.A., is not undercapitalized. Plaintiff's Amended Response at 18. To overcome the shortcoming in its argument,

DataTreasury misrepresents to the Court that the "source of strength" doctrine excuses this gaping flaw. The "source of strength" policy has **absolutely nothing** to do with personal jurisdiction. DataTreasury chose not to provide the context of this theory to the Court. In *Branch o/b/o Maine National Bank v. U.S.*, 69 F.3d 1571 (Fed. Cir. 1995), the court stated: "Through the 'source of strength' policy, the [Federal Reserve] Board asserted its authority to pierce the corporate veil between a bank holding company and its affiliated banks, *so that a bank holding company could be required to inject capital into a troubled subsidiary bank.*" Id. at 1582 (emphasis added). DataTreasury's selective quotation of the cited passage omits the italicized passage, which makes clear that the "source of strength" doctrine is a mechanism for managing banks in financial distress, completely unrelated to personal jurisdiction and does not provide this Court with any basis to find that UnionBanCal is an alter ego of Union Bank of California, N.A.

### III. DATATREASURY'S WAIVER ARGUMENT IS WRONG

It its January 19, 2007 Notice of Acceptance of Stipulation Required for Stay, UnionBanCal explicitly stated that "UnionBanCal Corp. has a separate pending motion to dismiss for lack of personal jurisdiction. In order to preserve its rights, UnionBanCal accepts the proposed stipulation without waiving its motion, objection to and defense of the lack of personal jurisdiction." (D.I. 426, n. 1). It is thus clear that UnionBanCal maintained its objection to the lack of personal jurisdiction and did not waive this objection by accepting the stay.

Moreover, DataTreasury again cites the incorrect circuit law in support of its position. See *Rates Tech., Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1307 (Fed. Cir. 2005)("We apply our own law, not that of the regional circuit, to issues of personal jurisdiction in a patent

infringement case."). Nevertheless, in *PaineWebber Inc. v. The Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453 (5th Cir. 2001), the Fifth Circuit dealt with the question of whether a defendant's motion for a stay and an injunction pending appeal waived its objections to personal jurisdiction. Although the Fifth Circuit stated that "a party may waive any jurisdictional objections if its conduct does 'not reflect a continuing objection to the power of the court to act over the defendant's person,'" it noted that the defendant timely and properly challenged personal jurisdiction, asserted no counterclaims and engaged in no third-party practice, and premised its motion for stay on the argument that the court's exercise of personal jurisdiction was improper. *Id.* at 460. Accordingly, the Fifth Circuit concluded that "[t]ry as we might, we cannot see how such actions manifest anything *but* a 'continuing objection' to the district court's exercise of personal jurisdiction." *Id.* at 461 (emphasis in original). The court continued by stating that "[n]either have we found even one case that supports PaineWebber's contention that a defendant submits to the jurisdiction of a court by seeking to enjoin further legal proceedings on the ground that to require participation in such proceedings in the absence of personal jurisdiction would violate due process. Indeed, merely to state this argument is to refute it." *Id.*

The Fifth Circuit thus rejected "out of hand" the plaintiff's argument that the Motion for a Stay waived the defendant's jurisdictional objection. *Id.* Just as in *PaineWebber*, UnionBanCal made a timely and proper objection to personal jurisdiction, and premised its acceptance of a stay on the argument that the Court's exercise of personal jurisdiction is improper. Thus, UnionBanCal has not waived its objection, and DataTreasury's arguments to the contrary are plainly wrong.

10

## IV. CONCLUSION

DataTreasury fails to offer any rationale basis to support a claim of specific personal jurisdiction. Similarly, DataTreasury's belated attempts to argue alter ego / veil piercing basis for jurisdiction, based on an overly simplistic holding company theory, cannot stand. Finally, DataTreasury incorrectly states that UnionBanCal waived its jurisdictional objections, although it is clear from the facts and the case law that UnionBanCal did nothing of the sort. The evidence points in only one direction, the lack of sufficient contact by UnionBanCal with Texas precludes in personal jurisdiction, and this Court should grant UnionBanCal's Motion to Dismiss.

March 1, 2007

Respectfully Submitted,
/s/ Jennifer Parker Ainsworth
Jennifer Parker Ainsworth
Texas Bar No. 00784720
WILSON, SHEEHY, KNOWLES, ROBERTSON & CORNELIUS, P.C.
909 ESE Loop 323
Suite 400
Tyler, Texas 75701
T: (903) 509-5000
F: (903) 509-5092
jainsworth@wilsonlawfirm.com

Richard Hogan
Texas Bar No. 09802010
PILLSBURY WINTHROP SHAW PITTMAN LLP
2 Houston Center
909 Fannin Street 22nd Floor
Houston TX 77010
T: (713) 425-7327
F: (713) 425-7373
richard.hogan@pillsburylaw.com

Raymond L. Sweigart (admitted *pro hac vice*)
Scott J. Pivnick (admitted *pro hac vice*)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1650 Tysons Blvd.
McLean, VA 22102-4859
T: (703) 770-7900
F: (703) 905-2500
raymond.sweigart@pillsburylaw.com
scott.pivnick@pillsburylaw.com

*Attorneys for Defendant,*
*UnionBanCal Corporation*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who have consented to electronic service, Local Rule CV-5(a)(3)(A), on this the 1st day of March, 2007.

/s/ *Jennifer Parker Ainsworth*
Jennifer Parker Ainsworth

12

600260619v1