UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| DATATREASURY CORPORATION, § | |
| § | |
| Plaintiff, § | |
| § | CIVIL ACTION NO. 2:06-CV-72-DF |
| v. § | |
| § | JURY TRIAL DEMANDED |
| WELLS FARGO & COMPANY, et al. § | |
| § | |
| Defendants. § | |

**FIRST CITIZENS BANCSHARES, INC.'S RESPONSE TO MOTION TO COMPEL**

First Citizens BancShares, Inc. ("BancShares"), subject to its Motion to Dismiss for Lack of Personal Jurisdiction, files its response to DataTreasury Corporation's ("DataTreasury") Motion to Compel Certain Documents Relating to Defendant First Citizens BancShares, Inc.'s Jurisdictional Challenge ("Motion to Compel").

On June 1, 2006, BancShares filed its motion to dismiss for lack of personal jurisdiction. From the outset, DataTreasury has been unable to show any basis for asserting jurisdiction over BancShares, despite the requirement that a party must have a sound factual predicate for jurisdiction before filing suit in Texas. On the same day that DataTreasury filed its response to BancShares' motion to dismiss, DataTreasury filed a motion for jurisdictional discovery in an effort to find this proof. After obtaining BancShares' responses to numerous interrogatories and requests for admissions, BancShares' document production, and over five hours of deposition testimony from a BancShares executive, DataTreasury still cannot show that jurisdiction exists. Now, after filing its amended response to BancShares' motion to dismiss, and after realizing it still cannot make the necessary showing to create personal jurisdiction, DataTreasury asks this Court to order even more discovery. But BancShares already has provided the jurisdictional

1

Dockets.Justia.com

discovery to which DataTreasury is entitled. DataTreasury has been given its opportunity to make its jurisdictional case, and DataTreasury's jurisdictional fishing expedition must come to an end.

### I. DataTreasury failed to confer with BancShares regarding the alleged discovery deficiencies.

Local Rule CV-7(h) requires parties to make a good faith attempt to resolve discovery matters without court intervention. Contrary to DataTreasury's certificate of conference and the statements in its Motion to Compel, BancShares' counsel received no communications from DataTreasury about the alleged discovery deficiencies. Specifically, BancShares' counsel did not receive the letter that DataTreasury attached to its Motion to Compel and which was addressed to lead counsel for BancShares. BancShares received this letter, for the first time, when it received the Motion to Compel.[1] And DataTreasury's counsel never called BancShares' counsel to discuss the issues raised in the Motion to Compel.

### II. BancShares has fully satisfied its obligation to provide discovery related to its jurisdictional defense.

On December 8, 2006, the Court granted limited jurisdictional discovery that allowed DataTreasury to serve written discovery "dealing specifically with jurisdictional issues" and to depose one corporate representative regarding "the jurisdictional issues" that BancShares raised in its Motion to Dismiss. *See* Order (Docket Entry 394 (December 8, 2006)). BancShares has complied fully with this order. BancShares responded to DataTreasury's twelve requests for admissions and eighteen interrogatories. *See* Exhibits A and B. BancShares also produced over 1500 pages of documents in response to DataTreasury's document requests. *See* Exhibit C. Finally, BancShares presented Mr. John Gray, a senior vice president who is the manager of

---

[1] BancShares is not accusing plaintiff's counsel of intentionally misleading the court. BancShares presumes that the letter was either inadvertently not sent or somehow lost in the mail.

2

financial reporting for BancShares, as a 30(b)(6) witness. *See* Exhibit D (Transcript of the Deposition of John Gray (February 7, 2007) at 7:22 - 8:7 ("Gray Deposition"))[2]. Mr. Gray provided testimony for over five hours. *Id.* at 211:13.

Despite all of this discovery, DataTreasury still has no evidence to support its assertion that BancShares is subject to personal jurisdiction in Texas. *See* First Citizens BancShares, Inc.'s Reply to Plaintiff's Amended Response to Defendant First Citizens BancShares, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 540 (Feb. 23, 2007)). Tellingly, DataTreasury in its Amended Response attached neither BancShares' responses to DataTreasury's requests for admissions or interrogatories nor any of the documents that BancShares produced.[3]

When lack of personal jurisdiction is clear, as in this case, further discovery serves no purpose and should be denied. *See Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982). The declarations that BancShares has submitted to this Court demonstrate that no jurisdiction exists over BancShares. BancShares' jurisdictional discovery confirmed this fact. The additional discovery that DataTreasury now seeks does not bear on the jurisdictional issues, as explained below, and merely imposes an undue burden on BancShares. In fact, the parties find themselves in the same position they held before DataTreasury conducted its jurisdictional discovery. DataTreasury, fearful that it cannot survive BancShares' motion to dismiss, asks this Court to order additional discovery in hopes that it may find some jurisdictional basis. But DataTreasury's jurisdictional fishing expedition must end. DataTreasury has had two opportunities to make its jurisdictional showing and has failed each time.

---

[2] While the cover page for the deposition transcript indicates that the entire deposition is designated "Confidential - For Outside Counsel Only," BancShares clarifies that it has designated only page 72, lines 8-15 as Confidential - For Outside Counsel Eyes Only, and page 72 is not submitted with this Response.

[3] DataTreasury attached only Mr. Gray's deposition, two public documents it had attached in its original Response, and a court order from another case.

### III. The documents that DataTreasury seeks exceed jurisdictional discovery.

DataTreasury has not shown its entitlement to the broad discovery that it seeks from BancShares. BancShares has provided the limited jurisdictional discovery that the Court granted DataTreasury. DataTreasury now demands ten broad categories of documents, but makes no effort to explain why it needs those documents for the jurisdictional issues before the Court. Parties seeking jurisdictional discovery must explain why the requested documents are pertinent. *See Quazzani-Chahdi v. Greensboro News & Record, Inc.*, 2005 WL 2372178 (S.D. Tex. Sept. 27, 2005) ("A district court may thus refuse discovery where a party has failed to show how further inquiry would affect the court's jurisdictional determination or make at least a preliminary showing of personal jurisdiction."); *see also Medical Solutions, Inc. v. C Change Surgical LLC*, ___ F.Supp.2d ___, 2006 WL 3833949 (D.D.C. Dec. 29, 2006) ("Where there is no showing of how jurisdictional discovery would help plaintiff discover anything new, 'it [is] inappropriate to subject [defendants] to the burden and expense of discovery.'" (citation omitted)). DataTreasury fails to satisfy this basic requirement. In fact, DataTreasury lists the document categories, and then conclusorily states as its *entire* analysis that the documents "are unquestionably relevant to determine the veracity of these positions." Motion to Compel at 3. While DataTreasury cites a Fifth Circuit decision that lists certain factors for an alter ego analysis, DataTreasury never explains how the requested documents even concern those factors. In addition, DataTreasury has not even pled alter ego as a jurisdictional basis, *see* First Amended Complaint for Patent Infringement (Docket No. 3 (March 28, 2006), but now apparently rests its Motion to Compel solely on the need to obtain documents ostensibly related to such an analysis.

The specific categories that DataTreasury lists almost exclusively encompass documents that have no bearing on the jurisdictional analysis. To the extent that a category may cover some

4

relevant information, BancShares already has produced that information. The following analysis demonstrates these deficiencies in each of DataTreasury's listed categories, some of which are grouped together for convenience.

### A.   Documents related to financial matters

Through the following four categories, DataTreasury impermissibly demands every document related to every penny that has flowed between BancShares and its subsidiaries, whether in the form of dividends or BancShares' reimbursement to its subsidiary FCB&T for services performed for BancShares:

> "[A]ll documents related to the management fee that [Bancshares] pays every month to First Citizens Bank & Trust ("FCB&T") for services that FCB&T employees perform for Bancshares, including the most recent schedule reflecting same that Mr. Gray created[.]"

> "[A]ll documents related to BancShares payments made to FCB&T for FCB&T's performance of services related to dealing with investor and stock issues of Bancshares[.]"

> "[A]ll documents reflecting the flow of funds between FCB&T and Bancshares, including all documents reflecting dividend payments, shared expenses, and other financial documents[.]"

> "[A]ll documents reflecting shared services, manpower, and finances between Bancshares, FCB&T, and Ironstone Bank[.]"

The minutia that DataTreasury requests, however, does not support or controvert the existence of jurisdiction over BancShares. For example, the exact amount of dividends that BancShares has received from its subsidiaries or the calculation of those dividends does not impact the jurisdictional analysis. Similarly, the exact services performed each month for which BancShares reimburses its subsidiary FCB&T has no jurisdictional weight. DataTreasury's requests seek documents well beyond jurisdictional discovery.

In addition, Mr. Gray in his deposition provided any information that DataTreasury could possibly require about these categories, even if they encompassed jurisdictionally-relevant information. For example, as to the "management fee" that BancShares pays to FCB&T, Mr. Gray explained the fee, who calculates it, how it is calculated, when it is paid, and why it is paid. Exhibit D at 15:4 - 18:19. He even approximated the amount of the fee and explained that no written agreement exists that governs the fee. *Id.* at 24:12 - 24:19. As for dividend payments, Mr. Gray also provided ample testimony. He testified that FCB&T pays dividends to BancShares, while IronStone Bank does not. *Id.* at 77:10-21. He also explained that the dividends from FCB&T are BancShares' primary source of income, and, importantly, that this information is available on the 10-Ks that BancShares files and that it has produced in this lawsuit. *Id.* at 77:10-21, 143:12 - 144:17.

### B.   Insurance applications and policies

DataTreasury in the following two categories requests a host of insurance applications and policies, but fails to explain their jurisdictional relevance:

> "[A]ll insurance applications signed by officers or directors of Bancshares, or that reference Bancshares and its subsidiaries in any way[.]"

> "[A]ll insurance policies that have been issued to Bancshares but that also provide coverage for Bancshares' subsidiaries, including FCB&T[.]"

The fact is that these documents have no such relevance. Even the Fifth Circuit case on which DataTreasury rests its entire Motion to Compel in no manner suggests that an insurance policy issued in the name of a parent company and its subsidiaries is relevant to the jurisdictional analysis. *See Gundle Lining Constr. Corp. v. Adams County Asphalt*, 85 F.3d 201 (5th Cir. 1996) (cited in Motion to Compel at 3 & n.1). Even if such information were relevant, Mr. Gray testified about such policies, providing DataTreasury with any information that it could possibly

require.  Mr. Gray testified that he is responsible for obtaining these insurance policies, that "First Citizens BancShares, Inc. and its direct and indirect subsidiaries" are the named insureds, and why the policies are issued in this manner.  Exhibit D at 28:21 - 30:18.  Given Mr. Gray's testimony, DataTreasury already possesses more information about BancShares' insurance policies than it is entitled to obtain through jurisdictional discovery.

C.   **Board and committee meeting minutes**

DataTreasury's request for the minutes of each board meeting and committee meeting held by BancShares and FCB&T oversteps by a wide margin the permissible scope of jurisdictional discovery on this topic.  DataTreasury's requests include:

> "[A]ll minutes and other documents related to all meetings of the Boards of Directors of Bancshares and FCB&T (this should actually be one set of documents, seeing as how these are joint Boards that meet simultaneously)[.]"

> "[A]ll minutes from all committee meetings for the committees of the Boards of Directors for Bancshares and FCB&T[.]"

Courts consistently reaffirm the "general rule" that "courts will not because of stock ownership or interlocking directorship disregard the separate legal identities of corporations . . . ." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 798 (Tex. 2002) (citation omitted); *see also Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 594 (5th Cir. 1999) ("[O]ne-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory . . . .").  It follows from this general rule that the extent of permissible discovery on this subject concerns solely whether and the extent to which the boards for BancShares and FCB&T overlap, and even then that information does not suffice to establish an alter ego relationship and discard the general rule that upholds the corporate form.  *See BMC Software Belgium*, 83 S.W.3d at 798.  DataTreasury is not entitled to obtain every document related to the workings of those distinct boards.

BancShares has provided to DataTreasury the permissible discovery related to its and FCB&T's boards and committees. In his deposition, Mr. Gray explained when the boards meet, who attends the board meetings, which committees meet jointly, and how the minutes are prepared. Exhibit D at 83:10 - 86:16, 91:11 - 94:18.[4] Some of this information also is available from publicly-available documents that BancShares has produced to DataTreasury. For example, BancShares has produced a Proxy Statement from March 2006 that describes the various committees that BancShares and its subsidiaries have established. *Id.* at ex. 18. DataTreasury even used this document to question Mr. Gray about those committees. *Id.* at 130:7 - 131:24. In light of this testimony and the document production, DataTreasury's current request for the minutes from each of those committee and board meetings, as well as unspecified "documents related to" those meetings, is a baseless attempt to engage in a fishing expedition.

### D. "Communications . . . between the Officers and Directors"

DataTreasury requests an unspecified category of "communications" that in no manner satisfies the requirement to describe requested documents with "reasonable particularity." Fed. R. Civ. Proc. 34(b). DataTreasury demands:

> "[A]ll communications and documents of any nature transmitted between the Officers and Directors of Bancshares and the Officers and Directors of its subsidiaries FCB&T and Ironstone Bank[.]"

This request for "all communications" between categories of individuals is patently overbroad and unreasonable. If DataTreasury believes certain communications exist that are relevant to jurisdictional issues, it should have tailored its request. DataTreasury's failure to do so precludes its request for this amorphous category of documents. *See Schlafly v. Caro-Kann Corp.*, 155

---

[4] DataTreasury erroneously suggests that the board-meeting minutes for BancShares and FCB&T are joint. *See* Motion to Compel at 2. On the contrary, Mr. Gray unambiguously testified that "there are minutes that are maintained for the meeting of the board of directors of First Citizens BancShares, Inc. and . . . separate minutes maintained for the meeting of the board of directors of First Citizens Bank & Trust Company." *See* Ex. D (Gray Dep.) at 173:14-23.

F.3d 565, 1998 WL 205766 (Fed. Cir. 1998) (affirming the denial of a motion to compel because the party seeking discovery failed to pose the request with reasonable particularity).

### E. "Business Transactions" in Texas

DataTreasury seeks documents responsive to an ambiguous request for which, if any responsive documents do exist, BancShares has already provided. DataTreasury demands the production of the following:

> "[D]ocuments responsive to Request for Production No. 23 concerning documents related to business transactions in Texas conducted by BancShares' Officers and Directors[.]"

BancShares objected to Request for Production No. 23 in part because the phrase "business transactions in Texas" is ambiguous. If DataTreasury means by this phrase BancShares conducting business in Texas, no such documents exist. In fact, BancShares in its Motion to Dismiss and the accompanying declaration made clear that BancShares has not and does not currently conduct business in Texas. *See* Defendant First Citizens BancShares, Inc.'s Motion to Dismiss (Docket Entry 84), Exhibit A (Declaration of John Gray) at ¶¶ 2-12. If, on the other hand, the request is meant to encompass mere contacts with Texas, even if those contacts do not represent or relate to business conducted in Texas, then BancShares already has produced those documents. BancShares produced documents related to three possible "contacts" with Texas. Mr. Gray testified about all three potential contacts. *See* Exhibit D at 155:12-157:24, 198:22-202:21.[5] BancShares is unaware of any other documents in its possession, custody, or control that would fall within a reasonable construction of Request for Production No. 23.

---

[5] These three potential contacts would relate solely, if at all, to a theory of general jurisdiction, which DataTreasury has not asserted. *See* First Citizens BancShares, Inc.'s Reply to Plaintiff's Amended Response to Defendant First Citizens BancShares, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction at 1 n.2 and 4-5 (Docket No. 540 (Feb. 23, 2007)).

## IV. DataTreasury's Motion to Compel should be denied in its entirety.

DataTreasury's Motion to Compel should be denied in its entirety because extensive jurisdictional discovery has already been accomplished. BancShares has produced documents, responded to requests for admissions and interrogatories, and presented a 30(b)(6) witness who provided accurate and thorough testimony in response to DataTreasury's questions. The discovery conducted to date reveals that additional discovery is unnecessary and duplicative and that the documents DataTreasury seeks do not relate to any jurisdictional issues in this case. DataTreasury bears the burden of demonstrating the need for specific information bearing on the relevant jurisdictional issue. *See Quazzani-Chahdi*, 2005 WL 2372178 ("A district court may thus refuse discovery where a party has failed to show how further inquiry would affect the court's jurisdictional determination or make at least a preliminary showing of personal jurisdiction."); *Medical Solutions*, ___ F.Supp.2d ___, 2006 WL 3833949 ("Where there is no showing of how jurisdictional discovery would help plaintiff discover anything new, 'it [is] inappropriate to subject [defendants] to the burden and expense of discovery.'" (citation omitted)). DataTreasury has failed to meet this burden.

Dated: March __, 2007.                          Respectfully submitted,


   /s/ Larry D. Carlson
Larry D. Carlson, Attorney-in-Charge
   Texas State Bar No. 03814500
   E-Mail: larry.carlson@bakerbotts.com
Fernando Rodriguez, Jr.
   Texas State Bar No. 24005048
   E-Mail: fernando.rodriguez@bakerbotts.com
David O. Taylor
   Texas State Bar No. 24042010
   E-Mail: david.taylor@bakerbotts.com
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 600
Dallas, Texas 75201
Telephone: (214) 953-6500
Facsimile: (214) 953-6503

Donalt J. Eglinton
   E-Mail: dje@wardandsmith.com
WARD AND SMITH, P.A.
Post Office Box 867
New Bern, North Carolina 28563
Telephone: (252) 672-5456
Facsimile: (252) 672-5477

ATTORNEYS FOR DEFENDANTS FIRST-CITIZENS BANK & TRUST COMPANY AND FIRST CITIZENS BANCSHARES, INC.


## CERTIFICATE OF SERVICE

I certify that on March __, 2007, all counsel who are deemed to have consented to electronic service are being served with a copy of this document via electronic transmission.


   /s/ Larry D. Carlson
Larry D. Carlson