IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **DATATREASURY CORP.**, | § § | |
| **Plaintiff,** | § § | |
| v. | § § | 2:06-CV-72-DF |
| **WELLS FARGO & CO., et al.** | § § | |
| **Defendants.** | § § § | |

## **O R D E R**

Before the Court is the Motion to Dismiss or Stay Pending Arbitration brought by defendants Wells Fargo & Co. and Wells Fargo Bank, N.A. (the "Defendants"). Dkt. No. 400. Also before the Court are Plaintiff's response, Defendants' amended reply, and Plaintiff's amended sur-reply.[1] Dkt. Nos. 461, 643, 640, respectively. The Court held a hearing on April 16, 2007. Having considered the arguments of counsel and all relevant papers, the Court finds that Defendants' motion should be **DENIED**.

### **I. BACKGROUND**

Plaintiff asserts the following United States Patents against Defendants: 5,583,759 (the "'759 Patent"), 5,717,868 (the "'868 Patent"), and 5,930,778 (the "'778 Patent") (collectively, the "patents-in-suit"). Dkt. No. 461 at 12.

On or about February 28, 2004, one of Wells Fargo's subsidiaries, Wells Fargo Services Corporation ("WFSC") entered a Patent License Agreement (the "PLA") with a company named

---

[1] The parties amended their reply and sur-reply after discovery of a memorandum sent from WMR to Defendants in May 2003. Dkt. No. 643 at 15 & Dkt. No. 640 at 8 n.10.

-1-

Dockets.Justia.com

WMR e-Pin LLC ("WMR").  Dkt. No. 400 at 3; Dkt. No. 400 at Ex. A.  This license purported to bind all successors/assigns and applied to U.S. Patent No. 5,265,007 (the "'007 Patent") and "all applications and patent disclosures related thereto . . . ."  *Id.*  The agreement includes a license, a covenant not to sue, and an arbitration provision.  *Id.* at 3-6.  The parties represented at the hearing on this motion that arbitrators are being selected for an arbitration in Minnesota.  The parties agreed to stay that proceeding pending this Court's decision on the present motion.

## II.  LEGAL PRINCIPLES

Section 2 of the Federal Arbitration Act ("FAA") states that written agreements to settle a controversy by arbitration are enforceable.  9 U.S.C. § 2.  Section 3 of the FAA requires district courts to grant a stay "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement . . . ."  *Id.* at § 3.  "The Fifth Circuit has repeatedly emphasized the strong federal policy in favor of arbitration."  *Safer v. Nelson Fin. Group, Inc.*, 422 F.3d 289, 294 (5th Cir. 2005) (citation omitted).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Id.* (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

"[A] stay is mandatory upon a showing that the opposing party has commenced suit upon any issue referable to arbitration under an agreement in writing for such arbitration.  Thus, the court may not deny a stay in such a situation."  *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (internal citation and quotation marks omitted).

"Courts perform a two-step inquiry to determine whether parties should be compelled to arbitrate a dispute.  First, the court must determine whether the parties agreed to arbitrate the dispute."  *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002) (internal citation

and quotation marks omitted).  "Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable."  *Id.*  State law principles governing the formation of contracts generally apply.  *Id.*

### III.  THE PARTIES' POSITIONS

Only the first step of the two-step analysis described in *Primerica* is disputed, i.e. "whether the parties agreed to arbitrate the dispute."  304 F.3d at 471.  This question turns on whether Plaintiff is a party that may be compelled to arbitrate under the PLA and whether the patents-in-suit are within the scope of the PLA.  The Court assumes without deciding that Defendants are parties that may generally enforce the terms of the PLA.  As to the second step of *Primerica*, the parties identify no federal statute or policy that renders Plaintiff's claims nonarbitrable, and the Court finds none.

**A.  Whether Plaintiff is a Party That the PLA Can Compel to Arbitrate**

Defendants argue that Plaintiff is bound by the arbitration provision entered into by the prior owner of the patents, namely WMR.  Dkt. No. 400 at 8.  Plaintiff responds that it is not a "successor" of WMR because it did not merge with WMR.  Dkt. No. 461 at 26.

Plaintiff responds that the PLA was non-transferable such that Plaintiff cannot be bound by it and, alternatively, the arbitration provision does not cover the patents-in-suit.  Dkt. No. 461 at 9.  First, Plaintiff argues that none of the patents-in-suit are listed as "related" to the '007 Patent on its face.  *Id.* at 11 & 30-38.  Plaintiff proposes that Wells Fargo's proposed use of "related to" is so overbroad that any patent related to any topic in the '007 specification would be "related to."  *Id.* at 36.  Plaintiff also presents evidence that WFSC sought a license to the patents-in-suit from WMR both before and after those parties executed the PLA.  *Id.* at 37-38.

Second, Plaintiff argues that its outright purchase of the patents-in-suit from WMR could not carry the obligation of an arbitration provision absent an express agreement. *Id.* at 22-25. Plaintiff cites Minnesota and Texas authorities for the proposition that in order to assume a contractual obligation, an assignee must make an express or implied assumption of that obligation. *Id.* at 23-25. Plaintiff argues that no such assumption of the PLA or its arbitration provision took place. *Id.* Plaintiff further argues that no contract or agency principle can bind Plaintiff because it took no benefits of the PLA. *Id.* at 25-26. Plaintiff concludes that the PLA only binds the original parties to it. *Id.* at 28-30.

In their amended reply, Defendants argue that "a party is a successor to the previous patent owner if the rights, title, and interest have been so transferred." Dkt. No. 643 at 8. Defendants propose that Plaintiff cannot deprive Defendants, who are successors to a licensee, of the benefit of their license agreement with the prior patent owner. *Id.* at 8-9.

In its amended sur-reply, Plaintiff argues that the arbitration provision of the PLA is, by its plain language, limited to disputes between WMR and WFSC. Dkt. No. 640 at 9-12. Plaintiff argues that the PLA does not purport to bind "successors-in-interest" but only "successors." *Id.* at 12-13. Plaintiff argues it is not a "successor" to WMR. *Id.* at 18-19. Plaintiff reiterates that the anti-assignment clause bars application of the PLA to Plaintiff. *Id.* at 14-15. Plaintiff also emphasizes that although WMR assigned the '007 Patent to Plaintiff, WMR did not assign the PLA and Plaintiff has not attempt to take any benefit of the PLA. *Id.* at 20-22.

**B. Scope of the Patent License Agreement**

Defendants argue that patent litigation, as a general matter, is within the scope of the arbitration provision. Dkt. No. 400 at 10. Plaintiff does not refute this general assertion but

rather argues that the patents-in-suit are outside the scope of the agreement.

The '007 patent is not asserted against Defendants, but Defendants argue that the patents-in-suit are "patent disclosures related" to the '007 Patent so as to fall within the scope of the PLA. WMR owned the '759, '868, and '778 patents at the time of the license agreement. DTC eventually acquired these patents, as well as the '007 Patent. Defendants argue that the "related" language should be construed broadly. *Id.* at 9.

Plaintiff responds that the term "Patent" in the PLA is expressly defined to include documents in the "family tree" of the '007 Patent. Dkt. No. 461 at 31. Plaintiff submits that none of the patents-in-suit refer to the '007 Patent among the "Related Applications." *Id.* Plaintiff argues that the parties failure to expressly include the patents-in-suit in the PLA demonstrates an absence of intent to include them. *Id.* at 32-33 (discussing *General Mills Inc. v. Hunt-Wesson Inc.*, 889 F.Supp. 1119, 1120 (D. Minn. 1995)).

Plaintiff further relies on "Schedule 2" of the Software Licensing Agreement ("SLA") executed two months before the PLA. *Id.* at 34. Plaintiff argues the SLA is closely related to the PLA, and Plaintiff notes that "[i]n Schedule 2, the parties defined the term 'Patent' as the '007 patent only." Plaintiff notes that both the PLA and Schedule 2 of the SLA refer to "Patent" in the singular. *Id.* at 34-35.

Plaintiff also presents the declaration of William Randle, the Managing Principal of WMR, in which Mr. Randle avers that WFSC sought a license to the patents-in-suit after the execution of the PLA. *Id.* at 37-38 (citing Ex. J).

Defendants, in their amended reply, argue that the issue of arbitrability should be decided by the arbitrators, but Defendants withdrew this position at the April 16, 2007 hearing on this

motion. Dkt. No. 643 at 4. Defendants argue that because "an assignee stands in no better shoes than the assignor," Plaintiff took the patents-in-suit subject to the PLA. *Id.* at 7. Defendants reiterate that because the patents-in-suit "cover the same subject matter" as the '007 Patent, they are "related" to the '007 Patent. *Id.* at 15. Defendants direct the Court to a "Memorandum written by Randle [of WMR] to Wells Fargo in May 2003." *Id.* (discussing Dkt. No. 643, Ex. F at Ex. A).

Plaintiff, in amended sur-reply, argues that the scope of the agreement is unambiguously limited to the '007 patent. Dkt. No. 640 at 6-9.

## IV.  DISCUSSION

"Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citation omitted). The Court finds no "clear and unmistakable evidence" that the parties before the Court agreed to arbitrate the question of arbitrability. At the April 16, 2007 hearing on this motion, the parties agreed that because Plaintiff was not a signatory to the PLA, this Court is the proper authority to decided the issue of arbitrability. The Court thus proceeds to decide whether the present dispute is arbitrable.

**A. Choice of Law**

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 284 F.3d 1323, 1327-28 (Fed. Cir. 2002) & *Offman v. Provost * Umphrey LLP*, 161 F. Supp. 2d 720, 724 (E.D. Tex. 2001) (in

determining the scope of an arbitration agreement under the FAA, "[f]ederal law in this area requires the court to apply ordinary state law principles of contract construction").

The PLA contains a choice of law provision at Section 9.07 specifying that the agreement will be governed by and interpreted in accordance with the laws of the state of Minnesota.  Dkt. No. 400, Ex. A at 5.  The parties agree that Minnesota state law applies to this Court's construction of the terms of the PLA.  *See* Dkt. Nos. 461 at 13 & 643 at 5.

**B.  Scope of the Patent License Agreement**

The Court must resolve whether the present dispute falls within the arbitration provision of the PLA so as to be "referable to arbitration under such an agreement."  9 U.S.C. § 3.

The PLA grants a license to Licensed Products listed in Schedule 2 of the SLA, as well as "any rights that may be embodied in the Patent."  Dkt. No. 400, Ex. A at 2.  The PLA defines the term "Patent" as follows:

> "Patent" means the U.S. Patent No. 5,265,007, entitled "Central Check Clearing System," issued on or about November 23, 1993, and all applications and patent disclosures related thereto, and all provisionals, reissuances, continuations, continuations-in-part, divisionals, revisions, renewals, extensions, substations, conversions, and reexaminations thereof, and all foreign and international counterparts and equivalents thereof.

*Id.*

"Whether a contract is ambiguous is a legal determination in the first instance." *Blattner v. Forster*, 322 N.W.2d 319, 321 (Minn.1982)).  "[W]here the intention of the parties may be gained wholly from the writing, the construction of the contract is for the court."  *Donnay v. Boulware*, 275 Minn. 37, 44 (Minn. 1966).  Where the language of a contract is ambiguous, "resort may be had to extrinsic evidence, and construction then becomes a question of fact unless

such evidence is conclusive." *Id.*

As discussed herein, the patents-in-suit are not "patent disclosures" within the scope of the PLA. Dkt. No. 400, Ex. A at 2. First, the term "patent disclosures" contained in the PLA's definition of "Patent" does not, on its face, encompass patent documents outside the file history of the '007 Patent. Second, the parties to the PLA could have explicitly included the patents-in-suit in the PLA but chose not to do so. Third, the term "Patent" is used in Schedule 2 of the SLA in a manner consistent with an agreement limited to the '007 Patent. Finally, the parties to the PLA continued to negotiate regarding licenses to the patents-in-suit after the execution of the PLA. Because the patents-in-suit are not "related disclosures," the provisions of the PLA are inapplicable and Plaintiff cannot be compelled to arbitration pursuant to the PLA.

The PLA makes no direct reference to the patents-in-suit. *See* Dkt. No. 400, Ex. A. None of the patents-in-suit are referenced in the '007 Patent. Having been filed before the patents-in-suit, the '007 Patent does not include the patents-in-suit among the "References Cited."[2] None of the patents-in-suit are a continuation of the '007 Patent or otherwise relate back to the application upon which the '007 Patent issued. Even the May 2003 memo proffered by Defendants describes how the '007 Patent covers different subject matter than the patents-in-suit. *See* Dkt. No. 643 at 48. The parties to the PLA appear to have used the term "patent disclosures related thereto" to describe all disclosures made during the prosecution of the '007 Patent. The Court therefore finds no ambiguity on the face of the PLA that would bring the patents-in-suit within the scope of the arbitration provision.

---

[2] The Court acknowledges that the '007 Patent is included among the "References Cited" by the '868 Patent and the '778 Patent. The '868 Patent and the '778 Patent also cite the '007 Patent in the written description. *See* '868 Patent at 7:31-35 & '778 Patent at 9:29-34.

The Court is mindful of the federal policy that "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Safer*, 422 F.3d at 294 (citation omitted). The Court will assume *arguendo* that the PLA's language covering "patent disclosures related" to the '007 Patent is ambiguous, and the Court therefore considers extrinsic evidence. *Donnay*, 275 Minn. at 44. As discussed herein, the Court nonetheless finds that the patents-in-suit are outside the scope of the PLA.

The patents-in-suit had issued at the time WMR and WFSC executed the PLA on or about February 28, 2004. The '759 Patent issued on December 10, 1996. The '868 Patent issued on February 10, 1998. The '778 Patent issued on July 27, 1999. WMR owned all of the patents-in-suit at the time of the execution of the PLA. Dkt. No. 643 at 2; *see also* Dkt. No. 461, Ex. J at ¶ 8. The absence of any direct reference to the patents-in-suit in the PLA strongly suggests that the parties did not intend the PLA to apply to the patents-in-suit. *Cf. General Mills*, 889 F.Supp. at 1125 (adopting Report and Recommendation, which found that "[h]ad the parties desired to provide a license under patents in addition to those [expressly] licensed, they could easily have employed language which would have accomplished that purpose").

The parties to the PLA used the term "Patent" in the singular, which suggests that the PLA only covered one patent. The PLA uses the term five times. Dkt. No. 400, Ex. A. Schedule 2 of the SLA is also probative because the PLA was a side agreement required by Section 6.E(vi) of the SLA. Dkt. No. 461, Ex. G at 7. Although Schedule 2 of the SLA has a Section "6.E." entitled "Patents," the body of that section refers to WMR's "Central Check Clearing System *patent*," identifies that patent by number, and indicates in parentheses that it shall be referred to as the "Patent" throughout Schedule 2. *Id.* at 6-7 (emphasis added). Section

"6.E." of Schedule 2 uses the term "Patent" (which is singular) seven times. *Id.* At least one e-mail from WMSC suggests that the PLA only concerned the '007 Patent because the e-mail refers to the PLA as the "007 side agreement." Dkt. No. 461, Ex. I; *see also* Ex. J at ¶ 4.

Finally, Mr. Randle avers that negotiations in December 2004 and January 2005 included Defendants' "ongoing interest in licensing the additional WMR patents, specifically '759, '868 and '788." Dkt. No. 461, Ex. J at ¶ 5.[3] These meetings purportedly took place after the February 2004 execution of the PLA, and Mr. Randle avers the patents in suit "were discussed at length during these meetings." *Id.* If WMR and WMSC understood the patents-in-suit to be included in the PLA, then WMSC would have had no reason to express interest in licensing them.

The primary goal of contract interpretation is to determine and enforce the intent of the parties. *Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 (Minn. 2003). All of the circumstances discussed above, viewed in light of the express terms of the PLA, demonstrate that the parties to the PLA did not intend it to apply to the patents-in-suit. Because the PLA and its arbitration provision do not apply to the patents-in-suit, Defendants' motion to dismiss or stay pending arbitration should be **DENIED**.

**C. Alternatively, Plaintiff is not a Party That the PLA Can Compel to Arbitrate**

As an alternative to the Court's finding that the patents-in-suit are outside the scope of the PLA, the Court considers whether the arbitration provision of the PLA may be asserted against Plaintiff. The Court assumes without deciding that Defendants are successors to WFSC and are therefore generally entitled to enforce the terms of the PLA.

---

[3] Although Defendants dispute the reliability of Mr. Randle's affidavit because he is currently a member of Plaintiff's board of directors (Dkt. No. 643 at 3), Mr. Randle's affidavit is nonetheless probative.

WMR assigned the patents-in-suit to Plaintiff on February 6, 2006.  Dkt. No. 643 at 29-33.  Plaintiff is not a signatory to the PLA.  *See* Dkt. No. 400, Ex. A.  Plaintiff has not claimed entitlement to any rights under the PLA.  Dkt. No. 461 at 16.  Further, Plaintiff cannot be an assignee of the PLA because it contains an anti-assignment provision, which provided that "neither Party may assign or transfer [the PLA], or any part thereof, without prior written consent of the other Party . . . ."  *Id.* at 4; Dkt. No. 400, Ex. A at 4.  Defendants do not submit any such consent, and anti-assignment provisions are enforceable under either Minnesota or Texas law.  *See, e.g., Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 272 (Minn. 2004) (holding that "our precedent that parties may agree that their contractual rights and obligations are not to be assigned is well-established"); *see also Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n*, 710 S.W.2d 551, 556 (Tex. 1986).

Section 9.06 of the PLA specifies that "successors" to WMR and WFSC shall be bound to the PLA.  Dkt. No. 400, Ex. A at 5.  Plaintiff is not a "successor" to WMR because Plaintiff did not merge with or acquire WMR.  *Niccum v. Hydra Tool Corp.*, 438 N.W.2d 96, 98 (Minn. 1989).  Absent an express or implied assumption, Plaintiff did not become obligated under the PLA when Plaintiff acquired the '007 Patent.  *Id.*; *see also* Minn. Stat. § 302A.661, subd. 4 (2006).[4]  This finding that the PLA did not "run with" the '007 Patent comports with the

---

[4] "*Subd. 4. Transferee liability.*  The transferee is liable for the debts, obligations, and liabilities of the transferor only to the extent provided in the contract or agreement between the transferee and the transferor or to the extent provided by this chapter or other statutes of this state.  A disposition of all or substantially all of a corporation's property and assets under this section is not considered to be a merger or a de facto merger pursuant to this chapter or otherwise.  The transferee shall not be liable solely because it is deemed to be a continuation of the transferor."  The Reporter's Note to this subdivision states that the "general rule [is] that transferees of corporate assets are not liable for the obligations of their transferors."

Congressional policy that patents are to be treated like personal property.  35 U.S.C. § 261; *see also Rhone-Poulenc Agro*, 284 F.3d at 1329 & *Jones v. Cooper Indus., Inc.*, 938 S.W.2d 118, 122 (Tex. App. – Houston 1996) (recognizing patents as "a form of personal property" and finding that "conditions would not 'run with' title to the patents and be binding upon subsequent assignees absent an express or implied assumption by the assignee").  Defendants have not shown that Plaintiff expressly or impliedly assumed the PLA.

Because the Court finds that Plaintiff is not a party that may be compelled to arbitrate pursuant to the PLA, Defendants' motion should be **DENIED**.

## V.  CONCLUSION

For all of the foregoing reasons, Defendants' Motion to Dismiss or Stay Pending Arbitration (Dkt. No. 400) is hereby **DENIED**.  The Court further acknowledges that "orders favoring litigation over arbitration are immediately appealable . . . ."  *See, e.g., United Offshore Co. v. Southern Deepwater Pipeline Co.*, 899 F.2d 405 (5th Cir. 1990); *see also* 9 U.S.C. § 16.  The Court certifies this order for interlocutory appeal pursuant to 9 U.S.C. § 16.

**SIGNED this 24th day of April, 2007.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE