# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

|  |  |
|---|---|
| DATATREASURY CORPORATION, | ) ) ) |
| Plaintiff, | ) ) Civil Action No. 2-06CV-72 ) |
| v. | ) ) |
| WELLS FARGO & COMPANY, et al., | ) ) |
| Defendants. | ) ) ) |

## DEFENDANT UNIONBANCAL CORPORATION'S MOTION FOR CLARIFICATION OR FOR A PROTECTIVE ORDER REGARDING DISCOVERY ORDER (D.E. NO. 597) AND ENLARGEMENT OF TIME

Defendant UnionBanCal Corporation ("UnionBanCal") hereby moves the Court to clarify the scope of its March 15, 2007 Order (D.E. No. 597) ("Order") regarding the discovery of certain documents relating to UnionBanCal's jurisdictional challenge or in the alternative for a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, with regard to these documents.[1] Additionally, because of the voluminous amount of documents sought by DataTreasury Corporation ("DataTreasury"), and the extensive level of review of the records before they can be released, to the extent that UnionBanCal is required to produce them, UnionBanCal moves the Court, pursuant to Rule 6(b) of the Federal Rules of Civil Procedure, for an enlargement of time from April 16, 2007 to June 16, 2007 or 60 days after the Court rules on this Motion, whichever is later, to produce documents in compliance with the Order. On

---

[1] Notwithstanding the filing of this Motion and the denial without prejudice of UnionBanCal's Motion to Dismiss (D.E. 83), UnionBanCal maintains its assertion that this Court does not have personal jurisdiction over UnionBanCal and this Motion should not be viewed as a waiver of that objection.

700672684v3

April 12 and again on April 13, 2007, local counsel for UnionBanCal conferred by telephone with Anthony Bruster, counsel for DataTreasury in an attempt to resolve this issue without court intervention. The parties also met in person on April 13, 2007, but could not resolve the issue. DataTreasury, therefore, opposes this motion.

UnionBanCal seeks a clarification of the Court's order to determine (1) if UnionBanCal must actually produce documents in response to the Order even though UnionBanCal has now admitted the very facts that DataTreasury sought to prove through the requested discovery and that served as a basis for DataTreasury's Motion to Compel and the Court's Order; (2) if the Court intended to require UnionBanCal to produce the responsive documents given their voluminous nature and the burden and cost of having to review, redact, copy and produce the documents and the marginal relevance of the documents; and, (3) did the Court intend to require UnionBanCal to produce all of the documents to DataTreasury even though a great deal of the information contained in the documents is protected from disclosure to third parties by various Federal laws and regulations.

## Background

On June 1, 2006, UnionBanCal filed Defendant UnionBanCal Corporation's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) (D.E. No. 83). DataTreasury responded to this Motion by indicating it needed additional fact discovery related to personal jurisdiction before it could fully respond to UnionBanCal's Motion to Dismiss (D.E. No. 215). The Court granted this request for additional discovery (D.E. No. 394) and UnionBanCal subsequently responded to 13 requests for admission, 18 interrogatories and 24 document requests served by DataTreasury. (Order at 6.) UnionBanCal also put up a corporate representative for deposition in response to DataTreasury's 30(b)(6) notice. (*Id.*)

Despite this voluminous discovery, on February 16, 2007, DataTreasury filed a Motion to Compel Certain Documents Relating to Defendant UnionBanCal Corporation's Jurisdictional Challenge (D.E. No. 523). This Motion sought the production of 9 additional categories of documents. (D.E. No. 523 at 2.) On March 15, 2007, this Court denied the majority of DataTreasury's additional discovery requests, properly noting that "the majority of the additional requests are not relevant to the jurisdictional claims before the Court."[2] (Order at 8.)

This Court did rule, however, that "based on DataTreasury's specific argument that the defendants' corporate representatives revealed that the Boards of Directors of the pertinent parent companies and subsidiaries are overlapping, meet jointly, and have joint committees and shared officers, the Court will allow <u>limited</u> discovery into the minutes and other documents related to the meetings of the Boards of Directors of the pertinent parent companies and subsidiaries." (Order at 8 (emphasis added).) The Court then ordered that UnionBanCal shall produce to DataTreasury by April 15, 2007:

> [A]ll other documents responsive to the previously-served jurisdictional Requests for Production; all minutes and other documents related to all meetings of the Boards of Directors of UnionBanCal and its banking subsidiaries, particularly Union Bank of California; and all minutes and other documents related to all meetings of the various committees (joint or otherwise) that are created at the direction of the Board of Directors for UnionBanCal, Union Bank of California, or both or committees of either UnionBanCal or Union Bank of California that otherwise oversee or coordinate with committees of the other.

(Order at 9.)[3]

---

[2] It should be noted that on March 22, 2007, Judge Folsom issued an Order dismissing without prejudice UnionBanCal's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) (D.E. No. 599).

[3] It is assumed that the Court's reference to "documents responsive to the previously-served jurisdictional Requests for Production" refers only to the documents related to the overlapping or joint committees and shared officers since the Court previously ruled that the vast majority of the additional discovery requested by DataTreasury is overly burdensome and outweighs the likely benefits of discovery. Order at 8.

**Motion for Clarification or for Protective Order**

During the 30(b)(6) deposition of UnionBanCal, the company admitted that certain of the Board Members of UnionBanCal were also board members of Union Bank of California, N.A. ("UBOC") and that the two boards often met jointly. (Anderson Dep. 53:19-54:1, 115:9-116:2, Feb. 7, 2007 (attached hereto as Exhibit 1).) Thus, UnionBanCal has already admitted the very facts that DataTreasury seeks to prove through this additional discovery. UnionBanCal also admitted that certain of its Board level committees were joint committees with the UBOC Board. (Anderson Dep. 73:11-74:7, 77:11-24 (attached hereto as Exhibit 2).) To the extent this testimony was unclear, in the attached Declaration of Julia Brighton, UnionBanCal once again identifies that there are overlapping directors of UnionBanCal and UBOC and that the Boards of the entities sometimes hold joint meetings. (Brighton Decl. ¶¶ 4-5 (attached hereto as Exhibit 3).) There are also six Joint Committees that were created at the direction of UnionBanCal's Board of Directors: Audit; Bank Secrecy Act Compliance; Corporate Governance; Executive Compensation and Benefits; Finance and Capital; and Public Policy. (Brighton Decl. ¶ 5, Exs. A-E.) Thus, UnionBanCal seeks clarification of what additional information must actually be produced in order to establish a fact that has already been admitted by UnionBanCal.

Despite these previous and unequivocal admissions, in an effort to comply with the Court's Order, UnionBanCal searched for and located all of the documents that it believes are potentially responsive to the Court's Order and has identified over 20 feet of highly confidential and proprietary documents. (Brighton Decl. ¶¶ 4-5.) In addition, due to their specific content, federal law prohibits disclosure of many of these documents to third parties and most of the remaining documents examined to date are irrelevant to DataTreasury's personal jurisdiction claim. (Brighton Decl. ¶¶ 6-7.) To the extent they are marginally relevant, their limited

4

relevance is substantially outweighed by the extreme burden in having to review and redact these voluminous documents to remove the barred information. UnionBanCal, therefore, seeks a Protective Order pursuant to Federal Rule of Civil Procedure 26(b)(2)(C)(iii).

UnionBanCal, accordingly, seeks clarification of the scope of documents that must be produced, if any, or in the alterative, moves for a protective order to prevent disclosure of the requested documents.

**I.      UnionBanCal Seeks Clarification of the Scope of the Requested Production**

Despite having previously admitted the very fact sought to be shown through DataTreasury's Motion to Compel, UnionBanCal has identified the stored location of its Board of Director minutes as well as the minutes and documents from the six joint committees identified above. (Brighton Decl. ¶ 4.) UnionBanCal seeks clarification of three aspects of the Court's Order. First, did the Court truly intend to require production of documents that might indicate that UnionBanCal and UBOC have overlapping Directors, sometimes have joint Board meetings and have several joint committees when UnionBanCal has already admitted this fact? Second, assuming that the Court did intend to require such a production, did the Court intend to require UnionBanCal to produce all these documents given their voluminous nature and the burden and cost of having to review, redact and produce the documents in light of the marginal relevance the documents might have to already admitted facts? Lastly, did the Court intend to require UnionBanCal to produce all the documents to DataTreasury notwithstanding several Federal laws and regulations that prohibit UnionBanCal from releasing certain of these documents to third parties?

### A.     UnionBanCal Has Admitted the Facts DataTreasury Seeks To Prove

DataTreasury argued in its Motion to Compel that it needed UnionBanCal's Board of Director Meeting documents and the documents from UnionBanCal's and UBOC's joint committees because, despite asserting that UnionBanCal and UBOC are separate legal entities, during the testimony of UnionBanCal's representative, it was "revealed that the two Board[s] of Directors and their officers are almost completely overlapping, meet jointly, and have joint committees and shared officers" and so DataTreasury argued that "the requested documents are relevant to determine the veracity of these positions."  (Order at 6; D.E. 523 at 2-3.)

There is no such need to verify these positions as UnionBanCal has already fully admitted these facts either through deposition or written discovery.  UnionBanCal freely admitted to the overlapping directors and joint meetings of the Board of Directors.  (Anderson Dep. 53:19-54:1, 115:9-116:2, 73:11-74:7, 77:11-24; Brighton Decl ¶¶ 4-5; Def.'s Supp. Objs. & Resps. to Pl.'s First Interrogs. Re. Juris. Disc., Feb. 14, 2007, at 2-4 (hereinafter "Def.'s Supp. Resps. Interrogs.") (attached hereto as Exhibit 4).)  UnionBanCal also admitted that certain Board of Director level committees of UnionBanCal were joint committees with UBOC.  (Anderson Dep. 73:11-74:7, 77:11-24.)  To the extent there was any ambiguity in the deposition testimony, the Declaration of Julia Brighton clarifies that there are six UnionBanCal Board of Director Committees that are Joint Committees with the UBOC Board of Directors.  (Brighton Decl. ¶ 5.)  Similarly, shortly before DataTreasury filed its Motion to Compel, UnionBanCal provided DataTreasury with supplemental interrogatory responses that expanded on the Anderson deposition testimony and identified all of the overlapping directors and officers between UnionBanCal and UBOC.  (Def.'s Supp. Resps. Interrogs. at 2-4.)  Admittedly,

UnionBanCal was not clear in its Opposition to DataTreasury's Motion to Compel that all of this information had been freely admitted by UnionBanCal because our Opposition to the Motion to Compel focused on the marginal relevancy of the information to the personal jurisdiction analysis. (*See* D.E. No. 575 at 8-12.) UnionBanCal, therefore, now seeks clarification from the Court as to whether, in light of the admissions highlighted above, and the stated reason for DataTreasury to seek production of the information, UnionBanCal still has any obligation to produce documents so that DataTreasury can verify the previously admitted fact that UnionBanCal and UBOC have overlapping Directors that meet jointly and have joint committees and shared officers. (*See* Order at 6; D.E. 523 at 2-3.)

### B. The Documents Sought Are Voluminous and the Burden of Reviewing and Producing the Documents Substantially Outweighs any Benefit

In a good faith effort to comply with the Court's Order, UnionBanCal has identified what it believes to be all of the documents responsive to the Court's Order. (Brighton Decl. ¶ 4.) This includes the minutes and records of UnionBanCal's Board of Directors and the minutes and records of the six joint committees. (*Id*.) The amount of responsive documents is staggering, however. As explained in the Brighton Declaration, the mass of potentially responsive documents since 2002 are more conveniently measured in feet of stacked legal-sized folders rather than in number of pages. (Brighton Decl. ¶ 5.) To exemplify the volume of minutes and records at issue, the following are approximate measurements of stacked documents relating to the committees that must arguably be produced: Boards of Directors: 4 feet; Audit Committee: 7 feet, 11 inches; Bank Secrecy Act Compliance Committee: 2 feet; Corporate Governance Committee: 1 foot; Executive Compensation and Benefits Committee: 2 feet, 4 inches; Finance and Capital Committee: 3 feet; and Public Policy Committee: 1 foot. (*Id*.) Stacked end to end, these documents would reach over 20 feet in length.

The potential scope of responsive documents was not known at the time the Motion to Compel was briefed by the parties, as the previous DataTreasury discovery requests were even broader and implicated almost every document in the possession of either UnionBanCal or UBOC, and so UnionBanCal was unable to ascertain the specific burdensome nature of the DataTreasury requests as ultimately ordered by this Court. Now that the Court has issued its Order, and UnionBanCal has identified the potential responsive documents, it is clear that the burden of having to review, redact, copy and produce this 20 foot plus document collection greatly outweighs any relevance these documents may have, especially in light of UnionBanCal's previous admissions. As the Court succinctly stated in its Order when it denied the remainder of DataTreasury's requested relief, "[e]ven if the Court assumes the requests are relevant to Defendants' jurisdictional challenges based on DataTreasury's assertions of alter ego, the Court finds the burden or expense of . . . DataTreasury's proposed discovery outweighs the likely benefits of the discovery." (Order at 8 (citing FED. R. CIV. P. 26(b)(2)(iii)).) UnionBanCal, therefore, seeks clarification as to whether or not it must still review these 20 plus feet of records given the extreme burden and expense of doing so and the minimal relevance of any information that these documents might contain.

The burden and expense of reviewing these documents is exacerbated by the fact that the records, which are UnionBanCal's most proprietary and confidential documents, are riddled with confidential information and information that cannot legally be disclosed to third parties. (Brighton Decl. ¶¶ 7-8.) As explained more fully below, the Bank Secrecy Act and other Federal laws and regulations prohibit UnionBanCal from disclosing certain documents or information to anyone outside of the company. The information contained in these documents is also highly confidential information that may contain trade secrets or other confidential commercial

information and they also contain information that has nothing to do with DataTreasury's personal jurisdiction allegations. (Brighton Decl. ¶¶ 7-8.) The documents, especially the Board of Director minutes, also contain a great deal of information covered by the attorney-client privilege or work-product doctrine. (Brighton Decl. ¶¶ 7-8.)

A very cursory review of the potentially responsive documents revealed that this confidential, secret, and privileged information is interspersed throughout the responsive documents. (Brighton Decl. ¶ 8.) Prior to any production, therefore, given the severe sanctions for violating the non-disclosure provisions of the various laws and regulations applicable to banks and bank holding companies, UnionBanCal's attorneys will have to conduct a page by page, line by line review of the documents to make sure that no improper information is released. (*Id*.) This review will be extremely costly and time consuming, and given the previous admissions and marginal relevance of any information produced, the Court should clarify its Order to indicate that no additional documents must be produced to prove the veracity of UnionBanCal's claim that it is an independent company from UBOC even though the two companies admittedly have overlapping directors and officers, the Boards of the two companies sometimes meet jointly and the Boards of the two companies have six joint committees. (Brighton Decl. ¶¶ 4, 5, 7, and 8.) These facts are already admitted and any additional production is merely cumulative and oppressive.

    **C.    Numerous Federal Laws and Regulations Prevent the Disclosure of Portions of the Requested Documents**

Bank holding companies as well as banks are highly regulated entities. They must comply with numerous laws related to the privacy of customer data, the reporting of money laundering or counterfeiting activities, and must submit to regular examinations by bank regulators. A myriad of Federal laws and regulations govern what types of information these

9

companies must maintain and what types of information the companies are prohibited from disclosing.  Given the pervasive nature of these regulations, the minutes and records of UnionBanCal's Board of Directors and the six joint committees contain a great deal of information that is protected from disclosure and must be redacted prior to production.  (*Id.*)

For example, the Bank Secrecy Act, 31 U.S.C. §§ 5311-5330, 12 U.S.C. §§ 1818(s), 1829(b), 1951-1959, and its implementing regulation, 31 C.F.R. § 103, prohibit the disclosure of certain confidential information to third parties.  Specifically, disclosing the existence or filing of Suspicious Activity Reports ("SAR") is prohibited by 31 C.F.R. § 103.18(e)[4] and 31 U.S.C. § 5318(g)(2); *see F.D.I.C. v. Flagship Auto Ctr., Inc.*, No. 3:04 CV 7233, 2005 WL 1140678, at *6 (N.D. Ohio May 13, 2005) (denying defendant's motion to compel discovery of suspicious activity reports held by the FDIC pursuant to the Bank Secrecy Act).  The documents identified as potentially responsive to the Court's Order contain numerous SARs or references to SARs which by law, cannot be produced and must be redacted.  (Brighton Decl. ¶ 6.)

Additionally, because UnionBanCal is regulated by the Board of Governors of the Federal Reserve Board, disclosing confidential supervisory information, including reports of examination or any portion of such reports, is prohibited by 12 C.F.R. §§ 261.2(c)(1), 261.20(g),[5]

---

[4] Regulation 31 C.F.R. § 103.18(e) states as follows:

Confidentiality of reports; limitation of liability. No bank or other financial institution, and no director, officer, employee, or agent of any bank or other financial institution, who reports a suspicious transaction under this part, may notify any person involved in the transaction that the transaction has been reported. Thus, any person subpoenaed or otherwise requested to disclose a SAR or the information contained in a SAR, except where such disclosure is requested by FinCEN or an appropriate law enforcement or bank supervisory agency, shall decline to produce the SAR or to provide any information that would disclose that a SAR has been prepared or filed, citing this paragraph (e) and 31 U.S.C. § 5318(g)(2), and shall notify FinCEN of any such request and its response thereto. A bank, and any director, officer, employee, or agent of such bank, that makes a report pursuant to this section (whether such report is required by this section or is made voluntarily) shall be protected from liability for any disclosure contained in, or for failure to disclose the fact of such report, or both, to the full extent provided by 31 U.S.C. § 5318(g)(3).

[5] Title 12, section 261.20(g) of the C.F.R. reads as follows:

and 261.22(e).[6]  As defined in 12 C.F.R. § 261.2(c)(1), "confidential supervisory information"

means:

> (i) Exempt information consisting of reports of examination, inspection and visitation, confidential operating and condition reports, and any information derived from, related to, or contained in such reports;
> (ii) Information gathered by the Board in the course of any investigation, suspicious activity report, cease-and-desist orders, civil money penalty enforcement orders, suspension, removal or prohibition orders, or other orders or actions under the Financial Institutions Supervisory Act of 1966, Pub.L. 89-695, 80 Stat. 1028 (codified as amended in scattered sections of 12 U.S.C.), the Bank Holding Company Act of 1956, 12 U.S.C. 1841 et seq., the Federal Reserve Act, 12 U.S.C. 221 et seq., the International Banking Act of 1978, Pub.L. 95-369, 92 Stat. 607 (codified as amended in scattered sections of 12 U.S.C.), and the International Lending Supervision Act of 1983, 12 U.S.C. 3901 et seq.; except--
>    (A) Such final orders, amendments, or modifications of final orders, or other actions or documents that are specifically required to be published or made available to the public pursuant to 12 U.S.C. 1818(u), or other applicable law, including the record of litigated proceedings; and
>    (B) The public section of Community Reinvestment Act examination reports, pursuant to 12 U.S.C. 2906(b); and
> (iii) Any documents prepared by, on behalf of, or for the use of the Board, a Federal Reserve Bank, a federal or state financial institutions supervisory agency, or a bank or bank holding company or other supervised financial institution.

Many of the records at issue are replete with this confidential supervisory information and so must be heavily redacted before potential production.  (Brighton Decl. ¶¶ 7-8.)

---

All confidential supervisory information or other information made available under this section [to supervised financial institutions and financial institution supervisory agencies] shall remain the property of the Board. No supervised financial institution, financial institution supervisory agency, person, or any other party to whom the information is made available, or any other officer, director, employee or agent thereof, may disclose such information without the prior written permission of the Board's General Counsel except in published statistical material that does not disclose, either directly or when used in conjunction with publicly available information, the affairs of any individual, corporation, or other entity. No person obtaining access to confidential supervisory information pursuant to this section may make a personal copy of any such information; and no person may remove confidential supervisory information from the premises of the institution or agency in possession of such information except as permitted by specific language in this regulation or by the Board.

[6] Such disclosure is further prohibited by 12 C.F.R. § 261.22(e):
  All confidential supervisory information made available under this section [to others via requests for disclosure] shall remain the property of the Board. Any person in possession of such information shall not use or disclose such information for any purpose other than that authorized by the General Counsel of the Board without his or her prior written approval.

Further, certain of UnionBanCal's requested documents may also relate to UBOC. Because UBOC is regulated by the Office of the Comptroller of the Currency ("OCC"), which monitors national bank compliance with the Bank Secrecy Act and 31 C.F.R. § 103, disclosure by UnionBanCal of certain information pertaining to UBOC that is deemed "non-public OCC information," such as reports of examination, is prohibited by 12 C.F.R. §§ 4.32(b)(2), 4.36(d).[7] Under 12 C.F.R. § 4.32(b)(2), "Non-public OCC information . . . [i]s the property of the Comptroller. A report of examination is loaned to the bank or holding company for its confidential use only." Again, the documents at issue contain numerous interspersed instances of this information that must be redacted on a line by line, page by page basis. (Brighton Decl. ¶¶ 7-8.)

UnionBanCal, therefore, requests a clarification of the Order to make certain that UnionBanCal is not obligated to produce information that is prohibited from disclosure by the various Federal Laws and regulations.

## II. UnionBanCal Is Entitled to a Protective Order Because the Production of the Requested Documents Is Overly Burdensome and Is Not Relevant to Personal Jurisdiction

In the event the Court chooses not to clarify the previous Order as outlined above, then UnionBanCal requests a protective order preventing the production of documents from the Board of Directors or joint committees because any marginal relevance these documents may have is

---

[7] Section 4.36(d) prohibits the unauthorized disclosure of non-public OCC information:

> All non-public OCC information remains the property of the OCC. No supervised entity, government agency, person, or other party to whom the information is made available, or any officer, director, employee, or agent thereof, may disclose non-public OCC information without the prior written permission of the OCC, except in published statistical material that does not disclose, either directly or when used in conjunction with other publicly available information, the affairs of any individual, corporation, or other entity. Except as authorized by the OCC, no person obtaining access to non-public OCC information under this section may make a copy of the information and no person may remove non-public OCC information from the premises of the institution, agency, or other party in authorized possession of the information.

substantially outweighed by the burden of having to review, redact and produce these voluminous documents. Fed. R. Civ. P. 26(b)(2)(C)(iii). As the Court recognized in its Order, the vast majority of the additional discovery requested by DataTreasury in its Motion to Compel is overly burdensome and outweighs the likely benefits of discovery. (Order at 8.) The Court did require UnionBanCal to produce documents based upon "DataTreasury's specific argument that the defendants' corporate representatives revealed that the Boards of Directors of the pertinent parent companies and subsidiaries are overlapping, meet jointly, and have joint committees and shared officers." (Order at 8.)

Assuming that all of the documents produced by UnionBanCal will merely further establish that UnionBanCal and UBOC have overlapping Directors and have joint Board of Director meetings and have six joint committees, this additional information adds nothing to the admissions already made in this regard and the burden and expense involved in such an exercise is simply unnecessary. Since the information sought is at best cumulative, and most likely irrelevant,[8] UnionBanCal should be protected from having to produce it, especially given the burden of producing the documents.

---

[8] Having overlapping directors, joint meetings and joint committees are insufficient to establish alter ego or personal jurisdiction. *Nutrition Physiology Corp. v. Enviros, Ltd.*, 87 F. Supp. 2d 648, 655-56 (N.D. Texas 2000) (finding it improper to subject a parent corporation to personal jurisdiction based on the subsidiary's acts, regardless of whether the subsidiary is wholly owned and a commonality of officers or directors exists, after undergoing a Federal Circuit law analysis and turning to non-binding Fifth Circuit law only for "some guidance") (citing *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983) ("[W]e have noted often that 100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations.")); *see 3D Systems, Inc. v. Aarontech Laboratories, Inc.*, 160 F.3d 1373, 1380 (Fed. Cir. 1998) (exercising of personal jurisdiction by California over the parent, in an action alleging patent infringement, would violate due process because the parent did not purposefully direct any activities at California residents, even though parent's name appeared on the letterhead used by the subsidiary; further, the plaintiff "has not presented us with any controlling precedent which compels us to pierce the corporate veil, or to conclude that the defendants are alter egos"). The information sought, and the facts that DataTreasury seeks to verify, are simply irrelevant.

Allowing full production of these materials, therefore, is overly burdensome and runs counter to the Order's stated purpose to "allow <u>limited</u> discovery into the minutes and other documents related to the meetings of the Boards of Directors of the pertinent parent companies and subsidiaries." (Order at 8 (emphasis added).) At the time the original Motion to Compel was briefed, UnionBanCal was not aware of the incredible volume of potentially responsive documents or the massive undertaking that must be commenced to review the documents for privilege and for compliance with the various Federal laws and regulations. Now that this information is known, the overly burdensome nature of the discovery requested by DataTreasury clearly outweighs any benefit that the documents may provide – due to their marginal relevancy, at best – in resolving the issue of whether UnionBanCal is subject to the Court's personal jurisdiction. Fed. R. Civ. P. 26(b)(2)(C)(iii). Accordingly, the Court should issue a Protective Order that would prevent UnionBanCal from having to produce any additional documents in response to DataTreasury's Motion to Compel.

### III.   UnionBanCal's Production, If Any, Should Be Limited

If the Court is unwilling to grant a blanket protective order, the Court should at least clarify and limit the scope of the production so that UnionBanCal does not have to produce any documents protected from disclosure by any federal laws or regulations and that only the redacted minutes of any joint UnionBanCal and UBOC Board of Directors meetings need to be produced and then only if they implicate joint ownership and control.

The work of the Audit, Corporate Governance, Bank Secrecy Act Compliance, Executive Compensation and Benefits, Finance and Capital, and Public Policy Committees are all irrelevant to a determination of alter ego and personal jurisdiction. These Committees also deal with

highly sensitive and proprietary information and information that cannot legally be disclosed to third parties.

The Audit Committee assists the Board in the oversight of (1) the integrity of the consolidated financial statements of UnionBanCal and its subsidiaries (the "Company"), (2) the qualifications, independence and the performance of the Company's independent and internal auditors, (3) the Company's compliance with legal and regulatory requirements, and (4) the major financial risks assumed by the Company. (Brighton Decl. Ex. A at 1.) Much of the business conducted by this Committee is subject to the various laws and regulations outlined above and cannot legally be shared with third parties such as DataTreasury. (Brighton Decl. ¶¶ 6-7.) Any information not covered by these law and regulations would be irrelevant to the determination of personal jurisdiction or alter ego. Even if this information was marginally relevant, this relevance is substantially outweighed by the burden of having to review the nearly 8 feet of Audit Committee records. (Brighton Decl. ¶ 5.)

The Corporate Governance Committee exists to identify, screen and recruit potential new board members. (Brighton Decl. Ex. B at 1.) As such, the information reviewed and generated by this Committee is highly confidential and is not in any way relevant to a personal jurisdiction or alter ego analysis.

The Bank Secrecy Act Compliance Committee deals with compliance with the Bank Secrecy Act and virtually all of its records are prohibited from disclosure. (Brighton Decl. ¶¶ 5-6.) This information is not at all relevant to the alter ego or personal jurisdiction analysis and any marginal relevance is substantially outweighed by the burden of having to carefully review 2 feet of records. (Brighton Decl. ¶ 5.)

The Executive Compensation and Benefits Committee deals with the proper determination of the salary and benefits of the company's executives. (Brighton Decl. Ex. C at 1.) This information is highly sensitive and completely irrelevant to personal jurisdiction or alter ego and any marginal relevance is outweighed by the burden of having to review close to 2-1/2 feet of documents. (Brighton Decl. ¶¶ 5, 6, 7.)

The Finance and Capital Committee focuses on the Company's financial planning, financial performance as compared to Plan, financial processes, capital management, dividend and investment policies, and Asset and Liability Management policies. (Brighton Decl. Ex. D at 1.) This information is highly proprietary and confidential and will not assist DataTreasury in establishing jurisdiction. (Brighton Decl. ¶ 7.) Even if it were marginally relevant, this relevance is substantially outweighed by the burden of having to carefully review and redact approximately three feet of the Committee's records. (Brighton Decl. ¶ 5.)

Lastly, the Public Policy Committee is tasked with identifying relevant political, social, economic, employment and environmental emerging issues and trends and UnionBanCal's response to them, among other things. (Brighton Decl. Ex. E at 1.) The activities of this committee are wholly irrelevant to a determination of alter ego or personal jurisdiction and any marginal relevance is outweighed by the burden of having to review over 12 inches of documents. (Brighton Decl. ¶ 5.)

In sum, to the extent the Court is unwilling to grant a blanket Protective Order, given the marginal relevance of this information and the extreme burden of reviewing and producing this information, UnionBanCal requests that the Court modify its Order to require that UnionBanCal

need only produce the minutes of any joint Board of Director meetings if they implicate joint ownership and control and that UnionBanCal not have to provide any additional information.[9]

**Motion for Enlargement of Time**

To the extent the Court requires UnionBanCal to produce any documents, UnionBanCal also moves for an enlargement of time to produce any documents in compliance with the Order. As discussed above, the documents sought by DataTreasury and purportedly required by the Order, to the extent that UnionBanCal must ultimately produce them, are incredibly voluminous and riddled with information that UnionBanCal is prohibited by law from disclosing.  Reviewing these myriad of documents for privilege and responsiveness, all the while being cognizant of the parameters of the Bank Secrecy Act and other federal statutes and regulations, will take an inordinate amount of time not provided for by the Order.  Therefore, pursuant to Rule 6(b) of the Federal Rules of Civil Procedure, UnionBanCal requests that the Court extend the Order's production deadline from April 16, 2007 to June 16, 2007 or 60 days after the Court rules on this Motion, whichever is greater.  Given the fact that the Court has denied UnionBanCal's Motion to Dismiss without prejudice, DataTreasury will not be prejudiced by this delay as the information DataTreasury currently seeks would only be relevant if and when UnionBanCal reasserts its Motion to Dismiss for lack of personal jurisdiction.  (*See* D.E. No. 83.)

**IV.   Conclusion**

For the foregoing reasons, UnionBanCal respectfully requests that the Court grant (1) UnionBanCal's Motion for Clarification or in the alternative for a Protective Order regarding the scope of the discovery required by the Court's Order, and (2) UnionBanCal's motion for an

---

[9] To the extent that UnionBanCal is required to review and produce documents from any of the Joint Committees, given the burdensome nature of this activity, we request that DataTreasury be required to pay the costs and attorneys fees for this review and production.

enlargement of time to produce documents in compliance with the Order, to the extent any need to be produced, from April 16, 2007 to June 16, 2007 or 60 days after the Court rules on this Motion, whichever is greater.

                Respectfully submitted,

April 13, 2007                /s/ Scott J. Pivnick
                                  Raymond L. Sweigart (pro hac vice)
                                  Scott J. Pivnick (pro hac vice)
                                  PILLSBURY WINTHROP SHAW PITTMAN LLP
                                  1650 Tysons Blvd.
                                  McLean, VA  22102-4859
                                  T: (703) 770-7900
                                  F: (703) 905-2500
                                  raymond.sweigart@pillsburylaw.com
                                  scott.pivnick@pillsburylaw.com

                                  Jennifer Parker Ainsworth
                                  Texas Bar No. 00784720
                                  WILSON, SHEEHY, KNOWLES, ROBERTSON &
                                  CORNELIUS, P.C.
                                  909 ESE Loop 323
                                  Suite 400
                                  Tyler, Texas  75701
                                  T: (903) 509-5000
                                  F: (903) 509-5092
                                  jainsworth@wilsonlawfirm.com

                                  Richard Hogan
                                  Texas Bar No. 09802010
                                  PILLSBURY WINTHROP SHAW PITTMAN LLP
                                  2 Houston Center
                                  909 Fannin Street 22nd Floor
                                  Houston TX 77010
                                  T: (713) 425-7327
                                  F: (713) 425-7373
                                  richard.hogan@pillsburylaw.com

                                  *Attorneys for Defendant*,
                                  *UnionBanCal Corporation*

## CERTIFICATE OF SERVICE

The undersigned certifies that the forgoing document was filed electronically in compliance with Local Rule CV-5(a). As such, *Defendant UnionBanCal Corporation's Motion for Clarification or for a Protective Order Regarding Discovery Order (D.E. No. 597) and Enlargement of Time* was served on all counsel who have consented to electronic service, Local Rule CV-5(a)(3)(A), on this the 13th day of April, 2007.

/s/   Scott J. Pivnick

## CERTIFICATE OF CONFERENCE

Counsel for Defendant UnionBanCal hereby certifies that Jennifer Ainsworth, local counsel for UnionBanCal, contacted local counsel for the Plaintiff, and Plaintiff opposes this motion.

/s/ Scott J. Pivnick