IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DATATREASURY CORPORATION | § | |
| *PLAINTIFF* | § | |
| vs. | § | No. 2:06cv72 |
| | § | |
| WELLS FARGO & COMPANY, *et al* | § | JURY TRIAL DEMANDED |
| *DEFENDANTS* | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS HSBC
NORTH AMERICA HOLDINGS INC.'S AND HSBC BANK USA, N.A.'S
MOTION FOR PROTECTIVE ORDER AND FOR EXTENSION OF TIME**

Plaintiff DataTreasury Corporation ("DTC") files this Response to HSBC North America Holdings Inc.'s ("HSBCNAH") and HSBC Bank USA, N.A.'s ("HSBC USA") Motion for Protective Order and for Extension of Time, and would respectfully show this Honorable Court as follows:

## I. INTRODUCTION

On February 16, 2007 DTC filed its Amended Response to HSBCNAH's Motion to Dismiss, and a Motion to Compel additional documents relevant to the jurisdictional discovery that the Court authorized DTC to conduct. On March 15, 2007 the Court entered an Order granting in part DTC's Motion to Compel additional documents, and required HSBCNAH to produce "all minutes and other documents related to all meetings of the Boards of Directors of HSBCNAH and its banking subsidiaries" within thirty days. Twenty-eight days later – and on the eve of the Court imposed deadline to produce these documents – HSBCNAH made a deficient document production that does not satisfy the Court's March 15th Order and notably filed their Motion for Protective Order without fulfilling this Court's

requirements for a meet and confer to discuss this production. Defendants' Motion should be denied because they failed to meet this Court's requirements in filing this Motion, and because their excuses for not producing the proper documents are lacking in merit as explained below.

## II.     ARGUMENT

### A.     Defendants' Failure to Meet and Confer in Accordance with this Court's Requirements Justifies the Court Dismissing Defendants' Motion

Undoubtedly, this Court sees more discovery disputes – especially in patent infringement cases – than any Court should care for. For this very reason, this Court has implemented meet and confer requirements in an attempt to discourage the filing of frivolous discovery motions or at least to narrow the issues that are required for the Court's consideration. At the outset of this litigation, on October 25, 2006, the Court issued an "Order from Scheduling Conference and Docket Control Order." *See* Exhibit 1. This Order, often referred to as a Discovery Limitations Order, contains the following paragraph concerning the meet and confer requirements for this case:

> Pursuant to this District's Local Rules, **the Court will refuse to entertain** any Motion pertaining to discovery filed after the date of this Order unless the movant advises the Court within the body of the motion that counsel for the parties have **first met and conferred in person, with local counsel present**, in a good faith effort to resolve the matter. This is only required for parties involved in the dispute.

*See id.*, pgs. 5-6 (emphasis added). This Court's mandates regarding discovery disputes are clear and well-intentioned; parties will not have their discovery disputes heard unless they first meet (or arguably construed to, at a minimum, talk) in person to try and work the issues out in advance of presenting them to the Court.

Defendants failed to make any such effort before presenting this Motion to the Court. Instead, at 3:18 p.m. on Thursday, April 12 – only two days before their production was due – Defendants counsel sent an email to Plaintiff describing in two sentences the Motion they were preparing to file, and informing Plaintiff that Defendants "will assume that you oppose the motion, unless you advise otherwise by 2:00 p.m. on Friday, April 13, 2007." *See* e-mail attached as Exhibit 2. In other words, Defendants, at best, made a half-hearted attempt to barely describe their version of the dispute, and issued an ultimatum that they would be filing the discovery motion in less than 24 hours unless they heard otherwise. Such conduct is hardly consistent with the Court's Discovery Limitation Order requirement for in-person meetings to discuss these types of disputes.

Seeking to comply with the Court's Order, and potentially eliminate entirely or at least narrow the scope of the dispute, Plaintiff's counsel immediately responded to this ultimatum email by asking for more information on the nature of the dispute. Specifically, DTC responded that it wanted "to ensure that we…satisfy the demands of the Protective Order for our meet and confer. We look forward to hearing from you." *See* e-mail attached as Exhibit 2. However, instead of satisfying the requirements of this Court's Order by simply contacting DTC to discuss the merits of the issue, Defendants waited until 12:33 p.m. the following day – a time when Plaintiff's counsel and many other lawyers in the Eastern District were en route to Marshall for Judge Everingham's investiture ceremony – to respond. At that time, sent "a draft of a summary of the documents which address your questions," and informed DTC that Defendants "will file the motion as 'opposed'" without any further explanation, conferring, or discussion. Defendants never called, offered further discussion,

or otherwise conferred with DTC.  Later that afternoon, Defendants filed the Motion for Protective Order, without any further explanation of its merits to DTC.

It is well-settled that this Court has inherent power to control its docket to administer its cases in a judicially efficient manner.  *See Republic Ins. Co. v. Paico Receivables LLC*, 383 F.3d 341, 348 (5th Cir. 2004); *see also Biax Corp. v. Fujitsu Comp. Sys. Corp.*, 2007 U.S. Dist. LEXIS 12973 (E.D. Tex. (Ward, J.)) (February 26, 2007).  The main purpose behind this Court's in-person meet and confer requirement for all discovery motions is to avoid burdening the Court with issues that the parties might be able to work out in advance.[1]  *See Forgent Networks, Inc. v. Echostar Tech. Corp.*, 2006 U.S. Dist. Lexis 88933 (E.D. Tex. (Davis, J.)) (November 2, 2006).  Allowing Defendants' Motion to proceed will encourage parties to ignore this Court's Orders on meet and confer requirements, and ultimately lead to more discovery motions being filed – the very effect Judge Davis wrote about in disdain in the *Forgent Networks* opinion.  Because this Court's October 25, 2006 Order informed all parties that "the Court <u>will refuse to entertain</u> any Motion pertaining to discovery" where its conference requirements were not met, and because Defendants wholly failed to satisfy these requirements, Defendants' Motion for Protective Order should be denied.

    **B.**     **Even if the Motion is Considered, Defendants Should Be Required to Produce the Documents Previously Ordered to be Produced**

---

[1] When reading Defendants' Motion for Protective Order, it might appear that Defendants had already provided the disputed documents at issue to DTC for DTC's review before filing their discovery Motion.  For example, Defendants' Motion states that "HNAH and HBUS have produced to DataTreasury copies of minutes and other documents," and "HNAH has produced the redacted documents to Plaintiff pursuant to the March 15, 2007, Order."  *See* Defendants' Motion for Protective Order at paragraphs 3 and 14.  However, contrary to that impression, Defendants never provided the disputed documents to DTC before filing their Motion.  Instead, Defendants produced the redacted documents by certified mail sent on April 13, 2007 – the same date as their e-mail meet and confer – thus providing no opportunity for DTC to review the documents and discuss the merits of the Motion before Defendants filed it.

Even if the Court chooses to entertain Defendants' Motion for Protective Order despite the language of the Discovery Limitations Order, Defendants' Motion should be denied. In essence, Defendants make two arguments in their Motion. First, they attempt to re-argue an issue they already lost, by claiming that these documents *that the Court has already ordered them to produce* are too irrelevant for production – i.e., that the Court made a mistake by ordering the documents produced the first time. Secondly, Defendants argue that even though the Court has entered a Protective Order in this case that would ensure the confidentiality of all documents produced, the disputed documents are somehow "super secret" and are thus immune from disclosure at all. Having found no "super secret document" privilege to cite, Defendants resort to a smattering of Federal Regulations to try and support their position that this Court's previous guarantees of confidentiality are no longer sufficient. Both of these reasons are insufficient, and Defendants' Motion should be denied.

Defendants first inform the Court that they have taken the liberty of redacting information from their document production that "has no relationship to the issues identified as potentially relevant by the Court in the March 15, 2007 Order." *See* Defendants' Motion, paragraph 3. In other words, Defendants have removed information from documents that the Court already ordered them to produce, not on the grounds of a privilege, but rather on Defendants unilateral determination that the information was not relevant. Such a redaction is improper, and Defendants offer the Court no authority to support the position that they can redact information from documents they have been previously ordered to produce simply because they unilaterally believe the information is irrelevant (as opposed to privileged). Defendants have already had a chance to make the arguments that these documents are not

relevant to the jurisdictional inquiry. In fact, Defendants made those arguments and lost them when the Court ordered the instant documents to be produced. Defendant's offer no new arguments on the relevance point than what they have previously advanced (and which the Court has already rejected). As such, a one-sided (and quite biased) determination of "irrelevance" is not sufficient grounds to grant the requested Protective Order.

In addition to re-urging their previously unconvincing and defeated relevance arguments, Defendants now claim that the redacted information is so sensitive and confidential that its disclosure "would severely harm HNAH and HBUS's competitive business position and undermine the ability of the Boards from conducting business in an open and candid manner." *See* Defendants' Motion, paragraph 9. In support of this new argument, Defendants claim that regulations from Title 12 of the C.F.R. (concerning their status as Federal Reserve Board-regulated institutions) relieve Defendants of the obligation to produce the redacted information. This second argument is likewise unpersuasive.[2]

To begin with, none of Defendants' cited references explain this very simple question: how is the information redacted by Defendants of such a sensitive nature that it will not be protected by the Court's Protective Order in this case? This Court entered a Protective Order on November 20th, 2006, after all parties – including these Defendants – agreed to it. *See* Exhibit 3. That Protective Order defines "Confidential Information" as:

---

[2] In addition to the remaining discussion in this Response on Defendants' previous agreements in this case's Protective Order, Defendants' cherry-picked provisions of Title 12 of the C.F.R. do not support the arguments they make. For example, Defendants claim that because they are regulated by the Board of Governors of the Federal Reserve, they are prohibited from disclosing confidential information. *See* Defendants' Motion, paragraph 6. However, Defendants failed to cite to the Court one of the very first provisions in Title 12 – 12 C.F.R. § 261.1(a)(3) – which reads: "The Board has also determined <u>that it is authorized by law to disclose information</u> to a law enforcement or other federal or state government agency that has the authority to request and receive such information in carrying out its own statutory responsibilities, <u>or in response to a valid order of a court of competent jurisdiction</u> or of a duly constituted administrative tribunal." *See id.* (emphasis added). Thus, Defendants' fears of running afoul of these regulations are misplaced, as this Court has entered just such an Order already.

> "technical information such as product design and operation and manufacturing techniques or processing information, **trade secrets**, formulas, research and development information, source code, object code, customer lists, sales and cost information, and pricing information, patent license agreements, or information that was generated in connection with, or reveals the content of, patent licensing negotiations; **information that a party has treated as confidential and is not subject to public disclosure**; information within the definition of trade secret as set forth in Section 1(4) of the Uniform Trade Secret Act (1985); and **any other information that would qualify as Confidential pursuant to** Federal Rule of Civil Procedure 26(c) **or any other legal standard**."

*See id.* at page 2-3 (emphasis added). The Protective Order goes on to discuss how "Confidential Information" as defined in the Order can be produced by following certain requirements.

Defendants' current Motion for Protective Order wholly fails to explain why Defendants agreed to the Protective Order in this case that controls production of "Confidential Information" – which specifically includes "any other information that would qualify as Confidential pursuant to…<u>any other legal standard</u>" – and yet they now contend that their information is "too confidential" to be produced. Fatally, in their Motion Defendants merely cite "other legal standards" for their claims of confidentiality, such as C.F.R. provisions or case law. However, Defendants have already stipulated to an agreed way to deal with information that is confidential under "other legal standards" by agreeing to the Protective Order entered by this Court.[3]

Defendants claim in their Motion that the redacted information comprises "trade secret, confidential research, development or commercial information," and that disclosure of

---

[3] If some of Defendants' documents contain information protected from disclosure by the attorney-client privilege, DTC certainly does not argue that Defendants must produce that privileged information. However, DTC is unable to determine what privilege – if any at all – might apply to the redacted materials, because many of them are simply blank pages that say "Redacted" and nothing more. While proper privilege assertions are appropriate to protect privileged information, the majority of Defendants' Motion – and DTC's arguments herein – are directed toward Defendants' unilateral redaction of information that is not privileged, but rather simply adjudged by Defendants to be irrelevant and "too confidential."

the redacted information "would reveal private, confidential, and proprietary information." *See* Defendants' Motion at paragraphs 9 and 11. Yet, Defendants ignore entirely the fact that they previously agreed to the Protective Order in this case that governs the parties' productions of "trade secrets" and "information that a party has treated as confidential and is not subject to public disclosure." Defendants choose to ignore this fact because they cannot justify their conduct in unilaterally redacting information instead of producing it in accordance with the Protective Order that they previously agreed to. Defendants should be required to live up to the terms of their previous bargain, and produce the documents while making the proper designations of confidentiality as called for by the Protective Order. As such, their Motion for Protective Order should be denied.

### III.   CONCLUSION AND PRAYER

Based on the foregoing, Plaintiff DataTreasury Corporation respectfully requests that the Court DENY HSBCNAH and HSBC USA's Motion for Protective Order and for Extension of Time, and require them to produce unredacted versions of the documents at issue within seven days. Plaintiff prays for any further relief to which it is entitled.

Respectfully submitted,

**ANTHONY BRUSTER**
State Bar No. 24036280
**R. BENJAMIN KING**
State Bar No. 24048592
**C. CARY PATTERSON**
State Bar No. 15587000

**BRADY PADDOCK**  
State Bar No. 00791394  
**NIX PATTERSON & ROACH L.L.P.**  
2900 St. Michael Drive, Suite 500  
Texarkana, Texas 75503  
903.223.3999 (telephone)  
903.223.8520 (facsimile)  
akbruster@nixlawfirm.com  
bpaddock@nixlawfirm.com  
benking@nixlawfirm.com  

**EDWARD CHIN**  
State Bar No. 50511688  
**ROD COOPER**  
State Bar No. 90001628  
**EDWARD L. VON HOHN**  
Attorney in Charge  
State Bar No. 09813240  
**NIX  PATTERSON & ROACH, L.L.P.**  
Williams Square  
5215 North O'Connor Blvd., Suite 1900  
Irving, Texas  75039  
972.831.1188 (telephone)  
972.444.0716 (facsimile)  
edchin@nixlawfirm.com  
rodcooper@nixlawfirm.com  
edhohn@nixlawfirm.com  

**JOE KENDALL**  
State Bar No. 11260700  
**KARL RUPP**  
State Bar No. 24035243  
**PROVOST * UMPHREY, L.L.P.**  
3232 McKinney Avenue, Ste. 700  
Dallas, Texas 75204  
214.744.3000 (telephone)  
214.744.3015 (facsimile)  
jkendall@provostumphrey.com  
krupp@provostumphrey.com  

**ERIC M. ALBRITTON**  
State Bar No. 00790215  
**ALBRITTON LAW FIRM**  
P.O. Box 2649  
Longview, Texas 75606  
903.757.8449 (telephone)  
903.758.7397 (facsimile)  
ema@emafirm.com

**T. JOHN WARD, JR.**
State Bar No. 00794818
**LAW OFFICE OF T. JOHN WARD, JR.**
P.O. Box 1231
Longview, Texas 75601
903.757.6400 (telephone)
903.757.2323 (facsimile)
jw@jwfirm.com

*ATTORNEYS FOR PLAINTIFF*
*DATATREASURY CORPORATION*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on the 27th day of April, 2007 via electronic transmission.

Bank of America - Listserve (BankofAmericaF&R@fr.com)
BB&T ListServe (BB&T_DataTreasury@kilpatrickstockton.com)
Citizens Financial (citizensfinancial@standleyLLP.com)
City National Bank - Listserve (citynationalbank@dmtechlaw.com)
Comerica Bank 007 Listserve (Comerica_DataTreasury@kilpatrickstockton.com)
Compass/First Horizon/TN Bank - Listserve (comfhft@andrewskurth.com)
Cullen/Frost Bank - Listserve (frostbank@dmtechlaw.com)
EDS - Listserve (EDS_DataTreasury@mckoolsmith.com)
UBS – Listserve (ubsamericas@velaw.com)
HSBC North America Holdings, Inc./HSBC Bank USA  Listserve  (hsbccounsel@blhc-law.com)
BancorpSouth Listserve (bxs@hughesluce.com)
Bank of Tokyo Listserve (BankofTokyo_DataTreasury@sidley.com)
BofNY Listserve (BofNYLitTeam@pillsburylaw.com)
The Clearing House/SVPCo Listserve (TCH_DT@sullcrom.com)
Deutsche Bank Listserve (DeutscheBank_DataTreasury@sidley.com)
First Citizens Listserve (firstcitizens@bakerbotts.com)
First Data Listserve (FirstData_DataTreasury@sidley.com)
Key Bank Listserve (KeyCorp_DataTreasury@mckoolsmith.com)
LaSalle Bank Listserve (LaSalleBank_DataTreasury@sidley.com)
National City Bank Listserve (foley-dtc@foley.com)
Remitco Listserve (Remitco_DataTreasury@sidley.com)
Telecheck Listserve (Telecheck_DataTreasury@sidley.com)
Union BofCA Listserve (ubofclitteam@pillsburylaw.com)
Viewpointe Listserve (Viewpointe_dtc@skadden.com)
Zion First National Bank Listserve (foley-dtc@foley.com)
Harris Bancorp. - Listserve (Harris_DataTreasury@mckoolsmith.com)
M&T 007 Listserve (M&T_DataTreasury@kilpatrickstockton.com)
PNC Bank - Listserve (PNC_DataTreasury@mckoolsmith.com)
Suntrust - Listserve (SunTrust_DataTreasury@mckoolsmith.com)
U.S. Bancorp – Listserve (foley-dtc@foley.com)
Wachovia 007 Listserve (Wachovia_DataTreasury@kilpatrickstockton.com)
Wells Fargo - Listserve (*DalWellsFargo_DTC@BakerNet.com)

_____
**ANTHONY BRUSTER**