IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DATATREASURY CORPORATION | § | |
| *PLAINTIFF* | § | |
| vs. | § | No. 2:06cv72 |
| | § | |
| WELLS FARGO & COMPANY, *et al* | § | JURY TRIAL DEMANDED |
| *DEFENDANTS* | § | |

## PLAINTIFF DATATREASURY CORPORATION'S MOTION FOR CLARIFICATION REGARDING LIMITATIONS OF ASSERTED CLAIMS

Plaintiff DataTreasury Corporation ("DataTreasury") requests clarification of the Court's Order from Scheduling Conference[1] and Scheduling Orders[2] concerning the limitations of asserted patent claims in this matter. In support thereof, DataTreasury would respectfully show the Court as follows:

### I.   BACKGROUND

On February 26, 2006, DataTreasury filed suit against the Defendants in this matter accusing Defendants of infringing six separate patents issued by the United States Patent and Trademark Office ("USPTO").[3]  On September 19, 2006, Defendant groups EDS, Harris, Key, PNC, and SunTrust filed a Motion to Sever and Stay all claims relating to only the '988 and '137 Patents ("Ballard Patents").[4]  On October 25, 2006,

---

[1] Order from Scheduling Conference and Docket Control Order [Dkt. No. 325], entered October 25, 2006.
[2] Amended Docket Control Order, entered on October 25, 2006; Second Amended Docket Control Order, entered on January 29, 2007.
[3] United States Patent Nos. 5,910,988 ("the '988 patent"); 6,032,137 ("the '137 patent"); 5,265,007 ("the '007 patent"); 5,583,759 ("the '759 patent"); 5,717,868 ("the '868 patent"); and 5,930,778 ("the '778 patent").
[4] MOTION OF DEFENDANTS EDS, HARRIS, KEY, PNC, AND SUNTRUST TO SEVER AND STAY THE CLAIMS RELATING TO THE BALLARD PATENTS PENDING REEXAMINATION OF THE BALLARD PATENTS [Dkt. No. 260], filed September 19, 2006. Other Defendants accused of infringing the '988 and '137 Patents filed separate motions joining in this motion.

Dockets.Justia.com

after briefing by the parties and a hearing on the matter, the Court conditionally granted Defendants' motions to sever and stay. The stay issued by the Court was conditioned on Defendants' acceptance of the stipulation outlined within the Order. On January 12, 2007, the Court modified the stipulation that the Defendants were required to agree to in order to effectuate the stay.[5] All Defendants accused of infringing the '988 and '137 patents have since signed this stipulation, thereby severing and staying all claims relating to the Ballard Patents.[6]

Despite Defendants' acceptance of the stipulation outlined in the Court's January 12 Order, all other court deadlines and discovery obligations of the parties continues as to the '007, '868, '759, and '778 Patents ("Huntington Patents"). Certain deadlines regarding the limitations of asserted claims as set forth in the active Docket Control Order ("DCO") prompt the need for the instant motion, as explained more fully below. This motion is filed only as to the PNC and Key Bank Defendants, but DataTreasury may seek the same relief with respect to the other Defendants after conferring with them. As to the PNC and Key Defendants, DataTreasury has conferred in-person with counsel for Defendants and was informed that the Defendants oppose DataTreasury's motion seeking clarification.

## II.     NEED FOR CLARIFICATION

**A.     NATURE OF DISPUTE**

As this Court is aware, certain deadlines set forth in the Court's DCO and the Amended Docket Control Order (entered October 25, 2006) required DataTreasury to

---

[5] Order [Dkt. No. 411], entered January 12, 2007.
[6] As the Court noted in its January 12, 2007 Order, DataTreasury may move the Court to lift the stay upon further office action by the USPTO.

limit the total number of patent claims it intends to assert. Specifically, Step 4 of both docket control orders required DataTreasury to serve "Disclosure of Asserted Claims and Preliminary Infringement Contentions of less than 50 claims for all *patents-in-suit* (note the further limitation provided in step 11, *infra*)." *See* Second Amended Docket Control Order (emphasis added). DataTreasury complied with this step. Next, in preparation for the *Markman* proceedings, Step 11 required DataTreasury to further limit its asserted claims to a total of eighteen for each Litigant Group. *See* id. DataTreasury has reduced the number of claims it is asserting to no more than eighteen per Litigant Group with regard to the Huntington Patents, as those are currently the only patents-in-suit, given the stay offered by the Court and accepted by the Defendants.

Given the status of this case and the fact that all claims as to the Ballard Patents have been stayed, DataTreasury notified Defendants of its reduced number of asserted claims with regard to the "patents-in-suit" – which currently are only the four Huntington patents – in compliance with Step 11 of the Court's DCO. *See* Letters from Rod Cooper defendants, dated April 9, 2007. (attached as Exhibits A & B); *See also* Letter from Rod Cooper to Peter Ayers, dates April 27, 2007 (attached as Exhibit C). DataTreasury's reduction of claims as to the four Huntington patents is in accord with its understanding of the effect of the Court's stay order and its understanding of the position Defendants have taken with regard to the stay – that the Ballard Patents are not at issue or "in-suit" at this point in time. *See infra* Sec. II.B.1. Defendants assert that despite the severance and stay order they requested and ultimately accepted as to the Ballard Patents, DataTreasury must nevertheless include claims from the Ballard Patents in its notice of limitation of claims. Defendants argue that DataTreasury should be required to do this, despite the fact

that no party is completely certain of the ultimate outcome of the claims currently being reexamined by the USPTO – some claims could be affirmed, others modified in part, others rejected, and new claims might even be issued. *See infra* Sec. II.B.3.b. Defendants have thus told DataTreasury it should be required to select its claims to assert from the Ballard patents "in the dark," and also be required at this time to reduce the claims it intends to assert regarding the Huntington Patents so that claims relating to the Ballard Patents can be added at a later date – again without the benefit of knowing exactly what the Ballard Patents' claims will look like post-reexamination.

The parties have been unable to agree as to what effect the Court's order to sever and stay the claims as to the Ballard Patents has on Step 11 of the DCO. DataTreasury believes it should be allowed to assert 18 claims against each Litigant Group as the Court originally ordered based on the current patents-in-suit – the Huntington Patents, but it should not be required to make its final selection of asserted claims from among the Ballard and Huntington Patents until a reasonable time after the Court lifts the stay, if it does, after the reexamination proceeding. Until the reexamination proceeding as to Ballard Patents is over, it cannot be determined which patent claims actually can be asserted from those patents. Defendants, however, believe DataTreasury should be forced to make its final choice of asserted claims now, rather than being able to amend its position at some point after all parties know what claims remain in the Ballard patents. It is the parties' conflicting positions regarding this issue that necessitates the Court's clarification.

B.      **DATATREASURY'S POSITION**

DataTreasury has properly limited its number of asserted claims in compliance with Step 11 of the Court's DCO. As explained below, the Ballard Patents are not currently "patents-in-suit" to which Step 11 of the DCO applies. Defendants' position contradicts their prior conduct in this matter, and Defendants' request is not only out of line with the Court's DCO, but would prejudice DataTreasury's ability to fully protect its intellectual property rights.

### 1. The Ballard Patents are not Currently "Patents-in-Suit"

It is and has been Defendants' position that the Ballard Patents are not "patents-in-suit" as to this lawsuit in light of the Court-ordered stay. As a result of the stay of all claims relating to the Ballard Patents, all proceedings relating to DataTreasury's claims under those two patents have been stayed at least until the USPTO reexamination progresses and the Court chooses to lift the stay. This is the position that Defendants have asserted from the time they accepted the Court's stipulation until now, and DataTreasury agrees – all proceedings as to the Ballard Patents are currently stayed. In fact, Defendants argued that by granting the requested stay, the Court "would remove 16 of the 58 defendants and *eliminate* 93 of the 224 total potential patent claims from this case…." MOTION OF DEFENDANTS EDS, HARRIS, KEY, PNC, AND SUNTRUST TO SEVER AND STAY THE CLAIMS RELATING TO THE BALLARD PATENTS PENDING REEXAMINATION OF THE BALLARD PATENTS [Dkt. No. 260], p. 1 (emphasis added). Clearly, the Defendants contemplated that if the Court granted the stay that they requested, there would be *no activity* with respect to the Ballard Patents until such time that the reexamination proceeding was over and if the Court lifts the stay. When the stay was granted, 93 claims (those contained in the two Ballard Patents) were at least temporarily

eliminated from this case. Until such time as the stay is lifted, the Ballard Patents and the claims therein are not "patents-in-suit," as the claims relating to these two patents cannot be the subject of discovery or briefing in this matter. Therefore, the requirements of Step 11 of the DCO apply only to the Huntington Patents, which are currently the only "patents-in-suit."

        **2.**      **Defendants' Prior Conduct is Inconsistent with the Position it now Foists Upon DataTreasury**

Defendants' actions to date have underscored the fact that the Ballard Patents are not currently "patents-in-suit." For example, Defendants were required to serve invalidity contentions under Patent Local Rule 3-3 by February 5, 2007. Notably, no Defendant in this matter provided DataTreasury with invalidity contentions with regard to the Ballard Patents because, as they acknowledge, all proceedings as to these two patents have been stayed. *See, e.g.,* DEUTSCHE BANK TRUST COMPANY AMERICAS' PRELIMINARY INVALIDITY CONTENTIONS, p. 1 (stating, "All proceedings related to [the '988 and '137 Patents] in this case have been stayed by the Court, as a result of this Court's January 12, 2007 Order and Defendant's timely filed January 23, 2007 Notice of Acceptance of Stipulation."). Additionally, Defendants have limited discovery in this matter to only the Huntington Patents as a result of the Court's stay order. Again, this was done, presumably, because the Defendants did not believe that the Ballard Patents were "patents-in-suit" in light of the Court ordered stay and the elimination of those claims from this case.

Despite the fact that the Court entered a stay as to DataTreasury's claims regarding the Ballard Patents and thereby ultimately eliminated the claims therein from

this case (at least temporarily), Defendants demand that DataTreasury account for the Ballard Patents in its reduction of claims in complying with Step 11 of the DCO.  *See* Letter from Peter Ayers to Rod Cooper, dated April 23, 2007 (attached as Exhibit D); letter from Carissa Tener to Rod Cooper, dated May 1, 2007 (attached as Exhibit E).  The position that Defendants now assert is not only contrary to the actions they have taken to date, but also conflicts with the plain language of this Court's DCO that the limitation of claims only applies to "patents-in-suit."  If the claims in the Ballard Patents have been "eliminated from this case" as a result of the stay, then they cannot be taken into account in further limiting the claims – they have been already been eliminated, at least until such time as the stay is lifted.

As discussed *supra*, Defendants did not include the Ballard Patents in their invalidity contentions or in their document productions, and also the parties have not considered the Ballard Patents in their claim construction discussions or briefing.  On the other hand, Defendants now require the exact opposite of DataTreasury and expect DataTreasury to include the Ballard Patents (and the claims therein that have been "eliminated from this case") in meeting its obligations under the DCO.  Defendants cannot have it both ways.  Defendants asked for and received a stay of the litigation as to all claims relating to the Ballard Patents, thereby resulting in the Ballard Patents' claims being eliminated from this case and those patents not being "patents-in-suit" until the stay is lifted.  What is good for the goose is good for the gander, and DataTreasury should not be required to meet obligations with regard to the Ballard Patents when Defendants are able to avoid any and all obligations as to those same patents.

    **3.**    **DataTreasury Will be Prejudiced if Required to Meet Defendants' Current Demand**

Given the uncertainty surrounding the Ballard Patents in light of the reexamination proceedings and the multiple possible outcomes of the reexamination, DataTreasury would be prejudiced if required to conform to Defendants' current demands regarding the limitations of claims.

    **a.**    **By Defendants' own admission, uncertainty surrounds the reexamination proceedings**

Defendants' actions in seeking a stay as to all claims from the Ballard Patents and now requiring that DataTreasury limit its claims to account for the Ballard Patents are inconsistent, and also serve to prejudice DataTreasury. As discussed, the claims of the Ballard Patents have been eliminated from this case, at least until such time as the stay is lifted. Therefore, DataTreasury's reduction of claims to eighteen with regard to the Huntington Patents is entirely in line and in compliance with this Court's order that DataTreasury limit its asserted claims with regard to the "patents-in-suit."

Complying with the position that Defendants now foist upon DataTreasury would prejudice DataTreasury for many of the same reasons Defendants argued to support their requested stay. Specifically, at the January 10, 2007 hearing on Wells Fargo, Bank of America, and Wachovia's motion to sever and stay, counsel for Bank of America asserted that there was much uncertainty surrounding the Ballard Patents in light of the reexamination proceedings.[7] Bank of America's counsel asserted in that hearing that they believed the claims of the Ballard Patents would be declared invalid or would be

---

[7] DataTreasury recognizes that this hearing was conducted in different cases involving DataTreasury, but the Court subsequently offered to Defendants in this matter, and they ultimately accepted, the same conditional order to stay as was offered in those separate cases. Therefore, the arguments made therein are pertinent to the current dispute that involves the order that resulted from that hearing.

substantially modified. *See* Transcript of January 10, 2007 Hearing (Cause Nos. 2:05cv291, 2:05cv292, 2:05cv293), p. 7, lines 5-7; p. 11, lines 14-23. Defendants obviously did not think it was fair for them to proceed as to the Ballard Patents because of the uncertainty that Defendants emphatically suggested exists in light of the reexamination proceedings. *See generally,* id.; *see also, generally*, MOTION OF DEFENDANTS EDS, HARRIS, KEY, PNC, AND SUNTRUST TO SEVER AND STAY THE CLAIMS RELATING TO THE BALLARD PATENTS PENDING REEXAMINATION OF THE BALLARD PATENTS [Dkt. No. 260]. As they have stated in multiple hearings and in their various motions on the stay issue, Defendants believe that the Ballard Patents will be completely invalidated or substantially altered. *See, e.g.*, id. It is that very uncertainty that Defendants argued warranted a stay that would now prejudice DataTreasury if it were required to submit to the demands of Defendants with regard to Step 11 of the DCO.

Defendants' unreasonable demand with regard to claim limitations leaves DataTreasury with two options: (1) limit its asserted claims to only the Huntington Patents and risk waiving potential claims as to the Ballard Patents once they survive reexamination and the stay is lifted, or (2) attempt to somehow limit its asserted claims to both the Ballard and Huntington Patents, even though it does not know what the result of the reexamination proceedings will be. *See infra* Sec. II.B.3.b. Either way, DataTreasury would be prejudiced. If DataTreasury were to choose the first option, then it runs the risk of Defendants claiming that DataTreasury waived its right to assert any of the claims contained in the Ballard Patents because those claims were not identified in accordance with the Defendants' interpretation of Step 11 of the DCO. Such a waiver, even though the Ballard Patents' claims have been in Defendants' own words "eliminated from this

case," would certainly prejudice DataTreasury because DataTreasury effectively would have forfeited its ability to protect its intellectual property rights as a result of a problem dictated by Defendants' choice to seek a stay in this matter. If DataTreasury were to choose the second option, it would have to forfeit its right to seek relief as to certain claims in the Huntington Patents in order to reserve claims relating to the Ballard Patents when it is unclear how many claims the Ballard Patents will have and the scope of each claim. In light of the uncertainties that Defendants' have consistently brought to the Court's attention, it would be impossible for DataTreasury to make an informed decision as to which claims in the Ballard Patents it should pursue because, as has been made clear, neither party knows the ultimate result of the reexamination proceedings. Also by choosing the second option, and assuming *arguendo* that the Ballard Patents are invalidated in their entirety, DataTreasury would have, in an attempt to avoid a waiver argument by Defendants, forfeited its right to assert otherwise valid claims relating to the Huntington Patents by saving a place for potential claims relating to the Ballard Patents. If the Ballard Patents come back modified, DataTreasury would have been required to determine which and what number of Ballard Patent claims it would assert without the benefit of knowing what the modifications would be. Either way, DataTreasury would be unfairly prejudiced.

      **b.**    **Potential outcomes of the reexamination proceedings**

There are four potential general scenarios as to what will happen to the claims of the Ballard Patents during reexamination. Those scenarios are as follows: (1) all claims will be upheld as written – i.e., the claims will come out of the USPTO exactly as they went in and exactly as they were originally asserted in this case; (2) all claims will be

rejected; (3) the claims will be modified – i.e., some may be changed, some may be rejected, some may remain unchanged, but claims from the Ballard Patents will still exist after the reexamination; and (4) additional claims that DataTreasury has applied for during the reexamination process will be granted. As the parties stand right now, no one knows which of these scenarios will occur. Yet, Defendants want DataTreasury to select their eighteen claims to prosecute in this litigation now, including the stayed claims as to the Ballard Patents, without any knowledge as to which of the four scenarios above will occur. To require DataTreasury to do that causes undue prejudice to DataTreasury regardless of the reexamination's outcome.

If scenario (1) occurs, DataTreasury would then in hindsight have had the full cadre of claims from the Ballard Patents to choose from; yet, DataTreasury would not have known that all of the claims would be available. Therefore, by requiring DataTreasury to choose its claims now, it may unnecessarily limit the number of claims it chooses to assert from the Ballard Patents. This is simply an unfair and prejudicial requirement in light of the current posture of this case.

If scenario (2) occurs, and yet DataTreasury did what Defendants demand now (reserve a certain number of claims from the Ballard Patents to prosecute), then DataTreasury could very well be left prosecuting some number less than the eighteen claims it was allotted. This is likewise an unfair result since DataTreasury would have been forced to reserve the right to prosecute claims that the USPTO asserts never should have existed, and thus DataTreasury would be deprived of its right to prosecute valid and enforceable claims from the Huntington patents. While DataTreasury sincerely doubts this will be the likely result of the reexamination, it is a possibility nonetheless.

If scenario (3) occurs, and DataTreasury is required to choose its claims now, it truly would be picking in the dark. This scenario would result in DataTreasury having been required to select claims that might exist, might not exist, or exist as changed – yet all the while, DataTreasury (nor anyone else) knew their status. This would lead to either of the results from scenario (1) or (2) above, and for those same reasons, this poses undue prejudice to DataTreasury.

Finally, if scenario (4) occurs, DataTreasury will have more claims from which it can assert in this proceeding. For example, the USPTO could determine that additional claims that DataTreasury has requested during the reexamination are valid claims, and those claims could be granted. Should this occur, if DataTreasury was forced now – in advance of these new claims' issuance – to assert all of its accused claims, DataTreasury would have never been given the chance to prosecute new, relevant claims in this proceeding. In essence, DataTreasury would be giving up newly issued claims in this proceeding, even though this would be the most logical and rationale forum for those claims to be litigated. If this scenario occurs, DataTreasury may well ask the Court to increase the number of claims that it is allowed to assert; after all, this would be a significant change in circumstances that was not present at the time the Court issued its Order limiting DataTreasury to merely eighteen claims.

As the Court can see, any of the above scenarios may occur. Requiring DataTreasury to pick its asserted claims from the Ballard Patents with this pending uncertainty poses undue prejudice to DataTreasury that is a direct result of Defendants' Motion to Stay, which specifically assured the Court of the fact that no prejudice would result to DataTreasury. While DataTreasury does not at this time seek to expand the

number of asserted claims beyond eighteen, there is a very real possibility that it would ask the Court to do so if more claims were granted. In the interim, however, DataTreasury merely requests that the Court clarify its Order regarding the number of asserted claims, and allow DataTreasury the opportunity to amend its list of asserted claims no later than 30 days after the Court lifts the stay as to the Ballard Patents after the conclusion of the reexamination proceeding to account for the existence of claims from the Ballard Patents, or otherwise petition the Court for more asserted claims at that time.

### c. Defendants have assured the Court that DataTreasury would not be unduly prejudiced by their requested stay

Defendants have assured the Court that by granting the stay they requested as to the Ballard Patents, DataTreasury "will not suffer any undue prejudice." *See, e.g.*, MOTION OF DEFENDANTS EDS, HARRIS, KEY, PNC, AND SUNTRUST TO SEVER AND STAY THE CLAIMS RELATING TO THE BALLARD PATENTS PENDING REEXAMINATION OF THE BALLARD PATENTS [Dkt. No. 260], p. 3. Additionally, Defendants have recognized that stays pending USPTO reexamination have been denied "where it would cause undue prejudice [or] present a clear tactical disadvantage to the non-moving party." *See* id, *citing Lentek Int'l, Inc. v. Sharper Image Corp.*, 169 F. Supp. 2d 1360, 1360 (M.D. Fla. 2001). Despite its assurances that DataTreasury would not be unduly prejudiced and its recognition of the fact that a stay should not be granted where a party is unduly prejudiced or put at a tactical disadvantage, Defendants seek to do just that by suggesting that DataTreasury should be required to choose its asserted claims in this matter "in the dark". Defendants asked, via their Motion for Stay, that the Ballard Patents' claims be eliminated from this case pending the USPTO's reexamination proceedings, and they

received the relief they requested. Now, Defendants take the peculiar and prejudicial position that the relief and benefits associated with the stay that they themselves requested does not apply equally to DataTreasury, and at least as far as DataTreasury's obligations are concerned the Ballard Patents should be considered "patents-in-suit." Defendants should not be allowed to have it both ways, particularly when DataTreasury would be unduly prejudiced in such manners as discussed herein.

### 4.   DataTreasury's Proposed Solution to Avoid Undue Prejudice

In order to fully protect its recognized intellectual property rights, DataTreasury requests that this Court clarify its DCO with regard to the Step 11, which requires that DataTreasury limit its asserted claims to eighteen. Specifically, DataTreasury asks that it be allowed to maintain the currently asserted eighteen claims which apply to the Huntington Patents, without waiver of any potential asserted claims as to the Ballard Patents since all proceedings as to the Ballard Patents have been stayed and those claims have been "eliminated from this case." Once the USPTO's reexamination proceedings are concluded and the parties know the results of the USPTO's reexamination, DataTreasury requests that it be allowed 30 days from the lifting of the Court ordered stay, to amend its list of asserted claims to account for the existence of claims from the Ballard Patents, or otherwise petition the Court for more asserted claims at that time.

### III.   CONCLUSION

DataTreasury respectfully prays that the Court grant this Motion for Clarification, clarify the scope of and application of this Court's Second Amended Scheduling Order as discussed herein, and allow DataTreasury to maintain the currently asserted eighteen claims which apply to the Huntington Patents, without waiver of any potential asserted

claims as to the Ballard Patents since all proceedings as to the Ballard Patents have been stayed and those claims have been "eliminated from this case." After the USPTO's reexamination proceedings are concluded and the parties know the results of the USPTO's reexamination, DataTreasury requests that it be allowed 30 days from the lifting of the Court ordered stay, to amend its list of asserted claims to account for the existence of claims from the Ballard Patents, or otherwise petition the Court for more asserted claims at that time. DataTreasury further prays for any and all relief to which it is entitled.

Respectfully submitted,

/s/ R. Benjamin King
**R. BENJAMIN KING**

**EDWARD L. VON HOHN**, Attorney in Charge
State Bar No. 09813240
**NIX PATTERSON & ROACH, L.L.P.**
5215 N. O'Connor Blvd., Suite 1900
Irving, Texas 75039
972.831.1188 (telephone)
972.444.0716 (facsimile)
edhohn@nixlawfirm.com

**C. CARY PATTERSON**
State Bar No. 15587000
**BRADY PADDOCK**
State Bar No. 00791394
**ANTHONY BRUSTER**
State Bar No. 24036280
**R. BENJAMIN KING**
State Bar No. 24048592
**NIX PATTERSON & ROACH L.L.P.**
2900 St. Michael Drive, Suite 500

Texarkana, Texas 75503
903.223.3999 (telephone)
903.223.8520 (facsimile)
akbruster@nixlawfirm.com
bpaddock@nixlawfirm.com
benking@nixlawfirm.com

**JOE KENDALL**
State Bar No. 11260700
**KARL RUPP**
State Bar No. 24035243
**PROVOST * UMPHREY, L.L.P.**
3232 McKinney Avenue, Ste. 700
Dallas, Texas 75204
214.744.3000 (telephone)
214.744.3015 (facsimile)
jkendall@provostumphrey.com
krupp@provostumphrey.com

**ROD COOPER**
State Bar No. 90001628
**EDWARD CHIN**
STATE BAR NO. 50511688
**NIX PATTERSON & ROACH LLP**
5215 N. O'Connor Blvd. Ste. 1900
Irving, Texas 75039
972.831.1188 (telephone)
972.444.0716 (facsimile)
rodcooper@nixlawfirm.com
edchin@nixlawfirm.com

**ERIC M. ALBRITTON**
State Bar ;No. 00790215
**ALBRITTON LAW FIRM**
P.O. Box 2649
Longview, Texas 75606
903.757.8449 (telephone)
903.758.7397 (facsimile)
ema@emafirm.com

**T. JOHN WARD, JR.**

State Bar No. 00794818
**LAW OFFICE OF T. JOHN WARD, JR.**
P.O. Box 1231
Longview, Texas 75601
903.757.6400 (telephone)
903.757.2323 (facsimile)
jw@jwfirm.com

**ATTORNEYS FOR PLAINTIFF
DATATREASURY CORPORATION**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on counsel of record for Defendants on the 9th day of May, 2007.

/s/ R. Benjamin King
Nix, Patterson & Roach LLP

### CERTIFICATE OF CONFERENCE

This motion is filed only as to the PNC and Key Bank Defendants, but DataTreasury may incorporate other Defendants into this motion after speaking with them and having the opportunity to properly meet and confer in accordance with this Court's meet and confer requirements. As to the PNC and Key Defendants, DataTreasury has conferred in-person with counsel for Defendants and DataTreasury was informed that Defendants oppose this motion.

/s/ R. Benjamin King
Nix, Patterson & Roach LLP