**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

|   |   |
|---|---|
| DATATREASURY CORPORATION, ) | |
| ) | Civil Action No. 2-06CV-72 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| WELLS FARGO & COMPANY, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT UNIONBANCAL CORPORATION'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR CLARIFICATION OR FOR A PROTECTIVE ORDER REGARDING DISCOVERY ORDER (D.E. NO. 597) AND ENLARGEMENT OF TIME**

Defendant UnionBanCal Corporation ("UnionBanCal") files this reply to Plaintiff DataTreasury Corporation's ("DataTreasury") response to UnionBanCal's Motion for Clarification or for a Protective Order Regarding Discovery Order (D.E. No. 597) and Enlargement of Time ("Motion").[1]

**I.     Introduction**

DataTreasury's response to UnionBanCal's Motion ("Response") argues that the Motion should be denied because neither clarification of the Court's March 15, 2007 Order ("Order") regarding the discovery of certain documents relating to UnionBanCal's jurisdictional challenge nor a Protective Order regarding these documents is needed. In effect, DataTreasury makes four assertions against the Motion: (1) it makes untimely arguments, (2) it improperly narrows the basis of DataTreasury's discovery request, (3) the federal banking statutes and regulations do not apply, and (4) the documents sought

---

[1] This Reply is filed without waiver of and in reliance upon UnionBanCal's assertion that this Court lacks personal jurisdiction over UnionBanCal.

are covered by the existing Protective Order. Each of DataTreasury's four assertions is misapplied.

## II.     UnionBanCal's Arguments Are Not Untimely

After the Court's issuance of its Order curtailing DataTreasury's sought-after discovery in its Motion to Compel, UnionBanCal investigated the extent and contents of its potentially relevant documents and now represents to the Court that full production would be overly burdensome and too costly and time-consuming due to the voluminous nature of the documents – which exceeds 20 feet in stacked legal-sized folders – and improper because it would be in violation of several federal statutes and regulations. (Motion at 4, 7-12, Exhibit 3 ¶¶ 4-8). According to DataTreasury, this contention is "simply untimely" and should not be considered by the Court because "if UnionBanCal wanted to make and rely on arguments it now presents to the Court to avoid its discovery obligations, it should have properly presented them in response to DTC's Motion to Compel." (Response at 3). DataTreasury, however, is incorrect because UnionBanCal's Motion presented new facts that were unknown at the time UnionBanCal filed its opposition to DataTreasury's Motion to Compel. These new facts directly address the burdensome and improper nature of the ordered production. These new facts, therefore, should be considered by the Court in deciding UnionBanCal's Motion.

UnionBanCal did not previously raise these facts because it was unable to fully articulate the burden and improper nature of producing responsive documents until after the Court issued its Order and the scope of the production was confirmed. In the Order, the Court substantially truncated the amount of documents sought by DataTreasury's Motion to Compel from nine categories to three categories because "the additional requests are not relevant to the jurisdictional claims before the Court. Even if the Court

2

assumes the requests are relevant to Defendants' jurisdictional challenges based on DataTreasury's assertions of alter ego, the Court finds the burden or expense of the majority of DataTreasury's proposed discovery outweighs the likely benefits of the discovery." (Order at 8). Yet, by DataTreasury's argument, UnionBanCal should have expended the substantial time and money to determine the full extent of possible responsive documents, along with the nature of their complete contents, to each of the nine requests and made its arguments in its response to DataTreasury's Motion to Compel. This is an unfair and truly overly burdensome requirement that DataTreasury would have the Court adopt.

UnionBanCal understandably waited to embark in determining the full extent and contents of potentially responsive documents to DataTreasury's "kitchen sink" discovery request and subsequent Motion to Compel until after the Order was issued and the discovery requests were narrowed. After the Order was issued, UnionBanCal immediately dispatched representatives to seek out and catalogue potentially responsive documents. Upon discovering (a) the extensive amount of documents and (b) that disclosing their contents would violate federal banking statutes and regulations, UnionBanCal timely raised its appropriate arguments to the Court.

Now that the stunningly voluminous nature of the documents and their federally mandated confidential contents are known, UnionBanCal should be allowed to raise these arguments before this Court, especially in light of the Order's stated purpose to allow only "limited discovery into the minutes and other documents related to the meetings of the Boards of Directors of the pertinent parent companies and subsidiaries" and its employment of the Rule 26(b)(2)(iii) balancing test in denying DataTreasury's six

3

categories on overly burdensome grounds. (Order at 8). The burden of retrieving, reviewing, and producing this amount of information substantially outweighs the marginal relevance this material will have to DataTreasury's jurisdictional claims.

### III. UnionBanCal Does Not Improperly Narrow the Basis for DataTreasury's Request

DataTreasury next contends that UnionBanCal attempts to "unilaterally and inappropriately narrow the basis for DataTreasury's request for these documents." (Response at 4). Such an assertion is untrue.

First, UnionBanCal does not "unilaterally" narrow the basis. The Court itself explicitly limited the basis upon which it granted, in part, DataTreasury's motion: "based on DataTreasury's specific argument that [UnionBanCal's] corporate representative[] revealed that the Boards of Directors of the [UnionBanCal] and [UBOC] are overlapping, meet jointly, and have joint committees and shared officers, the Court will allow limited discovery into the minutes and other documents related to the meetings of the Boards of Directors of [UnionBanCal] and [UBOC]." (Order at 8 (emphasis added)).

Second, UnionBanCal does not "inappropriately" narrow the basis. DataTreasury states in its Motion to Compel that the documents requested are to "determine the veracity" of UnionBanCal's corporate representative's testimony that the two Boards "are almost completely overlapping, meet jointly, and have joint committees and shared officers, among other relevant factors." (See Response at 4, fn. 2). However, DataTreasury has repeatedly failed to articulate just what are these "other relevant factors" both in its Motion to Compel and its Reply to UnionBanCal's Opposition to its Motion to Compel. The non-asserted and nebulous nature of these factors rightfully led the Court to ignore them. (Order at 6). Further, DataTreasury once again failed to

4

identify with particularity even one of these "other relevant factors" in its Response to the Motion. (See Response at 4, fn 2 (noting merely that the factors were supported by case law)).

Absent such an articulation in three pleadings, it is clear that the sole basis upon which DataTreasury seeks and has sought production of the documents at issue is to verify that the two Boards of Directors and their officers overlap, meet jointly, and have joint committees and shared officers. Because UnionBanCal unequivocally admits to the very facts that DataTreasury seeks to prove through this additional discovery, as evidenced by Exhibits 1-3 to UnionBanCal's Motion, UnionBanCal respectfully requests the Court to clarify its Order in light of these admissions.

Finally, because DataTreasury still has not articulated the relevance of its requests in regards to establishing personal jurisdiction of UnionBanCal, the burden of reviewing the potentially responsive documents for federally mandated confidential information, discussed infra, and the voluminous amount of these documents, clearly outweighs any marginal relevance the documents may provide. Therefore, UnionBanCal asks the Court to again conduct a Rule 26(b)(2)(iii) balancing test in light of the new facts contained herein and clarify its Order appropriately.

### IV. Federal Law Prohibits UnionBanCal From Disclosing Certain Responsive Documents

DataTreasury claims that the disclosure it requests does not violate the various federal statutes and regulations cited in UnionBanCal's Motion. This is incorrect in light of both the plain language of the statutes and regulations and the case law interpreting them.

DataTreasury offers no argument as to why such disclosure would not violate the Bank Secrecy Act and its implementing regulations, which prohibit disclosure of certain confidential information, including Suspicious Activity Reports ("SAR") or the existence thereof, to third parties. (See Response at 5). This is not surprising since the statute itself and applicable case law clearly prohibit disclosure. See Bizcapital Bus. & Indus. Dev. Corp. v. Comptroller of the Currency of the U.S., 467 F.3d 871, 873 n.3 (5th Cir. 2006) ("The Court recognizes that the Bank Secrecy Act, the OCC's regulations, and case law establish an absolute prohibition on financial institutions from disclosing to third parties information about the filing of a SAR."); Whitney Nat'l Bank v. Karam, 306 F. Supp. 2d 678, 682-83 (S.D. Tex. 2004) (holding that a court is not authorized to order the disclosure of a SAR under the Bank Secrecy Act) (citing Weil v. Long Island Savs. Bank, 195 F. Supp. 2d 383, 389-90 (E.D.N.Y. 2001) (observing that the SAR confidentiality privilege is neither qualified nor subject to waiver by the financial institution)).

DataTreasury asserts that UnionBanCal "cherry-picked" provisions of Title 12 of the C.F.R. to make its case and thereby ignores 12 C.F.R. § 261.1(a)(3), which states: "The Board [of Governors of the Federal Reserve ("Board")] has also determined that it is authorized by law to disclose information . . . in response to a valid order of a court of competent jurisdiction." DataTreasury errantly reads the pronoun "it" in the provision as referring to a financial institution, such as UnionBanCal, that is regulated by the Board. However, when read in its proper context, it is clear that the provision's use of "it" refers to the Board of Governors of the Federal Reserve itself. Thus, the Board is declaring that it, and only it, is authorized to disclose confidential supervisory information. The interpretation propounded by DataTreasury would render many other provisions of 12

C.F.R. § 261 meaningless in their entirety, which could not have been the intent of the drafters of the regulation, including the provision instructing financial institutions to decline to disclose information even when compelled to by a court order, such as the one at issue.[2]

DataTreasury has apparently not completed any procedure for obtaining the confidential documents that it seeks, as set forth in the regulations promulgated by the Board of Governors of the Federal Reserve.  See 12 C.F.R. § 261.22.  When a party seeking documents has not completed the proper procedures to obtain confidential documents from the Board, "it is unnecessary for the Court to pursue a balancing test to determine if the information sought is confidential or privileged and whether or not such information should be disclosed.  Such determination will be made [only] when production is sought from the [agency]."  See Colonial Sav. & Loan Ass'n v. St. Paul Fire & Marine Ins. Co., 89 F.R.D. 481, 484 (D. Kan. 1980).  Courts simply deny motions to compel information exempted from disclosure by federal regulations when the moving party has not completed the procedures outlined in the regulations for obtaining such information.  Id.  Therefore, the Court should clarify the scope of its Order (1) to the extent the documents sought by DataTreasury contain information exempted from disclosure by federal statute or regulation for the failure of DataTreasury to complete procedures set forth therein for obtaining such information, and (2) because DataTreasury

---

[2]  Unless the Board has authorized disclosure of the information requested, any person who has Board information that may not be disclosed, and who is required to respond to a subpoena or other legal process, shall attend at the time and place required and decline to disclose or to give any testimony with respect to the information, basing such refusal upon the provisions of this regulation.  If the court or other body orders the disclosure of the information or the giving of testimony, the person having the information shall continue to decline to disclose the information and shall promptly report the facts to the Board for such action as the Board may deem appropriate.

12 C.F.R. § 261.23(b) (emphasis added).

7

improperly moved only to compel UnionBanCal, and not the responsible agency, such as the Board or the OCC, to produce the requested documents.  See Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Midland Bancor, Inc., 159 F.R.D. 562, 572 (D. Kan. 1994) (overruling a motion to compel to the extent it seeks information exempted from disclosure by 12 C.F.R. Part 261 and fails to be directed to the responsible agency).

As evidenced by Exhibit 3 of UnionBanCal's Motion, the potentially responsive documents are replete with confidential information, the disclosure of which is prohibited by one or more federal statutes or regulations.  Accordingly, in the alternative to clarifying the Order, the Court should issue a Protective Order that protects UnionBanCal from producing such confidential information.

## V. Production of the Documents at Issue Is Not Fully Protected by the Current Protective Order

While the current Protective Order would offer some protection of the confidential information contained in the documents at issue, it would not offer much protection to UnionBanCal for disseminating the information.  Simply put, the Protective Order should not be read to offer an avenue by which a party can circumvent the express language of federal statutes and regulations that were enacted to protect sensitive information.  The federal statutes and regulations make it clear that disclosure of such information by a financial institution is prohibited.[3]  No qualifications are made for Protective Orders entered into by financial institutions.

As discussed supra, if DataTreasury wanted access to this confidential information it should have requested access from the appropriate agency – e.g., the Board

---

[3] See, e.g., the regulations of the Bank Secrecy Act: "SARs are confidential," and any "national bank or person subpoenaed or otherwise requested to disclose a SAR or the information contained in a SAR shall decline to produce the SAR or to provide any information that would disclose that a SAR has been prepared or filed." 12 C.F.R. § 21.11(k) (emphasis added).

or the OCC – and followed their respective procedures contained in the C.F.R. DataTreasury seeks to make an end-run around the applicable statutes and regulations and would have this Court force UnionBanCal to disclose confidential information in violation of federal law, while never itself articulating the relevance of this information in establishing personal jurisdiction over UnionBanCal.

Further, pursuant to the C.F.R., confidential supervisory information is the property of the Board,[4] and non-public OCC information is the property of the OCC,[5] two agencies that are not signatories to the current Protective Order. Therefore, if the Court rules that UnionBanCal is not required to provide such confidential information, by either restricting the scope of its Order or issuing a Protective Order, DataTreasury may still subpoena the agency from which it seeks particular information and/or enter into a new protective order with it as a party thereto.

## VI.  Conclusion

For the foregoing reasons and the reasons set forth in UnionBanCal's Motion, UnionBanCal respectfully requests that the Court grant (1) UnionBanCal's Motion for Clarification regarding the scope of the discovery required by the Court's Order or in the alternative for a Protective Order, and (2) UnionBanCal's Motion for an enlargement of time to produce documents in compliance with the Order, to the extent any need to be produced, from April 16, 2007 to June 16, 2007 or 60 days after the Court rules on the Motion, which is greater.

---

[4] 12 C.F.R. § 261.20(g).
[5] 12 C.F.R. § 4.32(b)(2).

|  |  |
|---|---|
| May 4, 2007 | Respectfully submitted,<br>*/s/ Jennifer Parker Ainsworth*_____<br>Jennifer Parker Ainsworth<br>Texas Bar No. 00784720<br>WILSON, SHEEHY, KNOWLES, ROBERTSON & CORNELIUS, P.C.<br>909 ESE Loop 323<br>Suite 400<br>Tyler, Texas 75701<br>T: (903) 509-5000<br>F: (903) 509-5092<br>jainsworth@wilsonlawfirm.com<br><br>Raymond L. Sweigart (pro hac vice)<br>Scott J. Pivnick (pro hac vice)<br>PILLSBURY WINTHROP SHAW PITTMAN LLP<br>1650 Tysons Blvd.<br>McLean, VA  22102-4859<br>T: (703) 770-7900<br>F: (703) 905-2500<br>raymond.sweigart@pillsburylaw.com<br>scott.pivnick@pillsburylaw.com<br><br>*Attorneys for Defendant,*<br>*UnionBanCal Corporation* |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 4th day of May, 2007.

/s/ Jennifer Parker Ainsworth