IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DATATREASURY CORPORATION, | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | NO. 2:06cv72 |
| | § | |
| WELLS FARGO & COMPANY, | § | Hon. David Folsom |
| WELLS FARGO BANK, NATIONAL | § | Hon. Caroline Craven |
| ASSOCIATION, et. al., | § | (Jury) |
| *Defendants*. | § | |

**DATATREASURY CORPORATION'S MOTION TO COMPEL CITIZENS FINANCIAL GROUP, INC. TO PRODUCE ITS JOINT DEFENSE AGREEMENT**

DataTreasury Corporation ("DataTreasury"), Plaintiff in the above-entitled and numbered civil action, files this Motion to Compel Defendant Citizens Financial Group, Inc. to produce its Joint Defense Agreement, and would respectfully show the Court as follows:

**I.     INTRODUCTION**

As this Court is aware, there are a number of Defendants involved in this case. As expected, many of them have banded together to team up against DataTreasury, and they have entered one or more agreements to share confidential information between and amongst themselves in an attempt to better combat DataTreasury's growing proof of validity and infringement of the patents-in-suit. None of the Defendants involved in this case have produced the Joint Defense Agreements ("JDA") that they have entered in this proceeding; however, at least one Defendant in this proceeding has not objected to the production of a prior JDA in DataTreasury litigation, as discussed more fully below.

The present Motion seeks production of the JDA entered into by Citizens Financial Group, Inc. ("Citizens Financial"). On December 15, 2006, DataTreasury served its First Set of Requests for Production of Documents to Citizens Financial. *See* Exhibit 1. Citizens Financial served Objections and Responses on February 1, 2007. *See* Exhibit 2. In virtually every one of its Responses, Citizens Financial asserted the following: "CFG also objects to this request as seeking documents protected by the attorney-client privilege, attorney work product doctrine, **joint defense privilege** or any other applicable privilege or immunity." *See generally* Exhibit 2 (emphasis added). For example, DataTreasury's requests included the following:

> **REQUEST FOR PRODUCTION NO. 30**: All documents exchanged or transmitted between Defendant and all other codefendants relating to the patents-in-suit or any of their owners or assignees, whether current or previous.

*See* Exhibit 1. Citizens Financial cannot dispute that the documents called for by this request are important and relevant to this case; in fact, Citizens Financial did not even object to this Request on any grounds other than privilege. Defendant's response to Request No. 30 was limited to this statement: "CFG objects to this request as seeking documents protected by the attorney-client privilege, attorney work product doctrine, joint defense privilege or any other applicable privilege or immunity." *See* Exhibit 2.

Subsequently, Citizens Financial completed its document production to DataTreasury on March 17, 2007, and also provided a privilege log. *See* cover letter to document production, attached as Exhibit 3, and Privilege Log, attached as Exhibit 4. However, the document production did not contain the JDA nor any communications between Citizens Financial and its co-defendants, and the privilege log did not log any communications between Citizens Financial and its co-defendants, as called for by

Request No. 30.[1]  Thus, Citizens Financial has completely shielded all of its communications with its co-defendants behind this assertion of privilege.

DataTreasury subsequently asked Citizens Financial to produce the JDA, and provided authority from the Eastern District of Texas to support its position.  *See* e-mail correspondence from Anthony Bruster to defense counsel attached as Exhibit 5.  Despite DataTreasury's further efforts to resolve this dispute without burdening the Court, Defendant refused to produce the JDA.  *See* correspondence from Jeffrey Standley attached as Exhibit 6.  This Motion followed.

## II.   ARGUMENT

First, it is important to note that DataTreasury is **not** seeking by this Motion production of communications that may be covered by a valid privilege.  This Motion instead only seeks production of the JDA itself, which can be used to determine what the scope of the joint defense privilege is, to what extent communications are protected from disclosure, and importantly, to determine the bias of witnesses that DataTreasury will depose in this matter.  Simply put, DataTreasury cannot tell whether Citizens Financial's wholesale refusal to produce any of its communications with other defendants is valid or not until the privilege is established and its scope is analyzed.  Ordering production of the JDA now will allow DataTreasury to do that not just for Citizens Financial, but for all other Defendants that are sure to take this same approach as document productions continue.

It is axiomatic that relevant communications between a party and a non-party are discoverable in the absence of a recognized privilege.  *See* FED. R. CIV. PRO. 26(b)(1)

---

[1] The JDA itself is responsive to Request No. 30.  Defendant's failure to produce the JDA necessitates the current Motion.

("Parties may obtain discovery regarding any matter, **not privileged**, that is relevant to the claim or defense of any party…") (emphasis added). Privileges are limited to a select number of established principles. *See In re Qwest Commns. Int'l.*, 450 F.3d 1179, 1197-98 (10th Cir. 2006). As discussed above, Citizens Financial has in essence stipulated that its communications with its co-defendants are relevant, as it failed to assert any relevance or scope objections to Request No. 30. Thus, in order for these communications to privileged, Citizens Financial prove the applicability of the joint defense privilege, which requires a showing by Citizens Financial that the documents in question were made in the course of a joint-defense effort, and that the documents were in furtherance of that effort. *See id*. at 1195.

In order for one to determine whether Citizens Financial's wholesale refusal to produce any communications with its co-Defendants was proper, it must be established that (1) Citizens Financial is a party to a JDA, and (2) the requested communications were made during the time period covered by the JDA. DataTreasury has no way of knowing whether these facts have been established for Citizens Financial (or any other Defendant in this case), and therefore whether any joint defense privilege exists. Without reviewing the JDA and comparing it to documents produced by the Defendant and/or the privilege log. In addition to these reasons, the JDA is relevant for a number of other reasons, and ordering its production now will prevent this same dispute from arising time and time again in this case.[2]

---

[2] As explained in Section II(C), most Defendants in this case are beginning or in the middle of rolling document productions. DataTreasury is examining each production to determine if Defendants have

### A.    The JDA Itself is Not Privileged

The Eastern District of Texas has recognized in the past that the JDA itself is not a privileged document and should be produced in disputes similar to this one. In *Power Mosfet Tech. vs. Siemens AG*, 206 F.R.D. 422 (E.D. Tex. 2000), this very same issue was discussed by the Court. In that case, the plaintiff sought to compel numerous documents that defendants claimed were protected by the joint defense privilege. *See id.* at 424-26. This is a difference from the case at bar, where DataTreasury only seeks production of the JDA itself at this time, and not any communications between the Defendants. However, in *Power Mosfet* Magistrate Judge Radford issued very instructive language for the dispute at bar.

First, the Court noted that a large majority of the dispute could have been avoided, and judicial efficiency achieved, if the defendants had merely produced the JDA itself. Specifically, the Court stated that Defendants "failed to provide it to Plaintiff" and that providing it "would have been the proper thing to do." *See id*. at 426 and FN 12. The Court elaborated on this point as follows:

> The party claiming the privilege has the burden of proof that it exists; the agreement proves to the adverse party exactly who the participants are. **The claim that the agreement itself is work product is without merit**. The agreement does nothing to reveal counsel's mental impressions or thought processes, and the substantial need is fulfilled by the requirement of proving the privilege. **Judicial economy is thus best served by producing the document**.

*See id*. at page 426, FN 12 (emphasis added). Ultimately, the Court determined that Defendants should be ordered to produce the JDA, for the very reasons discussed above.

---

produced relevant communications between them and other co-defendants. To the extent each Defendant fails to do so, DataTreasury will have to raise this same issue numerous times in the future.

*See id.* at 426 ("Therefore, it is ORDERED that Defendant produce the text of the agreement to the Plaintiff.").[3]

DataTreasury requests this very same relief by way of this Motion. All of the same reasons underlying the Court's opinion in *Power Mosfet* exist in this case – there are questions as to the scope of the joint defense privilege and the identity of the participating co-defendants, given the wholesale refusal to provide any documentation concerning these communications. As an opinion from this District has already determined that a JDA itself is not a privileged document and is instructive in resolving disputes regarding the scope of the privilege, this Court should Order Citizens Financial to produce the JDA it signed in this case.

In addition to the *Power Mosfet* opinion, prior conduct by other Citizens Financial's co-defendants in DataTreasury litigation proves that Defendant should produce the JDA. As the Court is well aware, First Data Corporation and Telecheck

---

[3] The Magistrate also ruled that Plaintiffs could request specific communications between the co-defendants, and found that the work product privilege did not extend to the issue of infringement because the defendants' interests varied there. *See id.* This ruling was later overruled by this Court, in an Order dated July 30, 2001. *See* Exhibit 7. However, this Court's July 30 Order was very specific – the issue the Court addressed was whether "the work product doctrine bars disclosure of communications between" signatories to a joint defense agreement, specifically on those disputed issues of claim construction and infringement. The Court's Order was not focused on whether the JDA itself was discoverable. To further illustrate this, DataTreasury has attached as Exhibit 8 the Objections to Magistrate Radford's Order filed by Defendants, which led to the Court's July 30, 2001 Order overruling the Magistrate's opinion. *See* STMicroElectronics Inc.'s Objections to Magistrate Judge's October 30, 2000 Order, attached as Exhibit 8. Those Objections clearly state all throughout the pleading that Defendants ask the Court to overturn the Magistrate's Order as it required them to produce the communications made pursuant to the JDA – not the JDA itself. *See generally id.* (including requesting relief that the Court "properly conclude that the work product protections available to defendants here would not require them to disclose any of their shared communications in this case, whether as to claim construction of the patent, its validity or enforceability, or otherwise."). The whole scope of the Objections and subsequent Order was about delineating the scope of the work-product and joint-defense privileges for communications made pursuant to a JDA – not the production of the agreement itself. This distinction is important in the present case, as DataTreasury is not seeking to compel those communications between the Defendants concerning claims construction, or any other matters; DataTreasury is only seeking to compel the JDA itself. This issue was not squarely addressed by this Court in its July 2001 *Power Mosfet* Order; thus, Judge Radford's guidance is still viable and persuasive. To the extent Defendants attempt to argue otherwise, they are merely stretching this Court's prior Order to places it did not reach.

Services Inc. are Defendants in a prior case filed by DataTreasury, *see Cause No. 5:03-cv-00039, now consolidated with Cause No. 5:05-cv-00173*. Those same companies are also Defendants in this case. In addition to these two Defendants, the Court will recall that Viewpointe Archive Services LLC was previously a defendant in litigation brought by DataTreasury in the Northern District of Texas.

The Court will recall that all of those Defendants were signatories to a previous JDA that was <u>voluntarily produced</u> by Defendant J.P. Morgan Chase in Cause No. 5:02-cv-00124 – and none of the participating Defendants raised a single objection to the production of that JDA. In essence, these parties who are currently co-Defendants of Citizens Financial have, in previous cases with DataTreasury, acquiesced to the production of a JDA. This conduct is probative of the fact that the JDA here should likewise be produced.

Overall, it is clear that the JDA itself is not privileged. Any attempt by Citizens Financial to argue otherwise is contrary to precedent in this District and is inconsistent with prior conduct in this court by its co-Defendants. Thus, since the document itself is not privileged and is responsive to DataTreasury's Requests for Production, the Court should Order its production if it is relevant to this dispute. The JDA's relevance and the importance of ordering its production are explained below.

**B. The JDA is Relevant to Determine Bias and Interest of Witnesses, and to Validate the Proper Scope of Document Productions**

The JDA in this case is relevant in a number of ways. First, it will show the Court – and one day, the jury – the bias of witnesses' testimony in support of other Defendants in the case. Second, it will be a relevant piece of evidence to show the jury the way in

which the dozens of Defendants have worked together to make this case truly a "one versus all" dispute.  Finally, the JDA is relevant because Citizens Financials' communications with other Defendants are admittedly relevant, and if those communications were not made within the scope of the JDA, they should immediately be produced.  All of these facts are probative to show the bias and interest of witnesses and parties in this case, and for that reason alone, the document should be produced.

As an example of the way in which the parties have conducted their joint defense, DataTreasury has attached as Exhibit 9 various Defendants' Motions to Stay and Sever and the Joint Motion to Dismiss for Failure to State a Claim or in the Alternative for a More Definite Statement. As the Court can tell from Exhibit 9, Citizens Financial's Motion to Sever merely adopted the arguments and authorities of the other defendants' previous Motion.  Also from Exhibit 9, the Motion to Dismiss was a Joint Motion to Dismiss by most of the defendants. These joint motions are occurring often by the Defendants, and they show that Defendants are meeting often, exchanging strategy, and otherwise aligning themselves together against DataTreasury.  Such conduct can only truly be proven to a jury, however, by showing them the actual JDA itself – anything less to the factfinder would merely be speculation.  The JDA is thus relevant and necessary to allow DataTreasury to prove that Citizens Financial isn't really defending itself – it is getting help from numerous financial institutions with aligned interests and limitless resources.  This Court is fully aware of the important role played by evidence of interest or bias in a jury trial; the fact that juries are to judge the truthfulness of witnesses is a duty on which the jury is instructed at both the beginning and the end of many trials.  The JDA is directly relevant to the bias and interest of Citizens Financial and all the other

signatories to that agreement; it must be produced for the jury to clearly understand the reasons many Defendants' witness will "say what they say."

Overall, these reasons support the relevance of the JDA and require its production. Furthermore, as discussed below, ordering production of the JDA now will conserve significant judicial resources in this case.

### C.  Requiring Production of the JDA Now Will Prevent this Same Dispute from Occurring Dozens of Times and Eliminate Significant Motion Practice

As discussed above, there are a substantial number of Defendants in this case. While hardly any Defendants have completed their document production like Citizens Financial has, most Defendants are in the process of making rolling document productions that should be completed within the coming weeks. If history is a good indicator, it is likely that most Defendants will take the same approach that Citizens Financial has taken when it comes to producing communications with other Defendants – i.e., Defendants will make a wholesale refusal to produce any responsive documents.

However, if the Court will Order Citizens Financial to produce the JDA now, these numerous additional disputes will most likely be largely avoided. With the JDA in hand, DataTreasury will be able to meet and confer extensively with each Defendant about documents listed in their privilege logs, the dates of communications between co-Defendants, and whether particular documents fall inside vs. outside the protection of the joint defense privilege. DataTreasury cannot undertake this task in the total darkness; the JDA will provide the light necessary for DataTreasury to conduct this analysis with each Defendant. Without its illumination, DataTreasury will have to repeatedly file a Motion to Compel against every single Defendant merely to set the parameters of the joint

defense privilege, and to determine which communications and documents fall within the scope of the privilege. This repeated Motion practice would be terribly inefficient for the Court and for the litigants, and by Ordering the JDA produced now, the Court can head off this impending flood of paperwork and conserve its already-strained resources.

In sum, DataTreasury harkens back to the opinion of Magistrate Judge Radford and his holding in *Power Mosfet* – that for a Defendant to provide the JDA would be "the proper thing to do" and "judicial economy is thus best served by producing the document." *See* 206 F.R.D. at 426, FN 12. Though the Court overruled other parts of this opinion, these statements are still very sound legal reasoning, and very applicable in this case. DataTreasury's Motion to Compel should be granted.

### III.    CONCLUSION

For the foregoing reasons, DataTreasury requests that the Court Order Defendant Citizens Financial Group, Inc. to produce its Joint Defense Agreement within ten days. DataTreasury prays for any other relief to which it may be entitled.

Respectfully submitted,

/s/ ANTHONY BRUSTER
ANTHONY BRUSTER
State Bar No. 24036280
R. BENJAMIN KING
State Bar No. 24048592
C. CARY PATTERSON
State Bar No. 15587000
BRADY PADDOCK
State Bar No. 00791394
**NIX PATTERSON & ROACH L.L.P.**
2900 St. Michael Drive, Suite 500
Texarkana, Texas 75503
Tel. (903)223-3999; Fax (903)223.8520

EDWARD L. HOHN, ATTORNEY IN CHARGE
State Bar No. 09813240
ROD A. COOPER
Texas Bar No. 90001628

EDWARD CHIN
State Bar No. 50511688
**NIX PATTERSON & ROACH L.L.P.**
Williams Square
5215 North O'Connor Blvd., Suite 1900
Irving, Texas 75039
Tel. (972)831-1188; Fax (972)444-0716
edhohn@nixlawfirm.com
edchin@nixlawfirm.com
rcooper@cooperiplaw.com

JOE KENDALL
Texas Bar No. 11260700
KARL RUPP
Texas Bar No. 24035243
**PROVOST UMPHREY, L.L.P.**
3232 McKinney Avenue, Suite 700
Dallas, Texas 75204
Tel. (214)744-3000; Fax (214) 744-3015
jkendall@provosthumphrey.com
krupp@provostumphrey.com


ERIC M. ALBRITTON
Texas Bar No. 00790215
**ALBRITTON LAW FIRM**
P.O. Box 2649
Longview, Texas 75606
Tel. (903)757-8449; Fax (903)758-7397
ema@emafirm.com

T. JOHN WARD JR.
Texas Bar No. 00794818
**THE LAW OFFICE OF T. JOHN WARD, JR.**
P.O. Box 1231
Longview, Texas 75606
Tel. (903)757-6400; Fax (903) 757-2323
jw@jwfirm.com

**ATTORNEYS FOR PLAINTIFF
DATATREASURY CORPORATION**

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that he discussed this issue on numerous occasions and by correspondence with both local and national counsel for Citizens Financial Group, Inc., but this dispute was unable to be resolved without Court intervention.

/s/ Anthony Bruster
**ANTHONY BRUSTER**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on all counsel of record who have consented to receive electronic service on this the 17th day of May, 2007.

/s/ Anthony Bruster
**ANTHONY BRUSTER**