UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DATATREASURY CORPORATION | § | |
|     *PLAINTIFF* | § | Civil Action No. 2:06cv72 |
| | § | Jury Trial Demanded |
| | § | |
| vs. | § | |
| | § | |
| WELLS FARGO & COMPANY; WELLS | § | |
| FARGO BANK, NATIONAL | § | |
| ASSOCIATION;  et al | | |

## PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTCITIZENS FINANCIAL GROUP, INC.

Pursuant to Federal Rules of Civil Procedure 34, Plaintiff, DataTreasury Corporation directs the following requests for production of documents and things to Defendant Citizens Financial Group ("Citizens Financial"). DataTreasury requests that these documents be produced thirty days from service of this request to the offices of Nix, Patterson & Roach, 5215 N. O'Connor Boulevard, Suite 1900, Irving, Texas 75039 or at such other place as may be mutually agreed upon by counsel, within thirty (30) days after service of these document requests. Further, DataTreasury requests that all documents shall be produced in electronic .TIFF format with a corresponding .TXT load file containing the document boundaries as kept in ordinary course of business.

## **DEFINITIONS**

Unless specifically indicated, or otherwise required by the context in which the terms and names are used, the following instructions and definitions shall apply:

1. The term "Citizens Financial" as described above shall further include any and all past and present domestic of foreign parent corporations, subsidiaries, divisions, department, sister or affiliate, partner or partnership, predecessor or successor-in-interest companies or proprietorships, any joint venture to which Citizens Financial is a party, and all of Citizen Financial's present and former officials, executives, officers, directors, employees, managing agents, agents and/or all other persons or entities purporting to act on behalf of or in concert with, or who are subject to the direction or control of any of the foregoing, to the extent that they are or have been involved in any manner with the subject matter of the requests herein.

2. "You," "your," or "defendant" refers to "Citizens Financial" as described above.

3. "DataTreasury" shall mean the Plaintiff in this action.

4. "Person" means any natural person, legal entity, or business entity, including but not limited to any corporation, partnership, proprietorship, trust, association, organization or group of persons.

5. "Entity" or "Entities" includes natural persons, proprietorships, partnerships, firms, corporations, public corporations, municipal corporations, governments (including foreign national governments, the government of the U.S. or any state or local government), all departments and agencies thereof, any governmental agencies of any country, political subdivisions, groups, associations, or organization.

6. The term "document" or "documents" shall include, without limitation, any written or graphic matter or any medium of any type or description upon which intelligence or information is recorded or reflected or from which intelligence or information can be recorded, which is or has been in your possession, control or custody or of which you have knowledge, including, but not limited to, the original and any non-identical copy (whether different from the original because of any notes made on said copy or otherwise) of any: account; advertising literature; agreement; analysis; appointment book or schedule; article; audit; bank record or statement blueprint; book; book of account; booklet; brochure; bulletin; calendar; CD-ROM; chart; check; circular; coding form; communication (intra-or inter-company); computer file or storage (in a computer, computer disk, computer tape or otherwise); computer printout; computer readable form; computer program; contract; copy; correspondence; data base; diary; disk; display; draft of any document; drawing; electronic mail (e-mail); envelope; examination; film; file; file folder; financial report; flyer; forecast; graph; index; instruction; instruction manual or sheet; invoice; job requisition; letter; license; log; magnetic media or sheet; magnetic media of any kind (including but not limited to disks, tapes, or other media) containing computer software with supporting indices, data, documentation, flow charts, comments, object code, source code, and computer programs relating thereto; manual; map; memorandum; message; minutes; three-dimensional model or structure; magazine or other published material (or any clipping thereof); newspaper; note (typewritten, handwritten, stenographic, recorded, or any other type); notebook; notice; opinion; pamphlet; paper; periodical or other publication; photograph; price list; print; printed circuit board; promotional literature; punch card; purchase order; questionnaire; receipt;

record; recorded Read-Only-Memory (ROM); recording (magnetic, electronic, videotape, or any other type); record request; report; slide; solicitation; statement; statistical compilation; stenographic notes; study; summary (including any memoranda, minutes, notes, records, or summary of any (a) telephone or intercom conversation or message, (b) personal conversation or interview, or (c) meeting or conference); survey; tape; telegram; telephone log; transparency; travel or expense records; video recording; video tape; visitor log; voice recording; voucher; x-ray film; x-ray print; worksheet or working paper; writing or other handwritten, printed, reproduced, recorded, typewritten, or otherwise produced graphic material from which the information required may be obtained; or any other documentary thing or material of any nature, in your possession, custody or control.

7. "Concerning" means relating to, referring to, describing, evidencing or constituting.

8. "Relates" or "relating" means any relationship of whatever kind or nature, be it direct or indirect, and includes without limitation embodying, connected with, commenting upon, responding to, showing, describing, analyzing, reflecting, supporting and constituting.

9. "Involving" is used in its broadest sense to mean without limitation including, employing, entailing, comprehending, and/or affecting.

10. "Evidencing" means proving, indicating, or being probative of the existence or nature of the subject of the document requests.

11. "Communication" or "Communications" means, unless otherwise specified, any of the following: (1) any letter, memorandum, electronic message or other document whether typed, long hand or otherwise generated; (2) any telephone call

between two or more persons; and (3) any conversation or meeting between two or more persons, whether or not such contact was by chance or pre-arranged, formal or informal.

12. "Communicated" means any transfer or exchange between two or more Persons or Entities of any information whether by document or oral means, including but not limited to, personal conversation, correspondence, facsimile, telephone calls, electronic mail and telegrams.

13. "Meeting" means any coincidence of, or presence of, or telephone, television, radio or other electronic communication between or among persons, whether such was by chance or pre-arranged, informal or formal.

14. "Date" means the exact date, month, and year, if ascertainable, or if not, the best approximation thereof.

15. "Thing" means any physical specimen or other tangible item, other than a "document" as defined herein.

16. "And" or "or" shall be both conjunctive and disjunctive.

17. "Any" or "each" should be understood to include and encompass "all."

18. "U.S." means United States of America.

19. The patents in this action are identified as follows:

    (a) "'137 Patent" means U.S. Patent No. 6,032,137 issued on February 29, 2000.

    (b) "'988 Patent" means U.S. Patent No. 5,910,988 issued on June 8, 1999.

    (c) "'778 Patent" means U.S. Patent No. 5,930,778 issued on July 27, 1999.

    (d) "'868 Patent" means U.S. Patent No. 5,717,868 issued on February 10, 1998.

    (e) "'759 Patent" means U.S. Patent No. 5,583,759 issued on December 10, 1996.

(f) "'007 Patent" means U.S. Patent No. 5,265,007 issued on November 23, 1993.

(g) "Patents-in-Suit" shall mean the '988 patent, the '137 patent, the '007 patent, the '759 patent, the '778 patent, and the '868 patent as set forth against these Defendants in the most recently amended complaint.

20.     "Product" refers to Defendant's electronic check conversion Services or on-line check imaging service.

21.     "Sales Area" means any group of states or defined geographic area used to divide the U.S. market for Defendants' electronic check conversion services or on-line check imaging services.

22.     References to any natural person shall include, in addition to the natural person, any agent, employee, representative, attorney, superior, or principal thereof.

23.     References to any entity shall include, in addition to the entity, any officer, director, employee, partner, corporate parent, subsidiary, affiliate, agent, representative, attorney, or principal thereof.

24.     "Accused Instrumentality," shall mean the apparatus, product, device, process, method, act, services, or other instrumentality accused of infringement as identified in Plaintiff's Preliminary Infringement Contentions and provided under Patent Local Rule 3-1(b).

25.     The term "any other named defendant" means a defendant in civil litigation filed by DataTreasury in the Eastern District of Texas or the Northern District of Texas, and includes, but is not necessarily limited to, the following entities: First Data Corporation; First Data Merchant Services Corporation; TeleCheck Services, Inc. *d/b/a*

TeleCheck International, Inc.; MicroBilt Corporation; J.P. Morgan Chase & Co.; J.P. Morgan Chase Bank; Bank One Corp.; Electronic Data Systems Corp.; Zions Bancorporation; Affiliated Computer Services, Inc.; ACS Image Solutions, Inc.; Viewpointe Archive Services, L.L.C.; Ingenico S.A. *d/b/a* Groupe Ingenico; Ingenico, Corp; Ingenico, Inc.; TASQ Technology, Inc.; Research Development and Manufacturing Corp. (RDM Corp.); Small Value Payments Co. (SVP Co.); NCR Corporation's ("NCR"); Citigroup, Inc; Citibank National Association; Magtek, Inc., a/k/a Mag-Tek, Inc.; Remitco, LLC; Integrated Payment Systems, Inc.; Wachovia Corporation; Wachovia Bank National Association; Wells Fargo & Company; Wells Fargo Bank, National Association; U.S. Bancorp; U.S. Bank, National Association; SunTrust Banks, Inc; SunTrust Bank;  BB&T Corporation; Branch Banking and Trust Company; BancorpSouth Inc.; BancorpSouth Bank; Compass Bancshares, Inc.; Compass Bank; Cullen/Frost Banks, Inc.; The Frost National Bank; First Horizon National Corporation; First Tennessee Bank, National Association; HSBC North America Holdings Inc.; HSBC Bank USA, N.A.; Harris Bankcorp, Inc.; Harris N.A.; National City Corporation; National City Bank; Zions First National Bank; Bank of New York Co., Inc.; The Bank of New York; UnionBancal Corporation; Union Bank of California, National Association; Bank of Tokyo-Mitsubishi UFJ, Ltd.; Citizens Financial Group, Inc.; City National Corporation; City National Bank; Comerica Incorporated; Comerica Bank & Trust, National Association; Deutsche Bank Trust Company Americas; First Citizens Bancshares, Inc.; First-Citizens Bank & Trust Company; KeyCorp.; KeyBank National Association; LaSalle Bank Corporation; LaSalle Bank NA; M&T Bank Corporation; M&T Bank; The PNC Financial Services Group, Inc.; PNC Bank, National Association;

UBS Americas, Inc.; Small Value Payments Company, LLC; and The Clearing House Payments Company, L.L.C.

26. The use of the term "the" shall not be construed as limiting the request.

27. Use of the singular shall also include the plural, and vice-versa.

## INSTRUCTIONS

1. Documents shall be produced in accordance with Rule 34(b) of the Federal Rules of Civil Procedure.

2. The documents sought include all responsive documents within defendant's possession, custody or control.

3. This request for documents and things is continuing consistent with the requirements of Rule 26(e) of the Federal Rules of Civil Procedure and the Local Rules of the Eastern District of Texas. In the event that any documents or things come into the possession or control of the defendant subsequent to the filing of the written response to this request, which documents or things fall within the scope of those requested but which were not included in the initial response, DataTreasury requests that it be notified of such documents or things, and that they be produced for inspection and copying, within seven (7) days after the receipt of such notice to DataTreasury.

4. If defendant objects to or otherwise refuses to produce documents in response to any portion of a document request, it shall (i) state the objection or reason for such refusal, and (ii) provide all documents called for by that portion of the document request to which it does not object or to which it does not decline to respond, as follows:

(a) If defendant objects to a document request on the grounds that it is too broad (i.e., that defendant believes it calls for both documents which are relevant and

are not relevant to the subject matter of the action), defendant shall respond to that document request by providing the documents which are relevant;

  (b) If defendant objects to a document request on the grounds that to provide responsive documents would constitute an undue burden, then defendant shall provide as many of the requested documents as can be provided without undertaking an undue burden and discuss with DataTreasury's Counsel possibilities for resolving any proclaimed undue burden; and

  (c) If defendant objects to any portion of a document request on the grounds that it is vague or indefinite, then DataTreasury asks defendant's counsel to contact DataTreasury's counsel to obtain further clarification and within seven (7) days upon receiving clarification from DataTreasury's counsel, provide its response and documents. If defendant remains uncertain after receiving clarification, defendant shall set forth its understanding of the allegedly vague or indefinite term and shall then provide its response and documents as based upon defendant's stated understanding.

5. If defendant cannot provide documents in response to any particular document request, it must:

  (a) Identify any documents which might contain material relevant to the subject matter of the particular document request;

  (b) Identify any person who may have knowledge of material relevant to the document(s) sought.

6. With regard to any document or thing withheld by defendant from inspection and copying, such as on the basis of a claim of attorney-client privilege or work product immunity, identify the document or thing by its:

      (a)    date;

      (b)    type, e.g., letter, memorandum, photograph, computer printout, etc.;

      (c)    subject matter;

      (d)    author or originator;

      (e)    addressee or addressees, and any person known or believed by defendant to have received a copy or have seen a copy of the document or thing;

      (f)    the present custodian of each copy of the document or thing;

      (g)    alleged grounds for withholding production;

      (h)    sufficient particulars to allow DataTreasury to evaluate the claim of privilege or immunity; and

      (i)    the portion of the document as to which the privilege is claimed (e.g., one sentence, one paragraph, entire document, etc.).

7. Where a responsive document has been destroyed, or is alleged to have been destroyed, or exists but is no longer in your possession, custody or control, state the reasons for its destruction or disposition, state the persons having any knowledge of its destruction or disposition, provide documentation concerning your document retention policy, and state the persons responsible for its destruction or disposition.

8. Where a responsive document is in a language other than English, state whether an English translation or partial translation of such document exists. If a document is in a language other than English and an English translation or partial translation exists, provide both documents.

9. The time period covered by all the document requests below, unless otherwise indicated by the request, is 1999 to present.

### III. REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

1. All documents related to, discussing, or provided to you by WMR e-PIN LLC.

2. All documents related to, discussing, or provided to you by e-Bank LLC.

3. All documents related to, discussing, or provided to you by Synoran LLC.

4. All documents related to, discussing, or provided to you by WMR e-Ventures LLC.

5. All documents related to, discussing, or provided to you by DIGI-FI.

6. All documents related to, discussing, or provided to you by William Randle.

7. All documents related to check clearing or settlement systems used or operated by you in any way.

8. All documents related to your systems compliance and operations compliance with the requirements of The Check Clearing for the 21st Century Act ("Check 21").

9. All documents relating to the process of submitting checks into the payment system.

10. All documents relating to the process of submitting invoices into the payment system.

11. All documents relating to the process of submitting electronic payments into the payment system.

12. All documents relating to the process of managing and transmitting information about financial instruments.

13. All documents relating to data management and security for electronic transactions.

14. All documents identified, referenced or discussed in your Initial Disclosures.

15. All organizational charts of Defendant that identify any personnel working with Defendant's Accused Instrumentalities (including management, marketing, development, engineering, accounting, and operational personnel).

16. All reports, meeting minutes, and other documents of Defendant's Board of Directors (including committees) relating in any way to DataTreasury, William Randle, WMR e-PIN LLC, e-Bank LLC, Synoran LLC, or the patents-in-suit.

17. All documents relating in any way to Defendant's policies for licensing-in and/or licensing-out intellectual property.

18. All document retention policies of Defendant that have been in place at any time between 1999 and the present.

19. All documents relating to any Accused Instrumentality that Defendant has offered to sell, sold, or used from 1999 to the present.

20. All documents relating in any way to any products or services associated with the Accused Instrumentalities offered by Defendant.

21. All opinions, letters, or other documents received from any other person, agency, or entity regarding the patents-in-suit.

22. All opinions, letters, or other documents provided to any other person, agency, or entity regarding the patents-in-suit.

23. All opinions, letters, or other documents prepared by Defendant for submission to another person, agency, or entity (including the Securities and Exchange Commission) regarding the patents-in-suit.

24. All documents related to opinions of patent counsel concerning the validity, enforceability, or infringement of the patents-in-suit.

25. All patents, printed publications, and all other alleged prior art (foreign and domestic) relating to the validity or enforceability of the patents-in-suit.

26. All documents associated in any way with prior art searches relating to one or more of the claims in the patents-in-suit.

27. All communications between Defendant and DataTreasury, William Randle, WMR e-PIN LLC, e-Bank LLC, Synoran LLC, or any of their officers or employees.

28. All documents relating in any way to the patents-in-suit, including emails and other communications with any other entity or person relating to the patents-in-suit.

29. All documents exchanged or transmitted between Defendant and any non-party relating to DataTreasury, William Randle, WMR e-PIN LLC, e-Bank LLC, Synoran LLC, or any of their officers or employees, or the patents-in-suit.

30. All documents exchanged or transmitted between Defendant and all other co-defendants relating to the patents-in-suit or any of their owners or assignees, whether current or previous.

31. All agreements, contracts, correspondence, and other documents relating in any way to the design, development, marketing, sales, or use of Defendant's Accused Instrumentalities (including all software and hardware components).

32. All technical specifications, charts, manuals, and diagrams for the Accused Instrumentalities, including all documents relating to the following components of the Accused Instrumentalities: computers, software, hardware, routers, servers, networks, communication links.

33. All financial studies, ROI analyses, cost/benefit analyses, and other quantitative studies relating in any way to the Accused Instrumentalities.

34. All documents referenced in any discovery responses or disclosures by Defendant in this litigation.

35. All documents that describe the function and operation of the Accused Instrumentalities.

36. All patents held, owned, or licensed by Defendant relating to electronic transactions or the Accused Instrumentalities.

37. All patent applications prosecuted (either in the past or currently) relating to electronic transactions or the Accused Instrumentalities.

38. All documents provided to potential or actual customers of Defendant that discuss in any way products or services associated with the Accused Instrumentalities.

39. All engineering documents, laboratory notebooks, and other documents relating to prototypes of the Accused Instrumentalities.

40. All market studies, surveys, reports, plans, and other documents that relate to the Accused Instrumentalities.

41. All documents associated with all insurance, indemnification, or hold harmless demands or agreements relating to the Accused Instrumentalities.

42. All documents that relate in any way to the background or prior testimony of any person Defendant may call as a witness at trial (including expert witnesses).

43. All documents that relate to any actual or proposed technology transfer agreement involving any portion of the Accused Instrumentalities.

44. All documents that discuss or relate to costs forecasted or incurred by Defendant as a result of implementing and operating the Accused Instrumentalities.

45. All documents discussing or relating to actual or expected benefits or cost savings associated with implementing or operating the Accused Instrumentalities.

46. All white papers, release notes, technical manuals, press releases, and other documents relating in any way to the Accused Instrumentalities.

47. A full, usable copy of every version of software utilized by the Accused Instrumentalities.

48. All design boards, flowcharts, specifications, and developer documents related to the Accused Instrumentalities.

49. All documents related to the Accused Instrumentalities for use in trade shows, promotions, seminars, or marketing.

50. For each expert witness whom you have contacted regarding this case and who will testify or whose work product will be reviewed by a testifying expert, please produce all documents related to (i) the expert's opinions; (ii) the bases for those opinions; (iii) preparatory notes and drafts used or created by the expert in formulating those opinions; (iv) all documents provided to or received from the expert.

51. All documents related to any relationships, understandings, or agreements that you have with any other defendant in this case related to electronic check processing, electronic payment processing, or the Accused Instrumentalities.

52. All documents relating to the date of original conception and/or design of each feature of the Accused Instrumentalities.

53. A full, machine-readable copy of the source code for the Accused Instrumentalities, and all documents related to that source code, including remarks.

54. All documents revealing the identities of all persons that have worked with or on the design, development, production, operation, marketing, management and accounting of any Accused Instrumentality.

55. All documents related to time lines, progress reports, testing, success reports, and periodic reports relating to the Accused Instrumentalities.

56. All documents related to any contention you have that the patents-in-suit are void, unenforceable, or not infringed.

57. All documents related to any contention you have that the patents-in-suit are invalid for any reason, including a failure to meet any conditions for patentability set forth in any provision of Title 35 of the United States Code.

58. All documents related to DataTreasury's contention that the patents-in-suit are valid, enforceable, and infringed by you.

59. All documents containing historical, current, and future projected financial performance related in any way to the operation of the Accused Instrumentalities.

60. All documents relating to the valuation of intellectual property by you.

61. All documents relating to each and every third party (including customers of Defendant) who has ever purchased, used, or been offered to purchase or use the Accused Instrumentalities.

62. All documents related to, discussing, or provided to you by DataTreasury.

63. All documents that identify, from each year from 1990 to the present, Defendant's volumes of checks cleared through every clearing mechanism, including but not limited to:

    A. On-us.
    B. Direct send.
    C. Regional Clearinghouses.
    D. National Clearinghouses.
    E. Federal Reserve.
    F. ECP (with paper to follow, with image to follow, and with image on demand).
    G. Image exchange.All documents that identify the costs and expenses incurred, on both a per-unit basis and in aggregate, in conjunction with the use of each clearing mechanism listed in Request No. 63.

64. All documents that identify, for each of the clearing mechanisms listed in Request No. 63:

    a. Average clearing time.
    b. Transportation costs.
    c. Float revenue/costs.

65. All documents that identify, from each year from 1990 to the present, Defendant's volumes of Automated Clearing House ("ACH") items, including but not limited to:

    a. Total ACH originations/receipts.

    b. Total ARC originations/receipts.

    c. Total POP originations/receipts.

    d. Total WEB originations/receipts.

    e. Total TEL originations/receipts.

    f. Total RCK originations/receipts.

    g. Total BOC originations/receipts.

66. All documents that identify the costs and expenses incurred, on both a per-unit basis and in aggregate, in conjunction with the use of each type of ACH transaction listed in Request No. 66.

67. All documents that identify, for each of the types of ACH transactions included in Request No. 66:

    a. Average clearing time.

    b. Transportation costs.

    c. Float revenue/costs.

68. All documents related to your involvement with the following groups or organizations:

    a. SVPCo/The Clearing House.

    b. Clearing House Association of the Southwest.

    c. National Clearing House Association.

69. All documents related to the benefits and/or cost savings associated with national clearing houses as compared to other forms of check clearing mechanisms, including regional clearing houses or the Federal Reserve's paper clearing system.

70. All documents related to the benefits and/or cost savings associated with the use of a real-time tracking mechanism used in conjunction with a national clearing house system.

71. All documents related to the benefits and/or cost savings associated with the use of a net settlement agent used in a national clearing house system.

72. All documents related to any lockbox system used, offered for sale, or operated by Defendant, at any time from 1990 to the present.

73. All documents showing the volumes processed by each lockbox system used, offered for sale, or operated by Defendant, at any time from 1990 to the present.

74. All documents showing the clearing mechanism used for each lockbox item processed by you from 1990 to the present, including but not limited to:

      a. On-us.

      b. Direct send.

      c. Regional Clearinghouses.

      d. National Clearinghouses.

      e. Federal Reserve.

      f. ECP (with paper to follow, with image to follow, and with image on demand).

      g. Image exchange.

      h. Accounts Receivable Conversion ("ARC").

      i. Back Office Conversion ("BOC").

75. All documents showing the revenues, costs, expenses, and profits associated with your lockbox system(s) each year from 1990 to the present.

76. All documents that identify each of your customers for lockbox systems, from 1990 to the present.

77. All documents showing the benefits (both to Defendant and to Defendant's customers) offered by Defendant's lockbox system.

78. All documents related to the benefits, both to Defendant and to Defendant's customers, of using imaging in conjunction with any lockbox system, including those offered by Defendant.

79. All documents related to the benefits, both to Defendant and to Defendant's customers, of using remote endorsement or third-party endorsement with any lockbox system, including those offered by Defendant.

80. All documents related to the archiving of check images associated with Defendant's lockbox systems from 1990 to the present, including the number of images archived annually.

81. All documents related to any back office conversion, remote deposit capture, and/or corporate capture systems used, offered for sale, or operated by Defendant, at any time from 1990 to present.

82. All documents showing the volumes processed by each back office conversion, remote deposit capture, and/or corporate capture system used, offered for sale, or operated by Defendant, at any time from 1990 to the present.

83. All documents showing the clearing mechanism used for each back office conversion, remote deposit capture, and/or corporate capture item from 1990 to the present, including but not limited to:

      a. Image exchange.

      b. Accounts Receivable Conversion ("ARC").

      c. Back Office Conversion ("BOC").

84. All documents showing the revenues, costs, expenses, and profits associated with the Defendant's back office conversion, remote deposit capture, and/or corporate capture system(s) each year from 1990 to the present.

85. All documents that identify each of the Defendant's customers for back office conversion, remote deposit capture, and/or corporate capture systems, from 1990 to the present.

86. All documents showing the benefits, both to Defendant and to Defendant's customers, offered by any back office conversion, remote deposit capture, and/or corporate capture system, including those offered by Defendant.

87. All documents related to the systems used, offered for sale, or operated by Defendant for electronic file conversion relating to electronic payment transactions.

88. All documents related to the revenues, costs, expenses, and profits associated the systems used, offered for sale, or operated by Defendant for electronic file conversion relating to electronic payment transactions.

89. All documents related to the benefits and/or cost savings associated with the systems used, offered for sale, or operated by Defendant for electronic file conversion relating to electronic payment transactions.

90. All documents related to systems used, offered for sale, or operated by Defendant for generation of electronic payment files, including but not limited to:

    a. Paper cash letters.
    b. Electronic cash letters.
    c. ECP files.
    d. ACH files (including international).
    e. X9.37 and X9.100-180 files.
    f. Other image exchange files.

91. All presentations delivered by Defendant at any payments industry forum, conference, or meeting, including but not limited to those on the subjects of paper check processing, electronic check processing, ACH, lockbox operations, and float management.

Respectfully submitted,



_____
Anthony Bruster
Texas Bar No. 24036280
R. Benjamin King
Texas Bar No. 24048592
Brady Paddock
Texas Bar No. 00791394
**NIX PATTERSON & ROACH, L.L.P.**
2900 St Michael Drive, 5th Floor
Texarkana, Texas  75503
Tel, (903)774-3000; Fax (903)744-3015

Edward L. Hohn
Texas Bar No. 09813240
Rod A. Cooper
Texas Bar No. 90001628
Edward Chin
Texas Bar No. 50511688
**NI X PATTERSON & ROACH, L.L.P.**
5215 N. O'Connor Blvd., Suite 1900
Irving, Texas  75039
Tel. (972)831-1188; Fax (972)444-0716

Joe Kendall
Texas Bar No. 11260700
Karl Rupp
Texas Bar No. 24035243
**PROVOST HUMPHREY, L.L.P.**
3232 McKinney Avenue, Suite 700
Dallas, Texas 75204
Tel. (214)774-3000; Fax (214) 744-3015


Eric M. Albritton
Texas Bar No. 00790215
**ALBRITTON LAW FIRM**
P.O. Box 2649
Longview, Texas 75606
Tel. (903)757-8449; Fax (903)758-7397

T. John Ward, Jr.
Texas Bar No. 00794818
**LAW OFFICE OF T. JOHN WARD, JR. P.C.**
P.O. Box 1231
Longview, Texas 75601
Tel. (903)757-6400; Fax (903)757-2323

*Counsel for Plaintiff DataTreasury Corporation*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was served via electronic mail on the 15th day of December, 2006.

Bank of America - Listserve (BankofAmericaF&R@fr.com)
BB&T 007 ListServe (BB&T_DataTreasury@kilpatrickstockton.com)
Citizens Financial (citizensfinancial@standleyLLP.com)
City National Bank - Listserve (citynationalbank@dmtechlaw.com)
Comerica Bank 007 Listserve (Comerica_DataTreasury@kilpatrickstockton.com)
Compass/First Horizon/TN Bank - Listserve (comfhft@andrewskurth.com)
Cullen/Frost Bank - Listserve (frostbank@dmtechlaw.com)
EDS - Listserve (EDS_DataTreasury@mckoolsmith.com)
UBS – Listserve (ubsamericas@velaw.com)
HSBC North America Holdings, Inc./HSBC Bank USA  Listserve  (hsbccounsel@blhc-law.com)
BancorpSouth Listserve (bxs@hughesluce.com)
Bank of Tokyo Listserve (BankofTokyo_DataTreasury@sidley.com)
BofNY Listserve (BofNYLitTeam@pillsburylaw.com)
The Clearing House/SVPCo Listserve (TCH_DT@sullcrom.com)
Deutsche Bank Listserve (DeutscheBank_DataTreasury@sidley.com)
First Citizens Listserve (firstcitizens@bakerbotts.com)
First Data Listserve (FirstData_DataTreasury@sidley.com)
Key Bank Listserve (KeyCorp_DataTreasury@mckoolsmith.com)
LaSalle Bank Listserve (LaSalleBank_DataTreasury@sidley.com)
National City Bank Listserve (foley-dtc@foley.com)
Remitco Listserve (Remitco_DataTreasury@sidley.com)
Telecheck Listserve (Telecheck_DataTreasury@sidley.com)
Union BofCA Listserve (ubofclitteam@pillsburylaw.com)
Viewpointe Listserve (Viewpointe_dtc@skadden.com)
Zion First National Bank Listserve (foley-dtc@foley.com)
Harris Bancorp. - Listserve (Harris_DataTreasury@mckoolsmith.com)
M&T 007 Listserve (M&T_DataTreasury@kilpatrickstockton.com)
PNC Bank - Listserve (PNC_DataTreasury@mckoolsmith.com)
Suntrust - Listserve (SunTrust_DataTreasury@mckoolsmith.com)
U.S. Bancorp – Listserve (foley-dtc@foley.com)
Wachovia 007 Listserve (Wachovia_DataTreasury@kilpatrickstockton.com)
Wells Fargo - Listserve (*DalWellsFargo_DTC@BakerNet.com)

/s/
**Moni King, Sr. Paralegal**