Datatreasury Corporation v. Wells Fargo & Company et al                                    Doc. 698 Att. 8




IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

POWER MOSFET TECHNOLOGIES, L.L.C.,
Plaintiff,

vs.

(1) SIEMENS AG, a German Corporation,
(2) INFINEON TECHNOLOGIES
 CORPORATION, a Delaware Corporation,
(4) STMICROELECTRONICS, INC.,
 a Delaware Corporation,
(6) SGS-THOMSON MICROELECTRONICS,
 INC., a Delaware Corporation,
Defendants.

CIVIL ACTION NO. 2:99CV0168–DF

---

## STMicroelectronics, Inc.'s Objections to Magistrate Judge's October 30, 2000 Order

---

November 13, 2000

Bruce S. Sostek
Jane Politz Brandt
Max Ciccarelli
THOMPSON & KNIGHT L.L.P.
1700 Pacific Avenue, Suite 3300
Dallas, Texas 75201
214.969.1700

Damon Young
LAW OFFICES OF YOUNG & PICKETT
4122 Texas Boulevard
Texarkana, Texas 75504
903.794.1303

Hubert Oxford, III
BENCKENSTEIN & OXFORD, L.L.P.
Post Office Box 150
Beaumont, Texas 77704
409.833.9182

ATTORNEYS FOR DEFENDANT STMICROELECTRONICS, INC.

On October 30, 2000, STMicroelectronics, Inc. ("ST, Inc.") was served with a Memorandum Opinion and Order [Docket No. 188] issued by Magistrate Judge Radford relating to a motion to compel filed by Plaintiff Power Mosfet Technologies ("PMT"). Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, ST, Inc. objects to certain portions of that Order, namely the Magistrate's ruling regarding PMT's Interrogatory No. 9, and requests that the Court deny PMT's motion to compel regarding Interrogatory No. 9.

## BACKGROUND

On July 5, 2000, PMT served ST, Inc. with an interrogatory requesting identification of communications between ST, Inc. and its co-defendants in this patent-infringement suit:

> **INTERROGATORY NO. 9:** "Identify" all "communications" between "you" and any of your co-defendants related to the above-captioned lawsuit, the "Chen Patent" and "PMT."

ST, Inc. objected to the interrogatory, asserting both the work-product doctrine and the common-interest or joint-defense rule. PMT filed a motion to compel information related to the joint-defense privileges [Docket No. 108] on July 31, 2000, and later filed a motion to compel relating to the interrogatory [Docket No. 132]. ST, Inc. and its co-defendants, Infineon Technologies Corporation and International Rectifier Corporation, filed a joint response to PMT's first motion [Docket No. 129], and ST, Inc. filed a separate response to the motion to compel Interrogatory No. 9 [Docket No. 146].

In the joint response to the motion to compel all documents and things exchanged between defense counsel, the defendants demonstrated that the communications were protected from disclosure by the work-product doctrine.[1] That response and declarations attached thereto also

---

[1] *See* Defendants' Joint Response to Plaintiff's Motion to Compel [Docket No. 129], at 3–4 [hereinafter Defendants' Joint Response].

-1-

established that *no* attorney-client communications had been exchanged between the defendants.[2] Nevertheless, because PMT's motion appeared to blur the distinction between work-product and the common-interest rule, the defendants' response showed that even had attorney-client communications been shared, they would have retained their privileged character through operation of the common-interest or joint-defense doctrine.

In the October 30th Order, Magistrate Radford acknowledged that the defendants have a common-interest privilege. The Magistrate concluded, however, that such privilege did not extend to protect communications between the defendants relating to patent-claim construction. That conclusion is discussed in more detail below. One of the most important aspects of the Magistrate's Order is its failure to consider the work-product doctrine and its departures from the common-interest doctrine. This Court will not be required to spend much time on whether the Magistrate's ruling on the common-interest privilege is correct however, because the work-product doctrine, without more, protects from disclosure all of the communications between the defendants.

## II. POINTS AND AUTHORITIES

A. The Magistrate's Memorandum Opinion and Order misapplies the "common-interest" or "joint-defense" doctrine.

The Magistrate's Memorandum Opinion and Order refers to the "common interest privilege." While this is a convenient moniker often used by the courts, the "common-interest" or "joint-defense" rule is not really a privilege but is actually an exception to the general rule regarding waiver of the attorney-client privilege.[3] It is distinct from the work-product doctrine in that the standard for waiver of work-product immunity is far different from the standard for waiver of the attorney-

---

[2] *Id.* at 3, Exhibits C (Declaration of Jeffrey D. Baxter), D (Declaration of Jane Politz Brandt), and E (Declaration of David E. Killough) thereto.

[3] *Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 539 (N.D. Ill. 2000).

-2-

client privilege.[4] Although the defendants made that point in their Joint Response to Plaintiff's Motion to Compel,[5] the Magistrate's Order failed to recognize this critical distinction.

As established by Defendants' Joint Response, no attorney-client-privileged information has been shared by the defendants. Instead, only work-product materials were exchanged.[6] Based on an incorrect construction of the "common interest privilege," the Magistrate's Order erroneously concludes that there is no privilege for materials exchanged between the defendants relating to claims construction for the '275 patent.[7] But in this case, even if the defendants had exchanged attorney-client information, the common-interest rule would preclude a finding of waiver because, contrary to the Magistrate's ruling, information exchanged between the defendants pertaining to claim construction falls within the protection provided by the common-interest rule.

To this extent, ST, Inc. objects to the Magistrate's ruling and requests that the Court reconsider the Magistrate's ruling and thereafter deny PMT's Motion to Compel and sustain ST's objections to Interrogatory No. 9 propounded by PMT.

**B.     The work-product doctrine protects from disclosure communications between the co-defendants and their counsel.**

In their Response to PMT's motion to compel, the defendants established that no attorney-client communications were exchanged, and that the entirety of their communications fell within the work-product doctrine. The Magistrate, however, failed to identify or take into account the

---

[4] *See Transmirra Prods. Corp. v. Monsanto Chem. Co.*, 26 F.R.D. 572, 578 (S.D.N.Y. 1960) ("[A]ny waiver of the attorney-client privilege does not affect that protection granted an attorney's work product.").

[5] *Compare* Defendants' Joint Response to Plaintiff's Motion to Compel [Docket No. 129], at 3 (reciting standard for work-product) *with id.* at 5 (reciting standard for attorney-client privilege).

[6] *See* Defendant's Joint Response to Plaintiff's Motion to Compel [Docket No. 129], at 3–4, and Exhibits C, D, and E thereto.

[7] October 30, 2000 Memorandum Opinion and Order, at 7.

work-product protection in his October 30th Order. Proper application of the work-product doctrine protects from discovery the communications between the co-defendants.

In holding that the common-interest privilege applies only "in civil cases in which parties have an identical, not similar, legal interest, and not merely a commercial interest," the Magistrate relied upon the Federal Circuit's decision In re Regents of University of California,[8] which quoted Duplan Corp. v. Deering Milliken, Inc.[9] But neither of those cases involved waiver of the work-product protection. Rather, they were limited, in relevant part, to the effect of sharing *attorney-client* communications. Duplan makes clear that the protection afforded shared *work-product* information is broader than the protection for shared attorney-client communications:

> The sharing of information between counsel for parties having common interests does not destroy the work product privilege, during the course of the litigation.
> It is not so clear however that the attorney-client privilege can survive such an interchange.[10]

Unlike the attorney-client privilege, "the mere voluntary disclosure to a third person is insufficient in itself to waive the work product privilege."[11] In this respect, the Fifth Circuit, in Shields v. Sturm, Ruger & Co.,[12] recognized that the "work product privilege is very different from the attorney-client privilege" because the attorney-client privilege "exists to protect confidential communications and . . . the attorney-client relationship" while the work-product doctrine "promote[s] the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery

---

[8] 101 F.3d 1386 (Fed. Cir. 1996).

[9] 397 F. Supp. 1146 (D.S.C. 1974) (citations omitted).

[10] Duplan, 397 F. Supp. at 1172.

[11] In re Grand Jury Proceedings, 43 F.3d 966, 970 (5th Cir. 1994).

[12] 864 F.2d 379 (5th Cir. 1989).

-4-

attempts of *an opponent*."[13] Indeed, the work-product doctrine "rests on the belief that . . . promotion of adversary preparation ultimately furthers the truth-finding process."[14]

In drawing the distinction between the attorney-client privilege and work-product doctrine, the Fifth Circuit in *Shields* relied upon *United States v. American Telephone & Telegraph Co.*,[15] which illustrates the broader protection provided by the work-product doctrine. In *AT&T*, the court considered whether MCI Communications waived the work-product protection when it shared documents prepared by its attorneys in an antitrust suit against AT&T with federal antitrust investigators. Even though MCI and the government were not co-parties in the lawsuit, the court recognized that the touchstone for protection of shared work-product documents was whether there was a likelihood of disclosure to *the adverse party*.[16] In defining the commonality of interest that is required to avoid waiver of the work-product protection, the *AT&T* court stressed the likelihood of disclosure to the opposing side:

> So long as transferor and transferee anticipate litigation against a common adversary on the same issue or issues, they have strong common interests in sharing the fruit of the trial preparation efforts. Moreover, with common interests on a particular issue against a common adversary, the transferee is not at all likely to disclose the work product material to the adversary.[17]

---

[13] *Id.* at 382 (emphasis added).

[14] *United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1300 (D.C. Cir. 1980).

[15] 642 F.2d 1285 (D.C. Cir. 1980).

[16] *Id.* at 1299 ("The purpose of the work product doctrine is to protect information against opposition parties, rather than against all others outside a particular confidential relationship, in order to encourage effective trial preparation").

[17] *Id.* at 1299.

-5-

In addition, the *AT&T* court emphasized that the case *against* waiver is even stronger where the transfer of the work-product materials was made under a guarantee of confidentiality.[18]

Here, the work-product protection that should have been afforded to the defendants is even stronger than in *AT&T* because all of the information requested by PMT was shared between defendants in the same lawsuit, rather than with third parties. As such, there was no likelihood whatsoever that the shared work-product materials would be disclosed to PMT. In fact, the co-defendants' joint-privilege agreement provides strong evidence that the shared materials would never be disclosed PMT.[19] Accordingly, the work-product protection was not waived when the materials were disclosed by the co-defendants to one another.

The Magistrate's citation to *Transmirra Products Corp. v. Monsanto Chemical Co.*[20] does not warrant a finding that there is no work-product protection for the shared communications. There, the court *upheld* the work-product privilege for information shared between two companies that had been sued separately for patent infringement. While the plaintiff in that case alleged that the parties sharing the information had conspired to infringe the patent,[21] the court gave no indication whatsoever that it would have found no protection if the plaintiff had not alleged a conspiracy. In

---

[18] *Id.* at 1299–1300.

[19] In his Order, the Magistrate concludes that, even though ST, Inc. submitted declarations establishing that its counsel had executed the Joint Privilege Agreement with the co-defendants (although a copy of that signature page could not be located), there was no executed agreement. ST, Inc. is troubled by the Magistrate's conclusion that there was no executed agreement after having been presented with multiple affidavits stating that there was because it would appear to reflect a belief by the Magistrate that the affidavits were not trustworthy. Certainly, someone with an intention to mislead the Court regarding the existence of a signed document would have been more likely to have simply signed and submitted the agreement. Although not even necessary, given that the Court itself recognized that no such agreement need even be in writing, ST, Inc.'s counsel took the extra time and effort to obtain sworn declarations simply to make sure that all the facts were before the Magistrate and to reaffirm that the Joint Privilege Agreement was indeed executed.

[20] 26 F.R.D. 572 (S.D.N.Y. 1960).

[21] *See id.* at 574, 579.

addition, ST, Inc. believes that the Magistrate misinterpreted *Transmirra* by stating that the court "allowed Transmirra to seek communications made to attorneys other than counsel for Monsanto and Sylvania."[22] ST, Inc. can find nothing in *Transmirra* that supports this statement; in fact, the *Transmirra* court specifically required the plaintiff to show that the information sought from these other attorneys was not privileged.[23]

The Magistrate's Order likewise misconstrues *Go Medical Industries Pty. v. C.R. Bard, Inc.*[24] As discussed further below, the *Go Medical* decision is inapplicable with respect to the common-interest rule for the attorney-client privilege. But its decision on the work-product doctrine is directly on point, and supports a finding that communications between the co-defendants here are protected work product. Surprisingly, the Magistrate's Order of October 30th does not discuss *Go Medical*'s work-product ruling.

In *Go Medical*, the defendant sought production of communications between the plaintiff's attorneys and attorneys for plaintiff's litigation insurer, notes made by plaintiff's attorneys, and communications between plaintiff's employees, all of which had been shared with attorneys for the

---

[22] October 30, 2000 Memorandum Opinion and Order, at 5–6.

[23] The only reference in the *Transmirra* court's opinion to communications to attorneys other than those for Monsanto and Sylvania appears in the court's ruling with respect to an interrogatory. But it does not hold that communications with those attorneys are discoverable. Rather, it succinctly states:

> Accordingly, the objection to Interrogatory No. 10 is sustained. It is too broad. It does not appear who 'Hale, Kay & Grant' are, or who 'John Hoxie' is. No indication is given as to the time, nature or subject of the conversation. Nor does the interrogatory appear to be relevant in the sense used in the Rules. However, this disposition is without prejudice to the plaintiff's right to move for leave to interpose a newly-framed interrogatory, upon proof of its relevancy and *upon a showing that the information sought is not privileged*, and with respect to which *defendant may interpose any suitable objection*.

*Transmirra*, 26 F.R.D. at 575 (emphasis added).

[24] No. 3:95MC522 (DJS), 1998 U.S. Dist. LEXIS 22919 (D. Conn. Aug. 14, 1998).

-7-

insurance carrier.[25] After finding that the documents were protected by the work-product doctrine, the Go Medical court considered whether sharing them with the insurance carrier waived the work-product protection.[26] Finding that disclosure to the carrier "did not substantially increase the opportunity for [the defendant] to obtain [the plaintiff's] work product[,]" the court held that the plaintiff had not waived the work-product protection.[27] Go Medical's work-product holding corresponds exactly to the applicable Fifth Circuit law, and reconfirms that the communications exchanged between ST, Inc. and its co-defendants are protected by the work-product doctrine.

Regardless of whether the Magistrate's Order was correct as to whether the parties' interests need to be *identical* for protection of attorney-client information shared with a third party, all of the information shared among the defendants and their counsel in this lawsuit is separately protected from disclosure by the work-product doctrine. Accordingly, that portion of the Magistrate's Memorandum Opinion and Order relating to PMT's Interrogatory No. 9 is in error, and ST, Inc. respectfully requests that, upon consideration of ST's objections to the Magistrate's ruling, the Court modify the Magistrate's Order by entering an order sustaining ST, Inc.'s work-product objections to Interrogatory No. 9 and deny PMT's Motion to Compel as to this Interrogatory.

---

[25] *Id.* at *19.

[26] *Id.* at *22.

[27] *Id.*

C.  **Even had the defendants shared attorney-client communications, the common-interest doctrine would preclude disclosure.**

1.  *The Magistrate's Order erroneously states that Federal Circuit law applies.*

Without citation, the Magistrate's Order states: "As this is a patent case, the Court looks to the Federal Circuit for guidance on applying the privilege in a patent context."[28] That position is flatly refuted, however, by Federal Circuit precedent holding that for procedural matters that are not unique to patent issues, such as the application of the attorney-client privilege, the Federal Circuit applies "the perceived law of the regional circuit."[29] Thus, application of the common-interest rule must be determined as would be applied in the Fifth Circuit.

2.  *The Magistrate's Order adopts a narrow interpretation of the commonality-of-interest standard.*

Based upon its perceived application of the Federal Circuit's interpretation of Seventh Circuit law in *In re Regents of the University of California*,[30] the Magistrate's Order concludes that to fall within the common-interest doctrine, parties must have an "identical, not similar, legal interest."[31] On that basis, the Magistrate then concluded that because the co-defendants in this case produce and sell competing products, their interests in claims construction of the '275 patent would not be identical.[32]

But even if the Seventh Circuit, as interpreted by the Federal Circuit, might arguably require an identity of interests, that is not the standard in the Fifth Circuit. ST, Inc. is unaware of any Fifth

---

[28] October 30, 2000 Memorandum Opinion and Order, at 5.

[29] *See, e.g., In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1390 n.2 (Fed. Cir. 1996).

[30] 101 F.3d 1386 (Fed. Cir. 1996).

[31] October 30, 2000 Memorandum Opinion and Order at 4 & n.4.

[32] *See id.* at 7.

−9−

Circuit authority requiring that the parties must have an *identical* interest before the common-interest doctrine applies. To the contrary, what is required is a common legal interest: "The privilege is not . . . waived if a privileged communication is shared with a third person who has a common legal interest with respect to the subject matter of the communication."[33] In fact, the Northern District of Texas, in *In re LTV Securities Litigation*,[34] which was cited *by* PMT in its Motion to Compel, expressly recognized that the joint-defense rule applies even if, as here, *different conduct* gave rise to the various parties' alleged liability:

> The Court finds little merit in the class' contention that the joint defense privilege does not extend to civil defendants *whose liability may arise from different acts or omissions*, or who may assert cross-claims against each other.[35]

The Magistrate's conclusion here that the common-interest privilege is inapplicable to claims construction for the '275 patent because PMT accuses the defendants of infringement through the making, using, or selling of different *products* cannot be harmonized with either the Fifth Circuit's standard, or with the *LTV* court's application of Fifth Circuit law.

Even those few cases suggesting that the parties must have an identical legal interest for the common-interest doctrine to apply do not require rigid identity of each and every detail. For example, the *Duplan* case cited by the Magistrate only required that the *subject matter* of the communications be identical.[36] But if this Court were to impose a requirement that the parties'

---

[33] *Hodges, Grant & Kaufman v. United States Department of Treasury*, 768 F.2d 719, 721 (5th Cir. 1985); *accord In re Auclair*, 961 F.2d 65, 79 (5th Cir. 1992).

[34] 89 F.R.D. 595 (N.D. Tex. 1981).

[35] *Id.* at 604 (emphasis added).

[36] *See Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1172 (D.S.C. 1974) ("A community of interest exists among different persons or separate corporations where they have an identical legal interest with respect to the *subject matter of a communication* between an attorney and a client concerning legal advice.") (emphasis added).

-10-

interests be identical, even the application of that requirement would not defeat their common-interest protection.

Here, the subject matter that the Magistrate's Order addressed was *claim construction*, and the legal interests of the parties in that subject matter did not vary from defendant to defendant. It is a well-established principal of patent law that in construing claims, the Court cannot consider the accused device.[37] As a result, the fact that the defendants may produce competitive *devices* that are not identical would be wholly irrelevant to the legal issue of claims construction. The lack of identity as to the defendants' products, therefore, would have no bearing on the applicability of a common-interest privilege as to claims construction, which is directly contrary to what the Magistrate concluded.

At the same time, the Magistrate did conclude that the defendants share an identical interest in finding that the patent is invalid or unenforceable.[38] Despite such a finding, the Magistrate then also held that the defendants did not have a common legal interest as to claim construction. Apparently, the Magistrate was concentrating on claim construction's role in an infringement analysis. But claim construction is an essential step in an invalidity analysis as well. The Federal Circuit could not be more explicit: *"The first step in any invalidity analysis is claim construction . . . ."*[39] Thus, regardless of whether the defendants have a common interest in non-

---

[37] *Optical Disc Corp. v. Del Mar Avionics*, 208 F.3d 1324, 1333 (Fed. Cir. 2000); *Jurgens v. McKasy*, 927 F.2d 1552, 1560 (Fed. Cir. 1991); *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985).

[38] October 30, 2000 Memorandum Opinion and Order, at 7 ("Undoubtably, Defendants have a common interest in declaring the '275 patent invalid or unenforceable.").

[39] *Sibia Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355 (Fed. Cir. 2000) (emphasis added); *accord Union Oil Co. v. Atlantic Richfield Co.*, 208 F.3d 989, 995 (Fed. Cir. 2000); *Rockwell Int'l Corp. v. United States*, 147 F.3d 1358, 1362 (Fed. Cir. 1998).

-11-

infringement analyses, their common interest in interpreting and thereafter invalidating the patent includes claim construction. The Magistrate's conclusion to the contrary must be reversed.[40]

The fact that the defendants filed separate *Markman* briefs does not indicate a lack of interest commonality. The defendants differed slightly on what the proper claim construction might be. Neither PMT nor the Magistrate cited any authority, however, requiring that the parties asserting the common-interest doctrine file joint papers on every issue. Such an interpretation would render the common-interest doctrine far too restrictive. In fact, several courts have recognized that persons sharing attorney-client communications need not even both be parties to a lawsuit for the common-interest doctrine to apply.[41]

The Magistrate also placed undue reliance on the *Go Medical* case[42] discussed above. That unpublished opinion's ruling on attorney-client-privileged communications is wholly inapplicable to the facts here. In *Go Medical*, the lawyer for the plaintiff shared attorney-client communications with attorneys for the plaintiff's litigation insurer. In finding that the insurer and the plaintiff did not have the requisite common interest to fall within the scope of the common-interest doctrine, the court emphasized that the insurer had no interest in the patent but only in its coverage of the plaintiff's

---

[40] In addition, patent claims are construed as a matter of law, and on appeal, the construction is reviewed de novo. *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999). The defendants have a common interest in ensuring that the district court construes the claims correctly so as to avoid reversal and remand from the appellate court. *See Rhine v. Casio, Inc.*, 183 F.3d 1342, 1343 (Fed. Cir. 1999) ("Because the court improperly construed the claim, we reverse the judgment and remand the case."). Only when the claims are construed *properly* can the Court make a determination of invalidity that will stand up on appeal, which is an identical objective of co-defendants in a patent-infringement suit, regardless of any variations in the accused products.

[41] *See, e.g., United States v. Zolin*, 809 F.2d 1411, 1417 (9th Cir. 1987), *aff'd in part, vacated in part*, 491 U.S. 554 (1989); *Aiken v. Texas Farm Bureau Mut. Ins. Co.*, 151 F.R.D. 621, 624 (E.D. Tex. 1993).

[42] *Go Medical Indus. Pty. v. C.R. Bard Inc.*, No. 3:95MC522 (DJS), 1998 U.S. Dist. LEXIS 22919 (D. Conn. Aug. 14, 1998).

-12-

litigation expenses.[43] The current situation is quite different, however, because, as the Magistrate found, these defendants *do have* a common interest in invalidating the patent.[44] And as the Federal Circuit has repeatedly recognized, claim construction is an essential step in the court's invalidity analysis.[45]

It likewise bears repeating that a determination of whether the common-interest doctrine would apply here is merely an academic one, because this doctrine only applies to attorney-client-privileged communications. Because the defendants have exchanged only work-product materials and not attorney-client documents, the Court need not even address the common-interest doctrine's applicability. ST, Inc. only addresses that issue here, as the defendants did in their joint response to PMT's motion to compel, because of PMT's efforts to blur the distinction between the common-interest doctrine and work-product protection, which lead here to an incorrect result.

### III. CONCLUSION

For the reasons stated, Defendant STMicroelectronics, Inc. respectfully requests that the Court sustain ST, Inc.'s objections to Magistrate Judge Radford's October 30, 2000 Memorandum Opinion and Order, that the Court further sustain ST, Inc.'s objections to Power Mosfet Technologies, L.L.C.'s Interrogatory No. 9, and that this Court properly conclude that the work product protections available to defendants here would not require them to disclose any of their shared communications in this case, whether as to claim construction of the patent, its validity or enforceability, or otherwise.

---

[43] *Id.* at *9.

[44] October 30, 2000 Memorandum Opinion and Order, at 7 ("Undoubtably, Defendants have a common interest in declaring the '275 patent invalid or unenforceable.").

[45] *See, e.g., Sibia Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355 (Fed. Cir. 2000) ("The first step in any invalidity analysis is claim construction . . . .").

-13-

Dated: November 13, 2000.

          Respectfully submitted,

          *Bruce S. Sostek by permission*
          Bruce S. Sostek
            Texas Bar No. 18855700
            Attorney-in-Charge

          Jane Politz Brandt
            Texas Bar No. 02882090
          Max Ciccarelli
            Texas Bar No. 00787242
          THOMPSON & KNIGHT L.L.P.
          1700 Pacific Avenue, Suite 3300
          Dallas, Texas 75201–4693
          214.969.1700
          214.969.1751 (facsimile)

          Damon Young
            Texas Bar No. 22176700
          LAW OFFICES OF YOUNG & PICKETT
          4122 Texas Boulevard
          Texarkana, Texas 75504
          903.794.1303
          903.792.5098 (facsimile)

          Hubert Oxford, III
            Texas Bar No. 15392000
          Michael Eaves
            Texas Bar No. 787414
          BENCKENSTEIN & OXFORD, L.L.P.
          P.O. Box 150
          Beaumont, Texas 77704
          409.833.9182
          409.833.8819 (facsimile)

          ATTORNEYS FOR DEFENDANT
          STMICROELECTRONICS, INC.

CERTIFICATE OF SERVICE

On November 13, 2000, a copy of the foregoing was served upon the following counsel of record:

VIA FACSIMILE:

Mr. Michael W. Shore
SHORE FINEBERG, L.L.P.
2515 McKinney Avenue
Chateau Plaza, Suite 1565
Dallas, Texas 75201

VIA U.S. FIRST CLASS MAIL:

Mr. Carl R. Roth
LAW OFFICES OF CARL R. ROTH
P. O. Box 876
Marshall, Texas 75761–0876

Mr. Robert M. Chiaviello, Jr.
BAKER BOTTS, L.L.P.
2001 Ross Avenue, Suite 700
Dallas, Texas 75201–2980

*Bruce S. Sostek w/ permission*
*J. Lee*

071472 000006 Dallas 1212850.1

– 15 –