IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DATATREASURY CORP., | § § § | |
| Plaintiff, | § § | No. 2:06-CV-72 |
| v. | § § | Judge David Folsom |
| WELLS FARGO & CO., et al. | § § | |
| Defendants. | § § | |

**RESPONDING DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CLARIFICATION REGARDING LIMITATIONS OF ASSERTED CLAIMS**

Defendants KeyBank National Association and KeyCorp ("Key"), PNC Bank and The PNC Financial Services Group, Inc. ("PNC"), Citizens Financial Group, Inc., City National Corporation, City National Bank, Deutsche Bank Trust Company Americas, LaSalle Bank Corporation, LaSalle Bank NA, and Bank of Tokyo-Mitsubishi UFJ, Ltd. (collectively, "Responding Defendants"), file this response in opposition to Plaintiff DataTreasury Corporation's ("DataTreasury's") Motion for Clarification Regarding Limitations of Asserted Claims. [Dkt. No. 689 ("Motion")].

## I.    INTRODUCTION

Under the Court's Docket Control Order ("DCO"), as of April 7, 2007, DataTreasury was obligated to narrow the universe of claims for all six patents at issue in this litigation to eighteen (18). [Dkt. No. 451]. DataTreasury has done so, but has chosen not to reserve any claims from the eighteen available for the two Ballard patents that the Court has stayed. In its motion for "clarification" (actually a motion for modification), DataTreasury would have Key, PNC, and the Court litigate a full complement of eighteen claims drawn from two Huntington patents during the

1

pendency of the Ballard-patent reexaminations—only to have DataTreasury abandon a substantial number of those litigated claims in favor of Ballard-patent claims when the patents emerge from reexamination and the stay is lifted. [*See* Motion at 13; Motion Exhs. A, D]. DataTreasury thus proposes to use the Ballard-patent stay to *increase* the burden on the parties and the Court by prolonging litigation of numerous patent-infringement claims that, but for the stay, DataTreasury would have abandoned on April 7.

In support of its proposal, DataTreasury wages war with a straw man, and misleads the Court concerning the sensible alternative proposed by Key, PNC, and the other Responding Defendants. For DataTreasury suggests time and again that Key and PNC would require it to select and assert specific Ballard-patent claims while the patents are in reexamination. [*See* Motion at 3, 4, 7, 9, 11, 12, 13]. But that is not what Key, PNC, and the other Responding Defendants propose. Instead, they simply propose that, if DataTreasury does not intend to waive its claims under the Ballard patents, it reserve some number of its eighteen-claim allotment for future selection from among those patents. [Motion Exhs. D, E]. There is thus no need to know, at this point, how many Ballard-patent claims will emerge from reexamination, or which will be the most promising—if DataTreasury reserves, for example, ten claims now, then it will be free to select the best ten claims that emerge from reexamination later.

Because DataTreasury has refused to voluntarily reserve any of its claims for subsequent selection from the Ballard patents, [*see* Motion Exh. C], and because it maintains that it has the right to assert some unidentified number of claims from the Ballard patents, Responding Defendants believe that it is appropriate and advisable for the Court to require DataTreasury to reserve the number of claims that it intends to assert against them. Responding Defendants thus respectfully suggest that—assuming DataTreasury wishes to assert claims from the Ballard patents

in the future—the Court require DataTreasury to limit to less than eighteen the number of claims asserted under the two Huntington patents now, with the understanding that it will be permitted to select its remaining allotment of claims from the Ballard patents when they emerge from reexamination.

This approach would protect the burden-reduction and issue-simplification purposes of both the claim-limitation requirement and the Ballard-patent stay. In addition, this approach would not prejudice DataTreasury: with respect to other Defendants in this litigation accused under the same check-exchange systems, DataTreasury has *already narrowed to eight* its list of claims asserted under these two Huntington patents. [*See* Motion Exh. B].[1] Taking into account the claims asserted against these other Defendants under all four Huntington patents, adopting the proposal of Responding Defendants should thus also have the effect of reducing the total number of claims—presently twenty-eight—at issue for claim-construction purposes. [*See id.*].

## II.   BACKGROUND

DataTreasury brought this lawsuit in February of 2006, asserting the infringement of six patents in varying combinations against more than fifty Defendants. [Dkt. No. 1]. The six patents included two issued to Claudio Ballard and assigned to DataTreasury over six years ago: U.S. Patent Nos. 5,910,988 and 6,032,137 (the "Ballard patents"). The other four patents were acquired just prior to the filing of this lawsuit: U.S. Patent Nos. 5,717,868 (the "'868 patent"), 5,265,007 (the "'007 patent"), 5,583,759, and 5,930,778 (collectively, the "Huntington patents"). These six patents contained a total of 224 claims—93 claims in the Ballard patents, and 131 claims in the Huntington patents. DataTreasury's original complaint asserted the infringement of all 224 claims.

---

[1] Thus, even if—notwithstanding DataTreasury's expectations to the contrary—the Ballard patents do not emerge from reexamination, a reduction in the number of claims asserted under the two Huntington patents will result in no prejudice to DataTreasury.

[Dkt. No. 1].

To make litigation of the case manageable, and to reduce the attendant burdens on the parties the Court, Defendants asked the Court to require DataTreasury to limit the number of claims asserted in the case. In its Docket Control Order ("DCO") issued on October 25, 2006, the Court did so. [Dkt. Nos. 324, 325]. The Court reasoned that

> the potential for jury confusion in a patent case increases exponentially with the number of claims asserted. Additionally, when the number of claims being asserted is so voluminous, litigation becomes extremely burdensome on both the parties and the Court. [Dkt. No. 325 at 3-4].

The Court thus concluded that it was "within its discretion to limit[] the number of claims to help expedite the case and effectuate case management." [Dkt. No. 325 at 4].

To achieve these goals, the Court required DataTreasury to limit the number of claims asserted in this case in a two-step process. The first limitation step—step 3 in the Court's DCO—required DataTreasury to select for litigation "less than 50 claims for all patents-in-suit" by December 4, 2006. [Dkt. No. 324]. That requirement was qualified by "the further limitation provided in step 11" of the DCO. [*Id.*]. The second limitation step—step 11 in the DCO—required DataTreasury to further "limit the number of asserted claims to no more than eighteen (18) against a Litigant Group"[2] by April 7, 2007. [Dkt. No. 328].[3]

Pursuant to the Court's Order, on December 4, 2006, DataTreasury selected just under fifty claims from its six patents-in-suit on which to proceed against Key, PNC, and the other Responding Defendants. These included twenty-six claims drawn from the Ballard patents, and

---

[2] A "Litigant Group" was "defined as a defendant bank and, where applicable, the bank's correlative national association or holding company." [Dkt. No. 328].

[3] The original DCO contained a typo requiring DataTreasury to limit its asserted claims "to no more than ten" in April of 2007. [Dkt. No. 324]. The Court's related Order held that DataTreasury would be limited to eighteen claims in the second step, but noted that the Court would consider "further limit[ing] the number of claims down to ten for trial." [Dkt. No. 325 at 4-5, 5 n.1]. The DCO was amended to reflect the second-step limit of eighteen claims. [Dkt. No. 328].

eighteen drawn from two of the Huntington patents—six from the '007 patent, and twelve from the '868 patent.

On January 12, 2007, the Court issued a stay in this litigation as to the Ballard patents, pending their reexamination by the U.S. Patent & Trademark Office ("PTO"). [Dkt. No. 411]. The Court conditioned the stay on the Defendants' acceptance of a stipulation designed to reduce the number of issues at trial by precluding certain subsequent use of publications submitted to the PTO during the reexamination. [*Id.*]. Each of the Responding Defendants accepted the stipulation. [Dkt. Nos. 419-21, 434, 437-39]. In issuing its stay, the Court noted that DataTreasury "may file a motion to lift the stay following further Office Action in the reexamination proceeding." [Dkt. No. 411].

While the stay suspended all disclosure and discovery deadlines relating to the Ballard patents, [*see* Dkt. Nos. 397, 411], this massive litigation has continued apace with discovery proceeding on the four Huntington patents also asserted by DataTreasury. On April 9, 2007, as required by step 11 of the Court's DCO, DataTreasury narrowed its list of claims asserted against Key, PNC, and the other Responding Defendants from just under fifty to eighteen. All eighteen claims are drawn from two of the Huntington patents—as before, six from the '007 patent, and twelve from the '868 patent. [*See* Motion Exhs. A, D, E]. That same day, DataTreasury also narrowed to eighteen its list of claims asserted against the Bank of America and Wachovia Bank Litigant Groups. The claims asserted against these Defendants, however, are drawn from all four Huntington patents, and include one claim from the '007 patent, seven from the '868 patent, and ten from the remaining two Huntington patents. [*See* Motion Exh. B].

Counsel for Key and PNC subsequently sent a letter to counsel for DataTreasury noting that DataTreasury had selected "its full complement of 18 claims" from the Huntington patents,

5

and further explaining that, if DataTreasury declined to "reduce its list of 18 asserted claims from the '007 and '868 patents, Key and PNC will assume that DataTreasury has no intention of moving forward on the Ballard patents if and when those emerge from reexamination." [Motion Exh. D]. Contrary to DataTreasury's assertion, Key and PNC did not suggest that DataTreasury "should be required to select its claims to assert from the Ballard patents 'in the dark.'" [*See* Motion at 4]. In fact, Key and PNC made clear that they did not expect DataTreasury to "identify the particular claims in the Ballard patents that [it] intend[s] to assert if and when those patents come out of reexamination." [Motion Exh. D]. Instead, Key and PNC "simply request[ed] that if [DataTreasury] intend[s] to assert any claims of the Ballard patents that may emerge from reexamination[, it] now limit the number of claims from the Huntington Bank patents to make allowance for those Ballard patent claims that [DataTreasury] intend[s] to assert." [*Id.*].[4]

DataTreasury refused to reserve any of its eighteen allotted claims for subsequent selection from among the Ballard patents, [*see* Motion Exh. C], and then filed its motion for clarification with the Court.

### III.   ARGUMENT

**THE COURT SHOULD REQUIRE DATATREASURY NOW TO RESERVE FROM ITS EIGHTEEN-CLAIM ALLOTMENT THE NUMBER OF CLAIMS IT INTENDS TO ASSERT FROM THE BALLARD PATENTS.**

   **1.   Adopting DataTreasury's Proposal Would Undermine the Burden-Reduction and Issue-Simplification Purposes of the Court's Orders.**

The Court's claim-limitation process was designed to reduce the burden of litigating numerous patent-infringement claims on both the parties and the Court, and to avoid the real threat of jury confusion that "increases exponentially with the number of claims asserted." [*See*

---

[4] Shortly after Key and PNC sent their letter to DataTreasury, the other Responding Defendants notified DataTreasury that Key's and PNC's "letter reflects the joint position" of the other Defendants "accused of infringing the '007 and '868 patents." [Motion Exh. E].

6

Dkt. No. 325 at 3-4]. The Court determined that, for this case originally embracing "224 potential patent claims involving six (6) patents," it would not be reasonable to proceed beyond the initial discovery period on more than eighteen asserted claims. [*See id.*]. In fact, the Court suggested that it might be necessary to "further limit the number of claims down to ten for trial." [*See id.* at 5 n.1].[5]

Like the Court's decision to limit the number of claims at issue in this litigation, its decision to stay the Ballard-patent claims pending their reexamination was also justified, at least in part, by the prospect of simplifying the litigation and reducing its attendant costs to both the parties and the Court. [*See, e.g.,* Dkt. No. 326 at 5-6 (citing *Soverain Software, LLC v. Amazon.com*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005) (asking "whether a stay will simplify the issues in question and trial of the case"), and *Fisher Controls Co., Inc. v. Control Components, Inc.*, 443 F. Supp. 581, 582 (S.D. Iowa 1977) (noting that with a stay, "[t]he cost will likely be reduced for both the parties and the Court"))].

DataTreasury's proposal would undermine the burden-reduction and issue-simplification purposes of both the claim-limitation requirement and the Ballard-patent stay. In three of the "four potential general scenarios" described by DataTreasury, for example, its proposal would result in the expenditure of much time and effort litigating numerous Huntington-patent claims that DataTreasury *plans to abandon* "no later than 30 days after the Court lifts the stay." [*See* Motion at 12-13]. That is, if the reexamination results in either 1) no change to the Ballard-patent claims, 2) modification of the Ballard-patent claims, or 3) allowance of additional Ballard-

---

[5] This holding was supported by cases in which the Federal Circuit affirmed trial court orders limiting patent plaintiffs to five representative claims—including as few as one claim per patent. *See ReRoof America, Inc. v. United Structures of America, Inc.*, 215 F.3d 1351 (Fed. Cir. Aug. 30, 1999) (unpublished opinion) (noting that plaintiff was not prejudiced by trial court order limiting it to five representative claims); *Kearns v. General Motors Corp.*, No. 93-1535, 1994 U.S. App. LEXIS 19568, at *6-*7 (Fed. Cir. July 26, 1994) (affirming dismissal of patent case where plaintiff refused to obey trial court's order that plaintiff limit himself to one claim per patent on the five patents-in-suit).

patent claims, DataTreasury would seek to amend its list of eighteen claims after the stay is lifted in order to replace some number of the currently asserted Huntington-patent claims with that same number of newly reexamined Ballard-patent claims. [*See id.*]. In each of these potential circumstances, therefore, the time, effort, and cost spent litigating these to-be-abandoned Huntington-patent claims would have been wasted.

Only one of DataTreasury's four potential scenarios—the one in which the Ballard patents are completely rejected by the PTO—does not involve DataTreasury's subsequent abandonment of some substantial number of the currently asserted Huntington-patent claims. [*See* Motion at 11]. As DataTreasury candidly concedes, however, it "sincerely doubts this will be the likely result of the reexamination." [*Id.*].[6]

DataTreasury's own assessment of the circumstances thus confirms that its proposal— that it be permitted to litigate a full allotment of eighteen Huntington-patent claims from this date until thirty days after the Court lifts the Ballard-patent stay—will most likely result in an entirely unnecessary expenditure of substantial resources by the parties and the Court. DataTreasury should not be permitted to undermine this Court's Orders by prolonging litigation of patent-infringement claims that, but for the current stay, DataTreasury would not now be asserting, and, come thirty days after the stay, it plans to abandon.

    **2. Adopting Responding Defendants' Proposal Would Protect the Purposes of the Court's Orders, and Cause No Prejudice to DataTreasury.**

As noted above, DataTreasury spends most of its motion waging war on a straw man. For contrary to DataTreasury's repeated assertions, [*see* Motion at 3, 4, 7, 9, 11, 12, 13], Key,

---

[6] And even if no Ballard-patent claims survive reexamination, DataTreasury would not be prejudiced by a requirement that it limit to eight the number of claims asserted under the '007 and '868 patents. Indeed, the caselaw suggests that it is within this Court's discretion to limit DataTreasury to one representative claim per patent. *See Kearns*, 1994 U.S. App. LEXIS 19568, at *6-*7.

PNC, and the other Responding Defendants would not require it to select and assert specific Ballard-patent claims while the patents are in reexamination. Responding Defendants simply propose that DataTreasury, if it intends to assert claims from the Ballard patents after they emerge from reexamination, reserve some number of its eighteen-claim allotment for subsequent selection from among the reexamined Ballard patents. [Motion Exh. D]. There is thus no need to know, at this point, exactly how many claims will emerge from reexamination, or which will be the most promising—if DataTreasury reserves, for example, ten claims now, then it will be free to select the best ten claims that emerge from reexamination later.[7]

Because DataTreasury has refused to voluntarily reserve any of its claims for future selection from the Ballard patents, while maintaining that it can assert such claims later, [*see* Motion Exh. C], Responding Defendants believe that it is appropriate and advisable for the Court to require DataTreasury to reserve such claims now, if it wishes to assert them later. The Court should permit DataTreasury to decide how many, if any, of its eighteen claims it wishes to reserve for future selection from the Ballard patents.[8]

Key and PNC thus respectfully propose that it would be both fair and proper for the Court to require DataTreasury to reserve now whatever number of its eighteen alloted claims— perhaps none, if it so chooses—that it wishes to assert from the Ballard patents when they emerge from reexamination and the stay is lifted.

---

[7] DataTreasury also suggests that, if reexamination results in the allowance of additional claims, it "may well ask the Court to increase the number of claims that it is allowed to assert." [Motion at 12]. This suggestion, however, reflects a misunderstanding of the reasons justifying the Court's claim-limitation Order. For whether the Ballard patents emerge from reexamination with 93 claims, or with 903 claims, it would not likely be reasonable to proceed to trial on more than ten claims total.

[8] And again, any assertion by DataTreasury that it cannot, without prejudice, proceed against Responding Defendants on less than eighteen claims drawn from the '007 and '868 Huntington patents should ring hollow. For with respect to other Defendants in this litigation accused under the same check-exchange systems, DataTreasury has already narrowed to eight its list of claims asserted under these two Huntington patents. [*See* Motion Exh. B].

## IV.     CONCLUSION

For the foregoing reasons, the Court should clarify the Docket Control Order to require DataTreasury, within ten days of the Court's Order, to limit the number of claims asserted against Responding Defendants under the '007 and '868 Huntington patents so as to reserve the number of its eighteen allotted claims, if any, that it intends to assert from the reexamined Ballard patents.


DATED:  May 24, 2007                                     Respectfully submitted,


                                                         /s/ Sam Baxter_____
                                                         Sam Baxter
                                                         Texas State Bar No. 01938000
                                                         sbaxter@mckoolsmith.com
                                                         Theodore Stevenson, III
                                                         Texas State Bar No. 19196650
                                                         tstevenson@mckoolsmith.com
                                                         McKOOL SMITH, P.C.
                                                         300 Crescent Court, Suite 1500
                                                         Dallas, Texas 75201
                                                         Telephone:  (214) 978-4000
                                                         Telecopy:   (214) 978-4044

                                                         Peter J. Ayers
                                                         Texas State Bar No. 24009882
                                                         payers@mckoolsmith.com
                                                         Geoffrey L. Smith
                                                         Texas State Bar No. 24041939
                                                         gsmith@mckoolsmith.com
                                                         McKOOL SMITH, P.C.
                                                         300 W. 6th Street, Suite 1700
                                                         Austin, Texas 78701
                                                         Telephone:  (512) 692-8700
                                                         Telecopy:   (512) 692-8744

                                                         ATTORNEYS FOR DEFENDANTS
                                                         KEYBANK NATIONAL ASSOCIATION;
                                                         KEYCORP; PNC BANK; THE PNC
                                                         FINANCIAL SERVICES GROUP, INC.

        Edward G. Poplawski (Pro Hac Vice)
        EPoplaws@Sidley.com
        Jeffrey A. Finn (Pro Hac Vice)
        JFinn@Sidley.com
        Carissa A. Tener (Pro Hac Vice)
        CTener@Sidley.com
        SIDLEY AUSTIN L.L.P.
        555 West Fifth Street, Suite 4000
        Los Angeles, California 90013
        Telephone:  (213) 896-6000
        Telecopy:   (213) 896-6600

        Lance Lee
        WLanceLee@aol.com
        Texas Bar No. 240004762
        YOUNG, PICKETT & LEE, L.L.P.
        4122 Texas Boulevard
        P.O. Box 1897
        Texarkana, Texas 75504
        Telephone:  (903) 794-1303
        Telecopy:    (903) 792-5098

        ATTORNEYS FOR DEFENDANTS
        LASALLE BANK CORPORATION;
        LASALLE BANK NA; DEUTSCHE
        BANK TRUST COMPANY AMERICAS;
        BANK OF TOKYO-MITSUBISHI UFJ,
        LTD.


        Edward G. Poplawski (Pro Hac Vice)
        EPoplaws@Sidley.com
        Jeffrey A. Finn (Pro Hac Vice)
        JFinn@Sidley.com
        Carissa A. Tener (Pro Hac Vice)
        CTener@Sidley.com
        SIDLEY AUSTIN L.L.P.
        555 West Fifth Street, Suite 4000
        Los Angeles, California 90013
        Telephone:  (213) 896-6000
        Telecopy:   (213) 896-6600

        Kurt M. Sauer
        DAFFER MCDANIEL
        The Chase Building

700 Lavaca, Suite 720
Austin, Texas 78701

Sidley Calvin Capshaw, III
Texas Bar No. 03783900
Andrew W. Spangler
Texas Bar No. 20401960
Elizabeth L. DeRieux
Texas Bar No. 05770585
BROWN MCCARROLL
1127 Judson Road, Suite 220
Longview, Texas 75601
P.O. Box 3999
Longview, Texas 75606-3999
Telephone:  (903) 236-9800
Telecopy:   (903) 236-8787

ATTORNEYS FOR DEFENDANTS
CITY NATIONAL CORPORATION; CITY
NATIONAL BANK


Jeffrey Standley
jstandley@standleyllp.com
STANDLEY LAW GROUP LLP
495 Metro Place South, Suite 210
Dublin, Ohio 43017
Telephone:  (614) 792-5555
Telecopy:   (614) 792-5536

ATTORNEYS FOR DEFENDANT
CITIZENS FINANCIAL GROUP, INC.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a), contemporaneously served upon all counsel who have consented to electronic service, and served by first class mail on other counsel on this the 24th day of May, 2007.

        /s/ Sam Baxter_____
        Sam Baxter