## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **DATATREASURY CORPORATION** | § | |
| **Plaintiff** | § | |
| | § | **Civil Action No. 2:06-CV-72 (DF)** |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **WELLS FARGO & COMPANY, ET AL.,** | § | |
| **Defendants** | § | |
| | § | |

### PLAINTIFF'S OPENING BRIEF ON CLAIMS CONSTRUCTION

Dockets.Justia.com

### <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION……………………………………………....1

II.   SUPPORTING LEGAL
      AUTHORITIES……………………………….……………..…..... 1

III.  THE PROPER CONSTRUCTION OF TERMS………..….…………..6

      A.    TERMS AND ELEMENTS IN THE '007 PATENT…………..………..6

            1.    **Defendants allege that the "preamble should be construed as limiting."**
                  [Claim 1]
            2.    **"Pre-selected financial institutions"** [Claim 1]
            3.    **"Preselected site"** [Claim 1]
            4.    **"Means within each of the pre-selected institutions…for sending and receiving the instruments, said means for sending including means for physically transporting the instruments from an institution at one site to each other of the institutions at the other sites, said means for receiving including means for physically accepting the instruments transported from the other institutions"** [Claim 1]
            5.    **"Means for receiving including means for physically accepting the instruments transported from the other institutions"** [Claim 1]
            6.    **"Means within each of the pre-selected institutions…for sending to and receiving from a central processing unit connected to each institution information reporting in real time in correspondence with the occurrence of an event (a) the value of the instruments transported; and (b) the transport status of the instruments with respect to their having been (i) sent and (ii) received" is a "means-plus-function" term. The function is "sending to and receiving from…(ii) received."** [Claim 1]
            7.    **"Central processing unit"** [Claim 1]
            8.    **"Real time"; "in real time"** [Claim 1]
            9.    **"Real time in correspondence with the occurrence of an event"** [Claim 1]
            10.   **"Value of the instruments transported"/"the value of the instruments sent and received."** [Claim 1].

11.  **"Means within each of the pre-selected institutions… for receiving from the central processing unit a calculated value (a) on a real time basis and (b) on a regular periodic settlement basis, information regarding the debits and credits owing to or payable by an institution with respect to each other of the institutions with regard to instruments sent and received"** [Claim 1]

12.  **"Settlement"** [Claim 1]

13.  **"Regular periodic settlement"** [Claim 1]

14.  **"Means for continuous monitoring on a real time basis, as reported by each institution by the means for sending information within each institution (a) (i) the sending and receipt status of the instruments and (ii) the value of the instruments sent and received, as reported by each of the institutions, and (b) the status in transit of the instruments with respect to their having been (i) sent and (ii) received, as reported by each of the institutions, according to the reporting of an institution's sending and receiving of instruments"** [Claim 1]

15.  **"The sending and receipt status of the instruments"** [Claim 1]

16.  **"The status in transit of the instruments"** [Claim 1]

17.  **"Means for calculating debits and credits, based on the value of the instruments sent and received by the institutions, as monitored on a real time basis from information reported by the institutions, of (a) the amount owing from or payable to each one of the pre-selected institutions with respect to each of the other institutions and (b) an aggregate amount owing from or payable to each one of the pre-selected institutions with respect to all of the other institutions"** [Claim 1]

18.  **"Means for sending to each institution the information monitored with respect to instruments sent to an institution and the value of such instruments"** [Claim 1]

19.  **"A cycling means interrelated with the central processing unit (a) for controlling the physical transport of the financial instruments among the institutions and (b) for controlling the means for calculating such that a final calculation of the debits and credits owing from or payable to, with respect to each of the institutions with regard to each other of the institutions, comprising the occurrence of the regular periodic settlement among the institutions, does not occur until pre-determined local settlements by the institutions in the pre-selected sites with institutions that are not among the number of pre-selected financial institutions, are completed"** [Claim 1]

20.  **"A final calculation of the debits and credits . . ., comprising the occurrence of the regular periodic settlement among the institutions, does not occur until pre-determined local**

**settlements by the institutions in the pre-selected sites with institutions that are not among the number of pre-selected financial institutions, are completed."** [Claim 1]

21. **"Means at an institution by which instruments are sorted by the site locality of each other of the pre-selected institutions and in which the instruments sorted by site are sent by site sort category to institutions at sites within the site sort categories"** [Claim 2]

22. **Defendants allege that the** "**preamble should be construed as limiting.**" [Claim 4]

23. **"Means at each of the participants (1) for sending and receiving financial instruments to be cleared and (2) for sending and receiving in real time information reporting the value and transit status of the financial instruments to be cleared, to a programmed central processing unit, and (3) for addressing the central processing unit by which a participant may determine in real time the information received by the processing unit with respect to that participant's relative credit and debit obligations with respect to other institutions arising from the instruments that are reported to be sent and received"** [Claim 4]

24. **"Transit status of the financial instruments to be cleared"** [Claim 4]

25. **"Means for calculating debits and credits owing from or payable (1) to one member to another member and (2) from or to one member to all other members, based upon the value of instruments reported by a participant as having been sent and received"** [Claim 4]

26. **"Means for receiving and recording a participant's reports of the value and transit status of the instruments to be cleared as having been sent and received with respect to all participants in the system"** [Claim 4]

27. **"Means for monitoring on a real time as reported basis (1) the actual sending from and receipt by a participant of the value of instruments being cleared as reported by the participants, and (2) the sending from and receipt by a participant of the actual instruments being cleared, said means for monitoring being operatively interconnected to the means for calculating whereby debits and credits owing from one member to another may be determined and monitored on a continuous basis in real time as reports of the value and transit status of the instruments to be cleared are reported by the participants and received by the processing unit"** [Claim 4]

28. **"A time control for determining the time of physical transport of financial instruments between and among the participants according to a predetermined time cycle, and for determining**

the occurrence of a final settlement by the clearinghouse participants at a pre-determined time until after a time that certain pre-determined local settlements in the localities, by the participants in the localities, are completed" [Claim 4]

29.   **"Determining the time of physical transport of financial instruments between and among the participants according to a predetermined time cycle"** [Claim 4]

30.   **"Determining the occurrence of a final settlement by the clearinghouse participants at a pre-determined time until after a time that certain predetermined local settlements in the localities, by the participants in the localities, are completed"** [Claim 4]

31.   **"Participants"** [Claim 4]

32.   **"Final settlement"** [Claim 4]

**B.  TERMS AND ELEMENTS IN THE '868 PATENT.....................................13**

1.   **Defendants allege that the "preamble should be construed as limiting."** [Claim 1]

2.   **"Financial instruments being exchanged between and among the institutions"** [Claim 1]

3.   **"Means for receiving a data file from an originating institution, said data file containing co-mingled records of a plurality of separate financial instruments, said data file being in a first file format established by the originating institution and containing a designation by the originating institution that information in the data file is to be received by one or more than one predetermined institution"** [Claim 1].

4.   **"Predetermined institution"** [Claim 1]

5.   **"Institution"** [Claim 1]

6.   **"Co-mingled records"** [Claim 1].

7.   **"File format"** [Claim 1]

8.   **"Processor"** [Claim 1]

9.   **"Financial instrument information"** [Claim 1]

10.  **"Translating the records in each bundle of said financial instrument information records from said first data file format into a data file format selected by the predetermined institution designated to receive the information"** [Claim 1]

11.  **"Program means for separating and bundling and for translating said records"** [Claim 1]

12.  **"Means for storing said bundled financial instrument information in and addressable media where the bundled financial instrument information is uniquely accessible to the institution designated to receive the information"** [Claim 1]

13. **"Means for the institution designed to receive the information to transmit to and to receive from the means for storing"** [Claim 1]

14. **"Means for transmitting a bundle of said stored financial instrument information from the addressable storage media to the institution designated to receive the information upon the receipt of an instruction"** [Claim 1]

15. **"Means for… validating the identifying information of the originating institution and said designated receiving institution"** [Claim 2]

16. **"Means for…authenticating the financial instrument information contained in said first data file format with respect to predetermined data format parameters"** [Claim 2]

17. **"Predetermined data format parameters"** [Claim 2]

18. **"Means for . . . determining a data file format acceptable to the designated institution"** [Claim 2]

19. **"A security mechanism for preventing the unauthorized one or more of the reception, transmission, translation and storage of financial instrument information"** [Claim 3]

20. "**Defendants allege that the** "**preamble should be construed as limiting.**" [Claim 24].

21. **"Means for receiving a data file from the originating institution, said data file being in a first file format established by the originating institution and comprising co-mingled financial instrument information intended for multiple receiving institutions, the data file further including a designation that specified information in the data file is to be received by a predetermined receiving institution"** [Claim 24]

22. **"Means for storing said separated financial instrument information according to the separate portions thereof in a memory storage device in a manner such that each separate portion is uniquely accessible to the receiving institution associated therewith"** [Claim 24]

23. **"Means for transmitting each portion of said separated financial instrument information stored in the memory storage device to, and in the format selected by, the receiving institution associated therewith"** [Claim 24]

24. "**Co-mingled financial instrument information"** [Claim 24].

25. **"Translating each portion of said separated financial instrument information in said first data file format into a data file format preselected by the receiving institution associated therewith"** [Claim 24]

26. **"Security procedures for preventing unauthorized reception, transmission, translation and storage of any financial instrument information"** [Claim 27]

27.     Defendants allege that the "preamble should be construed as limiting." [Claim 45].

28.     **"Master processor"** [Claim 45]

29.     **"Means for temporarily storing each bundle of said separated financial instrument information in memory unique to the receiving institution associated therewith"** [Claim 45] 30. **"Co-mingled information about financial instruments"** [Claim 45]

31.     **"Translating each bundle of said separated financial instrument information into a data file format preselected by the receiving institution corresponding thereto"** [Claim 45]

32.     **"Security procedures for preventing unauthorized reception, transmission, translation and storage of any financial instrument information within the system"** [Claim 48]

33.     Defendants allege that the "preamble should be construed as limiting." [Claim 61].

34.     **"Co-mingled financial instrument information addressed to multiple receiving institutions."** [Claim 61]

35.     **"Translating each bundle of said separated financial instrument information in said first data file format into a data file format selected by the receiving institution associated therewith"** [Claim 61]

36.     Defendants allege that the "preamble should be construed as limiting." [Claim 80].

37.     **"Translating each portion of said data file in said first file format into a file format selected by the receiving institution"** [Claim 80]

C.  TERMS AND ELEMENTS IN THE '759 PATENT……………..………………22

1.      Defendants allege that the "preamble should be construed as limiting." [Claim 1]

2.      **"Financial instruments drawn on different institutions that are received by a payee at a first location"** [Claim 1]

3.      **"Said first location determined by the payee remote from the payee's collecting and clearing bank"** [Claim 1]

4.      **"For applying to the instruments . . . a separate indorsement on behalf of each of the payee and the collecting and clearing bank with respect to each instrument received"** [Claim 1]

5.      **"A separate indorsement."** [Claim 1].

6.      **"Means at the first location for preparing one or more cash letters associated with each assembled group of instruments"** [Claim 1]

7.      **"Transport means for delivering the groups of instruments and the one or more cash letters from the first location to a second location for receipt into the payment system according**

**to parameters determined by the payee's collecting and clearing bank"** [Claim 1]

8.  **"Delivering the groups of instruments and the one or more cash letters from the first location to a second location"** [Claim 1]

9.  **"Second location"** [Claim 1]

10. **"A central processing unit and communication link providing a coordination between the payee and the payee's collecting and clearing bank which predetermines the timing and monitors the transport of the sorted instruments and the cash letters associated therewith and coordinates the recordation of the deposit of the funds represented by the instruments with the collecting and clearing bank in a sequence coordinated with the timing of a settlement of accounts in the check payment system."** [Claim 1].

11. **"Settlement of accounts"** [Claim 1]

12. **Defendants allege that the** "preamble should be construed as limiting." [Claim 5]

13. **Defendants allege that the** "this claim should be construed to require a specific order of performing the steps below." [Claim 5]

14. **"First location remote from the payee's collecting and clearing bank"** [Claim 5]

15. **"Separate indorsements"** [Claim 5].

16. **"Sequence coordinated with the timing of a settlement of the collecting and clearing bank's account"** [Claim 5]

17. **"Applying to the instruments . . . separate indorsements on behalf of each of the payee and the collecting and clearing bank with respect to each instrument received"** [Claim 5]

18. **"Delivering the assembled groups of instruments and the one or more cash letters associated therewith from the first location to a second location"** [Claim 5]

19. **Defendants allege that the** "preamble should be construed as limiting." [Claim 11]

20. **"Financial instruments drawn on different institutions that are received by different payees."** [Claim 11].

21. **"A means at said first location for applying separate indorsements to the instruments on behalf of each of the one or more banks of first deposit and payees, and the bank of subsequent deposit with respect to each instrument received"** [Claim 11]

22. **"Means for preparing one or more cash letters associated with each assembled group of sorted instruments"** [Claim 11]

23. **"Reporting to the respective banks and payee information in the cash letters"** [Claim 11]

24. **"Transport means for delivering the groups of instruments and the one or more cash letters from the first location to a second location for introduction into the payment system according to parameters determined by the bank of subsequent deposit"** [Claim 11]

25. **"A control unit interconnecting the banks and predetermining the timing and monitoring the transport of the sorted instruments"** [Claim 11]

26. **"Coordinate the recordation of the deposit of the funds represented by the instruments in the account with the collecting and clearing bank in a sequence coordinated with the timing of settlement in the check payment system"** [Claim 11]

27. **Defendants allege that the "preamble should be construed as limiting."** [Claim 14]

28. **Defendants allege that the "this claim should be construed to require a specific order of performing the steps below."** [Claim 14]

29. **"Delivering the groups of instruments and the one or more cash letters"** [Claim 14]

**D. TERMS AND ELEMENTS IN THE '778 PATENT.................................28**

1. **Defendants allege that the "preamble should be construed as limiting."** [Claim 1]

2. **"Received . . . by a payee at a location convenient to a payee's item capture facility and remote from the payee's depository bank"** [Claim 1]

3. **"Payee's item capture facility"** [Claim 1]

4. **"Payee's depository bank"** [Claim 1]

5. **"At a location"** [Claim 1]

6. **"Scanner"** [Claim 1]

7. **"Means for associating said financial information with the payee's records of accounts based upon information derived from the payment stub accompanying the instrument for further processing by the payee"** [Claim 1]

8. **"Imager"** [Claim 1]

9. **"Imager for creating a second record translatable into a visually perceptible image of each of said financial instruments"** [Claim 1]

10. **"Means for adding to the record of each instrument an indorsement indicia on behalf of each of payee and the bank"** [Claim 2]

11. **Defendants allege that the "preamble should be construed as limiting."** [Claim 5]

12. **"Means for associating said information with the payee's records of accounts corresponding to the payment form"** [Claim 5]

13. **"Means at said facility for applying to each of said instruments a separate indorsement on behalf of each of said payee and said depository bank"** [Claim 5]

14. **"Applying to each of said instruments a separate indorsement on behalf of each of said payee and said depository bank"** [Claim 5]

15. **"Separate indorsement on behalf of each of said payee and said depository bank"** [Claim 5]

16. **"Means at said facility for preparing at least one cash letter for association with each bundled group of instruments"** [Claim 5]

17. **"Means for assembling information scanned from the instruments into a transmittable record with respect to each instrument in a correspondence with the bundled groups and cash letters for communication to the bank"** [Claim 5]

18. **"Transport means for delivering said bundled groups of sorted instruments with associated cash letters from the facility into said payment system"** [Claim 5]

19. **"Coordinating the delivery of the instruments and cash letters into the payment system"** [Claim 5]

20. **"An item capture facility at a first location convenient to the payee for receiving said check and payment associated with the check"** [Claim 11]

IV. CONCLUSION……………………………………………………...……………32

EXHIBITS

A – United States Patent No. 5,717,868

B – United States Patent No. 5,583,759

C – United States Patent No. 5,930,778

D – United States Patent No. 5,265,007

E – Plaintiff's Supporting Dictionary Definitions

# TABLE OF AUTHORITIES

*Acumed LLc v. Stryker Corp.*, Nos. 2006-1260, 2006-1437, 2007 U.S. App. LEXIS 8375, at *11(Fed. Cir. Apr. 12, 2007)…………………………………………………………......2

*Apex, Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364 (Fed. Cir. 2003)………………......3

*Application of Freeman*, 573 F.2d 1237, 1245-46 (C.C.P.A. 1978……………………...…4

*Atmel Corp. v. Information Storage Devices, Inc.*, 198 F. 3d, 1374, 1380 (Fed. Cir. 1999)…………………………………………………………………………………......4

*Catalina Mktg. Int'l Inc. v. Coolsavings.com Inc.*, 289 F.3d 801 (Fed. Cir. 2002)………4, 10, 13, 22, 28

*DeGeorge v. Bernier*, 768 F.2d 1318 (Fed. Cir. 1985)………………………..…….….…4, 10, 13, 22, 28

*Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335 (Fed. Cir. 1998)…………......…2

*Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1584 (Fed. Cir. 1996) ……....3

*Harris Corp. v. Ericsson, Inc.*, 417 F.3d 1241, 125…………………………………...4

*Innova/Purewater, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111 (Fed. Cir. 2004)…………………………………………………………………….…..2

*In re Allapat*, 33F.3d 1526, 1545 (Fed. Cir. 1994)…………………………………......3

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985 (Fed. Cir. 1999)…..…...2

*Liebel Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 69 U.S.P.Q.2D (BNA) 1801 (Fed. Cir. Feb. 2004)…………………………………………………………………….…...2

*Mass. Inst. of Tech. and Elecs. for Imaging, Inc. v. Abacus Software*, 2006 U.S. App. LEXIS 23281, at *17 (Fed.Cir…………….…………..........................................3

*Medical Instrumentation and Diagnostics Corporation v. Elekta AB*, 344 F.3d 1205, 1214, 1217, (Fed. Cir. 2003)…………………………………………………….…...4

*Orion IP, LLC v. Staples, Inc.*, 406 F.Supp.2d 717, 738 (E.D. Tex. 2005……………….1

*Panduit Corp. v. Dennison Mfg. Co.,* 810 F.2d 1561 (Fed. Cir. 1987)………………………………………………………….…………......2

*Personalized Media Communications v. Int'l Trade Comm'n,* 161 F.3d 696(Fed. Cir. 1998)………………………………………………….....3

*Phillips v. AWH Co*rp., 415 F3d 1303, 1312 (Fed Cir 2005)………………………........2

*Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336 (Fed. Cir. 2001)………………………....2

*SuperGuide Corp. v. DirecTVEnterprises, Inc*., 358 F. 3d 870 (Fed. Cir. 2004)…………………………….…3

*Teleflex, Inc., v. Ficosa N. Am. Corp.,* 299 F3d 1313, 63 U.S.P.Q.2D (BNA) 1374 (Fed Cir. 2002)………………………………………………………………………....2

*WMS Gaming, Inc. v. International Game Technology*, 184 F.3d 1339, 1348, 1349 (Fed. Cir. 1999)………………………………………………………………….………3

*York Prod., Inc. v. Central Tractor Farm & Family Ctr.*, 99 F.3d 1568, 40 U.S.P.Q.2d (BNA) 1619 (Fed. Cir. 1996)………………………………………………………….…....3

## I.     INTRODUCTION

This is an action for patent infringement.  Plaintiff DataTreasury Corporation ("DTC")
alleges that the Defendants in this action infringe numerous claims of DTC's United States
Patent Nos. 5,265,007 ("the '007 Patent"), 5,717,868 ("the '868 Patent"), 5,583,759 ("the
'759 Patent") and  5,930,778 ("the '778 Patent"), by using and providing infringing products
or systems.[1]

These patents have already been through one round of claim construction briefing in
the related case of *DataTreasury Corp. v. Citigroup Inc*.[2]  Instead of requesting a reasonable
number of terms in addition to the numerous terms that Citibank already asked this Court to
construe, these Defendants listed over 170 terms for claim construction.  After many
discussions, the parties reduced the list to 105 disputed terms.[3]  Unfortunately, there are still
too many terms to give adequate discussion to each within reasonable briefing page limits.
Some of these terms are simply unnecessary as the plain meaning of the words is clearly
employed.  As this Court has noted, "although every word used in a claim has a meaning, not
every word requires a construction."[4]  In addition, some phrases that Defendants requested to
construe are unduly long and cumbersome, which only further complicates the task of claim
construction, when they should be broken up into shorter terms or phrases that are more
readily understood by and easily applied by the jury.

---

[1] Plaintiff also alleges that Defendants directly infringe numerous claims of DTC's United States Patent Nos.
5,910,988 ("the '988 Patent") and 6,032,137 ("the '137 Patent").  This case is currently stayed as to these
patents, so they are not included in this Opening Claim Construction Brief.  In addition, as this Court has
already issued three Markman Orders regarding those patents, and they have been through seven rounds of
claim construction, it is Plaintiff's view that further claim construction on those patents is unnecessary.
[2] Civil Action No. 2:05cv294.  That case has been combined with this one for a joint Markman Hearing.
[3] The parties have agreed to the definitions of  an additional 25 terms for these four patents; see Chart, attached
to Joint Claim Construction and Prehearing Statement as Exh. A.
[4] *Orion IP, LLC v. Staples, Inc.,* 406 F.Supp.2d 717, 738 (E.D. Tex. 2005).

## II.    LEGAL AUTHORITIES

Claim construction is simply a process to provide understanding to the scope of the claimed invention; it is NOT a process to change the scope of the claims.[5]  "[T]he words of a claim are generally given their ordinary and customary meaning."[6]  "And the construing court is to give the claim term[s] its full breadth of ordinary meaning as understood by persons skilled in the relevant art."[7]  Additionally, the full range of the ordinary meaning and accustomed meaning of a disputed claim term is presumed to be correct.[8]  Essentially, "claim terms take on their ordinary and accustomed meanings unless the patentee demonstrated <u>an intent</u> to deviate from [that meaning]."[9]  Moreover, unambiguous claim terms <u>need not be construed</u> other than to apply their ordinary meaning <u>using the exact words of the claim</u>.[10]

The Federal Circuit has repeatedly cautioned that it is improper to use details from the preferred embodiments that appear in the written description of the patent in order to limit the language of the claims that might otherwise have a broader scope.[11]  Indeed, even when a patent describes only one embodiment the claims are not to be read restrictively to cover just that one embodiment unless the patentee clearly intended to limit the claim language to that embodiment by using "words or expressions of manifest exclusion or restriction."[12]  The specification "is not a substitute for, nor can it be used to rewrite, the

---

[5] *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1576 (Fed. Cir. 1987).

[6] *Phillips v. AWH Co*rp., 415 F3d 1303, 1312 (Fed. Cir. 2005) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

[7] *Id.* at 1313; *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336 (Fed. Cir. 2001); *Teleflex, Inc. v. Ficosa North America Corp.,* 299 F.3d 1313, 1325 (Fed. Cir. 2002).

[8] *See Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999).

[9] *Teleflex, Inc. v. Ficosa North America Corp.,* 299 F.3d 1313, 1327 (Fed. Cir. 2002) (emphasis added).

[10] *Digital Biometrics, Inc. v. Identix, Inc*., 149 F.3d 1335, 1344 (Fed. Cir. 1998) ("The actual words of the claim are the controlling focus.") (emphasis added); *see also Liebel Flarsheim Co. v. Medrad, Inc*., 358 F.3d 898, 69 U.S.P.Q.2D (BNA) 1801 (Fed. Cir. 2004).

[11] *Acumed LLC v. Stryker Corp*., 483 F.3d 800, at *11 (Fed. Cir. Apr. 12, 2007); *Phillips v. AWH Corp*., 415 F.3d 1303, 1312-13, 1323 (Fed. Cir. 2005) (en banc), *cert. denied*, 126 S. Ct. 1332 (2006); *Innova/Purewater, Inc. v. Safari Water Filtration Systems, Inc.,* 381 F.3d 1111, 1117 (Fed. Cir. 2004) (citations omitted).

[12] *Id.* (citations omitted).

chosen claim language. 'Specifications teach. Claims claim.'"[13] Where a specification does not require a limitation, that limitation should not be read from the specification or prosecution history into the claims.[14]

Determining whether 35 U.S.C. § 112 ¶ 6 applies to a particular claim term is also a matter of law for the Court.[15] In determining whether § 112, ¶ 6 applies to a claim limitation, the critical question is whether the word "means" is used in the claim language itself. As the Federal Circuit has stated, "the use of the term 'means' has come to be so closely associated with 'means-plus-function' claiming that it is fair to say that the use of the term 'means' (particularly as used in the phrase 'means for') generally invokes section 112(6) and that use of a different formulation generally does not."[16] The Federal Circuit has further held that the use of the word "means" gives rise to a presumption that § 112, ¶ 6 applies, and the absence of the word "means" gives rise to a presumption that § 112, ¶ 6 does not apply.[17]

In the four patents involved in these claim construction proceedings, there are many means-plus-function terms where the corresponding structure is a microprocessor or appropriate software that was widely available at the time the patents were drafted. A microprocessor configured to carry out particular functions can properly serve as corresponding structure for a means-plus-function claim element.[18] "If the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the

---

[13] *SuperGuide Corp. v. DirecTVEnterprises, Inc.*, 358 F. 3d 870, 875 (Fed. Cir. 2004).

[14] *Mass. Inst. of Tech. and Elecs. for Imaging, Inc. v. Abacus Software*, 462 F.3d 1344, 1352 (Fed. Cir. 2006).

[15] *Personalized Media Communications v. Int'l Trade Comm'n*, 161 F.3d 696 (Fed. Cir. 1998). Section 112, ¶ 6 provides that: "An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."

[16] *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1584 (Fed. Cir. 1996).

[17] *York Prods., Inc. v. Central Tractor*, 99 F.3d 1568 (Fed. Cir. 1996); *Apex, Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364 (Fed. Cir. 2003).

[18] *In re Alappat*, 33 F.3d 1526, 1545 (Fed. Cir. 1994) (en banc); *see also WMS Gaming, Inc. v. International Game Technology*, 184 F.3d 1339, 1348 (Fed. Cir. 1999).

disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm."[19]  The structure for performing the function is limited to the algorithm disclosed in the specification.[20]

The patentee, however, is not required to disclose source code for every function carried out by a processor or computer.  And the disclosed "algorithm" is not limited to a formula of mathematical symbols—for example, the steps, formula, or procedures to be performed by the computer may be expressed textually.[21]  The relevant question is whether one skilled in the art would have understood the disclosure of the patent to encompass a particular algorithm or software program and would have been able to implement it.[22]

## III.    THE PROPER CONSTRUCTION OF TERMS

For each of the four patents, Plaintiff has provided a chart including Plaintiff's construction of the disputed claim terms, text of the supporting intrinsic evidence, and the relevant extrinsic evidence.  See the charts attached as Exhibits A through D.  Due to the large number of terms involved, Plaintiff incorporates by reference the evidence in these charts into its discussion of the disputed claim terms below and refers the Court to the intrinsic and any extrinsic evidence supporting the proper construction.

### A.  TERMS AND ELEMENTS IN THE '007 PATENT.

1.  **Defendants allege that the "preamble should be construed as limiting."**  [Claim 1] The preamble to Claim 1 is not necessary to give life, meaning, and vitality to the claim, and does not need to be construed.  *See, e.g., Catalina Mktg. Int'l Inc. v. Coolsavings.com Inc.*, 289 F.3d 801 (Fed. Cir. 2002); *DeGeorge v. Bernier*, 768 F.2d 1318 (Fed. Cir. 1985).

---

[19] 184 F.3d at 1349.
[20] *Id*. at 1339; *Harris Corp. v. Ericsson Inc*., 417 F.3d 1241, 1253 (Fed. Cir. 2005).
[21] *See Application of Freeman*, 573 F.2d 1237, 1245-46 (C.C.P.A. 1978), and cases cited therein.
[22] *Medical Instrumentation and Diagnostics Corporation v. Elekta AB*, 344 F.3d 1205, 1212 (Fed. Cir. 2003) (citing *Atmel Corp. v. Information Storage Devices, Inc*., 198 F.3d 1374, 1380 (Fed. Cir. 1999)).

2. **"Pre-selected financial institutions"** [Claim 1] appears only in the preamble and does not need to be construed. Alternatively, if the Court elects to construe this term, "pre-selected institutions" [Claim 1] should be construed as "financial institutions which have previously been selected to be members of or participants in the central check clearing system or a local clearinghouse as to clearing the financial instrument." '007 Patent at Col. 1:44-52; 2:30-37; 2:66-3:7; 3:24-28; 5:13-18; 7:34-38; and 10:25 (See Exh. A).

3. **"Preselected site"** [Claim 1] appears only in the preamble and does not need to be construed. Alternatively, if this Court opts to construe this term, the construction should be "the instrument processing location of a participating institution." This construction is supported by the specification and claims of the '007 Patent.

4. **"Means within each of the pre-selected institutions…for sending and receiving the instruments…"** [Claim 1]

This is a "means-plus-function" term. The function is "sending and receiving the instruments"; the corresponding structure is "air or ground transportation and a pre-selected institution's physical facility." See '007 Patent at Col. 5:22-24. This position may be further supported by testimony from persons of ordinary skill in the art and/or individuals who manage such persons.

5. **"Means for receiving including means for physically accepting the instruments transported from the other institutions"** [Claim 1]

This is a "means-plus-function" term. The function is "physically accepting the instruments transported from other institutions"; the corresponding structure is "a pre-selected institution's physical facility and its relationship with air or ground transportation." See '007 Patent, at Fig. 1; Col. 1:66-2-1; 4:15-20; 5:61-63; this position may be further supported by

testimony from persons of ordinary skill in the art and/or individuals who manage such persons.[23]

6. **"Means within each of the pre-selected institutions…for sending to and receiving from a central processing unit connected to each institution information…"** [Claim 1]

This is a "means-plus-function" term. The function is "sending to and receiving from…(ii) received." The corresponding structure is "electronic communications links, which may include conventional telephone links by modem connections and the like, and software." '007 Patent, at Fig. 1; Col. 6:22-24; this position may be further supported by testimony from persons of ordinary skill in the art and/or individuals who manage such persons.

7. **"Central processing unit"** [Claim 1] should be construed as "a conventional programmable computer." See '007 Patent, at Claim 4; 9:1-2, 9:10; 1:62-66; 6:11-16. This construction does not import unnecessary limitations into the claim language.

8. **"Real time"; "in real time"** [Claim 1] should be construed as "the actual time during which something takes place." See '007 Patent, at Col. 2:40; 6:60-64; 7:14-34; and extrinsic evidence.

9. **"Real time in correspondence with the occurrence of an event"** [Claim 1] should be construed as "the actual time during which something takes place." See '007 Patent, at Col. 2:40; 6:60-64; 7:14-34; and extrinsic evidence.

10. **"Value of the instruments transported"/"the value of the instruments sent and received."** [Claim 1]. The phrase "value of the instruments," which appears several times in Claim 1, should be construed as "the total dollar amount of the financial instruments being delivered." See '007 Patent, at Col. 2:32-50. Construction of the other portions of these phrases is unnecessary as the words' plain meanings are employed.

---

[23] Unfortunately, the Joint Claim Chart is inaccurate for this term. Plaintiffs provided the above construction to Defendants, but it appears Defendants made a clerical error before filing the chart.

11.  **"Means within each of the pre-selected institutions… for receiving from the central processing unit a calculated value (a) on a real time basis and (b) on a regular periodic settlement basis, information regarding the debits and credits…"** [Claim 1]

This is a "means-plus-function" term.  The function is "receiving…sent and received"; the corresponding structure is "accounting system; related software; electronic communication links."  See '007 Patent, at Col. 3:35-39; 5:25; 4:50; 6:20-22; '007 Patent, at Fig. 1; Col. 6:22-24.  This position may also be supported by testimony from persons of ordinary skill in the art and/or individuals who manage such persons.

12.  **"Settlement"** [Claim 1] should be construed as "settlement of credit and debit balances between institutions."  See '007 Patent at Abstract: Col. 2:9-16; 2:32-39; 2:47-49; 3:5-9..

13.  **"Regular periodic settlement"** [Claim 1] should be construed as "settlement of credit and debit balances between institutions at predetermined time intervals."  See '007 Patent, at Abstract, Col. 2:9-16; 2:32-39; and 2:47-49.

14.  **"Means for continuous monitoring on a real time basis,…(a) (i) the sending and receipt status of the instruments and (ii) the value of the instruments sent and received, …, and (b) the status in transit of the instruments with respect to their having been (i) sent and (ii) received, …"** [Claim 1]

This is a "means-plus-function" term.  The function is "continuously monitoring…receiving of instruments"; the corresponding structure is "A conventional programmable computer or central processing unit [1:62-65; Fig. 1 (CPU)], electronic communications links [Fig. 1], which may include conventional telephone links by modem connections and the like [6:22-24], and related software."  See '007 Patent, at Fig. 1; Col. 1:62-65; 2:39-45; 6:9-14; 6:22-24; 6:61-64; 7:14-20; this position may be supported by testimony from persons of ordinary skill in the art and/or individuals who manage such persons.

15.  **"The sending and receipt status of the instruments"** [Claim 1] should be construed as "information about the sending and receipt status of the instruments."  Alternatively, the

construction "information about whether the instruments have been sent or received" would be appropriate. See '007 Patent, at Col. 7:61-63; 2:37-39; 4:15-22; 5:61-66; 6:25-27; and 8:9-15.

16. **"The status in transit of the instruments"** [Claim 1] should be construed as "information about transport of financial instruments sent and received by the pre-selected financial institutions." See '007 Patent, at Col. 7:61-63; 2:37-39; 4:15-22; 5:61-66; 6:25-27; and 8:9-15.

17. **"Means for calculating debits and credits,…of (a) the amount owing from or payable to each one of the pre-selected institutions…and (b) an aggregate amount owing from or payable to each one of the pre-selected institutions…"** [Claim 1]

This is a "means-plus-function" term. The function is "calculating debits and credits among the participating members"; the corresponding structure is "software on a conventional programmable computer or central processing unit (CPU)." See '007 Patent, Fig. 1; Col. 1:62-65; 2:39-49; 6:20-22; 6:11-16. This position may be further supported by testimony from persons of ordinary skill in the art and/or individuals who manage such persons.

18. **"Means for sending to each institution the information monitored with respect to instruments sent to an institution and the value of such instruments"** [Claim 1]

This is a "means-plus-function" term. The function is "sending…such instruments"; the corresponding structure is "electronic communications links, which may include conventional telephone links by modem connections and the like." See '007 Patent, at Fig. 1; Col. 6:22-24. This position may also be supported by testimony from persons of ordinary skill in the art and/or individuals who manage such persons..

19. **"A cycling means interrelated with the central processing unit (a) for controlling the physical transport…and (b) for controlling the means for calculating…"** [Claim 1]

This term is a "means-plus-function" term. The function is "cycling interrelated with the central processing unit (a) for controlling the physical transport…(b) for controlling the means for calculating…"; the corresponding structure is "rules and parameters regarding time scheduling where such rules and schedules are interrelated with the central processing unit (CPU)." See '007 Patent, at Col. 3:10-25; 6:60-64; 10:7-16; 2:55-66; 3:9-16; 3:39-42; 5:35-39; 6:9-23. This position may be further supported by testimony from persons of ordinary skill in the art and/or individuals who manage such persons.

20. **"A final calculation of the debits and credits . . .does not occur until pre-determined local settlements by the institutions in the pre-selected sites with institutions that are not among the number of pre-selected financial institutions, are completed."** [Claim 1]

This "term" does not need to be construed as a phrase, and attempting to construe the entire phrase as Defendants suggest will likely confuse rather than clarify the claim. **"Debits and credits"** should be construed as follows: "credits are the amounts owed by an institution; debits are the amounts payable to an institution." **"Predetermined local settlements by the institutions in the preselected sites with institutions that are not among the number of preselected financial institutions"** should be construed as "settlements between a user and non-user of the clearinghouse that occurs at a regular interval." See '007 Patent, at 3:29-54.

21. **"Means at an institution by which instruments are sorted by the site locality of each other of the pre-selected institutions and in which the instruments sorted by site are sent by site sort category to institutions at sites within the site sort categories"** [Claim 2] This is a "means-plus-function" term. The functions are "sorting by the site locality of each other of the pre-selected institutions," and "sending the instruments sorted by site category to institutions at sites within the site sort categories." The corresponding structure for the first function is "sorters [7:3] or sort machines [4:46-7]"; the corresponding structure for the second function is "a pre-selected institution's physical facility (i.e., bank,

member bank, receiving bank, Participating Bank B), and its relationship with air or ground transportation. [Fig. 1 (solid directional lines); 1:66-2:1; 4:15-22]." See '007 Patent, at 4:46-47; Fig. 1; Col. 1:66-2:1; 4:15-20; 5:51-63; 6:25; 4:41-48. This position may be further supported by testimony from persons of ordinary skill in the art and/or individuals who manage such persons.

22. **Defendants allege that the "preamble should be construed as limiting."** [Claim 4]

The preamble to Claim 4 is not necessary to give life, meaning, and vitality to the claim, and does not need to be construed. *See, e.g., Catalina Mktg. Int'l Inc. v. Coolsavings.com Inc.*, 289 F.3d 801 (Fed. Cir. 2002); *DeGeorge v. Bernier*, 768 F.2d 1318 (Fed. Cir. 1985).

23. **"Means at each of the participants (1) for sending and receiving financial instruments to be cleared and (2) for sending and receiving in real time information …and (3) for addressing the central processing unit…"** [Claim 4]

This is a "means-plus-function" term. The first function is "sending and receiving financial instruments to be cleared," and the first corresponding structure is "air or ground transportation and a pre-selected institution's physical facility (i.e., bank, member bank, Participating Bank A/B, sending/receiving bank)." The second function is "sending and receiving in real time information reporting the value and transit status of the financial instruments to be cleared to a programmed central processing unit," and the corresponding structure is "electronic communications links, which may include conventional telephone links by modem connections and the like." The third function is "addressing the central processing unit by which a participant may determine in real time the information received by the processing unit," and the corresponding structure is "electronic communications links, which may include conventional telephone links by modem connections and the like." See '007 Patent, at Col. 6:22-24; 6:11-13; 7:17-21. This position may also be supported by

testimony from persons of ordinary skill in the art and/or individuals who manage such persons.

24. **"Transit status of the financial instruments to be cleared"** [Claim 4] should be construed as "information about the status in transit of the instruments, namely, whether the instrument has been sent and/or whether the instrument has been received." See '007 Patent, at Col. 7:61-63; 2:37-39; 5:61-66; 6:25-27; and 8:9-15.

25. **"Means for calculating debits and credits owing from or payable (1) to one member to another member and (2) from or to one member to all other members, based upon the value of instruments reported by a participant as having been sent and received"**

[Claim 4] This is a "means-plus-function" term. The function is "calculating debits and credits among the participating members"; the corresponding structure is "software on a conventional programmable computer or central processing unit (CPU)." See '007 Patent, at Fig. 1; Col. 6:20-22; 2:39-40; 1:62-65; 6:11-16. This construction may also be supported by testimony from persons of ordinary skill in the art and/or individuals who manage such persons.

26. **"Means for receiving and recording a participant's reports of the value and transit status of the instruments to be cleared as having been sent and received with respect to all participants in the system"** [Claim 4]

This is a "means-plus-function" term. The function is "receiving and recording…in the system"; the corresponding structure is "software associated with an accounting system running on the central processing unit (CPU)." See '007 Patent, at Col. 6:20-24; 1:62-66; 2:2-4; 2:11-12; 3:31. This position may also be supported by testimony from persons of ordinary skill in the art and/or individuals who manage such persons.

11

27. **"Means for monitoring on a real time as reported basis (1) the actual sending from and receipt by a participant of the value of instruments …and (2) the sending from and receipt by a participant of the actual instruments …"** [Claim 4]

This term is a "means-plus-function" term.  The function is "monitoring on a real time as reported basis"; the corresponding structure is "software associated with a conventional programmable computer or central processing unit [Fig. 1 (CPU)] operably interconnected with software associated with the accounting system on the CPU."   See '007 Patent, at Col 6:20-22; 1:62-65; Fig. 1; 6:9-14; 2:39-45; 6:61-64; 7:14-20.  This construction may also be supported by testimony from persons of ordinary skill in the art and/or individuals who manage such persons.

28. **"A time control for determining the time of physical transport of financial instruments…"** [Claim 4]

This term should be construed as a "predetermined time schedule."  See 007 Patent, at Col. 2:55-58; 3:13-16; 5:37-39, and relevant extrinsic evidence.  This term is not a "means-plus-function" term.

29. **"Determining the time of physical transport of financial instruments between and among the participants according to a predetermined time cycle"** [Claim 4]

This term should be construed as a "predetermined time schedule."  See '007 Patent, at Col. 2:55-58; 3:13-16; 5:37-39, and relevant extrinsic evidence.

30. **"Determining the occurrence of a final settlement by the clearinghouse participants at a pre-determined time until after a time that certain predetermined local settlements in the localities, by the participants in the localities, are completed"** [Claim 4]

This term should be construed as "Establishing by participant rules settlement time, that accommodates processing, procedures, and transportation needs of all participants regardless

12

of location and time zone.  This final settlement occurs after certain predetermined local

settlements."  See '007 Patent, at Col. 4:15-40; and 10:7-16.

31.  **"Participants"** [Claim 4][24] should be construed as "members of the clearinghouse

association."  See '007 Patent, at Col. 1:44-52; 2:30-37; 2:66-3:7; 3:24-28; 5:13-18; 7:34-38;

10:25 and does not confuse different claims of the '007 Patent.

32.  **"Final settlement"** [Claim 4] should be construed as "final settlement of credit and debit

balances between institutions."  See '007 Patent, at 3:29-54. This construction does not

confuse different claims of the '007 Patent.

 **B.  TERMS AND ELEMENTS IN THE '868 PATENT.**

1.  **Defendants allege that the "preamble should be construed as limiting."**  [Claim 1]

The preamble to Claim 1 is not necessary to give life, meaning, and vitality to the claim, and

does not need to be construed.  *See, e.g., Catalina Mktg. Int'l Inc. v. Coolsavings.com Inc.*,

289 F.3d 801 (Fed. Cir. 2002); *DeGeorge v. Bernier*, 768 F.2d 1318 (Fed. Cir. 1985).

2.  **"Financial instruments being exchanged between and among the institutions"** [Claim

1] appears only in the preamble and does not need to be construed as it does not give life,

meaning, and vitality to the claim.  "Financial instruments" should be construed as

"documents in writing by which some financial obligation by one person to pay another is

represented, such as a check, paper, cash items, money orders, share orders, drafts, notes,

bonds, or coupons, that are exchanged between and among institutions." See '868 Patent , at

Col. 5:16-21 (see Exh. B).  This construction was agreed to by Defendant Citibank.[25]

---

[24] Over Plaintiff's objection, Defendants combined terms from different claims (and even from different patents!) in the same cell of the Joint Claim Chart.  Although terms may have the same constructions across claims, they may differ based on the individual matter in each claim, and to combine them invites error. Therefore, in this Brief and in the accompanying claim charts, Plaintiff has separated these terms.

[25] In Civil Action No. 2:05cv294, which will share a Markman Hearing with this case in September.

3. **"Means for receiving a data file from an originating institution…said data file being in a first file format…and containing a designation…that information in the data file is to be received by one or more than one predetermined institution"** [Claim 1].

This term is a "means-plus-function" term. The function is "receiving a data file from an originating institution." The corresponding structure is "Translator 1" in Figure 1, Col. 6:6-10, and Fig. 2 (block 10). See '868 Patent, at Fig. on front Page; Fig. 2; Col. 3:48-57; 4:50-58; 6:6-10; 5:28-33; 8:21-24. This position may be further supported by testimony from persons of ordinary skill in the art and/or individuals who manage such persons..

4. **"Predetermined institution"** [Claim 1] should be construed as a "participant institution that has previously agreed to exchange financial instrument information with another participant institution." See '868 Patent, at Col. 5:63-67. This construction was agreed to by Defendant Citibank.

5. **"Institution"** [Claim 1] should be construed as "a business, bank, or other commercial entity." This construction is supported by the patent specification and the claim language, which does not limit the term to particular types of institutions. See '868 Patent, at Col.5:63-67.

6. **"Co-mingled records"** [Claim 1]. "Co-mingled" should be construed as "combined financial instrument information intended for one or more of a multiple of receiving institutions or settlement mechanisms." "Records" should be construed as "portions of files sent and received between financial institutions, which contain various data fields." See 868 Patent, at Col. 3:59-61; 5:33-40; 6:60-63; 8:53-58; 9:59-10-:3, and also applicable extrinsic evidence definitions.

14

7. **"File format"** [Claim 1] should be construed as "the arrangement of data fields within a record, and the arrangement of, and definitions of different types of, records within a data file." See '868 Patent, at Col. 6:33-35; Claim 45(b); 5:37-40; Claim 45(c).

8. **"Processor"** [Claim 1] should be construed as "a central processing unit programmed to perform a specified function." See '868 Patent, at Item 21, Fig. 2, Col. 8:21-23.

9. **"Financial instrument information"** [Claim 1] should be construed as "information representing financial instruments and electronic funds transfers, and additional system generated information." See '868 Patent, at Col. 4:50-64.

10. **"Translating the records in each bundle of said financial instrument information records from said first data file format into a data file format selected by the predetermined institution designated to receive the information"** [Claim 1]

This term should be construed as "converting the records in each bundle from the first file format to a second file format determined in advance by the receiving institution." See '868 Patent, at Col. 3:5-10; 3:13-15; 5:63-6:10; 8:20-23.

11. **"Program means for separating and bundling and for translating said records"** [Claim 1] is a "means-plus-function" term. The function is "separating and bundling and for translating said records." The corresponding structure is "data processing and signal generation procedures along with file format translation protocols." See '868 Patent, at Col. 3:5-10; 6:6-10; 6:45-49; 6:61-67; 8:20-29 and may also be supported by testimony from persons of ordinary skill in the art and/or individuals who manage such persons.

12. **"Means for storing said bundled financial instrument information in an addressable media where the bundled financial instrument information is uniquely accessible to the institution designated to receive the information"** [Claim 1]

This term is a "means-plus-function" term. The function is "storing said bundled financial instrument information in an addressable media." The corresponding structure is "archival

15

storage 25 or memory M23, M24…MN." See '868 Patent, at Fig. on Front page; Fig. 2; Col.

3:18-20, 4:19-26; 7:5-8; and 8:44-48.

### 13. **"Means for the institution designed to receive the information to transmit to and to receive from the means for storing"** [Claim 1]

This term is a "means-plus-function" term; the function is "for the institution designed to

receive the information to transmit to and receive from the means for storing." The

corresponding structure is a "communication link 12." See '868 Patent, at Fig 1; Fig. 2; Col.

8:4-11; 8:41; 8:48-52. This position may be supported by testimony from persons of

ordinary skill in the art and/or individuals who manage such persons.

### 14. **"Means for transmitting a bundle of said stored financial instrument information from the addressable storage media to the institution designated to receive the information upon the receipt of an instruction"** [Claim 1]

This term is a "means-plus-function" term. The function is "transmitting a bundle of said

stored financial instrument information from the addressable storage media"; the

corresponding structure is a "communication link 12." See '868 Patent, at Fig 1; Fig. 2;

Col. 8:4-11; 8:41; 8:48-52; 9:5-9; this construction may be supported by testimony from

persons of ordinary skill in the art and/or individuals who manage such persons.

### 15. **"Means for… validating the identifying information of the originating institution and said designated receiving institution"** [Claim 2]

This term is a "means-plus-function" term; the function is "validating the identifying

information of the originating institution and said designated receiving institution." The

corresponding structure is "a central processing unit." See '868 Patent, at Col. 6:6-26; 14:37-

39; 5:63-67. This construction does not add limitations to the function, and may be

supported by testimony from persons of ordinary skill in the art and/or individuals who

manage such persons..[26]

16.  **"Means for…authenticating the financial instrument information contained in said
first data file format with respect to predetermined data format parameters"** [Claim 2]

This is a "means-plus-function" term.  The function is "authenticating the financial

instrument information contained in said first data file format with respect to predetermined

data format parameters"; the corresponding structure is "a central processing unit."  See '868

Patent, at Col 6:6-26.  This construction may be supported by testimony from persons of

ordinary skill in the art and/or individuals who manage such persons.

17.  **"Predetermined data format parameters"** [Claim 2] should be construed as

"predetermined standards associated with data file formats regarding the arrangement of data

within data fields where the arrangement conforms to the particular parameters associated

with a specific file transfer protocol."  See '868 Patent, at Col. 6:33-35.

18.  **"Means for . . . determining a data file format acceptable to the designated
institution"** [Claim 2]

This is a "means-plus-function" term.  The function is "determining a data file format

acceptable to the designated institution."  The corresponding structure is a "central

processing unit validation procedure or program routine."  See '868 Patent, at Col. 6:33-35.

This construction may be supported by testimony from persons of ordinary skill in the art

and/or individuals who manage such persons.

19.  **"A security mechanism for preventing the unauthorized one or more of the
reception, transmission, translation and storage of financial instrument information"**

---

[26] The Joint Claim Chart reflects an inaccurate statement of the Plaintiff's position on this term.  Plaintiff
apologizes for any confusion caused by this mistake.  Plaintiff's position was accurately reflected in Plaintiff's
preliminary claim constructions, which were served on all Defendants.

[Claim 3] should be construed as "software running on a processor which limits only authorized originating and receiving institutions to receive, transmit, translate, and/or store financial instrument information."  See '868 Patent, at Col. 6:11-26; 8:8-23.  This construction may also be supported by testimony from persons of ordinary skill in the art and/or individuals who manage such persons.

20.  "**Defendants allege that the** "**preamble should be construed as limiting.**"  [Claim 24]. Defendants have not identified any "limiting terms" in the preamble.  Moreover, the preamble to Claim 24 is not necessary to give life, meaning, and vitality to the claim, and does not need to be construed.  *See case law cited above.*

21.  "**Means for receiving a data file from the originating institution...**" [Claim 24] This term is a "means-plus-function" term.  Plaintiff can agree with Defendants that the function is "receiving a data file from the originating institution."  The corresponding structure is "Translator 1 within a central processing unit."  This construction is supported by the specification and corresponding figures.  See '868 Patent, at Fig. on front page; Fig. 2; col. 3:48-57; 4:50-58; 6:6-10; 5:28-33; 8:21-24.  This position may be further supported by the testimony from person of ordinary skill in the art and/or individuals who manage such persons.

22.  "**Means for storing said separated financial instrument information according to the separate portions thereof in a memory storage device in a manner such that each separate portion is uniquely accessible to the receiving institution associated therewith**"

[Claim 24] is a "means-plus-function" term.  The function is "storing said financial instrument information….therewith"; and the corresponding structure is "memory/mailboxes M23, M24…MN."  See '868 Patent, at Fig. 2; Col. 3:64-67; 4:60-64; 7:6.

23.  **"Means for transmitting each portion of said separated financial instrument information stored in the memory storage device to, and in the format selected by, the receiving institution associated therewith"** [Claim 24]

This is a "means-plus-function" term.  The function is "transmitting each

portion…therewith," and the corresponding structure is the "communication link 12."  See

'868 Patent, at Fig. 1, Fig. 2; Col 8:7; 8:41; 8:48-52; 9:5-9 and may be supported by

testimony from persons of ordinary skill in the art and/or individuals who manage such

persons.

24.  **"Co-mingled financial instrument information"** [Claim 24].  "Co-mingled" should be

construed as "combined financial instrument information intended for one or more of a

multiple of receiving institutions or settlement mechanisms."  "Financial instrument

information" should be construed as in Term 9, above.  "Intended for multiple receiving

institutions" is self-explanatory, so there is no need to construe that phrase separately.  See

'868 Patent, at Col. 3:59-61; 4:50-64, and also applicable extrinsic evidence definitions.

25.  **"Translating each portion of said separated financial instrument information in said first data file format into a data file format preselected by the receiving institution associated therewith"** [Claim 24]

This term should be construed as "converting each portion of said separated financial

instrument information from the first file format to a second file format determined in

advance by the receiving institution." See '868 Patent, at 3:5-19; 3:13-15; 5:63-6:10; 8:20-

23.

26.  **"Security procedures for preventing unauthorized reception, transmission, translation and storage of any financial instrument information"** [Claim 27]

This term should be construed as "programs running on a processor which limits only

authorized originating and receiving institutions to receive, transmit, translate, and/or store

financial instrument information."  See '868 Patent, at Col. 6:11-26; 8:8-23.  This position

19

may be supported by testimony from persons of ordinary skill in the art and/or individuals

who manage such persons..

27. **Defendants allege that the "preamble should be construed as limiting."**  [Claim 45].

The preamble to Claim 45 is not necessary to give life, meaning, and vitality to the claim,

and does not need to be construed.  *See case law cited above.*

28. **"Master processor"** [Claim 45] should be construed as "a central processing unit."  See

'868 Patent, at Col. 3:61-63; 5:58-62; and 6:6-10.

29. **"Means for temporarily storing each bundle of said separated financial instrument
information in memory unique to the receiving institution associated therewith"**

[Claim 45] This is a "means-plus-function" term.  The function is "temporarily

storing…therewith," and the corresponding structure is "memory/mailboxes M23,

M24…MN."  See '868 Patent, at Fig. 2; col. 3:64-67; 4:60-64; 7:6.

30. **"Co-mingled information about financial instruments"** [Claim 45] appears only in

the preamble, and does not need to be construed.  Alternatively, if this Court decides to

construe this phrase, it should be construed as "combined financial instrument information

intended for one or more of a multiple of receiving institutions or settlement mechanisms."

31. **"Translating each bundle of said separated financial instrument information into a
data file format preselected by the receiving institution corresponding thereto"**

[Claim 45] This term should be construed as "converting each bundle from the first file

format to a second file format determined in advance by the receiving institution."  See '868

Patent, at Col. 3:5-10; 3:13-15; 5:63-6:10; 8:20-23.

32. **"Security procedures for preventing unauthorized reception, transmission,
translation and storage of any financial instrument information within the system"**

[Claim 48] This term should be construed as "software running on a processor which limits

only authorized originating and receiving institutions to receive, transmit, translate, and/or

store financial instrument information."  See '868 Patent, at Col. 6:100-26; 8:8-23.  This

position may also be supported by testimony from persons of ordinary skill in the art and/or

individuals who manage such persons..

33.  **Defendants allege that the** "**preamble should be construed as limiting.**"  [Claim 61].

However, Defendants have not identified any "limiting terms."  Moreover, the preamble to

Claim 61 is not necessary to give life, meaning, and vitality to the claim, and does not need

to be construed.  *See case law cited above.*

34.  **"Co-mingled financial instrument information addressed to multiple receiving institutions."** [Claim 61]

 "Co-mingled" should be construed as "combined financial instrument information intended

for one or more of a multiple of receiving institutions or settlement mechanisms."  "Financial

instrument information" should be construed as in Term 9, above.  See '868 Patent, at Col.

3:59-61; 4:50-64 and also by applicable extrinsic evidence definitions.

35.  **"Translating each bundle of said separated financial instrument information in said first data file format into a data file format selected by the receiving institution associated therewith"** [Claim 61]

This term should be construed as "converting each bundle from the first file format to a

second file format determined in advance by the receiving institution."  See '868 Patent, at

Col. 3:5-10; 3:13-15; 5:63-6:10; 8:20-23.

36.  **Defendants allege that the** "**preamble should be construed as limiting.**"  [Claim 80].

However, Defendants have not identified any "limiting terms."  Moreover, the preamble to

Claim 80 is not necessary to give life, meaning, and vitality to the claim, and does not need

to be construed.  *See case law cited above.*

37.  **"Translating each portion of said data file in said first file format into a file format selected by the receiving institution"** [Claim 80]

This term should be construed as "converting each portion of said data file from the first file format to a second file format determined in advance by the receiving institution."  See '868 Patent, at 3:5-10; 3:13-15; 5:63-6:10; 8:20-23

**C. TERMS AND ELEMENTS IN THE '759 PATENT.**

1.  **Defendants allege that the** "**preamble should be construed as limiting.**"  [Claim 1]

The preamble to Claim 1 is not necessary to give life, meaning, and vitality to the claim, and does not need to be construed.  *See, e.g., Catalina Mktg. Int'l Inc. v. Coolsavings.com Inc.*, 289 F.3d 801 (Fed. Cir. 2002); *DeGeorge v. Bernier*, 768 F.2d 1318 (Fed. Cir. 1985).

2.  **"Financial instruments drawn on different institutions that are received by a payee at a first location"** [Claim 1]

This term appears only in the preamble and does not need to be construed as it does not give life, meaning, and vitality to the claim.  "Financial instruments" should be construed as "documents in writing by which some financial obligation by one person to pay another is represented, such as a check, paper, cash items, money orders, share orders, drafts, notes, bonds, or coupons, that are exchanged between and among institutions."  See '759 Patent at Col. 1:19-20; 6:28-30, and extrinsic evidence.  (See Exh. C).  This construction was agreed to by Defendant Citibank.  Alternatively, if this Court opts to construe the entire phrase, the words should be given their plain meaning.

3.  **"Said first location determined by the payee remote from the payee's collecting and clearing bank"** [Claim 1]

This term appears only in the preamble and does not need to be construed as it does not give life, meaning, and vitality to the claim.  Alternatively, if this Court opts to construe this phrase, it should be construed as "a location separate from the payee's collecting and clearing bank, but connected by a communication link."  See '759 at Col. 4:4-6; 5:7-9.

4. **"For applying to the instruments . . . a separate indorsement on behalf of each of the payee and the collecting and clearing bank with respect to each instrument received"**

[Claim 1] does not need to be construed as a phrase. "Separate indorsement" is defined, below. "Collecting and clearing bank" should be construed as "a bank that deposits funds in the payee's account based on received cash letter." See '759 Patent, at Col. 1:28-30; 2:17-19. The rest of the phrase is plain meaning.

5. **"A separate indorsement."** [Claim 1]. "Separate" should be construed as "one on behalf of the payee, and one on behalf of the collecting and clearing bank." "Indorsement" should be construed as "payment instructions and the identity of the indorser applied to an instrument." See '759 Patent, at Col. 2:9-12; 3:4-7; 5:13-15, and relevant extrinsic evidence.

6. **"Means at the first location for preparing one or more cash letters associated with each assembled group of instruments"** [Claim 1]

This is a "means-plus-function" term. The function is "preparing one or more cash letters at the first location." The corresponding structure is a "central processing unit 13 or sorter 1 as in Fig. 1." See '759 Patent, at Fig. 1; Col. 2:2-15; 3:29-35; 3:52-63; 4:12-16; 4:19-21; 5:40-45; 5:63-65; 6:36-44. This construction may be supported by testimony from persons of ordinary skill in the art and/or individuals who manage such persons.

7. **"Transport means for delivering the groups of instruments and the one or more cash letters from the first location to a second location..."** [Claim 1]

This is a "means-plus-function" term. The function is "delivering groups of instruments and one or more cash letters"; the corresponding structure is "air or ground transportation [Fig. 1, 2]." See '868 Patent, at Col. 6:65-68.

8. **"Delivering the groups of instruments and the one or more cash letters from the first location to a second location"** [Claim 1]

This term should be construed as "transporting from the first location to the check payment system via air or ground transportation [Fig. 1, 2]."  See '868 Patent, at Col. 6:65-68.

9.  **"Second location"** [Claim 1] should be construed as "a site for the check payment system that is remote or separate from the first location."  See '759 Patent, at Claim 1; Col. 4:25-35; 6:65-7.

10.  **"A central processing unit and communication link providing a coordination between the payee and the payee's collecting and clearing bank…"** [Claim 1]

This "term" is too long and cumbersome to construe as a single term and any attempt to do so would not only be unnecessary, it would likely introduce complexity and confusion.

"Central processing unit" should be construed as "a conventional programmable computer."

"Communication link" should be construed as "connections for transmitting electronic data."

"Cash letters" should be construed as "a listing of checks and the amounts of the checks drawn on a particular institution or group of institutions in a particular area."  The rest of the phrase is plain meaning.  See '759 Patent, at Fig. 1; Col.2:1-5;  4:15-20; 5:60-67; 6:9-16; 6:22-24, and relevant extrinsic evidence.

11.  **"Settlement of accounts"** [Claim 1] should be construed as "a calculation of aggregate amounts owing and payable in each account."  See '759 Patent, at Col. 3:63-67; 6:59-64, and relevant extrinsic evidence.

12.  **Defendants allege that the "preamble should be construed as limiting."** [Claim 5]

The preamble to Claim 5 is not necessary to give life, meaning, and vitality to the claim, and does not need to be construed.  *See* cases cited above.

13.  **Defendants allege that the "this claim should be construed to require a specific order of performing the steps below."** [Claim 5]

These steps are not required to take place in any particular order, and the specification and claim language does not support such a requirement. This position may be supported by testimony from persons of ordinary skill in the art and/or individuals who manage such persons.

14. **"First location remote from the payee's collecting and clearing bank"** [Claim 5] appears only the preamble and does not need to be construed. Alternatively, if this Court opts to construe this term, it should be construed as "a location separate from the payee's collecting and clearing bank, but connected by a communication link." See '759 at Col.4:4-6; 5:7-9.

15. **"Separate indorsements"** [Claim 5]. "Separate" should be construed as "one on behalf of the payee, and one on behalf of the collecting and clearing bank." "Indorsement" should be construed as "payment instructions and the identity of the indorser applied to an instrument." See '759 Patent, at Abstract; Col. 2:9-12; 3:4-7; 5:13-15, and by relevant extrinsic evidence.

16. **"Sequence coordinated with the timing of a settlement of the collecting and clearing bank's account"** [Claim 5]

This term should be construed as "The recording of the checks as a deposit in the payee's account is coordinated with the timing of the issue of a credit to the bank when a settlement of the accounts represented by the checks is received through the check payment system." See '759 Patent at Claim 5; Col. 8:23-27; 6:59-64.

17. **"Applying to the instruments . . . separate indorsements on behalf of each of the payee and the collecting and clearing bank with respect to each instrument received"** [Claim 5] This term does not need to be construed as a phrase. "Separate indorsement" is defined, above. "Collecting and clearing bank" should be construed as "a bank that deposits

funds in the payee's account based on received cash letter." See '759 Patent, at Col. 1:28-30;

2:17-19. The rest of the phrase is plain meaning.

18. **"Delivering the assembled groups of instruments and the one or more cash letters associated therewith from the first location to a second location"** [Claim 5]

This term should be construed as "transporting from the first location to the check payment

system via air or ground transportation [Fig. 1, 2]." See '868 Patent, at Col.6:65-68.

19. **Defendants allege that the "preamble should be construed as limiting."** [Claim 11]

The preamble to Claim 11 is not necessary to give life, meaning, and vitality to the claim,

and does not need to be construed. *See* cases cited above.

20. **"Financial instruments drawn on different institutions that are received by different payees."** [Claim 11].

This language appears only in the preamble and does not need to be construed.

Alternatively, if this Court opts to construe this phrase, the phrase should be given its plain

meaning. "Financial instruments" should be construed as "a document in writing by which

some financial obligation by one person to pay another is represented, such as a check, paper,

cash items, money orders, share orders, drafts, notes, bonds, coupons." See '868 Patent, at

Col. 1:19-20; 6:28-30, and extrinsic evidence. This construction was agreed to by Defendant

Citibank.

21. **"A means at said first location for applying separate indorsements to the instruments on behalf of each of the one or more banks of first deposit and payees, and the bank of subsequent deposit with respect to each instrument received"** [Claim 11]

This is a "means-plus-function" term. The function is "applying separate indorsements to the

instruments"; the corresponding structure is "a printer or stamping mechanism." See '759

Patent, at Col. 2:9-12; 3:4-7; 6:35-40; Fig. 2. This construction may be supported by

26

testimony from persons of ordinary skill in the art and/or individuals who manage such persons.

22. **"Means for preparing one or more cash letters associated with each assembled group of sorted instruments"** [Claim 11]

This term is a "means-plus-function" term. The function is "preparing one or more cash letters associated with each assembled group of sorted instruments"; the corresponding structure is "a central processing unit operating alone or by an operator [Fig. 1]." See '759 Patent, at Fig. 1; Col. 3:29-35; 3:52-63; 4:12-16; 4:19-21; 5:40-45; 5:63-65; 6:36-44. This construction may be supported by testimony from persons of ordinary skill in the art and/or individuals who manage such persons.

23. **"Reporting to the respective banks and payee information in the cash letters"**

[Claim 11] should be construed as "transmitting information in or about the cash letters to the banks and/or to the payee." See '759 Patent at Claim 11; Col. 8:64—9:1; 6:45-49.

24. **"Transport means for delivering the groups of instruments and the one or more cash letters from the first location to a second location…"** [Claim 11]

This is a "means-plus-function" term. The function is "delivering groups of instruments and one or more cash letters" and the corresponding structure is "air or ground transportation [Fig. 1, 2]." See '759 Patent, at Col. 6:65-68.

25. **"A control unit interconnecting the banks and predetermining the timing and monitoring the transport of the sorted instruments"** [Claim 11]
This term should be construed as "a central processing unit and communication link connecting the banks." See '759 Patent, at Col. 2:24-26; 5:60; 6:53-64. This is not a "means-plus-function" term.

26. **"Coordinate the recordation of the deposit of the funds represented by the instruments in the account with the collecting and clearing bank in a sequence coordinated with the timing of settlement in the check payment system"** [Claim 11]

This term should be construed as "the recording of the checks as a deposit in the payee's account is coordinated with the timing of the issue of a credit to the bank when a settlement of the accounts represented by the checks is received through the check payment system." See '759 Patent at Claim 5, Col. 8:23-27; 6:59-64.

27.  **Defendants allege that the "preamble should be construed as limiting."** [Claim 14]

The preamble to Claim 14 is not necessary to give life, meaning, and vitality to the claim, and does not need to be construed.  *See* cases cited above.

28.  **Defendants allege that the "this claim should be construed to require a specific order of performing the steps below."** [Claim 14]

These steps are not required to take place in any particular order, and the specification and claim language does not support such a requirement.  This position may be supported by testimony from persons of ordinary skill in the art and/or individuals who manage such persons.

29.  **"Delivering the groups of instruments and the one or more cash letters"** [Claim 14] should be construed as "transporting from the first location to the check payment system via air or ground transportation [Fig. 1, 2]."  See '759 Patent, at Col.6:65-68.

**D.  TERMS AND ELEMENTS IN THE '778 PATENT.**

1.  **Defendants allege that the "preamble should be construed as limiting."** [Claim 1]

The preamble to Claim 1 is not necessary to give life, meaning, and vitality to the claim, and does not need to be construed.  *See, e.g., Catalina Mktg. Int'l Inc. v. Coolsavings.com Inc.*, 289 F.3d 801 (Fed. Cir. 2002); *DeGeorge v. Bernier*, 768 F.2d 1318 (Fed. Cir. 1985).

2.  **"Received . . . by a payee at a location convenient to a payee's item capture facility and remote from the payee's depository bank"** [Claim 1]

This term appears only in the preamble and does not need to be construed.

3.  **"Payee's item capture facility"** [Claim 1] appears only in the preamble and does not need to be construed.  Alternatively, if this Court opts to construe this phrase, it should be construed as a "site where remittance processing or deposit processing functions of the payee occur."  See '778 Patent, at Col. 7:5-15 (See Exh. D).

4.  **"Payee's depository bank"** [Claim 1] should be construed as "the bank of first deposit where payee has an account, and where the physical instruments would otherwise be delivered."  See '778 Patent, at Col. 9:10-15; 6:24-37.

5.  **"At a location"** [Claim 1] appears only in the preamble and does not need to be construed.  The phrases "at the location" and "said location" should be accorded their plain meaning.

6.  **"Scanner"** [Claim 1] should be construed as "an electronic reader that reads at least MICR data."  See '778 Patent, at 7:40-47.

7.  **"Means for associating said financial information with the payee's records of accounts based upon information derived from the payment stub accompanying the instrument for further processing by the payee"** [Claim 1]

This is a "means-plus-function" term.  The function is "associating said financial information…by the payee"; the corresponding structure is "the accounting system and personnel [Fig. 2, 5]."  See '778 Patent, at Col. 1:28-41; Fig. 1; Col. 7:22-24.  This position may be supported by testimony from persons of ordinary skill in the art and/or individuals who manage such persons.

8.  **"Imager"** [Claim 1] should be construed as "a device for creating an electronic representation of an instrument."  See '778 Patent, at Fig. 2; Col. 8:10-27; 8:59-67. This position may be supported by testimony from persons of ordinary skill in the art and/or individuals who manage such persons.

29

9. **"Imager for creating a second record translatable into a visually perceptible image of each of said financial instruments"** [Claim 1]

This term should be construed as "a device that creates an electronic representation of an instrument." See '778 Patent at Col. 8:10-27; 8:59-67. This position may be supported by testimony from persons of ordinary skill in the art and/or individuals who manage such persons.

10. **"Means for adding to the record of each instrument an indorsement indicia on behalf of each of payee and the bank"** [Claim 2]

This is a "means-plus-function" term. The function is "adding to the record of each instrument an indorsement indicia"; the corresponding structure is "a sorter." See '778 Patent, at Col. 11:36-41; 5:13-21; Fig. 2.

11. **Defendants allege that the "preamble should be construed as limiting."** [Claim 5]

The preamble to Claim 5 is not necessary to give life, meaning, and vitality to the claim, and does not need to be construed. *See* cases cited above.

12. **"Means for associating said information with the payee's records of accounts corresponding to the payment form"** [Claim 5]

This is a "means-plus-function" term. The function is "associating said financial information with payees' record of accounts corresponding to the payment form"; the corresponding structure is "the accounting system and personnel [Fig. 2, 5]." See '778 Patent, at Col. 1:28-41; Fig. 1; Col. 7:22-24. This position may be supported by testimony from persons of ordinary skill in the art and/or individuals who manage such persons.

13. **"Means at said facility for applying to each of said instruments a separate indorsement on behalf of each of said payee and said depository bank"** [Claim 5]

This term is a "means-plus-function" term. The function is "applying to each of said instruments a separate indorsement"; the corresponding structure is "the mechanical sorter."

See '778 Patent at Claim 2; Col. 12:52-57. This position may be supported by testimony from persons of ordinary skill in the art and/or individuals who manage such persons.

14. **"Applying to each of said instruments a separate indorsement on behalf of each of said payee and said depository bank"** [Claim 5]

This term does not need to be construed as a phrase. "Separate" should be construed as "one on behalf of the payee, and one on behalf of the collecting and clearing bank"; "indorsement" should be construed as "payment instructions and the identity of the indorser applied to an instrument." "Depository bank" should be construed as "the bank of first deposit where the payee has an account." See '778 Patent, at Col. 6:24-37; 9:10-15; 11:36-44; 11:38-44; 12:52-57. The rest of the phrase is plain meaning and attempting to construe it as a phrase, especially as construed by Defendants, will only confuse the claim language and impermissibly import limitations from the specification.

15. **"Separate indorsement on behalf of each of said payee and said depository bank"**

[Claim 5] does not need to be construed as a phrase. "Separate," "indorsement," and "depository bank" should be construed as in term 14, above. See '778 Patent, at Col. 6:24-37; 9:10-15; 11:36-44; 11:38-44; 12:52-57. The other words are used according to their plain meanings.

16. **"Means at said facility for preparing at least one cash letter for association with each bundled group of instruments"** [Claim 5]

This is a "means-plus-function" term. The function is "preparing at least one cash letter at said facility"; the corresponding structure is a "sorter at the depository bank." See '778 Patent, at Col. 9:52-55; 11:22-24; 11:44-45; 12:55-58. This position may be supported by testimony from persons of ordinary skill in the art and/or individuals who manage such persons.

31

17. **"Means for assembling information scanned from the instruments into a transmittable record with respect to each instrument in a correspondence with the bundled groups and cash letters for communication to the bank"** [Claim 5]

This is a "means-plus-function" term. The function is "assembling information scanned from the instruments into a transmittable record"; the corresponding structure is "a sorter or processor." See '778 Patent, at Col. 7:38-61. This position may be supported by testimony from persons of ordinary skill in the art and/or individuals who manage such persons.

18. **"Transport means for delivering said bundled groups of sorted instruments with associated cash letters from the facility into said payment system"** [Claim 5]

This is a "means-plus-function" term. The function is "delivering said bundled groups of sorted instruments"; the corresponding structure is "air or ground transportation." See '778 Patent, at Col. 5:30-35.

19. **"Coordinating the delivery of the instruments and cash letters into the payment system"** [Claim 5]

This term should be construed as "controlling the process of the introduction of instruments into the payment system." See '778 Patent, at Claim 5(i); Col. 10:19-27; 13:66—14:16.

20. **"An item capture facility at a first location convenient to the payee for receiving said check and payment associated with the check"** [Claim 11]

This term should be construed as a "site where remittance processing or deposit processing functions of the payee occur." See '778 Patent, at Col. 7:5-15.

## V.    CONCLUSION

The constructions offered by DTC are supported by and consistent with what a person skilled in the art would understand the term to mean in view of the surrounding claim language, specification and file histories.

Respectfully submitted,



_____

**ROD COOPER**
State Bar No. 90001628
**EDWARD HOHN,**
Attorney-in-charge
State Bar No. 09813240
**EDWARD CHIN**
State Bar No. 50511688
**NICOLE REED**
State Bar No. 24041759
**NIX PATTERSON & ROACH, L.L.P.**
5215 N. O'Connor Blvd., Suite1900
Irving, Texas 75039
972.831.1188; 972.444.0716 fax
nicolereed@nixlawfirm.com
rodcooper@nixlawfirm.com
edhohn@nixlawfirm.com
edchin@nixlawfirm.com

**C. CARY PATTERSON**
State Bar No. 15587000
**BRADY PADDOCK**
State Bar No. 00791394
**ANTHONY BRUSTER**
State Bar No. 24036280
**R. BENJAMIN KING**
State Bar No. 24048592
**NIX PATTERSON & ROACH L.L.P.**
2900 St. Michael Drive, Suite 500
Texarkana, Texas 75503
903.223.3999; 903.223.8520 fax
ccp@nixlawfirm.com
bpaddock@nixlawfirm.com
akbruster@nixlawfirm.com
benking@nixlawfirm.com

33

**JOE KENDALL**
State Bar No. 11260700
**KARL RUPP**
State Bar No. 24035243
**PROVOST * UMPHREY, L.L.P.**
3232 McKinney Avenue, Suite 700
Dallas, Texas  75204
214.744.3000; 214.744.3015 fax
jkendall@provostumphrey.com
krupp@provostumphrey.com

**ERIC M. ALBRITTON**
State Bar No. 00790215
**ALBRITTON LAW FIRM**
P.O. Box 2649
Longview, Texas  75606
903.757.8449; 903.758.7397 fax
ema@emafirm.com

**T. JOHN WARD, JR.**
State Bar No. 00794818
**LAW OFFICE OF T. JOHN WARD, JR.**
P.O. Box 1231
Longview, Texas  75601
903.757.6400; 903.757.2323 fax
jw@jwfirm.com

***ATTORNEYS FOR PLAINTIFF***
***DATATREASURY CORPORATION***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served electronically upon all the following on the 29th day of May, 2007.

Bank of America - Listserve (BankofAmericaF&R@fr.com)
BB&T ListServe (BB&T_DataTreasury@kilpatrickstockton.com)
Citizens Financial (citizensfinancial@standleyLLP.com)
City National Bank - Listserve (citynationalbank@dmtechlaw.com)
Comerica Bank 007 Listserve (Comerica_DataTreasury@kilpatrickstockton.com)
Compass/First Horizon/TN Bank - Listserve (comfhft@andrewskurth.com)
Cullen/Frost Bank - Listserve (frostbank@dmtechlaw.com)
EDS - Listserve (EDS_DataTreasury@mckoolsmith.com)
UBS – Listserve (ubsamericas@velaw.com)

34

HSBC North America Holdings, Inc./HSBC Bank USA  Listserve  (hsbccounsel@blhc-law.com)
BancorpSouth Listserve (bxs@hughesluce.com)
Bank of Tokyo Listserve (BankofTokyo_DataTreasury@sidley.com)
BofNY Listserve (BofNYLitTeam@pillsburylaw.com)
The Clearing House/SVPCo Listserve (TCH_DT@sullcrom.com)
Deutsche Bank Listserve (DeutscheBank_DataTreasury@sidley.com)
First Citizens Listserve (firstcitizens@bakerbotts.com)
First Data Listserve (FirstData_DataTreasury@sidley.com)
Key Bank Listserve (KeyCorp_DataTreasury@mckoolsmith.com)
LaSalle Bank Listserve (LaSalleBank_DataTreasury@sidley.com)
National City Bank Listserve (foley-dtc@foley.com)
Remitco Listserve (Remitco_DataTreasury@sidley.com)
Telecheck Listserve (Telecheck_DataTreasury@sidley.com)
Union BofCA Listserve (ubofclitteam@pillsburylaw.com)
Viewpointe Listserve (Viewpointe_dtc@skadden.com)
Zion First National Bank Listserve (foley-dtc@foley.com)
Harris Bancorp. - Listserve (Harris_DataTreasury@mckoolsmith.com)
M&T 007 Listserve (M&T_DataTreasury@kilpatrickstockton.com)
PNC Bank - Listserve (PNC_DataTreasury@mckoolsmith.com)
Suntrust - Listserve (SunTrust_DataTreasury@mckoolsmith.com)
U.S. Bancorp – Listserve (foley-dtc@foley.com)
Wachovia 007 Listserve (Wachovia_DataTreasury@kilpatrickstockton.com)
Wells Fargo - Listserve (*DalWellsFargo_DTC@BakerNet.com)


_____

**NICOLE REED**