IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DATATREASURY CORPORATION | § | |
| *PLAINTIFF* | § | |
| vs. | § | No. 2:06cv72 |
| | § | |
| WELLS FARGO & COMPANY, *et al* | § | JURY TRIAL DEMANDED |
| *DEFENDANTS* | § | |

**PLAINTIFF DATATREASURY CORPORATION'S REPLY TO DEFENDANTS' RESPONSE TO ITS MOTION FOR CLARIFICATION**

## I.     INTRODUCTION

In their Response Defendants ask the Court to require DataTreasury to include in its limited number of asserted claims some number of those patent claims *that are not even currently at issue in this case*.  Defendants totally ignore the fact that they have stated and committed to the Court that by entering the Stay the Court would "*eliminate* 93 of the 224 total potential patent claims from this case" and that DataTreasury would not suffer any prejudice as a result of the Stay.  However, when faced with their own irrefutable statements and commitment to this effect, Defendants choose to ignore the arguments set forth by DataTreasury entirely, and instead take up the sole defense of accusing DataTreasury of "wag[ing] war with a straw man."[1] Defendants do not refute the fact that the claims of the Ballard Patents have been eliminated from this case (at least for so long as the Stay is in place), and they do not attempt to reconcile their past representations to this Court with their current position in that regard.  The Court's clarification is needed, and the Motion should be granted.

## II.     ARGUMENT

Defendants' claims that the Court's purpose of issue simplification and burden reduction

---

[1] Unfortunately for Defendants, the only "war" that exists is the internal conflict between Defendants' own prior representations to this Court and the position that those Defendants now seek to defend with regard to the Court's claim limitations.

would be circumvented by DataTreasury's position rings hollow when compared with DataTreasury's arguments (which went wholly unanswered by Defendants). Defendants fail to squarely address DataTreasury's main arguments, and fail to refute the central issue in resolving this question—the fact that the claims of the Ballard Patents are, by Defendants' own admission, not a part of this case. If that is true, then Plaintiff should not be required to pick any certain number of those claims to assert at this time—but it should have the right to do so later.

### A. DEFENDANTS' MISCHARACTERIZE DATATREASURY'S MOTION

Defendants twist DataTreasury's arguments into something they are not.[2] DataTreasury has not maintained, as Defendants suggest, that Defendants are requiring it to choose specific claims from the Ballard Patents in limiting its number of asserted claims. This distortion of DataTreasury's arguments and reasoning is simply a result of Defendants' futile effort to counter DataTreasury's logical and sensible rationale regarding its obligations to limit its asserted claims. Defendants' responses to DataTreasury's position warrant clarification in light of this distortion.

Whether DataTreasury was required to choose specific claims or to "reserve some number" of claims from the Ballard Patents, the same arguments previously presented by DataTreasury still hold true to support DataTreasury's position.[3] Defendants' argument presents a distinction without a difference. Either way, DataTreasury is still required to make a critical choice in this litigation regarding the claims it will assert in the dark without the knowledge of what those claims encompass. To be fair to itself, the opposing parties, and the Court,

---

[2] In addition to the arguments presented in the body of this Reply, Defendants disingenuously attempt to classify DataTreasury's Motion for Clarification as a "motion for modification." However, DataTreasury's motion is exactly what it proclaims to be. DataTreasury does not seek to modify any of the language or terms of the Court's DCO. Rather, DataTreasury simply seeks guidance from the Court as to what effect the Stay entered in this case has on certain steps of the Court's DCO. If either party is seeking a modification of an order, it would be Defendants. In essence, Defendants are seeking a modification of the Stay granted in this case by asking the Court to require DataTreasury to reserve some number of claims from the Ballard Patents in its limited number of asserted claims even though those claims have been at least temporarily eliminated from this case.

[3] DataTreasury fully incorporates the arguments from its original filing in this Reply without rehashing them once more.

DataTreasury must know what claims exist and how they read before it is obligated to even choose how many of those claims it will assert.[4]  Defendants' assertion that it is not requiring DataTreasury to choose specific claims, but rather only a random number of claims from the Ballard Patents without such knowledge is nonsensical and highly prejudicial.[5]  Whether DataTreasury is required to choose from the Ballard Patents only a random number of claims to assert or specific claims, the same four scenarios expounded upon in DataTreasury's Motion for Clarification and the prejudicial effects thereof still exist.  DataTreasury should not be required to select specific claims from the Ballard Patents, or any random number of claims from those patents, until after those patents are out of reexam and the stay entered in this case is lifted.

   **B. BURDEN-REDUCTION AND ISSUE-SIMPLIFICATION PURPOSES OF THE CLAIM LIMITATION PROVISION HAVE ALREADY BEEN MET**

   Defendants argue that not requiring DataTreasury to account for Ballard Patent claims in limiting its claims to eighteen would run afoul of the Court's intentions to reduce the burden on the parties and simplify the issues in this matter.  This is not the case however, and Defendants argument in this regard is simply a red herring.  By requiring DataTreasury to previously limit its claims to fifty, and further limit its asserted claims to eighteen, the burden on the parties and the issues in the case have already been simplified.[6]  Burden reduction and issue simplification are

---

[4] Were DataTreasury required to select some random number of claims that it hasn't even seen or read it would be placed in a tough situation with regard to its obligations to the Court and the opposing parties under Rule 11.  In any other situation, Defendants would be crying "foul" at the mere suggestion that DataTreasury be afforded the opportunity to reserve the right to assert claims against them that DataTreasury has not even read.

[5] The irrational nature of Defendants' position is clearly exposed in Defendants' own suggestion that by only requiring DataTreasury to pick "some number of its eighteen-claim allotment for future selection from among [the Ballard Patents]" there is no need to know how many Ballard Patent claims will emerge from reexamination.  *See* DEFENDANTS' RESPONSE, p. 2.  Assuming that DataTreasury reserved ten claims now with regard to the Ballard Patents (as presented hypothetically by Defendants in their Response at p. 2), and further assuming, *arguendo*, that only one claim from each of the Ballard Patents survives reexamination, then DataTreasury would have given up a total of eight claims that it could have otherwise pursued with regard to the Huntington Patents.  In that case, it would certainly be critical, despite Defendants' suggestion to the contrary, to know how many claims of the Ballard Patents survive reexamination.  This is but one example of how Defendants' position would serve to prejudice DataTreasury despite its past representations that DataTreasury would not be prejudiced by the Stay.

[6] There are a total of 97 claims in the '007 and '868 Patents combined, and by virtue of DataTreasury's compliance with the Court's DCO, the number of asserted claims in those patents has been reduced to eighteen.

certainly worthy goals of the Court in managing its docket, but neither should be done at the expense of a party's rights.[7] The increased prejudice to DataTreasury outweighs any efficiencies that may be gained by further burden reduction on the Defendants.[8] This is also contrary to Defendants' own assurances that DataTreasury would not be unduly prejudiced by the Stay.

### C. DataTreasury's Arguments in Support of its Position are Not Refuted

Defendants fail to square their prior assertion that the stay would result in the elimination of the Ballard Patent claims from this case with their current position that the Ballard Patents should be considered a part of the case for purposes of claim limitations. Defendants have proclaimed that by granting the Stay they requested, the Court would "eliminate 93 of the 224 total potential patent claims from this case…." Until such time as the stay is lifted, the claims of the Ballard Patents have been eliminated from this case and the only "patents-in-suit" are the Huntington Patents. Defendants do not refute this point, and by their silence they concede—as they must due to the nature of the Stay and their very own admissions—that the 93 claims from the Ballard Patents have been temporarily eliminated from this case. Therefore, Defendants' insistence that, despite the Stay, the Ballard Patents should be a part of the case as far as DataTreasury's obligations are concerned are unfounded and unsupportable.

Finally, Defendants provide two reasons why DataTreasury would not be prejudiced by their position: (1) there is no need to know the exact number of claims that emerge from reexamination or which claims will be the most promising, and (2) DataTreasury has already limited the claims it will assert with regard to the '007 and '868 as to other Defendants.

---

[7] Admittedly, requiring DataTreasury to reserve some number of claims for the Ballard Patents (though these two patents are no longer in the case) may further reduce the burden on the parties and may further simplify the issues, but it would do so at the expense of and to the prejudice of DataTreasury and its intellectual property rights.

[8] Another red herring presented by Defendants is that the Court may eventually limit the total number of asserted claims to ten. However, the Court has not made a final determination to that end. The Court is not obligated to limit in any way the number of claims that DataTreasury may assert, but rather chose to exercise its own discretion in making that decision. Defendants' reliance on this fact is simply irrelevant to the current issue before the Court.

However, both of these arguments fall woefully short of contradicting DataTreasury's arguments and examples of prejudice that may result should DataTreasury be required to meet Defendants' untenable demands. First, as stated *supra*, it is important to know the exact number of claims that come out of reexamination. How can DataTreasury know how many claims it should reserve for the Ballard Patents, or even know if claims from those patents should be asserted, if it does not even know how many claims there will be to potentially assert or what those claims encompass? This is the simple problem that prompted DataTreasury's Motion for Clarification, and only the Court's clarification on this issue will resolve this dispute. Additionally, Defendants' reference to the fact that DataTreasury has further limited its claims as to the '007 and '868 Patents against other defendants is yet another red herring presented to the Court by Defendants. In those instances, other Huntington Patents in addition to the '007 and '868 are asserted against those specific Defendants.[9]

### III.    CONCLUSION

Simply put, the Ballard Patents are not currently part of this case. It does not matter whether Defendants would require DataTreasury to choose some random number of unidentified Ballard Patent claims or specific claims to assert. The Defendants asked for and received a Stay as to the Ballard Patents and in the course of doing so represented to the Court that no prejudice would result to DataTreasury. Now, Defendants attempt to renege on those very same promises and commitments by asking that the Court apply the affects of the Stay to them, but not to DataTreasury. Such an outcome is unjust and highly prejudicial to DataTreasury. For these reasons and those stated previously, DataTreasury requests that the Court clarify its DCO.

---

[9] DataTreasury's limitation of claims as to those defendants is irrelevant to the limitation of claims as to the Responding Defendants. Defendants' reference is merely a distraction from the current issue and is an apples to oranges comparison.

Respectfully submitted,

**/S/ RICHARD BENJAMIN KING**_____
**R. BENJAMIN KING**
State Bar No. 24048592
**ANTHONY BRUSTER**
State Bar No. 24036280
**C. CARY PATTERSON**
State Bar No. 15587000
**BRADY PADDOCK**
State Bar No. 00791394
**NIX PATTERSON & ROACH L.L.P.**
2900 St. Michael Drive, Suite 500
Texarkana, Texas 75503
903.223.3999 (telephone)
903.223.8520 (facsimile)
akbruster@nixlawfirm.com
bpaddock@nixlawfirm.com
benking@nixlawfirm.com


**EDWARD CHIN**
State Bar No. 50511688
**ROD COOPER**
State Bar No. 90001628
**EDWARD L. VON HOHN**, Attorney in Charge
State Bar No. 09813240
**NIX  PATTERSON & ROACH, L.L.P.**
Williams Square
5215 North O'Connor Blvd., Suite 1900
Irving, Texas  75039
972.831.1188 (telephone)
972.444.0716 (facsimile)
edchin@nixlawfirm.com
rcooper@cooperiplaw.com
edhohn@nixlawfirm.com

**JOE KENDALL**
State Bar No. 11260700
**KARL RUPP**
State Bar No. 24035243
**PROVOST * UMPHREY, L.L.P.**
3232 McKinney Avenue, Ste. 700

Dallas, Texas 75204
214.744.3000 (telephone)
214.744.3015 (facsimile)
jkendall@provostumphrey.com
krupp@provostumphrey.com

**ERIC M. ALBRITTON**
State Bar No. 00790215
**ALBRITTON LAW FIRM**
P.O. Box 2649
Longview, Texas 75606
903.757.8449 (telephone)
903.758.7397 (facsimile)
ema@emafirm.com

**T. JOHN WARD, JR.**
State Bar No. 00794818
**LAW OFFICE OF T. JOHN WARD, JR.**
P.O. Box 1231
Longview, Texas 75601
903.757.6400 (telephone)
903.757.2323 (facsimile)
jw@jwfirm.com

**ATTORNEYS FOR PLAINTIFF
DATATREASURY CORPORATION**


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on the 30th day of May, 2007 via electronic transmission.


Bank of America - Listserve (BankofAmericaF&R@fr.com)
BB&T 007 ListServe (BB&T_DataTreasury@kilpatrickstockton.com)
Citizens Financial (citizensfinancial@standleyLLP.com)
City National Bank - Listserve (citynationalbank@dmtechlaw.com)
Comerica Bank 007 Listserve (Comerica_DataTreasury@kilpatrickstockton.com)
Compass/First Horizon/TN Bank - Listserve (comfhft@andrewskurth.com)
Cullen/Frost Bank - Listserve (frostbank@dmtechlaw.com)
EDS - Listserve (EDS_DataTreasury@mckoolsmith.com)
UBS – Listserve (ubsamericas@velaw.com)
HSBC North America Holdings, Inc./HSBC Bank USA  Listserve  (hsbccounsel@blhc-law.com)
BancorpSouth Listserve (bxs@hughesluce.com)

Bank of Tokyo Listserve (BankofTokyo_DataTreasury@sidley.com)
BofNY Listserve (BofNYLitTeam@pillsburylaw.com)
The Clearing House/SVPCo Listserve (TCH_DT@sullcrom.com)
Deutsche Bank Listserve (DeutscheBank_DataTreasury@sidley.com)
First Citizens Listserve (firstcitizens@bakerbotts.com)
First Data Listserve (FirstData_DataTreasury@sidley.com)
Key Bank Listserve (KeyCorp_DataTreasury@mckoolsmith.com)
LaSalle Bank Listserve (LaSalleBank_DataTreasury@sidley.com)
National City Bank Listserve (foley-dtc@foley.com)
Remitco Listserve (Remitco_DataTreasury@sidley.com)
Telecheck Listserve (Telecheck_DataTreasury@sidley.com)
Union BofCA Listserve (ubofclitteam@pillsburylaw.com)
Viewpointe Listserve (Viewpointe_dtc@skadden.com)
Zion First National Bank Listserve (foley-dtc@foley.com)
Harris Bancorp. - Listserve (Harris_DataTreasury@mckoolsmith.com)
M&T 007 Listserve (M&T_DataTreasury@kilpatrickstockton.com)
PNC Bank - Listserve (PNC_DataTreasury@mckoolsmith.com)
Suntrust - Listserve (SunTrust_DataTreasury@mckoolsmith.com)
U.S. Bancorp – Listserve (foley-dtc@foley.com)
Wachovia 007 Listserve (Wachovia_DataTreasury@kilpatrickstockton.com)
Wells Fargo - Listserve (*DalWellsFargo_DTC@BakerNet.com)


/S/ **RICHARD BENJAMIN KING**
**NIX, PATTERSON & ROACH, LLP.**