# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| DATATREASURY CORP., | § § | |
| Plaintiff, | § § | No. 2:06-CV-72 |
| v. | § § | Judge David Folsom |
| WELLS FARGO & CO., et al. | § § | |
| Defendants. | § § | |

## RESPONDING DEFENDANTS' SUR-REPLY IN OPPOSITION
## TO PLAINTIFF'S MOTION FOR CLARIFICATION
## REGARDING LIMITATIONS OF ASSERTED CLAIMS

**I.      INTRODUCTION**

According to DataTreasury, the Court should disregard the burden-reduction and issue-simplification purposes of its stay and claim-limitation Orders; it should disregard DataTreasury's own analysis regarding the reexaminations' likely outcomes and corresponding impacts on this litigation; and it should disregard the relevant Federal Circuit caselaw approving enforcement of as few as one-claim-per-patent limitation Orders. [*See* Dkt. No. 703 ("Reply")]. DataTreasury would instead have the Court decide this Motion on the basis of a single word—"eliminate"—used in prior party briefing, as well as a highly doubtful claim of prejudice if DataTreasury is forced to proceed against Responding Defendants[1] on less than eighteen claims drawn from two Huntington patents. [*See* Reply at 3-5].

Contrary to DataTreasury's assumption, the fact that the Ballard-patent claims are, to use DataTreasury's phrase, "temporarily eliminated from the case," [*See id*. at 4], only explains *why* there is a dispute concerning the Court's claim-limitation Order—it does not resolve the dispute. The relevant caselaw, DataTreasury's actions with respect to other co-Defendants in this case, and DataTreasury's worst-case hypothetical scenario, on the other hand, all strongly suggest that DataTreasury would *not* be prejudiced by Responding Defendants' proposal that DataTreasury be required to reserve some number of its eighteen-claim allotment for future selection from the reexamined Ballard patents. In addition, DataTreasury has at least implicitly conceded that this proposal would further the burden-reduction and issue-simplification purposes of the Court's Orders. [*See id.* at 4 n.7]. Responding Defendants therefore respectfully request that the Court adopt their approach.

---

[1] "Responding Defendants" include KeyBank National Association and KeyCorp, PNC Bank and The PNC Financial Services Group, Inc., Citizens Financial Group, Inc., City National Corporation, City National Bank, Deutsche Bank Trust Company Americas, LaSalle Bank Corporation, LaSalle Bank NA, and Bank of Tokyo-Mitsubishi UFJ, Ltd.

## II. ARGUMENT

### A. THE FACT THAT THE BALLARD-PATENT CLAIMS ARE—TO USE DATATREASURY'S PHRASE—"TEMPORARILY ELIMINATED FROM THIS CASE" EXPLAINS WHY THERE IS A DISPUTE, BUT DOES NOT RESOLVE IT.

DataTreasury complains that Responding Defendants did not address its "argument" that some Defendants once noted in a brief to the Court that granting a stay would "eliminate 93 of the 224 total potential patent claims from this case." [Reply at 4]. Thus, according to DataTreasury, "by their silence they concede . . . that the 93 claims from the Ballard Patents have been temporarily eliminated from this case." [*Id.*]. Accepting DataTreasury's characterization of the situation as accurate, however, only explains *why* there is a dispute—not how to resolve the dispute.

All parties agree that litigation of the Ballard patents is currently in suspension. And for the purposes of this Motion, all parties are operating on the assumption that this suspension is temporary—pending reexamination of the patents. [*See* Reply at 1]. Thus, while the Ballard-patent claims are "temporarily eliminated" from this case's ongoing discovery and disclosure obligations, the temporary nature of the stay means that, even in reexamination, the Ballard patents continue to cast a shadow over this litigation.[2] The question before the Court is how best to account for this "temporary" elimination.

As explained in Responding Defendants' Opposition, [Dkt. No. 699 ("Response")], DataTreasury proposes that the Court permit it to litigate—throughout the *Markman* process—a full complement of eighteen claims drawn from the '007 and '868 patents until thirty days after the stay is lifted, at which time DataTreasury will abandon some number of those Huntington-

---

[2] Indeed, Responding Defendants' pre-stay stipulation assures that the reexamination process, as well as its final results, will be relevant to and have an impact on the ultimate trial of this case. [*See* Response at 5].

2

patent claims in favor of Ballard-patent claims.[3]  Taking into account the ten claims drawn from the remaining Huntington patents asserted against the Bank of America and Wachovia Litigant Groups, this proposal would mean proceeding to the *Markman* hearing on *twenty-eight* total claims drawn from four Huntington patents.  [*See* Response at 3].  And given DataTreasury's own analysis of the likely results of the Ballard-patent reexaminations, this proposal can be expected to result in the unnecessary expenditure of substantial resources litigating and construing Huntington-patent claims that will be abandoned shortly after the stay—claims that, but for the stay, would have been abandoned two months ago.  [*See id.* at 7-8].

Responding Defendants propose, on the other hand, that DataTreasury take the temporary nature of the stay into account, and reserve whatever number of claims it wishes for future selection from the reexamined Ballard patents.  [*See id.* at 8-9].  DataTreasury concedes that this proposal "may further reduce the burden on the parties and may further simplify the issues" for trial.  [Reply at 4 n.7].  The parties thus appear to agree that Responding Defendants' proposal harmonizes with the purposes supporting the Court's stay and claim-limitation Orders.  DataTreasury nevertheless argues that, notwithstanding its expected salutary effects, the Court should reject Responding Defendants' proposal because it would cause DataTreasury substantial prejudice.  As demonstrated in the Response and below, however, these claims of prejudice are unfounded.  [*See* Response at 2, 8-9].

---

[3] DataTreasury suggests that it is "disingenuous" to characterize its Motion as seeking a modification of the Docket Control Order ("DCO"). [Reply at 2 n.2].  The Motion, however, unambiguously "requests that [DataTreasury] be allowed 30 days from the lifting of the Court ordered stay, to amend its list of asserted claims." [Motion at 15]. Because the DCO does not currently provide for any subsequent amendment to the eighteen-claim selection DataTreasury made in April, [*see* Dkt. No. 328], DataTreasury's request is quite fairly—and most accurately— characterized as a request to modify the DCO.

**B.    ADOPTING RESPONDING DEFENDANTS' PROPOSAL WOULD CAUSE NO PREJUDICE TO DATATREASURY.**

Notwithstanding DataTreasury's breathless assertions to the contrary, it would not be prejudiced by an Order requiring it to reserve some number of its eighteen-claim allotment for selection from the reexamined Ballard patents. DataTreasury's argument boils down to the proposition that, to avoid prejudice to its intellectual property rights, it must be permitted to proceed against Responding Defendants on all of its eighteen claims drawn from the two Huntington patents—six claims from the '007 patent,[4] and twelve claims from the '868 patent. [*See* Reply at 3 n.5]. Three observations refute this argument.

First, the cases cited in the Court's claim-limitation Order, [*see* Dkt. No. 325], indicate that a plaintiff can potentially be limited to as few as one claim per patent without suffering undue prejudice to its intellectual property rights. *See ReRoof America, Inc. v. United Structures of America, Inc.*, 215 F.3d 1351 (Fed. Cir. Aug. 30, 1999) (unpublished opinion) (noting that plaintiff was not prejudiced by trial court order limiting it to five representative claims); *Kearns v. General Motors Corp.*, No. 93-1535, 1994 U.S. App. LEXIS 19568, at *6-*7 (Fed. Cir. July 26, 1994) (affirming dismissal of patent case where plaintiff refused to obey trial court's order that plaintiff limit himself to one claim per patent on the five patents-in-suit). DataTreasury's current nine-claims-per-patent average leaves substantial room for further reduction under these cases.

Second, DataTreasury has already reduced to eight the number of claims asserted against the Bank of America and Wachovia Litigant Groups under these two patents—one claim from the '007 patent, and seven from the '868 patent. [*See* Response at 3]. DataTreasury asserts that this observation "is merely a distraction" and involves "an apples to oranges comparison."

---

[4] These six claims represent *all* the claims of the '007 patent.

4

[Reply at 5 n.9]. DataTreasury does not dispute, however, that those Defendants stand accused of infringing these same two patents under the same check-exchange systems. [*See* Response at 3]. DataTreasury has thus done nothing to show the comparison invalid; if it can proceed without prejudice on seven claims from the '868 patent against Wachovia, it should have no need to proceed on twelve claims from that patent against Responding Defendants.

Third, consideration of DataTreasury's worst-case hypothetical reveals no prejudice: assuming DataTreasury chooses eight Huntington-patent claims, and reserves ten claims for future selection, and assuming that only two Ballard-patent claims survive reexamination, then DataTreasury will be set for trial on ten claims—the very number that the Court has suggested could be appropriate for trial in this case. [*See* Reply at 3 n.5; Response at 4; Dkt. No. 325].[5]

Therefore, requiring DataTreasury to reserve some number of claims for selection from the Ballard patents should be expected to cause DataTreasury no prejudice to its intellectual property rights.

## III.    CONCLUSION

For the foregoing reasons, the Court should require DataTreasury, within ten days of the Court's Order, to limit the number of claims asserted against Responding Defendants under the '007 and '868 Huntington patents so as to reserve the number of its eighteen allotted claims, if any, that it intends to assert from the reexamined Ballard patents.

---

[5] DataTreasury also suggests that it would be "nonsensical and highly prejudicial" to require it to reserve some number of claims for the Ballard patents before it knows exactly what those claims will look like. [Reply at 3]. The hypothetical demonstrates otherwise: given that—no matter what happens in reexamination—it will not likely be reasonable to proceed to trial on more than ten claims total, DataTreasury could not be prejudiced if it reserved, for example, ten claims for future selection from the reexamined Ballard patents. That would leave it with eight claims for the '007 and '868 patents—a number its Wachovia contentions show to be sufficient, and ten claims for the reexamined Ballard patents—likely the maximum that reasonably could be tried regardless of the circumstances.

5

DATED:  June 6, 2007 Respectfully submitted,

/s/ Sam Baxter
Sam Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Theodore Stevenson, III
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
McKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone:  (214) 978-4000
Telecopy:    (214) 978-4044

Peter J. Ayers
Texas State Bar No. 24009882
payers@mckoolsmith.com
Geoffrey L. Smith
Texas State Bar No. 24041939
gsmith@mckoolsmith.com
McKOOL SMITH, P.C.
300 W. 6th Street, Suite 1700
Austin, Texas 78701
Telephone:  (512) 692-8700
Telecopy:    (512) 692-8744

ATTORNEYS FOR DEFENDANTS
KEYBANK NATIONAL ASSOCIATION;
KEYCORP; PNC BANK; THE PNC
FINANCIAL SERVICES GROUP, INC.

Edward G. Poplawski (Pro Hac Vice)
EPoplaws@Sidley.com
Jeffrey A. Finn (Pro Hac Vice)
JFinn@Sidley.com
Carissa A. Tener (Pro Hac Vice)
CTener@Sidley.com
SIDLEY AUSTIN L.L.P.
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone:  (213) 896-6000
Telecopy:    (213) 896-6600

Lance Lee
WLanceLee@aol.com
Texas Bar No. 240004762
YOUNG, PICKETT & LEE, L.L.P.
4122 Texas Boulevard
P.O. Box 1897
Texarkana, Texas 75504
Telephone:  (903) 794-1303
Telecopy:   (903) 792-5098

ATTORNEYS FOR DEFENDANTS
LASALLE BANK CORPORATION;
LASALLE BANK NA; DEUTSCHE
BANK TRUST COMPANY AMERICAS;
BANK OF TOKYO-MITSUBISHI UFJ,
LTD.


Edward G. Poplawski (Pro Hac Vice)
EPoplaws@Sidley.com
Jeffrey A. Finn (Pro Hac Vice)
JFinn@Sidley.com
Carissa A. Tener (Pro Hac Vice)
CTener@Sidley.com
SIDLEY AUSTIN L.L.P.
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone:  (213) 896-6000
Telecopy:   (213) 896-6600

Kurt M. Sauer
DAFFER MCDANIEL
The Chase Building
700 Lavaca, Suite 720
Austin, Texas 78701

Sidley Calvin Capshaw, III
Texas Bar No. 03783900
Andrew W. Spangler
Texas Bar No. 20401960
Elizabeth L. DeRieux
Texas Bar No. 05770585
BROWN MCCARROLL
1127 Judson Road, Suite 220
Longview, Texas 75601
P.O. Box 3999

Longview, Texas 75606-3999
Telephone: (903) 236-9800
Telecopy: (903) 236-8787

ATTORNEYS FOR DEFENDANTS
CITY NATIONAL CORPORATION; CITY NATIONAL BANK


Jeffrey Standley
jstandley@standleyllp.com
STANDLEY LAW GROUP LLP
495 Metro Place South, Suite 210
Dublin, Ohio 43017
Telephone: (614) 792-5555
Telecopy: (614) 792-5536

ATTORNEYS FOR DEFENDANT
CITIZENS FINANCIAL GROUP, INC.

8

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a), contemporaneously served upon all counsel who have consented to electronic service, and served by first class mail on other counsel on this the 6th day of June, 2007.

/s/ Sam Baxter_____
Sam Baxter