IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
DATATREASURY CORP.,                           :
                                              :
                        Plaintiff,            :
            v.                                :   Civil Action No. 2-06-CV-72(DF)
                                              :
WELLS FARGO and COMPANY, et al.,              :
                                              :
                        Defendants.           :
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

## REPLY MEMORANDUM OF THE CLEARING HOUSE PAYMENTS COMPANY L.L.C. IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF THE '007 PATENT

Dockets.Justia.com

# <u>TABLE OF CONTENTS</u>

Page

Preliminary Statement................................................................................................1

Background .................................................................................................................2

      A.     The Clearing House's Check Services Business .....................................3

      B.     Current Litigation Status.........................................................................3

Argument ....................................................................................................................4

I.     Claim Construction Is A Matter of Law For The Court. ......................................5

II.    There Is No Genuine Issue Of Material Fact Precluding Summary Judgment....................9

      A.     <u>Material Facts For Purposes of the Motion Are Facts Regarding the National Check Exchange</u>........................................................................9

      B.     <u>DataTreasury Has Presented No Genuine Issue of Material Fact</u>.........................11

      C.     <u>DataTreasury Has Not Requested and Does Not Need Additional Discovery on the National Check Exchange</u> .........................................15

Conclusion ................................................................................................................17

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Altech Controls Corp.* v. *E.I.L. Instruments, Inc.*,
No. CIV. A. H-92-3189, 1997 WL 579179 (S.D. Tex. June 6, 1997).....................................5

*Amtech Corp.* v. *AT/COMM Inc.*,
Civ. A. No. 3:92-CV2053D, 1994 WL 529506 (N.D. Tex. Sept. 28, 1994) ...........................9

*Anderson* v. *Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................................................................................................... 9, 12, 15

*BAE Sys. Elecs. Ltd.* v. *Rockwell Collins, Inc.*,
No. Civ.A. 3:03CV0694-K, 2004 WL 1809811 (N.D. Tex. Aug. 12, 2004) ...........................6

*Baker* v. *Am. Airlines, Inc.*,
430 F.3d 750 (5th Cir. 2005) .................................................................................................16

*Bean* v. *Tulia Indep. Sch. Dist.*,
No. Civ.A.2:01-CV-0394-J, 2003 WL 22087571 (N.D. Tex. Jan. 8, 2003...........................10

*Becton Dickinson & Co.* v. *C.R. Bard, Inc.*,
922 F.2d 792 (Fed. Cir. 1990)..................................................................................................6

*Berger* v. *Rissignol Ski Co.*,
No. C 05-02523 CRB, 2006 WL 1095914 (N.D. Cal. Apr. 25, 2006) ...................................14

*Celotex Corp.* v. *Catrett*,
477 U.S. 317 (1986)................................................................................................................12

*E-Pass Techs., Inc.* v. *3Com Corp.*,
473 F.3d 1213 (Fed. Cir. 2007)................................................................................................5

*Exigent Tech., Inc.* v. *Atrana Solutions, Inc.*,
442 F.3d 1301 (Fed. Cir. 2006)..........................................................................................5, 16

*Gaspard* v. *Amerada Hess Corp.*,
13 F.3d 165 (5th Cir. 1994)....................................................................................................10

*Indiana Mills & Mfg., Inc.* v. *Dorel Indus. Inc.*,
458 F. Supp. 2d 890 (S.D. Ind. 2006) ......................................................................................6

# TABLE OF AUTHORITIES

Page(s)

## CASES (continued)

*Intertrust Techs. Corp.* v. *Microsoft Corp.*,
   No. C 01-1640 SBA, 2003 WL 23120174 (N.D. Cal. Dec. 1, 2003) .............................. 13, 14

*Machine Sys. Ltd., Inc.* v. *Igus, Inc.*,
   433 F. Supp. 2d 823 (E.D. Mich. 2006) ................................................................................. 11

*Markman* v. *Westview Instruments, Inc.*,
   517 U.S. 370 (1996) ................................................................................................................ 6

*Minuteman Int'l, Inc.* v. *Nilfisk-Advance*,
   No. 03 C 223, 2004 WL 2533626 (N.D. Ill. Sept. 28, 2004) ................................................. 9

*Nike, Inc.* v. *Adidas Am. Inc.*,
   479 F. Supp. 2d 664 (E.D. Tex. 2007) ........................................................................... 13, 14

*Norian Corp.* v. *Stryker Corp.*,
   433 F. Supp. 2d 1051 (N.D. Cal. 2004) ............................................................................... 11

*Novartis Corp.* v. *Ben Venue Labs., Inc.*,
   271 F.3d 1043 (Fed. Cir. 2001) ............................................................................................ 11

*Pause Tech. LLC* v. *Tivo Inc.*,
   419 F.3d 1326 (Fed. Cir. 2005) .............................................................................................. 8

*Phillips* v. *AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) .............................................................................................. 6

*Searfoss* v. *Pioneer Consol. Corp.*,
   374 F.3d 1142 (Fed. Cir. 2004) ............................................................................................ 12

*STMicroelectronics, Inc.* v. *Sandisk Corp.*,
   No. 4:05CV44, 2006 WL 1867934 (E.D. Tex. June 23, 2006) ............................................. 5

*Telemac Cellular Corp.* v. *Topp Telecom, Inc.*,
   247 F.3d 1316 (Fed. Cir. 2001) .............................................................................................. 9

*UtStarcom, Inc.* v. *Starent Networks Corp.*,
   No. C04-122 PVT, 2005 WL 3299714 (N.D. Cal. Dec. 6, 2005) ......................................... 11

*Wolverine World Wide, Inc.* v. *Nike, Inc.*,
   38 F.3d 1192 (Fed. Cir. 1994) ................................................................................................ 6

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### FEDERAL RULES

Fed. R. Civ. P. 56(c) ........................................................................................................ 9

Fed. R. Civ. P. 56(f) ........................................................................................................ 16

### LOCAL RULE

Local Rule CV-56(C) ........................................................................................................ 10

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
DATATREASURY CORP.,                          :
                                             :
              Plaintiff,                      :
      v.                                      :  Civil Action No. 2-06-CV-72(DF)
                                             :
WELLS FARGO and COMPANY, et al.,              :
                                             :
              Defendants.                     :
                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

## REPLY MEMORANDUM OF THE CLEARING HOUSE PAYMENTS COMPANY L.L.C. IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF THE '007 PATENT

Defendant The Clearing House Payments Company L.L.C. ("The Clearing House" or "TCH") submits this reply memorandum in further support of its motion for summary judgment (the "Motion") dismissing all claims of Plaintiff DataTreasury Corporation ("DataTreasury") against TCH in this action asserting infringement of U.S. Patent No. 5,265,007 ("the '007 Patent").[1]

## PRELIMINARY STATEMENT

Even after two extensions of its time to respond to the Motion, during which DataTreasury deposed Gerard Milano, a TCH Senior Vice President who has been involved with

---

[1]    The following citation conventions will be used herein:  (1) "Milano Aff." refers to the Affirmation of Gerard Milano, submitted in support of the Motion; (2) "Opening Br." refers to TCH's memorandum of law submitted in support of the Motion; (3) "Milano Tr." refers to the deposition transcript of Mr. Milano; and (4) "Opposition" refers to DataTreasury's Response to the Motion, filed on April 24, 2007.  Submitted in conjunction with this Reply is the Supplemental Declaration of James H. Carter (the "Suppl. Carter Decl.").

check clearing since 1967, DataTreasury has found no facts and no legal rationale for defeating the Motion. Instead of addressing the '007 Patent claims, which are limited to physical exchange of checks and financial instruments, DataTreasury devotes much of its Opposition to irrelevant complaints that granting summary judgment will not allow DataTreasury to dictate what it claims to be "normal practice" for its preferred steps in patent litigation.

TCH's Motion is a very discrete one focused on two key elements of the '007 Patent as they compare to TCH's National Check Exchange. Tellingly, DataTreasury in its Opposition has not disputed any of the facts TCH has presented about the National Check Exchange; indeed, the Opposition <u>does</u> <u>not</u> <u>even</u> <u>mention</u> the National Check Exchange, the accused instrumentality. Summary judgment is plainly warranted.

## **<u>BACKGROUND</u>**

The '007 Patent claims "a central check clearing association and a control system" for financial institutions involving a means of physically exchanging checks and "settling" or reconciling the corresponding debits and credits. (*See*, *e.g*., '007 Patent, col. 1, lines 13-18.) The system recited in the '007 Patent requires, *inter alia*: (1) "real time" monitoring of physical check movements; and (2) a "cycling" or "time control" means for relating one settlement with one or more other settlements. DataTreasury accused the National Check Exchange service operated by The Clearing House of infringing the '007 Patent; however, it is beyond dispute that the National Check Exchange does not provide the "real time" monitoring, "cycling means" or "time control" functions claimed in the '007 Patent. The Clearing House thus moved for summary judgment of noninfringement on February 21, 2007.

A.     The Clearing House's Check Services Business

The physical check and electronic clearing services of The Clearing House are operated in the name of its "SVPCO" line of business.[2]  (Milano Aff. ¶ 1.)  The recently deposed Gerard Milano operates and manages the SVPCO-Check Services line of business.  (*Id.*)  Mr. Milano has worked in the banking industry since 1967.  (*Id.* ¶ 2; *see also* Milano Tr. at 22-28.)[3]  His deposition confirmed the salient facts of TCH's Motion:

- The Clearing House does not monitor the physical movement of checks as they are in transit from bank to bank—whether the checks are in transit from a Sending Bank to a Designated Exchange Location, from a Designated Exchange Location to a Receiving Bank, or from one Designated Exchange Location to another (*Id.* ¶ 12; *see also* Milano Tr. at 202-04);[4] and

- TCH also does not have a "cycling" means or a "time control" for controlling settlement activities so that "local" settlement occurs before "final" settlement.  (Milano Tr. at 201; 209.)

B.     Current Litigation Status

On December 4, 2006, DataTreasury served Patent Infringement Contentions ("PICs") on The Clearing House with respect to U.S. Patent No. 5,717,868 ("the '868 Patent") and the '007 Patent (collectively, the "Huntington Patents"), asserting all six claims of the '007 Patent against TCH.  The only accused instrumentality identified by DataTreasury in connection with the '007 Patent was the National Check Exchange, which it described as enabling The

---

[2]     "SVPCO" is the trade name used for TCH's physical check and electronic clearing services; "SVPCO" does not refer to any legal entity.

[3]     The portions of Mr. Milano's deposition testimony cited herein are collected and attached as Exhibit 1 to the Suppl. Carter Decl.

[4]     As Mr. Milano testified, The Clearing House's National Check Exchange has no transportation infrastructure, making it virtually impossible for The Clearing House to monitor the inter-region, physical movement of checks in transit from bank to bank.  (Milano Aff. ¶ 12.)

Clearing House "and member institutions . . . [to] physically send or receive financial instruments (e.g., checks or substitute checks) to and from other institutions via air and ground transportation . . . ."

The Clearing House filed its motion for summary judgment of noninfringement on February 21, 2007, in reliance on DataTreasury's PICs.  In support of the Motion, TCH submitted an affirmation from The Clearing House executive with responsibility for TCH's physical check services business, Mr. Milano.  In accordance with Local Patent Rule 3-4(a), on February 26, TCH produced documents relating to the operation of the National Check Exchange.[5]  At DataTreasury's request, The Clearing House made Mr. Milano available for a deposition on March 20, 2007.  The Clearing House now has produced approximately 5,500 pages of documents from Mr. Milano's files.

After the Clearing House filed its Motion, the parties conferred on the meaning of claim terms in, *inter alia*, the Huntington Patents and exchanged proposed claim terms.  On April 3, the parties submitted their joint claim construction statement to the Court.  In the case of the '007 Patent, the parties could agree on only three claim terms and submitted 30 terms for the Court's construction.  On May 29, DataTreasury submitted its Opening Brief on Claims Construction.  The *Markman* hearing is currently scheduled for September 24, 2007.

## ARGUMENT

DataTreasury correctly notes that the "essential arguments of [The Clearing House's] Motion are confined to just two points."  (Opposition at 4.)  There are indeed two key

---

[5]     A number of defendants sought extensions of time to produce their documents under Patent Rule 3-4a, but The Clearing House did not in light of its pending Motion.

points for this Court to consider in resolving TCH's Motion—the lack of any "real time"

monitoring and the lack of a "cycling means" or "time control" in the National Check Exchange,

the only accused instrumentality identified by DataTreasury.  If TCH is correct as to either point,

that is sufficient to warrant summary judgment of noninfringement.  *See Exigent Tech., Inc.* v.

*Atrana Solutions, Inc.*, 442 F.3d 1301, 1308-09 (Fed. Cir. 2006) ("In light of *Celotex*, we

conclude that nothing more is required than the filing of a summary judgment motion stating that

the patentee had no evidence of infringement and pointing to the specific ways in which the

accused systems did not meet the claim limitations.").  A dismissal now, rather than later, would

simplify this already complex case.  To defeat TCH's motion, DataTreasury must present

specific facts showing that there is a genuine issue for trial, using evidence upon the basis of

which a jury could reasonably find infringement.  *See STMicroelectronics, Inc.* v. *Sandisk Corp.*,

No. 4:05CV44, 2006 WL 1867934, at *1 (E.D. Tex. June 23, 2006).

      DataTreasury has not presented any such genuine issue of material fact, nor has

DataTreasury presented evidence that would allow a jury to find infringement here.  *See E-Pass*

*Techs., Inc.* v. *3Com Corp.*, 473 F.3d 1213, 1222 (Fed. Cir. 2007) ("Procedurally, it is hornbook

law that to survive the defendants' motion[] for summary judgment, [Plaintiff] must make a

showing sufficient to establish the existence of [each] element essential to [its] case.") (citation

omitted) (alteration in original) (internal quotation marks omitted).

I.     CLAIM CONSTRUCTION IS A MATTER OF LAW FOR THE COURT.

      Patent infringement analysis at any stage of a litigation, including a motion for

summary judgment, begins with construction of the patent claims, a matter of law reserved

exclusively for the Court.  *See Altech Controls Corp.* v. *E.I.L. Instruments, Inc.*, No. CIV. A. H-

92-3189, 1997 WL 579179, at *5 (S.D. Tex. June 6, 1997) (citing *Markman* v. *Westview*

*Instruments, Inc.*, 517 U.S. 370 (1996)); *see also BAE Sys. Elecs. Ltd.* v. *Rockwell Collins, Inc.*, No. Civ.A. 3:03CV0694-K, 2004 WL 1809811, at *3 (N.D. Tex. Aug. 12, 2004). Because "claim construction is a question of law amenable to summary judgment, a 'mere dispute over the meaning of a term does not itself create an issue of fact.'" *Wolverine World Wide, Inc.* v. *Nike, Inc.*, 38 F.3d 1192, 1197 (Fed. Cir. 1994) (citation omitted). In cases in which a summary judgment motion is brought prior to claim construction, "the Court will apply the principles set forth in the Federal Circuit's opinion in *Phillips* v. *AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005)" and construe the relevant claim terms. *Indiana Mills & Mfg., Inc.* v. *Dorel Indus. Inc.*, 458 F. Supp. 2d 890, 921 (S.D. Ind. 2006).

As is set forth in The Clearing House's Motion, the meaning of the relevant claim terms can be resolved by this Court as a matter of law because there are no factual issues pertinent to the interpretation of those claims. *See Becton Dickinson & Co.* v. *C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed. Cir. 1990) (holding that claim interpretation is a matter of law to be resolved by a court unless "evidence pertinent to a claim's interpretation creates a factual dispute").

The first claim term at issue here is the term "real time," which is present in each of the two independent claims of the '007 Patent. "Real time" in the '007 Patent can have only its ordinary meaning—*i.e.*, as an event is occurring. This meaning is consistent with the intrinsic evidence of the '007 Patent—the claims, specification and the prosecution history—as well as extrinsic dictionary definitions.

The second claim term is the "cycling means" or "time control" recited in claims 1 and 4 of the '007 Patent, respectively. Those terms must be construed to control the timing of settlement "for determining the occurrence of a final settlement by the clearinghouse participants

at a pre-determined time until after a time that pre-determined local settlements in the localities,

by the participants in the localities, are completed."  ('007 Patent, col. 10, lines 10-15; *see also*

col. 3, lines 39-42.)

  In response to the claim construction proffered by The Clearing House,

DataTreasury presents only a litany of complaints:

- "TCH has merely dressed up a claim construction brief as a summary judgment motion . . . ."

- "No cause has been shown for the Court to accept TCH's misplaced effort to place the cart before the horse, or to depart from the normal practice of entering a claim construction ruling establishing the legal framework for summary judgment motions before entertaining such motions."

- "To jumble together briefing, argument, and a hearing or ruling on the proper claim construction of these particular claim elements with the panoply of facts each side will marshal in an effort to prove or disprove the match between TCH's systems and the '007 claims makes no sense whatsoever."

- "TCH makes no bones of the fact that its motion for summary judgment is intended to usurp the due course of claim construction proceedings before the Court."

(Opposition at 4, 7-8.)

  Those complaints are meritless.  DataTreasury suggests no rational reason why

The Clearing House's Motion should be deferred until "after the Court has handed down a claim

construction ruling."  (Opposition at 7.)  As the Court can see from the parties' Joint Claim

Construction Statement, the majority of the 30 terms that the parties have submitted for the Court

to construe in the '007 Patent have no bearing on the pending Motion.  (*See* Suppl. Carter Decl.

Ex. 2.)  If the Court grants the Motion at this time, the formidable task of claim construction will

be substantially reduced.

DataTreasury's arguments on the construction of "real time," "cycling means" and "time control" are minimal and flawed.  Indeed, DataTreasury makes no effort to address The Clearing House's claim construction of "real time" or "time control" in its Opposition.

The only claim term at issue in the Motion that DataTreasury disputes is the "cycling means," which it argues is "nothing more than 'rules and parameters regarding time scheduling when such rules and schedules are interrelated with the central processing unit.'" (Opposition at 24; *see also id*. at 6 ("Such [cycling] means is nothing more than the activities that happen on a 24-hour clock, as specified in the clearinghouse rules and regulations, and interrelated with the central processing unit.").)[6]  DataTreasury's assertion[7] is beside the point because the *structure* of the cycling means is not at issue in The Clearing House's Motion.  The Clearing House's Motion is based on the undisputed fact that the National Check Exchange does not perform the *function* of the "cycling means":  namely, the coordination of local and national settlement.  (Opening Br. at 23-25.)  DataTreasury's Opposition does not address the claimed functions of the "cycling means" or "time control" at all.  *See Pause Tech. LLC* v. *Tivo Inc.*, 419 F.3d 1326, 1331 (Fed. Cir. 2005) (holding that "language appearing later in a claim detail[ing] how" an element is to be employed could not be ignored for purposes of claim construction).

The Court therefore should accept TCH's construction of the claim terms at issue.  DataTreasury has presented no reason for the Court not to do so.

---

[6]     DataTreasury's construction for purposes of its Opposition is in contrast to its PICs, in which DataTreasury contended that a "conventional programmable computer" was the "cycling means" and the "time control."

[7]     The Clearing House does not agree with DataTreasury's broad definition of the structure that embodies the "cycling means."

II.    THERE IS NO GENUINE ISSUE OF MATERIAL FACT PRECLUDING SUMMARY
       JUDGMENT.

   Summary judgment in a patent case, as in any other case, is governed by the

standards of Rule 56(c) of the Federal Rules of Civil Procedure—"if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact . . . the moving party is entitled to a judgment as

a matter of law."  FED. R. CIV. P. 56(c); *see Amtech Corp*. v. *AT/COMM Inc.*, Civ. A. No. 3:92-

CV2053D, 1994 WL 529506, at *4 (N.D. Tex. Sept. 28, 1994) ("Summary judgment is just as

appropriate in a patent case as in any other, provided that the standards set forth in Rule 56(c) are

satisfied.").

   Following claim construction, the second step in this Court's patent infringement

analysis is the "application of the properly construed claim to the accused product."  *Telemac

Cellular Corp.* v. *Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed. Cir. 2001) (emphasis added);

*see also Minuteman Int'l, Inc.* v. *Nilfisk-Advance*, No. 03 C 223, 2004 WL 2533626, at *7 (N.D.

Ill. Sept. 28, 2004) ("Infringement is properly decided on a motion for summary judgment when

no reasonable jury could find that every limitation recited in the properly construed claim either

is or is not found in the accused device—either literally or under the doctrine of equivalents.").

  A. <u>Material Facts For Purposes of the Motion Are Facts Regarding the
       National Check Exchange.</u>

   "As to materiality, the substantive law will identify which facts are material."

*Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  What is material to resolution of the

Motion is whether the accused instrumentality—the National Check Exchange—provides "real

time" monitoring, a "cycling means" or a "time control" as claimed in the '007 Patent.  But

DataTreasury <u>does</u> <u>not</u> <u>even</u> <u>mention</u> the National Check Exchange in its Opposition, and

DataTreasury has not disputed any of the facts that The Clearing House has presented about the

National Check Exchange.[8]

Specifically, the following facts about the National Check Exchange remain

undisputed by DataTreasury:

- The National Check Exchange does not include monitoring of the physical movement of checks while they are in transit, either from Sending Banks to Designated Exchange Locations, from Exchange Locations to Receiving Banks or from one Exchange Location to another.  (Milano Aff. ¶¶ 21-22.)  The Clearing House maintains no computer system that records information on the transport status of physical checks for the use of participants themselves.  (*Id*. ¶¶ 22, 27.)  Because the National Check Exchange does not include any transportation infrastructure, TCH has no way to monitor the inter-region sending and receipt status of physical checks from bank to bank.  (*Id*. ¶ 12.)

- The National Check Exchange does not coordinate any TCH settlement system with any settlement a Receiving Bank makes with another bank or clearinghouse.  (*Id*. ¶¶ 5, 13.)

- The Uniform Rules governing the National Check Exchange contain nothing about coordinating TCH settlements with participating banks' separate settlements involving non-participating institutions.  (*Id*. ¶¶ 20-22.)  TCH does not coordinate the timing of such settlements or monitor the physical movement of checks while they are in transit, either from Sending Banks to Designated Exchange Locations, from Exchange Locations to Receiving Banks or from one such Location to another.  (*Id*.)

Having accused the National Check Exchange as the infringing instrumentality,

DataTreasury is obliged to put forth evidence demonstrating how a reasonable jury could find

that the National Check Exchange infringes the '007 Patent.  It has not done so, and that warrants

---

[8]    DataTreasury submitted no response to The Clearing House's Statement of Material Facts.  The Court may therefore view those facts as admitted as well.  *See Gaspard* v. *Amerada Hess Corp.*, 13 F.3d 165, 166 n.1 (5th Cir. 1994) (noting that the facts set forth in the movant's statement of material issues were admitted for purposes of the pending summary judgment motion because the nonmovant had not responded to them); *Bean* v. *Tulia Indep. Sch. Dist.*, No. Civ.A.2:01-CV-0394-J, 2003 WL 22087571, at *2 (N.D. Tex. Jan. 8, 2003) (same); *see also* Local Rule CV-56(C).

entry of summary judgment against DataTreasury. *See Norian Corp.* v. *Stryker Corp.*, 433 F. Supp. 2d 1051, 1053 (N.D. Cal. 2004) ("Although the determination of patent infringement is a fact-intensive process, 'comparison of a properly interpreted claim with a stipulated or uncontested description of an accused device or process would reflect such an absence of material fact issue as to warrant summary judgment of infringement or noninfringement.'") (citation omitted); *see also UtStarcom, Inc.* v. *Starent Networks Corp.*, No. C04-122 PVT, 2005 WL 3299714, at *2 (N.D. Cal. Dec. 6, 2005) ("In a patent case, summary judgment is appropriate 'when the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial.'") (citation omitted). "Under modern summary judgment law, a patentee who fails to provide probative evidence of infringement runs the risk of being peremptorily nonsuited." *Novartis Corp.* v. *Ben Venue Labs., Inc.*, 271 F.3d 1043, 1050 (Fed. Cir. 2001).

In sum, the facts material to The Clearing House's Motion are not in dispute, making summary judgment of noninfringement appropriate here. *See Machine Sys. Ltd., Inc.* v. *Igus, Inc.*, 433 F. Supp. 2d 823, 827 (E.D. Mich. 2006) ("In particular, if there is no genuine issue of material fact that the accused product does not embody even a single limitation of the asserted claim, either literally or equivalently, then summary judgment of noninfringment is properly granted.").

B.    DataTreasury Has Presented No Genuine Issue of Material Fact.

DataTreasury's assertion that it is not required to "identify and prove the existence of controverted issues" because TCH has purportedly not met its burden as the summary judgment movant is meritless. "[S]o long as the losing party was on notice that she had to come forward with all other evidence," summary judgment may be granted when that

party fails to present its evidence. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 326 (1986) (emphasis added). DataTreasury is on more than sufficient notice of the bases for The Clearing House's noninfringement position to enable it to come forth with evidence of infringement, if it has any. Instead, DataTreasury attempts to raise an issue of fact in two ways: (1) discussing systems and services of TCH that are not accused and are irrelevant; and (2) attacking the competency of TCH's affiant—Gerard Milano. Neither approach satisfies DataTreasury's burden to defeat the Motion.

In its Opposition, DataTreasury discusses a number of TCH systems—CHECCS, ECS, SVPCOView,[9] ACH, ECP. (*See* Opposition at 11-23.) None of that discussion relates to any material fact at issue here, and it should be wholly disregarded. *See Anderson*, 477 U.S. at 248 ("Factual disputes that are irrelevant or unnecessary will not be counted."); *Searfoss* v. *Pioneer Consol. Corp.*, 374 F.3d 1142, 1148 (Fed. Cir. 2004) (holding that the material facts for summary judgment purposes relate to whether "the accused device is encompassed by the claims") (citation omitted).

All DataTreasury has done in its Opposition is identify snippets of various documents in which DataTreasury found the supposedly talismanic phrase "real time." (Opposition 15-23.) All of those documents are irrelevant because none of them shows—as one can tell by simply reading them—monitoring on a "real time" basis of the sending and receipt status of financial instruments in the National Check Exchange, which is required by the claims of the '007 Patent. DataTreasury cannot demonstrate an issue of material fact simply because a phrase used in the '007 Patent is also found in an unrelated TCH document.

---

[9]    SVPCOView was formerly referred to as CheckView. (Milano Tr. at 73.)

DataTreasury also wrongly attempts to defeat TCH's Motion by raising for the first time the possibility that DataTreasury might accuse systems other than the National Check Exchange. This belated attempt to use this lawsuit as a vehicle to hold TCH hostage for possible future claims is clearly impermissible and should not be countenanced. *See Intertrust Techs. Corp.* v. *Microsoft Corp.*, No. C 01-1640 SBA, 2003 WL 23120174, at *2 (N.D. Cal. Dec. 1, 2003) (holding that defendant should not "be expected to guess" at which products plaintiff believed to be infringing).[10] The purpose of patent infringement contentions is to require a plaintiff to "crystallize" its infringement theories early in the litigation and to avoid "litigation by ambush." *Nike, Inc.* v. *Adidas Am. Inc.*, 479 F. Supp. 2d 664, 667 (E.D. Tex. 2007) (internal quotation marks omitted). In the PICs DataTreasury served concerning the '007 Patent, the only accused instrumentality is the National Check Exchange; according to the PICs, the "National Check Exchange infrastructure and rules provides [sic] for the physical exchange of financial instruments."[11]

DataTreasury was aware of TCH's systems and products at the time it served its PICs. For instance, the "Report on Controls for The Clearing House Electronic Check Clearing

---

[10]    The Court has recognized the virtual identity between the Local Patent Rules and those of the Northern District of California. *Nike, Inc.* v. *Adidas Am. Inc.*, 479 F. Supp. 2d 664, 667 (E.D. Tex. 2007).

[11]    It is perhaps not surprising that DataTreasury now seeks to distance itself from its PICs because, as TCH pointed out in the Motion (Opening Br. at 25), the PICs themselves demonstrate noninfringement. DT asserted in its PICs that a TCH computer server "controls the settlement of the instruments among the institutions in the National Check Exchange such that the settlement of the instruments via the National Check Exchange is achieved before local settlement by the institutions." Thus, the National Check Exchange cannot infringe the '007 Patent because, in DataTreasury's view of it, "final" settlement occurs before "local" settlements, which is the exact opposite of what is claimed in the '007 Patent.

System—CHECCS," attached to the Opposition as Exhibit 3, was a document produced by The Clearing House to DataTreasury in July 2005. DataTreasury purportedly knew enough about CHECCS, ECP and SVPCOView to mention them in its PICs as to the '868 Patent.[12] Nonetheless, DataTreasury accused only the National Check Exchange of infringing the '007 Patent, and it should not now be permitted to expand its PICs. *Berger* v. *Rissignol Ski Co.*, No. C 05-02523 CRB, 2006 WL 1095914, at *3 (N.D. Cal. Apr. 25, 2006) ("The patent rules are designed to avoid 'vexatious shuffling of positions' that could occur if the parties are permitted to freely modify their infringement contentions at any point in the action.") (citation omitted).

Similarly, DataTreasury's attacks on Mr. Milano's competence are unjustified. One purpose of the Local Patent Rules is to focus discovery. *See Nike*, 479 F. Supp. 2d at 666-67; *see also Intertrust*, 2003 WL 23120174, at *1. Mr. Milano submitted a supporting affirmation for TCH's Motion, and DataTreasury took Mr. Milano's deposition because, as a result of DataTreasury's PICs, the parties necessarily focused on the National Check Exchange.

As is set forth in the PICs, the "National Check Exchange was created from the merger of check operations in the Eastern, Central and Western U.S. following The Clearing House's acquisition of the check clearing business of the New York Clearing House, Western Payments Alliance, the Chicago Clearing House Association, Small Value Payments Company . . . and their various subsidiaries . . . ." Prior to becoming an officer of The Clearing House, Mr. Milano was the President and Chief Executive Officer of the Western Payments Alliance ("WesPay"). (Milano Tr. at 9.) When The Clearing House acquired the check clearing business

---

[12]     Although DataTreasury mentions CHECCS, ECP and SVPCOView in its PICs as to the '868 Patent, DataTreasury does not identify those products as accused instrumentalities.

of WesPay, Mr. Milano joined The Clearing House as the Senior Vice President of Check Services. (*Id.*; *see also* Milano Aff. ¶ 1.)  Mr. Milano is entirely competent to testify about TCH's physical check clearing services.[13]  If DataTreasury is unhappy with Mr. Milano's testimony in this matter, it has only itself to blame; The Clearing House offered Mr. Milano's testimony in light of DataTreasury's PICs identifying the National Check Exchange as the sole accused instrumentality.

The string cites in the Opposition to portions of Mr. Milano's testimony are all in response to questions about TCH services with which Mr. Milano is not involved on a day-to-day basis, *i.e.*, services other than the National Check Exchange.  (Opposition at 12-14, 22-23.) Mr. Milano does *not* manage the systems about which DataTreasury inquired during Mr. Milano's deposition—CHECCS, ACH, ECS, SVPCOView, ECP.  Accordingly, it is not surprising that Mr. Milano could not provide in-depth testimony about those systems.  (*See* Opposition 11-14, 22-23.)  However, none of those systems is material to The Clearing House's Motion, and DataTreasury's citations to those portions of Mr. Milano's testimony do not raise a genuine issue of material fact.  *See Anderson*, 477 U.S. at 248.

C.    DataTreasury Has Not Requested and Does Not Need Additional Discovery on the National Check Exchange.

DataTreasury suggests that The Clearing House's Motion is premature because "TCH has not yet produced to DataTreasury much of the requisite written discovery . . . ."

---

[13]    It is worth noting that, in addition to his work at The Clearing House, Mr. Milano had years of experience with organizations such as the American Bankers Association, in the course of which various Huntington Bank representatives would ask for Mr. Milano's opinion on check processing systems.  (Milano Tr. at 162-65.)  One of those Huntington Bank representatives was Terry Geer, a named inventor of the '007 Patent.

(Opposition at 15.)  Noticeably absent, however, is any attempt by DataTreasury to articulate what that additional "requisite written discovery" might be or to explain what impact the unidentified discovery might have on the disposition of The Clearing House's Motion. DataTreasury should not be permitted to defeat TCH's Motion by demanding discovery on systems that were never identified as potentially accused instrumentalities until DataTreasury's Opposition.  In any event, The Clearing House produced the documents relating to the operation of the National Check Exchange two months prior to DataTreasury's Opposition.  DataTreasury could have requested additional written discovery following that production, but it has not done so.

DataTreasury openly admits that, in its surreply to the Motion, it plans to try to sandbag The Clearing House with "additional evidence . . . to refute TCH's summary judgment contentions."  (Opposition at 7.)  In the event that DataTreasury is not able to sandbag The Clearing House by the time its surreply is due, DataTreasury "reserves its right to seek Rule 56(f) relief from the Court."  DataTreasury's stance is entirely improper.  Rule 56(f) of the Federal Rules of Civil Procedure does not permit a party to proceed leisurely through discovery and seek a continuance in order to delay the inevitable; a request for Rule 56(f) relief must be made promptly.  *See Exigent*, 442 F.3d at 1310 (holding that the moving party seeking Rule 56(f) relief "must also have been diligent").  Furthermore, DataTreasury provides no indication of what additional discovery would be needed, which is further grounds for denying any Rule 56(f) request should one indeed be made by DataTreasury.  *See Baker* v. *Am. Airlines, Inc.*, 430 F.3d 750, 756 (5th Cir. 2005) (holding that Rule 56(f) relief cannot be granted "on vague assertions that additional discovery will produce needed, but unspecified, facts in opposition to summary judgment").

<u>**CONCLUSION**</u>

In light of the foregoing and for the reasons set forth in its Motion, this Court should grant summary judgment dismissing DataTreasury's infringement claims against The Clearing House with respect to U.S. Patent No. 5,265,007 and grant to The Clearing House such further relief as this Court deems proper.

Dated:  June 8, 2007                          Respectfully submitted,


                          s/  Preston W. McGee
                          Preston W. McGee
                          Flowers Davis, P.L.L.C.
                          1021 ESE Loop 323, Suite 200
                          Tyler, Texas 75701
                          (903) 534-8063

                          *Of Counsel:*
                          James H. Carter
                          James T. Williams
                          SULLIVAN & CROMWELL LLP
                          125 Broad Street
                          New York, New York 10004
                          (212) 558-4000

                          Lawrence F. Scinto
                          Ronald A. Clayton
                          FITZPATRICK, CELLA, HARPER & SCINTO
                          30 Rockefeller Plaza
                          New York, New York 10112-3801
                          (212) 218-2254
                          *Attorneys for Defendant The Clearing House
                          Payments Company L.L.C.*