# EXHIBIT 1

Dockets.Justia.com

Cause No.:
DataTreasruy Corporation
v.
Wells Fargo & Company, et al.

Transcript of the Testimony of
**Gerard Milano**

March 20, 2007

By: Michelle Munroe, CSR

Gretchen Shore Court Reporting & Litigation Support
Phone:(903) 758-2183
Fax:(903) 758-4890
Email:gretchenshore@gretchenshore.com
Internet: www.gretchenshore.com

Gerard Milano                CONFIDENTIAL
March 20, 2007    FOR ATTORNEYS' EYES ONLY

Page 9

```
09:41   1        Q.    To whom do you report at The Clearing House in
09:41   2    your capacity as the senior vice president for physical
09:41   3    check services?
09:41   4        A.    I report to Jeffrey Newberg, the chief
09:41   5    executive officer.
09:41   6        Q.    How many employees of The Clearing House
09:41   7    report to you in your capacity as senior VP for check
09:41   8    services?
09:41   9        A.    At present count, I believe it's approximately
09:42  10    19 people.
09:42  11        Q.    Previous to January 1 of 2004, what was your
09:42  12    job title?
09:42  13        A.    I was the president and chief executive
09:42  14    officer of the Western Payments Alliance, usually
09:42  15    referred to as WestPay, a regional payments company
09:42  16    located in San Francisco, California.
09:42  17        Q.    Did you become senior VP of check services at
09:42  18    The Clearing House upon the merger of WestPay with the
09:42  19    Clearing House?
09:42  20        A.    WestPay did not merge with The Clearing House,
09:42  21    sir.  But at the time that WestPay transferred its check
09:42  22    clearing services to The Clearing House, I became an
09:43  23    officer of The Clearing House.
09:43  24        Q.    Does WestPay still operate as an independent
09:43  25    entity today?
```

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com
703a0a7a-be31-477a-a705-02422a824381

Gerard Milano                CONFIDENTIAL
March 20, 2007    FOR ATTORNEYS' EYES ONLY

Page 22

10:04    1          A.    No, it does not.

10:04    2          Q.    Has The Chicago Clearing House association

10:04    3    been subsumed within the family of entities that operate

10:04    4    under The Clearing House Association -- excuse me -- the

10:04    5    Clearing House Payments Company, LLC?

10:04    6          A.    The Chicago Clearing House was merged into the

10:04    7    New York Clearing House in the fall of 2003 and was

10:04    8    later reorganized into the current LLC arrangements for

10:05    9    the Payments Company, LLC.

10:05    10         Q.    When did that take place, to the best of your

10:05    11   recollection?

10:05    12         A.    Well, I'm advised that the merger took place

10:05    13   in approximately September 2003, prior to my employment

10:05    14   at The Clearing House.  The reorganization of the parts

10:05    15   of The Chicago Clearing House into the Clearing House,

10:05    16   LLC took place approximately July 2004.

10:05    17         Q.    What about the merger of Small Values -- Small

10:05    18   Value Payments Company into The Clearing House, what

10:05    19   time frame did that take place?

10:05    20         A.    That took place also in July of 2004.

10:05    21         Q.    Before you were the president and CEO of The

10:06    22   Chicago Clearing House Association, what job title and

10:06    23   with what company did you hold such job title?

10:06    24         A.    Excuse me, sir.  I was the president and chief

10:06    25   operating officer of The Chicago Clearing House, not the

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com
703a0a7a-be31-477a-a705-02422a824381

Gerard Milano              CONFIDENTIAL
March 20, 2007    FOR ATTORNEYS' EYES ONLY

Page 23

| 10:06 | 1 | chief executive officer. |
| 10:06 | 2 | Q.     Thank you. |
| 10:06 | 3 | A.     To answer the substance of your question, |
| 10:06 | 4 | the -- prior to The Chicago Clearing House, I was the |
| 10:06 | 5 | director of the payment systems policy board at the |
| 10:06 | 6 | American Bankers Association, and I held a joint title |
| 10:06 | 7 | as director of the office of productivity and technology |
| 10:06 | 8 | for the same association. |
| 10:07 | 9 | Q.     That's a mouthful. |
| 10:07 | 10 | A.     Yes. |
| 10:07 | 11 | Q.     What did your job duties entail as director of |
| 10:07 | 12 | the office of productivity and technology? |
| 10:07 | 13 | A.     As director of the office of productivity and |
| 10:07 | 14 | technology, I was responsible for researching the |
| 10:07 | 15 | productivity of American banks and their operations with |
| 10:07 | 16 | respect to their various operating efficiencies and the |
| 10:07 | 17 | development of measurement standards for operating |
| 10:07 | 18 | efficiencies within the association. |
| 10:07 | 19 | Q.     And what about the job title as director of |
| 10:08 | 20 | the policy board, what type of job duties did that title |
| 10:08 | 21 | entail? |
| 10:08 | 22 | A.     There were two principal responsibilities in |
| 10:08 | 23 | the payment system policy board.  One was to work with a |
| 10:08 | 24 | group of bankers who were representative of banks across |
| 10:08 | 25 | the country in size and geographic distribution with |

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com

703a0a7a-be31-477a-a705-02422a824381

Gerard Milano                    CONFIDENTIAL
March 20, 2007    FOR ATTORNEYS' EYES ONLY

Page 24

| 10:08 | 1 | respect to policy issues related to U.S. payments law |
| 10:08 | 2 | and emerging technologies. |
| 10:08 | 3 | And the second was to conduct research on |
| 10:08 | 4 | behalf of the association with respect to emerging |
| 10:08 | 5 | payments technologies in the United States.  The |
| 10:08 | 6 | principal concentration of research at that time was the |
| 10:09 | 7 | concentration of research in the area of check |
| 10:09 | 8 | truncation or the electronification of the check |
| 10:09 | 9 | collection process. |
| 10:09 | 10 | It was thought that banks would become more |
| 10:09 | 11 | efficient and that the collection system would become |
| 10:09 | 12 | more efficient if, in fact, paper payments could be |
| 10:09 | 13 | turned into electronic payments, and the physical |
| 10:09 | 14 | movements of paper payments could be reduced or |
| 10:09 | 15 | eliminated somehow in the process. |
| 10:09 | 16 | Q.    And you said "at that time" this was the |
| 10:09 | 17 | thinking.  During what time frame are you referring to? |
| 10:09 | 18 | A.    Well, I was employed in those lines of work by |
| 10:09 | 19 | the American Bankers Association from approximately |
| 10:10 | 20 | April '1977 until April of '82.  And when I was |
| 10:10 | 21 | originally employed, it was as an officer in charge of |
| 10:10 | 22 | the payments research into more electronic means of |
| 10:10 | 23 | collecting payments.  And throughout my career, that |
| 10:10 | 24 | responsibility became larger within the association, and |
| 10:10 | 25 | my responsibilities grew within the association related |

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com
703a0a7a-be31-477a-a705-02422a824381

Gerard Milano                CONFIDENTIAL
March 20, 2007    FOR ATTORNEYS' EYES ONLY

Page 25

| 10:10 | 1 | to that research. |
| 10:10 | 2 | Q.    Do you recollect at what time you were |
| 10:10 | 3 | promoted from an officer in charge of payments research |
| 10:10 | 4 | into the job title of director -- of either of the |
| 10:10 | 5 | directorships that you referenced earlier? |
| 10:11 | 6 | A.    It seems to me I was promoted a couple of |
| 10:11 | 7 | times in the course of a five-year career.  I don't |
| 10:11 | 8 | recall exactly when they made me a director.  As I |
| 10:11 | 9 | recall, they made me director of payments policy board |
| 10:11 | 10 | prior to making me director of the office of productive |
| 10:11 | 11 | and technology. |
| 10:11 | 12 | The term "productivity" became a buzz word in |
| 10:11 | 13 | American industry about that time.  And it was important |
| 10:11 | 14 | for the Washington association to have an office that |
| 10:11 | 15 | was associated with that term.  As a practical matter, |
| 10:11 | 16 | the issues that we studied were not materially different |
| 10:11 | 17 | than the issues we had been studying in moving payments |
| 10:11 | 18 | more efficiently since much of the work of banks is in |
| 10:11 | 19 | the work of collecting payments for American consumers |
| 10:12 | 20 | and businesses. |
| 10:12 | 21 | Q.    Where did you physically office from during |
| 10:12 | 22 | this time period of your employ with the ABA? |
| 10:12 | 23 | A.    The office was in Washington on Connecticut |
| 10:12 | 24 | Avenue, as I recall, Connecticut and L. |
| 10:12 | 25 | Q.    And did you work in the financial industry |

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com

703a0a7a-be31-477a-a705-02422a824381

Gerard Milano                CONFIDENTIAL
March 20, 2007    FOR ATTORNEYS' EYES ONLY

Page 26

10:12    1    before April of 1977?

10:12    2        A.    Yes, I did.

10:12    3        Q.    Where were you at just previous to your employ

10:12    4    at the ABA, which began in April of 1977?

10:12    5        A.    I was at the First National Bank of Chicago.

10:12    6        Q.    And what job title with First National Bank of

10:12    7    Chicago did you hold at departure in the time frame of

10:12    8    April 1977?

10:12    9        A.    I was an assistant vice president at that

10:13    10   time.

10:13    11       Q.    Was that within any particular department or

10:13    12   division of the bank?

10:13    13       A.    Yes.  I was in the retail banking department,

10:13    14   sometimes known as consumer banking.

10:13    15       Q.    And how long were you employed at First

10:13    16   National Bank of Chicago?

10:13    17       A.    Eleven years.

10:13    18       Q.    If my math is right, that takes us to about

10:13    19   1966.  Does that sound right?

10:13    20       A.    Early '67, as I recall.  I remember 11 years

10:13    21   because they credited me with 11 in their pension fund,

10:13    22   so it's a number that sticks in my mind.

10:13    23       Q.    Fair enough.  Was your employ at the First

10:14    24   National Bank of Chicago your first employ in the

10:14    25   financial industry?

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com

703a0a7a-be31-477a-a705-02422a824381

Gerard Milano                    CONFIDENTIAL
March 20, 2007    FOR ATTORNEYS' EYES ONLY

Page 27

10:14   1      A.    No.

10:14   2      Q.    What about preceding your employment at First

10:14   3  National Bank of Chicago, what type of positions did you

10:14   4  hold in the financial industry?

10:14   5      A.    Prior to First Chicago, I was -- I had a

10:14   6  part-time job while I was in high school and college in

10:14   7  a neighborhood savings and loan association in the

10:14   8  Chicago area.  I held a number of positions as a

10:14   9  part-time employee from -- employee cafeteria attendant

10:14   10  to parking lot attendant to burster of computer

10:14   11  printouts to mail room employee to file clerk and teller

10:15   12  over that period of time.

10:15   13      Q.    That's a long way from senior VP of physical

10:15   14  check services, isn't it?

10:15   15      A.    Long time.

10:15   16      Q.    All right.  Let's go back into some of the

10:15   17  more current time frame with respect to your work at The

10:15   18  Clearing House.

10:15   19          How has The Clearing House's physical check

10:15   20  services division changed during the three-plus years

10:15   21  that you have been the senior vice president there, in

10:15   22  broad strokes?

10:15   23      A.    Well, I'm not sure I know where you're going

10:16   24  with that question, so...

10:16   25      Q.    Let me rephrase it.

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com

703a0a7a-be31-477a-a705-02422a824381

Gerard Milano                CONFIDENTIAL
March 20, 2007    FOR ATTORNEYS' EYES ONLY

Page 28

| | | |
|---|---|---|
| 10:16 | 1 | A.    Thank you. |
| 10:16 | 2 | Q.    What type of changes to the physical services |
| 10:16 | 3 | division have you overseen during the course of your |
| 10:16 | 4 | tenure as senior vice president? |
| 10:16 | 5 | A.    Thank you.  Several.  The first set of changes |
| 10:16 | 6 | that we oversaw had to do with the -- using the same |
| 10:16 | 7 | platform to support the daily settlement of the checks |
| 10:16 | 8 | that are cleared in the various regions. |
| 10:16 | 9 | When I became the manager of the service area, |
| 10:17 | 10 | there were three different computer systems, each used |
| 10:17 | 11 | in the same way in each of the regional clearing |
| 10:17 | 12 | arrangements to perform the same task, which was to |
| 10:17 | 13 | effect the daily settlement of checks and balances |
| 10:17 | 14 | between the institutions. |
| 10:17 | 15 | Operating three systems was inefficient and |
| 10:17 | 16 | not in the interest of the members.  So our first |
| 10:17 | 17 | priority was to consolidate onto a single platform of |
| 10:17 | 18 | operations.  It was important that we do that early on |
| 10:17 | 19 | because there are regulatory requirements in the |
| 10:17 | 20 | settlement of balances between banks for the |
| 10:18 | 21 | stabilization of those things in the event of |
| 10:18 | 22 | disruptions to the payments mechanism.  And federal |
| 10:18 | 23 | regulators require that there be services in place that |
| 10:18 | 24 | can do that. |
| 10:18 | 25 | So the most efficient way to deal with that |

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com
703a0a7a-be31-477a-a705-02422a824381

Gerard Milano                    CONFIDENTIAL
March 20, 2007   FOR ATTORNEYS' EYES ONLY

Page 73

12:11  1       Q.   Now, I could not locate a location or a

12:11  2    designated exchange location in the Eastern region other

12:11  3    than Carlstadt, New Jersey at which the physical items

12:11  4    associated with ECP processing were handled.  Is that

12:11  5    the only location, to your knowledge?

12:12  6       A.   To my knowledge, yes.

12:12  7       Q.   Okay.  Could you tell the jury what CHECCS is,

12:12  8    C-H-E-C-C-S?

12:12  9       A.   I believe CHECCS is an old name for one of the

12:12  10   systems that the New York Clearing House used to use for

12:12  11   some of its check services prior to the time of my

12:12  12   arrival.

12:12  13      Q.   Could you tell the jury what CheckView is?

12:12  14      A.   CheckView is an obsolete name for one of our

12:12  15   websites that we used to use.  We have since revised the

12:12  16   name of that website to SVPCOView, and CheckView is no

12:13  17   longer in general use.

12:13  18      Q.   Let me ask you to clarify one aspect of that

12:13  19   answer.  You indicated that CheckView is an obsolete

12:13  20   name for one of the websites that The Clearing House

12:13  21   used to use.

12:13  22           Wasn't it the case that CheckView was operated

12:13  23   by The Clearing House as an information-sharing tool

12:13  24   before it was implemented into a web-based system?

12:13  25      A.   I have no idea.

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com

703a0a7a-be31-477a-a705-02422a824381

Gerard Milano                CONFIDENTIAL
March 20, 2007    FOR ATTORNEYS' EYES ONLY

Page 162

| 15:55 | 1 | Q. Did there come a time some five to six, maybe |
| 15:55 | 2 | seven years ago when the NCHA essentially moved out of |
| 15:55 | 3 | operation by Huntington? |
| 15:55 | 4 | A. As I understand it, yes. |
| 15:55 | 5 | Q. Now, the description that you give in |
| 15:55 | 6 | paragraph 17 of your understanding of how the NCHA |
| 15:55 | 7 | system works, is it your understanding that that has |
| 15:55 | 8 | been the system from 1992 until the present or was the |
| 15:55 | 9 | system between 1992 and the time when Huntington moved |
| 15:55 | 10 | away from National Clearing House or as a third option, |
| 15:56 | 11 | is the way it works post Huntington? |
| 15:56 | 12 | A. You have a complicated question about events |
| 15:56 | 13 | from long ago, but let me see if I can simplify a |
| 15:56 | 14 | response for you to a complicated question. |
| 15:56 | 15 | In my -- in my job at the American Bankers |
| 15:56 | 16 | Association doing payments research in the '70s and into |
| 15:56 | 17 | the '80s, I guess, I met many bankers from across the |
| 15:56 | 18 | country, including several folks from Huntington Bank |
| 15:56 | 19 | who were involved in their check processing operations. |
| 15:56 | 20 | Many banks in check processing were interested |
| 15:56 | 21 | in the research we were doing on check truncation, use |
| 15:57 | 22 | of digital images in the future and things of that |
| 15:57 | 23 | nature, and Huntington was one of them. |
| 15:57 | 24 | In the course of that, I became friendly with |
| 15:57 | 25 | several of the executives. When I moved on to the |

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com

703a0a7a-be31-477a-a705-02422a824381

Gerard Milano                CONFIDENTIAL
March 20, 2007    FOR ATTORNEYS' EYES ONLY

Page 163

15:57  1     Chicago Clearing House and later to Bankers Clearing

15:57  2     House in California, some of the folks from Huntington

15:57  3     Bank called me and said, Jerry, we're thinking about

15:57  4     using our check processing system in the evening to

15:57  5     collect checks.  We finish processing all of our checks

15:57  6     about midnight, and we have a lot of time after midnight

15:57  7     and before 6:00 o'clock in the morning where we could

15:57  8     run our check processing equipment if we had more

15:57  9     checks.

15:57  10           There's a courier in town who has airplanes

15:58  11    that's bringing checks in.  We could make money at our

15:58  12    bank if we did this.  We're thinking about forming a

15:58  13    clearinghouse that would allow us to do this, because we

15:58  14    don't want to take the value of the checks into our

15:58  15    correspondent banking department as deposits.  We would

15:58  16    like to leave the value of the checks outside the bank

15:58  17    if we possibly can.

15:58  18           I discussed those kinds of options with them

15:58  19    in the terms we had discussed very similar arrangements

15:58  20    at the American Bankers Association several years

15:58  21    before.  And the ways one would use a clearinghouse

15:58  22    association structure to do certain things with respect

15:58  23    to laws pertaining to collecting checks, processes

15:58  24    related to collecting checks and the financial events

15:58  25    associated with collecting checks related to how they

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com
703a0a7a-be31-477a-a705-02422a824381

Gerard Milano                CONFIDENTIAL
March 20, 2007    FOR ATTORNEYS' EYES ONLY

Page 164

15:59   1    needed to be posted on a bank's accounts versus whether

15:59   2    they could be kept off the books of the banks and not

15:59   3    considered a deposit.

15:59   4        We -- I had several conversations on those

15:59   5    subjects over a period of time while Huntington was

15:59   6    thinking about that process.  Some months, years later,

15:59   7    I saw an announcement about the National Clearinghouse.

15:59   8    I read the information that was available in the

15:59   9    literature of the industry.  Different representatives

15:59   10   of the National Clearinghouse came to see me in

15:59   11   California and said they thought there was an

15:59   12   interesting thing for banks in California to get

15:59   13   involved in.

15:59   14       I looked at it.  I gave them my candid opinion

15:59   15   that I thought it would be interesting to East Coast

15:59   16   banks.  But I thought the way they had set it up would

16:00   17   be less interesting to West Coast banks because of the

16:00   18   way it functioned.  Okay.  You know, they showed it to

16:00   19   me and said, what do you think, and I told them what I

16:00   20   thought.  Okay.

16:00   21       Some years after that, I understood that the

16:00   22   settlement contract between the processing company

16:00   23   subsidiary of Huntington Bank and the association that

16:00   24   is NCHA or the National Clearing House, was up for rebid

16:00   25   and that it was possible the process would change.  I

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com

703a0a7a-be31-477a-a705-02422a824381

Gerard Milano             CONFIDENTIAL
March 20, 2007    FOR ATTORNEYS' EYES ONLY

Page 165

| | | |
|---|---|---|
| 16:00 | 1 | asked if I could submit a bid on behalf of the Bankers |
| 16:00 | 2 | Clearing House to offer those services.  And the |
| 16:00 | 3 | National Clearing House bankers indicated to me they |
| 16:00 | 4 | didn't want one from California.  I said, fine. |
| 16:01 | 5 | I also heard that when the bids finished, that |
| 16:01 | 6 | the processing company that processed the checks and |
| 16:01 | 7 | operated the services from Huntington Bank was for sale. |
| 16:01 | 8 | There was a private sale being orchestrated by a |
| 16:01 | 9 | consulting company around the country.  I asked if I |
| 16:01 | 10 | could bid on it as president of the California Clearing |
| 16:01 | 11 | House to take over the operation of the subsidiary |
| 16:01 | 12 | company. |
| 16:01 | 13 | We discussed it, and they withdrew the offer. |
| 16:01 | 14 | The next thing I heard was that the processing contract |
| 16:01 | 15 | had been given to Clearinghouse of the Southwest in |
| 16:01 | 16 | Texas, and that there was some sort of intellectual |
| 16:01 | 17 | property suit between Huntington Bank and the then |
| 16:01 | 18 | operator of NCHA in Texas. |
| 16:02 | 19 | I understand that that was settled after some |
| 16:02 | 20 | period of time, and that that dispute is no longer in |
| 16:02 | 21 | existence.  That's about what I understand about that |
| 16:02 | 22 | process.  I don't believe I currently know many of the |
| 16:02 | 23 | folks at Huntington Bank.  It has been a long time since |
| 16:02 | 24 | I visited with Huntington Bank. |
| 16:02 | 25 | Q.   Was Bill Randall one of the people that you |

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com

703a0a7a-be31-477a-a705-02422a824381

Gerard Milano                CONFIDENTIAL
March 20, 2007    FOR ATTORNEYS' EYES ONLY

Page 201

17:24   1    correctly, Wachovia submitting substituted checks, which

17:24   2    are now received by Washington Mutual and Wells Fargo;

17:24   3    is that right?

17:24   4         A.   Yes, sir.

17:24   5         Q.   Now, when you have a settlement of checks, or

17:24   6    substitute checks rather, that are submitted for

17:24   7    clearance and settlement under that National Check

17:24   8    Exchange process, when is the settlement time to occur?

17:24   9         A.   Well, I don't recall the exact settlement

17:24  10    time.  But the -- in the rules for the National Check

17:24  11    Exchange, there's a stated settlement time.  It's the

17:24  12    same settlement time for all banks that participate in

17:24  13    that particular exchange, and it's -- it's a moment in

17:24  14    time that's scheduled in our rules.

17:25  15         Q.   Is that settlement time scheduled in any way

17:25  16    in relationship to the timing of any other settlement?

17:25  17         A.   No.

17:25  18         Q.   Is it timed in relation to any other

17:25  19    settlement by any organization operating within The

17:25  20    Clearing House system?

17:25  21         A.   No.

17:25  22         Q.   Is it timed in relation to any settlement

17:25  23    operated by anyone outside The Clearing House?

17:25  24         A.   No.

17:25  25         Q.   Again, with respect to the substitute checks

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com
703a0a7a-be31-477a-a705-02422a8824381

Gerard Milano              CONFIDENTIAL
March 20, 2007    FOR ATTORNEYS' EYES ONLY

                                               Page 202

17:25    1    that are processed under the heading of your National

17:25    2    Check Exchange system, when Wachovia reports through

17:25    3    your SVPCOView system that it is going to present some

17:25    4    checks, are you able to determine from that report

17:25    5    through SVPCo system -- SVPCOView system when Wachovia

17:26    6    has, in fact, physically sent those substitute checks

17:26    7    anyplace?

17:26    8              MR. RUPP:   Objection; form.

17:26    9         Q.   How, if at all, can you determine from the

17:26   10    information Wachovia provides through the SVPCo

17:26   11    system -- SVPCOView system when Wachovia has physically

17:26   12    transported any substitute checks?

17:26   13         A.   Counselor, I'm not sure I understand your

17:26   14    question, but let me take a shot at it.

17:26   15              I would have no occasion to draw that report

17:26   16    on any day for any purpose and any reason.  I can't

17:26   17    deduce anything from that report, nor could anyone else.

17:26   18    Wachovia can't determine anything from that report other

17:26   19    than its clerk entered that amount for a package they

17:26   20    intended to ship, to transmit, reprint, ship and

17:27   21    exchange to one of the other parties or both of the

17:27   22    other parties, depending on their rate, mix and volume

17:27   23    of those transactions that particular evening.

17:27   24              Neither of the intended receiving banks could

17:27   25    deduce anything from that report other than that

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com
703a0a7a-be31-477a-a705-02422a824381

Gerard Milano              CONFIDENTIAL
March 20, 2007    FOR ATTORNEYS' EYES ONLY

Page 203

| | | |
|---|---|---|
| 17:27 | 1 | Wachovia had intended to ship such packages to them, and |
| 17:27 | 2 | that they might look for such packages when such |
| 17:27 | 3 | packages are scheduled to arrive.  That's the only |
| 17:27 | 4 | useful information they might derive. |
| 17:27 | 5 | When the actual packages arrived from the |
| 17:27 | 6 | exchange location, further purpose at the receiving |
| 17:27 | 7 | banks would be had in reconciling, did we actually |
| 17:27 | 8 | receive the checks that Wachovia sent to us.  And both |
| 17:28 | 9 | of the -- then all the banks would derive value from our |
| 17:28 | 10 | settlement report that said, yes, you got the money, or, |
| 17:28 | 11 | yes, you paid for the checks that were delivered to you. |
| 17:28 | 12 | Those are the things that could be derived. |
| 17:28 | 13 | But with respect to someone drawing the report |
| 17:28 | 14 | down at sometime prior to settlement, the only |
| 17:28 | 15 | information that can be derived are things that were |
| 17:28 | 16 | intended, things that should have occurred and things |
| 17:28 | 17 | that might occur sometime in the future.  And no actual |
| 17:28 | 18 | knowledge is derived until the physical checks are |
| 17:28 | 19 | received at the paying institution. |
| 17:28 | 20 | Q.   Is there anything in -- |
| 17:28 | 21 | MR. RUPP:  One moment.  Move to strike as |
| 17:28 | 22 | nonresponsive that portion of the response that follows |
| 17:28 | 23 | the answer, I can't deduce anything from that report, |
| 17:29 | 24 | nor could anyone else. |
| 17:29 | 25 | Q.   Okay.  You can disregard that -- you can |

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com

703a0a7a-be31-477a-a705-02422a824381

Gerard Milano                 CONFIDENTIAL
March 20, 2007     FOR ATTORNEYS' EYES ONLY

Page 204

| | | |
|---|---|---|
| 17:29 | 1 | disregard that, Mr. Milano, because he's just telling |
| 17:29 | 2 | you of some motion he spends to make. |
| 17:29 | 3 | A.    Thank you. |
| 17:29 | 4 | Q.    Let me ask you this:  Is there anything in the |
| 17:29 | 5 | rules for your National Check Exchange that requires |
| 17:29 | 6 | Wachovia or anyone else to advise anyone at the moment |
| 17:29 | 7 | when they transmit these substitute checks? |
| 17:29 | 8 | A.    No. |
| 17:29 | 9 | Q.    As a matter of practice, do you know whether |
| 17:29 | 10 | Wachovia or anyone else does advise anyone at the moment |
| 17:29 | 11 | they transmit substitute checks through your NCE system? |
| 17:29 | 12 | A.    I have no knowledge of that. |
| 17:29 | 13 | Q.    Where are the substitute checks that are |
| 17:29 | 14 | presently being processed through your National Check |
| 17:29 | 15 | Exchange physically delivered to the banks that receive |
| 17:29 | 16 | them? |
| 17:29 | 17 | A.    They're delivered at our designated exchange |
| 17:29 | 18 | location in Los Angeles. |
| 17:30 | 19 | Q.    Do you provide the banks that are involved in |
| 17:30 | 20 | that exchange with any record, electronic or otherwise, |
| 17:30 | 21 | of the exchange when they are physically exchanged? |
| 17:30 | 22 | A.    There is no report of the exchange at the |
| 17:30 | 23 | request of the participants in the exchange. |
| 17:30 | 24 | Q.    I'm sorry.  Let me make sure I understand you. |
| 17:30 | 25 | When you say "there is no report at the |

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com

703a0a7a-be31-477a-a705-02422a824381

Gerard Milano                    CONFIDENTIAL
March 20, 2007    FOR ATTORNEYS' EYES ONLY

Page 209

| 17:36 | 1 | answered over the last several minutes? |

17:36    1    answered over the last several minutes?

17:36    2         A.    Yes.

17:36    3              MR. RUPP:  Nor further questions.  I'll

17:36    4    pass the witness.

17:36    5                   FURTHER EXAMINATION

17:36    6    BY MR. CARTER:

17:36    7         Q.    With regard to the question you were just

17:36    8    asked, Mr. Milano, about the timing of settlements by

17:36    9    local clearinghouses around the country, without regard

17:36    10   to when those might occur, is there anything in the

17:36    11   rules of your organization that times your settlement

17:36    12   one way or another with respect to any of those times,

17:36    13   whatever they might be?

17:37    14        A.    No.

17:37    15             MR. CARTER:  No further questions.

17:37    16             MR. RUPP:  Thank you, Mr. Milano.  That's

17:37    17   all I have.

17:37    18             MR. CARTER:  Does any other counsel have

17:37    19   any questions?

17:37    20             DEFENSE COUNSEL:  No questions.

17:37    21             MR. CARTER:  Then we're concluded.

17:37    22             THE VIDEOGRAPHER:  This concludes the

17:37    23   videotaped deposition of Gerard Milano.  Going off the

17:37    24   record.  The time is 5:37.

         25             (Deposition concluded at 5:37 p.m.)

Gretchen Shore Court Reporting & Litigation Support
(903) 758-2183 * (903) 758-4890 Fax    E-mail: gretchenshore@gretchenshore.com

703a0a7a-be31-477a-a705-02422a824381