UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| DATATREASURY CORPORATION, <br><br> Plaintiff <br><br> v. <br><br> WELLS FARGO & COMPANY, ET AL., <br><br> Defendants | 2:06-CV-72 DF |

DECLARATION OF DR. DEWAYNE E. PERRY

I, Dr. Dewayne E. Perry, declare as follows:

1. I am over the age of twenty-one, of sound mind, and competent to make this declaration. I have never been convicted of a felony or a crime of moral turpitude, and I am qualified to give testimony under oath. Each of the facts listed below is within my personal knowledge and is true and correct.

2. I am a Professor at the University of Texas at Austin, with over forty (40) years of experience in software. Currently, I am the Motorola Regents Chair of Software Engineering and I am on the advisory board for Wiley's Software Process: Improvement & Practice, as well as a member of the IEEE Computer Society and ACM SIGSOFT, a former associate editor of IEEE Transactions on Software Engineering, an associate editor of ACM Transactions on Embedded Computing Systems, and have been an organizing chair, program chair, and program committee member on various premiere software engineering conferences. My curricula vitae is attached as **Attachment 1**.

3. I have reviewed U.S. Patent 5,265,007 ("the '007 Patent") including the claims.

DECLARATION OF DR. DEWAYNE E. PERRY- Page 1

4. Claim 1 of the '007 Patent includes the following limitation: "means within each of the pre-selected institutions . . . for sending to and receiving from a central processing unit connected to each institution information reporting in real time in correspondence with the occurrence of an event (a) the value of the instruments transported; and (b) the transport status of the instruments with respect to their having been (i) sent and (ii) received." As reflected in the Joint Claim Construction and Prehearing Statement in Compliance with Patent Rule 4-3 (hereafter, the ""Joint Statement"), the parties agree that the foregoing limitation is a means-plus-function limitation. Further, the Joint Statement reflects that the function for this particular limitation is "sending to and receiving from a central processing unit connected to each institution information reporting in real time in correspondence with the occurrence of an event (a) the value of the instruments transported; and (b) the transport status of the instruments with respect to their having been (i) sent and (ii) received." As of the August 7, 1989 filing date of the application for the '007 Patent, and June 7, 1988, the filing date of the priority application for the '007 Patent, a programmable computer and application software were required to perform the recited function. A programmable computer (with its communication-related hardware and its operating system and standard support software) alone could not perform the recited function. In order to perform the recited function, additional application software would need to be written or obtained from third parties. The '007 Patent does not indicate whether such application software exists or was known, or the algorithm such software would implement. Specifically, the '007 Patent does not provide a flowchart, mathematical equation(s), pseudo-code, source code, or description in its specification that could constitute an

algorithm corresponding with this function. Further, the '007 Patent does not identify any known or commercially available application software that could be used to perform the recited function. Thus, the '007 Patent fails to disclose even one algorithm for achieving the recited function.

5. Claim 1 of the '007 Patent includes the following limitation: "means within each of the pre-selected institutions . . . for receiving from the central processing unit a calculated value (a) on a real time basis and (b) on a regular periodic settlement basis, information regarding the debits and credits owing to or payable by an institution with respect to each other of the institutions with regard to instruments sent and received." As reflected in the Joint Claim Construction and Prehearing Statement in Compliance with Patent Rule 4-3 (hereafter, the "Joint Statement"), the parties agree that the foregoing limitation is a means-plus-function limitation. Further, the Joint Statement reflects that the function for this particular limitation is "receiving from the central processing unit a calculated value (a) on a real time basis and (b) on a regular periodic settlement basis, information regarding the debits and credits owing to or payable by an institution with respect to each other of the institutions with regard to instruments sent and received." As of the August 7, 1989 filing date of the application for the '007 Patent, and June 7, 1988, the filing date of the priority application for the '007 Patent, a programmable computer and application software were required to perform the recited function. A programmable computer (with its communication-related hardware and its operating system and standard support software) alone could not perform the recited function. In order to perform the recited function, additional application software would need to be written or obtained from third parties. The '007 Patent does not indicate

whether such application software exists or was known, or the algorithm such software would implement. Specifically, the '007 Patent does not provide a flowchart, mathematical equation(s), pseudo-code, source code, or description in its specification that could constitute an algorithm corresponding with this function. Further, the '007 Patent does not identify any known or commercially available application software that could be used to perform the recited function. Thus, the '007 Patent fails to disclose even one algorithm for achieving the recited function.

6.  Claim 1 of the '007 Patent includes the following limitation: "means for continuous monitoring on a real time basis, as reported by each institution by the means for sending information within each institution (a) (i) the sending and receipt status of the instruments and (ii) the value of the instruments sent and received, as reported by each of the institutions, and (b) the status in transit of the instruments with respect to their having been (i) sent and (ii) received, as reported by each of the institutions, according to the reporting of an institution's sending and receiving of instruments." As reflected in the Joint Claim Construction and Prehearing Statement in Compliance with Patent Rule 4-3 (hereafter, the ""Joint Statement"), the parties agree that the foregoing limitation is a means-plus-function limitation. Further, the Joint Statement reflects that the function for this particular limitation is "continuously monitoring on a real time basis, as reported by each institution by the means for sending information within each institution (a) (i) the sending and receipt status of the instruments and (ii) the value of the instruments sent and received, as reported by each of the institutions, and (b) the status in transit of the instruments with respect to their having been (i) sent and (ii) received, as reported by each of the institutions, according to the reporting of an institution's sending and

receiving of instruments." As of the August 7, 1989 filing date of the application for the '007 Patent, and June 7, 1988, the filing date of the priority application for the '007 Patent, a programmable computer and application software were required to perform the recited function. A programmable computer (with its communication-related hardware and its operating system and standard support software) alone could not perform the recited function. In order to perform the recited function, additional application software would need to be written or obtained from third parties. The '007 Patent does not indicate whether such application software exists or was known, or the algorithm such software would implement. Specifically, the '007 Patent does not provide a flowchart, mathematical equation(s), pseudo-code, source code, or description in its specification that could constitute an algorithm corresponding with this function. Further, the '007 Patent does not identify any known or commercially available application software that could be used to perform the recited function. Thus, the '007 Patent fails to disclose even one algorithm for achieving the recited function.

7. Claim 1 of the '007 Patent includes the following limitation: "means for calculating debits and credits, based on the value of the instruments sent and received by the institutions, as monitored on a real time basis from information reported by the institutions, of (a) the amount owing from or payable to each one of the pre-selected institutions with respect to each of the other institutions and (b) an aggregate amount owing from or payable to each one of the pre-selected institutions with respect to all of the other institutions." As reflected in the Joint Claim Construction and Prehearing Statement in Compliance with Patent Rule 4-3 (hereafter, the "Joint Statement"), the parties agree that the foregoing limitation is a means-plus-function limitation. Further,

the Joint Statement reflects that Data Treasury's proposed function for this particular limitation is "calculating debits and credits among the participating members." As of the August 7, 1989 filing date of the application for the '007 Patent, and June 7, 1988, the filing date of the priority application for the '007 Patent, a programmable computer and application software were required to perform the recited function. A programmable computer (with its communication-related hardware and its operating system and standard support software) alone could not perform the recited function. In order to perform the recited function, additional application software would need to be written or obtained from third parties. The '007 Patent does not indicate whether such application software exists or was known, or the algorithm such software would implement. Specifically, the '007 Patent does not provide a flowchart, mathematical equation(s), pseudo-code, source code, or description in its specification that could constitute an algorithm corresponding with this function. Further, the '007 Patent does not identify any known or commercially available application software that could be used to perform the recited function. Thus, the '007 Patent fails to disclose even one algorithm for achieving the recited function.

      8.    Claim 1 of the '007 Patent includes the following limitation: "a cycling means interrelated with the central processing unit (a) for controlling the physical transport of the financial instruments among the institutions and (b) for controlling the means for calculating such that a final calculation of the debits and credits owing from or payable to, with respect to each of the institutions with regard to each other of the institutions, comprising the occurrence of the regular periodic settlement among the institutions, does not occur until pre-determined local settlements by the institutions in

the pre-selected sites with institutions that are not among the number of pre-selected financial institutions, are completed." As reflected in the Joint Claim Construction and Prehearing Statement in Compliance with Patent Rule 4-3 (hereafter, the "Joint Statement"), the parties agree that the foregoing limitation is a means-plus-function limitation. Further, the Joint Statement reflects that Data Treasury's proposed function for this particular limitation is "cycling interrelated with the central processing unit (a) for controlling the physical transport of the financial instruments among the institutions and (b) for controlling the means for calculating such that a final calculation ... does not occur until pre-determined local settlements ... are completed." As of the August 7, 1989 filing date of the application for the '007 Patent, and June 7, 1988, the filing date of the priority application for the '007 Patent, a programmable computer and application software were required to perform the recited function. A programmable computer (with its communication-related hardware and its operating system and standard support software) alone could not perform the recited function. In order to perform the recited function, additional application software would need to be written or obtained from third parties. The '007 Patent does not indicate whether such application software exists or was known, or the algorithm such software would implement. Specifically, the '007 Patent does not provide a flowchart, mathematical equation(s), pseudo-code, source code, or description in its specification that could constitute an algorithm corresponding with this function. Further, the '007 Patent does not identify any known or commercially available application software that could be used to perform the recited function. Thus, the '007 Patent fails to disclose even one algorithm for achieving the recited function.

9. Claim 4 of the '007 Patent includes the following limitation: "means for calculating debits and credits owing from or payable (1) to one member to another member and (2) from or to one member to all other members, based upon the value of instruments reported by a participant as having been sent and received." As reflected in the Joint Claim Construction and Prehearing Statement in Compliance with Patent Rule 4-3 (hereafter, the "Joint Statement"), the parties agree that the foregoing limitation is a means-plus-function limitation. Further, the Joint Statement reflects that Data Treasury's proposed function for this particular limitation is "calculating debits and credits among the participating members." As of the August 7, 1989 filing date of the application for the '007 Patent, and June 7, 1988, the filing date of the priority application for the '007 Patent, a programmable computer and application software were required to perform the recited function. A programmable computer (with its communication-related hardware and its operating system and standard support software) alone could not perform the recited function. In order to perform the recited function, additional application software would need to be written or obtained from third parties. The '007 Patent does not indicate whether such application software exists or was known, or the algorithm such software would implement. Specifically, the '007 Patent does not provide a flowchart, mathematical equation(s), pseudo-code, source code, or description in its specification that could constitute an algorithm corresponding with this function. Further, the '007 Patent does not identify any known or commercially available application software that could be used to perform the recited function. Thus, the '007 Patent fails to disclose even one algorithm for achieving the recited function.

10.  Claim 4 of the '007 Patent includes the following limitation: "means for receiving and recording a participant's reports of the value and transit status of the instruments to be cleared as having been sent and received with respect to all participants in the system." As reflected in the Joint Claim Construction and Prehearing Statement in Compliance with Patent Rule 4-3 (hereafter, the "Joint Statement"), the parties agree that the foregoing limitation is a means-plus-function limitation. Further, the Joint Statement reflects that the function for this particular limitation is "receiving and recording a participant's reports of the value and transit status of the instruments to be cleared as having been sent and received with respect to all participants in the system." As of the August 7, 1989 filing date of the application for the '007 Patent, and June 7, 1988, the filing date of the priority application for the '007 Patent, a programmable computer and application software were required to perform the recited function. A programmable computer (with its communication-related hardware and its operating system and standard support software) alone could not perform the recited function. In order to perform the recited function, additional application software would need to be written or obtained from third parties. The '007 Patent does not indicate whether such application software exists or was known, or the algorithm such software would implement. Specifically, the '007 Patent does not provide a flowchart, mathematical equation(s), pseudo-code, source code, or description in its specification that could constitute an algorithm corresponding with this function. Further, the '007 Patent does not identify any known or commercially available application software that could be used to perform the recited function. Thus, the '007 Patent fails to disclose even one algorithm for achieving the recited function.

11. Claim 4 of the '007 Patent includes the following limitation: "means for monitoring on a real time as reported basis (1) the actual sending from and receipt by a participant of the value of instruments being cleared as reported by the participants, and (2) the sending from and receipt by a participant of the actual instruments being cleared, said means for monitoring being operatively interconnected to the means for calculating whereby debits and credits owing from one member to another may be determined and monitored on a continuous basis in real time as reports of the value and transit status of the instruments to be cleared are reported by the participants and received by the processing unit." As reflected in the Joint Claim Construction and Prehearing Statement in Compliance with Patent Rule 4-3 (hereafter, the "Joint Statement"), the parties agree that the foregoing limitation is a means-plus-function limitation. Further, the Joint Statement reflects that Data Treasury's proposed function for this particular limitation is "monitoring on a real time as reported basis." As of the August 7, 1989 filing date of the application for the '007 Patent, and June 7, 1988, the filing date of the priority application for the '007 Patent, a programmable computer and application software were required to perform the recited function. A programmable computer (with its communication-related hardware and its operating system and standard support software) alone could not perform the recited function. In order to perform the recited function, additional application software would need to be written or obtained from third parties. The '007 Patent does not indicate whether such application software exists or was known, or the algorithm such software would implement. Specifically, the '007 Patent does not provide a flowchart, mathematical equation(s), pseudo-code, source code, or description in its specification that could constitute an algorithm corresponding with this function.

Further, the '007 Patent does not identify any known or commercially available application software that could be used to perform the recited function. Thus, the '007 Patent fails to disclose even one algorithm for achieving the recited function.

12. I declare under penalty of perjury that all of the foregoing is true and correct.

FURTHER, DECLARANT SAYETH NOT.

Executed on this __23__rd day of May, 2007, Minneapolis, Minnesota.

_____
Dr. Dewayne E. Perry

90224424.doc

**DECLARATION OF DR. DEWAYNE E. PERRY- Page 11**