## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **DATATREASURY CORPORATION,** | |
| **Plaintiff** | |
| **v.** | **2:06-CV-72 DF** |
| **WELLS FARGO & COMPANY, ET AL.,** | |
| **Defendants** | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## FOR CLAIM INVALIDITY BASED ON
## INDEFINITENESS OF U.S. PATENT NO. 5,930,778

The Federal Circuit's newly-rendered *Biomedino* decision[1] confirms that all but one of the asserted claims of U.S. Patent 5,930,778 ("the '778 Patent")[2] fail to meet the definiteness requirement of 35 U.S.C. § 112, ¶¶ 2 and 6, thus rendering these claims invalid as a matter of law. Accordingly, the Court should grant summary judgment on this patent now, at a point early enough in the case to spare both the Court and the parties the time and expense of arguing and deciding *Markman* issues for this patent.[3] In short, the Court should grant summary judgment as to Claims 1 through 6 of the '778 Patent because:

- Section 112, ¶¶ 2 and 6 require that a patent provide descriptions of corresponding structure when, as here, means-plus-function claim elements are utilized;

---

[1]  *Biomedino, LLC v. Waters Techs. Corp.*, ---F.3d ----, 2007 WL 1732121 (Fed. Cir. June 18, 2007).

[2]  The '778 Patent is attached as Exhibit A to this Motion.

[3]  Plaintiff has also asserted Claim 11 of the '778 Patent against First Data Corporation. Claim 11 is not the subject of this motion. Accordingly, should the Court grant the instant motion, it is left with only a single claim against a single defendant for purposes of conducting its September 2007 *Markman* hearing on the '778 Patent and the same is true of any trial on this patent.

- Federal Circuit law holds that the corresponding structure for a means-plus-function software claim term is defined by the algorithms contained in the patent;

- Both independent claims (1 and 5), and one of the dependent claims (2), include means-plus-function software claim terms; and

- The lack of any algorithms in the '778 Patent for these means-plus-function software claim terms requires a finding of invalidity with respect to both independent claims, and all claims that depend on them.

Accordingly, pursuant to Rule 56, Defendants Bank of America Corporation, Bank of America, N.A., (collectively "Bank of America"); First Data Corporation, ("First Data"); Remitco, LLC; Telecheck Services, Inc.; Wachovia Bank, N.A., and Wachovia Corporation, (Collectively "Wachovia")(movants collectively "Defendants") request entry of judgment as a matter of law that Claims 1 through 6 of the '778 Patent are invalid for failure to meet the definiteness requirements of 35 U.S.C. § 112, ¶¶ 2 and 6.[4] Because all but one of the asserted claims of the '778 Patent are invalid for indefiniteness, the Court's granting of this motion significantly narrows this case by obviating the need for a claim construction hearing on all but a single claim of the '778 Patent and reducing further proceedings in this case regarding the '778 Patent to a single claim against a single Defendant.

## I.     STATEMENT OF UNDISPUTED FACTS

A.     The parties agree that independent Claim 1 of the '778 Patent includes at least one software claim term that is a "means-plus-function" limitation subject to § 112, ¶ 6.

B.     The parties agree that dependent Claim 2 of the '778 Patent includes at least one software claim term that is a "means-plus-function" limitation

---

[4]     DataTreasury has asserted Claims 1-6 of the '778 Patent against Defendants. As previously stated, the only claim not disposed of by the instant motion is Claim 11 which is asserted against First Data only.

subject to § 112, ¶ 6.

C.     The parties agree that independent Claim 5 of the '778 Patent includes at least three software claim terms that are "means-plus-function" limitations subject to § 112, ¶ 6.

D.     The '778 Patent does not include a flowchart.

E.     The '778 Patent does not include mathematical equations.

F.     The '778 Patent does not include source code.

## II.     ARGUMENTS AND AUTHORITIES

### A.     Summary Judgment Is Proper When Asserted Claims of a Patent Are Invalid.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law."[5]   In patent cases, a determination of claim indefiniteness in means-plus-function claims presents a question of law for the Court.[6] An indefiniteness analysis of the claims requires neither discovery nor a trial; indeed, courts have specifically recognized that the issue lends itself to a summary adjudication.[7] Moreover, if even a single phrase or term renders a claim indefinite, that claim and every claim that depends on it are invalid as a matter of law.[8]   In other words, the Court may appropriately enter summary judgment against the plaintiff where the only asserted

---

[5]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[6]   *See Biomedino*,  --- F.3d ----, 2007 WL 1732121, at *2; *see also Atmel Corp. v. Information Storage Devices*, 198 F.3d 1374, 1378 (Fed. Cir. 1999) *(citing Personalized Media Communications, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998))*.

[7]   *See IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005) (affirming the District Court's finding on summary judgment that the patent claim was invalid for being indefinite); *see also Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005); *Default Proof Credit Card Sys., Inc. v. Home Depot USA, Inc.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005).

[8]   *See Datamize*, 417 F.3d at 1350-51.

independent claims of the '778 Patent are invalid as indefinite under 35 U.S.C. §112, ¶ 2 for lack of structure required under 35 U.S.C. § 112, ¶ 6.[9]

> **B.**      **Algorithms Are Required Structure for Means-Plus-Function Software-Implemented Claim Terms.**
>
>> 1.      *Where a Function of a Means-Plus-Function Claim is to be Carried out by Software, Federal Circuit Law Requires Specific Disclosure of the Algorithm as Structure for Such Claims.*

Under 35 U.S.C. § 112, ¶ 6, "[a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of the structure . . . in support thereof, and such claim shall be construed to cover the corresponding structure . . . described in the specification and equivalents thereof." This provision allows patentees to draft claims in shorthand by employing means-plus-function language, but it requires "a patentee to clearly link or associate structure with the claimed function [as] the *quid pro quo*" for using this shorthand method of claiming.[10] "Structure disclosed in the specification is corresponding structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim."[11] A failure to include the required structure in the patent renders the claim and any dependant claim indefinite and invalid under section 112.[12] This fatal omission is not correctable by extrinsic evidence or expert testimony, as the structure must be disclosed and linked to the function at issue in the patent itself and cannot be subsequently supplied by one skilled in the art or a creative lawyer.[13]

---

[9]     *See Default Proof Credit Card System*, 412 F.3d at 1303 (affirming summary judgment based on indefiniteness of a means-plus-function claim against a patentee).

[10]    *Medical Instrumentation and Diagnostics Corp. v. Elekta AB* ("MIDCO"), 344 F.3d 1205, 1211 (Fed. Cir. 2003); *see also Biomedino*, --- F.3d ----, 2007 WL 1732121, at *1.

[11]    *Id.* at 1210 (internal quotations omitted); *see also Datamiz*e, 417 F.3d at 1347; *Chimie v. PPG Indus. Inc.*, 402 F.3d 1371, 1379 (Fed. Cir. 2005); *Honeywell Intl., Inc. v. Int'l Trade Commission*, 391 F.3d 1332, 1339 (Fed. Cir. 2003).

[12]    *Id.* at 1211-12.

[13]    *See Biomedino*, --- F.3d ----, 2007 WL 1732121, at *9-11 ("a proper indefiniteness analysis 'asks first whether structure <u>is</u> described in the specification, and, if so, whether one skilled in the art would identify the structure from the description"); *Touchcom, Inc. v. Dresser, Inc.*, 427 F. Supp. 2d 730, 736 (E.D. Tex. 2005) (Ward, J.).

When, as in this case, a means-plus-function claim term is a software claim term,[14] it "is limited to the corresponding structure disclosed in the specification and equivalents thereof, and <u>the corresponding structure is the algorithm</u>."[15] An algorithm is a finite list of instructions for performing a required function.[16] Accordingly, each step of the algorithm necessary to perform the claimed function must be precisely defined in the patent because the algorithm defines the structure corresponding to the claimed function – and the ultimate scope of the claimed invention.[17] For example, "[t]he <u>structure</u> of a microprocessor programmed to carry out an algorithm <u>is limited by the disclosed algorithm</u>."[18] Both the Federal Circuit and the Honorable T. John Ward of this district have made clear that when software-enabled means are linked to a claimed function, the structure for performing that function is limited to the algorithm, if any, disclosed in the patent specification.[19]

---

[14] Neither the Federal Circuit nor any other court has ever drawn any distinction between "software patents" and "financial service patents" or patents in any other area of technology. Rather, when functions for means-plus function claim terms are computer-implemented, the standard is the same no matter what the subject matter of the patent. Indeed, this standard has been applied in cases involving patents directed to systems for paying at the gas pump, *Touchcom*, 427 F. Supp. 2d at 730; systems for dispensing pre-paid debit cards, *Default Proof*, 412 F.3d at 1291; and electronic slot machines, *WMS Gaming*, 184 F.3d at 1339.

[15] *Harris Corp. v. Ericsson Inc*., 417 F.3d 1241, 1253 (Fed. Cir. 2005) (emphasis added); *see also Overhead Door Corp. v. Chamberlain Group, Inc.*, 194 F.3d 1261, 1273 (Fed. Cir. 1999). As defined by Newton's Telecom dictionary, such an algorithm would comprise "a prescribed finite set of well-defined rules or processes for the solution of a problem in a finite number of steps." Newton's Telecom Dictionary at 55 (19th ed. 2003). *See also WMS Gaming, Inc. v. Int'l Game Tech*., 184 F.3d 1339, 1348-49 (Fed. Cir. 1999); *Tehrani v. Hamilton Medical Research Inc.*, 2003 WL 21360705, at *6 (Fed. Cir. June 13, 2003) (reversed and remanded to determine "the precise algorithm that is part of the recited structure"); *Harris Corp.,* 417 F.3d at 1253.

[16] *Id.*

[17] See *WMS Gaming,* 184 F.3d at 1348-49; *Tehrani,* 2003 WL 21360705, at *6 (Fed. Cir. June 13, 2003) (reversed and remanded to determine "the precise algorithm that is part of the recited structure"); *Gobeli Research, Ltd. v. Apple Computer, Inc.*, 384 F. Supp 2d 1016, 1022-23 (E.D. Tex. 2005) (Ward, J.). Indeed, to do otherwise would allow means-plus-function claims to become an open-ended vehicle for claiming broad patent rights, which was not Congress' intent in allowing this short-hand claiming tool. *See MIDCO*, 344 F.3d at 1211.

[18] *WMS Gaming, Inc.*, 184 F.3d at 1348 (emphasis added).

[19] In *Gobeli Research*, 384 F. Supp. 2d at 1022-23, Judge Ward specifically recognized and followed this principle of law.

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR INVALIDITY OF THE '778 PATENT BASED ON INDEFINITENESS  - Page 5**

2.     *Federal Circuit and Eastern District Law Provides Algorithms are Disclosed in Only Four Ways—None of Which are Present in the '778 Patent.*

An algorithm is a finite list of instructions for performing a function.  For means-plus-function software terms, such as those in the '778 Patent, the patent specification must contain sufficient algorithms to teach the patent reader how to perform the particular function.[20]  As Judge Ward found in *Gobeli Research*, there are four accepted methods for disclosing such an algorithm in a patent:

- A mathematical equation or expression;

- Flowcharts;

- Actual source code; or

- Other detailed description of the algorithm in the patent specification.[21]

In this case, it is undisputed that the '778 Patent does not include mathematical equations or expressions, flowcharts or actual source code.  Accordingly, to be valid under Section 112, the '778 Patent must have a detailed description of the algorithms allowing the patent reader to create software that implements the claimed solutions.  Otherwise, the patent merely describes the problems without providing the solutions and is invalid as a matter of law.

The '778 Patent does not include any discussion of any algorithms in its specification or prosecution history that might serve as the corresponding structures for the claimed functions.  This failure to include an algorithm in the specification or prosecution history that is the corresponding structure for the claimed function invalidates the claim as a matter of law, making summary judgment appropriate.[22]

---

[20]   *See supra* note 15.

[21]   *Gobeli Research, Ltd.*, 384 F. Supp. 2d 1016 at 1022-23; *see also Touchcom*, 427 F. Supp. 2d at 734-35 (Ward, J.).

[22]   *See Gobeli Research*, 384 F. Supp. 2d at 1023 ("Failure to provide the algorithm in the specification is fatal….").  In addition, the algorithm – the structure – cannot be pulled out of thin air nor can the patentee refer to a hypothetical person of skill in the art who could create software even absent an algorithm.  As Judge Ward concluded in *Touchcom*, "[t]hat one of skill in the art could create structure sufficient to perform a function is not the inquiry" – the patent must disclose the actual software algorithm.  *Touchcom,* 427 F. Supp. 2d at 736.  Furthermore, the structure relied on must be clearly

Additionally, DataTreasury's proposed structures of accounting systems, CPUs or sorters -- improper structures to begin with -- could only serve as structure if they were clearly linked to the specifically claimed function in the patent – and here they are not.[23]  Thus, not only is the '778 Patent's omission of algorithms fatal to its claims, but its failure to link or associate the structures argued by Plaintiff as structure for the claims at issue provides an additional basis for granting summary judgment in this case.

> **C.**    **The Five "Means-Plus-Function" Software Claim Terms in the '778 Patent Are Indefinite Because There Is No Algorithm Clearly Linked With The Corresponding Functions.**

Within independent Claim 1 and Claim 5, and dependent Claim 2, there are five software claim terms.  The parties agree that all of these software claim terms are governed by 35 U.S.C. §112, ¶ 6 as mean-plus-function elements.[24]  Although the parties disagree on the proposed functions for four of these five terms, for purposes of this motion, Bank of America adopts DataTreasury's proposed functions.  As more particularly developed below, the '778 Patent does not disclose any algorithms for any of the software terms[25] rendering the '778 Patent indefinite and invalid a matter of law.  Even if algorithms were not legally required structure for the claims at issue -- which they are -- DataTreasury's proposed "structures" are legally barred from serving as structure for the claims because there is no clear link in the '778 Patent between DataTreasury's proposed structure and the claimed functions.  This failure of the '778 Patent to clearly link any structure with the claimed function equates to a complete absence of structure and renders the claims invalid as indefinite.  For the Court's

---

linked to the recited function.  The '778 Patent's failure to clearly associate or link the alleged structure with the claimed function causes the claims to lack structure and renders them  fatally indefinite. *MIDCO*, 344 F.3d at 1211-12; s*ee also Datamiz*e, 417 F.3d at 1347; *Chimie v. PPG Indus. Inc.*, 402 F.3d 1371, 1379 (Fed. Cir. 2005); *Honeywell Intl.,* 391 F.3d at 1339.

[23]    *MIDCO*, 344 F.3d at 1211-12; s*ee also Datamiz*e, 417 F.3d at 1347; *Chimie,* 402 F.3d at 1379; *Honeywell Intl.,* 391 F.3d at 1339.

[24]    Joint Claim Construction Statement, Exhibit B, listing elements at issue in this motion and DataTreasury's proposed construction of those elements.

[25]    Declaration of DeWayne E. Perry ("Perry Decl.") at ¶¶ 4-8, attached as Exhibit C to this Motion.

convenience, the following chart shows the five terms at issue that the parties agree are subject to section 112, ¶ 6 and claim software-implemented functions:

---

**Independent Claim 1:**

1. *"means for associating said financial information with the payee's records of accounts based upon information derived from the payment stub accompanying the instrument for further processing by the payee"*

**Agreed Function:** Associating said financial information with the payee's records of accounts based upon information derived from the payment stub accompanying the instrument for further processing by the payee.

**DataTreasury's Proposed Structure:** the accounting system and personnel [Fig. 2, 5] [FIG. 2, 5 points to a picture of a computer]:[26]



---

**Dependent Claim 2:**

2. *"means for adding to the record of each instrument an indorsement indicia on behalf of each of payee and the bank"*

**DataTreasury's Proposed Function:** Adding to the record of each instrument an indorsement indicia.

**DataTreasury's Proposed Structure:** A sorter.[27]

---

**Independent Claim 5:**

3. *"means for associating said information with the payee's records of accounts corresponding to the payment form"*

**DataTreasury's Proposed Function:** Associating said financial information with payee's record of accounts corresponding to the payment form.

---

[26]    Joint Claim Construction Statement, Exhibit B, page E3 (emphasis added).
[27]    Joint Claim Construction Statement, Exhibit B, page E5 (emphasis added).

**DataTreasury's Proposed Structure:**  The accounting system and personnel [Fig. 2, 5] [Fig. 2, 5 points to a picture of a computer][28]



4.  "*means at said facility for preparing at least one cash letter for association with each bundled group of instruments*"

**DataTreasury's Proposed Function:** Preparing at least one cash letter at said facility.

**DataTreasury's Proposed Structure:**  Sorter at the depository bank.[29]

5.  "*means for assembling information scanned from the instruments into a transmittable record with respect to each instrument in a correspondence with the bundled groups and cash letters for communication to the bank*"

**DataTreasury's Proposed Function:** Assembling information scanned from the instruments into a transmittable record.

**Bank of America's Proposed Function:**  Assembling information scanned from the instruments into a transmittable record with respect to each instrument in a correspondence with the bundled groups and cash letters for communication to the bank.

**DataTreasury's Proposed Structure:**  A sorter or processor.[30]

Since the parties agree that section 112, ¶ 6 applies to the five claim terms at issue, the Court must examine the specification to determine the existence, if any, of structure corresponding to the functions.  Since DataTreasury advocates a function necessarily performed through software, this Court must determine the specific computer algorithm, if any, disclosed in the specification for performing the claimed function.  Additionally,

---

[28]    Joint Claim Construction Statement, Exhibit B, page E5 (emphasis added).
[29]    Joint Claim Construction Statement, Exhibit B, page E7 (emphasis added).
[30]    Joint Claim Construction Statement, Exhibit B, page E7 (emphasis added).

the Court must find that the language of the '778 Patent clearly links the structure to the claimed functions. As discussed below, the '778 Patent fails to meet these requirements, and therefore, its claims are indefinite and invalid as a matter of law.

      1.    *The '778 Patent Lacks Structure for the Function of "associating . . . information with the payee's records of accounts" in Independent Claim 1 and Claim 5.*

The two "means for associating" terms in Claims 1 and 5 each recite a claimed function of "associating said financial information with the payee's records of account."[31] It is undisputed that these two "means for associating" claim terms are computer-implemented claim terms and DataTreasury acknowledges them as software claim terms.[32] In fact, DataTreasury identifies a computer as performing the function. Accordingly, the Court must determine the specific computer algorithm, if any, disclosed in the specification for performing the claimed function of "associating said financial information with the payee's records of accounts. . . ." A review of the '778 Patent confirms a complete lack of mathematical equations, source code, or software flow charts. Accordingly, within the '778 Patent there must be a detailed description of the algorithm for this function sufficient to teach how the function is accomplished. There is no such discussion in the '778 Patent[33] and thus, the patent must be found invalid for indefiniteness.

DataTreasury attempts to identify the payee's accounting computer, represented in Figure 2, box 5, as the proposed "structure" for both independent claims. A computer

---

[31]    The two "associating" functions are present in the following terms from Claims 1 and 5: (Claim 1) "means for associating said financial information with the payee's records of accounts based upon information derived from the payment stub accompanying the instrument for further processing by the payee"; and (Claim 5) "means for associating said information with the payee's records of accounts corresponding to the payment form."

[32]    Joint Claim Construction Statement, Exhibit B, pages E3, E5.

[33]    Perry Decl. at ¶¶ 4 and 6-8, Exhibit C.

labeled "Check Payee Accounting," as shown in Figure 2 at 5, cannot be the "specific algorithm" required as structure for computer-implemented "means-plus-function" terms.[34]  The identified picture of a computer fails to provide structure, algorithms, or any other indication of how to perform the recited functions.  Such a proposed "structure" does not meet the definiteness requirements of Section 112.

Moreover, the function requires "associating said financial information *with the payee's records of accounts…*" the italicized phrase referring to the Check Payee Accounting at box 5 in Figure 2.  Using DataTreasury's proposed structure is circular (and illogical) because it results in "*Check Payee Accounting* associating financial information with *Check Payee Accounting.*"  Certainly, the Check Payee Accounting cannot associate financial information with itself.  In addition, Plaintiff's proposed structure of "Check Payee Accounting (5)" has *no clear link* to the agreed to function of "associating said financial information with the payee's records of accounts" as required by section 112.[35]  The '778 Patent describes Check Payee Accounting (5) as follows:

> FIG. 1 also shows the accounting function of the check payee 5 following the electronic scanning of the data from the check 6. Payee accounting 5 may also include the processing of payment stubs directly from the payee receiving item capture function 4 in place of, or in addition to, the processing of information from the check. The information flow within the check payee's organization from item capture 4 to the check payee accounting function 5 is a matter of payee preference.[36]

---

[34]   *See WMS Gaming*, 184 F.3d at 1348-49 (rejecting the argument that corresponding structure was merely "an algorithm executed by a computer," and holding instead that it was limited to the specific algorithm disclosed in the specification).

[35]   *See, e.g., MIDCO*, 344 F.3d at 1212.

[36]   The '778 Patent at 8:1-9. The '778 Patent mentions the check payee's accounting (5) only **two** other times: 1) "*Item* capture 4 will typically occur at a location convenient to the *payee's accounting functions* 5," '778 Patent at 7:9-11, and "The checks are received at item capture site 4, scanned 6, *accounted for* 5, and imaged 7, in a manner explained with respect to Example 1." '778 Patent at 10:61-63.  Neither reference links any structure to the "associating" function.

This description does not mention associating financial information with the particular payee's accounting records. More importantly, even if the '778 Patent showed a clear link between Check Payee Accounting (5) and "associating said financial information with the particular payee's accounting records," the '778 Patent specifically disclaims particular algorithms for <u>any</u> processing by Check Payee Accounting (5) and instead <u>leaves it exclusively to the payee's preference</u>. Such a lack of guidance is flatly insufficient under § 112, ¶ 6, fails to provide notice as required by § 112, ¶ 2 and renders the claims fatally indefinite.[37]

Simply stated, DataTreasury cannot direct the Court to a disclosure of any of the acceptable forms of a required algorithm necessary for performing the associating functions claimed in the independent Claim 1 or Claim 5. Nowhere within the four corners of the '778 Patent can one find, as the law requires, a "precise algorithm that is part of the recited structure."[38] Moreover, an examination of DataTreasury's proposed structure, demonstrates that not only is the structure not an algorithm, but also that it lacks any clear association in the '778 Patent with the functions at issue. As a result, both Claims 1 and 5 (and their respective dependant claims) are invalid as a matter of law.

---

[37] Specifically, the Federal Circuit in *Datamize* ruled that "[t]he scope of claim language cannot depend solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention." *Datamize*, 417 F.3d at 1350; *see also Application of Musgrave*, 431 F.2d 882, 893 (1970) (noting that "[a] step requiring the exercise of subjective judgment without restriction might be objectionable as rendering a claim indefinite.")

[38] *Tehrani*, 2003 WL 21360705, at *6.

2.  *The '778 Patent contains no algorithm for the claimed "adding to the record," "preparing . . . one cash letter," and "assembling information" functions.*[39]

With respect to the three remaining claim terms at issue ("adding to the record," "preparing… one cash letter," and "assembling information"*)*, DataTreasury proposed only a "sorter" (or a "processor") as structure.  However, much like a CPU, a sorter without software cannot function, much less perform the specialized tasks described in these claims.  DTC's proposed sorter for the '778 Patent requires customized software in order to perform the functions recited in Claims 2 and 5.  Sorters simply do not include such software without additional programming.[40]  In fact, absent particular software to instruct the machine how to go about its intended function, a sorter becomes nothing more than a large, grey paperweight.[41]  Here the '778 Patent contains no disclosure as to the specialized software required or any algorithm for such software and thus Claims 2 and 5 lack structure.

This case differs from a recent case in this district involving specifically identified off-the-shelf software in that the '778 Patent does not disclose any specific software in use in the sorters it alleges as structure.  In contrast, in the *Amazon* case, Judge T. John Ward of this district found structure associated with computer hardware where the

---

[39]  These *functions* are expressed in the following elements from Claims 2 and 5: (2) "means for adding to the record of each instrument an indorsement indicia on behalf of each of payee and the bank"; (5) "means at said facility for preparing at least one cash letter for association with each bundled group of instruments"; (5) "means for assembling information scanned from the instruments into a transmittable record with respect to each instrument in a correspondence with the bundled groups and cash letters for communication to the bank"

[40]  Declaration of Thomas Gallman, attached as Exhibit D to this Motion.  *See also* Declaration of Karl T. Sammons, attached as Exhibit E to this Motion.

[41]  As stated recently by Justice Alito:  "[A]n inventor can patent a machine that carries out a certain process, and a computer may constitute such a machine, when it executes commands—given to it by code—that allow it to carry out that process.  Such a computer would not become an infringing device until enough of the code is installed on the computer to allow it to execute the process in question."  *Microsoft Corp. v. AT&T Corp.*, --- U.S. ----, 2007 WL 1237838, at *14 (April 30, 2007) (Alito, J., concurring).  As in *Microsoft*, computers and sorters such as those at issue in the '778 Patent do not become infringing devices until software is installed allowing them to execute the process in question.

specification disclosed a *specific, well-known, commercially available* software module-CADCENTERS- for performing the function.[42]  Judge Ward was able to find that "the patent disclosed certain hardware associated with the customer's computer 'that is configured to operate under the control of a copyrighted communications software module available from CADCENTERS in Indianapolis, Indiana, or its equivalent.'"[43] However, in that case infringement was limited to devices using the CADCENTERS software module and equivalents, not just any software that could perform the specified function.  The '778 Patent discloses no such specific, well-known, commercially available software, leaving only a "sorter", without programming to accomplish the very specific functions delineated in the '778 patent, thus distinguishing this case from the *Amazon* matter.[44]

The law also requires that the '778 Patent disclose algorithms clearly linked with each of the three claimed functions "adding to the record," "preparing . . . one cash letter," and "assembling information", but no such algorithms are found within the '778 Patent.  In fact, each of the three terms suffers the same deficiency – the detailed description mentions the function, but does not describe the algorithm (e.g., how to achieve that function).[45]  For example, Claim 2 requires an electronic indorsement of the electronic record: "means for **adding to the record of each instrument an indorsement**

---

[42]  *Charles E. Hill & Assocs., Inc. v. Amazon.com*, 2005 WL 2483510, at *12  (E.D. Tex. Oct. 7, 2005) (Ward, J.).

[43]  *Id.*

[44]  Likewise, this case is readily distinguished from Magistrate Love's decision in *Advanceme, Inc. v. Rapidpay, LLC*, No. 6:05CV424, No. 6:06CV082, 2006 WL 3761975, at *9-10 (E.D. Tex. Dec. 21, 2006).  In that case, the device at issue, a modem, was found to be hard-wired to accomplish the function at issue ("receiving") with no need for a control element or software (and thus no algorithm) to perform that function.  A sorter is far from being "hard-wired" to perform the preparation of cash letter function in Claim 1 and, unlike the modem at issue in *Advanceme*, requires significant control via software to be able to perform such functions.

[45]  Perry Decl.¶¶ 5-8, Exhibit C.

indicia on behalf of each of payee and the bank." But the <u>sole</u> reference in the detailed description of such electronic indorsements of the electronic records (as opposed to the physical checks) is at column 7, lines 50-53. This lone reference mentions only that,

> [in] the typical practice of the invention, *electronic indorsements on behalf of the payee and the depository bank will be applied to the electronic record of the check*; and a document identification number will also be generated and added to the electronic record of the check to aid in subsequent location and retrieval of the information concerning the particular check.[46]

The description in the patent merely restates the result, an electronic indorsement inside an electronic record; it fails to describe <u>how</u> to indorse an electronic record.

Turning to Claim 5 of the '778 Patent, the operative clause requires a "means at said facility for **preparing at least one cash letter** for association with each bundled group of instruments." As with the other terms, the patent discloses no algorithm describing how to prepare at least one cash letter for the physical checks (as opposed to the electronic records).

For example, columns 11 and 12 of the '778 Patent reference physical cash letter creation in three separate places: (1) Col. 11, ll. 22-24, (2) Col. 11, ll. 45-48, and (3) Col. 12, ll. 55-57. Specifically, these references provide:

> 1) "The paper check in this embodiment is processed by indorsing, sorting, bundling, routing, and the generation of a physical cash letter to accompany the physical bundle (or bundles) of checks through the payment system."

> 2) "The mechanical processing of checks at payee's location 18 will also include the generation of physical cash letters 20 to accompany the bundles of sorted checks into the payment system 12."

> 3) "For example, the electronic scanning of the checks 6 may be performed by the same physical equipment at substantially the same time as the mechanical sorting and indorsing 18 and 19, and the preparation of cash letters 20. Other modifications will be obvious to those of skill in the art."

---

[46] The '778 Patent at 7:50-53.

As with the indorsement term in Claim 2 above, all of these references simply mention that a function is performed. They do not tell the patent reader how to perform the function which is the legally-required disclosure. Thus, like Claim 2, this claim is indefinite and invalid as a matter of law.

Similarly, the '778 Patent fails to elaborate on the Claim 5 term: "means for **assembling information** scanned from the instruments into a transmittable record with respect to each instrument **in a correspondence with** the bundled groups and cash letters for communication to the bank."[47] Here it is important to note that the key term "assembling" is not mentioned at all in the detailed description; nor is "correspondence."[48] For example, the '778 Patent twice alludes to "grouped" or "bundled" information, but neglects to mention <u>how</u> the information was grouped or bundled.[49] Given that the claim requires correspondence between the assembled information and the "bundled groups and cash letters," the importance of the technique for assembling (grouping) this information is plain. Given that the required structure is missing, Claim 5 is invalid.

---

[47]  DataTreasury's proposed function for this term is incorrect as a matter of law, because DataTreasury impermissibly seeks to truncate the function explicitly stated in the claim. A court may not construe a means-plus-function limitation "by adopting a function different from that explicitly recited in the claim." *Micro Chem., Inc. v. Great Plains Chem. Co., Inc.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999). Thus, the proper function is the one explicitly stated in Claim 5 – the one proffered by Bank of America.

[48]  The Summary merely states this information may be transmitted, the assembly of such information is omitted: "Information pertaining to the checks and/or the cash letters in anticipation of a deposit in the payee's account corresponding to a cash letter (or cash letters) is transmitted from the payee to the collecting and clearing depository bank." 5:27-31.

[49]  See the '778 Patent, 9:26-28 and 11:2-6 respectively. For sake of this Motion alone, Bank of America will look beyond the redundant terminology of groups, bundles, and so on in this claim term.

3.     *DataTreasury's proposed structure of a "Sorter" is not linked to the Functions Claimed by the '778 Patent in Claims 2 and 5.*

DataTreasury improperly proposes a "sorter" as the corresponding structure that is claimed to perform the functions of  "adding to the record," "preparing… one cash letter," and "assembling information" in Claims 2 and 5.   However, the '778 Patent contains no link between DataTreasury's proposed structure and any of these three functions.  As a result, DataTreasury cannot rely on this structure to support the claims at issue, and thus, these claims lack structure and fail for indefiniteness.

For example, Data Treasury proposes a "sorter" as structure to perform the function of "adding to the record of each instrument an indorsement indicia."  This element clearly requires an <u>electronic</u> addition to the "record of each instrument," not  the addition of an indorsement to the physical instrument.   However, nothing in DataTreasury's intrinsic evidence shows a sorter performing this function.[50]   Rather, DataTreasury's cited intrinsic evidence only discusses a sorter "indorsing the checks"[51]- the *physical* checks themselves, and "mechanical sorting of the *paper checks*."[52]   The '778 Patent does not link a sorter to the function of adding indorsement indicia to an electronic record of each instrument from Claim 2.

Similarly, there is no linkage found in Data Treasury's intrinsic evidence for the term "means at said facility for preparing at least one cash letter for association with each bundled group of instruments."  DataTreasury again proposes as structure a "sorter at the depository bank" without identifying intrinsic evidence linking a sorter with the claimed function of preparing the requisite cash letter.  This is not surprising, because a "sorter at

---

[50]    *See* Chart of Intrinsic Evidence, attached as Exhibit F to this Motion.
[51]    The '778 Patent 11:39-40.
[52]    The '778 Patent 5:13.

the depository bank" as the structure for performing this function is *contrary to the clear language of the claim.*  According to the explicit language in Claim 5, any structure for this function must be located at the "item capture facility"- a reference to the "said facility" discussed throughout Claim 5 and not the depository bank as DataTreasury contends.  The language of the '778 Patent does not link DataTreasury's proposed structure and the claimed function, and affirmatively disclaims the very association DataTreasury asserts for this term in Claim 5.

Finally, the language of the '778 Patent does not link the "means for assembling information . . ." and DataTreasury's proposed structure of "[a] sorter or processor."  In addition, the terms "sorter" and "processor" do not even appear in the portion of the '778 Patent cited by DataTreasury.[53]  Indeed, the key function terms for this element of Claim 5, "assembling" and "in correspondence," do not appear in the cited intrinsic evidence or, for that matter, anywhere else in the '778 Patent specification.

In short, each of the software claim terms in the '778 Patent is invalid because the '778 Patent provides no algorithms (the required structure) of any kind for performing the particular function, and because there is no clear linkage between each of DataTreasury's proposed structures and its corresponding function.  Although the failure of even one of these key elements in Claims 1, 2 and 5 (one in Claim 1, one in Claim 2 and three in Claim 5) results in fatal defects in the claims,[54] the indefiniteness of all five of these software claim terms presents this Court with five independent reasons to eliminate all of the '778 claims asserted against Bank of America from this case.[55]

---

[53]   *See* Intrinsic Evidence Chart, Exhibit F.
[54]   *See Datamize*, 417 F.3d at 1347; *see also Touchcom*, 427 F. Supp. 2d at 736-37.
[55]   See *Atmel Corp., 198* F.3d at 1382 (holding "fulfillment of the § 112 ¶ 6 tradeoff cannot be satisfied when there is a total omission of structure.  There must be structure in the specification.").  *See also In*

### D.    DataTreasury Cannot Save the '778 Patent by Extrinsic Evidence or Expert Testimony.

As a matter of law, extrinsic evidence — including expert testimony — will not cure the fatal defects of indefiniteness in the '778 Patent.  DataTreasury cannot offer any evidence or otherwise supplement the '778 patent with expert testimony — as it is settled law that "the testimony of one of ordinary skill in the art *cannot supplant the total absence of structure from the specification*."[56]  As the Federal Circuit recently opined in *Biomedino*, "[t]he inquiry is whether one of skill in the art would understand the specification itself to disclose a structure, not simply whether that person would be capable of implementing a structure . . . Accordingly, a bare statement that known techniques or methods can be used *does not disclose structure*."[57]  Because extrinsic evidence is inappropriate here, additional discovery likewise would not aid the Court in deciding this issue.[58]  The search for structure to carry out the claimed function is limited to the four corners of the patent itself – a fruitless search in this case.  Accordingly, the Court should find the '778 Patent invalid in its entirety due to indefiniteness under 35 U.S.C. § 112, ¶ 6 and must disregard any attempt by DataTreasury to rescue the patent through evidence external to the patent itself.

### III.    CONCLUSION

The Court should invalidate Claims 1 through 6,[59] under 35 U.S.C. Section 112, ¶¶ 2 and 6.  Because the '778 Patent includes no algorithms – and therefore no structure –

---

*re Dossel,* 115 F.3d 942, 945-46 (Fed. Cir. 1997) (holding that if the Court's inquiry reveals no such corresponding structure, the claim is invalid for failure to satisfy the definiteness requirement of section 112.).

[56]    *Default Proof Credit Card System.,* 412 F.3d at 1302 (emphasis added); *see also Touchcom,* 427 F. Supp. 2d at 736 ("It is the patentee's burden to clearly link and associate corresponding structure with the claimed function.  That one of skill in the art could create structure sufficient to perform a function is not the inquiry.")

[57]    *Biomedino,*, --- F.3d ----, 2007 WL 1732121, at *6 (citations omitted) (emphasis added).

[58]    *See Touchcom,* 427 F. Supp. 2d at 736.

[59]    Claim 2 is invalid both because it depends from invalid claim 1 and because it contains an indefinite software means-plus-function term.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR INVALIDITY OF THE '778 PATENT BASED ON INDEFINITENESS  - Page 19**

corresponding to <u>any</u> of the five key computer/software implemented means-plus-function terms in those claims, as required by the Federal Circuit and the previous decisions of the Eastern District of Texas courts, these claims are wholly invalid. The '778 Patent lacks any description of the algorithms necessary to perform the recited functions associated with each of these five elements, and nothing can remedy this fatal flaw. There are no figures, mathematical equations, flowcharts, or any other disclosure sufficient to identify the required algorithms. Thus, summary judgment is required. Furthermore, the '778 Patent contains no clear linkage between DataTreasury's proposed structures and the corresponding claim functions, a second fatal defect warranting summary judgment.

Accordingly, Defendants Bank of America Corporation, Bank of America, N.A., First Data Corporation, Remitco, LLC, Telecheck Services, Inc., Wachovia Bank, N.A., and Wachovia Corporation, respectfully requests that this Court enter summary judgment finding Claims 1 through 6 of the '778 Patent asserted against Defendants invalid as a matter of law and enter judgment for Defendants as to these asserted claims of the '778 Patent.

Dated:  June 28, 2007                    Respectfully submitted,

                                         FISH & RICHARDSON P.C.


                                         By:  /s/Thomas M. Melsheimer
                                              Thomas M. Melsheimer
                                              Texas Bar No. 13922550
                                              1717 Main Street
                                              Suite 5000
                                              Dallas, TX  75201
                                              214-747-5070 (Telephone)
                                              214-747-2091 (Telecopy)

                                              Robert E. Hillman
                                              Fish & Richardson P.C.
                                              225 Franklin Street
                                              Boston, MA  02110-2804
                                              617-542-5070 (Telephone)
                                              617-542-8906 (Telecopy)

                                              Robert M. Parker
                                              Robert Christopher Bunt
                                              Parker & Bunt, P.C.
                                              100 E. Ferguson, Suite 1114
                                              Tyler, Texas 75702
                                              903-531-3535 (Telephone)
                                              903-533-9687 (Telecopy)

                                              Michael E. Jones
                                              Texas Bar No. 10929400
                                              E. Glenn Thames, Jr.
                                              Texas Bar No. 77885097
                                              Potter Minton
                                              500 Plaza Tower
                                              110 North College, Suite 500
                                              Tyler, TX  75702

                                         **Counsel for Defendants**
                                         **BANK OF AMERICA CORPORATION,**
                                         **BANK OF AMERICA, NATIONAL**
                                         **ASSOCIATION**

By:<u>/s/ Thomas M. Melsheimer by</u>
<u>permission on behalf of the following</u>
<u>counsel:</u>

E. Danielle Thompson Williams
KILPATRICK STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC  27101

William H. Boice
Audra Dial
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia  30309-4530

Lance Lee
<u>WLanceLee@aol.com</u>
Texas Bar No. 240004762
YOUNG, PICKETT & LEE, L.L.P.
4122 Texas Blvd.
P.O. Box 1897
Texarkana, Texas 75504
903-794-1303 (Telephone)
903-792-5098 (Telecopy)

**ATTORNEYS FOR DEFENDANTS**
**WACHOVIA CORPORATION,**
**WACHOVIA BANK, N.A.**

Edward G. Poplawski (Pro Hac Vice)
EPoplaws@Sidley.com
Jeffrey A. Finn (Pro Hac Vice)
JFinn@Sidley.com
Carissa A. Tener (Pro Hac Vice)
CTener@Sidley.com
SIDLEY AUSTIN L.L.P.
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
213-896-6000 (Telephone)
213-896-6600 (Telecopy)

Lance Lee
WLanceLee@aol.com
Texas Bar No. 240004762
YOUNG, PICKETT & LEE, L.L.P.
4122 Texas Blvd.
P.O. Box 1897
Texarkana, Texas 75504
903-794-1303 (Telephone)
903-792-5098 (Telecopy)

**COUNSEL FOR FIRST DATA
CORPORATION, TELECHECK
SERVICES, INC.;REMITCO, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 28, 2007 to all counsel of record pursuant to the Court's CM/ECF system.

/s/Jordan T. Fowles
Jordan T. Fowles

90216409.11.doc