EXHIBIT C

Dockets.Justia.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DATATREASURY CORPORATION, | | |
| **Plaintiff** | | |
| v. | | **2:06-CV-72 DF** |
| WELLS FARGO & COMPANY, ET AL., | | |
| **Defendants** | | |

DECLARATION OF DR. DEWAYNE E. PERRY

I, Dr. Dewayne E. Perry, declare as follows:

1. I am over the age of twenty-one, of sound mind, and competent to make this declaration. I have never been convicted of a felony or a crime of moral turpitude, and I am qualified to give testimony under oath. Each of the facts listed below is within my personal knowledge and is true and correct.

2. I am a Professor at the University of Texas at Austin, with over forty (40) years of experience in software. Currently, I am the Motorola Regents Chair of Software Engineering and I am on the advisory board for Wiley's Software Process: Improvement & Practice, as well as a member of the IEEE Computer Society and ACM SIGSOFT, a former associate editor of IEEE Transactions on Software Engineering, an associate editor of ACM Transactions on Embedded Computing Systems, and have been an organizing chair, program chair, and program committee member on various premiere software engineering conferences. My curriculum vitae is attached as Attachment 1 to my declaration filed in connection with Bank of America's Motion for Summary Judgment for Claim Invalidity Based on Indefiniteness of U.S. Patent 5,265,007.

3.      I have reviewed U.S. Patent 5,930,778 ("the '778 Patent") including the claims.

4.      Claim 1 of the '778 Patent includes the following limitation: "means for associating said financial information with the payee's records of accounts based upon information derived from the payment stub accompanying the instrument for further processing by the payee." As reflected in the Joint Claim Construction and Prehearing Statement in Compliance with Patent Rule 4-3 (hereafter, the "Rule 4-3 Statement"), the parties agree that the foregoing limitation is a means-plus-function limitation. Further, the Rule 4-3 Statement reflects that the agreed function for this particular limitation is "associating said financial information with the payee's records of accounts based upon information derived from the payment stub accompanying the instrument for further processing by the payee." As of the July 11, 1996 filing date of the application for the '778 Patent, and November 22, 1993, the filing date of the alleged priority application for the '778 Patent, a programmable computer and application software were required to perform the recited function. A programmable computer (with its communication-related hardware and its operating system and standard support software) alone could not perform the recited function. In order to perform the recited function, additional application software would need to be written or obtained from third parties. The '778 Patent does not indicate whether such application software exists or was known, or the algorithm such software would implement, to perform the recited function. Specifically, the '778 Patent does not provide a flowchart, mathematical equation(s), pseudo-code, source code, or description in its specification that could constitute an algorithm corresponding with this function. Further, the '778 Patent does not identify any known or

commercially available application software that could be used to perform the recited function. Thus, the '778 Patent fails to disclose even one algorithm for achieving the recited function.

5.    Claim 2 of the '778 Patent includes the following limitation: "means for adding to the record of each instrument an indorsement indicia on behalf of payee and the bank." As reflected in the Rule 4-3 Statement, the parties agree that the foregoing limitation is a means-plus-function limitation. Further, the Rule 4-3 Statement reflects that DataTreasury's proposed function for this particular limitation is "adding to the record of each instrument an indorsement indicia." The '778 Patent does not indicate whether application software capable of performing the function exists or was known, or the algorithm such software would implement, to perform the recited function. Specifically, the '778 Patent does not provide a flowchart, mathematical equation(s), pseudo-code, source code, or description in its specification that could constitute an algorithm corresponding with this function. Further, the '778 Patent does not identify any known or commercially available application software that could be used to perform the recited function. Thus, the '778 Patent fails to disclose even one algorithm for achieving the recited function.

6.    Claim 5 of the '778 Patent includes the following limitation: "means for associating said information with the payee's records of accounts corresponding to the payment form." As reflected in the Rule 4-3 Statement, the parties agree that the foregoing limitation is a means-plus-function limitation. Further, the Rule 4-3 Statement reflects that DataTreasury's proposed function for this particular limitation is "associating said financial information with payee's record of accounts corresponding to the payment

form." As of the July 11, 1996 filing date of the application for the '778 Patent, and November 22, 1993, the filing date of the alleged priority application for the '778 Patent, a programmable computer and application software were required to perform the recited function. A programmable computer (with its communication-related hardware and its operating system and standard support software) alone could not perform the recited function. In order to perform the recited function, additional application software would need to be written or obtained from third parties. The '778 Patent does not indicate whether such application software exists or was known, or the algorithm such software would implement, to perform the recited function. Specifically, the '778 Patent does not provide a flowchart, mathematical equation(s), pseudo-code, source code, or description in its specification that could constitute an algorithm corresponding with this function. Further, the '778 Patent does not identify any known or commercially available application software that could be used to perform the recited function. Thus, the '778 Patent fails to disclose even one algorithm for achieving the recited function.

7.    Claim 5 of the '778 Patent includes the following limitation: "means at said facility for preparing at least one cash letter for association with each bundled group of instruments." As reflected in the Rule 4-3 Statement, the parties agree that the foregoing limitation is a means-plus-function limitation. Further, the Rule 4-3 Statement reflects that DataTreasury's proposed function for this particular limitation is "preparing at least one cash letter at said facility." The '778 Patent does not indicate whether application software capable of performing the function exists or was known, or the algorithm such software would implement, to perform the recited function. Specifically, the '778 Patent does not provide a flowchart, mathematical equation(s), pseudo-code,

source code, or description in its specification that could constitute an algorithm corresponding with this function. Further, the '778 Patent does not identify any known or commercially available application software that could be used to perform the recited function. Thus, the '778 Patent fails to disclose even one algorithm for achieving the recited function.

8.      Claim 5 of the '778 Patent includes the following limitation: "means for assembling information scanned from the instruments into a transmittable record with respect to each instrument in a correspondence with the bundled groups and cash letters for communication to the bank." As reflected in the Rule 4-3 Statement, the parties agree that the foregoing limitation is a means-plus-function limitation. The Rule 4-3 Statement reflects that Bank of America's proposed function for this particular limitation is "assembling information scanned from the instruments into a transmittable record with respect to each instrument in a correspondence with the bundled groups and cash letters for communication to the bank." The Rule 4-3 Statement also reflects that DataTreasury's proposed structure for this particular limitation is "a sorter or processor." With respect to DataTreasury's proposed "processor" structure, as of the July 11, 1996 filing date of the application for the '778 Patent, and November 22, 1993, the filing date of the alleged priority application for the '778 Patent, a programmable computer (processor) and application software were required to perform Bank of America's proposed function. A programmable computer (with its communication-related hardware and its operating system and standard support software) alone could not perform the recited function. In order to perform the recited function, additional application software would need to be written or obtained from third parties. With respect to either of

DataTreasury's proposed structures, the '778 Patent does not indicate whether application software exists or was known, or the algorithm such software would implement, to perform the recited function. Specifically, the '778 Patent does not provide a flowchart, mathematical equation(s), pseudo-code, source code, or description in its specification that could constitute an algorithm corresponding with this function. Further, the '778 Patent does not identify any known or commercially available application software that could be used to perform the recited function. Thus, the '778 Patent fails to disclose even one algorithm for achieving the recited function.

9.    I declare under penalty of perjury that all of the foregoing is true and correct.

FURTHER, DECLARANT SAYETH NOT.

Executed on this ___18___th day of June, 2007, at Austin, Texas.

_____
Dr. Dewayne E. Perry

90227403.doc