**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **DATATREASURY CORPORATION,** | | |
| **Plaintiff** | | |
| **v.** | | **2:06-CV-72 DF** |
| **WELLS FARGO & COMPANY, ET AL.,** | | |
| **Defendants** | | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
FOR CLAIM INVALIDITY BASED ON
<u>INDEFINITENESS OF U.S. PATENT NO. 5,583,759</u>**

As the Federal Circuit's newly-issued *Biomedino* decision confirms, Claims 1 and 11 of U.S. Patent 5,583,759 ("the '759 Patent")[1] fail to meet the definiteness requirement of 35 U.S.C. § 112, ¶¶ 2 and 6, thus rendering them invalid as a matter of law.[2] Accordingly, the Court should grant summary judgment on these claims now to spare both the Court and the parties the time and expense of arguing and deciding *Markman* issues for these claims and to narrow this case for future discovery and trial. In short, the Court may properly grant summary judgment as to Claims 1 and 11 of the '759 Patent because:

- Section 112, ¶¶ 2 and 6 require that a patent provide descriptions of corresponding structure when, as here, means-plus-function claim elements are utilized;

- Federal Circuit law holds that the corresponding structure for a means-plus-function software claim term is defined by the algorithms contained in the patent;

---

[1]   A copy of the '759 Patent is attached as Exhibit A to this Motion.
[2]   *Biomedino, LLC v. Waters Techs. Corp.*, --- F.3d ----, 2007 WL 1732121, at *2 (Fed. Cir. June 18, 2007).

- Independent Claims 1 and 11 include means-plus-function software claim terms; and

- The lack of algorithms in the '759 Patent for these means-plus-function software claim terms requires a finding of invalidity with respect to these claims.

Accordingly, pursuant to Rule 56, Defendants Bank of America Corporation, Bank of America, N.A., (collectively "Bank of America"); Wachovia Bank, N.A., and Wachovia Corporation, (Collectively "Wachovia") (movants collectively "Defendants") request entry of judgment as a matter of law that Claims 1 and 11 of the '759 Patent[3] are invalid for failure to meet the definiteness requirements of 35 U.S.C. § 112, ¶¶ 2 and 6. Because these claims are invalid for indefiniteness, the Court's granting of this motion will obviate the need for a claim construction hearing as to the terms in these claims or to pursue any further proceedings regarding these claims of the '759 Patent, thus significantly narrowing this case as it moves through discovery to trial.

## I.     STATEMENT OF UNDISPUTED FACTS

A.     Claim 1 of the '759 Patent includes one software claim term that the parties agree is a "means-plus-function" limitation subject to § 112, ¶ 6.

B.     Claim 11 of the '759 Patent includes one software claim term that the parties agree is a "means-plus-function" limitation subject to § 112, ¶ 6.

C.     The '759 Patent does not include a flowchart.

D.     The '759 Patent does not include mathematical equations.

E.     The '759 Patent does not include source code.

---

[3]     DataTreasury has asserted Claims 1, 5, 11 and 14 of the '759 Patent against Defendants. Thus the instant motion reduces by half the claims at issue. Notably, the movants here are the only defendants against whom DataTreasury asserts the '759 Patent.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR INVALIDITY OF THE '759 PATENT BASED ON INDEFINITENESS  - Page 2**

## II.    ARGUMENTS AND AUTHORITIES

### A.    Summary Judgment is Proper When Patent Claims Are Invalid.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law."[4]  The Federal Circuit has long held and recently confirmed a determination of claim indefiniteness in means-plus-function claims presents a question of law for the Court.[5]  An indefiniteness analysis of the claims requires neither discovery nor a trial; indeed, the Federal Circuit has specifically recognized that the issue lends itself to a summary adjudication.[6]  Moreover, if even a single phrase or term renders a claim indefinite, that claim and every claim that depends from it are invalid as a matter of law.[7]  In other words, the Court may appropriately enter summary judgment against the plaintiff as to Claims 1 and 11 of the '759 Patent where they are invalid as indefinite under 35 U.S.C. §112, ¶2 for lack of structure required under 35 U.S.C. §112, ¶6.[8]

### B.    Algorithms Are Required Structure for Means-Plus-Function Software-Implemented Claim Terms

1.    *Where a Function of a Means-Plus-Function Claim is to be Carried out by Software, Federal Circuit Law Requires Specific Disclosure of the Algorithm as Structure for Such Claims.*

Under 35 U.S.C. § 112, ¶ 6, "[a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of the

---

[4]    *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[5]    *See Biomedino*, --- F.3d ----, 2007 WL 1732121, at *2; *see also Atmel Corp. v. Information Storage Devices*, 198 F.3d 1374, 1378 (Fed. Cir. 1999)(citing *Personalized Media Communications, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998)).

[6]    *See IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005) (affirming the District Court's holding on summary judgment that the patent claim was invalid for being indefinite); s*ee also Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005); *Default Proof Credit Card Sys., Inc. v. Home Depot USA, Inc.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005).

[7]    *See Datamize*, 417 F.3d at 1350-51.

[8]    *See Default Proof Credit Card System*, 412 F.3d at 1303 (affirming summary judgment based on indefiniteness of a means-plus-function claim against a patentee).

structure . . . in support thereof, and such claim shall be construed to cover the corresponding structure . . . described in the specification and equivalents thereof." This provision allows patentees to draft claims in shorthand by employing means-plus-function language, but it requires "a patentee to clearly link or associate structure with the claimed function [as] the *quid pro quo*" for using this shorthand method of claiming.[9] "Structure disclosed in the specification is corresponding structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim."[10]  A failure to include the required structure in the patent renders the claim and any dependent claim indefinite and invalid under section 112.[11] The Honorable T. John Ward of this district and the Federal Circuit agree that this fatal omission is not correctable by extrinsic evidence or expert testimony.  The structure must be both disclosed and linked to the function at issue in the patent itself and cannot be subsequently supplied by one skilled in the art or a creative lawyer.[12]  As the Federal Circuit held in *Biomedino*, "a proper indefiniteness analysis 'asks first whether structure is described in the specification, and, if so, whether one skilled in the art would identify the structure from the description'."[13]

When, as in this case, a means-plus-function claim term is a software claim term,[14] it "is limited to the corresponding structure disclosed in the specification and

---

[9]    *Medical Instrumentation and Diagnostics Corp. v. Elekta AB* ("MIDCO"), 344 F.3d 1205, 1211 (Fed. Cir. 2003); *see also Biomedino*, --- F.3d ----, 2007 WL 1732121, at *1.

[10]    *MIDCO*, 344 F.3d. at 1210 (internal quotations omitted); *see also Datamize*, 417 F.3d at 1347; *Chimie v. PPG Indus. Inc.*, 402 F.3d 1371, 1379 (Fed. Cir. 2005); *Honeywell Intl., Inc. v. Int'l Trade Commission*, 391 F.3d 1332, 1339 (Fed. Cir. 2003).

[11]    *MIDCO*, 344 F.3d. at 1211-12.

[12]    *See Biomedino*, --- F.3d ----, 2007 WL 1732121, at *9-11; *Touchcom, Inc. v. Dresser, Inc.*, 427 F. Supp. 2d 730, 736 (E.D. Tex. 2005) (Ward, J.).

[13]    *Biomedino*, --- F.3d ----, 2007 WL 1732121, at *9-11

[14]    Neither the Federal Circuit nor any other court has ever drawn any distinction between "software patents" and "financial service patents" or patents in any other area of technology.  Rather, when functions for means-plus function claim terms are computer-implemented, the standard is the same no matter what the subject matter of the patent.  Indeed, this standard has been applied in cases involving patents directed to systems for paying at the gas pump, *Touchcom*, 427 F. Supp. 2d at 730; systems for dispensing pre-paid debit cards, *Default Proof*, 412 F.3d at 1291; and electronic slot machines, *WMS Gaming*, 184 F.3d at 1339.

equivalents thereof, and *the corresponding structure is the algorithm*."[15]  An algorithm is a finite list of instructions for performing a required function.[16]  Accordingly, each step of the algorithm necessary to perform the claimed function must be precisely defined in the patent because the algorithm defines the structure corresponding to the claimed function – and the ultimate scope of the claimed invention.[17]  For example, "[t]he *structure* of a microprocessor programmed to carry out an algorithm *is limited by the disclosed algorithm*."[18]  Both the Federal Circuit and the Honorable T. John Ward of this district have made clear that when software–enabled means are linked to a claimed function, the structure for performing that function is limited to the algorithm, if any, disclosed in the patent specification.[19]

> 2. *Federal Circuit and Eastern District Law Provides Algorithms are Disclosed in Only Four Ways—None of Which are Present in the '759 Patent.*

An algorithm is a finite list of instructions for performing a function.[20]  For means-plus-function software terms, such as those in the '759 Patent, the patent specification must contain sufficient algorithms to teach the patent reader how to perform

---

[15]   *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1253 (Fed. Cir. 2005) (emphasis added); *see also Overhead Door Corp. v. Chamberlain Group, Inc.*, 194 F.3d 1261, 1273 (Fed. Cir. 1999).  *See also WMS Gaming, Inc. v. Int'l Game Tech*., 184 F.3d 1339, 1348-49 (Fed. Cir. 1999); *Tehrani v. Hamilton Medical Research Inc.*, 2003 WL 21360705, at *6 (Fed. Cir. June 13, 2003) (reversed and remanded to determine "the precise algorithm that is part of the recited structure"); *Harris Corp.,* 417 F.3d at 1253.

[16]   As defined by Newton's Telecom dictionary, such an algorithm would comprise "a prescribed finite set of well-defined rules or processes for the solution of a problem in a finite number of steps." NEWTON'S TELECOM DICTIONARY at 55 (19th ed. 2003).

[17]   See *WMS* Gaming, 184 F.3d at 1348-49; *Tehrani,* 2003 WL 21360705, at *6 (Fed. Cir. June 13, 2003) (reversed and remanded to determine "the precise algorithm that is part of the recited structure"); *Gobeli Research, Ltd. v. Apple Computer, Inc.*, 384 F. Supp 2d 1016, 1022-23 (E.D. Tex. 2005) (Ward, J.).  To do otherwise would allow means-plus-function claims to become an open-ended vehicle for claiming broad patent rights, which was not Congress' intent in allowing this short-hand claiming tool. *See MIDCO,* 344 F.3d at 1211.

[18]   *WMS Gaming, Inc.*, 184 F.3d at 1348 (emphasis added).

[19]   In *Gobeli Research*, 384 F. Supp. 2d at 1022-23, Judge Ward specifically recognized and followed this principle of law.

[20]   NEWTON'S TELECOM DICTIONARY at 55.

the particular function.[21]   As Judge Ward found in *Gobeli Research*, there are four accepted methods for disclosing such an algorithm in a patent:

- A mathematical equation or expression;

- Flowcharts;

- Actual source code; or

- Other detailed description of the algorithm in the patent specification.[22]

In this case, it is undisputed that the '759 Patent does not include mathematical equations or expressions, flowcharts or actual source code.  Accordingly, to be valid under section 112, the '759 Patent must include a detailed description of the algorithms allowing the patent reader to create software that implements the claimed solutions.[23]   Otherwise, the patent merely describes the problems without providing the solutions and is invalid as a matter of law.

The '759 Patent does not include any discussion of any algorithms in its specification or prosecution history that might serve as the corresponding structures for the claimed functions.  This failure to include an algorithm in the specification or prosecution history that is the corresponding structure for the claimed function invalidates the claim as a matter of law, making summary judgment appropriate.[24]  Additionally, DataTreasury's proposed structure of a CPU or sorter -- improper structure to begin with for software-based claims such as those at issue here-- could only serve as

---

[21]  See cases cited s*upra* notes 14 and 16.
[22]  *Gobeli Research, Ltd*., 384 F. Supp. 2d 1016 at 1022-23; *see also Touchcom,* 427 F. Supp. 2d at 734-35 (Ward, J.).
[23]  *Biomedino*, ---F.3d---, 2007 W2 1732121 at * 9–11.
[24]  *See Gobeli Research*, 384 F. Supp. 2d at 1023 ("Failure to provide the algorithm in the specification is fatal….").  In addition, the algorithm – the structure – cannot be pulled out of thin air nor can the patentee refer to a hypothetical person of skill in the art who could create software even absent an algorithm.  As Judge Ward concluded in *Touchcom*, "[t]hat one of skill in the art could create structure sufficient to perform a function is not the inquiry" – the patent must disclose the actual software algorithm.  *Touchcom,* 427 F. Supp. 2d at 736.

structure if they were clearly linked to the specifically claimed function in the patent – and here they are not.[25]  Thus, not only is the '759 Patent's omission of algorithms fatal to its claims, but its failure to link or associate the structures argued by Plaintiff as structure for the claims at issue provides an additional basis for granting summary judgment in this case.

> **C.    The Two "Means-Plus-Function" Software Claim Terms From Claims 1 and 11 of the '759 Patent Are Indefinite Because There Is No Algorithm Clearly Linked With The Corresponding Functions.**

Within Claims 1 and 11 there are two software claim terms at issue in this motion. The parties agree that these software claim terms are governed by 35 U.S.C. §112, ¶ 6 as mean-plus-function elements.[26]  Although the parties disagree on the proposed functions for these terms, for purposes of this motion only, Defendants adopt Data Treasury's proposed functions.  As more particularly developed below, the '759 Patent does not disclose any algorithms for any of the software terms rendering the '759 Patent indefinite and invalid as a matter of law.  Even if algorithms were not legally required structure for the claims at issue -- they are -- DataTreasury's proposed "structure" has no clear link in the '759 Patent to the claimed functions.  This failure of the '759 Patent to clearly link any structure with the claimed function equates to a complete absence of structure and renders the claims invalid as indefinite.  For the Court's convenience, the following chart shows the two terms at issue that the parties agree are subject to section 112, ¶ 6 and claim software-implemented functions:

---

**Claim 1:**

1. *"a means at the first location for preparing one or more cash letters associated with each assembled group of instruments"*

---

[25]    *MIDCO,* 344 F.3d at 1211-12; s*ee also Datamiz*e, 417 F.3d at 1347; *Chimie,* 402 F.3d at 1379; *Honeywell Intl.,* 391 F.3d at 1339.

[26]    Joint Claim Construction Statement, Exhibit B, listing elements at issue in this motion and DataTreasury's proposed construction of those elements.

**DataTreasury's Proposed Function:** Preparing one or more cash letters at the first location.

**DataTreasury's Proposed Structure:** Central Processing Unit 13 or sorter 1 as in Fig. 1.[27]

---

**Claim 11:**

2. ***"means for preparing one or more cash letters associated with each assembled group of instruments"***

**Parties' Agreed Function:** Preparing one or more cash letters associated with each assembled group of sorted instruments.

**DataTreasury's Proposed Structure:** A central processing unit operating alone or by an operator [Fig. 1].[28]

---

1. *The '759 Patent contains no algorithm capable of performing the claimed "preparing cash letters" functions.*

The two "means for preparing cash letters" claim terms in Claims 1 and 11, which DataTreasury acknowledges are computer-implemented software claim terms, each recite similar functions of "preparing one or more cash letters at the first location" (Claim 1) and "preparing one or more cash letters associated with each assembled group of assorted instruments" (Claim 11). In fact, DataTreasury identifies a central processing unit as performing the function for each claim, as well as a sorter for Claim 1 only. The Federal Circuit held in *WMS Gaming* that where a central processing unit is alleged as structure, the actual structure required to be disclosed is the algorithm allowing the CPU to perform the claimed function.[29] Accordingly, a specific computer algorithm must be disclosed in

---

[27]   Joint Claim Construction Statement, Exhibit B, page D3.
[28]   Joint Claim Construction Statement, Exhibit B, page D10.
[29]   *WMS Gaming, Inc.*, 184 F.3d at 1348 (holding that where the proposed structure was a microprocessor, the actual structure required is the algorithm that allows the microprocessor to complete the claimed function(s)).

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR INVALIDITY OF THE '759 PATENT BASED ON INDEFINITENESS  - Page 8**

the specification for performing the claimed function of "associating said financial information with the payee's records of accounts…"  A review of the '759 Patent confirms a dearth of mathematical equations, source code, or software flow charts. Accordingly, within the '759 Patent there must be a detailed description of the algorithm for these functions sufficient to teach how the claimed functions are accomplished.  There is no such discussion in the '759 Patent, and thus Claims 1 and Claim 11 must be found invalid for indefiniteness.

While the detailed description within the '759 Patent acknowledges that the "preparing cash letter" functions are performed, it does not describe how the functions are in fact accomplished.  Specifically, Claim 1 requires the preparation of a cash letter associated with each assembled group of instruments: "means . . . for preparing one or more cash letters associated with each assembled group of instruments."  Rather than describing the algorithm for how this function is accomplished, the detailed description in the '759 Patent merely restates the result: "[t]he preparation of the cash letters for the sorted checks that are delivered from the sorter directly into the check payment system is in accordance with sort pattern criteria determined by the bank of subsequent deposit for collecting and clearing."[30]

Elsewhere, the specification does nothing more than parrot the claim language with respect to the cash letter preparation:

> Specification:  "*the utility prepares a cash letter in the name of the depository bank for each group of checks within the predetermined sort category.*"[31]

---

[30]  The '759 Patent at 5:41-45.  *See also* 3:10-16; 5:63-65; 6:42-44 (each stating that a cash letter is prepared or generated, but not stating how).

[31]  The '759 Patent at 4:13-15.

> Claim: "*a means at the first location for preparing one or more cash letters associated with each assembled group of instruments*"[32]

Put simply, the detailed description never describes <u>how</u> to prepare such cash letters. No other portion of the '759 Patent – not the claims, not the abstract, not the summary, not the figures – corrects this fatal deficiency. Thus, this means-plus-function element in Claims 1 and 11 fail for indefiniteness and these claims are invalid as a matter of law.

With regard to Claim 1 only, Data Treasury also proposes a "sorter" as potential structure.[33] However, much like a CPU, a sorter without software cannot function, much less perform the specialized tasks described in this claim. DTC's proposed sorter for the '759 Patent requires customized software in order to "prepare one or more cash letters at the first location" as required by Claim 1. Sorters simply do not include such software without additional programming.[34] In fact, absent software to instruct the machine how to go about its intended function, a sorter becomes nothing more than a large, grey paperweight.[35] Here the '759 Patent contains no disclosure as to the software required or any algorithm for such software and thus Claim 1 lacks structure.[36]

This case differs from a recent case in this district involving specifically identified off-the-shelf software in that the '759 Patent does not disclose any specific software in

---

[32]  *Id.* at 7:25-27.

[33]  Note that DataTreasury does not propose a sorter as structure for the "means for preparing one or more cash letters" term in claim 11.

[34]  *See* Declaration of Thomas Gallman at ¶¶ 3-4, attached as Exhibit C to this Motion; Declaration of Karl T. Sammons at ¶¶ 3-5, attached as Exhibit D to this Motion.

[35]  As stated recently by Justice Alito: "[A]n inventor can patent a machine that carries out a certain process, and a computer may constitute such a machine, when it executes commands—given to it by code—that allow it to carry out that process. Such a computer would not become an infringing device until enough of the code is installed on the computer to allow it to execute the process in question." *Microsoft Corp. v. AT&T Corp.*, --- U.S. ----, 2007 WL 1237838, at *14 (April 30, 2007) (Alito, J., concurring). As in *Microsoft*, computers and sorters such as those at issue in the '759 Patent do not become infringing devices until software is installed allowing them to execute the process in question.

[36]  *See* Declaration of DeWayne E. Perry at ¶¶ 4-5, attached as Exhibit E to this Motion.

use in the sorters it alleges as structure. In contrast, in the *Amazon* case, Judge T. John Ward of this district found structure associated with computer hardware where the specification disclosed a *specific, well-known, commercially available* software module-CADCENTERS- for performing the function.[37]  Judge Ward was able to find that "the patent disclosed certain hardware associated with the customer's computer 'that is configured to operate under the control of a copyrighted communications software module available from CADCENTERS in Indianapolis, Indiana, or its equivalent.'"[38] However, in that case infringement was limited to devices using the CADCENTERS software module and equivalents, not just any software that could perform the specified function.  The '759 Patent discloses no such specific, well-known, commercially available software, leaving only a "sorter," without programming to accomplish the very specific functions delineated in the '759 patent, thus distinguishing this case from the *Amazon* matter.[39]

Try as it may, DataTreasury cannot direct the Court to a disclosure of any of the acceptable forms of a required algorithm necessary for performing the two "means for preparing cash letters" claim terms in Claims 1 and 11.  The '759 Patent simply does not contain a "precise algorithm that is part of the recited structure as the law requires."[40]

---

[37]    *Charles E. Hill & Assocs., Inc. v. Amazon.com*, 2005 WL 2483510, at *12  (E.D. Tex. Oct. 7, 2005) (Ward, J.).

[38]    *Id.*

[39]    Likewise, this case is readily distinguished from Magistrate Love's decision in *Advanceme, Inc. v. Rapidpay, LLC*, No. 6:05CV424, No. 6:06CV082, 2006 WL 3761975, at *9-10 (E.D. Tex. Dec. 21, 2006).  In that case, the device at issue, a modem, was found to be hard-wired to accomplish the function at issue ("receiving") with no need for a control element or software (and thus no algorithm) to perform that function.  A sorter is far from being "hard-wired" to perform the preparation of cash letter function in Claim 1 and, unlike the modem at issue in *Advanceme*, requires significant control via software to be able to perform such functions.

[40]    *Tehrani*, 2003 WL 21360705, at *6.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR INVALIDITY OF THE '759 PATENT BASED ON INDEFINITENESS  - Page 11**

This lack of structure renders Claims 1 and 11 indefinite and invalid as a matter of law such that summary judgment should be granted.

>    2.    *DataTreasury's proposed structure is not linked to the "preparing cash letters" functions.*

DataTreasury's proposed structures of CPU and/or sorter have no clear link to their corresponding functions of "preparing cash letters" and thus, cannot serve as corresponding structure for Claims 1 and 11 under section 112.[41]  DataTreasury cites to several passages in the specification that say a variety of things about "cash letters", but there is nothing identifying the structure that prepares them.[42]  The absence of a clear link or association between the claimed function and DTC's proposed structure is fatal under clear Federal Circuit law.[43]

For example, the specification explains what happens <u>after</u> the cash letters are prepared: "[u]pon the sorting and preparation of the cash letter, the utility or check payee 1 transmits, between the utility's CPU . . . 13 and the depository bank's CPU 14, check MICR line information to the depository bank 2 . . ."[44]  The specification further states: (1) *where* the cash letters are prepared- "at the remote customer's or sorter's location;"[45] (2) *who* prepares them- "prepared by the payee,"[46] or "the utility";[47] and (3) *what* is done with them- "associate[d] . . . with each assembled group of instruments."[48]  But not once does the specification specify <u>the structure that *prepares*</u> the cash letters, let alone state that the cash letters are prepared by a "sorter" or a "CPU," the structures proposed by DataTreasury.

---

[41]   *MIDCO*, 344 F.3d. at 1210 (internal quotations omitted); *see also Datamize*, 417 F.3d at 1347; *Chimie*, 402 F.3d at 1379; *Honeywell Intl.*, 391 F.3d at 1339.
[42]   *See* Chart of DataTreasury's Intrinsic Evidence, attached as Exhibit F to this Motion.
[43]   *Id.*
[44]   The '759 Patent 4:19-22.
[45]   The '759 Patent 5:65.
[46]   The '759 Patent 6:44.
[47]   The '759 Patent 4:13.
[48]   The '759 Patent 2:14-15.

In short, not only does the '759 Patent lack the legally required structure for performing the two "means for preparing cash letters" claim terms in Claims 1 and 11 (e.g. algorithms), but also DataTreasury's proposed structure is not clearly linked, as it must be, by the '759 Patent's specification to the claimed functions. Thus, for a second, independent reason, Claims 1 and 11 are indefinite and summary judgment of invalidity is required.

### D.    Data Treasury Cannot Save the '759 Patent by Extrinsic Evidence or Expert Testimony

As a matter of law, extrinsic evidence — including expert testimony — will not cure the fatal defects of indefiniteness in the '759 Patent. DataTreasury cannot offer any evidence or otherwise supplement the '759 patent with expert testimony — as it is settled law that "the testimony of one of ordinary skill in the art *cannot supplant the total absence of structure from the specification*."[49] As the Federal Circuit recently opined in *Biomedino*, "[t]he inquiry is whether one of skill in the art would understand the specification itself to disclose a structure, not simply whether that person would be capable of implementing a structure . . . Accordingly, a bare statement that known techniques or methods can be used *does not disclose structure*."[50] Because extrinsic evidence is inappropriate here, additional discovery likewise would not aid the Court in deciding this issue.[51] The search for structure to carry out the claimed function is limited to the four corners of the patent itself – a fruitless search in this case. Accordingly, the Court should find the '759 Patent invalid in its entirety due to indefiniteness under 35

---

[49]  *Default Proof Credit Card System.,* 412 F.3d at 1302 (emphasis added); *see also Touchcom,* 427 F. Supp. 2d at 736 ("It is the patentee's burden to clearly link and associate corresponding structure with the claimed function. That one of skill in the art could create structure sufficient to perform a function is not the inquiry.")

[50]  *Biomedino, LLC v. Waters Techs. Corp.*, --- F.3d ----, 2007 WL 1732121, at *6 (citations omitted) (emphasis added).

[51]  *See Touchcom,* 427 F. Supp. 2d at 736.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR INVALIDITY**
<u>**OF THE '759 PATENT BASED ON INDEFINITENESS**</u>  **- Page 13**

U.S.C. § 112, ¶ 6 and must disregard any attempt by DataTreasury to rescue the patent through evidence external to the patent itself.

### III.    <u>CONCLUSION</u>

The Court should invalidate Claims 1 and 11 of the '759 Patent, under 35 U.S.C. Section 112, ¶¶ 2 and 6. Because the '759 Patent includes no algorithms – and therefore no structure – corresponding to <u>any</u> of the two computer/software implemented means-plus-function terms in those claims, as required by the Federal Circuit and the previous decisions of the Eastern District of Texas courts, these claims are wholly invalid. The '759 Patent lacks any disclosure of the algorithms necessary to perform the recited functions associated with each of these three elements, and nothing can remedy this fatal flaw. There are no figures, mathematical equations, flowcharts, or any other disclosure sufficient to identify the required algorithms. Thus, summary judgment is required. Furthermore, the '759 Patent contains no clear linkage between DataTreasury's proposed structures and the corresponding claim functions, a second fatal defect warranting summary judgment.

Therefore, Defendants respectfully request that this Court enter summary judgment finding Claims 1 and 11 of the '759 Patent invalid as a matter of law and enter judgment for Defendants as to these claims.

Dated:  July 2, 2007

Respectfully submitted,

FISH & RICHARDSON P.C.


By:  /s/Thomas M. Melsheimer
     Thomas M. Melsheimer
     Texas Bar No. 13922550
     1717 Main Street
     Suite 5000
     Dallas, TX  75201
     214-747-5070 (Telephone)
     214-747-2091 (Telecopy)

     Robert E. Hillman
     Fish & Richardson P.C.
     225 Franklin Street
     Boston, MA  02110-2804
     617-542-5070 (Telephone)
     617-542-8906 (Telecopy)

     Robert M. Parker
     Robert Christopher Bunt
     Parker & Bunt, P.C.
     100 E. Ferguson, Suite 1114
     Tyler, Texas 75702
     903-531-3535 (Telephone)
     903-533-9687 (Telecopy)

     Michael E. Jones
     Texas Bar No. 10929400
     E. Glenn Thames, Jr.
     Texas Bar No. 75985097
     Potter Minton
     500 Plaza Tower
     110 North College, Suite 500
     Tyler, TX  75702

Counsel for Defendants
BANK OF AMERICA CORPORATION,
BANK OF AMERICA, NATIONAL
ASSOCIATION

By:/s/ Thomas M. Melsheimer by permission on behalf of the following counsel:

E. Danielle Thompson Williams
KILPATRICK STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC  27101

William H. Boice
Audra Dial
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia  30309-4530

Lance Lee
WLanceLee@aol.com
Texas Bar No. 240004762
YOUNG, PICKETT & LEE, L.L.P.
4122 Texas Blvd.
P.O. Box 1897
Texarkana, Texas 75504
903-794-1303 (Telephone)
903-792-5098 (Telecopy)

**ATTORNEYS FOR DEFENDANTS
WACHOVIA CORPORATION,
WACHOVIA BANK, N.A.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on July 2, 2007 to all counsel of record pursuant to the Court's CM/ECF system.

/s/Jordan T. Fowles

Jordan T. Fowles

90224731.5.doc