# EXHIBIT E

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| DATATREASURY CORPORATION,<br><br>Plaintiff<br><br>v.<br><br>WELLS FARGO & COMPANY, ET AL.,<br><br>Defendants | 2:06-CV-72 DF |

### DECLARATION OF DR. DEWAYNE E. PERRY

I, Dr. Dewayne E. Perry, declare as follows:

1. I am over the age of twenty-one, of sound mind, and competent to make this declaration. I have never been convicted of a felony or a crime of moral turpitude, and I am qualified to give testimony under oath. Each of the facts listed below is within my personal knowledge and is true and correct.

2. I am a Professor at the University of Texas at Austin, with over forty (40) years of experience in software. Currently, I am the Motorola Regents Chair of Software Engineering and I am on the advisory board for Wiley's Software Process: Improvement & Practice, as well as a member of the IEEE Computer Society and ACM SIGSOFT, a former associate editor of IEEE Transactions on Software Engineering, an associate editor of ACM Transactions on Embedded Computing Systems, and have been an organizing chair, program chair, and program committee member on various premiere software engineering conferences. My curriculum vitae is attached as Attachment 1 to my declaration filed in connection with Bank of America's Motion for Summary Judgment for Claim Invalidity Based on Indefiniteness of U.S. Patent 5,265,007.

DECLARATION OF DR. DEWAYNE E. PERRY- Page 1

3.  I have reviewed U.S. Patent 5,583,759 ("the '759 Patent") including the claims.

4.  Claim 1 of the '759 Patent includes the following limitation: "a means at the first location for preparing one or more cash letters associated with each assembled group of instruments." As reflected in the Joint Claim Construction and Prehearing Statement in Compliance with Patent Rule 4-3 (hereafter, the "Rule 4-3 Statement"), the parties agree that the foregoing limitation is a means-plus-function limitation. Further, the Rule 4-3 Statement reflects that DataTreasury's proposed function for this particular limitation is "Preparing one or more cash letters at the first location." The Rule 4-3 Statement also reflects that DataTreasury's proposed structure for this particular limitation is a "central processing unit 13 or sorter 1 as in Fig. 1." As of November 22, 1993, the filing date of the priority application for the '759 Patent, a programmable computer and application software were required to perform the recited function. A programmable computer (with its communication-related hardware and its operating system and standard support software) alone could not perform the recited function. In order to perform the recited function, additional application software would need to be written or obtained from third parties. With respect to either of DataTreasury's proposed structures, the '759 Patent does not indicate whether such application software exists or was known, or the algorithm such software would implement, to perform the recited function. Specifically, the '759 Patent does not provide a flowchart, mathematical equation(s), pseudo-code, source code, or description in its specification that could constitute an algorithm corresponding with this function. Further, the '759 Patent does not identify any known or commercially available application software that could be used

to perform the recited function. Thus, the '759 Patent fails to disclose even one algorithm for achieving the recited function.

5. Claim 11 of the '759 Patent includes the following limitation: "means for preparing one or more cash letters associated with each assembled group of instruments." As reflected in the Rule 4-3 Statement, the parties agree that the foregoing limitation is a means-plus-function limitation. Further, the Rule 4-3 Statement reflects that the parties' agreed function for this particular limitation is "preparing one or more cash letters associated with each assembled group of sorted instruments." As of Nov. 22, 1993, the filing date of the priority application for the '759 Patent, a programmable computer and application software were required to perform the recited function. A programmable computer (with its communication-related hardware and its operating system and standard support software) alone could not perform the recited function. In order to perform the recited function, additional application software would need to be written or obtained from third parties. The '759 Patent does not indicate whether such application software exists or was known, or the algorithm such software would implement, to perform the recited function. Specifically, the '759 Patent does not provide a flowchart, mathematical equation(s), pseudo-code, source code, or description in its specification that could constitute an algorithm corresponding with this function. Further, the '759 Patent does not identify any known or commercially available application software that could be used to perform the recited function. Thus, the '759 Patent fails to disclose even one algorithm for achieving the recited function.

6. I declare under penalty of perjury that all of the foregoing is true and correct.

FURTHER, DECLARANT SAYETH NOT.

Executed on this __18__th day of June, 2007, at Austin, Texas.

_____
Dr. Dewayne E. Perry

90225458.doc