UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DATATREASURY CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 2:06-CV-72-DF |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| WELLS FARGO & COMPANY, et al. | § | |
| | § | |
| Defendants. | § | |

**FIRST CITIZENS BANCSHARES, INC.'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

First Citizens BancShares, Inc. files its reply to Plaintiff's Response to Defendant First Citizens Bancshares, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction ("Response").

In its Response, DataTreasury Corporation ("DTC") fails to establish any facts or legal theories that warrant jurisdiction over First Citizens BancShares, Inc. ("BancShares"). DTC relies on both specific and general jurisdiction, but proves neither. As to both specific and general jurisdiction, DTC first mischaracterizes BancShares' public filings and board meeting minutes, wrongfully asserting that they show contacts by BancShares in Texas. DTC then relies on documents and legal theories that have no bearing on the jurisdictional analysis. DTC also asserts the doctrine of alter ego -- which DTC did not plead in its Amended Complaint -- in an attempt to attribute the conduct of BancShares' subsidiaries to BancShares, but falls woefully short of overcoming the heavy presumption towards upholding the corporate form. In the end, DTC is left arguing that BancShares waived its jurisdictional defense by signing a Stipulation that led this Court to stay the lawsuit as to the Ballard Patents. This waiver argument, however, is factually and legally baseless. DTC's effort to hale BancShares into this Court is unfounded and unsupported.

1

**I.      BancShares Negated All Jurisdictional Grounds, Placing On DTC The Burden Of Proving That Jurisdiction Exists.**

In its Motion to Dismiss, BancShares negated all grounds on which DTC bases its jurisdictional argument. Once a defendant challenges personal jurisdiction, the plaintiff bears the burden of producing facts that support the existence of jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) ("If [a plaintiff's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, [the plaintiff] must support them by competent proof."). As shown below, DTC fails to meet this burden.

**II.     Specific Jurisdiction Does Not Exist Over BancShares.**

BancShares established that it is merely a holding company with no operations in Texas, *see* Motion to Dismiss at Ex. A (Declaration of John Gray), much less any business conduct on which DTC bases its patent infringement claims, which is the type of activity on which DTC must rely to show specific jurisdiction. In fact, in its entire Response, DTC cites to only two instances of alleged conduct by BancShares that even remotely concerns activity that DTC alleges infringes its patents. Neither instance, however, creates specific jurisdiction.

First, while DTC vaguely asserts that BancShares has a "business relationship" with SVPCo and CHPCo and "engages in transactions" with SVPCo and CHPCo, it offers no proof supporting this assertion. *See* Response at 18. In light of Mr. Gray's uncontroverted sworn declaration that BancShares has no such relationship -- *see* Exhibit A to Motion to Dismiss at ¶¶ 13-16 -- DTC's unsubstantiated assertion should be disregarded. *See McNutt*, 298 U.S. at 189.

Second, DTC cites to lines within two "Strategic Plans" that mention check presentment and remote image deposit capabilities. Response at 10 (citing Exhibit 5 and Exhibit 6). These documents, however, reinforce rather than weaken BancShares' jurisdictional defense. Each "Strategic Plan" refers only once to Texas, which is the only relevant state for the current

jurisdictional analysis. This sole reference is to the activities of a subsidiary, not BancShares, and the reference does not concern check presentment, remote image deposit, or any other activity on which DTC bases its claims. *See* Response at Ex. 5 at 1 ("The expansion of IronStone Bank into Texas . . . ."); Response at Ex. 6 at 1 (same). As a result, these documents fail to show any conduct by BancShares in Texas that supports specific jurisdiction. In addition, the documents when read as a whole unambiguously reflect the strategic thinking of a holding company regarding the activities of its subsidiaries, rather than business activity by the holding company itself. In fact, the two documents repeatedly reference BancShares' subsidiaries, and not BancShares, as engaged in business activity.[1]

DTC references other documents in its "specific jurisdiction" argument, although the documents have nothing to do with any allegedly infringing activity. In addition, DTC mischaracterizes the documents beyond recognition. For example, DTC references BancShares as "FCB" in its Response, even though that shorthand is the consistent reference for First Citizens Bank - not BancShares - in BancShares' corporate records.

DTC's distortion of BancShares' 10-K is particularly egregious and illustrative of DTC's entire Response. DTC claims that this document shows that BancShares "operated branch offices at 392 locations in . . . Texas." Response at 5 and Ex. 2 (ellipses in original). In reality, the 10-K makes abundantly clear that BancShares' *subsidiaries*, and not BancShares, operate branches: "*Through its subsidiary financial institutions*, as of December 31, 2005, BancShares operated branch offices . . . ." *Id.* at Ex. 2 (emphasis added). The 10-K also warns investors that investing in BancShares' stock will involve some level of risk because *its banking subsidiaries,*

---

[1] DataTreasury notes that BancShares did not produce these documents with its original production of jurisdictional discovery. Response at 11 n.2. BancShares had no obligation to do so, as they do not reflect any contact by BancShares with Texas. BancShares produced them when ordered to produce its Board and Committee minutes, which included these documents.

*not BancShares*, engage in banking activities.  *See id.*  DTC's selective use of ellipses to extract this quote out of context is not only inaccurate, but misleading.  DTC alters the sentence in the 10-K to suggest that BancShares' subsidiaries operate 392 branches in Texas.  The 10-K actually says that these subsidiaries operate 392 branches in <u>fourteen states</u>, and does not indicate how many are in Texas.  *Id*.

DTC also cites to a BancShares' board resolution regarding an investment strategy.  Response at 6 (citing Ex. 4 at p. 3).  Notably, the resolution nowhere references Texas, which it must to have any relevance to the jurisdictional analysis.

Finally, DTC's baseless argument that 12 U.S.C. § 1841(a)(1) converts BancShares into something more than a holding company is unfounded and easily refuted.  Section 1841 defines a "bank holding company" for purposes of federal statutory and regulatory oversight.  *See* Gordon M. Bava, *Regulation and Structure of Traditional Bank Holding Company Activities*, 469 PLI/Comm 261, 269 (1988).  This statute, however, bears no relationship to the issues before the Court.[2]  While Section 1841 defines a "bank holding company" as "any company which has control over any bank," the statute defines "control" to include ownership of "25 per centum or more of any class of voting securities of the bank."  12 U.S.C. § 1841(a)(2)(A).  But simple ownership is not the type of "control" required to allow a Court to cast aside the corporate form and exert jurisdiction over a parent.  *See 3D Systems, Inc. v. Aarotech Labs., Inc*., 160 F.3d 1373, 1380-81 (Fed. Cir. 1998); *Hargrave v. Fibreboard Corp.,* 710 F.2d 1154, 1160 (5th Cir. 1983) ("The degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship.").

**III.   DTC Fails To Establish General Jurisdiction Over BancShares.**

---

[2] This is demonstrated by DTC's failure to offer any authority applying this statute in a jurisdictional analysis.

4

DTC fails to demonstrate that BancShares has contacts with Texas that are so substantial and continuous that BancShares would expect to be subject to suit in Texas -- the requisite showing to find general jurisdiction. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416 (1984). DTC wrongfully argues that BancShares operates its subsidiaries and as a result conducts the business of its subsidiaries. This skewed reasoning has no support.

DTC again mischaracterizes documents to make its faulty point. DTC begins by citing to a budget, Response at 12 and Ex. 7, and concludes wrongly that BancShares is setting the various expenses for its subsidiaries. But DTC ignores that Exhibit 7 on its face states that it is "consolidated" information. The document reflects the budget for all of BancShares' subsidiaries, without indicating who approved each subsidiaries' respective budget. The document also never refers to Texas, although this fact does not stop DTC from baselessly stating that the budget shows BancShares "dictat[ing] how much its subsidiaries that operate in Texas can expend to plant flowers . . . ." Response at 12. Notwithstanding DTC's assertion to the contrary, the budget certainly does not establish that BancShares sets the "salaries, wages and . . . landscape expenses" for its subsidiaries, operating in Texas or elsewhere.

DTC continues with an admitted and logically impermissible leap, stating that "it is axiomatic that there must be employees" in Texas that BancShares controls. Response at 12. DTC cites no evidence for this statement, or to any evidence showing BancShares has employees in Texas. DTC refers to four documents from BancShares' records. Response at 12-13 and Exs. 8-11. But none of the documents even suggest that BancShares has employees in Texas, or that BancShares directs the conduct of its subsidiaries with respect to their respective employees.

DTC's reliance on insurance policies is also misplaced. *See* Response at 13-14. BancShares, through its corporate representative, John Gray, testified regarding property and

5

liability insurance policies that have as the named insured, "First Citizens BancShares, Inc. and its direct and indirect subsidiaries." *Id.* at Ex. 1 at 32:22-24. In the deposition, DTC's counsel repeatedly mischaracterized the policy as insuring only BancShares, a mischaracterization that Mr. Gray consistently corrected. *See, e.g.*, *id.* at 34:22-25 (Q. - That property [in Texas] is being insured under a policy that's issued to First Citizens BancShares, Inc., correct? A. - And its direct and indirect subsidiaries."). BancShares' testimony simply does not support DTC's assertion that BancShares possesses insurance coverage "directed towards residents of Texas." Response at 14. The fact that a policy includes multiple entities as the insureds does not convert each entities' property in a particular state into the property of all other insureds as well. In addition, DTC flatly ignores Mr. Gray's testimony and wrongfully states that BancShares "applies for and obtains" these policies. On the contrary, Mr. Gray explained that employees of *First-Citizens Bank & Trust* not BancShares procure the insurance, *id.* at 31:3-8, and BancShares reimburses only a portion of those employees' services as a management fee. *Id.* at 31:14-21.

Finally, DTC's citation to a number of random "contacts" between BancShares and Texas do not establish the continuous and substantial contacts that must exist to support general jurisdiction. Response at 14-15. DTC mischaracterizes Mr. Gray's deposition testimony once again and states that BancShares invests in branches and furniture. *Id.* at 14. Mr. Gray flatly denied as much, Response at Ex. 1 at 182:16-24 ("On a stand-alone basis, First Citizens BancShares, Inc. does not invest in furniture, premises or equipment.") In any event, Mr. Gray in the exchange never referenced Texas (or any other state), rendering it irrelevant to the jurisdictional analysis. In addition, DTC relies on two tenuous, isolated contacts: (1) a single payment that BancShares sent at KPMG's request to a KPMG address in Texas, although the services were performed in North Carolina; and (2) the fact that a limited partnership that

6

invested in a BancShares master note program at one time provided a Texas address for statements to be sent to it by First-Citizens Bank & Trust, although the general communications with the limited partnership's representatives always occurred in North Carolina, where the investment was made. *Id.* at 159:8-161:8; Ex. A at 202:1-203:3.[3]  These "contacts" are a far cry from the continuous and substantial contacts necessary to create general jurisdiction.

Finally, DTC speculates that BancShares officers "quite probably conduct [BancShares] business in Texas." Response at 14. DTC cites no evidence for this statement, and instead complains that "the documents and communications reflecting these officers' visits to Texas were not provided to DTC." *Id.* at 14-15. But DTC fails to tell the Court that BancShares' counsel confirmed that. "after conducting a diligent search, BancShares has no documents within its possession, custody, and/or control related to any business activities attended or conducted on behalf of BancShares in the State of Texas by [Bancshares'] officers, directors, or employees." Ex. B. This confirmation is consistent with Mr. Gray's declaration, his deposition testimony, and BancShares' document production.

## IV.   Neither The Facts Nor The Law Support DTC's Alter Ego Theory.

DTC in its Response also asks this Court to cast aside the corporate form and attribute to BancShares the activity of two of its subsidiaries in Texas.[4]  Importantly, however, DTC in its Amended Complaint pleads absolutely no allegations of alter ego. The applicable law "requires that a plaintiff suing under an alter ego theory must separately plead each basis for disregarding the corporate fiction." *See VBFSB Holding Corp. v. Fidelity & Deposit Co.*, No. CA3:95-CV-00693-BC, 1997 WL 527308, *10 (N.D. Tex. Aug. 19, 1997). DTC's utter failure to do so

---

[3] DataTreasury omitted the portion of Mr. Gray's testimony indicating that KPMG's services were performed in North Carolina. BancShares submits the relevant page to correct the record. *See* Ex. A at 202:1 - 203:3.

[4] DataTreasury argues that the conduct of BancShares' subsidiaries in Texas should be attributed to BancShares, but never says, much less demonstrates through evidence, what that conduct entails.

defeats DTC's alter ego argument.

Even if DTC had pled alter ego, it has failed to present any evidence supporting this theory. The Federal Circuit, Fifth Circuit, and the Supreme Court of Texas have advised courts to recognize and uphold the corporate form, and to cast it aside only in unusual circumstances. *See, e.g., 3D Systems, Inc.*, 160 F.3d at 1380-81 ("The court . . . must 'start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception'" (citations omitted)); *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 593-594 (5th Cir. 1999) ("It is not possible to more emphatically express the necessity for a plaintiff to prove that he will suffer some type of harm or injustice by adhering to the corporate fiction before the corporate veil will be pierced.") (citation omitted); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 798-799 (Tex. 2002) ("To 'fuse' the parent company and its subsidiary for jurisdictional purposes, . . . the degree of control the parent exercises must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice.").[5]

DTC fails to identify any unusual circumstances that justify disregarding the corporate form of BancShares and its subsidiaries. DTC relies on the fact that BancShares and its subsidiaries have overlapping boards and officers, BancShares owns its direct subsidiaries, that BancShares files consolidated information in its public filings, BancShares has provided capital infusions to one of its subsidiaries, and some individuals perform services for BancShares and its subsidiaries. *See* Response at 15-17. But case law demonstrates that these facts "reveal[]

---

[5] Federal Circuit law governs personal jurisdiction in patent cases. *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt*, 148 F.3d 1355, 1358 (Fed. Cir. 1998). But when the plaintiff relies on the theory of alter ego, the law of the regional circuit applies. *Insituform Technologies, Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1380-1381 (Fed. Cir. 2004). In cases arising out of Texas, the Fifth Circuit applies Texas law. *See Gardemal*, 186 F.3d at 593.

nothing more than a typical corporate relationship between a parent and subsidiary" that cannot justify piercing the corporate veil. *Gardemal*, 186 F.3d at 594; *see also Commonwealth Gen. Corp. v. York*, 177 S.W.3d 923, 925 (Tex. 2005) (finding that a parent company's complete ownership of its subsidiary did not warrant piercing the corporate veil); *BMC Software Belgium, N.V.*, 83 S.W.3d at 789 (finding alter ego unwarranted, despite evidence that the parent used consolidated statements, offered a stock option plan to its subsidiaries' employees, and had its employees in its subsidiaries' offices). DTC also fails to contest the statements in Mr. Gray's declaration demonstrating that BancShares and its subsidiaries maintain books and bank accounts separate from one another, and that all of BancShares' operating subsidiaries operate with independent boards and sufficient capital to conduct day-to-day operations. *See* Motion to Dismiss at Ex. A, ¶ 6.

DTC's reliance on the "source of strength" doctrine, Response at 18, is irrelevant to the alter ego analysis. The source of strength doctrine is simply a tool the federal government uses to prevent under funding of operating bank subsidiaries. Under this doctrine, a bank holding company must "maintain the acquired subsidiary's net worth by infusing capital when the subsidiary fails to meet its minimum capital requirements." Cassandra Jones Havard, *Back to the Parent: Holding Company Liability for Subsidiary Banks*, 16 Cardozo L. Rev. 2353, 2371 (1995). "[F]ailure to comply with the source of strength condition [is] the basis for an enforcement action" by the Federal Reserve Board. *Id.* at 2375. DTC selectively quotes a sentence from *Branch v. United States*, 69 F.3d 1571 (Fed. Cir. 1995), and implies that the case stands for the proposition that the source of strength doctrine requires the Court to pierce the corporate veil to find jurisdiction over BancShares. But *Branch* does not discuss the source of strength doctrine in the context of jurisdictional considerations. As made clear by the portions of

9

the quote that DTC conveniently omits, the Federal Reserve Board pierces the corporate veil "so that a bank holding company could be required to inject capital into a troubled subsidiary bank," *id.* at 1581, and not for a jurisdictional analysis.

## V.     BancShares Has Not Waived Personal Jurisdiction

Unable to show contacts by BancShares that subject it to jurisdiction in Texas, DTC argues falsely that BancShares has waived its jurisdictional defense by signing the Stipulation that resulted in the Court staying this lawsuit as to the Ballard Patents. *See* Response at 19. For this proposition, DTC relies solely on two Third Circuit decisions that turned on procedural events that do not exist in this case. *See id.* at 13 (citing *Bel-Ray Co. v. Chemrite Ltd.*, 181 F.3d 435 (3rd Cir. 1999); *Wyrough & Loser, Inc. v. Pelmor Lab., Inc.*, 376 F.2d 543 (3rd Cir. 1967)). In *Bel-Ray Co.*, the defendant filed a summary judgment motion and suffered an adverse ruling before filing its jurisdictional defense. In *Wyrough*, the non-resident party defended itself in a preliminary injunction hearing and raised its jurisdictional defense only after the Court orally stated its intention to enter a preliminary injunction. In stark contrast to these cases, not only did BancShares file its original Motion to Dismiss long before any party sought a stay in this lawsuit, BancShares also has sought no affirmative relief from this Court, and its acceptance of the stay -- in direct response to an Order from this Court -- in no manner can be interpreted as affirmative relief. Under these circumstances, no waiver occurred. *See Rates Tech. Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1309 (Fed. Cir. 2005) (waiver of personal jurisdiction occurs "by extensively participating in the litigation without timely seeking dismissal"). DTC's argument also is contrary to the purpose and effect of the stay, which is to conserve judicial resources during the re-examination. DTC's analysis leads to the unreasonable result that a party disputing jurisdiction must continue litigating to avoid waiving its jurisdictional defense, while a party that did not contest jurisdiction may wait for the stay to lift.

Dated: July 9, 2007.                                  Respectfully submitted,


  /s/ Larry D. Carlson
Larry D. Carlson, Attorney-in-Charge
   Texas State Bar No. 03814500
   E-Mail:  larry.carlson@bakerbotts.com
Fernando Rodriguez, Jr.
   Texas State Bar No. 24005048
   E-Mail:  fernando.rodriguez@bakerbotts.com
David O. Taylor
   Texas State Bar No. 24042010
   E-Mail:  david.taylor@bakerbotts.com
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 600
Dallas, Texas  75201
Telephone:  (214) 953-6500
Facsimile:  (214) 953-6503

Donalt J. Eglinton
   E-Mail:  dje@wardandsmith.com
WARD AND SMITH, P.A.
Post Office Box 867
New Bern, North Carolina 28563
Telephone:  (252) 672-5456
Facsimile:  (252) 672-5477

ATTORNEYS FOR DEFENDANTS FIRST-CITIZENS BANK & TRUST COMPANY AND FIRST CITIZENS BANCSHARES, INC.


**CERTIFICATE OF SERVICE**

    I certify that on the 9th day of July, 2007, all counsel who are deemed to have consented to electronic service are being served with a copy of this document by the Court's Electronic Filing System, pursuant to Local Rule CV-5(a)(3)(A).


  /s/ Larry D. Carlson
Larry D. Carlson