## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

**DATATREASURY CORPORATION,**

**Plaintiff**

**v.**

**WELLS FARGO & COMPANY, ET AL.,**

**Defendants**

**2:06-CV-72 DF**

### WACHOVIA'S MOTION FOR SUMMARY JUDGMENT
### FOR CLAIM INVALIDITY BASED ON
### <u>INDEFINITENESS OF U.S. PATENT NO. 5,717,868</u>

The Honorable T. John Ward's findings in *Gobeli Research* and *Touchcom*, as well as the Federal Circuit's newly-issued holding in *Biomedino*[1] compel a finding by this Court that more than half of the asserted claims of U.S. Patent 5,717,868 ("the '868 Patent")[2] are invalid. Specifically, Claims 1, 3, 24 and 48 of the '868 Patent fail to meet the "definiteness" requirement of 35 U.S.C. Section 112, ¶¶ 2 and 6, thus rendering these claims invalid as a matter of law. The Court should grant summary judgment on these claims now to spare both the Court and the parties the time and expense of arguing and deciding *Markman* issues for the majority of the asserted claims of the '868 Patent and to further narrow the case for future discovery and trial. In short, the Court may properly grant summary judgment as to Independent Claims 1 and 24, and Dependent Claims 3

---

[1]    Biomedino, *LLC v. Waters Techs. Corp.*, --- F.3d ----, 2007 WL 1732121, at *2 (Fed. Cir. June 18, 2007); *Touchcom, Inc. v. Dresser, Inc.*, 427 F. Supp. 2d 730, 736 (E.D. Tex. 2005) (Ward, J.); *Gobeli Research, Ltd. v. Apple Computer, Inc.*, 384 F. Supp 2d 1016, 1022-23 (E.D. Tex. 2005) (Ward, J.).

[2]    The '868 Patent is attached as Exhibit A to this Motion.

and 48, of the '868 Patent because:

- Section 112, ¶¶ 2 & 6 require that a patent provide descriptions of corresponding structure when, as here, means-plus-function claim elements are utilized;

- Federal Circuit law holds that: (1) the corresponding structure for a means-plus-function software claim term is defined by the algorithms contained in the patent, and (2) any structure must be clearly identified in the patent itself as performing the recited function;

- Independent Claims 1 and 24, and Dependent Claims 3 and 48, include means-plus-function software claim terms; and

- The lack of algorithms or structure in the '868 Patent for these means-plus-function software claim terms requires a finding of invalidity with respect to the four pertinent claims.

Further, Dependent Claims 2, 3, 22, and 27 are also invalid because they depend on invalid Independent Claims 1 and 24. Accordingly, pursuant to Rule 56, Defendants Wachovia Corporation and Wachovia Bank, N.A. (collectively "Wachovia") request entry of judgment as a matter of law that Claims 1, 2, 3, 22, 24, 27 and 48 of the '868 Patent are invalid for failure to meet the "definiteness" requirement of 35 U.S.C. Section 112, ¶¶ 2 and 6. Because these claims of the '868 Patent are invalid for indefiniteness, the Court's granting of this motion would obviate the need for a claim construction hearing as to these claims or to pursue any further proceedings regarding these claims of the '868 Patent, thus narrowing this case as it moves through discovery to trial.

## I.    STATEMENT OF UNDISPUTED FACTS

A.    The parties agree that three of the "means-plus-function" limitations upon which this motion is based are subject to Section 112, ¶ 6.

B.    The functions associated with the two "security mechanism" and "security procedures" terms in Claims 3 and 48 of the '868 Patent are implemented

by "software running on a processor."

C.    The '868 Patent does not include a flowchart.

D.    The '868 Patent does not include mathematical equations.

E.    The '868 Patent does not include source code.

## II.    ARGUMENTS AND AUTHORITIES

### A.    Summary Judgment is Proper When Claims of a Patent are Invalid.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law."[3]  The Federal Circuit has long held and recently confirmed that a determination of claim indefiniteness in means-plus-function claims presents a question of law for the Court.[4]  An indefiniteness analysis of the claims requires neither discovery nor a trial; indeed, the Federal Circuit has specifically recognized that the issue lends itself to a summary adjudication.[5]  If even a single phrase or term renders a claim indefinite, that claim and every claim that depends from it are invalid as a matter of law.[6]  In other words, the Court may appropriately enter summary judgment against the Plaintiff as to Claims 1, 3, 24 and 48 of the '868 Patent where they are invalid as indefinite under 35 U.S.C. Section 112, ¶2 for lack of structure required under 35 U.S.C. Section 112, ¶6.[7]

---

[3]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[4]   *See Biomedino*, --- F.3d ----, 2007 WL 1732121, at *2; *see also Atmel Corp. v. Information Storage Devices, 198 F.3d 1374, 1378 (*Fed. Cir. 1999)(citing *Personalized Media Communications, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998)).

[5]   *See IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005) (affirming the District Court's holding on summary judgment that the patent claim was invalid for being indefinite); s*ee also Datamize, LLC v. Plumtree Software, Inc.,* 417 F.3d 1342, 1347 (Fed. Cir. 2005); *Default Proof Credit Card Sys., Inc. v. Home Depot USA, Inc.,* 412 F.3d 1291, 1298 (Fed. Cir. 2005).

[6]   *See Datamize*, 417 F.3d at 1350-51.

[7]   *See Default Proof Credit Card System*, 412 F.3d at 1303 (affirming summary judgment based on indefiniteness of a means-plus-function claim against a patentee).

**B.    Algorithms Are Required Structure for Means-Plus-Function Software-Implemented Claim Terms**

1.    *Where a Function of a Means-Plus-Function Claim is to be Carried out by Software, Federal Circuit Law Requires Specific Disclosure of the Algorithm as Structure for Such Claims.*

Under 35 U.S.C. Section 112, ¶ 6, "[a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of the structure . . . in support thereof, and such claim shall be construed to cover the corresponding structure . . . described in the specification and equivalents thereof."  This provision allows patentees to draft claims in shorthand by employing means-plus-function language, but it requires "a patentee to clearly link or associate structure with the claimed function [as] the *quid pro quo*" for using this shorthand method of claiming.[8] "Structure disclosed in the specification is corresponding structure <u>only</u> if the specification or prosecution history clearly links or associates that structure to the function recited in the claim."[9]  A failure to include the required structure in the patent renders the claim and any dependant claim indefinite and invalid under Section 112.[10] According to the Honorable T. John Ward of this District and the Federal Circuit, this fatal omission is not correctable by extrinsic evidence or expert testimony, as the structure must be disclosed and linked to the function at issue in the patent itself and cannot be subsequently supplied by one skilled in the art or a creative lawyer.[11]  Indeed, the Federal Circuit held in *Biomedino* that "a proper indefiniteness analysis '<u>asks first</u> whether structure <u>is described</u> in the specification, and, if so, whether one skilled in the art would identify the structure from the description.'"[12]

---

[8]    *Medical Instrumentation and Diagnostics Corp. v. Elekta AB* ("MIDCO"), 344 F.3d 1205, 1211 (Fed. Cir. 2003); *see also Biomedino*, --- F.3d ----, 2007 WL 1732121, at *1.

[9]    *MIDCO*, 344 F.3d. at 1210 (internal quotations omitted)(emphasis added); *see also Datamiz*e, 417 F.3d at 1347; *Chimie v. PPG Indus. Inc.*, 402 F.3d 1371, 1379 (Fed. Cir. 2005); *Honeywell Intl., Inc. v. Int'l Trade Commission*, 391 F.3d 1332, 1339 (Fed. Cir. 2003).

[10]    *MIDCO*, 344 F.3d. at 1211-12.

[11]    *See Biomedino*, --- F.3d ----, 2007 WL 1732121, at *9-11; *Touchcom,* 427 F. Supp. 2d at 736 (Ward, J.).

[12]    *Biomedino*, --- F.3d ----, 2007 WL 1732121, at *9-11.

When, as in this case, a means-plus-function claim term is a software claim term,[13] it "is limited to the corresponding structure disclosed in the specification and equivalents thereof, and <u>the corresponding structure is the algorithm</u>."[14] An algorithm is a finite list of instructions for performing a required function.[15] Accordingly, each step of the algorithm necessary to perform the claimed function must be precisely defined in the patent because the algorithm defines the structure corresponding to the claimed function – and the ultimate scope of the claimed invention.[16] For example, "[t]he <u>structure</u> of a microprocessor programmed to carry out an algorithm <u>is limited by the disclosed algorithm</u>."[17] Both the Federal Circuit and the Honorable T. John Ward of this district have made clear that when software-enabled means are linked to a claimed function, the structure for performing that function is limited to the algorithm, if any, disclosed in the patent specification.[18]

---

[13]  DataTreasury has argued in response to other motions that somehow the patents-in-suit are not subject to the same standards of disclosure under Section 112 because they are "financial services patents" and not "software patents." Notably absent from this argument by Plaintiff is any authority. Neither the Federal Circuit, nor any other court has ever drawn any distinction between "software patents" and "financial service patents" or patents in any other area of technology. Rather, when functions for means-plus-function claim terms are computer or software implemented, the standard is the same no matter what the subject matter of the patent. Indeed, this standard has been applied in cases involving patents directed to systems for paying at the gas pump, *Touchcom*, 427 F. Supp. 2d at 730; systems for dispensing pre-paid debit cards, *Default Proof*, 412 F.3d at 1291; and electronic slot machines, *WMS Gaming*, 184 F.3d at 1339.

[14]  *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1253 (Fed. Cir. 2005) (emphasis added); *see also Overhead Door Corp. v. Chamberlain Group, Inc.*, 194 F.3d 1261, 1273 (Fed. Cir. 1999). *See also WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1348-49 (Fed. Cir. 1999); *Tehrani v. Hamilton Medical Research Inc.*, 2003 WL 21360705, at *6 (Fed. Cir. June 13, 2003) (reversed and remanded to determine "the precise algorithm that is part of the recited structure"); *Harris Corp.*, 417 F.3d at 1253.

[15]  As defined by Newton's Telecom dictionary, such an algorithm would comprise "a prescribed finite set of well-defined rules or processes for the solution of a problem in a finite number of steps." NEWTON'S TELECOM DICTIONARY at 55 (19th ed. 2003).

[16]  *See WMS* Gaming, 184 F.3d at 1348-49; *Tehrani,* 2003 WL 21360705, at *6 (Fed. Cir. June 13, 2003) (reversed and remanded to determine "the precise algorithm that is part of the recited structure"); *Gobeli Research.*, 384 F. Supp 2d at 1022-23 (Ward, J.). Indeed, to do otherwise would allow means-plus-function claims to become an open-ended vehicle for claiming unbounded patent rights, which was not Congress' intent in allowing this short-hand claiming tool. *See MIDCO*, 344 F.3d at 1211.

[17]  *WMS Gaming, Inc.*, 184 F.3d at 1348 (emphasis added).

[18]  In *Gobeli Research*, 384 F. Supp. 2d at 1022-23, Judge Ward specifically recognized and followed this principle of law. The term at issue in *Gobeli Research* was "means for reallocating processing resources unused by said specific portions to other specific portions as a function of task priority." Judge Ward denied the plaintiff's proposed construction of "a microprocessor running a procedure call

2. *Federal Circuit and Eastern District Law Provides Algorithms are Disclosed in Only Four Ways—None of Which are Present in the '868 Patent.*

An algorithm is a finite list of instructions for performing a function.[19] For means-plus-function software terms, such as those in the '868 Patent, the patent specification must contain sufficient algorithms to teach the patent reader how to perform the particular function.[20] As Judge Ward found in *Gobeli Research*, there are four accepted methods for disclosing such an algorithm in a patent:

- A mathematical equation or expression;

- Flowcharts;

- Actual source code; or

- Other detailed description of the algorithm in the patent specification.[21]

In this case, it is undisputed that the '868 Patent does not include mathematical equations or expressions, flowcharts or actual source code. Accordingly, to be valid under Section 112, the '868 Patent must have a detailed description of the algorithms allowing the patent reader to create software that implements the claimed solutions.[22] Otherwise, the patent merely describes the problems without providing the solutions and is invalid as a matter of law.

The '868 Patent does not include any "detailed description" of any algorithms in its specification or prosecution history that might serve as the corresponding structures

---

that sets aside resources, such as a memory area" because, like the patent at issue here, the proposed structure did not set forth any algorithm to perform the function.

[19] NEWTON'S TELECOM DICTIONARY at 55.
[20] See cases cited *supra* note 14.
[21] *Gobeli Research, Ltd.*, 384 F. Supp. 2d 1016 at 1022-23; *see also Touchcom*, 427 F. Supp. 2d at 734-35 (Ward, J.).
[22] *Biomedino*, ---F.3d---, 2007 W2 1732121 at * 9 – 11.

for the claimed functions at issue. This failure to include an algorithm in the specification or prosecution history that is the corresponding structure for the claimed function invalidates the claim as a matter of law, making summary judgment appropriate.[23] Additionally, DataTreasury's proposed structures for the claims at issue can only serve as structure if they were clearly linked to the specifically claimed function in the patent – and here they are not.[24] Thus, not only is the '868 Patent's omission of algorithms fatal to its claims, but also its failure to clearly link or associate the structures argued by Plaintiff as structure for the claims at issue provides an additional basis for granting summary judgment in this case.

### C.    The Three Agreed Means-Plus-Function Software Terms From Independent Claims 1 and 24 of the '868 Patent Are Indefinite Because There is No Supporting Structure.

Within Independent Claim 1 and Independent Claim 24, there are three software claim terms at issue in this motion. The parties agree that each of these three software claim terms are governed by 35 U.S.C. Section 112, ¶ 6 as mean-plus-function elements.[25] Although the parties disagree on the proposed functions for two of the three terms, for purposes of this motion only, Wachovia adopts DataTreasury's proposed

---

[23]    *See Gobeli Research*, 384 F. Supp. 2d at 1023 ("Failure to provide the algorithm in the specification is fatal…."). In addition, the algorithm – the structure – cannot be pulled out of thin air nor can the patentee refer to a hypothetical person of skill in the art who could create software even absent an algorithm. As Judge Ward concluded in *Touchcom*, "[t]hat one of skill in the art could create structure sufficient to perform a function is not the inquiry" – the patent must disclose the actual software algorithm. *Touchcom,* 427 F. Supp. 2d at 736.

[24]    *MIDCO*, 344 F.3d at 1211-12; s*ee also Datamize*, 417 F.3d at 1347; *Chimie,* 402 F.3d at 1379; *Honeywell Intl.,* 391 F.3d at 1339.

[25]    Joint Claim Construction Statement, Exhibit B, listing elements at issue in this motion and DataTreasury's proposed construction of those elements. DataTreasury disagrees that the terms "security mechanism for preventing the unauthorized one or more of the reception, transmission, translation and storage of financial instrument information" in Claim 3 and "security procedures for preventing unauthorized reception, transmission, translation and storage of any financial instrument information within the system" in Claim 48 are subject to 35 U.S.C. Section 112, ¶ 6 as means-plus-function elements. As shall be discussed in more detail below, these are means-plus-function claims because the terms "security mechanism" and "security procedures" do not provide sufficient structure to perform the functions of "preventing unauthorized [access]."

functions.[26]  As more particularly developed below, the '868 Patent does not disclose any algorithms for any of the software terms, rendering the '868 Patent indefinite and invalid as a matter of law.  Even if algorithms were not legally required structure for the claims at issue -- which they are -- DataTreasury's proposed "structure" for these claims has no clear link in the '868 Patent to the claimed functions.  This failure of the '868 Patent to clearly link any proposed structure with the claimed function equates to a complete absence of structure and renders the claims invalid as indefinite.  For the Court's convenience, the following chart[27] shows the three terms at issue that the parties agree are subject to Section 112, ¶ 6:

---

**Claim 1:**

1. *"program means for separating and bundling and for translating records"*

**DataTreasury's Proposed Function:**  Separating and bundling and for translating said records [sic.].

**DataTreasury's Proposed Structure:** Data processing and signal generation procedures along with file format translation protocols.[28]

---

2. *"means for transmitting a bundle of said stored financial instrument information from the addressable storage media to the institution designated to receive the information upon the receipt of an instruction"*

**DataTreasury's Proposed Function:** Transmitting a bundle of said stored financial instrument information from the addressable storage media.

**DataTreasury's Proposed Structure:**  Communication link 12.[29]

---

[26]    DataTreasury does not provide a proposed function, however, for the term "security mechanism." Therefore, Wachovia uses its proposed function for this term in this motion.

[27]    *See also* Chart of DataTreasury's Intirinsic Evidence, attached as Exhibit C to this Motion.

[28]    Joint Claim Construction Statement, Exhibit B, page C6.

[29]    Joint Claim Construction Statement, Exhibit B, page C8.

<div style="border:1px solid">

**Claim 24:**

3. ***"means for transmitting each portion of said separated financial instrument information stored in the memory storage device to, and in the format selected by, the receiving institution associated therewith"***

**Parties' Agreed Function:** Transmitting each portion of said separated financial instrument information stored in the memory storage device to, and in the format selected by, the receiving institution associated therewith.

**DataTreasury's Proposed Structure:** Communication link 12.[30]

</div>

1.     *The '868 Patent contains no algorithm capable of performing the claimed function of "separating and bundling and for translating said records" associated with the "program means" from Claim 1.*

The very term "program means" in Claim 1 requires software (or procedures executed by a processor) to perform its function. Indeed, DataTreasury identifies "data processing and signal generation *procedures* along with file format translation *protocols*" as the purported structure for the "program means" term. Thus, it is beyond dispute that the structure at issue for the "program means" term is software or more precisely, the algorithm for creation of the software to carry out the claimed function for this term.[31]

The agreed function for the "program means" term is "separating and bundling and . . . translating said records." Accordingly, the Court is required to determine the specific computer algorithm, if any, disclosed in the specification that performs the claimed function of "separating and bundling and . . . translating said records." A review of the '868 Patent reveals a dearth of mathematical equations, source code, or software flow charts.[32] The patent similarly lacks any "detailed description" of any algorithm

---

[30]     Joint Claim Construction Statement, Exhibit B, page C13.
[31]     *See, e.g., WMS Gaming*, 184 F.3d 1339, 1348-49.
[32]     Declaration of DeWayne E. Perry ("Perry Declaration") at ¶ 4, attached to this Motion as Exhibit D.

sufficient to carry out the claimed function.[33]  Because there is no disclosure in the '868

Patent of any algorithm for performance of the functions claimed by the patent, Claim 1

lacks structure and must be found invalid as a matter of law.

In a futile attempt to identify structure for Claim 1, DataTreasury improperly

points to unbounded "procedures" and open-ended "protocols" that cannot constitute

"corresponding structure" under Section 112:

1. "[a] processor, within translator 1, ***employing data processing and signal generation procedures***, translates the first data file format . . .;"[34]

2. "***using a logical sequence of data interpretation and signal generation steps,*** translator 1 translates the ECP information . . .;"[35]

3. "The single data file includes separate and unique header records for instruments associated with each receiving institution. Upon receipt of this data file, ***the system determines which financial instrument information is intended for a receiving institution and translates that information to a different format selected by that particular receiving institution***;"[36]

4. "The system's master processor 21 identifies and segregates the information designated for each of the receiving institutions from each file received.  Based on the data file format selected by each receiving institution, master processor 21, ***according to a file format translation protocol***, translates the data file received . . . ."[37]

Importantly, "procedures" and "protocols," in this context, are nothing more than

software functions, *i.e.*, algorithms, for separating, bundling, or translating.  The

recitation of the word "procedure" or "protocol" does not satisfy the structural

requirement without reciting the steps of that procedure or protocol.[38] The specification

is completely devoid of any acceptable recitations of structure for the requisite

---

[33]  *Id.*
[34]  '868 Patent at 6:6-10 (emphasis added).
[35]  '868 Patent at 6:45-49 (emphasis added).
[36]  '868 Patent at 6:61-67 (emphasis added).
[37]  '868 Patent at 8:20-29 (emphasis added).
[38]  *WMS Gaming Inc.*, 184 F.3d at 1348 (noting that for a function to have structural support, one or more specific algorithms for performing the function must be disclosed).

algorithms: there are no mathematical equations or expressions; there are no flowcharts; there is no source code; and there is no description of these algorithms in the specification.[39]   Without any acceptable structure, the bare terms "procedures" and "protocols" provide no indication of how they accomplish anything, let alone how they separate, bundle, and translate the records as the claimed function requires.  Proposing words such as "protocol" and "procedure" as "structure" is impermissibly circular in that it is akin to saying that the structure is a structure.  DataTreasury's proposed "structures" still require the patent reader to turn to the specification for details on the scope of the particular claim term and those critical disclosures -- algorithms -- are wholly absent in the '868 Patent.  The '868 Patent's specification simply fails to provide any further details on what these procedures, protocols, or algorithms might be.  Instead, the specification merely states, without detail, that there are procedures and protocols.  Such a disclosure is woefully insufficient under applicable Federal Circuit law cited above.

Nowhere in the four corners of the '868 Patent is an algorithm disclosed that helps the patent reader understand how to develop (or avoid) the claimed "program means."[40] Such a lack of disclosure and guidance is flatly insufficient under Section 112, ¶6 and fails to provide notice as required by Section 112, ¶2.[41]  This lack of structure renders Claim 1 indefinite and invalid as a matter of law and summary judgment should be granted.

---

[39]   *Gobeli Research, Ltd.*, 384 F. Supp. 2d. at 1022-23.  *See also* Perry Declaration at ¶ 4, Attached as Exhibit D to this Motion.

[40]   *See* Perry Declaration at ¶ 4, attached as Exhibit D to this Motion.

[41]   Specifically, the Federal Circuit in *Datamize* ruled that "[t]he scope of claim language cannot depend solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention." *Datamize*, 417 F.3d at 1350; *see also Application of Musgrave*, 431 F.2d 882, 893 (1970) (noting that "[a] step requiring the exercise of subjective judgment without restriction might be objectionable as rendering a claim indefinite.").

    2.    *DataTreasury's proposed structure is not linked to the separating and bundling functions.*

Plaintiff's position on the "program means" term of Claim 1 has a second fatal flaw. Specifically, DataTreasury's proposed structure of "data processing and signal generation procedures along with file format translation protocols" has no clear link to the alleged corresponding "separating" and "bundling" functions claimed in the '868 Patent. The terms "separating" and "bundling" do not appear even once in conjunction with "data processing and signal generation procedures" or "file format translation protocols," as can be seen in DataTreasury's cited intrinsic evidence listed above.

In short, even if DataTreasury's unbounded "procedures" and open-ended "protocols" could serve as structure (which they cannot), the '868 Patent's failure to clearly link such alleged "structure" with two of the three key elements of the claimed function -- the "separating" and "bundling" elements -- is fatal to the ability of the "protocols" and "procedures" to serve as corresponding structure under Section 112. Thus, for a second independent reason, Claim 1 is indefinite and summary judgment for invalidity is required.

    3.    *The '868 Patent contains no algorithm capable of performing the claimed "transmitting" functions in Claims 1 and 24.*[42]

With respect to the "transmitting" claim terms in Claims 1 and 24, their nature as software terms cannot be legitimately denied. For these functions, DataTreasury proposes only "a communication link 12" referenced in Figs. 1 and 2 as "structure." However,

---

[42] The "transmitting" elements from Claims 1 and 24 are as follows:

- **Claim 1:** "means for the institution designed to receive the information to transmit to and to receive from the means for storing"; "means for transmitting a bundle of said stored financial instrument information from the addressable storage media to the institution designated to receive the information upon receipt of an instruction;"
- **Claim 24:** "means for transmitting each portion of said separated financial instrument information stored in the memory storage device to, and in the format selected by, the receiving institution associated therewith."

transmission of data (as opposed to merely receiving data) in a particular form, from one particular location to another requires programming and/or software.[43]

In construing a nearly identical means-plus-function term- "means for transmitting [information]" – the Honorable T. John Ward of this District followed a claim construction ruling by the United States District Court for the Southern District of Indiana holding that the corresponding structure for performing the "transmitting" function was a combination of a computer, software, and one of the specifically disclosed communications devices.[44]  Similar to what is disclosed in the "transmitting" elements of the '868 patent, that case involved an electronic cataloging system wherein data stored on a centralized server would be transmitted to a customer to provide the customer with updated catalog information.[45]  Based on the nature of the "transmitting" functions disclosed and the law of this district, these elements require software or a programmed computer to carry out the claimed "transmitting" functions, and thus necessarily contain "software means." Thus, the law requires that the '868 Patent disclose algorithms corresponding to these claimed "transmitting" functions.

However, no such algorithms are found within the '868 Patent.  Each term suffers the same deficiency -- the detailed description mentions the function and the communication links, but does not describe the algorithm (or how to achieve that function).  Merely mentioning that the function is being performed by "communication

---

[43]     *See* Perry Declaration at ¶¶ 5, 7, attached as Exhibit D to this Motion.  Magistrate Love of this district recognized in *Advanceme, Inc. v. Rapidpay, LLC*, No. 6:05CV424, No. 6:06CV082, 2006 WL 3761975, at *9-10 (E.D. Tex. Dec. 21, 2006) that  "transmitting" (as opposed to "receiving") digital information involves significant software control of hardware devices while receiving of information did not necessarily involve such control or the necessity of software.

[44]     *Charles E. Hill & Assoc., Inc. v. Amazon.com*, 2005 WL 2483510, at *12 (E.D. Tex. Oct. 7, 2005) (J. Ward) (adopting Judge McKinney's claim construction with respect to the means plus function terms contained in the patent-in-suit) (referring to *Charles E. Hill & Assocs. Inc. v. Compuserve Inc.*, 2003 WL 23101797, at *38 (S.D. Ind. Aug. 29, 2003)).

[45]     *Id.*

links" does not describe _how_ the transmission is performed, as required for such software means-plus-function claim terms. In fact, the "communication links" are merely the medium over which the transmission passes; they are not what transmits or receives the communication. The lack of an algorithm -- required structure -- cannot be overlooked. Accordingly, the "transmitting" claim terms all fail the definiteness requirement of Section 112 because the '868 Patent provides no algorithms of any kind for performing the particular function. Independent Claims 1 and 24 are invalid and summary judgment should be granted.

> 4.    _DataTreasury's proposed structure is not linked to the transmitting functions._

Claims 1 and 24 have a second fatal flaw with respect to the "transmitting" elements. DataTreasury's proposed structure ("communication link 12") has no clear association to the alleged corresponding "transmitting" functions. For example, for the "means for transmitting a bundle of said stored financial instrument information" in Claim 1, DataTreasury proposes the function of "transmitting a bundle of said stored financial instrument information _from the addressable storage media_."[46] However, nowhere in DataTreasury's proffered intrinsic evidence is "transmitting . . . from the addressable storage media" even mentioned, much less in conjunction with "communication link 12," DataTreasury's proposed "structure." Although several passages in the specification reference transmission "via"[47] or "through communication links,"[48] or "communication link[s] . . . for transmitting . . . information,"[49] not one of

---

[46]    Joint Claim Construction Statement, Exhibit C, page C8 (emphasis added).
[47]    '868 Patent 8:7-8. It should be noted, however, that this reference is to "communication links 11" and not "communication link 12," which is DataTreasury's proposed structure.
[48]    '868 Patent 9:7.
[49]    '868 Patent 8:41-42. It should be noted, however, that this references "communication link 30," not "communication link 12," which is the structure proposed by DataTreasury. Further, despite a

these passages clearly identifies "communication link 12" as the structure that <u>actually transmits (sends)</u> information.  Rather, the specification's usage of the terms "via" and "through" make clear that the communication links in DataTreasury's cited intrinsic evidence are only the <u>medium</u> through which the information passes <u>after</u> transmission has been initiated by the "means for transmission," whatever that is.  Nowhere in the specification are the "communication links" associated or linked with the actual transmission of information as the law requires.  Because no clear linkage exists between these "transmitting" functions and the "communication link 12" proposed by DataTreasury as structure, summary judgment under *MIDCO* is required.

In short, not only does the '868 Patent lack the legally required structure for performing these "transmitting" functions in Claims 1 and 24 (e.g. algorithms) but further, the "structure" proposed by DataTreasury is not clearly linked, as it must be, by the '868 Patent specification to the claimed functions.  Thus, for a second independent reason, Claims 1 and 24 are indefinite and summary judgment of invalidity is required.

### D.    Dependent Claims 3 and 48 Include Software Means-Plus-Function Elements That Are Also Invalid Due To Indefiniteness.

Contrary to DataTreasury's assertions, the following two terms from Dependant Claims 3 and 48 are software means-plus-function terms governed by Section 112, ¶ 6, and they also lack a requisite algorithm:

- Claim 3: ***"security mechanism for preventing the unauthorized one or more of the reception, transmission, translation and storage of financial instrument information"***
- Claim 48: ***"security procedures for preventing unauthorized reception, transmission, translation and storage of any financial instrument information within the system."***

---

reference here to "communication link 30," such a communication link is found nowhere on any of the diagrams in the '868 Patent.

1.    *"Security Mechanism" and "Security Procedures" Are Means-Plus-Function Limitations Subject to Analysis Under Section 112, ¶ 6.*

Although these "security" elements lack the word "means," they are still subject to Section 112, ¶ 6.  First, lack of "means" language does not prevent a limitation, such as these from being construed as means-plus-function limitations, subject to Section 112, ¶ 6.[50]  In holding that the district court was correct to find the term "lever moving element" subject to 112, ¶ 6, the *Mas-Hamilton* court first noted that "lack of [means] language does not <u>prevent</u> a limitation from being construed as a means-plus-function limitation."[51]  Rather, when i) "[t]he limitation is drafted as a function to be performed rather than definite structure or materials" and ii) the "limitation's language does not provide any structure", application of Section 112, ¶ 6 is appropriate even though the "means" catch phrase is not used.[52]  For example, when an element includes a claim term that is immediately followed by subsequent functional language (such as "for" performing some function), "[s]uch language is precisely what was intended by the statutory phrase in Section 112, ¶ 6 requiring that means-plus-function limitations provide a specified function."[53]

With respect to whether or not the limitation provides any structure, the Federal Circuit in *MIT* noted that "generic terms" such as "'***mechanism***,' 'means,' 'element,' and 'device,' typically do not connote sufficiently definite structure" to escape construal as "means-plus-function" terms.[54]  Directly on point, the Federal Circuit in *MIT* specifically

---

[50]    *See, e.g., Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1213-16 (Fed. Cir. 1998) (interpreting "lever moving element" and "movable link member" under § 112, ¶ 6).

[51]    *Mas-Hamilton Group*, 156 F.3d at 1214.

[52]    *Id.* at 1213 (*emphasis* added).

[53]    *Id.* at 1215.

[54]    *MIT*, 462 F.3d at 1354.

noted that "at least one dictionary equates mechanism with means" and that "[t]he term 'mechanism' standing alone connotes no more structure than the term 'means,'" and was thus subject to interpretation under Section 112, ¶ 6.[55]  In short, when, as here, the term is drafted as a function and lacks a reasonably understood structural meaning, then the term must be construed as a "means-plus-function" element.[56]

Turning to the terms at issue here, the generic term "security mechanism" (as well as "security procedures") connotes no more structure than "security means" and therefore should be construed under Section 112, ¶ 6.  These "security" terms are directly connected to a function with the term "for." The functions described for "security mechanism" and "security procedures" respectively are "for preventing the unauthorized one or more of the reception, transmission, translation and storage of financial instrument information" and "for preventing unauthorized reception, transmission, translation and storage of any financial instrument information within the system."  Further, the terms "security mechanism" and "security procedures" do not "have a generally understood structural meaning in the art,"[57] with the result that these are inherently indefinite terms couched in terms of the functions they perform.

Finally, the terms "mechanism" and "procedures" are inherently generic, leaving the patent reader with no actual structure capable of performing the functions.  Indeed, the terms "mechanism" and "procedure," coupled with functional language as they are in the '868 patent, are nothing more than placeholders synonymous with "means."  Thus, since the terms "security mechanism" and "security procedures" do not provide any known structure in the art and are immediately coupled with a "for" to at least two

---

[55]   *Id.*
[56]   *See Mas-Hamilton Group*, 156 F.3d, at 1213-14.
[57]   *Id.*

functions performed by the "security mechanism" and "security procedures," these elements are in means-plus-function form and the Court should find they are subject to Section 112, ¶ 6.

2.    *"Security Mechanism" and "Security Procedures" are Indefinite Software Means-Plus-Function Terms.*

Since Section 112, ¶ 6 applies to the two "security" claim terms, the next step is to examine the specification to identify the structure corresponding to the claimed functions. As an initial matter, these terms are <u>software</u> means-plus-function terms. Indeed, DataTreasury's proposed construction of these terms is "***software running on a processor*** which limits only authorized originating and receiving institutions to receive, transmit, translate, and/or store financial instrument information."[58] Accordingly, as with the previous terms at issue in this motion, the Court should determine the specific computer algorithm, if any, disclosed in the specification for performing the claimed security functions in Claims 3 and 48. As with the previous terms at issue in this motion, such algorithms are entirely absent from the '868 Patent.[59]

The "security procedures" at issue in Claims 3 and 48 are only mentioned ***twice*** in the entire '868 specification. In neither instance does the patent provide an algorithm in the form of source code, flow charts, mathematical equations, or otherwise offer a detailed description of the algorithm demonstrating how the function is accomplished.[60] For the Court's convenience, these two portions of the specification are reproduced in full below:

---

[58]    Joint Claim Construction Statement, Exhibit B, pages C11 ("security mechanism") and C16 ("security procedures") (emphasis added).

[59]    *See* Perry Declaration at ¶¶ 6,8, attached as Exhibit D to this Motion.

[60]    *Id.*

- "Security procedures are utilized to limit only authorized originating and receiving institutions to effect one or more of the reception, transmission, translation and storage of the financial instrument information contained in the data file. Procedures are also used to authenticate information contained in the first data file format with respect to predetermined data format parameters. This includes validating that the data file submitted by the originating institution is in a format which the system recognizes; that the data fields with respect to items in the file are accurate according to format parameters; and that the minimum amount of information required to successfully translate the file is present whether the information is to be transmitted to a receiving institution or to one or more settlement mechanisms. (Some formats have optional fields that are not "necessary" for the purposes herein.)"[61]

- "Security procedures are provided which limit only authorized originating and receiving institutions to effect one or more of the reception, transmission, translation and storage of the data files within the system. This ensures that the originating institutions O1, O2 . . . ON and the receiving institutions R1, R2 . . . RN are authorized to access the system, as well as preventing misappropriation of financial information contained in the data files by non-authorized parties. A further data validation protocol is provided to verify that the minimum amount of information to facilitate translation and transfer between the originating and receiving institutions, or from the originating and receiving institutions to one or more settlement mechanisms, is present in the data file. The system's master processor 21 identifies and segregates the information designated for each of the receiving institutions from each file received."[62]

Far from providing any structure by way of algorithms, these portions of the specification repeat that "security procedures" exist but fail to explain how they work. Put another way, upon seeing the means-plus-function term "security procedures" in Claim 48 ("security mechanism" in Claim 48), the patent reader looks to the specification to find out what these "security procedures" entail and how to perform the associated security functions.  But this review leaves the patent reader guessing as to how these functions are performed by the "software running on a processor."  Accordingly, Claims

---

[61]   '868 Patent 6:11-26.
[62]   '868 Patent 8:8-23.

3 and 48 are invalid because the '868 Patent provides no algorithms (the required structure) of any kind for performing these particular functions.

Further, there is *no link*—clear or otherwise—between DataTreasury's proposal of "software running on a processor" (or any software, for that matter) and the claimed function of "preventing the unauthorized . . . reception, transmission, translation and storage of financial instrument information."  In fact, nowhere in the intrinsic support cited by DataTreasury does the term "software" appear at all.  The lack of a clear statement in the specification identifying DataTreasury's proposed "software" structure as performing the claimed function is fatal to Claims 3 and 48.  Thus, summary judgment of invalidity is warranted as to each of Claims 3 and 48 because the '868 Patent fails to provide an algorithm for the "security" terms, and because there is no clear linkage between the structure proposed by DataTreasury and the claimed function.[63]

### E. DataTreasury Cannot Save the '868 Patent by Extrinsic Evidence or Expert Testimony.

As a matter of law, extrinsic evidence -- including expert testimony -- will not cure the fatal defects of indefiniteness in the '868 Patent.  DataTreasury cannot offer any evidence or otherwise supplement the '868 patent with expert testimony -- as it is settled law that "the testimony of one of ordinary skill in the art *cannot supplant the total absence of structure from the specification*."[64]  As the Federal Circuit recently opined in *Biomedino*, "[t]he inquiry is whether one of skill in the art would understand the specification itself to disclose a structure, not simply whether that person would be capable of implementing a structure . . . Accordingly, a bare statement that known

---

[63]   Claim 3 is also invalid since it depends from Independent Claim 1, that was shown to be invalid in the previous sections.

[64]   *Default Proof Credit Card System.,* 412 F.3d at 1302 (emphasis added); *see also Touchcom,* 427 F. Supp. 2d at 736 ("It is the patentee's burden to clearly link and associate corresponding structure with the claimed function.  That one of skill in the art could create structure sufficient to perform a function is not the inquiry.")

techniques or methods can be used *does not disclose structure*."[65]    Because extrinsic evidence is inappropriate here, additional discovery likewise would not aid the Court in deciding this issue.[66]    The search for structure to carry out the claimed function is limited to the four corners of the patent itself -- a fruitless search in this case.    Accordingly, the Court should find claims 1, 2, 3, 22, 24, 27 and 48 of the '868 Patent invalid due to indefiniteness under 35 U.S.C. § 112, ¶ 6 and must disregard any attempt by DataTreasury to rescue the patent through evidence external to the patent itself.

## III.    <u>CONCLUSION</u>

The Court should invalidate  Claims 1, 3, 24 and 48 of the '868 Patent, four of the seven claims asserted against Wachovia under 35 U.S.C. Section 112, ¶¶ 2 & 6. Additionally, dependent claims 2, 22, and 27 are invalid because they are dependent on invalid independent claims 1 and 24.   Because the '868 Patent includes no figures, mathematical equations, flowcharts, or any other disclosure sufficient to identify the required algorithms -- and therefore no structure -- corresponding to <u>any</u> of the five key computer/software implemented means-plus-function terms in those claims, as required by the Federal Circuit and the previous decisions of the Eastern District of Texas courts, these claims are wholly invalid.   Furthermore, the '868 Patent contains no clear linkage between DataTreasury's proposed structures for any of the five claim terms and their corresponding claim functions, a second fatal defect independently warranting summary judgment.

Accordingly, Wachovia respectfully requests that this Court enter summary judgment finding Claims 1, 2, 3, 22, 24, 27 and 48 of the '868 Patent invalid as a matter of law and enter judgment for Wachovia as to these claims.

---

[65]    *Biomedino, LLC v. Waters Techs. Corp.*, --- F.3d ----, 2007 WL 1732121, at *6 (Fed. Cir. June 18, 2007) (citations omitted) (emphasis added).

[66]    *See Touchcom,* 427 F. Supp. 2d at 736.

Dated:  July 9, 2007                              Respectfully submitted,


By:/s/ E. Danielle Thompson Williams

E. Danielle Thompson Williams
KILPATRICK STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC  27101

William H. Boice
Audra Dial
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia  30309-4530

Lance Lee
WLanceLee@aol.com
Texas Bar No. 240004762
YOUNG, PICKETT & LEE, L.L.P.
4122 Texas Blvd.
P.O. Box 1897
Texarkana, Texas 75504
903-794-1303 (Telephone)
903-792-5098 (Telecopy)

**ATTORNEYS FOR DEFENDANTS
WACHOVIA CORPORATION and
WACHOVIA BANK, N.A.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on July 9, 2007 to all counsel of record pursuant to the Court's CM/ECF system.

/s/E. Danielle Thompson Williams
E. Danielle Thompson Williams

US2000 10157385.1 36569-332358