# EXHIBIT D

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| DATATREASURY CORPORATION, | |
| Plaintiff | |
| v. | 2:06-CV-72 DF |
| WELLS FARGO & COMPANY, ET AL., | |
| Defendants | |

### DECLARATION OF DR. DEWAYNE E. PERRY

I, Dr. Dewayne E. Perry, declare as follows:

1. I am over the age of twenty-one (21), of sound mind, and competent to make this declaration. I have never been convicted of a felony or a crime of moral turpitude, and I am qualified to give testimony under oath. Each of the facts listed below is within my personal knowledge and is true and correct.

2. I am a Professor at the University of Texas at Austin, with over forty (40) years of experience in software, which includes sixteen (16) years with Bell Laboratories dealing with communication systems. Currently, I am the Motorola Regents Chair of Software Engineering and I am on the advisory board for Wiley's Software Process: Improvement & Practice, as well as a member of the IEEE Computer Society and ACM SIGSOFT, a former associate editor of IEEE Transactions on Software Engineering, an associate editor of ACM Transactions on Embedded Computing Systems, and have been an organizing chair, program chair, and program committee member on various premiere software engineering conferences. My curriculum vitae is attached as Attachment 1 to

DECLARATION OF DR. DEWAYNE E. PERRY- Page 1

my declaration filed in connection with Bank of America's Motion for Summary Judgment for Claim Invalidity Based on Indefiniteness of U.S. Patent 5,265,007.

3.  I have reviewed U.S. Patent 5,717,868 (the "'868 Patent") including the claims.

4.  Claim 1 of the '868 Patent includes the following limitation: "program means for separating and bundling and for translating records." As reflected in the Joint Claim Construction and Prehearing Statement in Compliance with Patent Rule 4-3 (hereafter, the "Rule 4-3 Statement"), the parties agree that the foregoing limitation is a means-plus-function limitation. Further, the Rule 4-3 Statement reflects that DataTreasury's proposed function for this particular limitation is "separating and bundling and for translating [sic.] said records." The Rule 4-3 Statement also reflects that DataTreasury's proposed structure for performing the recited function is "data processing and signal generation procedures along with file format translation protocols." The '868 Patent does not indicate whether application software capable of implementing the alleged procedures and protocols performing the recited function exists or was known, or the algorithm such software would implement, to perform the recited function. Specifically, the '868 Patent does not provide a flowchart, mathematical equation(s), pseudo-code, source code, or description in its specification that could constitute an algorithm for implementing the procedures and/or protocols that perform the recited function. Further, the '868 Patent does not identify any known or commercially available application software that could be used to perform the recited function. Thus, the '868 Patent fails to disclose even one algorithm for achieving the recited function.

5. Claim 1 of the '868 Patent includes the following limitation: "means for transmitting a bundle of said stored financial instrument information from the addressable storage media to the institution designated to receive the information upon the receipt of an instruction." As reflected in the Rule 4-3 Statement, the parties agree that the foregoing limitation is a means-plus-function limitation. Further, the Rule 4-3 Statement reflects that DataTreasury's proposed function for this particular limitation is "transmitting a bundle of said stored financial instrument information from the addressable storage media." As of March 7, 1995, the filing date of the application for the '868 Patent, application software was required to perform the recited function. A communication link alone could not perform the recited function. In order to perform the recited function, additional application software would need to be written or obtained from third parties. The '868 Patent does not indicate whether such application software exists or was known, or the algorithm such software would implement, to perform the recited function. Specifically, the '868 Patent does not provide a flowchart, mathematical equation(s), pseudo-code, source code, or description in its specification that could constitute an algorithm corresponding with this function. Further, the '868 Patent does not identify any known or commercially available application software that could be used to perform the recited function. Thus, the '868 Patent fails to disclose even one algorithm for achieving the recited function.

6. Claim 3 of the '868 Patent includes the following limitation: "security mechanism for preventing the unauthorized one or more of the reception, transmission, translation and storage of financial instrument information." As reflected in the Rule 4-3 Statement, Bank of America's proposed function for this particular limitation is

"preventing unauthorized reception, transmission, translation and storage of financial instrument information." As of March 7, 1995, the filing date of the application for the '868 Patent, application software was required to perform the recited function. A programmable computer (with its communication-related hardware and its operating system and standard support software) alone could not perform the recited function. In order to perform the recited function, additional application software would need to be written or obtained from third parties. The '868 Patent does not indicate whether such application software exists or was known, or the algorithm such software would implement, to perform the recited function. Specifically, the '868 Patent does not provide a flowchart, mathematical equation(s), pseudo-code, source code, or description in its specification that could constitute an algorithm corresponding with this function. Further, the '868 Patent does not identify any known or commercially available application software that could be used to perform the recited function. Thus, the '868 Patent fails to disclose even one algorithm for achieving the recited function.

7.   Claim 24 of the '868 Patent includes the following limitation: "means for transmitting each portion of said separated financial instrument information stored in the memory storage device to, and in the format selected by, the receiving institution associated therewith." As reflected in the Rule 4-3 Statement, the parties agree that the foregoing limitation is a means-plus-function limitation. Further, the Rule 4-3 Statement reflects that the parties' agreed function for this particular limitation is "transmitting each portion of said separated financial instrument information stored in the memory storage device to, and in the format selected by, the receiving institution associated therewith." As of March 7, 1995, the filing date of the application for the '868 Patent, application

software was required to perform the recited function. A communication link alone could not perform the recited function. In order to perform the recited function, additional application software would need to be written or obtained from third parties. The '868 Patent does not indicate whether such application software exists or was known, or the algorithm such software would implement, to perform the recited function. Specifically, the '868 Patent does not provide a flowchart, mathematical equation(s), pseudo-code, source code, or description in its specification that could constitute an algorithm corresponding with this function. Further, the '868 Patent does not identify any known or commercially available application software that could be used to perform the recited function. Thus, the '868 Patent fails to disclose even one algorithm for achieving the recited function.

8. Claim 48 of the '868 Patent includes the following limitation: "security procedures for preventing unauthorized reception, transmission, translation and storage of any financial instrument information within the system." As reflected in the Rule 4-3 Statement, Bank of America's proposed function for this particular limitation is "preventing unauthorized reception, transmission, translation and storage of any financial instrument information within the system." As of March 7, 1995, the filing date of the application for the '868 Patent, application software was required to perform the recited function. A programmable computer (with its communication-related hardware and its operating system and standard support software) alone could not perform the recited function. In order to perform the recited function, additional application software would need to be written or obtained from third parties. The '868 Patent does not indicate whether such application software exists or was known, or the algorithm such software

would implement, to perform the recited function. Specifically, the '868 Patent does not provide a flowchart, mathematical equation(s), pseudo-code, source code, or description in its specification that could constitute an algorithm corresponding with this function. Further, the '868 Patent does not identify any known or commercially available application software that could be used to perform the recited function. Thus, the '868 Patent fails to disclose even one algorithm for achieving the recited function.

9. I declare under penalty of perjury that all of the foregoing is true and correct.

FURTHER, DECLARANT SAYETH NOT.

Executed on this __2__ day of July 2007, at Austin, Texas.

_____
Dr. Dewayne E. Perry

90228294.doc