**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**



| | | |
|---|---|---|
| **DATATREASURY CORPORATION** | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No.:2:06-CV-** |
| **v.** | § | **72 (DF)** |
| | § | |
| | § | **JURY TRIAL DEMAND** |
| **WELLS FARGO & COMPANY, ET. AL.,** | § | |
| **Defendants** | § | |

<u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ................................................................................................ 1
II.   UNDISPUTED FACTS ...................................................................................... 2
III.   STATEMENT OF GENUINE ISSUES ............................................................ 2
IV.   ARGUMENTS AND AUTHORITIES ............................................................. 3
   A. Defendants Must Prove the '868 Patent Invalid by Clear and Convincing Evidence .......... 3
   B. Expert Testimony Can and Should Be Considered in Determining Whether the
   Specification's Disclosure of Structure is Sufficient to be Understood by One Skilled in the
   Art ............................................................................................................................ 4
   C. An Algorithm Not be Expressed in Flow Charts or Source Code ........................................ 6
   D. The Federal Circuit is More Generous in Finding Structure Linked to Computer-
   Implemented Functions than Defendants Suggest .................................................................. 8
   E. The '868 Patent is a Financial Services Patent, Not a Software Patent .............................. 11
   F. The Federal Circuit's Recent Holding in *Biomedino* Follows the Well-Established Federal
   Circuit Law Outlined Above and Does Not Change the Law  ......................................14
   G. Defendants Ask this Court to Take a Position that Could Invalidate Hundreds of United
   States Patents Without any Reasonable Basis..........................................................15
V.   SUFFICIENT STRUCTURE IS DISCLOSED IN THE SPECIFICATION, FROM THE
POINT OF VIEW OF A PERSON OF ORDINARY SKILL IN THE ART, FOR PERFORMING
THE FUNCTIONS IN THE EIGHT TERMS DISCUSSED BY DEFENDANTS. ................... 16
VI.   DEFENDANTS' ANALYSIS AND EXPERT TESTIMONY CANNOT MEET THE HIGH
BURDEN FOR INVALIDATING A UNITED STATES PATENT. ......................................... 26
VII.   CONCLUSION ................................................................................................ 28

i

Dockets.Justia.com

## TABLE OF AUTHORITIES

*Advanceme, Inc. v. Rapidpay, LLC*, No. 6:05cv424, No. 6:06cv082, 2006 U.S. Dist. LEXIS 92444, at *25-26 (E.D. Tex. Dec. 21, 2006)............................................................. 12, 13, 19, 20

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L. Ed. 2d 202 (1986) ............................. 3

*Appex, Inc. Ramiritan Computer, Inc.* 325 F3d 1364(Fed. Cir. 2003)............................23, 24

*Application of Freeman*, 573 F.2d 1237, 1245-46 (C.C.P.A. 1978)................................................. 7

*Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1382 (Fed. Cir. 1999).............. 5, 9, 11

*Biomedino, LLC v. Waters Techs. Corp, F.3d* 2007 WL 1732121 , at 2 (Fed. Cir June 18, 2007) 8,. 14,.15, 16

*Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1376 (Fed. Cir. 2001) .................................... 4, 5

*Charles E. Hill & Assocs. Inc. v. Amazon.com*, 2005 WL 2483510 at *12(ED. TEX. Oct 7, 2005)..19, 20

*Charles E. Hill & Assocs. Inc. v. Compuserve Inc*.............................................................19

*Connell v. Sears Roebuck & Co.*, 722 F.2d 1542, 1549 (Fed. Cir. 1983)........................................ 3

*Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1302 (Fed. Cir. 2005)..... 3

*Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1348 (Fed. Cir. 2005) ................... 4, 5

*DataTreasury Corporation v. Citigroup, Inc. et al.*, Cause No.2:05cv294 (E.D. Tex.)............... 16

*Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001) ................. 3

*Gobeli Research, Ltd. v. Apple Computer, Inc., et al*, 384 F. Supp.2d 1016 (E.D. Tex. 2005)..... 7, ...................................................................................................................11,.12

*Greenberg v. Ethicon Endo-Surgery, Inc., 91 F. 3d 1580, 1584 (Fec. Cir. 1996)*          23, 24

*Harris Corp. v. Ericsson, Inc.*, 417 F.3d 1241, 1253 ..................................................................... 6

*In re Alappat*, 33 F.3d 1526, 1545 (Fed. Cir. 1994) (en banc) ...................................................... 6

*In re Dossel*, 115 F.3d 942, 946 (Fed. Cir. 1997)..................................................................... 6, 10

*In re Iwahashi*, 888 F.2d 1370, 1374 (Fed. Cir. 1989) ................................................................. 6

*Intel Corp. v. VIA Techs.*, 319 F.3d 1357, 1365-1366 (Fed. Cir. 2003) ........................... 4, 6, 9, 27

*Int'l Trade Comm'n*, 161 F.3d 696 (Fed. Cir. 1998)........................................................23

*Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1379 (Fed. Cir. 2005) ....................... 3, 4

*Mass. Inst. of Tech. v. Abacus Software*.................................................................24

*Mas-Hamilton Group v. LaGard, Inc*...................................................................24

*Medical Instrumentation and Diagnostics Corporation v. Elekta AB*, 344 F.3d 1205 (Fed. Cir. 2003) .......................................................................................... 6,.7, 9, 10, 11.14

*Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1189 (Fed. Cir. 1996) ............................. 3

*Network Appliance, Inc. v. Bluearc Corp.*, No. C 03-5665 MHP, 2005 U.S. Dist. LEXIS 16732, at *17-18 (N. D. Cal. Jan. 5, 2005) ............................................................................................ 13

*Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1340-41 (Fed. Cir. 2003) ................................ 4

*Omegaflex, Inc. v. Parker-Hannifin Corp.*, 2007 U.S. App. LEXIS 14308, *8-9 (Fed. Cir. June 18, 2007) ................................................................................................................................... 5

*Personalized Media Communications, LLC v. ITC*, 161 F.3d 696, 705 (Fed. Cir. 1998) ........ 3, 22

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc) ........................................... 3,5

*S3, Inc. v. nVIDIA Corp.*, 259 F.3d 1364, 1370-71 (Fed. Cir. 2001)........................................ 9, 10

*Seer Systems, Inc. v. Beatnik, Inc.*, No. C 03-04636 JSW, 2006 U.S. Dist. LEXIS 25174, at *9 (N.D. Cal. Mar. 22, 2006)...................................................................................................... 7

*Touchcom, Inc.  v. Dresser, Inc.*, 427 F. Supp.2d 730, 735 (E.D. Tex. 2005).................... 7,.11,.12

*WMS Gaming, Inc. v. International Game Technology*, 184 F.3d 1339, 1348 (Fed. Cir. 1999)... 6, 8,.9,.11, 18

*York Prods., Inc.Central Tractor,*(Fed Cir. 1996)………………………………………………….23

iii

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

---

| | | |
|---|---|---|
| **DATATREASURY CORPORATION** | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No.:2:06-CV-** |
| **v.** | § | **72 (DF)** |
| | § | |
| | § | **JURY TRIAL DEMAND** |
| **WELLS FARGO & COMPANY, ET. AL.,** | § | |
| **Defendants** | § | |

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF CLAIM INVALIDITY BASED ON INDEFINITENESS FOR
U.S. PATENT NO. 5,717,868[1]**

Defendants ask this Court to invalidate more than half of the asserted independent and

dependent claims of U.S. Patent No. 5,717,868 ("the '868 Patent")[2] under 35 U.S.C. § 112, ¶¶ 2

and 6. This Court should deny Defendants' request because (1) Defendants misinterpret or

ignore relevant guiding case law, and (2) the analysis of Defendants' expert Dr. Dewayne E.

Perry, is scant and conclusory; and (3) Defendants do not produce any evidence sufficient to

invalidate the '868 Patent by clear and convincing evidence.

**I.    INTRODUCTION**

Defendants argue that Claims 1, 2, 3, 22, 24, 27, and 48 of the '868 Patent are invalid for

indefiniteness. This argument is based on their position that the specification does not disclose

---

[1] This Motion for Summary Judgment (Dkt. No. 740) was originally filed by Defendants Wachovia Corporation and
Wachovia Bank, N.A.; however, it has now been joined by most Defendants in this case and hence will be treated as
a joint motion. Plaintiff notes, however, that Defendant USBAI has not joined in Defendants' Motion for Summary
Judgment.
[2] An unidentified party (or parties) has asked the USPTO to accept re-examination for this patent, along with U.S.
Patent Nos. 5,265,007, 5,583,759, and 5,930,778. The USPTO has accepted all four of these patents for re-
examination.

sufficient structure for certain computer-implemented means-plus-function terms. Defendants'

motion must fail because (1) Defendants have misinterpreted or ignored relevant case law,

including clear Federal Circuit precedent teaching that whether the specification's disclosure is

sufficient must be evaluated through the eyes of a person of ordinary skill in the art, and (2) the

boilerplate, conclusory declaration of Defendants' expert, Dr. Dewayne E. Perry, cannot meet

Defendants' burden of proving Claims 1, 2, 3, 22, 24, 27, and 48 of the '868 Patent invalid by

clear and convincing evidence; and (3) Defendants have not produced any evidence sufficient to

meet their high burden of proving invalidity by clear and convincing evidence.

## II.    UNDISPUTED FACTS

Plaintiff agrees that the '868 Patent, a financial services patent, does not include a

flowchart, mathematical equations, or source code. In addition, the parties have agreed that the

three terms identified by Defendants on pages 8-9 of their Motion are "means-plus-function"

terms and therefore would be subject to Section 112, ¶ 6. However, the "facts" included in

Defendants' Motion under "B," in their "Statement of Undisputed Facts" are not facts at all, but

legal determinations that have yet to be made by this Court. The parties' proposed claim

constructions, which will be discussed further below, are not "facts" and are not appropriately

included in a Statement of Undisputed Facts.

## III.  STATEMENT OF GENUINE ISSUES

Summary judgment is improper because Defendants have not proven *by clear and*

*convincing evidence* that Claims 1, 2, 3, 22, 24, 27, and 48 of the '868 Patent are invalid. The

determination of whether these claims of the '868 Patent are invalid for indefiniteness of certain

claim terms hinges on this Court's determination of the proper construction of those claim terms,

which is a legal determination. However, to prevail on summary judgment, Defendants must

prove by clear and convincing evidence at least that the '868 Patent specification does not disclose adequate structure linked to the functions in those claim terms, such as would be understood by one of ordinary skill in the art.  Defendants' Motion falls far short of establishing this fact by clear and convincing evidence.

## IV. ARGUMENTS AND AUTHORITIES

### A. <u>Defendants Must Prove the '868 Patent Invalid by Clear and Convincing Evidence</u>

Summary judgment should only be granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.[3]  In applying this standard, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." [4] A United States patent is presumed valid.[5]  Overcoming the presumption of validity requires a showing of facts proved by clear and convincing evidence. [6] That standard of proof also applies in the summary judgment context.[7]

A claim is definite if "one skilled in the art would understand the bounds of the claim when read in light of the specification."[8]   Claims are indefinite "if reasonable efforts at claim construction prove futile," that is, if a claim "is insolubly ambiguous, and no narrowing construction can properly be adopted."[9]   Even if it is a formidable task to understand a claim,

---

[3] Fed. R. Civ. P. 56(c).
[4] *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 91 L. Ed. 2d 202 (1986); *Cross Med. Prods. v. Medtronic Sofamor Danek, Inc*., 424 F.3d 1293, 1302 (Fed. Cir. 2005).
[5]  35 U.S.C. § 282.
[6] *Invitrogen Corp. v. Biocrest Mfg., L.P*., 424 F.3d 1374, 1379 (Fed. Cir. 2005); *Connell v. Sears Roebuck & Co*., 722 F.2d 1542, 1549 (Fed. Cir. 1983).
[7] *Invitrogen Corp. v. Biocrest Mfg., L.P*., 424 F.3d 1374, 1379 (Fed. Cir. 2005); *Nat'l Presto Indus., Inc. v. W. Bend Co*., 76 F.3d 1185, 1189 (Fed. Cir. 1996).
[8] *Invitrogen Corp. v. Biocrest Mfg., L.P*., 424 F.3d 1374, 1383 (Fed. Cir. 2005); *Personalized Media Communications, LLC v. ITC*, 161 F.3d 696, 705 (Fed. Cir. 1998).
[9] *Invitrogen Corp. v. Biocrest Mfg., L.P*., 424 F.3d 1374, 1383 (Fed. Cir. 2005); *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001).

and the result not unanimously accepted, as long as the boundaries of a claim may be understood it is "sufficiently clear to avoid invalidity [for] indefiniteness."[10]

Defendants note, correctly, that a determination of the definiteness of patent claims is a question of law that "requires a construction of the claims according to the familiar canons of claim construction."[11]  As the Federal Circuit emphasized in its *en banc* opinion in *Phillips v. AWH Corp.*, the claim construction inquiry is based on the perspective of a person of ordinary skill in the art.  415 F.3d 1303, 1313 (Fed. Cir. 2005).

In moving for summary judgment, Defendants have taken on the substantial burden of proving their indefiniteness claim by "clear and convincing evidence."  The Federal Circuit explained the burden now borne by Defendants in a similar case where the Defendant alleged that a patent was indefinite on the ground that the specification did not clearly link any structure to the functions recited in the claim:

> "Whether the specification adequately sets forth structure corresponding to the claimed functions must be considered from the perspective of one skilled in the art.  *Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1376 (Fed. Cir. 2001). Any fact critical to a holding on indefiniteness, moreover, must be proven by the challenger by <u>clear and convincing evidence</u>.  *See id.* at 1376-77.  In this case, VIA needed to prove, by <u>clear and convincing evidence</u>, that the specification lacks adequate disclosure of structure to be understood by one skilled in the art as able to perform the recited functions."[12]

## B.  Expert Testimony Can and Should Be Considered in Determining Whether the Specification's Disclosure of Structure is Sufficient to be Understood by One Skilled in the Art

---

[10] *Invitrogen*, 424 F.3d at 1383; *Exxon Research*, 265 F.3d at 1375.

[11] *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1348 (Fed. Cir. 2005) (quoting *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1340-41 (Fed. Cir. 2003)).

[12] *Intel Corp. v. VIA Techs.*, 319 F.3d 1357, 1365-1366 (Fed. Cir. 2003) (emphasis added).

Defendants' contentions that "DataTreasury cannot offer any evidence or otherwise supplement the '868 patent with expert testimony" and that "extrinsic evidence is inappropriate here," as well as their insinuation that this Court "is limited to the four corners of the patent itself" in determining this issue, are flatly wrong under Federal Circuit law. *See* Defendants' "Motion for Summary Judgment for Claim Invalidity" at pp. 20-21. The Federal Circuit has noted that "[u]nder our caselaw interpreting section 112 P 6, knowledge of one skilled in the art can be called upon to flesh out a particular structural reference in the specification for the purpose of meeting the statutory requirement of definiteness.[13]

While Defendants cite to the *Datamize* case for other points of law (see page 3, 4, 7, 11), they conveniently overlook a key point made by the Federal Circuit in that case: "while we have emphasized the importance of intrinsic evidence in claim construction, we have also authorized district courts to rely on extrinsic evidence, such as expert testimony."[14] (where non-movant Parker proffered an expert, David Geary, the Court noted that "the district court erroneously gave no probative weight to this expert evidence . . . Parker's expert evidence cannot simply be disregarded at summary judgment given that Parker was the non-movant . . . the court's analysis was too narrow in scope and failed to account for evidence regarding the knowledge of a skilled artisan. The Geary evidence certainly raises a genuine issue of material fact as to whether a person of ordinary skill in the art would have had reason to add the PCF's locating sleeve to the Sweeney fitting.") (non-precedential). While the importance of intrinsic evidence in claim

---

[13] *Budde v. Harley-Davidson, Inc*., 250 F.3d 1369, 1382 (Fed. Cir. 2001) (holding the specification's reference to "commercially available vacuum sensors" constituted sufficient structure, as one skilled in the art would have understood the reference); *Atmel Corp. v. Info. Storage Devices, Inc*., 198 F.3d 1374, 1382 (Fed. Cir. 1999) (holding that the district court "should have determined whether sufficient structure was disclosed in the specification based on the understanding of one skilled in the art"); 259 F.3d at 1370 (holding that the specification's reference to a "selector" sufficed as one skilled in the art would have understood the term).
[14] *Datamize, LLC v. Plumtree Software, Inc*., 417 F.3d 1342, 1348 (Fed. Cir. 2005) (quoting *Phillips v. AWH Corp*., 415 F.3d 1303 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted)); see *Omegaflex, Inc. v. Parker-Hannifin Corp.,* 2007 U.S. App. LEXIS 14308, *8-9 (Fed. Cir. June 18, 2007)

construction cannot be diminished, testimony by persons skilled in the art that does not contradict, but rather helps to explain the intrinsic evidence, should not be discounted or excluded.

### C. An Algorithm Need Not be Expressed in Flow Charts or Source Code

A microprocessor configured to carry out particular functions can properly serve as corresponding structure for a means-plus-function claim element.[15]  Because the instructions change the electrical paths within the device, they modify the structure of the device and create a new machine.[16]  Hence the rule announced by the Federal Circuit in *WMS Gaming*:  "[i]f the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm." [17]  The structure for performing the function is limited to the algorithm disclosed in the specification.[18]   However, this does not mean that the patentee must disclose specific source code for a processor or computer.  And, the term "algorithm" is not limited to a formula of mathematical symbols—for example, the steps, formula, or procedures to be performed by the computer may be expressed textually.[19]

An algorithm, broadly defined, is "a step-by-step procedure for solving a problem or accomplishing some end."[20] The Federal Circuit has made clear that "every step-by-step process, be it electronic or chemical or mechanical, involves an algorithm in the broad sense of the

---

[15] *In re Alappat*, 33 F.3d 1526, 1545 (Fed. Cir. 1994) (en banc).

[16] *Id.*; *WMS Gaming, Inc. v. International Game Technology*, 184 F.3d 1339, 1348 (Fed. Cir. 1999).

[17] 184 F.3d at 1349.

[18] *Id.* at 1339; *Harris Corp. v. Ericsson, Inc.*, 417 F.3d 1241, 1253.

[19] *See, e.g., Medical Instrumentation and Diagnostics Corporation v. Elekta AB*, 344 F.3d 1205, 1213-14 (Fed. Cir. 2003); *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003); *S3, Inc. v. nVIDIA Corp.*, 259 F.3d 1364, 1370-71 (Fed. Cir. 2001); *WMS Gaming, Inc. v. International Game Technology*, 184 F.3d 1339, 1348 (Fed. Cir. 1999); *In re Dossel*, 115 F.3d 942, 946 (Fed. Cir. 1997); *Application of Freeman*, 573 F.2d 1237, 1245-46 (C.C.P.A. 1978), and cases cited therein.

[20] *In re Iwahashi,* 888 F.2d 1370, 1374 (Fed. Cir. 1989) (quoting Webster's New Collegiate Dictionary (1976)).

term."[21]  There is "no need for a disclosure of the specific program code" when software is linked to the claimed function and one of ordinary skill in the art would know the kind of program to use.[22]

Defendants cite Judge Ward's opinion in *Gobeli Research, Ltd. v. Apple Computer, Inc., et al.*, for the proposition that there are only four ways that an algorithm can be disclosed in a patent's specification. [23]   Nowhere in *Gobeli Research,* however, did Judge Ward state that there is any limitation in the way that an algorithm can be expressed in the specification.  *See id.*[24]   On the contrary, Judge Ward states that "[t]he Court has reviewed the Gobeli patent in careful detail in search of an algorithm that performs [the functions at issue]…" but that the Court was "constrained to conclude that there is no description in the specification of any algorithm that performs either function." [25]  The only passage in *Gobeli Research* that remotely resembles Defendants' argument is the paragraph immediately following the above quote:

> "Gobeli could have provided figures or flow charts that describe the algorithm. Gobeli also could have attached actual code to the patent that would set out the necessary algorithm. None of these options was exercised by the patentee."[26]

This expression of exasperation with Gobeli's failure to employ any of several standard means of incorporating an algorithm in a patent is far from a pronunciation of a four-category rule as

---

[21] *Id.*; *Seer Systems, Inc. v. Beatnik, Inc.*, No. C 03-04636 JSW, 2006 U.S. Dist. LEXIS 25174, at *9 (N.D. Cal. Mar. 22, 2006).

[22] *Medical Instrumentation, 344 F.3d at 1214*; *see also Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003) (holding that the "core logic" modified to perform a particular program was adequate corresponding structure for a claimed function although the specification did not disclose the internal circuitry of the core  logic); *see also Seer Systems*, 2006 U.S. Dist. LEXIS at *9-10.

[23] 384 F. Supp.2d 1016, 1022-23 (E.D. Tex. 2005).

[24] Defendants' reference to the *Touchcom* case likewise does not establish their point.  *Touchcom, Inc.  v. Dresser, Inc.*, 427 F. Supp.2d 730, 735 (E.D. Tex. 2005).  No language similar to Defendants' argument appears in that case; in fact, source code was included in the *Touchcom* case, but a key piece of it was missing from the specification.  *Id.* at 734-35.

[25] *Id.* at 1023.

[26] *Id.* at 1023.

Defendants suggest.  Defendants cannot twist Judge Ward's words in an attempt to override clear

Federal Circuit authority that an algorithm can be expressed textually and that courts should be

liberal in finding such an algorithm.  Notably, the Federal Circuit's recent *Biomedino* case, on

which Defendants place so much reliance, does not limit the expression of an algorithm to four

categories. [27]

Moreover, the Federal Circuit's opinion in *WMS Gaming* provides further guidance as to

the specificity of algorithm required.  In that case, after the oft-cited passage regarding the fact

that the structure of a computer-implemented function is limited by the disclosed algorithm, the

Federal Circuit found such an algorithm in the Telnaes patent (U.S. Patent No. 4,448,419):

> "The algorithm that controls the assignment of numbers to stop positions is
> disclosed in Figure 6 of the Telnaes patent.  Figure 6 illustrates an algorithm in
> which a plurality of single numbers are assigned to stop positions such that: 1)
> the range of single numbers exceeds the number of stop positions; 2) each single
> number is assigned to only one stop position; 3) each stop position is assigned at
> least one single number; and 4) at least one stop position is assigned more than
> one single number."[28]

After reading Defendants' analysis of the case law, one might expect that Figure 6 must

include source code, a flow chart, or at least a highly detailed description of the inner

workings of the software.  A quick look at Figure 6 from the Telnaes Patent, attached as

Exhibit A, however, reveals that it is nothing more than a relatively simple diagram,

similar to those found in the '868 Patent.

**D.  The Federal Circuit is More Generous in Finding Structure Linked to
Computer-Implemented Functions than Defendants Suggest**

---

[27] *See Biomedino, LLC v. Waters Techs. Corp.*, --- F.3d ---, 2007 WL 1732121, at *2 (Fed. Cir. June 18, 2007).
[28] *WMS Gaming*, 184 F.3d at 1347-48 (see also *WMS Gaming* at p. 1349 ("the structure disclosed for the "means for assigning" limitation of claim 1 of the Telnaes patent is a microprocessor programmed to perform the algorithm illustrated in Figure 6.").

To support their view, Defendants cite *Medical Instrumentation and Diagnostics Corporation v. Elekta AB*, [29] In applying the rule from *WMS Gaming*, a court must review the specification to determine whether one skilled in the art would have understood the disclosure of the patent to encompass a particular algorithm or software program and would have been able to implement that algorithm or program.[30]   However, Defendants ignore the fact that the Federal Circuit in *MIDCO* did not stop there.  Instead, the Federal Circuit noted the unusual nature of the *MIDCO* case and reaffirmed its prior holdings, stating:  "[i]n past cases, we have been generous in finding something to be a corresponding structure when the specification contained a generic reference to structure that would be known to those in the art and that structure was clearly associated with performance of the claimed function." [31]

The Federal Circuit in *MIDCO* went on to give several examples wherein there was no source code or flow chart, yet one of skill in the art would be able to select the appropriate program from available programs or would know what program to use.  For example, in *Intel Corp. v. VIA Technologies, Inc.*, [32] the court concluded that a "selector" was adequately disclosed as corresponding structure for the "means…for selectively receiving," although the electronic structure of the sensor and the details of its operation were not described.  The selector was referred to in the disclosure and drawings of the patent and was clearly a type of structure. In addition, the Federal Circuit in *S3, Inc.* held that the district court erred by not giving proper consideration to testimony by the patent's inventor and other expert witnesses that persons of skill in the art would readily recognize that the selector shown in the specification was an

---

[29] 344 F.3d 1205 (Fed. Cir. 2003) (*see* Defendants' Motion at pgs. 4, 5, 7, 15).
[30] *MIDCO*, 344 F.3d at 1212 (citing *Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374, 1380 (Fed. Cir. 1999).
[31] *Id*. at 1213-14.
[32] 319 F.3d 1357, 1366 (Fed. Cir. 2003), the court found that there was no need for a disclosure of specific circuitry because one skilled in the art would know the kind of program to use.  *See MIDCO*, 344 F.3d at 1214.  Similarly, in *S3, Inc. v. nVIDIA Corp.*, 259 F.3d 1364, 1370-71 (Fed. Cir. 2001)

electronic device such as a simple multiplexer, whose structure was well known to one of skill in the art.[33] *Id*. at 1370. The district court had concluded that this evidence was insufficient to overcome the definiteness challenge because the court found that "'common experience' does not suggest that the function described by the 'selectivity' limitation refers to a 'simple multiplexer.'" Hence, the district court "declined to give any weight to the evidence of the understanding of persons of skill in the field."[34] The Federal Circuit concluded that:

> "The uncontradicted evidence was that a selector is of well known electronic structure and performs a common electronic function, and is readily implemented from the description in the specification. There was no contrary evidence. It is not the criterion for compliance with § 112, whether a lay person having no skill whatsoever in this field would know how a selector is constructed. Thus the ruling in invalidity for failure to comply with § 112 is incorrect, and must be reversed." [35]

Another example given by the Federal Circuit in *MIDCO* that is relevant here is from the case of *In re Dossel*, [36] In that case, the court found that the specification had sufficiently disclosed a computer as corresponding structure for a "means for reconstructing," although the specification did not use the term "computer." The specification had described a structure that received digital data, performed complex mathematical operations, and output the results to a display. The court concluded that one of skill in the art of medical imaging would understand that a computer must be the structure to perform these functions.[37]

The Federal Circuit has also approved of language in the PTO's Examination Guidelines stating that disclosure of a structure may be implicit in the written description if it would have been clear to those skilled in the art what structure must perform that function:

---

[33] In using the term "well known," Plaintiff does not mean to imply that the claimed invention was well known, merely that the structure (software) for performing certain functions, as described below, were well known to those of skill in the art.
[34] *Id*.
[35] *Id*. at 1370; *see also MIDCO*, 344 F.3d at 1214 (discussing *S3, Inc*. and re-affirming this precedent).
[36] 115 F.3d 942, 946 (Fed. Cir. 1997).
[37] *Id*. at 946-47; *see MIDCO*, 344 F.3d at 1217.

"The written description does not have to explicitly describe the structure (or material or acts) corresponding to a means- (or step-) plus-function limitation to particularly point out and distinctly claim the invention as required by 35 USC 112 P 2. Rather, a disclosure of structure corresponding to a means-plus-function limitation may be implicit in the written description if it would have been clear to those skilled in the art what structure must perform the function recited in the means-plus-function limitation."[38]

These cases, taken together, show that although the Federal Circuit requires an algorithm or software when the structure is a computer or microprocessor, the Court recognizes that in some cases the patentee need not recite the source code for off-the-shelf software or the details of well-known electronic devices. The critical question is whether, from the point of view of one of ordinary skill in the art, there was a sufficient disclosure of structure for performing the particular function.

**E.  The '868 Patent is a Financial Services Patent, Not a Software Patent**

The two Eastern District cases cited by Defendants, *Gobeli Research, Ltd. v. Apple Computer, Inc., et al.*,[39] and *Touchcom, Inc.  v. Dresser, Inc.*,[40] illustrate an important difference between this case and the prior *WMS Gaming* line of cases. The *Gobeli Research* patent involved "interrupts," which are basically signals sent to a computer from an external device such as a printer, modem, or fax machine, indicating that the external device needs to communicate with, or requires service by, the computer. When the CPU receives an interrupt, it stops executing the program in progress and transfers control to another program, the "interrupt handler." The means for which the Court could find no structure was "means for reallocating processing resources unused by said specific portions to other specific portions as a function of

---

[38] Interim Supplemental Examination Guidelines for Determination the Applicability of 35 U.S.C § 112 P 6, 64 Fed. Reg. 41,392, 41,393 (1999) (footnotes omitted).  *See Atmel Corporation v. Information Storage Devices, Inc.*, 198 F.3d 1374, 1380 (Fed. Cir. 1999) ("These guidelines would thus seem to be consistent with our holding on this point.").

[39] 384 F. Supp.2d 1016 (E.D. Tex. 2005)

[40] 427 F. Supp.2d 730, 735 (E.D. Tex. 2005),

task priority."  The *Gobeli Research* patent was an apparatus patent solely involving computer functions.  This function was a central piece of the invention, and there was no evidence that one of skill in the art would not have known any structure for performing this function.  In *Touchcom*, the source code for an essential function, the "controlling display and input means" (a touch screen under the preferred embodiment) was missing from the patent.[41]  In this case, the means-plus-function terms for which Defendants claim there is no structure do not "enjoy[] considerable relevance to this case," as the means-plus function terms in the *Gobeli Research* and *Touchcom* cases did[42].    The '868 Patent is a financial services patent, not a software patent. It is one thing to fail to disclose a portion of the source code in a new software patent; it is another thing to opt not to include source code for software known by a person of ordinary skill in a financial services patent.

A case that is particularly instructive to the resolution of this dispute is the recent Eastern District case of  *Advanceme, Inc. v. Rapidpay, LLC*,[43]  Unlike *Gobeli Research* and *Touchcom*, which involved software patents, *Advanceme* involved a financial services patent like the '868 Patent.  In *Advanceme*, as in this case, the Defendants claimed that there was no structure to implement certain functions because a computer and software had to be involved in the structure and Defendants claimed that no algorithm was disclosed.[44]    Magistrate Judge Love correctly applied the Federal Circuit's case law, however, and found that there was sufficient disclosure to one skilled in the art.[45]    The specification identified generally available equipment.[46]    The Court noted that this equipment included all the structure, including software to be executed by a

---

[41] *Id*. at 735.
[42] *Id.*
[43] No. 6:05cv424, No. 6:06cv082, 2006 U.S. Dist. LEXIS 92444, at *25-26 (E.D. Tex. Dec. 21, 2006).
[44] *Id*. at *22.
[45] *Id*. at *26.
[46] *Id*. at *25-26.

processor, for implementing the functions in the "means-plus-function" terms at issue.  The Court stated that "such equipment would be understood by one skilled in the art to include the necessary software algorithms for execution by a processor in conducting the necessary point-of-sale operations…"; hence, although Defendants in that case contended that there was no algorithm disclosed, the Court concluded that "[t]his is a description of sufficient disclosure to one skilled in the art."[47]   In addition, the *Advanceme* Court's analysis of the term "means for forwarding a portion of the payment…" is highly instructive in that the Court followed Federal Circuit precedent in finding an algorithm in the specification, despite the lack of flow charts or source code (again over defendant's objection that no algorithm was disclosed).[48]  The Court found a sufficient algorithm disclosed in the specification's description of payment authorization and settlement at Col. 5, lines 21-37 of the patent at issue.[49]  This was a correct application of Federal Circuit precedent holding that a description of steps in the specification can be a sufficient algorithm.

Another instructive case is the Northern District of California's *Network Appliance, Inc. v. Bluearc Corp.*,[50]   In that case, the Court held that particular software was incorporated by reference into the patent and became structure for the "decoding" and "encoding" functions. Defendant's expert witness had observed, "I do not recall explicit encoding and decoding instruction or description in the specification.  But for one skilled in the art, since they are standard NFS commands, …one would not have difficulty knowing how to…implement encoding and decoding."  The '868 Patent is a financial services patent, not a software patent. This fact necessarily impacts this Court's analysis of what level of code-level detail, if any, is

---

[47] *Id*. at *22.
[48] *Id*. at * 29-32.
[49] *Id*. at * 27-29.
[50] No. C 03-5665 MHP, 2005 U.S. Dist. LEXIS 16732, at *17-18 (N. D. Cal. Jan. 5, 2005).

necessary for one of skill in the art to understand what structure performs the functions at issue, just as it affects the nature of those functions. The software employed in the '868 Patent is not at the heart of the invention itself.

**F.**  **The Federal Circuit's Recent Holding in *Biomedino* Follows the Well-Established Federal Circuit Law Outlined Above and Does Not Change the Law**

Defendants rely heavily on the Federal Circuit's recent case of *Biomedino, LLC v. Waters Techs. Corp.*,[51] A careful reading of the *Biomedino* case, however, reveals no change in the points of law A through E discussed above. In fact, while the Federal Circuit found the patent in the *Biomedino* case invalid for indefiniteness, that Court did not change the law at all—instead, it explicitly relied on the long line of case law that has been thoroughly discussed above. The Federal Circuit's opinion does not claim to change the law in any way; on the contrary, the Federal Circuit extensively cited its earlier *MIDCO* case[52] and other frequently-cited cases in this area, which are thoroughly discussed above. If anything, *Biomedino* may indicate that the Federal Circuit is somewhat less generous in linking structure to function than its previous precedent indicates. But the Federal Circuit goes out of its way to reaffirm the low threshold for structure, and the fact that it is viewed in light of the knowledge of one skilled in the art:

> "While the specification must contain structure linked to claimed means, this ***is not a high bar***: '[a]ll one needs to do in order to obtain the benefit of *[§ 112*, P 6] is to recite some structure corresponding to the means in the specification, as the statute states, so that one can readily ascertain what the claim means and comply with the particularity requirement of *[§ 112,]* P 2.' Additionally, interpretation of what is disclosed in the specification must be made in light of the knowledge of one skilled in the art."[53]

---

[51] --- F.3d ---, 2007 WL 1732121, at *2 (Fed. Cir. June 18, 2007).
[52] *Med. Instrumentation & Diagnostics Corp. v. Elekta AB ("MIDCO")*, 344 F.3d 1205, 1211 (Fed. Cir. 2003).
[53] *Biomedino, LLC v. Waters Techs. Corp.*, --- F.3d ---, 2007 WL 1732121, at * 8-9 (emphasis added) (internal citations omitted).

This inquiry is highly case-specific as it requires an in-depth analysis of the specification of the patent involved. Just because the claims in *Biomedino* were invalid does not mean that the claims at issue are invalid. In addition, David James' testimony did not "create or infer" structure, as in *Biomedino*, it reflected his opinion that the references to structure in the specification were sufficient in light of the knowledge of one skilled in the art.[54]

## G. Defendants Ask this Court to Take a Position that Could Invalidate Hundreds of United States Patents Without any Reasonable Basis

Defendants urge a hard-line position that an algorithm of the type of detail that appears in source code or a flow chart should be required in every instance where a patentee relies on aspects of well-known technology in the prior art in describing the new invention that is the subject matter of the patent. Defendants veer not only from Federal Circuit case law, but from reason, in holding patents to such an exacting standard. No patent's specification would be readable if every patent claiming a computer component had to describe every function down to the "ones and zeroes" level. Moving the case law in such a direction would inevitably result in the invalidation of hundreds of patents, and worse yet, their invalidation without any reasonable basis (which in Patent Law would be to address an issue without considering the perspective of the "person of ordinary skill in the art"). Patents would be spared based on the verbosity of their patent drafters rather than on the ingenuity of the claimed inventions.

Not only would such an approach be imprudent, the Federal Circuit does not seem to be following any such path. The Federal Circuit clearly states that the *Biomedino* case is unusual in that "[i]n the present case, there is nothing to suggest a structure for the claimed control means."[55] In reaching this conclusion, the Federal Circuit notes that "[W]hile it is true that the patentee

---

[54] *See id.* at *9, 15. *See* Exhibit B.
[55] *Id.* at *15.

need not disclose details of structures well known in the art, the specification must nonetheless disclose some structure." [56]  As noted above, the Federal Circuit went out of its way to note that the *Biomedino* case was unusual, as the Court has done before in finding invalidity for indefiniteness (see discussion at pp. 9-12, above).  The Federal Circuit in *Biomedino* reaffirmed that the requirement of supporting structure for means-plus-function terms is "not a high bar."[57]

## V.    SUFFICIENT STRUCTURE IS DISCLOSED IN THE SPECIFICATION, FROM THE POINT OF VIEW OF A PERSON OF ORDINARY SKILL IN THE ART, FOR PERFORMING THE FUNCTIONS IN THE FIVE TERMS DISCUSSED BY DEFENDANTS.

For the terms that Defendants discuss, there is sufficient supporting structure for one of ordinary skill in the art, and the claims including those terms are not indefinite.  Plaintiff has offered the sworn affidavit of an individual of ordinary skill in the art, David James, in connection with its claim construction briefing in the related case of *DataTreasury Corporation v. Citigroup, Inc. et al.*,[58]  In this affidavit, attached as Exhibit B, Mr. James has testified that a person of ordinary skill in the art would understand what structures corresponded to the functions in question.  Because several of the terms at issue here are the same or substantially similar to terms at issue before, Plaintiff will once again rely on the testimony of Mr. James to illustrate what a person of ordinary skill in the art would understand when reading the '868 Patent.  For DataTreasury's proposed constructions for the terms at issue, and the intrinsic evidence relevant to those terms, Plaintiff points the Court to the chart attached as Exhibit C.

### 1.    **"program means for separating and bundling and for translating records" [Claim 1]**

The parties agree that this is a "means-plus-function" term.  The function is "separating and bundling and for translating said records."  The corresponding structure for this function is

---

[56] *Id.* at *15-16.
[57] *Id.* at *8.
[58] Cause No.2:05cv294 (E.D. Tex.).

"data processing and signal generation procedures along with file format translation protocols."[59] As David James describes in ¶¶ 8-9 of his Affidavit, one of ordinary skill in the art would know that the program means for separating and bundling said records would be program routines and readily available software from vendors such as NCR, Banctec, IBM (CPCS), Unisys (IPS), and others (including the vendor of the product SuperMICR), associated with the check reader-sorters.[60]   As Mr. James puts it, "anyone overseeing bank check processing operations should be familiar with the process and these vendors' software."[61]   In addition, the use of program routines to separate items into groups was commonplace in banks.[62]   Finally, as for translation, IBM and other vendors began to deliver software capabilities to reformat files and records based on data dictionary parameters at this time.[63]   This software was used to translate the records into a different format, as was known to persons of ordinary skill in the art.  "The process was commonplace, and there were several ways to accomplish the reformatting."[64] These common software solutions are implied in the patent specification, which states "[a] processor, within translator 1, employing data processing and signal generation procedures, translates the first data file…"[65]   Another reference appears at Col. 6:45-49 ("Using a logical sequence of data interpretation and signal generation steps, translator 1 translates the ECP information…"  David James explains that some of these solutions used data dictionary logic while others used different data mapping logic.[66]  The specification of the '868 notes that one of the benefits of the invention

---

[59] *See* '868 Patent, at Col. 3:5-10; 6:6-10; 6:45-49; 6:61-67; 8:20-29.
[60] Exh. B, ¶ 8-9.
[61] Exh. B, ¶ 8.
[62] Exh. B, ¶ 9.
[63] Exh. B, ¶10.
[64]  Affidavit of David James, Exh. B, ¶ 10.
[65] The '868 Patent, Col. 6:6-10.
[66] Exh. B, ¶ 10.

is that rather than each bank having to invest in such software, a common central facility would have the necessary hardware and software.[67]

Alternatively, if an algorithm is required, a sufficient algorithm (as broadly defined under *WMS Gaming* and other relevant Federal Circuit authority) for one of ordinary skill in the art is provided in the '868 specification.  The specification goes into great detail about the functions of separating, bundling, and translating the records, which is also described in Claim 1 itself.  Col. 10:59—11:2 ("a processor for separating said co-mingled records of financial instrument information into separate bundles corresponding to each of the one or more predetermined institution designated by the originating institution to receive said records and for translating the records in each bundle of said financial instrument information records from said first data file format into a data file format selected by the predetermined institution designated to receive the information, said processor including program means for separating and bundling and for translating said records.").  For example, the entire procedure is described at Col. 6:58—7:5, and again in an example at Col. 8:59—9:8.  These steps are clearly linked to the data processing and signal generation procedures along with file format translation protocols, not only in the language of Claim 1 itself, but also at Col. 6:6-11 (translating); 6:27—7:5 (separating, bundling, translating); 8:20-32 (separating, bundling, translating).  This is a sufficient algorithm under *WMS Gaming* as it gives a detailed sequence of steps for the function of separating, bundling, and translating the records.   It is a sufficient disclosure to one of skill in the art, who would know the process and the vendors' software that was available.


2.    **"means for transmitting a bundle of said stored financial instrument information from the addressable storage media to the institution designed to receive the information upon the receipt of an instruction" [Claim 1]**

---

[67] See Col. 10:8-26.

The parties agree that this is a "means-plus-function" term. The function is "transmitting a bundle of said stored financial instrument information from the addressable storage media to the institution designed to receive the information upon the receipt of an instruction." The corresponding structure is the "communication link 12" in Fig. 1 and 2 of the '868 Patent. The specification states that "The communication links, referenced generally at 12a, 12b, 12n, enable each receiving institution to retrieve the information contained in the data files from memory M23, M24...MN upon demand..." [68]

Defendants argue that the structure for transmitting the financial instrument information cannot be the communication link 12 as described in the '868 Patent because the transmission of data must also include some type of software. However, Defendants are unable to point to any evidence in the specification of the '868 Patent for their view that the "means for transmitting" must be described in a way that also includes the immediate pre- and post-sending activities. Instead, Defendants cite two cases to support their view.[69] Neither of these cases, however, supports Defendants' position.

In *Charles E. Hill & Assocs. Inc. v. Compuserve Inc.*, there is no discussion of any "means for transmitting term." Rather, Judge Ward construes a number of claim terms, but also refuses to give the parties a second bite at the apple on claims terms that had already been construed in *Charles E. Hill & Assocs. Inc. v. Compuserve Inc.*, [70] So it is Indiana law, not

---

[68] '868 Patent, Col. 8:35-39; *see also* Col. 9:5-9 ("The receiving institutions can retrieve information contained in the data files through communication links 12a and 12b upon demand..."); Col. 5:27-28 ("The link facilitates the transfer of data files containing financial instrument information"); *see also* Col. 8:7, 41, 48-52 and Col. 9:5-9.
[69] *Advanceme, Inc. v. Rapidpay, LLC*, No. 6:05CV424, No. 6:06CV082, 2006 WL 3761975, at *9-10 (E.D. Tex. Dec. 21, 2006); *Charles E. Hill & Assoc., Inc. v. Amazon.com*, 2005 WL 2483510, at *12 (E.D. Tex. Oct. 7, 2005) (J. Ward) (adopting Judge McKinney's claim construction with respect to the means plus function terms contained in the patent-in-suit) (referring to *Charles E. Hill & Assocs. Inc. v. Compuserve Inc.*, 2003 WL 23101797, at *38 (S.D. Ind. Aug. 29, 2003)).
[70] 2003 U.S. Dist. LEXIS 19218 (S.D. Ind. Aug. 29, 2003).

Eastern District law, that Defendants are citing.  Defendants also fail to mention that the *Charles E. Hill* case they cite is a Markman Order, not an invalidity ruling.  It is highly case-specific and has little relevance here.  More importantly, a careful reading of the Indiana court's construction of the "means for transmitting the remote revision status from the remote computer to the main computer" shows that the Court, properly, looked to the specification of the patent at issue and construed the term accordingly.[71]   In that case, the patent specification had a great amount of detail about the hardware and the brand name of software that was used, and the Court found those to be appropriate limitations on the claim language in that case.[72]   A quick reading of the relevant portion of that opinion shows that the patent at issue in that case had a very different specification than the patent at issue here.[73]

Defendants' reliance on Magistrate Judge Love's opinion in *Advanceme, Inc. v. Rapidpay, LLC*, is similarly unavailing.[74]   First, the statement that they rely on is dicta—the Judge was ruling on the term "means for receiving the information related to the payment from the merchant."  More importantly, because it is an offhand reference, Defendants can only guess what the Judge's construction of the term "means for transmitting…" would be.  It appears that the Judge was differentiating between functions carried out by the software driver of the modem—converting more general I/O instructions of a computer's operating system to messages of a type that the modem can understand—and functions carried out by the modem, which would be the actual communications.  The control functionality (carried out by the software driver) was outside of the "receiving" function at issue in the *Advanceme* case, and would also be outside of

---

[71] *See id.* at at *29-38.
[72] *See id.*
[73] *Id.*
[74] No. 6:05CV424, No. 6:06CV082, 2006 U.S. Dist. LEXIS 92444, at * 25-26 (E. Dist. Tex. Dec. 21, 2006).

the "transmitting" function here.[75]    But again, that is just Plaintiff's guess as to what Magistrate Judge Love would have to say about the "means for transmitting…" in this case.  Both guesses are ultimately, completely irrelevant.

As noted above, the '868 Patent describes the "means for transmitting" as occurring through communication links 12a, 12b, etc.  On the other hand, there is nothing in the '868 Patent's specification to support Defendants' view that software is inherently involved in that function.

Alternatively, if this Court adopts Defendants' view that it must look at the function more broadly and include the software on the processors connected by the communication links, then such file transmission software was well-known to those of ordinary skill in the art, as described by David James in his declaration.[76]    Such software would not have needed to be described in detail in the specification, which refers to the fact that transmission of data files between financial institutions was common at that time.[77]    A sufficient algorithm can be found at Col. 9:5-9, which explains that the transmission can occur upon demand, based on instructions by the originating institution, or within a prearranged time period. This is a sufficient disclosure to one of skill in the art, who would be familiar with transmission of data files between financial institutions.[78]

3.    **"means for transmitting each portion of said separated financial instrument information stored in the memory storage device to, and in the format selected by, the receiving institution associated therewith" [Claim 24]**

---

[75] *Id*. at * 28-29.
[76] Exh.B at ¶ 7.
[77] *See, e.g*., the '868 Patent at Col. 4:65—5:1; 1:43-62.
[78]  '868 Patent, at Col. 4:65-5:1.

The parties agree that this is a "means-plus-function" term. The function is "transmitting each portion of said separated financial instrument information stored in the memory storage device to, and in the format selected by, the receiving institution associated therewith." The corresponding structure is a "communication link 12." This structure is clearly linked to the function by the specification for the '868 Patent.[79] Defendants argue, as they do for term 2, above, that the communication link is not sufficient structure and that it is not linked to the "means for transmitting…" function. For the reasons discussed in conjunction with term 2, above, Defendants' arguments and evidence fall far short of proving this term indefinite, and the corresponding claim invalid, by clear and convincing evidence.

### 4.    "security mechanism" [Claim 3]

This term is not a "means-plus-function" term, and thus Section 112, ¶ 6 does not apply. DataTreasury's construction of this term is "software running on a processor which limits only authorized originating and receiving institutions to receive, transmit, translate, and/or store financial instrument information."[80]

Determining whether 35 U.S.C. § 112 ¶ 6 applies to a particular claim term is also a matter of law for the Court.[81] *Personalized Media Communications v. Int'l Trade Comm'n*, 161 F.3d 696 (Fed. Cir. 1998). Section 112, ¶ 6 provides that:

> "An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."

---

[79] *See, e.g.*, the '868 Patent at Col. 5:27-28; 8:7; 8:35-39; 8:41; 8:48-52; 9:5-9.
[80] *See* the '868 Patent at Col. 6:11-26; 8:8-23.
[81] Determining whether 35 U.S.C. § 112 ¶ 6 applies to claim terms is one aspect of claim construction. For these two terms, Defendants do not explain why they are advancing this invalidity argument out of order, instead of waiting for this Court's claim construction ruling.

In determining whether § 112, ¶ 6 applies to a claim limitation, the critical question is whether the word "means" is used in the claim language itself. As the Federal Circuit has stated, "the use of the term 'means' has come to be so closely associated with 'means-plus-function' claiming that it is fair to say that the use of the term 'means' (particularly as used in the phrase 'means for') generally invokes section 112(6) and that use of a different formulation generally does not."[82] The Federal Circuit has further held that the use of the word "means" gives rise to a presumption that § 112, ¶ 6 applies, and the absence of the word "means" gives rise to a presumption that § 112, ¶ 6 does not apply.[83]

Defendants have the burden of proof in rebutting the presumption that § 112, ¶ 6 does not apply to this term. To do so, they must establish by a preponderance of the evidence that the limitation is described in functional terms and that the claim does not recite sufficiently definite structure for performing the specified function.[84] To determine whether a claim term recites sufficient structure, the court determines whether the term has an understood meaning in the art[85]. To "aid in making this determination," the court inquires as to whether the "term, as the name for the structure has a reasonably well understood meaning in the art."[86] In deciding whether a claim term recites sufficiently definite structure so as to avoid the application of § 112, ¶ 6, the court must keep in mind that the claim term does not need to call to mind a single well-defined structure.[87]

---

[82] *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1584 (Fed. Cir. 1996).

[83] *York Prods., Inc. v. Central Tractor*, 99 F.3d 1568 (Fed. Cir. 1996); *Personalized Media Communications, LLC v. Int'l Trade Comm'n*, 161 F.3d 696 (Fed. Cir. 1998); *Apex, Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364 (Fed. Cir. 2003).

[84] *Apex, Inc.*, 325 F.3d at 1372.

[85] *Id*. at 1372.

[86] *Id*.

[87] *Id*.

Defendants' reliance on *Mass. Inst. of Tech. v. Abacus Software*,[88] is misplaced.  The

Federal Circuit stated that "[t]he term 'mechanism' **standing alone** connotes no more structure

than the term 'means'…"[89]   *See* Defendants' Motion at p. 16.  That case is distinguishable from

the '868 Patent because the term is not just "mechanism" standing alone, but "security

mechanism."   The Federal Circuit has cautioned against undue focus on single words of a

limitation, holding that one must look to the limitation as a whole. [90]  Defendants' discussion of

the Federal Circuit case of *Mas-Hamilton Group v. LaGard, Inc*., is also misleading.[91]  The

Federal Circuit in *Mas-Hamilton* focused its inquiry on whether or not the terms at issue had a

well understood meaning in the art.[92]

Contrary to Defendants' suggestion, security mechanisms are well-known in the art.  In

David James' affidavit, he explains that security mechanisms were well-known products, such as

Secure ID, that several vendors had begun to market around the time that the patent was

written.[93]  David James gives a detailed explanation of how such security mechanisms work,

establishing that these mechanisms were well-known to one of skill in the art.  It is notable that

Defendants' expert, Dr. Dewayne E. Perry, failed to analyze or discuss whether or not this term

has a well understood meaning to those in the art.  (As described below, such a discussion would

not have been helpful in any event because Dr. Perry is not a person of ordinary skill in the art of

---

[88] 462 F.3d 1344 (Fed. Cir. 2006)
[89] *Id*. at 1354 (emphasis added).
[90] *Apex, Inc*., F.3d at 1372.
[91]  156 F.3d 1206 (Fed. Cir. 1998).
[92] *See id*. at 1213-15 (quoting *Greenberg v. Ethicon Endo-Surgery, Inc*., 91 F.3d 1580, 1583 (Fed. Cir. 1996) (holding that "what is important is not simply that [the element at issue] is defined in terms of what it does, but that the term, as the name for a structure, has a reasonably well understood meaning in the art.").
[93]  (Exh. B).

the '868 Patent). [94]  Instead, his testimony clearly assumes Defendants' position that this is a "means-plus-function" term. [95]

In the alternative, if this Court construes the term as a means-plus-function term, the function would be "security mechanism for preventing the unauthorized one ore more of the reception, transmission, translation, and storage of financial instrument information," and the structure would be "software running on a processor which limits only authorized originating and receiving institutions to receive, transmit, translate, and/or store financial instrument information," for the reasons described above.  In that case, a sufficient algorithm for such software is described in the '868 specification at Col. 6:11-26 and Col. 8:23, as well as in the language of the claim itself, which lists the functions that the security mechanism carries out.

**5.     "Security procedures"** [Claim 48]

This term is not a "means-plus-function" term, and thus Section 112, ¶ 6 does not apply. DataTreasury's construction of this term is "software running on a processor which limits only authorized originating and receiving institutions to receive, transmit, translate, and/or store financial instrument information."[96]

This term should not be analyzed under Section 112, ¶ 6 for the same reasons discussed in term 4, above.  Contrary to Defendants' suggestion, security procedures have a well understood meaning in the art.  In David James' Affidavit, he describes the typical security procedures and standard routines that were known and used across the data processing industry.[97] For example, there were certain file procedures that were used for security purposes.  These are

---

[94] *See* Exhibits D and D-1 to Defendants' Motion.
[95] See Exhibit D to Defendants' Motion at pp. 3-4.
[96] *See* the '868 Patent at Col. 6:11-26; 8:8-23.
[97] (Exh. B).

referred to in the patent specification at Col. 6:11-26 ("Procedures are also used to authenticate information contained in the first data file format with respect to predetermined data format parameters…").  The procedures described in Mr. James' affidavit are the "typical 'security procedures' referred to in the '868 that are known to individuals that are familiar with the art." [98] It is notable that Defendants' expert, Dr. Dewayne E. Perry, failed to analyze or discuss whether or not this term has a well understood meaning to those in the art.  (As described below, such a discussion would not have been helpful in any event because Dr. Perry is not a person of ordinary skill in the art of the '868 Patent).[99]   Instead, his testimony clearly assumes Defendants' position that this is a "means-plus-function" term.[100]

In the alternative, if this Court construes this term as a means-plus-function term, the function would be  "security procedures for preventing the unauthorized reception, transmission, translation and storage of any financial instrument information within the system," and the structure would be "software running on a processor, or routines contained in the logic of the computer, which limits only authorized originating and receiving institutions to receive, transmit, translate, and/or store financial instrument information."  In that case, a sufficient algorithm for such software is described in the '868 specification at Col. 6:11-26 and Col. 8:23, as well as in the language of the claim itself, which lists the functions that the security procedures carry out.

## VI.     DEFENDANTS' EXPERT TESTIMONY CANNOT MEET THE HIGH BURDEN FOR INVALIDATING A UNITED STATES PATENT.

As noted previously, Defendants bear a high burden for invalidating claims in a United States Patent—they must demonstrate by clear and convincing evidence that the claims are

---

[98] (Exh. B).
[99] *See* Exhibits D and D-1 to Defendants' Motion.
[100] See Exhibit D to Defendants' Motion at pp. 5-6.

invalid. The analysis of Defendants' expert, Dr. Dewayne E. Perry, is scant and conclusory. While Dr. Perry certainly has an impressive resume in a different field, he has absolutely no experience in banking or the financial services industry, which is the relevant field here.[101] Instead, Dr. Perry is a software engineer and a professor of software engineering.[102]  While the selection of Dr. Perry as an expert is in keeping with Defendants' attempt to confuse the '868 Patent with a software patent, Dr. Perry has absolutely no basis via his education, training, and experience to give any opinion about what one of ordinary skill in the financial services arts would understand when reading the '868 Patent. Even if Dr. Perry were an appropriately-qualified expert, however, this Court would find his Declaration of little use. For each of the eight terms, after giving the term and the function identified in the Joint Claim Chart, Dr. Perry includes a paragraph of boilerplate, conclusory language—the same paragraph for each term.[103] Not even a comma is changed from one term to the next. The Federal Circuit has found that conclusory expert testimony is insufficient to prove indefiniteness by clear and convincing evidence.[104]

---

[101] *See* Exhibits D and D-1 to Defendants' Motion.

[102] *See* Exhibit D to Defendants' Motion, ¶ 2; Exhibit D-1 to Defendants' Motion, p. 1-2, Academic Employment, Industrial Employment, Keynote speeches, Professional Activities.

[103] The boilerplate language used by Dr. Perry is as follows: "A programmable computer (with its communication-related hardware and its operating system and standard support software) alone could not perform the recited function. In order to perform the recited function, additional application software would need to be written or obtained from third parties. The '868 Patent does not indicate whether such application software exists or was known, or the algorithm such software would implement, to perform the recited function. Specifically, the '868 Patent does not provide a flowchart, mathematical equation(s), pseudo-code, source code, or description in its specification that could constitute an algorithm corresponding with this function. Further, the '868 Patent does not identify any known or commercially available application software that could be used to perform the recited function. Thus, the '868 Patent fails to disclose even one algorithm for achieving the recited function." Except for the underlined portion above, this is the same boilerplate, conclusory language that appeared in Dr. Perry's affidavit for the Defendants' MSJ for Invalidity of the '007 Patent for Indefiniteness.

[104] *Intel Corp. v. VIA Techs.*, 319 F.3d 1357, 1365-1367 (Fed. Cir. 2003) (holding that the evidence on record did not show that VIA could prove indefiniteness by clear and convincing evidence where "VIA's expert made a conclusory statement that the '291 patent did not disclose adequate structure for one skilled in the art to determine the scope of the claims.").

Finally, to the extent that Dr. Perry's testimony is considered and found by the Court to contradict the testimony of David James as to whether any of the means-plus-function claim terms at issue are indefinite to a person of ordinary skill in the art, the contradictions between their testimony raise genuine issues of fact, which should be resolved by a jury and which preclude granting the Defendants' motion for summary judgment of invalidity.

## VII.  CONCLUSION

Defendants' Motion for Summary Judgment should be denied.  Defendants have misconstrued or ignored the relevant case law illuminating the legal principles at issue.  More importantly, they have not proven the '868 Patent invalid by clear and convincing evidence, but have rather presented this Court with inadequate analysis and an affiant whose expertise is not in the relevant field of the '868 Patent and whose analysis is a series of boilerplate, conclusory statements.  Furthermore, Defendants' attempt to make the '868 Patent into a software patent is misguided.  The invention of the '868 Patent is in the financial services art, not the software engineering art.  The descriptions in the specification of the '868 Patent are sufficient for one of ordinary skill in the relevant art, and are adequate to meet the Federal Circuit's broad definition of an algorithm.  Accordingly, Plaintiff respectfully requests that this Court deny Defendants' Motion for Summary Judgment in all respects and for any other relief to which it is entitled.

Respectfully submitted,

_____

NICOLE REED

State Bar No. 24041759
**ROD COOPER**
State Bar No.  90001628
**EDWARD  HOHN**
Attorney-in-charge
State Bar No. 09813240
**EDWARD CHIN**
State Bar No. 50511688
**NIX PATTERSON & ROACH, L.L.P.**
5215 N. O'Connor Blvd., Suite1900
Irving, Texas 75039
972.831.1188; 972.444.0716 fax
nicolereed@nixlawfirm.com
rodcooper@nixlawfirm.com
edhohn@nixlawfirm.com
edchin@nixlawfirm.com

**C.  CARY PATTERSON**
State Bar No. 15587000
**BRADY PADDOCK**
State Bar No. 00791394
**ANTHONY BRUSTER**
State Bar No. 24036280
**R. BENJAMIN KING**
State Bar No. 24048592
**NIX PATTERSON & ROACH L.L.P.**
2900 St. Michael Drive, Suite 500
Texarkana, Texas  75503
903.223.3999; 903.223.8520 fax
ccp@nixlawfirm.com
bpaddock@nixlawfirm.com
akbruster@nixlawfirm.com
benking@nixlawfirm.com

**JOE KENDALL**
State Bar No. 11260700
**KARL RUPP**
State Bar No. 24035243
**PROVOST * UMPHREY, L.L.P.**
3232 McKinney Avenue, Suite 700
Dallas, Texas  75204
214.744.3000; 214.744.3015 fax
jkendall@provostumphrey.com
krupp@provostumphrey.com

**ERIC M.  ALBRITTON**

29

State Bar No. 00790215
**ALBRITTON LAW FIRM**
P.O. Box 2649
Longview, Texas  75606
903.757.8449; 903.758.7397 fax
ema@emafirm.com

**T. JOHN WARD, JR.**
State Bar No. 00794818
**LAW OFFICE OF T. JOHN WARD, JR.**
P.O. Box 1231
Longview, Texas  75601
903.757.6400; 903.757.2323 fax
jw@jwfirm.com

***ATTORNEYS FOR PLAINTIFF DATATREASURY
CORPORATION***


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served electronically upon all the following on the 9th day of August, 2007.


Bank of America - Listserve (BankofAmericaF&R@fr.com)
BB&T ListServe (BB&T_DataTreasury@kilpatrickstockton.com)
Citizens Financial (citizensfinancial@standleyLLP.com)
City National Bank - Listserve (citynationalbank@dmtechlaw.com)
Comerica Bank 007 Listserve (Comerica_DataTreasury@kilpatrickstockton.com)
Compass/First Horizon/TN Bank - Listserve (comfhft@andrewskurth.com)
Cullen/Frost Bank - Listserve (frostbank@dmtechlaw.com)
EDS - Listserve (EDS_DataTreasury@mckoolsmith.com)
UBS – Listserve (ubsamericas@velaw.com)
HSBC North America Holdings, Inc./HSBC Bank USA  Listserve  (hsbccounsel@blhc-law.com)
BancorpSouth Listserve (bxs@hughesluce.com)
Bank of Tokyo Listserve (BankofTokyo_DataTreasury@sidley.com)
BofNY Listserve (BofNYLitTeam@pillsburylaw.com)
The Clearing House/SVPCo Listserve (TCH_DT@sullcrom.com)
Deutsche Bank Listserve (DeutscheBank_DataTreasury@sidley.com)
First Citizens Listserve (firstcitizens@bakerbotts.com)
First Data Listserve (FirstData_DataTreasury@sidley.com)
Key Bank Listserve (KeyCorp_DataTreasury@mckoolsmith.com)
LaSalle Bank Listserve (LaSalleBank_DataTreasury@sidley.com)
National City Bank Listserve (foley-dtc@foley.com)
Remitco Listserve (Remitco_DataTreasury@sidley.com)
Telecheck Listserve (Telecheck_DataTreasury@sidley.com)
Union BofCA Listserve (ubofclittteam@pillsburylaw.com)
Viewpointe Listserve (Viewpointe_dtc@skadden.com)

Zion First National Bank Listserve (foley-dtc@foley.com)
Harris Bancorp. - Listserve (Harris_DataTreasury@mckoolsmith.com)
M&T 007 Listserve (M&T_DataTreasury@kilpatrickstockton.com)
PNC Bank - Listserve (PNC_DataTreasury@mckoolsmith.com)
Suntrust - Listserve (SunTrust_DataTreasury@mckoolsmith.com)
U.S. Bancorp – Listserve (foley-dtc@foley.com)
Wachovia 007 Listserve (Wachovia_DataTreasury@kilpatrickstockton.com)
Wells Fargo - Listserve (*DalWellsFargo_DTC@BakerNet.com)

_____

**NICOLE REED**