**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **DATATREASURY CORPORATION,** | |
| **Plaintiff** | |
| v. | 2:06-CV-72 DF |
| **WELLS FARGO & COMPANY, ET AL.,** | |
| **Defendants** | |

**WACHOVIA'S REPLY IN SUPPORT OF ITS MOTION FOR**
**SUMMARY JUDGMENT FOR CLAIM INVALIDITY BASED ON**
**INDEFINITENESS OF U.S. PATENT NO. 5,717,868**

In an attempt to avoid summary judgment, DataTreasury Corporation ("DataTreasury") relies on evidence outside the four corners of U.S. Patent No. 5,717,868 ("the '868 Patent"), including structure created "after-the-fact" and never disclosed in U.S. Patent No. 5,717,868 ("the '868 Patent"), or identified as the structure corresponding to the functions at issue in the patent claims. Reliance on such previously undisclosed structure is precisely what the Federal Circuit's *Biomedino* decision precludes.[1] Since the requisite structure is not disclosed within the four corners of the '868 Patent, Claims 1-3, 22, 24, 27, and 48 of the '868 Patent are invalid, and summary judgment should be granted.

**I.     THE '868 PATENT FAILS TO LINK ANY DISCLOSED ALGORITHMS OR SOFTWARE TO THE CLAIMED FUNCTIONS.**

The software-related means-plus-function claims in the '868 Patent are indefinite and invalid unless an algorithm for each means-plus-function software term is found within the four

---

[1] *See Biomedino, LLC v. Waters Techs. Corp.*, --- F.3d ----, 2759 WL 1732121 (Fed. Cir. June 18, 2007).

corners of the '868 Patent and clearly linked to the claimed functions.[2]  The relevant terms meet neither of these requirements.

The patentee was afforded an opportunity to include structure such as figures or flow charts, or actual code to provide the algorithm at the time of filing the patent application.[3]  It is too late to add the disclosure now.  The '868 Patent is void of any algorithms – in the form of figures, flow charts, code, or otherwise – that provide corresponding structure for "program means," "means for transmitting," "security mechanism," or "security procedures."

### A. The Specification Does Not Provide a "Program Means" that Is Capable of Separating, Translating, and Bundling.

The claim phrase "program means for separating and bundling and for translating said records" requires a corresponding structure that is capable of performing the functions of "separating," "bundling," *and* "translating."[4]  Accordingly, the '868 Patent must provide adequate corresponding structure for each of these functions.  While DataTreasury suggests that "procedures" and "protocols" satisfy the disclosure requirements, the specification is silent as to the actual procedures and protocols used to perform the claimed functions of "separating," "bundling," and "translating."

Furthermore, DataTreasury relies on the testimony of Mr. David James, the sole inventor on the '868 Patent, to add the necessary disclosure of structure to his originally deficient specification to save his patent from being invalidated twelve years after filing his patent application.  Mr. James' testimony, however, fails to explain the structure disclosed in the

---

[2] *Gobeli Research Ltd. v. Apple Computer, Inc.*, 384 F.Supp.2d 1016, 1022 (E.D. Tex. 2005) ("The Federal Circuit has made clear that when software is linked to the disclosed function, the structure for performing the function is limited to the algorithm disclosed in the specification.") (citing *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1348-49 (Fed. Cir. 1999); *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1253 (Fed. Cir. 2005)).  *See also Touchcom, Inc. v. Dresser, Inc.*, 427 F.Supp.2d 730, 735 (E.D. Tex. 2005).
[3] *Gobeli*, 384 F.Supp.2d at 1023.
[4] *Advanceme, Inc. v. Rapidpay, LLC*, 2006 U.S. Dist LEXIS 92444 at *21 (E.D.Tex. Dec. 21, 2006) (claim element reciting "means for accepting" and "means for forwarding" requires corresponding structure for performing both).

specification and, instead merely attempts to add structure to supplement the specification's deficient disclosure. For example, Mr. James asserts that one of ordinary skill would know that this structure includes program routines and readily available software from vendors associated with the check reader-sorters.[5] The specification, where the inquiry is properly focused, does not recite any use of program routines with a sorter for "separating" and "bundling" records. Additionally, Mr. James contends that vendors delivered "software capabilities to reformat files and records based on data dictionary parameters."[6] The specification, however, is silent as to any data dictionary parameters. The Federal Circuit expressly precludes DataTreasury from using Mr. James' testimony to add the requisite disclosure now.[7]

### B. DataTreasury's Reliance on a "Black Box" as Structure to Support "Means for Transmitting" Has Already Been Rejected by *Biomedino*.

The "means for transmitting" is another software-based means-plus-function term that requires structure including an algorithm and is more than just a "black box." Like the unsuccessful *Biomedino* plaintiff, DataTreasury relies on a label and a statement that does not disclose structure. DataTreasury asserts that the label "communication link 12" and a statement from the specification that "[t]he communication links . . . enable each receiving institution to retrieve the information contained in the data files from memory . . . upon demand" supplies the requisite corresponding structure. The '868 Patent, however, does not disclose any algorithm that performs the "transmitting" via the communication link, and as a result DataTreasury's reliance on "communication link 12" is misplaced.[8] Consistent with the Federal Circuit's *Harris* and *WMS Gaming* decisions and decisions of the Honorable T. John Ward of this district in

---

[5] Affidavit of David James at ¶¶ 8, 9.
[6] *Id.* at ¶ 10.
[7] *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1253 (Fed. Cir. 2005). *See also Gobeli*, 384 F.Supp.2d at 1022; *Touchcom*, 427 F.Supp.2d at 735.
[8] *Charles E. Hill & Assoc. v. Amazon.com*, 2005 WL 2483510 at *12 (E.D. Tex. Oct. 7, 2005) (a single box in a flow diagram is not a description of structure) (citing *Med. Instrumentation*, 344 F.3d at 1212-13).

US2000 10235902.4

*Gobeli*, *Touchcom*, and *Graphon*, DataTreasury's claim is limited to the specific algorithm disclosed in the specification, and cannot encompass "any software" known to one skilled in the art.[9]

### C. "Security Mechanism" and "Security Procedures" Are Subject to § 112, ¶ 6 Analysis and Also Fail to Recite Corresponding Structure.

The phrases "security mechanism" and "security procedures" do not provide any structure and are drafted as functions to be performed, so they must be construed as means-plus-function elements.[10] DataTreasury does not apply the appropriate test to the disputed terms. Because "security mechanism" and "security procedures" connote functions and because there are no generally understood *structural* meanings in the art for these terms, these terms must be construed as means-plus-function terms.[11]

The '868 Patent's specification lacks corresponding structure linked to the security function. Mr. James contends that security mechanisms were available around the time the patent was written, including Secure ID, which had a token/fob that generated a 6-digit numeric code every sixty seconds and had a serial number that synchronized with software running on a processor.[12] Mr. James also describes the "security procedures" that could be used in combination with the security mechanisms, including identifying multiple header records that would contain information for helping a computer determine the validity, contents, and receiver of the file. None of this structure, however, is within the four corners of the specification, as is

---

[9] *Harris*, 417 F.3d at 1253; *WMS Gaming*, 184 F.3d at 1348-49; *Touchcom*, 427 F.Supp.2d at 734-35; *Gobeli*, 384 F.Supp.2d at 1022-23; *Graphon Corp. v. Autotrader.com, Inc.*, No. 2:05-cv-530-TJW, Memorandum Opinion and Order at 6, 15-18 (E.D. Tex. June 28, 2007).
[10] *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1213-14 (Fed. Cir. 1998) (without a recitation of structure, the claim cannot be saved from a means-plus-function application).
[11] *Id.*
[12] Affidavit of David James at ¶ 11.

required.[13] Mr. James' opinion regarding what he would implement is not a valid substitute for the disclosure of that structure in the patent specification.[14] In the absence of such disclosure, the claims are invalid as a matter of law.

## II. THIS COURT SHOULD IGNORE DATATREASURY'S ATTEMPTS TO OBSCURE THE SIMPLICITY OF THE ISSUES.

The '868 Patent contains no algorithms – whether described in figures, equations, source code, or text – for the respective claim terms. DataTreasury attempts to hide this fatal deficiency by creating a statutory exception that does not exist, citing to inapplicable case law, attempting to supplement the disclosures with Mr. James' testimony, and mischaracterizing Dr. Perry's expertise and declaration. These efforts, however, cannot remedy the flaws in the '868 Patent.

### A. There Is No "Financial Services" Exception to Section 112, ¶ 6's Disclosure Requirements.

DataTreasury attempts to use a so-called "financial services" exception to avoid the requisite disclosure under § 112, ¶ 6, even though Congress and the courts (including the Federal Circuit) have never drawn a distinction between the disclosure requirements for software-based patents related to "financial services" and those related to other industries. In cases involving software-related means-plus function terms (whether for financial services or another software-based system), courts have consistently required that the recited function be clearly linked to the corresponding structure and that the corresponding structure be an algorithm disclosed in the specification.[15] *Regardless of the field of invention disclosed*, courts have consistently required that the associated structure for a software-based means-plus-function term (as compared to a

---

[13] *Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1302 (Fed. Cir. 2005) ("As this court has repeatedly cautioned, extrinsic evidence cannot be used to vary the plain language of the patent document.").

[14] *Id.* ("the testimony of one of ordinary skill in the art cannot supplant the total absence of structure from the specification.").

[15] *Touchcom*, 427 F.Supp.2d at 730 (system for paying at the gas pump); *Default Proof*, 412 F.3d at 1291 (system for dispensing prepaid debit cards); *WMS Gaming*, 184 F.3d at 1339 (electronic slot machine).

patent) be an algorithm that is clearly linked to the recited functions.[16] Even, in light of this precedent, DataTreasury maintains that "[t]he '868 Patent is a financial services patent, not a software patent."[17]

Moreover, DataTreasury's own claim construction belies its argument that the patent claims do not involve software. DataTreasury identified software as the purported corresponding structure for the claim terms "program means," "security mechanism," and "security procedure," in its proposed claim construction.[18] Since the specification fails to disclose the requisite algorithms (i.e., the corresponding structure), the affected claims are invalid as matter of law, regardless of whether the claims also involve financial services.

### B.  DataTreasury Relies on Inapplicable Case Law.

In *Biomedino*, the Federal Circuit confirmed that "[t]he inquiry is whether one of skill in the art would understand the specification itself to disclose a structure, not simply whether that person would be capable of implementing a structure."[19] DataTreasury ignores this precedent and supplements the written description with expert testimony, rather than showing how one of ordinary skill in the art would understand the specification to disclose the necessary structure.

DataTreasury instead relies on the *Network Appliance* decision, in which the Northern District of California construed claims directed to multiprocessor file server designs and related computer operating system.[20] In *Network Appliance*, the court limited the proposed construction of a means-plus-function claim to the specific algorithm disclosed in the specification as required

---

[16] *See id.*
[17] Response at 12.
[18] Response, Exh. C at 1, 8, 9.
[19] *Biomedino*, 490 F.3d at 953 (*citing Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1212 (Fed. Cir. 2003) (*citing Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1382 (Fed. Cir. 1999))).
[20] *Network Appliance, Inc. v. Bluearc Corp.*, No. C03-5665MHP, 2005 U.S. Dist. LEXIS 16732, at *12-20 (N.D. Cal. Jan. 5, 2005).

US2000 10235902.4

by *WMS Gaming*.[21]  Notably, *Network Appliance* came before *Biomedino* and is inconsistent with it.  *Network Appliance* credits citation in the specification to "standard NFS commands" as sufficient, while *Biomedino* holds that mere reference to a standard approach that a person would be capable of implementing is insufficient.  Moreover, unlike the '868 Patent, the patent in *Network Appliance* specifically identified "standard NFS commands … ported from Sun Microsystems" as linked to the decoding and encoding functions at issue.  Based on such disclosure, the court limited the plaintiff's desired broad construction of "microprocessor" to the specific NFS commands disclosed in the specification, and equivalents.[22]  Contrary to DataTreasury's arguments, the *Network Appliance* court noted that "[a]llowing the instant claim to include all possible algorithms which could be programmed into the microprocessor would expand the claim to cover an untenable number of algorithms" and properly narrowed the construction of the claimed functional terms to the specific algorithms disclosed in the patent.[23]  Since the '868 Patent fails to identify any algorithm or specific commercial software that is capable of performing the claimed functions, such a narrowing is not possible here and the cited claims are invalid due to indefiniteness.

DataTreasury also relies on *Advanceme*, which involves a patent directed to automated repayment of a loan.[24]  In *Advanceme*, Magistrate Judge Love found structure for a means-plus-function term, especially where the specification recited exemplary structure such as "the merchant may use equipment provided by VeriFone Inc. of Redwood City, Calif., such as

---

[21] *Id.* at 15-19.
[22] *Network Appliance,* 2005 U.S. Dist. LEXIS 16732, at *12-20 *Id.*
[23] *Id.* at 18-19 (citations omitted).
[24] DataTreasury's reliance on *Omegaflex, Inc. v. Parker-Hannifin Corp.*, 2007 U.S. App. LEXIS 14308, *8-9 (Fed. Cir. June 18, 2007), also is misplaced.  DataTreasury quotes extensively from the *Omegaflex* opinion.  However, the quoted portion relates to expert testimony provided in the context of an obviousness determination under 35 U.S.C. § 103.  It does not address the situation at hand—DataTreasury's improper offer of Mr. James' testimony as a purported substitute for disclosing, in the '868 patent specification, the structure corresponding to a means-plus-function claim element.  The *Omegaflex* opinion therefore is nothing more than a distraction.

electronic card swipe machine, to facilitate card transactions by customers."[25] Such disclosure is clearly absent from the '868 Patent's specification.

### C. The Declaration of David James Cannot Be Used As a Substitute for Having Disclosed the Requisite Structure in the Specification.

The parties acknowledge that a determination of what is disclosed in the specification must be viewed in light of the knowledge of one skilled in the art. The controlling precedent from the Federal Circuit and the Eastern District of Texas cautions that the correct inquiry is to look at the disclosure of the patent and determine if one of ordinary skill in the art could have understood the disclosure to encompass, not simply whether one of ordinary skill in the art would have been able to write, such a software program.[26] Mr. James' testimony sheds no light on what is disclosed in the specification. Instead, Mr. James addresses applications available from vendors purportedly known to him.[27] The specification, however, never mentions those applications. In fact, the Affidavit of David James fails to explain or identify any excerpt from the specification that discloses the structure corresponding to the claimed "program means," "means for transmitting,"[28] "security mechanism," or "security procedures." Mr. James' testimony thus provides no cure for the deficiencies in the '868 patent specification, and cannot resolve the indefiniteness of the claims.

---

[25] *Advanceme,* 2006 U.S. Dist. LEXIS 92444 at *24.
[26] *Id.* at 950; *Med. Instrumentation*, 344 F.3d at 1212; *Default Proof,* 412 F.3d at 1298 ("Although expert testimony and declarations are useful to confirm that the construed meaning is consistent with the denotation ascribed by those in the field of the art, such extrinsic evidence cannot be used to vary the plain language of the patent document."); *Touchcom*, 427 F. Supp.2d at 736 ("That one of ordinary skill could create structure sufficient to perform a function is not the inquiry.").
[27] Affidavit of David James at ¶¶ 7-10.
[28] The Affidavit of David James has no discussion of "means for transmitting."

### D. DataTreasury Mischaracterizes Dr. Perry's Expertise and Declaration.

Dr. Dewayne E. Perry's expertise as a software and computer science expert[29] is directly applicable in this matter. This case deals with claimed functions that, as even DataTreasury concedes, must be implemented using software, regardless of whether the patent is directed to a method for electronic payments. Dr. Perry, as an expert in this field, was asked to determine whether the '868 Patent specification discloses an algorithm capable of implementing each of the recited functions. As he testified, such algorithms simply cannot be found in the '868 Patent.[30]

## II. CONCLUSION

The '868 Patent specification contains no algorithms or specifically identified known software for performing the claimed functions. No amount of expert testimony or non-existent subject-matter exceptions to the means-plus-function statute can create a fact issue. The '868 Patent simply lacks the algorithms to perform the claimed functions and no algorithm is linked to the relevant claim terms. Because Claims 1-3, 22, 24, 27, and 48 are irreparably flawed with indefiniteness, these claims should be declared invalid and summary judgment granted for Wachovia and all other defendants joining in the instant motion.

---

[29] Wachovia's Motion for Summary Judgment [Dkt No. 740], Exhibit D, Declaration of Dr. Dewayne E. Perry at ¶ 2.
[30] *Id.* at ¶¶ 4-8.

| | |
|---|---|
| Dated: August 24, 2007 | Respectfully submitted, |
| | By:/s/ E. Danielle Thompson Williams |

E. Danielle Thompson Williams
KILPATRICK STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC  27101

William H. Boice
Audra Dial
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia  30309-4530

Lance Lee
WLanceLee@aol.com
Texas Bar No. 240004762
YOUNG, PICKETT & LEE, L.L.P.
4122 Texas Blvd.
P.O. Box 1897
Texarkana, Texas 75504
903-794-1303 (Telephone)
903-792-5098 (Telecopy)

**ATTORNEYS FOR DEFENDANTS WACHOVIA CORPORATION and WACHOVIA BANK, N.A.**

US2000 10235902.4

## **CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 24, 2007 to all counsel of record pursuant to the Court's CM/ECF system.

                 /s/E. Danielle Thompson Williams
                 E. Danielle Thompson Williams