**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **DATATREASURY CORPORATION**, | § |
| | § |
| **Plaintiff,** | § |
| | § |
| v. | §     **CIVIL ACTION NO. 2:06-CV-72 DF** |
| | § |
| **WELLS FARGO & COMPANY, et al.,** | § |
| | § |
| **Defendants.** | § |
| | § |

**O R D E R**

This case is on the Court's March 2010 trial docket.  The Court held a trial plan

conference on January 13, 2010.  Prior to the trial plan conference, the Court received several

written trial plans from the parties.  *See* Dkt. Nos. 1829, 1830, 1831, 1832, 1833, & 1834.

Having considered the proposed trial plans and oral arguments of counsel, the Court enters the

trial plan detailed below.

**I.  BACKGROUND**

Plaintiff brings this suit alleging infringement of several patents relating to banking and

check imaging.[1]  Plaintiff asserts two groups of patents, referred to as the "Ballard Patents" and

the "Huntington Patents."  The Court entered stays pending reexamination of the Ballard Patents

in December 2006 and January 2007 (*see* 10/25/2006 Order, Dkt. No. 326; 12/15/2006 Order,

Dkt. No. 397; 1/12/2007 Order, Dkt. No. 411) and of the Huntington Patents on September 17,

---

[1]  The Court consolidated several related cases with the above-captioned case.  *See, e.g.,* 5/24/2006 Order, Dkt. No. 76 (consolidating C.A. 2:04-cv-85); 6/2/2006 Order, C.A. 2:05-cv-290, Dkt. No. 67; 6/3/2009 Order, Dkt. No. 1248 (consolidating C.A. 2:05-cv-291, 2:05-cv-292, & 2:05-cv-293).

1

2007 (9/17/2007 Order, Dkt. No. 798). The Ballard Patents finished reexamination, and the

Court lifted the stay on March 11, 2008. *See* 3/11/2008 Order, Dkt. No. 843. The stay as to the

Huntington Patents remains in effect. *But see* Dkt. No. 1832, Ex. A at 3 n.3 ("[Plaintiff] expects

to seek a lifting of the discovery stay on these [Huntington] patents in the coming weeks").

Following the lift of the stay as to the Ballard Patents, this case was set on the Court's

October 2009 trial docket. *See* 3/11/2008 Order, Dkt. No. 844. The Court received trial plans

and conducted a conference on May 19, 2009. *See* Dkt. Nos. 1227, 1228, & 1229. At that time,

Plaintiff proposed that all but a few Defendants should be tried together in one trial. Dkt. No.

1228 at 5. The Court subsequently found that an October 2009 trial setting was not feasible, and

the Court reset this case on the Court's March 2010 trial docket on May 26, 2009. *See* 5/26/2009

Order, Dkt. No. 1233; 6/1/2009 Second Amended Order, Dkt. No. 1245. The Court entered its

most recent scheduling order on December 9, 2009. Dkt. No. 1730.

## II.  LEGAL PRINCIPLES

Federal Rule of Civil Procedure ("Rule") 42(b) provides:

(b) Separate Trials. For convenience, to avoid prejudice, or to expedite and
economize, the court may order a separate trial of one or more separate issues,
claims, crossclaims, counterclaims, or third-party claims. When ordering a
separate trial, the court must preserve any federal right to a jury trial.

Wright and Miller note that the main concerns are judicial economy and the avoidance of

prejudice:

It is well-established by a wealth of case law that ultimately the question of
whether to conduct separate trials under Rule 42(b) should be, and is, a matter left
to the sound discretion of the trial court on the basis of the circumstances of the
litigation before it. The district judge must weigh a variety of facts, such as
whether one trial or separate trials best will serve the convenience of the parties
and the court, avoid prejudice, and minimize expense and delay. The major

2

consideration, of course, must be which procedure is more likely to result in a just and expeditious final disposition of the litigation.

9 Wright & Miller, Federal Practice and Procedure: Civil 3d § 2388 (*see* fn. 16-18).  Separate trials may be appropriate to render a large, multi-party patent case manageable for trial:

> [I]n cases in which a plaintiff has named multiple defendants, courts may elect to hold separate trials, especially on infringement issues for the separate defendants or separate groups of defendants as to whom the infringement issues are similar. This will assist the jury in keeping track of the various accused products and technologies implicated by the lawsuit.  Moreover, co-defendants may often disagree on trial strategies, and separate proceedings will enable each defendant to control its defense.

Peter S. Menell, et al., Patent Case Management Judicial Guide § 8.1.1.6 (Fed. Judicial Ctr. 2009).  "Under Rule 42(b), a district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management."  *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212 (Fed. Cir. 1987); *see also Eastside Church of Christ v. Nat'l Plan, Inc.*, 391 F.3d 357, 359 (5th Cir. 1968) (finding no abuse of discretion by trial court in ordering separate trials in case involving twenty-two plaintiffs and twenty-seven defendants).

## III.  DISCUSSION

### A.  Multiple Trials Necessary

Conducting a single trial as to all Defendants would be unmanageable, as both the Plaintiff and the Defendants acknowledged at the January 13, 2010 trial plan conference.  Twelve defendants remain in the above-captioned case,[2] so thirteen parties (including Plaintiff) would be in attendance if the Court conducted a single trial.  Such a trial would involve at least eight law firms as trial counsel, plus various other law firms associated as co-counsel and local counsel.

---

[2]  For purposes of this discussion, the Court groups each bank defendant with its corresponding holding company defendant, as the parties have done in their trial plans.

The defendants would in total present dozens of expert witnesses. Simply seating the trial teams, experts, and support staff in the Marshall Division's main courtroom would not be possible. An auditorium-sized facility would be required. Even more important, submitting such a large volume of information to a jury in one trial would probably result in a substantial amount of jury confusion. Any such confusion would likely cause unfair prejudice to some or all parties. Further, the undersigned has only about three weeks available to use the main courtroom in the Marshall Division for the March 2010 trial setting, and a trial of all defendants would likely exceed that length by a wide margin. The undersigned's experience has also taught that any patent trial longer than about two or three weeks would likely cause jury confusion due to the sheer volume of evidence and duration of testimony that would be presented.

Separate trials will therefore further the interests of judicial economy and the avoidance of unfair prejudice. In particular, conducting separate trials will reduce (in each separate trial) the number of parties, diversity of instrumentalities, number of expert witnesses, and overall volume of evidence that will be submitted to the jury, thus minimizing the risk of jury confusion.

## B.  Parties' Proposed Trial Plans

The parties have submitted six separate proposed trial plans. *See* Dkt. Nos. 1829, 1830, 1831, 1832, 1833, & 1834. The remaining bank defendants are: Bank of America, BancorpSouth, BB&T, First Tennessee, KeyBank, LaSalle, SunTrust, U.S. Bank, Wachovia, and Wells Fargo. The "service provider" or "clearing house" defendants are The Clearing House ("TCH") and Viewpointe. The Bank of America Group submitted the following summary data, purportedly taken from Plaintiff's expert reports on damages, regarding alleged damages as to each Defendant:

| Defendants | Alleged Damages ($) | ~ % | Royalty Base (check vol.) | ~ % |
|---|---|---|---|---|
| Bank of America | 868,659,173.00 | 55 | 64,542,733,822 | 62 |
| BancorpSouth | 586,673.00 | .037 | 26,074,363 | .025 |
| BB&T | 77,083,662.00 | 4.8 | 3,809,087,106 | 3.7 |
| First Tennessee | 60,442,178.00 | 3.8 | 2,767,327,731 | 2.7 |
| KeyBank | 59,812,667.00 | 3.8 | 2,801,611,744 | 2.7 |
| LaSalle | 71,847,580.00 | 4.5 | 3,569,861,716 | 3.4 |
| SunTrust | 121,681,246.00 | 7.6 | 6,439,498,607 | 6.2 |
| The Clearing House | 0.00[3] | 0 | 0[3] | 0 |
| U.S. Bank | 201,963,902.00 | 13 | 13,407,112,156 | 13 |
| Viewpointe | 0.00 | 0 | 0 | 0 |
| Wachovia | 30,495,491.00 | 1.9 | 1,480,106,448 | 1.4 |
| Wells Fargo | 100,627,315.00 | 6.3 | 5,194,539,456 | 5.0 |
| Total | 1,593,199,887.00 | 100 | 104,037,953,149 | 100 |

Dkt. No. 1829 at 2.[4]

Plaintiff proposes a March 2010 trial with: U.S. Bank or Wells Fargo; BB&T or First Tennessee; Viewpointe; and TCH.  *See* Dkt. No. 1832 at Ex. A.  Plaintiff argues that their joint infringement theory requires that "any trial involving TCH or Viewpointe must also include a representative bank."  *Id.* at 3.  Plaintiff also argues that Bank of America should *not* be tried in March 2010 because Plaintiff plans to petition for a writ of mandamus from the Court of Appeals for the Federal Circuit as to the undersigned's denial of Plaintiff's motion to disqualify Bank of America's trial counsel, Fish & Richardson P.C.  Dkt. No. 1832, Ex. A at 2 n.1; *see* 12/30/2009

---

[3] The Clearing House and Viewpointe are urging that all damages for all of the accused transactions are included in Plaintiff's calculations for the bank defendants.  *See* 12/9/2009 Mot. for Summ. J., Dkt. No. 1731.

[4] The Court has added percentage columns for ease of reference.

Order, Dkt. No. 1814.  At the January 13, 2010 trial plan conference, Plaintiff suggested that their proposed trial will be a "bellwether" for all other parties by adjudicating as many issues as possible.  Along these lines, Plaintiff submitted that while its proposed trial grouping represents much less infringing check volume than even Bank of America alone is accused of, adjudication of a wide array of concepts is more important for "bellwether" purposes than resolving the most accused check volume.  In particular, Plaintiff submits that its trial plan includes an entity that is a part owner of both Viewpointe and TCH (U.S. Bank or Wells Fargo) as well as an entity that is a mere customer of one or both of Viewpointe and TCH (BB&T is a co-owner of TCH but not Viewpointe; First Tennessee is a *non*-owner of both Viewpointe and TCH).  *See* Dkt. No. 1832, Ex. A at 2 n.2.  Further, Plaintiff emphasized at the January 13, 2010 trial plan conference that even if Plaintiff cannot recover any damages from Viewpointe or TCH, Plaintiff is seeking an injunction, the pursuit of which would be unfairly delayed if the Court deferred a trial on Viewpointe and TCH until all of the bank defendants have been put to trial.

Bank of America, LaSalle, SunTrust, and KeyBank (the "Bank of America Group") propose a trial with only them as defendants.  These defendants argue that "[Plaintiff's] joint infringement arguments are directed to the banks who allegedly direct or control the activities of [TCH] and Viewpointe[, and] [s]uch direction or control can be proven without these controlled defendants' presence."  Dkt. No. 1829 at 8.  These defendants emphasized at oral argument that: only two trial counsel firms would be involved for the defendants; several experts would be common; and these defendants have cooperated to organize their common proof.  Based on the data above, the Bank of America Group has about 70% of the alleged damages and about 74% of the accused check volume.

Wells Fargo, Wachovia, BB&T, and First Tennessee (the "Wells Fargo Group") have no objection to the proposal of the Bank of America Group. *See* Dkt. No. 1830. The Wells Fargo Group submits that if the Court declines to adopt the Bank of America Group's trial plan, the Court should adopt the Wells Fargo Group's plan. The Wells Fargo Group further submits that "[t]he Wells Fargo and Wachovia Defendants are inextricably linked as trial partners" because "Wachovia Corporation has been merged into Defendant Wells Fargo & Co." and because "Wells Fargo and Wachovia share a common invalidity case since those entities jointly built a cost-to-coast check imaging system in the 1990s." Dkt. No. 1830 at 2. Based on the data above, the Wells Fargo Group has about 17% of the alleged damages and about 13% of the accused check volume.

BancorpSouth has expressed willingness to be put to trial with either the Bank of America Group or the Wells Fargo Group. *See* Dkt. No. 1831. The Bank of America Group is agreeable to including Bancorp South, which they note would put five of the ten bank defendants in one trial, thereby "equally splitting the bank defendants into two manageable trial groupings." Dkt. No. 1829 at 2 n.2. The Wells Fargo Group also "would not be opposed to trying this matter with BancorpSouth." Dkt. No. 1830 at 2 n.1. Based on the data above, BancorpSouth has about 0.037% of the alleged damages and about 0.025% of the accused check volume.

U.S. Bank submits that it cannot be readily grouped with either the Bank of America Group or the Wells Fargo Group without adding about a week of trial time. *See* Dkt. No. 1834 at 3. U.S. Bank therefore requests that the case against it be reserved for a trial at a later date. *Id.* at 4. Based on the data above, U.S. Bank has about 13% of the alleged damages and about 13% of the accused check volume.

"Viewpointe and TCH propose that the case against them be held in reserve."  Dkt. No. 1833 at 1.  At the January 13, 2010 trial plan conference, these defendants emphasized that any damages for their alleged infringement are subsumed in the damages alleged for the bank defendants.  Viewpointe and TCH have therefore urged that because Plaintiff can only receive one satisfaction for any damages awarded, there should ultimately be no need for a trial as to Viewpointe or TCH at all.

## C.  Viewpointe and TCH

Viewpointe and TCH need not necessarily be tried in the first trial or every trial.  In general, a patentee is free to prove up joint infringement in the absence of some of the parties alleged to have participated in the joint infringement.  *See Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008) (for patent regarding municipal bond auction systems, case included auctioneers but not bidders even though asserted claims required involvement of bidders); *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2008) (for patent regarding payment system, case included payment processor but not financial institutions even though asserted claims required involvement of financial institutions).  Plaintiff has not shown otherwise, other than to note that Viewpointe and TCH are already parties before the Court and are alleged to be joint infringers with the bank defendants.  On balance, the Court does not constrain its analysis of the proposed trial plans to necessarily include Viewpointe and TCH in every trial or any particular trial.

## D.  Court's Trial Plan for March 2010

As a preliminary matter, in determining a trial plan the Court does not consider Plaintiff's intent to petition for a writ of mandamus regarding the Court's December 30, 2009 Order.  The

Court need not pass upon the merits of such a petition.

All of the parties' proposed trial plans comport with the letter and spirit of Rule 42(b), and although the Court and the parties are about to embark on a common voyage through the proverbial crucible of trial, the Court generally regards the plaintiff as having a presumptive right to present its case in the manner it chooses. *See Sensitron, Inc. v. Wallace*, 504 F. Supp. 2d 1180, 1186 (D. Utah 2007) ("[T]he presumption is that the plaintiff, in a typical case, should be allowed to present her case in the order she chooses.") (citation omitted); *S.E.C. v. Nacchio*, No. 05-cv-480, 2008 WL 4170269, at *1 (D. Colo. Sept. 5, 2008) (noting "assumption that a single trial lessens delay, expense, and inconvenience to the parties and preserves the Plaintiff's presumptive right to present the case in the manner in which it chooses.") (citation omitted); *Intel Corp. v. Commonwealth Scientific & Indus. Research Org.*, Nos. 6:06-cv-324, -549, -550, -551, 6:07-cv-204, 2008 WL 5378037, at *5 (E.D. Tex. Dec. 23, 2008) (patentee to "elect which case will try damages first" after consolidated trial on infringement, invalidity, willfulness, and all other defenses).[5]  Of course, the considerations of Rule 42(b) must be observed, so the Court also considers judicial economy and avoidance of unfair prejudice. *See* 9 Wright & Miller, Federal Practice and Procedure: Civil 3d § 2388.

On balance, the Court substantially adopts Plaintiff's proposal to include U.S. Bank and First Tennessee in the March 2010 trial ("Phase I" trial).  These banks account for a significant percentage of the alleged damages (roughly 17%), albeit a much smaller percentage than the Bank of America Group.  Putting a relatively small percentage of the alleged infringement to trial

---

[5]  By way of illustration, setting aside jury confusion and the limitations on the Court's resources, a single trial might be possible, and in such a trial the Plaintiff would presumably control the order in which it addressed each bank defendant.

first, however, will tend to advance the case in a more convenient, manageable, and understandable manner than an immediate trial of the majority of the accused transactions in this complex case.  Also, U.S. Bank is a co-owner of both Viewpointe and TCH, while First Tennessee is not an co-owner of either, so a trial of these bank defendants will address the alleged liability both of an owner of the service providers and of a non-owner.  Although Plaintiff expressed a preference for including BB&T rather than First Tennessee, BB&T is a co-owner of TCH, and a trial that includes banks more disparately situated will likely provide broader guidance to the other defendant banks and may thus better "expedite and economize" resolution of the above-captioned case.  Fed. R. Civ. P. 42(b).

In addition, the Court accepts Plaintiff's preference to pursue Viewpointe and TCH in the March 2010 trial.  As noted above, even though Plaintiff may only receive one satisfaction for any damages awarded, Plaintiff also seeks an injunction.  Further, even though Viewpointe and TCH evidently do business with all of the bank defendants, the judicial economy of separate trials can be preserved by limiting the March 2010 trial as to Viewpointe and TCH to transactions involving the bank defendants participating in that trial.  Viewpointe and TCH are therefore also included in the March 2010 trial setting.  After the March 2010 trial, the parties can address whether Viewpointe and TCH should be included in any subsequent trials.

The Court does not set any "back up" defendants to substitute for any defendants set for trial in March 2010 that, for example, settle with Plaintiff before trial.  The Court anticipates many challenging pretrial issues in preparing one group for trial.  Preparing multiple groups would strain the Court's resources to an unmanageable degree.

Wells Fargo, Wachovia, BB&T, and BancorpSouth will be set for a "Phase II" trial in

August 2010.  A Final Pretrial Conference will be held in Texarkana at a data and time to be determined.  Jury Selection is set for August 1, 2010, with trial commencing immediately thereafter.

Bank of America, LaSalle, SunTrust, and KeyBank will be set for a "Phase III" trial in October 2010.  Any defendants that remain for trial after October 2010 will be set for trial in March 2011.

Pre-trial proceedings should be STAYED as to all defendants not set for trial in March 2010.  For example, only parties set for trial in March 2010 by this Order should file a proposed joint final pretrial order pursuant to the February 15, 2009 deadline in the current scheduling order.  *See* 12/9/2009 Amended Docket Control Order, Dkt. No. 1730.

## IV.  CONCLUSION

For the foregoing reasons, the Court hereby **SETS** Phase I (U.S. Bank, First Tennessee, Viewpointe, and TCH) for Jury Selection on **March 5, 2010 at 9:00 A.M.**  Plaintiff's case against Viewpointe and TCH in the March 2010 trial shall be limited to accused transactions involving one or both of U.S. Bank and First Tennessee.  After the March 2010 trial, the parties can address whether Viewpointe and TCH should be included in any subsequent trials.

The Court hereby **SETS** an Initial Pretrial Conference as to the March 2010 "Phase I" trial for **February 18, 2010, at 10:00 A.M. in TEXARKANA**.  The Court anticipates setting a Final Pretrial Conference for a date and time to be determined.

As to Phase II (Wells Fargo, Wachovia, BB&T, and BancorpSouth), a Final Pretrial Conference will be held in Texarkana at a data and time to be determined.  Jury Selection is hereby **SET** in Marshall for **August 1, 2010**, with trial commencing immediately thereafter.

11

As to Phase III (Bank of America, LaSalle, SunTrust, and KeyBank), a final Pretrial Conference is hereby **SET** in Marshall on **October 4, 2010**.  Jury Selection is hereby **SET** in Marshall for **October 5, 2010**.

Pre-trial proceedings are hereby **STAYED** as to all defendants not set for trial in March 2010.

**IT IS SO ORDERED.**

**SIGNED this 19th day of January, 2010.**

DAVID FOLSOM
UNITED STATES DISTRICT JUDGE