IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| DATATREASURY CORPORATION,<br><br>    Plaintiff, Counterclaim Defendant,<br><br>vs.<br><br>WELLS FARGO & COMPANY, et al.,<br><br>    Defendants, Counterclaim Plaintiffs. | Civil Action No. 2:06-cv-00072-DF<br><br>Judge David Folsom |

### Reply in Support of Renewed Motion for Summary Judgment of Defendants The Clearing House Payments Company L.L.C. and Viewpointe Archive Services L.L.C.

"There is no such thing as respondeat inferior." *Speer v. Taira Lynn Marine, Ltd., Inc.*, 116 F. Supp. 2d 826, 830 (S.D. Tex. 2000). DataTreasury asks this Court to disregard controlling Federal Circuit law, the patent statutes, and established agency principles to conclude that a master's conduct can somehow be attributed to a servant who does not himself satisfy all the elements of a tort. DataTreasury offers no authority to support this novel proposition, because there is none. Therefore, The Clearing House and Viewpointe, as the alleged servants, cannot be held liable for U.S. Bank's alleged infringement, and summary judgment is warranted. Moreover, DataTreasury failed to timely articulate a damages theory against The Clearing House and Viewpointe, providing an independent ground for summary judgment.

I.  **Viewpointe and The Clearing House, as alleged servants, are not liable for the mastermind's alleged infringement.**

   A.  **Under divided infringement, the master—not the servant—is the single party that practices the elements of a patent claim.**

DataTreasury does not answer the fundamental argument raised by Viewpointe and The Clearing House in their opening brief. For a party to be liable for direct infringement, it must practice all of the elements of the asserted claims, either by itself or in combination with a party that it directs or controls. DataTreasury concedes that neither Viewpointe nor The Clearing House fits this description.[1] Consequently, summary judgment is appropriate.

Patent law "requir[es] a single party to practice each and every element [of a patent claim] for there to be infringement." *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380 (Fed. Cir. 2007). This rule "derives from the statute itself." *Id.* In *BMC* and *MuniAuction*, the Federal Circuit analyzed the contours of this rule in situations where one party is responsible for another party's conduct. The court concluded that, "where the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one

---

[1] *See* Tr. of Initial Pretrial & Mot. Hr'g at 29:8-11, Feb. 18, 2010.

**Reply in Support of Renewed Motion for Summary Judgment**

party exercises 'control or direction' over the entire process *such that every step is attributable to the controlling party*, i.e., the 'mastermind.'" *MuniAuction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008) (emphasis added).

*BMC* and *MuniAuction* do not undermine the single-party infringement standard. Instead, they apply common-law agency principles to this rule: A principal who practices some elements of a method claim through its agent is the "single party" that practices all elements, because the agent's conduct is attributable to the principal. *BMC*, 498 F.3d at 1379 ("[T]he law imposes vicarious liability . . . in circumstances showing that *the liable party* controlled the conduct of the acting party." (emphasis added)). But DataTreasury misses the mark with its unsupported reverse argument—namely, that a master's conduct is somehow attributable to the servant. There is no "respondeat inferior." *Speer*, 116 F. Supp. 2d at 830; Restatement (Third) Agency § 7.01 cmt. d.

### B. DataTreasury's Response offers nothing to support its argument.

In response to the service providers' motion, DataTreasury offers a host of unhelpful cases and meaningless assertions. DataTreasury first cites three alter-ego cases,[2] but those cases do not apply here. DataTreasury has neglected to plead, present, or support any alter ego theory, or to offer such a theory in response to any discovery requests or through its experts. (*See, e.g.*, McGee Dec. Exs. 1-2, 5-6, 9-14.) Even now, DataTreasury has not actually argued that such a theory applies in this case. Nor does the evidence support such a theory—both The Clearing House and Viewpointe undisputedly provide their check-imaging services to the banking industry generally—to owner and non-owner banks alike.[3] And, in any event, none of the cited

---

[2] Notably, DataTreasury did not cite a single case applying Delaware law, even though that law would govern any alter ego analysis for Delaware entities. *See Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1295 (Fed. Cir. 2007); *Alberto v. Diversified Group*, 55 F.3d 201, 204 (5th Cir. 1995).

[3] *See, e.g.*, McGee Dec. Ex. 9 at 2 n.1 (identifying owner banks); McGee Dec. Ex. 6 ¶ 3 (identifying non-owner customers); McGee Dec. Ex. 5 at 5.2 (identifying non-owner customers).

alter-ego cases addressed whether a servant could be liable for its master's conduct.[4]

Next, DataTreasury relies on two inapposite cases to argue that joint-and-several liability, rather than vicarious liability of a principal, is the proper rule. (Resp. at 3.) In *W.R. Grace & Co.—Conn. V. Intercat*, 60 F. Supp. 2d 316, 326-27 (D. Del. 1999), both defendants had *independently* infringed the patents in suit, and thus were liable for infringement. *See id.* (noting defendant who directly infringed patents by using a product was jointly and severally liable with maker of the product). *W.R. Grace* was not a case like this one, in which DataTreasury seeks to cobble together the acts of multiple parties to create a single infringement. And in *Rowe International Corp. v. E-Cast, Inc.*, 586 F. Supp. 2d 924, 930-33 (N.D. Ill. 2008), the Court rejected the Defendants' assertion that they could not be liable for any type of infringement—contributory or otherwise—because there was no direct infringement. *Id.* at 931. The Court noted that there was evidence that one defendant practiced all of the elements of the asserted claim, and, alternatively, there was also evidence that one defendant directed and controlled the conduct of the other two. The court did not, however, address (or even tangentially mention) whether servants could be jointly and severally liable for divided infringement claims.

DataTreasury next points to language in *On Demand Machine Corp. v. Ingram Industries, Inc.*, 442 F.3d 1331 (Fed. Cir. 2006), but *BMC* disavowed as dictum the very language upon which DataTreasury relies. In *On Demand*, the Federal Circuit stated that it "discern[ed] no flaw" in a district court's jury instruction, but it did so "without any analysis of the issues presented relating to divided infringement." *BMC*, 498 F.3d at 1380. Thus, "the panel's dictum [was not] a wholesale adoption of the district court's jury instruction." *Id.*

---

[4] *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 447 F.3d 411, 416 (5th Cir. 2006) ("[C]ourts will apply the alter ego doctrine and hold a parent liable for the actions of its instrumentality . . . ."); *United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 690 (5th Cir. 1985) ("If Farms [the subsidiary] was the alter ego of Chemicals [the parent], then Chemicals is liable for torts committed by Farms . . . ."); *Nichols v. Pabtex, Inc.*, 151 F. Supp. 2d 772, 780 (E.D. Tex. 2001).

Instead, the governing standard comes from *BMC* and *MuniAuction*, in which the Federal Circuit applied agency principles in holding that, where a party performs certain steps of a method claim and directs or controls another party who performs the remaining steps, "*the party in control* would be liable for direct infringement." *BMC*, 498 F.3d at 1381 (emphasis added).

Finally, DataTreasury's reliance on *Golden Hour Data Systems, Inc. v. emsCharts, Inc.*, No. 2:06-cv-381, 2009 U.S. Dist. LEXIS 30108 (E.D. Tex. Apr. 3, 2009), is misplaced. Although the jury in *Golden Hour* found two defendants liable for joint infringement, the court disregarded that verdict, granting judgment as a matter of law due to the absence of evidence of direction or control. In disregarding the verdict, the court found that "Golden Hour ha[d] not provided evidence sufficient to find that emsCharts had any control or direction over Softtech, or *vice versa*." *Id.* at *12-13. Because, "to prove joint infringement, the patent holder must prove that one party exercises control or direction over the entire process such that every step is attributable to the controlling party," *id.* at *8, the court granted judgment as a matter of law.

*Golden Hour* makes clear that, in divided-infringement cases, "the party in control would be liable for direct infringement." *Id.* at *8. In *Golden Hour*, the control element was in dispute for both defendants, and both defendants went to trial. *Id.* at *13.  Here, however, DataTreasury has abandoned any claim that ViewPointe or The Clearing House is "the party in control"— DataTreasury's abandonment of this position was the reason that the Court allowed this briefing. (*See* Tr. of Initial Pretrial & Mot. Hr'g at 31-34, Feb. 18, 2010.) In the absence of a claim that either Viewpointe or DataTreasury is the "mastermind" to whom U.S. Bank's conduct is attributable, these entities cannot have "practice[d] each and every element," and they cannot be "the party" liable for direct infringement.  Thus, summary judgment is warranted on liability.

## II. DataTreasury lacks a viable claim for damages.

By DataTreasury's owns standards—that an unbriefed issue amounts to a concession[5]—DataTreasury admits that it lacks a viable claim for damages against Viewpointe or the Clearing House. DataTreasury fails to respond to the issues raised in the service providers' opening brief. There is no dispute that DataTreasury's expert, Christopher Bokhart, opined only as to alleged damages resulting from the service providers' transactions with non-defendant bank customers. But the Court has ruled that these damages fail as a matter of law.

Bokhart, forced to abandon his original damage calculation, offered an untimely "supplemental" report in which he claimed that the damages against Viewpointe and The Clearing House were "subsumed" within the damages against the banks. But this belated attempt to lump damages claimed from Viewpointe and The Clearing House into damages from the banks prejudiced the service providers, who did not receive DataTreasury's expert reports against the banks in a timely manner. Moreover, DataTreasury still has not offered anything that specifies the claimed damages against Viewpointe and The Clearing House. The Court should not countenance DataTreasury's belated attempt to construct a brand new damages theory after Bokhart's failure to articulate a valid one. And, given the limited time allotted to each side for trial (22.5 hours), the service providers should not be forced to use their limited time putting on evidence of the absence of damages when DataTreasury failed to timely (or even untimely) articulate any viable damages theory. Accordingly, Viewpointe and The Clearing House request the Court to enter summary judgment dismissing the damages claims against them.

---

[5] DataTreasury asserts that, because the service providers focused their briefing on the issues before the Court, they somehow conceded any unbriefed contested issues. This assertion is absurd. Even if the facts are as DataTreasury has claimed, DataTreasury cannot recover against the service providers—the banks' alleged servants. Other issues are not material to the motion, and have no place in the briefing. To be clear, the service providers do not concede the matters DataTreasury lists at page 2 of its brief.

**Reply in Support of Renewed Motion for Summary Judgment**                                                     Page 5
D-1834075_2.DOC | 38044.2

Dated: February 26, 2010

Respectfully submitted,

/s/ Phillip B. Philbin
Phillip B. Philbin
Texas State Bar No. 15909020
phillip.philbin@haynesboone.com
John R. Emerson
Texas State Bar No. 24002053
russ.emerson@haynesboone.com
HAYNES AND BOONE, L.L.P.
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Tel: 214-651-5000
Fax: 214-651-5940

Daniel A. DeVito
P. Anthony Sammi
SKADDEN ARPS SLATE MEAGHER
    & FLOM LLP
Four Times Square
New York, NY 10036-6522
Tel: 212.735.3000
Fax: 212.735.2000

ATTORNEYS FOR VIEWPOINTE ARCHIVE SERVICES, LLC

Preston W. McGee
State Bar No. 13620600
FLOWERS DAVIS, P.L.L.C.
1021 ESE Loop 323, Suite 200
Tyler, Texas 75701
(903) 534-8063
pmcgee@tyler.net

Of Counsel:
James H. Carter
James T. Williams
Jane J. Jaang
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

Lawrence F. Scinto
Ronald A. Clayton
Robert H. Fischer
Stephen E. Belisle
FITZPATRICK, CELLA, HARPER & SCINTO
30 Rockefeller Plaza
New York, New York 10112-3801
(212) 218-2254

ATTORNEYS FOR DEFENDANT THE
CLEARING HOUSE PAYMENTS COMPANY
L.L.C.

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing Reply in Support of Renewed Motion for Summary Judgment of Defendants The Clearing House Payments Company L.L.C. and Viewpointe Archive Services L.L.C. was served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF filing system per Local Rule CV-5(a)(3) on February 26, 2010.

/s/ Phillip B. Philbin
Phillip B. Philbin