## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **DATATREASURY CORPORATION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 2:06-CV-72 DF** |
| | § | |
| **WELLS FARGO & COMPANY, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## O R D E R

Before the Court is Plaintiff's Request for Enhanced Damages as to U.S. Bank and

Viewpointe, and for "Exceptional Matter" Determination.  Dkt. No. 2127.  Also before the Court

is the response of Defendants U.S. Bank, National Association ("U.S. Bank") and Viewpointe

Archive Services, LLC ("Viewpointe") (collectively, "Defendants").  Dkt. No. 2138.  Further

before the Court are Plaintiff's reply and Defendants' sur-reply.  Dkt. Nos. 2157 & 2195,

respectively.  The Court held a hearing on July 1, 2010.  *See* 7/1/2010 Minute Entry, Dkt. No.

2248.  Having considered the briefing, oral arguments, and all relevant papers, the Court finds

that Plaintiff's motion should be GRANTED IN PART AS MODIFIED and DENIED IN PART.

## I.  BACKGROUND AND THE PARTIES' POSITIONS

This is a patent infringement case involving check image technology.  The Court

conducted a "Phase I" trial involving Defendants U.S. Bank, Viewpointe Archive Services, and

The Clearing House Payments Company, LLC ("The Clearing House" or "TCH") on March 15,

2010, through March 26, 2010.  The jury found willful infringement as to U.S. Bank and

Viewpointe.  Dkt. No. 2089 at 2.

1

Plaintiff argues that the jury's willfulness finding, as well as purported litigation misconduct, justify enhanced damages.  Dkt. No. 2127 at 1.  Plaintiff sets forth factors articulated in *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992).  *Id.* at 5.  Plaintiff cites admissions of validity and infringement by others, the stay pending reexamination, the length of Defendants' expert reports, the numerosity of Defendants' letter briefs and deposition objections, Defendants' petition for writ of mandamus on the eve of trial (*see* Dkt. No. 2010-1), "document dumps," the duration of the jury's deliberations, Defendants' large financial size, their six years of continuous infringement, their lack of remedial action, and circumstantial evidence of copying.  *Id.* at 5-17.  Plaintiff cites similar evidence in support of its motion for an "exceptional matter" determination and attorney's fees pursuant to 35 U.S.C. § 285.  Plaintiff also requests prejudgment interest based on the jury's lump sum royalty, at the prime rate or at 5%, compounded annually.  Id. at 18-20.

Defendants respond that the jury awarded far less than Plaintiff's requested damages. Dkt. No. 2138 at 1.  Defendants argue that they had "good faith reasons to believe they did not infringe any valid claims."  *Id.*  Defendants note that Plaintiff had to abandon its allegations against the Defendants as individuals and had to instead pursue theories of "divided infringement" (usually referred to by the Court as "joint infringement") starting in September 2008.  *Id.* at 1, 15-16, 17-18, & 33.  Defendants address the *Read* factors and urge that a jury's willfulness finding does not by itself support enhanced damages.  *Id.* at 2-4 & 10-37.  Defendants also argue that a willfulness finding does not necessarily require that a case be found exceptional and, moreover, even finding a case exceptional does not necessarily warrant an award of attorney's fees.  *Id.* at 4-6.  Defendants also argue that even though Plaintiff prevailed at trial on a

2

theory of divided infringement, each Defendant must be judged based on its own conduct, alone. *Id.* at 6-9. Defendants submit that they "allowed other defendants to take the lead in this litigation and did nothing to prolong the case." *Id.* at 25. As to whether the case was a close one, Defendants note that the jury asked to see several of Defendants' prior art references and that "deliberations were so combative that after a fight one juror stormed out of the Courthouse . . . ." *Id.* at 30. As to remedial action, Defendants emphasize that they deactivated encryption and that encryption was required by four of the five claims asserted by Plaintiff at trial. *Id.* at 35. Finally, Defendants argue that Plaintiff's "undue delay" in bringing suit warrants denial of prejudgment interest or, if the Court does award interest, the "risk-free" Treasury Bill rate should be used rather than the prime rate. *Id.* at 37-40.

Plaintiff replies that because Defendants infringed jointly, the appropriate focus "is on what [Defendants] did together, not what each defendant did in isolation." Dkt. No. 2157 at 2. Plaintiff also argues that the jury's willfulness finding "necessarily includes all the egregiousness and bad faith required to assess enhanced damages." *Id.* at 1. Plaintiff also emphasizes the JPMC Consent Judgment as evidence of lack of good faith. *Id.* at 4. Plaintiff also criticizes Defendants' arguments that they did not take the lead in any purported misconduct. *Id.* at 6-7. As to the "juror's field trip," Plaintiff argues the incident could have been due to "interpersonal conflict" rather than the purported closeness of the case. *Id.* at 8. As to encryption, Plaintiff notes that the jury found infringement of a claim that did not require encryption. *Id.* at 10.

In sur-reply, Defendants reiterate that the jury's willfulness finding is not dispositive, that the Court should consider all relevant evidence, and that separate actions of U.S. Bank and Viewpointe cannot be combined to reach "some aggregate amount of egregiousness that might

warrant enhanced damages." Dkt. No. 2195 at 1-2.  Defendants also re-urge that Plaintiff

"intentionally and unreasonably delayed before suing U.S. Bank" such that no prejudgment

interest should be awarded.  *Id.* at 7.

## II.  DISCUSSION

### A.  Enhanced Damages

Under 35 U.S.C. § 284, "the court may increase the damages up to three times the amount

found or assessed."  Enhanced damages are punitive, not compensatory, and therefore the

imposition of such damages requires some degree of culpability.  *Jurgens v. CBK, Ltd.*, 80 F.3d

1566, 1570 (Fed. Cir. 1996).

Determining whether to enhance damages requires a two-step process.  "First, the

fact-finder must determine whether an infringer is guilty of conduct upon which increased

damages may be based."  *Id.*  The first step is satisfied where the accused infringer has acted in

bad faith.  *Id.*  A finding of willful infringement is a prerequisite to the award of enhanced

damages.  *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 858 (Fed. Cir. 2010).  "[A] finding of

willfulness does not require an award of enhanced damages; it merely permits it."  *In re Seagate*

*Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007).

Second, "exercising its sound discretion," the court determines "whether, and to what

extent, to increase the damages award given the totality of the circumstances."  *Jurgens*, 80 F.3d

at 1570.  "The paramount determination in deciding to grant enhancement and the amount

thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances."

*Read*, 970 F.2d at 826.

Although the determination of whether to enhance damages is made in light of the totality

4

of the circumstances, the Federal Circuit has compiled a non-exhaustive list of factors to consider (the "*Read* factors"): (1) whether the infringer deliberately copied the ideas of another; (2) whether the infringer investigated the scope of the patent and formed a good faith belief that it was invalid or not infringed; (3) the infringer's behavior as a party to the litigation; (4) the defendant's size and financial condition; (5) the closeness of the case; (6) the duration of the defendant's misconduct; (7) remedial action by the defendant; (8) the defendant's motivation for willfully infringing; and (9) whether the defendant attempted to conceal its misconduct. *Id.* at 826-27.

The propriety of the jury's finding of willfulness is addressed by a separate Order on U.S. Bank's Renewed Motion for Judgment as a Matter of Law of No Willful Infringement (Dkt. No. 2130). "The test for willfulness is distinct and separate from the factors guiding a district court's discretion regarding enhanced damages," and "the standard for deciding whether—and by how much—to enhance damages is set forth in *Read*, not *Seagate*." *i4i*, 598 F.3d at 859.

The Court now examines the *Read* factors in turn. *Read*, 970 F.2d at 826-27. Plaintiff has presented some circumstantial evidence of copying. For example, in 1998, before Viewpointe was formed, a representative of one of Viewpointe's founders, Chase Bank, met with Plaintiff about intellectual property, and Plaintiff provided its patent applications to Chase. 3/17/2010 A.M. Tr., Dkt. No. 2101 at 69:20-82:11. Plaintiff has also presented evidence that one of Viewpointe's officers visited Plaintiff's facility in November 2000 and that Viewpointe did not begin storing checks until 2001. *Id.* at 90:13-93:24. Defendants have countered that the Viewpointe system was based on IBM's "On Demand" system, which had existed since 1993 and had been in place at Chase since 1996. Dkt. No. 2138 at 13-14. Plaintiff has argued that U.S.

5

Bank, as a member of the banking industry, had access to whatever information Chase took from Plaintiff.  On balance, Plaintiff's circumstantial evidence of copying is significant but of limited strength, so this factor weighs only slightly in favor of enhancement.

Defendants have put on evidence of a good faith belief that the patents-in-suit were invalid or not infringed.  For example, Plaintiff's joint infringement theory did not crystallize until 2008, after years of litigation.  U.S. Bank also submits that its systems differed from those of banks that had been sued before Plaintiff sued U.S. Bank.  Dkt. No. 2138 at 17-19.  As to invalidity, Defendants presented substantial prior art during the Phase I trial, and Defendants also submit that encryption, purportedly a key aspect of the patents-in-suit, was already well-known in the prior art.  *Id.* at 21-24.  As to Plaintiff's reliance on consent judgments and the JPMC Letter (*see* 2/26/2010 Order, Dkt. No. 1982 at 66-69), the parties do not resolve whether the Court is permitted to consider evidence that was excluded during the Phase I trial.  Regardless, the Court finds such evidence of limited significance in deciding whether to enhance damages because the consent judgments and the JPMC Letter were related to litigation.  On balance, Defendants have put forth considerable evidence of good faith beliefs of invalidity and non-infringement.  Though the jury rejected some or all of this evidence by finding willfulness, the Court is nonetheless free to independently weigh the evidence in determining enhanced damages.  *i4i*, 598 F.3d at 859.

As to Defendants' behavior as parties to the litigation, this case has been hard-fought on both sides.  Plaintiff has not shown that Defendants' conduct has been vexatious.  For example, Plaintiff points to a petition for writ of mandamus filed by U.S. Bank on the eve of the Phase I trial, but Plaintiff also filed a petition for writ of mandamus in this very case.  *See In re DataTreasury Corp.*, No. 2010-M928 (Fed. Cir.) (regarding 12/30/2009 Order, Dkt. No. 1814).

Further, Defendants' non-infringement and invalidity arguments during the Phase I trial were non-frivolous.  Overall, the parties conduct has been vigorous and zealous but not inappropriate to any degree that would justify enhancing damages.

U.S. Bank has about $54 billion to its name, according to Plaintiff, so U.S. Bank's size and financial condition weigh in favor of enhancement to more effectively punish the willful infringement found by the jury.  Dkt. No. 2127 at 13; *Johns Hopkins Univ. v. Cellpro,* 978 F.Supp. 184, 192 (D. Del. 1997).  Viewpointe characterized itself during the Phase I trial as a small "technology" company, but it is owned by U.S. Bank and other large banks.  3/15/2010 A.M. Tr., Dkt. No. 2097 at 34:16-24 & 73:13-14.  This factor therefore weighs in favor of enhancement as to both U.S. Bank and Viewpointe.

The Phase I trial was neither particularly close nor particularly one-sided.  The case was hard-fought, both in pretrial matters and during trial, and the jury deliberated for about five hours.  *See* 3/26/2010 Minute Entry, Dkt. No. 2090 at 34-36.  The argument that led to the "runaway juror" incident evidently had something to do with the case or with jury service, but no more is known.  *See* 3/26/2010 Tr., Dkt. No. 2115 at 140:9-145:10; *see also* 3/26/2010 Sealed Tr., Dkt. No. 2093.  This incident thus has no discernable bearing on the closeness of the case.  The factor of closeness of the case is therefore neutral.

Defendants infringed for about two years before Plaintiff filed suit about four years ago.  This duration of conduct does not way strongly for or against enhancing damages, and on balance the Court finds this factor neutral.

The parties dispute whether Defendants took remedial action.  Defendants note that encryption on the line between U.S. Bank and Viewpointe was removed in 2008.  Dkt. No. 2138

at 34.  Plaintiff responds that this is mere attorney argument and that there is no evidence of any remedial intent behind the deactivation of encryption.  Dkt. No. 2157 at 10.  In ruling on motions *in limine*, the Court held that based on Federal Rule of Evidence 407, "[e]vidence of deactivation of encryption therefore cannot be used to prove culpability, *e.g.*, willfulness, of pre-deactivation activity."  2/26/2010 Order, Dkt. No. 1982 at 58-59.  Nonetheless, because the parties disputed control, the Court permitted evidence of deactivation of encryption for the limited purpose of showing control.  *Id.*  On balance, the evidence on purported remedial action is not sufficiently clear to weigh for or against enhancing damages.  The Court thus finds this factor neutral.

As to motivation, Plaintiff emphasized at trial its theory that Defendants willfully infringed to achieve some of an estimated $2.1 billion industry-wide cost savings (about five cents per check) on the cost of handling checks.  3/15/2010 A.M. Tr., Dkt. No. 2097 at 41:20-24; 3/16/2010 A.M. Tr., Dkt. No. 2099 at 107:14-20, 113:4-8, & 151:20-152:5; 3/18/2010 P.M. Tr., Dkt. No. 2104 at 89:24-91:6; 3/19/2010 A.M. Tr., Dkt. No. 2105-1 at 65:15-21 (five cents per check), 66:6-67:14, & 68:5-22 (between two and seven cents per check).  As Viewpointe pointed out at trial, the $2.1 billion figure primarily related to image capture and exchange, not image capture and archive.  3/19/2010 A.M. Tr., Dkt. No. 2105-1 at 144:15-148:12.  Plaintiff stipulated that it did not accuse Viewpointe's image exchange of infringement in Phase I.  Dkt. No. 2116; Dkt. No. 2116-1 at 2, ¶ 4; Dkt. No. 2118 at 2, ¶ 4.  The most that can be said is that Defendants infringed to achieve some undetermined cost savings, so this factor weighs only modestly in favor of enhancing damages.

Finally, Plaintiff has not shown that Defendants attempted to conceal its misconduct, and this factor is therefore neutral.

8

Having weighed the *Read* factors, the Court finds an enhancement of 100% appropriate. The jury awarded $26,606,000.00 for infringement by U.S. Bank and Viewpointe.  The Court therefore enhances this award by $26,606,000.00.  Because the jury only found direction and control by U.S. Bank, only U.S. Bank is liable for this enhancement.

**B.  Exceptional Case**

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285 (2000).  Determining whether a case is exceptional and, thus, eligible for an award of attorney fees under § 285, is a two-step process.  *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998).  "First, the district court must determine whether a case is exceptional, a factual determination reviewed for clear error.  After determining that a case is exceptional, the district court must determine whether attorney fees are appropriate . . . ."  *Id.* (internal citation omitted); *Delta-X Corp. v. Baker Hughes Prod. Tools, Inc.*, 984 F.2d 410, 413 (Fed. Cir. 1993).  Most often, a case is deemed "exceptional" because of bad faith actions, such as vexatious litigation, or after a jury verdict of willful infringement.  *See Jurgens*, 80 F.3d at 1570.  "However, a finding of willful infringement does not mandate that damages be increased or that attorneys fees be awarded."  *Id.* at 1573 (citations omitted).

The trial evidence does not support a finding that U.S. Bank and Viewpointe's actions were not in "wanton disregard" of Plaintiff's patent rights so as to justify an "exceptional case" finding.  *Johns Hopkins,* 978 F. Supp. at 192.  Instead, as discussed in Section II.A., above, Defendants have put forth some evidence of good faith beliefs of invalidity and non-infringement.  Moreover, this case has been hard-fought, and the joint infringement theory on which Plaintiff succeeded in the Phase I trial only emerged after years of litigation.  On balance,

9

Phase I of the above-captioned case is not an "exceptional case" under 35 U.S.C. § 285, and the Court awards no attorney's fees as to Phase I.

## C.  Prejudgment Interest

"When a patentee asserts a patent claim that is held to be valid and infringed, prejudgment interest is generally awarded." *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1353 (Fed. Cir. 2009); *see also* 35 U.S.C. § 284 ("Upon finding for the claimant the court *shall* award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, *together with interest* and costs as fixed by the court.") (emphasis added); *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996) (noting that "prejudgment interest is the rule, not the exception") (citations omitted).

First, Defendants have not shown that Plaintiff's delay in filing suit against U.S. Bank, which Defendants submit amounted to about two years, was so prejudicial as to justify denying prejudgment interest. *See* Dkt. No. 2138 at 38.  Defendants rely on *Crystal Semiconductor Corp. v. TriTech Microelectronics International, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001), but that case included "evidence that [the plaintiff's] delay was a litigation tactic." *Id.* at 1362.  Defendants have not made such a showing here.  Instead, Plaintiff appears to have continuously pursued litigation and developed its infringement theories since at least the time that infringement began.

Second, Defendants' proposal that the Court award interest at a "risk free" rate is inadequate.  As a relatively small company, particularly at the time infringement began, Plaintiff is more likely to have had to borrow funds at the prime rate or higher during the period of infringement.  The Court exercises its discretion to select the prime rate, compounded annually.

10

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991) (awarding prejudgment interest at prime rate where patentee financed at rates above prime during the infringement period, but noting that patentee need not show that it actually borrowed at or above prime in order to obtain prejudgment interest at that rate).  This prejudgment interest is on the lump sum awarded by the jury and therefore runs on the entire lump sum from the time of the hypothetical negotiation.  *See* Dkt. No. 2089 at 6.

### III.  CONCLUSION

Plaintiff's Request for Enhanced Damages as to U.S. Bank and Viewpointe, and for "Exceptional Matter" Determination (Dkt. No. 2127) is hereby **GRANTED IN PART AS MODIFIED** and **DENIED IN PART**:

Plaintiff's request for enhanced damages is hereby **GRANTED AS MODIFIED** so as to enhance damages by $26,606,000.00 as to U.S. Bank.  Plaintiff's request for an "exceptional matter" determination and attorney's fees is hereby **DENIED**.  Plaintiff's request for prejudgment interest is hereby **GRANTED AS MODIFIED**: the Court hereby awards prejudgment interest at the prime rate, compounded annually.

Any relief requested by Plaintiff in its motion that is not specifically granted by this Order is hereby **DENIED.    IT IS SO ORDERED.**

**SIGNED this 27th day of September, 2010.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE