IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DATATREASURY CORPORATION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 2:06-CV-72 DF |
| WELLS FARGO & COMPANY, et al., | § § § | |
| Defendants. | § § § § | |

**O R D E R**

Before the Court is Defendants' Renewed Motion for Judgment as a Matter of Law of Non-Infringement. Dkt. No. 2129. Also before the Court are Plaintiff's response, Defendants' reply, and Plaintiff's sur-reply. Dkt. Nos. 2143, 2155, & 2193, respectively. The Court held a hearing on July 1, 2010. *See* 7/1/2010 Minute Entry, Dkt. No. 2248. Having considered the briefing, oral arguments of counsel, and all relevant papers and pleadings, the Court finds that Defendants' motion should be GRANTED IN PART and DENIED IN PART.

This is a patent infringement case involving check image technology. Plaintiff alleges infringement of United States Patents No. 5,910,988 ("the '988 patent") and 6,032,137 ("the '137 Patent") (collectively, the "patents-in-suit"). The Court entered a Claim Construction Order on May 11, 2009. Dkt. No. 1221. The Court conducted a "Phase I" trial involving Defendants U.S. Bank, National Association ("U.S. Bank"), Viewpointe Archive Services, LLC ("Viewpointe"), and The Clearing House Payments Company, LLC ("The Clearing House" or "TCH") on

March 15, 2010, through March 26, 2010. The jury found infringement of all claims asserted in the Phase I trial. Dkt. No. 2089 at 2-3. Specifically, the jury found joint infringement by U.S. Bank and Viewpointe as to Claims 1, 26, and 46 of the '988 Patent and Claims 42 and 43 of the '137 Patent, and the jury found joint infringement by U.S. Bank and The Clearing House as to Claims 1 and 46 of the '988 Patent and Claim 42 of the '137 Patent. *Id.*

## I. LEGAL PRINCIPLES

Federal Rule of Civil Procedure 50 governs motions for judgment as a matter of law in jury trials and motions for new trial. Such a motion may be granted against a party if "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a). After such a motion is denied, "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion," and it may grant a renewed motion pursuant to Rule 50(b) after the trial.

Fifth Circuit law controls this Court's review of a motion for judgment as a matter of law. *See, e.g., Callicrate v. Wadsworth Mfg.*, 427 F.3d 1361, 1366 (Fed. Cir. 2005). In the Fifth Circuit, entry of judgment as a matter of law post-trial under Rule 50 is appropriate if evidence supporting the movant is "uncontradicted and unimpeached" or if "the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict . . . ." *Med. Care Am., Inc. v. Nat'l Union Fire Ins. Co.*, 341 F.3d 415, 420 (5th Cir. 2003) (citation and quotation omitted). Grant of a new trial is thus proper where the jury's verdict is "against the great weight of the evidence" or will result in a "miscarriage of justice." *See Pryor v. Trane Co.*, 138 F.3d 1024, 1026 n.3 (5th Cir. 1998)

(quoting *Thompson & Co. v. Partridge*, 636 F.2d 945, 957 (5th Cir. 1981)). "If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986).

Infringement is a question of fact, and a jury verdict of infringement is reviewed only for sufficiency of the evidence. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 849 (Fed. Cir. 2010).

## II.  THE PARTIES' POSITIONS

Defendants argue that Plaintiff failed to put forth sufficient evidence of: the claimed encryption; the claimed extraction of "transaction data"; infringement by one cohesive system; and divided infringement (which the Court usually refers to as "joint infringement") through direction or control.  Dkt. No. 2129.  As to encryption, Defendants argue that the accused IBM 3890 machines do not encrypt and that the Court should reject Plaintiff's characterization of U.S. Bank's entire system as a single remote data access subsystem.  *Id.* at 4-6.  As to extraction in Claim 46 of the '988 Patent, Defendants argue that Plaintiff only put on evidence about verifying check image quality, not extracting any actual transaction data, such as amount, date, or account number.  *Id.* at 11-12.  Next, Defendants argue that the systems of U.S. Bank, Viewpointe, and The Clearing House are separate and simply transmit information to one another without forming any "cohesive" system that could infringe.  *Id.* at 14.  Defendants further argue that their "corporate separateness" should not be disregarded and that Plaintiff failed to show that U.S. Bank directed the details of operations of Viewpointe, The Clearing House, or any telecom company in between.  *Id.* at 16-27.  Finally, Defendants argue that divided infringement is a limited exception to the "all elements" rule and only applies to method claims, not system

claims. *Id.* at 27-28.

Plaintiff responds as to encryption that none of the claims require that the data access controller do the encrypting. Dkt. No. 2143 at 3. As to extraction, Plaintiff responds that the relevant "data" includes any "information gleaned from the image" and that "'extracting data therefrom' includes extracting the image from the file containing the captured image and other data." *Id.* at 9-10. Plaintiff also submits that the Defendants' systems interoperate to form a cohesive system. *Id.* at 10-12. As to direction or control, Plaintiff argues that Defendants propose too strict a standard, that Plaintiff showed that Defendants engaged in more than mere "arms-length" cooperation, that U.S. Bank sits on the boards of Viewpointe and The Clearing House, and that U.S. Bank has maintained control of its check images throughout the accused systems and methods. *Id.* at 12-18. Finally, Plaintiff submits that several courts have applied joint infringement analysis to system claims. *Id.* at 19-20.

Defendants reply as to encryption that "[t]he data access controller *must* manage the sending of [the] encrypted information from the [remote data access subsystem] to the rest of the overall system." Dkt. No. 2155 at 2. As to extracting, Defendants reply that "[Plaintiff's] proposition that transaction data extracted from an image includes the entire image . . . renders the extraction limitation superfluous." *Id.* at 7-8. Finally, Defendants reiterate that vicarious liability is required for divided infringement and that divided infringement does not apply to system claims. *Id.* at 9-14.

In sur-reply, Plaintiff argues that "[n]othing about the Court's constructions limits the sending by the data access controller to sending only to or directly to the central data processing subsystem." Dkt. No. 2193 at 1. As to extraction, Plaintiff replies that "the system extracts the

4

image—which the Court has defined as part of the transaction data—to determine if the image is satisfactory." *Id.* at 3. As to infringement by one system, Plaintiff submits that it "never claimed the receiving bank's entire system as part of the capture-and-exchange system" but instead "identified the DTA and a single server at the receiving bank as part of the system." *Id.* at 4. Plaintiff also submits that "the record contains evidence that the telecom providers were part of the overall system." *Id.* at 4. As to joint infringement, Plaintiff submits that "the relationship of the parties is a perfectly acceptable consideration for determining direction or control." *Id.* at 7.

### III. DISCUSSION

**A. Encryption**

Plaintiff presented expert testimony opining that the accused system of U.S. Bank and Viewpointe met the encryption limitations of the asserted claims. 3/15/2010 P.M. Tr., Dkt. No. 2098 at 25:20-26:16, 44:22-46:15, 41:13-44:20, 50:18-51:9, 52:20-54:11, 54:16-24, 57:9-58:8, 77:23-78:7, 125:12-126:4, & 154:20-155:5. Plaintiff similarly presented expert testimony opining that the accused system of U.S. Bank and The Clearing House met these limitations. *Id.* at 80:21-82:9. Plaintiff also presented expert testimony to rebut Defendants' argument that encryption was performed outside of the accused system. *Id.* at 152:9-16, 154:7-155:5, & 167:16-170:3.

Defendants argue that Plaintiff's infringement theory fails because the accused remote data access subsystems are individual check sorter machines, which do not perform the accused encryption, or because no encryption happens at the claimed "remote location." Dkt. No. 2129 at 4-6. The Court rejects these arguments. As to Claim 1 of the '988 Patent and Claim 42 of the '137 Patent, Plaintiff put on evidence that the accused remote data access subsystem includes

5

hardware and software at U.S. Bank's Energy Park data center. Dkt. No. 2142 at 4-5; 3/15/2010 P.M. Tr., Dkt. No. 2098 at 16:12-17:9, 22:7-15, 25:20-26:16, 44:22-46:15, & 121:12-122:18. As to Claim 26 of the '988 Patent and Claim 43 of the '137 Patent, Plaintiff put on evidence that Energy Park by itself is a "remote location." 3/15/2010 P.M. Tr., Dkt. No. 2098 at 52:20-54:11.

Defendants also argue that "the theory of one giant remote subsystem violates what the patent and the Court have said with respect to the subsystem identification requirement." Dkt. No. 2129 at 5. Specifically, Defendants note that although each check sorter has its own identification number, Plaintiff's view of the claimed remote data access subsystem includes multiple check sorters, so there is no identification number that identifies the remote data access subsystem. *Id.* The Court rejects Defendants' argument just as the Court rejected similar arguments during claim construction. *See* Dkt. No. 1221 at 43-49. The Court construed "subsystem identification information" to mean "information that identifies the remote data access subsystem or a subsystem that is a part of the remote data access subsystem." *Id.* at 49. Plaintiff thus properly submits that the subsystem identification information need not identify the entire remote data access subsystem. Dkt. No. 2143 at 6. Plaintiff presented evidence that the accused check sorters use a number that corresponds to the claimed subsystem identification information. 3/15/2010 P.M. Tr., Dkt. No. 2098 at 19:20-21:8.

Finally, Defendants argue that its systems do not infringe because the accused data access controller "does not manage the sending of any encrypted information." Dkt. No. 2129 at 6. The Court rejects Defendants' argument. The Court construed "data access controller for managing the capturing and sending of the transaction data" to mean "a computer chip, circuit board, or a computer that interfaces between the imaging subsystem and the remainder of the overall

claimed system, and controls the operation of the imaging subsystem, for managing and sending of the transaction data." Dkt. No. 1221 at 36. Plaintiff properly submits that the claimed data access controller need not encrypt or send encrypted data but need only manage the capture and sending of transaction data. Dkt. No. 2143 at 5. Plaintiff put on evidence that the accused data access controller does so. 3/15/2010 P.M. Tr., Dkt. No. 2098 at 123:20-125:12. Defendants have not shown that the asserted claims at issue require anything more.

In sum, Plaintiff presented sufficient evidence at trial to support the jury's infringement findings as to encryption.

**B. Cohesive System**

Plaintiff presented expert testimony opining that the accused system of U.S. Bank and Viewpointe met the "comprehensive and cohesive system" limitations required by the Court's claim construction. Dkt. No. 1221 at 20 (construing "subsystem" to mean "an organization of computer components that comprises a functional unit that is part of a larger comprehensive and cohesive system"); 3/15/2010 P.M. Tr., Dkt. No. 2098 at 28:7-29:11, 44:24-49:24, 114:1-15, & 174:23-176:3. Plaintiff presented similar evidence as to the accused system of U.S. Bank and The Clearing House. 3/15/2010 P.M. Tr., Dkt. No. 2098 at 70:11-71:7, 114:1-15, 173:10-174:16, & 174:23-176:3. The jury's infringement findings in this regard are thus supported by sufficient evidence.

**C. Direction or Control**

As a preliminary matter, the Court rejects Defendants' contention that there can be no joint infringement of a system claim. *See, e.g., Uniloc USA, Inc. v. Microsoft Corp.*, 640 F. Supp. 2d 150, 162 (D.R.I. 2009). Also, Plaintiff relies in part on the Court's March 19, 2010

hearsay exception findings under Rule 801(d)(2)(D) & (E), but those findings were made only in the context of admissibility, and the Court does not rely on those findings in assessing the sufficiency of the evidence on direction or control.

Plaintiff presented evidence at trial that U.S. Bank exercised direction or control over Viewpointe and The Clearing House so as to jointly infringe the asserted claims. Plaintiff's briefing cites this evidence, including evidence that Viewpointe and SVPCO (now part of The Clearing House) have designed and operated their systems at the banks' behest, that the banks have controlled how their check images are handled, and that Viewpointe and The Clearing House have operated without profit so as to maximize benefits for the banks. Dkt. No. 2143 at 14-17; *see, e.g.,* 3/15/2010 P.M. Tr., Dkt. No. 2098 at 176:4-177:21. Plaintiff also adduced evidence at trial that Viewpointe and The Clearing House each operate as a "utility" or "helper" in carrying out the infringing conduct. 3/16/2010 A.M. Tr., Dkt. No. 2099 at 40:22-41:3, 63:11-64:3, 68:14-25, 82:5-83:14, & 86:11-18 (The Clearing House); 3/18/2010 A.M. Tr., Dkt. No. 2103 at 32:2-16 (Viewpointe); 3/24/2010 P.M. Tr., Dkt. No. 2112 at 26:2-28:24 (The Clearing House). The jury's findings in this regard are thus supported by sufficient evidence.

**D. Extraction - Claim 46 of the '988 Patent**

Claim 46 of the '988 Patent recites (emphasis added):

46. A method for transmitting data within and between one or more remote subsystems, at least one intermediate subsystem and at least one central subsystem in a tiered manner wherein each of the central subsystems communicate with at least one intermediate subsystem and each of the intermediate subsystems communicate with at least one remote subsystems [*sic*] comprising the steps of:
    capturing an image of documents and receipts and *extracting data therefrom*;
    transmitting data within the remote locations;
    transmitting data from each remote location to corresponding intermediate

> location[s];
> transmitting data within the intermediate locations;
> transmitting data from each intermediate location to corresponding central locations; and
> transmitting data within the central locations.

To support the jury's verdict, Plaintiff relies on expert testimony opining that the "extracting" limitation of Claim 46 of the '988 Patent is met by analyzing attributes of a check image:

> So as the Court construed ["extracting data therefrom"], it means obtaining data from the captured image, the image is -- on the 3897, the image is actually captured. It is then sent to the image capture processor paths. These are the processors that process it and *verify the image quality*. As part of that, the image will be looked at.
>
> In other words, the bits will be looked at of the image to determine a values [*sic*] for -- is it too dark, too light, horizontal line, vertical lines, that kind of information. That value that's determined will then be compared against something to determine i[f] the image quality is correct or not. So it extracts that value.

3/15/2010 P.M. Tr., Dkt. No. 2098 at 64:5-65:5 (emphasis added). Plaintiff's expert acknowledged that the correctness of his opinion on the "extracting" limitation depended upon his interpretation of the Court's claim construction:

> Q. And do you understand -- do we agree that there's no evidence that U.S. Bank ever extracts any of the information on the check regarding the -- the transaction, once it takes a picture of the -- of the check?
> A. Well, the -- as the Court construed paper transaction data, the information includes an image of the paper document. So you're limiting -- it appears that *you're adding an additional limitation to the definition of paper transaction data that is not in the Court's construction*.
> So you're saying it doesn't do something with paper transaction data, and I'm saying, well, the image is the paper transaction data, and it does do something with that data.
> Q. And what does it do with that data?
> A. It actually as you would do if you were trying to read the amount. You process every bit in the data looking for and obtaining a number or information

9

> about the quality.
>     So it's going to do lightness, darkness, as I said, horizontal lines, vertical lines, that kind of thing, and take that value and compare it to standards to know if that image is any good or not.
>         Q. So it's going to look at how good of a picture got taken?
>         A. Yes, which is the transaction data.

*Id.* at 131:10-132:11 (emphasis added).

Defendants argue that evaluating image quality attributes does not satisfy the "extracting" limitation. Dkt. No. 2129 at 11-12. The Court previously construed the term "capturing an image of documents and receipts and extracting data therefrom" to mean "capturing an image of documents and receipts and extracting data from the image." 5/11/2009 Order, Dkt. No. 1221 at 91 (citing 11/2/2004 Report and Recommendation ("R&R"), *DataTreasury Corp. v. J.P. Morgan Chase & Co.*, C.A. 5:02-CV-124, Dkt. No. 214 at 47-48). The R&R noted that Plaintiff itself "appears to agree that the data is extracted from the image." C.A. 5:02-CV-124, Dkt. No. 214 at 47. The Court also construed "extracting data therefrom" in Claim 46 of the '988 Patent to mean "obtaining data from the captured image." Dkt. No. 1221 at 94.

In its post-trial briefing, Plaintiff argues that "'extracting data therefrom' includes extracting the image from the file containing the captured image and other data." Dkt. No. 2143 at 9-10. Plaintiff's position, which reflects the above-quoted testimony of Plaintiff's expert at trial, contradicts the Court's claim construction. "[E]xtracting the image from the file and analyz[ing] its attributes" (*id.* at 10) and "determin[ing] if the image is too light, dark, or has lines on it" (*id.*) is not "obtaining data from the captured image" (Dkt. No. 1221 at 94). To the contrary, the Court's construction noted that "the specification speaks separately of images and data" and emphasized that the "invention of claim 46 requires that data be extracted *from the*

*captured images.*" *Id.* at 93 & 94 (emphasis original). Thus, the data that is extracted cannot be the image itself. Further, evaluating attributes such as lightness or darkness is not "extracting data" from a document. Evaluations of image size and completeness are similarly infirm. *See* 3/23/2010 P.M. Tr., Dkt. No. 2110 at 91:8-93:4. Read in light of the Court's construction and the written description of the '988 Patent, the "data" recited in Claim 46 is some sort of transaction data, not simply any conceivable image data.

In sum, the expert opinions relied upon by Plaintiff frame "extracting" as determining attributes of the images as part of an image quality verification process. As discussed above, the "extracting" limitation contemplates obtaining content conveyed by the underlying document, *i.e.*, data about the transaction. The opinions of Plaintiff's expert to the contrary at trial were outside of the Court's claim construction and thus as a matter of law cannot support the jury's finding of infringement as to Claim 46 of the '988 Patent. *Cf. Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242-43 (1993) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict.") (citation omitted). Plaintiff's post-trial briefing identifies no other support for the jury's finding of infringement as to Claim 46 of the '988 Patent, and the Court finds none.

Defendant's motion for judgment of non-infringement as a matter of law should therefore be GRANTED as to Claim 46 of the '988 Patent.

### IV.  CONCLUSION

Defendants' Renewed Motion for Judgment as a Matter of Law of Non-Infringement (Dkt. No. 2129) is hereby **GRANTED IN PART** and **DENIED IN PART**. Specifically,

Defendants' motion is hereby **GRANTED** as to Claim 46 of the '988 Patent.  Defendants' motion is otherwise hereby **DENIED**.

   **IT IS SO ORDERED.**

   **SIGNED this 27th day of September, 2010.**

*[signature]*
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE