IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DATATREASURY CORPORATION, | § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 2:06-CV-72 DF |
| WELLS FARGO & COMPANY, et al., | § § | |
| Defendants. | § § | |

**O R D E R**

Before the Court is Defendant U.S. Bank National Association's ("U.S. Bank's") Renewed Motion for Judgment as a Matter of Law of No Willful Infringement. Dkt. No. 2130. Also before the Court are Plaintiff's response, U.S. Bank's reply, and Plaintiff's sur-reply. Dkt. Nos. 2142, 2153, & 2197, respectively. The Court held a hearing on July 1, 2010. *See* 7/1/2010 Minute Entry, Dkt. No. 2248. Having considered the briefing, oral arguments of counsel, and all relevant papers and pleadings, the Court finds that U.S. Bank's motion should be DENIED.

This is a patent infringement case involving check image technology. The Court conducted a "Phase I" trial involving Defendants U.S. Bank, Viewpointe Archive Services, LLC ("Viewpointe") and The Clearing House Payments Company, LLC ("The Clearing House" or "TCH") on March 15, 2010, through March 26, 2010. The jury returned a verdict of willfulness as to joint infringement by U.S. Bank and Viewpointe. Dkt. No. 2089 at 2.

**I.  LEGAL PRINCIPLES**

Federal Rule of Civil Procedure 50 governs motions for judgment as a matter of law in jury trials and motions for new trial. Such a motion may be granted against a party if "a party has

1

been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a). After such a motion is denied, "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion," and it may grant a renewed motion pursuant to Rule 50(b) after the trial.

Fifth Circuit law controls this Court's review of a motion for judgment as a matter of law. *See, e.g., Callicrate v. Wadsworth Mfg.*, 427 F.3d 1361, 1366 (Fed. Cir. 2005). In the Fifth Circuit, entry of judgment as a matter of law post-trial under Rule 50 is appropriate if evidence supporting the movant is "uncontradicted and unimpeached" or if "the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict . . . ." *Med. Care Am., Inc. v. Nat'l Union Fire Ins. Co.*, 341 F.3d 415, 420 (5th Cir. 2003) (citation and quotation omitted). Grant of a new trial is thus proper where the jury's verdict is "against the great weight of the evidence" or will result in a "miscarriage of justice." *See Pryor v. Trane Co.*, 138 F.3d 1024, 1026 n.3 (5th Cir. 1998) (quoting *Thompson & Co. v. Partridge*, 636 F.2d 945, 957 (5th Cir. 1981)). "If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986).

## II.  THE PARTIES' POSITIONS

Defendant U.S. Bank argues that its substantial invalidity and claim construction arguments, as well as Plaintiff's shifting infringement positions, fatally undermine any finding of an objectively high likelihood that U.S. Bank's actions constituted infringement of a valid patent. Dkt. No. 2130. U.S. Bank emphasizes that the Court of Appeals for the Federal Circuit "did not

recognize divided infringement until 2007," when that court decided *BMC Resources v. Paymentech*, 498 F.3d 1373 (Fed. Cir. 2007). *Id.* at 11. U.S. Bank also argues that it neither received pre-suit notice of its alleged infringement nor should have known of any objectively high likelihood of infringement. *Id.* at 16-19. For example, U.S. Bank submits that "a former U.S. Bank executive, Mr. Grundhofer, testified that U.S. Bank knew about DataTreasury's earlier lawsuits against Viewpointe and The Clearing House, but that U.S. Bank was not concerned about whether U.S. Bank might infringe because U.S. Bank was a separate entity and because those other entities were competently handling the defense of the litigation." *Id.* at 18.

Plaintiff responds that the willfulness inquiry centers not on how Plaintiff's lawsuit against U.S. Bank unfolded but rather on what "a reasonable party *in the position of the Defendant at the time it learned of the patents*" could have believed. Dkt. No. 2142 at 3 & 6. But regardless, Plaintiff argues, U.S. Bank's defenses at trial were "mendacious," were not credible or legitimate, and were only "one factor for the jury to consider in assessing the issue of willfulness." *Id.* at 8. Plaintiff also points to its evidence of "joint venture," "motive to steal," long-standing industry knowledge about Plaintiff, and attempted cover-up of the expected cost savings of infringing. *Id.* at 19-23. Plaintiff also cites evidence excluded from trial, such as consent judgments and an opinion letter written for J.P. Morgan Chase ("Chase"). *Id.* at 23-24. Plaintiff further argues that removing encryption was not a remedial measure because it did not remediate as to all claims of the patents-in-suit and because U.S. Bank did not put on evidence that it turned off encryption because of the litigation with Plaintiff. *Id.* at 17.

U.S. Bank replies that the prior art it relied upon existed pre-suit and that Plaintiff substantially amended its original infringement contentions well into the litigation. Dkt. No.

3

2153 at 1-2. U.S. Bank also presents authority that defenses presented during litigation can weigh against a finding of objective recklessness. *Id.* at 4. U.S. Bank further argues that Plaintiff's suits against other banks are not enough to satisfy the second prong of *Seagate* because "U.S. Bank was aware that some banks use encryption within their system and that some banks extract information from checks, thereby depriving those other banks [of] U.S. Bank's central non-infringement arguments." *Id.* at 10. Finally, U.S. Bank emphasizes that Plaintiff provided no pre-suit notice that it believed U.S. Bank infringed *in combination* with Viewpointe. *Id.* at 11.

In sur-reply, Plaintiff argues that trial testimony supported a finding that deactivation of encryption was not "remedial" but rather was to improve efficiency. Dkt. No. 2197 at 3. Plaintiff also argues that the Court's findings as to agency and joint venture "may in fact be used to impute knowledge between the Defendants for purposes of this issue [willfulness]." *Id.* at 5.

### III.  DISCUSSION

"[T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. . . . If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). Willfulness is a question of fact, and a jury's verdict of willfulness is reviewed for substantial evidence. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 859 (Fed. Cir. 2010).

As a threshold matter, the Court rejects Plaintiff's argument that the Court's findings of

"agency" and "joint venture" under Federal Rule of Evidence 801 support imputing knowledge of others to Defendants for purposes of assessing willfulness. The Court's ruling on Rule 801(d)(2)(D) & (E) during the Phase I trial addressed agency and joint venture with regard to admissibility of certain statements. 3/19/2010 Order, Dkt. No. 2068. That ruling did not purport to govern all potential agency issues in the above-captioned case. In assessing whether sufficient evidence supports the jury's finding of willfulness, the Court does not impute to Defendants any purported knowledge or culpability of others.

### A. Objective Prong of *Seagate*

First, Plaintiff presented evidence that it sued several other banks, as well as Viewpointe and TCH, before suing U.S. Bank. Other banks had paid millions of dollars for licenses to the patents-in-suit, several of them before Plaintiff sued U.S. Bank in April 2006. 3/16/2010 A.M. Tr., Dkt. No. 2099 at 145:23-146:23; 3/17/2010 A.M. Tr., Dkt. No. 2101 at 108:9-116:21; 3/17/2010 P.M. Tr., Dkt. No. 2102-1 at 105:9-111:21.

Second, the reexamination of the patents-in-suit does not undermine the willfulness finding under the objective prong of *Seagate*, particularly because the reexamination ultimately upheld the validity of the patents-in-suit. *Safoco, Inc. v. Cameron Int'l Corp.*, No. H-05-0739, 2009 WL 2424108, at *20 (S.D. Tex. July 31, 2009) ("[T]he granting of a reexamination request by the USPTO is only a single factor to consider and is not dispositive as to the objective prong of the willful infringement standard, regardless of when the alleged willfully infringing activity occurs," and "the *outcome* of a reexamination proceeding is far more persuasive, though again not necessarily dispositive, as to whether the defendant acted 'despite an objectively high likelihood that its actions constituted infringement of a valid patent.'") (quoting *Seagate*, 497

F.3d at 1371); *see also Acoustical Design, Inc. v. Control Elecs. Co.*, 932 F.2d 939, 942 (Fed. Cir. 1991).

Third, although U.S. Bank notes that the Court of Appeals for the Federal Circuit did not hand down *Paymentech* until 2007, the concept of joint infringement discussed therein was not new. *See epicRealm Licensing, LLC v. Autoflex Leasing, Inc.*, 492 F. Supp. 2d 608 (E.D. Tex. 2007) ("[A] party cannot avoid liability for infringement by having someone else perform one or more steps of the patented process for them.") (quoting *E.I. DuPont De Nemours & Co. v. Monsanto Co.*, 903 F.Supp. 680, 735 (D. Del. 1995), *aff'd*, 92 F.3d 1208, 1996 WL 403285 (Fed. Cir. 1996); *see also On Demand Machine Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1344-45 (Fed. Cir. 2006). That Plaintiff sued U.S. Bank pre-*Paymentech* thus carries little, if any, significance in assessing the sufficiency of the evidence in support of the jury's willfulness finding.

On balance, the evidence presented during the Phase I trial supports the jury's willfulness finding as to the first prong of *Seagate*, an objectively high likelihood of infringement of a valid patent.

**B. Subjective Prong of *Seagate***

First, Plaintiff presented some circumstantial evidence of copying, which may be used to show subjective willfulness. *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1336 (Fed. Cir. 2009) ("[E]vidence of copying in a case of direct infringement is relevant only to *Seagate's* second prong, as it may show what the accused infringer knew or should have known about the likelihood of its infringement."). For example, in 1998, years before Viewpointe was formed, a representative of one of Viewpointe's founders, Chase, met with

Plaintiff about intellectual property, and Plaintiff provided relevant patent applications to Chase. 3/17/2010 A.M. Tr., Dkt. No. 2101 at 69:20-82:11.  Plaintiff has argued that U.S. Bank, as a member of the banking industry, had access to whatever information Chase purportedly took from Plaintiff.  Although the Court's "agency" findings as to hearsay are not here used to impute knowledge from Chase to U.S. Bank, as noted above, Plaintiff's circumstantial evidence of access is nonetheless probative of willfulness.  Plaintiff also presented evidence that one of Viewpointe's officers visited Plaintiff's facility in November 2000 and that Viewpointe did not begin storing checks until 2001.  *Id.* at 90:13-93:24.  Defendants have countered that the Viewpointe system was based on IBM's "On Demand" system, which had existed since 1993 and had been in place at Chase since 1996.  Dkt. No. 2138 at 13-14.  The jury was free to consider and weigh all of this evidence.

      Second, U.S. Bank was aware of Plaintiff and its litigation against others before Plaintiff sued U.S. Bank.  *See* 3/15/2010 A.M. Tr., Dkt. No. 2097 at 123:7-125:25; 3/17/2010 P.M. Tr., Dkt. No. 2102 at 128:16-129:6.

      Third, Plaintiff presented evidence that U.S. Bank had a motive to "steal" Plaintiff's technology.  Dkt. No. 2142 at 20-21.  In particular, Plaintiff submitted at trial that U.S. Bank was technologically behind, did not want to remain a "bag phone" bank, and grew from 2,000 branches to 3,100 branches within ten years as a result of check imaging.  3/18/2010 A.M. Tr., Dkt. No. 2103 at 26:4-31:6 & 126:3-127:21; *see also* 3/17/2010 P.M. Tr., Dkt. No. 2102-1 at 126:4-127:1.  Plaintiff also emphasized at trial its theory that U.S. Bank willfully infringed to achieve some of an estimated $2.1 billion industry-wide cost savings (about five cents per check) on the cost of handling checks.  3/15/2010 A.M. Tr., Dkt. No. 2097 at 41:20-24; 3/16/2010 A.M.

7

Tr., Dkt. No. 2099 at 107:14-20, 113:4-8, & 151:20-152:5; 3/18/2010 P.M. Tr., Dkt. No. 2104 at 89:24-91:6; 3/19/2010 A.M. Tr., Dkt. No. 2105-1 at 65:15-21 (five cents per check), 66:6-67:14, & 68:5-22 (between two and seven cents per check).  As Viewpointe pointed out at trial, the $2.1 billion figure primarily related to image capture and exchange, not image capture and archive. 3/19/2010 A.M. Tr., Dkt. No. 2105-1 at 144:15-148:12.  Plaintiff stipulated that it did not accuse Viewpointe's image exchange of infringement in Phase I, and the jury only found willfulness as to U.S. Bank in combination with Viewpointe.  Dkt. No. 2116; Dkt. No. 2116-1 at 2, ¶ 4; Dkt. No. 2118 at 2, ¶ 4; Dkt. No. 2089 at 2-3.  Though the amount of expected cost savings from capture and archive is unclear, the evidence at trial suggested that U.S. Bank infringed to achieve some significant cost savings.

Fourth, at trial Plaintiff displayed and discussed an e-mail in which Viewpointe instructed its representatives to "[p]lease steer clear of any financial benefits associated with check imaging versus paper process in general (DataTreasury), but do mention the operational efficiencies associated with Viewpointe in general." 3/18/2010 P.M. Tr., Dkt. No. 2104 at 91:9-93:6.  Even on its face, this statement apparently had more to do with the value of check imaging than with the culpability of Viewpointe or U.S. Bank.  This statement thus has negligible bearing on whether the evidence supports the jury's willfulness finding.

Finally, deactivation of encryption does not move the Court's analysis one way or the other because, in light of Federal Rule of Evidence 407, the Court permitted evidence on this subject only for purposes of showing control, not culpability.  *See* 2/26/2010 Order, Dkt. No. 1982 at 58-59.

On balance, the evidence presented during the Phase I trial supports the jury's willfulness

finding as to the second prong of *Seagate*, subjective willfulness.

## IV.  CONCLUSION

Defendant U.S. Bank National Association's Renewed Motion for Judgment as a Matter of Law of No Willful Infringement (Dkt. No. 2130) is hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 27th day of September, 2010.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE